# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| **IN RE:** | MDL No. 2599 |
| **TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION** | Master File No. 15-2599-MD-Moreno |
| THIS DOCUMENT RELATES TO PERSONAL INJURY TRACK CASES | S.D. Fl. Case No. 1:15-cv-20664-Moreno |
| ANGELINA C. SUJATA, *et al.* | |
| Plaintiffs, | |
| vs. | **JURY TRIAL DEMANDED** |
| TAKATA CORPORATION, TK HOLDINGS, INC., HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR CO., INC., HONDA OF AMERICA MFG INC., HONDA R&D CO. LTD., BAYERISCHE MOTOREN WERKE AG, BMW OF NORTH AMERICA, LLC, BMW MANUFACTURING CO., LLC, NISSAN MOTOR COMPANY, LTD., NISSAN NORTH AMERICA, INC., *et al.,* | |
| Defendants. | |

---

## SECOND AMENDED CONSOLIDATED PERSONAL INJURY TRACK COMPLAINT

## TABLE OF CONTENTS

Nature of Claims ...................................................................................................1

Purpose and Function of this Complaint....................................................................8

Jurisdiction and Venue............................................................................................9

The Parties ..........................................................................................................10

    A. Personal Injury Track Plaintiffs .....................................................................10

    B. Takata Defendants........................................................................................12

    C. Vehicle Manufacturer Defendants ..................................................................13

    D. Defendants Named in Certain Complaints......................................................15

General Factual Allegations...................................................................................16

    I. Takata is a Major Manufacturer of Airbag Systems..........................................27

    II. Takata Defective Airbags .............................................................................27

        A. Takata's Inexpensive and Dangerous Propellant Choice................................28

        B. Takata's Knowledge of the Airbag Defects ..................................................31

    III. Takata Airbag Failures and Defendants' Inadequate Reaction......................34

        A. Early Incidents and "Secret Testing" (2003-2008) .........................................34

        B. The 2008 Honda Recall (08V593) .................................................................37

        C. Additional Incidents (2008-2009) .................................................................38

        D. The 2009 Honda Recall (09V259), and Takata's
        Misleading Reporting to NHTSA ...................................................................39

        E. The 2010 Recall (10VO41) and Honda's Shifting
        Explanations...............................................................................................43

        F. Mounting Honda Recalls ..............................................................................44

        G. Takata Belated Admissions of Broader Defects and
        the 2013 Recall (13V132) ............................................................................46

        H. Forced National Recall and Increased Government
        Scrutiny (2014-2015) ...................................................................................52

i

Allegations Relating to Underlying Accidents ...........................................................59

    Plaintiff Jerry Adler ...........................................................................................59

    Plaintiff Sara Baker ...........................................................................................60

    Plaintiff Jack Bowen ...........................................................................................60

    Plaintiff Jasmine Briant...........................................................................................61

    Plaintiff Joel Brightbill ...........................................................................................61

    Plaintiff Michael Byrne...........................................................................................62

    Plaintiffs Marna S. Chapman and Clyde K. Chapman………………………………...62

    Plaintiff Estate of Law Suk Leh ...........................................................................................63

    Plaintiffs American Diaz Vega, Milton Diaz
    Soto, Isabel N. Diaz Diaz and Juan E. Diaz Diaz ...........................................................64

    Plaintiff Nicole Fisch ...........................................................................................66

    Plaintiff Racquel Hudson ...........................................................................................66

    Plaintiff Gina Johnson...........................................................................................67

    Plaintiff Andrew J. Kampuries ...........................................................................................67

    Plaintiff Lesley Klein...........................................................................................67

    Plaintiff Estate of Mary Lyon Wolf ...........................................................................................68

    Plaintiff Dianne L. Moulton ...........................................................................................69

    Plaintiff Amy C. Patterson ...........................................................................................70

    Plaintiff Miranda Perez ...........................................................................................71

    Plaintiff Miguel A. Morale Ramos ...........................................................................................71

    Plaintiff Denise Raposo ...........................................................................................72

    Plaintiff Devon Rideout ...........................................................................................72

    Plaintiff Angelina C. Sujata ...........................................................................................73

Plaintiff Cindy Tiemeyer ........................................................................74

Plaintiff David G. Thomas........................................................................74

Plaintiff Tina Tran Dang as Personal
Representative Of Hien Thi Tran.............................................................75

Plaintiff Cedric Walton ...........................................................................76

Plaintiff Beverly Whiddon .......................................................................76

Plaintiff Sabra M. Wilson and William R. Wilson ...................................77

Conditions Precedent ...................................................................................79

Tolling of the Statute of Limitations............................................................79

Re-Allegation and Incorporation by Reference ...........................................80

Claims for Relief ..........................................................................................81

Count 1 (Negligence - Takata Defendants) ...........................................81

Count 2 (Strict Liability - Takata Defendants) .....................................84

Count 3 (Negligence -Honda Defendants)..............................................87

Count 4 (Strict Liability - Honda Defendants) ......................................90

Count 5 (Negligence - BMW Defendants) .............................................94

Count 6 (Strict Liability - BMW Defendants) .......................................97

Count 7 (Negligence - Nissan Defendants) ..........................................100

Count 8 (Strict Liability - Nissan Defendants) ....................................103

Count 9 (Wrongful Death - Takata Defendants & Honda Defendants)..........................106

Count 10 (Survival Action - Takata Defendants & Honda Defendants) .......................108

Count 11 (Loss of Consortium) .............................................................109

Count 12 (Strict Liability - Dealership Defendants)..............................110

Count 13 (Negligence - Dealership Defendants) .......................................1113

The Personal Injury Track Plaintiffs, pursuant to the Court's Order Appointing Plaintiffs' Counsel and Setting Schedule [Doc. 393] (the "Order Setting Schedule"), file this Master Consolidated Amended Complaint. The cases included in the Personal Injury Track as of the date of the filing of this Master Consolidated Second Amended Complaint are listed in the attached Schedule A. The Personal Injury Track Plaintiffs, based on personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, allege as follows:

### NATURE OF CLAIMS

1. People trust and rely on the manufacturers of their motor vehicles and critical safety devises therein to make safe products that do not give rise to a clear danger of death or personal injury. An airbag is a critical safety feature of any motor vehicle. Airbags are meant to inflate rapidly during an automobile collision to cushion occupants, and to prevent drivers and passengers from striking hard objects in the vehicle, such as the steering wheel, dashboard or windshield.

2. An airbag supplier must take all necessary steps to ensure that its products— which literally can make the difference between life and death in an accident—function as designed, specified, promised and intended. Profits must take a back seat to safety when both the airbag manufacturer and the automobile manufacturer make their product sourcing decisions.

3. This action concerns defective airbags manufactured by Defendant Takata Corporation and its related entities ("Takata"), and equipped in vehicles manufactured by Honda, BMW, Nissan and other manufacturers (collectively the "Vehicle Manufacturer Defendants").

4. All Takata airbags at issue in this litigation share a common, uniform defect: the use of ammonium nitrate, a notoriously volatile and unstable compound, as the propellant in their

defectively designed inflators (the "Inflator Defect").   The inflator, as its name suggests, is supposed to inflate the airbag upon vehicle impact.   In the milliseconds following a crash, the inflator ignites a propellant to produce a gas that is released into the airbag cushion, causing the airbag cushion to expand and deploy.

5.      In the late 1990s, Takata shelved a safer chemical propellant in favor of ammonium nitrate, a far cheaper and more unstable compound that is much better suited for large demolitions in mining and construction than it is for a vehicle safety component.

6.      Under ordinary conditions, including daily temperature swings and contact with moisture in air, Takata's ammonium nitrate propellant transforms and destabilizes, causing irregular and dangerous behavior ranging from inertness to violent combustion.   Although aware of the risks, Takata decided to abandon a safer propellant in favor of the more dangerous, but significantly cheaper, ammonium nitrate. Takata did so over the express objections and concerns of its engineers in Michigan.   Tellingly, Takata appears to be the only major airbag manufacturer that uses ammonium nitrate as the primary propellant in its airbag inflators.

7.      As a result of the Inflator Defect, instead of protecting vehicle occupants from bodily injury during accidents, the defective Takata airbags too often either fail to deploy or violently explode, sometimes expelling metal debris and shrapnel at vehicle occupants.   As of January 2015, complaints to regulators blame Takata airbags for at least 7 deaths and 139 injuries, including at least 37 reports of airbags that ruptured or spewed metal or chemicals.

8.      When the Vehicle Manufacturer Defendants purchased Takata's airbags for their vehicles, they were aware that the airbags used the volatile and unstable ammonium nitrate as the primary propellant in the inflators.

9.     The volatility and instability of Takata's ammonium nitrate propellant has been underscored by the glaring and persistent quality control problems that have plagued Takata's manufacturing operations.

10.     Takata and the Vehicle Manufacturer Defendants first received word of startling airbag failures no later than 2003, when a Takata inflator ruptured in a BMW vehicle in Switzerland. BMW and Takata jointly investigated the incident in one of Takata's Michigan facilities, and inaccurately minimized the incident as an anomaly, without alerting federal safety regulators.

11.     Similarly, in 2004, a Takata airbag in a Honda Accord in Alabama exploded, shot out metal shrapnel, and severely injured the car's driver.  Honda and Takata investigated the incident and inaccurately minimized it as "an anomaly." Honda did not issue a recall. Neither Honda nor Takata sought the involvement of federal safety regulators.

12.     The serious danger posed by the defective Takata airbags was not disclosed to U.S. safety regulators until 2008, despite red flags raised by prior Takata airbag ruptures or explosions. It took three additional reports of airbag rupture incidents in 2007 to prompt the 2008 disclosure, and even then Takata and Honda assured regulators that they needed to recall only approximately 4,000 Honda vehicles, claiming that they had identified all "possible vehicles that could potentially experience the problem."

13.     Behind the scenes, however, Takata and Honda were busy conducting tests that revealed far more serious problems. As reported in *The New York Times*, Takata conducted secret tests in 2004, which confirmed that its inflators were defective, then destroyed those test results to conceal the defect. After a 2007 airbag rupture, Honda began collecting inflators for further testing.

3

14.     Tragically, these airbag failures were only the first of many to come. Honda and Takata were forced to issue further recalls in 2009, 2010 and 2011, but they did so in a limited and misleading way, apparently in an effort to avoid the huge costs and bad publicity that would have been associated with appropriately-sized and broader recalls. Despite the repeated Takata/Honda recalls, and though the other Vehicle Manufacturer Defendants knew their vehicles were also equipped with Takata airbags containing ammonium nitrate, they failed to take reasonable measures to investigate.

15.     Over a decade after the first incidents of airbag ruptures, Defendants' obfuscation broke down in the face of mounting incidents and increased scrutiny by regulators, the press, and private plaintiffs.  By the middle of 2013, the pace of the recalls increased exponentially as the National Highway Traffic Safety Administration ("NHTSA") began to force the Defendants into action.  Approximately 3 million vehicles had been recalled up until that point (the vast majority of which were Hondas); the April-May 2013 recalls added 4 million more vehicles to the list, across ten manufacturers. Just one year later, in June 2014, another 5.6 million vehicles were recalled. By October 2014, global recalls had reached 16.5 million vehicles.

16.     Even then, Defendants worked hard to limit the scope of the recalls to humid parts of the country. They strenuously and falsely claimed that the risks caused by the Inflator Defect disappeared to the north of some arbitrary latitude in the American South. And they mischaracterized the Inflator Defect as the product of idiosyncratic manufacturing flaws.

17.     By November 2014, in anticipation of a United States Senate hearing to be attended by Takata and the major automakers, NHTSA demanded that the driver side airbag recall be expanded to the entire country for certain driver-side airbags, citing airbag rupture incidents in North Carolina and California. Incredibly, Takata refused, and testified at

Congressional hearings that vehicles in non-humid regions were safe, *even as it claimed that it had not yet determined the root cause of the failures*.

18.     With additional pressure and public scrutiny, the Vehicle Manufacturer Defendants eventually agreed to NHTSA's demand. At that point, the total number of recalled vehicles escalated to approximately 17 million in the United States and 25 million worldwide.

19.     In response to the additional pressure and public scrutiny, Defendants were forced to consult with external explosives and airbag specialists, and performed additional testing on Takata's airbags. This testing confirmed what Defendants already knew: Takata's airbags containing ammonium nitrate were defective and prone to rupture.

20.     In light of this testing, Takata was unable to deny the existence of the Inflator Defect any longer. On May 18, 2015, Takata filed four Defect Information Reports ("DIRs") with NHTSA and agreed to a Consent Order regarding its (1) PSDI, PSDI-4, and PSDI-4K driver air bag inflators; (2) SPI passenger air bag inflators; (3) PSPI-L passenger air bag inflators; and PSPI passenger air bag inflators, respectively. After concealing the Inflator Defect for more than a decade, Takata finally admitted that "a defect related to motor vehicle safety may arise in some of the subject inflators." And in testimony presented to Congress following the submission of its DIRs, Takata's representative admitted that the use of ammonium nitrate is a factor that contributes to the tendency of Takata's airbags to rupture, and that as a result, Takata will phase out the use of ammonium nitrate. Still, even Takata's recent defect admission is inaccurate and misleading, because the Inflator Defect is manifest in each of Takata's inflators containing ammonium nitrate. And shockingly, Takata still intends to produce new inflators with ammonium nitrate, even after conceding that such inflators create an unacceptable public safety hazard.

21.     Further, in its DIRs, Takata acknowledged that the defect is present in inflators that were installed in vehicles as replacement parts through prior recalls, necessitating a second recall of those vehicles.

22.     As a result of Takata's admission that its inflators are defective, an additional 17 million vehicles must be recalled in the United States, pushing the total number of recalled vehicles nationwide past 34 million. While Takata has records of which manufacturers it sold defective inflators to, it claims not to have records of which vehicles those inflators were installed in. The Vehicle Manufacturers possess those records, however, and are thus in the process of identifying which vehicles must be recalled based on Takata's DIRs.

23.     Still, Takata refuses to immediately conduct nationwide recalls of all airbags containing the Inflator Defect. Instead it is still insisting on regional, phased recalls of vehicles equipped with its PSPI-L passenger airbag inflators, PSPI passenger airbag inflators.

24.     Takata and the Vehicle Manufacturer Defendants knew or should have known that the Takata airbags installed in millions of vehicles were defective.  Both Takata and the Vehicle Manufacturer Defendants, who concealed their knowledge of the nature and extent of the defects from the public, have shown a blatant disregard for public welfare and safety.

25.     The actions of Defendants Takata and Honda have been especially disturbing. Despite the shocking record of injuries and failures in Honda vehicles, Takata and Honda were slow to report the full extent of the danger to drivers and passengers and failed to issue appropriate recalls. Honda and Takata provided contradictory and inconsistent explanations to regulators for the Inflator Defect in Takata's airbags, which led to more confusion and delay. Indeed, the danger of defective airbags and the number of vehicles affected was concealed for years after it became apparent there was a potentially lethal problem. Although Takata and

Honda repeatedly had actual knowledge or were on notice of and failed to fully investigate the problem and issue proper recalls, they allowed the problem to proliferate and cause numerous injuries and several deaths over the last 13 years.

26.     The federal government has taken notice of Takata's deception: the Department of Justice is investigating whether the company misled regulators, and in February 2015, NHTSA initiated a $14,000 per day fine because of Takata's ongoing foot-dragging in providing much needed information.

27.     Even before purchasing inflators from Takata, the Vehicle Manufacturer Defendants were aware that Takata used volatile and unstable ammonium nitrate as the primary propellant in its inflators, and thus the Vehicle Manufacturer Defendants were on notice of the Inflator Defect even before they installed the inflators in their vehicles, because Takata reviewed the designs of the inflators with the Vehicle Manufacturers and the Vehicle Manufacturers approved the designs. The Vehicle Manufacturer Defendants were also put on notice of the Inflator Defect not later than 2008, when Honda first notified regulators of a problem with its Takata airbags.  Because their vehicles also contained Takata airbags, the Vehicle Manufacturer Defendants knew or should have known at that time that there was a safety problem with their airbags, and the Vehicle Manufacturer Defendants should have launched their own investigations and notified their customers. That responsibility only grew as incidents multiplied.

28.     Instead, Defendants put profits ahead of safety. Takata cut corners to build cheaper airbags, and the Vehicle Manufacturer Defendants sold consumers vehicles that they knew or should have known contained those defective airbags.  For fifteen years Defendants engaged in a pattern of reckless disregard, deception and obfuscation. Only very recently – on

the heels of media scrutiny – have Defendants begun recalling the millions of vehicles in the United States with the Inflator Defect.

<u>**P**URPOSE AND **F**UNCTION OF **T**HIS **C**OMPLAINT</u>

29.     The purpose of this Master Consolidated Amended Complaint, as directed by the Court's Order Setting Schedule, is to "include all plaintiffs from all of the personal injury cases" and allow them to "travel under a single Personal Injury Track consolidated amended complaint."  This Master Consolidated Amended Complaint includes a section identifying each plaintiff and each defendant, a section containing common factual allegations, a description of the underlying incident involving a Takata airbag for each plaintiff, and a compendium of the causes of action that the plaintiffs have asserted in their respective complaints.

30.     This Master Consolidated Amended Complaint is intended to be an administrative convenience to the Court and the parties and to be a consolidation for purposes of this MDL proceeding only and for the duration of this MDL proceeding only. It does not constitute a "*Lexecon* waiver" and does not waive the right of the plaintiffs in the underlying actions to have their cases tried in the District in which they were originally filed. *See* Order Setting Schedule at ¶I.A ("The Southern District of Florida cases shall be tried by the undersigned in early 2016. The plaintiffs from other districts shall be transferred back for trial to those districts.").

31.     This Master Consolidated Amended Complaint neither waives nor dismisses any claims for relief against any defendant not included in this pleading that are asserted by Personal Injury Track plaintiffs in actions that have been or will be made part of this MDL proceeding. Certain claims for certain parties may, consistent with 28 U.S.C. § 1407 and the case law thereunder, be matters for determination on remand by transferor courts.

32.     This Master Consolidated Amended Complaint is not intended to alter the choice of law rules that apply to the underlying individual actions, which have been filed in several different states.

33.     In the event that a material number of additional individual actions are filed and transferred to this MDL Proceeding, Plaintiffs' Lead Counsel anticipate that they will propose a procedure to allow additional plaintiffs to "adopt" this Master Consolidated Amended Complaint or portions of it.

**JURISDICTION AND VENUE**

34.     This Court has jurisdiction over the underlying Personal Injury Track Plaintiffs' claims based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), because the state of citizenship of each of the Plaintiffs is different from the state of citizenship of each of the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.[1]

35.     Venue is appropriate in this District pursuant to the Transfer Order entered by the Judicial Panel on Multidistrict Litigation on February 5, 2015.

36.     This Court has personal jurisdiction over each of the Takata Defendants pursuant to the Long-Arm Statutes of the respective states in which the underlying actions were filed, and pursuant to Florida Statutes § 48.193(1)(a)(1), (2), and (6), because they conduct substantial business in this District (as well as the Districts in which the actions were originally filed); some of the actions giving rise to the claims for relief took place in this District (as well as the Districts in which the actions were originally filed); and some of Plaintiffs' claims arise out of Defendants

---

[1]     The following action was originally filed in state court and removed to federal court: *David G. Thomas v. American Honda Motor Co., et al.,* Case No. 15-cv-80335. This action asserts claims against one or more defendants whose citizenship is <u>not</u> diverse from the plaintiff's citizenship. A Motion for Remand has been filed. The filing of this Master Consolidated Amended Complaint does not waive any plaintiff's right to move to remand any of those actions to state court for lack of federal jurisdiction.

operating, conducting, engaging in or carrying on a business or business venture in this state or having an office or agency in this state, committing a tortious act in this state, or causing injury to property in this state arising out of Defendants' acts and omissions outside this state.

37. This Court has personal jurisdiction over each of the Vehicle Manufacturer Defendants pursuant to the Long-Arm Statutes of the respective states in which the underlying actions were filed, and pursuant to Florida Statutes § 48.193(1)(a)(1), (2), and (6), because they conduct substantial business in this District (as well as the Districts in which the actions were originally filed); some of the actions giving rise to the claims for relief took place in this District (as well as the Districts in which the actions were originally filed); and some of Plaintiffs' claims arise out of Defendants operating, conducting, engaging in or carrying on a business or business venture in this state or having an office or agency in this state, committing a tortious act in this state, or causing injury to property in this state arising out of Defendants' acts and omissions outside this state.

## THE PARTIES

### A.    PERSONAL INJURY TRACK PLAINTIFFS

38. The following are the plaintiffs who are in the Personal Injury Track as of the date of the filing of this Master Amended Consolidated Complaint.

| Plaintiff | Citizenship | Vehicle |
|---|---|---|
| Jerry Adler | citizen of the State of Florida who resides in Miami-Dade County | 2005 Honda Accord |
| Sara Baker | citizen of the State of Florida who resides in Miami-Dade County | 2002 Honda Accord |
| Jack Bowen | citizen of the State of Florida who resides in Spring Hill, Florida | 2007 Chrysler Dodge Ram 1500 |
| Jasmine Briant | citizen of the State of Louisiana who resides in Orleans Parish, Louisiana | 2012 Jeep Patriot |
| Joel Brightbill and Patricia Payeur | citizens of the State of California | 2002 Chevrolet Trailblazer |

10

| Michael Byrne | citizen of the State of New York who resides in Nassau County, New York | 2004 Honda Civic |
| Marna S. Chapman and Clyde K. Chapman | Citizens of the State of North Carolina who reside in County of Cherokee, North Carolina | 2003 Honda Odyssey |
| Law Ngee Chiong, as personal representative of the Estate of Law Suk Leh and the Estate of Elsa Mia Law Caido | citizen of Malaysia who resides in Sibu, Sarawak | 2003 Honda City Car |
| America Diaz Vega Milton Diaz Soto Isabel N. Diaz Diaz Juan E. Diaz Diaz | citizens of the Commonwealth of Puerto Rico who reside in Guayama, Puerto Rico | 2002 Honda Accord |
| Nicole Fisch | citizen of the State of California who resides in Redding, California | 2003 Honda Accord |
| Gina Johnson | citizen of the State of Tennessee who resides in Knoxville | 2005 BMW 325i |
| Racquel Hudson | citizen of the State of Texas who resides in Austin, Texas | 2004 Honda Odyssey |
| Andrew J. Kampuries | citizen of the State of New York who resides in Massapequa Park, New York | 2006 Honda Civic |
| Lesley Klein | Citizen of the State of Florida who resides in Broward County | 2004 Honda Element |
| Robert E. Lyon, Jr., as personal representative of the Estate of Mary Lyon Wolf | citizen of the State of South Carolina who resides in Lexington County, South Carolina | 2002 Honda Accord |
| Miguel A. Morales Ramos | citizen of the Commonwealth of Puerto Rico who resides in Moca, Puerto Rico | 2001 Honda Accord |
| Dianne L. Moulton | citizen of the State of Michigan who resides in Dearborn, Michigan | 2002 Honda CRV |
| Amy C. Patterson | citizen of the State of Georgia who resides in Cherokee County, Georgia | 2001 Honda Accord |
| Miranda Perez | citizen of the State of New York at the time of the relevant incident, who is now a citizen of the State of California who resides in California | 2003 BMW M3 |
| Denise Raposo | citizen of the State of Florida who resides in Miami-Dade County, Florida | 2003 Acura CL |
| Devon Rideout | citizen of the State of California who resides in Suisun City, California | 2001 BMW 330i |

| Anjelina C. Sujata | citizen of the State of South Carolina who resides in Lexington County, South Carolina | 2001 Honda Civic |
|---|---|---|
| Cindy Tiemeyer | citizen of the State of New Jersey who resides in Washington, New Jersey | 2007 Honda Accord |
| David G. Thomas | citizen of the State of Florida who resides in Palm Beach County, Florida | 2003 Honda Civic |
| Hien Thi Tran | citizen of the State of Florida who was a resident of Orange County | 2001 Honda Accord |
| Daree Sutton | citizen of the State of Florida who resides in Broward County | 2004 Honda Accord |
| Cedric Walton | citizen of the State of Georgia who resides in Chatham County, Georgia | 2001 Honda Accord |
| Beverly Whiddon | citizen of the State of Florida who resides in Nassau County, Florida | 2004 Honda Civic |
| Sabra M. Wilson William R. Wilson | citizens of the State of Louisiana who reside in Saint Charles Parish, Louisiana | 2006 Nissan Sentra |

### B. TAKATA DEFENDANTS

39.     Defendant **Takata Corporation** ("Takata") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Takata is a specialized supplier of automotive safety systems that designs, manufactures, tests, markets, distributes and sells airbags. Takata is a vertically-integrated company and manufactures component parts in its own facilities. Takata, either directly or through its wholly-owned subsidiaries, manufactures airbags for distribution in the United States and Florida, including the airbags at issue in this litigation. Takata delivers its products, including the airbags at issue in this litigation, into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

40.     Defendant **TK Holdings Inc.** ("TK Holdings") is a subsidiary of Takata Corporation and is headquartered in Auburn Hills, Michigan. TK Holdings sells, designs, manufactures, tests, markets, and distributes airbags in the United States.  TK Holdings both

directly and through subsidiaries, owns 56 manufacturing plants in twenty countries. TK Holdings manufactures airbags in the United States, including airbags at issue in this litigation. TK Holdings delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

41.     Defendants Takata and TK Holdings are collectively referred to as "Takata" or "the Takata Defendants." The Takata Defendants designed, manufactured, tested, marketed, distributed and sold the airbag system in each of the Personal Injury Track Plaintiff's vehicles involved in the underlying incidents described below.

## C.     VEHICLE MANUFACTURER DEFENDANTS

42.     Defendant **Honda Motor Co., Ltd.** ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Honda Motor manufactures and sells motorcycles, automobiles, and power products through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

43.     Defendant **American Honda Motor Co., Inc.** ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance, California. American Honda conducts the sale, marketing, and operational activities for Honda cars, trucks, sport utility vehicles, and automobile parts in the United States. American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in Greensburg, Indiana; East Liberty, Ohio; Lincoln, Alabama; and Marysville, Ohio.

44.     Defendant **Honda of America Mfg Inc.** ("Honda Mfg") is an Ohio corporation with its principal place of business in Marysville, Ohio. Honda Mfg is a subsidiary of Honda Motor. Honda Mfg is involved in the design, manufacture, testing, marketing, distribution and sale of Honda vehicles in the United States, including those utilizing Takata airbags.

13

45.     Defendant **Honda R&D Co. Ltd.** ("Honda R & D") is a foreign for-profit corporation with its principal place of business in Wako, Japan. Honda R&D is a subsidiary of Honda Motor. Honda R&D is involved in the design, development, manufacture, assembly, testing, distribution and sale of Honda vehicles, including those utilizing Takata airbags.

46.     Defendants Honda Motor, American Honda, Honda Mfg and Honda R&D are collectively referred to as "Honda" or "the Honda Defendants."  Honda vehicles sold in the United States contain defective airbags manufactured by the Takata Defendants.  The Honda Defendants deliver these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

47.     Defendant **Bayerische Motoren Werke AG** ("BMW AG") is a German holding company and automobile manufacturer.  BMW AG is headquartered in Munich, Bavaria, Germany.  BMW Group is a subsidiary of BMW AG and is also headquartered in Munich. BMW AG, together with its subsidiaries, develops, manufactures, and sells cars and motorcycles worldwide.

48.     Defendant **BMW of North America, LLC** ("BMW North America") is a subsidiary of BMW AG and is headquartered in Woodcliff Lake, New Jersey.  BMW of North America is the United States importer of BMW vehicles.

49.     Defendant **BMW Manufacturing Co., LLC** ("BMW Manufacturing") is a Delaware limited liability company with its principal place of business in Spartanburg, South Carolina. BMW Manufacturing is a subsidiary of BMW AG. BMW Manufacturing is involved in the design, manufacture and testing in the United States of BMW vehicles.

50.     Defendants BMW, BMW North America and BMW Manufacturing are collectively referred to as "BMW" or "the BMW Defendants." BMW vehicles sold in the United

States contain defective airbags manufactured by the Takata Defendants.  The BMW Defendants deliver these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

51.     Defendant **Nissan Motor Company, Ltd.** ("Nissan Motor") is a foreign for-profit corporation with its principal place of business in Kanagawa, Japan. Nissan, along with its subsidiaries, develops, manufactures, and sells automotive vehicles worldwide.   Defendant **Nissan North America, Inc.** ("Nissan North America"), a subsidiary of Nissan, is a California corporation with its principal place of business in Franklin, Tennessee. Nissan North America is a subsidiary of Nissan Motor. Nissan North America is responsible for the distribution, marketing and sales of Nissan and Infiniti brand automobiles in the United States.   Defendants Nissan Motor and Nissan North America are collectively referred to as "Nissan" or "the Nissan Defendants."

52.     Nissan vehicles sold in the United States contain defective airbags manufactured by the Takata Defendants.  The Nissan Defendants deliver these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

53.     The Honda Defendants, the BMW Defendants, and the Nissan Defendants are collectively referred to as the "Vehicle Manufacturer Defendants."

### D.     DEFENDANTS NAMED IN CERTAIN COMPLAINTS

54.     Defendant Morse Operations, Inc. (d/b/a Ed Morse Honda and/or Ed Morse Automotive Group) ("Ed Morse Honda") is a Florida corporation with its principal place of business in Palm Beach County, Florida (named in *David G. Thomas v. American Honda Motor Co., Inc., et al.*, Case No. 9:15-cv-80335). Ed Morse Honda is the car dealership that sold plaintiff David G. Thomas his 2003 Honda Civic.  This Defendant is a "Dealership Defendant."

## GENERAL FACTUAL ALLEGATIONS

55.     The underlying Personal Injury Track cases are each personal injury or wrongful death claims in which occupants of vehicles equipped with a Takata airbag suffered injuries when the airbag exploded and expelled metal debris and shrapnel, or deployed in an abnormal, aggressive or violent way, or failed to deploy entirely.

56.     "Defective Airbags" refers to all airbags (including inflators) manufactured by Takata ("Takata airbags") that are subject to the recalls identified in the table set forth in paragraph 57, *infra*, all Takata airbags subject to recalls relating to Takata's May 18, 2015 DIRs, and all Takata airbags subject to any subsequent expansion of pre-existing recalls, new recalls, amendments to pre-existing DIRs, or new DIRs, announced prior to the date of an order granting class certification, relating to the tendency of such airbags to over-aggressively deploy, rupture, or fail to deploy. All "Defective Airbags" Contain the "Inflator Defect." As a result of the Inflator Defect, Defective Airbags have an unreasonably dangerous tendency to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

57.     As detailed in this Complaint, over the course of seven years Takata and the Vehicle Manufacturer Defendants have issued a series of partial, misleading, and ultimately ineffective recalls to address the Defective Airbags.  For reference, the following table identifies the recalled vehicles by manufacturer, and which of the front airbags were included in the recall for each vehicle (driver or passenger):

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| BMW | 13V172 | BMW | 325Ci | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | 325i | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | 325iT | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | 325xi | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | 325xiT | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | 330Ci Convertible | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | 330Ci Coupe | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | 330i | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | 330xi Sedan | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | M3 Convertible | 2002-2003 | Passenger |
| BMW | 13V172 | BMW | M3 Coupe | 2002-2003 | Passenger |
| BMW | 14V348 | BMW | 325i | 2004-2006 | Both |
| BMW | 14V348 | BMW | 325xi | 2004-2005 | Both |
| BMW | 14V348 | BMW | 330i | 2004-2006 | Both |
| BMW | 14V348 | BMW | 330xi | 2004-2005 | Both |
| BMW | 14V348 | BMW | M3 | 2004-2006 | Both |
| BMW | 14V428 | BMW | 323i | 2000 | Passenger |
| BMW | 14V428 | BMW | 325i | 2001-2006 | Passenger |
| BMW | 14V428 | BMW | 325xi | 2001-2005 | Passenger |
| BMW | 14V428 | BMW | 328i | 2000 | Passenger |
| BMW | 14V428 | BMW | 330i | 2001-2006 | Passenger |
| BMW | 14V428 | BMW | 330xi | 2001-2005 | Passenger |
| BMW | 14V428 | BMW | M3 | 2001-2006 | Passenger |
| BMW | 15V318 | BMW | 325i/325xi/330i/ 330xi Sedan | 2002-2005 | Driver |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| BMW | 15V318 | BMW | 325xi/325i Sports Wagon | 2002-2005 | Driver |
| BMW | 15V318 | BMW | 330Ci/325Ci/M3 Convertible | 2002-2006 | Driver |
| BMW | 15V318 | BMW | 325i/330i/M3 Coupe | 2002-2006 | Driver |
| BMW | 15V318 | BMW | M5/540i/525i/530i Sedan | 2002-2006 | Driver |
| BMW | 15V318 | BMW | 540i/525i Sports Wagon | 2002-2003 | Driver |
| BMW | 15V318 | BMW | X5 3.0i/4.4i Sports Activity Vehicle | 2003-2004 | Driver |
| Chrysler | 14V354 | Chrysler | 300 | 2005-2008 | Both |
| Chrysler | 14V354 | Chrysler | Aspen | 2007-2008 | Both |
| Chrysler | 14V354 | Dodge | Dakota | 2005-2008 | Both |
| Chrysler | 14V354 | Dodge | Durango | 2004-2008 | Both |
| Chrysler | 14V354 | Dodge | Ram 1500 | 2003-2008 | Both |
| Chrysler | 14V354 | Dodge | Ram 2500 | 2005-2008 | Both |
| Chrysler | 14V354 | Dodge | Ram 3500 | 2006-2008 | Both |
| Chrysler | 14V354 | Dodge | Ram 3500 Cab Chassis | 2007-2008 | Both |
| Chrysler | 14V354 | Dodge | Ram 4500 Cab Chassis | 2006-2008 | Both |
| Chrysler | 14V354 | Dodge | Ram 5500 | 2008 | Both |
| Chrysler | 14V770 | Chrysler | 300 | 2005 | Passenger |
| Chrysler | 14V770 | Chrysler | SRT8 | 2005 | Passenger |
| Chrysler | 14V770 | Dodge | Dakota | 2005 | Passenger |
| Chrysler | 14V770 | Dodge | Durango | 2004-2005 | Passenger |
| Chrysler | 14V770 | Dodge | Magnum | 2005 | Passenger |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Chrysler | 14V770 | Dodge | Ram 1500 | 2003-2005 | Passenger |
| Chrysler | 14V770 | Dodge | Ram 2500 | 2003-2005 | Passenger |
| Chrysler | 14V770 | Dodge | Ram 3500 | 2003-2005 | Passenger |
| Chrysler | 14V817 | Chrysler | 300 | 2005-2007 | Driver |
| Chrysler | 14V817 | Chrysler | 300C | 2005-2007 | Driver |
| Chrysler | 14V817 | Chrysler | Aspen | 2007 | Driver |
| Chrysler | 14V817 | Chrysler | SRT8 | 2005-2007 | Driver |
| Chrysler | 14V817 | Dodge | Charger | 2005-2007 | Driver |
| Chrysler | 14V817 | Dodge | Dakota | 2005-2007 | Driver |
| Chrysler | 14V817 | Dodge | Durango | 2004-2007 | Driver |
| Chrysler | 14V817 | Dodge | Magnum | 2005-2007 | Driver |
| Chrysler | 14V817 | Dodge | Ram 1500 | 2004-2007 | Driver |
| Chrysler | 14V817 | Dodge | Ram 2500 | 2005-2007 | Driver |
| Chrysler | 14V817 | Dodge | Ram 3500 | 2006-2007 | Driver |
| Chrysler | 14V817 | Mitsubishi | Raider | 2006-2007 | Driver |
| Chrysler | 15V312 | Dodge | Ram 1500/2500/3500 | 2003 | Passenger |
| Chrysler | 15V313 | Dodge | Ram 2500 Pickup | 2005-2009 | Driver |
| Chrysler | 15V313 | Dodge | Ram 1500 Pickup | 2004-2008 | Driver |
| Chrysler | 15V313 | Dodge | Ram 3500 Pickup | 2006-2009 | Driver |
| Chrysler | 15V313 | Dodge | Ram 3500 Cab Chassis | 2007-2009 | Driver |
| Chrysler | 15V313 | Dodge | Ram 4500/5500 Cam Chassis | 2008-2010 | Driver |
| Chrysler | 15V313 | Sterling | 4500/5500 Cab Chassis | 2008-2009 | Driver |
| Chrysler | 15V313 | Dodge | Durango | 2004-2008 | Driver |
| Chrysler | 15V313 | Chrysler | Aspen | 2007-2008 | Driver |

19

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Chrysler | 15V313 | Chrysler | 300/300C/SRT8 | 2005-2010 | Driver |
| Chrysler | 15V313 | Dodge | Charger/Magnum | 2005-2010 | Driver |
| Chrysler | 15V313 | Dodge | Dakota | 2005-2011 | Driver |
| Chrysler | 15V313 | Mitsubishi | Raider | 2006-2010 | Driver |
| Chrysler | 15V361 | Sterling | Bullet 4500/5500 Chassis Cab | 2008-2009 | Driver |
| Ford | 14V343 | Ford | GT | 2005-2006 | Both |
| Ford | 14V343 | Ford | Mustangs | 2005-2008 | Driver |
| Ford | 14V343 | Ford | Ranger | 2004-2005 | Both |
| Ford | 14V787 | Ford | GT | 2005-2006 | Passenger |
| Ford | 14V787 | Ford | Ranger | 2004-2005 | Passenger |
| Ford | 14V802 | Ford | GT | 2005-2006 | Driver |
| Ford | 14V802 | Ford | Mustang | 2005-2008 | Driver |
| GM | 14V372 | Chevrolet | Cruze | 2013-2014 | Driver |
| GM | 14V471 | Saab | 9-2X | 2005 | Passenger |
| GM/Toyota | 13V133 | Pontiac | Vibe | 2003-2004 | Passenger |
| GM | 15V324 | Chevrolet | Silverado 2500/3500 | 2007-2008 | Passenger |
| GM | 15V324 | GMC | Sierra 2500/3500 | 2007-2008 | Passenger |
| Honda | 08V593 | Honda | Accord | 2001 | Driver |
| Honda | 08V593 | Honda | Civic | 2001 | Driver |
| Honda | 09V259 | Acura | TL/CL | 2002 | Driver |
| Honda | 09V259 | Honda | Accord | 2001-2002 | Driver |
| Honda | 09V259 | Honda | Civic | 2001 | Driver |
| Honda | 10V041 | Acura | CL | 2003 | Driver |
| Honda | 10V041 | Acura | TL | 2002-2003 | Driver |
| Honda | 10V041 | Honda | Accord | 2001-2002 | Driver |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 10V041 | Honda | Civic | 2001-2003 | Driver |
| Honda | 10V041 | Honda | CR-V | 2002 | Driver |
| Honda | 10V041 | Honda | Odyssey | 2002 | Driver |
| Honda | 10V041 | Honda | Pilot | 2003 | Driver |
| Honda | 11V260 | Acura | CL | 2003 | Driver |
| Honda | 11V260 | Acura | TL | 2002-2003 | Driver |
| Honda | 11V260 | Honda | Accord | 2001-2002 | Driver |
| Honda | 11V260 | Honda | Civic | 2001-2003 | Driver |
| Honda | 11V260 | Honda | Civic Hybrid | 2003 | Driver |
| Honda | 11V260 | Honda | CR-V | 2002-2004 | Driver |
| Honda | 11V260 | Honda | Odyssey | 2002-2003 | Driver |
| Honda | 11V260 | Honda | Pilot | 2003 | Driver |
| Honda | 13V132 | Honda | Civic | 2001-2003 | Passenger |
| Honda | 13V132 | Honda | CR-V | 2002-2003 | Passenger |
| Honda | 13V132 | Honda | Odyssey | 2002 | Passenger |
| Honda | 14V349 | Acura | MDX | 2003 | Passenger |
| Honda | 14V349 | Honda | Accord | 2003 | Passenger |
| Honda | 14V349 | Honda | Civic | 2002-2003 | Passenger |
| Honda | 14V349 | Honda | CR-V | 2002-2003 | Passenger |
| Honda | 14V349 | Honda | Element | 2003 | Passenger |
| Honda | 14V349 | Honda | Odyssey | 2002-2003 | Passenger |
| Honda | 14V349 | Honda | Pilot | 2003 | Passenger |
| Honda | 14V351 | Acura | MDX | 2003-2006 | Driver |
| Honda | 14V351 | Acura | TL/CL | 2002-2003 | Driver |
| Honda | 14V351 | Honda | Accord | 2001-2007 | Driver |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 14V351 | Honda | Accord | 2001-2002 | Driver |
| Honda | 14V351 | Honda | Civic | 2001-2005 | Driver |
| Honda | 14V351 | Honda | CR-V | 2002-2006 | Driver |
| Honda | 14V351 | Honda | Element | 2003-2011 | Driver |
| Honda | 14V351 | Honda | Odyssey | 2002-2004 | Driver |
| Honda | 14V351 | Honda | Pilot | 2003-2007 | Driver |
| Honda | 14V351 | Honda | Ridgeline | 2006 | Driver |
| Honda | 14V353 | Acura | MDX | 2003-2005 | Passenger |
| Honda | 14V353 | Acura | RL | 2005 | Passenger |
| Honda | 14V353 | Honda | Accord | 2003-2005 | Passenger |
| Honda | 14V353 | Honda | Civic | 2003-2005 | Passenger |
| Honda | 14V353 | Honda | CR-V | 2003-2005 | Passenger |
| Honda | 14V353 | Honda | Element | 2003-2004 | Passenger |
| Honda | 14V353 | Honda | Odyssey | 2003-2004 | Passenger |
| Honda | 14V353 | Honda | Pilot | 2003-2005 | Passenger |
| Honda | 14V353 | Honda | RidgeLine | 2006 | Passenger |
| Honda | 14V700 | Acura | MDX | 2003-2005 | Passenger |
| Honda | 14V700 | Acura | RL | 2005 | Passenger |
| Honda | 14V700 | Honda | Accord | 2003-2005 | Passenger |
| Honda | 14V700 | Honda | Civic | 2001-2005 | Passenger |
| Honda | 14V700 | Honda | Civic (CNG) | 2003-2004 | Passenger |
| Honda | 14V700 | Honda | Civic Hybrid | 2003-2005 | Passenger |
| Honda | 14V700 | Honda | CR-V | 2002-2005 | Passenger |
| Honda | 14V700 | Honda | Element | 2003-2004 | Passenger |
| Honda | 14V700 | Honda | Odyssey | 2002-2004 | Passenger |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 14V700 | Honda | Pilot | 2003-2005 | Passenger |
| Honda | 14V700 | Honda | Ridgeline | 2006 | Passenger |
| Honda | 15V153 | Honda | Accord | 2001 | Driver |
| Honda | 15V153 | Honda | Civic | 2004 | Driver |
| Honda | 15V153 | Honda | Pilot | 2008 | Driver |
| Honda | 15V320 | Honda | Accord | 2001-2007 | Driver |
| Honda | 15V320 | Honda | Civic | 2001-2005 | Driver |
| Honda | 15V320 | Honda | CR-V | 2002-2006 | Driver |
| Honda | 15V320 | Honda | Element | 2003-2011 | Driver |
| Honda | 15V320 | Honda | Odyssey | 2002-2004 | Driver |
| Honda | 15V320 | Honda | Pilot | 2003-2008 | Driver |
| Honda | 15V320 | Honda | Ridgeline | 2006 | Driver |
| Honda | 15V320 | Acura | CL | 2003 | Driver |
| Honda | 15V320 | Acura | MDX | 2003-2006 | Driver |
| Honda | 15V320 | Acura | TL | 2002-2003 | Driver |
| Mazda | 13V130 | Mazda | Mazda6 | 2003-2004 | Passenger |
| Mazda | 13V130 | Mazda | RX-8 | 2004 | Passenger |
| Mazda | 14V344 | Mazda | B-Series | 2004 | Both |
| Mazda | 14V344 | Mazda | Mazda6 | 2003-2008 | Both |
| Mazda | 14V344 | Mazda | MazdaSpeed6 | 2006-2007 | Both |
| Mazda | 14V344 | Mazda | MPV | 2004-2005 | Both |
| Mazda | 14V344 | Mazda | RX-8 | 2004-2008 | Both |
| Mazda | 14V362 | Mazda | Mazda6 | 2003-2004 | Passenger |
| Mazda | 14V362 | Mazda | RX-8 | 2004 | Passenger |
| Mazda | 14V773 | Mazda | B-Series | 2004-2005 | Passenger |

23

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Mazda | 14V773 | Mazda | Mazda6 | 2003-2006 | Passenger |
| Mazda | 14V773 | Mazda | MPV | 2004-2005 | Passenger |
| Mazda | 14V773 | Mazda | RX-8 | 2004-2005 | Passenger |
| Mazda | 15V345 | Mazda | Mazda 6 | 2003-2008 | Driver |
| Mazda | 15V345 | Mazda | RX-8 | 2004-2008 | Driver |
| Mazda | 15V345 | Mazda | MazdaSpeed 6 | 2006-2007 | Driver |
| Mazda | 15V346 | Mazda | B-Series | 2004-2006 | Passenger |
| Mitsubishi | 14V354 | Mitsubishi | Raider | 2006-2007 | Both |
| Mitsubishi | 14V421 | Mitsubishi | Lancer | 2004-2005 | Passenger |
| Mitsubishi | 14V752 | Mitsubishi | Lancer | 2004-2005 | Passenger |
| Mitsubishi | 15V321 | Mitsubishi | Lancer/Lancer Evolution | 2004-2006 | Passenger |
| Mitsubishi | 15V321 | Mitsubishi | Lancer Sportback | 2004 | Passenger |
| Nissan | 13V136 | Infiniti | FX35 | 2003 | Passenger |
| Nissan | 13V136 | Infiniti | FX45 | 2003 | Passenger |
| Nissan | 13V136 | Infiniti | I-30 | 2001 | Passenger |
| Nissan | 13V136 | Infiniti | I35 | 2002-2003 | Passenger |
| Nissan | 13V136 | Infiniti | QX4 | 2002-2003 | Passenger |
| Nissan | 13V136 | Nissan | Maxima | 2001-2003 | Passenger |
| Nissan | 13V136 | Nissan | Pathfinder | 2001-2003 | Passenger |
| Nissan | 13V136 | Nissan | Sentra | 2002-2003 | Passenger |
| Nissan | 14V340 | Infiniti | FX | 2003-2005 | Passenger |
| Nissan | 14V340 | Infiniti | I35 | 2003-2004 | Passenger |
| Nissan | 14V340 | Infiniti | M | 2006 | Passenger |
| Nissan | 14V340 | Nissan | Pathfinder | 2003-2004 | Passenger |
| Nissan | 14V340 | Nissan | Sentra | 2004-2006 | Passenger |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Nissan | 14V701 | Infiniti | FX35 | 2003-2005 | Passenger |
| Nissan | 14V701 | Infiniti | FX45 | 2003-2005 | Passenger |
| Nissan | 14V701 | Infiniti | I35 | 2003-2004 | Passenger |
| Nissan | 14V701 | Infiniti | M35 | 2006 | Passenger |
| Nissan | 14V701 | Infiniti | M45 | 2006 | Passenger |
| Nissan | 14V701 | Nissan | Pathfinder | 2003-2004 | Passenger |
| Nissan | 14V701 | Nissan | Sentra | 2004-2006 | Passenger |
| Nissan | 15V226 | Nissan | Sentra | 2006 | Passenger |
| Subaru | 14V399 | Subaru | Baja | 2003-2004 | Passenger |
| Subaru | 14V399 | Subaru | Impreza | 2004 | Passenger |
| Subaru | 14V399 | Subaru | Legacy | 2003-2004 | Passenger |
| Subaru | 14V399 | Subaru | Outback | 2003-2004 | Passenger |
| Subaru | 14V471 | Subaru | Baja | 2003-2005 | Passenger |
| Subaru | 14V471 | Subaru | Impreza | 2004-2005 | Passenger |
| Subaru | 14V471 | Subaru | Legacy | 2003-2005 | Passenger |
| Subaru | 14V471 | Subaru | Outback | 2003-2005 | Passenger |
| Subaru | 14V763 | Saab | 9-2X | 2005 | Passenger |
| Subaru | 14V763 | Subaru | Baja | 2003-2005 | Passenger |
| Subaru | 14V763 | Subaru | Impreza | 2004-2005 | Passenger |
| Subaru | 14V763 | Subaru | Legacy | 2003-2005 | Passenger |
| Subaru | 14V763 | Subaru | Outback | 2003-2005 | Passenger |
| Subaru | 15V323 | Subaru | Impreza Sedan/Station Wagon | 2004-2005 | Passenger |
| Subaru | 15V323 | Saab | 9-2x | 2005 | Passenger |
| Toyota | 13V133 | Lexus | SC430 | 2002-2004 | Passenger |
| Toyota | 13V133 | Toyota | Corolla | 2003-2004 | Passenger |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Toyota | 13V133 | Toyota | Matrix | 2003-2004 | Passenger |
| Toyota | 13V133 | Toyota | Sequoia | 2002-2004 | Passenger |
| Toyota | 13V133 | Toyota | Tundra | 2003-2004 | Passenger |
| Toyota | 14V312 | Lexus | SC | 2002-2004 | Passenger |
| Toyota | 14V312 | Toyota | Corolla | 2003-2004 | Passenger |
| Toyota | 14V312 | Toyota | Matrix | 2003-2004 | Passenger |
| Toyota | 14V312 | Toyota | Sequoia | 2002-2004 | Passenger |
| Toyota | 14V312 | Toyota | Tundra | 2003-2004 | Passenger |
| Toyota | 14V350 | Lexus | SC430 | 2003-2005 | Passenger |
| Toyota | 14V350 | Toyota | Corolla | 2003-2005 | Passenger |
| Toyota | 14V350 | Toyota | Matrix | 2003-2005 | Passenger |
| Toyota | 14V350 | Toyota | Sequoia | 2003-2005 | Passenger |
| Toyota | 14V350 | Toyota | Tundra | 2003-2005 | Passenger |
| Toyota | 14V655 | Lexus | SC | 2002-2005 | Passenger |
| Toyota | 14V655 | Toyota | Corolla | 2003-2005 | Passenger |
| Toyota | 14V655 | Toyota | Matrix | 2003-2005 | Passenger |
| Toyota | 14V655 | Toyota | Sequoia | 2002-2005 | Passenger |
| Toyota | 14V655 | Toyota | Tundra | 2003-2005 | Passenger |
| Toyota/GM | 14V312 | Pontiac | Vibe | 2003-2004 | Passenger |
| Toyota/GM | 14V350 | Pontiac | Vibe | 2003-2005 | Passenger |
| Toyota/GM | 14V655 | Pontiac | Vibe | 2003-2005 | Passenger |

## I.     TAKATA IS A MAJOR MANUFACTURER OF AIRBAG SYSTEMS

58.     Takata is the world's second largest manufacturer of automotive safety devices, including airbags. Airbags made up 38.2 percent of Takata's business according to its most recent quarterly report. Takata has a fully integrated development, design and manufacturing system for its airbags. Takata makes the entire airbag system, including the collision sensing devices, airbag control units, airbag modules, airbag inflators and airbag cushion materials.

59.     Takata has supplied airbags to automakers for U.S. vehicles and to state and local government purchasers since at least 1983. Airbags manufactured by Takata have been installed in millions of vehicles in the United States manufactured by at least ten different automakers, including Honda, Toyota, Mazda, Mitsubishi, Nissan, Subaru, Chrysler, Ford, General Motors and BMW. By 2014, Takata captured 22 percent of the global automotive airbag market.

## II.     TAKATA'S DEFECTIVE AIRBAGS

60.     The driver-side airbag is located in the center part of the steering wheel and is stored inside the steering wheel cover. The passenger-side airbag is typically located above the glove compartment and beneath the dashboard. When a collision occurs, the  airbag  breaks through  a  "tear-seam" on the back side of the steering wheel cover or back side of the dashboard as it inflates to protect the front seat occupants.

61.     When collision sensors in the vehicle detect a collision, a signal is sent to the airbag control unit. The signal sent from the sensors to the airbag control unit is processed, and the airbag control unit determines the severity of the impact based on the inputted data. If the airbag control unit determines that an airbag deployment is necessary, it sends a signal to initiate the airbag inflator.

62. The airbag inflator consists of two components encased in a metal canister: 1) a propellant, and 2) an ignitor. The propellant is pressed into wafers or pellets and is encased in a metal canister. The ignition of the propellant causes an explosive chemical reaction that emits gas, resulting in the rapid inflation and deployment of the airbag cushion.

63. The following basic illustration depicts Takata's airbag module:



64. As the force of the collision reaches the driver or passenger, they begin to move forward. By this time, the airbags should be fully inflated and ready to receive and restrain the forward movement of the passengers. The airbag is meant to inflate in a timely fashion in a collision, but only with the force necessary to cushion the occupant from the vehicle's interior.

**A.     Takata's Reckless Choice of an Inexpensive and Dangerous Propellant**

65. When it began manufacturing airbags in the 1980s, Takata used a compound called sodium azide as the propellant within its inflators.

66. Takata redesigned its airbags in the late 1990s for the ostensible purpose of making them more compact and reducing toxic fumes earlier models emitted when deployed.

67. In the mid-1990s, Takata began using a different propellant called 5-aminotetrazole, in part due to toxicity issues associated with sodium azide.

68.     In the late-1990s, Takata's managers pressured its engineers in Michigan to devise a lower cost propellant based upon ammonium nitrate, a compound commonly used in fertilizer and explosives.

69.     Ammonium nitrate is a dangerous material that should not be used in airbags. It is an inherently volatile and unstable chemical. Temperature changes as minimal as daily temperature swings are large enough for the ammonium nitrate to cycle through three of its five crystalline states, adding to its volatility. It also readily absorbs moisture from the atmosphere. The chemical's sensitivity to temperature fluctuations and moisture cause it to break down over time, which in turn results in violent detonation or the chemical becoming effectively inert.  As one explosives expert bluntly stated in *The New York Times*, ammonium nitrate "shouldn't be used in airbags," and is better suited to large demolitions in mining and construction.

70.     From the time it began investigating ammonium nitrate in the late 1990s, Takata understood these risks.  Indeed, Takata expressed concern in a patent document in 1995 that an ammonium nitrate propellant would be vulnerable to temperature changes and that its casing "might even blow up."  Takata further recognized that "[o]ne of the major problems with the use of ammonium nitrate is that it undergoes several crystalline phase changes," one of which occurs at approximately 90 degrees Fahrenheit.  If ammonium nitrate undergoes this type of temperature change, the compound may "expand and contract and change shape resulting in growth and cracking" of the propellant, which might cause an airbag inflator to "not operate properly or might even blow up because of the excess pressure generated."

71.     Additionally, Takata admitted in a patent document from 1999 that pure ammonium nitrate is "problematic" because many gas generating compositions made with it are "thermally unstable."

29

72.     In 1999, as the ammonium nitrate design was being considered, Takata's engineering team in Moses Lake, Michigan, raised objections and pointed to explosives manuals that warned of the risk of disintegration and irregular, overly-energetic combustion.  As one former Takata engineer told a reporter, "ammonium nitrate stuck out like a sore thumb," and yet his team was given only "a couple days" to do its review.

73.     Not surprisingly, other major airbag manufacturers, including Autoliv, Key Safety Systems, and TRW Automotive, have reportedly avoided using ammonium nitrate as a propellant. Indeed, Takata's representative confirmed at a recent Congressional hearing that Takata is the only major airbag manufacturer that uses ammonium nitrate as a primary propellant in its inflators.

74.     The only conceivable advantage to the compound for an airbag manufacturer, according to the expert quoted in *The New York Times*, is that it is "cheap, unbelievably cheap." Indeed, Takata had originally planned to use tetrazole as its propellant, which was not only more stable than ammonium nitrate, but also yields other desired benefits, such as being more environmentally friendly. But tetrazole was too expensive for Takata, and executives ultimately pressured engineers in Michigan to develop a cheaper alternative.

75.     Takata began receiving complaints regarding the Inflator Defect shortly after introducing the redesigned airbag to the market, and those complaints continued to multiply over the years. Nevertheless, rather than switch to the compound it knew would be safer, even if more expensive, Takata recklessly opted to try, over the course of many years, to stabilize a compound that chemically resists stabilization.

76.     For example, in a 2006 patent application, Takata discussed the need to test the performance of ammonium nitrate at various extreme temperatures because it is an unstable

chemical, and these tests could reveal many problems, including "over-pressurization of the inflator leading to rupture." The 2006 patent document purportedly contained a fix for that sort of rupturing.

77. Notably, the alleged fix in 2006 came *after* a rupture incident in 2004 that caused an injury, and incidents continued to mount after that time as well. Takata submitted a patent application with purported fixes as recently as 2013. These ongoing, albeit unsuccessful, efforts show that Takata knew its design was problematic.

### B. Takata's Knowledge of the Airbag Defects

78. Takata's airbag manufacturing operations were actually aware of the defects plaguing Takata airbags. Takata experienced persistent and glaring quality control problems it encountered in its manufacturing operations. The Takata plants that manufactured the airbags at issue include the plants located in Moses Lake, Washington, LaGrange, Georgia, and Monclova, Mexico. These plants also manufacture airbag inflators.

79. At a House hearing in December 2014, Hiroshi Shimizu, Takata's Senior Vice President for Global Quality Assurance, admitted: "We considered it a main contribution to the problem is [sic] the high temperature and absolute humidity, together with age of the products and probably maybe a combination with manufacturing issues." Nonetheless, Mr. Shimizu claimed that Takata still had not determined the root cause of the defect: "At this moment, we don't have the root cause. We know the factors may contribute to this problems [sic], so that is why we are still researching these inflators collected from regions." Executive Vice President of Honda North America, Rick Schostek, echoed that point at the House hearing: "we have theories, but we don't know the cause . . . ."

31

80.     Mr. Shimizu grossly understated the problem. Starting in 2001, engineers at the Monclova, Mexico plant identified a range of problems, including faulty welding and rust, which they said could have caused inflators to fail. Between 2001 and 2003, Takata struggled with at least 45 different inflator problems, according to dozens of internal reports titled "potential failures" and reviewed by *Reuters*.

81.     On at least three occasions between 2005 and 2006, Takata engineers struggled to eliminate leaks found in inflators, according to engineering presentations.  In 2005, Shainin, a U.S. consulting firm, found a pattern of additional problems.

82.     Underscoring Takata's reckless use of ammonium nitrate, on March 31, 2006, the Monclova, Mexico plant was rocked by violent explosions in containers loaded with propellant, leaving at least a dozen workers injured.

83.     Apparently, not even that terrible accident could prompt serious and lasting improvements. In a February 2007 email to multiple colleagues, one manager stated that "[t]he whole situation makes me sick," referring to Takata's failure to implement checks it had introduced to try to keep the airbags from failing.

84.     Takata engineers also scrambled as late as 2009 to address its propellant issues after "inflators tested from multiple propellant lots showed aggressive ballistics," according to an internal presentation in June 2009.

85.     Based on internal Takata documents, Takata was struggling to meet a surge in demand for its airbags. Putting profits ahead of safety, Takata exhibited shoddy and reckless behavior in the handling of its ammonium nitrate propellant. In March 2011, a Takata supervisor at the Monclova plant sent an e-mail to other employees stating: "A part that is not welded = one life less, which shows we are not fulfilling the mission." The title of the e-mail was "*Defectos y*

*defectos y defectos*!!!!" This shoddy and reckless attitude permeated all of Takata's operations and facilities.

86.     Yet, handling problems at Takata facilities persisted: another manager urged employees to examine the propellant visible in a cross section of an airbag inflator, noting that "[t]he propellant arrangement inside is what can be damaged when the airbags are dropped. . . . Here you can see why it is important to handle our product properly." A 2009 presentation of guidelines on handling inflators and airbag units also stressed the dangers of mishandling them. The presentation included a link to a video that appeared to show side-curtain airbags deploying violently, sending the inflator hurtling into the car's cabin. (The inflator itself does not rupture in that video.)

87.     Despite knowing it was shipping potentially deadly products, Takata resisted taking back damaged or wet airbag modules, in part because Takata struggled to keep up with a surge in demand for its airbags through the early and mid-2000s as it won big new clients like General Motors.

88.     Moreover, while Defendants, and particularly Takata, had previously assured the public that the Defective Airbags had been remedied and that the new airbags being placed in recalled vehicles were safe, in fact, GM was recently required to recall model year 2013 and 2014 Chevy Cruze vehicles because of the risk of the Takata airbags rupturing.  And Takata has now admitted that replacement airbags placed in recalled vehicles are defective as well, and cannot assure the public that replacement inflators containing ammonium nitrate are safe and not prone to rupture.

III.   **TAKATA AIRBAG FAILURES AND DEFENDANTS' INADEQUATE REACTION**

A.   **Early Incidents and "Secret Testing" (2003-2008)**

89.   Honda was among the first automakers to use Takata's new air bags, and installed them in some models beginning in 1998.  Since then, Takata airbags containing the Inflator defect have been installed in vehicles manufactured by at least ten automakers.

90.   On November 1, 2003, Charlene Weaver of Arizona—one of the least humid states in the country—was a passenger in a 2004 Subaru Impreza when she was killed in a Takata airbag-related accident.  As summarized in a later section of this Complaint, her car was not recalled until May 2014, more than a decade later.

91.   Also, in 2003, an inflator ruptured in a BMW in Switzerland, prompting a January 2004 investigation by Takata and BMW.  That investigation took place at a Takata facility in Michigan, and involved an inflator sold to BMW, Honda, and Toyota.  The testing was ordered by a senior Takata executive, and the results indicated improper welding and incorrect installation of chemical propellant wafers.

92.   In 2004, a Takata airbag violently exploded in a Honda Accord in Alabama, shooting out metal fragments and injuring the car's driver.  Honda was notified of the incident, and at least one Takata employee recalls being told that Honda examined the part before turning it over to Takata.  Takata reported back to Honda that it was unable to find a cause for the incident.  Ultimately, the companies deemed the incident "an anomaly," and conducted no further investigation or analysis to the public's knowledge.  Notably, Honda and Takata did not issue a recall or even involve federal safety regulators beyond completing a reporting form in a cursory and incomplete manner.

93.   Yet, by this time, Takata was aware of the broad problems associated with its choice of unstable and dangerous ammonium nitrate as a propellant.  As noted above, between

34

2001 and 2003, internal Takata reports titled "potential failures" showed that Takata struggled with at least 45 different inflator problems, and that, in 2002, the Monclova plant recorded 60 to 80 defects for every million inflators shipped to automakers—six to eight times beyond Takata's quality control limit.  In light of this accumulated knowledge, Takata's dismissal of the explosion as an anomaly without further study was reckless at best.

94.     Even as it downplayed the incident publicly, engineers at Takata's American headquarters in Auburn Hills, Michigan, began conducting secret tests on 50 airbags it had retrieved from scrapyards.  The tests were conducted by Al Bernat, Takata's then-vice president of engineering, and took place over weekends and holidays during the summer of 2004.

95.     Steel inflators in at least two of the airbags cracked during the tests, a condition which can lead to rupture.  Takata engineers theorized that welding problems made the inflator vulnerable to splitting and rupturing.  The result was so startling that engineers began designing possible fixes in anticipation of a recall.

96.     But Takata executives discounted the 2004 test results and ordered the lab technicians to delete the test data from company computers and to dispose of the airbag inflators. Prototypes of design alternatives were also trashed.  One former Takata employee stated that "[a]ll the testing was hush-hush. . . . Then one day, it was, 'Pack it all up, shut the whole thing down.'  It was not standard procedure."

97.     Takata did not disclose these tests and continues to deny they occurred.  In regulatory filings, Takata has stated instead that it began testing Defective Airbags in 2008. Because Honda and Takata agreed to describe the 2004 incident in Alabama as an "anomaly," and because Honda and Takata were communicating about the defective inflators by 2004,

Plaintiffs allege, upon information and belief, that Honda was aware of Takata's secret testing that occurred shortly after the Honda airbag explosion.

98.     In June and August of 2007, Honda notified Takata of three additional airbag explosion incidents.  All three accidents involved metal fragments propelling into the faces and bodies of car passengers upon deployment of the airbags.  As with the 2004 incident, Honda did not initiate a recall or provide information about the ruptures to federal investigators.  Rather, it callously risked vehicle occupants' safety as it purportedly awaited a failure mode analysis being conducted by Takata.

99.     After the 2007 incidents, Honda and Takata began another internal investigation, including a survey of inflators.  Starting in late 2007 or early 2008, Honda began collecting inflators returned to dealers for reasons unrelated to the exploding-airbag defect, and sent them to Takata for investigation, all without informing vehicle owners or regulators.  Honda also collected inflators from scrap yards for the same purpose.

100.    Takata began what became a year-long study of the Inflator Defect. Takata's engineers ultimately concluded that workers at a Takata factory in Monclova, Mexico, had left out moisture-sensitive explosives on the plant floor, making them prone to overly energetic combustion.  Takata advised Honda that by November 2002, it had corrected any such handling deficiencies.

101.    The victims of the four Honda incidents – one in 2004 and three in 2007 – brought legal claims against Honda, which the automaker settled on a strictly confidential basis. While Honda filed a standard report with U.S. safety regulators for each of these four incidents, its reports tellingly omitted the most critical detail of these incidents: the Defective Airbags

posed a substantial risk of serious injury or death when deployed.   In later submissions to NHTSA, Honda admitted that it had received still other complaints in this timeframe:

> a.       On July 25, 2008, Honda received an unidentified complaint related to Takata driver airbag ruptures.

> b.       On September 11, 2008, Honda received notice of a complaint regarding "unusual" driver airbag deployment.

**B.**       **The 2008 Honda Recall (08V-593)**

102.     Takata shared the results of the inflator survey analysis with Honda on October 2, 2008. That analysis indicated an airbag inflator problem. Honda and Takata concluded, however, that only a small number or inflators were affected.

103.     As a result, Honda issued a recall, but only for 3,940 vehicles in the United States. This November 2008 recall involved certain 2001 Honda Accord and Civic vehicles with airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion ("2008 Recall").   Honda reported that it learned of the problem from a June 2007 claim, and falsely assured regulators that it had identified all "possible vehicles that could potentially experience the problem."

104.     Even as Takata and Honda advocated a minuscule recall focused on older models—less than 0.1 percent of the total Honda recall to date—at about the same time, in April 2009, Takata engineers scrambled to repair a flaw in a machine at the Monclova, Mexico, factory that made the airbag propellant more volatile, according to materials from a company presentation given that year.

C.    **Additional Incidents (2008-2009)**

105.    Additional incidents took place after the 2008 Recall that underscored its inadequacy:

a.    On April 27, 2009, six months after the limited 2008 recall, a Takata airbag in Jennifer Griffin's 2001 Honda Civic exploded after a minor accident in Orlando, Florida. The explosion sent a two-inch piece of shrapnel from the Defective Airbag flying into Ms. Griffin's neck. Although Ms. Griffin survived, when highway troopers found her, she suffered serious injury to her neck. Ms. Griffin's car was not part of the 2008 Recall. Honda received notice of the incident no later than September 2009, and likely months earlier in July towards the beginning of its correspondence with NHTSA regarding the upcoming 2009 recall.

b.    On May 28, 2009, 18-year-old Ashley Parham of Oklahoma was killed while driving a 2001 Honda Accord when the Takata airbag in her car exploded after her car bumped another car in a parking lot. While she apparently survived the accident itself, the metal shrapnel that shot out of the exploding Defective Airbag sliced open her carotid artery and she bled to death. Ms. Parham's car was not part of the 2008 Recall.

c.    Another Takata airbag-related incident took place in Virginia on June 9, 2009, and Honda ultimately settled a lawsuit brought by the decedent's family.

d.    According to one of its submissions related to the upcoming 2009 Recall, Honda received three additional Takata airbag unusual deployment complaints on July 27, July 31, and August 31, 2009.

106.   With incidents mounting, Takata and Honda revisited the issue yet again.   In June 2009, Takata reported to Honda that the defective airbag components had been made at its factory in Moses Lake, Washington.   At the time, Takata engineers explained to Honda that between 2000 and 2002, a flaw in a machine that presses air bag explosives into wafers had made the explosives unstable.   The Takata engineers further explained to Honda that with the defective air bags, explosives in the metal inflator, which would normally burn down and produce the nitrogen gas to inflate the air bag, instead burn aggressively and cause the inflator to burst, shooting hot fragments through the air bag's fabric.

107.   After two years of investigation, Honda and Takata found that a machine at Takata's Moses Lake factory in Washington state had failed to compress chemicals firmly enough.   That left the inflators vulnerable to moisture, potentially causing the bags to inflate more forcefully than they were supposed to.   At that time, Takata also acknowledged that the defect covered a wider range of vehicles than initially estimated, but claimed that the plant had made numerous upgrades to its machinery in late 2002, which it thought had improved the quality of its explosives.

108.   In June 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.

### D.   The 2009 Honda Recall (09V-259), and Honda's and Takata's Misleading Reporting to NHTSA

109.   As a result of Takata's June 2009 follow-up report and the additional claims of "unusual deployments," on June 30, 2009, Honda issued another recall, this one covering 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").   Thus, it was only two months *after* Ms. Parham's death that Honda expanded its 2008 Recall to include the model she drove.

110.   In August 2009, NHTSA's Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."

111.   NHTSA also wanted to know "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles and explain how this distinction, or any other between the two sets of vehicles, convinced HMC at the time that it did not need to include the latter set in the 08V-593 recall population."

112.   NHTSA's Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual driver airbag deployments" and Honda's investigative efforts.

113.   In Honda's September 16, 2009 reply to NHTSA, the automaker said that its information about the "unusual driver airbag deployments" came from Takata: "[w]e understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."

114.   Honda also reported, based on information from Takata, that the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators." Specifically, the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and limited to "a specific production process" involving one high-precision compression press that was used to form the propellant into wafers, the automaker told NHTSA.

115.   Honda also disclosed to NHTSA that it had fielded nine complaints and one lawsuit related to the 2008 and 2009 Recalls. Honda also finally informed NHTSA about the 2004 incident involving an "unusual deployment" of the vehicle's airbag. Honda claimed that it

"only recently [was] reminded of this incident," and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."

116.    Through a November 20, 2009 request, NHTSA also sought information from Takata.   Takata submitted a partial response to NHTSA on December 23, 2009 ("Partial Response"), and then a full response on February 19, 2010 ("Full Response").   Both responses provided vague and misleading information about the seriousness of the problem.

117.    Takata asserted that there were no substantive design differences between the inflators in the airbags at issue in the two recalls, but cited differences in the production processes between the lots.

118.    Takata also asserted that the defects only existed in specific lots manufactured between certain dates.   It claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000, and that inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001.   Takata did not provide the dates the inflators were shipped, as NHTSA requested, because, as Takata admitted, its records did not have that information.   Instead, it gave just the manufacturing dates.

119.    In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press (the "Stokes press") in a single plant.   Takata further asserted that while it did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore, Takata is convinced that the inflators sold [redacted] contain no safety-related defect."

120.    Takata wrote in its Full Response that it "believed - [redacted] - that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that

had a risk of producing overly energetic combustion. This recommendation, as well as the analysis that supported it, was presented to Honda on June 12, 2009."

121.    In both the Partial Response and the Full Response, Takata stated: "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by Recalls 08V-593 [in 2008] and 09V-259 [in 2009] to any customers other than Honda. The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda." This statement would prove to be false.

122.    Based on Takata's and Honda's misrepresentations and omissions concerning the nature and scope of the Inflator Defect, NHTSA closed its investigation into the Takata airbags on May 6, 2010.

123.    In the months following NHTSA's 2009/2010 request for information, Takata engineers came up with yet another purported explanation for the ruptures; specifically, that in September 2001, machine operators at the Moses Lake plant could have inadvertently switched off an "auto reject" function that weeded out poorly made explosives that can become unstable. However, Takata assured Honda at the time that, "as part of the upgrades at that plant, in September 2002, the supplier had added a locking mechanism that prevented workers from turning the auto-reject function off.

124.    The *Wall Street Journal* further reported that "Honda and Takata discovered more problems. At Moses Lake, employees had switched off a mechanism that automatically checked whether the right amount of propellant was loaded in inflators; at a plant in Monclova, Mexico, a dehumidifier that kept parts dry hadn't been turned on. At times poor record-keeping meant Honda and Takata couldn't figure out which cars had defective bags."

E.    **The 2010 Recall (10V-041) and Honda's Shifting Explanations**

125.    Honda's and Takata's ongoing cover-up and ineffective recalls continued to cost lives.  In December 2009, a 2001 Honda Accord driven by Gurjit Rathore, 33, hit a mail truck in Richmond, Virginia.  Her air bag exploded, propelling shrapnel into her neck and chest, and she bled to death in front of her three children, according to a lawsuit filed by her family.

126.    In February 2010, only months after its previous recall, Honda announced a third recall for an additional 379,000 vehicles across a number of models ("2010 Recall").

127.    Honda's explanation for the airbag defects changed yet again, but still misleadingly focused on the manufacturing process.  Honda explained that of the two different manufacturing processes used in the preparation of an airbag propellant, one process was within specification and the other was not.  Honda's expanded recall supposedly reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

128.    Once again, injuries continued to mount:

    a.      In April 2010, two months after the 2010 Recall, the Takata airbag in Kristy Williams's 2001 Honda Civic exploded while she was stopped at a traffic light in Morrow, Georgia, sending metal shards into her neck and causing profuse bleeding. She survived only because she applied pressure with her fingers to stem the arterial bleeding.

    b.      On November 8, 2010, Suetania Emmanuel of St. Croix, U.S. Virgin Islands, was driving a 2002 Honda Civic when the Takata airbag exploded and sent shards of metal into her face and throat.

F.      **Mounting Honda Recalls (2011-2012)**

129.    In April 2011, Honda filed a Part 573 Defect and Noncompliance report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansions ("2011 Recall").  Honda was unable to determine which vehicles contained the defective replacement parts, forcing it to recall all 833,277 vehicles that might have had the part installed.

130.    According to documents submitted with the 2011 Recall, on August 15, 2011, Honda became aware of an August 1, 2011, "energetic deployment of a driver's airbag inflator that was outside of the prior range of suspect inflators."  On September 2, 2011, Honda and Takata began an analysis of these so-called "outside of range" occurrences.

131.    Underscoring Takata's ongoing quality control failures, on or about September 14, 2011, Honda and Takata began investigating the possibility that airbag inflator propellant lots were mixed during airbag inflator assembly, prompting further analysis of airbag inflator production records for the period when propellant was processed by the suspect method.

132.    Honda reported its death and injury tallies to regulators only in a confidential submission in December 2011, when it issued a fifth limited recall for the rupture defect, according to NHTSA.  That recall expanded Recall No. 11V-260 (April 2011), to include an additional 272,779 Honda and Acura vehicles.  The expanded recall also included another 640 airbags sold as replacement parts; however, because Honda could not determine on which vehicles the 640 replacement air bags were installed, an additional 603,241 vehicles had to be recalled.  Collectively, 1.7 million Honda and Acura vehicles had been recalled by the end of 2011 because they contained Takata-manufactured airbags.

133.   In the meantime, Honda and Takata quietly continued their internal investigation into the Inflator Defect.  According to Honda, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible."  The collection began on March 14, 2012, and by November 21, 2012, Honda in fact found that even its so-called "healthy" airbags could abnormally combust in certain conditions.

134.   Notably, in or about December 2012, NHTSA's Office of Defects Investigation ("ODI") notified Honda that there were numerous injury or death incidents listed on a spreadsheet Honda provided to NHTSA in connection with NHTSA's Takata investigation that were *not* previously provided to NHTSA under the early warning reporting system established by the TREAD Act.  In late 2014, Honda ultimately admitted that it failed to report 1,729 serious accidents resulting in injuries or deaths to NHTSA between 2003 and 2014.  Eight of these incidents involved Takata airbags.  In January 2015, Honda agreed to pay a $70 million fine for this startling failure.

135.   Toyota also received additional direct notice of the Inflator Defect in this timeframe.  Starting in September 2012, Toyota received field reports of three U.S. vehicles with fractured inflators—two were front passenger side airbags that deployed inadvertently.  Toyota recovered 144 in-use inflators from both the Japan and US markets for Takata to evaluate.  In February 2013, Takata informed Toyota that some of the propellant wafers found within the recovered inflators were cracked, possibly due to lower material density.

136.   Dangerous incidents continued to mount during this period.

a.     On April 20, 2011, an unidentified man was hurt in Puerto Rico

45

when the Takata driver airbag ruptured in his 2001 Honda Accord LX.  His attorney notified NHTSA on May 26, 2011.

   b.   On September 20, 2011, Eddie Rodriguez crashed his Honda Civic in Puerto Rico, deploying airbags that launched sharp pieces of metal toward him.  Honda reached a confidential settlement with the driver in 2013.

   c.   On October 20, 2011, there was an alleged rupture of a passenger side airbag in Puerto Rico; Honda obtained the vehicle for analysis on February 3, 2012.

   d.   On December 4, 2011, Miranda Perez suffered left eye blindness due to a Defective Airbag rupture while driving her 2003 BMW M3 in Buffalo, New York.

   e.   On March 2, 2012, Angelina Sujata suffered chest injuries due to a Takata airbag rupture while driving her 2001 Honda Civic in Chapin, South Carolina.

   f.   On March 8, 2012, Sharonda Blowe of Jacksonville, Florida was severely injured while driving a 2001 Honda Accord when she was struck in the head by pieces of metal exploding out of a Defective Airbag.  Ms. Blowe brought suit and reached a confidential settlement.

   g.   On September 2, 2012, Monique Roig suffered facial injuries due to a Defective Airbag rupture while riding in a 2001 Honda Civic in Miami-Dade County, Florida.

### G. Takata's Belated Admissions of Broader Defects and the 2013 Recall (13V132)

137.   By 2013, it became clear to federal regulators and Defendants were already aware that the Defective Airbag issue was far more widespread than Takata or Honda initially reported to NHTSA.

46

138.   On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags.  By March 6, 2013, Honda had learned that:

> A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing processes correctly identifying and removing the out of specification propellant. Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules.

139.   In February and March 2013, Takata notified Nissan and Mazda that it was investigating airbag quality.  Separately, Takata advised Honda "of another potential concern related to airbag inflator production that could affect the performance of these airbag modules."

140.   On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") for an additional 561,422 vehicles that could be affected by the following part defect:

> In certain vehicles, the passenger's (frontal) airbag inflator could produce excessive internal pressure. If an affected airbag deploys, the increased internal pressure may cause the inflator to rupture. In the event of an inflator rupture, metal fragments could be propelled upward toward the windshield, or downward toward the front passenger's foot well, potentially causing injury to a vehicle occupant.

141.   On April 11, 2013, Takata filed a Defect Information Report titled "Certain Airbag Inflators Used as Original Equipment."  In that report, Takata misleadingly attributed the defect to isolated manufacturing flaws, describing the Defective Airbags as follows:

> Some propellant wafers produced at Takata's plant in Moses Lake, Washington, between April 13, 2000 and September 11, 2002 may have been produced with an inadequate compaction force. . . . In addition some propellant wafers used in inflators produced at Takata's plant in Monclova, Mexico between October 4, 2001 and October 31, 2002, may have been exposed to uncontrolled moisture

47

conditions. Those wafers could have absorbed moisture beyond the allowable limits . . . . In both cases, the propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an air bag deployment. This could create excessive internal pressure within the inflator, and the body of the inflator could rupture.

142.    It was not until its April 2013 Report that Takata finally admitted that the defective inflators were installed as original equipment in vehicles manufactured by companies other than Honda, including Toyota, Nissan, Mazda, and BMW. Takata did not know, however, how many inflators were installed as original equipment in vehicles manufactured by companies other than Honda.

143.    In April 2013, based on Takata's new admissions, six major automakers, including Nissan, Mazda, BMW, Pontiac, and Honda, issued recalls of 3.6 million vehicles containing Takata airbags.

144.    With the increased awareness and scrutiny, news of incidents became more widespread:

a.      On August 5, 2013, Joseph Nasworthy of Jacksonville, Florida, suffered severe lacerations to his eye and nose when the Takata airbag exploded upon deployment in his 2005 Honda Civic.

b.      On September 1, 2013, Stephanie Erdman of Destin, Florida, was driving a 2002 Honda Civic when she was hit in the eye by shards of metal that shot from the Takata airbag. Ms. Erdman filed suit and reached a confidential settlement.

c.      Also in September 2013, when police got to the scene of a minor car accident in Alhambra, California, they thought the driver, Hai Ming Xu, had been shot in the face. In fact, he was killed by shrapnel exploding from the Takata airbag in

his 2002 Acura TL that deployed when it hit the wall of a building.  As *The New York Times* reported:

> The authorities have not determined a reason for the injuries, though his coroner's report cited tears in his airbag and facial trauma from a foreign object.  And problems persist with Honda's reporting of potential defects.
>
> In at least four more recent suspected ruptures, including the one linked to [the California driver's] death, Honda has not filed a so-called early warning report with safety regulators, as is required in cases where there is a claim of defect that resulted in an injury or death, according to case lawyers and legal filings.

      d.      On October 12, 2013, Brandi Owens of Forsyth County, Georgia was injured in a low-speed accident when the driver-side Takata airbag of her 2013 Chevy Cruze exploded and detached from the steering wheel.  According to a lawsuit, metal from the airbag hit Owens in the face and left her blind in one eye.

145.    By 2014, the incident rate picked up even more dramatically with over a dozen incidents involving injury or fatalities in Nissan, Honda, Toyota, Chevy, and Mazda vehicles, taking place in a variety of regions in the country, from humid Puerto Rico to far drier Massachusetts and California.  For example:

      a.      On February 19, 2014, a Takata passenger airbag ruptured and sprayed metal fragments at the passenger following a crash in a 2007 Chrysler 300.

      b.      On February 20, 2014, a Takata driver airbag ruptured due to ejected metal fragments following an accident in a 2003 Dodge Ram 1500, causing the airbag to collapse and fail in its purpose of cushioning the driver from impact.  The driver suffered severe physical injury as a result.

      c.      On March 14, 2014, Susan Cosgrove of Fremont, California was

injured in a low-speed accident while driving a 2013 Chevy Cruze. The Takata-related recall notice on her car arrived at her residence after the incident.

d.      On May 29, 2014, Corey Burdick of Eustes, Florida, was driving a 2001 Honda Civic when the airbag deployed and sent shards of metal into his eye.

e.      In June 2014, a low-speed accident involving a 2005 Honda Accord in Los Angeles, California, caused the car's driver airbag to "detonate," sending hot metal and plastic shrapnel into the cabin.

146.    With accidents proliferating, Takata met with NHTSA officials on May 20, 2014 to provide information about inflator ruptures not covered by previous recalls.  At that meeting, Takata noted that "all six of the potentially-relevant rupture incidents had occurred in either Florida or Puerto Rico."  The referenced incidents include both passenger and driver side airbags.  This statement omitted one of the earliest incidents, Ms. Weaver's 2003 accident in Arizona, as well as later incidents in drier locales, as noted above.

147.    On June 11, 2014, NHTSA's ODI published an ODI Resume for a preliminary evaluation of Investigation No. PE 14-016.  That document stated that NHTSA was opening an investigation "in order to collect all known facts from [Takata] and the vehicle manufacturers that it believes may have manufactured vehicles equipped with inflators produced during the same period as those that have demonstrated rupture events in the field."

148.    Also on June 11, 2014, Takata informed NHTSA that it "believes that an [sic] number of the inflators identified above were provided to the following vehicle manufacturers for use in vehicles sold in the United States (the manufacturers are listed in alphabetical order): BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota."  Takata's June 11, 2014 letter further stated:

If we determine that any of those inflators were sold to other vehicle manufacturers, we will let you know promptly. Takata is not certain which models or model years of vehicles are equipped with the subject inflators, and it does not know how many of those vehicles were sold in or are registered in the States to be covered by the requested field actions. That information will need to be obtained from the affected vehicle manufacturers.

149.    On June 20, 2014, Honda issued additional recalls for a total of nearly 4.5 million Honda and Acura vehicles that contained defective Takata airbags.

150.    By the end June 2014, the number of vehicles that had been recalled due to defective Takata airbags had increased to over 6 million.  The Vehicle Manufacturer Defendants, including the Honda Defendants, however, had still not recalled all of the vehicles containing Defective Airbags.

151.    On July 8, 2014, Honda expanded a "two million vehicle air bag recall by as many as one million more vehicles in California."  The *New York Times* reported that "[a] defective inflator could explode in a crash, sending shards of its metal casing into the passenger compartment. The inflator was made by Takata Corporation, which has said the propellant inside the inflator was not properly prepared and was too powerful."

152.    On August 18, 2014, *The New York Times* reported that NHTSA had "deepened" its investigation of Honda's airbags:  "Federal regulators have intensified an investigation into the inadvertent deployment of side air bags on 2008 Honda Accords," as they were "concerned that the side air bags along the outer edges of the ceiling and the seats may deploy when a door is slammed."

153.    In August 2014, Honda issued yet another recall of Honda and Acura vehicles, "its ninth for the defect – bringing to six million the total of recalled Honda and Acura vehicles"

154.    The tragic pattern of mounting casualties in the face of Defendants' sluggish response continued:

a.      On July 7, 2014, Claribel Nunez of Hialeah, Florida, suffered severe wounds to her forehead from shrapnel that exploded out of a Takata airbag in her 2001 Honda Civic.

b.      On August 17, 2014, a Takata airbag ruptured after an accident in a 2007 Ford Mustang, deploying with abrupt force and ejecting a metal fragment into the driver's leg.  Ford was notified of the incident.

c.      On October 2, 2014, Florida resident Hien Tran died, four days after her 2001 Honda Accord struck another car in Orlando and the Takata airbag exploded, sending shrapnel into her neck.  The medical examiner stated that the shrapnel tore through the airbag, hitting Ms. Tran and causing "stab-type wounds" and cutting her trachea.  Indeed, her death was initially investigated as a homicide by detectives.  A week after she died, she received a letter in the mail from Honda urging her to get her car fixed because of faulty airbags that could explode.

## H.      Forced National Recall and Takata's Admission of a Defect (2014-2015)

155.    On October 22, 2014, NHTSA expanded the recall list to cover ten automakers and 7.8 million vehicles, over 5 million of which were Hondas.  In a Consumer Advisory dated October 22, 2014, NHTSA sent an urgent warning to the owners of the now "7.8 million Affected Vehicles":

The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the

52

Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.

156.    On October 29, 2014, NHTSA sent letters to ten automakers regarding the safety risks posed by the Takata airbags.  The letter stated that "[t]he ongoing cooperation of all manufacturers who have recalled vehicles is essential to address this safety risk," and that the "NHTSA team is engaged with you in critical work to better understand the failures and take action to remedy the safety risk…."  NHTSA's letter also asked the automakers to provide NHTSA with information as to their recall process, urged a faster response from them, and stated that "more can and should be done as soon as possible to prevent any further tragedies."

157.    On October 30, 2014, NHTSA ordered the airbag supplier Takata to turn over documents and answer questions under oath related to defective airbag inflators.  The order demanded that Takata turn over records related to the production, testing and subsequent concerns raised internally and by automakers over the airbags, as well as communications between the company and automakers about defect concerns.

158.    Also on October 30, 2014, NHTSA's ODI published an ODI Resume for Investigation No. AQ 14-004.  That document stated that NHTSA had opened an investigation "in order to investigate the extent and scope of Honda's reporting failures, as well as the reason(s) for such failures and the steps being taken by Honda to assure full compliance with TREAD reporting requirements."

159.    On November 3, 2014, NHTSA issued another Special Order, this time demanding documents from Honda to determine what and when the company knew about deaths and injuries caused by Takata's airbags.

160.    The U.S. Department of Justice is also investigating whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers, including Toyota and

Honda.  On November 13, 2014, the United States District Court for the Southern District of New York issued a federal grand jury subpoena to Takata and Honda.

161.    By November 18, 2014, it was clear to NHTSA that even the extensive recalls to date were insufficient.  NHTSA therefore demanded a national recall of Chrysler, Ford, Honda, Mazda, and BMW vehicles with certain driver airbags made by Takata.  It simultaneously issued its second Special Order to Takata compelling it to provide, under oath, documents and detailed information on the propellant used in Takata's inflators.  At a hearing of the United States Senate Committee on Commerce on November 20, 2014, Takata Senior Vice President Hiroshi Shimizu refused to support a national recall.

162.    Takata reiterated its refusal at a hearing before the U.S. House of Representatives Energy and Commerce Subcommittee on December 3, 2014, claiming there was "not enough scientific evidence" to support a national recall.  Yet, as NHTSA Administrator David Friedman stated, "when we saw real-world incidents on the driver side, one in California, we pushed Honda to make sure that their recall covered that region. Then very recently, we came aware of a driver side incident in North Carolina. With six total incidents, two of which are outside that region, we can no longer support a regional recall. Our policy is clear: Recalls must be nationwide unless the manufacturers can demonstrate that they are regional. With the new data, it is clear they can no longer demonstrate that the region that was used before was appropriate for driver side airbags."

163.    The geographic scope of the incidents undermined Takata's focus on humidity as the defining contributor to the dangerous ruptures.  As Mr. Friedman explained, "[o]ne of the most frustrating parts about this is that neither the automakers nor Takata have been able to get to the bottom of the root cause on this. We have been pushing them to do so."

164.    As of the December 3, 2014 House hearing, Honda, Ford, Chrysler, and Toyota had all agreed to NHTSA's demand for a nationwide recall, principally for driver side airbags. Days later, Mazda expanded the geographic scope of its recall.  By December 23, BMW had also agreed to a nationwide recall.

165.    Having neglected the defect for over a decade, the 10 vehicle manufacturers met in December 2014 to "sort out a way to understand the technical issues involved."  A few months later, in March 2015, Honda announced an advertising campaign to promote the recall—a step it could and should have taken a decade ago.  A few days later, Honda announced another 105,000 vehicles that needed to be recalled (Recall 15V153), consisting of vehicles that should have been part of the 2014 recalls.

166.    Frustrated by Takata's continual foot-dragging, NHTSA imposed a $14,000 per day fine that started on Friday, February 20, 2015, concluding that Takata had not been forthcoming with the information that it is legally obligated to supply, nor cooperative in aiding NHTSA's ongoing investigation.  Days later, NHTSA demanded that Takata preserve all airbag inflators removed through the recall process.

167.    In response to pressure from NHTSA and private plaintiffs and public scrutiny, Defendants were forced to consult with external explosives and airbag specialists, and performed additional testing on Takata's airbags. This testing confirmed what Defendants already knew: Takata's airbags containing ammonium nitrate were defective and prone to over-aggressive deployment and rupture.

168.    In light of this testing, Takata was unable to deny the existence of the Inflator Defect any longer.  On May 18, 2015, Takata filed four Defect Information Reports ("DIRs") with NHTSA and agreed to a Consent Order regarding its (1) PSDI, PSDI-4, and PSDI-4K driver

air bag inflators; (2) SPI passenger air bag inflators; (3) PSPI-L passenger air bag inflators; and (4) PSPI passenger air bag inflators, respectively.  After concealing the Inflator Defect for more than a decade, Takata finally admitted that "a defect related to motor vehicle safety may arise in some of the subject inflators."  And in testimony presented to Congress following the submission of its DIRs, Takata's representative admitted that the use of ammonium nitrate is a factor that contributes to the tendency of Takata's airbags to rupture, and that as a result, Takata will phase out the use of ammonium nitrate.

169.    Still, even Takata's recent defect admission is inaccurate and misleading, because the Inflator Defect is manifest in each of Takata's inflators containing ammonium nitrate.  And shockingly, Takata still intends to produce new inflators with ammonium nitrate, even after admitting that such inflators are prone to rupture, and thus create an unacceptable public safety hazard.

170.    Further, in its DIRs, Takata acknowledged that the Inflator Defect is present in inflators that were installed in vehicles as replacement parts through prior recalls, necessitating a second recall of those vehicles.

171.    As a result of Takata's admission that its inflators are defective, an additional 17 million vehicles must be recalled in the United States, pushing the total number of recalled vehicles nationwide over 34 million.  While Takata has records tracking which manufacturers it sold Defective Airbags to, it claims not to have records indicating which vehicles those Defective Airbags were installed in.  The Vehicle Manufacturers possess those records, however, and are thus in the process of identifying which vehicles must be recalled based on Takata's DIRs, and its corresponding admission that its inflators are defective.

Still, Takata refuses to immediately conduct nationwide recalls of all airbags containing the Inflator Defect. While Takata has agreed to participate in a nationwide recall of airbags containing the PSDI, PSDI-4, and PSDI-4K driver-side air bag inflators and SPI passenger-side airbag inflators, it is still insisting on regional, phased recalls of vehicles equipped with its PSPI-L passenger air bag inflators, PSPI passenger air bag inflators.

172.   In the meantime, the risk of injury remains very real, and is exacerbated by Defendants' poor execution of the recalls.

a.   On June 25, 2014, Patricia Mincey was rendered quadriplegic due to a Takata airbag rupture while driving her 2001 Honda Civic in Jacksonville, Florida.

b.   On July 22, 2014, Joshua Reliford suffered severe facial and brain injuries due to a Takata airbag rupture while driving his 2001 Honda Civic in McCraken County, Kentucky.

c.   On July 28, 2014, Francisco Demarco died due to a Takata airbag rupture while riding in the passenger seat of a 2007 Honda Accord in Palm Beach County, Florida.

d.   On October 4, 2014, Devon Rideout suffered permanent loss of vision due to an alleged Takata airbag rupture while riding passenger in a 2001 BMW 330i in Chesapeake City, Virginia.

e.   On November 19, 2014, Racquel Hudson suffered extensive first and second degree burns due to a Takata airbag rupture while driving her 2004 Honda Odyssey in San Antonio, Texas.

f.   On December 12, 2014, the driver airbag in a 2002 BMW 325

parked in the owner's driveway deployed with such energy that it melted and burned the dashboard and ceiling panel, created burn marks throughout the cabin, and shattered the front windshield.

       g.    On December 31, 2014, the Takata driver airbag in a 2008 Mazda 6 deployed following an accident, ejecting metal fragments that injured the driver's face.

       h.    On January 18, 2015, Carlos Solis was killed in an accident in Houston, Texas, and a ruptured Takata airbag was the suspected cause.

173.    Over the past 13 years that Takata has known there was a problem with the safety of its airbags, there have been at least six deaths and 139 injuries linked to defective Takata airbags.  As detailed above, the incidents date back to at least 2003, and involve vehicles made by Acura, BMW, Chevrolet, Honda, Mazda, Subaru, and Toyota.  Each of the Defendants knew of the Inflator Defect by virtue of these incidents.

174.    The Defendants were on further notice due to unusual Takata airbag deployments that should have prompted further inquiry into the airbags' fitness for use.  A review of publicly-available NHTSA complaints shows dozens of incidents of Takata airbags inadvertently deploying in vehicles, an event that, on information and belief, could be tied to the unstable propellant.  These complaints started as early as September 2005, and involve vehicles manufactured by Acura, BMW, Dodge, Ford, Mitsubishi, Pontiac, Subaru, and Toyota.  Some of these incidents showed still further signs of the Inflator Defect, including airbags that deployed with such force that they caused the windshield to crack, break, or shatter, and others that caused unusual smoke and fire (or both).  For example:

       a.    Takata airbags inadvertently deployed and caused windshields

to crack, shatter, or break in a 2004 Mitsubishi Lancer on November 23, 2006, a 2003 Toyota Corolla on May 3, 2010, a 2003 Toyota Matrix on August 17, 2010 (in addition to causing unusual smoke), and a 2003 Toyota Matrix on January 29, 2012 (in addition to damaging the dashboard).

b.   Takata airbags inadvertently deployed and caused unusual smoke and heat in a 2003 Acura MDX on January 29, 2012 (which caused the driver skin burns) and a 2003 Toyota Corolla on March 17, 2014.

### ALLEGATIONS RELATING TO UNDERLYING ACCIDENTS

175.   The following are the underlying accidents that transpired involving each of the Personal Injury Track Plaintiffs as of the date of the filing of this Master Consolidated Amended Complaint.

176.   Each of the following incidents occurred during a collision that happened during the ordinary use of the vehicle at issue, and that was the type of collision that is reasonably foreseeable in the design of a vehicle and its airbag system.

177.   In each incident, upon information and belief, the airbag system in the vehicle at issue was in the same essential condition as it was at the time that it left the vehicle manufacturer's control.

### Plaintiff Jerry Adler

178.   On December 3, 2011, Jerry Adler was operating his 2005 Honda Accord (VIN# 1HGCM56745A152465) when he was involved in a foreseeable automobile collision.

179.   During the incident, the vehicle's driver-side airbag inflator exploded and caused the airbag to deploy with excessive force and at an excessive rate of speed, causing Mr. Adler to suffer serious injuries.

180.    After Mr. Adler's incident, his vehicle was recalled by Honda on June 19, 2014 as the result of defects in the vehicle's Takata airbag system.

**Plaintiff Sara Baker**

181.    On January 22, 2015, Sara Baker was operating her 2002 Honda Accord (VIN# 1HGCG16562A027803) when she was involved in a foreseeable automobile collision.

182.    During the incident, the vehicle's driver-side airbag inflator exploded and caused the airbag to deploy with excessive force and at an excessive rate of speed, causing Ms. Baker to suffer serious injuries.

183.    After Ms. Baker's incident, her vehicle was recalled by Honda on June 19, 2014 as the result of defects in the vehicle's Takata airbag system.

**Plaintiff Jack Bowen**

184.    On August 23, 2010, Jack Bowen was operating his Chrysler 2007 Dodge Ram 1500 (VIN# 1D7HA18PX7J60841) and traveling within the speed limit westbound on Spring Hill Drive in Spring Hill, Florida when his vehicle collided with a 2003 Chevy Suburban that unlawfully ran a red light.

185.    During the incident, the vehicle's driver-side airbag inflator exploded and caused the airbag to deploy with excessive force and at an excessive rate of speed, striking Mr. Bowen in the upper body, including his head and neck, and causing serious injuries.

186.    Mr. Bowen's injuries include disc protrusions in his neck and an acute cerebral vascular accident or stroke.

187.    After Mr. Bowen's incident, his vehicle was recalled by Chrysler on December 24, 2014 as the result of defects in the vehicle's Takata airbag system.

**Plaintiff Jasmine Briant**

188.    On December 4, 2013, Jasmine Briant was operating a 2012 Jeep Patriot 4X4 owned by Gregory and Anita Briant, and traveling westbound on Interstate 10 near the Crowder Boulevard exit in New Orleans, Louisiana, when she was involved in a collision. The collision occurred when a "John Doe" defendant, operating his/her white Ford 250 vehicle, suddenly veered into the left lane, cutting in front of and/or hitting Ms. Briant's vehicle causing her to swerve into the shoulder striking the concrete barrier and injuring Ms. Briant.

189.    During the incident, the vehicle's driver-side airbag inflator exploded and caused the airbag to deploy with excessive force and at an excessive rate of speed, striking Ms. Briant, resulting in serious injuries, including blindness in her left eye.

**Plaintiff Joel Brightbill**

190.    On or about February 16, 2014, Joel Brightbill was operating his 2002 Chevrolet Trailblazer (VIN# 1GNDT13S022112906) driving eastbound on Guerneville Road west of Forestview Drive, at approximately 45mph, in an unincorporated are in the City of Santa Rosa, California.  At approximately 2:40pm, Mr. Brightbill drifted off the roadway and ran off the shoulder of Guerneville Road, drive into a ditch and hit a tree head on.  Mr. Brightbill was wearing his seatbelt at the time of his accident.

191.    During the incident, the Takata airbag installed in the 2002 Chevrolet Trailblazer failed to deploy. The speed and circumstances of the accident were such that the airbag, if not defective, should have deployed.

192.    Mr. Brightbill had to be extricated from the vehicle after having suffered severe injuries.  The failure of the Takata airbag to deploy directly and proximately caused severe injuries to Mr. Brightbill.

193.     After the incident, the marital relationship of Mr. Brightbill and his wife, Patricia Payeur, has been damaged by loss of society, affection, assistance and conjugal fellowship. Patricia Payeur is a "Personal Injury (Loss of Consortium) Plaintiff."

**Plaintiff Michael Byrne**

194.     On June 25, 2013, Michael Byrne was operating his 2004 Honda Civic (VIN# 1HGEM22974L001475) and traveling southwest on Town Cocks Lane in Valley Locust, New York when he attempted to make a left turn on Piping Rock Road and collided, head-on, with a school bus traveling in the opposite direction.

195.     During the incident, the vehicle's driver-side airbag inflator exploded with excessive force and caused the metal canister housing the airbag inflator to rupture and expel sharp pieces of shrapnel towards Mr. Byrne's arms and chest, striking him multiple times and causing serious injury.

196.     Mr. Byrne required hospitalization and surgical intervention to remove metal shrapnel from his forearm. Further, he suffered from multiple lacerations, resulting in unattractive and permanent scarring on Mr. Byrne's arm as well as continued neurological deficits to his arm and hands.

197.     After Mr. Byrne's incident, his vehicle was recalled by Honda on June 20, 2014 as the result of defects in the vehicle's Takata airbag system.

**Plaintiffs Marna S. Chapman and Clyde K. Chapman**

198.     On June 4, 2013, Marna Chapman was a passenger in a 2003 Honda Odyssey (VIN # 5FNRL18963B114419), and while her husband Clyde Chapman was driving through Andrews, North Carolina, they became involved in a foreseeable, low speed crash.

199.    At the time of the Incident, Ms. Chapman was properly wearing her seatbelt, and Clyde Chapman was unimpaired and was driving the vehicle at a speed of approximately 10 mph.  He was traveling west on US 19 and attempting to make a U-turn in order to travel east when the vehicle following behind him, traveling approximately 50 mph, collided with the 2003 Honda Odyssey.

200.    As a result of the impact, the vehicle's passenger airbag deployed, violently and with overly excessive force, and struck Marna Chapman, causing her serious injuries, including but not limited to thirteen rib fractures, diaphragmatic hernia, femur fracture, and knee joint effusion.

201.    Since the time of the incident, the subject vehicle has been recalled as a result of defects in the vehicle's passenger's frontal airbag system.

202.    Clyde K. Chapman is both a Personal Injury Track Plaintiff and a "Personal Injury Track (Loss of Consortium) Plaintiffs."

**Plaintiff Law Ngee Chiong, as the Personal Representative of the Estate of Law Suk Leh and the Estate of Elsa Mia Law Caido**

203.    On July 27, 2014, then 42-year-old, Law Suk Leh, who was carrying a full-term baby at the time, was driving her 2003 Honda City Car (VIN# MRHGD86903P020495A) on Borneo Island in Malaysia and making a lawful turn at an intersection on the outskirts of Sibu, when she collided with another vehicle and became involved in a foreseeable, low speed crash

204.    At the time the incident, Law Suk Leh was unimpaired, was properly wearing her seatbelt, and was driving the vehicle at a speed of approximately 20 mph or less.

205.    As a result of the incident, the vehicle's frontal driver-side airbag inflator exploded internally with excessive force which caused the metal inflator canister to rupture expelling sharp metal and plastic shrapnel towards Law Suk Leh.

206.    Ms. Leh was struck in the neck by a single fragment of metal, nearly 2.5 centimeters (1 inch) in diameter, and although the authorities responded to the scene immediately, she was pronounced dead, only an hour and a half later, while the ambulance was transporting her to the hospital.  Although once they reached the hospital, the paramedics were able to deliver her baby daughter alive, the child died two days later from injuries incurred as a result of the crash.

207.    At the time of the Incident, the 2003 Honda City Car she was driving was equipped with a United States designed, tested and manufactured Takata airbag inflator bearing serial number JAFN059438A.

208.    Plaintiff Law Ngee Chiong is the father of Law Suk Leh. Plaintiff's decedents were citizens and residents of Brunei.  Pursuant to Malaysian law, Plaintiff Law Ngee Chiong has been appointed the rightful Personal Representative and heir and is bringing this action as the  duly appointed Personal Representative for the Estate of Law Suk Leh and the Estate of Elsa Mia Law Caido, Law Suk Leh's deceased child.

**Plaintiffs America Diaz Vega, Milton Diaz Soto,**
**Isabel N. Diaz Diaz and Juan E. Diaz Diaz**

209.    On May 29, 2014, Milton Diaz Soto was operating his 2002 Honda Accord (VIN# 1HGCG16592A001616) and traveling westbound on State Road # 3 in Puerto Rico when he was involved in a single car collision.  Mr. Diaz attempted to avoid a manhole cover that was protruding from the road. Unable to avoid the manhole cover, Mr. Diaz ran over it, losing control of the vehicle and ultimately colliding with a dirt mound.

210.    At the time of the Incident, Mr. Diaz was accompanied by his two minor children, Isabel N. Diaz Diaz and Juan E. Diaz Diaz, ages 9 and 11, respectively.

211.     During the incident, the vehicle's driver-side airbag inflator exploded with excessive force and caused the metal canister housing the airbag inflator to rupture and expel sharp pieces of shrapnel towards Mr. Diaz's face, causing serious injuries.

212.     Mr. Diaz's injuries required emergency (and ongoing) medical treatment and surgery, including but not limited to facial trauma with open multiple complex maxillofacial and mandibular fractures, traumatic ischemic flap of the mandible, loss of all his teeth, lung contusion and major depression.

213.     Responding emergency medical services personnel attempted to assist Mr. Diaz at the scene of the incident, but due to the severity of his injuries, he was airlifted to Puerto Rico Medical Center, Trauma Hospital. Mr. Diaz remained at the Puerto Rico Medical Center for 18 days due to the injuries he sustained.

214.     During his stay at the hospital, Mr. Diaz underwent Hyperbaric Oxygen therapy in an effort to reduce edema, control infection, prevent future tissue loss, promote granulation and avoid flap loss. Mr. Diaz's injuries required surgical management, including but not limited to open reduction of the fractures and external fixation placement, a tracheotomy, and reconstructive advanced mental flap.  His injuries also require ongoing medical monitoring and reconstructive surgery.

215.     After the incident, Mr. Diaz was diagnosed with severe depression, anxiety and memory and concentration problems. Mr. Diaz's psychiatrist stated that he is not, and will not, be able to perform any job for an indefinite period of time.

216.     After the incident, Mr. Diaz's minor children who were in the vehicle at the time of the incident, had to visit a psychologist because they have since refused to ride in a vehicle at

night. Isabel N. Diaz Diaz and Juan E. Diaz Diaz are both Personal Injury Track Plaintiffs and "Personal Injury Track (Loss of Consortium) Plaintiffs."

217. After the incident, the marital relationship of Mr. Diaz and his wife, America Diaz Vega, has been damaged by loss of society, affection, assistance and conjugal fellowship. America Diaz Vega is a "Personal Injury (Loss of Consortium) Plaintiff."

218. Three weeks <u>after</u> Mr. Diaz's injuries, the subject vehicle was recalled by Honda on June 20, 2014 as the result of defects in the vehicle's Takata airbag system.

### Plaintiff Nicole Fisch

219. On March 23, 2014, Nicole Fisch was operating her 2003 Honda Accord (VIN# JHMCM56723C086979) and traveling on a road in Redding, California, when suddenly and without warning, Ms. Fisch's vehicle struck another vehicle in the rear with the front of her vehicle while operating at a speed within the posted speed limits, causing her airbag to deploy. At the time of the incident, Ms. Fisch was the sole occupant of the vehicle.

220. During the incident, the vehicle's driver-side airbag inflator exploded internally with excessive force and caused the metal canister housing the airbag inflator to rupture and expel sharp pieces of shrapnel towards Ms. Fisch's face, chest, upper body area, and legs, striking her multiple times and causing serious injury.

221. Ms. Fisch's injuries resulted in unattractive and permanent scarring on Mr. Fisch's chest and face.

222. <u>After</u> Ms. Fisch's injuries, the subject vehicle was recalled by Honda on June 20, 2104 as the result of defects in the vehicle's Takata airbag system.

### Plaintiff Racquel Hudson

223. On November 9, 2014, Racquel Hudson was operating her 2004 Honda Odyssey when she was involved in a serious automobile accident.

224.    During the accident, the vehicle's driver-side airbag inflator exploded internally and with excessive force, causing the airbag to strike Ms. Hudson and causing serious injuries.

225.    Ms. Hudson sustained severe injuries, including (a) 1st and 2nd degree burns to the right hand, (b) 1st degree burns to the left arm, (c) chest bruises, and (d) a tongue injury.

**Plaintiff Gina Johnson**

226.    223.    On or about January 1, 2009, Gina Johnson was a front seat passenger in a 2005 BMW 325i (VIN#WBABD334X5PL06874) when the vehicle was involved in a frontal collision with another automobile.

227.    At the time of the incident, Ms. Johnson was properly wearing her seatbelt.

228.    During the incident, the vehicle's passenger-side airbag inflator exploded internally and with excessive force, striking Ms. Johnson in the face, causing serious injuries, including but not limited to a subdural hematoma, eye avulsion, subarachnoid hemorrhage, and fracture of the right orbital floor of her right eye.

229.    Ms. Johnson sustained severe injuries, including the potential permanent loss of vision in her right eye.

**Plaintiff Andrew J. Kampuries (*pro se*)**

230.    Upon information an belief, on or about December 5, 2007, Andrew J. Kampuries was in an accident involving his 2006 Honda Civic LX (VIN#1HGFA16586L006430).

231.    Mr. Kampuries alleges, in a *pro se* Complaint: "This was negligent and reckless not alerting the public and myself.  Riding in a death trap car not knowing if the airbag will deploy or not [sic]."

**Plaintiff Lesley Klein**

232.    Upon information and belief, on or about June 26, 2013, Lesley Klein was in an accident involving her 2004 Honda Element (VIN#5J6YH18584L013448).

67

233.    During the incident, the vehicle's driver-side airbag inflator exploded internally and with excessive force, causing the airbag to strike Ms. Klein and causing serious injuries.

**Plaintiff Estate of Mary Lyon Wolf**

234.    On February15, 2008, Mary Lyon Wolfe was operating her 2002 Honda Accord (VIN# 1HGCG66882A115601) and traveling eastbound on Griffith Drive in Orangeburg, South Carolina, when the vehicle was involved in a single car collision.

235.    During the collision, while rounding a curve, the vehicle veered off the right side of the roadway and made contact with a culvert, a mailbox, and a tree before coming to rest in the yard of a home located at 2091 Griffith Drive, Orangeburg, South Carolina. At the time of the incident, Mrs. Wolfe was the sole occupant of the vehicle.

236.    During the incident, the vehicle's driver-side airbag inflator exploded internally and with excessive force, causing the airbag to strike Mrs. Wolfe and causing serious injuries, including but not limited to a spinal fracture.

237.    Despite sustaining these serious injuries, Mrs. Wolfe initially survived the incident and experienced tremendous physical pain and suffering. Officials from the Orangeburg Department of Public Safety, the Orangeburg Emergency Medical Services and the South Carolina Highway Department quickly responded to the scene of the incident. Responding Orangeburg Emergency Medical Services officials attempted to assist Mrs. Wolf but due to the severity of her injuries she was transported by helicopter to Palmetto Richland Memorial Hospital in Columbia, South Carolina.

238.    Mrs. Wolfe remained at Palmetto Richland Memorial Hospital until she passed away on March 3, 2008, eighteen days later, due to the injuries she sustained from the delayed

68

deployment and/or excessive and unnecessary forces from the Takata airbag system in her vehicle on February 15, 2008.

239.    The Coroner's Report lists her causes of death as respiratory failure, liver contusion, anoxic brain injury and c-spine fracture – all injuries arising from the February 15, 2008 incident and resulting from the vehicle's delayed deployment and/or excessive and unnecessary forces from the Takata airbag system.

240.    Robert Wolf, Jr. is the surviving brother of Mary Lyon Wolf.  He is the duly appointed Personal Representative of the Estate of Mary Lyon Wolf and brings this action both individually and in his representative capacity.

241.    After Mrs. Wolfe's death, the subject vehicle was recalled by Honda on June 20, 2104 as the result of defects in the vehicle's Takata airbag system.

**Plaintiff Dianne L. Moulton**

242.    On November 14, 2014, Dianne L. Moulton was operating her 4-Door 2002 Honda CR-V (VIN# JHLRD78882C035551) and driving through the Heights Center Parking Lot in Dearborn Heights, Michigan, when the vehicle was involved in a low speed crash when she collided with a light pole that she did not see and of which she was previously unaware.

243.    At the time of the incident, Ms. Moulton was the sole occupant of the vehicle. She was unimpaired, properly wearing her seatbelt, and she was driving the vehicle at a speed of 10 mph or less.

244.    As a result of the impact, both of the vehicle's frontal airbags deployed, violently and with overly excessive force, and struck Ms. Moulton in the face, hands and arms, causing her serious injuries, including but not limited to multiple facial fractures, including an orbital socket fracture and broken bones in both of her arms and wrists.

245.   After Ms. Moulton's injuries, the subject vehicle was recalled as the result of defects in the driver's frontal airbag system, which existed at the time of the Incident and Defendants knew well before November 14, 2014 of the airbag's defects.

**Plaintiff Amy C. Patterson**

246.   On October 9, 2014, Amy C. Patterson was properly operating her 2001 Honda Accord (VIN # 1HGCG16561A051159) within the posted speed limit and traveling northwest on State Route 92 in Cherokee County, Georgia, when she inadvertently pulled in front of another vehicle and became involved in a foreseeable, low speed crash.

247.   During the incident, the vehicle's frontal driver-side airbag inflator exploded internally with excessive force which caused the metal inflator canister to rupture resulting in the entire air bag module and inflator to explode violently resulting in flying shrapnel and ineffective airbag deployment causing post-crash enhanced injures. The rupture of the inflator metal canister also caused sharp and hot pieces of metal shrapnel to be expelled onto Ms. Patterson resulting in severe cuts, lacerations, and abrasions to her body in various locations.

248.   Ms. Patterson required hospitalization for treatment of her broken clavicle, other cuts and lacerations, as well as medical treatment for removal of metal shrapnel from her legs and lower torso, and continues to undergo follow-up medical care and therapy for her injuries.

249.   Prior to the incident, Ms. Patterson's car had been recalled by Honda as a result of defects in the vehicle's driver's frontal airbag system, but as of the date of the incident, on October 9, 2014, Ms. Patterson did not have any direct knowledge of that recall or that her vehicle was among the cars recalled. Six months after the incident, a letter arrived in the mail at her house from Honda urging her to get her car fixed because of faulty airbags that could explode.

**Plaintiff Miranda Perez**

250.    On December 4, 2011, Miranda Perez was a passenger in a 2003 BMW M3 (VIN# WBSBL9344JR19591) in Buffalo, New York, when the vehicle was involved in a collision.

251.    During the incident, the vehicle's passenger side airbag deployed with excessive force causing serious injury to the Ms. Perez, including but not limited to blindness in her left eye.

252.    Approximately three years _after_ Ms. Perez's injuries, the subject vehicle was recalled by BMW on as the result of defects in the vehicle's Takata airbag system.

**Plaintiff Miguel A. Morales Ramos**

253.    On June 14, 2009, Miguel A. Morales Ramos was operating his 2001 Honda Accord (VIN# 2HGES257X1H567459) and traveling eastbound on Road 111 in San Sebastian, Puerto Rico, when the vehicle was involved in a single car collision. The vehicle skidded as Mr. Morales approached a curve in the road and ultimately made contact with a concrete fence.

254.    During the incident, the vehicle's driver-side airbag inflator exploded internally and with excessive force and caused the metal canister housing the airbag inflator to rupture and expel sharp pieces of shrapnel towards Mr. Morales' face, causing serious injury requiring medical treatment and surgery, including but not limited to lacerations to the nose and left eyebrow and a fracture of the nasal bones.

255.    Responding emergency medical services personnel attempted to assist Mr. Morales at the scene of the Incident, but due to the severity of his injuries, he was transported to Hospital San Carlos, Puerto Rico. Mr. Morales' injuries required surgery of the nose and stiches for his multiple lacerations. After the incident, Mr. Morales suffered from depression, anxiety and concentration problems.

256.    Mr. Morales was employed, and is currently employed, as a police officer. As a result of the incident, Mr. Morales was unable to work for over one month. The incident has made it impossible for Mr. Morales to perform his job as a police officer because he now suffers from anxiety and fear of driving.

257.    <u>After</u> Mr. Morales' injuries, the subject vehicle was recalled by Honda on June 19, 2014 as the result of defects in the vehicle's Takata airbag system.

**<u>Plaintiff Denise Raposo</u>**

258.    On May 3, 2013, Denise Raposo was operating her 2003 Acura CL (VIN# 19UYA42683A009859) and traveling westbound on State Road 90 in the left turn lane to SW 92 Avenue, Miami, Florida, when the vehicle was involved in a collision. Ms. Raposo was attempting to make a left turn during a yellow light when a second vehicle collided with the right side of Ms. Raposo's vehicle, causing the vehicle to rotate and collide with a sign on the southeast corner of the intersection.

259.    At the time of the Incident, Ms. Raposo was the sole occupant of the vehicle.

260.    During the incident, the vehicle's driver-side airbag inflator exploded internally and caused the airbag to deploy with excessive force and excessive heat, causing Ms. Raposo to suffer burns and serious injury.

261.    <u>After</u> Ms. Raposo's injuries, the subject vehicle was recalled by Honda on June 19, 2014 as the result of defects in the vehicle's Takata airbag system.

**<u>Plaintiff Devon Rideout</u>**

262.    On October 4, 2014, Devon Rideout was a front seat passenger in a 2001 BMW 330i (VIN# WBAAV53411JS95538) when the vehicle was involved in a collision.

263.    During the incident, the vehicle's front passenger-side airbag inflator exploded internally and caused the airbag to deploy with excessive force causing serious injuries, including but not limited to a vitreous hemorrhage, retinal hemorrhage, corneal abrasion, hyphema, traumatic mydriasis and hyphema of the right eye.

264.    As a result of these injuries, Ms. Rideout has suffered potentially permanent loss of total vision in her right eye.

265.    In September 2014, just shortly prior to Ms. Rideout's injuries, the subject vehicle was recalled as the result of defects in the vehicle front passenger-side Takata airbag system, in which BMW warned that "in the event of a crash necessitating deployment of the front passenger's airbag, excessive internal pressure could cause rupturing of the air bag's inflator, resulting in metal fragments striking and potentially seriously injuring the front passenger or other passengers."

266.    However, the BMW recall notice stated that drivers were not advised to take action because BMW did not yet have the parts available to replace the defective passenger airbags. The notice further stated that BMW would notify vehicle owners when the necessary parts became available.

267.    Neither Ms. Rideout nor the vehicle owner were aware of the BMW recall at the time of the incident.

### Plaintiff Angelina C. Sujata

268.    On March 2, 2008, Angelina C. Sujata was operating her 2001 Honda Civic (VIN# 1HGEM21551L020195) and traveling westbound on Highway 76 in Chapin, South Carolina, when the vehicle was involved in a collision. A 2003 Kia traveling in front of Ms. Sujata in the same direction came to an abrupt stop, suddenly and without warning, causing Ms.

Sujata's vehicle to collide with the rear of the Kia while operating at a speed within posted speed limits. At the time of the Incident, Ms. Sujata was the sole occupant of the vehicle.

269.     During the incident, the vehicle's frontal driver-side airbag inflator exploded internally and with excessive force and caused the metal canister housing the airbag inflator to rupture and expel sharp pieces of shrapnel towards Ms. Sujata's chest and upper body, causing serious injury requiring hospitalization.

270.     Ms. Sujata's injuries have resulted in unattractive and permanent scarring on Ms. Sujata's chest and upper torso.

271.     After Ms. Sujata's injuries, the subject vehicle was recalled by Honda on June 19, 2014 as the result of defects in the vehicle's Takata airbag system.

**Plaintiff Cindy Tiemeyer**

272.     On April 13, 2013, Cindy Tiemeyer was operating her 2002 Honda Accord (VIN# 1HGCM723X7A006069) when she was involved in a low-speed rear end collision.

273.     During the incident, the vehicle's driver-side airbag inflator exploded internally and caused the airbag to deploy with excessive force, causing her serious injury.

274.     After Ms. Tiemeyer's injuries, the subject vehicle was recalled by Honda on June 19, 2014 as the result of defects in the vehicle's Takata airbag system.

**Plaintiff David G. Thomas**

275.     On October 27, 2014, David G. Thomas was operating his 2003 Honda Civic (VIN# 1HGEM21513L074841) and traveling eastbound on Belvedere Road near its intersection with S. Dixie Highway in Palm Beach County, Florida, when the vehicle was involved in a single car collision. While traveling eastbound, the vehicle struck a curb and hit a small pole.

The incident occurred at a low speed, was minor in nature, and resulted in minimal vehicular damage.

276.     During the incident, the vehicle's driver-side airbag inflator exploded internally and with excessive force and caused the metal canister housing the airbag inflator to rupture and expel sharp pieces of shrapnel towards Mr. Thomas' face and right eye, rendering him legally and permanently blind in his right eye as well as permanently disfigured.

**Plaintiff Tina Tran, as the Personal Representative
of the Estate of Hien Thi Tran**

277.     On September 29, 2014, Hien Thi Tran was operating her 2001 Honda Accord (VIN# 1HGCG165X1A005057) and attempting to make a left turn at the intersection of Valencia College Lane and Chicksaw Trail in Orange County, Florida, the vehicle was involved in a moderate collision.

278.     While attempting to make a left turn with a green light, Ms. Tran's vehicle was struck in the front by an oncoming motorist.

279.     The incident which forms the basis of this Complaint was a foreseeable collision event arising out of the ordinary use of the vehicle at the time.

280.     Upon Information and belief, at the time of the incident, the vehicle and its component sub-assemblies at issue in this action were in the same essential condition as they were at the time that they left the Defendant manufacturer's control.

281.     At the time of the incident, Ms. Tran was the sole occupant of the vehicle.

282.     During the incident, the vehicle's frontal driver airbag inflator exploded internally and with excessive force and caused the metal canister housing the airbag to rupture and expel sharp pieces of shrapnel towards Ms. Tran's face, neck, and upper chest, causing fatal injuries resulting in her ultimate death on October 2, 2014, three days after the incident.

283.     Ms. Tran's death was initially investigated by the Orange County Sheriff's Office as a homicide based upon the "stab-like" wounds to Ms. Tran's face, neck, and upper body. Law enforcement worked diligently to ascertain the circumstances surrounding the potential stabbing incident as law enforcement suspected that Ms. Tran may have been involved in a post-stabbing automobile incident while trying to flee an assailant. However, further investigation as well as the autopsy conducted by the Medical Examiner concluded that Ms. Tran's death was the result of fatal injuries sustained when her airbag exploded with unnecessary force, expelling shrapnel that fatally injuring Ms. Tran.

284.     Ms. Tran's death would not have occurred but for the defects present in the vehicle and its component parts on September 29, 2014, as those defects prevented a normal, safe and expected airbag deployment in the Vehicle at the time the collision and instead caused permanent bodily injury.

285.     Tina Tran is the duly appointed Personal Representative of the Estate of Hien Thi Tran, deceased.

**Plaintiff Daree Sutton**

286.     On or about November 20, 2014, Daree Sutton was involved in a foreseeable automobile accident involving her 2004 Honda Accord (VIN#1HGCM56864A096679).

287.     During the incident, the vehicle's driver-side airbag inflator exploded internally and with excessive force, causing the airbag to strike Ms. Sutton and causing serious injuries.

288.     After Ms. Johnson's incident, her vehicle was recalled by Honda on June 19, 2014 as the result of defects in the vehicle's Takata airbag system.

**Plaintiff Cedric Walton**

289.    On March 31, 2015, Cedric Walton was properly operating his 2001 Honda Accord (VIN# 1HGCG16571A004173) at 7:16pm in the evening within the posted speed limit and traveling southbound on Highway 17 in Savannah, Georgia, when suddenly and without warning, a neighboring 2006 Nissan Sentra changed lanes, struck his vehicle and pushed him into another neighboring vehicle (a BMW X15), causing him to become involved in a foreseeable, low-speed crash.

290.    During the incident, the vehicle's frontal driver-side airbag inflator exploded internally and with excessive force and caused the metal canister housing the airbag inflator to rupture and expel large, sharp pieces of metal shrapnel from the airbag canister, one of which directly sliced and entered into Mr. Walton's exposed neck.

291.    At the time of the incident, Mr. Walton's two minor children were also rising in the vehicle and watched as the metal shard of shrapnel became embedded in their father's throat.

292.    Mr. Walton required hospitalization and surgical intervention to remove the large piece of metal shrapnel from his neck and to stitch the large cut closed, which was since resulted in a large, unattractive and permanent scar that remains grossly apparent.

293.    Prior to the accident, Mr. Walton's car had been recalled by Honda as a result of the defects in the Takata airbag, but upon information and belief, Mr. Walton had no direct knowledge of the recall or that his vehicle was among the cars recalled as of the date of his accident.

**Plaintiff Beverly Whiddon**

294.    On April 19, 2014, Beverly Whiddon was operating her 2004 Honda Civic and traveling westbound on State Road 200 in Fernandina Beach, Florida, when suddenly and

without warning, another vehicle in front on Ms. Whiddon came to a stop, causing Ms. Whiddon to hit the rear of the second vehicle in front of her while operating at a speed within the posted speed limit. At the time of the Incident, Ms. Whiddon was the sole occupant of the vehicle.

295.    During the incident, the vehicle's driver-side airbag inflator exploded internally and with excessive force and caused the metal canister housing the airbag inflator to rupture and expel sharp pieces of shrapnel towards Ms. Fisch's face, chest and upper body area, striking her multiple times and causing serious injury.

296.    Ms. Whiddon required hospitalization for broken ribs, back injuries, and scars on her face, chest, arms and legs.

297.    After Ms. Whiddon's injuries, the subject vehicle was recalled by Honda as the result of defects in the vehicle's Takata airbag system.

**Plaintiffs Sabra M. Wilson and William R. Wilson**

298.    On March 21, 2015, Sabra M. Wilson was properly operating her 2006 Nissan Sentra (VIN# 3N1CB51D66L594713) on I-10 westbound in Montz, Louisiana when, during "stop-and-go" slowed traffic due to heavy smoke from a near-by marsh fire, she inadvertently rear-ended a Dodge Caravan vehicle in front of her and became involved in a foreseeable, low speed crash. At the time of the Incident, Sabra was the sole occupant of the vehicle, she was unimpaired, she was properly wearing her seatbelt, and she was driving the vehicle at a reasonable speed not in excess of the posted speed limit designated for the roadway on which she was traveling at the time.

299.    As a result of the impact, the vehicle's frontal, passenger-side airbag deployed, violently and with overly excessive force and deafening sound, expelling multiple shapes and sizes of hot metal shrapnel and other parts of the inflator into the interior of the vehicle, striking Sabra's right side, face, and hands and causing her serious injuries, including but not limited to

78

loss of hearing in her right ear, permanent scarring and severe burns, cuts, abrasions, and lacerations to her hands, face and lower torso.

300. The explosion also resulted in significant and permanent property damage to the vehicle, which her father William R. Wilson had purchased for Sabra and allowed her to drive on March 21, 2015, and rendered the vehicle economically infeasible to repair.

301. After Ms. Wilson's injuries, the subject vehicle was recalled by Nissan as the result of defects in the vehicle's Takata airbag system.

## CONDITIONS PRECEDENT

302. All conditions precedent to the bringing of these actions have been performed or have been excused.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

303. Upon information and belief, Takata has known of the Inflator Defect in its airbags since at least the 1990s. Defendant Honda has known of the Inflator Defects in the Takata airbags in Honda's vehicles since 2004. The Vehicle Manufacturer Defendants have known or should have known of the Inflator Defect in Takata's airbags since 2008. Defendants have concealed from or failed to notify Plaintiffs and the public of the full and complete nature of the Inflator Defect.

304. Although Defendants have now acknowledged to safety regulators that Takata's airbags are defective, for years, defendants did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

305. Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**Estoppel**

306.    Defendants were and are under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of their vehicles. They actively concealed the true character, quality and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics and performance of the vehicles.   Plaintiffs reasonably relied upon Defendants' knowing and affirmative misrepresentations and/or active concealment of these facts.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

**Discovery Rule**

307.    The causes of action alleged herein did not accrue until Plaintiffs discovered that their vehicles had the defective airbags. Plaintiffs, however, had no realistic ability to discern that the vehicles were defective until – at the earliest – after either the defective airbag exploded or their vehicles were recalled. Even then, Plaintiffs had no reason to discover their causes of action because of Defendants' active concealment of the true nature of the defect.

### RE-ALLEGATION AND INCORPORATION BY REFERENCE

308.    The Personal Injury Track Plaintiffs reallege and incorporate by reference all of the preceding paragraphs and allegations of this Master Consolidated Amended Complaint as though fully set forth in each of the following Claims for Relief.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT 1**</u>
**(NEGLIGENCE – TAKATA DEFENDANTS)**

309.   This is a cause of action for negligence, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action.

310.   **Duty:**  The Takata Defendants had a duty to use reasonable care in the design, development, testing, manufacture, assembly, marketing and distribution of the airbag systems utilized in the Personal Injury Track Plaintiffs' vehicles and the Subject Vehicles in order to provide a reasonable degree of occupant protection in foreseeable collisions and in order to avoid exposing the occupants to unnecessary and unreasonable risks.

311.   **Breach:**  The Takata Defendants breached that duty both by acting in a way that a reasonably careful designer and manufacturer of air bags would not act under like circumstances and by failing to take actions that a reasonably careful designer and manufacturer of airbags would take under like circumstances. Specifically, the Takata Defendants breached that duty in one or more of the following ways:

   a.   By designing an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

   b.   By designing an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

   c.   By designing an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

   d.   By designing an airbag inflator with a propellant that, due to its instability, fails to deploy in collisions in which it should deploy;

81

e.  By designing an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.  By otherwise designing a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks.

g.  By failing to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.  By failing to use due care in the manufacturing and assembly of the chemical compounds used as the propellant in the air bag inflator;

i.  By failing to use due care in the manufacturing and assembly of the air bag inflators that house the propellant;

j.  By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

k.  By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

l.  By failing to give appropriate warnings to consumers about the risk that the airbag will deploy with excessive force when it deploys, or will fail to deploy, in a reasonably foreseeable collision or other reasonably foreseeable use;

m.  By failing to give appropriate warnings to consumers about the risk that the airbag will cause or contribute to injuries when it deploys in a reasonably foreseeable collision or other reasonably foreseeable use;

n.  By failing to give appropriate warnings to consumers about other risks of the airbag which Takata knew or should have known are involved in the reasonably foreseeable use of vehicles containing Takata airbags; and/or

o.  By failing to take appropriate steps to cause the recall of the airbag inflator.

312.  **Causation:**  As a direct and proximate result of the negligence of the Takata Defendants, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the Takata Defendants' negligence, these injuries, damages and losses would not have occurred.

313.  **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

314.  **Punitive Damages:** The conduct of the Takata Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, particularly in light of (a) the protracted period of time over which the defects have existed, (b) the long held knowledge of the defects by Takata, (c) the repeated failure to take adequate steps to notify the public or federal regulators of the danger, and (d) the repeated efforts by Takata to minimize the seriousness and scope of the problem. Such conduct justifies punitive damages against the Takata Defendants.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against the Takata Corp. and TK Holdings for all compensatory damages that they are entitled to under applicable state law and for punitive damages if allowable under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

## COUNT 2
### (STRICT LIABILITY – TAKATA DEFENDANTS)

315.    This is a cause of action for strict products liability, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action or the statutory law of such state, including but not limited to South Carolina Code § 15-73-10 and the Louisiana Products Liability Act (Louisiana Stats. § 2800.51, *et seq.*).

316.    **Product:**  The Takata Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold and placed into the stream of commerce the airbag systems, including the air bag inflator, utilized in the Personal Injury Track Plaintiffs' vehicles and the Subject Vehicles. The Takata Defendants knew that the ultimate users and occupants of the vehicles could not properly inspect the airbags for defects or dangers and that the detection of such defects or dangers would be beyond the capabilities of such persons.

317.    **Defects:** The Takata airbags were defective and unreasonably dangerous in their design because they failed to perform as safely as an ordinary consumer would expect when used as intended or used in a reasonably foreseeable manner, and because the risk of danger in their design outweighed any benefits and there were alternative, safer designs that were both technologically and economically feasible. Specifically, the Takata airbags were defective and unreasonably dangerous for one or more of the following reasons:

84

a.  They were designed with an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.  They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.  They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.  They were designed with an airbag inflator with a propellant that, due to its instability, has the propensity to fail to deploy in collisions in which it would be expected to deploy;

e.  They were designed with an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.  They were otherwise designed with a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g.  Takata failed to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.  Takata failed to use due care in the manufacturing and assembly of the chemical compounds used as the propellant in the air bag inflator;

i.  Takata failed to use due care in the manufacturing and assembly of the air bag inflators that house the propellant;

j.  Takata failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

k.  Takata failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

l.   Takata failed to provide adequate warnings to consumers about the propensity of the airbag to cause or contribute to injuries when it deploys in a collision or otherwise; and/or

m.   Takata failed to provide adequate warnings to consumers of the propensity of the airbag to deploy with excessive force.

318.   The defects in the Takata airbags were present when the Takata Defendants placed them into the stream of commerce, and the Takata airbags were expected to and did reach the users and consumers without substantial change affecting their condition.

319.   **Causation:** As a direct and proximate result of the defects in the Takata airbags, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the defects in the Takata airbags, these injuries, damages and losses would not have occurred.

320.   **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

321.   **Punitive Damages:** The conduct of the Takata Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, particularly in light of (a) the protracted period of time over which the defects have existed, (b) the long held knowledge of the defects by Takata, (c) the repeated failure to take adequate steps to notify the public or federal regulators of the danger, and (d) the repeated efforts by Takata to minimize the seriousness and scope of the problem. Such conduct justifies punitive damages against the Takata Defendants.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against the Takata Corp. and TK Holdings for all compensatory damages that they are entitled to under applicable state law and for punitive damages if allowable under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

### COUNT 3
#### (NEGLIGENCE – HONDA DEFENDANTS)

322.   This is a cause of action for negligence, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action. This cause of action is brought only by those Personal Injury Track Plaintiffs identified above whose injuries were sustained as a result of an exploding Takata airbag in a Honda vehicle.

323.   **Duty:** The Honda Defendants had a duty to use reasonable care in the design, development, testing, manufacture, assembly, marketing and distribution of the Personal Injury Track Plaintiffs' vehicles and the Subject Vehicles manufactured by Honda in order to provide a reasonable degree of occupant protection in foreseeable collisions and in order to avoid exposing occupants to unnecessary and unreasonable risks.

324.     **Breach:**  The Honda Defendants breached that duty both by acting in a way that a reasonably careful designer and manufacturer of vehicles would not act under like circumstances and by failing to take actions that a reasonably careful designer and manufacturer of vehicles would take under like circumstances. Specifically, the Honda Defendants breached that duty in one or more of the following ways:

a.     By designing a vehicle utilizing an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.     By designing a vehicle utilizing an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.     By designing a vehicle utilizing an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.     By designing a vehicle utilizing an airbag inflator with a propellant that, due to its instability, fails to deploy in collisions in which it should deploy;

e.     By designing a vehicle utilizing an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.     By otherwise designing a vehicle utilizing a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g.     By failing to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.     By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

      i.     By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

      j.     By failing to give appropriate warnings to consumers about the risk that the airbag will deploy with excessive force when it deploys in a reasonably foreseeable collision or other reasonably foreseeable use;

      k.     By failing to give appropriate warnings to consumers about the risk that the airbag will cause or contribute to injuries when it deploys, or will fail to deploy, in a reasonably foreseeable collision or other reasonably foreseeable use;

      l.     By failing to give appropriate warnings to consumers about other risks of the airbag which Takata knew or should have known are involved in the reasonably foreseeable use of vehicles containing Takata airbags; and/or

      m.     By failing to take appropriate steps to recall of the airbag inflator.

325. **Causation:** As a direct and proximate result of the negligence of the Honda Defendants, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles manufactured by Honda exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the Honda Defendants' negligence, these injuries, damages and losses would not have occurred.

326. **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical

impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

327.   **Punitive Damages:** The conduct of the Honda Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, particularly in light of (a) the protracted period of time over which the defects have existed, (b) the long held knowledge of the defects by Honda, (c) the repeated failure to take adequate steps to notify the public or federal regulators of the danger, and (d) the repeated efforts by Honda to minimize the seriousness and scope of the problem. Such conduct justifies punitive damages against the Honda Defendants.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against Honda Motor, American Honda, Honda Mfg and Honda R&D for all compensatory damages that they are entitled to under applicable state law and for punitive damages if allowable under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

<u>COUNT 4</u>

<u>(STRICT LIABILITY – HONDA DEFENDANTS)</u>

328.   This is a cause of action for strict products liability, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action or the statutory law of such state, including but not limited to South Carolina Code § 15-73-10. This cause of action is brought only by those

Personal Injury Track Plaintiffs identified above whose injuries were sustained as a result of an exploding Takata airbag in a Honda vehicle.

329.   **Product:**  The Honda Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold and placed into the stream of commerce vehicles utilizing the Takata airbag systems. The Honda Defendants knew that the ultimate users and occupants of the vehicles could not properly inspect the airbags for defects or dangers and that the detection of such defects or dangers would be beyond the capabilities of such persons.

330.   **Defects:** The Takata airbags in Honda vehicles were defective and unreasonably dangerous in their design because they failed to perform as safely as an ordinary consumer would expect when used as intended or used in a reasonably foreseeable manner, and because the risk of danger in their design outweighed any benefits and there were alternative, safer designs that were both technologically and economically feasible. Specifically, the Takata airbags utilized by the Honda Defendants were defective and unreasonably dangerous for one or more of the following reasons:

a.      They were designed with an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.      They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.      They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.      They were designed with an airbag inflator with a propellant that, due to its instability, has the propensity to fail to deploy in collisions in which it would be expected to deploy;

e.        They were designed with an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.        They were otherwise designed with a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g.        Honda failed to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.        Honda failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

i.        Honda failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

j.        Honda failed to provide adequate warnings to consumers about the propensity of the airbag to cause or contribute to injuries when it deploys in a collision or otherwise; and/or

k.        Honda failed to provide adequate warnings to consumers of the propensity of the airbag to deploy with excessive force.

331.    These defects in the Takata airbags in the Honda vehicles were present when the Honda Defendants placed their vehicles into the stream of commerce, and both the vehicles and the Takata airbags in them were expected to and did reach the users and consumers without substantial change affecting their condition.

332.    **Causation:**  As a direct and proximate result of the defects in the Takata airbags in Honda vehicles, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles manufactured by Honda exploded and either ruptured and expelled metal debris and shrapnel or

otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the defects in the Takata airbags in Honda vehicles, these injuries, damages and losses would not have occurred.

333.   **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

334.   **Punitive Damages:** The conduct of the Honda Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, particularly in light of (a) the protracted period of time over which the defects have existed, (b) the long held knowledge of the defects by Honda, (c) the repeated failure to take adequate steps to notify the public or federal regulators of the danger, and (d) the repeated efforts by Honda to minimize the seriousness and scope of the problem. Such conduct justifies punitive damages against the Honda Defendants.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against Honda Motor, American Honda, Honda Mfg. and Honda R&D for all compensatory damages that they are entitled to under applicable state law and for punitive damages if allowable under applicable

state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

<u>COUNT 5</u>

(NEGLIGENCE – BMW DEFENDANTS)

335.    This is a cause of action for negligence, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action. This cause of action is brought only by those Personal Injury Track Plaintiffs identified above whose injuries were sustained as a result of an exploding Takata airbag in a BMW vehicle.

336.    **Duty:**  The BMW Defendants had a duty to use reasonable care in the design, development, testing, manufacture, assembly, marketing and distribution of the Personal Injury Track Plaintiffs' vehicles and the Subject Vehicles manufactured by BMW in order to provide a reasonable degree of occupant protection in foreseeable collisions and in order to avoid exposing occupants to unnecessary and unreasonable risks.

337.    **Breach:**  The BMW Defendants breached that duty both by acting in a way that a reasonably careful designer and manufacturer of vehicles would not act under like circumstances and by failing to take actions that a reasonably careful designer and manufacturer of vehicles would take under like circumstances. Specifically, the BMW Defendants breached that duty in one or more of the following ways:

   a.   By designing a vehicle utilizing an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

   b.   By designing a vehicle utilizing an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.  By designing a vehicle utilizing an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.  By designing a vehicle utilizing an airbag inflator with a propellant that, due to its instability, fails to deploy in collisions in which it should deploy;

e.  By designing a vehicle utilizing an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.  By otherwise designing a vehicle utilizing a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g.  By failing to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.  By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

i.  By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

j.  By failing to give appropriate warnings to consumers about the risk that the airbag will deploy with excessive force when it deploys in a reasonably foreseeable collision or other reasonably foreseeable use;

k.  By failing to give appropriate warnings to consumers about the risk that the airbag will cause or contribute to injuries when it deploys, or will fail to deploy, in a reasonably foreseeable collision or other reasonably foreseeable use;

l.  By failing to give appropriate warnings to consumers about other risks of the airbag which Takata knew or should have known are involved in the reasonably foreseeable use of vehicles containing Takata airbags; and/or

m.  By failing to take appropriate steps to recall of the airbag inflator.

95

338.   **Causation:**   As a direct and proximate result of the negligence of the BMW Defendants, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles manufactured by BMW exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the BMW Defendants' negligence, these injuries, damages and losses would not have occurred.

339.   **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

340.   **Punitive Damages:** The conduct of the BMW Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, warranting punitive damages against the BMW Defendants.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against BMW, BMW North America and BMW Manufacturing for all compensatory damages that they are entitled to under applicable state law and for punitive damages if allowable under applicable

state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

## COUNT 6
### (STRICT LIABILITY – BMW DEFENDANTS)

341.    This is a cause of action for strict products liability, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action or the statutory law of such state. This cause of action is brought only by those Personal Injury Track Plaintiffs identified above whose injuries were sustained as a result of an exploding Takata airbag in a BMW vehicle.

342.    **Product:**  The BMW Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold and placed into the stream of commerce vehicles utilizing the Takata airbag systems. The BMW Defendants knew that the ultimate users and occupants of the vehicles could not properly inspect the airbags for defects or dangers and that the detection of such defects or dangers would be beyond the capabilities of such persons.

343.    **Defects:** The Takata airbags in BMW vehicles were defective and unreasonably dangerous in their design because they failed to perform as safely as an ordinary consumer would expect when used as intended or used in a reasonably foreseeable manner, and because the risk of danger in their design outweighed any benefits and there were alternative, safer designs that were both technologically and economically feasible. Specifically, the Takata airbags utilized by the BMW Defendants were defective and unreasonably dangerous for one or more of the following reasons:

> a.  They were designed with an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b. They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c. They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d. They were designed with an airbag inflator with a propellant that, due to its instability, has the propensity to fail to deploy in collisions in which it would be expected to deploy;

e. They were designed with an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f. They were otherwise designed with a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g. BMW failed to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h. BMW failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

i. BMW failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

j. BMW failed to provide adequate warnings to consumers about the propensity of the airbag to cause or contribute to injuries when it deploys in a collision or otherwise; and/or

k. BMW failed to provide adequate warnings to consumers of the propensity of the airbag to deploy with excessive force.

344. These defects in the Takata airbags in the BMW vehicles were present when the

BMW Defendants placed their vehicles into the stream of commerce, and both the vehicles and

98

the Takata airbags in them were expected to and did reach the users and consumers without substantial change affecting their condition.

345.    **Causation:**  As a direct and proximate result of the defects in the Takata airbags in BMW vehicles, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles manufactured by BMW exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the defects in the Takata airbags in BMW vehicles, these injuries, damages and losses would not have occurred.

346.    **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

347.    **Punitive Damages:** The conduct of the BMW Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, warranting punitive damages against the BMW Defendants.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against BMW, BMW North America and BMW Manufacturing for all compensatory damages that they are

99

entitled to under applicable state law and for punitive damages if allowable under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

### COUNT 7
#### (NEGLIGENCE – NISSAN DEFENDANTS)

348.    This is a cause of action for negligence, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action. This cause of action is brought only by those Personal Injury Track Plaintiffs identified above whose injuries were sustained as a result of an exploding Takata airbag in a Nissan vehicle.

349.    **Duty:**  The Nissan Defendants had a duty to use reasonable care in the design, development, testing, manufacture, assembly, marketing and distribution of the Personal Injury Track Plaintiffs' vehicles and the Subject Vehicles manufactured by Nissan in order to provide a reasonable degree of occupant protection in foreseeable collisions and in order to avoid exposing occupants to unnecessary and unreasonable risks.

350.    **Breach:**  The Nissan Defendants breached that duty both by acting in a way that a reasonably careful designer and manufacturer of vehicles would not act under like circumstances and by failing to take actions that a reasonably careful designer and manufacturer of vehicles would take under like circumstances. Specifically, the Nissan Defendants breached that duty in one or more of the following ways:

      a.  By designing a vehicle utilizing an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.  By designing a vehicle utilizing an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.  By designing a vehicle utilizing an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.  By designing a vehicle utilizing an airbag inflator with a propellant that, due to its instability, fails to deploy in collisions in which it should deploy;

e.  By designing a vehicle utilizing an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.  By otherwise designing a vehicle utilizing a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g.  By failing to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.  By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

i.  By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

j.  By failing to give appropriate warnings to consumers about the risk that the airbag will deploy with excessive force when it deploys in a reasonably foreseeable collision or other reasonably foreseeable use;

k.  By failing to give appropriate warnings to consumers about the risk that the airbag will cause or contribute to injuries when it deploys, or will fail to deploy, in a reasonably foreseeable collision or other reasonably foreseeable use;

l.  By failing to give appropriate warnings to consumers about other risks of the airbag which Takata knew or should have known are involved in the reasonably foreseeable use of vehicles containing Takata airbags; and/or

> m.  By failing to take appropriate steps to recall of the airbag inflator.

351.  **Causation:**  As a direct and proximate result of the negligence of the Nissan Defendants, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles manufactured by Nissan exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the Nissan Defendants' negligence, these injuries, damages and losses would not have occurred.

352.  **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

353.  **Punitive Damages:** The conduct of the Nissan Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, warranting punitive damages against the Nissan Defendants.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against Nissan Motor and Nissan North America for all compensatory damages that they are entitled to under applicable state law and for punitive damages if allowable under applicable state law, together

with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

## COUNT 8
### (STRICT LIABILITY – NISSAN DEFENDANTS)

354. This is a cause of action for strict products liability, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action or the statutory law of such state, including but not limited to the Louisiana Products Liability Act (Louisiana Stats. § 2800.51, *et seq.*). This cause of action is brought only by those Personal Injury Track Plaintiffs identified above whose injuries were sustained as a result of an exploding Takata airbag in a Nissan vehicle.

355. **Product:** The Nissan Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold and placed into the stream of commerce vehicles utilizing the Takata airbag systems. The Nissan Defendants knew that the ultimate users and occupants of the vehicles could not properly inspect the airbags for defects or dangers and that the detection of such defects or dangers would be beyond the capabilities of such persons.

356. **Defects:** The Takata airbags in Nissan vehicles were defective and unreasonably dangerous in their design because they failed to perform as safely as an ordinary consumer would expect when used as intended or used in a reasonably foreseeable manner, and because the risk of danger in their design outweighed any benefits and there were alternative, safer designs that were both technologically and economically feasible. Specifically, the Takata airbags utilized by the Nissan Defendants were defective and unreasonably dangerous for one or more of the following reasons:

>    a. They were designed with an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.  They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.  They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.  They were designed with an airbag inflator with a propellant that, due to its instability, has the propensity to fail to deploy in collisions in which it would be expected to deploy;

e.  They were designed with an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.  They were otherwise designed with a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g.  Nissan failed to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.  Nissan failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

i.  Nissan failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

j.  Nissan failed to provide adequate warnings to consumers about the propensity of the airbag to cause or contribute to injuries when it deploys in a collision or otherwise; and/or

k.  Nissan failed to provide adequate warnings to consumers of the propensity of the airbag to deploy with excessive force.

357.     These defects in the Takata airbags in the Nissan vehicles were present when the Nissan Defendants placed their vehicles into the stream of commerce, and both the vehicles and the Takata airbags in them were expected to and did reach the users and consumers without substantial change affecting their condition.

358.     **Causation:**  As a direct and proximate result of the defects in the Takata airbags in BMW vehicles, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles manufactured by BMW exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the defects in the Takata airbags in BMW vehicles, these injuries, damages and losses would not have occurred.

359.     **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

360.     **Punitive Damages:** The conduct of the Nissan Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, warranting punitive damages against the Nissan Defendants.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against Nissan Motor and Nissan North America for all compensatory damages that they are entitled to under applicable state law and for punitive damages if allowable under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

**COUNT 9**
**(WRONGFUL DEATH – TAKATA DEFENDANTS & HONDA DEFENDANTS)**

361.    This is a cause of action for wrongful death brought pursuant to the common law or the statutory law, including South Carolina Code Ann. § 15-51-10, *et seq.*, of the state whose law applies to the underlying Personal Injury Track action.  This cause of action is premised upon the negligence and strict products liability claims set forth against the Takata Defendants and the Honda Defendants in Counts 1, 2, 3 and 4.

362.    At the time of the filing of this Master Consolidated Amended Complaint, the wrongful death plaintiffs are: (a) Plaintiff Robert E. Lyon, Jr., in his capacity as personal representative of the Estate of Mary Lyon Wolfe, the Decedent, (b) Law Ngee Chiong, as the Personal Representative of the Estate of Law Suk Leh and the Estate of Elsa Mia Law Caido, and (c) Tina Tran, as the Personal Representative of the Estate of Hien Thi Tran (the "Wrongful Death Plaintiffs").

363.    The actions of the Takata Defendants and the Honda Defendants, as alleged above, caused the earlier demise and death of the Wrongful Death Plaintiffs' decedents.  The deaths of the Wrongful Death Plaintiffs' decedents were caused by the negligent and grossly negligent acts of the Takata Defendants and the Honda Defendants, as alleged above.

364.    By reason of their untimely death, the statutory or common law beneficiaries of the decedents have been deprived  of all benefits of her society and companionship and have been

106

caused great mental shock and suffering by reason of her death. They have been and will forever be caused grief and sorrow by the loss of their decedent's love, society and companionship. They have been deprived of their decedent's future experience and judgment. They have incurred expenses for her funeral and final expenses and, as a result of the foregoing, they have sustained personal injuries including, but not limited to: (a) pecuniary loss, loss of economic support for family; (b) mental shock and suffering; (c) wounded feelings; (d) grief and sorrow; (e) loss of companionship; (f) deprivation of the use and comfort of the intestate's society; (g) loss of her experience, knowledge and judgment; (h) loss of income of the Decedent; (i) funeral expenses; (j) and on such other and further particulars as the evidence may show.

365.    The Wrongful Death Plaintiffs, as the duly acting, appointed and qualified administrators, heirs, and/or personal representatives of the estates of their decedents, are entitled to recover compensatory damages in an amount to be proven at trial.

366.    The Wrongful Death Plaintiffs also, as a further result of Defendants' reckless, willful, negligent and grossly negligent conduct, are entitled to recover punitive damages in an amount to be determined by the jury.

WHEREFORE, the Wrongful Death Plaintiffs demand judgment against Takata Corp., TK Holdings, Honda Motor, American Honda, Honda Mfg. and Honda R&D for all compensatory damages that they and the Estate are entitled to under applicable state law or common law and for punitive damages, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

## COUNT 10
### (SURVIVAL ACTION – TAKATA DEFENDANTS & HONDA DEFENDANTS)

367.     This is a survival action brought pursuant to the common law or the statutory law, including South Carolina Code Ann. § 15-5-90, of the state whose law applies to the underlying Personal Injury Track action.  This cause of action is premised upon the negligence and strict products liability claims set forth against the Takata Defendants and the Honda Defendants in Counts 1, 2, 3 and 4.

368.     At the time of the filing of this Master Consolidated Amended Complaint, the wrongful death plaintiffs are: (a) Plaintiff Robert E. Lyon, Jr., in his capacity as personal representative of the Estate of Mary Lyon Wolfe, the Decedent, and (b) Law Ngee Chiong, as the Personal Representative of the Estate of Law Suk Leh and the Estate of Elsa Mia Law Caido (the "Wrongful Death Plaintiffs").

369.     As set forth above, the Wrongful Death Plaintiffs' decedents were involved in incidents in which the defective Takata airbags in their vehicles caused them serious personal injuries which, though they initially survived for some period of time, subsequently caused their death.

370.     The Wrongful Death Plaintiffs bring this action to recover for the compensatory damages sustained by their decedents prior to their death, including but not limited to  pain, suffering, mental anguish, and anticipation of death, from the time of their injury to the moment of their subsequent death.

371.     The Wrongful Death Plaintiffs also, as a further result of Defendants' reckless, willful, negligent and grossly  negligent conduct, are entitled to recover punitive damages in an amount to be determined by the  jury.

WHEREFORE, the Wrongful Death Plaintiffs demand judgment against Takata Corp., TK Holdings, Honda Motor, American Honda, Honda Mfg. and Honda R&D for all compensatory damages that they and the Estate are entitled to under applicable state law or common law and for punitive damages, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

## COUNT 11
### (LOSS OF CONSORTIUM)

372. This is a cause of action for loss of consortium under the common law or statutory law of the state whose law applies to the underling Personal Injury Track action. This cause of action is asserted by the Personal Injury Track (Loss of Consortium) Plaintiffs against the Defendants applicable to the underlying Personal Injury Track action and incorporates the underlying causes of action for negligence and strict liability applicable to those actions.

373. **Loss of spousal consortium:** As a result of the injuries sustained by the Personal Injury Track Plaintiff, the spouse of the Plaintiff has suffered a loss of spousal consortium and services, including the loss of his or her spouse's services, comfort, society and attentions in the past and in the future.

374. **Loss of parental consortium:** As a result of the injuries sustained by the Personal Injury Track Plaintiff, the minor child or children of the Plaintiff have suffered a loss of parental consortium and services, including the loss of their parent's services, comfort, society and attentions in the past and in the future.

WHEREFORE, the Personal Injury Track (Loss of Consortium) Plaintiffs demand judgment against the applicable Defendants for all compensatory damages that they are entitled to under applicable state common law or statutory law for loss of consortium, all costs of this action, and for such other relief as the Court deems just and proper.

## COUNT 12
### (STRICT LIABILITY – DEALERSHIP DEFENDANTS)

375.    This is a cause of action for strict products liability under the common law of the state whose law applies to the underling Personal Injury Track action or the statutory law of such state. This cause of action is brought only by those Personal Injury Track Plaintiffs identified above who have asserted a claim against a Dealership Defendant.

376.    The Dealership Defendants engage in the business of selling and distributing vehicles to the public, including the vehicles used by the Personal Injury Track Plaintiffs.

377.    **Product:** The Dealership Defendants directly placed the vehicle used by the Personal Injury Track Plaintiff on the market (by selling it) with knowledge that it would be used without inspection for defects and dangers.  The Dealership Defendants knew or should have known that ultimate users, operators and consumers would not and could not properly inspect this product for defects and dangerous conditions, and that detection of such defects and dangers would be beyond the capabilities of such persons.

378.    **Defects:** The subject vehicles were defective and unreasonably dangerous when sold and distributed by the Dealership Defendant because they failed to perform as safely as an ordinary consumer would expect when used as intended or used in a reasonably foreseeable manner, and because the risk of danger in their design outweighed any benefits and there were alternative, safer designs that were both technologically and economically feasible. Specifically, the vehicles were defective and unreasonably dangerous for one or more of the following reasons:

> a.         They were designed with an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.        They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.        They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.        They were designed with an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

e.        They were otherwise designed with a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

f.        The vehicle manufacturer failed to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

g.        The vehicle manufacturer failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

h.        The vehicle manufacturer failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

i.        The vehicle lacked adequate warnings to consumers about the propensity of the airbag to cause or contribute to injuries when it deploys in a collision or otherwise; and/or

j.        The vehicle lacked adequate warnings to consumers of the propensity of the airbag to deploy with excessive force.

379.     These defects were present when the Dealership Defendants placed their vehicles into the stream of commerce, and both the vehicles and the Takata airbags in them were expected to and did reach the users and consumers without substantial change affecting their condition.

380.     **Causation:** As a direct and proximate result of the defects in the subject vehicles, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the defects in the Takata airbags in Honda vehicles, these injuries, damages and losses would not have occurred.

381.     **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against the Dealership Defendants for all compensatory damages that they are entitled to under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

## COUNT 13
### (NEGLIGENCE – DEALERSHIP DEFENDANTS)

382.    This is a cause of action for negligence under the common law of the state whose law applies to the underling Personal Injury Track action or the statutory law of such state. This cause of action is brought only by those Personal Injury Track Plaintiffs identified above who have asserted a claim against a Dealership Defendant.

383.    The Dealership Defendants engage in the business of selling and distributing vehicles to the public, including the vehicles used by the Personal Injury Track Plaintiffs. The Dealership Defendants knew or should have known that the ultimate users, operators and consumers of the subject vehicles would use them in an unreasonably dangerous condition that would create a foreseeable and unreasonable zone of risk of harm to users, including the Personal Injury Track Plaintiffs.

384.    **Duty:**  The Dealership Defendants had a duty to use reasonable care in the marketing, distribution and sale of the Personal Injury Track Plaintiffs' vehicles in a reasonably safe condition so as not to present a danger to users who would come in contact with such vehicles.

385.    **Breach:**  The Dealership Defendants breached that duty both by acting in a way that a reasonably careful marketer, distributor and seller of vehicles would not act under like circumstances and by failing to take actions that a reasonably careful marketer, distributor and seller of vehicles would take under like circumstances. Specifically, the Dealership Defendants breached that duty in one or more of the following ways by marketing, distributing and selling a vehicle that:

        a.    Utilizes an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.      Utilizes an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.      Utilizes an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.      Utilizes an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

e.      Utilizes a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

f.      Was not adequately tested regarding the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

g.      Failed to have effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

h.      Failed to have effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

i.      Failed to give appropriate warnings to consumers about the risk that the airbag will deploy with excessive force when it deploys in a reasonably foreseeable collision or other reasonably foreseeable use;

j.      Failed to give appropriate warnings to consumers about the risk that the airbag will cause or contribute to injuries when it deploys in a reasonably foreseeable collision or other reasonably foreseeable use;

k.      Failed to give appropriate warnings to consumers about other risks of the airbag which Takata knew or should have known are involved in the reasonably foreseeable use of vehicles containing Takata airbags; and/or

386. **Causation:** As a direct and proximate result of the negligence of the Dealership Defendants, the Takata airbags in the Personal Injury Track Plaintiffs' vehicles exploded and either ruptured and expelled metal debris and shrapnel or otherwise deployed in an abnormal, aggressive or violent way. This caused or substantially contributed to causing the Personal Injury Track Plaintiffs to suffer personal injuries, property damage, and/or other losses. But for the Dealership Defendants' negligence, these injuries, damages and losses would not have occurred.

387. **Damages:** The Personal Injury Track Plaintiffs have suffered personal injuries, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to his or her vehicle or other personal property.

WHEREFORE, the Personal Injury Track Plaintiffs demand judgment against the Dealership Defendants for all compensatory damages that they are entitled to under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

The Personal Injury Track Plaintiffs have each demanded a jury trial on all issues so triable as a matter of right.

Respectfully submitted,

PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
Tel: 305-385-2800

COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, PH
Coral Gables, Florida 33134
Tel: 305-476-7400

By: /s/  *Peter Prieto*
      Peter Prieto
      Florida Bar No. 501492
      pprieto@podhurst.com

By: /s/  *Curtis Miner*
      Curtis Miner
      Florida Bar No. 885681
      curt@colson.com

*Chair Lead Counsel*

*Lead Counsel – Personal Injury Track*

BOIES, SCHILLER & FLEXNER LLP
David Boies
333 Main Street
Armonk, New York 10504
Tel: 914-749-8200

POWER ROGERS & SMITH P.C.
Todd Smith
70 W. Madison Street, Suite 5500
Chicago, Illinois
Tel: 312-236-9381

*Co-Lead Counsel –    Economic Damages Track*

116

LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
Elizabeth J. Cabraser
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000

CARELLA, BYRNE, CECCHI,
    OLSTEIN, BRODY & AGNELLO
James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068-1739
Tel: 973-994-1700

BARON AND BUDD, P.C.
Roland Tellis
15910 Ventura Boulevard, Suite 1600
Encino, CA  91436
Tel: 818-839-2320

*Plaintiffs' Steering Committee*

117

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 15, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Curtis B. Miner*_____
Curtis B. Miner
*Lead Counsel – Personal Injury Track*

## MDL NO. 2599 SERVICE LIST

| Lead Counsel | |
|---|---|
| David Bernick<br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, New York 10036<br>212-698-3551<br>Email: david.bernick@dechert.com<br><br>*Lead Counsel for Takata Corporation and TK Holdings, Inc.* | Michael L. Mallow<br>Sidley Austin LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br>213-896-6000<br>Email: mmallow@sidley.com<br><br>*Lead Counsel for American Honda Co., Inc., Honda of America Mfg., Inc.* |
| Rosemary J. Bruno<br>Buchanan Ingersoll & Rooney, PC<br>550 Broad Street, Suite 810<br>Newark, NJ 07102<br>973-273-9800<br>Email: rosmary.bruno@bipc.com<br><br>*Lead Counsel BMW of North America, LLC, BMW Manufacturing Co., LLC* | John W. Rogers<br>Thomson Coburn, LLP<br>One U.S. Bank Plaza<br>St. Louis, MO 63101<br>314-552-6257<br>Email:jrogers@thompsoncoburn.com<br><br>*Lead Counsel for FCA US LLC* |
| Joel A. Dewey<br>DLA Piper LLP (US)<br>The Marbury Building<br>6225 Smith Avenue<br>Baltimore, MD 21209-3600<br>410-580-4289<br>Email: jeffrey.yeatman@dlapiper.com<br><br>*Lead Counsel for Ford Motor Company* | Cari K. Dawson<br>Alston & Bird, LLP<br>1201 W Peachtree Street<br>1 Atlantic Center<br>Atlanta, GA 30309<br>404-881-7766<br>Email: cari.dawson@alston.com<br><br>*Lead Counsel Mazda Motor America* |
| E. Paul Cauley, Jr.<br>Sedgwick, LLP<br>1717 Main Street, Suite 5400<br>Dallas, TX 75201<br>469-227-8200<br>Email: paul.cauley@sedgwicklaw.com<br><br>*Lead Counsel for Nissan North America* | Jeffrey L. Chase<br>Herzfeld & Rubin, P.C.<br>125 Broad Street<br>New York, New York 10004<br>212-471-8460<br>Email: jchase@herzfeld-rubin.com<br><br>*Lead Counsel for Subaru of America, Inc.* |
| Terri S. Reiskin<br>Dykema Gossett PLLC<br>1300 I Street NW, Suite 300 West<br>Washington, DC 20005<br>202-906-8600<br>Email: treiskin@dykema.com<br><br>*Lead Counsel for Toyota Motor Sales, U.S.A., Inc. Toyota Motor Engineering, Manufacturing North America, Inc.* | |

119

| Local Liaison Counsel | |
|---|---|
| Stephen J. Krigbaum<br>Thomas J. Meeks<br>Carlton Fields Jorden Burt, P.A.<br>525 Okeechobee Blvd., Suite 1200<br>West Palm Beach, FL 33402-0150<br>561-659-7070<br>Email: skrigbaum@cfjblaw.com<br>Email: tmeeks@cfjblaw.com<br><br>*Local Liaison Counsel TK Holdings, Inc., Highland Industries, Inc.* | Martin L. Steinberg<br>Bilzin Sumberg Baena Price & Axelrod LLP<br>1450 Brickell Avenue, 23rd Floor<br>Miami, FL 33131<br>Tel: 305-350-7310<br>Email: msteinberg@bilzin.com<br><br>*Local Liaison Counsel for American Honda Motor Co., Inc.; Honda of America Mfg., Inc.* |
| John C. Seipp, Jr.<br>Seipp, Flick & Hosley, LLP<br>2 Alhambra Plaza, Suite 800<br>Miami, FL 33134<br>305 995-5600<br>Email: jseipp@seippflick.com<br><br>*Local Liaison Counsel for Toyota Motor Engineering, Manufacturing North America, Inc.* | Jesse H. Diner<br>Buchanan Ingersoll & Rooney, PC<br>1200 East Las Olas Boulevard, Suite 500<br>Fort Lauderdale, FL 33301<br>954-703-3900<br>Email: jesse.diner@bipc.com<br><br>*Local Liaison Counsel for BMW of North America, LLC; BMW Manufacturing* |
| Scott M. Sarson<br>Rumberger, Kirk & Caldwell, P.A.<br>80 S.W. 8th Street<br>Miami, FL 33101<br>305-358-5577<br>Email: ssarason@rumberger.com<br><br>*Local Liaison Counsel for FCA US LLC* | Edward Colin Thompson<br>DLA Piper LLP<br>100 North Tampa Street, Suite 2200<br>Tampa, FL 33602<br>813-229-2111<br>Email: colin.thompson@dlapiper.com<br><br>*Local Liaison Counsel for Ford Motor Company* |
| Michael R. Tein<br>Lewis Tein<br>3059 Grand Avenue, Suite 340<br>Coconut Grove, FL 33133<br>305-442-1101<br>Email: tein@lewistein.com<br><br>*Local Liaison Counsel for Mazda of America, Inc.* | Kimberly A. Cook<br>Sedgwick LLP<br>One Biscayne Tower<br>Two South Biscayne Boulevard, Suite 1500<br>Miami, FL 33131-1822<br>305-670-4777<br>Email: kimberly.cook@sedgwicklaw.com<br><br>*Local Liaison Counsel for Nissan North America, Inc.* |
| Stanley Howard Wakshlag<br>Kenny Nachwalter, P.A.<br>1100 Miami Center<br>201 S Biscayne Boulevard<br>Miami, FL 33131-4327<br>305-373-1000<br>Email: swakshlag@knpa.com<br><br>*Local Liaison Counsel for Subaru of America, Inc.* | |