**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**MDL No. 2599**
**Master File No. 15- 2599-MD-MORENO**

---

**IN RE: TAKATA AIRBAG PRODUCTS**
**LIABILITY LITIGATION**

**THIS DOCUMENT RELATES TO**
**ECONOMIC DAMAGES TRACK CASES**

---

**TOYOTA MOTOR SALES U.S.A, INC.'S AND TOYOTA MOTOR**
**ENGINEERING & MANUFACTURING NORTH AMERICA, INC.'S**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED**
**CONSOLIDATED CLASS ACTION COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

      A.    Plaintiffs and Their Vehicles ................................................................ 2

      B.    Plaintiffs' Allegations Regarding The Alleged Defect .............................. 4

      C.    Recalls Applicable to Toyota Vehicles ..................................................... 6

      D.    Plaintiffs' Claims ...................................................................................... 6

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

I.     THE APPLICABLE CHOICE OF LAW RULES REQUIRE APPLICATION OF THE LAW OF THE STATE OF PURCHASE TO THE CONSUMER PLAINTIFFS' "NATIONWIDE" CLAIMS ........................................................ 8

      A.    Applicable Choice Of Law Rules ............................................................. 9

      B.    The Law Of The State Of Purchase Applies To All Of The Plaintiffs' Claims. .................................................................................... 11

II.    ALL STATUTORY AND COMMON LAW FRAUD CLAIMS SHOULD BE DISMISSED. ...................................................................................... 13

      A.    All Statutory and Common Law Fraud Claims Fail Because Plaintiffs Have Not Alleged Facts Showing That Toyota Had Knowledge Of The Alleged Defect  At The Time Of Sale (Counts 40, 43, 44, 45, 47, 49, 79, 89, 93, 94). ................................................................................. 13

      B.    Plaintiffs' Misrepresentation Claims Should Be Dismissed Because Plaintiffs Have Not Adequately Alleged That Toyota Made Any Misrepresentations (Counts 43, 44, 45, 47, 49, 79, 89, 93, 94). ............... 17

      C.    The Common Law Fraudulent Concealment Claims Of Certain Plaintiffs Should Be Dismissed Because Toyota Had No Duty To Disclose (Count 40). ................................................................................. 18

i

D. The Fraudulent Concealment And UTPCPL Claims Under Pennsylvania Law Should Be Dismissed Because They Are Barred By The Economic Loss Rule (Counts 40 and 89).................................... 19

E. The Alabama DTPA Claim Should Be Dismissed Because Plaintiffs Failed To Provide Pre-Suit Notice (Count 49). ........................................ 20

III. THE BREACH OF IMPLIED WARRANTY AND MMWA CLAIMS SHOULD BE DISMISSED (Counts 3, 48, 80, 90, 95). ...................................... 21

A. The Implied Warranty Was Limited To The Duration Of The New Vehicle Limited Warranty, Which Has Expired For All Of The Vehicles.................................................................................................... 21

B. The Florida Plaintiffs' Implied Warranty And MMWA Claims Are Barred By The Lack Of Privity (Counts 3 and 48).................................. 23

C. The Implied Warranty Claims Of Certain Plaintiffs Are Barred By The Statute Of Limitations (Counts 3, 80, 90)........................................... 24

D. The Implied Warranty Claims Of Certain Plaintiffs Are Barred By Failure    To Provide Pre-Suit Notice Of Breach (Counts 3, 48, 80, 90). .................................................................................................... 25

IV. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED (COUNT 42). ................................................................................................ 25

A. The Unjust Enrichment Claim Should Be Dismissed Because Plaintiffs Have An Available Legal Remedy............................................. 25

B. Plaintiffs Have Failed To Plausibly Allege That They Conferred Any Benefit On Toyota.................................................................................... 27

V. THE FLORIDA PLAINTIFFS' FDUTPA AND UNJUST ENRICHMENT CLAIMS  ARE BARRED BY THE STATUTE OF LIMITATIONS (COUNTS 42, 47). ................................................................................................ 28

VI. THE SONG-BEVERLY ACT CLAIM SHOULD BE DISMISSED (COUNT 41). ...................................................................................................................... 29

VII. ALL OF THE CLAIMS OF THE ALABAMA, FLORIDA, AND PENNSYLVANIA  PLAINTIFFS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE  MANIFESTATION OF THE ALLEGED DEFECT (COUNTS 3, 40, 42, 46, 47, 48,  49, 89, 90)......................................... 30

VIII. THE NEGLIGENT FAILURE TO RECALL CLAIM SHOULD BE DISMISSED (COUNT 46). .................................................................................. 31

ii

       A.     Negligent Failure To Recall Is Not A Recognized Cause Of Action And Is Barred By The Economic Loss Rule In Any Event. ...................... 31

       B.     Plaintiffs' Claim Is Preempted By Federal Law. ....................................... 32

IX.    PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF IN THE FORM OF A COURT-ORDERED NOTIFICATION AND RECALL SHOULD BE STRICKEN BECAUSE IT IS PREEMPTED BY FEDERAL LAW. ................. 33

CONCLUSION ...................................................................................................................... 35

DB1/ 84099316.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Actiq Sales & Mktg. Practices Litig.*,
  2015 U.S. Dist. LEXIS 36466 (E.D. Pa. Mar. 23, 2015) ......................................................26

*AFSCME v. Ortho-McNeil-Janssen Pharms., Inc.*,
  2010 U.S. Dist. LEXIS 23181 (E.D. Pa. Mar. 11, 2010) ......................................................25

*Ala. Aircraft Indus. v. Boeing Co.*,
  2013 U.S. Dist. LEXIS 38176 (N.D. Ala. Mar. 20, 2013) ....................................................11

*Alban v. BMW of N. Am., LLC*,
  2010 U.S. Dist. LEXIS 94038 (D.N.J. Sept. 8, 2010) ..........................................................22

*Alban v. BMW of N. Am., LLC*,
  2011 U.S. Dist. LEXIS 26754 (D.N.J. March 15, 2011) ......................................................23

*In re All Terrain Vehicle Litig.*,
  771 F. Supp. 1057 (C.D. Cal. 1991) ....................................................................................18

*Aprigliano v. Am. Honda Motor Co.*,
  979 F. Supp. 2d 1331 (S.D. Fla. 2013) ..................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................7, 15, 27

*Bateman v. United States*,
  2009 U.S. Dist. LEXIS 58572 (M.D. Tenn. July 9, 2009) ....................................................29

*Beaver v. Inkmart, LLC*,
  2012 U.S. Dist. LEXIS 129780 (S.D. Fla. Sept. 12, 2012) ....................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................7

*In re Bridgestone/Firestone, Inc.*,
  153 F. Supp. 2d 935 (S.D. Ind. 2001) ..................................................................................34

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ......................................................................................11, 30

*Brisson v. Ford Motor Co.*,
  349 Fed. App'x 433 (11th Cir. 2009) ..............................................................................22, 24

i

*Bussian v. DaimlerChrysler Corp.*,
  411 F. Supp. 2d 614 (M.D.N.C. 2006) ...................................................................34

*Butler v. Ford Motor Co.*,
  724 F. Supp. 2d 575 (D.S.C. 2010)....................................................................9, 11

*Cipollone v. Liggett Group*,
  505 U.S. 504 (1992)........................................................................................32, 33

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
  290 F.3d 1301 (11th Cir. 2002) ...........................................................................8

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ............................................................................24

*Cohen v. Implant Innovations, Inc.*,
  259 F.R.D. 617 (S.D. Fla. 2008)..........................................................................25

*Collins Entm't Corp. v. Drew Distrib., Inc.*,
  1999 U.S. App. LEXIS 3712 (4th Cir. Mar. 9, 1999)............................................14

*Combs v. Int'l Ins. Co.*,
  354 F.3d 568 (6th Cir. 2004) ..............................................................................31

*Cox House Moving, Inc. v. Ford Motor Co.*,
  2006 U.S. Dist. LEXIS 55490 (D.S.C. Aug. 8, 2006) ..........................................34

*D.L. Edmonson Selective Serv. v. LCW Auto. Corp.*,
  689 F. Supp. 2d 1226 (C.D. Cal. 2010) ..............................................................29

*Daigle v. Ford Motor Co.*,
  2012 U.S. Dist. LEXIS 106172 (D. Minn. July 31, 2012)....................................22

*David v. Am. Suzuki Motors Corp.*,
  629 F. Supp. 2d 1309 (S.D. Fla. 2009) .....................................................9, 12, 23

*Davisson v. Ford Motor Co.*,
  2014 U.S. Dist. LEXIS 122673 (S.D. Ohio Sept. 3, 2014)....................................18

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ..........................................................................20

*Dayton v. Peck, Stow & Wilcox Co. (Pexto)*,
  739 F.2d 690 (1st Cir. 1984)...............................................................................31

*Deerman v. Fed. Home Loan Mortg. Corp.*,
  955 F. Supp. 1393 (N.D. Ala. 1997)....................................................................20

ii

*Feheley v. Lai Games Sales, Inc.*,
  2009 U.S. Dist. LEXIS 70430 (S.D. Fla. Aug. 11, 2009)........................................................23

*Fernandes v. Havkin*,
  731 F. Supp. 2d 103 (D. Mass. 2010) ...............................................................................26, 27

*Fid. & Deposit Co. v. IBM*,
  2005 U.S. Dist. LEXIS 25420 (M.D. Pa. Oct. 19, 2005).....................................................19

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
  177 F.R.D. 360 (E.D. La. 1997)...........................................................................................11

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
  1997 U.S. Dist. LEXIS 23996 (D.N.J. Aug. 28, 1997)..........................................................9

*In re Ford Motor Co. Vehicle Paint Litig.*,
  182 F.R.D. 214 (E.D. La. 1998)...........................................................................................10

*In re Ford Tailgate Litig.*,
  2014 U.S. Dist. LEXIS 119769 (N.D. Cal. Aug. 8, 2014).................................................20, 22

*In re Ford Tailgate Litig.*,
  2014 U.S. Dist. LEXIS 32287 (N.D. Cal. 2014) .........................................................26, 27, 28

*Foretti v. Mass. Gen. Life Ins. Co.*,
  53 F.3d 1228 (11th Cir. 1995) .............................................................................................10

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000)...............................................................................................................32

*Gill v. Blue Bird Body Co.*,
  147 Fed. App'x 807 (11th Cir. 2005) ................................................................................9, 23

*In re GMC Anti-Lock Brakes Prods. Liab. Litig.*,
  966 F. Supp. 1525 (E.D. Mo. 1997).....................................................................................18

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
  2012 U.S. Dist. LEXIS 62045 (D.N.J. May 3, 2012) ...........................................................23

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) .........................................................................................10

*Grandalski v. Quest Diagnositcs*,
  767 F.3d 175 (3d Cir. 2014).................................................................................................11

*Grupos Televisa, S.A. v. Telmundo Communs. Grp., Inc.*,
  485 F.3d 1233 (11th Cir. 2007) .............................................................................................8

iii

*Hensley-Maclean v. Rosen*,
    2014 U.S. Dist. LEXIS 48591 (N.D. Cal. Apr. 7, 2014) .........................................................16

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
    955 F. Supp. 2d 1311 (S.D. Fla. 2013) .................................................................................8

*Hornberger v. General Motors Corp.*,
    929 F. Supp. 884 (E.D. Pa.1996) ......................................................................................23

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987).....................................................................................................32, 34

*Irving v. Mazda Motor Corp.*,
    136 F.3d 764 (11th Cir. 1998) .....................................................................................32, 33

*Kagan v. Harley Davidson, Inc*.,
    2008 U.S. Dist. LEXIS 32747 (E.D. Pa. Apr. 22, 2008) ..................................................22

*Karhu v. Vital Pharms., Inc.*,
    2013 U.S. Dist. LEXIS 112613 (S.D. Fla. Aug. 9, 2013)..............................................16, 24

*King v. Marriott Int'l, Inc.*,
    520 F. Supp. 2d 748 (D.S.C. 2007).........................................................................................9

*Lawrence v. Household Bank (SB), N.A.*,
    397 F. Supp. 2d 1332 (M.D. Ala. 2005) ..........................................................................10, 11

*Levin v. Transamerica Occidental Life Ins. Co.*,
    2008 U.S. Dist. LEXIS 66243 (E.D. Pa. Aug. 20, 2008)......................................................14

*Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*,
    211 F.R.D. 228 (S.D.N.Y. 2002) .......................................................................................10

*Licul v. Volkswagen Grp. of Am., Inc.*,
    2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) ............................................. *passim*

*Lilly v. Ford Motor Co.*,
    2002 U.S. Dist. LEXIS 910 (N.D. Ill. Jan. 17, 2002) ...........................................................34

*Lisk v. Lumber One Wood Preserving, LLC*,
    __ F.3d___, No. 14-11714 (11th Cir. July 10, 2015)........................................................20

*Loyd v. Huntington Nat'l Bank*,
    2009 U.S. Dist. LEXIS 51858 (N.D. Ohio 2009) ................................................................18

*Lyon v. Caterpillar, Inc.*,
    194 F.R.D. 206 (E.D. Pa. 2000)........................................................................................10

iv

*Magluta v. Samples,*
    256 F.3d 1282 (11th Cir. 2001) ...............................................................................16

*Marchante v. Sony Corp. of Am.,*
    2011 U.S. Dist. LEXIS 139564 (S.D. Cal. Dec. 5, 2011) .......................................14

*Matthews v. Am. Honda Motor Co.,*
    2012 U.S. Dist. LEXIS 90802 (S.D. Fla. June 6, 2012) .............................14, 26, 28

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ...................................................................10, 11, 13

*McKissic v. Country Coach, Inc.,*
    2008 U.S. Dist. LEXIS 15998 (M.D. Fla. Mar. 3, 2008)........................................24

*Merle Wood & Assoc., Inc. v. Trinity Yachts, LLC,*
    857 F. Supp. 2d 1294 (S.D. Fla. 2012), *aff'd,* 714 F.3d 1234 (11th Cir. 2013).....................28

*Merriman v. Convergent Bus. Sys., Inc.,*
    1993 U.S. Dist. LEXIS 10528 (N.D. Fla. June 23, 1993).......................................12

*Morris v. BMW of N. Am., LLC,*
    2014 U.S. Dist. LEXIS 24211 (D.N.J. Feb. 21, 2014) ..........................................14

*Moseley v. Carnival Corp.,*
    593 Fed. App'x 890 (11th Cir. 2014) .......................................................................7

*Nelson v. Nissan North Am., Inc.,*
    894 F. Supp. 2d 558 (D.N.J. 2012) ........................................................................23

*Nev. Power Co. v. Monsanto Co.,*
    891 F. Supp. 1406 (D. Nev. 1995) .........................................................................14

*Odom v. Morgan Stanley Smith Barney, LLC,*
    987 F. Supp. 2d 377 (S.D.N.Y. 2013).......................................................................9

*In re OnStar Contract Litig.,*
    2010 U.S. Dist. LEXIS 87471 (E.D. Mich. Aug. 25, 2010) ..........................9, 10, 12

*Powers v. Lycoming Engines,*
    272 F.R.D. 414 (E. D. Pa. 2011)...............................................................10, 11, 12, 13

*Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co.,*
    2009 U.S. Dist. LEXIS 92197 (E.D. Pa. Oct. 1, 2009).........................................31

*Salameh v. Tarsadia Hotels,*
    2011 U.S. Dist. LEXIS 30375 (S.D. Cal. Mar. 22, 2011) ......................................14

v

*Sebago, Inc. v. Beazer East, Inc.*,
  18 F. Supp. 2d 70 (D. Mass. 1998) .......................................................................................31

*Shapiro v. Associated Int'l Ins. Co.*
  899 F.2d 1116 (11th Cir. 1990) ...........................................................................................10

*Sharma v. BMW of N. Am., LLC*,
  2014 U.S. Dist. LEXIS 84406 (N.D. Cal. June 19, 2014) ................................................31, 32

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
  964 F. Supp. 2d 355 (M.D. Pa. 2013) ...................................................................................25

*Smith v. Ford Motor Co.*,
  462 Fed. Appx. 660 (9th Cir. 2011)......................................................................................23

*Smith v. Ford Motor Co.*,
  749 F. Supp. 2d 980 (N.D. Cal. 2010) ..................................................................................14

*Snodgrass v. Ford Motor Co.*,
  2001 U.S. Dist. LEXIS 18555 (D.N.J. Sept. 4, 2001) ...........................................................22

*In Re Sony Grand WEGA HDTV Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal, 2010)..................................................................................29

*Spechler v. Tobin*,
  591 F. Supp. 2d 1350 (S.D. Fla. 2008) ...................................................................................3

*Speier-Roche v. Volkswagen Grp. of Am., Inc.*,
  2014 U.S. Dist. LEXIS 59991 (S.D. Fla. Apr. 30, 2014) ................................................ *passim*

*Suddreth v. Mercedes–Benz, LLC*,
  2011 U.S. Dist. LEXIS 126237 (D.N.J. Oct. 31, 2011)..........................................................23

*Taragan v. Nissan N. Am., Inc.*,
  2013 U.S. Dist. LEXIS 87148 (N.D. Cal. June 20, 2013) ......................................................29

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
  Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal 2010) ..................................................................................23

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
  Prods Liab. Litig.*,
  785 F. Supp. 2d 925 (C.D. Cal. 2011) ...................................................................................10

*Vercellono v. Gerber Prods. Co.*,
  2010 U.S. Dist. LEXIS 9477 (D.N.J. Feb. 3, 2010) ..............................................................26

*Vision Bank v. 145, LLC,*
  2011 U.S. Dist. LEXIS 127808 (S.D. Ala. Nov. 4, 2011) .......................................................26

*Voicheck v. Ford Motor Co.,*
  2013 U.S. Dist. LEXIS 62634 (E.D. Pa. May 2, 2013) ...........................................22, 24, 28

*Werwinski v. Ford Motor Co.,*
  286 F.3d 661 (3d Cir. 2002)...................................................................................................19

*White v. Volkswagen Grp. of Am., Inc.,*
  2013 U.S. Dist. LEXIS 25238 (W.D. Ark. Feb. 25, 2013) ....................................................22

*In re Zappos.com, Inc.,*
  2013 U.S. Dist. LEXIS 128155 (D. Nev. Sept. 9, 2013) ........................................................31

*Ziemba v. Cascade Int'l, Inc.,*
  256 F.3d 1194 (11th Cir. 2001) ........................................................................................8, 17

**State Cases**

*Atkinson v. Elk Corp.,*
  142 Cal. App. 4th 212 (2006) ................................................................................................29

*Banks v. Nationwide Mut. Fire Ins. Co.,*
  2000 Ohio App. LEXIS 5504 (Ohio Ct. App. Nov. 28, 2000) ...............................................26

*Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.,*
  938 So. 2d 571 (Fla. Dist. Ct. App. 2006) ............................................................................28

*Barrett v. Miller,*
  321 S.E.2d 198 (S.C. Ct. App. 1984).....................................................................................26

*Brophy v. DaimlerChrysler Corp.,*
  932 So. 2d 272 (Fla. Dist. Ct. App. 2005) ............................................................................24

*Camp St. Mary's Ass'n v. Otterbein Homes,*
  889 N.E.2d 1066 (Ohio Ct. App. 2008)..................................................................................27

*Cerasani v. Am. Honda Motor Co.,*
  916 So. 2d 843 (Fla. Ct. App. 2005)......................................................................................24

*Debbs v. Chrysler Corp.,*
  810 A.2d 137 (Pa. Super. Ct. 2002).......................................................................................14

*Dickinson v. Cosmo Broad. Co.,*
  782 So. 2d 260 (Ala. 2000)....................................................................................................27

DB1/ 84099316.1

*Ellie, Inc. v. Miccichi,*
   594 S.E.2d 485 (S.C. Ct. App. 2004) ...................................................................................18

*Evitts v. DaimlerChrysler Motors Corp.,*
   834 N.E .2d 942, 950 (Ill. App. Ct. 2005) .........................................................................23

*Foremost Ins. Co. v. Parham,*
   693 So.2d 409 (Ala. 1997) ................................................................................................14

*Friedman v. Am. Guardian Warranty Servs.,*
   837 So. 2d 1165 (Fla. Dist. Ct. App. 2003) .......................................................................18

*Hahn v. Ford Motor Co.,*
   434 N.E.2d 943 (Ind. Ct. App. 1982)................................................................................23

*Inglis v. Am. Motors Corp.,*
   209 N.E.2d 583 (Ohio 1965).............................................................................................31

*Kia Motors Am. Corp. v. Butler,*
   985 So. 2d 1133 (Fla. Dist. Ct. App. 2008) .......................................................................30

*Kiriakides v. Atlas Food Sys. & Servs., Inc.,*
   527 S.E.2d 371 (S.C. Ct. App. 2000).................................................................................14

*Kish v. A.W. Chesterton Co.,*
   930 So. 2d 704 (Fla. Dist. Ct. App. 2006) .........................................................................14

*Lacoille v. Dulong,*
   1984 Mass. App. Div. 270 (Mass. App. Div. 1984) ..........................................................14

*Lister v. NationsBank of Del., N.A.,*
   494 S.E.2d 449 (S.C. Ct. App. 1997).................................................................................11

*Lloyd Wood Coal Co. v. Clark Equip. Co.,*
   543 So. 2d 671 (Ala. 1989)................................................................................................31

*Mason v. Chrysler Corp.,*
   653 So. 2d 951 (Ala. 1995)..........................................................................................18, 19

*Moore v. Coachmen Indust., Inc.,*
   499 S.E.2d 772 (N.C. Ct. App. 1998) ...............................................................................23

*Moynet v. Courtois,*
   8 So.3d 377 (Fla. Dist. Ct. App. 2009) ..............................................................................27

*Nei v. Burley,*
   446 N.E.2d 674 (Mass. 1983) ...........................................................................................18

*Ocana v. Ford Motor Co.*,
   992 So. 2d 319 (Fla. Dist. Ct. App. 2008) ..............................................................24

*Pfizer, Inc. v. Farsian*,
   682 So. 2d 405 (Ala. 1996) ...................................................................................30

*Precision Gear Co. v. Cont'l Motors, Inc.*,
   135 So. 3d 953 (Ala. 2013) .....................................................................................9

*QHG of Lake City, Inc. v. McCutcheon*,
   600 S.E.2d 105 (S.C. Ct. App. 2004) ....................................................................27

*Rentas v. DaimlerChrysler*,
   936 So. 2d 747 (Fla. Dist. Ct. App. 2006) ............................................................23

*Sam v. Beaird*,
   685 So. 2d 742 (Ala. Civ. App. 1996) ..................................................................14

*Sapp v. Ford Motor Co.*,
   687 S.E.2d 47 (S.C. 2009) ....................................................................................31

*Swafford v. Schweitzer*,
   906 So. 2d 1194 (Fla. Dist. Ct. App. 2005) ..........................................................28

*Tiara Condo. Ass'n v. Marsh & McLennan Cos.*,
   110 So. 3d 399 (Fla. 2013) ...................................................................................31

*Underwood v. Risman*,
   605 N.E.2d 832 (Mass. 1993) ..............................................................................14

*Unionamerica Mortg. & Equity Trust v. McDonald*,
   626 P.2d 1272 (Nev. 1981) ...................................................................................27

*Wagner v. Ohio State Univ. Med. Ctr.*,
   934 N.E.2d 394 (Ohio Ct. App. 2010) ..................................................................14

**Federal Statutes**

15 U.S.C.A. § 2308(b) ....................................................................................................21

49 U.S.C. § 30120(a)(1)(A) ...........................................................................................33

49 U.S.C. § 30166 ..........................................................................................................32

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* .................................... *passim*

ix

**State Statutes**

13 Pa.C.S. § 2607(c)(1) ..................................................................................25

Ala. Code § 8-19-10 ......................................................................................20

Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ...........................6, 14, 16, 17, 20

False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ................................6, 14

Fla. Stat. Ann. § 672.316 ................................................................................21

Fla. Stat. Ann. § 672.607(3) ............................................................................25

Mass. Gen. Laws Chapter 106 § 2-316 ..............................................................21

Mass. Gen. Laws Chapter 106 § 2-725 ..............................................................24

Nev. Rev. Stat. Ann. § 104.2316 ......................................................................21

Nev. Rev. Stat. Ann. § 104.2607 ......................................................................25

Nev. Rev. Stat. Ann. § 598.09279 ....................................................................14

Nev. Rev. Stat. § 104.2725 ..............................................................................24

13 Pa. Stat. Ann. § 2725 .................................................................................24

S.C. Code Ann. § 56-15-10(m) ........................................................................14

S.C. Code § 36-22-316 ...................................................................................21

S.C. Code § 39-5-140(a) .................................................................................20

Song-Beverly Consumer Warranty Act, Cal. Civil Civ. Code § 1791, *et seq.* ...........................6, 29

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ...........................6, 14

**Rules**

Fed. R. Civ. P. 8 and 9(b) ................................................................................1

Fed. R. Civ. P. 12(f) .......................................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................................1, 7

Fed. R. Civ. P. 9(b) .....................................................................................8, 17

Fed. R. Civ. P. 23(b)(2)...........................................................................................................34

**Regulations**

49 C.F.R. §§ 501.1, 501.2 ......................................................................................................32

49 C.F.R. § 554.1 ....................................................................................................................32

**Other Authorities**

Restatement (Second) of Conflict of Laws ................................................................................10

DB1/ 84099316.1

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Toyota Motor Sales, U.S.A., Inc. ("TMS") and Toyota Motor Engineering & Manufacturing North America, Inc. "(TEMA") (collectively, "Toyota"),[1] by counsel, hereby respectfully move to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint ("Second Amended Complaint" or "SAC") (Dkt. No. 579) for failure to state a claim upon which relief can be granted. In the alternative, if the claims against Toyota are not dismissed in their entirety, the Court should dismiss or strike, pursuant to Fed. R. Civ. P. 12(f), the Plaintiffs' requests for injunctive relief in the form of court-ordered or supervised recalls because such requests for relief are preempted by federal law and on the basis of the primary jurisdiction of the National Highway Traffic Safety Administration ("NHTSA").

## INTRODUCTION

Plaintiffs' Second Amended Complaint, which spans 438 pages, is a quintessential example of "shotgun pleading," relying on factual allegations that relate to only some defendants as the basis for claims against all defendants. This is especially true of Plaintiffs' claims against Toyota. Despite its sheer size, the Second Amended Complaint contains few specific allegations against Toyota, and no plausible allegations whatsoever that Toyota knew the Takata airbags were defective at the time it manufactured and sold the 2002-2005 model year vehicles owned by the named Plaintiffs. As such, all of Plaintiffs' claims against Toyota fail to meet the requirements of Fed. R. Civ. P. 8 and 9(b), as interpreted by the U.S. Supreme Court.

Plaintiffs do not cite a single inflator rupture incident involving a Toyota vehicle during the timeframe when the named Plaintiffs' 2002-2005 Toyota vehicles were manufactured and originally sold, instead relying on incidents—most of which occurred much later—involving other makes of vehicles. At the same time, Plaintiffs allege that these incidents were covered up so that no one, including Toyota, knew the extent of the issue. In so doing, Plaintiffs admit that

---

[1]     TMS and TEMA are collectively referred to as "Toyota" in this Motion and the accompanying Memorandum of Law solely for the sake of brevity and ease of reference. TMS and TEMA are separately incorporated businesses that have their own employees and places of business and engage in different business activities. By using the term "Toyota," TMS and TEMA do not waive corporate formalities in this litigation or any future litigation. Plaintiffs also assert claims against Toyota Motor Corporation ("TMC"), a Japanese company. Plaintiffs have yet to serve TMC in this litigation, and thus this Motion to Dismiss is brought only by TMS and TEMA.

Toyota lacked knowledge of the alleged defect at the time of manufacture and sale of their vehicles. This is fatal to their statutory and common law fraud claims because Toyota could not disclose what it did not know. The fraud claims also fail for a variety of other reasons under the laws of certain states, including the absence of any duty to disclose due to the lack of a fiduciary relationship, the economic loss rule, the statute of limitations, and the failure to provide pre-suit notice. Plaintiffs' breach of implied warranty, unjust enrichment, and negligent failure to recall claims also fail for a variety of reasons, as detailed below. Finally, the Court should dismiss or strike Plaintiffs' request for injunctive relief to the extent it seeks a Court-ordered recall or supervision of the existing recalls. For all of these reasons, all of Plaintiffs' claims against Toyota should be dismissed.[2]

## FACTUAL BACKGROUND

### A.    Plaintiffs and Their Vehicles

All of the named Plaintiffs who assert claims against Toyota own 2002-2005 model year vehicles. (SAC ¶¶ 195, 197.)[3] The SAC designates two groups of plaintiffs, "Consumer Plaintiffs" and "Automotive Recycler Plaintiffs." (SAC ¶¶ 72, 189.) There are nine "Consumer Plaintiffs" from seven states who allege they purchased a Toyota vehicle and one who purchased a Pontiac Vibe in Ohio and who may or may not be asserting claims against Toyota:

(1)    Connie Collins, a Florida resident who purchased a new 2005 Toyota Sequoia in December 2004 in Florida;

(2)    Angela Ruffin, a Florida resident who purchased a new 2005 Toyota Corolla in Florida (date of purchase not alleged);

(3)    Shelley Shader, a Florida resident who purchased a used 2002 Lexus SC430 in November 2010 in Florida;

---

[2]    If this motion is not granted in full, Toyota seeks a different form of relief in its separately-filed Motion to Stay, which is based on the doctrine of primary jurisdiction. If the instant motion is granted, the Motion to Stay will be mooted.

[3]    Paragraph 195 of the SAC includes all airbags subject to recalls as set forth in paragraph 197, as well as all Takata airbags subject to Takata's May 18, 2015 DIRs, and any subsequent expansion of pre-existing recalls, new recalls or amendments to DIRs or new DIRs. For Toyota, this population includes the 2002-2005 model year Toyota and Lexus vehicles set forth in paragraph 197, as well as the 2004 and 2005 Toyota RAV4, 2006-2007 Corolla and Corolla Matrix, 2006 Tundra, 2006-2007 Sequoia, 2005-2007 Lexus SC430.

2

(4)      Marc Raiken, a Pennsylvania resident who purchased a new 2004 Toyota Corolla on July 29, 2003 in Pennsylvania;

(5)      Cynthia Wishkovsky, a Pennsylvania resident who purchased a new 2004 Toyota Corolla on April 1, 2004 in Pennsylvania.

(6)      Roy Martin, an Alabama resident who purchased a used 2004 Toyota Sequoia in 2011 in Alabama;

(7)      Lisa Peterson, a Massachusetts resident who purchased a new 2003 Toyota Sequoia in 2003 in Massachusetts;

(8)      Charles and Dana Talamantes, Nevada residents who purchased a used 2004 Toyota Tundra on July 8, 2009 in Nevada;

(9)      Corene Quirk, a South Carolina resident who purchased a used 2004 Toyota Sequoia on March 14, 2010 in South Carolina; and

(10)    John Huebner, a California resident who purchased a used 2003 Pontiac Vibe in 2012 in Ohio.[4]

(*Id.* ¶¶ 94, 114, 129, 145, 148, 149, 155, 162, 183.)[5]

The "Automotive Recycler Plaintiffs" are three automotive recycling businesses in Florida: Rigsby's Auto Parts & Sales, Inc. ("Rigsby's"), M&K Used Auto Parts, Inc. ("M&K"),

---

[4]    The Pontiac Vibe was manufactured by New United Motor Manufacturing, Inc. ("NUMMI"), a joint venture between Toyota and General Motors ("GM") that no longer exists. (GM Recall Letter, dated Oct. 2014 (attached as Ex. 1).) GM sold the Vibe and provided the new vehicle warranty on it, and GM and its authorized dealers are conducting the Takata airbag recall for the Vibe. *See id.* ("Your GM dealer will replace your vehicle's front passenger air bag inflator module."). The document attached as Exhibit 1 is among the records maintained by NHTSA and is available on the agency's website, and thus the Court may consider it. *See Spechler v. Tobin*, 591 F. Supp. 2d 1350, 1357 (S.D. Fla. 2008) ("It is well-settled that the Court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment."). Because Toyota did not have any involvement in the sale of Pontiac Vibes new, much less any involvement in Huebner's purchase of his vehicle from a used car lot in Ohio nine years after the vehicle was manufactured, Huebner's claims, to the extent asserted against Toyota, should be dismissed for this reason, as well as for the other reasons set forth herein.

[5]    For the Court's convenience, the attached Appendix sets forth the following information for each Plaintiff: the model and model year of the vehicle, whether the vehicle was new or used at the time of purchase, the date of purchase, the state of purchase, the state of residence, the state in which the plaintiff originally filed his or her complaint, the state substantive law applicable to the Plaintiff's claims, and the counts asserted by the Plaintiff in the SAC.

and Quarno's Auto Salvage ("Quarno's"). (*Id.* ¶¶ 191-93.) These companies allegedly assigned their claims to the Automotive Recyclers Association ("ARA"), a trade association representing automotive recycling businesses, and ARA purports to assert claims on their behalf and on behalf of a nationwide class of automotive recycler companies. (*Id.* ¶ 189.) Rigsby's, M&K, and Quarno's do not allege that they purchased any Toyota vehicles. Rather, they vaguely allege that they purchased vehicles with Takata airbags and still possess the airbags, but they do not identify the make and models of any of the vehicles they allegedly purchased, when or where they purchased them, or whether they still own the vehicles. (*Id.* ¶ 191-93.) ARA's claims are addressed in the Automotive Defendants' Motion to Dismiss, which is hereby incorporated by reference.

### B.    Plaintiffs' Allegations Regarding The Alleged Defect

Plaintiffs allege that their vehicles are equipped with airbag inflators manufactured by Takata Corporation ("Takata"), which Plaintiffs allege are defective because they contain ammonium nitrate. (SAC ¶ 4.) Ammonium nitrate is the propellant that inflates the airbags, and based on "daily temperature swings and contact with moisture in the air," the ammonium nitrate allegedly "transforms and destabilizes." (*Id.* ¶ 7.) This allegedly can cause the airbags to "either fail to deploy or violently explode, sometimes expelling metal debris and shrapnel at vehicle occupants." (*Id.* ¶ 8.) Plaintiffs cite a series of "Takata airbag-related" incidents in the SAC, which they variously describe as ruptures, "explosion[s]," and "'unusual' driver airbag deployment." (SAC ¶¶ 226-228, 234, 237). None of these incidents involved Toyota vehicles.

The first such incident allegedly occurred in 2003, "when a Takata inflator ruptured in a BMW vehicle in Switzerland." (*Id.* ¶ 11.) Plaintiffs allege that BMW and Takata investigated the incident, determined it was an anomaly, and did not notify "federal safety regulators." (*Id.*) Plaintiffs do not allege that Toyota was notified of this incident, or how or why Toyota plausibly would have learned of this single incident in Switzerland involving a BMW, but instead vaguely allege that all "Vehicle Manufacturer Defendants . . . received word" of "startling airbag failures" based on this incident. (*Id.*).[6] Plaintiffs also make passing reference to a "Takata airbag-

---

[6]    The "Vehicle Manufacturer Defendants" are identified as Honda, BMW, Ford, Mazda, Mitsubishi, Nissan, Subaru, and Toyota. (SAC ¶ 3.) Plaintiffs further allege that Takata airbags are installed in certain vehicles manufactured by Chrysler and General Motors, but they do not assert any claims against either company in the SAC.

related accident" in 2003 involving a Subaru Impreza, but they do not allege that Toyota was aware of this incident. (*Id.* ¶ 226.)

The next incident allegedly occurred in 2004 in Alabama involving a Honda Accord. (*Id.* ¶ 228.) Plaintiffs do not allege that Toyota was aware of this incident either. Rather, according to Plaintiffs, Honda and Takata "deemed the incident 'an anomaly,' and conducted no further investigation or analysis to the public's knowledge." (*Id.*) Plaintiffs emphasize that "Honda and Takata did not issue a recall or even involve federal safety regulators beyond completing a reporting form in a cursory and incomplete manner." (*Id.*) Plaintiffs further allege that "[e]ven as it downplayed the incident publicly," Takata began "secret testing." (*Id.* ¶ 230.) Plaintiffs specifically allege that "Takata did not disclose these tests to the public or federal regulators." (*Id.* ¶ 233.)

Plaintiffs allege that three additional incidents involving Honda vehicles occurred in 2007, and that following these incidents, "Honda and Takata began another internal investigation." (*Id.* ¶¶ 234-235.) By 2008, Takata and Honda allegedly determined that there was an "airbag inflator problem" in a small number of Honda vehicles. (*Id.* ¶ 238.) In November 2008, Honda issued a recall for less than 4,000 vehicles and allegedly told "regulators that it had identified all 'possible vehicles that could potentially experience the problem.'" (*Id.* ¶ 239-40.)

Plaintiffs allege that in 2009, there were additional incidents involving Honda vehicles. (*Id.* ¶ 241(a)-(d).) Takata identified a problem with a machine at its Moses Lake, Washington plant as the cause. (*Id.* ¶¶ 243-244.) Plaintiffs allege that following these incidents, Honda and Takata issued another recall for a limited number of 2001-2002 model year vehicles. (*Id.* ¶ 245.) In response to inquiries from NHTSA, Takata stated that it "has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by [the Honda recalls] . . . to any customers other than Honda. The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda." (*Id.* ¶ 257.)

Based on a review of NHTSA records, Plaintiffs allege that additional incidents occurred between 2010 and 2014, years after the subject vehicles were manufactured and sold. Of these incidents, Plaintiffs allege that four involved Toyota vehicles that allegedly experienced "inadvertent" airbag deployments. (*Id.* ¶ 308) Plaintiffs characterize these as "unusual" deployments that "should have prompted further inquiry into the airbags' fitness for use," but do

not allege that these incidents provided Toyota with actual knowledge of the alleged rupture defect. (*Id.*)[7]

C.    **Recalls Applicable to Toyota Vehicles**

Plaintiffs allege that "[i]t was not until April 2013 . . . that Takata finally admitted the defective inflators were installed as original equipment in vehicles manufactured by companies other than Honda, including Toyota, Nissan, Mazda, and BMW." (*Id.* ¶ 278.) At that time, Toyota issued Recall 13V-133, and later issued Recalls 14V-312, 14V-350, and 14V-655. (*Id.* ¶ 197.) The recalls listed in ¶ 197 of SAC relate to certain 2002-2005 Toyota and Lexus vehicles that are equipped with Takata front passenger airbags. (*Id.*) More recently, Toyota has recalled driver airbag inflators in 2004-2005 RAV4 vehicles, and added model years through 2007 for certain other vehicles, but the named  Plaintiffs do not own any of these vehicles.

D.    **Plaintiffs' Claims**

Plaintiffs do not specifically identify which claims that they are individually asserting against Toyota, instead alleging that they bring certain claims on behalf of the putative "nationwide" class and other claims on behalf of certain "state sub-classes." With regard to the "nationwide" claims, it appears that all of the "Consumer Plaintiffs" purport to assert claims against Toyota under four California statutes: the Song-Beverly Consumer Warranty Act, Cal. Civil Civ. Code § 1791, *et seq*. (Count 41); the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (Count 43); the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (Count 44); and, the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* (Count 45).

The "Consumer Plaintiffs" also assert claims for fraudulent concealment (Count 40), unjust enrichment (Count 42), and negligent failure to recall (Count 46) under some undefined amalgam of all states' laws, or alternatively under California law, or alternatively under the laws of the states where Plaintiffs reside and/or purchased their vehicles. (SAC ¶¶ 910, 938, 1002.) Finally, although designated a "nationwide" claim, only the named Plaintiffs residing in Florida,

---

[7]    There was a separate recall involving a defect in the airbag control module manufactured by TRW in certain 2002-2004 Corollas and other vehicles that could cause inadvertent deployments of the airbags. *See* Toyota Defect Information Report for Recall 13V-029 (Jan. 30, 2013), *available  at*  http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM469804/RCLRPT-13V029-1568.PDF.

DB1/ 84099316.1

Nevada, Pennsylvania, Massachusetts, and South Carolina assert a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* (Count 3).

In addition to the "nationwide" claims, there are five state sub-classes in which Toyota is named as a defendant: Florida, Alabama, Nevada, Pennsylvania, and South Carolina. Plaintiffs assert claims for violation of the particular state's consumer protection statute and, in some states, breach of the implied warranty of merchantability. Plaintiffs define the members of the state sub-classes as those who purchased or leased a Class Vehicle in that state, so Toyota presumes that the Florida, Alabama, Nevada, Pennsylvania and South Carolina named Plaintiffs are asserting claims under the law of his or her state of purchase. (SAC ¶ 393.) While the SAC includes Massachusetts and Ohio sub-class claims against other defendants, these claims are not asserted against Toyota. (SAC ¶¶ 1399, 1422, 1641.) Thus, Peterson, who purchased her vehicle in Massachusetts, and Huebner, who purchased his vehicle in Ohio, do not assert state sub-class claims against Toyota.

The Automotive Recycler Plaintiffs assert claims for fraudulent misrepresentation and concealment under unspecified state law (Count 104), violation of the deceptive trade practices statutes of 28 states, including Florida (Count 105), and a separate claim under FDUTPA (Count 106).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court accepts factual allegations as true for purposes of a motion to dismiss, the court should not accept as true "unwarranted deductions of fact" or legal conclusions. *Moseley v. Carnival Corp.*, 593 Fed. App'x 890, 892 (11th Cir. 2014). Stripped of "conclusory statements," the complaint's factual allegations must do more than "create[] a suspicion of a legally cognizable right of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotations omitted). In making this "context-specific" determination, the court may "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

DB1/ 84099316.1

Pursuant to Rule 9(b), all claims sounding in fraud—whether pursuant to statute or common law—must be pled with specificity. *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (applying Rule 9(b) to claim under False Claims Act because it was "a fraud statute"); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1323 n. 8 (S.D. Fla. 2013) (recognizing that "most courts have found that Rule 9(b) applies to claims brought under states' consumer fraud statutes and thus applying "the heightened pleading standard of Rule 9(b)" to the plaintiffs' statutory fraud claims). Rule 9(b) applies to both misrepresentation and omission claims and requires the complaint to set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013) (requiring "the plaintiff to 'plead the who, what, when, where, and how'" of the allegedly fraudulent statements or omissions). While knowledge can be alleged generally—subject to the standard established in *Twombly* and *Iqbal*—it is essential that a plaintiff "plead facts sufficient to establish [the defendant's] knowledge and concealment of the defect." *Aprigliano*, 979 F. Supp. 2d at 1343.

## ARGUMENT

I.   **THE APPLICABLE CHOICE OF LAW RULES REQUIRE APPLICATION OF THE LAW OF THE STATE OF PURCHASE TO THE CONSUMER PLAINTIFFS' "NATIONWIDE" CLAIMS.**

The threshold issue is determining which state's law applies to the various "nationwide" claims asserted by the individual named Plaintiffs (*i.e.,* Counts 3, and 40-46). Conflicts must be analyzed with respect to each claim, rather than the case as a whole. *See Grupos Televisa, S.A. v. Telmundo Communs. Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (holding that court must characterize the type of legal claim and then determine the applicable choice of law rule for the particular type of claim). The SAC includes both tort and contract-based claims brought by Plaintiffs who reside and purchased their vehicles in different states, and who originally filed their cases in different jurisdictions, which for some of the Plaintiffs differed from their states of

8

residence. *See, e.g., Beaver v. Inkmart, LLC*, 2012 U.S. Dist. LEXIS 129780, at *10-11 (S.D. Fla. Sept. 12, 2012) (consumer fraud statutes, common law fraud, and negligent failure to recall are tort-based claims); *David v. Am. Suzuki Motors Corp.*, 629 F. Supp. 2d 1309, 1315 (S.D. Fla. 2009) (breach of implied warranty and unjust enrichment are contract-based claims).[8] While the applicable choice of law rules differ depending on the type of claim and where the Plaintiff originally filed suit, *all of the Plaintiffs' nationwide claims should be governed by the law of the state in which each Plaintiff purchased his or her vehicle*, which for all of the Plaintiffs who own Toyota vehicles is also his or her state of residence. And because none of the Plaintiffs purchased his or her vehicle in California, none of the Plaintiffs can assert claims under California law, including the four California statutory claims (Counts 41, 43-45).

> **A.      Applicable Choice Of Law Rules**

A federal court siting in diversity applies the choice of law rules of the forum state. *David*, 629 F. Supp. 2d at 1315. "When a lawsuit is transferred as part of an MDL proceeding, the state in which the transferor court sits is the forum state, and that state's choice-of-law rules apply." *Odom v. Morgan Stanley Smith Barney, LLC*, 987 F. Supp. 2d 377, 389 (S.D.N.Y. 2013); *In re OnStar Contract Litig.*, 2010 U.S. Dist. LEXIS 87471, at *43 (E.D. Mich. Aug. 25, 2010) (same); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 1997 U.S. Dist. LEXIS 23996, at *43 (D.N.J. Aug. 28, 1997) (same). Here, the named Plaintiffs originally filed their claims in Florida (Collins, Ruffin, Shader, Talamantes, and Peterson), Alabama (Martin), South Carolina (Quirk), Pennsylvania (Huebner and Raiken), and Michigan (Wishkovsky). Accordingly, those states' choice of law rules apply.

South Carolina and Alabama apply traditional *lex loci* principles to both tort and contract claims, and Florida applies *lex loci* to contract claims. *Butler v. Ford Motor Co., 724 F. Supp. 2d*

---

[8]      Plaintiffs do not specifically assert a "nationwide" breach of implied warranty claim. However, the MMWA claim is premised on Toyota's alleged breach of implied warranty (SAC ¶¶ 450-51) and it is well settled that state law governs implied warranty claims under the MMWA. *Gill v. Blue Bird Body Co.*, 147 Fed. App'x 807, 810 (11th Cir. 2005) (under the MMWA, "courts must look to the relevant state law to determine the meaning and creation of any implied warranty"); *David*, 629 F. Supp. 2d at 1323-24 (the MMWA "gives consumers a private right of action against warrantors for breach of a warranty, as defined by state law"). Thus, a choice of law analysis is necessary to determine the underlying state law for the MMWA claim asserted by each Plaintiff.

575, 579 (D.S.C. 2010) (South Carolina torts); *King v. Marriott Int'l, Inc.*, 520 F. Supp. 2d 748, 753 (D.S.C. 2007) (South Carolina contracts); *Precision Gear Co. v. Cont'l Motors, Inc.*, 135 So. 3d 953, 956 (Ala. 2013) (Alabama torts); *Lawrence v. Household Bank (SB), N.A.*, 397 F. Supp. 2d 1332, 1335 (M.D. Ala. 2005) (Alabama contracts); *Foretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (Florida contracts). Michigan, Pennsylvania, and Florida (for torts) apply the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws, which requires a qualitative analysis of several factors. *See, e.g., Shapiro v. Associated Int'l Ins. Co.* 899 F.2d 1116, 1120 (11th Cir. 1990) (Florida law); *In re OnStar Contract. Litig.*, 2010 U.S. Dist. LEXIS 87471, at *40 (Michigan law); *Powers v. Lycoming Engines*, 272 F.R.D. 414, 419 (E. D. Pa. 2011) (Pennsylvania law).

Plaintiffs assert that a choice of law analysis can be side-stepped because there are no actual conflicts between the laws of the various states. (SAC ¶ 340.) But numerous courts have held that there are material differences in the state laws of the very claims asserted here.[9] In the alternative, Plaintiffs assert that California law can be applied to all claims because Toyota allegedly is headquartered in California. (SAC ¶¶ 68-69, 340.) However, TEMA is headquartered in Kentucky (SAC ¶ 69), and the fact that TMS alone is headquartered in California is not sufficient to permit the application of California law. This issue was addressed in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods Liab. Litig.*, 785 F. Supp. 2d 925 (C.D. Cal. 2011), where the court rejected nationwide application of California law on the basis that TMS was headquartered in California because, among other

---

[9]   *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) (finding material differences in state consumer protection laws and the law of unjust enrichment); *In re OnStar Contract Litig.*, 2010 U.S. Dist. LEXIS 87471 (finding material differences in state consumer protection laws and implied warranty) *Powers*, 272 F.R.D. at 420 (discussing the "significant differences among the states regarding the application of implied warranty of merchantability law"); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) ("[S]everal courts have determined that the states' unjust-enrichment laws vary in relevant respects."); *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002) ("The elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, reliance, and the duty to disclose."); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 219 (E.D. Pa. 2000) ("State consumer protection acts vary on a range of fundamental issues."); *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998) (holding that fraudulent concealment laws vary on such issues as "the burden of proof, the duty to disclose, materiality, reliance, and the measure of damages").

reasons, it would "alter, and indeed expand the substantive rights of some Plaintiffs and diminish the substantive rights of the Toyota Defendants." *Id.* at 932. Numerous other courts have likewise rejected the "place of the headquarters" argument.[10] Accordingly, a choice of law analysis is necessary.

### B.     The Law Of The State Of Purchase Applies To All Of The Plaintiffs' Claims.

The analysis under the *lex loci* and most significant relationship tests is different, but based on the facts of this case, application of either test leads to the same result: the law of the state in which each Plaintiff purchased his or her vehicle governs those claims. Under the *lex loci* test, the law of the jurisdiction in which the injury occurred applies to tort ("*lex loci delicti*"), and the law of the place in which the contract was formed applies to contract claims ("*lex loci contractus*"). *See, e.g., Butler,* 724 F. Supp. 2d at 579 ("The substantive law governing a tort action is determined by the lex loci delicti, the law of the state in which the injury occurred."); *Lawrence*, 397 F. Supp. 2d at 1335 ("[T]he law of the State wherein the contract was executed governs questions regarding the validity and interpretation of the contract, including the issue of unconscionability.")

Here, Plaintiffs allege that they sustained economic injury because they would not have purchased their vehicles or would have paid less for them if they had known of the alleged defect. (SAC ¶¶ 129, 148, 920.) For tort claims, the state in which a Plaintiff purchased his or her vehicle is the place of injury and that state's law applies. *Ala. Aircraft Indus. v. Boeing Co.*, 2013 U.S. Dist. LEXIS 38176, *21 (N.D. Ala. Mar. 20, 2013) ("Courts in Alabama faced with financial injury claims have consistently held, under the doctrine *of lex loci delicti*, that the law of the state where a plaintiff suffered its alleged financial injury arising from the common law tort claim is the law that governs those claims."); *Lister v. NationsBank of Del., N.A.*, 494 S.E.2d

---

[10]    *See, e.g., Grandalski v. Quest Diagnositcs*, 767 F.3d 175, 182 (3d Cir. 2014) (rejecting application of New Jersey law where that was simply the "fortuitous location of the defendant's headquarters"); *Mazza*, 666 F.3d at 594 (holding that while Honda has its headquarters in California, the states in which the transactions took place had a strong interest in having their laws applied, while California's interest in applying its laws to residents of foreign states was "attenuated"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002) (rejecting application of Michigan law to claims against Ford); *Powers*, 272 F.R.D. at 424 (rejecting application of Pennsylvania law where only connection was that defendant's business was located there and product was manufactured there); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 371 (E.D. La. 1997) (same)

449, 455 (S.C. Ct. App. 1997) (holding that for fraud, the place of wrong is where the plaintiff suffered a loss). Similarly, with regard to Plaintiffs' contract-based claims (implied warranty and unjust enrichment), the law of the state of purchase applies because that is the state in which any warranties or contracts were created. *David*, 629 F. Supp. 2d at 1316-17 (holding that under the rule of *lex loci contractus*, the law of the state where plaintiff purchased his motorcycle applied to implied warranty and unjust enrichment claims).

Under the most significant relationship test for torts, a court should consider the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *See, e.g., In re OnStar*, 2010 U.S. Dist. LEXIS 87471, at *40; *Merriman v. Convergent Bus. Sys., Inc.*, 1993 U.S. Dist. LEXIS 10528, at *25 (N.D. Fla. June 23, 1993). For contracts, the factors to consider are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See, e.g., In re OnStar*, 2010 U.S. Dist. LEXIS 87471, at *56; *Powers*, 272 F.R.D. at 421.

Courts applying these factors in similar cases have concluded that the state where the product was purchased has the most significant relationship to both tort and contract claims. For example, *In re OnStar* involved an MDL in which Plaintiffs from several states asserted statutory fraud and breach of warranty claims against various automotive manufacturers. 2010 U.S. Dist. LEXIS 87471, at *13. Applying the most significant relationship test followed by several of the relevant states, including Michigan, the court held that the plaintiffs' "home states"—*i.e.*, where they purchased their vehicles and resided—governed their statutory fraud claims because it was the place where the economic injury occurred, where the conduct causing injury occurred, and where the relationship between the parties was centered. *Id.* at *42-44. The court further held that the law of the plaintiffs' home states governed the warranty claims because that is where they "negotiated and purchased their respective vehicles . . . where they reside and where they drive their vehicles," as well as where they received the manufacturer warranty. *Id.* at *56-57; *see also Powers*, 272 F.R.D. at 423 (holding that "[w]here each buyer purchased and took delivery of the

12

plane or engine has the most significant relationship . . . because it is the place of contracting").[11] The same is true here, and thus the law of the state where Plaintiffs purchased their vehicles should govern.[12]

In sum, none of the Plaintiffs can assert claims under California law, including the four California statutes (Counts 41, 43-45). The MMWA claim (Count 3), and the three common law claims—fraudulent concealment (Count 40), unjust enrichment (Count 42), and negligent failure to recall (Count 46)—must be decided under the laws of the respective states in which Plaintiffs purchased their vehicles.

## II.   ALL STATUTORY AND COMMON LAW FRAUD CLAIMS SHOULD BE DISMISSED.

All of Plaintiffs' statutory and common law fraudulent concealment claims fail because they have not plausibly alleged that Toyota had knowledge of the alleged defect at the time the vehicles were first sold, and their misrepresentation claims fail because they have not adequately alleged that Toyota made any misrepresentations regarding the airbags. The claims of certain Plaintiffs also fail for several others reasons specific to those Plaintiffs, as set forth below.

### A.   All Statutory and Common Law Fraud Claims Fail Because Plaintiffs Have Not Alleged Facts Showing That Toyota Had Knowledge Of The Alleged Defect At The Time Of Sale (Counts 40, 43, 44, 45, 47, 49, 79, 89, 93, 94).

As a matter of law and logic, a defendant cannot be held liable for failing to disclose what it does not know. For that reason, knowledge of the alleged defect at the time of sale is an

---

[11]   Under Pennsylvania choice of law rules, the court should also consider the competing government interests of the relevant jurisdictions. *Powers*, 272 F.R.D. at 424. For essentially the same reasons as discussed above, the state of purchase has the more significant interest in having its laws applied. *Id.*; *see also Mazza*, 666 F.3d 581 (applying the governmental interest test and holding that while the defendant Honda was headquartered in California, the claims should be governed by the laws "of the jurisdiction in which the transaction took place").

[12]   As to Huebner, the Pontiac Vibe owner, if he has any claims against Toyota, Ohio law applies. Although Huebner alleges that he currently lives in California, he purchased his used 2003 Pontiac Vibe in Ohio (SAC ¶ 114.) Under Pennsylvania choice of law rules (where Huebner originally filed suit), Ohio law applies because that is where he negotiated the purchase of his vehicle, where any warranties or contracts were created, where he relied on any nondisclosures or misrepresentations, and where the alleged economic injury was sustained.

DB1/ 84099316.1

essential element of all of Plaintiffs' statutory and common law fraudulent concealment claims.[13]

Plaintiffs have failed to establish this element against Toyota.

As discussed above, Plaintiffs make no plausible allegations that Toyota knew of any problem with the Takata inflators during the timeframe that the named Plaintiffs' 2002-2005

---

[13]   **Alabama**: Sam *v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996) (holding that ADTPA requires "knowledge of false or deceptive conduct on the part of the wrongdoer"); *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 429 (Ala. 1997) ("intent, knowledge, and scienter constitute essential elements" of common law fraud"); **Florida**: *Matthews v. Am. Honda Motor Co.*, 2012 U.S. Dist. LEXIS 90802, at *7-8 (S.D. Fla. June 6, 2012) (Williams, J.) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect . . . ."); *Kish v. A.W. Chesterton Co.*, 930 So. 2d 704, 707 (Fla. Dist. Ct. App. 2006) (knowledge of undisclosed material fact required for common law fraudulent concealment); **Massachusetts**: *Underwood v. Risman*, 605 N.E.2d 832, 835-36 (Mass. 1993) ("There is no liability for failing to disclose what a person does not know."); *Lacoille v. Dulong*, 1984 Mass. App. Div. 270, 276 (Mass. App. Div. 1984) (plaintiff must show that the defendant "had knowledge of the facts which he allowed to remain undisclosed"); **Nevada**: Nev. Rev. Stat. Ann. § 598.09279 (requiring proof of knowledge for private right of action); *Morris v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 24211, *22-23 (D.N.J. Feb. 21, 2014) (dismissing Nevada DTPA claim because insufficient allegations that defendant had knowledge of the alleged defect); *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995) (knowledge and intent to deceive required for common law fraudulent misrepresentation and omission); **Ohio**: *Wagner v. Ohio State Univ. Med. Ctr.*, 934 N.E.2d 394, 402 (Ohio Ct. App. 2010) (fraud requires proof of defendant's knowledge or "utter disregard and recklessness"); **Pennsylvania**: *Levin v. Transamerica Occidental Life Ins. Co.*, 2008 U.S. Dist. LEXIS 66243, at *19 (E.D. Pa. Aug. 20, 2008) (under Pennsylvania law, both common law fraud and UTPCPL claims require proof of intent to deceive); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002) (knowledge required for omission claims under both UTPCPL and common law fraud); **South Carolina**: S.C. Code Ann. § 56-15-10(m) (omissions claim under Dealers Act requires "intentional failure to disclose a material fact"); *Collins Entm't Corp. v. Drew Distrib., Inc.*, 1999 U.S. App. LEXIS 3712, *14 (4th Cir. Mar. 9, 1999) (without evidence of knowledge, no claim for unfair or deceptive act under SCUTPA); *Kiriakides v. Atlas Food Sys. & Servs., Inc.*, 527 S.E.2d 371, 378 (S.C. Ct. App. 2000) (intent to deceive and knowledge or at least reckless disregard for falsity is required for common law fraudulent omission claims).

California law does not apply, but if it did, knowledge also is an essential element under California law. Cal. Bus. & Prof. Code § 17500 (knowledge is required under FAL); *Marchante v. Sony Corp. of Am.*, 2011 U.S. Dist. LEXIS 139564, *10 (S.D. Cal. Dec. 5, 2011) (under CLRA "a manufacturer has 'no duty to disclose facts of which it was unaware'") (citation omitted); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 996 (N.D. Cal. 2010) (if no duty to disclose under CLRA, then no duty to disclose under UCL); *Salameh v. Tarsadia Hotels*, 2011 U.S. Dist. LEXIS 30375, at *37-38 (S.D. Cal. Mar. 22, 2011) (knowledge and intent are required elements of common law fraud).

14

Toyota vehicles were manufactured and sold as new. Plaintiffs cite only three incidents in this timeframe involving Takata airbags, none of which involved Toyota vehicles. While Plaintiffs vaguely allege that the "Vehicle Manufacturer Defendants" generally became aware of the alleged defect through these incidents, they do not specifically allege that Toyota was aware of these incidents, nor do they offer any plausible explanation for how or why Toyota would have become aware of them. *Iqbal*, 556 U.S. at 679 (holding that "only a complaint that states a plausible claim for relief survives a motion to dismiss" because the "mere possibility of misconduct" is insufficient). To the contrary, Plaintiffs expressly allege that Takata and the vehicle manufacturers involved either did not disclose these incidents at all, or made public statements indicating that they were isolated events and were unique to the particular make and model of vehicle. (SAC ¶¶ 226-232.)

Plaintiffs even allege RICO claims against Takata and Honda based on the allegation that they engaged in a conspiracy to cover up these incidents. (*Id.* ¶¶ 410-443.) Plaintiffs allege that "[f]or the Takata Defendants, the purpose of the scheme to defraud was to conceal the scope and nature of the Inflator Defect found in millions of Defective Airbags in the United States in order to sell more airbags, to sell them at a higher price or for a higher profit, and to avoid incurring the expenses associated with repairing the Inflator Defect." (*Id.* ¶ 420.) Plaintiffs cannot have it both ways. If, as Plaintiffs allege, there was a conspiracy to cover up the defect and sell airbags at an inflated price, then there can be no plausible basis for asserting that Toyota had knowledge of any defect that it should have disclosed. Indeed, as a purchaser from Takata, Toyota would be a victim of this alleged conspiracy.

Plaintiffs attempt to obscure their lack of factual allegations against Toyota by generally incorporating all of the allegations in the SAC against all Defendants, and then asserting their claims against the "Vehicle Manufacturer Defendants" collectively. Plaintiffs' approach is exemplified by one paragraph that they repeat verbatim throughout the SAC for all of their consumer fraud claims, in which they collectively allege that the "Vehicle Manufacturer Defendants" were "made aware" of the alleged defect based on incidents that have nothing to do with Toyota. (SAC ¶¶ 969, 1015, 1046, 1692, 1742.)[14] By incorporating all allegations against

---

[14]   Plaintiffs' claims are not saved by their vague allegation that the "Vehicle Manufacturer Defendants" should have known of the alleged defect because they knew the inflators used

15

all defendants without distinction, the SAC is "a quintessential 'shotgun' pleading of the kind" the Eleventh Circuit has "condemned repeatedly." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged. . . ."). That is reason alone to dismiss the SAC. *Id.*; *see also Karhu v. Vital Pharms., Inc*., 2013 U.S. Dist. LEXIS 112613, *8 (S.D. Fla. Aug. 9, 2013) (holding that complaint was "a shotgun pleading" and dismissing the complaint "in its entirety for this reason"). In any event, Plaintiffs' allegations fail to show that Toyota knew of the alleged defect when it manufactured and sold the vehicles. The claims of the new vehicle purchasers—Collins, Raiken, Ruffin, Wishkovsky, and Peterson—should be dismissed.

The claims of the used vehicle purchasers fare no better. As an initial matter, Plaintiffs do not allege that Toyota had anything to do with the sale of their used vehicles. Statutory and common law fraud claims are premised on the concept that the defendant induced the purchase by failing to disclose a material fact, which is logically impossible when the defendant has nothing to do with the transaction. Imposing a duty to disclose on the sale of used vehicles would effectively impose a post-sale duty to warn on the manufacturer, which is a negligence concept, not fraud. *Cf. Hensley-Maclean v. Rosen*, 2014 U.S. Dist. LEXIS 48591, at *25 (N.D. Cal. Apr. 7, 2014) (holding that it is only "the defendant's pre-sale representations and omissions that matter under the CLRA" and rejecting plaintiffs' post-sale duty to warn claim under the CLRA).

In addition, Plaintiffs fail to make any plausible allegations that Toyota had knowledge of the alleged defect even at the time of the used vehicle sales, which occurred between 2007 and 2011. The 2008 Honda recall involved fewer than 4,000 vehicles and Honda allegedly told "regulators that it had identified all 'possible vehicles that could potentially experience the problem.'" (*Id.* ¶ 239-40.) Thus, Honda's recall could not plausibly have provided Toyota with the requisite knowledge. The *only* incidents mentioned in the SAC involving Toyota are four alleged "inadvertent" airbag deployments, the first of which did not occur until 2010. (*Id.* ¶ 308(a).) These alleged incidents are based on "[a] review of publicly-available NHTSA

---

ammonium nitrate, which Plaintiffs allege is "volatile and unstable." (*See, e.g.,* SAC ¶¶ 9, 969). Plaintiffs have not alleged any facts to show that Toyota knew that ammonium nitrate was volatile or unstable. Indeed, the SAC sets forth no facts to support the allegation, even today, that ammonium nitrate, in and of itself, is "volatile or unstable."

16

complaints," which are unverified reports that can be submitted by anyone through the Internet. (*Id.* ¶ 308.) Even Plaintiffs signal their doubts about these incidents, merely alleging that inadvertent airbag deployment "*may* be tied" to the alleged defect and that these incidents should have "prompted further inquiry into the airbags' fitness for use." (*Id.* (emphasis added).) Such vague allegations do not equate to allegations of actual knowledge of the alleged defect, and they certainly do not show that Toyota knew the airbags would rupture, "hyper-aggressively deploy," or "fail to deploy altogether," which is how Plaintiffs characterize the manifestation of the alleged defect. (SAC ¶ 195.)[15] In sum, Plaintiffs do not and cannot allege that Toyota had knowledge of the alleged defect prior to the sale of any of the vehicles, new or used, and thus all of their statutory and common law fraud claims should be dismissed.

> **B.    Plaintiffs' Misrepresentation Claims Should Be Dismissed Because Plaintiffs Have Not Adequately Alleged That Toyota Made Any Misrepresentations (Counts 43, 44, 45, 47, 49, 79, 89, 93, 94).**

To the extent Plaintiffs' statutory fraud claims are premised on misrepresentations in addition to alleged omissions, their claims should be dismissed because they have failed to allege that Toyota made any fraudulent misrepresentations, much less with the specificity required by Rule 9(b). Plaintiffs merely parrot the language of the various statutes or vaguely allege that Toyota misrepresented "material facts," but fail to identify "(1) precisely what statements were made in what documents or oral representations . . . (2) the time and place of each such statement and the person responsible for making [them] . . . (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba*, 256 F.3d at 1202.

The *only* Toyota representations mentioned anywhere in the SAC are two general statements Toyota purportedly made in unidentified "advertisements" or "promotional materials," the second of which came in 2015, which is long after even the used vehicles were purchased and thus could not have had any influence on any of the Plaintiffs' purchase decisions. (SAC ¶ 310(h).) Plaintiffs attribute these advertisements to "Toyota/Lexus," but fail to allege which vehicle or vehicles they applied to, how and where they were disseminated, or whether each of the Plaintiffs saw or heard them prior to purchasing his or her vehicle. Moreover, the

---

[15]    Toyota disputes the assertion that the alleged defect can result in a failure of the airbags to deploy.

advertisements are general statements regarding safety features in unidentified Toyota or Lexus vehicles, and it is well established that such statements are mere sales puffery that are not actionable as fraud. *See, e.g., Davisson v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 122673, *26 (S.D. Ohio Sept. 3, 2014) (holding that plaintiffs could not rely on advertisements touting the safety and reliability of the vehicles); *In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1060 (C.D. Cal. 1991) (rejecting plaintiffs' claim that national advertising campaign created false impression of safety because such advertisements were mere sales puffery); *In re GMC Anti-Lock Brakes Prods. Liab. Litig.*, 966 F. Supp. 1525, 1534 (E.D. Mo. 1997) (same). Accordingly, Plaintiffs' misrepresentation claims should be dismissed.

### C. The Common Law Fraudulent Concealment Claims Of Certain Plaintiffs Should Be Dismissed Because Toyota Had No Duty To Disclose (Count 40).

There is no liability for common law fraudulent concealment unless the defendant had a duty to disclose. Under Alabama, Florida, Massachusetts, Ohio, and South Carolina law, the duty to disclose only arises where there is a fiduciary or other special relationship of trust.[16] Plaintiffs do not allege that they had a fiduciary relationship with Toyota, nor could they. In similar cases, courts have held that the sale of a vehicle does not create a fiduciary or "confidential" relationship that would give rise to a duty to disclose. For example, in *Mason*, the plaintiffs alleged that they experienced several problems with their Chrysler vehicle shortly after purchase and that Chrysler had been aware of these problems in other Chrysler vehicles before sale. 653

---

[16] **Alabama**: *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995) ("When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested."); **Florida**: *Friedman v. Am. Guardian Warranty Servs.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003) ("Fraud based upon a failure to disclose material information exists only when a duty to make such disclosure exists. This duty arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties."); **Massachusetts**: *Nei v. Burley*, 446 N.E.2d 674, 676-77 (Mass. 1983) (holding that in the absence of a fiduciary relationship, "sellers are not liable in fraud for failing to disclose every latent defect known to them which reduces materially the value of the property and of which the buyer is ignorant"); **Ohio**: *Loyd v. Huntington Nat'l Bank*, 2009 U.S. Dist. LEXIS 51858, at *31 (N.D. Ohio 2009) ("The duty to disclose arises only when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relationship of trust and confidence.'") (citing *Steinfels v. Ohio Dept. of Commerce*, 719 N.E.2d 76, 82 (Ohio Ct. App. 1998); **South Carolina**: *Ellie, Inc. v. Miccichi*, 594 S.E.2d 485, 497 (S.C. Ct. App. 2004) (duty to disclose only arises where there is a fiduciary relationship).

18

So. 2d at 953-54. The Alabama Supreme Court affirmed summary judgment in favor of Chrysler because, among other reasons, there was no confidential or fiduciary relationship between Chrysler and the plaintiffs. *Id.* at 955. The same is true here, and the fraudulent concealment claims of Plaintiffs Martin, Collins, Ruffin, Shader, Huebner, Raiken, and Wishkovsky should be dismissed for this additional reason.

### D. The Fraudulent Concealment And UTPCPL Claims Under Pennsylvania Law Should Be Dismissed Because They Are Barred By The Economic Loss Rule (Counts 40 and 89).

Under Pennsylvania law, Raiken's and Wishkovsky's common law fraudulent concealment and UTPCPL claims are barred by the economic loss rule because Plaintiffs allege only economic harm. The economic loss rule "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (citation omitted). Economic loss claims are those where "'the product has not met the customer's expectations, or, in other words, that the customer has received insufficient product value.'" *Werwinski*, 286 F.3d at 671 (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 (1986).)

This case is closely analogous to *Werwinski*, in which the plaintiffs brought a putative class action alleging that Ford had concealed the fact that certain vehicles had defective transmissions. 286 F.3d at 664. Applying Pennsylvania law, the Third Circuit held that the common law fraud and UTPCPL claims were barred by the economic loss rule because the plaintiffs alleged only economic damages and "express and implied warranties under contract law are best suited to compensate for a loss in product value." *Id.* at 671; *see also Fid. & Deposit Co. v. IBM*, 2005 U.S. Dist. LEXIS 25420, at *5 (M.D. Pa. Oct. 19, 2005) (holding that "claims for only economic loss are appropriately brought as breach of contract or warranty claims rather than as tort claims"). The court reasoned that "'when loss of the benefit of a bargain is the plaintiff's sole loss, . . . the undesirable consequences of affording a tort remedy in addition to a contract-based recovery [are] sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims.'" *Werwinski*, 286 F.3d at 680. The same is true here, where Plaintiffs allege that they "did not receive the benefit of their bargain." (SAC ¶¶ 920, 1703). Accordingly, the fraudulent concealment and UTPCPL claims of Raiken and Wishkovsky should be dismissed for this additional reason.

### E.     The Alabama DTPA Claim Should Be Dismissed Because Plaintiffs Failed To Provide Pre-Suit Notice (Count 49).

Under the Alabama DTPA, a plaintiff must provide a written demand for relief at least 15 days prior to filing suit. Ala. Code § 8-19-10. Failure to do so requires dismissal of the claim. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) (dismissing DTPA claim because the plaintiffs "have not complied with the pre-filing demand requirement imposed by the statute"). In this case, Plaintiffs allege that they "served Defendants with notice of their alleged violations of the Alabama DTPA," but conspicuously absent is any allegation that they served notice *prior* to filing suit. (SAC ¶ 1062.) And in fact, Plaintiffs did not serve notice until June 9, 2015, well after commencing this action. *See* Ltr. from Keith McKerall, Esq. to TMS, *et al*. (June 9, 2015) (attached as Ex. 2).[17]

The same scenario was presented in *In re Ford Tailgate Litig.*, 2014 U.S. Dist. LEXIS 119769 (N.D. Cal. Aug. 8, 2014). That case involved a claim under the California CLRA, which like the Alabama DTPA, requires a plaintiff to provide pre-suit notice. *Id.* at *18. Like this case, the plaintiffs alleged that they had served the defendant with written notice, but "[c]onspicuously missing" was "any allegation of *pre-suit* notice." *Id.* at *19. As in this case, the defendant attached to its motion to dismiss a letter from the plaintiffs that purported to be CLRA notice, but which was dated well after the plaintiffs had commenced the action. *Id.* The court held that the plaintiffs had failed to comply with the pre-suit notice requirement and dismissed the CLRA claim. *Id.* Martin's Alabama DTPA claim should be dismissed for the same reason.[18]

---

[17]    A "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[18]    The Alabama and South Carolina consumer fraud claims also should be dismissed because class actions are expressly prohibited by the applicable statutes. Ala. Code § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."); S.C. Code § 39-5-140(a) (providing that a plaintiff "may bring an action individually, but not in a representative capacity"). On July 10, 2015, the Eleventh Circuit held that the Alabama DTPA's prohibition on class actions does not apply in federal court. *Lisk v. Lumber One Wood Preserving, LLC*, __ F.3d___, No. 14-11714 (11th Cir. July 10, 2015). Although Toyota respectfully disagrees with the Eleventh Circuit's opinion, Toyota recognizes that *Lisk* is binding on this Court and thus asserts this argument solely to preserve this point for appeal.

20

**III.    THE BREACH OF IMPLIED WARRANTY AND MMWA CLAIMS SHOULD BE DISMISSED (Counts 3, 48, 80, 90, 95).**

The breach of implied warranty of merchantability claims, as well as the derivative claims under the MMWA, should be dismissed because any implied warranty was expressly limited to the duration of the new vehicle warranty provided by Toyota at the time of sale, which has long since expired on all of the subject vehicles. In addition, the Florida Plaintiffs' implied warranty and MMWA claims are barred by the lack of privity, and the claims of the Nevada and Pennsylvania Plaintiffs are barred by the applicable statute of limitations.

**A.    The Implied Warranty Was Limited To The Duration Of The New Vehicle Limited Warranty, Which Has Expired For All Of The Vehicles.**

The MMWA expressly provides that "implied warranties may be limited . . . to the duration of a written warranty." 15 U.S.C.A. § 2308(b). Implied warranties also may be modified or limited under U.C.C. § 2-316, which has been adopted by each of the states at issue. *See* Fla. Stat. Ann. § 672.316; S.C. Code § 36-22-316; Mass. Gen. Laws ch. 106 § 2-316; 13 P.A. Stat. Ann. § 2316; Nev. Rev. Stat. Ann. § 104.2316.[19] Here, the Toyota (and Lexus) New Vehicle Limited Warranty ("NVLW") that was provided with each of the vehicles at the time the vehicles were sold new expressly and conspicuously limits the duration of any implied warranties, including merchantability, to the term of the NVLW. In bold type and under the heading "**Limitations**," the NVLW states: "**Any implied warranty of merchantability or fitness for a particular purposes is limited to the duration of these written warranties.**" *See, e.g.,* Ex. 3 at p.8. For each of the Plaintiffs who own Toyota vehicles, the portion of the NVLW that applies to restraint systems (which includes the airbags) is 5 years or 60,000 miles, whichever comes first. *See* Ex. 3 at pp. 6, 10 (2003 Toyota NVLW); Ex. 4 at pp. 6, 10 (2004 Toyota NVLW); Ex. 5 at pp. 6, 10 (2005 Toyota NVLW). For Shader's 2002 Lexus, the applicable warranty period is 6 years or 70,000 miles. *See* Ex. 6 at pp. 15, 19 (2002 Lexus NVLW). Since all of the named Plaintiffs' vehicles are 2002-2005 model years, the NVLW has long since expired and so too has the implied warranty.

---

[19]    As noted above, the Massachusetts Plaintiff (Peterson) does not specifically assert a breach of implied warranty claim against Toyota, but does assert a claim under the MMWA and that claim must be decided under Massachusetts law.

This Court addressed this very issue in *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 U.S. Dist. LEXIS 59991 (S.D. Fla. Apr. 30, 2014). In that case, the plaintiff brought a putative class action and alleged that certain Audi vehicles contained defects that caused the brakes and rotors to wear out prematurely. *Id.* at *4. Audi's written warranty covered brake pads and rotors for 12 months/12,000 miles, and the warranty specifically limited the duration of the implied warranty to that same period. *Id.* at *24 ("The Vehicle's Warranty expressly and conspicuously limits the duration of any implied warranties to the term of the applicable express warranty . . . ."). Because the written warranty had expired, the Court dismissed the implied warranty claim. *Id.* Several other courts have held likewise in closely analogous cases. *See, e.g., Brisson v. Ford Motor Co.*, 349 Fed. App'x 433, 434-35 (11th Cir. 2009); *In re Ford Tailgate Litig.*, 2014 U.S. Dist. LEXIS 119769, at *10; *Voicheck v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 62634, at *13-14 (E.D. Pa. May 2, 2013); *Alban v. BMW of N. Am., LLC*, 2010 U.S. Dist. LEXIS 94038, at *29 (D.N.J. Sept. 8, 2010).

This rule of law applies to the implied warranty claims of all of the Plaintiffs, whether they purchased their vehicles new (and thus were provided with the NVLW) or used, when the NVLW had already expired. Indeed, numerous courts have held that where the express warranty expired before the plaintiff purchased the vehicle, the implied warranty likewise expired prior to purchase, thereby requiring dismissal of the implied warranty claim. *See, e.g., White v. Volkswagen Grp. of Am., Inc.*, 2013 U.S. Dist. LEXIS 25238, *14-15 (W.D. Ark. Feb. 25, 2013) ("[T]he written Warranty expired prior to the time [plaintiff] became the owner of her vehicle. Since the implied warranty's duration is equal to the written Warranty's, the implied warranty also expired."); *Daigle v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 106172, *29-30 (D. Minn. July 31, 2012) ("It is undisputed that [plaintiff] purchased his 2004 Freestar after the New Vehicle Warranty had expired, therefore his claim of breach of implied warranty has no merit and Ford is entitled to summary judgment."); *Snodgrass v. Ford Motor Co.*, 2001 U.S. Dist. LEXIS 18555, *33-35, 49 n.11 (D.N.J. Sept. 4, 2001) (same); *Kagan v. Harley Davidson, Inc.*, 2008 U.S. Dist. LEXIS 32747, *31-38 (E.D. Pa. Apr. 22, 2008) (same).

While Plaintiffs generally plead that any warranty limitations are unconscionable (SAC ¶¶ 452-454), there is nothing unconscionable about the 60 and 72 month warranties Toyota provided on the airbags. Indeed, in *Speier-Roche*, this Court enforced the durational limitation of

a 12 month warranty. *Id.* at *24. And in *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013), the court specifically rejected the contention that Volkswagen's two-year/24,000 mile warranty was unconscionable. *Id.* at *2, 7-10. These cases are consistent with decisions from courts across the country.[20] Accordingly, all of the breach of implied warranty and derivative MMWA claims should be dismissed.[21]

### B.  The Florida Plaintiffs' Implied Warranty And MMWA Claims Are Barred By The Lack Of Privity (Counts 3 and 48).

Under well-established Florida law, a claim "for breach of implied warranty does not lie where there is no privity of contract between a plaintiff and defendant." *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *22 (citation omitted); *see also Feheley v. Lai Games Sales, Inc.,* 2009 U.S. Dist. LEXIS 70430, *18-19 (S.D. Fla. Aug. 11, 2009); *David*, 629 F. Supp. 2d at 1321-22; *Rentas v. DaimlerChrysler*, 936 So. 2d 747 (Fla. Dist. Ct. App. 2006). The privity requirement applies equally to MMWA claims. *Gill*, 147 Fed. App'x at 810 ("Importantly, courts have uniformly held that Magnuson-Moss does nothing to alter or modify state law privity

---

[20]   *See Smith v. Ford Motor Co.*, 462 Fed. Appx. 660, 663 (9th Cir. 2011) (three-year/36,000 mile Ford New Vehicle Limited Warranty not unconscionable); *Nelson v. Nissan North Am., Inc.*, 894 F. Supp. 2d 558, 565 (D.N.J. 2012) ("[T]here is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty."); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 62045, at *61-66 (D.N.J. May 3, 2012) (three-year/36,000 mile warranty not unconscionable); *Suddreth v. Mercedes–Benz, LLC*, 2011 U.S. Dist. LEXIS 126237, at *9-12 (D.N.J. Oct. 31, 2011) (four-year/50,000 mile warranty not unconscionable); *Alban v. BMW of N. Am., LLC*, 2011 U.S. Dist. LEXIS 26754, at *23-27 (D.N.J. March 15, 2011) (four-year/50,000 mile warranty not unconscionable); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1182 (C.D. Cal 2010) (three-year/36,000 mile warranty not unconscionable); *Hornberger v. General Motors Corp.*, 929 F. Supp. 884, 891-92 (E.D. Pa.1996) (three-year/36,000 mile warranty not unconscionable); *Moore v. Coachmen Indust., Inc.*, 499 S.E.2d 772, 778 (N.C. Ct. App. 1998) (twelve-month/15,000 mile warranty not unconscionable); *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E .2d 942, 950 (Ill. App. Ct. 2005) (three-year/36,000 mile warranty not unconscionable); *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 952 (Ind. Ct. App. 1982) (holding that "the Ford modification of warranties and limitation of remedy are not so one-sided as to be unconscionable as a matter of law").

[21]   As discussed in Nissan's Motion to Dismiss at section V-D, which Toyota adopts by reference, Plaintiffs' implied warranty and MMWA claims also fail because a vehicle is merchantable as a matter of law where it has performed its function of providing safe and reliable transportation for years without incident.

23

requirements. The question of whether privity is required thus hinges entirely on applicable state law.").

Plaintiffs have not established privity here because they purchased their vehicles from dealerships, not directly from Toyota, and "merely purchasing a product from an authorized dealer does not establish privity with the manufacturer." *Karhu*, 2013 U.S. Dist. LEXIS 112613, at *21. As this Court has held, "when a vehicle is purchased directly from a dealer as opposed to the manufacturer—as occurred here—no privity exists between the plaintiff and the manufacturer." *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *22 (dismissing implied warranty claim for lack of privity between plaintiff and defendant U.S. distributor, observing complaint "pleads no facts from which privity or a true agency relationship . . . can be inferred"); *see also Brisson*, 349 Fed. App'x at 434 ("The district court properly dismissed the implied warranty claim because plaintiffs did not allege privity between themselves and Ford."); *McKissic v. Country Coach, Inc.*, 2008 U.S. Dist. LEXIS 15998, *11 (M.D. Fla. Mar. 3, 2008); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325-326 (Fla. Dist. Ct. App. 2008); *Cerasani v. Am. Honda Motor Co.*, 916 So. 2d 843, 847 (Fla. Ct. App. 2005); *Brophy v. DaimlerChrysler Corp.*, 932 So. 2d 272, 275 (Fla. Dist. Ct. App. 2005) (same). Thus, the Florida Plaintiffs' (Collins, Ruffin, Shader) breach of implied warranty and MMWA claims should be dismissed based on lack of privity.[22]

### C.   The Implied Warranty Claims Of Certain Plaintiffs Are Barred By The Statute Of Limitations (Counts 3, 80, 90).

The statute of limitations for implied warranty claims in Nevada, Massachusetts, and Pennsylvania is four years. Mass. Gen. Laws ch. 106 § 2-725; Nev. Rev. Stat. § 104.2725; 13 Pa. Stat. Ann. § 2725. A cause of action for breach of implied warranty accrues at the time of sale "regardless of the aggrieved party's lack of knowledge of the breach." Mass. Gen. Laws ch. 106 § 2-725; Nev. Rev. Stat. § 104.2725; 13 Pa. Stat. Ann. § 2725(a). Thus, by statute, the discovery rule does not apply. *See, e.g., Voicheck*, 2013 U.S. Dist. LEXIS 62634, at *12 n.7. Charles and Dana Talamantes (Nevada) purchased their vehicle on July 8, 2009; Raiken (Pennsylvania) purchased his vehicle on July 29, 2003; Wishkovsky (Pennsylvania) purchased her vehicle on

---

[22]   While California law does not apply, if it did, Plaintiffs' implied warranty claims would be barred by lack of privity. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

April 1, 2004; and Peterson (Massachusetts) purchased her vehicle in 2003. Since the earliest class action in this litigation (*Dunn*) was not filed until October 2014, the claims of all of these plaintiffs are time-barred.

### D. The Implied Warranty Claims Of Certain Plaintiffs Are Barred By Failure To Provide Pre-Suit Notice Of Breach (Counts 3, 48, 80, 90).

Plaintiffs' failure to provide pre-suit notice bars their implied warranty claims under Florida, Nevada, and Pennsylvania law. Fla. Stat. Ann. § 672.607(3); Nev. Rev. Stat. Ann. § 104.2607; 13 Pa.C.S. § 2607(c)(1). Plaintiffs do not allege that they each provided notice to Toyota as required by the applicable statutes, but instead allege in conclusory fashion that "Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations." (SAC ¶ 1036; *see also* ¶ 1553, 1711.) Courts have rejected the assertion that individual notice is unnecessary where the defendant has "actual or constructive knowledge of the breach" because it "is not supported by the language of the UCC, its statutory purpose, or existing case law." *AFSCME v. Ortho-McNeil-Janssen Pharms., Inc.*, 2010 U.S. Dist. LEXIS 23181, *19 (E.D. Pa. Mar. 11, 2010);  *see also In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 364 (M.D. Pa. 2013) (holding that knowledge of alleged defect is not enough because "it is essential that the seller be notified that *this particular transaction* is troublesome and must be watched") (citation omitted). Moreover, the filing of the complaint is not sufficient because "it would obviate the need for the notice requirement." *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642 (S.D. Fla. 2008). Accordingly, the MMWA and implied warranty claims of Collins, Ruffin, Shader, Talamantes, Raiken, and Wishkovsky should be dismissed.

## IV. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED (COUNT 42).

### A. The Unjust Enrichment Claim Should Be Dismissed Because Plaintiffs Have An Available Legal Remedy.

Courts overwhelmingly have held that "[u]njust enrichment is an equitable cause of action that is unavailable when the underlying wrongs are properly addressed by a legal remedy," whether in contract (including warranty) or tort. *Licul*, 2013 U.S. Dist. LEXIS 171627,

DB1/ 84099316.1

at *19 (applying Florida law). This rule applies in all of the relevant jurisdictions.[23] While a plaintiff can plead in the alternative, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Licul*, 2013 U.S. Dist. LEXIS 171627, at *19; *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *25 (rejecting plaintiff's attempt to plead unjust enrichment claim in the alternative as "contrary to the weight of authority holding that an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute"); *In re Ford Tailgate Litig.*, 2014 U.S. Dist. LEXIS 32287, at *22 (N.D. Cal. 2014) (same).

Plaintiffs' unjust enrichment claim in this case is specifically premised on Toyota's sales of the vehicles with the allegedly concealed defect. (CAC ¶ 940.) This is, of course, the same basis for their warranty and fraud claims, and thus their proper remedy, if any, is under those claims. *Licul*, 2013 U.S. Dist. LEXIS 171627, at *20; *Matthews*, 2012 U.S. Dist. LEXIS 90802, at *6 ("[B]ecause [plaintiff's] unjust enrichment claim is predicated on the same wrongful conduct as her FDUTPA claim, she does not lack an adequate legal remedy."). As one court succinctly stated in an analogous case: "If plaintiffs claim they were damaged as a result of consumer deception, the proper remedy is under their respective state consumer protection statutes. If plaintiffs claim [the vehicle manufacturer] failed to perform under the terms of its express warranty or implied warranty, the appropriate remedy is under those claims for relief." *In*

---

[23]   **Alabama**: *Vision Bank v. 145, LLC*, 2011 U.S. Dist. LEXIS 127808, *27 (S.D. Ala. Nov. 4, 2011) ("Alabama law makes clear that unjust enrichment is an equitable remedy only to be invoked where there is no available remedy at law."); **Massachusetts**: *Fernandes v. Havkin,* 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (holding that "[a] claim of unjust enrichment . . . is not available to a party with an adequate remedy at law"); **Nevada**: *Vercellono v. Gerber Prods. Co.*, 2010 U.S. Dist. LEXIS 9477, *28 (D.N.J. Feb. 3, 2010) (applying Nevada law and dismissing unjust enrichment claim because "equitable relief is precluded where an adequate legal remedy exists"); **Ohio**: *Banks v. Nationwide Mut. Fire Ins. Co.*, 2000 Ohio App. LEXIS 5504, *14 (Ohio Ct. App. Nov. 28, 2000) ("[W]here damages are available for breach of contract or in tort, the party cannot also invoke the equitable remedy for unjust enrichment."); **Pennsylvania**: *In re Actiq Sales & Mktg. Practices Litig.*, 2015 U.S. Dist. LEXIS 36466, *45 n.24 (E.D. Pa. Mar. 23, 2015) (holding that Pennsylvania "bar[s] an equitable remedy for unjust enrichment when a party has an adequate remedy at law"); **South Carolina**: *Barrett v. Miller*, 321 S.E.2d 198, 199 (S.C. Ct. App. 1984) (holding that unjust enrichment claim is an equitable remedy and "[w]here a plaintiff has an adequate remedy at law, equitable relief is not normally in order").

*re Ford Tailgate Litig.*, 2014 U.S. Dist. LEXIS 32287, at *22. Moreover, if Plaintiffs' legal claims are dismissed, "it does not mean a legal remedy was unavailable (thereby justifying an equitable remedy of unjust enrichment), but only that their claim lacks merit." *Id.*, at *22-23; *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *25-26 ("Plaintiff's failure to state a claim for breach of warranty does not save the unjust enrichment claim."); *Licul*, 2013 U.S. Dist. LEXIS 171627, at *22 n.2 ("That Plaintiffs' warranty and FDUTPA claims may also prove without merit does not impact whether their unjust enrichment claim should be dismissed."); *Fernandes*, 731 F. Supp. 2d at 114 (holding that the disposition of plaintiff's negligence and consumer fraud claims is "irrelevant" because "[t]heir mere availability is a bar to a claim of unjust enrichment").[24]

> **B.    Plaintiffs Have Failed To Plausibly Allege That They Conferred Any Benefit On Toyota.**

Plaintiffs' unjust enrichment claim also should be dismissed because none of the named Toyota Plaintiffs has sufficiently alleged that he or she conferred a benefit on each of the Toyota defendants, which is a necessary element for an unjust enrichment claim under the laws of each of the applicable states.[25] Plaintiffs only allege that "Toyota has received and retained a benefit from the Plaintiffs and inequity has resulted." (SAC ¶ 939.) Such a conclusory allegation, without any facts alleged as to what benefit was actually conferred by the Plaintiffs, does not state a claim for unjust enrichment. Perhaps the "benefit" referenced by Plaintiffs is the purchase of their vehicles, but Plaintiffs do not allege, nor can they, that they purchased their vehicles from either TMS or TEMA. In fact, Plaintiffs acknowledge that TEMA has no involvement in the sale of the vehicles. (SAC ¶ 69.) And while Plaintiffs allege generally that TMS is "responsible" for "sales" of the vehicles, they acknowledge that they purchased their vehicles

---

[24]    Plaintiffs' allegation that they "do not have an adequate remedy at law" (SAC ¶ 942) is the type of bare legal conclusion that fails to state a cause of action. *Iqbal*, 556 U.S. at 678.

[25]    **Alabama**: *Dickinson v. Cosmo Broad. Co.*, 782 So. 2d 260, 266 (Ala. 2000); **Florida**: *Moynet v. Courtois*, 8 So.3d 377, 379 (Fla. Dist. Ct. App. 2009); **Massachusetts**: *Fernandes*, 731 F. Supp. 2d at 114; **Nevada**: *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981); **Ohio**: *Camp St. Mary's Ass'n v. Otterbein Homes*, 889 N.E.2d 1066, 1078 (Ohio Ct. App. 2008); **Pennsylvania**: *Ameripro Search, Inc. Flemming Steel Co.*, 787 A.2d 988, 992 (Pa. Super. Ct. 2001); **South Carolina**: *QHG of Lake City, Inc. v. McCutcheon*, 600 S.E.2d 105, 108 (S.C. Ct. App. 2004).

DB1/ 84099316.1

from dealerships. Automotive dealerships are independently owned businesses and Plaintiffs have not pled any facts to show any agency relationship between Toyota and its authorized dealers. *See Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *22 (holding that plaintiffs had failed to plead facts showing that "a true agency relationship . . . can be inferred" between the dealer and the distributor). In the absence of any factual allegations to show that Plaintiffs conferred any benefit on any Toyota entity, their unjust enrichment claim should be dismissed.[26]

## V.  THE FLORIDA PLAINTIFFS' FDUTPA AND UNJUST ENRICHMENT CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS (COUNTS 42, 47).

The FDUTPA and unjust enrichment claims asserted by the Florida Plaintiffs (Collins, Ruffin, and Shader) are barred by the statute of limitations, which is four years for both claims. *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *18 (FDUTPA claim); *Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. Dist. Ct. App. 2005) (unjust enrichment claim). "It is well-settled that there is no 'delayed discovery rule' applicable to FDUTPA claims" and thus "[a] FDUTPA claim accrues at the time of purchase or lease of a product, not upon discovery of an alleged defect." *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *18-19; *see also Licul*, 2013 U.S. Dist. LEXIS 171627, at *15; *Matthews*, 2012 U.S. Dist. LEXIS 90802, at *11. The same is true for unjust enrichment claims. *Merle Wood & Assoc., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1309 (S.D. Fla. 2012), *aff'd*, 714 F.3d 1234 (11th Cir. 2013) (holding that the "delayed discovery doctrine does not cover unjust enrichment" claims); *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571, 577 (Fla. Dist. Ct. App. 2006) (holding that unjust enrichment claim accrues when benefit is conferred on defendant).

Plaintiff Collins alleges that she purchased her vehicle in December 2004, and while Ruffin does not allege when she purchased her vehicle, she allegedly owns a 2005 Toyota Corolla that she purchased new, and thus it can be inferred that the purchase date would have been somewhere in the 2004 to 2005 time period. *See, e.g., Voicheck*, 2013 U.S. Dist. LEXIS 62634, at *12 n.8 ("In the absence of an exact date, the Court infers that the 2000-model vehicle

---

[26]  While California law does not apply, even if it did, the unjust enrichment claim should be dismissed because California "has rejected independent unjust enrichment claims." *In re Ford Tailgate Litig.*, 2014 U.S. Dist. LEXIS 32287, at *21 (unjust enrichment is considered a remedy, not a separate cause of action).

was delivered at some point between 1999 and 2001."). The statute of limitations had long since expired by the time Collins and Ruffin filed their initial complaints in November 2014.

Plaintiff Shader alleges that she purchased her vehicle used in "November 2010," without specifying the exact date. (SAC ¶ 162.) Depending on the exact date when Shader purchased her vehicle, her claims may be barred, and she cannot avoid the statute of limitations by failing to allege the date of purchase. Pleading such basic information, which obviously is within her knowledge, is required to state a claim for relief under *Twombly* and *Iqbal*. *See, e.g., Bateman v. United States*, 2009 U.S. Dist. LEXIS 58572, *17-18 (M.D. Tenn. July 9, 2009) (citing *Twombly* and holding that "Plaintiffs do not even provide the dates that certain actions occurred so that the Defendants may assert the statute of limitations defense if applicable. Therefore, the Court concludes that the Amended Complaint should be dismissed for failure to state a claim for lack of sufficient factual pleading."). Thus, the FDUTPA and unjust enrichment claims of the three Florida Plaintiffs should be dismissed as time-barred.

## VI.   THE SONG-BEVERLY ACT CLAIM SHOULD BE DISMISSED (COUNT 41).

While none of the Plaintiffs can state a claim under California law, even if they could, their claim under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, fails for two additional reasons. First, none of the Plaintiffs have standing to assert a claim under the statute because they did not purchase their vehicles in California. *See D.L. Edmonson Selective Serv. v. LCW Auto. Corp.*, 689 F. Supp. 2d 1226, 1235 (C.D. Cal. 2010) ("California law is clear that when title passes outside of California, the Song-Beverly Act does not apply.") *In Re Sony Grand WEGA HDTV Litig.,* 758 F. Supp. 2d 1077, 1097 (S.D. Cal, 2010) (dismissing Song-Beverly claim and holding that "Courts have routinely dismissed [Song-Beverly] claims against manufacturers where none of the named class members could plead that they purchased 'at retail' in California.") Second, the duration of the implied warranty of merchantability arising under the Act is expressly limited by statute to a maximum period of one year for new goods, and three months for used goods. Cal. Civ. Code §§ 1791.1(c), 1795.5(c). Because none of the Plaintiffs allege that they experienced any problems with their vehicles during the warranty period, they have failed to state a claim. *Taragan v. Nissan N. Am., Inc.*, 2013 U.S. Dist. LEXIS 87148, *12-16 (N.D. Cal. June 20, 2013); *Atkinson v. Elk Corp.*, 142 Cal. App. 4th 212, 217-18 (2006). Accordingly, Count 41 should be dismissed for these additional reasons.

29

VII.   **ALL OF THE CLAIMS OF THE ALABAMA, FLORIDA, AND PENNSYLVANIA PLAINTIFFS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE MANIFESTATION OF THE ALLEGED DEFECT (COUNTS 3, 40, 42, 46, 47, 48, 49, 89, 90).**

As discussed in detail in Mazda Motor of America, Inc.'s Motion to Dismiss, at Section C, which is hereby adopted by reference, Florida, Alabama, and Pennsylvania preclude recovery under any theory in cases where the alleged product defect has not manifested. Courts in these states consistently have applied this rule, including in cases involving alleged safety defects in automobiles and medical devices. *See, e.g., Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1134 (Fla. Dist. Ct. App. 2008) (alleged brake defect that rendered vehicle unable to stop); *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 406 (Ala. 1996) (alleged defect in heart valve that had resulted in numerous deaths). Here, the Toyota Plaintiffs do not allege that their vehicles have ever manifested the alleged defect, and thus their claims are deficient as a matter of law.[27] Notably, applying this rule simply means that Plaintiffs cannot recover economic damages in this class action, but does not leave them without a remedy. Indeed, Plaintiffs who own a vehicle subject to one of the recalls will receive (or already have received) a replacement airbag inflator free of charge. And while there are no allegations that any Toyota owner has been physically injured as a result of the alleged defect, if it were to happen, tort law provides a remedy for those individuals. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017 ("[I]f tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation.") Accordingly, all claims asserted by Collins, Ruffin, Shader, Martin, Raiken, and Wishkovsky should be dismissed for failure to plead manifestation of the alleged defect.

---

[27]   Florida Plaintiff Shader alleges that he "was involved in a frontal impact accident in which the airbags failed to deploy." (SAC ¶ 162.) Shader does not allege that the failure to deploy was related to the alleged defect, so, on its face, this allegation does not meet the manifestation requirement. Toyota also disputes that the alleged defect can result in non-deployment of the airbag. However, if the Court finds Shader's allegation sufficient at this stage of the litigation, Toyota reserves the right to raise this issue again following discovery.

## VIII.   THE NEGLIGENT FAILURE TO RECALL CLAIM SHOULD BE DISMISSED (COUNT 46).

### A.   Negligent Failure To Recall Is Not A Recognized Cause Of Action And Is Barred By The Economic Loss Rule In Any Event.

Plaintiffs' negligent failure to recall claim should be dismissed because it is not a recognized cause of action under the laws of the applicable jurisdictions—Alabama, Florida, Massachusetts, Nevada, Ohio, Pennsylvania, and South Carolina. Only California has recognized a claim for negligent failure to recall, but California law does not apply to any of the Plaintiffs' claims under the choice of law analysis set forth above. In the absence of any state authority recognizing a cause of action for negligent failure to recall, the Court should not create one. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) ("Federal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law."); *Dayton v. Peck, Stow & Wilcox Co. (Pexto)*, 739 F.2d 690, 694 (1st Cir. 1984) (holding that federal courts are in "a particularly poor position . . . to endorse [a] fundamental policy innovation . . . . Absent some authoritative signal from the legislature of the courts of [the state], we see no basis for even considering the pros and cons of innovative theories . . . .").

Even if negligent failure to recall were a recognized cause of action, it nevertheless would be barred by the economic loss rule. Each of the relevant jurisdictions has adopted the economic loss rule and, while courts in those states have had no occasion to consider negligent failure to recall specifically, they have held that the economic loss rule is applicable to negligence claims.[28] Indeed, in California, the only jurisdiction where the negligent failure to recall claim is recognized, courts have applied the economic loss rule to dismiss these claims. For example, in *Sharma v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 84406 (N.D. Cal. June 19, 2014), the plaintiffs brought a class action on the basis that certain BMW vehicles had a defect that allowed water to enter the vehicles and damage certain "critical modules and electronic components," which the plaintiffs alleged could result in various safety hazards. *Id.* at

---

[28]   **Alabama**: *Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So. 2d 671 (Ala. 1989); **Florida**: *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 405 (Fla. 2013); **Massachusetts**: *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 95 (D. Mass. 1998); **Nevada**: *In re Zappos.com, Inc.*, 2013 U.S. Dist. LEXIS 128155, at *16-17 (D. Nev. Sept. 9, 2013); **Ohio**: *Inglis v. Am. Motors Corp.*, 209 N.E.2d 583, 588 (Ohio 1965); **Pennsylvania**: *Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co.*, 2009 U.S. Dist. LEXIS 92197, *70 (E.D. Pa. Oct. 1, 2009); **South Carolina**: *Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 50 (S.C. 2009).

*2. The court dismissed the negligent failure to recall claim, holding that because the plaintiffs had not alleged "any physical injury or damage to property other than the vehicles," their claim was barred by the economic loss rule. *Id.* at *21-22. The same result should apply here.

> **B.       Plaintiffs' Claim Is Preempted By Federal Law.**

Plaintiffs' failure to recall claim also is preempted because it effectively seeks a judicial determination that the recalls—which have been approved and are being supervised by NHTSA—are inadequate. Under the doctrine of conflict preemption, federal law preempts state law whenever state law either frustrates the execution of the federal law's purposes or conflicts with the methods chosen by the federal government for achievement of those purposes. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491-494 (1987). Moreover, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventative relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone v. Liggett Group*, 505 U.S. 504, 521 (1992); *see also Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998) (holding that "common law liability may create a conflict with federal law, just as other types of state law can"). Preemption is fundamentally "a question of congressional intent" as reflected in the applicable statutes and regulations. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000) (citation and quotations omitted). Here, the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 *et seq*. ("Safety Act") and its implementing regulations make clear that Congress intended that NHTSA, not the courts, would investigate alleged safety defects and, if appropriate, administer related notification and recall campaigns.

The Safety Act authorizes the Secretary of Transportation to commence proceedings related to alleged motor vehicle safety defects. 49 U.S.C. § 30166. The Secretary has delegated authority to administer the Safety Act to NHTSA, 49 C.F.R. §§ 501.1, 501.2, and, as a result, NHTSA has exclusive authority in "enforcing Federal motor vehicle safety standards and associated regulations, investigating possible safety-related defects, and making non-compliance and defect determinations." 49 C.F.R. § 554.1. In the event that either NHTSA or a vehicle manufacturer determines that a safety-related defect exists, the Safety Act and regulations "ensure that notification of defects or noncompliance adequately inform and effectively motivate owners of potentially defective vehicles . . . to have such vehicles . . . inspected and, where

necessary, remedied as quickly as possible." *Id.* § 577.2. The Safety Act similarly specifies the possible statutory remedies: if a motor vehicle contains a safety defect, the manufacturer must repair the vehicle, replace the vehicle, or refund its purchase price less depreciation. 49 U.S.C. § 30120(a)(1)(A). Moreover, NHTSA may accelerate the remedy if it believes there is a risk of serious injury or death without acceleration. *Id.* § 30120(c)(3).

Here, NHTSA has been actively involved in every aspect of the recalls, from requiring Takata to issue Defect Information Reports to requesting expansions of the recalls from the OEMs, and assessing the adequacy of the repairs and the process for performing them.[29] Plaintiffs seek to hold Toyota liable for the manner in which they have performed the very recalls that NHTSA has approved and is currently supervising. For Plaintiffs to prevail on their failure to recall claim and obtain any form of relief—whether monetary or equitable—would require a determination by this Court that the recalls were inadequate or untimely, and thus would conflict with NHTSA's determinations and processes. *Cipollone*, 505 U.S. at 521; *Irving*, 136 F.3d at 767. Moreover, Plaintiffs' claim begs the question: if the recalls are inadequate and amount to negligence, then what remedy could this Court order now that would actually address this claim? It would appear that the only true remedy would be ordering some different and additional recall—relief which this Court is preempted from providing, as discussed more fully below. *See infra* § IX. For these reasons, even if not otherwise barred, Plaintiffs' negligent failure to recall claim is preempted and should be dismissed.

## IX.   PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF IN THE FORM OF A COURT-ORDERED NOTIFICATION AND RECALL SHOULD BE STRICKEN BECAUSE IT IS PREEMPTED BY FEDERAL LAW.

Plaintiffs ask the Court to provide "equitable and injunctive relief in the form of Court supervision of the Toyota Defendants' numerous recalls of the various Class Vehicles and/or the Defective Airbags installed in them, to ensure that all affected vehicles are recalled and that the recalls properly and adequately cure the dangers and risks posed." (SAC ¶ 960.) Plaintiffs also seek an injunction "requiring defendants to adequately and permanently repair the Class Vehicles

---

[29]   The scope of NHTSA's authority over motor vehicle safety issues generally and its specific involvement in determining the adequacy, scope and other aspects of the recalls of the Takata airbags is more fully discussed in Defendants' Motion to Stay on the Basis of Primary Jurisdiction. The doctrine of primary jurisdiction is an alternate basis on which this Court should dismiss or strike plaintiffs' recall-related claims and requests for relief.

33

and/or the Defendant Airbags installed in them, or provide a suitable alternative, free of charge." (*Id.* ¶ 993; *see also id.* ¶¶ 959, 1001 (generally requesting injunctive relief).) They further state that this case satisfies the requirements of Rule 23(b)(2) because defendants have "acted or refused to act," making "final injunctive" relief appropriate. (*Id.* ¶ 403.) Plaintiffs' various requests for Court-ordered or supervised recalls, or other injunctive relief, are completely preempted by the Safety Act because such intervention by this Court would thoroughly frustrate the federal scheme for the investigation and remediation of motor vehicle safety defects.

Given the comprehensive nature of the federal notification and remedy provisions and the unprecedented scope of NHTSA's exercise of its authority on the Takata issue, Congress could not have intended for motor vehicle manufacturers to be subject to potentially conflicting recall orders issued by individual courts, rather than through a single federal administrative procedure. Indeed, the federal court overseeing the multidistrict tire litigation held that the plaintiffs' claims for a court-ordered recall were preempted because "[a] parallel, competing system of court-ordered and supervised recalls would undermine and frustrate the Safety Act's objectives of prospectively protecting the public interest through a scheme of administratively enforced remedies." *In re Bridgestone/Firestone, Inc.*, 153 F. Supp. 2d 935, 944 (S.D. Ind. 2001); *see also Int'l Paper Co.*, 479 U.S. at 496-97 (federal law preempted Vermont common law claim because "'[f]or a number of different states to have independent and plenary regulatory authority over a single discharge would lead to chaotic confrontation between sovereign states' . . . .  It is unlikely—to say the least—that Congress intended to establish such a chaotic regulatory structure.") (citation omitted).

For these reasons, numerous courts around the country have concluded that they simply lack the authority to order a recall campaign to address asserted motor vehicle safety defects. *See, e.g., Bussian v. DaimlerChrysler Corp.,* 411 F. Supp. 2d 614, 629 (M.D.N.C. 2006); *Cox House Moving, Inc. v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 55490, *24-25 (D.S.C. Aug. 8, 2006); *Lilly v. Ford Motor Co.*, 2002 U.S. Dist. LEXIS 910, *15-16 (N.D. Ill. Jan. 17, 2002); *In re Bridgestone/Firestone, Inc.,* 153 F. Supp. 2d 935; *Coker v. DaimlerChrysler Corp.*, 2004 NCBC LEXIS 2, *15 (N.C. Super. Ct. Jan. 5, 2004). Indeed, given NHTSA's plenary authority and wide discretion in the investigation and remediation of motor vehicle safety defects, NHTSA is in the best position to investigate the Takata airbags, to require repairs, to evaluate the scope of

the recalls, to administer them, and to evaluate the effectiveness of the remedies. Accordingly, if the Court does not dismiss all of Plaintiffs' claims in their entirety, Toyota requests that all requests for injunctive relief be stricken from the SAC.[30]

## CONCLUSION

Plaintiffs' Second Amended Complaint is filled with legal boilerplate and allegations that have nothing to do with Toyota. Plaintiffs have failed to allege facts to support the essential elements of their claims, including, most critically, any allegations showing that Toyota had knowledge of the alleged defect at the time of manufacture and sale. For all of the reasons set forth herein, all of Plaintiffs' claims against Toyota should be dismissed. Importantly, this will not leave Plaintiffs without a remedy. Toyota remains fully committed to working with NHTSA on investigating and addressing the issues raised by Takata airbags, and to completely fulfilling the recalls that are already in place and any modifications of those recalls that become necessary as a result of Toyota's and NHTSA's investigation.

---

[30] Specifically, paragraphs 403, 959, 960, 993, 1001, 1030, 1061, 1548, 1917, and 1930 of the SAC should be stricken.

DB1/ 84099316.1

*/s/ Robert M. Brochin*_____

Terri S. Reiskin
treiskin@dykema.com
Dykema Gossett PLLC
1300 I Street, N.W., Suite 300 West
Washington, D.C. 20005
T: (202) 906-8600
F: (855) 216-7884
*(admitted pro hac vice)*

John C. Seipp, Jr.
jseipp@seippflick.com
Donald A. Blackwell
dblackwell@seippflick.com
Seipp Flick & Hosley
Two Alhambra Plaza, Suite 800
Miami, FL 33134
T: (305) 995-5600
F: (305) 995-6100

Robert M. Brochin
rbrochin@morganlewis.com
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL 33131-2339
T: (305) 415-3456
F: (305) 415-3001

***Counsel for Toyota Motor Sales, U.S.A., Inc.
and Toyota Motor Engineering &
Manufacturing North America, Inc.***

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By:    <u>*/s/  Robert M. Brochin*</u>

Robert M. Brochin

37