UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 2599
Master File No. 15-02599-MD-MORENO

IN RE: TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION


THIS DOCUMENT RELATES TO ECONOMIC DAMAGES
TRACK CASES
_____ /


**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN
SUPPORT OF SUBARU OF AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iv

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 1

STANDARDS GOVERNING THIS MOTION TO DISMISS ......................................... 8

ARGUMENT ..................................................................................................................... 8

    I.   PLAINTIFFS' CLAIMS ARE GOVERNED BY THE LAWS OF THEIR HOME STATES: FLORIDA (WALKER AND ARA'S "ASSIGNORS") AND ALABAMA (REILLY) ................................................................................................................. 8

    A. Under Pennsylvania Choice of Law Rules, Florida Law Governs Walker's Claims .... 10

    B. Under Florida Choice of Law Rules, Alabama Law Governs Reilly's Claims and Florida Law Governs the ARA's Claims ......................................................................... 13

    II.  PLAINTIFF WALKER'S CLAIMS MUST BE DISMISSED ............................................. 15

    A. Breach of Implied Warranty Under Florida's Commercial Code ................................ 15

        1. Lack of Privity ........................................................................................................ 15

        2. Lack of Notice ........................................................................................................ 17

        3. The Implied Warranty Expired Before Walker Purchased the Vehicle .................... 17

        4. The Time/Mileage Term of the NCLW Is Not Unconscionable ............................... 18

    B. The MMWA Claim Must Be Dismissed ...................................................................... 20

    C. The Florida Implied Warranty and MMWA Claims are Time-Barred ........................ 20

        1. Implied Warranty (Florida Commercial Code) ........................................................ 20

        2. MMWA ................................................................................................................... 20

        3. No Fraudulent Concealment or Equitable Estoppel Tolling ..................................... 21

    D. The Unjust Enrichment Claim Fails Under Florida Law ............................................. 22

ii

E.  The FDUTPA and Fraudulent Concealment Claims Fail to Meet the Pleading
Requirements of Rule 9(b), and Fail to State a Claim Under Rule 8............................ 23

F.  The Claims for Incidental and Consequential Damages, and for Punitive Damages,
Must Be Dismissed ....................................................................................................... 27

III.  PLAINTIFF REILLY'S CLAIMS MUST BE DISMISSED ............................................... 29

A.  Reilly Fails to State a Claim for Unjust Enrichment...................................................... 29

B.  The Fraudulent Concealment and ADTPA Claims Fail to Meet the Pleading
Requirements of Rule 9(b), and Fail to State a Claim Under Rule 8............................ 30

IV. PLAINTIFFS' CLAIMS  FAIL UNDER FLORIDA AND ALABAMA LAW
BECAUSE THE ALLEGED AIRBAG INFLATOR DEFECT NEVER MANIFESTED
IN THEIR VEHICLES ........................................................................................................ 32

V.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR ECONOMIC DAMAGES
AGAINST SOA.................................................................................................................... 33

VI. THIS ACTION SHOULD BE STAYED BASED UPON THE PRIMARY
JURISDICTION OF THE NATIONAL HIGHWAY TRAFFIC SAFETY
ADMINISTRATION (NHTSA) .......................................................................................... 33

VII. THE ARA CLAIMS MUST BE DISMISSED.................................................................... 33

CONCLUSION.............................................................................................................................. 34

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Ortho-McNeil-Janssen Pharms.*, 2013 Phila. Ct. Com. Pl. LEXIS 84 (2013)................. 12

*ADP, Inc. v. Morrow Motors, Inc.*, 2009 PA Super 52 (2009) ...................................................... 11

*Alban v. BMW NA.*, 2010 U.S. Dist. LEXIS 94038 (D.N.J. Sep. 8, 2010)................................... 28

*Alin v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 32584 (D.N.J. Mar. 31, 2010) .............. 28

*Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322 (Fla. 5th DCA 2007)................................ 22

*Avram v. Samsung Elecs. Am., Inc.*, 2013 U.S. Dist. LEXIS 97341 (D.N.J. July 11, 2013)........ 11

*Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392 (E.D. Pa. 2006)........................ 12

*Baughan v. Royal Caribbean Cruises, Ltd.*, 944 F. Supp. 2d 1216 (S.D. Fla. 2013) .................. 16

*Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007) ..................... 14

*Bill Branch Chevrolet v. Redmond*, 378 So. 2d 319 (Fla. 2d DCA 1980)................................... 28

*Black Diamond Props., Inc. v. Haines*, 69 So. 3d 1090 (Fla. 5th DCA 2011) ............................. 21

*Blair v. Wachovia Mortg. Corp.*, 2012 U.S. Dist. LEXIS 33941 (M.D. Fla. Mar. 14, 2012) ...... 24

*Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 61224 (D.S.C. Apr. 30, 2013)................................................................................... 10

*Blue Cross & Blue Shield*, 116 F.3d 1364 (11th Cir. 1997) ......................................................... 24

*Bluewater Trading LLC v. Fountaine Pajot, S.A.*, 2008 U.S. Dist. LEXIS 26513 (S.D. Fla. Apr. 2, 2008)................................................................................................................ 27

*BMW of N. Am. v. Gore*, 517 U.S. 559 (1996)............................................................................... 9

*Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999)............................................................................... 33

*Brisson*, 602 F. Supp. 2d 1227 (M.D. Fla. 2009), *aff'd in relevant part and rev'd on other grounds*, 349 F. App'x 433 (11th Cir. 2009)................................................................... 16, 18

*Budtel Assoc., LP v. Cont'l Cas. Co.*, 2006 PA Super 379 (2006) ................................................ 11

*Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321(M.D. Fla. Mar. 14, 2013) ............................... 17

iv

*Clear Marine Ventures, Ltd. v. Brunswick Corp.*, 2009 U.S. Dist. LEXIS 124904
  (S.D. Fla. Oct. 1, 2009) .......................................................................................... 28

*Coba v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 8366 (D.N.J. Jan. 22, 2013) ........................... 28

*Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617 (S.D. Fla. 2008) .................................... 14, 17

*Coilplus-Alabama, Inc. v. Vann*, 53 So. 3d 898 (Ala. 2010) ........................................................ 31

*Commonwealth v. Sanchez*, 552 Pa. 570 (1998) ........................................................................ 10

*Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716 (Ala. 2009) .................................................... 31

*Cooper v. Bristol-Myers Squibb Co.*, 2009 U.S. Dist. LEXIS 121095 (D.N.J. Dec. 30, 2009) ... 30

*Daigle v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 106172 (D. Minn. July 31, 2012) ............... 18

*Danny Lynn Elec. & Plumbing, LLC v. Veolia Es Solid Waste Southeast, Inc.*, 2011 U.S. Dist.
  LEXIS 78557 (M.D. Ala. July 19, 2011) ................................................................... 29

*David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309 (S.D. Fla. 2009) ........................... 14, 20

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) ...................................................... 23

*Dugas v. 3M Co.*, 2015 U.S. Dist. LEXIS 54861 (M.D. Fla. Apr. 27, 2015) .............................. 26

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400 (Fla. 3d DCA 2009) . 22

*Fed. Home Loan Corp. v. Brooks*, 2014 U.S. Dist. LEXIS 150977 (N.D. Ala. Oct. 23, 2014) ... 31

*Feheley v. Lai Games Sales, Inc.,* 2009 U.S. Dist. LEXIS 70430 (S.D. Fla., Aug. 11, 2009) . 8, 15

*Fincher v. Robinson Bros. Lincoln-Mercury, Inc.*, 583 So. 2d 256 (Ala. 1991) .......................... 32

*Florida Bldg. Inspection Servs. v. Arnold Corp.*, 660 So. 2d 730 (Fla. 3d DCA 1995) ............... 16

*Fowler v. Goodman Mfg. Co.,* 2014 U.S. Dist. LEXIS 172114 (N.D. Ala. Dec. 12, 2014)... 31, 32

*Friedman v. Am. Guardian Warranty Servs.*, 837 So. 2d 1165 (Fla. 4th DCA 2003) ................. 25

*Gable v. Boles*, 718 So. 2d 68 (Ala. Civ. App. 1998) .................................................................. 32

*Garcia v. Clarins USA, Inc.*, 2014 U.S. Dist. LEXIS 182426 (S.D. Fla. Sep. 9, 2014) ......... 17, 25

*Gayou v. Celebrity Cruises, Inc.*, 2012 U.S. Dist. LEXIS 77536 (S.D. Fla. Jun. 5, 2012) .......... 24

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350 (1997) ........................................ 13

v

*GMAC v. Laesser*, 718 So. 2d 276 (Fla. 4th DCA 1998) .............................................................. 26

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94 (3d Cir. 2013) ........................ 27

*Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175 (3d Cir. 2014) ............................................ 13

*Green v. General Motors Corp.*, 2003 N.J. Super. Unpub. LEXIS 13 (App. Div. 2003) ............ 28

*Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064
(S.D. Fla. 2003) ............................................................................................................................ 22

*Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012) ............................................ 23

*Hammer v. Vital Pharms., Inc.*, 2012 U.S. Dist. LEXIS 40632 (D.N.J. Mar. 26, 2012).............. 28

*Heindel v. Southside Chrsyler-Plymouth, Inc.*, 476 So. 2d 266 (Fla. 1st DCA 1985).................. 28

*Henry v. Jones,* 484 Fed. Appx. 290 (11th Cir. 2012) .................................................................... 8

*Herrod v. Metal Powder Products*, 886 F. Supp. 2d 1271 (D. Utah 2012) .................................. 27

*Horton v. Ross Univ. Sch. of Med.*, 2006 U.S. Dist. LEXIS 27463 (D.N.J. Mar. 30, 2006) ........ 28

*Hughes v. Alltel Corp.*, 2004 U.S. Dist. LEXIS 20705 (N.D. Fla. March 31, 2004)................... 19

*In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313 (E.D. Pa. 2011)....................... 10

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002)................................................ 13

*In re Colonial Bancgroup, Inc. Sec. Litig.*, 9 F. Supp. 3d 1258 (M.D. Ala. Mar. 27, 2014)........ 31

*In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214 (E.D. La. 1998) ................................ 9

*In re Managed Care Litig.*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003)........................................ 9, 24

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593
(E.D. La. 1998)............................................................................................................................ 16

*In re Nationsrent Rental Fee Litig.*, 2009 U.S. Dist. LEXIS 23662 (S.D. Fla. Feb. 23, 2009) .... 14

*In re OnStar Contract Litig.*, 2010 U.S. Dist. LEXIS 87471 (E.D. Mich. Aug. 25, 2010) ........... 9

*In Re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801
(S.D. Ohio 2012) ........................................................................................................................ 23

*Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 344 F.3d 1136 (11th Cir. 2003)16

*Jewell v. Seaboard Indus.*, 667 So. 2d 653 (Ala. 1995)................................................................ 31

*John Knox Vill. Of Tampa Bay, Inc. v. Perry*, 94 So. 3d 715 (Fla. 2d DCA 2012)...................... 19

*Joiner v. USAA Casualty Ins. Co.*, 2013 U.S. Dist. LEXIS 2420 (M.D. Ala. Jan. 8, 2013)......... 30

*Kagan v. Harley Davidson, Inc.*, 2008 U.S. Dist. LEXIS 32747 (E.D. Pa. Apr. 22, 2008) ......... 18

*Karhu v. Vital Pharms., Inc.*, 2014 U.S. Dist. LEXIS 26756 (S.D. Fla. Mar. 3, 2014), *aff'd* 2015 U.S. App. LEXIS 9576 (11th Cir. June 9, 2015) ..................................................................... 9

*Karnuth v. Rodale, Inc.*, 2005 U.S. Dist. LEXIS 14426 (E.D. Pa. July 18, 2005) ...................... 11

*Knox v. Samsung Elecs. America, Inc.*, 2009 U.S. Dist. LEXIS 53685 (D.N.J. June 24, 2009) .. 13

*Kreves v. Ortho-McNeil-Janssen Pharms.*, 2013 Phila Ct. Com. Pl. LEXIS 232 (Jun. 19, 2013)..................................................................................................................... 10, 11

*Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 3962 (S.D. Fla. Jan. 10, 2013)................................................................................................... 9, 13

*La Trace v. Webster*, 17 So. 3d 1210 (Ala. Civ. App. 2008)........................................................................................................... 32

*Landsman Packing Co. v. Continental Can Co.*, 864 F.2d 721 (11th Cir. 1989)........................ 19

*Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 211 F.R.D. 228 (S.D.N.Y. 2002) ................ 9

*Lewis v. City of Montgomery*, 2006 U.S. Dist. LEXIS 44378 (M.D. Ala. June 27, 2006)........... 30

*Licul v. Volkswagen Group of Am.*, 2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013)........................................................................................... 18, 19, 21, 23

*Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000).......................................................... 12

*Maison v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 35519 (N.D. Fla. July 7, 2005)................... 25

*Majdipour v. Jaguar Land Rover N. Am., LLC*, 2015 U.S. Dist. LEXIS 33377 (D.N.J. Mar. 18, 2015) ............................................................................................................ 11

*Maniscalco v. Brothers Int'l (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013) .............................. 12, 13

*Mason v. Chrysler Corp.*, 653 So. 2d 951 (Ala. 1995)................................................................ 31

*Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139 (Ala. 2011)...................... 29

*Matthews v. Am. Honda Motor Co.*, 2012 U.S. Dist. LEXIS 90802 (S.D. Fla. June 16, 2012) . 23

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .............................................. 9, 13

vii

*McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013) ................................................ 25

*McGee v. S-Bay Development, LLC*, 2012 U.S. Dist. LEXIS 30872 (M.D. Fla. Mar. 8, 2012) .. 24

*McKissic v. Country Coach, Inc.*, 2009 U.S. Dist. LEXIS 16478 (M.D. Fla. Feb. 27, 2009)...... 20

*McQueen v. BMW of North America*, LLC, 2014 U.S. Dist. LEXIS 21084
  (D.N.J. Feb. 20, 2014) ......................................................................................................... 26

*Meeks v. Xtreme Cycle Supply*, 2006 U.S. Dist. LEXIS 17348 (M.D. Ala Mar. 27, 2006) ......... 30

*Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221 (S.D. Fla. 2001) ................................... 9

*Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1212 (11th Cir. 2001) .............................. 22

*Moorer v. Hartz Seed Co.*, 120 F. Supp. 2d 1283 (M.D. Ala. 2000) ........................................... 30

*Morocco v. Bldg. Materials Corp of Am.*, 2013 U.S. Dist. LEXIS 4030 (D.S.C. Jan. 10, 2013). 11

*Murungi v. Mercedes Benz Credit Corp.*, 192 F. Supp. 2d 71 (W.D.N.Y. 2001) ....................... 21

*Myers v. Comm. Union Assurance Cos.*, 506 Pa. 492 (1984) ...................................................... 10

*Nobile v. Ford Motor Co.*, 2011 U.S. Dist. LEXIS 26766 (D.N.J. March 14, 2011) .................. 28

*Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333 (D.N.J. Feb. 19, 2010) ...................... 28

*Northern Assur. Co. v. Bayside Marine Constr., Inc.*, 2009 U.S. Dist. LEXIS 4033
  (S.D. Ala. Jan. 21, 2009) ..................................................................................................... 30

*Nova Info. Sys. v. Greenwich Ins. Co.*, 365 F.3d 996 (11th Cir. 2004) ....................................... 22

*Nova Information Systems, Inc. v. Greenwich Insurance Co.*, 365 F.3d 996 (11th Cir. 2004) .... 15

*O'Berry v. Gray*, 510 So. 2d 1135 (Fla. 5th DCA 1987)............................................................. 19

*Ocana v. Ford Motor Co.*, 992 So. 2d 319 (Fla. 3d DCA 2008) ................................................. 20

*Palaxar Group, LLC v. Williams*, 2014 U.S. Dist. LEXIS 138533 (M.D. Fla. Sept. 30, 2014)... 15

*Payne v. FujiFilm U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010).......... 9, 12

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla. N.A.*, 667 So. 2d 876
  (Fla 3d DCA 1996)................................................................................................................ 22

*Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327 (S.D. Fla. 2012)............. 23, 25

*Premier Real Estate Holdings, LLC v. Butch*, 24 So. 3d 708 (Fla. 4th DCA 2009)................... 18

*Rangoolwala v. Swacina*, 2008 U.S. Dist. LEXIS 99053 (S.D. Fla. Nov. 25, 2008) .................... 8

*Reid v. Unilever United States, Inc.*, 964 F. Supp. 2d 893 (N.D. Ill. Aug. 7, 2013).................... 30

*Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747 (Fla. 4th DCA 2006).................................... 16

*Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2006) ................................................ 26, 28

*Royal Typewriter Co., Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092 (11th Cir. 1983)........................................................................................................ 28

*RREF RB-AL SLSD, LLC v. Saxon Land Development*, 968 F. Supp. 2d 1133 (M.D. Ala. 2013) ........................................................................................................................ 29

*Rydzewski v. DePuy Orthopaedics, Inc*., 2012 U.S. Dist. LEXIS 187963 (S.D. Fla. Aug. 14, 2012).............................................................................................................................................. 16

*Saavedra v. Albin Mfg. Corp.*, 2012 U.S. Dist. LEXIS 9618 (M.D. Fla. Jan. 27, 2012).............. 21

*Sam v. Beaird*, 685 So. 2d 742 (Ala. App. 1996) ................................................................... 13, 30

*Selby v. Goodman Mfg. Co. LP*, 2014 U.S. Dist. LEXIS 82182 (N.D. Ala. June 17, 2014)........ 13

*Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317 (S.D. Fla. 2012)........................................... 21

*Smith v. Alza Corp.*, 400 N.J. Super. 529, 948 A.2d 686 (Super. Ct. 2008)................................ 13

*Snodgrass v. Ford Motor Co*., 2001 U.S. Dist. LEXIS 18555 (D.N.J. Sep. 4, 2001) ................. 18

*Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288 (S.D. Fla. 2008) ................ 24

*Southeast Laborers Health & Welfare Fund v. Bayer Corp.,* 655 F. Supp. 2d 1270 (S.D. Fla. 2009) ........................................................................................................................... 26

*Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 U.S. Dist. LEXIS 59991 (S.D. Fla. Apr. 30, 2014)................................................................................................... passim

*Spera v. Samsung Elecs. Am., Inc*., 2014 U.S. Dist. LEXIS 45073 (D.N.J. 2014)...................... 13

*State Farm Mut. Auto Ins. Co. v. Roach*, 945 So.2d 1160 (Fla. 2006) ........................................ 13

*Taterka v. Ford Motor Co*., 271 N.W.2d 653 (Wis. 1978).......................................................... 19

*Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187 (S.D. Fla. 2007)..................................... 14

*Torre v. BFS Retail & Commercial Operations, LLC*, 2008 U.S. Dist. LEXIS 99002 (S.D. Fla. Dec. 8, 2008)......................................................................................................... 19

*Valentine Ventures, LLC v. Gulf Coast Mineral, LLC,* 2015 U.S. Dist. LEXIS 13614
(S.D. Ala. Feb. 5, 2015) ........................................................................................... 30

*Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 U.S. Dist. LEXIS 74846
(E.D. Pa. June 10, 2015).......................................................................................... 8, 10

*Walewski v. Zenimax Media, Inc*., 2012 U.S. Dist. LEXIS 33181 (M.D. Fla. Jan. 27, 2012) 13, 14

*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc*., 2009 U.S. Dist. LEXIS 112773, *26
(D.N.J. Dec. 3, 2009) ............................................................................................... 28

*Wellington v. Chugach Fed. Solutions, Inc.,* 2014 U.S. Dist. LEXIS 100402
(N.D. Ala. June 13, 2014) ........................................................................................ 32

*Westinghouse Corp. v. Ruiz,* 537 So. 2d 596 (Fla. 3d DCA 1988)................................. 15

*White v. Volkswagen Group of Am., Inc*., 2013 U.S. Dist. LEXIS 25238
(W.D. Ark. Feb. 25, 2013) ....................................................................................... 17

*Williams v. Potamkin Motor Cars, Inc.*, 835 So. 2d 310 (Fla. 3d DCA 2002)........................... 21

*Wilson v. Hewlett-Packard Co*., 668 F.3d 1136 (9th Cir. 2012)................................................ 26

*Wyeth v. Blue Cross & Blue Shield of Ala*., 42 So. 3d 1216 (Ala. 2010) ..................................... 29

*Yarger v. ING Bank, Fsb*, 285 F.R.D. 308 (D. Del. 2012) ............................................... 11

*Zephyr Haven Health & Rehab Ctr., Inc. v. Hardin*, 122 So. 3d 916 (Fla. 2d DCA 2013) ......... 18

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001)................................................... 32

**Rules, Statutes and Other Authorities**

80 Fed. Reg. 32197 (June 5, 2015) ........................................................................................ 5

Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 *et seq*. ................................. passim

Fed. R. Civ. P. 9(b) ............................................................................................................ passim

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 1

Fla. Stat. § 501.211 ........................................................................................................... 11

Fla. Stat. § 672.607(3)........................................................................................................ 17

Fla. Stat. § 95.11(3)(k)....................................................................................................... 20

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ................. passim

New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. § 56:8-19 ........................................ passim

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*............................................................ 7

## PRELIMINARY STATEMENT

Defendant Subaru of America, Inc. ("SOA"), also incorrectly sued herein as "Subaru",[1] respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") as against it, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).[2]  For the reasons demonstrated below, the causes of action asserted against SOA fail to state claims upon which relief can be granted, and accordingly, should be dismissed.

## STATEMENT OF FACTS

Amidst the extensive Takata airbag litigation before this Court, the involvement of SOA is limited to purely economic damage claims by two consumer purchasers of used Subaru vehicles residing in Florida (Michael Walker) and Alabama (Regina Reilly), and a trade association of automotive recyclers (the Automotive Recyclers Association or "ARA"), purporting to sue as "assignee" of three Florida auto recyclers that allegedly re-sell airbags from salvaged vehicles.  Plaintiffs have not asserted any personal injury claim against SOA.  No Plaintiff asserting an economic damage claim against SOA claims to have experienced any problem or malfunction in the subject Subaru vehicles' airbags.  FHI, a Japanese corporation headquartered in Tokyo, designed and manufactured the subject Subaru vehicles which were equipped with passenger-side airbags designed and manufactured by Takata.  SOA was the U.S. importer and distributor of the subject Subaru vehicles.

The 439-page, 1,930 paragraph SAC asserts claims on behalf of 114 consumer Plaintiffs and the trade association, purporting to sue individually and on behalf of putative nationwide and statewide classes, against Takata and its affiliated entities ("Takata Defendants"), and various foreign and domestic manufacturers and distributors of automobiles equipped with Takata airbags alleged to contain an "Inflator Defect" ("Automotive Defendants").  As to the claims against SOA, **only two plaintiffs**, Michael Walker and Regina Reilly (collectively the "Subaru Plaintiffs") are alleged to own Subaru vehicles.  Plaintiff Walker, a Florida resident, allegedly

---

[1] "Subaru" is not included in the caption of the SAC although it is referred to in ¶ 64.  No such entity exists.

[2] Plaintiffs also assert claims against Fuji Heavy Industries, Ltd. ("FHI"), a Japanese corporation. Plaintiffs have not served FHI in this litigation.  Accordingly, this motion to dismiss is brought only by SOA.

1

purchased a nine-year old, substantially used 2005 Subaru Legacy in February 2014 from an independent third-party in Orlando, Florida (SAC ¶ 176).  Plaintiff Reilly, an Alabama resident, allegedly purchased a nine-year-old, substantially used 2004 Subaru Legacy Outback on July 1, 2013 from an independent third-party in Eufaula, Alabama (¶ 151).  Neither Plaintiff claims to have purchased his/her vehicle from SOA or even an authorized Subaru dealer (¶ ¶ 151, 176).

As to Plaintiff ARA, while generally claiming its "assignor" Florida recyclers purchased unidentified "Recalled Vehicles," there is no allegation that these entities ever purchased a subject Subaru vehicle or airbag (¶¶ 189-93, 330-39).  ARA's claims are addressed in the Automotive Defendants' Joint Motion to Dismiss the ARA's claims, in which SOA joins and respectfully incorporates herein by reference.

The Subaru Plaintiffs' claims, detailed *infra*, sound generally in common law and statutory fraud, breach of implied warranty of merchantability and/or the Magnuson-Moss Warranty Act (MMWA), and unjust enrichment.  Plaintiffs' claims are premised upon allegations that their vehicles contained an airbag "Inflator Defect" because ammonium nitrate was used as the airbag propellant.  Plaintiffs, although not claiming to ever have tried to re-sell their vehicles, or to ever have experienced a problem with the airbags, claim that the alleged defect diminished their vehicles' value and caused them to pay more than they should have at purchase.  Plaintiffs' claims, built upon conclusory allegations often lumping Defendants together without individually pleaded facts, are premised upon the theory that each Defendant was purportedly aware of and deliberately concealed the Inflator Defect from Plaintiffs and the public (¶¶ 32-33).  But despite the various allegations against many differently situated Defendants, no facts are pleaded to support Plaintiffs' claims against SOA.

The SAC is devoid of any factual allegation establishing when, it is claimed, SOA purportedly became aware of the alleged Inflator Defect in the subject Subaru vehicles' airbags. Amidst conclusory allegations of certain Defendants' pre-sale knowledge, the SAC pleads no facts demonstrating that SOA knew of the alleged Inflator Defect in Subaru vehicles (a) prior to the original retail sale of the Subaru Plaintiffs' 2004 and 2005 vehicles, or even (b) prior to the Subaru Plaintiffs' purchase of those vehicles "used" in July 2013 and February 2014 after they had been on the road exhibiting no pleaded problems for nine years.

Likewise, amidst conclusory allegations claiming that certain Defendants knew of incidents in which airbag inflators in their vehicles allegedly ruptured or "exploded," the SAC pleads no facts establishing that **any** Subaru putative class vehicle was ever involved in such an incident.  In 439 pages of pleading, the SAC's sole reference to Subaru in relation to an airbag-related incident consists of a cryptic, bare-bones allegation that on November 1, 2003, Charlene Weaver, a passenger in a 2004 Subaru Impreza, "was killed in a Takata airbag-related accident" (¶ 226).  This naked allegation establishes no notice whatsoever.  It lacks any facts establishing the nature of the alleged accident and its circumstances, that the vehicle's airbag even deployed, let alone deployed improperly, what injuries were sustained, and more importantly, that anything relating to the airbag, much less a so-called Inflator Defect, had anything to do with Ms. Weaver's injuries or death.  The SAC also fails to plead, even conclusorily, when it is claimed that SOA learned of this accident.  It certainly does not plead facts showing that SOA had knowledge of the accident (much less any involvement of a Subaru airbag in the passenger's death) prior to the original or used-car sales of the Subaru Plaintiffs' vehicles.

There are no pleaded facts supporting Plaintiffs' conclusory allegations which blanketly assert that each Automotive Defendant obtained actual pre-sale knowledge of an alleged Inflator Defect in *its* vehicles' airbags, by virtue of the fact that different vehicles manufactured/sold by another Automotive Defendant may have experienced problems with Takata airbags in those particular vehicles (e.g., ¶ 32).  Indeed, the allegations of Plaintiffs which do contain facts, **establish that SOA did not have pre-sale knowledge of the existence of the alleged airbag Inflator Defect in Subaru vehicles**.  For example, the SAC alleges:

(1)  In late 2009 and early 2010, Takata explicitly denied providing any defective airbags to vehicle manufacturers other than Honda (¶¶ 252-57),

(2)  In response to NHTSA [National Highway Traffic Safety Administration] requests regarding Honda's recalls, Takata stated that it had "not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by [Honda] Recalls…to any customers other than Honda.  The physical characteristics of the inflator housing used in Honda vehicles subject to these recalls are unique to Honda" (¶ 257),

(3)  "It was not until its April 2013 Report that Takata finally admitted that the defective inflators were installed as original equipment in vehicles manufactured by companies other than

Honda, including Toyota, Nissan, Mazda, and BMW.  Takata did not know, however, how many inflators were installed as original equipment in vehicles manufactured by companies other than Honda" (¶ 278), and

(4)  On June 11, 2014, "Takata informed NHTSA that it believes that an [sic] number of the inflators identified above were provided to the following vehicle manufacturers for use in vehicles sold in the United States…:  BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota…If we determine that any of those inflators were sold to other vehicle manufacturers, we will let you know promptly" (¶ 284).

These and other factual allegations show that SOA was **not aware** of the alleged Inflator Defect in Subaru vehicles prior to the original retail sale of the Subaru Plaintiffs' vehicles in 2004, or even the Subaru Plaintiffs' second-hand purchases of their vehicles in July 2013 and February 2014.[3]

In similar conclusory fashion, the SAC alleges that the Automotive Defendants received notice of the Inflator Defect through purported yet unidentified "publicly available NHTSA complaints," starting "as early as September 2005," which allegedly showed "dozens of incidents of Takata airbags inadvertently deploying in the Class Vehicles, an event that *may be* tied to the unstable and volatile ammonium nitrate propellant" (¶ 308; emphasis added).  This allegation does not establish that SOA had any pre-sale notice of the alleged Inflator Defect.  It contains no facts establishing what the so-called NHTSA complaints were with respect to Subaru vehicles, who made them, when they were made, what Subaru vehicles if any were involved, what the so-called events were, and when and how it is claimed that SOA became aware of the purported complaints.  Moreover, both Subaru Plaintiffs' 2004 and 2005 vehicles were sold to the original retail purchasers prior to the September 2005 time in which the so-called NHTSA complaints of non-deployment allegedly began.  Plaintiff ARA does not even allege the purchase or re-sale of a Subaru vehicle.  Finally, the allegation itself is speculative, positing merely that the unidentified complaints of non-deployment "may be" tied to ammonium nitrate.

---

[3] Plaintiff Walker's Florida Division of Motor Vehicles records note that the initial sale of his 2005 Subaru Legacy occurred in August 2004.  *See* Exhibit 1A to SOA's Request for Judicial Notice ("RJN").  The Alabama Motor Vehicle Division title records of the Alabama Department of Revenue indicate that when Plaintiff Reilly purchased her vehicle used in July 2013, the vehicle's mileage was 164,920.  *See* Exhibit 1B to RJN.

The SAC fails to set forth facts plausibly establishing any alleged instance of fraudulent misrepresentation or omission attributable to SOA.  The SAC fails to establish the required elements of any fraudulent misrepresentation or omission claim against SOA under Rule 8's pleading standards, and certainly fails to plead particularized facts establishing the "who, what, when, where and how" of any alleged fraudulent misrepresentation or concealment of SOA as required under Fed. R. Civ. P. 9(b).  Plaintiff Reilly's conclusory allegation that she viewed or heard unspecified advertisements generally promoting Subaru vehicles as "dependable," "reliable" and "safe" (¶ 151) is devoid of facts, and such statements, in any event, constitute non-actionable puffery.  Plaintiff Walker does not even claim to have viewed, read or heard any such advertisements (¶ 176).  No Subaru Plaintiff, including the ARA "assignor" recyclers, claims to have viewed, read or heard any of the generalized puffery-type website and brochure statements alleged in ¶ 310g as a predicate for their fraud-based claims against SOA.

NHTSA has taken an unprecedented controlling and supervisory role in the investigation and recall of Takata airbags.  NHTSA has also instituted a Coordinated Remedy Program to address and accelerate the process for what Takata has finally revealed to be approximately 34 million airbag inflators that may require replacement.  See 80 Fed. Reg. 32197, 32198 (June 5, 2015).  NHTSA's comprehensive involvement includes supervision and management of the determination of the "root cause" of the alleged Takata inflator issues, including entering in February 2015 a preservation order with Takata regarding the inspection, testing and analysis of returned inflators from the field, and working with Takata and the Automotive Defendants to determine the nature and scope of appropriate recalls.  SOA has been cooperating and working closely with NHTSA, Takata, and the other Automotive Defendants, under NHTSA's supervision, on an ongoing basis in this regard.  Based on information belatedly provided by Takata in 2014, and under NHTSA's comprehensive supervision of the Takata airbag-related recalls, SOA instituted several recalls, beginning in August 2014, involving the front passenger side airbag inflators of certain Subaru vehicles.  SOA has joined in, and respectfully incorporates by reference, the Joint Motion to Stay this Action Based on the Primary Jurisdiction of NHTSA.

There is no allegation that the airbags in the Subaru Plaintiffs' vehicles ever malfunctioned or manifested any sign of a defect, much less the alleged Inflator Defect, during the ten year period in which these vehicles have been on the road.  Walker, in fact, admits that

his vehicle's airbag inflator and related components were replaced on October 31, 2014 pursuant to a recall notice he received in September 2014 (¶ 176).  Reilly's vehicle had been driven 164,920 miles by the time of her purchase on July 1, 2013, and there is no allegation that it ever experienced or manifested an airbag Inflator Defect.  *See* Exh. 1B to RJN.  And, as stated *supra*, ARA does not claim its recycler "assignors" purchased a Subaru vehicle, much less experienced any purported airbag defect.

No Subaru Plaintiff (including ARA) pleads any specific out-of-pocket expenses resulting from the alleged Inflator Defect.  No Subaru Plaintiff claims to have ever attempted to sell a subject Subaru vehicle and suffered a diminution in value.  Walker, in fact, alleges his vehicle's airbag inflator and related components were already replaced with new ones pursuant to SOA's NHTSA-approved recall.  The SAC likewise pleads no facts establishing, nor any basis to establish, that Plaintiffs Walker and Reilly paid more than they should have in their second-hand purchases of nine-year-old vehicles from independent private parties.  Failure to plead damages necessitates dismissal of Plaintiffs' claims.

SOA issued a written New Car Limited Warranty (NCLW) which accompanied the original retail sale of the Subaru Plaintiffs' vehicles.  *See* relevant excerpts of the NCLWs, attached hereto as Exhs. A (for Reilly's 2004 vehicle) and B (for Walker's 2005 vehicle).  The durational term of the NCLWs was 3 years or 36,000 miles, whichever occurs first, from the date the car is delivered to the first retail purchaser (Exh. A, p.6, Exh. B, p.6).  In addition, the NCLWs expressly and conspicuously provide: "**ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE END AT THE SAME TIME COVERAGE ON THE PARTICULAR COMPONENT ENDS**" (Exh. A, p.12, Exh. B, p.12).

Plaintiff Walker's 2005 Subaru Legacy was originally sold to the first retail purchaser in 2004.  As such, the written NCLW applicable to his vehicle, and correspondingly any implied warranties of merchantability, expired, at the latest, more than six years before he purchased his vehicle used in February 2014.

The NCLWs also contained a conspicuous disclaimer of liability "**FOR ANY LOSS OF USE OF THE CAR; FOR ANY ALTERNATE TRANSPORTATION, LODGING, FOOD OR TELEPHONE EXPENSES; FOR DAMAGE TO GOODS, COMMERCIAL LOSS,**

LOSS OF TIME OR CONVENIENCE; OR FOR ANY OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES." (Exh. A, p.15, Exh. B, p.15; emphasis in original).

As to SOA, the Subaru Plaintiffs assert "nationwide" fraudulent concealment and unjust enrichment class claims, on behalf of "consumers," based on what they claim to be a "uniform" nationwide common law (Count 38, ¶¶ 883-88). In the alternative, Plaintiffs seek to apply the laws of New Jersey, or in the further alternative, the laws of the states in which they reside and/or purchased their vehicles (Counts 36 and 38, ¶¶ 863-76, 883-88). The "Consumer Plaintiffs" further assert "nationwide" class claims against SOA specifically under New Jersey's breach of implied warranty of merchantability statute, N.J. Stat. Ann. §12a:2-314, and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq. (Counts 37 and 39, ¶¶ 877-82, 889-909),[4] notwithstanding that no Subaru Plaintiff resides or purchased a subject vehicle in New Jersey. A "nationwide federal" class claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (MMWA), is also asserted on behalf of residents of various states including Florida (Walker) but not Alabama (Reilly) (Count 3, ¶¶ 444-62). In addition, "state sub-class claims" are asserted against SOA under Florida law (Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* [FDUTPA] and the Florida implied warranty of merchantability statute, Fla. Stat. § 672.314) (Counts 47-48, ¶¶ 1009-37) and under Alabama law (Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 *et seq.* [ADTPA]) (Count 49, ¶¶1038-62). Finally, the ARA purports to assert "nationwide" automotive recycler class claims for fraudulent misrepresentation and concealment (Count 104, ¶¶ 1900-10), statewide recycler sub-class claims under various state deceptive practices statutes including FDUTPA (Count 105, ¶¶ 1911-17) and a Florida recycler sub-class claim under FDUTPA (Count 106, ¶¶ 1918-30).[5]

The fact that Plaintiffs plead their claims as "class claims" has no bearing on this Motion to Dismiss. It is well-settled that in the absence of valid claims of their own, Plaintiffs cannot represent a class. *Feheley v. Lai Games Sales, Inc.,* 2009 U.S. Dist. LEXIS 70430 at *20 (S.D.

---

[4] These claims are brought solely and specifically under the stated New Jersey statutes. No other law is sought to be applied by Plaintiffs in these causes of action.

[5] As stated *supra*, the grounds for dismissal of ARA's claims are addressed in the Automotive Defendants' Joint Motion to Dismiss the ARA claims ("Joint ARA Dismissal Motion"), in which SOA joins and incorporates herein by reference. ARA allegations are also addressed in this Brief with respect to choice of law.

Fla., Aug. 11, 2009) (Moreno, J.); *Rangoolwala v. Swacina*, 2008 U.S. Dist. LEXIS 99053 at *12 (S.D. Fla. Nov. 25, 2008) (Moreno, J.).  Therefore, the action against SOA rests entirely upon the Subaru Plaintiffs' and ARA's individual claims which, for the reasons discussed below, and in the Joint ARA Dismissal Motion, fail to state a claim upon which relief can be granted.

## STANDARDS GOVERNING THIS MOTION TO DISMISS

The standards governing this Motion are well-settled:

> We . . . accept [] the factual allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).  We do not, however, accept as true "unwarranted deductions of fact" or legal conclusions.  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).  Moreover, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Stating a plausible claim for relief requires pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  The mere possibility that the defendant may have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss.  *Id.*

*Henry v. Jones,* 484 Fed. Appx. 290, 291 (11th Cir. 2012).

In addition, Plaintiffs' statutory and common-law fraud claims are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b), discussed *infra*.

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS ARE GOVERNED BY THE LAWS OF THEIR HOME STATES:  FLORIDA (WALKER AND ARA'S "ASSIGNORS") AND ALABAMA (REILLY)

Plaintiffs are wrong in asserting that "the law across all states and territories is uniform and does not contain any true conflicts with respect to Plaintiffs' claims for unjust enrichment and fraudulent concealment" (¶¶ 340, 863 and 883).  The laws of fraudulent concealment and unjust enrichment differ significantly among the states.  *See Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 U.S. Dist. LEXIS 74846 (E.D. Pa. June 10, 2015) (in class action on behalf of consumer purchasers of drugs, court found true conflict existed between unjust enrichment and consumer fraud laws of 26 jurisdictions, and held that under Pennsylvania choice of law rules the

8

applicable law was the state where each purchase was made, not that of defendants' location); *Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002) (fraudulent concealment elements vary from state to state "including mitigation, causation, reliance, and the duty to disclose"); *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998) ("there are significant variations in the law of fraudulent concealment from state to state"); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 350-51 (D.N.J. 1997) (same); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("the elements necessary to establish a claim for unjust enrichment also vary materially from state to state"); *Karhu v. Vital Pharms., Inc.*, 2014 U.S. Dist. LEXIS 26756, *24-25 (S.D. Fla. Mar. 3, 2014), *aff'd* 2015 U.S. App. LEXIS 9576 (11th Cir. June 9, 2015) (same); *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 3962, *31 (S.D. Fla. Jan. 10, 2013) (same); *In re OnStar Contract Litig.*, 2010 U.S. Dist. LEXIS 87471, *43 (E.D. Mich. Aug. 25, 2010) (noting material differences in state consumer protection laws and implied warranty laws).

There is likewise no uniform "federal" law under the MMWA. Courts steadfastly hold that MMWA claims are derivative of each state's warranty laws which differ throughout the country. *See Karhu*, *supra*, 2014 U.S. Dist. LEXIS 26756 at *23 ("varied state laws would govern the MMWA claims of class members across the country, imposing different legal requirements and overshadowing the common factual bases of the claims"); *Payne v. FujiFilm U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 52808, *27-31 (D.N.J. May 28, 2010).

Accordingly, this Court must undertake a choice of law analysis to determine which state's law applies to the individual claims of the Subaru Plaintiffs and the ARA. As shown *infra*, the applicable choice of law rules dictate that the laws of the home states of Walker, Reilly and the ARA's three so-called "assignor" recyclers (Rigby's Auto Parts & Sales, Inc., M&K Used Auto Parts, Inc. and Quarno's Auto Salvage) govern their claims, and not the law of New Jersey, whose only connection to such claims is the location of SOA's headquarters.[6]

---

[6] The Due Process Clause of the U.S. Constitution limits a state's ability to apply its laws nationwide. *See BMW of N. Am. v. Gore*, 517 U.S. 559, 571-72 (1996); *see also In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003) (Moreno, J.) ("None of the state statutes invoked by Plaintiffs expressly apply beyond the borders of the states that enacted them. These are fundamental substantive limits on the scope of state regulatory jurisdiction—limits that the procedural vehicle of a class action cannot justify transgressing"); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228-29 (S.D. Fla. 2001) ("under [*Phillips Petroleum Co. v.*]

9

A.  **Under Pennsylvania Choice of Law Rules, Florida Law Governs Walker's Claims**

Pennsylvania's choice of law analysis (which governs because Walker originally filed in the Eastern District of Pennsylvania)[7] turns upon which state has "a priority of interest in application of its rule of law"—an inquiry which squarely points to Florida, the state in which Walker resides, purchased and registered his vehicle, had his vehicle's airbag inflator replaced pursuant to a recall, would have received the claimed misrepresentations, and sustained the alleged economic injury. *Myers v. Comm. Union Assurance Cos.*, 506 Pa. 492 (1984); *see also Commonwealth v. Sanchez*, 552 Pa. 570, 575-76 (1998). Under Pennsylvania choice of law rules, courts have repeatedly held that in class actions grounded in consumer protection statutes, each class member's claims are governed by the laws of his or her home state. *See Vista Healthplan, Inc.,* 2015 U.S. Dist. LEXIS 74846 (E.D. Pa. June 10, 2015); *Kreves v. Ortho-McNeil-Janssen Pharms.*, 2013 Phila Ct. Com. Pl. LEXIS 232 (Jun. 19, 2013) (applying consumer fraud statute of plaintiff's home state, not that of the state where defendants allegedly conspired to fraudulently conceal information); *Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig*., 2013 U.S. Dist. LEXIS 61224, *22-25 (D.S.C. Apr. 30, 2013) (under Pennsylvania choice of law rules, consumer protection laws of plaintiff's home state governed, not that of New Jersey, where defendant was headquartered); *In re Actiq Sales & Mktg. Practices Litig*., 790 F. Supp. 2d 313, 321 (E.D. Pa. 2011) ("…in the context of class action suits involving state consumer protection laws, the courts have determined that 'under Pennsylvania choice of law principles, each class member would be subject to the consumer fraud statutes of the member's home state because 'that state would have the paramount interest in applying its laws

---

*Shutts*, the Due Process Clause of the Constitution prohibits application of FDUTPA to a nationwide class in this case…For the vast number of putative class members, Florida's only contacts with this litigation is that New Piper manufactures aircraft in Florida"). State law is "presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918).

[7] Walker first filed suit in the Eastern District of Pennsylvania (2:14-cv-06391) before his case was transferred, and thus Pennsylvania choice of law rules apply as to him. *See Consolino v. Bayer Corp.*, 2011 U.S. Dist. LEXIS 152968, *28 (S.D. Fla. Feb. 3, 2011) ("In a multi-district litigation case, the transferee court applies the choice of law rules of the state in which the action was filed"); *In re Managed Care Litig*., 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003) (Moreno, J.) (same).

to protect its consumers'") (citations omitted); *Karnuth v. Rodale, Inc*., 2005 U.S. Dist. LEXIS 14426, *12 (E.D. Pa. July 18, 2005) (same).

"[T]he first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states…If a conflict is found, it must be determined which state has the greater interest in the application of its law." *Budtel Assoc., LP v. Cont'l Cas. Co*., 2006 PA Super 370, 9 (2006) (citations omitted); *see also ADP, Inc. v. Morrow Motors, Inc*., 2009 PA Super 52, *5 n.4 (2009) (same).  Here, there is a true conflict between the laws of Florida and New Jersey relative to Walker's claims.  FDUTPA's measure of recovery is "actual damages, plus attorney's fees and court costs," Fla. Stat. § 501.211, while a prevailing plaintiff under the New Jersey Consumer Fraud Act (NJCFA) shall receive "threefold the damages sustained [plus] reasonable attorneys' fees, filing fees and reasonable costs of suit," N.J. Stat. § 56:8-19.  Further, FDUTPA has no scienter requirement, whereas the NJCFA requires a showing of knowledge and intent for omission claims.  *See Morocco v. Bldg. Materials Corp of Am*., 2013 U.S. Dist. LEXIS 4030, *32-34 (D.S.C. Jan. 10, 2013) (finding a true conflict between New Jersey's and Florida's consumer protection statutes).  A conflict also exists between Florida and New Jersey common law fraud claims, including the statute of limitations.  *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2015 U.S. Dist. LEXIS 33377, *28-29 (D.N.J. Mar. 18, 2015).  Florida and New Jersey implied warranty law (as well as the MMWA claim derivative of state warranty law) also differ materially since privity of contract is required under Florida law, *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 U.S. Dist. LEXIS 59991, *22 (S.D. Fla. Apr. 30, 2014), but not under New Jersey law.  *See Avram v. Samsung Elecs. Am., Inc*., 2013 U.S. Dist. LEXIS 97341, *32 (D.N.J. July 11, 2013).  The law of unjust enrichment differs between Florida and New Jersey as well.  *See Yarger v. ING Bank, Fsb*, 285 F.R.D. 308, 324-25 (D. Del. 2012).

Since a true conflict exists, "[t]he relevant inquiry is the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law." *Kreves v. Ortho-McNeil-Janssen Pharms*., 2013 Phila. Ct. Com. Pl. LEXIS 232, *74-79 (2013) (quotations omitted).  In making this assessment, Pennsylvania conflicts rules employ a methodology combining the significant contacts approach and government interest analysis of Restatement

(Second) of Conflicts,[8] considering, among others, the following factors: (a) the relevant policies of interested states and the relative interests of those states in the determination of the particular issue, (b) the place where the plaintiff acted in reliance upon the defendant's representations, (c) the place where the plaintiff received the representations, (d) the place where the defendant made the representations, (e) the residence, place of incorporation, and place of business of the parties, (f) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (g) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. *See A.B. v. Ortho-McNeil-Janssen Pharms.*, 2013 Phila. Ct. Com. Pl. LEXIS 84, *73-4 (2013); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 214 (E.D. Pa. 2000).

These factors warrant the application of Florida law.  Walker, a Florida resident, purchased his vehicle in Florida from a Florida third-party, would have received any purported misrepresentation at issue in Florida, had his vehicle registered in Florida, had his vehicle repaired pursuant to a recall in Florida, and sustained his alleged economic injuries in Florida. Additionally, although headquartered in New Jersey, SOA is licensed to do business in Florida. While Walker does not allege to have seen, read or heard any representation of SOA emanating from New Jersey, if he did, it would have been received in Florida where he resides and bought his vehicle. *Maniscalco v. Brothers Int'l (USA) Corp.*, 709 F.3d 202, 211 (3d Cir. 2013).  In any case, the Defendant's state of incorporation alone is insufficient to overcome the overwhelming other contacts with the state of Florida.  *Payne v. FujiFilm U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 52808, *24 (D.N.J. May 28, 2010) ("even if Defendant has a principal place of business in New Jersey, that is not by itself sufficient to establish that New Jersey has the most significant relationship to Plaintiffs' consumer fraud claims.  Rather, the court must examine the state's relationship within the context of the consumer fraud claims").

Florida clearly has the significant contacts and the paramount state interest in applying its laws to Walker's claims.  *See also Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006) ("States have a strong interest in applying their own consumer protection laws to their citizens").  In contrast, New Jersey has little, if any, interest in seeing its laws applied to a Florida resident involved in a Florida transaction.  *See Grandalski v. Quest*

---

[8] The guiding factors are set out in §§ 6, 145, and 148.

*Diagnostics Inc.*, 767 F.3d 175 (3d Cir. 2014); *Maniscalco v. Brothers Int'l (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013); *Spera v. Samsung Elecs. Am., Inc.*, 2014 U.S. Dist. LEXIS 45073, *14 (D.N.J. 2014) (adhering to the "long line of cases in this Circuit holding that a consumer's home state law should apply to transactions that bear no relationship to New Jersey other than the location of the defendant's headquarters") (quotations omitted).  *See also Mazza*, 666 F.3d at 594 and *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002) (rejecting "place of headquarters" choice of law approach).

### B.  Under Florida Choice of Law Rules, Alabama Law Governs Reilly's Claims and Florida Law Governs the ARA's Claims

Florida choice of law rules[9] utilize *lex loci contractus* for contract-based claims (such as breach of implied warranty, unjust enrichment and MMWA), and the Restatement's "most significant relationship" test in other conflicts circumstances.  *See State Farm Mut. Auto Ins. Co. v. Roach*, 945 So.2d 1160 (Fla. 2006); *Walewski v. Zenimax Media, Inc.*, 2012 U.S. Dist. LEXIS 33181, *20-21 (M.D. Fla. Jan. 27, 2012).  Plaintiff Reilly's unjust enrichment and fraudulent concealment claims are governed by the laws of Alabama, the place where Reilly, an Alabama resident, entered into contract and purchased her vehicle.[10]  *See Walewski v. Zenimax Media,*

---

[9] Since Reilly was first joined as a Plaintiff in the SAC (filed in this Court), the law applicable to her claims is determined by Florida choice of law rules.  Additionally, the ARA's action was originally instituted in this Court, 1:15-cv-20520, so the law applicable to ARA's claims is likewise determined by Florida choice of law rules.

[10] There are significant differences between Alabama and New Jersey law of unjust enrichment, creating a true conflict.  *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 3962, *31-33 (S.D. Fla. Jan. 10, 2013) (explaining that under Alabama law, unjust enrichment requires "unconscionable conduct," whereas under New Jersey law, it "is not necessary to show that the party unjustly enriched committed any wrongdoing").  The elements of fraudulent concealment also differ in that New Jersey law requires intent to cause reliance, whereas Alabama law does not.  *Compare Knox v. Samsung Elecs. America, Inc.*, 2009 U.S. Dist. LEXIS 53685, *13-14 (D.N.J. June 24, 2009) with *Selby v. Goodman Mfg. Co.* LP, 2014 U.S. Dist. LEXIS 82182, *15 (N.D. Ala. June 17, 2014).  The ADTPA and NJCFA also differ, creating a true conflict.  *Smith v. Alza Corp.*, 400 N.J. Super. 529, 551, 948 A.2d 686, 700 (Super. Ct. 2008).  For example, scienter or an intent to deceive is not required under the NJCFA, *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605, 691 A.2d 350, 365 (1997), but is required under the ADTPA.  Ala. Code. § 8-19-13; *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. App. 1996).  Furthermore, under the ADTPA treble damages are discretionary, Code of Ala. § 8-19-10, whereas under the NJCFA, treble damages are mandatory, N.J. Stat. § 56:8-19 ("the court shall…award threefold the

*Inc.*, 2012 U.S. Dist. LEXIS 33181, *20-21 (M.D. Fla. Jan. 27, 2012); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1314-17 (S.D. Fla. 2009).  Reilly's ADTPA claim is specifically brought under Alabama law, and the purported "nationwide class claims" under the New Jersey Consumer Fraud Act and New Jersey Implied Warranty statute cannot apply to her as an Alabama resident and purchaser.  *See*, *e.g.*, *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1365-66 (S.D. Fla. 2007).

In addition, applying the Restatement factors discussed *supra*, courts have repeatedly held that under Florida choice of law rules, in class actions grounded in consumer protection statutes or common-law fraud, the governing law is that of the state where Plaintiff resides, received the alleged misrepresentations, acted in reliance of those representations, and sustained the alleged injury.  *See In re Nationsrent Rental Fee Litig.*, 2009 U.S. Dist. LEXIS 23662, *17-20 (S.D. Fla. Feb. 23, 2009); *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 626-27 (S.D. Fla. 2008); *Berry v. Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361, 1364-6 (S.D. Fla. 2007). This conclusion is particularly strong because Florida choice of law principles place presumptive—usually decisive—importance on the place of the alleged injury.  *See Walewski v. Zenimax Media, Inc.*, 2012 U.S. Dist. LEXIS 33181, *21-25 (M.D. Fla. Jan. 27, 2012) (where Florida consumer sued Maryland-based defendant alleging defects in video games under Maryland consumer fraud, warranty and unjust enrichment law, court held that the laws of plaintiff's home state—Florida—governed under Florida choice of law rules).

Alabama law applies to Reilly's claims.  Reilly resides in Alabama, received the alleged misrepresentations in Alabama, purchased her vehicle in Alabama, registered her vehicle in Alabama, and allegedly sustained economic injuries in Alabama.  *See Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1191-92 (S.D. Fla. 2007) (Moreno, J.) (emphasizing the significance of the place of injury under Florida choice of law rules).  In addition, SOA is licensed to do business in Alabama.  As discussed above, the only contact New Jersey has is the location of SOA's headquarters, which courts steadfastly hold to be insufficient, and New Jersey has no real interest in applying its law to this out-of-state Plaintiff.  *See Berry,* 497 F. Supp. 2d at 1365-66.

---

damages").  The ADTPA has an election of remedies provision, Code of Ala. § 8-19-15, whereas the NJCFA does not.

Similarly, Florida law applies to the ARA's claims, which derive from claims of three purported "assignor" recyclers,[11] two of which are alleged to be Florida corporations, and all three of which have their principal places of business in Florida, allegedly purchased unidentified "Recalled Vehicles," presumably in Florida, and sustained their alleged economic injuries in Florida (¶¶ 191-93). The SAC pleads no facts warranting the application of any state's law other than Florida.

The inapplicability of New Jersey law to the Subaru Plaintiffs' claims requires dismissal of the claims asserted under the New Jersey implied warranty of merchantability statute (Count 37) and the New Jersey Consumer Fraud Act (Count 39). *Palaxar Group, LLC v. Williams*, 2014 U.S. Dist. LEXIS 138533, *23 n.15 (M.D. Fla. Sept. 30, 2014) ("The determination that Florida law applies disposes of Count IV, which is a Virginia statutory claim…Accordingly, that count will be dismissed as against all Defendants and will not be discussed further in this Order").

The claims of fraudulent concealment (Count 36), unjust enrichment (Count 39) and MMWA (Count 3) are governed by the laws of Florida for Walker, and Alabama for Reilly (with the exception of the MMWA Count which is not asserted on behalf of Alabama residents, and as such, does not apply to Reilly). The claims asserted by ARA (Counts 104-106) are governed by Florida law. The remaining consumer claims against SOA are specifically asserted under Florida law (Count 47 - FDUTPA, and Count 48 - Florida breach of implied warranty of merchantability statute) on behalf of Florida purchasers (*e.g.*, Walker), and Alabama law (Count 49 – ADTPA) on behalf of Alabama purchasers (*e.g.*, Reilly).

## II. PLAINTIFF WALKER'S CLAIMS MUST BE DISMISSED

### A. Breach of Implied Warranty Under Florida's Commercial Code

#### 1. Lack of Privity

"Under Florida law, '[a] contract action for breach of implied warranty does not lie where there is no privity of contract' between a plaintiff and defendant." *Speier-Roche v. Volkswagen Group of America, Inc.,* 2014 U.S. Dist. LEXIS 59991,*22 (S.D. Fla. Apr. 30, 2014), *quoting Westinghouse Corp. v. Ruiz,* 537 So. 2d 596, 596-97 (Fla. 3d DCA 1988); *see also Feheley v. Lai*

---

[11] As a purported "assignee," any rights of ARA are derived exclusively from its Florida-based "assignors." *Nova Information Systems, Inc. v. Greenwich Insurance Co*., 365 F.3d 996 (11th Cir. 2004). As such, ARA's state of incorporation and principal office are not considered in the choice of law analysis.

*Games Sales, Inc.,* 2009 U.S. Dist. LEXIS 70430, *18-19 (S.D. Fla. Aug. 11, 2009) (Moreno, J.). No privity exists here, as Walker purchased his vehicle used from a remote third-party, and not from SOA or even an authorized Subaru dealer (¶ 176; *see also* Certified Florida DMV title records, Exh. 1A to RJN). The implied warranty claim must therefore be dismissed. *Brisson,* 602 F. Supp. 2d 1227, 1232 (M.D. Fla. 2009), a*ff'd in relevant part and rev'd on other grounds,* 349 F. App'x 433 (11th Cir. 2009) ("There is no question that Plaintiffs…fail [] to allege privity" with the manufacturer defendant where they buy their cars second-hand from third parties); *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. 4th DCA 2006) (dismissing implied warranty claims due to lack of privity where plaintiffs alleged they purchased a used 2002 Dodge Intrepid from Fairbanks Mazda).

Plaintiff cannot circumvent the lack of privity with a conclusory allegation of being an "intended third-party beneficiary" of purported prior unidentified sales contracts involving the subject vehicle and/or pre-manufactured airbags, to which Plaintiff was not a party (¶456). The third-party beneficiary exception is strictly construed and employed in very limited circumstances. *See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 344 F.3d 1136, 1147-8 (11th Cir. 2003); *Florida Bldg. Inspection Servs. v. Arnold Corp.*, 660 So. 2d 730, 731 (Fla. 3d DCA 1995). "Under Florida law, a third party is an intended beneficiary if the intent to benefit the third party is specific and clearly expressed in the contract to endow the third-party beneficiary with a legally enforceable right." *Baughan v. Royal Caribbean Cruises, Ltd.*, 944 F. Supp. 2d 1216, 1218 (S.D. Fla. 2013) (Moreno, J.). The original contracting parties must have had a "direct and substantial purpose of conferring a benefit" on that particular, specifically identified Plaintiff. *Id.*; *Rydzewski v. DePuy Orthopaedics, Inc.*, 2012 U.S. Dist. LEXIS 187963 (S.D. Fla. Aug. 14, 2012) ("DePuy does not provide hospitals with devices for use in specific patients" and thus Plaintiff could not be third-party beneficiary to recover under implied warranty); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 600 (E.D. La. 1998) (applying Florida law, court held Defendant did not intend contract for sale of siding to benefit "this particular plaintiff" and thus mere foreseeability that product would be used by homeowners was not sufficient to sidestep privity).

Walker has failed to plead any of the requisite facts required to invoke this limited exception to the privity rule. In addition, he purchased his used nine-year-old used vehicle from

an independent entity which was not even an authorized Subaru dealer.  Finally, Walker cannot, as a matter of law, be considered an intended beneficiary of purported non-pleaded private contracts between a manufacturer or distributor or component part supplier, or of a 3-year/36,000 mile warranty that expired years before he purchased his vehicle.  The implied warranty claim under Florida law must be dismissed.

### 2. Lack of Notice

Under Florida's Commercial Code, a buyer must provide reasonable notice of a warranty claim to the seller or "be barred from any remedy."  Fla. Stat. § 672.607(3) (applies to breaches of express and implied warranties).  Failure to plead that the requisite notice was provided is fatal to a Plaintiff's warranty claim.  *Chapman v. Abbott Labs*., 930 F. Supp. 2d 1321, 1325 (M.D. Fla. Mar. 14, 2013); *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642 (S.D. Fla. 2008).  The pre-suit notice requirement is not satisfied by service of the complaint itself or by allegations of knowledge of a defect.  *See Garcia v. Clarins USA, Inc*., 2014 U.S. Dist. LEXIS 182426, *18-19 (S.D. Fla. Sep. 9, 2014); *Cohen v. Implant Innovations, Inc*., 259 F.R.D. 617, 625 (S.D. Fla. 2008).  The SAC fails to allege that the required pre-suit notice was given, warranting dismissal of Plaintiff's implied warranty claim.

### 3. The Implied Warranty Expired Before Walker Purchased the Vehicle

In addition to the lack of privity, any arguable implied warranty of merchantability was properly limited in duration to the time/mileage limitations of SOA's 3-year or 36,000 mile, whichever occurs first, express warranty.  *See* SOA's NCLW (Exh. B, p. 6).  Walker's vehicle had been sold to a prior retail purchaser on August 20, 2004.  *See* Exh. 1A to RJN.  In addition, the vehicle had been driven 67,261 miles by the time of Walker's purchase in February 2014.  *Id*. Thus, the express warranty, and correspondingly any implied warranty of merchantability, expired years before Walker purchased the vehicle in February 2014.  *See White v. Volkswagen Group of Am., Inc*., 2013 U.S. Dist. LEXIS 25238, *14-15 (W.D. Ark. Feb. 25, 2013) ("Here, according to the plain terms of Defendant's express Warranty, the implied warranty of merchantability applicable to White's vehicle 'is limited in duration to the period of this written warranty.'…As discussed above, the written Warranty expired prior to the time White became the owner of her vehicle.  Since the implied warranty's duration is equal to the written Warranty's, the implied warranty also expired"); *Daigle v. Ford Motor Co*., 2012 U.S. Dist.

LEXIS 106172, *29-30 (D. Minn. July 31, 2012) ("Daigle's claim of breach of implied warranty under Minnesota law is limited to the life of the New Vehicle Warranty—which is three years or 36,000 miles, whichever occurs first.  It is undisputed that Daigle purchased his 2004 Freestar after the New Vehicle Warranty had expired, therefore his claim of breach of implied warranty has no merit and Ford is entitled to summary judgment"); *Snodgrass v. Ford Motor Co*., 2001 U.S. Dist. LEXIS 18555, *33-35, 49 n.11 (D.N.J. Sep. 4, 2001) ("Since the limitation was valid upon sale, the implied warranty expired long before the Naves purchased their car in 1992"); *Kagan v. Harley Davidson, Inc*., 2008 U.S. Dist. LEXIS 32747, *31-38 (E.D. Pa. Apr. 22, 2008) (same).

Similarly, Plaintiff's failure to allege that the alleged airbag malfunctioned prior to the expiration of the implied warranty is fatal to his claim.  *Brisson*, 602 F. Supp. 2d at 1232 n.5, *aff'd in relevant part and rev'd on other grounds*, 349 F. App'x 433 (11th Cir. 2009) (holding that since Ford limited the implied warranty to the period of the express warranty, "as in the case of the breach of the express warrant count, Plaintiffs' failure to allege that they experienced the defect within the warranty period of three years or 36,000 miles is fatal to the implied warranty count").

### 4.  The Time/Mileage Term of the NCLW Is Not Unconscionable

Plaintiff cannot circumvent the express warranty's time and mileage limitations by alleging them to be "unconscionable" (¶¶ 452-54).  A contract or clause is unconscionable when it is both procedurally and substantively unconscionable.  *Zephyr Haven Health & Rehab Ctr., Inc. v. Hardin*, 122 So. 3d 916, 920 (Fla. 2d DCA 2013); *Premier Real Estate Holdings, LLC v. Butch*, 24 So. 3d 708, 711 (Fla. 4th DCA 2009).  To determine procedural unconscionability, courts look to the circumstances surrounding the transaction to determine whether the plaintiff had a meaningful choice at the time of contracting, such as the opportunity to bargain and understand the terms of the contract.  *Licul v. Volkswagen Group of Am.,* 2013 U.S. Dist. LEXIS 171627, *8 (S.D. Fla. Dec. 5, 2013).  The warranty applicable to Walker's vehicle is not procedurally unconscionable.  Plaintiff does not and cannot allege that he lacked meaningful choices including brand, year, make, model, and warranties of vehicles available for purchase, or that he was deprived of the opportunity to understand the warranty terms for the used vehicle which he chose to buy from a third-party.  *See Hughes v. Alltel Corp*., 2004 U.S. Dist. LEXIS

20705, *10 (N.D. Fla. March 31, 2004) (no showing of procedural unconscionability where plaintiff did not allege that he "tried to negotiate the terms," or "attempted to obtain favorable terms from some other service provider, but could not do so," or "that he would suffer adverse consequences if he did not acquiesce to the arbitration provision"); *see also Torre v. BFS Retail & Commercial Operations, LLC*, 2008 U.S. Dist. LEXIS 99002, *10 (S.D. Fla. Dec. 8, 2008) (holding that "the parties' unequal bargaining power is insufficient to support a finding of procedural unconscionability").

Moreover, as Plaintiff purchased the vehicle "used" from a third-party long after the warranties had expired, he cannot hypothesize about the circumstances surrounding the negotiation and execution of the original contract or the parties' relative bargaining positions. *O'Berry v. Gray*, 510 So. 2d 1135, 1137 (Fla. 5th DCA 1987) (no procedural unconscionability where there is "no evidence of the circumstances surrounding the parties' execution of the original agreement").

"A contract is substantively unconscionable only if its terms are so outrageously unfair that they shock the judicial conscience." *John Knox Vill. Of Tampa Bay, Inc. v. Perry*, 94 So. 3d 715, 718 (Fla. 2d DCA 2012). The 3-year/36,000 mile NCLW for Walker's vehicle meets or exceeds similar warranties enforced by courts throughout the country, including this Court. *See, e.g., Landsman Packing Co. v. Continental Can Co.*, 864 F.2d 721, 729 (11th Cir. 1989) (stating that courts "have upheld 12 month warranty limitations as reasonable"); *Speier-Roche,* 2014 U.S. Dist. LEXIS 59991 at *11 (enforcing vehicle's 12 month/12,000 mile warranty); *Licul*, 2013 U.S. Dist. LEXIS 171627 at *8 (2-year/24,000 mile warranty not unconscionable); *Taterka v. Ford Motor Co*., 271 N.W.2d 653, 657 (Wis. 1978) (12-months/12,000 miles not unconscionable).

Nor does Plaintiff's conclusory allegation of failure to disclose a defect (¶ 454) establish substantive unconscionability. Under Florida law, knowledge of a defect prior to sale does not render a warranty's time and mileage limitations substantively unconscionable. *Licul*, 2013 U.S. Dist. LEXIS 171627 at *9 (unconscionability "requires more than a defendant's mere knowledge of a defect at the time of sale").

19

B.  **The MMWA Claim Must Be Dismissed**

In order to state a MMWA claim for breach of implied warranty, a plaintiff must adequately plead a breach of implied warranty under Florida law.  15 U.S.C. § 2301(7); *David v. Am. Suzuki Motor Corp*, 629 F. Supp. 2d 1309, 1321-22 (S.D. Fla. June 16, 2009).  As Plaintiff's implied warranty claim fails under Florida law, his MMWA claim likewise fails.  *See also Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325-26 (Fla. 3d DCA 2008) ("Under Florida law, privity of contract is required to maintain an action for breach of an implied warranty….The MMWA does not supplant state law privity requirements for implied warranty claims").

C.  **The Florida Implied Warranty and MMWA Claims are Time-Barred**

1.  **Implied Warranty (Florida Commercial Code)**

Under Florida law, Walker's breach of implied warranty of merchantability claim is subject to a four-year limitations period as "a contract, obligation, or liability not founded on a written instrument…"  Fla. Stat. § 95.11(3)(k).  As discussed *supra*, the NCLW applicable to Walker's vehicle expressly and conspicuously limits the duration of any implied warranties, including merchantability, to the 3-year or 36,000 mile (whichever occurs first) term of the NCLW.  *See* Exh. B, p.6.  Thus, the express and implied warranties expired, at the latest, in August 2007.  *See* Exh. 1A to RJN.  Since this action was commenced more than four-years after that date, Walker's implied warranty claim is time-barred.  *See Speier-Roche v. Volkswagen Group of America, Inc.*, 2014 U.S. Dist. LEXIS 59991, *12, 24-25 (S.D. Fla. Apr. 30, 2014) (Moreno, J.) (breach of implied warranty claim held untimely on the basis of similar limitation, in express warranty, of implied warranty's duration); *McKissic v. Country Coach, Inc.*, 2009 U.S. Dist. LEXIS 16478, *32 (M.D. Fla. Feb. 27, 2009) (holding, with respect to the analogous express warranty "discovery" statute of limitations, that the limitations period begins to run from the date in which the durational term of the express warranty expires, or the date in which plaintiff discovered or should have discovered the alleged breach, *whichever date is earlier*).

2.  **MMWA**

Because the MMWA contains no express statute of limitations, courts look to the most analogous state statute to determine which statute of limitations to apply.  *Speier-Roche,* 2014 U.S. Dist. LEXIS 59991 at *16.  Courts have considered state Lemon Laws and the limitations period governing warranty claims under a state's commercial code.  *Id.*; *Saavedra v. Albin Mfg.*

20

*Corp.*, 2012 U.S. Dist. LEXIS 9618, at *7-8 (M.D. Fla. Jan. 27, 2012); *Murungi v. Mercedes Benz Credit Corp.*, 192 F. Supp. 2d 71, 79 (W.D.N.Y. 2001).

Regardless of which analogous limitations period is applied here, Walker's MMWA claim is untimely.   As demonstrated *supra*, Plaintiff's warranty claim under Florida's commercial code is time-barred.   Similarly, Florida's Lemon Law has a three-year statute of limitations that commences with the original delivery of the vehicle, which occurred here in August 2004, substantially more than three years before this action was commenced.  *Saavedra*, 2012 U.S. Dist. LEXIS 9618, at *7-8; *Williams v. Potamkin Motor Cars, Inc.*, 835 So. 2d 310, 311-12 (Fla. 3d DCA 2002) (holding that a Lemon Law claim must be brought within three years of the original delivery of the motor vehicle in question, and "the limitations period [is] not 'tolled' until the discovery of the alleged violations").

### 3.   No Fraudulent Concealment or Equitable Estoppel Tolling

Walker cannot invoke a fraudulent concealment or equitable estoppel toll to revive his untimely claims.   First, in order to invoke such a toll, "Plaintiff must plead facts establishing that Defendant deliberately and actively concealed the material facts for the purpose of inducing her to delay filing this action."  *Speier-Roche,* 2014 U.S. Dist. LEXIS 59991 at *20.  *See also Licul v. Volkswagen Group of America, Inc*., 2013 U.S. Dist. LEXIS 171627, *16 (S.D. Fla. Dec. 5, 2013).  Equitable estoppel can only be applied if Plaintiff is actually aware of the cause of action during the limitations period, but was duped into not filing a timely action by the affirmative fraudulent conduct of Defendant.  *Licul,* 2013 U.S. Dist. LEXIS 171627 at *16; *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1329 (S.D. Fla. 2012); *Black Diamond Props., Inc. v. Haines*, 69 So. 3d 1090, 1093-94 (Fla. 5th DCA 2011).

Plaintiffs allege they did not discover the claimed Inflator Defect until either their airbag "exploded" in an accident or their vehicles were recalled (¶ 390).  Walker does not allege his vehicle's airbags ever exploded, and his vehicle was recalled long after the applicable statute of limitations expired (¶176).  No tolling applies because Walker could not have been duped into delaying the filing of a timely action.

In addition, only active and willful concealment—not simply mere omission or non-disclosure—can toll the statute of limitations based on fraudulent concealment, and Plaintiff "fails to allege any elements of active fraudulent concealment on the part of Defendant, much

less that any such acts delayed Plaintiff's filing beyond the statute of limitations." *Speier-Roche,* 2014 U.S. Dist. LEXIS 59991 at *20.  *See also Licul*, 2013 U.S. Dist. LEXIS 171627 at *17-18 (plaintiff's allegations of active and conscious concealment and failure to disclose were "wholly insufficient to supply the affirmative steps taken to prevent Plaintiffs from discovering the basis of their claims that would be necessary before tolling based on fraudulent concealment becomes appropriate").

A fraudulent concealment claim is subject to Fed. R. Civ. P. 9(b)'s requirement that the circumstances constituting fraud be stated with particularity, *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1212 (11th Cir. 2001); *Speier-Roche,* 2014 U.S. Dist. LEXIS 59991 at *19; *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003).  As discussed i*nfra*, the conclusory assertions of the SAC do not come close to meeting this requirement.

Finally, the insufficient conclusory allegations, at best, "amount to a claim of mere 'nondisclosure' which, under Florida law, is legally insufficient to toll the Statute of Limitations." *Speier-Roche,* 2014 U.S. Dist. LEXIS 59991 at *20.

### D.  <u>The Unjust Enrichment Claim Fails Under Florida Law</u>

In Florida, a claim for unjust enrichment has three elements: (1) the Plaintiff has conferred a benefit on the Defendant; (2) the Defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the Defendant to retain it without paying the value thereof.  *Nova Info. Sys. v. Greenwich Ins. Co.*, 365 F.3d 996, 1007 (11th Cir. 2004).  In order to state a claim under Florida law, Plaintiffs must allege that they "directly conferred a benefit on the Defendants."  *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007); *see Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 401 (Fla. 3d DCA 2009) (unjust enrichment claim was properly dismissed because power customer had no relationship with utility's parent company and did not confer a direct benefit on the parent company); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla. N.A.*, 667 So. 2d 876, 879 (Fla 3d DCA 1996) (dismissing unjust enrichment claim because Plaintiff "could not and did not allege that it had directly conferred a benefit on the defendants").

Here, Walker purchased a substantially used vehicle in a private second-hand transaction (¶ 176).   He does not allege to have purchased the vehicle from SOA or even an authorized Subaru dealer.   As such, no benefit was conferred upon and retained by SOA.   Moreover, courts have held that a Plaintiff cannot recover for unjust enrichment when he/she purchased a used vehicle on the secondary market with no direct relationship with the manufacturer or distributor. *See In Re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 843 (S.D. Ohio 2012) (dismissing Florida unjust enrichment claim where Plaintiff alleged that he purchased a used vehicle and failed to plead the manner in which he conferred a direct benefit on Porsche); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551-52 (D. Md. 2011) (dismissing Florida unjust enrichment claim because Plaintiff failed to demonstrate that Ford received a direct benefit from his purchase of a used Ford vehicle from an independent dealership).

Furthermore, Walker's vehicle was originally sold with a 3-year/36,000 mile limited express warranty.   "Under Florida law, 'unjust enrichment is an equitable remedy which necessarily fails upon a showing that an express contract exists.'"   *Speier-Roche,* 2014 U.S. Dist. LEXIS 59991 at *25, *quoting Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012).   In addition, the unjust enrichment claim is predicated upon the same alleged wrongful conduct as the FDUTPA claim (¶¶ 867, 995), requiring dismissal because "an unjust enrichment claim cannot be maintained where there is an adequate remedy at law."   *Id.* "Here, because there is an express warranty governing Plaintiff's rights, [his] unjust enrichment claim must fail," regardless of whether his "warranty and FDUTPA claims may also prove without merit…"   *Id.* at *25-26.   *See also Licul,* 2013 U.S. Dist. LEXIS 171627 at *8, 20, 22 n.2; *Matthews v. Am. Honda Motor Co.*, 2012 U.S. Dist. LEXIS 90802, *5-7 (S.D. Fla. June 16, 2012); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356-7 (S.D. Fla. 2012).

### E.   The FDUTPA and Fraudulent Concealment Claims Fail to Meet the Pleading Requirements of Rule 9(b), and Fail to State a Claim Under Rule 8

Plaintiff's fraudulent concealment and FDUTPA claims must be dismissed under Fed. R. Civ. P. 9(b) for lack of particularity.   Rule 9(b) applies both to common law fraud, *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012), and to FDUTPA claims.   *Blair v. Wachovia Mortg. Corp.*, 2012 U.S. Dist. LEXIS 33941, *9 (M.D. Fla. Mar. 14,

2012).  "Under Rule 9(b), the circumstances of the fraud must be alleged with specificity, i.e., the 'who, what, when, where, and how' of the alleged fraud" of each Defendant.  *Speier-Roche,* 2014 U.S. Dist. LEXIS 59991 at *19, *quotin*g *Greenberg v. Miami Children's Hosp. Research Institute, Inc*., 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (Moreno, J.).   As this Court observed:

> Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  That is, the Plaintiffs must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Florida, Inc*., 116 F.3d 1364, 1380-81 (11th Cir.1997).

*In re Managed Care Litig.,* 150 F. Supp. 2d 1330, 1345 (S.D. Fla. 2001).  *See also Speier-Roche*, 2014 U.S. Dist. LEXIS 59991 at *17-18.

Plaintiff's conclusory allegations, many of which lump together various Defendants without ascribing specific fraudulent statements or omissions to any particular one, a practice prohibited in this Circuit, *Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997); *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008) (Moreno, J.),  fail to particularize the "who, what, where, when, how" of any alleged fraudulent act or omission of SOA.  There are no pleaded facts establishing any specific misrepresentation or fraudulent statement made by SOA, much less the time, place and person responsible for it, the content and manner in which such misrepresentation or fraudulent statement misled the Plaintiff in his second-hand purchase from a third-party nine years down the road, and what SOA gained by the alleged fraud and how.  *Speier-Roche,*  2014 U.S. Dist. LEXIS 59991 at *18 ("Plaintiff fails to establish these necessary elements – she fails to allege the means Defendant used to perpetrate the alleged fraud, for example, or any facts indicating the fraud's existence"); *Gayou v. Celebrity Cruises, Inc.*, 2012 U.S. Dist. LEXIS 77536, *19-20 (S.D. Fla. Jun. 5, 2012) (claims lacked sufficient particularity because plaintiffs did not identify the exact time and source of the statements); *McGee v. S-Bay Development, LLC*, 2012 U.S. Dist. LEXIS 30872, *11 (M.D. Fla. Mar. 8, 2012) (dismissing fraud claims because plaintiffs had not identified "precisely what the representations were, what documents contained them, when they were

24

made, or who was responsible for making them"); *Garcia v. Santa Maria Resort*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) (dismissing claims for lacking particularity since there was no "mention of time, place, and identity of speaker").

Walker fails to plead the existence of any specific representation or statement by SOA, much less a false one, which he saw, heard or read before purchasing his vehicle. *Maison v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 35519, *5 (N.D. Fla. July 7, 2005) (dismissing fraudulent concealment claim under Rule 9(b) because the complaint failed to state "which advertisements were viewed by Plaintiffs, thereby inducing them to purchase an Explorer"). Walker does not claim to have seen, read or heard the generalized statements attributed to Subaru (¶ 310g), and even if he had, such statements at most constitute non-actionable puffery. *Perret v. Wyndham Vacation Resorts*, 889 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012).

"In this Circuit, allegations of fraud by omission must set forth, with particularity, '(1) precisely…what omissions were made, and (2) the time and place of…[the] omissions, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991 at *18, *quoting Brooks v. Blue Cross & Blue Shield of Florida, Inc*., 116 F.3d 1364, 1371 (11th Cir.1997). Glaringly absent from the SAC are any pleaded facts establishing when SOA allegedly learned of the Inflator Defect, the content of what was allegedly learned, how and from whom they learned of it, what actions were allegedly done to conceal the defect, when, how and by whom such actions of concealment were perpetrated, and the manner in which any actions on the part of SOA misled the Plaintiff.

There are no pleaded facts establishing that SOA was aware of the alleged Inflator Defect (a) prior to the time in which the subject Subaru vehicles were originally sold, or even (b) prior to the time in which any Subaru Plaintiff purchased his/her vehicle. There is no duty to disclose that which Defendant was not aware. *Friedman v. Am. Guardian Warranty Servs.*, 837 So. 2d 1165 (Fla. 4th DCA 2003); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013) (applying Florida law). Moreover, as discussed *supra*, Plaintiffs' allegations that other parties deliberately and actively concealed the Inflator Defect from the world, including the U.S. government and other Automotive Defendants, actually establishes **the lack of awareness** on the part of SOA during any material period of time (¶¶ 410-443).

The above deficiencies also fail to establish the essential elements of Plaintiffs' common law fraud and FDUTPA claims sufficient to state a cause of action under Rule 8's pleading standards. *See, e.g., Aprigliano,* 979 F. Supp. 2d at 1342; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-48 (9th Cir. 2012) (plaintiff failed to adequately plead manufacturer's knowledge of defect under *Twombly/Iqbal*). In addition, there are no pleaded facts establishing the Subaru Plaintiffs' detrimental reliance on any alleged fraudulent act or omission of SOA, which is required for common law fraud, *Dugas v. 3M Co.*, 2015 U.S. Dist. LEXIS 54861, *14-15 (M.D. Fla. Apr. 27, 2015); *Southeast Laborers Health & Welfare Fund v. Bayer Corp.,* 655 F. Supp. 2d 1270 (S.D. Fla. 2009) (dismissing fraud claim because the complaint fails to "set forth any allegation of how Plaintiff reasonably relied upon any statement made to it"). Likewise there are no pleaded facts establishing the essential element of "causation" required under FDUTPA. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (the elements of a FDUTPA claim are: (1) a deceptive or unfair practice; (2) causation; (3) and actual damages); *GMAC v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998) (to be actionable, an unfair or deceptive trade practice under FDUTPA must be the cause of loss or damage to a consumer).

The fatal deficiencies are not saved by Plaintiffs' conclusory allegation that the Automotive Defendants knew of the alleged Inflator Defect simply because the airbag was designed to use ammonium nitrate as the propellant. The same argument was rejected in *McQueen v. BMW of North America*, *LLC*, 2014 U.S. Dist. LEXIS 21084 (D.N.J. Feb. 20, 2014), which held:

> [t]his argument is . . . a circular argument that could be used to impute knowledge for purposes of the CFA to any manufacturer who designs and markets a product that is later alleged to be defective — 'I (consumer) believe this item to be defective; you (manufacturer) designed the item and sold it; ergo, you knew it was defective, and thus you defrauded me when you elected not to tell me about the defect.' . . . It may be, as Plaintiff argues, that because BMW designed Plaintiff's vehicle BMW 'cannot disclaim knowledge of its intentional design choices.'…But it does not follow that BMW cannot disclaim knowledge of a defect when faced with a consumer fraud lawsuit. Plaintiff cannot equate design choices with fraudulent conduct simply by saying so and without pleading facts supporting a plausible inference of knowledge on BMW's part. If Rule 8(a), *Iqbal*, and *Twombly* are to have any force whatsoever, a complaint cannot state a CFA claim that requires the plaintiff plead knowledge by merely alleging that the defendant designed a defective product.

26

*Id.* at \*16-17 (citations omitted).

Nor is pre-sale knowledge on the part of SOA established by Plaintiffs' conclusory and speculative allegation that all Automotive Defendants received notice of the Inflator Defect through purported yet unidentified "publicly available NHTSA complaints" of "dozens of incidents of Takata airbags inadvertently deploying in the Class Vehicles, an event that *may be* tied to the unstable and volatile ammonium nitrate propellant" (¶ 308; emphasis added).  The glaring deficiencies of this allegation are discussed *supra* in the Statement of Facts.  *See also Gotthelf v. Toyota Motor Sales*, *U.S.A., Inc.*, 525 Fed. Appx. 94 (3d Cir. 2013) ("these complaints were filed with the NHTSA, not with Toyota, and the NHTSA did not notify Toyota of its investigation until May 6, 2009.  Gotthelf has provided no facts to support his assertion that Toyota should have known about the defect based on these complaints").

Finally, Plaintiffs cannot impute pre-sale knowledge of an alleged Inflator Defect in the Subaru Plaintiffs' vehicles on the basis of a claim that a different Automotive Defendant may have experienced problems with airbags in *its* vehicles (*e.g.*, ¶ 32).  No factual basis for this conclusory supposition is pled, nor does a legal basis for it exist.  *See*, *e.g.*, *Herrod v. Metal Powder Products*, 886 F. Supp. 2d 1271, 1277-78 (D. Utah 2012).  Moreover, as demonstrated *supra*, Plaintiffs factual allegations establish that SOA did **not** have pre-sale knowledge of the existence of the alleged airbag Inflator Defect in Subaru vehicles (*see*, *e.g.*, SAC, ¶¶ 252-57, 278, 284).

### F.  The Claims for Incidental and Consequential Damages, and for Punitive Damages, Must Be Dismissed

Walker has failed to state a claim for incidental or consequential damages.  First, he has not pled facts establishing the existence of any such damages; only an insufficient conclusory assertion that he was unable to use his vehicle for two months as a result of safety concerns (¶ 176).  Second, even if he had, the NCLW applicable to his vehicle properly disclaimed any liability for such incidental or consequential damages, thereby precluding their recovery in this action.  Exh. B, p. 15; Fla. Stat. § 672.719; *Bluewater Trading LLC v. Fountaine Pajot, S.A.*, 2008 U.S. Dist. LEXIS 26513, \*16-18 (S.D. Fla. Apr. 2, 2008).  Third, incidental and consequential damages including loss of use, not being furnished with a loaner or rental vehicle, lost time from work, or other out-of-pocket expenses, are not "actual damages" recoverable

under FDUTPA.  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (FDUTPA bars the recovery of consequential damages); *see also Clear Marine Ventures, Ltd. v. Brunswick Corp.*, 2009 U.S. Dist. LEXIS 124904, *10 (S.D. Fla. Oct. 1, 2009) ("The [FDUTPA] bar to consequential damages also precludes claims on stigma damages").

Punitive damages are not recoverable in claims for breach of implied warranty, *Royal Typewriter Co., Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1106 (11th Cir. 1983); *Bill Branch Chevrolet v. Redmond*, 378 So. 2d 319, 321 (Fla. 2d DCA 1980).  Nor are punitive damages recoverable in claims under FDUTPA.  *Heindel v. Southside Chrsyler-Plymouth, Inc.*, 476 So. 2d 266, 271 (Fla. 1st DCA 1985).  The Subaru Plaintiffs have failed to plead facts establishing their entitlement to punitive damages under any theory pleaded herein.[12]

---

[12] Because New Jersey law cannot apply to Plaintiffs claims, *see* Point I, *supra*, there is no reason for SOA or this Court to address New Jersey law separately.  However, it should be noted that the deficiencies in the SAC, as discussed above, would warrant dismissal for similar reasons even if New Jersey law were applied.  *See Coba v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 8366, *22 (D.N.J. Jan. 22, 2013) (applying 9(b) to both common law fraud and the NJCFA); *Hammer v. Vital Pharms., Inc.,* 2012 U.S. Dist. LEXIS 40632, *24-26 (D.N.J. Mar. 26, 2012) (dismissing NJCFA claim for lack of causation because "the Complaint fails to identify which, if any, of the promotional or marketing materials were  viewed by Plaintiff . . . and how they induced Plaintiff to purchase Clenbutrx"); *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 338 (D.N.J. Feb. 19, 2010) (holding that plaintiff cannot sustain an NJCFA claim where the allegedly defective vehicle component fails to malfunction within the warranty period, even where a safety defect is alleged); *Alban v. BMW NA.*, 2010 U.S. Dist. LEXIS 94038, *10 (D.N.J. Sep. 8, 2010) ("NJCFA does not require manufacturers to disclose things they do not know"); *Horton v. Ross Univ. Sch. of Med.*, 2006 U.S. Dist. LEXIS 27463 (D.N.J. Mar. 30, 2006) (fraudulent concealment claim requires plaintiffs reliance on the alleged fraud); *Green v. General Motors Corp.*, 2003 N.J. Super. Unpub. LEXIS 13 (App. Div. 2003) (rejecting New NJCFA claim based on allegations that vehicle has an unmanifested design defect that renders vehicles "not reasonably crashworthy in moderate, rear impact auto accidents"); *Nobile v. Ford Motor Co.*, 2011 U.S. Dist. LEXIS 26766, *11 (D.N.J. March 14, 2011) ("since defendant's "implied warranties are limited ... to the time period covered by the written warranties" and Plaintiffs transmissions malfunctioned after the expiration of the warranty period, Plaintiffs have failed to state a claim upon which relief could be granted"); *Alin v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 32584, *40-42 (D.N.J. Mar. 31, 2010) (dismissing unjust enrichment claim because unjust enrichment requires the conferral of a direct benefit on the defendant and a direct relationship between the parties); *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, 2009 U.S. Dist. LEXIS 112773, *26 (D.N.J. Dec. 3, 2009) ("New Jersey does *not* recognize unjust enrichment as an independent tort cause of action").

### III. **PLAINTIFF REILLY'S CLAIMS MUST BE DISMISSED** [13]

#### A. **Reilly Fails to State a Claim for Unjust Enrichment**

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011). The essence of an unjust enrichment claim "is that a plaintiff can prove facts showing that defendant *holds* money which, in equity and good conscience, belongs to plaintiff or *holds* money which was improperly paid to defendant because of mistake or fraud." *Danny Lynn Elec. & Plumbing, LLC v. Veolia Es Solid Waste Southeast, Inc.*, 2011 U.S. Dist. LEXIS 78557, *16 (M.D. Ala. July 19, 2011) *quoting Hancock-Hazlett Gen. Const. Co., Inc., v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986) (emphases in original). In addition, "Alabama courts require unconscionable conduct on the part of the defendant in order to make a claim for unjust enrichment." *Wyeth v. Blue Cross & Blue Shield of Ala.*, 42 So. 3d 1216 (Ala. 2010).

Reilly alleges she purchased her 2004 vehicle used on July 1, 2013 from an unidentified third-party (¶ 151). She does not allege to have purchased the vehicle from SOA or even an authorized Subaru dealer. She does not allege that SOA received or is holding any money from her second-hand purchase in July 2013, *see RREF RB-AL SLSD, LLC v. Saxon Land Development*, 968 F. Supp. 2d 1133, 1141 (M.D. Ala. 2013) (no unjust enrichment if Defendant "does not have in its possession any money belonging to the plaintiff"), much less that SOA wrongfully obtained the money. *See Danny Lynn Electrical & Plumbing, LLC v. Veolia ES Solid Waste Southeast*, 2011 U.S. Dist. LEXIS 78557, *16 (M.D. Ala. July 19, 2011) (dismissing unjust enrichment claim because "there was no money paid *by* the plaintiffs *to* the named individuals [and] there was no benefit conferred upon the individual defendants *by* the plaintiffs).

In addition, under Alabama law, a Plaintiff cannot claim unjust enrichment where there is an express contract as to the same subject matter, *Valentine Ventures, LLC v. Gulf Coast*

---

[13] As stated *supra*, the purported "nationwide class claim" under the MMWA is not brought on behalf of residents of Alabama (see Count 3, ¶444) and, thus, is not asserted by Reilly, an Alabama resident. Additionally, no claim has been asserted for breach of implied warranty under Alabama law, either directly or in the alternative.

*Mineral, LLC,* 2015 U.S. Dist. LEXIS 13614 (S.D. Ala. Feb. 5, 2015); *Joiner v. USAA Casualty Ins. Co.*, 2013 U.S. Dist. LEXIS 2420 (M.D. Ala. Jan. 8, 2013), or where there is an adequate remedy at law.  Both exist here.  Reilly admits her vehicle was covered by a written warranty (¶ 151; *see also* the NCLW, Exh. A), and asserts claims at law for alleged fraudulent concealment and violation of the ADTPA.  The claim for unjust enrichment must be dismissed.  *Northern Assur. Co. v. Bayside Marine Constr., Inc.*, 2009 U.S. Dist. LEXIS 4033, *14-15 (S.D. Ala. Jan. 21, 2009) (dismissing unjust enrichment claim "as there is an adequate remedy at law for damages under" the theories of breach of contract and bad faith).

### B.  The Fraudulent Concealment and ADTPA Claims Fail to Meet the Pleading Requirements of Rule 9(b), and Fail to State a Claim Under Rule 8

Plaintiff's fraudulent concealment and ADTPA claims must be dismissed for lacking the particularity required by Rule 9(b).  *Reid v. Unilever United States, Inc.*, 964 F. Supp. 2d 893 (N.D. Ill. Aug. 7, 2013) (applying Rule 9(b) to ADTPA claim); *Cooper v. Bristol-Myers Squibb Co.*, 2009 U.S. Dist. LEXIS 121095 (D.N.J. Dec. 30, 2009) (same); *Lewis v. City of Montgomery*, 2006 U.S. Dist. LEXIS 44378, *21 (M.D. Ala. June 27, 2006) (Rule 9(b) applies to fraudulent suppression claims).

Under Alabama law, the common law fraudulent concealment and ADTPA claims fail, under Rule 9(b), for the same reasons as the similar claims fail under Florida law, discussed *supra*.  "Rule 9(b) requires that a complaint alleging fraud by suppression state (1) what omissions were made, (2) the time, place and identity of the person responsible for the omissions, (3) the manner in which the plaintiff was misled, and (4) what the defendants gained as a consequence of the fraud."  *Lewis v. City of Montgomery*, 2006 U.S. Dist. LEXIS 44378, *22 (M.D. Ala. June 27, 2006).  Similarly, to sustain an ADTPA claim, plaintiff must plead particularized facts demonstrating (1) a proscribed act or practice under the statute; (2) causation; and (3) actual monetary damages.  Ala. Code § 8-19-10; *Meeks v. Xtreme Cycle Supply*, 2006 U.S. Dist. LEXIS 17348 (M.D. Ala Mar. 27, 2006).

Under both common law fraudulent concealment and the ADTPA, "plaintiff must show that the defendant had knowledge of the material facts concealed."  *Moorer v. Hartz Seed Co.*, 120 F. Supp. 2d 1283 (M.D. Ala. 2000) (fraudulent concealment); *see also Sam v. Beaird,* 685 So. 2d 742, 744 (Ala. Civ. App. 1996) (ADTPA).  It is not sufficient to allege that Defendant

"should have known" of the fact claimed to have been suppressed.  *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009) ("an action for suppression will lie only if the defendant actually knows the facts alleged to be suppressed").  Furthermore, under Alabama law, a fraudulent concealment or suppression claim requires particularized facts establishing Plaintiff's actual reliance on the alleged concealment and resulting damages.  *See Coilplus-Alabama, Inc. v. Vann*, 53 So. 3d 898, 909 (Ala. 2010).

As with the Florida claims, Plaintiff's Alabama fraudulent concealment and ADTPA claims were required to particularize the "who, what, when, where and how" of each underlying fraudulent or deceptive act or omission alleged against SOA.  *Fowler v. Goodman Mfg. Co.,* 2014 U.S. Dist. LEXIS 172114, *19 (N.D. Ala. Dec. 12, 2014); *In re Colonial Bancgroup, Inc. Sec. Litig.*, 9 F. Supp. 3d 1258, 1265 (M.D. Ala. Mar. 27, 2014); *Fed. Home Loan Corp. v. Brooks*, 2014 U.S. Dist. LEXIS 150977, *7 (N.D. Ala. Oct. 23, 2014).  The SAC does not come close to meeting that requirement.  It is devoid of pleaded facts establishing that SOA was aware of the Inflator Defect prior to selling the Plaintiffs' Subaru vehicles in 2004 or even prior to Reilly's purchase in July 2013.  As discussed *supra*, the facts which Plaintiffs do plead actually establish that SOA was **not** aware of the alleged defect prior to those times (¶¶ 257, 278, 284). The SAC likewise fails to set forth the content of what was allegedly learned or known by SOA, when, how and from whom or what source SOA allegedly learned of it, what actions were allegedly done to conceal the defect, when, how and by whom such actions of concealment were perpetrated, and the manner in which any actions on the part of SOA misled the Plaintiff or caused economic injury in connection with Plaintiff's purchase of a nine-year-old used vehicle from a third-party after it had been driven more than 164,000 miles.

Plaintiff's fraudulent suppression claim also fails because, under Alabama law, "[w]hen the parties to a transaction deal with each other at arms' length, with no confidential relationship, no obligation to disclose information arises when the information is not requested."  *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995).  "Mere silence in the absence of a duty to disclose is not fraudulent."  *Jewell v. Seaboard Indus.*, 667 So. 2d 653, 657-58 (Ala. 1995). Here, Reilly has not alleged facts establishing a confidential relationship or any other relationship with SOA that would give rise to a duty to disclose with respect to her purchase of a nine-year-old used 2004 vehicle in July 2013, after it had been driven 164,920 miles.  *See*

*Fowler v. Goodman Mfg. Co.,* 2014 U.S. Dist. LEXIS 172114 (N.D. Ala. Dec. 12, 2014) (holding that Plaintiffs allegation that it purchased one of Defendant's products after "reviewing product literature and marketing materials contained on defendants' website from an authorized dealer" was insufficient to give rise to a duty to disclose).

Plaintiffs likewise fail to set forth any alleged fraudulent or deceptive statements claimed to have been made by SOA, much less particularize "precisely what statements were made… the time and place of each such statement and the person responsible for making [them]." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). *See also Wellington v. Chugach Fed. Solutions, Inc.,* 2014 U.S. Dist. LEXIS 100402, *3 (N.D. Ala. June 13, 2014) ("[A] plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them"). Nor does the SAC set forth when and how Plaintiff saw, read or heard any alleged false or deceptive statement, and the manner in which it was relied upon or otherwise caused Plaintiff's alleged injury. In this regard, Reilly does not claim to have viewed, read or heard any of the generalized website and brochure statements alleged in ¶ 310g, and although claiming in conclusory fashion to have viewed or heard unspecified advertisements promoting "the Subaru" as "dependable," "reliable" and "safe" (¶151), no underlying facts, much less particulars, are pled, and the alleged statements, at most, amount to non-actionable commercial puffery. *Fincher v. Robinson Bros. Lincoln-Mercury, Inc.*, 583 So. 2d 256 (Ala. 1991); *La Trace v. Webster*, 17 So. 3d 1210, 1217 (Ala. Civ. App. 2008); *Gable v. Boles*, 718 So. 2d 68, 70-71 (Ala. Civ. App. 1998).

For the same reasons as the deficient Florida fraud-based claims, discussed *supra*, even under Rule 8's pleading standards, as enumerated in *Twombly* and *Iqbal*, the SAC fails to plead facts establishing the essential elements of a fraudulent concealment or ADTPA claim against SOA. Accordingly, Reilly's fraudulent concealment and ADTPA claims must be dismissed.

## IV. PLAINTIFFS' CLAIMS FAIL UNDER FLORIDA AND ALABAMA LAW BECAUSE THE ALLEGED AIRBAG INFLATOR DEFECT NEVER MANIFESTED IN THEIR VEHICLES

Neither Walker nor Reilly has alleged that his/her vehicle ever manifested or exhibited any sign of the alleged airbag defect in the ten years in which it has been on the road (¶¶ 151, 176). They do not, in fact, allege any malfunction whatsoever in their vehicles' airbags (*Id.*).

32

ARA does not even allege that either of its three purported "assignor" recyclers actually purchased or owns a subject Subaru vehicle or airbag.

To avoid burdening this Court with duplicative arguments, SOA respectfully incorporates herein by reference the arguments regarding this issue contained in the Briefs filed by Defendants Mazda Motor of America, Inc. (Points C.1 and C.2) and Ford Motor Company (Point IV.F.1.).  For the reasons stated therein, both Florida and Alabama law warrant dismissal of all claims asserted against SOA.

## V.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR ECONOMIC DAMAGES AGAINST SOA

No Subaru Plaintiff pleads any out-of-pocket expenses due to the alleged Inflator Defect, or that any Plaintiff ever attempted to sell a Subaru vehicle and suffered a diminution in value. Likewise, there are no pleaded facts establishing that Walker or Reilly paid more than they should have for their purchases of nine-year old vehicles from independent third parties.  *See Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999) (dismissing claims based on an unmanifested defect and holding that claims for loss in resale value were too speculative and insufficient as a matter of law because none of the plaintiffs asserted that they actually sold a vehicle at a reduced price, nor did they state the amount of their damages).

With respect to the ARA's lack of damages, SOA has joined in and respectfully incorporates by reference, the Joint Motion of the Automotive Defendants to Dismiss the ARA Plaintiff's Claims.  (Point II.B. therein).

## VI.  THIS ACTION SHOULD BE STAYED BASED UPON THE PRIMARY JURISDICTION OF THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION (NHTSA)

SOA has joined in a Joint Motion with certain other Automotive Defendants seeking a brief stay of this action based upon NHTSA's primary jurisdiction.  For the sake of brevity, SOA respectfully incorporates herein by reference the arguments set forth in that Joint Motion.

## VII.  THE ARA CLAIMS MUST BE DISMISSED

SOA has joined in, and respectfully incorporates by reference, the Joint Motion of the Automotive Defendants to Dismiss the ARA Plaintiff's claims.

## **CONCLUSION**

For the foregoing reasons, the SAC should be dismissed as against SOA pursuant to Rules 12(b)(6) and 9(b); together with such other relief as this Court deems just and proper.


Dated July 17, 2015                              Respectfully submitted,

                                                 */s/ Stanley H. Wakshlag*_____

                                                 Jeffrey L. Chase
                                                 jchase@herzfeld-rubin.com
                                                 Michael B. Gallub
                                                 mgallub@herzfeld-rubin.com
                                                 Herzfeld & Rubin, P.C.
                                                 125 Broad Street
                                                 New York, NY 10004
                                                 T: (212) 471-8500
                                                 F: (212) 344-3333
                                                 *(admitted pro hac vice)*

                                                 Stanley H. Wakshlag
                                                 shw@knpa.com
                                                 Robert D.W. Landon III
                                                 rdl@knpa.com
                                                 Kenny Nachwalter, P.A.
                                                 1100 Miami Center
                                                 201 South Biscayne Boulevard
                                                 Miami, FL 33131
                                                 T: (305) 373-1000
                                                 F: (305) 372-1861

                                                 ***Counsel for Subaru of America, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this on July 17, 2015, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF.

/s/ Stanley H. Wakshlag
Stanley H. Wakshlag

35