**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**MDL No. 2599**

**Master Case File No. 15-2599-MD-MORENO**

IN RE:

**TAKATA AIRBAG PRODUCTS**
**LIABILITY LITIGATION**

**THIS DOCUMENT RELATES TO ALL**
**ECONOMIC DAMAGES TRACK**
**CASES**

**HONDA'S MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW**

**Introduction**

Defendant American Honda Motor Co., Inc. is moving to dismiss claims whose early resolution will significantly simplify this case:

● Honda moves to dismiss the RICO conspiracy claim (Count 2) because the Complaint never identifies any "agreement" Honda supposedly made to violate another provision of RICO, the linchpin of a conspiracy claim. (No substantive RICO claim is asserted against Honda; the sole RICO claim against Honda is a conspiracy claim under 18 U.S.C. § 1962(d).)

● Honda moves to dismiss or strike Plaintiffs' request for recall-related relief (Count 15 and the allegations in the paragraphs specified below) because any such relief falls within the primary jurisdiction of the National Highway Traffic Safety Administration ("NHTSA") and, relatedly, any such claims are prudentially moot under *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012).

● Honda moves to dismiss Plaintiffs' claims that seek to apply California law nationwide because California law does not govern transactions outside of California.

● Honda also moves to dismiss Plaintiffs' implied warranty claims under California's Song-Beverly Act (Count 10) because Plaintiffs do not allege that their cars malfunctioned during the relevant period.

● Finally, Honda will adopt various arguments asserted by certain of its co-defendants.

## Alleged Facts

Despite the length of the Second Amended Consolidated Class Action Complaint – 1,930 paragraphs spanning 453 pages – the basic theory of Plaintiffs' case is straightforward: Takata manufactured defective airbags, and Honda and other automakers allegedly installed those airbags in their cars and sold the cars without disclosing the defect. According to Plaintiffs, this violated the federal RICO statute (as to Takata and Honda) and the consumer protection statutes of various states; breached the automakers' implied warranty obligations; and constituted common law fraudulent concealment.

## Argument

I.     **The RICO Conspiracy Claim Should Be Dismissed Because Plaintiffs Have Not Alleged Facts That Show An Agreement Between Honda And Takata Or Any Cognizable RICO Injury.**

A.     **Plaintiffs Have Not Plausibly Alleged Honda's Agreement To Participate In A RICO Enterprise – The Essence Of A RICO Conspiracy Claim.**

The Complaint does not accuse Honda of violating the substantive provisions of RICO. Instead, Plaintiffs allege that *Takata* violated one of those provisions, and Honda allegedly "conspired" with Takata to do so. But Plaintiffs have not pled a single fact suggesting that Honda *agreed* to violate any provision of RICO – the essence of a RICO conspiracy claim. The alleged "conspiracy" here revolves around the two entities sharing information about airbag incidents as

they tried to determine what had gone wrong with Takata's airbags. In other words, Honda's role in the "conspiracy" was to do exactly what an automaker *should* do when safety-related parts begin malfunctioning: demanding information from its supplier and relying on that supplier to craft a prompt and effective fix.

**1.      Plaintiffs must plausibly plead that Honda agreed to participate in a RICO enterprise.**

Under RICO's conspiracy provision, 18 U.S.C. § 1962(d), it is unlawful to "conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Thus, "[t]o successfully allege a Section 1962(d) claim, a plaintiff must allege 'that the conspirators agreed to participate directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity.'" *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1280 (S.D. Fla. 2003) (Moreno, J.). Plaintiffs must plead facts plausibly showing that Honda (1) agreed with Takata on an overall objective, or (2) agreed to personally commit two predicate acts. *Id.* at 1280-81. Unlike a substantive violation of RICO, which Plaintiffs assert only against Takata, "[t]he gist of a RICO conspiracy claim is that each defendant has *agreed* to participate in the conduct of an enterprise's illegal activities." *In re Managed Care Litig.*, No. 00-1334-MD, 2009 WL 812257, at *4 (S.D. Fla. Mar. 26, 2009) (Moreno, J., adopting report of Torres, M.J) (emphasis in original). "[S]imply assisting in the effectuation of the RICO scheme is not alone sufficient to bring a defendant within the ambit of § 1962(d)." *In re Am. Honda Motor Co. Dealerships Relations Litig.*, 965 F. Supp. 716, 723 (D. Md. 1997).

Because Plaintiffs' conspiracy claim is based on mail and wire fraud, it is subject to the heightened pleading standard of Rule 9(b), meaning Plaintiffs must "state with particularity the circumstances constituting" Honda's supposed agreement to violate RICO. Fed. R. Civ. P. 9(b).

3

### 2.   Honda's alleged "overt acts" are irrelevant because they do not suggest an agreement to participate in a RICO violation.

Plaintiffs gloss over the absence of relevant factual allegations by alleging acts that supposedly show "close cooperation" between Honda and Takata "on issues surrounding the Inflator Defect." Compl. ¶¶ 436-38. But Plaintiffs never specify when, where, or how Honda's alleged acts show an *agreement* between the two companies to violate RICO. For example, Plaintiffs allege that Honda and Takata investigated an incident involving a Honda Accord, and "Honda stated that, after the accident, it 'immediately shared all available information'" with Takata. *Id.* ¶ 438a. But sharing information about an incident does not show a conspiracy to violate RICO; it shows an automaker trying to help a supplier get to the bottom of a problem in the field. Similarly, Plaintiffs allege that Honda's conclusion that the Accord incident was an anomaly was "reckless at best," *id.*, that Honda later decided to await results of a technical analysis before ordering a recall, *id.* at 438c, that Honda sent inflators to Takata for investigation "without informing vehicle owners or regulators," *id.* at 438d, that Honda and Takata jointly drafted a letter to NHTSA and settled at least one personal injury lawsuit, *id.* at 438f-g, and that "Honda and Takata initiated a joint analysis into an 'outside of range' incident that occurred on August 1, 2011," *id.* at 438h. Again, none of these allegations suggest an agreement to violate RICO. Instead, they are entirely consistent with Honda's reliance on and cooperation with Takata's investigation into the root cause of the malfunction of Takata inflators.

The standard for a RICO conspiracy claim is both different and higher than, for example, a state consumer fraud claim. As this Court has explained:

> [R]egardless of the nature of the predicate acts, the Plaintiffs must show that the Defendants entered into an agreement. Alleged proof that the Defendants engaged in the predicate acts of mail and wire fraud *is as consistent with independent behavior as with an industry wide conspiracy* . . . . Therefore, the Plaintiffs must present additional evidence tending to exclude the possibility of independent conduct and tending to show conspiratorial behavior.

*In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1346 (S.D. Fla. 2006) (emphasis added). The allegations that supposedly show a "conspiracy" here show nothing other than Honda (1) relied on Takata to investigate the root cause of the alleged defect and (2) initiated recalls based on what Takata reported to Honda. *E.g.* Compl. ¶¶ 249-51, Letter from American Honda to George Person (Sept. 16, 2009) ("The determination of the vehicle population for the 08-V-593 campaign was based on information provided by TK Holdings, Inc.") (attached as Ex. A).[1]

While many courts have addressed motions to dismiss RICO conspiracy claims, this Court's ruling in *Managed Care*, which relied on the Supreme Court's then-recent ruling in *Twombly*, explains why Plaintiffs' conspiracy claim should be dismissed. The Court explained that *Twombly* "adds new bite to the RICO requirement that the plaintiffs describe the agreement to conspire in the complaint." 2009 WL 812257, at *5. While the *Managed Care* complaint asserted time and again that the defendants had agreed to violate RICO, and further pointed to "various meetings and conferences attended by Defendants," the Court held that "mere opportunity to conspire alone without direct evidence of agreement is insufficient to infer the existence of a conspiracy." *Id.* at *6. The result there was as it should be here: dismissal of the RICO conspiracy claim. *See also Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1292 (S.D. Fla. 2008) (Moreno, J.) ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294-95 (11th Cir. 2010) ("without that further circumstance pointing to a meeting of the minds,

---

[1] Because this document was referenced in and is central to the Complaint, this Court may consider it in connection with a motion to dismiss. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

an account of a defendant's commercial efforts stays in neutral territory.") (citing *Twombly*, 550

U.S. at 557).

### 3. The allegations that Honda and Takata cooperatively investigated the alleged defect do not show that Honda agreed to participate in a RICO enterprise.

Alleging that Honda and Takata investigated ruptures of Takata's airbag inflators is not

enough to prove a conspiracy. A conspiracy claim must be dismissed absent plausible allegations

of an *illegal* agreement:

> The Plaintiffs in *Twombly* alleged a conspiracy among certain regional telecommunications providers. The complaint . . . relied on allegations of the defendants' parallel behavior to infer conspiracy. The Supreme Court upheld the dismissal of the complaint because "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."

*Solomon*, 574 F. Supp. 2d at 1292 (Moreno, J.).[2] Just as the plaintiffs in *Twombly* failed to show

that the defendants worked together in an *illegal* manner, Plaintiffs here – to borrow words from

one of the *Managed Care* opinions – fail to provide "any specific factual allegations regarding

exactly how and when [Honda] *agreed* to violate RICO through mail and wire fraud. Indeed, all

allegations regarding the agreement are conclusory or based upon an inference from" Honda's

and Takata's efforts to find the root cause of the alleged defect. *In re Managed Care Litig.*, 2009

WL 812257, at *5 (emphasis in original). Again, two companies' cooperative efforts to

understand and fix a very real problem are a far cry from a RICO conspiracy. Similarly,

Plaintiffs cannot allege a conspiracy based on Honda's interactions with Takata because

"[a]ssociation, alone, with the enterprise is, of course, insufficient for violation of RICO: an

---

[2] "The *Twombly* decision does not limit its holding to antitrust cases. The *Conley v. Gibson* case, which *Twombly* explicitly retires, was not an antitrust case. Both *Twombly* and this case address the sufficiency of factual pleadings for pleading a conspiracy. That *Twombly* involved an antitrust case and this case involves a RICO conspiracy is of no moment. The *Twombly* decision therefore sets the pleadings standards for this case." *Solomon*, 574 F. Supp. 2d at 1291.

individual must *agree* to participate in the affairs of the enterprise." *United States v. Valera*, 845 F.2d 923, 929 (11th Cir. 1988) (emphasis in original).

Plaintiffs may not find it easy to plead "with specificity the circumstances of a conspiracy involving large organizations and a complex scheme to defraud. Conspiracy is nonetheless an element of" a RICO conspiracy claim. *Solomon*, 574 F. Supp. 2d at 1292 n.2. And "[t]he requirement to plead and later demonstrate conspiracy is not relaxed because of the complexity of the allegations or organizations involved in the RICO conspiracy." *Id.* Here, the allegations in the Complaint do not add up to an agreement between Honda and Takata to violate RICO, particularly in light of the heightened pleading requirements of Rule 9(b). Accordingly, the RICO conspiracy claim against Honda should be dismissed.

### B. Plaintiffs Have Not Alleged An Injury Cognizable Under RICO.

RICO provides compensation for only certain types of harm, and Plaintiffs' "diminution in value" theory does not qualify. RICO authorizes civil lawsuits by "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Plaintiffs thus must show that (1) they suffered an injury to business or property, and (2) the injury was proximately caused by a violation of § 1962. *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). Consistent with common law principles, RICO conspiracy plaintiffs must allege injury "from an act . . . independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000).

"Federal courts have consistently and repeatedly held that to satisfy the injury requirement of section 1964, a plaintiff must prove an actual, concrete monetary loss (*i.e.,* an 'out-of-pocket' loss)." *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1090 (S.D. Ind. 2001). Courts are divided as to whether an unrealized diminution in value can ever be an "injury to business or property" under RICO, but the wiser view is that it

cannot. As the court explained in *Bridgestone/Firestone* after surveying the case law on this issue, the general rule is that "a plaintiff alleges a cognizable injury (one that is concrete, tangible, and not speculative or contingent) as a result of a purchase only where the diminished value of the plaintiff's property has actually been realized or when the alleged infirmity in the purchased property has otherwise tangibly manifested itself." *Id.* at 1094. This rule provides a reasonable, text-based means to avoid the misuse and undue expansion of the civil RICO statute.

Even if a diminution in value could in some circumstances be an actionable injury under RICO, Plaintiffs' alleged harm is too speculative to pass muster. Plaintiffs have alleged two injuries, but they really are two sides of the same coin: "overpayment for leased or purchased Class Vehicles," Compl. ¶ 440a, and diminished value of their vehicles, *id.* ¶ 440c. They make these allegations even though all cars at issue in this case are subject to recalls, so that any allegedly defective inflators have been or will be replaced for free. By the time Plaintiffs sell their cars, they will have received (or at least been offered) a free repair, which "may have alleviated or eliminated any" arguable harm. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002). Nebulous damages premised on the "mere possibility" that the value of Plaintiffs' cars "will suffer in some undefined way at some later point in the future" is not cognizable under RICO. *Maio*, 221 F.3d at 494. *Cf. Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 629-30 (8th Cir. 1999) (in fraud case, upholding dismissal because plaintiffs failed to allege any manifest defect and their vehicles performed satisfactorily).

Moreover, Plaintiffs do not allege that their injuries were proximately caused by a RICO violation. "RICO proximate causation requires a 'direct relation' between the injury asserted and the injurious conduct alleged." *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-21384-CIV, 2014 WL 4219587, at *3 (S.D. Fla. Aug. 25, 2014) (Moreno, J.) (*citing Bridge v. Phoenix*

*Bond & Indemnity Co.*, 553 U.S. 639, 654 (2008)). "RICO was enacted with an express target—racketeering activity—and only those injuries that are proximately caused by racketeering activity should be actionable under the statute." *Beck v. Prupis*, 162 F.3d 1090, 1098 (11th Cir. 1998), *aff'd*, 529 U.S. 494 (2000). Plaintiffs offer a single conclusory allegation that they "relied on the *Takata* Defendants' material misrepresentations and omissions," Compl. ¶ 428 (emphasis added), but this is a legal conclusion, not a factual allegation entitled to any presumption of truth. In any event, Plaintiffs allege that the *direct* cause of their alleged injury is the use of inappropriate propellant in Takata's airbags, *id.* ¶¶ 4-8, 205-08, *not* the alleged predicate acts of mail fraud and wire fraud against NHTSA, *see id.* ¶ 426. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) (alleged defrauding of state tax authority and subsequent ability to charge lower prices was not proximate cause of competitor's lost sales under RICO). For this reason as well, the RICO conspiracy claim should be dismissed.

## II.   The Court Should Defer To The Primary Jurisdiction Of NHTSA With Respect To Plaintiffs' Claims For Recall-Related Injunctive Relief, Which In Any Event Is Prudentially Moot.

### A.   This Court Should Not Entangle Itself With The Complex Issues Involved In Overseeing An Automotive Recall.

Despite acknowledging that they seek redress "for economic losses," Compl. ¶ 194, in several counts Plaintiffs also request sweeping injunctive relief, including this Court's supervision of the "numerous recalls of the various Class Vehicles and/or the Defective Airbags installed in them, to ensure that all affected vehicles are recalled and that the recalls properly and adequately cure the dangers and risks posed." *Id.* ¶¶ 567, 767, 960, & 1102. Plaintiffs also seek "an injunction requiring Defendants to adequately and permanently repair the Class Vehicles and/or the Defective Airbags installed in them," *id.* ¶¶ 600, 800, 993, & 1135, and offer their critique of the way the recalls to date have been conducted, *id.* ¶¶ 311-324. But ordering and

overseeing recalls falls within the province of NHTSA. The Court should defer to NHTSA on these remedies under the doctrine of primary jurisdiction. *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993). It certainly should not take on the role urged by Plaintiffs of a super-regulator to oversee the actual regulator (NHTSA), which in turn is overseeing the complex recall process currently under way.

The primary jurisdiction doctrine applies when a claim implicates "a federal agency's expertise with a regulated product." *Greenfield v. Yucatan Foods, LP*, 18 F. Supp. 3d 1371, 1375 (S.D. Fla. 2014). In deciding whether to apply the doctrine, courts typically consider four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig*., 955 F. Supp. 2d 1311, 1348 (S.D. Fla. 2013).

The primary jurisdiction doctrine generally does not apply to claims for monetary relief, and Honda is not seeking dismissal of any such claims on primary jurisdiction grounds. The doctrine instead affects claims for injunctive relief where, as here, the requested relief falls within the province of a government agency. By enacting the Motor Vehicle Safety Act, 49 U.S.C. § 30101, *et seq.*, Congress charged NHTSA with determining whether a recall is necessary and, if so, overseeing any such recall. This is precisely the role NHTSA is playing with the Takata airbag situation, and it is doing so with unprecedented zeal. As NHTSA's Administrator recently told a Congressional committee, "NHTSA is taking steps to coordinate the remedy process among Takata, the auto manufacturers, and other air bag suppliers – something NHTSA has never done before in its history." *See* Statement of Mark R. Rosekind,

Ph.D., before the Senate Committee on Commerce, Science & Transportation at 2 (June 2, 2015) (attached as Ex. B). "To deal with the extraordinary complexity of the Takata recall, NHTSA is using all of the tools at its disposal to prioritize and organize these national recalls, and to ensure the adequacy of the remedy." *Id.*

Plaintiffs have acknowledged NHTSA's extensive involvement in the recall efforts. "By the middle of 2013," Plaintiffs allege, "the pace of the recalls increased exponentially as [NHTSA] began to force Defendants into action." Compl. ¶ 16. NHTSA's action included a November 2014 demand that "the recall be expanded to the entire country for certain driver's side airbags." *Id.* ¶ 18. By early December 2014, "Honda, Ford, Chrysler, and Toyota had all agreed to a nationwide recall, principally for driver side airbags"; shortly thereafter, Mazda and BMW also agreed to a nationwide recall. *Id.* ¶ 297.

In May 2015, NHTSA issued a Consent Order directed to Takata regarding different types of airbag inflators. *Id.* ¶ 21. NHTSA issued the Order "pursuant to its authority under the Safety Act, 49 U.S.C. § 30101, et seq., as delegated by the Secretary of Transportation, 49 C.F.R. §§ 1.95, 501.2(a)(1), to inspect and investigate, 49 U.S.C. § 30166(b)(1), to ensure that defective vehicles and equipment are recalled, 49 U.S.C. §§ 30118-30119, to ensure the adequacy of the recalls, 49 U.S.C. § 30120(c), and to require any person to file reports or answers to specific questions, 49 U.S.C. § 30166(g)." *See* Consent Order (attached as Ex. C) ¶ 3. This comprehensive statutory and regulatory regime shows the breadth of NHTSA's jurisdiction; when it comes to vehicle recalls, that jurisdiction is plenary. The Consent Order further provides that the investigation into airbag inflators "shall remain open until such time as NHTSA reasonably concludes, *in its sole discretion and determination*, that all issues thereunder, including all science, engineering and legal issues, as well as issues related to the scope of the

11

population of recalled inflators, geographic scope of the recalls and adequacy of the remedy have been satisfactorily resolved." *Id.* ¶ 6 (emphasis added).

In light of NHTSA's ongoing supervision of the Takata airbag recall, including its promise to keep its investigation open until the adequacy of the remedy has been "satisfactorily resolved," the recall-related injunctive relief Plaintiffs seek is legally unsupportable. If anything, it would do more harm than good. This Court has jurisdiction to adjudicate claims; NHTSA has jurisdiction to address the scope and adequacy of any recalls. Just as NHTSA would not seek to resolve Plaintiffs' claims for damages, this Court should decline Plaintiffs' invitation to enmesh itself in the recall process. As a court involved in the GM ignition switch litigation observed in rejecting a similar request, "The Court is of the opinion that NHTSA is far better equipped than this Court to address the broad and complex issues of automotive safety and the regulation of automotive companies in connection with a nationwide recall." *Silvas v. General Motors, LLC,* No. 14-cv-00089, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014).

When a judicial remedy would overlap with NHTSA's actions – as is the case here – the potential for conflict is obvious. And make no mistake, allowing Plaintiffs to pursue the injunctive relief described in the Second Amended Complaint would inevitably either conflict with or be superseded by whatever remedy NHTSA determines is warranted. For this reason, courts routinely decline to intervene in vehicle recalls. For instance, the court in *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp 2d 614 (M.D.N.C. 2006), dismissed claims involving vehicles subject to an ongoing recall, concluding that deference to NHTSA was "especially" appropriate where "there is already a safety recall in place." *Id.* at 628. *See also Ford Motor Co. v. Magill*, 698 So. 2d 1244, 1245 (Fla. 3d DCA 1997) ("NHTSA has accorded present owners of

the vehicles a remedy to secure a correction of the problem to their vehicle, and Florida courts should defer to NHTSA"). The same is true here.

      **B.**      **The Recall-Related Relief Plaintiffs Seek Is Prudentially Moot Under *Winzler v. Toyota*.**

The recall-related claims should be dismissed for a related but independent reason: They are prudentially moot. Courts have consistently held that a recall moots the type of recall-related relief sought by Plaintiffs. For example, in *Winzler*, 681 F.3d 1208, the Tenth Circuit found the case prudentially moot where Toyota announced a nationwide recall after plaintiffs filed their case. By doing so, Toyota "set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process." *Id.* at 1211. In light of this, the court held, the best case scenario was duplication of efforts between the judicial branch and the other branches of government, while "[a]t worst, we might invite inter-branch confusion and turf battles over the details of carrying out an agreed objective." *Id. Accord United States v. Ford Motor Co.*, 574 F.2d 534, 539 (D.C. Cir. 1978); *Hadley v. Chrysler Group, LLC*, No. 13-13665, 2014 WL 988962, at *5 (E.D. Mich. Mar. 13, 2014); *Cheng v. BMW of N. Am., LLC,* No. 12-09262, 2013 WL 3940815, at *3-4. (C.D. Cal. July 26, 2013).

The same logic applies here. Even before any litigation was filed, millions of Takata airbags had been recalled; millions more have been or will soon be replaced under additional recalls, all supervised by NHTSA. And NHTSA has given every indication that it will continue to scrutinize the efficacy of the recalls. *See* Ex. C ¶ 6. It follows, therefore, that Plaintiffs' claims seeking recall-related injunctive relief for cars that have already been recalled (as is the case here, *see* Compl. ¶¶ 105-96 & 392-93) should be dismissed as prudentially moot under the same logic employed in *Winzler*.

### III.    Plaintiffs From Outside California Cannot Pursue Claims Under California Law.

Fifty-nine named Plaintiffs allegedly purchased or leased Hondas or Acuras outside of California, yet these same Plaintiffs purport to invoke California law to support their claims against Honda. Conflicts-of-law principles and the rules prohibiting extraterritorial application of state law bar these Plaintiffs from invoking California law. The Court should therefore dismiss Counts 9 (fraudulent concealment), 11 (Unjust Enrichment), 12 (California Unfair Competition Law), 13 (California Consumers Legal Remedies Act), and 14 (California False Advertising Law) as to these Plaintiffs.

### A.    Prohibitions On Extraterritoriality Bar These Plaintiffs From Invoking California Law.

The Due Process Clause of the U.S. Constitution limits a state's ability to export its laws nationwide. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571-72 (1996); *see also In re Managed Care Litig.*, 298 F. Supp. 2d at 1296. State law is "presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918). To reach a contrary conclusion, there must be a "'significant contact or significant aggregation of contacts'" such that applying a state's laws is "'neither arbitrary nor fundamentally unfair.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985).

California follows this presumption against extraterritoriality. *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011). California courts will not "construe a statute as regulating occurrences outside the state unless a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute." *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999). Out-of-state plaintiffs must allege a significant contact or aggregation of contacts with California. *Tidenberg v. Bidz.com, Inc.*, No. CV 08-5553, 2009 WL 605249, at *4 (N.D. Cal. Mar. 4, 2009).

Under federal and California law, the mere fact that a defendant is based in California is insufficient to apply California law extraterritorially. *See, e.g., Sullivan*, 254 P.3d at 248. Numerous courts in California and elsewhere have so held, including in the context of fraud-based claims relating to automobiles. *See, e.g.*, *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 916-19 (C.D. Cal. 2011); *McKinnon v. Dollar Thrifty Auto. Group., Inc.* No. 12-4457, 2013 WL 791457, at *4-6 (N.D. Cal. Mar. 4, 2013); *Belle v. Chrysler Group., LLC*, No. 12-936, 2013 WL 949484, at *6 (C.D. Cal. Jan. 29, 2013).

The claims of the 59 non-California Plaintiffs lack any nexus to California beyond the fact that one Honda defendant (American Honda) has its headquarters in California. The claims of these Plaintiffs lack an adequate connection to California to support the extraterritorial application of California law and should be dismissed.

### B. Conflicts-Of-Law Rules Independently Bar These Plaintiffs From Invoking California Law.

The 59 non-California plaintiffs also cannot invoke California law in light of applicable choice-of-law rules. These plaintiffs originally filed complaints in Alabama, California, Florida, Georgia, Illinois, Kansas, Kentucky, Louisiana, Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, and West Virginia. The choice-of-law rules of those states thus govern their claims. *In re Managed Care Litig.*, 298 F. Supp. 2d at 1296. Those choice-of-law rules fall into three groups: (1) *lex loci*;[3] (2) the "most significant

---

[3] *See Ex parte Exxon Corp.*, 725 So. 2d 930, 932 (Ala. 1998) (Alabama); *Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413, 416 (Ga. 2005) (Georgia); *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985) (Kansas); *Martinez v. Nat'l Union Fire Ins. Co.*, 911 F. Supp. 2d 331, 338 (E.D.N.C. 2012) (North Carolina); *Witt v. Am. Trucking Ass'n, Inc.*, 860 F. Supp. 295, 300 (D.S.C. 1994) (South Carolina); *Chemtall, Inc. v. Madden*, 607 S.E.2d 772, 779-80 (W. Va. 2004 ) (West Virginia).

relationship"/Restatement (Second) of Conflicts test;[4] and (3) the governmental interest test.[5] *Id.* at 1297.

Under these tests, the first question is whether there is a true conflict. *See, e.g., Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 633 (S.D. Fla. 2008). In a leading case, the Ninth Circuit held that true conflicts inevitably arise in cases relating to alleged automobile defects because California law and the laws of other states differ in material respects. *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 591-92 (9th Cir. 2012). Courts across the country are in accord. *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005); *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017-18; *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998). The "substantial differences" include "the varying degrees to which the law allows a private right of action and class actions, the limitations periods, what constitutes a violation, what form of *scienter* is required, what form of reliance is required, and damages." *E.g., Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 918 (Ill. 2007). "The elements necessary to establish a claim for unjust enrichment also vary materially from state to state." *Mazza*, 666 F.3d at 591.

---

[4] *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 634 (S.D. Fla. 2008) (Florida); *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007) (Illinois); *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982) (Kentucky); *Ramsey v. Bell Helicopter Textron, Inc.*, 704 F. Supp. 1381 (E.D. La. 1989) (Louisiana); *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994) (Missouri); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 293 (D.N.J. 2009) (New Jersey); *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1196 (N.Y. 2002) (New York); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) (Ohio); *Sherwin-Williams Co. v. Bei Enters., Inc.*, No. 12-cv-603, 2012 WL 5990313, at *2 (W.D. Pa. Nov. 30, 2012) (Pennsylvania); *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 884 (Tex. App. 2008) (Texas).

[5] *See McCann v. Foster Wheeler LLC*, 225 P.3d 516 (Cal. 2010) (California); *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009) ("Michigan choice of law provisions favor allowing Michigan residents to bring suit in Michigan courts under Michigan law").

The question then becomes whether California law could apply to the claims of these 59 Plaintiffs who bought their cars in other states. The answer is no. Under *lex loci*, courts apply the law of the jurisdiction where the alleged injury occurred, which in this context is the place of purchase. *E.g.*, *Chemtall Inc. v. Madden*, 607 S.E.2d 772, 779-80 (W. Va. 2004). Under the "most significant relationship" and "governmental interest" tests, courts have consistently applied the law of the state where a product was purchased and where allegedly deceptive statements were received. *Mazza*, 666 F.3d at 591-92; *Pilgrim*, 660 F.3d at 946-47; *Barbara's Sales*, 879 N.E.2d at 920.

Each of the 59 plaintiffs allege that they purchased or leased, relied upon representations, and were injured by omissions in states other than California. California has no cognizable interest in applying its laws to such claims, and certainly lacks a more significant interest than the states where the vehicles were purchased or leased. *Mazza*, 666 F.3d at 592. California's interest in "regulating those who do business within its state boundaries" is not achieved by "applying California law to the claims of foreign residents concerning acts that took place in other states where cars were purchased or leased." *Id.* at 594. Consequently, the Court should dismiss the California claims of the 59 non-California plaintiffs on choice of law grounds because, under these facts, they cannot invoke California law. *See In re Managed Care*, 298 F. Supp. 2d at 1297 (concluding "on choice of law grounds" at Rule 12(b)(6) stage that named plaintiffs who did not "reside in" or "engage[] in a relevant transaction in" New Jersey or Connecticut could not invoke New Jersey or Connecticut law); *In re Toyota*, 785 F. Supp. 2d at 917-18.

## IV. Plaintiffs Fail To State A Claim For Breach Of Implied Warranty Of Merchantability Under California's Song-Beverly Act (Counts 10 and 54)

Under the Song-Beverly Act, the term of an implied warranty "shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . *but in no event* shall such implied warranty have a duration of less than 60 days nor *more than one year* following the sale of new consumer goods to a retail buyer. Where no duration for an express warranty is stated with respect to consumer goods . . . the duration of the implied warranty shall be the maximum period prescribed above." Cal. Civ. Code § 1791.1(c) (emphasis added).[6]

Here, none of the Honda Plaintiffs who allegedly purchased their vehicles in California say they experienced an airbag rupture or allege any other manifestation of an alleged defect within one year (or for used cars, three months) of their purchase or lease. *See* Compl. ¶ 81 (Bae); ¶ 90 (Cataldo); ¶ 100 (Flaherty); ¶ 102 (Gamino); ¶ 104 (Go); ¶ 112 (Hollywood); ¶ 119 (Klinger); ¶ 132 (McLeod); ¶ 139 (Nannery); ¶ 156 (Ruth); ¶ 167 (Takeda); ¶ 186 (Zamora). Therefore, their Song-Beverly claims should be dismissed. *See*, *e.g.*, *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1021-22 (S.D. Cal. 2011).

Plaintiffs may argue that the alleged defect was latent and existed at the time of sale, and therefore falls within the Song-Beverly Act. A few courts, based on *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297 (2009), have accepted this argument, but *Mexia* has been repeatedly distinguished, and the few cases following it increasingly rejected, because the "flaw in *Mexia*'s

---

[6] Similarly, for used consumer goods, "[t]he duration of the implied warranty of merchantability . . . with respect to used consumer goods sold in this state, where the sale is accompanied by an express warranty, shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . *but in no event* shall such implied warranties have a duration of less than 30 days nor *more than three months* following the sale of used consumer goods to a retail buyer. Where no duration for an express warranty is stated with respect to such goods, or parts thereof, the duration of the implied warranties shall be the *maximum period* prescribed above." Cal. Civ. Code § 1795.5(c) (emphasis added).

reasoning is readily apparent: its holding 'renders meaningless any durational limits on implied warranties' as '[e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period.'" *Grodzitsky v. Am. Honda Motor Co.*, No. 12-cv-1142, 2013 WL 2631326, at *10 (C.D. Cal. June 12, 2013).

A recent decision from the Central District of California, *Peterson v. Mazda Motor of America, Inc*., 44 F. Supp. 3d 965 (C.D. Cal. 2014), emphasizes this point. In *Peterson*, the plaintiff alleged that Mazda cars suffered from a latent defect. *Id*. at 967-68. The Court noted a split of authority, with some courts holding that plaintiffs must show that the alleged defect manifested within the warranty period and other courts following *Mexia*. *Id*. at 970-71. After initially following the reasoning in *Mexia*, the court "reconsidered the case law as well as the text of the statute" and decided that "a limited reading of *Mexia* is the more well-reasoned one." *Id.* at 969-70, 972. Following the majority approach, the court held that, to state a claim under the Song-Beverly Act, a plaintiff must allege that the defect manifested within the one-year warranty period. *Id.* at 971-72. Other recent decisions have come to the same conclusion.[7]

Here, as in *Peterson* and all of the cases cited in the footnote, Plaintiffs do not allege that their airbags ruptured or exhibited any other manifestation of the alleged defect within the Song-Beverly warranty period. As a result, their Song-Beverly Act claims should be dismissed.

---

[7] *See Hartdt v. Chrysler Group, LLC*, Case No. SACV-14-01375 SJO (C.D. Cal. Mar. 16, 2015) (attached as Ex. D); *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1057 (C.D. Cal. Feb. 25, 2014); *Grodzitsky*, 2013 WL 2631326, at *10-11; *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852-53 (N.D. Cal. 2012); *Marchante,* 801 F. Supp. 2d at 1021-22 (S.D. Cal. 2011); *Hovespian v. Apple, Inc.*, Nos. 08-5788 & 09-1064, 2009 U.S. Dist. LEXIS 80868, at *24, n.7 (N.D. Cal. Aug. 21, 2009); *Tietsworth v. Sears*, No. 09-cv-288, 2009 U.S. Dist. LEXIS 98532, at *37, n.6 (N.D. Cal. Oct. 13, 2009).

## V.     Honda Incorporates By Reference Certain Arguments Of Other Defendants.

Finally, Honda incorporates by reference the following arguments of its co-defendants and offers the following additional authorities:

### A.     Lack Of Pre-Suit Notice

#### *Alabama*

Honda incorporates by reference Toyota's and BMW's requests (sections II.F. and V.F. of their briefs, respectively) to dismiss Count 49, which alleges violations of the Alabama Deceptive Trade Practices Act, because Plaintiffs did not provide timely pre-suit notice as required by the statute. In support of this request, Honda attaches group Exhibit E, consisting of demand letters that post-date by months the complaints in the underlying actions.

#### *Georgia*

The Court should dismiss Count 59, which was brought against Honda on behalf of a sub-class of Georgia consumers for alleged violations of the Georgia Fair Business Practices Act, because none of the named Plaintiffs from Georgia (Arnold, Watley, and Young) provided timely pre-suit notice as required by Ga. Code Ann. § 10-1-399(b). This requires dismissal of the claim. *See Brown Realty Assocs., Inc. v. Thomas*, 389 S.E.2d 505 (Ga. Ct. App. 1989). Plaintiffs allege compliance with the notice requirement, Compl. ¶ 1238, but Plaintiffs Arnold, Watley, and Young did not send a demand letter (attached as Ex. E) until June 2, 2015 – months after the underlying actions were filed.

#### *Massachusetts*

The Court should dismiss Count 70, which was brought against Honda on behalf of a sub-class of Massachusetts consumers for alleged violations of the Massachusetts Consumer Protection Act, because the sole named Plaintiff from Massachusetts failed to provide timely pre-suit notice. Massachusetts law requires plaintiffs to provide a written demand for relief "at least

thirty days prior to the filing" of a lawsuit. Mass. Gen. Laws ch. 93A, § 9(3). Timely pre-suit notice is a "jurisdictional prerequisite to suit." *Roberts v. Crowley*, 538 F. Supp. 2d 413, 420-21 (D. Mass. 2008). Plaintiffs here erroneously allege compliance, Compl. ¶ 1421, but Plaintiff's demand letter (attached as Ex. E) is dated June 5, 2015, months after the complaint was filed.

### West Virginia

The Court should dismiss Count 102, which was brought against Honda on behalf of a sub-class of West Virginia consumers for alleged violations of the West Virginia Consumer Credit and Protection Act, because the single named plaintiff from West Virginia, Jonathan Knight, failed to provide timely pre-suit notice. West Virginia law prohibits suits by a consumer "until the consumer has informed the seller or lessor in writing and by certified mail, return receipt requested, of the alleged violation and provided . . . twenty days from receipt of the notice of violation … to make a cure offer." W. Va. Code § 46A-6-106(c). Plaintiffs erroneously allege compliance with this requirement, Compl. ¶ 1893, but Plaintiff did not send Honda a demand letter (attached as Ex. E) until December 19, 2014 – a week *after* filing suit.

### B. Negligent Failure To Recall

Honda incorporates by reference BMW's arguments in section VIII of its brief and Toyota's arguments in section VII.A. of its brief. For the same reasons asserted there, the Court should dismiss Counts 15 and 55 (negligent failure to recall) against Honda.

### C. Unjust Enrichment

Unjust enrichment is not an independent cause of action under California law. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010). As a result, Count 11 should be dismissed. To the extent Plaintiffs alternatively seek relief under the "laws of the states where Plaintiffs and Class Members reside and/or purchased their Class Vehicles," Compl. ¶ 545, the Court should dismiss

Count 11 for the reasons argued by BMW (§ IX); Ford (§ IV.C); Mazda (§§ II.E.3, II.F.3, & II.G.3); Nissan (§ XI); Subaru (§§ II.D & III.A); and Toyota (§ IV). For similar reasons, the Court should dismiss any unjust enrichment claim brought under the laws of Arizona, Connecticut, Georgia, Hawaii, Illinois, Indiana, Louisiana, Missouri, Michigan, Minnesota, New York, North Carolina, Tennessee, Virginia, or Washington, as those states preclude recovery for unjust enrichment where, as here, there is an adequate remedy at law.[8]

### D.  Lack of Privity

Honda joins BMW's (section VI.A) and Ford's (section IV.B.2) motions to dismiss claims for breach of implied warranty (Count 48) and violation of the Magnuson-Moss Warranty Act (Count 3) brought by the purported Florida sub-class because there is no privity between these Plaintiffs and Honda. These Plaintiffs allegedly purchased their Honda vehicles from private sellers, Compl. ¶ 77, 128; Honda dealerships in Florida, *id.* ¶ 90, 101, 113, 121, 122, 150, 170, 171, 178; or Honda dealerships in other states, *id.* ¶ 116; or omit any allegations about where they purchased their Honda vehicles, *id.* ¶ 95, 130. No Florida Plaintiffs say they bought their cars directly from Honda. Honda also moves to dismiss Count 3 and breach of implied warranty claims brought by the purported Michigan (Count 73) and North Carolina (Count 86)

---

[8] *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485, 491-92 (Ariz. Ct. App. 2002); *U.S. Fid. & Guar. Co. v. Metro. Prop. & Liab. Ins. Co.*, 521 A.2d 1048, 1051 (Conn. Ct. App. 1987); *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.,* 14 F.3d 1507, 1518-19 (11th Cir. 1994); *Porter v. Hu*, 169 P.3d 994, 1007 (Haw. Ct. App. 2007); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004); *King v. Terry*, 805 N.E. 2d 397, 400 (Ind. Ct. App. 2004); *Baker v. McClay Props. Co.*, 648 So. 2d 888, 897 (La. 1995); *Zipper v. Health Midwest*, 978 S.W.2d 398, 412 (Mo. Ct. App. 1998); *Pacheco v. Boar's Head Provisions Co.*, No. 09-civ-298, 2010 WL 1323785, at *4 (W.D. Mich. Mar. 30, 2010); *ServiceMaster v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008); *Embree Const. Group, Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 920 (N.C. 1992); *Zirkle v. City of Kingston*, 396 S.W.2d 356, 363 (Tenn. 1965); *R.M. Harrison Mech. Corp. v. Decker Indus., Inc.*, No. CL08-193, 2008 WL 10669311, at *7 (Va. Cir. Ct. Aug. 28, 2008); *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1134 (Wash. 2000).

sub-classes because there is no privity between these Plaintiffs and Honda. *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315, 322 (E.D. Mich. 2005); *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 796 (E.D.N.C. 2009).

**E.      Duration of Warranty**

Under federal law, "implied warranties may be limited . . . to the duration of a written warranty." 15 U.S.C. § 2308(b). And implied warranties may be limited under the Uniform Commercial Code, which has been adopted by most of the states at issue.[9] Here, the Honda warranty provided with new vehicles limits the duration of any implied warranties, including merchantability, to the term of the express warranty – three years or 36,000 miles, whichever comes first. *See* Owner's Manual & Warranty http://owners.honda.com/vehicles/warranty. Since the named Plaintiffs' vehicles are 2001-2008 model years, the express warranty has long since expired.

This Court addressed this very issue in *Speier-Roche v. Volkswagen Group of Am., Inc.*, No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014), where the plaintiff alleged that Audi vehicles were defective. Because the written warranty had expired, the Court dismissed the implied warranty claim. *Id.* at *1. For the same reasons articulated there, the Court should dismiss Counts 48 (Florida), 62 (Hawaii), 66 (Indiana), 69 (Louisiana), 71 (Massachusetts), 73 (Michigan), 76 (Minnesota), 78 (Missouri), 80 (Nevada), 81 (New Jersey), 86 (North Carolina), 90 (Pennsylvania), 92 (Rhode Island), 98 (Texas), 103 (West Virginia).

---

[9] *See* Fla. Stat. Ann. § 672.316; Haw. Rev. Stat. § 490:2-316; Ind. Code 26-1-2-316; Mass. Gen. Law ch. 106 § 2-316; Mich. Comp. Laws § Ann. 440.2316; Minn. Stat. § 336.2-316; Mo. Rev. Stat. § 400.2-316; Nev. Rev. Stat. Ann. § 104.2316; N.J. Stat. Ann. § 12A:2-316; N.C. Gen. Stat. Ann § 25-2-316; P.A. Stat. Ann. § 2316; RI Gen Laws § 6A-2-316 (2012); Tex BC Code Ann. § 2.316; Va. Code § 8.2–316(4) and W. Va Code § 46-2-316.

### F.      Florida Deceptive and Unfair Trade Practices Act.

Honda joins Ford's (section IV.F), Mazda's (section C.I), Subaru's (section II.E), and Toyota's (section V) motions to dismiss claims for violations of the Florida Deceptive and Unfair Trade Practices Act (Count 47). No Plaintiffs purporting to represent the Florida sub-class allege a manifestation of any alleged defect in their vehicles; nor do they plead their claims with particularity, as required under Rule 9(b); nor do they have timely claims under that statute, since those claims accrue on the date of purchase and expire four years later. *Speier-Roche*, 2014 WL 1745050, at *6-7.

### G.      Statute of Limitations.

The statute of limitations for implied warranty claims in Nevada and Pennsylvania is four years. Nev. Rev. Stat. § 104.2725; and 13 Pa. Stat. Ann. § 2725. A cause of action accrues at the time of sale "regardless of the aggrieved party's lack of knowledge of the breach." Nev. Rev. Stat. § 104.2725; 13 Pa. Stat. Ann. § 2725(a). Thus, the discovery rule does not apply. *See, e.g.,* *Voicheck v. Ford Motor Co.*, No. 12-6534, 2013 WL 1844273, at *4, n.7 (E.D. Pa. May 2, 2013). Plaintiff Lathouris (Nevada) bought her car in 2006 and Plaintiff Morgan (Pennsylvania) bought hers in 2008. Since the earliest class action in this litigation was not filed until October 2014, the claims of both of these Plaintiffs (Counts 80 and 90) are time-barred.

### H.      California False Advertising Law

Honda incorporates by reference the Rule 9(b) arguments of Nissan (section VIII) and Mazda (section B.4.) regarding Plaintiffs' claims under California's False Advertising Law (Count 14 and 53) because Plaintiffs have failed to identify with particularity any affirmative "false advertising."

## Conclusion

Honda respectfully requests that the Court dismiss Counts 2-3, 9-11, 12-13 (to the extent asserted by non-California Plaintiffs), 14-15, 46-49, 53-55, 59, 62, 66, 69-71, 73, 76, 78, 80-81, 86, 90, 92, 98, and 102-103 with prejudice and award Honda any other appropriate relief. With respect to the primary jurisdiction issue discussed above, Honda requests that the pertinent claims be dismissed or, in the alternative, that the pertinent allegations (¶¶ 567, 600, 767, 800, 960, 993, 1102, and 1135) be stricken.

Respectfully submitted,

By: /s/ Mitchell Widom

**Michael L. Mallow** (*admitted pro hac vice*)
mmallow@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, CA 90013
T: 213 896-6000
F: 213 896-6600

**Eric S. Mattson** (*admitted pro hac vice*)
emattson@sidley.com
**Michael C. Andolina** (*admitted pro hac vice*)
mandolina@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
T: 312 853-7000
F: 312 853-7036

**Mitchell Widom**
mwidom@bilzin.com
**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
T: 305 374-7580
F: 305 374-7593

***Counsel for American Honda Motor Co.,
Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2015, I electronically filed the foregoing document with the Clerk of the Curt using CM/ECF. I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.


*/s/ Mitchell E. Widom*
Mitchell E. Widom