**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

MDL No. 2599
Master File No. 15-2599-MD-MORENO

IN RE:

**TAKATA AIRBAG PRODUCTS LIABILITY**
**LITIGATION**
_____

THIS DOCUMENT RELATES TO ALL CASES
_____


**<u>NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.'S MOTION TO</u>**
**<u>DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION</u>**
**<u>COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION AND</u>**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................... 1

II.  PLAINTIFFS' ALLEGATIONS .................................................................... 2
     A. Overview .................................................................................................. 2
     B. Nissan Related Plaintiffs ......................................................................... 3

III. STANDARDS FOR MOTION TO DISMISS ................................................ 4

IV.  APPLICABLE LAW ..................................................................................... 5

V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF IMPLIED
     WARRANTY (PERTINENT TO COUNTS 3,33, 48, 54 AND 87) ................. 7
     A. Implied Warranties Have Long Since Expired ......................................... 7
        1. Haklar's Implied Warranty is Limited to One Year Under
           California Law ..................................................................................... 7
        2. All Plaintiffs' Implied Warranties are Contractually Limited to the
           Duration of Their Express Warranties Which Have Expired ................ 8
     B. Plaintiffs' Claims are Barred by Limitations .......................................... 10
        1. Any Claim for Implied Warranty Would Have Accrued and
           Expired Long Ago .............................................................................. 10
        2. Tolling Theories Do Not Salvage Plaintiffs' Claims ........................... 10
     C. Lack of Privity Defeats Liberal's Implied Warranty Claims Under Florida
        Law ....................................................................................................... 11
     D. Plaintiffs' Fail to Allege a Breach of an Implied Warranty ...................... 11

VI.  THE MAGNUSON-MOSS CLAIM FALLS WITH THE STATE
     IMPLIED WARRANTY CLAIMS (PERTINENT TO COUNT 3) ................. 14

VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT
     CONCEALMENT OR VIOLATIONS OF THE STATE CONSUMER
     STATUTES BASED ON CONCEALMENT (PERTINENT TO COUNTS
     32. 35, 47, 51, 52 53, AND 86) ..................................................................... 14
     A. All Concealment Claims Require Proof that the Defendant Knew the
        Concealed Fact ....................................................................................... 14
     B. Plaintiffs Do Not Adequately Plead That NNA Was Aware of the Alleged
        Defect .................................................................................................... 16
     C. The Used Vehicle Purchasers Fail to Plead Facts Giving Rise to a
        Disclosure Duty ..................................................................................... 18

VIII. PLAINTIFFS FAIL TO STATE A CLAIM BASED ON
     MISREPRESENTATION BECAUSE THEY DO NOT IDENTIFY ANY
     ACTIONABLE REPRESENTATION UPON WHICH THEY RELIED

OR OTHERWISE CAUSED ANY DAMAGE (PERTINENT TO
COUNTS 35, 47, 51-53 AND 86) ................................................................................. 19

IX.   THE PENNSYLVANIA FRAUDULENT CONCEALMENT AND
STATUTORY CLAIMS ARE BARRED BY THE ECONOMIC LOSS
RULE (PERTINENT TO COUNT 89) ........................................................................ 22

X.   PLAINTIFF HAKLAR FAILS TO STATE A CLAIM FOR NEGLIGENT
FAILURE TO RECALL UNDER CALIFORNIA LAW (PERTINENT
TO COUNT 46) .......................................................................................................... 22

XI.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST
ENRICHMENT (PERTINENT TO COUNT 34) ........................................................ 23

XII.   THE COURT SHOULD DEFER TO THE PRIMARY JURISDICTION
OF NHTSA WITH RESPECT TO PLAINTIFFS' CLAIM FOR
RECALL-RELATED INJUNCTIVE RELIEF ............................................................. 24

XIII.   CONCLUSION .......................................................................................................... 24

20435214v2

# TABLE OF AUTHORITIES

Page

**Cases**

*Abraham v. Volkswagen of Am. Inc.*,
795 F.2d 238 (2d Cir. 1986)..................................................................... 9

*Alban v. BMW of N. Am. LLC*,
2011 WL 900114 (D.N.J. March 15, 2011) ............................................... 9

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010)............................................................ 5, 21

*Angus v. Shiley*,
989 F.2d 142 (3d Cir. 1993)..................................................................... 13

*Aprigliano v. Am. Honda Motor Co.*,
979 F. Supp. 2d 1331 (S.D. Fla. 2013)..................................................... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................. 4, 11

*Audio Visual Artistry v. Tanzer*,
403 S.W.3d 789 (Tenn. App. 2012) .......................................................... 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................. 4, 11

*Benton v. Snyder*,
825 S.W.2d 409 (Tenn. 1992).................................................................. 11

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009).............................................................. 12, 13

*Bishop v. Florida Specialty Paint Co.*,
389 So. 2d 999 (Fla. 1980)........................................................................ 6

*Borden Inc. v. Advent Ink Co.*,
701 A.2d 255 (Pa. Super. 1997)................................................................. 8

*Breakstone v. Caterpillar, Inc.*,
2010 WL 216440 (S.D. Fla. May 6, 2010) .............................................. 13

*Briehl v. Gen. Motors Corp.*,
172 F.3d 623 (8th Cir. 1999).............................................................. 13, 14

*Brisson v. Ford Motor Co.*,
602 F. Supp. 2d 1227 (M.D. Fla. 2009),
*rev'd on other grounds*, 349 Fed. App'x 433 (11th Cir. 2009).............. 9, 13

*Bruhl v. PricewaterhouseCoopers Int'l*,
2007 WL 997362 (S.D. Fla. Mar. 27, 2007) ........................................... 16

20435214v2

*Bussian v. DaimlerChrysler Corp.*,
    411 F. Supp. 2d 614 (M.D.N.C. 2006) ...................................................................... 12
*Carlson v. Gen. Motors Corp.*,
    883 F.2d 287 (4th Cir. 1989) ..................................................................... 13, 14
*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998) ...................................................................... 13
*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2009) ..................................................................... 14
*Cole v. Gen. Motors Corp.*,
    484 F.3d 717c (5th Cir. 2007) ...................................................................... 12
*Curl v. Volkswagen of Am. Inc.*,
    871 N.E.2d 1141 (Ohio 2007) ...................................................................... 11
*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App 4th 824 (2006) ..................................................................... 14, 15
*David v. Am. Suzuki Motor Corp.*,
    629 F. Supp. 2d 1309 (S.D. Fla. 2009) ................................................ 6, 11, 13, 27
*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
    66 F.3d 604 (3d Cir. 1995) ...................................................................... 19
*East River S.S. Corp. v. Transamerica Delaval, Inc.*,
    476 U.S. 858 (1986) ......................................................................... 22, 23
*Edmundson v. Proctor & Gamble Co.*,
    537 Fed. App'x 708 (9th Cir. 2013) .................................................................. 21
*Extraordinary Title Servs. LLC v. Florida Power & Light Co.*,
    1 So. 3d 400 (Fla. 3d DCA 2009) ...................................................................... 23
*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990) ......................................................................... 5
*Fin. Sec. Assur. Inc. v. Stephens Inc.*,
    500 F.3d 1276 (11th Cir. 2007) ...................................................................... 8
*Ford Motor Co. v. Fairley*,
    398 So. 2d 216 (Miss. 1981) ...................................................................... 12
*Foster v. Xerox Corp*,
    40 Cal. 3d 306 (1985) ......................................................................... 15
*Frank v. DaimlerChrysler Corp.*,
    741 N.Y.S.2d 9 (N.Y. Sup. Ct. 2002) .................................................................. 14
*Franklin v. Curry*,
    738 F.3d 1246 (11th Cir. 2013) ...................................................................... 16
*Gainesville Health Care Ctr. Inc. v. Weston*,
    857 So. 2d 278 (Fla. 1st DCA 2003) .................................................................. 9

*Gibbs v. Ernst,*
   647 A.2d 882 (Pa. 1994) .................................................................................... 15

*Grodzitsky v. Am. Honda Motor Co., Inc.,*
   2013 WL 2631326 (C.D. Cal. June 12, 2013) ...................................................... 7, 9

*Henderson v. Volvo Cars of N. Am. LLC,*
   2010 WL 2925913 (D.N.J. July 21, 2010) ............................................................ 9

*Homestead Group LLC v. Bank of Tennessee,*
   307 S.W.3d 746 (Tenn. App. 2009) .................................................................... 15

*Hornberger v. Gen. Motors Corp.,*
   929 F. Supp.884 (E.D. Pa. 1996) ...................................................................... 12

*Hossain v. Ocwen Loan Servicing LLC,*
   2014 WL 4347620 (M.D. Tenn. Aug. 29, 2014) .................................................. 21

*Hunt v. United States Tobacco Co.,*
   538 F.3d 217 (3d Cir. 2008) .............................................................................. 19

*In re Air Bag Prods Litig.,*
   7 F. Supp. 2d 792 (E.D. La. 1998) .................................................................... 13

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ........................................................ 12

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.,*
   966 F. Supp. 1525 (E.D. Mo. 1997) .................................................................. 13

*In re Managed Care Litig.,*
   185 F. Supp. 2d 1310 (S.D. Fla. 2002) ............................................................ 5, 21

*In re Palm Beach Fin. Partners, L.P.,*
   517 B.R. 310 (S.D. Fla. 2013) ............................................................................ 19

*In re Sony Grand Wega KDF-E A 10/20 Series Rear Projection HDTV Television Litig.,*
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) .............................................................. 21

*In re Toyota Motor Corp. Unintended Acceleration Litig.,*
   754 F. Supp. 2d 1208 (C.D. Cal. 2010) .......................................................... 21, 23

*Ingram v. Cendant Mobility Fin. Corp.,*
   215 S.W.3d 367 (Tenn. App. 2006) .................................................................... 15

*Justice v. Anderson Cnty.,*
   955 S.W.2d 613 (Tenn. App. 1997) .................................................................... 15

*Kia Motors Am. Corp. v. Butler*
   985 So. 2d 1133 (Fla. 3d DCA 2008) ................................................................ 13

*Lee v. Gen. Motors Corp.,*
   950 F. Supp. 170 (S.D. Miss. 1996) .................................................................... 12

*Levine v. Blue Shield of Cal.,*
   189 Cal. App. 4th 1117 (2010) .......................................................................... 15

v

*Licul v. Volkswagen Group of Am.*,
   2013 WL 6328734 (S.D. Fla. Dec. 5 2013) ....................................................... 9, 11

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) .............................................................. 10

*Magluta v. Samples*,
   256 F.3d 1282 (11th Cir. 2001)....................................................................... 16

*Maniscalco v. Brother Int'l (USA) Corp.*,
   709 F.3d 202 (3d Cir. 2013)............................................................................. 6

*Martinez v. Bank of Am. Corp.*,
   2014 WL 2735668 (S.D. Fla. June 16, 2014) ................................................. 16

*Matthews v. Am. Honda Motor Co.*,
   2012 WL 2520675 (S.D. Fla. June 6, 2012) ................................................... 15

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012)........................................................................... 6

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013) ............................................................ 9

*McCracken v. Ford Motor Co.*,
   588 F. Supp. 2d 635 (E.D. Pa. 2008) ............................................................. 10

*McQueen v. BMW of N. Am., LLC*,
   2014 WL 656619 (D.N.J. Feb. 20, 2014)....................................................... 18

*Melchior v. New Line Prod. Inc.*,
   106 Cal. App. 4th 779, 783 (2003)................................................................. 23

*Mexia v. Rinker Boat Co., Inc.*,
   174 Cal. App. 4th 1297 (2009).................................................................... 7, 8

*Mitchell v. Moore*,
   729 A.2d 1200 (Pa. Super. 1999)................................................................... 24

*Nardone v. Reynolds*,
   333 So. 2d 25 (Fla. 1976)............................................................................... 10

*Nationwide Ins. Co. v. Gen. Motors Corp.*,
   625 A.2d 1172 (Pa. 1993) ............................................................................. 10

*Nelson v. Nissan N. Am. Inc.*,
   894 F. Supp. 2d 558 (D.N.J. 2012) .................................................................. 9

*O'Neill v. Simplicity Inc.*,
   574 F.3d 501 (8th Cir. 2009).......................................................................... 13

*Ocana v. Ford Motor Co.*,
   992 S.W.2d 319 (Fla.3d DCA 2008).............................................................. 11

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*,
   667 So. 2d 876 (Fla. 1996)............................................................................. 23

*Perlman v. Wells Fargo Bank, N.A.*,
    559 Fed. App'x 988 (11th Cir. 2014)................................................................ 16

*Perret v. Wyndham Vacation Resorts*,
    889 F. Supp. 2d 1333 (S.D. Fla. 2012)............................................................ 21

*Peterson v. Mazda Motor of Am., Inc.*,
    44 F. Supp. 3d 965 (C.D. Cal. 2014)............................................................. 7, 8

*R.J. Reynolds Tobacco Co. v. Martin*,
    53 So. 3d 1060 (Fla. 1st DCA 2010)............................................................... 15

*Raie v. Cheminova Inc.*,
    336 F.3d 1278 (11th Cir. 2003)....................................................................... 10

*Rasmussen v. Apple, Inc.*,
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) ........................................................... 21

*Rentas v. DaimlerChrysler Corp.*,
    936 So. 2d 747 (Fla. 3d DCA 2006) ............................................................... 11

*Robinson Helicopter Co. Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004)..................................................................................... 23

*Rodriguez v. United Airlines, Inc.*,
    5 F. Supp. 3d 1131 (N.D. Cal. 2013) .............................................................. 15

*Schmidt v. Ford Motor Co.*,
    972 F. Supp. 2d 712 (E.D. Pa. 2013) ........................................................ 21, 24

*Sharma v. BMW of N. Am., LLC*,
    2014 WL 2795512 (N.D. Cal. June 19, 2014) ............................................... 23

*Sheris v. Nissan N. Am., Inc.*,
    Civ. 2008 WL 2354908 (D.N.J. June 3, 2008)............................................... 12

*Sinaltrainal v. Cola-Cola Co.*,
    578 F.3d 1252 (11th Cir. 2009)......................................................................... 4

*Speier-Roche v. Volkswagen Group of Am., Inc.*,
    2014 WL 1745050 (S.D. Fla., April 30, 2014) .............................................. 11

*Spence v. Glock GmbH*,
    227 F.3d 308 (5th Cir. 2000)............................................................................. 6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)............................................................................. 4

*Szymczak v. Nissan N. Am., Inc.*,
    2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011)................................................ 12

*Taragan v. Nissan N. Am., Inc.*,
    2013 WL 3157918 (N.D. Cal. June 20, 2013) ............................................... 13

*Tietsworth v. Sears, Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) .......................................................... 16

*Wash. Mut. Bank v. Superior Ct.*,
  24 Cal 4th 906 (2001).................................................................................... 6
*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y. 1997)...................................................................... 13
*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002)............................................................................ 22
*Westinghouse Corp. v. Ruiz*,
  537 So. 2d 596 (Fla. 3d DCA 1988) ............................................................... 11
*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012)................................................................... 15, 16
*Yost v. Gen. Motors Corp.*,
  651 F. Supp. 2d 656 (D.N.J. 1986) ................................................................. 14
*Ziegelmann v. DaimlerChrysler Corp.*,
  649 N.W.2d 556 (N.D. 2002).......................................................................... 14
*Ziemba v. Cascade Intern. Inc.*,
  256 F.3d 1194 (11th Cir. 2001)......................................................................... 5
*Zwiercan v. Gen. Motors Corp.*,
  2002 WL 1472335 (Pa. Com. Pleas May 22, 2002) ....................................... 13

**Statutes**

13 Pa. C.S.A. § 2725...................................................................................... 10
15 U.S.C. § 2308(b) ......................................................................................... 9
73 Pa. Cons. Stat. Ann. § 201-1 ..................................................................... 19
Cal. Civ. Code § 1791.1(c) .............................................................................. 7
Cal. Com. Code § 2725 .................................................................................. 10
Fla. Sta. Ann. § 672.314 ........................................................................... 10, 12
T.C.A. § 47-2-725 .......................................................................................... 10
Tenn. Code. Ann. § 47-18-104)...................................................................... 21

**Other Authorities**

Restatement (Second) of Agency § 14(j) (1958)............................................. 11
Restatement (Second) of Torts § 551(2) (1977) ............................................ 19

**Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................... 4
Fed. R. Civ. P. 9(b) ......................................................................................... 4

20435214v2

Defendant Nissan North America, Inc. ("NNA") moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims asserted against it in Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") [Dkt. 579].

## I.     <u>INTRODUCTION</u>

Plaintiffs' SAC, weighing in at more than 435 pages, is certainly voluminous.  Once stripped of repetition, unreliable recitation of legal principles and conclusory statements, however, the SAC alleges very little in the way of *facts*.  This is particularly true of the alleged experiences of the Plaintiffs who own Nissan or Infiniti vehicles and the alleged conduct of NNA.  The few facts that do creep in *contradict* the conclusory allegations—confirming no cause of action can be stated against NNA.

Only three Plaintiffs allege they own Nissan or Infiniti vehicles—one 2002 model year Infiniti I35 and two 2004 model year Nissan Sentras.  Each provides scant details regarding the transactions by which they acquired their vehicles.  The passenger airbags in all three vehicles have been recalled and replaced.  None alleges that they had any malfunction with their airbags, and by all indication their vehicles have provided safe and reliable transportation for many years and tens of thousands of miles.  Accordingly, Plaintiffs have not stated a breach of the implied warranty of merchantability claim despite their allegation of a theoretical airbag defect that has caused injury to *other* persons.

Likewise, the allegations do not state a claim for common law fraud or a violation of the state consumer protection statutes.  Plaintiffs have failed to identify any false representation by NNA upon which they relied in purchasing their vehicles.  Their fraudulent concealment claims fail because the facts stated in the SAC contradict any conclusion that NNA was aware of any defect in the airbags when the vehicles were first sold.  In fact, Plaintiffs' detailed version of history begins with the late 1990s, and covers 80 paragraphs and 18 pages without ever mentioning Nissan until April 2013—nine years after the last of Plaintiffs' vehicles was distributed by NNA.  Indeed, the facts alleged in the SAC demonstrate no knowledge of any potential defect by NNA prior to that time.  A defendant cannot fraudulently conceal a fact it does not know.

Also conspicuously absent from this so-called economic loss class action is any allegation of actual economic loss. Plaintiffs claim to have sustained some kind of economic harm because they purchased vehicles that have airbags with some design or manufacturing flaw that may have caused injury to a small number of persons other than themselves—airbags that have already been replaced. Ultimately, they assert the same type of no-injury class action that courts have repeatedly rejected.

## II.    PLAINTIFFS' ALLEGATIONS

### A.    Overview

This lawsuit concerns airbags designed, manufactured and sold by the Takata defendants and used in millions of vehicles sold in the United States by numerous automakers. Virtually all of these vehicles have been on the road for ten years or more. A comparatively small number of incidents involving personal injury and death associated with the alleged rupture of the airbags have been reported. (SAC ¶¶ 227-28, 241, 269, 272, 280-81, 290, 306.) The National Highway Traffic Safety Administration ("NHTSA") has actively been engaged in an investigation of the issues concerning Takata airbags, as have Takata and the automaker defendants who have issued a number of recalls to have all potentially affected airbags replaced. This includes several Nissan and Infiniti vehicle models from model years 2001-2006 equipped with Takata passenger-side airbags.[1] (SAC ¶ 197.)

In an apparent effort to simplify the underlying "story" of the lawsuit for purposes of class certification, Plaintiffs allege that the airbags contain a single common design defect—the use of ammonium nitrate as a propellant. (SAC ¶ 4.) Neither NHTSA nor the Defendants share this simplistic view, however, and investigations into the root cause of the incidents continue. The SAC itself pleads facts showing that the Takata airbag issue is far more complex. (SAC ¶ 4, 202-204, 213.)

The SAC also attempts to evade the considerable hurdle, in a nationwide class action, presented by the varying warranty and consumer protection laws of the individual states where the vehicles were purchased. Plaintiffs urge the Court should apply the law of each defendant's headquarters state to all claims against that particular defendant. (SAC ¶ 340.)

---

[1] Nissan does not use any of the driver air bags that have been recalled by Takata.

B.   **Nissan Related Plaintiffs**

Robert Barto alleges that he resides in Pennsylvania.  (SAC ¶ 83.)  He purchased a 2004 Nissan Sentra in 2011 but does not identify the seller.  *Id*.  His car is now eleven years old.  Barto alleges that he received a recall notice, and that the front passenger airbag was replaced in November 2014.  *Id*.

Coleman Haklar, a California resident, alleges that he purchased a new 2002 Infiniti I35 from a dealer in California in November 2002.  (SAC ¶ 107.)  Haklar states that websites and television advertising influenced his purchasing decision.  *Id.*  He does not state the content of the advertising or any particular representation that he alleges is false.  At some unstated recent date, after viewing media reports about the airbags, Haklar alleges that he and his family stopped using the vehicle.[2]  *Id*.

Kathy Liberal alleges that she resides in Florida.  (SAC ¶ 127.)  She avers that she purchased an eight year old 2004 Nissan Sentra from an unidentified source in 2012.  Her car is now eleven years old.  Liberal alleges that she "viewed or heard about the vehicle through internet sites discussing the vehicle's features" and that she was "influenced or affected by promotional materials and communications with owners and/or dealerships stating that the vehicle is one of the safest and [sic] dependable cars on the road."  *Id*.  Even assuming that Liberal located and reviewed promotional materials for an eight year old vehicle before she purchased the 2004 Nissan Sentra, she does not identify any particular advertisement or representation.  Indeed, she does not even aver that the materials that influenced her purchase were disseminated by Nissan.  She concedes that the airbags in her vehicle were replaced pursuant to recall in October 2014.  *Id*.

---

[2] This must have been done despite the recall having been performed. In the Amended Consolidated Class Action Complaint (Dkt. # 544) filed on April 30, 2015, Haklar alleged that he had "not received any notice from Nissan or Takata for any airbag repairs" but had "made an appointment with the dealership to take [his car] in to replace the airbags."  In the SAC, Haklar no longer makes complaints of not receiving the recall notice or the repairs.  Presumably, these allegations were amended because the recall was performed (NNA's records indicate Haklar was provided notice of the Takata airbag recall for his vehicle on April 13, 2015 and had his passenger airbag inflator replaced with a new replacement part on April 29, 2015 at an authorized Nissan or Infiniti dealer).

None of the three Plaintiffs alleges that they ever experienced a problem with the airbags in their vehicle or expended any money for repairs or other expenses related to the airbags.  None of them alleges that they have sold their vehicles and received a diminished price due to the alleged defect.  In short, Plaintiffs do not plead facts indicating any present economic loss.

## III.    <u>STANDARDS FOR MOTION TO DISMISS</u>

Federal Rule of Civil Procedure 8(a)(2) requires a claim for relief to contain "a short and plain statement of the claim *showing* that the pleader's entitled to relief."  FED. R. CIV. P. 8(a)(2).  While a complaint does not require detailed factual allegations, the plaintiff's obligation to provide the "ground" of his "entitlement to relief" requires more than mere labels and conclusions, or formulaic recantation of the elements of the cause of action.  The factual allegations must be sufficient to raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw reasonable inferences that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court need not accept allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Determining whether a plaintiff states a plausible claim for relief is a fact-specific task requiring the reviewing court to draw upon its judicial experience and common sense.  *Iqbal,* 556 U.S. at 679.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief.  Likewise, where the conduct alleged is equally consistent with lawful and unlawful conduct, no claim is stated.  The well-plead allegations must be sufficient to nudge the claim "across the line from conceivable to plausible." *Sinaltrainal v. Cola-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570).

Since many of Plaintiffs' claims sound in fraud, the court must also apply the requirements of Rule 9(b), which requires a party to state with particularity the circumstances constituting fraud or mistake.  FED. R. CIV. P. 9(b).  *See Am. Dental Ass'n v. Cigna Corp.*,

605 F.3d 1283, 1291 (11th Cir. 2010).   Pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, and misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendant gained by the alleged fraud.   *Id*.   The rule serves the vial purpose of alerting defendants to the precise misconduct with which they are charged and protecting them from spurious charges of immoral and fraudulent behavior.   *Ziemba v. Cascade Intern. Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

## IV.   <u>APPLICABLE LAW</u>

Plaintiffs seek to side-step the inherent choice-of-law difficulties that arise from an attempt to certify a nationwide class based on disparate state law claims.   Essentially, they urge the creation of multiple nationwide classes, the claims of which would be governed by the laws of the home state of a particular defendant.   They argue that this "seller's-state" approach is consistent with Florida's choice-of-law rules.   (SAC ¶ 340.)   In the case of NNA, Plaintiffs contend that the law of Tennessee may be applied to all claims.   (SAC ¶¶ 370-374.)

Plaintiffs' "seller's-law" theory is flawed and not supported by the applicable choice of law principles.   First, it does not account for foreign defendants who have no United States headquarters.   Second, Plaintiffs' theory assumes that Florida's choice-of-law rules apply to every claim.   In an MDL proceeding, however, the transferee court must apply the choice-of-law principles of the transferor court.   *See In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1336 (S.D. Fla. 2002) (citing *Ferens v. John Deere Co.*, 494 U.S. 516 (1990)).

This is important because some states employ a substantially different choice-of-law regime.   To illustrate, Coleman Haklar entered the litigation as one of the Plaintiffs in the *Takeda* suit originally filed in the Central District of California.   Therefore, under *In re Managed Care Litig*, the choice-of-law issues must be resolved under California law.   Under California's choice-of-law rules, the class action proponent has the burden to show that California has a significant contact or aggregation of contacts for the claim of each class member.   California law can be used on a class-wide basis only if the interests of the other states are found not to outweigh California's interest in having its law applied.   *Mazza v. Am. Honda Motor Co., Inc.*,

666 F.3d 581, 588 (9th Cir. 2012) (*citing Wash. Mut. Bank v. Superior Ct.*, 24 Cal 4th 906, 921 (2001).

In *Mazza*, the Ninth Circuit held that the law of California could not be applied to the claims of all members of a proposed nationwide class merely because the defendant was headquartered in California.  The case noted that the consumer protection laws of the various jurisdictions differed significantly, that each state had an interest in balancing the interests involved to determine the optimal degree of consumer protection and that the place where the consumer transaction occurred had the dominate interest in adjudicating the dispute.  *Id.* at 593.  Hence, the claims were governed by the law of the place where each consumer transaction occurred.  The claims of the two other plaintiffs suffer similar difficulties.

Moreover, even if Florida's choice of law rules applied to all claims, the application of those principles does not allow the law of the seller's home state to apply to all claims.  Florida generally follows the most-significant-relationship test set forth in the Restatement (Second) of Conflicts of Laws.  *See Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).  However, claims founded in contract such as breach of warranty and unjust enrichment are governed by the doctrine of *lex loci contractus*, which looks to where the contract was executed.  *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1315-16 (S.D. Fla. 2009).

Claims based on contractual undertakings necessarily arise at the time and place where the transaction is consummated, generally the home state of the buyer rather than the seller.  *Id* at 629.  Since Plaintiffs plead that they acquired their vehicles in Florida, California, and Pennsylvania, the law of those states must be applied here.

The same rules apply with respect to the tort-based claims because Tennessee lacks a significant relationship to Plaintiffs' claims and their home states have a much stronger relationship.  None of the Plaintiffs resides in Tennessee and none of them acquired their vehicles in that state.  Indeed, no operative fact in the litigation links Plaintiffs' claims to Tennessee except for the fact that NNA maintains its current headquarters in that state.  Under such circumstances, courts applying the most-significant-relationship test to consumer class actions have concluded that the buyer's home state or where the transaction was consummated has the most significant relationship.  *See, e.g., Spence v. Glock GmbH*, 227 F.3d 308 (5th Cir. 2000); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208 (3d Cir. 2013).

Even though the buyer's home state law should govern the claims asserted here, it does not matter whether Tennessee law or the law of the buyer's home state (California for Haklar, Florida for Liberal, and Pennsylvania for Barto) applies, because Plaintiffs are unable to state claims under the law of Tennessee or their respective home states.

## V.     PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY (PERTINENT TO COUNTS 3,33, 48, 54 AND 87)

### A.     Implied Warranties Have Long Since Expired

#### 1.     *Haklar's Implied Warranty is Limited to One Year Under California Law*

The implied warranty of merchantability is not perpetual but is subject to certain statutory and contractual limits. Under California's Song-Beverly Act the duration of an implied warranty "shall be coextensive in duration with an express warranty . . . but in no event shall such an implied warranty have a duration of less than 60 days nor more than one year following the sale of a new consumer goods to a retail buyer." CAL. CIV. CODE § 1791.1(c). Plaintiff Haklar alleges that he acquired his 2002 model-year Infiniti as a new vehicle. The implied warranty expired a year thereafter. Haklar does not contend that his vehicle malfunctioned in any way during that period. His implied warranty claim is barred as a matter of law.

Plaintiffs may argue that the alleged defect was latent and existed at the time of the sale, and therefore falls within the Song-Beverly Act. A few courts, based on *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297 (2009), have accepted this argument, but *Mexia* has been repeatedly distinguished, and increasingly rejected, because "[t]he flaw in *Mexia*'s reasoning is readily apparent: its holding 'renders meaningless any durational limits on implied warranties' as '[e]*very* defect that arises could conceivably be tied to an imperfection existing during the implied warranty period.'" *Grodzitsky v. Am. Honda Motor Co., Inc.*, 2013 WL 2631326, at *10-11 (C.D. Cal. June 12, 2013) (emphasis in original).

Emphasizing the point is a recent decision in the Central District of California, *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965 (C.D. Cal. 2014), where the court, after previously having followed the reasoning in *Mexia*, "reconsidered the case law as well as the text of the statute" and decided that "a limited reading of *Mexia* is the more well-reasoned one." *Id.* at 969-70, 972. The plaintiff alleged that Mazda cars suffered from a latent defect in

the variable valve timing assembly. *Id.* at 967-68. The Court noted a split of authority on the *Mexia* issue, with some courts holding that a plaintiff must show that their vehicle's alleged defect manifested within the one-year warranty period and other courts following *Mexia*. *Id.* at 970-71. Following the majority of courts that rejected *Mexia*'s reasoning, the *Peterson* Court held that, to state a claim under the Song-Beverly Act, a plaintiff must allege that the defect manifested within the one-year warranty period. *Id.* at 971-72. This Court should do likewise.

### 2. All Plaintiffs' Implied Warranties are Contractually Limited to the Duration of Their Express Warranties Which Have Expired

The written warranties accompanying the vehicles in question contained conspicuous language limiting the duration of any implied warranty to the duration of the express warranty. (Exhibits A and B).[3] The express limited warranties have limitations of 60 months or 60,000 miles, whichever occurs first, for the 2004 Sentra (Exhibit A) and for 72 months and 70,000 miles for the 2002 Infiniti (Exhibit B). Under this provision the implied warranty expired no later than 2009 for any of Plaintiffs' vehicles. Haklar does not aver that he experienced any problems with his vehicle while the implied warranty was in effect. Barto and Liberal did not even own their vehicles until 2011 and 2012, long after the implied warranties had expired. They can assert no valid implied warranty claim.

Plaintiffs attempt to evade the express warranty's limitations by arguing that they are unconscionable. But they plead no facts sufficient to raise the issue. They allege generally that the limitations are procedurally unconscionable but the only reason they cite is unequal bargaining power between the plaintiffs and defendants. (SAC ¶ 452.) If alleged disparity in bargaining power alone established unconscionability no limitation in a consumer warranty would ever be valid. Yet this is not so. "[I]t is settled law that the mere unequal bargaining power between the parties to a contract does not render the contract, or a provision thereof, unconscionable." *Borden Inc. v. Advent Ink Co.*, 701 A.2d 255, 264 (Pa. Super. 1997). Indeed,

---

[3] In evaluating a motion to dismiss, the court may consider documents attached to the complaint as well as documents referred to in the complaint and attached to the motion to dismiss. *Fin. Sec. Assur. Inc. v. Stephens Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007). In the SAC, Plaintiff Haklar acknowledges that his vehicle was covered by a written warranty. (SAC § 107). All plaintiffs except the recyclers assert that they are "consumers" entitled to enforce express warranties. (SAC ¶ 447). The warranties are "referred to" in the SAC and it is appropriate to consider their terms.

the Magnuson-Moss Act, the federal law specifically enacted to protect consumers from warranty abuse, expressly permits a seller to limit an implied warranty to the duration of the express warranty.15 U.S.C. § 2308(b). *See Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227, 1232-33 (M.D. Fla. 2009), *rev'd on other grounds*, 349 Fed. App'x 433 (11th Cir. 2009). It would not do so if unequal bargaining power made such limitations inherently suspect. Moreover, courts have held that such a rote recitation of unequal bargaining power is insufficient to raise an issue of unconscionability. *See Nelson v. Nissan N. Am. Inc.*, 894 F. Supp. 2d 558, 566 (D.N.J. 2012); *Alban v. BMW of N. Am. LLC*, 2011 WL 900114 (D.N.J. March 15, 2011).

Plaintiffs also argue that the warranty's limitations are substantively unconscionable because the defendants knew that the vehicles were defective and would continue to pose safety risks after the warranties expired. (SAC ¶ 453.) Much is wrong with this contention. First, Plaintiffs fail to plead facts showing that NNA was aware of any defect when the warranties were issued in or before 2002 or 2004. The deficiency is discussed in detail in Section VI, *infra*.

Second, it is virtually universally recognized that the defendant's alleged knowledge of a product defect is insufficient to expand the coverage of an express warranty beyond its stated limits. *Abraham v. Volkswagen of Am. Inc.*, 795 F.2d 238, 250 (2d Cir. 1986). It follows that an allegation that the manufacturer knew of a defect is not sufficient to render a warranty limitation unconscionable. *See Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 2631326 (C.D. Cal. June 12, 2013); *Licul v. Volkswagen Group of Am.*, 2013 WL 6328734 (S.D. Fla. Dec. 5 2013); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013); *Henderson v. Volvo Cars of N. Am. LLC*, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010). Moreover, Plaintiffs do not allege that warranty limitations are substantively unusual in any way. *See Licul*, 2013 WL 6328734, at *3. Nothing indicates that the warranty limitations are anything other than the standard limitations typical in the automotive industry. These limitations cannot be judged as "so outrageously unfair as to shock the judicial conscience." *See Gainesville Health Care Ctr. Inc. v. Weston*, 857 So. 2d 278, 284-85 (Fla. 1st DCA 2003). Plaintiffs have failed to state a valid reason to disregard the commonplace limitation on implied warranties.

B.     **Plaintiffs' Claims are Barred by Limitations**

     1.     *Any Claim for Implied Warranty Would Have Accrued and Expired Long Ago*

In California, Pennsylvania and Tennessee, a claim for breach of implied warranty (1) is subject to a four year statute of limitation; (2) the claim accrues at the time of breach; and (3) breach occurs when the defendant tenders delivery of the product regardless of the buyer's knowledge (except where the warranty extends to future performance).  CAL. COM. CODE § 2725; FLA. STA. ANN. § 672.314; 13 PA. C.S.A. § 2725; T.C.A. § 47-2-725.

Because the implied warranty of merchantability relates to the condition of the good at the time of sale it does not relate to future performance.  *Nationwide Ins. Co. v. Gen. Motors Corp.*, 625 A.2d 1172, 1178 (Pa. 1993).  Consequently, a claim made more than four years after the defendant tenders delivery of the product is barred even where the buyer has not discovered the breach.  *See McCracken v. Ford Motor Co*., 588 F. Supp. 2d 635, 640 (E.D. Pa. 2008); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014).

Haklar purchased a 2002 model year vehicle.  His limitations period would have expired no later than sometime in 2006.  Barto and Liberal purchased used 2004 model year vehicles. The limitations period would have expired no later than 2008.  The implied warranty claims are clearly untimely.

     2.     *Tolling Theories Do Not Salvage Plaintiffs' Claims*

Plaintiffs generally assert that the statute of limitations is equitably tolled because defendants concealed the alleged airbag defect.  (SAC ¶ 385-388.) Those allegations are inadequate to raise the issue.  Plaintiffs do not describe any *act* of active concealment by NNA. Nor do Plaintiffs allege that any particular act in fact prevented them from knowing any facts necessary to establish their claims.  Indeed, it would be impossible for Barto and Liberal to do so because limitations expired on any implied warranty claim related to their 2004 Sentras no later than 2008, years before they acquired the vehicles.

 Moreover, the active concealment necessary to sustain an equitable tolling must consist of more than mere non-disclosure.  *Raie v. Cheminova Inc.*, 336 F.3d 1278, 1281 n.1 (11th Cir. 2003); *Nardone v. Reynolds*, 333 So. 2d 25, 39 (Fla. 1976).  Hence an equitable tolling allegation will not be credited where the plaintiff alleges only that an automaker failed to notify the

plaintiffs of the alleged defect.  *Licul*, 2013 WL 6328734, at *6-7.  *See also Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992).  Ultimately, Plaintiffs' assertion of equitable tolling amounts to nothing more than an attempt to evade an obvious limitations bar by reciting buzzwords.  But such fact-free assertions are not credited under *Twombly* and *Iqbal*, and do not save the claims from dismissal.

### C.  Lack of Privity Defeats Liberal's Implied Warranty Claims Under Florida Law

Liberal's claim fails for an additional reason.  Under Florida law, "a contract action for breach of implied warranty does not lie where there is no privity of contract between a plaintiff and defendant."  *Speier-Roche v. Volkswagen Group of Am., Inc.*, 2014 WL 1745050 (S.D. Fla., April 30, 2014) (Moreno, J.) (*quoting Westinghouse Corp. v. Ruiz*, 537 So. 2d 596, 597 (Fla. 3d DCA 1988)).  *See also David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321-22 (S.D. Fla. 2009); *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747 (Fla. 3d DCA 2006).

Liberal does not plead that she purchased her vehicle from NNA.  She does not even allege that she purchased the vehicle from an authorized Nissan dealer.  Even if she had made such an allegation it would not save her claim.  The mere fact that a dealership is authorized to sell Nissan vehicles does not make it the agent of any Nissan entity.  It is fundamental that "one who receives goods from another for resale to a third person is not thereby the other's agent in the transaction." RESTATEMENT (SECOND) OF AGENCY § 14(j) (1958).  Accordingly, authorized dealers are not the manufacturer's agents for purposes of privity.  *Curl v. Volkswagen of Am. Inc.*, 871 N.E.2d 1141, 1148 (Ohio 2007).  *See also Ocana v. Ford Motor Co.*, 992 S.W.2d 319, 326 (Fla.3d DCA 2008) (dealership was not manufacturer's agent for purpose of establishing privity between automaker and consumer).

### D.  Plaintiffs' Fail to Allege a Breach of an Implied Warranty

While all of the above reasons establish that Plaintiffs' cannot plead a breach of implied warranty claim against NNA related to their vehicles, there is a further faulty assumption behind Plaintiffs' implied warranty claim.  They assume that the implied warranty of merchantability is breached whenever the product might have a defect that may later manifest itself.  But this assumption is contrary to the purpose and function of the warranty and is certainly contrary to settled law.  The warranty is not breached until a possible defect manifests itself.

The implied warranty of merchantability arises by operation of law and serves to protect buyers from loss where the goods purchased are below commercial standards. *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996). It does not function to assure that the product will fulfill the buyer's expectations but serves to guarantee a minimal level of quality. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). The text of the Uniform Commercial Code applicable in each relevant state requires that the goods be fit for the ordinary purposes for which such goods are used. CAL. COM., CODE § 2314(2)(c); FLA. STA. ANN. § 672.314(2)(c); 13 PA. CONS. STAT. § 2314(b)(3); T.C.A. § 47-2-314.[4]

The requirement that the good be fit for its ordinary purpose is directed to the functionality of the product. Hence, defendants frequently establish compliance with the warranty—often as a matter of law—by showing that the questioned product has performed satisfactorily for an extended period. *See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997) (dismissing plaintiffs' claims for breach of the implied warranty of merchantability under New Jersey and California law because they drove their vehicles for years before experiencing the ignition switch issue); *Sheris v. Nissan N. Am., Inc.*, Civ. 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (vehicle was merchantable as a matter of law when sold where it had been driven more than 20,000 miles without incident). *See also Szymczak v. Nissan N. Am., Inc.,* 2011 WL 7095432, at *11 (S.D.N.Y. Dec. 16, 2011); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2006); *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 174 (S.D. Miss. 1996): *Ford Motor Co. v. Fairley*, 398 So. 2d 216 (Miss. 1981).

It follows that a product that has continued to perform its function satisfactorily is not unmerchantable simply because it contains a theoretical defect that may or may not manifest itself during the product's expected life. "It is not enough to allege that a product line contains a

---

[4] Plaintiffs assert that the law of the various states regarding implied warranty is essentially uniform. This is incorrect. Courts have examined the issue in detail and have found that the laws of the states vary on a number of important points including privity and the requirement of pre-suit notice. *See, e.g., Cole v. Gen. Motors Corp.*, 484 F.3d 717, 725-29 (5th Cir. 2007). However, with respect to the question of whether a plaintiff states a claim without alleging that the product malfunctioned, the laws of the relevant jurisdictions (and virtually every jurisdiction) do not substantially vary. As the range of cases cited herein demonstrate there is a nationwide consensus on this requirement.

defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product *actually exhibited the alleged defect.*" *O'Neill v. Simplicity Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) (emphasis added).  Where the product has not actually malfunctioned there is no breach of the implied warranty.  *Birdsong,* 590 F.3d at 958.  *See also Angus v. Shiley*, 989 F.2d 142 (3d Cir. 1993) (rejecting unmanifested defect claim under Pennsylvania law).

This principle has been repeatedly applied in automotive cases where plaintiffs allege that the vehicle contains a latent safety defect.  In *Am. Suzuki*, for example, the court rejected a claim that the vehicle in question was not merchantable because of its alleged propensity to roll over. 37 Cal. App. 4th at 1296.  More recently, in *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, *4 (N.D. Cal. June 20, 2013), the court dismissed an implied warranty claim premised on allegations that a defect in the vehicle's key ignition interlock system made the vehicle susceptible to rollaway incidents because none of the plaintiffs experienced such an incident. The risk of a future malfunction did not give rise to a present claim.

In *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1139 (Fla. 3d DCA 2008), a Florida appellate court rejected economic loss claims similar to the ones brought here arising from an allegedly life-threatening defect from premature brake wear.  The court placed Florida within the "majority jurisprudence" that denied recovery for those consumer whose vehicles had not "manifested a deficiency." *Id.  See also Brisson v. Ford Motor Co.*, 349 Fed. App'x 433, 434 (11th Cir. 2009) (affirming dismissal of warranty claims where plaintiffs did not allege that they experienced a defect with the period); *Breakstone v. Caterpillar, Inc.*, 2010 WL 216440, at *5-6 (S.D. Fla. May 6, 2010).

There are numerous similar cases throughout the county.  *See Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999); *In re Air Bag Prods. Litig.*, 7 F. Supp. 2d 792, 803 (E.D. La. 1998); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1532 (E.D. Mo. 1997); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J. 1998); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99-100 (S.D.N.Y. 1997); *Zwiercan v. Gen. Motors Corp.*, 2002 WL 1472335, at *304 (Pa. Com. Pleas May 22, 2002).

Moreover, the implied warranty of merchantability is not intended to provide compensation for the type of loss claimed here. It is not concerned with the product's "economic performance."  As the Fourth Circuit held in *Carlson*, the concept of merchantability is

13

concerned with the product's functionality and does not reach so far as to encompass the consumer's expectations concerning resale value. *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989). Accordingly, courts have dismissed claims based upon unmanifested defect allegations because the damages are simply too speculative. *See, e.g., Frank v. DaimlerChrysler Corp.,* 741 N.Y.S.2d 9, 12 (N.Y. Sup. Ct. 2002); *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 564-65 (N.D. 2002). And even if resale value were a valid interest protected by the implied warranty of merchantability it would not sustain a claim where the plaintiff alleges only an unrealized, hypothetical loss of value. *See Briehl*, 172 F.3d at 629-29; *Yost v. Gen. Motors Corp.*, 651 F. Supp. 2d 656, 658 (D.N.J. 1986).

Here, none of the Nissan Plaintiffs report a malfunction of any kind, let alone with the airbag. Their complaint is based entirely on the risk of a future malfunction even though their airbags have already been replaced. The case law is clear, such unmanifested risks do not render a vehicle unmerchantable.

## VI. THE MAGNUSON-MOSS CLAIM FALLS WITH THE STATE IMPLIED WARRANTY CLAIMS (PERTINENT TO COUNT 3)

The Magnuson-Moss Warranty Act does not create any warranties of its own, but relies upon the application of state warranty law. Hence, "the failure to state a claim under state law necessarily constitute[s] a failure to state a claim under [the Magnuson-Moss Warranty Act]." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 832-33 (2006). *See also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2009). Because Plaintiffs' implied warranty claims fail for the numerous reasons identified above, the Magnuson-Moss claim fails as well.

## VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT OR VIOLATIONS OF THE STATE CONSUMER STATUTES BASED ON CONCEALMENT (PERTINENT TO COUNTS 32. 35, 47, 51, 52 53, AND 86)

### A. All Concealment Claims Require Proof that the Defendant Knew the Concealed Fact

The contention at the heart of Plaintiffs' case is that the defendants failed to disclose the existence of the alleged defect in the Takata airbags. This alleged omission forms the backbone

14

of their fraudulent concealment and statutory claims.  A key factual element is missing, however. Despite attempts at artful pleading, Plaintiffs cannot overcome the conspicuous absence of facts indicating that NNA knew of the alleged defect at the time the vehicles were originally distributed.  Without such knowledge there can be no fraudulent concealment tort.

The elements of fraudulent concealment under Florida law are typical: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed or not concealed; (3) the defendant acted in bad faith; (4) the defendant knew that by concealing or failing to disclose the material fact, the plaintiff would be induced to act; (5) the plaintiff suffered damages as the result of the concealment or failure to disclose; and (6) the defendant had a duty to speak.  *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068-69 (Fla. 1st DCA 2010). The elements are similar in the other states.  *See Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1126-27 (2010); *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *Homestead Group LLC v. Bank of Tennessee*, 307 S.W.3d 746, 751 (Tenn. App. 2009).  In each state the defendant's knowledge is a crucial requirement. *See Rodriguez v. United Airlines, Inc.*, 5 F. Supp. 3d 1131, 1138 (N.D. Cal. 2013) (quoting *Foster v. Xerox Corp*, 40 Cal. 3d 306, 319 (1985)) (A defendant "obviously [cannot] be charged with concealing matters about which it did not know"); *Justice v. Anderson Cnty.*, 955 S.W.2d 613, 616 (Tenn. App. 1997) ("It is well-settled that fraud can be an intentional representation of a *known*, material fact or it can be a concealment or nondisclosure of a *known* fact when there is a duty to disclose.") (*emphasis added*).

The statutory claims likewise share the requirement that the defendant have been aware of the fact that it failed to disclose.  A fraudulent omission claim under the California statutes is not actionable unless the omission is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.,* 144 Cal. App 4th 824, 835 (2006).  Consequently, both the CLRA and UCL require a showing that the defendant knew the fact allegedly concealed.  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-46 (9th Cir. 2012).  "[P]laintiffs must sufficiently allege that a defendant was aware of the defect to survive a motion to dismiss." *Id*. at 1145.  *See also Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 372 (Tenn. App. 2006); *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) (Williams,

J.) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect . . . .")

**B.**   **Plaintiffs Do Not Adequately Plead That NNA Was Aware of the Alleged Defect**

Plaintiffs' pleadings do not show that NNA was aware of the alleged defect.   In evaluating the complaint it is important to recognize that knowledge, like any other fact, may not be pleaded in a conclusory manner.  *See Wilson*, 668 F.3d at 1146 (allegations that defendants "became familiar with" or were "on notice" of the alleged defect were conclusory and insufficient to allege knowledge).  *See also Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010) (plaintiff cannot establish a duty to disclose by pleading in a conclusory fashion that defendant was in a superior position to know the truth about a product and actively concealed the defect.) *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1334 (S.D. Fla. 2013) (allegation that defendant failed to disclose and concealed the true nature of the defect insufficient to plead fraudulent disclosure claim).   The Court must disregard conclusory allegations to facts only upon properly pleaded facts from which such a conclusion could be drawn. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). In doing so, Plaintiff must do more than identify "red flags" that could arouse suspicion. They must plead facts that "create a strong inference of actual knowledge."  *Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. App'x 988, 993-94 (11th Cir. 2014).

Plaintiffs make no attempt to state the knowledge of the individual automaker defendants, attempting to take refuge in general allegations that "defendants" were "made aware" of the defect.   The attempt to lump all defendants together without distinction is the type of "shotgun pleading" that fails to meet Rule 9(b)'s pleading standards and has been condemned in this Circuit.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th  Cir. 2001); *Martinez v. Bank of Am. Corp.*, 2014 WL 2735668, at *5 (S.D. Fla. June 16, 2014) ("Rule 9(b) does not allow a complaint to merely 'lump multiple defendants together.'") (quoting *Bruhl v. PricewaterhouseCoopers Int'l*, 2007 WL 997362, at *3 (S.D. Fla. Mar. 27, 2007).

The facts stated in the SAC do not show that NNA was aware of any potential problems with the Takata airbag when the Liberal and Barto vehicles were first distributed in or before 2004 or the Haklar vehicle was distributed in or before 2002.   The SAC identifies only three

16

incidents involving Takata airbags before 2007.  None involved Nissan or Infiniti vehicles.  One involved a Subaru vehicle in a 2003 Arizona incident, one involved a BMW vehicle in Switzerland in 2003 and one involved a Honda vehicle in a 2004 Alabama incident.  No facts are pleaded that would suggest that these incidents were known to NNA or how their existence alerted or should have alerted NNA to a flaw in all vehicles using any kind of airbag supplied by Takata.

On the contrary, Plaintiffs actually allege facts that would show just the opposite – that NNA would have no reason to be alerted to any kind of problem even if NNA knew about the incidents—which it didn't.  Plaintiffs plead that Takata falsely advised regulators that the incidents were isolated and did not reflect upon its design choices.  (SAC ¶¶ 11, 12.)  Plaintiffs aver that, when the first recall was issued in 2007 (long after the 2002 Infiniti I35 and the 2004 Nissan Sentras at issue had been sold by NNA), Takata represented that incidents giving rise to the recall were due to manufacturing issues at its Moses Lake, Washington plant and that the physical characteristics of the inflators subject to the recall were unique to Honda. (SAC ¶¶ 243-45, 257.) Indeed, Plaintiffs plead that Takata did not disclose there were potential issues with vehicles other than Honda vehicles *until 2013*.  (SAC ¶ 278.)

Ultimately, Plaintiffs fall back on an oft-repeated allegation that the Manufacturer Defendants knew or should have known that the airbags employed an ammonium nitrate propellant.  (SAC ¶ 9.)  Assuming this is true, it does not equate to knowledge that the airbags being supplied by a company expert in designing and manufacturing airbags were defective. Plaintiffs plead no facts that NNA or the automotive industry in general regarded the propellant as inappropriate for use in airbags.  They do not allege the existence of any studies or other data that would have informed the automaker that the propellant was inappropriate.  No incident with the subject airbags occurred prior to 2003 and even then Plaintiffs do not allege that these incidents, or any subsequent accident, were attributed by anyone to the use of ammonium nitrate. Plaintiffs *do* expressly plead that Takata was an expert in the field of automotive safety. (SAC ¶¶ 198-199.)  Presumably, its customers would have every reason to trust its design choices, including its selection of propellant. They also plead that Takata identified potential causes of airbag issues other than the type of propellant.  (SAC ¶¶ 243, 250, 255, 259, 274, 277.) Under the pleaded facts, there is not basis upon which to conclude that NNA knew that Takata's

choice of ammonium nitrate as a propellant made the airbags defective.  In short, the amended complaint, despite its conclusory allegations of knowledge actually pleads *facts* that overwhelmingly demonstrate a *lack of knowledge* during the relevant time period.

Moreover, courts have recognized that pleading knowledge of the content of a particular design cannot be equated with knowledge that a design is defective.  Such an argument was rejected in *McQueen v. BMW of N. Am., LLC*, 2014 WL 656619 (D.N.J. Feb. 20, 2014), which recently held:

> [T]his argument is . . . a circular argument that could be used to impute knowledge . . . to any manufacturer who designs and markets a product that is later alleged to be defective — "I (consumer) believe this item to be defective; you (manufacturer) designed the item and sold it; ergo, you knew it was defective, and thus you defrauded me when you elected not to tell me about the defect." . . . It may be, as Plaintiff argues, that because BMW designed Plaintiff's vehicle BMW "cannot disclaim knowledge of [its intentional design] choices." (Opp. Br. at 7.) But it does not follow that BMW cannot disclaim knowledge of a defect when faced with a consumer fraud lawsuit.  Plaintiff cannot equate design choices with fraudulent conduct simply by saying so and without pleading facts supporting a plausible inference of knowledge on BMW's part.  If Rule 8(a), *Iqbal*, and *Twombly* are to have any force whatsoever, a complaint cannot state a CFA claim that requires the plaintiff plead knowledge by merely alleging that the defendant designed a defective product.

*Id.* at *5.

### C.     The Used Vehicle Purchasers Fail to Plead Facts Giving Rise to a Disclosure Duty

Liberal (Florida) and Barto (Pennsylvania) purchased used vehicles.  They do not allege that they ever entered into any transaction with either Nissan Defendant.  Under these circumstances, the failure to disclose claim fails for the additional reason that NNA had no duty to disclose information about the vehicles to persons with whom it had no dealings.  Under Florida law, the duty to speak may arise in a number of circumstances—a partial, misleading disclosure, the possession of special knowledge unavailable to the other party, or the existence of a fiduciary relationship.  However, the "common thread running through each scenario which gives rise to a duty to speak is that both the plaintiff and the defendant must have been parties to

a transaction or must have had some kind of preexisting fiduciary relationship." *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 330 (S.D. Fla. 2013).   Likewise under Pennsylvania law, the duty to disclose arises from participation in a transaction.  Pennsylvania follows § 551 of the Restatement of Torts that limits the duty to disclose to parties in business transactions. RESTATEMENT (SECOND) OF TORTS § 551(2) (1977).   *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 611 (3d Cir. 1995).

Neither Liberal nor Barto allege that they participated in any transaction with NNA.  Nor do they allege any special relationship with NNA that would impose a fiduciary duty.  Without a transaction or a fiduciary relationship, no duty to disclose arises.  Consequently, NNA had no disclosure duty to Liberal or Barto as a matter of law.

Moreover, because Barto does not allege that he entered into any transaction with the Nissan Defendants, he cannot satisfy the requirement of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. ANN. § 201-1 ("UTPCPL") that he establish reliance upon a deceptive or fraudulent act.  *See Hunt v. United States Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008).  In *Hunt*, the Third Circuit Court of Appeals explained that a plaintiff's suit must fail if he does not allege any justifiable reliance on defendant's allegedly deceptive conduct.  *Id*. at 222.  Based on the Pennsylvania Supreme Court's consistent rulings that justifiable reliance is required for all suits brought under the Penn. Consumer Protection Law, the Third Circuit noted that "our Court has already interpreted the justifiable-reliance stand requirement to apply to all substantive subsections of the Consumer Protection law, fraud-based or not."  *Id*. at 224.  Here, because Barto does not allege that he entered into any transaction with Nissan, he has failed to show that Nissan made any statements to him that induced his justifiable reliance on such statements.  For that reason, and because Nissan had no disclosure duty to Barto, Barto's claim must fail.

## VIII.   PLAINTIFFS FAIL TO STATE A CLAIM BASED ON MISREPRESENTATION BECAUSE THEY DO NOT IDENTIFY ANY ACTIONABLE REPRESENTATION UPON WHICH THEY RELIED OR OTHERWISE CAUSED ANY DAMAGE (PERTINENT TO COUNTS 35, 47, 51-53 AND 86)

To the extent that Plaintiffs statutory claims rest upon affirmative misrepresentations instead of omissions they fail for the simple reason that Plaintiffs have not identified any

actionable representation on the part of NNA upon which they relied or which caused them any injury.   Plaintiff Barto does not even allege that he was exposed to any advertising or other communication from NNA before he purchased his vehicle.  (SAC ¶ 83.)  Haklar avers that he "viewed or heard about the vehicle through websites and TV advertisements" and that he "remembers seeing or hearing that Nissan made some of the safest cars, which was an important factor in [his] decision to purchase the vehicle." He does not identify the content of any website or other advertising and does not point to any particular statement he now asserts is false.  (SAC ¶ 107.)  Liberal likewise states that, prior to purchasing her vehicle, she "viewed or heard about the vehicle through internet sites discussing the vehicle's features."  She states that her purchase decision was influenced by "[p]romotional materials and communications with owners and/or dealerships stating that the vehicle is one of the safest and dependable cars on the road." (SAC ¶ 127.)  Liberal does not even link the materials that influenced her to NNA.  She also fails to identify any particular statement that is supposedly false.

Plaintiffs also assert that each of the automotive defendants, including NNA represented that their vehicles were safe and reliable.   (SAC ¶ 309.) The specific allegations concerning NNA are notably sparse.   The paragraph alleges that in 2005 "Nissan" represented in its brochures that the vehicles possessed a set of safety features including "advanced airbags that will help safeguard you and your passengers in the event of an accident." (SAC ¶ 309(f).)  None of the plaintiffs allege to have seen or been influenced by this statement.  Haklar could not have been influenced by it as he had purchased his vehicle in or before 2002.  Moreover there is no indication that the statement is false.  Nissan vehicles do contain advanced airbags designed to safeguard vehicle occupants in the event of a crash.

The only other statement referenced in the complaint is a statement on a "Nissan website" *in 2015* to the effect that "Nissan" is committed to its position as a leader in the world of automotive safety and that the commitment goes into the design and engineering of its vehicles. Obviously, this statement, which post-dates all of the Plaintiffs' transactions, cannot provide a basis for liability.  Moreover, it contains no specific actionable representation.

It is painfully apparent that Plaintiffs' misrepresentation pleadings fail to meet the Rule 9(b) requirement for specificity in the pleading of fraud.  They utterly fail to provide the content, time and place of any representation, the specific content or how the representation

caused economic harm.  *See Am. Dental Ass'n,* 695 F.3d at 1291.  *See also In re Managed Care Litig,* 150 F. Supp. 2d 1330, 1346 (S.D. Fla. 2001) (standard of particularity under Rule 9(b) not met where complaint did not specify the materials viewed or relied upon by the individual plaintiffs).  *See also Schmidt v. Ford Motor Co.,* 972 F. Supp. 2d 712, 721-22 (E.D. Pa. 2013) (dismissing claim under Pennsylvania's UTPCPL as well as other claims where Plaintiffs failed to identify specific representations upon which they relied).

The allegations not only fail to meet the Rule 9(b) requirements, they are substantively inadequate as well.  "Specific quantifiable 'statements of fact' that refer to products absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are 'mere puffery' that cannot." *Edmundson v. Proctor & Gamble Co.,* 537 Fed. App'x 708 (9th Cir. 2013) (dismissing claims under California UCL and CLRA).  Puffery, a generalized and vague claim that no consumer would rely upon does not support a claim under the California statutes. *See Rasmussen v. Apple, Inc.,* 27 F. Supp. 3d 1027, 1039-40 (N.D. Cal. 2014).  Plaintiffs here offer nothing constituting a specific verifiable representation.  At most, they offer only generalized statements regarding the safety and dependability of the vehicle.  This is classic, non-actionable puffery.  *See In re Toyota Motor Corp. Unintended Acceleration Litig.,* 754 F. Supp. 2d 1208, 1229 (C.D. Cal. 2010).

The same basic rules preclude liability under the other state statutes as well.  *See Perret v. Wyndham Vacation Resorts,* 889 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012) (applying puffery doctrine to FDUTPA claim); *Hossain v. Ocwen Loan Servicing LLC,* 2014 WL 4347620 (M.D. Tenn. Aug. 29, 2014) (applying puffery doctrine to plaintiff's unfair and deceptive acts claim under the Tennessee Consumer Protection Act, Tenn. Code. Ann. § 47-18-104); *Audio Visual Artistry v. Tanzer,* 403 S.W.3d 789 (Tenn. App. 2012) (same).

Plaintiff Haklar's claim under California's False Advertising Law fails because he fails to: (1) identify any particular advertisement pertaining to his vehicle; (2) show that any statement in such advertising was false or misleading; or (3) allege that he relied upon any false or misleading statement contained in such advertising.  *See In re Sony Grand Wega KDF-E A 10/20 Series Rear Projection HDTV Television Litig.,* 758 F. Supp. 2d 1077, 1094 (S.D. Cal. 2010).

IX.  **THE PENNSYLVANIA FRAUDULENT CONCEALMENT AND STATUTORY CLAIMS ARE BARRED BY THE ECONOMIC LOSS RULE (PERTINENT TO COUNT 89)**

Under Pennsylvania law, Barto's common law fraudulent concealment and UTPCPL claims are barred by the economic loss rule because he alleges only economic harm.  The economic loss rule "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (citation omitted).  Economic loss claims are those where "the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'" *Werwinski*, 286 F.3d at 671 (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 (1986).)

This case is closely analogous to *Werwinski*, in which the plaintiffs brought a putative class action alleging that Ford had concealed the fact that certain vehicles had defective transmissions.  286 F.3d at 664.  Applying Pennsylvania law, the Third Circuit held that the common law fraud and UTPCPL claims were barred by the economic loss rule because the plaintiffs alleged only economic damages and "express and implied warranties under contract law are best suited to compensate for a loss in product value." *Id.* at 671.  The court reasoned that "when loss of the benefit of a bargain is the plaintiff's sole loss, . . . the undesirable consequences of affording a tort remedy in addition to a contract-based recovery [are] sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims." *Id.* at 680.  The same is true here, where Plaintiffs allege that they "did not receive the benefit of their bargain."  (SAC ¶ 440, 826, 859.) Accordingly, the Barto's fraudulent concealment and UTPCPL claims should be dismissed for this additional reason.

X.  **PLAINTIFF HAKLAR FAILS TO STATE A CLAIM FOR NEGLIGENT FAILURE TO RECALL UNDER CALIFORNIA LAW (PERTINENT TO COUNT 46)**

The attempt to plead a negligent failure to recall claim under California law is barred by the economic loss rule.  The only injury asserted by Haklar is economic in nature—the supposed loss of resale value or overpayment at the time of his initial purchase.  (SAC ¶ 107.)  But such damages are not recoverable under a negligence theory.  Generally, the economic loss rule bars

recovery for a tort claim where the plaintiff suffers a purely economic loss.  The rule is an attempt to prevent contract from "drown[ing] in a sea of tort." *East River*, 476 U.S. at 866.

California has embraced the economic loss doctrine.  As the California Supreme Court noted in *Robinson Helicopter Co. Inc. v. Dana Corp.*, 34 Cal. 4th 979, 984 (2004) claims for inadequate value, repair costs replacement of defective products and similar damages are regarded as economic loss.  As such, they are not regarded as proper subjects for tort claims but must instead be brought as contract or warranty claims.  The rule bars claims brought under either negligence or strict liability theories.  *Id*.  The type of loss asserted by Haklar is the very type that the California Supreme Court has held may not be recovered under a negligence theory.  *See Sharma v. BMW of N. Am., LLC*, 2014 WL 2795512 (N.D. Cal. June 19, 2014).

## XI.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (PERTINENT TO COUNT 34)

Haklar's unjust enrichment claim should be dismissed.  "Courts consistently have held that unjust enrichment is not a proper cause of action under California law." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010). The term does not describe a theory of recovery, but an effect—the failure to make restitution under circumstances where it is equitable to do so.  *Melchior v. New Line Prod. Inc.*, 106 Cal. App. 4th 779, 783 (2003).

Liberal's claims fares no better.  In Florida, the elements of unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.  *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876. 879 (Fla. 1996).  Notably, Florida law requires that the plaintiff asserting an unjust enrichment claim show a direct relationship with the defendant alleging receiving the benefit.  *See Extraordinary Title Servs. LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 403 (Fla. 3d DCA 2009).  Liberal does not identify the seller of her vehicle.  She does not allege that: (1) she gave anything of value to either of the Nissan Defendants, (2) that the Nissan Defendants had knowledge of any benefit; or (3) that the Nissan Defendants accepted or retained anything of hers.

The elements of unjust enrichment under Pennsylvania law are substantially similar and Barto's claim fails for the same reason.  *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999); *Schmidt v. Ford Motor Co*., 972 F. Supp. 2d at 721-22 (plaintiff must establish that a benefit was conferred directly upon the defendant).

## XII.   THE COURT SHOULD DEFER TO THE PRIMARY JURISDICTION OF NHTSA WITH RESPECT TO PLAINTIFFS' CLAIM FOR RECALL-RELATED INJUNCTIVE RELIEF

To the extent Plaintiffs seek injunctive relief related to the recall of vehicles, the Court should defer to the superior expertise and administrative capacity of NHTSA. NNA incorporates and adopt the arguments, authority, and proof of the Honda Defendants on this point.

## XIII.   CONCLUSION

NNA respectfully request that the Second Amended Consolidated Class Action Complaint be dismissed for failure to state a claim.


DATED: July 17, 2015

                              Respectfully Submitted,


                              By: _/s/ Kimberly A. Cook_
                                   Kimberly A. Cook
                                   Kimberly.cook@sedgwicklaw.com
                                   Ramon A. Abadin
                                   Ramon.abadin@sedgwicklaw.com
                                   Sedgwick LLP
                                   One Biscayne Tower, Suite 1500
                                   Two South Biscayne Boulevard
                                   Miami, Florida 33131
                                   T: (305) 670-4777
                                   F: (305) 397-2698

E. Paul Cauley, Jr.
paul.cauley@sedgwicklaw.com
S. Vance Wittie
vance.wittie@sedgwicklaw.com
Sedgwick LLP
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
T: (469) 227-8200
F: (469) 227-8004
(*admitted pro hac vice*)


**Counsel for Nissan North America, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2015, a true and correct copy of the attached NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION AND INCORPORATED MEMORANDUM OF LAW was served on counsel of record via e-mail to the following addresses:

**PODHURST ORSECK, P.A.**
Peter Prieto (FBN 501492)
Aaron S. Podhurst (FBN 63606)
Stephen F. Rosenthal (FBN 131458)
John Gravante (FBN 617113)
Matthew P. Weinshall (FBN 84783)
25 West Flagler Street, Suite 800
Miami, Florida 33130
Tel: (305) 358-2800
Fax: (305) 358-2382
Email: pprieto@podhurst.com
        apodhurst@podhurst.com
        srosenthal@podhurst.com
        jgravante@podhurst.com
        mweinshall@podhurst.com

*Chair Lead Counsel for Plaintiffs*

**POWER ROGERS & SMITH, P.C.**
Todd A. Smith
70 West Madison St., 55th Floor
Chicago, IL 60602
Tel: (312) 236-9381
Fax: (312) 236-0920
Email: tsmith@prslaw.com

*Plaintiffs' Economic Damages Track Co-Lead
Counsel*

**BOIES, SCHILLER & FLEXNER LLP**
David Boies
Motty Shulman (Fla Bar. No. 175056)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
Email: dboies@bsfllp.com
        mshulman@bsfllp.com

Stephen N. Zack (Fla. Bar. No. 145215)
Mark J. Heise (Fla. Bar. No. 771090)
100 Southeast 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
Fax: (305) 539-1307
Email: szack@bsfllp.com
        mheise@bsfllp.com

Richard B. Drubel
Jonathan R. Voegele
26 South Main Street
Hanover, NH 03755
Tel: (603) 643-9090
Fax: (603) 643-9010
Email: rdrubel@bsfllp.com
        jvoegele@bsfllp.com

*Plaintiffs' Economic Damages Track Co-Lead
Counsel*

20435214v2

**BARON & BUDD, PC**
Roland Tellis
David Fernandes
Mark Pifko
15910 Ventura Blvd., Suite 1600
Encino, CA 91436
Tel: (818) 839-2333
Fax: (818) 986-9698
Email: rtellis@baronbudd.com
      dfernandes@bardonbudd.com
      mpifko@baronbudd.com

J. Burton LeBlanc
9015 Bluebonnet Blvd.
Baton Rouge, LA 70810
Tel: (225) 761-6463
Fax: (225) 927-5449
Email: bleblanc@baronbudd.com

*Plaintiffs' Steering Committee*

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068-1739
Tel: (973) 994-1700
Fax: (973) 994-1744
Email: jcecchi@carellabyrne.com

*Plaintiffs' Steering Committee*

**COLSON HICKS EIDSON**
Lewis S. "Mike" Eidson
Curtis Bradley Miner
255 Alhambra Circle, PH
Coral Gables, FL 33134
Tel: (305) 476-7400
Fax: (305) 476-7444
Email: mike@colson.com
      curt@colson.com

*Plaintiffs' Personal Injury Track Lead Counsel*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth Cabraser
Phong-Chau Gia Nguyen
Todd Walburg
275 Battery St., Suite 3000
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008
Email: ecabraser@lchb.com
      pgnguyen@lchb.com
      twalburg@lchb.com

David Stellings
250 Hudson Street, 8th Floor
New York, NY 10012
Tel: (212) 355-9500
Fax: (212) 355-9592
Email: dstellings@lchb.com

*Plaintiffs' Steering Committee*

*/s/  Kimberly A. Cook*
Kimberly A. Cook