# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## MDL No. 2599
### Master File No. 15-2599-MD-MORENO

| | |
|---|---|
| IN RE: | MDL. No. 2599 |
| **TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION,** | Master File No. 15-2599-MD-MORENO |
| THIS DOCUMENT RELATES TO ECONOMIC DAMAGES TRACK CASES | S.D. Fla. Case No. 14-cv-24009 |

PAMELA KOEHLER, et al., individually and on behalf of all others similarly situated,

        Plaintiffs,

    v.

TAKATA CORPORATION, TK HOLDINGS, INC., HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR CO., INC., BAYERISCHE MOTOREN WERKE AG, BMW OF NORTH AMERICA, LLC, BMW MANUFACTURING CO., LLC, FORD MOTOR COMPANY, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., AND TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., MAZDA MOTOR CORPORATION, MAZDA MOTOR OF AMERICA, INC., MITSUBISHI MOTORS CORP., MITSUBISHI MOTORS NORTH AMERICA, INC., NISSAN MOTOR CO., LTD., NISSAN NORTH AMERICA, INC., FUJI HEAVY INDUSTRIES, LTD., SUBARU OF AMERICA, INC.,

        Defendants.

**DEFENDANTS TAKATA CORPORATION AND TK HOLDINGS INC.'S
MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT OR IN THE ALTERNATIVE, TO STRIKE THE ALLEGATIONS OF
<ins>COUNT 3–8 AND 104 MEMORANDUM OF LAW IN SUPPORT THEREOF</ins>
(With Incorporated Memorandum of Law)**

Defendants Takata Corporation and TK Holdings Inc. ("Takata") move to dismiss Counts

1–8, and 47–106 of Plaintiffs' Second Amended Consolidated Class Action Complaint

("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), and/or to strike the

allegations of a national class action pursuant to Rule 23(c)(1)(A).  In support of this Motion,

Takata submits this Memorandum of Law.

## MEMORANDUM OF LAW

### INTRODUCTION

This is not a product liability case about physical injuries, nor does the Complaint involve actual mechanical failures of Takata airbags in Consumer Plaintiffs' ("Plaintiffs") vehicles. Instead, this case against Takata depends on entirely speculative assertions of supposed unrealized economic losses for over 30 million recalled Class Vehicles (Compl. ¶¶ 304, 311). Because Takata is a parts supplier that manufactured and sold airbags to automakers (*id*. ¶¶ 3, 44), not to consumers, the economic loss claims raised here are the subjects of warranty contracts between the Vehicle Manufacturer Defendants and Plaintiffs. The Complaint nonetheless attempts to expand and distort the Racketeer Influenced and Corrupt Organizations Act ("RICO"), tort, and unjust enrichment law to supersede or supplant those contractual relationships. These strained efforts are without merit.

Specifically, the proposed Michigan law national class action is facially improper given the many conflicts in applicable state laws. Plaintiffs' RICO claims are unprecedented in the automotive class action context, and notably did not appear in 67 out of the 70 putative class actions consolidated into this MDL. The RICO counts fail because of the absence of factual allegations which plausibly support the required concrete out-of-pocket loss, direct causation, and enterprise elements of RICO. Plaintiffs' implied warranty and Magnuson-Moss Warranty Act causes of action against Takata fail primarily because Takata has no direct contractual relationship with Plaintiffs and the defect in Plaintiffs' vehicles has not been manifested. The remaining state law concealment, unfair competition, and negligence counts against Takata also founder on the economic loss rule, non-specific pleadings, the same indirect relationship between Takata and Plaintiffs, and various other state law reasons. The Recycler Plaintiffs' three claims

2

are limited to misrepresentation/concealment and state unfair practice theories, and share the same legal inadequacies as those of the Consumer Plaintiffs.[1]

## ALLEGATIONS OF THE COMPLAINT

The 439-page Complaint seeks to make up with volume and repetition for the lack of specific injuries to Plaintiffs.  The gravamen of Plaintiffs' factual theory is that the Takata airbags purchased by the Vehicle Manufacturer Defendants and installed in the Class Vehicles purchased or leased by Plaintiffs present a risk of malfunction and resulting personal injury, and that at some point Takata and the Vehicle Manufacturer Defendants supposedly knew the risk but concealed it.  *See, e.g.*, Compl. ¶¶ 4–8.  The asserted economic loss is a non-specific claim of diminution in value of the Class Vehicles despite the absence of an allegation by even one of the 119 listed Plaintiffs of a specific realized economic loss caused by Takata's concealment.  *See, e.g.*, *id.* at ¶¶ 72–75.

There are no fewer than 106 causes of action, but the claims against Takata can be organized into two basic groups:  (1) nationwide class claims (RICO, Michigan state law, Magnuson-Moss) (counts 1–8, 104); and (2) individual state-specific claims (implied warranty, concealment, unfair competition/deceptive trade practices, and negligence) (counts 47–103, 105–06).  Plaintiffs' proposed national class and state sub-classes consist of persons who now lease or own Class Vehicles or sold their vehicles after a recall.  Compl. ¶¶ 392–96.  "Class Vehicles" are "all vehicles purchased or leased in the United States" that have a Takata airbag subject to a recall related to the Defect Information Reports submitted by Takata to NHTSA.  *Id.* ¶¶ 195–96.  The Recycler Plaintiffs' proposed class consists of automobile parts recyclers which own undeployed Takata airbags or sold them after a recall.  *Id.* at 132–33.

---

[1] Takata has also joined the Automotive Defendants' Motion To Dismiss Automotive Recyclers Association's Claims and Incorporated Memorandum of Law.

**ARGUMENT**

I.     **Well-Established Choice of Law Principles Prohibit The Proposed National Class Claims (Counts 3–8 & 104)**

Plaintiffs seek to bypass the choice-of-law inquiry and improperly apply Michigan law to all state law claims brought on behalf of a nationwide Consumer class.  Compl. ¶¶ 463, 477, 483, 489, 510.  Plaintiffs also pursue a nationwide Recycler class without specifying which state law should apply to their claims.  *Id.* ¶¶ 1900–10.  But "[i]n cases transferred pursuant to 28 U.S.C. § 1407, the transferee district court must apply the state law, including its choice of law rules, that would have been applied had there been no change of venue."  *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296–97 (S.D. Fla. 2003).  All MDL transferor states are considered forum states, and accordingly an independent choice of law determination is necessary for the state of each transferor court.  *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.* ("*Bridgestone*"), 155 F. Supp. 2d 1069, 1078 (S.D. Ind. 2001), *rev'd on other grounds sub nom.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002).

Courts in automotive class actions have considered and rejected the exact national class theory Plaintiffs propose here.  *See, e.g.*, *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724–25 (5th Cir. 2007) (no nationwide class for alleged breaches of express and implied warranties for defects in the side airbag system); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 370–71 (E.D. La. 1997); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig,* 785 F. Supp. 2d 925, 935 (C.D. Cal. 2011); *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1015.[2]  All of the nationwide state law class claims against Takata (counts 3–8 and 104) should be dismissed without leave to amend, or

---

[2] *Accord Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

alternatively stricken pursuant to Rule 23(c)(1)(A).  *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011) (affirming striking national class claims because "under Ohio's choice-of-law rules, [the court] would have to analyze each class member's claim under the law of his or her home State," and "[s]uch a task . .  would make this case unmanageable as a class action and would dwarf any common issues of fact implicated by the lawsuit"); *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011) (motion to strike or dismiss); *Wright v. Family Dollar, Inc.*, No. 10-civ-4410, 2010 WL 4962838, at **1–3 (N.D. Ill. Nov. 30, 2010) (motion to strike); *see generally* 9 Bus. & Com. Litig. Fed. Cts. § 101:109 (3d ed.).[3]

The Magnuson-Moss claim on behalf of a purported nationwide consumer class (Count 3) must be dismissed for the same underlying reason: the warranty laws of over 30 jurisdictions are implicated by the proposed class, and therefore common issues of law do not predominate and the claim is not manageable as a class action.  *See Marcus v. BMW of N. Am., LLC*, No. 08-civ-5859, 2010 WL 4853308 (D.N.J. Nov. 19, 2010), at *7–*9 ("[t]he primary reason courts have been reluctant to certify nationwide classes under the MMWA is that the statute does not itself provide any substantive law, but rather imports state law on implied and express warranties."); *Payne v. FujiFilm U.S.A., Inc.*, No. 07-civ-385, 2010 WL 2342388, at *6, *9 (D.N.J. May 28, 2010) (given significant conflicts among state warranty laws, certification of nationwide class denied).  As of 2010, "no federal court has certified a nationwide class under

---

[3] Because of the implications of the choice-of-law analysis, and the concomitant "differences in the law of product liability as well as in the applicable theories of recovery and their subsidiary concepts," courts generally refuse to certify nationwide classes for product liability claims, as well as related warranty and fraud claims.  *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. at 275; *Debbs v. Chrysler Corp.*, 810 A.2d 137, 158–59 (PA Super. 2002) (decertifying multistate class under Pennsylvania law in airbag defect case); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985); *Georgine*, 83 F.3d at 627 ("constitutional limitations on choice of law apply even in nationwide class actions").

the Magnuson-Moss on the basis of breaches of warranties related to defective products."
*Marcus*, 2010 WL 4853308, at *7.  Takata is not aware of any federal court that has certified a
nationwide Magnuson-Moss class on the basis of breaches of warranties related to defective
products, other than for settlement purposes where a rigorous predominance analysis was
unnecessary.  *E.g.*, *McGee v. Cont'l Tire N. Am., Inc.*, No. 06-civ-6234, 2009 WL 539893, at *11
(D.N.J. Mar. 4, 2009).

## II.      The RICO Claims Against Takata Fail (Counts 1 & 2)

### A.      Plaintiffs have not alleged concrete out of pocket financial loss caused by racketeering conduct.

RICO permits civil actions only for actual injuries to "business or property."  18 U.S.C.
§ 1964(c).  The Supreme Court has emphasized that the injury to business or property limitation
on RICO standing has a "restrictive significance."  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339
(1979).  That limitation "helps to assure that RICO is not expanded to provide a federal cause of
action and treble damages to every tort plaintiff . . . ."  *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69,
70 (9th Cir. 1994) (citations omitted).

Federal Courts of Appeal repeatedly have rebuffed efforts to invoke RICO when
plaintiffs have not yet suffered an actual out of pocket injury to business or property.  In *First
Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768–69 (2d Cir. 1994), the Second Circuit
rejected a financial institution's claim of injury based on loans that were being repaid on
schedule, concluding that plaintiff had not alleged a present injury under RICO.  Similarly, in
*Oscar v. University Students Co-Operative Ass'n*, 965 F.2d 783, 787 (9th Cir. 1992) (en banc),
the Ninth Circuit held that plaintiffs' speculation that their neighbors' activities might lower their

subletting values was insufficient to satisfy RICO's requirement of a direct and actual financial loss.[4]  Plaintiffs' RICO claims here suffer from the same fatal infirmity.

Plaintiffs must allege a "cognizable injury (one that is concrete, tangible, and not speculative or contingent)" to their vehicles.  *Bridgestone*, 155 F. Supp. 2d at 1094.  They can do so only when "the diminished value of [their vehicles] has actually been realized or when the alleged infirmity in the [vehicles] has otherwise tangibly manifested itself."  *Id.*  The injury must be greater than mere injury to a valuable, intangible property interest; it must be "an actual, concrete monetary loss (*i.e.*, an 'out-of-pocket' loss)."  *Id.* at 1090; *see also Amarelis v. Notter Sch. of Culinary Arts, LLC*, No. 13-civ-54, 2014 WL 5454387, at *6 (M.D. Fla. Oct. 27, 2014); *Arabian Am. Oil Co. v. Scarfone*, 713 F. Supp. 1420, 1421 (M.D. Fla. 1989) ("It is well-established that potential exposure or a mere possibility of [a future injury] is insufficient to satisfy the requirement of injury necessary to maintain a suit pursuant to 18 U.S.C. § 1964(c).").

Many other reported decisions, including those in automotive class actions, have rejected "potential-defect-without-manifestation" theories in other contexts.  *See generally Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 (9th Cir. 2009); *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1016–17; *Whitson v. Bumbo*, No. 07-civ-05597, 2009 WL 1515597, at *6 (N.D. Cal. Apr. 16, 2009).  "It is simply not enough for a plaintiff to allege that a product defect suffered by others renders his or her use of that same product unsafe; the plaintiff must instead allege an actual manifestation of the defect that results in some injury in order to state a cognizable claim."  *O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1115 (D. Minn. 2008), *aff'd*, 574 F.3d 501 (8th

---

[4] *See also Roberts v. The Scott Fetzer Co.,* No. 07-civ-80, 2010 WL 3937312, at *10 (M.D. Ga. Sept. 30, 2010); *Amarelis*, 2014 WL 5454387, at *6 ("[E]xpectancy interests, however, do not give rise to actionable RICO injury."); *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 228 (2d Cir. 2008) (the general unavailability of intangible, expectancy-type, benefit of the bargain damages "follows from the text of RICO, which compensates only for injury to 'business or property.'") (quoting 18 U.S.C. § 1964(c)).

Cir. 2009); *see also In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1530 (E.D. Mo. 1997) (manifestation "is a prerequisite to recovery" and therefore the Court dismissed claims regarding "defective" anti-lock brakes that only created a "potential" for failure), *aff'd sub nom.*, *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).

Plaintiffs' conclusory allegations of indirect, consequential-type damages (*e.g.,* renting replacement vehicles, missing work, etc.) (Compl. ¶¶ 36, 113, 119, 159) do not establish a plausible RICO injury to "business or property."[5]  Instead, each of the 115 individual Consumer Plaintiffs formulaically offers the identical conclusion that they "would not have purchased [their vehicles] or would not have paid as much for [them] if [they] had known of the problems associated with the vehicle's Inflator Defect."  *See, e.g.*, *id.* ¶¶ 142.  Plaintiffs also assert in conclusory fashion that the value of their vehicles has been diminished by "defective Takata airbags" (*see, e.g.*, *id.* ¶ 34), without alleging a single specific fact in support of that conclusion.  Such non-specific allegations of unactualized economic loss are "simply too speculative . . . ." *See Briehl*, 172 F.3d at 628–29 ("Plaintiffs' assertion that their ABS-equipped vehicles are defective and that they have suffered a loss in resale value as a result of the defect is insufficient as a matter of law to plead a claim under any theory the Plaintiffs have advanced.").[6]

---

[5] *See Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'"); *Bell Atl. Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 547 (2007) (Rule 8 requires pleading "enough facts to state a claim to relief that is plausible on its face.").

[6] Nearly 40 percent of the individual Consumer Plaintiffs are alleged to have already replaced (at no cost to them) the airbags in their vehicles (Compl. ¶¶ 76–79, 81, 83, 87, 90, 93–94, 100, 104–05, 115, 116, 117, 119, 121–22, 126–27, 133, 135–36, 143, 145, 150, 153–57, 159–60, 162, 164, 170–71, 173, 176, 178, 180).  Another nine Consumer Plaintiffs were awaiting replacement parts to become available at the time the Complaint was filed.  *Id.* ¶¶ 89, 99, 106, 108–09, 111, 124, 163, 172.  For 50 percent of Consumer Plaintiffs, there are no allegations that they made any effort to have their airbags replaced after learning they were defective.  *Id.* ¶¶ 80, 84–86, 88, 91–92, 95–98, 102–03, 107, 110, 112–14, 116, 118, 120, 128–32, 134, 137–39, 141–42, 144, 146–

In this case, no Plaintiff is alleged to have sold a vehicle at a lower price based on any defect, much less a lower price caused by any *concealment* of a defect.  *See* Compl. ¶¶ 76–187. Vague allegations that some Plaintiffs made some efforts to sell their vehicles (*id.* ¶¶ 91, 114, 119, 122, 140, 144), or chose to not drive their vehicles out of safety concerns (*id.* ¶¶ 96, 107, 113–14, 176), are insufficient to make out an actualized concrete injury to business or property. *See In re Toyota MotorCorp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d at 1166–67.  For example, the court in *Contreras v. Toyota Motor Sales USA, Inc.*, rejected as "conclusory and unsupported by any facts" the "allegation that their vehicles [were] worth substantially less than they would be without the alleged defect[s] . . . ." No. 09-civ-06024, 2010 WL 2528844, at **4–6 (N.D. Cal. June 18, 2010), *rev'd and remanded on other grounds*, 484 F. App'x 116 (9th Cir. 2012) (unpublished); *see also Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 630 (M.D.N.C. 2006) (limiting potential class to "only those" class members "who have actually suffered actual injury, i.e., sold their [vehicles] at a reduced amount; or replaced their [vehicles' alleged defective parts]; or experienced property damage because of [alleged defective parts] failure").[7]

---

49, 151–52, 158–59, 161, 165–69, 174, 177, 179, 182–87.  The remaining Consumer Plaintiffs allege that they have been informed, or are awaiting confirmation from their dealerships, that their airbags are not subject to any recall.  *Id.* ¶¶ 82, 101, 123, 125, 140, 173, 175, 181.

[7] For example, renting a car to replace a Class Vehicle during repair (Compl. ¶¶ 113, 119, 159) is not an injury to a Plaintiff's "business" or to "property."  Allegations that Plaintiffs have waited for replacement parts to become available (*id.* ¶¶ 89, 94, 96, 99, 104, 106–09, 111, 113, 114, 121–22, 124, 150, 162–63, 172, 176) also are not injuries to business or property.  Claims of unconsummated non-specific attempts to re-sell Class Vehicles (*id.* ¶¶ 91, 114, 122, 140, 144), assert, at the very most, an unactualized, and therefore non-cognizable and not concrete, *potential* future injury to property.  For the vast majority of Plaintiffs, there are no factual allegations that they actually incurred any incidental expense at all.  *See, e.g.*, *id.* ¶¶ 76–112, 114–18, 120–58, 160–87.

*Bridgestone* is squarely on point, and highly persuasive.  Plaintiffs in *Bridgestone* owned or leased Ford Explorers, alleging both "diminished resale value" and overpayment due to either (1) a design defect in the tires that caused "tread separation" or (2) a possibility that the Explorers might roll over.  155 F. Supp. 2d at 1086.  The *Bridgestone* court rejected those arguments and dismissed the RICO claim, observing:

> The principle that emerges from all of the decisions discussed above is that a plaintiff alleges a cognizable injury (one that is concrete, tangible, and not speculative or contingent) as a result of a purchase only where *the diminished value of the plaintiff's property has actually been realized* or when the *alleged infirmity in the purchased property has otherwise tangibly manifested itself.* For this reason, Plaintiffs' allegations that they paid more for the Tires and Explorers than they are worth, or that they have incurred or will incur the cost of replacing Tires that have never manifested the alleged defect, are insufficient to sustain their RICO claims.

*Id.* at 1094 (emphases added).

**B.      Plaintiffs have not plausibly alleged proximate causation of damage by reason of a RICO violation.**

A civil RICO plaintiff must be injured "by reason of" a RICO violation.  18 U.S.C. § 1964(c).  The Supreme Court has explained that this language requires a RICO plaintiff "to show that a RICO predicate offense 'not only was a but for cause of his injury, but was the proximate cause as well.'"  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 2 (2010) (plurality) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).  The RICO violation must directly lead to the plaintiff's injuries.  *Anza*, 547 U.S. at 461.  A "link [between injury and injurious conduct] that is . . . indirect is insufficient" to establish proximate causation.  *Hemi Grp., LLC*, 559 U.S. at 2 (citing *Holmes*, 503 U.S. at 268).

In contrast, Plaintiffs' asserted harms here (diminished vehicle value, initial overpayment, and various inconveniences) (Compl. ¶¶ 34–38, 431–32, 440–41 & 443), are from

a set of actions (defectively designed propellant chemistry, the use of that propellant in airbag

inflators, and the incorporation of those inflators into Plaintiffs' vehicles) (*id.* ¶¶ 4–8, 205–08),

distinct from the alleged RICO violation (concealing the defect from NHTSA) (*id.* ¶¶ 215–24).

In other words, even without the alleged predicate mail fraud, Plaintiffs would have the same

harms from the claimed airbag defect.  Takata's asserted conduct directed at NHTSA (Compl.

¶¶ 426–27),[8] did not proximately cause Plaintiffs' claimed RICO injuries.

The Supreme Court decision in *Anza*, 547 U.S. at 454–55, 457–58, demonstrates this

point.  In *Anza*, defendant failed to collect sales taxes from its customers, defrauding the state

and injuring competitors by being able to offer artificially low prices to customers.  *See id.* at

453–54.  Observing that the state was the "direct victim" of the fraud, the Supreme Court held

that the cause of competitor business plaintiff's harm (defendant offering lower prices) was

"distinct from the alleged RICO violation (defendant defrauding the State)."  *Id.* at 458.  The

fraud on the government therefore had not "led *directly* to the plaintiff's injuries," and plaintiff

accordingly failed to meet RICO's "requirement of a *direct* causal connection" between the

predicate fraud and the alleged injury.  *Id.* at 460–61 (emphases added); *see also Hemi Grp.,*

*LLC.*, 559 U.S. at 5, 10–12.

The Supreme Court has limited the application of RICO to injuries which flow *directly*

from racketeering acts.  *Anza,* 547 U.S. at 457–58 (followed by *Hemi Grp. LLC,* 559 U.S. 10–

11); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649–50 (2008) ("primary and intended

victims" injured as a result of racketeering may have RICO claims); *Holmes,* 503 U.S. at 275

---

[8] Plaintiffs allege that Takata failed to disclose information and events "to the public or federal
regulators." *E.g.*, Compl. ¶¶ 232–33.  But any duty on the part of Takata was to communicate
with NHTSA (the federal regulator), not with "the public" or Plaintiffs.  *See* 49 C.F.R. § 573.6(a)
(requiring "each manufacturer [to] furnish a report to the NHTSA for each defect in his . . . items
of original or replacement equipment that he or the Administrator determines to be related to
motor vehicle safety."); *see* discussion *infra* at 17–18.

(RICO claims should be reserved for victims directly injured by racketeering scheme); *see also Halpin v. Crist*, 405 F. App'x 403, 405–06 (11th Cir. 2010) (unpublished); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 95 (D.D.C. 2000).  In addition to the language of RICO itself, there is a sound policy basis for the "direct injury" requirement, as it allows for "vindication" by the directly injured victim, which in turn satisfies "the general interest in deterring injurious conduct," while avoiding "any of the problems attendant upon suits by plaintiffs injured more remotely."  *Holmes*, 503 U.S. at 269, 270, 272.  As the Supreme Court stated in *Holmes*: "Allowing suit by those injured only indirectly would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits."  *Id.* at 274.[9]

In *Bridge*, 553 U.S. at 641, the Supreme Court clarified that first party reliance is not an independent element of a RICO claim.  *Id.* at 649–50.  Nevertheless, the Supreme Court in *Bridge* also reaffirmed the proximate cause requirement limiting RICO recovery to direct victims whose injuries have a direct relationship to the racketeering conduct.  *Id.* at 649–50, 654 (RICO protects "primary and intended victims of the scheme to defraud" where there is "some direct relation between the injury asserted and the injurious conduct alleged") (internal quotation marks omitted); *see also id.* at 646, 658–59.  After *Bridge*, Plaintiffs still cannot assert RICO claims based on governmental reliance on misrepresentations that were not the direct or proximate cause of Plaintiffs' injuries.  *See id.* at 659 ("[T]he absence of first-party reliance may in some

---

[9] *See also In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010,* ("*In re Oil Spill"*), 802 F. Supp. 2d 725, 731 (E.D. La. 2011) ("[T]he instant Plaintiffs are not the only parties injured by BP's alleged fraud. Rather, the government regulators were the direct victims. . . .[T]he government is a more-immediate victim capable of pursuing the alleged misconduct.").

cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement.").

The decision in *In re Oil Spill*, 802 F. Supp. 2d 723, 728 (E.D. La. 2011), is particularly illustrative of the post-*Bridge* vitality of RICO's proximate causation requirement.  In that case, plaintiffs alleged that the Deepwater Horizon oil spill catastrophe occurred because BP defrauded government regulators in connection with the safety of its drilling operations. Plaintiffs argued that if the safety efforts and containment ability of BP were as represented to the government authority, then the injuries to Plaintiffs would have been prevented or mitigated. *Id.* at 729.  The court rejected this "unpersuasive" argument, noting that "the government regulators were the *direct* victims."  *Id*. at 730–31 (emphasis added).

### C.      Plaintiffs have not plausibly alleged a RICO enterprise.

The Complaint contains no plausible facts showing that Takata and other Vehicle Manufacturer Defendants were part of an "association-in-fact enterprise" (Compl. ¶¶ 433–43), "a group of persons associated together for a common purpose of engaging in a course of conduct . . . ."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  The Complaint is devoid of any plausible allegations[10] of "an ongoing organization, formal or informal," within which Takata and Vehicle Manufacturer Defendants together "function as a continuing unit."  *Id*. at 583; *Boyle v. U.S.*, 556 U.S. 938, 945–47 (2009) (a distinct association-in-fact enterprise structure is required).

---

[10] *Twombly*'s heightened pleading standard applies to RICO cases, including the "enterprise" element.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369–70 (3d Cir. 2010); *see also Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (finding boilerplate allegations of an association-in-fact enterprise failed to satisfy *Twombly*'s heightened pleading standard); *Smartix Int'l Corp. v. MasterCard Int'l LLC*, 355 F. App'x 464, 466 (2d Cir. 2009) (unpublished).

The fundamental flaw with Plaintiffs' enterprise theory is that they have alleged no "enterprise" that "is meaningfully different from the units that go to make it up . . . ." *Richmond v. Nationwide Cassel L.P.*, 847 F. Supp. 88, 91 (N.D. Ill. 1994), *aff'd*, 52 F.3d 640 (7th Cir. 1995); *see also New England Carpenters Health & Welfare Fund v. Abbott Labs. & AbbVie, Inc.*, No. 12-civ-1662, 2014 WL 4783833, at *5 (N.D. Ill. Sept. 25, 2014) ("It is not enough to allege that members of the enterprise ha[ve] a commercial relationship; the fraudulent conduct as issue must be undertaken on behalf of the enterprise as opposed to on behalf of the alleged enterprise members in their individual capacities, to advance their individual self-interests. *Greenberg v. Blake*, No. 09-civ-4347, 2010 WL 2400064, at **6–7 (E.D.N.Y. June 10, 2010); *cf. United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) ("Even if we were to assume, however, that the complaint sufficiently pleads the *existence* of an association-in-fact enterprise under *Boyle,* it does not adequately allege that [defendants] were conducting the affairs of this . . . enterprise, as opposed to their own affairs." (internal quotations omitted)).

Instead, the Complaint offers only factually empty conclusions:  (i) the "Takata RICO Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities[,]" (Compl. ¶ 415); (ii) Takata "operated, controlled, or managed the Takata RICO Enterprise, through variety of actions[,]" (*id.* ¶ 417); and (iii) the "members of the Takata RICO Enterprise all served a common purpose[,]" (*id.* ¶ 418).  Those non-factual conclusions of a RICO enterprise do not meet Plaintiffs' pleading burden.  *See, e.g.*, *Jennings v. Emry*, 910 F.2d 1434, 1439, 1440, n.14 (7th Cir. 1990) (ignoring conclusory allegations of enterprise where there were no factual allegations of a "separate and distinct enterprise[,]" only the individual defendants' regular business activities).  For example,

14

Plaintiffs make no attempt factually to describe any role or responsibility of any defendant in the supposed enterprise at any time or provide any allegations about how decisions were made for the supposed enterprise. In short, Plaintiffs offer no substance to support that the alleged enterprise was "a continuing unit" that "remain[ed] in existence . . . ." *Boyle*, 556 U.S. at 948; *see Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir.) *cert. denied*, 135 S. Ct. 491 (2014).

Plaintiffs' assertion that the "Takata RICO Enterprise" shared a common purpose "to sell as many airbags, and vehicles containing such airbags, as possible, and thereby maximize [their] revenue and profitability[,]" (Compl. ¶ 418), does not make out a RICO enterprise. Given similar allegations brought by a putative class of vehicle purchasers with extended warranties, the Seventh Circuit dismissed a RICO claim for failure to plead a RICO enterprise among Chrysler, its independent dealers, and certain trusts that resold the automobile purchase contracts to the investing public. *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997).[11]

## III.   Takata Has No Negligence-Based Liability To Plaintiffs

### A.   The economic loss doctrine precludes the recovery of purely economic damages on negligence theories of liability (Counts 8 & 55).[12]

The economic loss rule generally bars Plaintiffs' negligence claims for purely economic losses. *See, e.g.*, *Sullivan Indus., Inc. v. Double Seal Glass Co., Inc.*, 480 N.W.2d 623, 627

---

[11] "RICO . . . is not a conspiracy statute. Its draconian penalties are not triggered just by proving conspiracy. Enterprise connotes more." *Fitzgerald*, 116 F.3d at 228; *see also Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir. 1990); *Millette v. DEK Tech., Inc.*, No. 08-civ-60639, 2008 WL 5054741, at *4 (S.D. Fla. Nov. 25, 2008) ("[W]hen the complaint is founded on commercial relationships between the alleged components of the enterprise, the Plaintiff should plead facts dispelling the notion that the different parties entered into the alleged agreements for their own gain or benefit.") (citations omitted); *Richmond*, 52 F.3d at 646.

[12] Count 8 against Takata is for "negligence" brought under Michigan law for the nationwide class (*see* discussion *supra* at 3–5) and alternatively under the laws of the states where Plaintiffs reside and/or purchased their Class Vehicles. Compl. ¶¶ 492–98. Count 55 is for negligent failure to recall under California law. *Id.* ¶¶ 1158–64.

(Mich. Ct. App. 1991); *Michigan Mut. Ins. Co. v. Osram Sylvania, Inc*, 897 F. Supp. 992, 994–95 (W.D. Mich. 1995).  Parties are subject to "no duty to prevent economic loss to third parties in negligence actions at common law."  *Exxonmobil Oil Corp. v. Nicoletti Oil, Inc.*, 713 F. Supp. 2d 1105, 1113 (E.D. Cal. 2010) (citing *Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1216 (2008)).  Thus, "[t]he economic loss rule requires a purchaser to recover *in contract for purely economic loss*[*es*] *due to disappointed expectations*."  *Sharma v. BMW of N. Am., LLC*, No. 13-civ-2274, 2014 WL 2795512, at *6 (N.D. Cal. June 19, 2014) (emphasis added); *Aikens v. Debow*, 541 S.E.2d 576, 589 (W. Va. 2000) ("[A]n individual who sustains purely economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship.").

Courts routinely decline to extend tort liability to third-party economic losses because such sweeping liability would "undermine the protection built into the law of warranty [and] would expose [a defendant] to liability for damages 'of unknown and unlimited scope.'"  Herbert Bernstein, *Civil Liability for Pure Economic Loss Under American Tort Law*, 46 Am. J. Comp. L. 111, 119 (1998) (citing, *e.g.*, *Seely v. White Motor Co.*, 403 P.2d 145, 149–50 (Cal. 1965)).  The economic loss doctrine also guards the line between tort law, governing the recovery of damages for injuries resulting from a breach of a general duty imposed by law, and contract law, governing damages for breach of agreement.  *See id.*; *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 240 (Tex. 2014); *see generally* Restatement (Third) of Torts: Liability for Economic Harm ("[C]ourts impose tort liability for economic loss more selectively than liability for other types of harms."); Vincent R. Johnson, *The Boundary-Line Function of the Economic*

16

*Loss Rule*, 66 Wash. & Lee L. Rev. 523 (2009); *See* Exhibit A (Survey of State Law on the Economic Loss Doctrine).[13]

The decision in *Sharma*, 2014 WL 2795512, at *1, aptly illustrates this point.  Plaintiffs in that case contended that "critical modules and electronic components" of their vehicle's trunk were "prone to damage and failure due to water exposure" caused by the design of drainage tubes.  The court dismissed the California negligence and negligent failure to recall claims because plaintiffs did "not allege that they incurred any physical injury or damage to property *other than their vehicles*, and, consequently, fail to allege sufficient facts to support a negligence claim." *Id*. at *6 (emphasis added).  Other courts have rejected similar negligence claims in the automotive context.  *See Fisher v. Honda N. Am. Inc.*, No. 13-civ-09285, 2014 WL 2808188, at *7 (C.D. Cal. June 12, 2014); *Callaghan v. BMW of N. Am. LLC*, No. 13-civ-4794, 2014 WL 1340085, at *6 (N.D. Cal. Apr. 2, 2014).

---

[13] *But see Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 P.3d 664, 671 (Ariz. 2010) (declining to extend the economic loss rule to claims brought against non-contractual parties; "[r]ather than rely on the economic loss doctrine to preclude tort claims by non-contracting parties, courts should instead focus on whether the applicable substantive law allows liability in the particular context."); *Baddeley v. Seek*, 156 P.3d 959, 962 (Wash. App. 2007) (holding that in the absence of a contract relationship, the economic loss rule does not apply, but affirming dismissal of negligent misrepresentation claims where defendant made no representations to plaintiff); *Rousseau v. K.N. Const., Inc.*, 727 A.2d 190, 193 (R.I. 1999). (economic loss doctrine "is not applicable to consumer transactions"); *Frankenmuth Mut. Ins. Co. v. Ace Hardware Corp.*, 899 F. Supp. 348, 351(W.D. Mich. 1995) (economic loss doctrine applies "only applied in the commercial context").

Various states also recognize some exceptions to application of the economic loss doctrine that are not dispositive here, including when a malfunction or defect has resulted in damage to other property. *See, e.g.*, *Bussian*, 411 F. Supp. 2d at 625.  And in Florida, the economic loss doctrine has been strictly limited to cases, like this one, in the products liability context in order to "protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 403, 407 (Fla. 2013).

**B.      As a manufacturer of original equipment, Takata cannot be liable for negligent failure to recall (Count 55).**

Neither California law (the sole basis of Count 55), the law of any other state, nor federal law imposes a duty to "recall" vehicles on manufacturers of original equipment.  *See generally Horstmyer v. Black & Decker, (U.S.), Inc.*, 151 F. 3d 765, 773 (8th Cir. 1998).  Under federal law, only the vehicle manufacturer or a manufacturer of replacement equipment[14] has a duty to notify NHTSA and vehicle owners of safety-related defects (49 U.S.C. § 30118(c)(1)) or to provide a free remedy for such defects (49 U.S.C.§§ 30118(b), (c), 30120(a)(1)).  A manufacturer of original equipment, like Takata, has no duty to make a defect determination, notify vehicles owners, or provide a remedy, *i.e.*, it has no duty to recall.

The responsibility for conducting a recall to address a defect in original equipment rests squarely on the manufacturer of the motor vehicle in which that original equipment was installed:  "Each manufacturer of a motor vehicle shall be responsible for any safety-related defect or any noncompliance determined to exist in the vehicle or in any item of original equipment."  49 C.F.R. § 573.5.[15]  NHTSA Recall Management Division, Safety Recall Compendium (2015), available at http://www odi.nhtsa.dot.gov/recalls/documents/ recompendium.pdf (last visited July 17, 2015).

---

[14]  Under the NHTSA statute, "original equipment" means "motor vehicle equipment . . . installed in or on a motor vehicle at the time of delivery to the first purchaser."  49 U.S.C. § 30102(b)(1)(C).  "[R]eplacement equipment" is defined as "motor vehicle equipment . . . that is not original equipment."  49 U.S.C. § 30102(b)(1)(D).

[15]  *See* 49 U.S.C. § 30102(b)(1)(F)–(G) ("[A] defect in original equipment . . . is deemed to be a defect . . . of the motor vehicle in or on which the equipment was installed at the time of delivery to the first purchaser" and "a manufacturer of a motor vehicle in or on which original equipment was installed when delivered to the first purchaser is deemed to be the manufacturer of the equipment").

In any event, "[t]he duty to recall or retrofit a product has not enjoyed wide acceptance." *See, e.g.*, *Roberts v. Electrolux Home Prods, Inc.*, No. 12-civ-1644, 2013 WL 7753579, at *11 (C.D. Cal. Mar. 4, 2013); *Adams v. Genie Indus., Inc.*, 14 N.Y.3d 535, 545 (2010); *Burke v. Deere & Co*, 6 F.3d 497, 510 (8th Cir. 1993); *Efting v. Tokai Corp.*, 75 F. Supp. 2d 1006, 1011 (W.D. Mo. 1999). And like Plaintiffs' negligence claim, the economic loss rule bars the negligent failure to recall claim. *See Sharma*, 2014 WL 2795512, at *7 ("[Negligent failure to recall claim] is subject to dismissal in light of the economic loss rule.").[16]

## IV.   The Implied Warranty Claims Against Takata Should Be Dismissed.

### A.   Plaintiffs' implied warranty claims fail to allege either manifestation of defect or the imminent likelihood of manifestation (Counts 5, 48, 54, 57, 62, 66, 69, 71, 73, 76, 78, 80, 81, 86, 90, 92, 95, 98 & 103).

Plaintiffs' implied warranty claims[17] fail because there is no allegation that their Class Vehicles manifested a defect, or that there is an imminent risk of future manifestation. *See Briehl*, 172 F.3d at 628 (dismissal of economic-loss automotive class action based on implied warranty claims). There is "no support for the proposition that a remote fear or expectation of failure is sufficient to establish nonmerchantability." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1293, 1296–98 (1995).

---

[16] Class Vehicles by definition (Compl. ¶¶ 195–96) have already been recalled. *Cf. McLaughlin v. Volkswagen of Am., Inc.*, 2000 U.S. Dist. LEXIS 17505, at *10 n.3 (E.D. Pa. Dec. 6, 2000) (taking judicial notice of NHTSA website description of automobile recall).

[17] The Complaint contains one count on behalf of the Nationwide Consumer Class for breach of implied warranty under Michigan law (Count 5), and seventeen counts alleging the cause of action under the laws of various states: Florida (Count 48); California (Count 54); Colorado (Count 57); Hawaii (Count 62); Indiana (Count 66); Louisiana (Count 69); Massachusetts (Count 71); Michigan (Count 73); Minnesota (Count 76); Missouri (Count 78); Nevada (Count 80); New Jersey (Count 81); North Carolina (Count 86); Rhode Island (Count 92); South Carolina (Count 95); Texas (Count 98), and West Virginia (Count 103).

19

Several states permit recovery for an implied warranty claim only when the alleged defect manifests itself.[18]  And Texas requires an allegation that the defect is objectively imminent, unavoidable, or inevitable.  *See, e.g.*, *Everett v. TK-Taito*, L.L.C., 178 S.W.3d 844, 855 (Tex. App. 2005).[19]  To put the risk of manifestation of defect in context, NHTSA has estimated that more than 35 million vehicles worldwide may be affected by the Takata recalls.  *See* http://www.safercar.gov/rs/takata/index.html (last visited July 17, 2015).  Takata is aware of 75 airbags deploying improperly in the United States, representing only 0.0002% (2 in a million) of Class Vehicles.  Plaintiffs do not attempt to plead either actual or imminent manifestation of defect.

**B.     There is no contractual privity between Plaintiffs and Takata as required under Florida, Michigan, North Carolina, and Texas law (Counts 5, 48, 73, 86 & 98).**

Rather than claiming a direct nexus between themselves and Takata, Plaintiffs offer only the legal conclusion that *all Defendants* "impliedly warranted to Plaintiffs . . . that the Class Vehicles and/or Defective Airbags installed in them were 'merchantable . . . .'"  *See, e.g.*, Compl. ¶ 1130; *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) ("Rule 9(b) does

---

[18] California (*Khan v. Shiley Inc.*, 217 Cal. App. 3d 848, 857 (1990)); Louisiana (*In re Air Bag Products Liab. Litig.*, 7 F. Supp. 2d 792, 806 (E.D. La. 1998)); Minnesota (*O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009)); Missouri (*Briehl,* 172 F.3d at 628); Nevada (*Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, No. 11-civ-0757, 2012 WL 5198502, at *2 (D. Nev. Oct. 19, 2012)); New Jersey (*Durso v. Samsung Electonics Am., Inc.*, No. 12-CV-5352, 2014 WL 4237590, at *11 (D.N.J. Aug. 26, 2014)); and North Carolina (*Bussian*, 411 F. Supp. 2d at 623–24).

[19] For the remaining states, Plaintiffs' conclusory pleadings of injury still are insufficient.  *See Richards v. Georg Boat and Motors, Inc.*, 384 N.E.2d 1084, 1090 (Ind. App. 1979), *abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005)); *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 783 n.5 (R.I. 1988); *Seaside Resorts, Inc. v. Club Car, Inc.*, 416 S.E.2d 655, 661–62 (S.C. Ct. App. 1992); *but see Baker v. Castle & Cooke Homes Hawaii, Inc.*, No. 11-civ-00616, 2012 WL 1454967, at *15 (D. Haw. Apr. 25, 2012); *Donovan v. Philip Morris USA, Inc.*, No. 06-civ-12234, 2014 WL 7009086, at *7 (D. Mass. Dec. 12, 2014).

not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant."). These non-factual, argumentative conclusions are legally insufficient to make out a plausible implied warranty claim against Takata, which is neither a vehicle manufacturer or dealership. Simply put, "there is no privity between the original seller"—here, Takata, as seller of airbag modules to various vehicle manufacturers—and a subsequent purchaser who is not a party to that original sale. *All W. Elecs, Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th, 717, 725 (1998).

Michigan law (Count 73) does not permit claims for "purely economic damages from a remote manufacturer under a breach of an implied warranty claim where there is no privity of contract with a remote manufacturer and the consumer Plaintiff is seeking solely economic damages." *Harden v. Ford Motor Co.*, 408 F. Supp. 2d 315, 322 (E.D. Mich. 2005). Florida (Count 48) and North Carolina (Count 86) also require contractual privity in actions seeking recovery for economic loss caused by breach of the implied warranty of merchantability. *See Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 525 S.E.2d 441, 446 (N.C. 2000); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321 (S.D. Fla. 2009) (citing *Mesa v. BMW of N. Am.*, 904 So.2d 450, 458 (Fla. 3d DCA 2005)). Similarly, Texas law (Count 98) recognizes that when "plaintiffs, as purchasers, bargain[ ] for a finished product, rather than all of the 'myriad components that make up' the product and [when] they had no expectation that the component supplier would resolve any problems with the product," a parts supplier cannot be liable for breach of implied warranty. *See In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. at 1533 (citing *Hininger v. Case Corp.*, 23F.3d 124, 128 (5th Cir. 1984)).

**C.     Plaintiffs' California warranty claims should be dismissed because Plaintiffs cannot allege manifestation of defect within one year of purchase (Count 54).**

California's Song-Beverly Act (Cal. Civ. Code §§ 1790–1795.3) (Count 54) requires that symptoms of a defect manifest within one year of consumer purchase of the goods.  "[T]he duration of the implied warranty of merchantability . . . shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . *but in no event* shall such implied warranty have a duration of less than 60 days nor *more than one year* following the sale of new consumer goods to a retail buyer."  *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 970 (C.D. Cal. Sept. 9, 2014) (citing Cal. Civ. Code § 1791.1(c)) (emphasis added).  A Song-Beverly claim must allege "facts to show that [a] vehicle was unmerchantable within the implied warranty period . . . [T]here should at least be allegations that *symptoms of the defect manifested* during the warranty period."  *Id.* at 972 (emphasis added).  By contrast, Plaintiffs do not allege that a single one of the Class Vehicles manifested any defects at all, much less within one year of purchase.  *See, e.g.*, Compl. ¶ 80 (vehicle purchased in 2005); ¶ 82 (vehicle purchased in 2008); ¶ 88 (vehicle purchased in 2002).

**D.     Plaintiffs' claims are barred by the statute of limitations of several states (Counts 66, 76, 78, 80, 81, 86, 92, 103).**

Several other states strictly apply a four year statute of limitations to implied warranty claims, disallowing any sort of discovery rule.  Ind. Code § 26-1-2-725; *Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146, 1154 (N.D. Ind. 1983).[20]  Implied warranty claims brought by Plaintiffs

---

[20] Minn. Stat. Ann. § 336.2-725; *Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 789 (8th Cir. 2009) (Minnesota law); Mo. Ann. Stat. § 400.2-725; *Gus v. Patton*, 790 S.W.2d 936, 940 (Mo. App. 1990); Nev. Rev. Stat. § 104.2725; *Crabb v. Harmon Enterprises, Inc.*, No. 60634, 2014 WL 549834, at *1 (Nev. Feb. 10, 2014); N.J. Stat. § 12A:2-725; *Foodtown v. Sigma Mktg. Sys., Inc.*, 518 F. Supp. 485, 487 (D.N.J. 1980); N.C. Gen. Stat. § 25-2-725; *Hudson v. Game World, Inc.*, 126 N.C. App. 139, 143 (1997); R.I. Gen. Laws § 6A-2-725; *Gail Frances, Inc. v.*

from those states who purchased their Class Vehicles more than four years before filing suit are barred by the statute of limitations.[21]

## V.     The Magnuson-Moss claim Against Takata Should Be Dismissed Because Takata Is Not In Contractual Privity With Plaintiffs And The Claim Otherwise Fails Under State Warranty Laws (Count 3)

Dismissal of the implied warranty claims against Takata should also result in dismissal of the Magnuson-Moss claim. *See, e.g.*, *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 (11th Cir. 2006) (unpublished).  "Importantly, courts have uniformly held that Magnuson-Moss does nothing to alter or modify state law privity requirements.  The question of whether privity is required thus hinges entirely on applicable state law."  *Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810 (11th Cir. 2005) (unpublished).[22]

---

*Alaska Diesel Elec., Inc*, 62 F. Supp. 2d 511, 517; W. Va. Code § 46-2-725; *Basham v. Gen. Shale*, 377 S.E.2d 830, 835 (W. Va. 1988).

[21] Claims brought by Missouri sub-class representatives Amber Hodgson (Compl. ¶ 110; 2004 purchase), Russell Holland (*id.* ¶ 111; 2007 purchase), and Jason Moehlman (*id.* ¶ 134; 2007 purchase); Nevada sub-class representatives Kostan Lathouris (*id.* ¶ 123; 2006 purchase) and Charles and Dana Talamantes (*id.* ¶ 168; 2009 purchase); New Jersey sub-class representatives Doreen Dembeck (*id.* ¶ 97; 2005 purchase) and Helen Klemer (*id.* ¶ 118; 2004 purchase); North Carolina sub-class representatives Marjorie Michelle Avery (*id.* ¶ 80; 2005 purchase) and John Meiser (*id.* ¶ 133; 2009 purchase); Rhode Island sub-class representatives Mary Hasley (*id.* ¶ 108; 2002 purchase) and Pamela A. Wilsey (*id.* ¶ 182; 2010 purchase); and West Virginia sub-class representative Jonathan Knight (*id.* ¶ 120; 2009 purchase).  Darla Spiess, a resident of Minnesota, does not allege when she purchased her vehicle.  *Id.* ¶ 166.

[22] Plaintiffs bring a Magnuson-Moss claim on behalf of members of the Nationwide Consumer Class who are residents of 36 states and the District of Columbia.  Compl. ¶ 444.  However, if the Magnuson-Moss claim is not certified as a nationwide class, Plaintiffs have requested certification of implied warranty of merchantability claims for only 17 state subclasses.  *See, e.g.*, Compl. ¶ 1031.  Accordingly, Takata addresses the state implied warranty laws of only the 17 subclass states.  *See supra* Part IV.

**VI.     Plaintiffs Have Not Stated A Claim Against Takata For Fraudulent Concealment Or Misrepresentation (Counts 4 & 104)**

**A.     There is no federal common law of fraudulent concealment.**

Plaintiffs' fraudulent concealment claim (Count 4) is brought under the "common law" of fraudulent concealment (Compl. ¶ 463), and the Recycler Plaintiffs make no allegations about what law applies to the Recycler fraud claim (Count 104; Compl. ¶¶ 1900–10).  These pleadings fail to give Takata notice of the state law or laws under which the claim is asserted.  *See In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 644 (S.D.N.Y. 2008) (citing *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1270 (S.D.N.Y. 1991)).  "That alone is reason to dismiss these claims."  *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 550 n.15 (E.D. Pa. 2014) ("[F]ail[ure] to identify under which state's laws the plaintiffs assert their claims" is grounds for dismissal).  Fraudulent concealment law varies in material ways by state. *See generally* Exhibit B (Survey of State Law on Fraudulent Concealment).

**B.     Takata had no duty to communicate with Plaintiffs.**

In order for suppression or omission of information to constitute fraudulent concealment, there must be a "legal or equitable duty to disclose to plaintiff."  *Beshada v. Millard Realty*, No. 244635, 2004 WL 60321, at *5 (Mich. App. 2004); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 335 (Bankr. S.D. Fla. 2013).  Courts recognize that such a duty arises only where there is a cognizable relationship between plaintiff and defendant.  *See, e.g.*, *Miller v. Wells Fargo Bank, N.A.*, No. 288259, 2010 WL 935645, at *2 (Mich. App. 2010).  For example, under Michigan law, "an equitable duty of disclosure generally arises only upon an expression of concern or direct inquiry by a purchaser regarding the particular issue in question."  *First Presbyterian Church of Ypsilanti v. H.A. Howell Pipe Organs, Inc.*, No. 07-civ-13132, 2010 WL 419972, at *3 (E.D. Mich. Feb. 1, 2010).  Plaintiffs and Takata did not enter into any transaction

or have any special or confidential relationship. In the absence of any "direct relationship" between Plaintiffs and Takata, there are no circumstances giving rise to an affirmative duty on Takata to disclose information to Plaintiffs.[23]

### C. Plaintiffs have not alleged injury caused by reliance on any concealment or misrepresentation.

Plaintiffs do not factually allege an injury caused by any concealment, but only by the defect itself. *See, e.g.*, Compl. ¶ 133 (the value of the vehicle had "been diminished as a result of the Inflator Defect"). That does not establish the required "causal link between the inequitable conduct of a defendant and the resulting harm." *Emerick v. Saginaw Twp.*, 304 N.W.2d 536, 538 (Mich. App. 1981); *Byrnes v. Small*, No. 14-civ-1726, 2015 WL 1243219, at *7 (M.D. Fla. Mar. 18, 2015). A claim of fraudulent concealment or misrepresentation requires that Plaintiffs establish "reliance on the inadequate or unforthcoming representation." *Elliott v. Therrien*, No. 288235, 2010 WL 293071, at* 6 (Mich. Ct. App. Jan. 26, 2010); *see also In re Lichtman*, 388 B.R. 396, 410 (Bankr. M.D. Fla. 2008); *see* Exhibit B (Survey of State Law on Fraudulent Concealment).

While every single Plaintiff offers the same legal conclusion that had they been aware of the alleged defect they would not have "acted as they did" (*e.g.*, Compl. ¶ 471), Plaintiffs do not allege how, when or under what circumstances they relied on *Takata's* concealment. *Id.* ¶¶ 76–193; *see Lumber Vill., Inc. v. Siegler*, 355 N.W. 2d 654, 660 (Mich. App. 1984); *Ferlanti v. Liggett Grp., Inc.*, 929 So. 2d 1172, 1174 (Fla. 4th DCA 2006). And Recycler Plaintiffs do not even allege what specific concealments or misrepresentations were made by Takata, as opposed to the Vehicle Manufacturer Defendants. Compl. ¶ 1901 ("Defendants made material omissions

---

[23] *See*, *e.g.*, *McEldowney v. Air Prods. & Chems., Inc.*, No. 273572, 2007 WL 1576390, at *6 (Mich. App. May 31, 2007); *see* Exhibit B (Survey of State Law on Fraudulent Concealment).

and affirmative misrepresentations regarding the Class Vehicles and the Defective Airbags contained therein.").  Such vague pleadings do not satisfy Rule 9(b).  *See, e.g.*, *Kaufman v. Pfizer Pharma., Inc.*, No. 02-civ-22682, 2010 WL 943, at *7 (S.D. Fla. Nov. 23, 2010) ("When a fraud claim involves multiple defending parties, the claimant must make specific and separate allegations against each defendant.").  In addition, the absence of specific allegations of concealments or misrepresentations relied upon by each Plaintiff fails to satisfy Rule 9(b).  *See, e.g.*, *Byrnes*, 60 F. Supp. 3d at 1289 (dismissing concealment claims based only on "vague and conclusory" allegations of "fraudulent[ ] conceal[ment] and misrepresent[ation]" that "fail[ed] to identify with particularity any misrepresentations and/or concealments that were actually relied upon").  Exhibit B (Survey of State Law on Fraudulent Concealment).

### D.   The economic loss doctrine bars any tort recover under Florida, Indiana, Michigan, Missouri, North Carolina, Pennsylvania, West Virginia law.

Finally, because Plaintiffs' damages theory relies solely on the unrealized diminution of value of their vehicles (Compl. ¶¶ 474, 1909), their fraudulent concealment claims implicate the economic loss doctrine.  *See generally* discussion *supra* at 15–17.  The economic loss rule is a "broad bar to tort claims for damage solely to the product itself."  *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1337 (S.D. Fla. 2013); *see also Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 906 (8th Cir. 2013) (Missouri law) ("[T]he economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations."); *Neilbarger v. Universal Coop. Inc.*, 486 N.W.2d 612, 615 (Mich. 1992).

Courts employ the economic loss rule in the context of claims for fraudulent concealment like those here because "to hold otherwise would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or

damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule." *Aprilgliano*, 979 F. Supp. 2d at 1338 (quoting *Burns v. Winnebago Indus. Inc.*, No. 13-civ-1427, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013)).[24]

## VII.  Plaintiffs Have Not Alleged The Elements Of State Law Unfair Competition Or Deceptive Trade Practices Against Takata

### A.  Each state statute requires a consumer transaction or consumer-directed conduct by Takata (Counts 7, 47, 49–53, 56, 58–61, 63–65, 67, 68, 70, 72, 74–75, 77, 79, 82, 83–85, 87–89, 91, 93–94, 96–97, 100–02 & 105–06).

The indirect relationships between Takata and Consumer Plaintiffs (and even more remotely the Recycler Plaintiffs) are also fatal to Plaintiffs' claims under various state unfair competition and deceptive trade practices statutes.  Plaintiffs do not allege deceptive conduct specifically directed *at them* by *Takata*.  For example, to bring a claim under the New York Consumer Protection from Deceptive Acts and Practices Act, "a plaintiff must demonstrate that . . . the defendant's deceptive acts were *directed at consumers*."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (emphasis added); *see also, e.g.*, *Ganim v. Smith and Wesson Corp.*, 780 A.2d 98, 119–20 (Conn. 2001) (standing requires a "colorable claim of a direct injury to the plaintiff"); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147–50 (Colo. 2003); *Sheet Metal Workers Local 441 v. Glaxosmithkline, PLC*, 737 F. Supp. 2d 380, 411, 413, 417–18 (E.D. Pa. 2010) (Michigan, New York, and Arizona law).

---

[24] *See, e.g.*, *Murphy v. The Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 608 (E.D. Mich. 2010); *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 909 (8th Cir. 2013) (Missouri law); *Moore v. Coachmen Indus., Inc.*, 499 S.E.2d 772, 779–80 (N.C. App. 1998); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681–82 (3d. Cir. 2002) (Pennsylvania law); *cf. Basham v. Gen. Shale*, 377 S.E.2d 830, 834 (W. Va. 1988); *Reed v. Cent. Soya Co.*, 621 N.E.2d 1069, 1075 (Ind. 1993), *modified on reh'g*, 644 N.E.2d 84 (Ind. 1994); *see* Exhibit A (Survey of State Law on the Economic Loss Doctrine).

Plaintiffs' purchases of the Class Vehicles do not convert them into "consumers" of Takata airbags. *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 399 n.101 (S.D.N.Y. 2005); *In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. 143, 165 (E.D. Pa. 2009) (where indirect purchaser plaintiffs claimed that the defendants "originally deceived the FDA [and] direct purchasers," plaintiffs were held to be "too remote from the allegedly deceptive acts to state a claim for relief under New York law"); *Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 552 (E.D. Pa. 2007).

Recycler Plaintiffs, which consist of three Florida businesses which are alleged to have assigned their claims to a trade organization, assert a claim for violation of state deceptive trade practice statutes (Count 105) under the laws of 28 separate states (Compl. ¶ 1912) based on the non-specific allegation that "Automotive Recyclers" "purchased [Class Vehicles] in [those] states . . . ." *Id.* ¶ 1914. Plaintiffs proffer no details whatsoever about which businesses purchased what types of vehicles, much less how many, for how much, when, where, and from whom.

**B.      Missouri and Louisiana require privity for unfair competition claims (Counts 68 & 77).**

The consumer protection laws of Missouri and Louisiana require more than "consumer-oriented conduct." Those states specifically require direct relationships between plaintiffs and defendants. *Barnes v. Fed. Home Loan Mortg. Corp.*, No. 12-civ-06062, 2013 WL 1314200, at *7 (W.D. Mo. Mar. 28, 2013); *Nat'l Gypsum Co. v. Ace Wholesale, Inc.*, 738 So. 2d 128, 130 (La. App. 5th Cir. 1999). No such direct contractual relationship with Takata is or can be alleged here.

**C.**   **Plaintiffs' consumer protection claims should be dismissed for other state-specific reasons.**

     **1.**   ***Virginia, Georgia, Alabama, Louisiana, South Carolina, and Tennessee prohibit class actions in unfair or deceptive practices actions (Counts 49, 59, 68, 93–94, 96, 99 & 105).***

Neither Virginia, Georgia, Alabama, Louisiana, South Carolina, nor Tennessee permits class action liability for alleged violations of consumer protection statutes.  Va. Code Ann. § 8.2-314; Ga. Code Ann. § 10-1-399(a); Ala. Code § 8-19-10(f); La. Rev. Stat. § 51:1409(A); *Grazia v. S.C. State Plastering, LLC*, 703 S.E.2d 197, 204 (S.C. 2010); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 310 (Tenn. 2008).  Courts routinely dismiss such state consumer protection claims on this ground.  *See, e.g.*, *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 294 (D.N.J. 2009) (Virginia law); *Gray v. Abbott Labs, Inc.*, No. 10-civ-6377, 2011 WL 3022274, at *8 (N.D. Ill. July 22, 2011) (Georgia law); *Suffern v. Countrywide Home Loans, Inc.*, No. 06-civ-0358, 2006 WL 1999204, at *2 (E.D. La. July 14, 2006).

     **2.**   ***Plaintiffs are not entitled to restitution under Arkansas or California Law (Counts 51–52 & 105).***

Plaintiffs have not alleged any loss of Plaintiffs' money or property to *Takata*, precluding any monetary remedy available under Arkansas's Deceptive Trade Practice Law or California's Unfair Competition and False Advertising Laws.  *See Yazdianpour v. Safeblood Techs., Inc.*, 779 F.3d 530, 537–38 (8th Cir. 2015) (no recovery under ADTPA for diminution in value of product purchased)*; Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146 (2003) (restitutionary relief, defined as "replac[ing] money or property that defendants took *directly from plaintiff*," such that it can be traced to funds in defendants' possession, is the only monetary UCL remedy) (emphasis added); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 695 (2006) (restitution "is the only available remedy" under the California False Advertising

Law).[25]  Restitution "requires both that money or property have been lost by a plaintiff, on one hand, and that it have been acquired by a defendant, on the other."  *Kwikset Corp.*, 246 P.3d at 895; *see generally* William L. Stern, *Bus. & Prof. C. § 17200 Practice* Ch. 8-A (The Rutter Group 2015).[26]

      **3.**     ***Several states have no discovery rule tolling the statute of limitations barring certain Plaintiffs' claim (Counts 58, 61, 65, 74, 87, 91, 102).***

      For states[27] that have no discovery rule[28] tolling the statute of limitations for consumer fraud claims, those claims are barred unless brought within one to six years of purchase of Class Vehicles.  State unfair competition claims brought by named Plaintiffs who purchased Class Vehicles outside of the limitations period, therefore, should be dismissed.[29]

---

[25] Count 53 alleges a violation of the California False Advertising Law against Takata, despite the absence of any allegation that advertising by Takata "induce[d] the public to enter into any obligation." Cal. Bus. & Prof. Code §§ 17500.  Because Plaintiffs fail to allege advertising by Takata relied upon by Plaintiffs, this count fails.  *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 887–88 (Cal. 2011).

[26] The Nebraska Deceptive Trade Practices Law (Count 105; Compl. ¶ 1912(q)) and Minnesota Uniform Deceptive Trade Practices Act (Count 75) also do not allow for recovery of damages, only injunctive relief (Neb. Rev. St. § 87-303, and M.S.A. § 325D.45, subd. 1) which will be unavailable here as recalls through NHTSA already are underway.

[27] Indiana and Ohio (Ind. Code § 24-5-0.5-5; Ohio Rev. Code Ann. § 1345.10(C)) (two year statutes of limitations); Connecticut (Conn. Gen.Stat. § 42-110g(f)) (three year statute of limitations); Hawaii, Rhode Island, and West Virginia (Haw. Rev. Stat. § 480-24(a); R.I. Gen. Laws § 6A-2-275; *Kennedy v. Acura*, No. 01-civ-4063, 2002 WL 31331373, at *6 (R.I. Super. Ct. Aug. 28, 2002); W. Va. Code § 46A-5-101(1)) (four year statutes of limitations); Minnesota (Minn. Stat. § 541.05 subd. 1(2)) (six year statute of limitations).

[28] *See, e.g., A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E. 2d 955, 964–65 (Ind. Ct. App. 2000); *Cypher v. Bill Swad Leasing Co.*, 521 N.E.2d 1142, 1144 (Ohio Ct. App. 1987); *Indep. Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 190 (D. Conn. 2007); *Kersh v. Manulife Fin. Corp.*, 792 F. Supp. 2d 1111, 1122 (D. Haw. 2011); *Santanelli v. Remington Arms Co., Inc.*, No. 11-civ-0245, 2011 WL 6003199, at *1–2 (D. R.I. Nov. 30, 2011); *McCoy v. S. Energy Homes, Inc.*, No. 09-civ-1271, 2012 WL 1409533, at *11 (S.D. W. Va. Apr. 23, 2012); *Klehr v. A.O. Smith Corp.*, 875 F. Supp. 1342, 1352–53 (D. Minn. 1995).

[29] This include claims brought by putative Indiana sub-class representatives Charles and Vickie Burd (Compl. ¶ 89; 2007 purchase and 2011 renewal of warranty); Ohio sub-class representatives John Huebner (*id.* ¶ 114; March 2011 and July 2012 purchases), Katherine E.

## VIII.   The Unjust Enrichment Claims Against Takata Should Be Dismissed (Count 6)

### A.   Takata did not directly benefit from Plaintiffs' purchase of the Class Vehicles.

Plaintiffs admit that they purchased their Class Vehicles from dealerships or other automotive sales establishments or individuals, not from any of the Defendants, much less from Takata.  (Compl. ¶¶ 110, 124, 174).  While the Complaint makes non-factual and implausible conclusory allegations that "Takata has received and retained a benefit from the Plaintiffs," [30] Plaintiffs do not allege a *direct* relationship sufficient to state a claim for unjust enrichment.  "A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment."  *Century Senior Servs. v. Consumer Health Benefit Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011) (citations omitted) (emphasis in original); *see also Smith v. Glenmark Generics, Inc.*, No. 315898, 2014 WL 4087968, at *1 (Mich. App. Aug. 19, 2014).  Applying this principle, courts have held that where a corporation sells its products to a distributor or subcontractor, an unjust enrichment claim by consumers fails.  *See Lipov v. La.-Pfc. Corp.*, No. 12-civ-439, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013); *Extraordinary*

---

Shank (*id.* ¶ 163; July 2009 purchases); Connecticut sub-class representative Nicole Peaslee (*id.* ¶ 142; 2004 purchase); Hawaii sub-class representatives Timothy L. Archer (*id.* ¶ 78; 2004 purchase) and David M. Jorgensen (*id.* ¶ 115; 2006 purchase); Rhode Island sub-class representatives Mary Hasley (*id.* ¶ 108; 2002 purchase) and Pamela Wilsey (*id.* ¶ 182; 2010 purchase); and West Virginia sub-class representative Jonathan Knight (*id.* ¶ 120; 2009 purchase).  Finally, Minnesota class representative Darla Spiess does not allege when she purchased her vehicle.  *Id.* ¶ 166.  As a result, Plaintiffs have no class representatives for their unfair competition claims under the state laws of Connecticut, Hawaii, Indiana, Ohio, Rhode Island, and West Virginia.

[30] Plaintiffs bring their unjust enrichment claim under the "common law of unjust enrichment," without identifying any particular state law.  Compl. ¶ 483.  Again, any claim under a non-state specific "common law" should be dismissed for failure to assert a specific applicable state law.  *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-2042, 2013 WL 1431756, at *24 (E.D. Mich. Apr. 9, 2013) (dismissing unjust enrichment count, because "[s]tate law requirements under unjust enrichment law vary widely"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007); s*ee also* discussion *supra* at 23.

*Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009); 11 Fla. Jur.

2d Contracts § 288 (2015) ("Conversely, where a direct benefit has not been conferred, a claim

of unjust enrichment will fail."); *see also* Exhibit C (Survey of State Law on Unjust

Enrichment).[31]

       **B.**      **Plaintiffs entered into express warranty contracts with the Vehicle**
                **Manufacturer Defendants and therefore Plaintiffs' quasi-contractual claim**
                **for unjust enrichment is not available against Takata.**

        Unjust enrichment is a quasi-contract claim and "a contract will be implied only if there

is no express contract covering the same subject matter." *Whitfield v. Pep Boys*, No. 13-civ-

11070, 2014 WL 3900582, at *4 (E.D. Mich. Aug. 11, 2014) (quoting *Belle Isle Grill Corp v.

City of Detroit*, 666 N.W.2d 271 (Mich. App. 2003). Accordingly, "a party may not maintain an

action for unjust enrichment if the damages sought are covered by an express contract." *David v.

Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009).[32] Plaintiffs' unjust

enrichment theory is not cognizable where, as here, express agreements exist between the parties

at all relevant levels—*i.e.*, between Takata and the Vehicle Manufacturer Defendants, the

Vehicle Manufacturer Defendants and their dealerships/agents, and between the dealerships and

Vehicle Manufacturers and Plaintiffs.[33]

---

[31] *Cf. Dost v. N.W. Tr. Servs. Inc.*, No. 11-civ-0270, 2011 WL 6794028, at *10 (D. Ore. Dec. 21, 2011); *Veolia Es Special Servs., Inc.*, No. 07-civ-0153, 2007 WL 4255280, at *9 (S.D. W. Va. Nov. 30, 2007); *but see Muehlbauer v. Gen. Motors Corp.*, 431 F.Supp. 2d 847, 852 (N.D. Ill. 2006); *Keithy v. Intelius, Inc.*, 764 F. Supp. 2d 1257, 1271 (W.D. Wash. 2011).

[32] *See, e.g.*, *Brooks v. Valley Nat'l Bank*, 548 P.2d 116, 116 (Ariz. 1976); *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 567 (Ill. App. 2004). All relevant states preclude unjust enrichment when there is a contract between the parties. *See* Exhibit C (Survey of State Law on Unjust Enrichment).

[33] *See* Compl. ¶¶ 36–37 (alleging that Takata Corporation and TK Holdings "sell" and "distribute" airbags); *id.* ¶¶ 41, 44, 46, 49, 52, 55, 59, 63 (alleging that the Vehicle Manufacturer Defendants sold vehicles containing Takata airbags); *id.* ¶¶ 68, 70, 74, 76–79, 81–83,85–86, 88, 90, 92–93, 95–101, 103–04, 107–09, 111–13, 115–16, 118–19, 122–23, 125, 127–30, 132, 134,

The existence of warranty agreements with the Vehicle Manufacturers precludes unjust enrichment claims against Takata.  *See, e.g.*, *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-civ-61686, 2013 WL 6328734, at *8 (S.D. Fla. Dec. 5, 2013)  (unjust enrichment claims dismissed where plaintiff alleged existence of an auto warranty); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014) (same); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 846 (S.D. Ohio 2012); *Wilson v. EverBank, N.A.*, No. 14-civ-22264, 2015 WL 265648, at *9 (S.D. Fla. Jan. 6, 2015); *see generally* Restatement (Third) of Torts § 2(2).  This rule governs even where one defendant – like Takata – is not alleged to be a party to the contract.  *See DBI Invs. v. Blavin*, No. 14-civ-1398, 2015 WL 1379680, at *13 (6th Cir. Mar. 26, 2015) (implied contract permitted "only if there is no express contract covering the same subject matter," rule "governs even where the party alleged to be unjustly enriched is a third party to the contract.").

### C.    Plaintiffs have an adequate remedy at law.

Plaintiffs' argumentative and implausible assertion that "Consumer Plaintiffs do not have an adequate remedy at law" (Compl. ¶ 487) is insufficient to satisfy Plaintiffs' burden under the pleading strictures of Rule 12(b)(6).  *See Iqbal*, 556 U.S. at 678 (2009); *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (where unjust enrichment claim predicated on same allegations supporting statutory consumer protection claims, an adequate legal remedy exists); *Pacheco v. Boar's Head Provisions Co.*, No. 09-civ-298, 2010 WL 1323785, at **4–5 (W.D. Mich. Mar. 30, 2010) (same).[34]

---

136, 138–41, 145, 149, 151, 156, 159 (alleging the existence of certain contractual warranties); *id*. ¶ 455 ("Plaintiffs and each of the other Class members have had sufficient direct dealings with either the Vehicle Manufacturer Defendants or its agents (dealerships) to establish privity of contract.")

[34] *See, e.g.*, *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302 (Minn. 1996) (under Minnesota law, unjust enrichment is an equitable remedy unavailable when an adequate remedy at law exists); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008)

Plaintiffs have brought claims against the Vehicle Manufacturer Defendants and Takata, based on the same alleged facts, under RICO, Magnuson-Moss, common law claims for fraudulent concealment, state claims for breaches of implied warranties, and state claims for breaches of state unfair and deceptive practices laws.  Having alleged such varied and numerous remedies under federal and state statutes and the common law, Plaintiffs cannot argue that they lack an adequate remedy at law.  *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1357 (S.D. Fla. 2012); *Global Crossing Telecomms., Inc. v. Michigan Bell Tele. Co.*, No. 09-civ-14686, 2010 WL 2011502, at *4 (E.D. Mich. May 17, 2010).

### D.    In California and Texas, unjust enrichment is not an independent claim.

Several of the Plaintiffs reside in and/or purchased their vehicles in California and Texas.  *See* Compl. ¶¶ 82, 147, 153, 159, 483.  But "under California law, a cause of action for unjust enrichment is not cognizable."  *In re ConAgra Foods Inc*., 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012); *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1075 (N.D. Cal. 2012) ("Plaintiffs' unjust enrichment claim does not properly state an independent cause of action and must be dismissed.").  Similarly, Texas courts have held that "[u]njust enrichment, itself, is not an independent cause of action . . . ."  *Davis v. OneWest Bank, N.A.*, No. 14-civ-00264, 2015 WL 1623541, at *1 (Tex. App. Apr. 9, 2015); *Ingram v. Beneficial Fin., Inc.*, No. 13-civ-4037, 2015 WL 1443110, at *13 (N.D. Tex. Mar. 30, 2015).

---

(recognizing same principle under New York law).  With the exceptions of Oregon, Rhode Island, and West Virginia, in all relevant states an adequate legal remedy precludes claims for unjust enrichment.  *See* Exhibit C (Survey of State Law on Unjust Enrichment).

**CONCLUSION**

Plaintiffs stretch their liability theories against Takata past the breaking point with their 30 million-plus class of vehicle owners with no personal injury or concrete actualized economic injury.  Takata's communications and contracts were with NHTSA and the Vehicle Manufacturer Defendants, not with Plaintiffs.  The lack of concrete injury to these Plaintiffs proximately caused by Takata makes the Complaint as to Takata legally deficient.  At the same time, the economic loss doctrine prohibits Plaintiffs' recovery for many of the unactualized economic losses related to diminution of value of their vehicles.  Finally, the Complaint's unfair competition law and unjust enrichment counts fail for state-specific reasons as well as the indirect relationship between Takata and Plaintiffs.  For all the reasons stated above, Takata's motion to dismiss should be granted.

Dated: July 17, 2015                          Respectfully submitted,


**CARLTON FIELDS JORDEN BURT, P.A.**      **DECHERT LLP**

By: /s/ Stephen J. Krigbaum                    By: /s/ David Bernick
Stephen J. Krigbaum (Fla. Bar No. 978019)      David Bernick (admitted *pro hac vice*)
(skrigbaum@cfjblaw.com)                        (david.bernick@dechert.com)


CityPlace Tower – Suite 1200                   1095 Avenue of the Americas
525 Okeechobee Boulevard                       New York, New York 10036
West Palm Beach, FL 33401                      Tel: (212) 698-3500
Tel: (561) 659-7070                            Fax: (212) 698-3599
Fax: (561) 659-7368

                                               Hope S. Freiwald (admitted *pro hac vice*)
                                               (hope.freiwald@dechert.com)


                                               Benjamin R. Barnett (admitted *pro hac vice*)
                                               (ben.barnett@dechert.com)

                                               Cira Centre
                                               2929 Arch St.
                                               Philadelphia, PA 19104
                                               Tel: (215) 994-4000
                                               Fax: (215) 994-2222


*Counsel for Defendants Takata Corporation and TK Holdings Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.


/s/ Stephen J. Krigbaum
Stephen J. Krigbaum