UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL No. 2599
Master File No. 15-MD 2599-FAM
(S.D. Fla. Case No. 1:14-cv-24009-FAM)

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION<br><br>This Document Relates to Economic Damages Track Cases | |
| PAMELA KOEHLER, et al., individually and on behalf of All others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>TAKATA CORPORATION, TK HOLDINGS, INC., HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR CO., INC., BAYERISCHE MOTOREN WERKE AG, BMW OF NORTH AMERICA, LLC, BMW MANUFACTURING CO., LLC, FORD MOTOR COMPANY, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., AND TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., MAZDA MOTOR CORPORATION, MAZDA MOTOR OF AMERICA, INC., MITSUBISHI MOTORS CORP., MITSUBISHI MOTORS NORTH AMERICA, INC. NISSAN MOTOR CO., LTD., NISSAN NORTH AMERICA, INC., FUJI HEAVY INDUSTRIES, LTD., SUBARU OF AMERICA, INC.<br><br>        Defendants. | |

**BMW OF NORTH AMERICA, LLC'S AND BMW MANUFACTURING COMPANY, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

TABLE OF CONTENTS

I.     Introduction ........................................................................................................1

II.    Relevant Factual Background Related to BMW NA. ........................................1

       A.    Plaintiffs Who Assert Claims Against BMW NA. ................................2

       B.    Nationwide and Single State Sub-Class Claims. ..................................3

       C.    Allegations Regarding BMW NA's "Knowledge" of the Defect. ...........4

       D.    Takata's NHTSA Notices Specific to BMW Vehicles. .........................5

III.   Standard on Motion to Dismiss .........................................................................6

IV.    Applicable Choice-of-Law and Standing Principles Preclude Plaintiffs' Efforts to
       Extend New Jersey Law Nationwide. ................................................................6

       A.    New Jersey Law Cannot Extend Nationwide Under the Originating
             Jurisdictions' Choice-of-Law Rules. ....................................................6

             1.    Initial Jurisdiction: Alabama (Richardson). ...............................8

             2.    Initial Jurisdiction: California (Dougherty, Mulroy). ................8

             3.    Initial Jurisdiction: Florida (Day, Dewan, Lee, Schmidt,
                   Thompson). ....................................................................................9

             4.    Initial Jurisdiction: Illinois (Zielinski). ....................................10

             5.    Initial Jurisdiction: Michigan (Morris, Veser). .........................11

             6.    Initial Jurisdiction: New York (Kazos, Pham). ........................11

             7.    Initial Jurisdiction: Ohio (Sayler). ...........................................12

       B.    Plaintiffs Lack Article III and Statutory Standing to Assert Their
             Nationwide Claims Under New Jersey Law. ........................................12

       C.    The Commerce and Due Process Clauses Bar Plaintiffs' Efforts To Extend
             New Jersey Law Nationwide. ..............................................................14

V.     Plaintiffs' Statutory Consumer-Protection and Common-Law Fraud Claims Suffer from Common Dispositive Defects. ..................................................................14

       A.     Plaintiffs Fail to Plausibly Demonstrate That BMW NA Had Knowledge of the Alleged Defect at the Time of Sale, Which Is Fatal to their NJ Common-Law Fraud Claim (Count 16)and Their AL (Count 49), CA (Counts 51-53), CO (Count 56), IL (Counts 63, 64), NJ (Count 19), PA (Count 89), and VA (Count 99) Statutory Consumer-Protection Claims. .............15

              1.     Plaintiffs' Generic Allegations of Knowledge Are Not Enough. ..............17

              2.     Isolated Customer Complaints to NHTSA or Other Third Parties Such as Takata Do Not Show BMW NA Had Knowledge of a Defect. ........................................................................................................18

              3.     BMW NA's Alleged Knowledge of Takata's Choice of Propellant Is Not Knowledge of a Defect. ................................................................19

       B.     The New Jersey Consumer Fraud Act Claim (Count 17) Is Deficient. ................19

       C.     Plaintiffs' FDUTPA Claim (Count 47) is Deficient. .............................................21

              1.     Lack of Defect Manifestation Bars FDUTPA Claims. .............................21

              2.     Plaintiff Veser's FDUTPA Claim (Count 47) Is Time-Barred. ................21

       D.     The Pennsylvania Consumer-Protection Claim (Count 89) Fails Because There Is No Plaintiff to Represent the "Pennsylvania Sub-Class." ......................21

       E.     The Virginia Consumer-Protection Act Claim (Count 99) Fails for Multiple Reasons. ................................................................................................22

       F.     The Alabama Deceptive Trade Practices Act Claim (Count 49) Fails for Multiple Reasons. ................................................................................................22

       G.     The California False Advertising Law Claim (Count 53) Fails Because Plaintiffs Do Not Identify Any Statement That Was False When Made. .............23

VI.    The Breach of Implied Warranty Claims Fail for a Host of Reasons. ...............................24

       A.     The Florida Implied-Warranty Claim (Count 48) Is Time-Barred and Fails Due to Lack of Privity. ..........................................................................................24

              1.     The Florida Implied-Warranty Claim Is Time-Barred. .............................24

              2.     Plaintiffs Are Not in Privity with BMW NA. .............................................25

       B.     The Pennsylvania Implied-Warranty Claim (Count 90) Fails for Lack of a Class Representative. ..........................................................................................26

C.    The California Implied-Warranty Claim (Count 54) Fails Because
      Plaintiffs Do Not Allege a Song-Beverly Act Violation During the
      Applicable Implied-Warranty Period....................................................................27

D.    The CO (Count 57), NJ (Count 17), and VA (Count 100) Implied-
      Warranty Claims Fail Because the Vehicles Were Merchantable During
      the Contractually Limited Implied-Warranty Period.............................................28

VII.    Plaintiffs' Failure to Plead a Viable State-Law Warranty Claim Compels
        Dismissal of Their Magnusson-Moss Claim (Count 3) ...................................................29

VIII.   The California Negligent-Failure-to-Recall Claim (Count 55) Is Barred by the
        Economic-Loss Rule..........................................................................................................29

IX.     The New Jersey Unjust-Enrichment Claim (Count 18) Is Not Viable. ...........................30

X.      NHTSA's Primary Jurisdiction and Prudential Mootness Require That the Case be
        Stayed or, at a Minimum, Plaintiffs' Claim for Recall-Related Injunctive Relief
        Be Dismissed. ...................................................................................................................32

XI.     The Auto Recyclers' Sundry Claims Should Be Dismissed..............................................32

XII.    The Claims Against BMW Manufacturing Company, LLC Should Be Dismissed. .........32

XIII.   Conclusion ........................................................................................................................32

Defendant BMW of North America, LLC ("BMW NA") moves to dismiss Counts 3, 16-19, 47-49, 51-57, 63-64, 89-90, 99-100, 105-106 of Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this motion, BMW NA submits this memorandum of law. [1]

## I.      INTRODUCTION

BMW NA is one of several automobile companies that has been hauled into court because Takata Corporation ("Takata") produced airbags with an alleged "inflator defect." The BMW-specific allegations in the SAC show that BMW NA was in the dark until very recently about the defect that Takata allegedly has known about since the early 2000s. Plaintiffs confirm BMW NA's lack of knowledge through their conspiracy claims against Takata, which detail an alleged elaborate cover-up intended to conceal the defect in millions of airbags. Yet plaintiffs press claims against BMW NA that are all deficient.

Even plaintiffs' factual allegations demonstrate that BMW NA's response to news of the inflator defect has been nothing but commendable. BMW NA has proactively recalled affected vehicles, fully cooperated with the National Highway Traffic and Safety Administration's ("NHTSA") unprecedented investigation, and offered to provide free loaner vehicles to customers until the recall fix is completed. But, despite this responsible corporate behavior, plaintiffs assert that BMW NA violated various consumer-protection laws, committed fraud, and breached implied warranties. As set forth below, plaintiffs' claims in the SAC are (1) deficient for a host of reasons, (2) time-barred, or (3) more appropriately resolved through NHTSA's exercise of its primary jurisdiction in its defect investigation. BMW NA's motion should be granted.

## II.      RELEVANT FACTUAL BACKGROUND RELATED TO BMW NA.

Although the SAC spans 400-plus pages, the allegations specific to BMW NA are sparse. Takata manufactured the airbags at issue and sold them to BMW and other automobile companies (together "OEMs"). E.g., Dkt. 579, SAC ¶ 44.[2] Plaintiffs claim that these Takata

---

[1] Plaintiffs' leadership confirmed that BMW Manufacturing Co., LLC ("BMW MC"), which is identified only in the caption for the SAC, was included there due to clerical error. Ex. A. BMW MC is not a party in the SAC. Out of an abundance of caution, BMW MC seeks an order from the Court that confirms its non-party status. See Section XII below.

[2] BMW NA does not manufacture BMW brand vehicles; rather, it is the U.S. importer, distributor, marketer, and warrantor of BMW vehicles.

airbags have an alleged "inflator defect" because they use ammonium nitrate as a propellant, which plaintiffs argue is an "unstable compound."  SAC ¶ 4.  The SAC focuses largely on Takata's alleged knowledge of this claimed inflator defect and its efforts to conceal it.  BMW NA addresses the allegations that relate to it and that are pertinent to this motion.

A. **Plaintiffs Who Assert Claims Against BMW NA.**

There are sixteen total plaintiffs asserting claims against BMW NA. One is an association of automotive recyclers, while the remaining fifteen are individuals. Of the fifteen individual plaintiffs, three purchased new BMW vehicles and twelve purchased used vehicles predominantly in private-party or third-party dealership transactions. The plaintiffs are:

| Name of Plaintiff | BMW Model Year & Number | State of Residence & Vehicle Purchase | New Or Used Vehicle | Selling Dealer or Party | Date of Purchase | SAC |
|---|---|---|---|---|---|---|
| Christopher Day | 2002, 330i | Florida | Used | Unknown | Unknown | ¶ 96 |
| Sandeep Dewan | 2003, 330i | Florida | Used | Private owner | 01/2013 | ¶ 98 |
| William Daugherty | 2001, 325ci | California | Used | Unknown | 08/2003 | ¶ 99 |
| David Gunther | 2003, 325i | Florida | Used | Gunther VW | 12/2011 | ¶ 106 |
| Constantine Kazos | 2004, M3 | California | Used | Autos of Palm Beach | 05/2011 | ¶ 116 |
| Richard Lee | 2003, 325i | Pennsylvania / California | New | Crevier BMW | 06/2003 | ¶ 124 |
| Howard Morris | 2004, 330ci | Pennsylvania / Virginia | New | BMW of Arlington | 10/2003 | ¶ 136 |
| Barbara Mulroy | 2006, X-3 | Colorado | Used | Murray Motors | Unknown | ¶ 137 |
| Henry Pham | 2005, M3 | California | Used | Rusnak Volvo | 08/2007 | ¶ 147 |
| Billy Richardson | 2003, 330i | Alabama | Used | Tom Williams BMW | 06/2008 | ¶ 152 |
| Richard Sayler | 2002, M3 | Ohio / California | Used | Son-in-law | 05/2003 | ¶ 157 |

| Robert Schmidt | 2003, 325XI | California | Used | Lakewood Motors | 05/2011 | ¶ 159 |
|---|---|---|---|---|---|---|
| Carla Thompson | 2003, 325ci | Georgia[3] | Used | Hank Aaron BMW | 2006 | ¶ 172 |
| Gerdgene Veser | 2005, 325i | Florida | New | Bert Smith BMW | 02/2005 | ¶ 174 |
| John Zielinski | 2002, 330ci | Illinois | Used | World Class Motors Cars | Unknown | ¶ 187 |
| Auto Recyclers | Various | Florida[4] | Used | Unknown | Unknown | ¶¶ 189-193 |

**B.    Nationwide and Single State Sub-Class Claims.**

The fifteen individual plaintiffs allege a series of nationwide consumer-protection and warranty claims against BMW NA.[5] The Auto Recycler Plaintiffs assert their own nationwide claims.[6] The fifteen individual plaintiffs also bring additional state-law claims on behalf of statewide sub-classes under Alabama,[7] California,[8] Colorado,[9] Florida,[10] Illinois,[11]

---

[3] Thompson, a Georgia plaintiff, does not assert any claims under Georgia law against BMW NA.  SAC ¶¶ 1214, 1239.

[4] The Automotive Recycler "Plaintiffs" is actually just one plaintiff—the Automotive Recyclers Association. SAC ¶ 189. This association "proceeds with this litigation pursuant to an assignment of claims" from three automotive-parts recyclers based in Florida. SAC ¶¶ 190-193. Their claims are addressed in the joint OEM motion to dismiss.

[5] These nationwide claims include a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (Count 3) and four claims under New Jersey law: fraudulent concealment (Count 16); breach of implied warranty of merchantability (Count 17); unjust enrichment (Count 18); and violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. (Count 19).

[6] Auto Recycler Plaintiffs seek to recover for fraudulent misrepresentation/concealment (Count 104); violations of various state deceptive trade practices statutes (Count 105); and violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et. seq. (Count 106).

[7] Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, et seq. ("DTPA") (Count 49).

[8] Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") (Count 51); Cal. Civ. Code § 1750, et seq. ("CLRA") (Count 52); Cal. Bus. & Prof. Code § 17500 et seq. ("FAL") (Count 53); Song-Beverly Consumer Warranty Act for breach of the implied warranty of merchantability Cal. Civ. Code §§ 1791.1 & 1792 (Count 54); and negligent failure to recall (Count 55).

[9] Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, et seq. (Count 56) and breach of implied

Pennsylvania,[12] and Virginia[13] law.  Plaintiffs seek recovery for alleged economic injuries only and "expressly disclaim any recovery in this action for physical injury . . . ." SAC ¶ 408.

### C.    Allegations Regarding BMW NA's "Knowledge" of the Defect.

The overwhelming majority of knowledge allegations in the SAC have nothing to do with BMW NA.  The few that are BMW-specific fall into the three categories: (1) two airbag incidents in BMW vehicles *worldwide*—one in 2003 and one in 2011—that pre-date this lawsuit; (2) BMW NA's alleged awareness that Takata uses ammonium nitrate in its inflators; and (3) airbag incidents in non-BMW vehicles.

***Airbag Deployments in BMW Vehicles***:  Plaintiffs claim that in 2003 a Takata inflator ruptured in a BMW vehicle in Switzerland.  SAC ¶ 11. They allege that BMW and Takata jointly investigated the incident and "inaccurately minimized the incident as an anomaly, without alerting federal safety regulators." *Id.*; see also ¶ 227. And while plaintiffs summarily claim that the results of the tests "indicated that the inflators were defective" (¶ 227), the SAC alleges no facts to explain how testing related to this isolated 2003 "incident" could have alerted BMW NA to a widespread inflator defect.[14] The SAC also summarily references three airbag events in BMW vehicles in December 2011 (¶ 272(d)), October 2014 (SAC ¶ 290), and December 2014 (SAC ¶ 306(b)) that allegedly caused injuries.  The SAC does not provide any details as to these three alleged incidents, or explain how any of these three incidents plausibly demonstrate how BMW NA could have been alerted to a systemic defect.  More fundamentally, these three incidents each occurred *after* the BMW plaintiffs' new-vehicle purchases and all but one of the used-vehicle purchases.[15]

---

warranty of merchantability, Colo. Rev. Stat. § 4-2-314 (Count 57).

[10] Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. ("FDUTPA") (Count 47) and  breach of implied warranty of merchantability, Fla. Stat. § 672.314 et seq. (Count 48).

[11] Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count 63) and Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. (Count 64).

[12] Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. § 201-1 et seq. (Count 89) and breach of implied warranty of merchantability, 13 PA. Stat. Ann. § 2314 (Count 90).

[13] Consumer Protection Act, Va. Code Ann. § 59.1-196, et seq. (Count 99) and breach of implied warranty of merchantability, Va. Code Ann. § 8.2-314 (Count 100).

[14] In fact, the testing showed that this 2003 incident was caused by an overloaded inflator (i.e., propellant amount outside of specifications) due to a singular manufacturing error.

[15] Plaintiff Dewan purchased his used vehicle in January 2013.  Only the 2003 and the December

*Takata's Use of Ammonium Nitrate:*   The SAC repeatedly alleges that Takata used ammonium nitrate in its inflators. Because the OEMs allegedly knew this, plaintiffs claim that this constitutes knowledge of the defect.  See, e.g., SAC ¶¶ 32, 385, 648, 694, 776, 812.

*Alleged Airbag Incidents in Other OEMs' Vehicles:* The remaining knowledge allegations before the public recalls relate to what Takata or other OEMs allegedly knew.[16] Plaintiffs claim that BMW NA knew of an inflator defect by 2008 "when Honda first notified regulators of a problem with Takata airbags." SAC ¶ 32.  Because BMW and other vehicles "also contained Takata airbags," plaintiffs claim that BMW NA knew or should have known of a safety problem with the airbags in BMW vehicles and should have launched its own investigations and notified its customers. *Id.* Plaintiffs provide no facts to support this claim. The SAC also posits that publicly-available NHTSA complaints about inadvertent airbag deployments from as early as September 2005 should have put the OEMs on notice of the defect. SAC ¶ 308. Yet the SAC does not list or quote a single NHTSA complaint that relates to BMW vehicles, much less identify a specific date for any NHTSA complaint.  *Id.*

> **D.**     **Takata's NHTSA Notices Specific to BMW Vehicles.**

In April 2013, Takata told NHTSA for the first time that potentially defective airbags may have been installed in BMW vehicles.  SAC ¶ 278. Yet not even Takata knew in April 2013 "how many inflators were installed as original equipment in vehicles manufactured by companies other than Honda."  *Id.*   "Based on Takata's *new* admissions," the OEMs acted swiftly in recalling vehicles that contain potentially defective Takata airbags. SAC ¶ 279 (emphasis added).   BMW NA worked cooperatively with NHTSA and in November and December 2014 expanded the scope of recalled vehicles.  SAC ¶¶ 294, 297.  At a December 2014 Congressional hearing, BMW NA also pledged to provide free loaner vehicles to consumers.  SAC ¶ 327.  There is no claim that any named BMW plaintiff has requested, let alone been refused, a loaner vehicle.

---

2011 events pre-date Dewan's used-vehicle purchase.

[16] Plaintiffs assert knowledge allegations that relate solely to Takata (e.g., SAC ¶¶ 214-224, 385) or are simply conclusory (e.g., ¶ 656(a)). Plaintiffs' theory appears to be that when a component manufacturer or *another* OEM that uses that component part have reason to believe a defect exists, that alleged knowledge automatically transfers to OEMs of competitive vehicles. E.g., *Id.* ¶ 307.

### III.     STANDARD ON MOTION TO DISMISS.

A court must dismiss a complaint if the alleged facts do not entitle the plaintiff to relief. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-61 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation, alteration, and internal quotation marks omitted).  Nor is a court "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); see also *S. Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n. 10 (11th Cir.1996) ("as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss"). And "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions ... While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Further, all claims sounding in fraud must be pled with specificity under Rule 9(b).  *Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002).

Courts should not allow expensive, burdensome class action discovery to ensue in the absence of a viable cause of action. See *Twombly*, 550 U.S. at 558 (deficiencies in the complaint "should be exposed at the point of minimum expenditure of time and money by the parties and the court" given the prospect of costly discovery); *Grigsby v. Valve Corp.*, 2012 WL 5993755, at *4-6 (W.D. Wash. Nov. 14, 2012) (stating that the *Twombly* pleading standard is particularly demanding in "complex, large-scale" class action litigation).

### IV.     APPLICABLE CHOICE-OF-LAW AND STANDING PRINCIPLES PRECLUDE PLAINTIFFS' EFFORTS TO EXTEND NEW JERSEY LAW NATIONWIDE.

#### A.     New Jersey Law Cannot Extend Nationwide Under the Originating Jurisdictions' Choice-of-Law Rules.

The BMW plaintiffs claim that New Jersey law can be applied nationwide.  It cannot because:

> The Commerce Clause and Due Process Clauses limit the ability of each state to apply its own laws and policies to conduct occurring beyond its borders. *BMW of N. Am. v. Gore*, 517 U.S. 559, 572 … (1996). A state's laws are "presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 … (1918). None of the state statutes invoked by Plaintiffs expressly apply beyond the borders of the states that enacted them. These are fundamental substantive limits on the scope of

state regulatory jurisdiction—limits that the procedural vehicle of a class action cannot justify transgressing. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 … (1985); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir.2002).

*In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003) (finding New Jersey Consumer Fraud Act could not apply where no plaintiff resided in, performed services in, or transacted business in New Jersey). Rather, "in nationwide class actions, choice of law constraints are constitutionally mandated." *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 347 (D.N.J. 1997) (citing *Phillips Petroleum Co.*, 472 U.S. at 821-23).

A federal court exercising diversity jurisdiction in an MDL must apply the choice-of-law rules of the states in which the individual actions were commenced.[17] None of the BMW plaintiffs initially filed in New Jersey. Rather they filed in Alabama, California, Florida, Illinois, Michigan, New York, and Ohio. Those jurisdictions apply three choice-of-law tests to fraud-based claims, including claims for consumer fraud: (1) *lex loci*[18]; (2) the Restatement (Second) of Conflicts of Law's "most significant relationship" test[19]; and (3) a governmental-interests analysis.[20] Applying these choice-of-law rules to the BMW plaintiffs demonstrates that they may not invoke New Jersey law.[21]

---

[17] See, e.g., *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 501 (1987); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("[A] transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed.").

[18] See *Randolph v. Tenn. Valley Auth.*, 792 F. Supp. 1221, 1222 (N.D. Ala. 1992).

[19] See *Trumpet Vine Invs., N.C. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115-16 (11th Cir. 1996) (Florida); *Topp Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1190-91 (S.D. Fla. 2007); *Bagg v. HighBeam Research, Inc.*, 2013 WL 3466846, at *2 (N.D. Ill. July 10, 2013); *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011) (Ohio).

[20] See *Mazza v. Am. Honda Motor Co, Inc*., 666 F.3d 581, 590-91 (9th Cir. 2012) (California); *Scott v. Ford Motor Co.*, 169 Cal. Rptr. 3d 823, 831-32 (Cal. Ct. App. 2014); *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (Michigan); *Stalker v. MBS Direct, LLC*, 2012 WL 6642518 (E.D. Mich. Dec. 20, 2012); *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008).

[21] The BMW plaintiffs seek to pursue claims under New Jersey law on behalf of a nationwide class only. They do not seek to pursue such claims on behalf of a New Jersey sub-class, as there is no BMW plaintiff who claims to have leased or purchased a vehicle in New Jersey and, thus, no one to serve as a New Jersey sub-class representative for claims against BMW NA as required under the proposed class definition. See SAC ¶ 393 (defining sub-classes as "All persons who, prior to the date on which the Class Vehicle was recalled, entered into a lease or bought a Class Vehicle in the state of _____ (e.g., Florida) . . . .").

         1.     *Initial Jurisdiction: Alabama (Richardson).*

Richardson is from Alabama, purchased his vehicle in Alabama, and initially filed his complaint in Alabama.  Consequently, under *lex loci*, his claims are subject to Alabama law. Richardson cannot pursue a claim under the New Jersey Consumer Fraud Act ("NJCFA") or under any other New Jersey law.[22]

         2.     *Initial Jurisdiction: California (Dougherty, Mulroy).*

Dougherty is from California, purchased his vehicle in California, and initially filed his complaint in California.  California applies the governmental-interest analysis.  The Ninth Circuit analyzed this standard in *Mazza* and noted specific conflicts between California's consumer-protection laws and the NJCFA, which the court concluded were "not trivial or wholly without immaterial differences."  666 F.3d at 591.  Similar outcome-determinative variations permeate among unjust-enrichment[23] and implied-warranty laws.[24]  Following this analysis, the Ninth Circuit held that, under California's choice-of-law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."  *Id.* at 594.  As a California resident, Dougherty's consumer-protection claim is governed by California law.  Dougherty cannot pursue an NJCFA claim. Dougherty also cannot pursue unjust-enrichment or implied-warranty claims under New Jersey

---

[22] Under *lex loci*, the court applies the law of the state of injury.  Under the most-significant-relationship test and governmental-interest analysis, the court first determines if there is a conflict between the statutes involved and, if there is, determines which state has the most significant relationship to the events or the greater interest in having its law applied.

[23] See, e.g., *In re Prempro*, 230 F.R.D. 555, 563, 565 (E.D. Ark. 2005); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 215 (D. Minn. 2003); *Lilly v. Ford Motor Co.*, 2002 WL 507126, at *2 (N.D. Ill. Apr. 2, 2002).

[24] See, e.g., *Cole v. GMC*, 484 F.3d 717,  724-30 (5th Cir. 2007) (reversing certification of nationwide class because the differences in the  implied-warranty law across the U.S. defeated predominance); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 737-38, 743 (5th Cir. 1996) (reversing certification of nationwide implied-warranty class); *Chin*, 182 F.R.D. at 460-61 (refusing to certify nationwide state law implied-warranty class because of numerous individual issues); *Powers*, 272 F.R.D. at 430 (same); *Alligood v. Taurus Int'l Mfg.*, 2009 WL 8387645, at *9-11 (S.D. Ga. Mar. 4, 2009) (same); *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 194 F.R.D. 484, 489 (D.N.J. 2000) (declining to certify a nationwide class bringing implied-warranty claims under the laws of the several states because of significant differences with respect to each state's definition of merchantability, whether the remedy was a tort or contract remedy, and whether the state allows waiver of the implied warranty); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 605-06 (S.D.N.Y. 1982).

law.

Mulroy is from Colorado, purchased her vehicle in Colorado, but initially filed her complaint in California, making her claims subject to California's choice-of-law rules.  In *Spera v. Samsung Elecs. Am., Inc.*, the District of New Jersey found that actual conflicts existed between the NJCFA and the Colorado Consumer Protection Act ("CCPA").[25]  And as stated herein, similar conflicts exist among state unjust-enrichment and implied-warranty laws.  Given these actual conflicts, and pursuant to *Mazza*, Mulroy's claims are governed by the laws of her home state, Colorado.

3.      *Initial Jurisdiction: Florida (Day, Dewan, Lee, Schmidt, Thompson).*

Day and Dewan are from Florida, purchased their vehicles in Florida, and initially filed their complaints in Florida.  This Court has found that, under Florida's choice-of-law rules, Florida plaintiffs may not pursue claims under the NJCFA.[26]  Day's and Dewan's consumer-protection claims are subject to Florida law; they cannot pursue NJCFA claims.

Lee is from Pennsylvania and purchased his vehicle in California, but initially filed his complaint in Florida.  Florida's choice-of-law rules also apply to Lee's claims.  And as discussed above, there are actual conflicts between California and New Jersey consumer-protection, unjust-enrichment, and implied-warranty laws.  *Mazza*, 666 F.3d at 591; see notes 23-24, above.  There are also conflicts between the NJCFA and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL").[27]  Regardless of whether Lee's claims are governed by California or Pennsylvania law, they are *not* governed by New Jersey law.  *Hutson*, 837 So.2d

---

[25] 2014 WL 1334256, at *4 (D.N.J. Apr. 2, 2014) (CCPA requires "significant public impact" and scienter (for omission-based claims), prohibits attorneys' fees and treble damages in class actions, and has a three-year limitations period; the NJCFA has no public-impact requirement, does not require scienter, mandates attorneys' fees and treble damages in class actions, and has a six-year limitations period).

[26] *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1365-66 (S.D. Fla. 2007); see also *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1094-95 (Fla. 4th DCA 2003) (affirming trial court's refusal to certify nationwide class under Florida law, noting, "[t]he alleged wrong was committed, and the damage done, at the site of the sale of appellees' products; that is, in the various states where members of the purported class made their purchases.").

[27] See *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 373-74 (D.N.J. 2005) (PUTPCPL requires reliance, NJCFA does not; NJCFA mandates treble damages and attorneys' fees, while those are discretionary under PUTPCPL; finding PUTPCPL applied to claims of Pennsylvania residents against New Jersey defendants where principal New Jersey contact was location of defendants' headquarters); see notes 24-25, above.

1094-95. Lee cannot pursue an NJCFA claim or claims under New Jersey law for unjust enrichment or breach of implied warranty.

Schmidt is from California and purchased his vehicle in California, but also initially filed his complaint in Florida. Because actual conflicts exist between California's consumer-protection laws and the NJCFA (*Mazza*, 666 F.3d at 591), as well as among state implied-warranty and unjust-enrichment laws, Florida's choice-of-law rules mandate that Schmidt's claims are also governed by California law. Schmidt cannot pursue claims under New Jersey law.

Thompson is a Georgia resident who purchased her vehicle in Georgia but initially filed her complaint in Florida. Actual conflicts exist between the Georgia's Fair Business Practices Act and the NJCFA.[28] Under Florida's choice-of-law rules, Thompson's claims are governed by Georgia law (*Hutson*, 837 So.2d 1094-95), and she cannot pursue consumer-protection, unjust-enrichment, and implied-warranty claims under New Jersey law.

4.    *Initial Jurisdiction: Illinois (Zielinski).*

Zielinski is an Illinois resident who purchased his vehicle in Illinois and initially filed his complaint in Illinois. Illinois applies the most-significant relationship analysis to choice-of-law issues. There are actual conflicts between the Illinois Consumer Fraud and Deceptive Trade Practices Act and the NJCFA: "Under the NJCFA, treble damages and a jury trial are available. On the other hand, under Illinois law, there is no provision for treble damages; the ICFDBPA is aimed primarily at compensating for actual damages. Additionally… the Illinois statute does not provide a right to a jury trial." *Warma Witter Kreisler v. Samsung Elecs. Am., Inc.*, 2010 WL 1424014, at *3 (D.N.J. April 8, 2010) (citations omitted). Under Illinois choice-of-law rules, in "consumer fraud cases, 'the injury is decidedly where the consumer is located ... [and not] where the seller maintains its headquarters.'" *Bagg v. HighBeam Research, Inc.*, 2013 WL 3466846, at *2 (N.D. Ill. July 10, 2013) (quoting *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002)). Zielinski is an Illinois resident, and his claims are subject to Illinois law. Zielinski cannot pursue an NJCFA claim. And, because of the actual conflicts in state implied-warranty and unjust-enrichment laws (see notes 23-24, above), Zielinski cannot pursue a nationwide claim

---

[28] See *Knox v. Samsung Elecs. Am., Inc.*, 2009 WL 1810728, at *2 (D.N.J. June 25, 2009) ("Georgia's law, unlike New Jersey's, forbids class actions and requires proof of reliance – significant limitations on the rights of individuals to recover not present in New Jersey law.") (citations omitted).

under New Jersey law.

5.   *Initial Jurisdiction: Michigan (Morris, Veser).*

Morris is a Pennsylvania resident who purchased his vehicle in Virginia, but initially filed his complaint in Michigan.  Veser is a Florida resident who purchased her vehicle in Florida, but initially filed her complaint in Michigan.  Michigan choice-of-law rules favor application of Michigan law, unless a "rational reason" exists not to do so.  *Stalker*, 2012 WL 6642518, at *5. Michigan "has little or no interest in having its laws applied to class action claims asserted against a non-resident company, primarily by non-residents who did not purchase [the product] in Michigan… [R]ather, each potential member's home State has a stronger interest in having its laws apply to its residents."  *Id.* at *6.

Regardless of whether Morris's home state was Pennsylvania or Virginia at the time of his injury, it was *not* New Jersey.  Under Michigan's choice-of-law rules, Morris might pursue claims under the consumer-protection, implied-warranty, and unjust-enrichment laws of Pennsylvania or Virginia, but he cannot pursue  New Jersey law-based claims.[29]  And, as a Florida resident, Veser cannot either.

6.   *Initial Jurisdiction: New York (Kazos, Pham).*

Kazos is a California resident who purchased his vehicle in Florida but initially filed his complaint in New York.  Pham is a California resident who purchased his vehicle in California and filed his initial complaint in New York.[30]  "New York courts generally look to the law of the jurisdiction that has the greatest interest in the litigation, as determined by the facts or contacts which . . . relate to the particular law in conflict.  When [applied to] consumer protection[] laws…, the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered."  *Watts*, 579 F. Supp. 2d at 345 (quotations omitted) (citations omitted).  Kazos and

---

[29] As noted above, actual conflicts exist between the NJCFA and the PUTPCPL. *Heindel*, 381 F. Supp. 2d at 373-74.  Actual conflicts also exist between the NJCFA and the Virginia Consumer Protection Act ("VCPA").  See *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 293-94 (D.N.J. 2009) (finding actual conflict because VCPA prohibits class actions and injunctive relief and provides a statutory minimum penalty of $500; NJCFA permits class actions and injunctive relief and has no statutory penalty).

[30] Neither Plaintiff seeks to pursue a claim under N.Y. General Business Law § 349.  Nor could they: New York's consumer-protection statute applies only to transactions in New York.  *E.g. Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195-96 (NY 2002) (holding that statute only applies to acts occurring in New York and dismissing claims by out-of-state plaintiffs).

Pham suffered their injury in California or Florida, not New Jersey.  They cannot pursue claims under New Jersey law.

7.  *Initial Jurisdiction: Ohio (Sayler).*

Sayler is an Ohio resident who purchased his car from his son-in-law in California and had it shipped to Ohio.  Sayler filed his initial complaint in Ohio.  Under Ohio's choice-of-law rules, "the place of the injury controls in a consumer-protection lawsuit, requiring application of the home-state law of each potential class member." *Pilgrim*, 660 F.3d at 947.  Plaintiff Sayler's claims are governed by Ohio law; he cannot pursue claims under New Jersey law.

**B.    Plaintiffs Lack Article III and Statutory Standing to Assert Their Nationwide Claims Under New Jersey Law.**

No BMW plaintiff purchased a vehicle in New Jersey or sustained any "injury" in New Jersey.  Indeed, each of the alleged misrepresentations and omissions were received by the BMW plaintiffs in their respective home states or the states in which they purchased their vehicles. But none of these states was New Jersey.  The only New Jersey connection here is that "BMW's United States operations are headquartered in New Jersey," which is the lone basis for plaintiffs' claim that New Jersey has the "most significant relationship to the issues and facts relevant to this claim." SAC ¶¶ 616, 630, 636, 642. But, as a virtually unbroken line of cases has held under analogous facts, the BMW plaintiffs do not have standing to invoke the laws of a state in which they suffered no injury.[31]

---

[31] See, e.g., *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2015 WL 274054, at *13-14 (N.D. Cal. Jan. 21, 2015) (N.D. Cal. 2015) (dismissing claims since "the named Plaintiffs do not have standing to assert claims from states in which they do not reside or did not purchase their mobile device" and noting that the court had "reservations of subjecting the [defendants] to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws"); *Ferrari v. Best Buy Co.*, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015) ("Named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.") (citation omitted) *McGuire v. BMW NA*, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) ("[T]his Court agrees that the Plaintiff here lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury . . .  For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiffs multi-state allegations"); *Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014) ("[Plaintiff] suffered an alleged injury exclusively under Ohio law. Therefore, she does not have standing to assert unjust enrichment claims under the law(s) of any other state"); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *4 (N.D. Cal. July 11, 2012) (dismissing all non-Massachusetts state law warranty claims with prejudice for lack of standing where named plaintiff failed to allege she made any relevant purchases outside the state of Massachusetts); *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012) (finding that plaintiff lacked standing to assert claims under the laws

A recent case in this district, *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010), is directly on point. There the court noted, under similar facts, that "[t]he issue of Article III standing must be resolved for each named plaintiff before issues of class certification and representation are contemplated." *Id.*   at 1324. The court quoted binding Eleventh Circuit precedent: "[T]he threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues. . . . Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). *Griffin* further explained that in a class action, each named plaintiff must have standing for herself and not merely assert that the plaintiff will represent a future class member who will have standing. *Id.* at 1483 ("Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue.") (citation omitted). And the standing requirement must be met for *every claim* asserted in a complaint. *Id.*

*In re Checking Account* found that this reasoning controls the issue. "Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state." 694 F. Supp. 2d at 1325. This is "the same rule that applies in every case: each claim must have a named plaintiff with constitutional standing to assert it." *Id.*   The court granted the defendants' motion to dismiss, holding that "all state statutory claims where no named plaintiff resides in the state from which the claim is asserted are hereby dismissed . . . ." *Id.*; see also *Renzi v. Demilec (USA) LLC*, 2013 WL 6410708, at *3 (S.D. Fla. Dec. 9, 2013) (same).

Plaintiffs here similarly lack standing to pursue New Jersey claims. Plaintiffs' claimed injuries (if any) were in their respective home states, or the states in which they purchased their vehicles, during transactions where the purported nondisclosure of the inflator defect occurred. No BMW plaintiff alleges that he or she resides in or purchased a vehicle in New Jersey.  The SAC also lacks facts demonstrating that any BMW plaintiff suffered some other "injury in fact" in New Jersey. Because the alleged injuries occurred in each of their home states, or the states in

---

of states other than Maryland where plaintiff was neither harmed by the product nor purchased the product in any state other than Maryland).

which they purchased their vehicles, the BMW plaintiffs only have standing to pursue claims in those states.

The standing inquiry does not allow plaintiffs to pick any state's laws. For instance, a plaintiff in an individual action would almost *never* seek to sue under New Jersey law if their injury occurred in Maine. The same standing rules apply in class actions.[32] This is why courts find that "[w]here . . . a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (emphasis in original) (dismissing claims to the extent that such claims were based on the laws of a state where no representative has been named).

**C.      The Commerce and Due Process Clauses Bar Plaintiffs' Efforts To Extend New Jersey Law Nationwide.**

As detailed by Honda, Ford, and Mazda in their respective motions to dismiss ("MTD"), the Commerce and Due Process Clauses limit each state's ability to apply its own laws and policies to conduct outside of its borders.  These concerns are implicated by the BMW plaintiffs' efforts to invoke and extend New Jersey law nationwide—none of the BMW plaintiffs purchased their cars in New Jersey, live in New Jersey, or allege any personal connection to the state.  For this reason, BMW NA hereby incorporates by reference the arguments and authority that Honda, Ford, and Mazda cite on this issue in their respective motions to dismiss.  See Honda MTD Sec. III(A); Ford MTD Sec. IV(D); Mazda MTD Sec. B(3).

**V.      PLAINTIFFS' STATUTORY CONSUMER-PROTECTION AND COMMON-LAW FRAUD CLAIMS SUFFER FROM COMMON DISPOSITIVE DEFECTS.**

Plaintiffs assert statutory consumer-protection and common-law fraud claims against BMW NA under the laws of California (Counts 51-53), New Jersey (Counts 16, 19), Florida (Count 47), Alabama (Count 49), Illinois (Counts 63-64), Pennsylvania (Count 86), Colorado (Count 56) and Virginia (Count 99).  These claims are grounded in fraud but lack the specificity that Rule 9(b) requires.  The vast majority of "facts" that ostensibly support these claims are impermissibly grouped into *shotgun* allegations that collectively assert that certain facts were known by the "Vehicle Manufacturer Defendants."  See, e.g., SAC ¶¶ 969, 1015, 1692.  This pleading approach lacks the "who, what, when, where, how" specificity that Rule 9(b) requires.

---

[32] See, e.g., *Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045, at *4 (D.N.J. July 29, 2008) *aff'd*, 374 F. App'x 257 (3d Cir. 2010) ("The standing inquiry does not change in the context of a putative class action. . . . [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.") (citation omitted).

*Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013). It also impermissibly lumps together all automotive defendants in allegations with no distinction among them whatsoever.  See *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

The primary thrust of plaintiffs' claims is that BMW NA failed to disclose the alleged inflator defect to purchasers and lessees of new and used BMW vehicles. But the lack of detailed *BMW-specific* allegations as to *what* BMW NA knew and *when* BMW NA knew it is reason alone for a wholesale dismissal of all plaintiffs' consumer-fraud claims.

As detailed below, the scant knowledge allegations specific to BMW NA do not plausibly show BMW NA knew of a defect at the time of BMW plaintiffs' vehicle purchases.  This significant defect, as well as others, requires plaintiffs' consumer-fraud claims be dismissed.

A.   **Plaintiffs Fail to Plausibly Demonstrate That BMW NA Had Knowledge of the Alleged Defect at the Time of Sale, Which Is Fatal to their NJ Common-Law Fraud Claim (Count 16) and Their AL (Count 49), CA (Counts 51-53), CO (Count 56), IL (Counts 63, 64), NJ (Count 19), PA (Count 89), and VA (Count 99) Statutory Consumer-Protection Claims.**

This is an omissions-based lawsuit.  Plaintiffs claim that BMW NA violated various consumer-protection statutes because it was duty-bound, but failed, to disclose the claimed inflator defect.[33]  SAC ¶¶ 1013-16, 1044-47, 1095-96, 1109-10, 1140, 1169-73, 1291-95, 1313, 1690-93, 1827-30.  But a duty to disclose an omitted fact only arises if the defendant had knowledge of an allegedly concealed fact at the time of the relevant transaction.[34]  The SAC

---

[33] As explained in Section IV,  above, none of the BMW plaintiffs can invoke New Jersey law. But even if they could, their claims are substantively deficient and must be dismissed for the reasons discussed below.

[34] *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (California defendant has no duty to disclose "at the time of sale" that which it does not know under UCL/CLRA); *Sam v. Beard*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996) (ADTPA requires proof of "knowledge of false or deceptive conduct on the part of the wrongdoer"); Col. Rev. Stat. § 6-1-105(1)(u) (making actionable "failure to disclose … information [that] was known at the time of an advertisement or sale ….); *Alban v. BMW NA*, 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010) ("NJCFA does not require manufacturers to disclose things they do not know"); *Coba v. Ford Motor Co.*, 2013 WL 244687, at *10 & n.10 (D.N.J. Jan. 23, 2013) ("Plaintiffs may only base their fraud claims on Ford's knowledge of the [alleged] defect *at the time they purchased their vehicles*") (emphasis added); *Drayton v. Pilgrim's Pride Corp.*, 2004 WL 765123, at *7 (E.D. Pa. March 31, 2004) (UTPCPL requires that manufacturer "disclose a known latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer") (citation omitted); *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 548-49 (Ill. Ct. App. 2006) ("an action for fraudulent concealment [under the Act] logically demands that defendants have prior knowledge of the information that they are alleged

relies on generic "knowledge" allegations that do not plausibly allege knowledge of a defect at the time of the BMW plaintiffs' vehicle purchases.[35]

It is axiomatic that a defendant has no duty to disclose "at the time of sale" that which it does not know. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). For example, plaintiffs in *Wilson* sued Hewlett-Packard ("HP") for failing to disclose an alleged "safety" defect that manifested outside of HP's express-warranty period. The *Wilson* plaintiffs sought to impose a disclosure obligation (1) through conclusory and undated allegations of knowledge (*id.* at 1146), (2) claims that HP allegedly had "access to … aggregate information and data" related to the claimed defect (*id.* at 1147), and (3) "undated customer complaints" (*id.*). The Ninth Circuit reached the commonsense conclusion that "undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect … provide no indication whether the manufacturer was aware of the defect *at the time of sale*." *Id.* (citation omitted). The claim that HP had access to "aggregate information and data" also was not enough because it did not suggest how this information "could have alerted HP to the defect." *Id.* And customer complaints, by themselves, "are insufficient to show that [the manufacturer] had knowledge [of the defect]." *Id.* (citations omitted). California courts have followed *Wilson*'s authoritative guidance and held that generic allegations of knowledge, devoid of factual support showing knowledge *at the time of the relevant transaction*, provide no basis for a failure-to-disclose claim under the UCL or CLRA.[36]

Similar deficiencies and others permeate plaintiffs' generic knowledge allegations against BMW NA. Plaintiffs claim BMW NA knew of the alleged defect based on:

- Summary claims of "exclusive and/or far superior knowledge" (SAC. ¶¶ 602(a), 616);

---

to have suppressed."); *Weiss v. Cassidy Dev. Corp.,* 63 Va. Cir. 76, 78 (Cir. Ct. 2003) (Virginia Consumer Protection Act claim judged by common-law standards for misrepresentations requirements that include knowledge).

[35] This pleading failure also dooms plaintiffs' claim for fraudulent concealment under New Jersey law (Count 16) which requires, *inter alia*, a material misrepresentation or intentional suppression of *a presently existing or past fact*. *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009) (citations omitted). Thus, BMW NA must have known of the alleged inflator defect at the time of the transaction. Plaintiffs fail to plead such knowledge.

[36] See, e.g., *Grodzitsky v. Am. Honda Motor Co.,* 2013 WL 690822, at *2, *6 (C.D. Cal. Feb. 19, 2013) (rejecting "knowledge" and "duty to disclose" allegations premised on claim that Honda knew of a defect based on "pre-release testing data, early consumer complaints to Honda and dealers, testing done in response to complaints, replacement part sales data, aggregate data from Honda dealers, and other internal sources").

- Conclusory allegations of customer complaints made directly to NHTSA, Takata, or other OEMs, and generic allegations of "internal investigations" and "numerous individual letters and communications sent by the consumers" (e.g., ¶¶ 195, 220, 285, 463, 616);

- Generic allegations that Takata had knowledge that should be imputed to BMW NA and other OEMs (e.g., ¶ 616); and

- A single airbag rupture halfway across the world in Switzerland in 2003 in a worldwide BMW automobile population in the millions that upon investigation was deemed to be a anomaly (i.e., manufacturing defect) (¶¶ 11, 227), and just one other incident that pre-dates this suit in 2011 (¶ 272(d)).

These knowledge allegations are virtually indistinguishable from those *Wilson* and other courts across the country have found do not plausibly show knowledge or impose a duty to disclose.

1. *Plaintiffs' Generic Allegations of Knowledge Are Not Enough.*

The SAC is replete with conclusory allegations of knowledge based on "information and belief" that BMW NA "knew" of the claimed inflator defect.[37] This is a per se defective knowledge allegation.[38] Because plaintiffs' claims are grounded in fraud, Rule 9 requires that plaintiffs plead fraud with particularity. And fraud "[a]llegations based on 'information and belief' do not satisfy the particularity requirement of Rule 9(b) unless the complaint *sets forth the facts on which the belief is founded*." See *In re Worlds of Wonder Secs. Litig.*, 694 F. Supp. 1427, 1432-33 (N.D. Cal. 1988). Plaintiffs do not supply these foundational facts.

Plaintiffs' claim that defendants had "exclusive and/or far superior knowledge" of a defect (¶¶ 602(a), 616, 656(a)) also falls flat. See *Wilson*, 668 F.3d at 1146 (claim that HP had access to "aggregate information and data" insufficient because it did not suggest how this information could have alerted HP to the defect). Plaintiffs cannot "establish a duty by pleading, in purely conclusory fashion, that Defendants were in a 'superior position to know the truth

---

[37] See, e.g., SAC ¶ 634 ("On information and belief, BMW had notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by numerous individual letters and communications sent by the consumers before or within a reasonable amount of time after BMW issued the recalls and the allegations of the Inflator Defect became public.").

[38] See *Wilson*, 668 F.3d at 1147 (allegation that defendant knew of defect because it had access to aggregate data "speculative" because it fails to "suggests how any tests or information could have alerted [the defendant] to the defect"); *McQueen v. BMW NA*, 2014 WL 656619, at *5 (D.N.J. Feb. 20, 2014) ("If Rule 8(a), *Iqbal*, and *Twombly* are to have any force whatsoever, a complaint cannot state a [NJCFA] claim that requires the plaintiff plead knowledge by merely alleging that the defendant designed a defective product.").

about the Machines' and 'actively concealed' the defect." *Tietsworth v. Sears Roebuck & Co.*, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009); *Wilson*, 668 F.3d at 1145 (same). Otherwise, "a determination in Plaintiffs' favor, given Plaintiffs' general allegations of 'exclusive knowledge as the manufacturer' and active concealment of a defect, would mean that any unsatisfied customer could make a similar claim every time a product malfunctioned." *Tietsworth*, 2009 WL 3320486, at *4; *In re Bio-Tech. Gen. Corp. Secs. Litig.*, 380 F. Supp. 2d 574, 589 (D.N.J. 2005) ("[C]onclusory allegations that … Defendants 'knew or should have known' … fail as a matter of law to plead scienter with sufficient particularity."). The undated "superior knowledge" claims plainly do not provide the requisite Rule 9 details of how BMW NA acquired such knowledge.

2.    *Isolated Customer Complaints to NHTSA or Other Third Parties Such as Takata Do Not Show BMW NA Had Knowledge of a Defect.*

The SAC does not quote or identify *any* dated customer complaints—much less any complaints made directly to BMW NA—regarding the claimed inflator defect. Instead, plaintiffs rely on a series of general undated allegations of customer complaints allegedly made to Takata or other third parties.  See, e.g., SAC ¶ 634. These allegations also do not impose a duty to disclose.

For example, plaintiffs generically allege that "[a] review of publicly-available NHTSA complaints shows dozens of incidents of Takata airbags inadvertently deploying in the Class Vehicles" that ostensibly "started as early as September 2005, and involve vehicles manufactured by Acura, BMW, Dodge, Ford, Mitsubishi, Pontiac, Subaru, and Toyota . . . ." SAC ¶ 308. This omnibus allegation attempts to mask plaintiffs' inability to identify any BMW-specific complaints or pinpoint any dates when specific complaints were made.

Even *if* this omnibus allegation were enough (it is not), there is no plausible explanation of how BMW NA would have been alerted to a defect as a result of complaints that were made to NHTSA and that may have involved non-BMW vehicles.  *Wilson*, 668 F.3d at 1146.  There also is no explanation as to how a handful of complaints in a vehicle population in the hundreds of thousands (if not millions) would possibly alert BMW NA to a widespread defect at the time the relevant transactions. See, e.g., *Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 7, 2010) (350 complaints made directly to Apple did not show knowledge of defect.)  In any event, nothing in the SAC signals that NHTSA or any other third party transmitted any of these complaints to BMW NA.  *Green v. BMW NA* , 2012 WL 5986457, at *5 (D.N.J. Nov. 28, 2012)

18

(allegations that unnamed individuals told plaintiff his tires are "dangerous" and similar complaint from a single user on internet website insufficient to demonstrate knowledge); *Evitts v. DaimlerChrysler Motor Corp.*, 834 N.E.2d 942, 948-49 (Ill. App. Ct. 2005) (general allegations that pre-release testing "must have" revealed defect similarly insufficient where alleged defect did not arise until three years after purchase).  Indeed, "customer complaints in and of themselves [do not] adequately support an inference that a manufacturer was aware of a *defect* …." *Wilson*, 668 F.3d at 1147 (emphasis added). They only show that some consumers were complaining.[39]

3.    *BMW NA's Alleged Knowledge of Takata's Choice of Propellant Is Not Knowledge of a Defect.*

Plaintiffs' repeated assertion that the OEMs knew Takata was using ammonium nitrate as the propellant for its airbags (SAC ¶ 9) does not equate to knowledge of a defect.  As the New Jersey district court recently stated in *McQueen*:

> [T]his argument is . . . a circular argument that could be used to impute knowledge for purposes of the CFA to any manufacturer who designs and markets a product that is later alleged to be defective — "I (consumer) believe this item to be defective; you (manufacturer) designed the item and sold it; ergo, you knew it was defective, and thus you defrauded me when you elected not to tell me about the defect.

2014 WL 656619, at *5.  The facts here are even more favorable to BMW NA. Plaintiffs fail to explain how BMW NA was alerted to a defect in the airbags that were designed and manufactured by Takata.

**B.    The New Jersey Consumer Fraud Act Claim (Count 17) Is Deficient.**

Assuming plaintiffs could invoke New Jersey law,[40] the NJCFA may be violated by knowing concealment, suppression, or omission of material facts.  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994).  A private party must demonstrate that the defendant engaged in conduct

---

[39] See *Berenblat*, 2010 WL 1460297, at *9 (complaints posted on Apple's consumer website only establish the fact that some consumers were complaining and do not show knowledge product was in fact defective); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008)  ("Random anecdotal examples of disgruntled customers posting their view on websites at an unknown time is not enough to impute knowledge on defendants."); *Rait v. Sears, Roebuck & Co.*, 2009 WL 2488155, at *4 (D.N.J. Aug. 11, 2009) (limited complaints not enough to trigger knowledge and a duty to disclose because otherwise "[a]ll any plaintiff would be required to show is that a product broke once and that someone had complained about it on the internet.").

[40] See note 33 above.

19

violating the NJCFA and suffered an ascertainable loss "as a result of" that unlawful conduct. *Id.* at 23. Significantly, plaintiffs fail to plausibly allege that BMW NA knowingly suppressed a material fact, knew with certainty that the alleged defect would arise, or suffered an ascertainable loss.

Plaintiffs make only vague and generalized allegations, which are not enough for an NJCFA claim.[41] Plaintiffs also fail to allege that BMW NA knew, at the time of their transactions, that the alleged defect would, with certainty, arise. Of course "the NJCFA does not require manufacturers to disclose things they do not know. Thus, unless a defendant manufacturer knows *with certainty* that a product *will* fail, it does not violate the NJCFA by failing to inform its consumers of the *possibility* of failure." *Alban v. BMW NA*, 2010 WL 3636253, at *10 (emphasis added).[42]

Finally, the simple fact is that plaintiffs do not have, and cannot claim, an ascertainable loss, because the allegedly defective airbags in each of the BMW plaintiffs' vehicles have far outlasted those vehicles' warranties. That is because a "plaintiff may not maintain a [NJ]CFA claim—and pursue treble damages, attorneys' fees and costs of suit—when the allegedly substandard part continues to perform beyond defendant's contractual obligation to repair or replace it." *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 112-13 (App. Div. 2006). This is so even where, as here, a plaintiff alleges a safety-related defect.[43]

---

[41] *In re Bio-Tech. Gen. Corp. Secs. Litig.*, 380 F. Supp. 2d 574, 589 (D.N.J. 2005) ("conclusory allegations that … Defendants 'knew or should have known' … fail as a matter of law to plead scienter with sufficient particularity" under the NCJFA).

[42] See also *Suddreth v. Mercedes-Benz USA, LLC*, 2011 WL 5240965, at *5 (D.N.J. Oct. 31, 2011) ("'a plaintiff must sufficiently allege that the defendant manufacturer knew with certainty that the product at issue or one of its components was going to fail'") (quoting *Tatum v. Chrysler Group, LLC*, 2011 WL 1253847, at *5 (citations omitted)); *Glauberzon v. Pella Corp.*, 2011 WL 1337509, at *9 (D.N.J. Apr. 7, 2011) ("Suffice it to say that Plaintiffs have provided no legal authority for the proposition that the NJCFA…require[s] manufacturers to disclose things they do not know…") (footnote omitted) (citation omitted).

[43] E.g., *Noble v. Porsche Cars N. Am.*, 694 F. Supp. 2d 333, 337 (D.N.J. 2010) ("In accordance with New Jersey law, this Court holds that a plaintiff cannot maintain an action under New Jersey's CFA when the only allegation is that the defendant 'provided a part – alleged to be sub-standard – that outperforms the warranty provided.'") (quoting *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 112 (App. Div. 2006); *id.* at 338 (finding *Perkins*'s "holding just as applicable here, in a case where safety concerns are alleged.") (citation omitted).

**C.**    **Plaintiffs' FDUTPA Claim (Count 47) is Deficient.**

1.    *Lack of Defect Manifestation Bars FDUTPA Claims.*

As discussed in Mazda's, Toyota's, and Ford's respective motions to dismiss, a claim for economic damages based on a future product failure risk are not viable under FDUTPA. Because the BMW plaintiffs do not allege a product failure, their FDUTPA claim must be dismissed.  BMW NA incorporates by reference the detailed briefing on this issue by Mazda (MTD Sec. C(1)), Toyota (MTD Sec. VII), and Ford (MTD Sec. IV(F)(1).

2.    *Plaintiff Veser's FDUTPA Claim (Count 47) Is Time-Barred.*

"The statute of limitations for plaintiff's claim under FDUTPA is four years.  Fla. Stat. § 95.11(3)(f) (2006)." *Speier-Roche v. Volkswagen Group of Am., Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014) (Moreno, J.).  "A FDUTPA claim accrues at the time of purchase or lease of a product, not upon discovery of an alleged defect."  *Id.* at *18-19; *Licul v. Volkswagen Group of Am., Inc.*, 2013 WL 6328734, *6 (S.D. Fla. Dec. 5, 2013); *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012).  There is no "delayed discovery rule" for FDUTPA claims.  *Speier-Roche*, 2014 WL 1745050, at *6; *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, SPA,* 505 Fed. App'x. 899, 905-06 (11th Cir. 2013).

Plaintiff Veser is one of four Florida plaintiffs who asserts a FDUTPA claim against BMW NA.  SAC ¶ 174.  Veser purchased a new BMW in 2005 (SAC ¶ 174) and her claim became time-barred in 2009.

**D.**    **The Pennsylvania Consumer-Protection Claim (Count 89) Fails Because There Is No Plaintiff to Represent the "Pennsylvania Sub-Class."**

Plaintiffs purport to assert this claim on behalf of a "Pennsylvania Consumer Sub-Class" (SAC ¶ 1685), which is defined by reference to the state in which a consumer purchased or leased a class vehicle.  (SAC ¶ 393.)  The two BMW plaintiffs who reside in Pennsylvania purchased their vehicles in California and Virginia.  (SAC ¶¶ 124, 136.)  Because there is no plaintiff who is a member of and can represent the Pennsylvania sub-class, this claim must be dismissed.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997) (each sub-class must be represented by a class representative who is a member of the sub-class and possess the same interest). Plaintiffs also lack standing to pursue this claim for all the reasons discussed in Section IV(B), above.[44]

---

[44] Even if plaintiffs had a representative who can assert this claim against BMW NA, the claim should still be dismissed because none of the BMW plaintiffs allege that the defect has

### E.    The Virginia Consumer-Protection Act Claim (Count 99) Fails for Multiple Reasons.

The Virginia consumer-protection claim cannot be pursued on behalf of a putative class. See *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 293 (D.N.J. 2009) (citing *Am. Online v. Sup. Ct.*, 90 Cal. App. 4th 1, 17(2001); *King v. Va. Birth–Related Neurological Injury Comp. Program*, 22 Va. Cir. 156 (1990)). Because plaintiffs assert this claim on behalf of a purported "Virginia Consumer Sub-Class" (SAC ¶ 1823), the claim is not viable as a matter of law and must be dismissed.

Further, the Virginia VCPA requires that a plaintiff to plead and prove reliance. See *Owens v. DRS Automotive Fantomworks, Inc.*, 764 S.E.2d 256, 260-61 (Va. 2014) ("The VCPA, however, still requires proof, in misrepresentation cases, of the elements of reliance and damages."); *Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 188-189 (E.D. Va. 2005) (private plaintiff "is not entitled to damages, either actual or statutory, unless he can demonstrate loss caused by the unlawful practice which, of course, necessarily requires a showing of reliance.") (collecting cases).  Plaintiff Morris fails to identify any statement from BMW NA on which he relied.[45]  The VCPA claim fails and must be dismissed.

### F.    The Alabama Deceptive Trade Practices Act Claim (Count 49) Fails for Multiple Reasons.

The Alabama DTPA requires a "written demand" for relief that "reasonably describes the unfair or deceptive act or practice relied upon and the injury suffered" by a plaintiff "at least 15 days prior to the filing of any action.  *Deerman v. Fed. Home Loan Motrg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) (citing Ala. Code § 8-19-10(e)).   Although the SAC claims plaintiffs complied with this requirement, the original consolidated amended complaint admits that plaintiffs did *not* comply with the requirement *pre-suit*.[46]  Plaintiffs' failure to comply with the pre-suit notice requirement alone compels dismissal of their Alabama DTPA claim.

---

manifested in their vehicles.  BMW NA incorporates by reference the detailed briefing on this issue under Pennsylvania law by Mazda (MTD Sec. C(3)) and Toyota (MTD Sec. VII).

[45] And, while Morris broadly alleges that "the sale of the Class Vehicles…was a 'consumer transaction'" under the VCPA (SAC ¶ 1825), he does *not* allege that he purchased the vehicle "primarily for personal, family or household purposes" as the Act requires.  See Va. Code Ann. § 59.1-198.

[46] Dkt. 544, ¶ 1044 ("Plaintiffs' counsel … *will serve* Defendants with notice of their alleged violations of the Alabama DTPA …. and demand that Defendants correct or agree to correct the actions described therein.").

*Deerman*, 955 F. Supp. at 1400; *Givens v. Rent-A-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988).

But even if the claim was not procedurally flawed, it is time-barred.  Under Alabama law, claims for violation of the Alabama DTPA must be brought (a) within one year after the plaintiff discovery or reasonably should have discovered the alleged violation but (b) in no event more than four years after the transaction giving rise to the alleged violation unless the contract or warranty is for more than three years, in which case the claim must be brought within one year after (1) the contract or warranty expired or (2) the plaintiff discovered or should have discovered the alleged violation.  Ala. Code. §8-19-14.  Plaintiff Richardson purchased a used model year 2003 BMW 330i in June 2008.  SAC ¶ 152.  He does not allege the vehicle came with a warranty that was still valid.  Consequently, he was required to bring his claim not later than June 2012.  But he did not file his initial complaint until 2015.  See *Martin, et al v. Takata Corp., et al*, No. 2:15-cv-00092-RDP (N.D. Ala.), No. 1:15-cv-20757-FAM (S.D. Fla.).  The Alabama DTPA claim is time-barred and must be dismissed.

Finally, as set forth in Mazda's and Toyota's respective motions to dismiss, Alabama law requires that plaintiffs allege a defect manifestation.  Because the BMW plaintiffs do not make this claim, the Alabama DTPA claim must be dismissed.  BMW NA incorporates by reference the detailed briefing on this issue by Mazda (MTD Sec. C) and Toyota (MTD Sec. VII).

### G.  The California False Advertising Law Claim (Count 53) Fails Because Plaintiffs Do Not Identify Any Statement That Was False When Made.

The SAC identifies three airbag-specific statements BMW made in 2005 and 2008, and a generic safety representation about BMW vehicles from 2015 (SAC ¶ 310) as the lone examples of BMW "advertising, marketing and other publications" that ostensibly were untrue and misled consumers (*id.* ¶ 1139).  Plaintiffs claim they relied on these alleged misrepresentations (including, apparently, a representation BMW made this year (*id.* ¶ 310)) and cite them as the basis for their California FAL claim.

But a FAL claim does not exist in a vacuum.  The claim and the alleged misrepresentations must be viewed in the context of what was known to BMW NA at the time the alleged misrepresentations were made.  See, e.g., *Janda v. T-Mobile, USA, Inc*., 2008 WL 4847116, at *4 (N.D. Cal. Nov. 7, 2008) (plaintiffs must supply the "time, place, and content of the alleged misrepresentations, as well as an explanation as to why the statement or omission complained of is false or misleading.").  Not surprisingly, courts have rejected efforts to impose

23

liability for analogous misrepresentation claims under California law based on after-the-fact developments.[47]

As set forth in Section V.A above, plaintiffs have not alleged facts to show that BMW NA had knowledge of the claimed defect in 2005 or 2008, when the alleged misrepresentations were made. Thus, the statements were true and not misleading when they were made and provide no basis for FAL liability. Further, the three BMW plaintiffs who purchased *new* vehicles made their purchases in June 2003 (Lee, ¶ 124), October 2003 (Morris, ¶ 136), and February 2005 (Veser, ¶ 174), which is before the allegedly misleading statements were made. And there are no facts to suggest that the remaining BMW plaintiffs who purchased used BMW vehicles relied on or even knew of the 2005 and 2008 statements. Indeed, this is not plausible since the used-vehicle purchasers bought their cars several years after the 2005 and 2008 airbag-specific statements were allegedly disseminated.[48]

## VI.   THE BREACH OF IMPLIED WARRANTY CLAIMS FAIL FOR A HOST OF REASONS.

### A.   The Florida Implied-Warranty Claim (Count 48) Is Time-Barred and Fails Due to Lack of Privity.

#### 1.   *The Florida Implied-Warranty Claim Is Time-Barred.*

A Florida implied-warranty claim is subject to a four-year limitations period. Fla. Stat. § 95.11(3)(k). BMW's New Vehicle Limited warranty, on which Count 48 implicitly relies, limits the duration of implied warranties to the 4 year/50,000 mile duration of the vehicles' express

---

[47] See, e.g., *Durkee v. Ford Motor Co.*, 2014 WL 4352184, *3 (N.D. Cal. Sept. 2, 2014) ("[A] CLRA claim cannot be based on events following a sales transaction."); *Hensley-Maclean v. Safeway, Inc.*, WL 1364906, at *6 (N.D. Cal. Apr. 7, 2014) ("[T]he CLRA only applies to representations and omissions that occur during pre-sale transactions."); *Moore v. Apple, Inc.*, 2014 WL 5830374, at *5-6 (N.D. Cal. Nov. 10, 2014) (dismissing CLRA claim based on post-sale conduct).

[48] In any event, generic statements about "safety" and "reliability" are classic examples of non-actionable puffery. See, e.g., *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2008 WL 4126264, at *3 (D.N.J. Sept. 2, 2008) (statements that a van "is a **very safe vehicle**" and is "America's Most Trustworthy" constitute "classic examples of non-actionable opinion" under the UCC); *Warner v. Ford Motor Co.*, 2008 WL 4452338, *9 (D. Col. Sept. 30, 2008) ("Built Ford Tough" is non-actionable puffery); *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *6 (S.D.N.Y. 1996) (Chevy's slogan "Like a Rock" is a generalized and exaggerated claim on which a reasonable consumer would not rely); *Mason v. Chrysler Corp.*, 653 So. 2d 951, 953-54 (Ala. 1995) (national advertising referring to vehicle's quality engineering, **reliability**, and smooth riding was puffing); *Hoffman v. A.B. Chance Co.*, 339 F. Supp. 1385, 1387-88 (M.D. Pa. 1972) (advertisements representing that a brake lock device "offered unprecedented **safety**" was merely a seller's exaggerated opinion).

warranty.  Ex. B.  Thus, the express warranties for the Florida BMW plaintiffs' 2002, 2003 and 2005 model year vehicles (SAC ¶¶ 96, 98, 106, 174) expired not later than 2006, 2007, and 2009 respectively[49] and became time-barred in 2013 (at the latest), one year before plaintiffs filed suit. See *Speier-Roche*, 2014 WL 1745050, at *8.

That plaintiffs may have been ignorant of the alleged implied-warranty breach until after the warranty expired does not save their claim.  See, e.g., *McKissic v. Country Coach, Inc.*, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (limitations period begins to run "when the breach giving rise to the cause of action is discovered or should have been discovered, *or when such warranty expires*, whichever occurs first.") (emphasis added).  It also is irrelevant that three of the plaintiffs purchased used BMW vehicles—their implied warranties expired with their express warranties before their used-vehicle purchases.[50]

### 2.   *Plaintiffs Are Not in Privity with BMW NA.*

"If state law requires vertical privity to enforce an implied warranty and there is none, then, like the yeastless soufflé, the warranty does not 'arise.'"  *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606 n.13 (S.D.N.Y. 1982).  Privity is required for a breach of implied-warranty claim under Florida law.  *Speier-Roche*, 2014 WL 1745050, at *7-8 (S.D. Fla. Apr. 30, 2014) (Moreno, J.).[51]  Privity is lacking where, as here, the subject vehicles were

---

[49] The express warranty on BMW vehicles begins "on the date of first retail sale, or the date the vehicle is first placed in service as a demonstrator or company vehicle, whichever is earlier." See Ex. B.

[50] Cf. *White v. Volkswagen Group of Am., Inc.*, 2013 WL 685298, *5 (W.D. Ark. Feb. 25, 2013) ("Here, according to the plain terms of Defendant's express Warranty, the implied warranty of merchantability applicable to White's vehicle 'is limited in duration to the period of this written warranty.'…As discussed above, the written Warranty expired prior to the time White became the owner of her vehicle. Since the implied warranty's duration is equal to the written Warranty's, the implied warranty also expired.") (Ark. Law); *Daigle v. Ford Motor Co*., 2012 WL 3113854, *11 (D. Minn. July 31, 2012) ("Daigle's claim of breach of implied warranty under Minnesota law is limited to the life of the New Vehicle Warranty - which is three years or 36,000 miles, whichever occurs first. It is undisputed that Daigle purchased his 2004 Freestar after the New Vehicle Warranty had expired, therefore his claim of breach of implied warranty has no merit and Ford is entitled to summary judgment.") (MN law); *Snodgrass v. Ford Motor Co*., 2001 U.S. Dist. LEXIS 18555, at *33-35, 49 n.11 (D.N.J. Sept. 4, 2001) ("Since the limitation was valid upon sale, the implied warranty expired long before the Naves purchased their car in 1992.") (NJ law); *Kagan v. Harley Davidson, Inc*., 2008 WL 1815308, at *7-9 (E.D. Pa. Apr. 22, 2008) (same) (PA law).

[51] See also *David. v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321 (S.D. Fla. 2009); *Mesa v. BMW NA*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005).

purchased "directly from a dealer as opposed to the manufacturer …." *Id.* at *22 (citing *Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227, 1232 (M.D. Fla. 2009)).

None of the four named plaintiffs from Florida who might represent a "Florida sub class" purchased their cars from BMW NA. Plaintiffs Dewan, Day, and Gunther purchased used BMW vehicles from private parties or used car dealers (SAC ¶¶ 96, 98, 106), whereas Veser purchased a new BMW from Bert Smith BMW. SAC ¶ 174. As such, no Florida plaintiff can sue BMW NA. *Speier-Roche*, 2014 WL 1745050, at *7-8; *Mesa*, 904 So. 2d at 458 (plaintiff who leased vehicle from a BMW dealer through BMW Financial Services lacks privity with BMW NA). The allegation that two plaintiffs purchased "extended warranties" from an unknown warrantor for their used vehicles (SAC ¶¶ 96, 98) does not alter this conclusion. *David*, 629 F. Supp. at 1322 ("a manufacturer's warranty which runs to the buyer does not in and of itself establish privity …."). Thus, even if the implied-warranty claim were not time-barred – and it is – the claim fails for lack of privity.

**B.     The Pennsylvania Implied-Warranty Claim (Count 90) Fails for Lack of a Class Representative.**

There is no BMW plaintiff to represent the Pennsylvania sub-class. As with the Pennsylvania consumer-protection claim (Section V.D)), plaintiffs purport to assert this claim on behalf of a "Pennsylvania Consumer Sub-Class" (SAC ¶ 1707) – defined as persons who "entered into a lease or bought a Class Vehicle in the state of" Pennsylvania (*id.* ¶ 393). But just like their Pennsylvania consumer-protection claim, there is no plaintiff who is a member of and has standing to represent the Pennsylvania sub-class. This claim is thus not viable and must be dismissed. And even *if* plaintiffs had a class representative to pursue an implied warranty claim, it is time-barred and fails because plaintiffs plead no product malfunction.[52]

---

[52] Even if there was a representative for the proposed Pennsylvania sub-class, the implied-warranty claim is substantively flawed for two reasons: *First*, the statute of limitations for an implied-warranty claim in Pennsylvania is four years. *McCracken v. Ford Motor Co.*, 588 F. Supp. 2d 635, 642 (E.D. Pa. 2008) (limitations period begins at time of tender or sale, not at time breach is discovered or an injury occurs; "discovery rule" does not apply to breach of warranty actions). Plaintiffs Lee and Morris are the lone BMW plaintiffs who are part of the "Pennsylvania sub-class." SAC ¶¶ 124, 136. Both plaintiffs purchased their BMW vehicles in 2003 (*id.*) and their implied-warranty claims became time-barred in 2007. *Second*, a product malfunction is a required element of an implied-warranty claim under Pennsylvania law. See *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) (implied-warranty claim requires "that the product malfunctioned"); *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 414 (E.D. Pa. 2012) (dismissing implied-warranty claim where plaintiff failed to

**C.**     **The California Implied-Warranty Claim (Count 54) Fails Because Plaintiffs Do Not Allege a Song-Beverly Act Violation During the Applicable Implied-Warranty Period.**

The *maximum* implied-warranty period in California is one-year for new goods and three months for used goods. Cal. Civ. Code §§ 1791.1(c), 1795.5(c).  To state an implied-warranty claim under the Song-Beverly Act, a plaintiff must allege that the defect arose within the applicable one-year or three-month warranty periods.[53]  Here, none of the BMW plaintiffs allege any airbag-related defect arose during the implied-warranty periods.  See SAC ¶ 99 (Daugherty); ¶ 116 (Kazos); ¶ 147 (Pham); ¶ 159 (Schmidt).

Plaintiffs may rely on *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297 (2009), to argue that the alleged defect existed at the time of sale but was latent.  But both *Mexia* and the few cases that have followed it are often rejected "because the flaw in *Mexia*'s reasoning is readily apparent: its holding 'renders meaningless any durational limits on implied warranties' as '[e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period.'" *Grodzitsky v. Am. Honda Motor Co., Inc.*, 2013 WL 2631326, at *10 (C.D. Cal. June 12, 2013).  Indeed, several courts have noted *Mexia* "enjoys the limelight as a case contrary to established California case law with respect to the duration of the implied warranty of merchantability." *Marchante*, 801 F. Supp. 2d at 1022 (quotation marks omitted).[54]

---

allege product malfunction).  Because none of the BMW plaintiffs have experienced any malfunction, their implied-warranty claims must be dismissed.

[53] *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 971-72 (C.D. Cal. 2014); *Marchante v. Sony Corp. of Am.*, 801 F. Sup. 2d, 1013, 1021 (S.D. Cal. 2011); *Sharma v. BMW NA*, 2015 WL 75057, at *4 (N.D. Cal. Jan. 6, 2015) (implied-warranty claim fails unless plaintiffs plead facts to show that during the applicable implied-warranty period they "encountered any difficulty using their respective vehicles 'for the ordinary purposes for which such goods are used' … i.e., for transportation."); *Tietsworth v. Sears, Roebuck & Co*., 720 F. Supp. 2d 1123, 1142-43 (N.D. Cal. 2010) (washing machine that served "ordinary purpose of cleaning clothes within the [applicable implied warranty] period" does not support implied-warranty claim notwithstanding that it "stopped working altogether" after expiration of statutory warranty period); *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013) ("risk" of defect arising does not render a vehicle unmerchantable).

[54] See also *Hovsepian v. Apple, Inc.*, 2009 WL 2591445, at *8 n.7 (N.D. Cal. Aug. 21, 2009) ("the *Mexia* decision appears to be contrary to established California case law with respect to the duration of the implied warranty of merchantability as set forth in § 1791.1…."); *Rossi v. Whirlpool Corp*., 2013 WL 1312105, at *5 (E.D. Cal. Mar. 28, 2013) (rejecting *Mexia* as "outlier"); *Daniel v. Ford Motor Co*., 2013 WL 2474934, at *7-*8 (E.D. Cal. June 7, 2013) (declining to follow *Mexia* because it "renders meaningless any durational limits on implied

As *Grodzitsky* notes, even several California Courts of Appeal disagree with *Mexia*'s conclusion. *Grodsitsky*, 2013 WL 2631326, at *11.  Thus, "[i]n *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 230-32 (2006)], the Sixth District of California's Court of Appeals expressly held that a suit filed after the one-year warranty period provided for in Section 1791.1(c) was barred by Section 1791.1(c)." *Id.*  Further, "in a decision handed down two weeks after *Mexia*, the First District of California's Court of Appeals concurred with *Atkinson*'s holding." *Id.* (citing *Larsen v. Nissan N. Am.*, 2009 WL 1766797, at *5-*6 (Cal. Ct. App. June 23, 2009)).[55]  The Song-Beverly Act claim must be dismissed because plaintiffs have not identified an implied-warranty breach during the warranty period.

### D.    The CO (Count 57), NJ (Count 17), and VA (Count 100) Implied-Warranty Claims Fail Because the Vehicles Were Merchantable During the Contractually Limited Implied-Warranty Period.

The implied warranty of merchantability in Colorado, New Jersey[56], and Virginia can be limited in duration by contract to the same term as the express warranty.[57] Thus, "defects—even latent ones—that manifest themselves after the expiration of the express warranty period cannot form the basis of an implied warranty …."[58] Here, BMW NA's express warranty is for 4 years/50,000 miles (whichever occurs first).  See Ex. B.  And, as with the Song-Beverly Act claim, none of the BMW plaintiffs claim any malfunction occurred during this period.  The Colorado, New Jersey, and Virginia[59] implied-warranty claims should also be dismissed.

---

warranties"); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852-53 (N.D. Cal. 2012); *Tietsworth*, 2009 WL 3320486, at *11 & n.6.

[55] See also *Balakian v. Mercedes-Benz USA, LLC*, 2011 WL 6826723, at *7 & n.8  (Cal. Ct. App. 2011).

[56] See note 33, above.

[57] See, e.g., *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965, at *4-5 (D.N.J. Oct. 31, 2011); Colo. Rev. Stat. Ann. § 4-2-316; Va. Code § 8.2–316(4) ("[r]emedies for breach of warranty can be limited in accordance with the provisions of this title on liquidation or limitation of damages and on contractual modification of remedy."); see also *Burner v. Ford Motor Co.*, 52 Va. Cir. 301, 307 (2000) (statute of limitations barred implied-warranty claim because "a cause of action accrues when the breach occurs, regardless of … knowledge of the breach" which is "when tender of delivery is made ….").

[58]*Grodzitsky*, 2013 WL 2631326, at *12 (citing *Nobile v. Ford Motor Co*., 2011 WL 900119, at *4 (D.N.J. Mar.14, 2011) (relying on N.J.S.A. 12A:2-317 to dismiss claims for breach of implied warranty where latent defect discovered after the expiration of express warranty period)).

[59] Under Virginia law, a claim for breach of implied warranty of merchantability will not lie where the consumer has used the product for years beyond its warranty period without incident.

VII.  **PLAINTIFFS' FAILURE TO PLEAD A VIABLE STATE-LAW WARRANTY CLAIM COMPELS DISMISSAL OF THEIR MAGNUSSON-MOSS CLAIM (COUNT 3).**

The Magnusson-Moss Act does not create a new substantive body of federal warranty law; it only "supplement[s] state warranty law by prescribing certain minimum standards for warrantors, and by affording consumers additional avenues for redress." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986). Indeed, "except in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written … warranty law, not the creation of additional federal law." *Id.* This is so because "state warranty law lies at the base of all warranty claims under Magnuson-Moss …." *Id.* at 1016.

The Magnusson-Moss Act defines "implied warranties" as "an implied warranty arising under state law … in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). This means that state law governs the creation of implied warranties. *Abraham v. Volkswagen of Am.*, 795 F.2d 238, 249 (2nd Cir. 1986). The "failure to state a warranty claim under state law necessarily constitute[s] a failure to state a claim under Magnuson-Moss." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 833 (2006); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (Magnuson–Moss claims "stand or fall with [their] express and implied warranty claims under state law.") Because plaintiffs have not pled a viable state-law warranty claim, much less one that can extend to a nationwide class, their Magnusson-Moss claim must also be dismissed.

VIII.  **THE CALIFORNIA NEGLIGENT-FAILURE-TO-RECALL CLAIM (COUNT 55) IS BARRED BY THE ECONOMIC-LOSS RULE.**

Plaintiffs' negligent-failure-to-recall claim under California law is in all material respects a negligence claim. *Majdipour v. Jaguar Land Rover N.A., Inc.*, 2015 WL 1270958, at *17 (D.N.J. March 18, 2015) (treating failure-to-recall claim as negligence claim under California law). Negligence claims under California law are subject to the economic-loss rule, which precludes "recovery in negligence for purely economic losses caused by a defective product when the only damage is to the product itself." *Callaghan v. BMW NA*, 2014 WL 1340085, at *6 (N.D. Cal. Apr. 2, 2014) (citing *Robinson Helicopter, Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988

---

See *Lowe v. Mercedes Benz of N. Am., Inc.*, 1996 WL 694433, at *2 (4th Cir. Dec. 5, 1996) (finding no liability where the plaintiff continued to drive the car with the same frequency after complaining about its safety); *Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499, 503 (Va. 1999) (finding no liability where the plaintiff used a boat for 850 hours during the first few years he owned it despite alleging it was unmerchantable).

(2004); *Seely v. White Motor Co.,* 63 Cal. 2d 9, 18-19 (1965); *Jimenez v. Sup. Ct.,* 29 Cal. 4th 473, 482 (2002) ("[d]amages available under strict products liability [and negligence] do not include economic loss, which includes damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits-without any claim of personal injury or damages to other property.") (quotations omitted).

Simply put, the rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter, Inc.*, 34 Cal. 4th at 988. A negligence claim for purely economic harm, devoid of any concurrent claim for physical injury, must be dismissed under the economic-loss rule. See, e.g., *Sharma v. BMW NA*, 2014 WL 2795512, at *7 (N.D. Cal. June 19, 2014) (granting motion to dismiss negligent-failure-to-recall claim for failing to allege damages under the economic loss); *Majdipour*, 2015 WL 1270958, at *16-18 (same, applying California law).

Plaintiffs here only seek relief for economic harm. SAC ¶ 1163 ("diminished value of the Class Vehicles"). They assert no concurrent claim for physical injury; to the contrary, they expressly disclaim such damages. *Id.* ¶ 408. Litigants who successfully allege negligent-recall claims all have experienced either personal injury or injury to other property.[60] Given that this case is expressly styled as an "Economic Loss Class Action," plaintiffs' negligence claim *by definition* does not overcome the economic-loss rule and must be dismissed.[61]

IX. **THE NEW JERSEY UNJUST-ENRICHMENT CLAIM (COUNT 18) IS NOT VIABLE.**

New Jersey does not recognize unjust enrichment as an independent tort cause of action.[62] *Majdipour,* 2013 WL 5574626, at *24. "Unjust enrichment is of course a familiar basis

---

[60] See, e.g., *Roberts v. Electrolux Home Products, Inc.*, 2013 WL 7753579, *13 (C.D. Cal. Mar. 4, 2013) (plaintiffs alleged defective dryer "caused a fire resulting in extensive property damage"); *Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1827-28 (1994) (plaintiff suffered physical injuries in on-the-job crane accident); *Springmeyer v. Ford Motor Co.*, 60 Cal. App. 4th 1541, 1547 (1998) (severed arm); *Lunghi v. Clark Equip. Co.*, 153 Cal. App. 3d 485, 489 (1984) (wrongful death action); see also Jud. Council of Cal., Civil Jury Instruction No. 1223 ("Negligence–Recall/Retrofit") (requiring plaintiffs to prove they were "harmed" by a failure to recall).

[61] NHTSA's primary jurisdiction also compels dismissal of the negligent failure to recall claim (Count 55). BMW NA incorporates by reference the detailed briefing on this issue by Toyota (MTD Sec. VIII(B)).

[62] See note 33 above.

for imposition of liability in the law of contracts." *Castro v. NYT Television,* 370 N.J. Super. 282, 299 (App. Div. 2004). But "New Jersey does *not* recognize unjust enrichment as an independent tort cause of action." *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.,* 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009). That is because "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion." *Castro*, 370 N.J. Super. at 299; see also *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912, 936–37 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (*i.e.*, if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).").

Plaintiffs' unjust-enrichment claim unquestionably relies on a tort theory sounding in fraud. See SAC ¶ 638 (BMW NA sold vehicles "with a concealed safety-and-reliability related defect …."). A tort-based claim for unjust enrichment is not permitted in New Jersey. See *Pappalardo v. Combat Sports, Inc.,* 2011 WL 6756949, at *12 (D.N.J. Dec.23, 2011) (dismissing unjust enrichment "presented as a tort-based theory of recovery").

Even if this was a quasi-contractual claim for unjust enrichment, New Jersey law requires that a plaintiff have a direct relationship with the party charged with unjust enrichment. Thus, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1993) (citations omitted) (emphasis added). This direct-relationship requirement is stringently enforced.[63]

There is no direct relationship here between the BMW plaintiffs and BMW NA because

---

[63] See, e.g., *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 45133924, at *10 (D.N.J. Sept. 30, 2008) ("It has been observed that quasi-contract claims involve either some direct relationship between the parties or a mistake on the part of the person conferring the benefit. Here, although Cooper alleges that Samsung was unjustly enriched through the purchase of the television, ***there was no relationship conferring any direct benefit on Samsung through Cooper's purchase, as the purchase was through a retailer, Ultimate Elecs***. Cooper, therefore, did not confer a benefit on Samsung within the meaning of New Jersey's doctrine of unjust enrichment.") (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 107-110 (App. Div. 1966) (denying recovery absent direct commercial relationship)) (other citation omitted) (emphasis added); *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505-06 (D.N.J. 2009) (dismissing unjust-enrichment claim against manufacturer where consumer purchased product from non-party retailer).

all of the plaintiffs transacted with third-party retailers or individuals.

## X.    NHTSA'S PRIMARY JURISDICTION AND PRUDENTIAL MOOTNESS REQUIRE THAT THE CASE BE STAYED OR, AT A MINIMUM, PLAINTIFFS' CLAIM FOR RECALL-RELATED INJUNCTIVE RELIEF BE DISMISSED.

BMW NA adopts and hereby incorporates by reference the arguments set forth in motion to stay filed by Toyota, Ford, and Subaru ("Stay Motion"). Dkt. 610. BMW NA agrees that NHTSA has primary jurisdiction over the Takata inflator-defect investigation and recall. NHTSA's unprecedented involvement and exercise of the authority Congress has conferred under the Motor Vehicle Safety Act, 49 U.S.C. § 30101, et seq. provides a compelling reason for a short stay of this case. Alternatively, BMW NA agrees with Honda that, at a minimum, NHTSA's primary jurisdiction provides ample basis for this Court to not exercise jurisdiction over plaintiffs' claim for recall-related injunctive relief. BMW NA further agrees with Honda that plaintiffs' recall-related relief is prudentially moot. To avoid duplication of the same arguments, BMW NA incorporates by reference the primary jurisdiction and prudential mootness arguments as set forth in the Stay Motion and Honda's motion to dismiss (Honda MTD, Sec. II(A) & II(B)).

## XI.    THE AUTO RECYCLERS' SUNDRY CLAIMS SHOULD BE DISMISSED.

The Auto Recyclers' claims are addressed in the OEM joint motion to dismiss, which BMW NA hereby incorporates by reference.

## XII.    THE CLAIMS AGAINST BMW MANUFACTURING COMPANY, LLC SHOULD BE DISMISSED.

As mentioned above (note 1), BMW MC is identified only in the caption of the SAC but nowhere in the SAC itself. This was due to a clerical error. Ex. A. Although BMW MC is not formally a party to the SAC, the clerical error creates the potential for confusion. As such, BMW MC seeks an order that confirms its non-party status and strikes BMW MC from the caption of the operative complaint.

## XIII.    CONCLUSION

The SAC seeks to make up in bulk what it lacks in substance for the shotgun claims plaintiffs seek to pursue against BMW NA. Constitutional limitations prevent the BMW plaintiffs from invoking New Jersey law, and even if they could, their claims are substantively flawed. The SAC lacks the factual specificity required by Rule 9(b), which is required for common-law fraud and statutory consumer-protection claims. Plaintiffs' claims also suffer from a host of other defects—some are time-barred, some fail to satisfy statutory procedural pre-

requisites, others lack privity, and still others lack a plaintiff to serve as class representative.  For these and other reasons set forth above, BMW NA's motion should be granted in its entirety, and Counts 3, 16-19, 47-49, 51-57, 63-64, 89-90, 99-100, 105-106 in the SAC should be dismissed.

*/s/Carey S. Villeneuve*
Carey S. Villeneuve
Florida Bar No. 60621
Buchanan Ingersoll & Rooney PC
1200 East Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
(954) 703-3900

Rosemary J. Bruno (*pro hac vice*)
Christopher J. Dalton (*pro hac vice*)
Buchanan Ingersoll & Rooney PC
550 Broad Street, Suite 810
Newark, NJ 07102-4582
(973) 273-9800

Eric Y. Kizirian (*pro hac vice*)
Lewis Brisbois Bisgaard & Smith LLP
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071
(213) 250-1800

Attorneys for Defendants,
BMW of North America, LLC and
BMW Manufacturing Company, LLC
Dated:  July 17, 2015

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on July 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/* S. Carey Villeneuve_____
S. Carey Villeneuve