IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MDL No. 2599
Master File No. 15-02599-CIV-Moreno
S.D. Fla. Case No. 1:14-CV-24009-FAM

IN RE:  **TAKATA AIRBAG PRODUCT
LIABILITY LITIGATION**,
_____

THIS DOCUMENT RELATES TO ECONOMIC
LOSS CLASS ACTIONS
_____/

## UNITED STATES' STATEMENT OF INTEREST FILED PURSUANT TO 28 U.S.C. § 517 REGARDING MOTION TO STAY BASED ON THE PRIMARY JURISDICTION OF THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION

Pursuant to 28 U.S.C. § 517,[1] the United States respectfully submits this Statement of Interest to express the views of the National Highway Traffic Safety Administration ("NHTSA"), an operating administration within the U.S. Department of Transportation ("DOT"), regarding the Motion to Stay filed by Toyota, Ford, Subaru, and Nissan (the "Moving Defendants"). Mot. to Stay , ECF No. 610. Invoking the doctrine of primary jurisdiction, the Moving Defendants have sought to stay this action for a minimum of six months, pending NHTSA's ongoing safety defect investigation and Coordinated Remedy Program Proceeding concerning air bag inflators manufactured by Takata Corporation and its affiliates (collectively "Takata"). Plaintiffs have opposed the motion to stay. Pls' Resp. to Mot. to Stay ("Pls' Opp'n"), ECF No. 647. The United States files this Statement to inform the Court that it does not believe

---

[1] Section 517 authorizes the Department of Justice to file a Statement of Interest, which, as this Court has explained, is "a formal—and appropriate—means of communication from the executive branch to the judicial branch." *Ungaro-Benages v. Dresdner Bank AG*, 2003 WL 25729923, at *2 (S.D. Fla. Feb. 20, 2003). Section 517 provides: "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

that a stay is necessary to protect the integrity of NHTSA's defect investigation, the implementation of a coordinated remedy program, or otherwise. The requested six-month stay of this litigation is not now necessary to allow the agency's administrative processes to proceed. Instead, NHTSA believes that its regulatory and investigative activities may proceed in parallel with—and indeed may benefit from—the continued pendency of this litigation.

## BACKGROUND

Under the terms of the National Traffic and Motor Vehicle Safety Act of 1966 ("Safety Act"), as amended and recodified, NHTSA's mission is to ensure the safety of motor vehicles in the United States. *See* 49 U.S.C. § 30101 *et seq.*; 49 C.F.R. § 501.2. To help fulfill that mission, Congress has authorized NHTSA to investigate safety-related defects in motor vehicles and motor vehicle equipment and to order motor vehicle and equipment manufacturers to issue recall notifications to owners, purchasers, and dealers. 49 U.S.C. §§ 30118-30119, 30166. Under the Safety Act, manufacturers of defective recalled vehicles or equipment must remedy the defect by repair, replacement, or, if a vehicle, refund of the purchase price of the vehicle. *Id.* § 30120(a)(1).

On June 11, 2014, after identifying incidents of rupturing Takata inflators, NHTSA opened a formal defect investigation to collect information from Takata and manufacturers of vehicles equipped with potentially defective inflators. *See* NHTSA Preliminary Evaluation No. PE14-016, *upgraded to* NHTSA Engineering Analysis No. EA15-001; *Notice of Coordinated Remedy Program Proceeding for the Replacement of Certain Takata Air Bag Inflators*, 80 Fed. Reg. 32,197, 32,198 (June 5, 2015). The affected vehicle manufacturers agreed to parts collection campaigns which were later converted to vehicle recalls. *Id.* Though initially limited to regions with high absolute humidity levels and high temperatures, these measures were subsequently expanded to a nationwide scope. *Id.* at 32,198-99. At NHTSA's urging, on May

18, 2015, Takata filed Defect Information Reports with NHTSA, determining that a defect exists in certain air bag inflator models.  *Id.* at 32,199.  Pursuant to its authority under the Safety Act, *see* 49 U.S.C. § 30120(c)(3), NHTSA on June 5, 2015, initiated a Coordinated Remedy Program Proceeding to consider whether, and if so how, to address the air bag inflator defect in a comprehensive and coordinated fashion.

In connection with its efforts to investigate the root cause of the inflator defect and to ensure the adequate remedy of affected vehicles, NHTSA has also sought potentially relevant information and technical data from Takata, vehicle manufacturers, and other entities.[2]  In addition, to augment the agency's own testing efforts on recalled inflators, as well as those being conducted by Takata and vehicle manufacturers, NHTSA has specifically sought testing data from private litigants, including parties to this litigation, by ordering Takata to set aside a minimum number of recalled inflators for independent testing by such individuals and entities.  *See* Preservation Order and Testing Control Plan (Feb. 25, 2015), ECF No. 610-1.  As set forth in NHTSA's Preservation Order, full access to all information or data from any independent testing on Takata inflators will enable NHTSA to conduct a more robust defect investigation.  *Id.* ¶ 10.

## DISCUSSION

This litigation need not be stayed in order to preserve NHTSA's ability to continue its investigative and remedial efforts under the Safety Act.  Instead, NHTSA currently believes that

---

[2]  *See, e.g.*, October 30, 2014 Special Order to Takata (INLM-PE14016-60576); November 5, 2014 Special Order to Honda (INLM-PE14016-60632); November 18, 2014 Special Order to Takata (INLM-PE14016-61009); November 18, 2014 General Orders to Vehicle Manufacturers (INLM-PE14016-61008); June 18, 2015 Letters to Vehicle Manufacturers; June 19, 2015 Letters to Inflator Suppliers; June 19, 2015 Special Order to Takata.

The 2014 Special and General Orders cited above are publicly available in NHTSA's Preliminary Evaluation file (PE14-016), located at http://www-odi.nhtsa.dot.gov/acms/cs/documentList.xhtml?docId=PE14016&docType=INV.  The 2015 Letters and Special Order are publicly available in the public docket for NHTSA's Coordinated Remedy Program Proceeding (NHTSA-2015-0055), available at http://www.regulations.gov/#!docketDetail;D=NHTSA-2015-0055.

the case can proceed in parallel with the agency's fulfillment of its public safety mission in the investigation of the defective air bag inflators.  Due to the technical complexity of the inflator defect, NHTSA's investigation will benefit from information and data from all available sources.

"[T]he primary jurisdiction doctrine 'comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.'"  *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).  Although in certain circumstances, this doctrine of primary jurisdiction may properly result in a stay or dismissal of litigation, *see, e.g.*, *id.*; *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-04 (1976), NHTSA does not believe that such circumstances are presently at hand in this case.  That is particularly so given Plaintiffs' withdrawal of their claims for injunctive relief in the form of a judicially-supervised recall.  *See* Pls' Opp'n at 5; Pls' Corrected Omnibus Resp., ECF No. 658 at 120-21 ("Plaintiffs do not intend to seek such recall-related injunctive relief and agree to the striking of [paragraphs 567, 600, 767, 800, 960, 993, 1102, and 1135] from the Complaint.").  Although an effort to obtain such relief could have potentially raised primary jurisdiction concerns related to recall proceedings under NHTSA's authority, that issue appears to be moot and thus not something the Court need resolve.[3]  *See, e.g.*, *Bussian v.*

---

[3] Any effort by Plaintiffs to maintain such claims could also have raised potential preemption concerns, given NHTSA's statutory authority to effectuate appropriate remedies. *See* 49 U.S.C. § 30120(a), (c).  In light of NHTSA's regulatory responsibilities under the Safety Act, the Supreme Court has repeatedly made clear that preemption principles may bar a state statute or common-law cause of action that stands as an "'obstacle to the accomplishment' of a significant federal regulatory objective." *Williamson v. Mazda Motor of Am., Inc.*, 131 S. Ct. 1131, 1136 (2011) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 886 (2000)).  Given Plaintiffs' striking of these claims from their Second Amended Complaint, however, there is no present need to address the preemption arguments raised by Defendants in their respective motions to dismiss.  *See* ECF Nos. 608 (Mazda), 612 (Ford), 614 (Toyota), 615 (Subaru), 616 (Honda), 625 (BMW), 627 (Nissan).

*DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 629 (M.D.N.C. 2006) (finding a request for "court-ordered recall or retrofit" to be "relief which is clearly within the special competence of the NHTSA").

The Moving Defendants are correct that there is necessarily some degree of overlap between the issues to be litigated in this case and the issues that have arisen in NHTSA's investigation. Yet, in requesting a stay, the Moving Defendants have not argued that the resolution of Plaintiffs' claims *depends* on NHTSA's resolution of any particular issue, such as the identification of a root cause or the proper scope of any vehicle recall. *See id.* at 629. Nor have the Moving Defendants contended that Plaintiffs are here challenging any particular safety standard or NHTSA regulation. *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1218 (N.D. Cal. 2002) (denying stay where plaintiff did "not challenge a safety standard or any NHTSA regulation"). Finally, the Moving Defendants have not argued that the continuation of the litigation threatens to interfere with NHTSA's investigation, Coordinated Remedy Program Proceeding, or implementation of a coordinated remedy program. *Id.* (denying stay when defendant had "not identified any specific conflict between this action and the on-going NHTSA investigation of the same problem").

## CONCLUSION

The pendency of NHTSA's defect investigation and Coordinated Remedy Program Proceeding does not, in NHTSA's view, require that the Court stay this litigation.[4]

Dated: September 11, 2015.                               Respectfully submitted,

                                                        BENJAMIN C. MIZER
                                                        Principal Deputy Assistant Attorney General

---

[4] To the extent that issues may arise in the future that warrant potential application of the primary jurisdiction doctrine, NHTSA plans to remain in communication with liaison counsel regarding presentation of those issues to the Court.

        JUDRY L. SUBAR
        Assistant Director
        Federal Programs Branch

        */s/ Andrew Zee*
        M. ANDREW ZEE (CA Bar #272510)
        Attorney
        U.S. Department of Justice, Civil Division
        Federal Programs Branch
        415 Golden Gate Avenue, Room 7-5395
        San Francisco, CA 94102
        Telephone:  (415) 436-6646
        Fax:  (415) 436-6632
        Email:  m.andrew.zee@usdoj.gov

        *Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2015, a copy of the foregoing Statement of Interest was filed electronically via the Court's ECF system, through which a notice of the filing will be sent to all counsel of record.

                 /s/ Lawrence Rosen
                 LAWRENCE ROSEN