UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 2599
Master File No. 15-2599-MD-MORENO
Case No. 14-24009-CV-MORENO

IN RE:

TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION

_____

THIS DOCUMENT RELATES TO ALL
ECONOMIC LOSS CLASS ACTIONS

_____/

### ORDER DENYING DEFENDANTS' MOTION TO STAY

THIS CAUSE comes before the Court on Defendants' Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Nissan North America, Inc., Ford Motor Company, and Subaru of America, Inc. (collectively "Defendants") Motion to Stay Based on the Primary Jurisdiction of the National Highway Traffic Safety Administration ("Motion") [D.E. 610], filed on July 17, 2015. Plaintiffs filed a Response [D.E. 647] on August 13, 2015. Defendants filed a Reply [D.E. 700] on September 11, 2015. The Court has carefully considered the parties' written submissions and applicable law.

I.     **LEGAL STANDARD**

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (discussing abstention, generally); *see also England v. Louisiana State Med. Exam'rs*, 375 U.S. 411, 415 (1964) ("When a Federal court is properly appealed to in a case over which it

1

has by law jurisdiction, it is its duty to take such jurisdiction." (discussing abstention, generally) (quoting *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909))). Notwithstanding this general proposition, courts have fashioned various abstention doctrines applicable in limited circumstances. *See Colorado River*, 424 U.S. at 813–15; *England*, 375 U.S. at 415–16.

The primary jurisdiction doctrine is such a doctrine. *See Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000). The doctrine is "'concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 302 (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 63 (1956)); *see also Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 417 (5th Cir. 1976) ("The doctrine of primary jurisdiction has evolved as a means of reconciling the functions of administrative agencies with the judicial function of the courts."). The doctrine "'is a matter of deference, policy and comity, not subject matter jurisdiction.'" *Karhu v. Vital Pharm., Inc.*, No. 13-60768, 2013 WL 4047016, at *4 (S.D. Fla. Aug. 9, 2013) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008)).

The primary jurisdiction doctrine applies to "claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Boyes*, 199 F.3d at 1265. More specifically, a court may apply the doctrine when "enforcement of a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ." *W. Pac. R.R. Co.*, 352 U.S. at 64. As "no fixed formula exists for applying the doctrine," courts should assess on a case-by-case basis whether the reasons for the creation of the doctrine are present and whether "the purposes it serves will be aided by its application."[1] *Id.*

---

[1] The Court notes that to determine whether the primary jurisdiction doctrine should apply, some courts have applied a four-factor test: "(1) the need to resolve an issue that (2) has been placed by Congress

2

The doctrine is rooted in: (1) the desirability of expert and specialized knowledge of agencies, and (2) the need for uniformity. *See id.*; *Boyes*, 199 F.3d at 1265 (stating that the "main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation"). Accordingly, with regards to the expert and specialized knowledge purpose, invoking the primary jurisdiction doctrine would be appropriate when the matter before the court "involves technical questions of fact uniquely within the expertise and experience of an agency," but would be inappropriate when the "standards to be applied . . . are within the conventional competence of the courts." *Nader*, 426 U.S. at 305. With regards to the need for uniformity purpose, invoking the doctrine would be inappropriate when the Court would not unduly interfere with the administrative process. *See Boyes*, 199 F.3d at 1265 ("The primary jurisdiction doctrine is . . . concerned with protecting the administrative process from judicial interference.").

The doctrine should be used conservatively given the Court's "virtually unflagging obligation to exercise jurisdiction" over cases appropriately before it. *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1238 (S.D. Fla. 2014) (internal quotation marks omitted). The primary jurisdiction doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *In re Horizon Organic Milk*, 955 F. Supp. 2d at 1349 (internal quotation marks omitted).

## II.   ANALYSIS

Here, Defendants seek a six-month stay of all matters on the Economic Damages Track, invoking the primary jurisdiction of the National Highway Traffic Safety Administration

---

within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales*, 955 F. Supp. 2d 1311, 1348 (S.D. Fla. 2013). This test would not lead to a different result given that the amorphous fourth element requires the same analysis as that detailed throughout this Order.

3

("NHTSA"). While determination of the existence of a motor vehicle defect is within NHTSA's jurisdiction, *see* 49 U.S.C. § 30166, such a stay would be inappropriate given the nature of the claims before the Court.

Plaintiffs' claims fall within the conventional competence of the Court. Plaintiffs bring claims alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Magnuson-Moss Warranty Act. Additionally, they bring common and state law claims alleging, *inter alia*: fraudulent concealment, breach of implied warranty, unjust enrichment, negligence, and violations of various state consumer protection statutes. Courts routinely hear these types of claims. While the claims may be premised on the existence of a vehicular defect, courts routinely make determinations regarding such defects. Accordingly, the claims before the Court do not involve "technical questions of fact uniquely within the expertise and experience of an agency," rather, the issues raised "are within the conventional competence of the courts." *Nader*, 426 U.S. at 305.

Furthermore, the pending claims do not raise a need for uniformity. The Court appreciates the complexity of a national motor vehicle recall, particularly when many millions of vehicles are affected. However, the Court's determination of the pending claims and the underlying issue of the purported defect will not impede NHTSA's progress on its investigation and recall, nor should it impact Defendants' ability to comply[2] with NHTSA's orders. Defendants fail to point to any direct impairment to NHTSA's investigation or recall processes

---

[2] Defendants' suggestion to the contrary is not persuasive. ("[R]eplacing the affected inflators on an expedited basis is, or should be, everyone's top priority. Granting a stay of this case would allow NHTSA, the automakers, and Takata to focus their efforts on this important and time-consuming task." (Mot. at 11–12)). The Court is confident Defendants can both defend lawsuits and abide by NHTSA's orders.

4

that a determination from this Court regarding the vehicles' purported defect would have.[3] Indeed, the United States Government filed a Statement of Interest indicating it believes the actions may proceed in tandem and NHTSA's processes may be helped by the ongoing litigation. Specifically, the Government stated:

> The United States files this Statement to inform the Court that it does not believe that a stay is necessary to protect the integrity of NHTSA's defect investigation, the implementation of a coordinated remedy program, or otherwise. The requested six-month stay of this litigation is not now necessary to allow the agency's administrative processes to proceed. Instead, NHTSA believes that its regulatory and investigative activities may proceed in parallel with—and indeed may benefit from—the continued pendency of this litigation.

(D.E. 692 at 1–2).[4]

While Plaintiffs' claims seeking recall-related injunctive relief from the Court would have raised a closer question regarding the need for uniformity, and thus, the suitability of invoking the primary jurisdiction doctrine for those claims, Plaintiffs state they "do not intend to seek such recall-related injunctive relief and agree to the striking of these particular paragraphs from the Complaint." (Pls.' Corrected Omnibus Resp. at 120–21). The Court notes that Plaintiffs do seek other injunctive relief. (*See, e.g.*, Pls.' Corrected Omnibus Resp. at 121; 2d Am. Compl. ¶ 716). Should that injunctive relief seek the Court's involvement in matters that would unduly and directly interfere with NHTSA's investigatory and regulatory functions, the Court may again address the suitability of staying those injunctive claims.

---

[3] Defendants argue that inconsistent findings as to defectiveness from the Court and NHTSA may lead to public confusion, and thus, have an indirect effect on the recall. However, to the extent any such confusion would exist, this indirect effect is insufficient to support a stay on primary jurisdiction grounds and overcome the Court's virtually unflagging obligation to exercise jurisdiction over cases properly before the Court.

[4] While the Government's statement is not binding upon the Court, the Court largely agrees with the Government's perspective with regard to the lack of interference of the pending claims with NHTSA's investigatory and regulatory activities.

5

In support of their motion to stay the claims at issue, Defendants consistently argue that the claims would be more efficiently addressed by the Court after NHTSA makes a determination as to the purported vehicular defect. However, this argument is unavailing for two reasons. First, judicial efficiency is not an independent factor to be considered when invoking primary jurisdiction. *See generally Nader*, 426 U.S. 290; *W. Pac. R.R. Co.*, 352 U.S. 59; *Karhu*, 2013 WL 4047016; *Sanchez-Knutson*, 52 F. Supp. 3d 1223; *In re Horizon Organic Milk*, 955 F. Supp. 2d 1311 (none reference efficiency as a factor to consider in analyzing whether the primary jurisdiction doctrine should apply). Second, as a practical matter, it may take years for NHTSA to reach a conclusion as to the existence of any defect, or NHTSA may not reach any conclusion regarding the purported defect. Should that be the case, this MDL could be stayed for years with no narrowing of the issues—hardly an efficient outcome.

Defendants additionally assert that undertaking discovery while many questions remain about the root cause of the purported airbag defect will result in a needless waste of resources. However, this argument ignores that determining the precise cause of a central issue of litigation is often a primary purpose of the discovery process. Staying the claims on the Economic Damages Track will, however, generate inefficiencies in the discovery process. The Court has ordered "discovery on the underlying products liability cases" on the Personal Injury Track to be "coordinated with the Economic Damages Track" (D.E. 393 at 1) because discovery of claims on both tracks will necessarily overlap to some extent. Staying one of these tracks would erase the efficiency of coordinated discovery.

### III.   CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Motion [D.E. 610] is **DENIED**.

DONE AND ORDERED in Chambers, in Miami, Florida, this 21 day of September, 2015.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record