UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 2599
Master File No. 15-2599-MD-MORENO
14-24009-CV-MORENO

IN RE:

**TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION**

THIS DOCUMENT RELATES TO
ECONOMIC DAMAGES TRACK CASES

PAMELA KOEHLER, et al., individually and on behalf of all others similarly situated,

        Plaintiffs,

  v.

TAKATA CORPORATION, TK HOLDINGS, INC., HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR CO., INC., BAYERISCHE MOTOREN WERKE AG, BMW OF NORTH AMERICA, LLC, BMW MANUFACTURING CO., LLC, FORD MOTOR COMPANY, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., AND TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., MAZDA MOTOR CORPORATION, MAZDA MOTOR OF AMERICA, INC., MITSUBISHI MOTORS CORP., MITSUBISHI MOTORS NORTH AMERICA, INC., NISSAN MOTOR CO., LTD., NISSAN NORTH AMERICA, INC., FUJI HEAVY INDUSTRIES, LTD., SUBARU OF AMERICA, INC.,

        Defendants.

**DEFENDANTS TAKATA CORPORATION'S AND TK HOLDINGS INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Defendants Takata Corporation and TK Holdings Inc. ("Takata") submit this memorandum pursuant to the Court's invitation at the October 23, 2015 hearing on the motions to dismiss.  Takata's supplemental memorandum focuses on Plaintiffs' failure to allege plausible facts to meet the "by reason of" proximate causation requirement.

The "by reason of" language of RICO (18 U.S.C. § 1964(c)) requires proximate cause, the effect of which is to limit RICO damage actions to injuries "direct[ly]" caused by RICO violations.  *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-69 (1992).  While the plaintiffs' bar has attempted to apply RICO to consumer product liability claims on very few occasions over the years, such litigation has met with notable failures both in trial courts and on appeal, including in the Eleventh Circuit.  *See, e.g.*, *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521-22, 524 (11th Cir. 2000) (no RICO claim in automotive recall context); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 2 (2010) (plurality); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008).  Proximate causation has proved to be a significant obstacle in those failures.  *See, e.g.*, *McLaughlin*, 522 F.3d at 228.  No RICO claim has been successfully maintained to date in the automotive context, and product defect litigation generally has been pursued without relying upon RICO.  *See, e.g.*, *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 915 (C.D. Cal. 2011) (RICO claim rejected); Oct. 23, 2015 Hearing Transcript ("Hr'g Tr.") [DE 826] at 46:22-47:15 (Plaintiffs' counsel identified non-RICO case *In re Toyota Motor Corp.* when asked to identify their best automobile defect case during discussion of RICO).  Indeed, RICO claims did not even appear in 96% of the class action complaints originally consolidated into this MDL.

The causal chain which predicates Plaintiffs' RICO claim here is extended, complex, and, at each step, subject to multiple causal factors other than the alleged RICO violation "by reason

1

102578156.1

of" which Plaintiffs allege economic loss.[1]  For the RICO violation, Plaintiffs allege a scheme to hide a defect in Takata inflators.  Compl. [DE 579] ¶¶ 416-17.  That defect is alleged to be the "break down" of Phase Stabilized Ammonium Nitrate (PSAN) "over time" from "absorb[ing] moisture from the atmosphere."  *Id*. ¶ 206.[2]  At the other end of the causal chain is an alleged diminution in value, measured in dollars.[3]  At multiple points in the long causal chain through which Plaintiffs seek to link the alleged RICO violation with financial loss, both the allegations of the SAC, the documents it references,[4] and the materials Plaintiffs have cited to the Court show that causation here is far from the "direct" effect required by the law.

First, Plaintiffs do not allege that they specifically bargained for inflators when they bought their cars, refuting any assertion that they overpaid for the vehicles based on the market

---

[1] During the October 23 hearing on the motions to dismiss, Takata presented a simple chart which sought to neutrally capture Plaintiffs' theory of causation attached hereto as Exhibit A.

[2] The Complaint records the historical association of ruptures with manufacturing equipment and processes, but takes issue with it, referring instead to environmental moisture.  *Id.* at 206. NHTSA very recently reported that "two risk factors" have been identified: "first, age of the inflator, and second, long-term exposure to high absolute humidity conditions."  Ex. B (NHTSA, Takata Coordinated Remedy Public Information Meeting, Prepared Remarks of F. Borris, S. Ridella, S. Yon, J. Timian, (Oct. 22, 2015) at 10-11, available at http://www.safercar.gov/rs/takata/images/"pdfs/Final_Staff_Scripts_PublicInfoMtg.pdf).  The importance of these environmental conditions is dramatically illustrated in the ballistic testing that has been done.  *Id.* at 8.  Testing ruptures are clearly clustered in the Gulf Coast area and particularly in Florida.  *Id.* at 9.  That PSAN alone is not considered a defect today is evidenced by NHTSA's current position that Takata's PSAN passenger inflators for model years 2008 and later are not being recalled.  *Id.* at 4.

[3] Any benefit of the bargain claim must converge on a loss of market value as well, for the simple reason that if the vehicle has the same market value with and without the Takata inflator, the benefit has no market value and no loss has been sustained.  In any event, RICO does not allow for a benefit of the bargain measure of damages relating to the original purchase or lease of the Class Vehicles, thereby defeating Plaintiffs' argument for proximate causation based on having initially overpaid for their vehicles.  *See Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1350 (11th Cir. 2008); *McLaughlin*, 522 F.3d at 228; *see also In re Oil Spill*, 802 F. Supp. 2d at 728.

[4] *See* Pls.' Corrected Omnibus Response in Opp'n [DE 658] at 11 ("The court may also consider other documents to be part of the pleadings if the plaintiff refers to the documents in the complaint and those documents are central to the plaintiff's claim.").

value of the Takata inflators.  *See, e.g., id.* ¶ 73 (characterizing bargain as one for vehicles).

Second, Plaintiffs rely on NHTSA recalls to define the class and their claims (*see e.g., id.* ¶¶ 195-96), but the recalls extend well beyond the alleged risk from the Inflator Defect.[5]  Third, Plaintiffs' theory of causation proceeds next from recall to market stigma.  Compl. [DE 579] ¶ 72.  Market stigma on its face is perception and not necessarily a direct function of actual, concealed defect.  In this case, because the alleged stigma flows from the recalls, it is broader than the alleged scheme to defraud.  Said another way, both the way in which NHTSA administers and defines the scope of the recalls and the resulting vagaries of market perception of the recalls are all intervening causes breaking any causal link between the alleged fraud and injury resulting from market stigma.  *See, e.g., In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico on Apr. 20, 2010* ("*In re Oil Spill*"), 802 F. Supp. 2d 725, 728 (E.D. La. 2011) ("Plaintiffs have alleged a causal connection between [defendant]'s alleged fraud and Plaintiffs' injuries that is too attenuated to state a RICO violation").

In addition, every Plaintiff has or will have the opportunity to replace their allegedly defective inflators at no cost.[6]  Any conceivable subsequent stigma is not "by reason of" any alleged defect.  Such negation of future economic loss by the recall/replacement process renders the future RICO injury speculative.  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998).  Finally, Plaintiffs may choose not to replace their airbags,[7] despite the opportunity to

---

[5] The nationwide recalls extend to inflators that are less than five years old and inflators that have not been exposed over long periods to conditions of high absolute humidity and temperature cycling.

[6] Most Plaintiffs admittedly already have replaced the inflator modules.  Compl. [DE 579] ¶¶ 76-79, 81, 83, 87, 90, 93-94, 100, 104-05, 115-17, 119, 121-22, 126-27, 133, 135-36, 143, 145, 150, 153-57, 159-60, 162, 164, 170-71, 173, 176, 178, 180.

[7] Many Plaintiffs have not alleged any effort to have their airbags replaced.  Compl. [DE 579] ¶¶ 80, 84, 86, 88, 91-92, 95- 98, 102-03, 110, 112, 114, 116, 120, 128-32, 134, 137-39, 141-42, 144, 146-49, 151-52, 158, 161, 165-69, 174, 177, 179, 182-87).

3

do so for free, creating another intervening cause.  *See McLaughlin*, 522 F.3d at 226 ("when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions").

RICO was never meant to be used in this context.  The limitation of civil RICO's treble damages to injury to business or property proximately caused by the RICO violation is necessarily restrictive (*see Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)) and the case law requires a RICO plaintiff's loss to be "clear and definite" (*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)).  Notably, the Eleventh Circuit already has issued binding precedent determining that a violation of the Safety Act by failing to notify NHTSA cannot be a basis for civil RICO's treble damage remedy: "[t]o permit plaintiffs to convert non-compliance with the notification requirement found in the Safety Act, a regulatory statute with its own administrative remedies, into mail and wire fraud and thereby to maintain a civil RICO action would upset the purposes and contradict the intent of the statute." *Ayres v.Gen. Motors Corp.*, 234 F.3d at 521-22, 524.  Thus, Plaintiffs' strenuous argument that RICO liability should extend to alleged fraud on NHTSA (Hr'g Tr. [DE 826] at 55:18-56:7) already has been soundly rejected by the Eleventh Circuit.

Plaintiffs are left to argue that they have enough to get by a motion to dismiss because some Takata inflators are being used as replacements.  But the very presentation Plaintiffs cite to the Court reflects NHTSA's determination that the new inflators being used as replacements do not have the risk factors (*see supra* at n.2) that caused the recalls.  Although, for a "limited number of people" (Ex. B at 19), the "temporary" or "interim" replacement inflators are the same in design as those they are replacing, the replacement inflators are new and have not been exposed at all to environmental conditions, much less over multiple years of high absolute

4

humidity (*id.* at 15). And critically, most replacement inflators are not even made by Takata—of the estimated 2.8 million inflators being shipped this month, NHTSA states that 70 percent will have an inflator made by a supplier other than Takata. *Id.* at 14.[8]

While this is a motion to dismiss, the issues in the case already have been subjected to massive inquiry by NHSTA and others, and Plaintiffs have taken full advantage of the wealth of information that is now available. The problems that drive this motion to dismiss are structural—they go to the nature of the highly speculative risk that predicates the case and to Plaintiffs' core theory of causation, a theory that cannot change because it is defined and controlled by a recall process that already is underway.

---

[8] While Plaintiffs have featured the difficulties some drivers have had in getting replacement inflators, NHTSA reports two essential facts. First, the replacement program has been orchestrated by NHTSA so that the first inflators being replaced are inflators being used in the high absolute humidity geographic areas. In those higher risk areas, while it is not universally true for all of the manufacturers and all of the recalls, NHTSA reports that "the majority of the recall programs are already underway and most of the manufacturers have enough repair parts to remedy vehicles . . . ." Ex. B at 17.

5

Dated: October 30, 2015                    Respectfully submitted,

| **CARLTON FIELDS JORDEN BURT, P.A.** | **DECHERT LLP** |
|---|---|
| By: /s/ Stephen J. Krigbaum<br>Stephen J. Krigbaum (Fla. Bar No. 978019)<br>(skrigbaum@cfjblaw.com)<br><br>CityPlace Tower – Suite 1200<br>525 Okeechobee Boulevard<br>West Palm Beach, FL 33401<br>Tel: (561) 659-7070<br>Fax: (561) 659-7368 | By: /s/ David Bernick<br>David Bernick (admitted *pro hac vice*)<br>(david.bernick@dechert.com)<br><br>1095 Avenue of the Americas<br>New York, New York 10036<br>Tel: (212) 698-3500<br>Fax: (212) 698-3599<br><br>Hope S. Freiwald (admitted *pro hac vice*)<br>(hope.freiwald@dechert.com)<br><br>Benjamin R. Barnett (admitted *pro hac vice*)<br>(ben.barnett@dechert.com)<br><br>Cira Centre<br>2929 Arch St.<br>Philadelphia, PA 19104<br>Tel: (215) 994-4000<br>Fax: (215) 994-2222 |

*Counsel for Defendants Takata Corporation and TK Holdings Inc.*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on October 30, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

                /s/ Stephen J. Krigbaum
                Stephen J. Krigbaum