



Takata Coordinated Remedy Public Information Meeting
Prepared Remarks of:
Frank Borris, Acting Associate Administrator for Enforcement
Stephen Ridella, Director, Office of Vehicle Crash Worthiness Research
Scott Yon, Chief, Vehicle Integrity Division, Office of Defects Investigations
Jennifer Timian, Chief, Recall Management Division
National Highway Traffic Safety Administration
U.S. Department of Transportation
Washington, DC
Thursday, October 22, 2015
As Prepared for Delivery

**Inflators 101: What is an inflator and what is the problem? (Stephen Ridella)**

I'm here to give you a little Inflator 101—that is, what are these things we are so interested in and what is the problem with them? Prior to joining the agency, I spent a few years designing and testing air bags for new vehicles, so I've seen a lot of inflators and a lot of tests to show how they work.

Inside every air bag is a device called an inflator. And the inflator's job is exactly what it sounds like: to make the air bag inflate when triggered. Let's look at how that happens.

This slide shows the inside of a typical driver inflator and a typical passenger inflator. It looks complicated and it is! It's really advanced science! But we can make it easy to understand the basics. When there's a crash, sensors in the vehicle send signals to a control unit for the air bag. Basically, the control unit is a tiny computer. And in just a fraction of a second, the control unit decides if the crash is big enough to need an air bag to protect the people in the vehicle.  If it is big enough, the control unit sends the signal to the inflator. This part here and here, called the "igniter" receives the signal, which ignites a small charge, like a spark, which then ignites the main fuel.  In air bag inflators this fuel is called "propellant" and we'll be talking a lot more about propellant today. Propellant can be pressed into many different shapes and sizes, but in recalled Takata driver inflators, the propellant is shaped into "batwings" and in Takata's passenger inflators the propellant is shaped into wafers of various thicknesses. So getting back to

1

11945-102315-v1

how this works…Once the propellant is ignited, there is a chemical reaction that releases a lot of hot gases almost immediately. It happens so fast it takes just a few more fractions of a second – we're talking 25 to 50 1,000ths of a second. And it sends the gases out these holes in the inflator into the air bag, which is folded up inside the air bag unit. In a crash, those gases inflate the air bag before the person in front of it ever gets close to the dashboard or steering wheel, or anything else in the car. A frontal air bag protects the head and chest, giving extra protection on top of that already provided by the seat belt. Everything I just described happens in less than the blink of an eye, or about 1/10th of a second.

NHTSA estimates that frontal air bags have saved nearly 43,000 lives since they became a required safety feature, and they continue to save many lives each year. Air bags have evolved far beyond just frontal bags, and now include seat mounted side bags, side curtain bags, knee bags, center console bags, and rear seat inflatable seat belts. These newer air bags have been specifically designed to meet increasingly tougher standards for side impact and rollover crash protection. Many other designs are also in development. At the agency, my team of engineers and researchers create test procedures that may require manufacturers and suppliers to develop air bags and car structures that provide more and more protection to people inside the vehicle.

But, some air bags have had problems. The reason we are here today is because certain inflators made by Takata and installed in Takata air bag modules—that's just a term to describe the whole air bag unit—do not function properly in a frontal crash. And the results are devastating. This video shows, in very slow motion, a test that NHTSA ran of a typical Takata passenger air bag inflator being deployed in a sealed chamber. This is a normal deployment. You might see some small flashes and then a rush of gas, that's what you see with some gases coming out of the inflator holes. However, in this next very slow motion video, which also shows a test NHTSA ran, something goes horribly wrong. And this is in very slow motion. A catastrophic failure inside the inflator shatters the steel tubing of the inflator and sends metal fragments and shrapnel all over the test chamber. This is what we are talking about when we say rupture. By the way, this is also extremely loud. We don't have sound on this video, but it is an explosion, so when it happens only 1 or 2 feet in front of you in a crash it must be unbelievably loud. And in a real vehicle in a crash, these metal shards and shrapnel you see coming out here, can cut through the air bag and shoot out toward a person in the vehicle. This has happened

11945-102315-v1

many times now and people have been injured and even killed when these Takata inflators malfunction in this way.

As will be explained in more detail in this meeting, we believe that the reason these inflators are malfunctioning in this way has something to do with the type of propellant Takata is using and how Takata engineers it. That's the fuel I explained before, right here. That fuel is called phase-stabilized ammonium nitrate, or "PSAN" for short. That's P. S. A. N.  PSAN. And many, many scientists and engineers are trying to figure out what exactly is going wrong. We don't know yet, but the best and most current information is pointing to some problem with the way this Takata PSAN propellant changes as it gets older and how it burns differently, possibly because of those changes. Again, we'll talk more about that later.

These inflators and others from Takata with similar technology have been installed in millions of vehicles over the last 15 years. What you are about to hear in the coming presentations is what the agency has been doing through its Coordinated Remedy Program Proceeding, the facts the agency now knows, and some analysis based on that information. We'll also try to address questions that vehicle owners may have based on all of this information.

That concludes the overview of how an inflator works and what the defect is that we're discussing today.

**Coordinated Remedy Program Proceeding: What is the status? (Frank Borris)**

The history of rupturing Takata inflators is long and complex, dating back to May of 2004. For several years we believed that manufacturing errors caused the ruptures. We no longer believe that to be true. Today the exact cause of the ruptures, or the "root cause," is unknown, though it seems to be related to environmental conditions that affect inflators as they age.

I am not going to detail the history of this investigation here, but we have prepared a history of events that will be placed in the Docket at www.regulations.gov, in Docket NHTSA-2015-0055, where it will be publicly available.

On May 18th of this year, at NHTSA's urging, Takata filed four Defect Information Reports, acknowledging on a national basis that a defect exists in certain types of Takata's driver and passenger air bag inflators. As explained in the Defect Information Reports (15E-040, 15E-041, 15E-042 and 15EV-043), Takata's understanding of the defect was that, "the inflator ruptures appear to have a multi-factor root cause that includes the slow-acting effects of a

persistent and long term exposure to climates with high temperatures and high absolute humidity." The Defect Information Reports cover certain <u>driver</u> inflator types from the start of production through the end of production. These driver inflators have propellant like Mr. Ridella explained, that is in the shape of a "batwing". And all of these inflators with the "batwing" propellant will be replaced as part of the recalls currently underway.

Other Takata Defect Information Reports—for the passenger inflator types—are more limited. The passenger defect reports cover certain passenger inflator types and certain makes and models from the start of production through model year 2008 vehicles. So far, for vehicles that are model year 2008 and later, there have been no ruptures of Takata inflators in vehicles or in routine product testing. However, the agency is monitoring this situation very closely.

Since Takata's defect filings in May of this year, the 12 affected vehicles manufacturers have started recall campaigns. The remedy programs to replace the bad inflators with new ones are in various stages, as Jennifer Timian, Chief of the Recall Management Division, will explain in more detail shortly.

As of October 20, 2015, the agency is aware of 89 driver and 32 passenger inflator rupture events, with 98 alleged injuries as a result of a rupturing Takata inflator. Some of these injuries have been serious and include cuts or lacerations to the face or neck, broken or fractured facial bones, loss of eyesight, and broken teeth. The agency is also aware of seven deaths in the United States—and one more death in another country—that we have determined were caused by the rupture of the driver inflator. This means that, in round numbers, nearly 1 in 10 driver inflator ruptures has resulted in death. So far, a rupture of the passenger inflator seems less likely to cause the same severity of injury that the driver inflator causes since not 1 of the 32 passenger inflator ruptures has resulted in death.

Because of the severity of the injuries people have suffered, the risk of serious injury or death from a rupture, the size of the affected vehicle population, as well as the number of affected vehicle manufacturers, and the unanswered questions surrounding the root cause of the ruptures, the agency opened a Coordinated Remedy Program Proceeding for the Replacement of Certain Air Bag Inflators on June 5th of this year.

Since June, the agency has conducted the Coordinated Remedy Program Proceeding with the purpose of determining whether the agency needs to take action beyond its routine operating procedures, and if so, what actions would be appropriate. Specifically, the agency is examining

whether it is appropriate to accelerate the remedy programs of the vehicle manufacturers to ensure that the American public is adequately protected. To do this, we have been working to identify problems in the process of replacing the recalled Takata air bag inflators, and to identify possible solutions.

The recalls of Takata air bag inflators involve more vehicles needing repair than any other automotive recall in American history. Typically, each vehicle manufacturer's recall is handled separately, which usually makes sense since in most cases the defect is specific to that manufacturer's vehicles. But in this case, the defect occurs in a part used by many vehicle manufacturers. Dealing with each recall separately would not address issues that affect multiple vehicle manufacturers and their customers, such as whether there are enough parts available to fix all the vehicles that need to be fixed within an acceptable timeframe. To speak plainly, the nearly 23 million replacement inflators needed simply won't be available within the next month, or even the next 6 months. Through the Coordinated Remedy Program Proceeding we are looking at how to address this, and you'll hear more about that today.

As explained in the June 5th Federal Register notice, this Proceeding has been, and remains, open to the public, and includes a public docket where people can provide comments to the agency. In addition to taking public comment, through this Proceeding the agency has gathered specific, targeted information from the affected vehicle manufacturers, parts suppliers, and testing laboratories, to better understand the current scientific analysis of the problem and the challenges faced across the industry in conducting these recalls.

How did we do this?  First, we asked questions. And all of these questions have been publicly available in our docket. We sent written questions to the vehicle manufacturers affected by the recalls asking for information about their remedy plan, their supply chain, their anticipated timelines for obtaining remedy parts, and any challenges they faced or foresaw. We sent questions to Takata about its remedy part production capabilities and timelines for increased production. And we also sent questions to other major suppliers who produce air bag inflators, to learn about their involvement in producing remedy parts, and their capabilities to do so going forward, including any plans or ability to increase that production. The agency also sent questions to other vehicle manufacturers who have used Takata air bag inflators that are not currently included in the recalls, since these manufacturers could be affected if the Takata recalls expand to other inflator types in the future. Again, all of our questions, and the responses we

11945-102315-v1

received from the industry, are available for public inspection in our public docket, available at www.regulations.gov, docket NHTSA-2015-0055.

In addition to written questions and responses, the agency had many meetings and conversations with the involved vehicle manufacturers and suppliers. The agency also met with Takata and multiple testing companies who are conducting a variety of tests to try to determine what it is exactly that causes these inflators to rupture. Throughout this process, the agency has gathered the best data to determine the risk factors for a rupture.

A dedicated team of agency staff has reviewed and analyzed all of this data and information to develop knowledge of this problem that is both broad and deep.

To summarize, staff across many different offices within the agency have been working diligently over the past four and a half months to learn as much as possible about the many problems and challenges presented by the Takata inflator recalls. In the coming weeks, we expect to provide the Administrator with the information he needs to make a decision about how to proceed.

**Current Data, Part I (Scott Yon)**

The reason it matters when an air bag inflator ruptures is because of the people whose lives are forever changed when it happens to them, or their loved one. So far, seven people have been killed in the United States because their air bags ruptured. All seven of those people were sitting in the driver seat. As Mr. Borris stated, the agency is aware of 89 driver and 32 passenger inflator rupture events, with 98 alleged injuries as a result of a rupturing Takata inflator. Some of these injuries have been serious including broken and fractured bones and hearing loss. People have lost an eye. People have been cut when the metal fragments from the inflator, similar to shrapnel, shot out of the air bag at them. As Mr. Borris mentioned, so far, a rupture of the passenger inflator seems less likely to cause the same severity of injury that the driver inflator causes since not 1 of the 32 passenger inflator ruptures has resulted in death. In round numbers, almost 1 in 10 driver inflator ruptures has resulted in death.

Any time an inflator ruptures, the consequences for the people in the car, van, or truck are extremely serious.

Right now there are 12 car, van, and truck manufacturers in the United States that are involved in the Takata air bag inflator recalls. They are BMW, Fiat Chrysler, Ford, General

11945-102315-v1

Motors, Honda, Mazda, Mitsubishi, Nissan, Subaru, and Toyota, and two smaller companies that produce vans and large trucks called Daimler Trucks North America and Daimler Vans.

All together, these 12 companies have made approximately 19 million vehicles that need to have the air bag inflator replaced. But more than 4 million of those vehicles have a defective part on both the driver side and the passenger side and so they need 2 inflators replaced.  That means that for the 19 million vehicles, the vehicle manufacturers need approximately 23 million replacement inflators. And these numbers are just for the United States – they don't include any of the vehicles in other countries around the world that need replacement inflators also.

Not all of the manufacturers are in the same position or have the same problems in trying to fix all of these vehicles. One manufacturer needs about 10 million replacement inflators for their 6.5 million recalled vehicles. Obviously, that manufacturer has a significant portion of all the vehicles and inflators that need to be fixed.  Another manufacturer has just 2,500 vehicles that need to have 1 inflator replaced.

With such big differences in the number of vehicles that need to be fixed, it turns out that most of these vehicles and inflators are covered by just five of the manufacturers who have vehicles affected by both driver and passenger inflator recalls.  Those five manufacturers are BMW, Fiat Chrysler, Ford, Honda, and Mazda. Those 5 manufacturers cover about 18 million of the 23 million inflators that need to be replaced and about 14 million of the 19 million vehicles that need to be repaired.

While we have been gathering information in the Coordinated Remedy Proceeding, we have also continued our normal work in our ongoing investigation of the Takata inflators. During that investigation the agency has learned of a new potential safety concern involving an air bag inflator Takata produces that has not been included in any of Takata's recalls, though some vehicle manufacturers are recalling parts. This additional inflator, called an SSI-20, is primarily used in side air bags and has been added to our investigation.

Since June of this year, both General Motors and Volkswagen have reported SSI-20 rupture incidents to the agency. Currently, General Motors has a recall for 395 model year 2015 vehicles. Those vehicles, all model year 2015, are the Buick LaCrosse, the Cadillac XTS, the Chevrolet Camaro, the Chevrolet Equinox, and the Chevrolet Malibu.

To make sure that the agency is learning about all ruptures as quickly as possible, on July 27 of this year NHTSA issued a standing General Order to 25 vehicle manufacturers and 9

11945-102315-v1

inflator manufacturers, requiring each company to report to NHTSA any credible report of an inflator rupture, including those that happen during routine lot acceptance testing. This will help us to know about, and keep track of, as many inflator ruptures as possible.

Based on these events, the SSI-20 inflator is now part of the Takata investigation, and NHTSA will continue to keep a close eye on this matter to make sure that all SSI-20 inflators that could have this problem are taken out of vehicles.

So what causes these inflators to rupture?  Many different people and groups have been studying this problem, including skilled scientists and engineers from all around the world. And so far, no one can say for sure.

Takata has been studying this problem for several years. In addition to normal product testing, they have done a variety of tests to better understand how the propellant ignites and burns. One way Takata has been testing is using inflators that have been taken out of vehicles when they were replaced as part of recalls and repair programs. They take these returned inflators and do what's called "ballistic testing."

In ballistic testing they intentionally send an electrical signal to set off the inflator, the same as if it was in a car crash. The tests are done in a special chamber with instruments that record data on what happens. So far, Takata has done more than 115,000 of these ballistic tests on returned inflators and is now doing between 4,000 and 5,000 tests each week. Out of those 115,000 total tests, approximately 450 inflators have ruptured.

Something that's been seen in those tests but is not yet understood, is that driver inflators and some types of passenger inflators rupture at a rate of about 1 to 2 ruptures for every 1,000 ballistics tests but other passenger types are rupturing at rates of 10 to 20 ruptures for every 1,000 ballistics tests, roughly 10 times more often.

Takata has also hired third-party research and testing companies to aid in its investigation, including the High Pressure Combustion Laboratory at Pennsylvania State University, and the Fraunhofer Institute, a well-respected engineering research center in Germany. While the Fraunhofer Institute believes that age of the inflator and long-term exposure to high temperatures and high absolute humidity are important factors leading to inflator rupture, they have not determined the definitive cause of the ruptures.

NHTSA has also been doing testing. As a first step, the agency wanted to independently verify the test results reported by Takata. So far, NHTSA's testing has provided similar failure

11945-102315-v1

rates as those reported by Takata. This seems to verify the Takata results and the data Takata's testing is producing.

Several vehicle manufacturers have formed a group called the Independent Testing Coalition, or the "ITC". The ITC is paid for by those vehicle manufacturers and has contracted with Orbital ATK, in Utah, which is another leading testing and research company. Orbital's work is primarily focused on establishing the cause of the inflator ruptures.

Several vehicle manufacturers have also conducted their own testing to try to definitively determine the problem and/or to confirm Takata's testing data.

Despite these many efforts by some of the best and brightest minds in science and engineering, the "root cause" for the ruptures remains unknown at this time.

Something we have learned, that *everyone* working on this problem agrees with, is that in the passenger inflators with long-term exposure to the HAH conditions, the propellant wafers are expanding and getting bigger as they age. As the wafers get bigger, they continue to work the way we expect, until they reach a certain size, at which point the ruptures start happening.

From all of this information, what we have learned is that two main factors help us predict if an inflator will rupture. Those two risk factors are, first, age of the inflator, and second, long-term exposure to high absolute humidity conditions.

Humidity is a measurement of how much moisture is in the air. Most of us know about relative humidity; that's the number we hear in the daily weather forecast. If the forecast says relative humidity will be 75 percent, that means the air will carry 75 percent of the maximum amount of moisture it can hold. But that maximum changes with air temperature, because hot air can hold more moisture than cold air. Having more moisture is what makes it have high absolute humidity. That's the basic idea. In terms of places that people might be familiar with, high absolute humidity is why some places feel tropical, like in southern Florida, the Caribbean, or along the Gulf Coast. Now if it's snowing in Boston or Denver or up in Alaska, there is obviously lots of moisture in that air, and it has *relatively* high humidity. But that cold air can't hold as much moisture as hotter air can. High absolute humidity can *only* happen with both high temperatures and high humidity.

These two factors—age of the inflator and long-term exposure to high absolute humidity—seem to go hand in hand, since the inflator cannot have long-term exposure to a condition unless it has been around long-term. In this case "long-term" means something more

than 5 years. It's in the window between 5 and 10 years old that ruptures start happening. And the current evidence shows that the inflators that rupture most often are the ones that have been exposed to high absolute humidity for several years. This is not short-term exposure to high absolute humidity like during a two-week vacation or even for five months each winter. It is continued exposure to high absolute humidity year round for multiple years in a row.

Let's look at a map to better understand this. This map shows a dot for inflators Takata has tested based on where the vehicle was repaired. As part of its study of returned inflators, Takata tracks the ZIP code for where each vehicle was repaired. The white dots show all of the tests where the inflator did not rupture. The red dots show all of the tests where the inflator did rupture and the vehicle was repaired in the HAH region. The red and white dots show the results we expect to see based on the risk factors I just discussed. Each of the vehicle manufacturers defines the HAH region a little bit differently, but they all include this area here along the Gulf Coast, and Florida, and including Puerto Rico. The yellow dots are interesting, because they are ruptures in inflators repaired outside of the HAH region. NHTSA and Takata have researched the vehicles that these inflators came out of. And so far, each vehicle we've researched had previously spent several years registered in the HAH region before being repaired in these ZIP codes.

Another factor that can help us understand which inflators are more likely to rupture is test data I mentioned before. In Takata's ballistic testing of replaced inflators, some types of inflators are more likely to rupture than other types.

A final, separate factor helps us predict how likely it is that a person will die if their inflator ruptures. All seven of the U.S. motorists who died as a result of an air bag rupture were sitting in the driver seat. And the one known death outside of the United States was also a person in the driver seat. This could be because there is always someone sitting in the driver seat, but not always in the passenger seat, and so it is simply a matter of increased odds. Or it could be because the air bag inflator, located in the steering wheel, is closer to the driver where instead the passenger's air bag inflator is located in the dashboard and is farther away from the passenger. Or it could be some other reason. We just know that, so far, being in the driver's seat has a higher risk of death when the inflator ruptures.

To summarize, the facts continue to change and we are keeping close track of these developments. Approximately 23 million replacement inflators are needed for 19 million

11945-102315-v1

vehicles made by 12 vehicle manufacturers. And vehicles with the greatest risk of having an inflator rupture are older vehicles that have been exposed to high absolute humidity, continuously over several years.

**Current Data, Part II (Stephen Ridella)**

Building on this knowledge, let's make sense of what those facts mean for developing a risk-based recall priority system. Other than the position of the inflator, on either the driver or the passenger side, each of these risk factors we've been talking about increases the chances that the air bag inflator will rupture and could injure someone in the vehicle.

For example, if you own a vehicle that is starting to get older, say 8 or 9 years old, and the whole time you have owned that vehicle you have lived in a high heat and high humidity region like Miami, then the inflator in your vehicle is more likely to rupture in a crash, than if you have a 3-year-old vehicle in Miami, since that 3-year-old vehicle only has one of the risk factors (being in the HAH region). A 9-year-old vehicle in Miami also presents a greater risk than a 9-year-old vehicle in Ohio or New York, because even though the vehicle in Ohio or New York is the same age, it doesn't have the second risk factor of the constant high heat and high humidity.

But what happens if we add as a factor the risk involved in having a driver inflator versus a passenger inflator or both of those inflators into this risk assessment? Well, it does get a little more complicated. Since some cars have both driver and passenger inflators that are defective, the chances of someone being injured or killed is highest for these vehicles compared to the vehicles that only have a defect on 1 side, either the driver side or the passenger side. The chances of an inflator rupture-related death or injury are next highest for the driver inflators for two main reasons. First, there is always a driver in the vehicle if the vehicle is being driven. We're not quite to driverless cars yet, so we know there's always going to be a driver. But there isn't always a passenger. Second, all of the people who have died because of their inflator rupturing were sitting in the driver seat. That is a pretty strong sign that a defective inflator on the driver side presents a higher risk than the vehicles that only have passenger inflators that need to be replaced.

Since there aren't enough replacement parts to fix every single vehicle right now, today, the vehicle manufacturers need to figure out a way to decide who goes first. Since the point of

11945-102315-v1

recalls by the manufacturers is to keep people safe from unnecessary injury, then we need to make sure that the people with the most chance of being injured have the chance to get their vehicles fixed first.

In order to prioritize the order of recalls to maximize the safety benefit, we asked each of the vehicle manufacturers to do a risk analysis like I just described to help them figure out which vehicles should have first priority for getting replacement parts. The manufacturers also were able to use information about ruptures that have happened in testing, or in cars that were in crashes, and other information that is specific to their vehicles. And the manufacturers also agree with this risk assessment method because it uses the information we have right now to make decisions about how to tackle this problem in a way that is orderly, logical and prioritizes the replacement of the higher risk inflators before lower risk inflators.

As I just mentioned, we asked each of the 12 vehicle manufacturers to do a risk assessment for all of their vehicles that need new inflators using these principles that put safety first, and to put them into three groups. And this is what we found. Group 1, the highest priority group, has approximately 6 million vehicles. This is for all the vehicle manufacturers combined. Then there's Group 2, which is the next highest priority group, and it has approximately 11 million vehicles. Group 2 is the biggest. And finally Group 3, which is the third highest priority group, has approximately 2 million vehicles across all of the manufacturers.  I want to point out that I said Group 3 is the third highest because it's not that these vehicles are not important. They are important and it is important that they get fixed.

Based on all the information we have, for the time being, this system of looking at who has the most chance of getting hurt or killed makes sense for figuring out which vehicles should get remedied first.

We've heard about how many replacement parts are needed. But the question is: how are the vehicle manufacturers going to get these inflators out of vehicles and replace them with safe inflators? Through the Coordinated Remedy Program Proceeding, NHTSA has gathered and analyzed a large amount of information from affected vehicle manufacturers, Takata, and other air bag inflator suppliers that are being called on to provide replacement inflators. Based on all of the responses from these companies, we are reviewing and monitoring the flow of parts from inflator production to delivery to the vehicle manufacturer. Meaning we're monitoring which inflator is coming from which supplier, and which replacement unit, or "kit," the inflator is going

in to, and then which remedy kit is being sent to which vehicle manufacturer as a replacement for the defective Takata inflator.

By way of background, when we talk about "kits," we are talking about the replacement inflator as well as any adaptive parts that are needed for that new inflator to "fit" in the existing air bag unit or module. These adaptive parts are things like brackets and fasteners and other parts that are necessary to make the replacement inflator fit correctly in the air bag unit and stay that way.

Part of why it is so difficult to figure out this problem is because there is not just one Takata inflator model that has this problem. Just as manufacturers will offer one model of a vehicle with many options and alterations, there are multiple models of inflators and different options within those models. And the same is true for all of these inflator kits that will be used as replacement parts.

Similarly, replacement kits are not interchangeable between vehicles or manufacturers. An air bag and all of its various pieces and parts are unique to the vehicle model. Manufacturers work hand-in-hand with suppliers to design a vehicle-specific safety system.  But, because the system is vehicle-specific, you can't just take a part designed for Car A and put it into Car B.

Likewise, you can't put an inflator from company X into a Takata air bag unit and expect it to work.  You can design an inflator from company X to go in a Takata air bag unit, but it has to be specifically designed for that specific unit. Development needs to be done. And that takes time.

Some of the vehicle manufacturers recognized that Takata would not be able to provide all replacement inflators required for these defective inflators in an acceptable amount of time. But the question was: who would, or could, be an alternate inflator supplier? And how long would it take the alternative supplier to get up and running?

NHTSA has been tracking and analyzing Takata's monthly production of replacement kits for some time. The agency recognized that it was unlikely Takata could possibly produce enough replacement inflator kits to meet the demand, which was why we sent questions to other inflator suppliers as part of the Coordinated Remedy Program Proceeding explained earlier. This is what we learned from the responses to those questions, as well as the responses from the vehicle manufacturers.

11945-102315-v1

This flow chart shows the process for getting inflators from suppliers to the manufacturers and ultimately, to the dealers who will replace the defective Takata inflators with these replacement parts. Other than Takata, three other inflator suppliers, Autoliv, Daicel, and ZF-TRW, are making remedy inflators. Together, these four inflator suppliers are scheduled to provide driver inflators to Takata, which Takata will then put into the replacement kits. Only three of the suppliers (Daicel, Takata and ZF-TRW) are scheduled to supply passenger inflators to Takata.

Takata is the main clearing house for the repair kits to be assembled and shipped out to the vehicle manufacturers' parts distribution network. In July of this year, Takata informed us that it had received orders for nearly 17 million replacement inflators. As Takata is filling these orders, the replacement kits are shipped to the vehicle manufacturers' main parts centers. From there, the vehicle manufacturers send replacement kits to regional parts distribution centers. Dealers are then able to order and receive parts from these regional centers, usually within about 48 hours. Information about the number of inflators available regionally and nationally is reported to NHTSA every two weeks by the vehicle manufacturers. Jennifer Timian will explain that process in just a minute.

Over the past several months, the inflator suppliers have been working with the vehicle manufacturers to modify inflators to correctly work and fit in the Takata air bags as replacement parts. The majority of this development work is done and the remedy inflator kits are following the path in the chart.

Each of the suppliers has now ramped up production, or will be doing so shortly. Takata estimates that it will be shipping over 2.8 million replacement kits to manufacturers this month alone. Keep in mind, however, that not all of those parts are for vehicles in the United States. The vehicle manufacturers also have obligations to repair vehicles in many other places around the world.

Of those 2.8 million replacement units, 70 percent will have an inflator made by a supplier other than Takata. This is a true indication that production has grown in response to the increased demand that resulted from the nationwide recalls that were announced in May, and in response to NHTSA's opening of the Coordinated Remedy Program Proceeding in June. While this is good news for getting more vehicles repaired on a faster timeline, the inflator suppliers, vehicle manufacturers, and Takata need to ensure that together they can track each and every

11945-102315-v1

replacement inflator from the factory all the way through to the dealer and the vehicle that each replacement inflator goes into.

Tracking is extremely important here because some replacement inflators will need to be replaced again. Some of the replacement inflators are currently a like-for-like Takata inflator. "Like-for-like" means that a newly manufactured version of the same part that is being taken out is being put in as the remedy part. Interim remedy parts are being used because, currently, there is no other alternative available for those vehicles. These temporary inflator replacements are safer than the part they are replacing, because they are new and have not been exposed to the high heat and humidity. But, we believe that over time they will develop the same defect problem and should not stay in vehicles for an extended period of time.  This type of "interim remedy" is not ideal, since vehicle owners will have to get the remedy done twice. But it is extremely important that the limited number of people whose vehicles need the interim remedy get the interim remedy and do not risk waiting for the final remedy. The interim remedy is safer than the current inflator, and the final remedy, once available, will be safe.

Consumers may be concerned about the reliability of the replacement inflators being manufactured by the alternate suppliers. There is no need for concern. The alternate suppliers have been making inflators and air bags since the late 1980s and early 1990s without experiencing any events like we've seen with the recalled Takata inflators.

This process I've just described is unprecedented. But parts production is already ramping up. And communication will be key to the success of these complex supply chains.

To sum up what I've just covered, the agency worked with the vehicle manufacturers to develop a risk assessment methodology that all agree makes sense based on the currently known risk factors. The manufacturers have each prioritized all of their recalled vehicles into risk priority groups. And they are working with the alternate suppliers, and with Takata, to develop alternate replacement parts that will allow them to quickly and dramatically increase the number of replacement parts for consumers.

**Current Data, Part III (Jennifer Timian)**

I'm going to talk about some of the biggest challenges to completing the unprecedented recalls that were just described.

11945-102315-v1

Let's begin with the current recall completion rates for the recalled Takata inflators. When we talk about recall completion rates we are talking about how many of the vehicles that need the remedy part have been taken in to the dealer and have actually had the remedy part installed in the vehicle.

This graph shows the current state of the recall completion rates, both nationally and in the HAH region. Again, the HAH region is the High Absolute Humidity region that, based on the current data, has the highest risk of inflator rupture. The red line shows the completion rate in the HAH region. Currently, as of the last reporting on October 9, the completion rate in this region is at 29.5 percent. This percentage is the current completion rate for all the vehicle manufacturers combined. Some vehicle manufacturers have significantly higher completion rates than this, while others are significantly lower. There are several reasons for that discrepancy, but much of it goes back to the supply challenges that were just explained. Some manufacturers are still waiting to have enough remedy parts to begin repairs. While the vehicle manufacturers are making progress in this region, it is important to remember that vehicles in the HAH region are at the highest risk of an inflator rupture. And that risk goes up as the vehicle gets older. So it is critical that remedy completion rates in this region go up, and do so quickly.  These cars need to get fixed.

Turning to the black line, this line shows the national recall completion rate for all of the vehicle manufacturers combined, which is at 22.5 percent. Again, some vehicle manufacturers have higher rates of completion and others lower, but this is the overall national completion rate.

While these overall percentages may look low at this point, there are signs that the manufacturers are moving in the right direction with their repair programs. We know that in the 2-week period from September 26 to October 9 of this year, 107,958 vehicles were remedied in the High Absolute Humidity region and 218,282 vehicles were remedied nationally. In the 1-month reporting window from September 11 to October 9, vehicle manufacturers replaced the inflator in almost half a million vehicles. So the vehicle manufacturers are making progress and the overall completion rates are constantly improving.

However, these remedy completion rates are simply not good enough to address the risk these inflators pose to the driving public.

We know the number of vehicles being remedied during each two-week period thanks to the cooperation of the vehicle manufacturers who have been providing that data to NHTSA since

16

August 14 of this year. Typically, a vehicle manufacturer's recall completion rate is tracked by the agency using information sent by the vehicle manufacturers every three months. However, for the recalled Takata inflators, we believed that more information would be necessary and would be needed more often. So we developed a tracking spreadsheet that we are calling a "Recall Dashboard" or just "Dashboard" for short.

This is a sample of what the Recall Dashboard looks like.

Again, the affected vehicle manufacturers have been very helpful in providing this information every two weeks since August 14th.

Looking at the Dashboard, it contains the recall number, vehicle model year, inflator type, number of vehicles affected, number of repair inflator parts available for dealers within 48 hours, and the number of vehicles that were repaired in that 2-week period and also the total repaired. We are breaking this down to both national numbers and the numbers for the HAH region so we can keep a close eye on what is happening. Recently, we also added the replacement inflator part number and the replacement inflator type to the reported data. All of this information will enable the agency to monitor parts availability and progress in remedy completion going forward.

In the HAH region, the highest risk region, the majority of the recall programs are already under way and most of the manufacturers have enough repair parts to remedy vehicles when vehicle owners seek to schedule an appointment. However, this is not universally true for all of the manufacturers and all of the recalls. A small number of the recalls either have not started yet, or have only started in specific, targeted areas in the HAH region where the risk is the very highest. This is due to a limited supply of repair parts for a few more months as replacement part manufacturing ramps up. In those cases, owners of affected vehicles should continue to regularly check the parts availability with their manufacturer or dealer, or the NHTSA VIN look-up tool located at www.safercar.gov. Again, the majority of recalls have launched to the entire HAH area. All affected vehicle owners who have not already done so need to call their dealer to schedule a remedy appointment. And if the dealer says they need to call back in a few months, they should do that: call back.

Looking to the future, even when there are enough remedy parts available, there are several known challenges to the successful completion of the remedy programs.

The first is consumer apathy, that is, people not taking this particular recall seriously when there have been so many recalls on cars over the past several years. Recalls are serious. Recalls are conducted when there is a defect that relates to an unreasonable risk to safety. And this recall is extremely serious. The public needs to be aware of this recall and the public needs to act. When a person receives a notice that parts are available for their vehicle, they need to call their local dealer or the telephone number in that notice, and schedule an appointment.

THIS IS WHAT A RECALL NOTICE LOOKS LIKE. It has this required label on it that we are showing on the screen. These envelopes I am holding are real examples of the notices that are sent. You can see the envelopes are different sizes and different colors, but they all have the required notice label. This is not like other mail. When you see this, open it. It could literally save your life.

So schedule the appointment at the dealer and the remedy will be performed free of charge. I'd like to repeat that, the defective inflator will be replaced at no cost to the consumer.

Another thing that vehicle owners can do is check their Vehicle Identification Number on www.safercar.gov to see if their vehicle needs a remedy for this recall or any other recall. If they see that their vehicle is covered, even if they have not received the notice in the mail, they need to contact their dealer and schedule an appointment at the dealer for a remedy part.

A second challenge is that some vehicles need an interim remedy because the final replacement part is not available yet.  And those vehicles will need to go in for a temporary replacement part—that is a new replacement that is currently available—and then go back in a second time for the final replacement part when it becomes available. This temporary replacement part is safer than the older part in their vehicle because it is new and has not been exposed to the environmental factors that are believed to be related to the ruptures. Do not skip the interim remedy, thinking you'll just wait for the final remedy. Similarly, do not get the interim remedy and decide you don't want to bother with going back a second time for the final remedy. These are both bad ideas. The interim remedy is much safer than the original inflator part, but it will still, eventually, have the chance of rupture. The final remedy, once available, will be safe.

A third challenge will be effectively reaching consumers. As technology has expanded our information sources, it has also made it harder to reach the most number of people. It will be absolutely critical to the successful completion of these remedy programs for the affected vehicle

manufacturers, and Takata, to continue to develop and perfect techniques for reaching affected consumers.

A fourth challenge is the need for the vehicle manufacturers and their dealers to have enough staff who are properly trained to make all of these appointments and actually replace the defective parts. These remedies require technical expertise and must be completed by properly trained personnel. People should not buy air bags online, or from a salvage yard, or anywhere other than a dealer. People should not have their air bags replaced by anyone other than a dealer. Let me repeat that, under no circumstances should a person purchase an air bag off the Internet, or from a salvage yard or any other unauthorized source, as a replacement to fix a recalled inflator. Remedy parts are only available through the dealers who are affiliated with the vehicle manufacturers. Those dealers will perform the remedy for free. We know that individuals are selling air bags with recalled inflators on eBay and other sites. Because buyers cannot really know the origins of these air bags we strongly discourage anyone from purchasing an air bag off of the internet for any brand of vehicle that has a recalled inflator.

To summarize, the recall and remedy programs are already under way and most, though not all, of the vehicle manufacturers have plenty of parts for the highest risk high absolute humidity region. It is extremely important that consumers get their vehicle fixed. Dealers will provide this remedy for free. The limited number of people who are getting a like-for-like part and need an interim remedy, because no other replacement part is available right now, need to get both the interim remedy and the final remedy in order to protect themselves and their loved ones. And finally, for any recalled vehicle model, no one should buy an air bag from a salvage yard, off eBay, or from any other Internet site.

**Looking Forward: Possible Agency Action and Solutions (Stephen Ridella)**

Throughout this Coordinated Remedy Program Proceeding, the agency has been gathering information in order for our Administrator to decide whether the agency needs to take action beyond our routine recall procedures to speed up the vehicle manufacturers remedy programs; and if so, how to do that. As we've explained, the size of these recalls is unprecedented. There is not a "one-size-fits-all" approach to solving this problem. Our Administrator has not yet made any decision, but is considering whether to accelerate each vehicle manufacturer's remedy program.

11945-102315-v1

Should the Administrator find that an accelerated remedy is necessary and appropriate, there are several actions the agency could take. And the agency is evaluating each of them.

First, the agency might require a manufacturer to further speed up its recall processes for the highest priority vehicles by getting more inflators, faster, to regions with the highest priority vehicles. This might also require further expansion of the sources of replacement parts.

Second, the agency could monitor and discuss on an ongoing basis any problems the vehicle manufacturers face in obtaining replacement parts, and any problems suppliers face in manufacturing those replacement parts. This would involve coordination by NHTSA across multiple manufacturers and suppliers outside our usual processes for overseeing recall programs.

Third, if it is necessary, the agency could expand which facilities are allowed to do the remedy work to replace the inflator. Currently, only dealers authorized by each vehicle manufacturer are able to provide repairs. If dealers for a vehicle manufacturer are unable to keep up with the demand for replacements even though plenty of parts are available, we may consider allowing repair shops or other facilities to complete recall repairs. While this is something specifically allowed in the law, these inflator parts are complex and unique. Also, as Ms. Timian mentioned, only someone with specialized training, should replace these parts. Unless the agency orders differently, consumers should only go to the manufacturer's dealerships, as they are the only places that are currently authorized to conduct recall repairs.

Fourth, the agency is also considering the appointment of an independent third party to aid NHTSA in overseeing the vehicle manufacturers' remedy programs. Someone in this position would deal directly with the manufacturers and the suppliers on a day-to-day basis to discuss any issues that come up about supply, production, or recall completion.

Fifth, the agency is also considering ordering Takata or vehicle manufacturers to conduct additional testing that focuses on the inflators being used as remedy parts. We know that age is probably a factor in these ruptures, so any testing would need to focus on making sure that we don't have the same problem all over again several years down the road with the Takata inflators that are being used as replacements.

Sixth, there is other testing the agency might do itself, or require of industry, to evaluate how inflators and air bags perform as they age. The average age of vehicles on the road is now over 11 years old and may continue to go up thanks to advances in technology. Modern air bag technology has only been in use for around 25 years, and at this point, we don't know too much

20

about whether or how a 15- or 20-year-old air bag works differently than a new air bag. So the agency is considering starting a proactive surveillance program designed to look at the lifespan of this technology.

Seventh, given the size and complexity of this problem, and our current understanding of what seems to cause the problem, we may also need to expand the recalls in the future to cover even more vehicles. The agency is currently looking into the size of these potential recalls, and how such recalls could impact the vehicle manufacturers' current remedy programs. If the agency determines that more vehicles with Takata inflators need to be recalled to protect public safety, we want to make sure those recalls are conducted in a way that is consistent with our goal of replacing defective inflators as quickly as possible and addressing the highest-risk inflators first.

Finally, the agency is also considering whether it would be appropriate and beneficial to develop a coordinated message with the vehicle manufacturers that focuses on consumer awareness and maximizing recall completion rates. As we've mentioned, the first step is getting the replacement parts; and we have been working with the manufacturers and suppliers to make sure there are enough parts available and that they are going where they are needed most. The next step, though, is getting consumers into the dealer to get their vehicle fixed; and this is an area where a coordinated, targeted message across the industry could be used to improve recall completion rates and improve public safety.

As you can see, the agency is considering a wide variety of options for actions we could take, if the Administrator decides to accelerate any or all of the vehicle manufacturers' remedy programs. We will continue to evaluate all of the information and data as it becomes available. Our first and foremost concern has been, and will continue to be, the safety of the American public. Any actions in a possible Coordinated Remedy Program would be designed to ensure that the public is adequately protected. Ultimately, Americans need to know that their vehicles have safe, properly working inflators and air bags that will be ready and waiting to save a life when needed.

involve coordination by NHTSA across multiple manufacturers and suppliers outside our usual processes for overseeing recall programs.

Third, if it is necessary, the agency could expand which facilities are allowed to do the remedy work to replace the inflator. Currently, only dealers authorized by each vehicle manufacturer are able to provide repairs. If dealers for a vehicle manufacturer are unable to keep

up with the demand for replacements even though plenty of parts are available, we may consider allowing repair shops or other facilities to complete recall repairs. While this is something specifically allowed in the law, these inflator parts are complex and unique. Also, as Ms. Timian mentioned, only someone with specialized training, should replace these parts. Unless the agency orders differently, consumers should only go to the manufacturer's dealerships, as they are the only places that are currently authorized to conduct recall repairs.

Fourth, the agency is also considering the appointment of an independent third party to aid NHTSA in overseeing the vehicle manufacturers' remedy programs. Someone in this position would deal directly with the manufacturers and the suppliers on a day-to-day basis to discuss any issues that come up about supply, production, or recall completion.

Fifth, the agency is also considering ordering Takata or vehicle manufacturers to conduct additional testing that focuses on the inflators being used as remedy parts. We know that age is probably a factor in these ruptures, so any testing would need to focus on making sure that we don't have the same problem all over again several years down the road with the Takata inflators that are being used as replacements.

Sixth, there is other testing the agency might do itself, or require of industry, to evaluate how inflators and air bags perform as they age. The average age of vehicles on the road is now over 11 years old and may continue to go up thanks to advances in technology. Modern air bag technology has only been in use for around 25 years, and at this point, we don't know too much about whether or how a 15- or 20-year-old air bag works differently than a new air bag. So the agency is considering starting a proactive surveillance program designed to look at the lifespan of this technology.

Seventh, given the size and complexity of this problem, and our current understanding of what seems to cause the problem, we may also need to expand the recalls in the future to cover even more vehicles. The agency is currently looking into the size of these potential recalls, and how such recalls could impact the vehicle manufacturers' current remedy programs. If the agency determines that more vehicles with Takata inflators need to be recalled to protect public safety, we want to make sure those recalls are conducted in a way that is consistent with our goal of replacing defective inflators as quickly as possible and addressing the highest-risk inflators first.

Finally, the agency is also considering whether it would be appropriate and beneficial to develop a coordinated message with the vehicle manufacturers that focuses on consumer awareness and maximizing recall completion rates. As we've mentioned, the first step is getting the replacement parts; and we have been working with the manufacturers and suppliers to make sure there are enough parts available and that they are going where they are needed most. The next step, though, is getting consumers into the dealer to get their vehicle fixed; and this is an

11945-102315-v1

area where a coordinated, targeted message across the industry could be used to improve recall completion rates and improve public safety.

As you can see, the agency is considering a wide variety of options for actions we could take, if the Administrator decides to accelerate any or all of the vehicle manufacturers' remedy programs.  We will continue to evaluate all of the information and data as it becomes available. Our first and foremost concern has been, and will continue to be, the safety of the American public. Any actions in a possible Coordinated Remedy Program would be designed to ensure that the public is adequately protected. Ultimately, Americans need to know that their vehicles have safe, properly working inflators and air bags that will be ready and waiting to save a life when needed.

11945-102315-v1