# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| IN RE:<br><br>**TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION**<br><br>This Document Relates to All Actions | MDL No. 2599<br><br>Master File No. 15-2599-MD-Moreno |

**[PROPOSED] STIPULATED ORDER REGARDING
THE PROTOCOL GOVERNING PRODUCTION OF DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION ("ESI")**

Plaintiffs and Defendants (collectively, "the parties"), through their respective counsel in the above-captioned action, jointly submit this Order for approval and entry by the Court.

**I.   Password Protected, Encrypted and Other Files**

With respect to password protected files, encrypted files, zip/compressed files, wave files and pictures, the parties agree that they will make reasonable efforts to review such files: (1) if the producing party has reason to believe that the item may contain relevant information, and (2) if reasonably accessible in accord with Fed. R. Civ. P. 26(b)(2)(B).

**II.  Identification of Potentially Relevant Electronic Data That is Not Reasonably Accessible or Not Reasonably Capable of Being Processed for Searching**

In the event that electronic data that the producing party believes may contain relevant information is not reasonably accessible or not reasonably capable of being processed for searching due to undue burden or cost, the producing party shall identify any such data, by category or type. The identification shall, to the extent practicable, provide the information in the 2006 Advisory Committee Note to Fed. R. Civ. P. 26(b)(2)(B).

Inaccessible data (*i.e.*, data that cannot be accessed regardless of burden or cost) need not be identified. To the extent feasible, if the electronic data was attached to other relevant electronic data that is accessible, such as an attachment to an email, the producing party shall produce a slip sheet or other placeholder indicating that the data is inaccessible.

### III. Production of Paper or Scanned Records

The parties will produce paper records in static image format, in the following format[1]:

1. All documents shall be scanned to 300 DPI Group IV Black & White Tagged Image File Format (.TIFF or .TIF) files. TIFF files shall be produced in single-page format and 8 1/2 x 11 inch page size (except for documents requiring a different page size). Each image file should have a unique file name which shall be the Bates number of that page.

2. The source/custodian of a document shall be provided in the data load file. If the individual custodian of the document is not reasonably available, the department, branch, or office where the document was located shall be provided.

3. In scanning paper documents on a going forward basis, distinct documents should not be merged into a single record (e.g., three separately stapled documents in a file folder will not be merged into a single document), single documents should not be split into multiple records (e.g., a five-page stapled document should not be split into five separate documents), and for multiple documents bound together (e.g., a notebook or other bound set of documents), the parties will follow industry standards for unitization and will provide slip sheets, information in the metadata load file, or other information reflecting the physical relationship of the bound documents. The parties have made and will make reasonable efforts to have their vendors unitize documents correctly and will commit to reasonably address situations where there are improperly unitized documents.

4. Color documents (*e.g.*, color photographs or graphical representations in color) shall be scanned as black & white, single-page TIFF images in accordance with the technical specifications set out above. Each party will accommodate reasonable requests for production of images in color.

### IV. Production of ESI

Except as otherwise specified, the parties will produce ESI in 300 DPI Group IV Black & White Tagged Image File Format (.TIFF or .TIF) files, along with metadata (.dat) and image load files and text files. TIFF files shall be produced in single-page format and 8 1/2 x 11 inch page size (except for documents requiring a different page size) along with corresponding image load files (*e.g.*, .OPT, LFP, DII file).

    **A.   OLE Embedded Objects.** OLE embedded objects (embedded MS Office files, etc.) shall be extracted as separate files and should be treated as an attachment to the parent document or email.

---

[1] In some circumstances a party may choose not to TIFF and/or OCR hard-copy documents because the burden may outweigh the utility of doing so. In those circumstances, a party may produce the documents as they are kept in the usual course of business.

    **B.**    All images will be created based on the last saved format.

    **C.**    **Auto-Populated Date Fields.** To the extent reasonably feasible and without the need to incur additional cost, auto-populated date fields shall be produced to indicate either: (i) the Last Saved Date; or (ii) an indicator that the auto-populated date has been overwritten (e.g., "date", "XXXX"). To the extent not reasonably feasible, the parties agree to identify the categories of documents where the auto-populated date fields in their productions have not been modified to indicate either: (i) the Last Saved Date; or (ii) an indicator that the auto-populated date has been overwritten (e.g., "date", "XXXX").

    **D.**    **Searchable Text File.** All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.[2] In the case of files with redacted text, OCR'd text of the redacted documents may be provided in lieu of extracted text. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

    1.    Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

    2.    In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.[3]

    **E.**    **Metadata Fields**

During the process of converting ESI from the electronic format of that application in which the ESI is normally created, viewed, and/or modified to TIFF, metadata values should be extracted and produced in a load file ("metadata load file").

The metadata values that are to be extracted and produced in the metadata load files – to

---

[2] To the extent that a producing party deems it not reasonably feasible to provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows in the extracted text, the producing party shall notify the receiving party for what categories of documents or document types it is not feasible for each production.

[3] To the extent such information exists but is not reasonably available and has not otherwise been provided to the receiving party in the metadata fields, the producing party shall notify the receiving party for what categories of documents or document types the information has not been provided for each production.

the extent they exist and where permitted under applicable international privacy regimes[4] (.DAT file using concordance standard delimiters) are the following:

| Field Name | Field Description | Email | Non-e-mail ESI |
|---|---|---|---|
| BegBates | Beginning Bates number (including Prefix) | X | X |
| EndBates | Ending Bates number (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range | X | X |
| EndAttach | Ending Bates number of the last document in attachment range | X | X |
| Attachment Range | Bates number associated with the first page of the attachment and the last page of the last attachment | X | X |
| AttachmentIDs | Beginning bates numbers of the attachments | X | X |
| ParentID | Beginning bates number of the parent document | X | X |
| Doc Pages | The number of pages for a document | X | X |
| AttachCount | The number of attachments to a document | X | X |
| Custodian/Source | Name of custodian(s) or source of email(s) or file(s) produced | X | X |
| Email Subject | Subject line extracted from an email message | X | |
| Author | The author of a document, regardless of its accuracy | | X |
| From | From field extracted from an email message | X | |

---

[4] Any metadata being withheld from production pursuant to an applicable international privacy regime will be governed by the "protected data" order entered in this case, including any challenges to such withholding and any notification of such withholding.

4

| Field Name | Field Description | Email | Non-e-mail ESI |
|---|---|---|---|
| To | To or Recipient(s) extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("bcc") field extracted from an email message | X | |
| Date and Time Sent | Sent date and time of e-mail message (Or, if a party has 2 separate fields, date and time can be in separate fields) | X | |
| Date and Time Received | Received date and time of e-mail message (Or, if a party has 2 separate fields, date and time can be in separate fields) | X | |
| FilePath | Full file path | | X |
| Filename | Name of file as saved on system | | X |
| DocExt | The document/file extension extracted from document file name | X | X |
| FileSize | The file size of a document (including embedded attachments) | X | X |
| Date and Time Created | The date and time a document was created (Or, if a party has 2 separate fields, date and time can be in separate fields) | | X |
| Date and Time Last modified | The application recorded date and time on which the document was last modified (Or, if a party has 2 separate fields, date and time can be in separate fields) | | X |
| LastModifiedBy | Last person who modified a document | | X |
| Hash Value | MD5 or SHA-1 hash value of the document | X | X |
| Native Link (if natives are | Relative path to any files produced in native format, such | | X |

5

| Field Name | Field Description | Email | Non-e-mail ESI |
|---|---|---|---|
| produced) | as Excel spreadsheets | | |
| Text Path | Relative path to any OCR/extracted text files in the production set | X | X |
| Duplicate Custodian | When globally deduping, this field will list the other custodians that possessed a copy of the document | X | X |

1. **Date and Time Fields.** All date fields will be formatted MM/DD/YYYY and all time fields will be formatted HH:MM:SS where reasonably feasible. Each party shall disclose the time zone used to process the data.

2. **Additional Metadata Fields.** Any party may add to its production one or more metadata fields in addition to those enumerated above, but such additions may not be used to obligate any other party to provide additional fields of any type.

3. **Custodian/Source Field.** To the extent reasonably available, the "Custodian/Source" field shall identify the individual custodian from whose ESI the document was gathered or, if not reasonably available, the department, branch, or office where the document was located shall be provided.

F.   **De-Duplication.** A party may de-duplicate ESI globally or across more than one custodian provided that the producing party identifies, by producing the Duplicate Custodian field identified above in the load file, all custodians within the production from which each such file or document was collected and deduped from the collection during processing. The parties agree to accommodate reasonable requests to provide the file paths or email folders for specific documents where other custodians had a copy of the document if requested by the receiving party.

A document may be removed as duplicative only if it is *identical* to another document that is being produced, based on a comparison of MD5 or equivalent hash values. To the extent reasonably feasible or does not impose undue burden and cost, hash values for emails shall be calculated based on the following fields: to, from, cc, bcc, date and time sent, attachment count, attachment names, email subject, full body of the email.[5] However, parent and child documents (*i.e.*, parent documents and their attachments) should not be separately removed unless *both* the parent and child documents are identical to another set of parent and child documents that are being produced, based on a comparison of MD5 or equivalent hash values for the concatenated hash values of the parent and the attachments.

---

[5] To the extent the hash value for emails is not calculated based on the listed fields, the producing party will notify the receiving party how the hash value for emails was calculated.

      **G.**    **Reservation of Rights.** The parties hereby reserve their rights to make reasonable native format requests for certain electronic documents, including but not limited to PowerPoint slides, Word documents with tracked changes, documents in foreign languages, and color photos.

**V.**    **Production of Excel, Database and Other Structured Data**

Unless such materials need to be redacted, MS-Excel spreadsheets and databases (e.g., MS Access) shall be produced in native format. The metadata load file shall contain a link to the produced MS-Excel spreadsheets and databases via data values called "Native Link." The Native Link values should contain the full directory path and file name of the MS-Excel spreadsheet or database as contained in the produced media. The Native Link field should be included in the .dat file specified above.

With respect to produced electronic data files that contain links to, or otherwise pull from external data sources, the parties reserve their right to make reasonable requests to meet and confer about the costs and burdens of retrieving such external information. The parties to this protocol recognize that a party receiving a meet-and-confer request does not have an obligation to investigate the identified electronic files or the potential external data sources prior to the meet and confer.

The parties will meet and confer with respect to the production of responsive data contained in relational databases other than MS-Access or in other structured data stores.

To the extent materials require redaction, the information shall be produced in the form of a redacted TIFF image or a party may redact native Excel files by inserting "redacted" where the material is redacted, if the producing party maintains a pristine non-redacted version of the Excel.

**VI.**    **Proprietary Software**

To the extent that relevant ESI cannot be rendered without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

**VII.**    **Production of Audio and Video Files**

Audio and video files are to be produced in the native file format in which they were maintained in the ordinary course of business. Produced native audio and video files should be accompanied by a reference file or .dat containing the name of the file and hash value for each produced file, if feasible. If the audio files are maintained in a non-standard format, they should be produced in MP3 format, where reasonably feasible. The audio and video files, as well as all other native files produced, should indicate their native file application in the "File Type" field referenced above, where that metadata field is reasonably available.

To the extent audio or video files contain PII, the files will be produced under the

terms of a separate stipulation or order to be agreed upon by the parties or ordered by the Court.

### VIII.  Production of Oversized or Illegible Documents

The parties shall accommodate reasonable requests to produce oversized or illegible documents in native form (if they exist in native form) or in actual size.

### IX.  Bates Numbering & Document Identifiers

Bates numbers and any confidentiality designations should be electronically branded on each produced TIFF image of ESI.  For documents produced in native file format, a unique Bates number shall be used as the file name, and the original file name and file extension shall be preserved in the corresponding load file.  Confidentiality designations shall be provided either as a separate metadata field in the load file and/or part of the file name of the native document.

### X.  Irrelevant Documents and Information

Irrelevant attachments to responsive parent documents may be withheld from production provided that the responsive families are Bates numbered prior to production and a list of the removed irrelevant Bates-numbered documents, or a slip sheet for the removed irrelevant document indicating in substance "irrelevant attachment omitted," is provided and indicated in the metadata load file.

A producing party may withhold from production irrelevant documents in an otherwise responsive document family if the irrelevant documents fall within one of the categories of irrelevant information listed below, provided that the responsive families are Bates numbered prior to production and a list of the removed irrelevant Bates-numbered documents, or a slip sheet for the removed non-responsive document indicating in substance "irrelevant document omitted" and the category/type of irrelevant (i.e., non Takata airbag inflator) information being withheld is provided and indicated in the metadata load file.  For irrelevant documents withheld from production under this paragraph, the producing party must additionally disclose the type of document withheld (e.g., email, memorandum, fax, etc.), the sender(s), recipient(s), and subject line.

In addition, a producing party may redact the following categories of irrelevant information (i.e., information unrelated to Takata airbag inflators) from within otherwise responsive documents, provided that the redacted document is stamped in substance "irrelevant material redacted"  and the category/type of irrelevant (i.e., non Takata airbag inflator) information being redacted is indicated within the redaction stamp, or provided in a list accompanying the production, or included in the metadata load file:

      a)     Pricing, profits, non-public financial information;
      b)     Parts, suppliers, or costs;
      c)     Design, development, and engineering;

    d)  Marketing and business strategy;
    e)  Other makes and models;
    f)  Non-US products; and
    g)  Service and quality issues.

### XI. Productions from Regulatory Proceedings and Other Litigation

Notwithstanding the above, the parties reserve their rights to reproduce prior document productions in other matters in the same form as used in the prior production. At the time of production or as soon thereafter as practicable, the producing party shall identify any portion of its production that is a reproduction from another matter and, and to the extent different than this ESI Protocol, the ESI protocol that was followed in that prior production. The parties agree to meet and confer to the extent there is any disagreement concerning the form of such prior productions.

### XII. Modifications to the Production Format

The parties reserve their rights to make exceptions to the above format where reasonably needed. With respect to any such exception, the producing party must notify the requesting party of the document(s)/data at issue and the reason an exception to the format needs to be made.

### XIII. Organization of Production

Unless otherwise agreed to in writing, productions by the Defendants will be made by delivery to a single dedicated FTP site to be identified by the Plaintiffs' Lead Counsel. Productions by the Plaintiffs will be made by delivery to a single dedicated FTP site to be identified by the individual Defendants. If any production is more than 100 gigabytes in size, such production will be loaded onto a hard drive and overnighted to the opposing party. In the case of production to the Plaintiffs, the hard drive shall be overnighted to a single designee of their choosing. In the case of a production to the Defendants, the hard drive shall be overnighted to a designee of each Defendant.

DONE AND ORDERED in Chambers, Miami, Florida, this \_\_\_\_\_day of _____, 2015.

                        _____
                        **FEDERICO A. MORENO**
                        **UNITED STATES DISTRICT JUDGE**