UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 2599
Master File No. 15-2599-MD-MORENO
No. 14-24009-CV-MORENO

IN RE:

TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION

_____

THIS DOCUMENT RELATES TO
ECONOMIC LOSS TRACK CASES
_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## TAKATA CORPORATION AND TK HOLDINGS INC.'S MOTION TO DISMISS

This multidistrict litigation consolidates allegations of economic loss and personal injury related to airbags manufactured by defendants Takata Corporation and TK Holdings, Inc. and equipped in vehicles manufactured by defendants Honda, BMW, Ford, Mazda, Mitsubishi, Nissan, Subaru, Toyota, and Volkswagen[1] (collectively, the "Automotive Defendants"). Takata asks the Court to dismiss Counts 1-8 and 47-106—the counts alleged against it in the Second Amended Economic Loss Complaint.

### I.   BACKGROUND

Plaintiffs are consumers of vehicles equipped with Takata airbags containing ammonium nitrate as a propellant. The Court has divided the multidistrict litigation's component cases into two tracks: (1) economic loss for plaintiffs alleging purely economic damages, and (2) personal injury for plaintiffs alleging damages to a person. This order pertains only to the economic loss track.

_____

[1] The first allegations against Volkswagen appeared in this multidistrict litigation on March 31, 2017, when the United States Judicial Panel on Multidistrict Litigation transferred in 28 cases against Volkswagen.

Plaintiffs bring 68 counts against Takata for allegedly violating the Racketeer Influenced and Corrupt Organizations Act (two counts), the Magnuson-Moss Warranty Act (one count), and various state laws regarding negligence (two counts), fraudulent concealment (two counts), unjust enrichment (one count), implied warranties (20 counts), and consumer protection (40 counts).

The Court already has:  (1) found that Plaintiffs establish *prima facie* claims for violations of the Racketeer Influenced and Corrupt Organizations Act and the Magnuson-Moss Warranty Act; (2) denied Takata's motion to dismiss Counts 1, 2 and 3; and (3) denied Takata's motion to strike the allegations of a national class action.  Additionally, the Court granted the Automotive Defendants' motion to dismiss Counts 104, 105 and 106.  But, the Court denied Takata's request to join that motion because "Takata stands in an entirely different position than the Automotive Defendants."

Excluding Counts 1, 2 and 3, which the Court already has addressed, the 65 remaining counts against Takata that are addressed in this order are listed in Table 1, along with the putative class or subclass bringing each count.

**TABLE 1**

| Count | Claim | Class |
|-------|-------|-------|
| 4 | Fraudulent Concealment | Nationwide |
| 5 | Breach of Implied Warranty – Michigan Law | Nationwide |
| 6 | Unjust Enrichment | Nationwide |
| 7 | Violation of the Michigan Consumer Protection Act | Nationwide |
| 8 | Negligence – Michigan Law | Nationwide |
| 47 | Violation of the Florida Deceptive and Unfair Trade Practices Act | Fla. |
| 48 | Breach of Implied Warranty of Merchantability | Fla. |
| 49 | Violation of the Alabama Deceptive Trade Practices Act | Ala. |
| 50 | Violation of the Consumer Fraud Act | Ariz. |
| 51 | Violation of the California Unfair Competition Law | Cal. |
| 52 | Violation of the California Consumer Legal Remedies Act | Cal. |
| 53 | Violation of the California False Advertising Law | Cal. |

| 54 | Violation of the Song-Beverly Consumer Warranty Act for Breach of the Implied Warranty of Merchantability | Cal. |
|----|------------------------------------------------------------------------------------------------------------|------|
| 55 | Negligent Failure to Recall | Cal. |
| 56 | Violation of the Colorado Consumer Protection Act | Colo. |
| 57 | Breach of the Implied Warranty of Merchantability | Colo. |
| 58 | Violation of the Connecticut Unlawful Trade Practices Act | Conn. |
| 59 | Violation of the Georgia Fair Business Practices Act | Ga. |
| 60 | Violation of the Georgia Uniform Deceptive Trade Practices Act | Ga. |
| 61 | Unfair and Deceptive Acts in Violation of Hawaii Law | Haw. |
| 62 | Breach of Implied Warranty of Merchantability | Haw. |
| 63 | Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act | Ill. |
| 64 | Violation of the Illinois Uniform Deceptive Trade Practices Act | Ill. |
| 65 | Violation of the Indiana Deceptive Consumer Sales Act | Ind. |
| 66 | Breach of Implied Warranty of Merchantability | Ind. |
| 67 | Violation of the Private Right of Action for Consumer Frauds Act | Iowa |
| 68 | Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law | La. |
| 69 | Breach of the Implied Warranty of Merchantability/Warranty Against Redhibitory Defects | La. |
| 70 | Deceptive Acts or Practices Prohibited by Massachusetts Law | Mass. |
| 71 | Breach of the Implied Warranty of Merchantability | Mass. |
| 72 | Violation of the Michigan Consumer Protection Act | Mich. |
| 73 | Breach of Implied Warranty of Merchantability | Mich. |
| 74 | Violation of the Minnesota Prevention of Consumer Fraud Act | Minn. |
| 75 | Violation of the Minnesota Uniform Deceptive Trade Practices Act | Minn. |
| 76 | Breach of the Implied Warranty of Merchantability | Minn. |
| 77 | Violation of the Missouri Merchandising Practices Act | Mo. |
| 78 | Breach of the Implied Warranty of Merchantability | Mo. |
| 79 | Violation of the Nevada Deceptive Trade Practices Act | Nev. |
| 80 | Breach of the Implied Warranty of Merchantability | Nev. |
| 81 | Breach of Implied Warranty of Merchantability | N.J. |
| 82 | Violation of the New Jersey Consumer Fraud Act | N.J. |
| 83 | Violation of the New York General Business Law – Section 349 | N.Y. |
| 84 | Violation of the New York General Business Law – Section 350 | N.Y. |
| 85 | Violation of the North Carolina Unfair and Deceptive Trade Practices Act | N.C. |
| 86 | Breach of the Implied Warranty of Merchantability | N.C. |
| 87 | Violation of the Consumer Sales Practices Act | Ohio |
| 88 | Violation of the Oregon Unlawful Trade Practices Act | Or. |
| 89 | Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law | Pa. |
| 90 | Breach of the Implied Warranty of Merchantability | Pa. |
| 91 | Violation of the Rhode Island Unfair Trade Practices and Consumer Protection Act | R.I. |
| 92 | Breach of the Implied Warranty of Merchantability | R.I. |

| 93 | Violation of the South Carolina Unfair Trade Practices Act | S.C. |
|-----|---|---|
| 94 | Violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act | S.C. |
| 95 | Breach of the Implied Warranty of Merchantability | S.C. |
| 96 | Violation of the Tennessee Consumer Protection Act | Tenn. |
| 97 | Violation of the Deceptive Trade Practices Act | Tex. |
| 98 | Breach of the Implied Warranty of Merchantability | Tex. |
| 99 | Violation of the Virginia Consumer Protection Act | Va. |
| 100 | Breach of the Implied Warranty of Merchantability | Va. |
| 101 | Violation of the Consumer Protection Act | Wash. |
| 102 | Violation of the Consumer Credit and Protection Act | W. Va. |
| 103 | Breach of the Implied Warranty of Merchantability | W. Va. |
| 104 | Fraudulent Misrepresentation & Fraudulent Concealment | Nat'l Auto.[2] |
| 105 | Violations of State Deceptive Trade Practices Statutes | State Auto.[3] |
| 106 | Violation of Florida Deceptive and Unfair Trade Practices Act | Fla. Auto.[4] |

These 65 counts arise out of 114 vehicle purchases by 112 named plaintiffs. For each named plaintiff, Table 2 lists the: (1) manufacturer of the vehicle purchased; (2) transferor court; (3) applicable choice-of-law rule; (4) state of residence; (5) location of the vehicle's purchase; and (6) substantive law that applies after analyzing the applicable choice-of-law rule.

## TABLE 2

| Plaintiff | Vehicle Manufacturer | Transferor Court | Choice of Law | Resident | Purchase Location | Law Applied |
|-----|-----|-----|-----|-----|-----|-----|
| Aliscio | Ford | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Allen | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Archer | Honda | C.D. Cal. | Cal. | Haw. | Haw. | Haw. |
| Arnold | Honda | N.D. Ga. | Ga. | Ga. | Ga. | Ga. |
| Avery | Honda | W.D.N.C. | N.C. | N.C. | N.C. | N.C. |
| Bae | Honda | C.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Barnett | Ford | Direct | Fla. | Tex. | Tex. | Tex. |
| Barto | Nissan | Direct | Fla. | Pa. | Pa. | Pa. |
| Benton | Ford | Direct | Fla. | S.C. | S.C. | S.C. |

---

[2] Nationwide Automotive Recycler Class.

[3] State Deceptive Trade Practices Statute Automotive Recycler Class.

[4] Florida Automotive Recycler Class.

| | | | | | | |
|---|---|---|---|---|---|---|
| Birdsall | Mazda | Direct | Fla. | N.Y. | Pa. | Pa. |
| Bonet | Chrysler | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Boone | Honda | C.D. Cal. | Cal. | Mich. | Mich. | Mich. |
| Breschnev | Honda | E.D. Mich. | Mich. | Ill. | Ill. | Ill. |
| Burd | Honda | Direct | Fla. | Ind. | Ind. | Ind. |
| Cataldo | Honda | S.D. Fla. | Fla. | Fla. | Cal. | Cal. |
| Cervantes | Honda | N.D. Ala. | Ala. | Ala. | Ala. | Ala. |
| Chen | Honda | W.D. Pa. | Pa. | Tex. | Or. | Or. |
| Cody | Honda | C.D. Cal. | Cal. | Ariz. | Ariz. | Ariz. |
| Collins | Toyota | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Corteleti | Honda | Direct | Fla. | Fla. | Fla. | Fla. |
| Day | BMW | M.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Dembeck | Honda | Direct | Fla. | N.J. | N.J. | N.J. |
| Dewan | BMW | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Dougherty | BMW | C.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Flaherty | Honda | Direct | Fla. | Cal. | Cal. | Cal. |
| Fuentes | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Gamino | Honda | S.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Garcia | Honda | S.D.N.Y. | N.Y. | N.Y. | N.Y. | N.Y. |
| Go | Honda | C.D. Cal. | Cal. | Cal. | Ariz. | Ariz. |
| Goodwin | Honda | E.D. Mich. | Mich. | Wash. | Wash. | Wash. |
| Gunther | BMW | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Haklar | Nissan | C.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Hasley | Honda | Direct | Fla. | R.I. | R.I. | R.I. |
| Herron | Chrysler | Direct | Fla. | Fla. | Fla. | Fla. |
| Hodgson | Honda | W.D. Mo. | Mo. | Mo. | Mo. | Mo. |
| Holland | Honda | W.D. Mo. | Mo. | Mo. | Mo. | Mo. |
| Hollywood | Honda | C.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Holmes | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Huebner | Ford | W.D. Pa. | Pa. | Cal. | Cal. | Cal. |
| | Pontiac/ Toyota | W.D. Pa. | Pa. | Cal. | Ohio | Ohio |
| Jorgensen | Honda | S.D. Fla. | Fla. | Haw. | Haw. | Haw. |
| Kazos | BMW | E.D.N.Y. | N.Y. | Cal. | Fla. | Fla. |
| | Honda | E.D.N.Y. | N.Y. | Cal. | Cal. | Cal. |
| Killgo | Honda | C.D. Cal. | Cal. | Idaho | Or. | Or. |
| Klemer | Honda | Direct | Fla. | N.J. | N.J. | N.J. |
| Klinger | Honda | C.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Knight | Honda | S.W. Va. | W. Va. | W. Va. | W. Va. | W. Va. |
| Koehler | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Kopelman | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |

| Lathouris | Honda | C.D. Cal. | Cal. | Nev. | Nev. | Nev. |
|---|---|---|---|---|---|---|
| Lee | BMW | S.D. Fla. | Fla. | Pa. | Cal. | Cal. |
| Leonard | Honda | W.D.N.C. | N.C. | N.C. | Tenn. | Tenn. |
| Lew | Honda | Direct | Fla. | Tenn. | Tenn. | Tenn. |
| Liberal | Nissan | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Markowitz | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Martin | Toyota | N.D. Ala. | Ala. | Ala. | Ala. | Ala. |
| Martinez | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| McLaughlin | Chrysler | D.S.C. | S.C. | S.C. | S.C. | S.C. |
| McLeod | Honda | C.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Meiser | Honda | W.D.N.C. | N.C. | N.C. | N.C. | N.C. |
| Moehlman | Honda | W.D. Mo. | Mo. | Mo. | Mo. | Mo. |
| Morgan | Honda | S.D. Fla. | Fla. | Fla. | Pa. | Pa. |
| Morris | BMW | E.D. Mich. | Mich. | Pa. | Va. | Mich. |
| Mulroy | BMW | S.D. Cal. | Cal. | Colo. | Colo. | Colo. |
| Murphy | Honda | N.D. Ala. | Ala. | Ala. | Ala. | Ala. |
| Nannery | Honda | C.D. Cal. | Cal. | Wash. D.C. | Cal. | Cal. |
| Palmieri | Honda | C.D. Cal. | Cal. | N.Y. | N.Y. | N.Y. |
| Pardue | Mazda | N.D. Ala. | Ala. | Ala. | Ala. | Ala. |
| Peaslee | Honda | S.D. Fla. | Fla. | Mass. | Conn. | Conn. |
| Pedersen | Honda | E.D. Ky. | Ky. | Ky. | Ariz. | Ariz. |
| Peoples | Honda | S.D. Cal. | Cal. | Tex. | Tenn. | Tenn. |
| Petersen | Chrysler | Direct | Fla. | Iowa | Iowa | Iowa |
| Peterson | Toyota | Direct | Fla. | Mass. | Mass. | Mass. |
| Pham | BMW | S.D.N.Y. | N.Y. | Cal. | Cal. | Cal. |
| Quirk | Toyota | D.S.C. | S.C. | S.C. | S.C. | S.C. |
| Raiken | Toyota | E.D. Pa. | Pa. | Pa. | Pa. | Pa. |
| Rash | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Reilly | Subaru | Direct | Fla. | Ala. | Ala. | Ala. |
| Richardson | BMW | N.D. Ala. | Ala. | Ala. | Ala. | Ala. |
| Ritter | Honda | C.D. Cal. | Cal. | Minn. | Tex. | Tex. |
| Rosson | Honda | S.D. Fla. | Fla. | Fla. | Tex. | Tex. |
| Ruffin | Toyota | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Ruth | Honda | Direct | Fla. | Cal. | Cal. | Cal. |
| Sayler | BMW | N.D. Ohio | Ohio | Ohio | Cal. (Ohio) | Ohio |
| Sayre-Scibona | Honda | Direct | Fla. | Mass. | Mass. | Mass. |
| Schmidt | BMW | M.D. Fla. | Fla. | Cal. | Cal. | Cal. |
| Schneider | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Severio | Honda | S.D. Fla. | Fla. | La. | La. | La. |
| Shader | Toyota | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Shank | Honda | E.D.N.Y. | N.Y. | Ohio | Ohio | Ohio |

| Silva | Honda | Direct | Fla. | Tex. | Tex. | Tex. |
|---|---|---|---|---|---|---|
| Sinclair | Ford | Direct | Fla. | Fla. | Fla. | Fla. |
| Spiess | Honda | Direct | Fla. | Minn. | Minn. | Minn. |
| Takeda | Honda | C.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Talamantes | Toyota | Direct | Fla. | Nev. | Nev. | Nev. |
| Tanner | Honda | N.D. Ala. | Ala. | Ala. | Ala. | Ala. |
| Taylor | Honda | C.D. Cal. | Cal. | Fla. | Fla. | Fla. |
| Tessier | Honda | S.D.N.Y. | N.Y. | Fla. | Fla. | Fla. |
| Thompson | BMW | Direct | Fla. | Ga. | Ga. | Ga. |
| Tillisch | Honda | C.D. Cal. | Cal. | Va. | Va. | Va. |
| Veser | BMW | E.D. Mich. | Mich. | Fla. | Fla. | Fla. |
| Vukadinovic | Mazda | E.D. Pa. | Pa. | Fla. | Fla. | Fla. |
| Walker | Subaru | E.D. Pa. | Pa. | Fla. | Fla. | Fla. |
| Watley | Honda | N.D. Ga. | Ga. | Ga. | Ga. | Ga. |
| Weisberg | Honda | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Weisblat | Ford | S.D. Fla. | Fla. | Fla. | Fla. | Fla. |
| Whitehead | Honda | C.D. Cal. | Cal. | Ala. | Ala. | Ala. |
| Wilkinson | Honda | S.D. Fla. | Fla. | Or. | Or. | Or. |
| Wilsey | Honda | Direct | Fla. | R.I. | R.I. | R.I. |
| Wishkovsky | Toyota | E.D. Mich. | Mich. | Pa. | Pa. | Pa. |
| Woodard | Ford | Direct | Fla. | S.C. | S.C. | S.C. |
| Young | Honda | E.D.N.C. | N.C. | N.C. | Ga. | Ga. |
| Zamora | Honda | S.D. Cal. | Cal. | Cal. | Cal. | Cal. |
| Zielinski | BMW | N.D. Ill. | Ill. | Ill. | Ill. | Ill. |

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Detailed factual allegations are not required, but a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

Where a cause of action sounds in fraud, however, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party

must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. FED. R. CIV. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (internal quotations and citations omitted).

## III.   ANALYSIS

A.   **Choice-of-Law Analysis**

Plaintiffs argue that a choice-of-law inquiry is premature, but the issue has been briefed and can be decided without further factual development. In the Mazda Order, the Court concluded that it should apply the transferor court's choice-of-law rules for each case transferred into the multidistrict litigation. In applying the various choice-of-law rules in previous orders, the Court has completed a choice-of-law analysis for all but five of the 112 named plaintiffs— Bonet, Herron, McLaughlin, Petersen, and Huebner, as to his Pontiac only. Bonet, Herron, McLaughlin and Petersen all purchased Chrysler vehicles with Takata airbags. Although there are no claims asserted against Chrysler because of Chrysler's bankruptcy, the Chrysler plaintiffs still maintain claims against Takata. Huebner purchased two vehicles involved in this multidistrict litigation. The first vehicle—a Ford—was addressed in the Ford Order. The second vehicle—a Pontiac—has yet to be addressed because Huebner's claims against Toyota were dismissed. But, Huebner still maintains claims against Takata related to his Pontiac.

Applying the Mazda Order's choice-of-law analysis, Florida's choice-of-law rules apply to Bonet's, Herron's, and Petersen's claims because their cases were either directly filed into this multidistrict litigation or transferred from the Southern District of Florida; Pennsylvania's

choice-of-law rules apply to Huebner's Pontiac claims because his case was transferred from the Western District of Pennsylvania; and South Carolina's choice-of-law rules apply to McLaughlin's claims because his case was transferred from the District of South Carolina.

Applying Florida's choice-of-law rules to Bonet, Herron and Petersen, Florida substantive law applies to Bonet and Herron because they purchased their vehicles in Florida and reside in Florida, and Iowa substantive law applies to Petersen because he purchased his vehicle in Iowa and resides in Iowa.[5]  Applying Pennsylvania's choice-of-law rules to Huebner's Pontiac claims, Ohio substantive law applies.  Although Huebner resides in California, he purchased his Pontiac in Ohio, and thus, Ohio has more interest in his claims than California.[6]  Applying South Carolina's choice-of-law rules to McLaughlin, South Carolina substantive law applies because he purchased his vehicle in South Carolina and resides in South Carolina.[7]  The Court has now analyzed the applicable substantive law for all 112 named plaintiffs, as summarized in Table 2.

B.   **Negligence & Negligent Failure to Recall (Counts 8 & 55)**

Plaintiffs bring two negligence claims:  (1) negligence on behalf of the nationwide class (Count 8), and (2) negligent failure to recall on behalf of the California subclass (Count 55).  As explained in the Nissan and BMW Orders, California's economic loss rule bars Count 55.  Therefore, Takata's motion to dismiss Count 55 is **GRANTED**.  Takata moves to dismiss Plaintiffs' negligence claims on grounds that the economic loss doctrine precludes economic damages on negligence theories of liability.  As explained in the Ford Order, the Court treats Count 8 as arising under only Michigan law because even though Plaintiffs allege Count 8 under

---

[5] Florida's choice-of-law rules are explained in the Mazda Order.

[6] Pennsylvania's choice-of-law rules are explained in the Mazda Order.

[7] South Carolina's choice-of-law rules are explained in the Toyota Order.

alternative laws, the Response states that Plaintiffs are "asserting these claims for negligence under Michigan law." As Table 2 indicates, Michigan law applies only to two named plaintiffs—Boone and Morris. Therefore, Takata's motion to dismiss Count 8 is **GRANTED** as to all named plaintiffs except Boone and Morris.

As to Boone and Morris, Takata argues that Michigan's economic loss rule bars their negligence claims. The Court agrees. In Michigan, the economic loss doctrine "bars tort (product liability) recovery and limits remedies to those available under the Uniform Commercial Code where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic." *Neibarger v. Universal Coops., Inc.*, 486 N.W.2d 612, 613 (Mich. 1992). The doctrine was later expanded to apply to consumer transactions. *See Sherman v. Sea Ray Boats*, 649 N.W.2d 783 (Mich. Ct. App. 2002).

Plaintiffs argue that *Neibarger* prohibits application of the economic loss doctrine outside of commercial transactions, and therefore, does not prevent tort claims by consumers who have neither the skill nor the bargaining power to negotiate warranties or other remedies. *See, e.g., Republic Ins. Co. v. Broan Mfg. Co., Inc.*, 960 F. Supp. 1247, 1249 (E.D. Mich. 1997) ("The [economic loss] doctrine has no application outside the commercial realm"); *Frankenmuth Mut. Ins. Co. v. Ace Hardware Corp.*, 899 F. Supp. 348, 351 (W.D. Mich. 1995) (economic loss doctrine does not appear to apply to a consumer who purchases for personal use); *Chiasson v. Winnebago*, No. 01-74809, 2002 U.S. Dist. LEXIS 27462, at *29 (E.D. Mich. May 16, 2002) (recognizing distinction between commercial and consumer plaintiffs in applying economic loss doctrine—consumer's remedies should not be barred by economic loss doctrine when not in privity with manufacturer). But, the cases supporting Plaintiffs' position were decided by federal courts applying Michigan law either before or just days after *Sherman* expanded the economic

loss doctrine to consumer transactions.  Although the Supreme Court of Michigan has not

definitively settled the issue—to the extent *Neibarger* was unclear—Michigan courts now

routinely follow *Sherman* and extend the economic loss doctrine to consumer transactions.  *See,*

*e.g.*, *Phillips v. State Farm Ins. Co.*, No. 328309, 329740, 2016 Mich. App. LEXIS 2126, at *5

(Mich. Ct. App. Nov. 17, 2016); *Fremont Ins. Co. v. Gro-Green Farms*, No. 324075, 2016 Mich.

App. LEXIS 553, at *5 (Mich. Ct. App. Mar. 17, 2016).  This Court follows suit.[8]

Here, Plaintiffs' economic loss track damages do not arise from physical harm, but are

based on mere disappointed economic expectations in the vehicles.  Analysis under the personal

injury track may differ, but the overriding concern of the economic loss doctrine provides that

where a plaintiff seeks damages solely for economic losses, tort concerns with product safety no

longer apply and economic expectation issues prevail.  *See Sherman*, 649 N.W.2d at 790.

Therefore, Takata's motion to dismiss Count 8 as to Boone and Morris is **GRANTED**.[9]

C.    **Fraudulent Concealment (Counts 4 & 104)**

Plaintiffs bring two fraudulent concealment claims:  (1) Count 4 on behalf of the

nationwide class under the common law of fraudulent concealment, or alternatively, under

Michigan law, or alternatively, under the laws of the states where Plaintiffs reside or purchased

their vehicles; and (2) Count 104 on behalf of the nationwide Automotive Recycler Class.

Takata moves to dismiss Plaintiffs' claims for fraudulent concealment on grounds that:  (1) there

---

[8] For a comprehensive analysis of Michigan's expansion of the economic loss doctrine to consumer transactions, see *Conrad v. Certainteed Corp.*, No. 308705, 2013 Mich. App. LEXIS 2039, at *5-13 (Mich. Ct. App. Dec. 12, 2013).

[9] Although the parties did not brief the issue, the Court notes that lack of privity of contract between Plaintiffs and Takata does not preclude application of Michigan's economic loss doctrine.  The Court of Appeals of Michigan has "expressly rejected the argument that the economic loss doctrine does not apply in the absence of privity of contract."  *See Citizens Ins. Co. v. Osmose Wood Preserving, Inc.*, 585 N.W.2d 314, 316 (Mich. Ct. App. 1998).  Although the cases relied upon by *Osmose Wood* all involve commercial settings, they predated *Sherman*. And *Sherman* chose not to address privity as the parties did not raise the issue.  *See Sherman*, 649 N.W.2d at 790 n.7.

is no federal common law of fraudulent concealment; (2) Takata had no duty to communicate with Plaintiffs; (3) Plaintiffs do not allege injury caused by reliance on any concealment or misrepresentation; and (4) the economic loss doctrine bars any tort recovery under the laws of Florida, Indiana, Michigan, Missouri, North Carolina, Pennsylvania, or West Virginia.  As explained below, Plaintiffs sufficiently allege Count 4 under the laws of all states except Florida and Pennsylvania.  Therefore, Takata's motion to dismiss Count 4 is **GRANTED** as to Plaintiffs governed by Florida or Pennsylvania law, and is **DENIED** as to all other Plaintiffs.  And Takata's motion to dismiss Count 104 is **GRANTED**.

     1.    ***Count 4 is Alleged Under Alternative Laws***

Takata argues that there is no federal common law of fraudulent concealment because the law materially varies by state.  Indeed, Takata attaches a lengthy exhibit that charts the elements of fraudulent concealment in 20 states.  But, Takata's chart suggests that the elements in each state are similar and that most of the 20 states require duty, reliance, and causation.[10]  Thus, Takata's own summary of fraudulent concealment law seems to contradict its argument that the law is not common across the states.

Nevertheless, the Court need not determine whether or not there is a federal common law of fraudulent concealment at this time because Count 4 is alleged under the federal common law, but alternatively under Michigan law or the laws of the states where Plaintiffs reside or purchased their vehicles.  Thus, even if the Court were to determine that there is no federal common law of fraudulent concealment, Plaintiffs would still have viable claims based on the laws of the states where Plaintiffs reside or purchased their vehicles.  Indeed, as explained in other orders, the Court has permitted Plaintiffs' fraudulent concealment claims to proceed

---

[10] Takata's chart concludes that only Arizona does not require a duty, and that only North Carolina does not require reliance.

against the Automotive Defendants under the laws of Alabama, California, Florida,[11]
Massachusetts, Nevada, South Carolina, and Texas. Therefore, even if the Court were to
conclude that there is no federal common law of fraudulent concealment, Count 4 could not be
dismissed. The issue may be readdressed at class certification or at summary judgment.

    2.    ***Florida Law Applies to Count 104***

       Plaintiffs do not specify what law applies to Count 104. Takata argues that Count 104
fails to give notice of the state law or laws under which the claim is asserted, which "alone is
reason to dismiss the[] claim." *See Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538,
550 n.15 (E.D. Pa. 2014) (failure to identify under which state's laws plaintiffs assert their
claims is grounds for dismissal). Although Plaintiffs do not dispute Takata's argument in their
Response, the Court already has explained in a previous order that the Automotive Recycler
Class does not have standing to assert claims under laws of states other than Florida. Further, as
explained in the Mazda Order, Florida's economic loss rule bars claims for fraudulent
concealment seeking economic loss. Therefore, Takata's motion to dismiss Count 104 is
**GRANTED**.

    3.    ***Plaintiffs Sufficiently Allege Takata's Duty to Disclose***

       In many states, a fraudulent concealment claim requires that the defendant have a duty to
disclose facts. Takata argues that it had no duty to disclose information to Plaintiffs because
Takata did not enter into any direct transaction with Plaintiffs and thus, had no "direct
relationship." Takata's arguments are substantially similar to the arguments asserted by Mazda,

---

[11] Although the Court permitted fraudulent concealment claims to proceed under Florida law in its Subaru,
Toyota, Nissan and Ford Orders, the Court also dismissed a fraudulent concealment claim under Florida law in the
Mazda Order under Florida's economic loss rule.

Subaru, and Ford.[12]  As explained in those orders, a direct relationship is not required to create a duty to disclose—other special circumstances can suffice.  Although Takata is one step further removed from Plaintiffs' consumer transactions than the Automotive Defendants, the same reasoning applies.  Plaintiffs allege that Takata owed a duty to disclose the true safety and reliability of the defective airbags because Takata possessed exclusive knowledge of the dangers and risks posed by the airbags, intentionally concealed those dangers and risks, and "[m]ade incomplete representations about the safety and reliability of the [airbags] generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations." Consistent with the reasoning in the Mazda, Subaru and Ford Orders, because Plaintiffs allege that Takata made these incomplete representations, the Court finds that Plaintiffs sufficiently allege that Takata had a duty to disclose additional facts about the safety of its airbags. Therefore, Takata's motion to dismiss Count 4 for lack of duty to disclose is **DENIED**.

Further, at the motion to dismiss stage, the Court does not consider facts outside of the Complaint, like Takata's guilty plea in the United States District for the Eastern District of Michigan, Case No. 16-20810.  But, Takata's admissions in that guilty plea may be highly influential at summary judgment.

4.    *Plaintiffs Sufficiently Allege Reliance and Causation*

Takata argues that Plaintiffs do not allege an injury caused by reliance on any concealment or misrepresentation and thus, do not establish the required causal link between Takata's alleged inequitable conduct and the resulting harm.  But here, Plaintiffs assert that Takata's alleged omissions and concealed material facts about the defective airbags caused

---

[12] Takata does not raise specific state law arguments.  To the extent state law needs to be addressed at a later stage, the Court has already addressed similar duty arguments under the laws of Alabama, California, Florida, Massachusetts, South Carolina, and Texas in the Mazda, Subaru, and Ford Orders.  In each analysis, the Court determined that the applicable Automotive Defendant had a duty to disclose information to Plaintiffs.

Plaintiffs' injuries. Specifically, Plaintiffs assert that but for Takata's omissions of a dangerous safety defect—a highly material fact for consumers—Plaintiffs would not have purchased the vehicles or would not have paid as much for them as they did. This alone suffices to allege causation and reliance. At the motion to dismiss stage, Plaintiffs sufficiently allege that Takata's omissions caused Plaintiffs to purchase vehicles with defective airbags. Therefore, Takata's motion to dismiss Count 4 for failure to allege reliance or causation is **DENIED**.

Further, it is unclear whether Takata argues that Plaintiffs do not sufficiently allege Takata's knowledge of the inflator defect. But, to the extent Takata makes this argument, consistent with the Mazda Order, the Court finds that Plaintiffs sufficiently allege Takata's knowledge of the inflator defect to satisfy the pleading requirements of Rule 9(b).

### 5. *Economic Loss Doctrine in Select States*

Takata argues that the economic loss doctrine bars any tort recovery under the laws of Florida, Indiana, Michigan, Missouri, North Carolina, Pennsylvania and West Virginia. Generally, the economic loss doctrine provides that damages for purely economic loss resulting from the purchase of a product that injures itself are not recoverable in certain tort actions and must be asserted in a breach of contract or warranty claim. *See E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 871 (1986). Plaintiffs argue that courts across the country have held the economic loss doctrine does not apply to claims sounding in fraud.

As an initial matter, the Court already has concluded that the economic loss doctrines in Florida and Pennsylvania bar claims for fraudulent concealment. Therefore, Takata's motion to dismiss Count 4 as to Plaintiffs governed by Florida or Pennsylvania law is **GRANTED**.

### a.   Indiana

Takata argues that Indiana's economic loss doctrine bars Plaintiffs' fraudulent concealment claims. The Supreme Court of Indiana decision on which Takata relies held that

where loss is purely economic, like where the only loss relates to a product's failure to live up to expectations, such losses are not recoverable in strict liability, but are more appropriately recovered by contractual remedies. *See Reed v. Cent. Soya Co.*, 621 N.E.2d 1069, 1075 (Ind. 1993). But, *Reed* dealt only with recovery of economic loss in strict liability actions and did not address the recoverability of damages in fraud actions. As Plaintiffs argue, Indiana courts have awarded diminution of value damages where plaintiffs have relied on fraud and misrepresentation causes of action. *See, e.g.*, *Captain & Co., Inc. v. Stenberg*, 505 N.E.2d 88, 98 (Ind. Ct. App. 1987).

It is unclear whether the Supreme Court of Indiana intended its holding in *Reed* to apply to economic loss damages resulting from fraud claims. But, because Indiana courts have awarded economic loss damages based on fraud and misrepresentation, and *Reed* did not definitively foreclose such recovery, this Court concludes that the Indiana economic loss doctrine does not apply to claims sounding in fraud. *See In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. 991, 2015 U.S. Dist. LEXIS 18207, at *17-20 (E.D. La. Dec. 5, 1995) (concluding same).

Takata further argues that Indiana does not recognize exceptions to the economic loss doctrine for fraudulent concealment claims. But, the case on which Takata relies, *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780 (7th Cir. 2015), is easily distinguishable. In *Child Craft*, the plaintiff never pursued a theory of intentional wrongdoing—only negligence. *Id.* at 787. Nothing in *Child Craft* suggests that plaintiffs are foreclosed from recovering economic losses for ***intentional*** misrepresentation claims. Here, of course, Plaintiffs allege that "Takata's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being." Further, although Indiana has not

-16-

specifically recognized an exception for fraudulent concealment, *Child Craft* lists several other exceptions to Indiana's economic loss rule. *See id.* at 788 (citing *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742 (Ind. 2010) (economic loss rule did not bar negligent misrepresentation claim where plaintiff was not in privity with defendant)). Based on the exceptions that already exist, it is reasonable—if not likely—that the Supreme Court of Indiana would exclude claims for intentional misrepresentation from the economic loss doctrine, especially where the parties lack privity. Therefore, Takata's motion to dismiss Count 4 as to Plaintiffs governed by Indiana law is **DENIED**.

   b. <u>Michigan</u>

   Takata argues that Michigan's economic loss doctrine bars Plaintiffs' fraudulent concealment claims. As already explained, Michigan's economic loss doctrine extends to consumer transactions. But, Michigan applies an exception to the economic loss doctrine for fraudulent inducement claims:

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms is undermined by the other party's [precontractual] fraudulent behavior.

*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 2001). Here, Plaintiffs' fraudulent concealment claims redress misrepresentations that allegedly induced Plaintiffs to purchase vehicles, but do not themselves constitute contract or warranty terms. This "precontractual" conduct is not covered by contractual remedies and thus application of the economic loss doctrine to bar Plaintiffs' claims is inconsistent with the rationale of the doctrine itself—to encourage parties to negotiate economic risks through warranty provisions and price. *See id.* at 544-45. Plaintiffs' fraudulent concealment claims are

extraneous to any contractual dispute.  Indeed, there is no contract at all between Plaintiffs and

Takata.  Thus, Michigan's economic loss doctrine does not apply because Plaintiffs allege that

Takata's fraudulent concealment induced vehicle purchases.  Therefore, Takata's motion to

dismiss Count 4 as to Plaintiffs governed by Michigan law is **<u>DENIED</u>**.

        c.      <u>Missouri</u>

Takata argues that Missouri's economic loss doctrine bars Plaintiffs' fraudulent

concealment claims.  The Missouri Supreme Court has yet to decide the issue as to defective

products.  *See Nestle Purina PetCare Co. v. Blue Buffalo Co.*, 181 F. Supp. 3d 618, 638 (E.D.

Mo. 2016).  But, at least one federal court has held that the Missouri Supreme Court would likely

hold that a fraudulent suppression claim is not barred by the economic loss doctrine.  *See Self v.

Equilon Enters., Inc.*, No. 4:00CV1903TIA, 2005 U.S. Dist. LEXIS 17288, at *41 (E.D. Mo.

Mar. 30, 2005).

Similar to Michigan, Missouri courts bar tort claims that seek to recover economic losses

unless the claims are based on misrepresentations that are independent of a contract.  *See AKA

Distrib. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998).  Two key factors in examining

whether a fraud claim is independent of a contract under the economic loss doctrine are:  (1)

whether the subject matter of the alleged misrepresentations was incorporated into the parties'

contract; and (2) whether the plaintiff suffered additional damages outside the contract as a result

of the alleged fraud.  *Compass Bank. v. Eager Rd. Assocs., LLC*, 922 F. Supp. 2d 818, 827 (E.D.

Mo. 2013).  Here, Plaintiffs and Takata have no contract for the alleged fraudulent concealment

to be incorporated into.  Because the claims are independent of any contract, similar to the

reasoning applied under Michigan law, Missouri's economic loss doctrine does not bar

Plaintiffs' fraudulent concealment claims.  Therefore, Takata's motion to dismiss Count 4 as to

Plaintiffs governed by Missouri law is **<u>DENIED</u>**.

d.      North Carolina

Takata argues that North Carolina's economic loss doctrine bars Plaintiffs' fraudulent concealment claims.  Until recently, application of North Carolina's economic loss doctrine to fraud claims was unclear.  Many North Carolina trial courts and federal courts applying North Carolina law have interpreted the doctrine to bar a variety of tort claims that "piggyback" breach of contract claims.  *See Akzo Nobel Coatings, Inc. v. Rogers*, No. 11 CVS 3013, 2011 NCBC LEXIS 42, at *50 (N.C. Super. Ct. Nov. 3, 2011).  These courts held that "to maintain tort claims for conduct also alleged to be a breach of contract, a plaintiff must identify a duty owed by the defendant separate and distinct from any duty owed under a contract."  *Forest2Market, Inc. v. Arcogent, Inc.*, No. 15 CVS 9547, 2016 NCBC LEXIS 3, at *8 (N.C. Super. Ct. Oct. 5, 2016).

In the time since the parties briefed this motion to dismiss, the North Carolina Court of Appeals has definitively ruled on the issue:

> *Ports Authority* and analogous cases applying the economic loss rule are limited in scope to claims for negligence and have never applied the doctrine to claims for fraud brought contemporaneously with claims for breach of contract.  Therefore, we hold that...while claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, the law is, in fact, to the contrary:  a plaintiff may assert both claims.

*Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 259 (N.C. Ct. App. 2016) (internal quotations and citations omitted).  Following *Bodden*, it is now clear that claims for fraud are not barred by North Carolina's economic loss rule.  Therefore, Takata's motion to dismiss Count 4 as to Plaintiffs governed by North Carolina law is **DENIED**.

e.      West Virginia

Takata argues that West Virginia's economic loss doctrine bars Plaintiffs' fraudulent concealment claims, relying on a Supreme Court of Appeals of West Virginia decision in which

the court refused to extend strict tort liability to economic loss cases. *See Basham v. Gen. Shale*, 377 S.E.2d 830 (W. Va. 1989). In response, Plaintiffs cite *Horan v, Turnpike Ford, Inc.*, in which the same court affirmed a jury's award of damages to consumers who alleged that the defendant dealership had committed fraud by making false representations and by failing to disclose information regarding an automobile purchase. 433 S.E.2d 559 (W. Va. 1993). In *Horan*, the measure of damages awarded was the difference in value of the vehicle as represented and the value of the vehicle in its actual condition at the time of the transaction. *Id.* at 565. Although West Virginia has long recognized that pure economic damages are more properly the subject of contract claims, the *Horan* decision indicates that a plaintiff may rely on a fraud theory to recover purely economic losses. This Court has found no case in which the Supreme Court of Appeals of West Virginia has held to the contrary, leading one to conclude that West Virginia's economic loss doctrine does not bar fraud claims. Therefore, Takata's motion to dismiss Count 4 as to Plaintiffs governed by West Virginia law is **DENIED**.

D.    **Unjust Enrichment (Count 6)**

Plaintiffs bring one claim for unjust enrichment on behalf of the nationwide class under the common law of unjust enrichment or, alternatively, under Michigan law, or alternatively, under the laws of the states where Plaintiffs reside or purchased their vehicles. Takata moves to dismiss Plaintiffs' unjust enrichment claim on grounds that: (1) Takata did not directly benefit from Plaintiffs' purchases of the vehicles; (2) Plaintiffs' express warranty contracts with the Automotive Defendants preclude a quasi-contractual claim for unjust enrichment; (3) Plaintiffs have an adequate remedy at law; and (4) unjust enrichment is not an independent claim in California or Texas. As explained below, Takata did not directly benefit from Plaintiffs' purchases of the vehicles. Therefore, Takata's motion to dismiss Count 6 is **GRANTED**.

1.      ***Takata Did Not Directly Benefit from Plaintiffs' Purchases***

Takata argues that the unjust enrichment claims fail because Takata did not directly benefit from Plaintiffs' vehicle purchases.  Plaintiffs purchased the vehicles from dealerships or other automotive sales establishments or individuals, but not from Takata.[13]  Takata suggests that this does not create a direct relationship sufficient to state a claim for unjust enrichment. Plaintiffs respond that although they must "directly confer a benefit on defendants, they need not have direct contact with the defendants to do so"—a plaintiff's money could pass to a defendant through a third party, i.e. the Automotive Defendants.

A plaintiff may confer a direct benefit through indirect contact with a defendant through an intermediary.  *See Williams v. Wells Fargo Bank N.A.*, No. 11-21233, 2011 U.S. Dist. LEXIS 119136, at *15–16 (S.D. Fla. Oct. 14, 2011) ("It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant."); *Romano v. Motorola, Inc.*, No. 07-60517, 2007 U.S. Dist. LEXIS 86472, at *6 (S.D. Fla. Nov. 26, 2007) ("Defendant erroneously equates direct *contact* with direct *benefit* in arguing that because plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff  conferred no direct benefit on Motorola.") (emphasis in original, internal quotations omitted).  Further, several courts have denied motions to dismiss unjust enrichment claims against manufacturers that marketed their products to consumers but sold the products through third-party retailers.  *See, e.g., Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323 (S.D. Fla. 2014); *Romano*, 2007 U.S. Dist. LEXIS 86472.

---

[13] The Court's previous orders have addressed the issue of whether Plaintiffs have conferred a direct benefit on the Automotive Defendants.  For each Plaintiff, the issue turned on where that individual purchased the vehicle and how far removed the Automotive Defendant was from the sale.

But, these cases are distinguishable because they involve manufacturers of final products sold to consumers—not manufacturers of component parts. Here, Plaintiffs allege that "Takata benefitted through its unjust conduct, by selling Defective Airbags with a concealed safety-and-reliability related defect, at a profit, for more than these Defective Airbags were worth, to Plaintiffs, who overpaid for these Defective Airbags by overpaying for their Class Vehicles, [or] would not have purchased these Defective Airbags and Class Vehicles at all." Plaintiffs do not allege that Takata sells airbags to consumers, but only to automakers and governmental purchasers. Thus, Takata realized its benefit as soon as it sold its airbag parts to the Automotive Defendants. And the benefit was not contingent on any consumer's decision to purchase a vehicle. Because Plaintiffs do not allege that they have conferred a direct benefit on Takata, the unjust enrichment claim fails as a matter of law. Therefore, Takata's motion to dismiss Count 6 is **GRANTED**.

E.    **Implied Warranty (Counts 5, 48, 54, 57, 62, 66, 69, 71, 73, 76, 78, 80, 81, 86, 90, 92, 95, 98, 100 & 103)**

Plaintiffs bring 20 implied warranty claims—one count on behalf of the nationwide class under Michigan law, and 19 counts on behalf of subclasses under the laws of various states, including California, Colorado, Florida, Hawaii, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, North Carolina, Pennsylvania, Rhode Island, South Carolina, Texas, Virginia, and West Virginia. Takata moves to dismiss Plaintiffs' implied warranty claims on grounds that: (1) Plaintiffs fail to allege manifestation of a defect or the imminent likelihood of manifestation; (2) contractual privity is required under the laws of Florida, Michigan, North Carolina, and Texas; (3) Plaintiffs cannot allege a manifestation of defect within one year of purchase under California law; and (4) the claims are time-barred under

the laws of Indiana, Minnesota, Missouri, Nevada, New Jersey, North Carolina, Rhode Island, and West Virginia.

As an initial matter, Plaintiffs assert Count 5 under Michigan law. But, as explained above, Michigan law applies only to two named plaintiffs—Boone and Morris. Therefore, Takata's motion to dismiss Count 5 is **GRANTED** as to all named plaintiffs except Boone and Morris. As explained below, Plaintiffs sufficiently allege 17 of the 19 other counts.

### 1. *Plaintiffs Sufficiently Allege Manifestation of a Defect*

Takata argues that the implied warranty claims should be dismissed because they fail to allege either manifestation of a defect or the imminent likelihood of manifestation. As explained in the Mazda Order, the Court rejects this argument at the motion to dismiss stage, but notes that Takata has raised the possibility of other causes and factors contributing to the airbag inflator malfunctions, which may appropriately be considered at summary judgment. Therefore, Takata's motion to dismiss the implied warranty claims for failure to allege manifestation of a defect is **DENIED**.

Takata also argues that Plaintiffs' California warranty claims (Count 54) should be dismissed because Plaintiffs cannot allege manifestation of a defect within one year of purchase. As explained in the Nissan Order, the issue of whether the alleged defect manifested itself within the first year requires further factual development. Therefore, Takata's motion to dismiss Count 54 on this ground is **DENIED**.

### 2. *Lack of Privity Does Not Bar Plaintiffs' Implied Warranty Claims Under Michigan or Texas Law (Counts 5, 73 & 98)*

Takata initially argued that five counts should be dismissed because the parties lack contractual privity, which Takata suggests bars implied warranty claims in Florida, Michigan, North Carolina and Texas. In their Response, Plaintiffs state that they "have elected not to

pursue implied warranty claims under Florida and North Carolina" law.  Therefore, Takata's motion to dismiss Counts 48 and 86 is **GRANTED**.[14]

Further, as explained in the Court's previous order denying Takata's motion to dismiss Count 3, Plaintiffs cite case law suggesting that privity is not required to sustain breach of implied warranty claims under Michigan and Texas law.  Therefore, Takata's motion to dismiss Counts 5, 73 and 98 for lack of privity is **DENIED**.

3.   ***Plaintiffs' Implied Warranty Claims Are Not Time-Barred Under the Laws of Indiana, Minnesota, Missouri, Nevada, New Jersey, North Carolina, Rhode Island, or West Virginia (Counts 66, 76, 78, 80, 81, 86, 92, 103)***[15]

Takata argues that these eight states have no discovery rule to toll the statute of limitations for implied warranty claims.  Thus, Takata suggests that all claims brought by Plaintiffs in each subclass who purchased vehicles outside of the applicable limitations period in these states should be dismissed.

As an initial matter, in its Reply, Takata concedes that in Minnesota and Nevada, accrual of the statute of limitations begins at the time of discovery.  Therefore, Takata's motion to dismiss Counts 76 and 80 as time-barred is **DENIED**.  Further, as explained in the Toyota Order, the Court finds that, at the motion to dismiss stage, Plaintiffs sufficiently allege facts to toll the statute of limitations under Nevada's discovery rule.  Also, as already explained, Plaintiffs are no longer pursuing Count 86.

---

[14] In a previous order, the Court already has denied Takata's motion to dismiss Plaintiffs' related Magnuson-Moss Warranty Act claim (Count 3).  Takata sought dismissal of Count 3 solely on the grounds that the underlying state implied warranty claims should be dismissed.  However, because Counts 48 and 86 are now dismissed, Count 3 is also dismissed as to Plaintiffs governed by Florida and North Carolina law.

[15] In its Reply, Takata also points to the arguments made by the Automotive Defendants that the statutes of limitation for implied warranty claims under the laws of California, Florida, Massachusetts, and Pennsylvania bar Counts 5, 48, 54, 71, and 90.  To the extent these arguments are not addressed in previous orders on the Automotive Defendants' motions to dismiss, Takata is free to argue them at summary judgment.

For the remaining five counts under the laws of Indiana, Missouri, New Jersey, Rhode Island and West Virginia, although Plaintiffs dispute that these states do not recognize the discovery rule, more importantly, Plaintiffs argue that even if true, each state tolls the limitations period when there is fraudulent concealment. In response, Takata does not dispute that fraudulent concealment tolls the limitations periods, but instead argues only that Plaintiffs do not sufficiently allege fraudulent concealment.

As the Court has explained in this and other orders, Plaintiffs sufficiently allege facts to support a fraudulent concealment claim—that Takata knowingly and actively concealed the defect from Plaintiffs for many years. As long as the fraudulent concealment claims remain, the limitations period is tolled in all states that recognize the exception, including the five states at issue here. Therefore, Takata's motion to dismiss Counts 66, 78, 81, 92 and 103 as time-barred is **DENIED**.

F.    **Consumer Protection Statutes (Counts 7, 47, 49, 50, 51, 52, 53, 56, 58, 59, 60, 61, 63, 64, 65, 67, 68, 70, 72, 74, 75, 77, 79, 82, 83, 84, 85, 87, 88, 89, 91, 93, 94, 96, 97, 99, 101, 102, 105 & 106)**

Plaintiffs bring 40 claims for violations of various states' consumer protection statutes—one count on behalf of the nationwide class under Michigan law, and 39 counts on behalf of subclasses under the laws of various states, including Alabama, Arizona, California, Colorado, Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia. Takata moves to dismiss Plaintiffs' consumer protection claims on grounds that: (1) Takata did not engage in a consumer transaction or consumer-directed conduct; (2) Plaintiffs are not entitled to restitution under Arkansas or California law; and (3) the claims are time-barred

under the laws of Connecticut, Hawaii, Indiana, Minnesota, Ohio, Rhode Island, and West Virginia.[16]

As an initial matter, Count 7 is brought on behalf of the nationwide class, but arises only under Michigan law.[17]  As already explained, Michigan law applies to only two named plaintiffs—Boone and Morris.  Because Michigan law does not govern the claims brought by the other 110 named plaintiffs, Takata's motion to dismiss Count 7 as to all named plaintiffs except for Boone and Morris is **GRANTED**.  Further, as explained in a previous order, the Automotive Recycler Class does not allege sufficient facts to have standing to assert claims under the consumer protection laws of states other than Florida.  This effectively makes Count 105 identical to Count 106.  Therefore, Takata's motion to dismiss Count 105 is **GRANTED**.  As explained below, Plaintiffs sufficiently allege all remaining consumer protection counts. Therefore, Takata's motion to dismiss these counts is **DENIED**.

1.   ***Plaintiffs Sufficiently Allege Consumer-Directed Conduct***

Takata argues that all 40 counts should be dismissed because Takata and the Plaintiffs have an "indirect" relationship, suggesting that Plaintiffs do not allege deceptive conduct specifically directed at them by Takata.  Essentially, Takata argues that Plaintiffs' purchases of the vehicles do not convert Plaintiffs into "consumers" of Takata airbags.  Because Plaintiffs purchased vehicles from the Automotive Defendants or other third party sellers, Takata argues that the only parties who could have been directly affected by Takata's alleged misconduct are the Automotive Defendants—the counterparties to Takata's airbag supply agreements.  In

---

[16] Takata initially made other arguments related to consumer protection claims in its motion to dismiss, but retreated from these arguments in its Reply.

[17] Plaintiffs allege additional violations of Michigan law, but in those counts, Plaintiffs allege alternative law if Michigan law does not apply.  Count 7 is strictly brought under Michigan law with no alternative law alleged.

support of its argument, Takata cites cases from a number of jurisdictions that have dismissed consumer protection claims.[18]

In response, Plaintiffs distinguish all of these cases as inapposite. This Court agrees. The cases Takata relies on involve either: (1) private contractual disputes; (2) commercial disputes between businesses; (3) too many intervening factors in the causal chain between the injuries and the allegedly unlawful conduct; (4) plaintiffs who are too remote from the deceptive acts; or (5) conduct that is not consumer-oriented. Here, Plaintiffs clearly allege that they were consumers of Takata airbags and that Takata's deceptive conduct was directed at Plaintiffs. Plaintiffs are "consumers" under the relevant statutes. Throughout the Complaint, Plaintiffs allege that Takata intended to deceive consumers and that Takata misled and injured consumers as a result of that deception. The economic harm allegedly suffered by Plaintiffs flows directly from Takata's alleged concealment of the airbag defect. Accepting these allegations as true, as the Court must at this stage, Plaintiffs sufficiently allege facts indicating that Takata's deception was aimed at consumers, despite the lack of direct privity.[19] Therefore, Takata's motion to dismiss the consumer protection counts for lack of consumer-directed conduct is **DENIED**.

2.   *Plaintiffs Sufficiently Allege Entitlement to Restitution Under Arkansas or California Law (Counts 51, 52 & 105)*

Takata argues that these three counts should be dismissed because Plaintiffs do not allege any loss of Plaintiffs' money or property to Takata, which precludes any monetary remedy

---

[18] *Maurizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000); *Sheet Metal Workers Local 441 v. Glaxosmithkline, PLC*, 737 F. Supp. 2d 380 (E.D. Pa. 2010) (applying Michigan, New York, and Arizona law); *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544 (E.D. Pa. 2007); *In re Wellbutrin XL Antitrust Litig.*, 515 F. Supp. 2d 544 (E.D. Pa. 2007); *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319 (S.D.N.Y. 2005); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003); *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001).

[19] The Court notes that the analysis of consumer-directed conduct as required by consumer protection statutes differs from the analysis of a direct benefit as required for common law unjust enrichment claims. As here, a component manufacturer may direct conduct towards consumers sufficient to sustain a statutory consumer protection claim, yet remain far enough removed from the monetary benefit to preclude an unjust enrichment claim.

available under the relevant statutes. But, as Plaintiffs point out, they need not allege that they exchanged money directly with Takata to have a viable claim for restitution. *See, e.g.*, *Falco v. Nissan N. Am., Inc.*, 96 F. Supp. 3d 1053, 1061 n.11 (C.D. Cal. 2015) (finding plaintiffs need not allege "direct transaction" to properly plead claims under California's Unfair Competition Law or Consumer Legal Remedies Act); *Guido v. L'Oreal, USA, Inc.*, No. 11-1067, 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) (holding plaintiffs asserted viable class-wide claims under California's Unfair Competition Law and Consumer Legal Remedies Act against hair product manufacturer even though they purchased products from "retail outlets nationwide"); *Valor Healthcare, Inc. v. Pinkerton*, No. 08-6015, 2008 U.S. Dist. LEXIS 105988, at *7 (W.D. Ark. Dec. 23, 2008) (applying Arkansas Deceptive Trade Practices Act broadly to "[a]ny person who suffers actual damage or injury as a result of an offense or violation."). Accordingly, Takata's argument fails. Therefore, Takata's motion to dismiss Counts 51, 52 and 105 is **DENIED**.

   3.   ***Plaintiffs' Consumer Protection Claims Are Not Time-Barred Under the Laws of Connecticut, Hawaii, Indiana, Minnesota, Ohio, Rhode Island, or West Virginia (Counts 58, 61, 65, 74, 87, 91 & 102)***

   Takata argues that these seven states have no discovery rule to toll the statute of limitations for consumer protection claims. Thus, Takata suggests that all claims brought by Plaintiffs in each subclass who purchased vehicles outside of the applicable limitations period in these states should be dismissed. Plaintiffs dispute that these states do not recognize the discovery rule, but more importantly, Plaintiffs argue that even if true, each state tolls the limitations period when there is fraudulent concealment. In response, Takata does not dispute that fraudulent concealment tolls the limitations periods, but instead argues only that Plaintiffs do not sufficiently allege fraudulent concealment.

   As the Court has explained in this and other orders, Plaintiffs sufficiently allege facts to support a fraudulent concealment claim—that Takata knowingly and actively concealed the

defect from Plaintiffs for many years.  As long as the fraudulent concealment claims remain, the limitations period is tolled in all states that recognize the exception, including the seven states at issue here.  Therefore, Takata's motion to dismiss Counts 58, 61, 65, 74, 87, 91 and 102 as time-barred is **DENIED**.

## IV.   CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Takata's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows:

- *Negligence and Negligent Failure to Recall.*  Counts 8 and 55 are both **DISMISSED**.

- *Fraudulent Concealment.*  Count 4 is **DISMISSED** as to Plaintiffs governed by Florida or Pennsylvania law, but remains as to all other Plaintiffs.  Count 104 is **DISMISSED**.

- *Unjust Enrichment.*  Count 6 is **DISMISSED**.

- *Implied Warranty.*  Counts 48 and 86 are **DISMISSED**, as are the derivative Count 3 claims as to Plaintiffs governed by Florida or North Carolina law.  Count 5 is **DISMISSED** as to all Plaintiffs except Boone and Morris.  Count 5 as to Boone and Morris and the other 17 counts remain.

- *Consumer Protection Statutes.*  Count 105 is **DISMISSED**.  Count 7 is **DISMISSED** as to all Plaintiffs except Boone and Morris.  Count 7 as to Boone and Morris and the other 38 consumer protection counts remain.

. **DONE AND ORDERED** in Chambers, at Miami, Florida, this ___ of May 2017.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record