UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| **IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION** | MDL No. 2599 |
| This Document Relates to All Economic Loss Class Actions and: | Master File No.15- MD 2599-FAM |
| | S.D. Fla. Case No. 1:14-cv-24009-FAM |
| BRIDGET BOYD, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| FCA US LLC, | |
| Defendant. | |

**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

NATURE OF CLAIMS ................................................................................................................ 1

JURISDICTION AND VENUE ................................................................................................... 6

THE PARTIES.............................................................................................................................. 8

    I.    New Chrysler ................................................................................................... 8

    II.   Plaintiffs .......................................................................................................... 8

GENERAL FACTUAL ALLEGATIONS ................................................................................ 27

    I.    Definitions..................................................................................................... 27

    II.   Takata's Airbags Have a Common, Uniform Defect.................................... 32

           A.    Defendants Chose an Inexpensive and Dangerous Propellant................. 32

           B.    The Risks of the Inflator Defect Were Exacerbated by Takata's and New Chrysler's Abysmal Quality Control.................................................. 36

    III.  New Chrysler's Knowledge of the Defective Airbag ................................... 38

           A.    New Chrysler's Inherited Knowledge ...................................................... 38

           B.    New Chrysler's Acquisition of Additional Post-Sale Knowledge........... 41

    IV.  New Chrysler Sold Its Vehicles As "Safe" and "Reliable" ................................ 43

    V.   Inadequate Recalls and Failure to Assist Impacted Consumers ........................ 45

           A.    Slow and Inadequate Recalls ................................................................... 45

           B.    Failure to Provide Replacement Vehicles................................................. 47

           C.    Defective Replacement Airbags ............................................................... 47

TOLLING OF THE STATUTE OF LIMITATIONS................................................................. 49

    I.    Fraudulent Concealment ............................................................................... 49

    II.   Estoppel......................................................................................................... 50

    III.  Discovery Rule.............................................................................................. 50

    IV.  *American Pipe* Tolling ................................................................................ 50

CLASS ACTION ALLEGATIONS .......................................................................................... 51

    I.    The Classes ................................................................................................... 52

    II.   Numerosity.................................................................................................... 53

    III.  Predominance of Common Issues.................................................................. 53

    IV.  Typicality ...................................................................................................... 55

    V.   Adequate Representation ............................................................................... 56

    VI.  Superiority..................................................................................................... 56

REALLEGATION AND INCORPORATION BY REFERENCE ............................................. 58

CLAIMS FOR RELIEF ............................................................................................................. 58

    I.    Nationwide Claims........................................................................................ 58

           A.    Federal Claims ......................................................................................... 58

1.  Violation of the Magnuson-Moss Warranty Act, 15 U.S.C.
§ 2301 ................................................................................. 58

2.  Violation of the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1962(c) ........................... 62

3.  Violation of the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1962(d) ........................... 73

B.  Common Law and State Law Claims ....................................... 80

4.  Fraud ............................................................................. 80

5.  Unjust Enrichment ............................................................ 83

6.  Negligence ...................................................................... 83

II.  State Class Claims ........................................................................... 86

A.  Claims Brought on Behalf of the Alabama Consumer Class .................. 86

7.  Violation of the Alabama Deceptive Trade Practices Act
Ala. Code § 8-19-1 ........................................................... 86

B.  Claims Brought on Behalf of the Arizona Consumer Class ................... 91

8.  Violation of the Arizona Consumer Fraud Act, Ariz. Rev.
Stat. § 44-1521 ................................................................ 91

C.  Claims Brought on Behalf of the Arkansas Class ............................... 96

9.  Violations of the Deceptive Trade Practice Act  Ark. Code
Ann. § 4-88-101 ............................................................... 96

10. Breach of the Implied Warranty of Merchantability Ark.
Code Ann. §§ 4-2-314 and 4-2A-212 .............................. 101

D.  Claims Brought on Behalf of the California Consumer Class .............. 102

11. Violation of Song-Beverly Consumer Warranty Act for
Breach of Implied Warranty of Merchantability (California
Lemon Law) .................................................................. 102

12. Violation of the California Unfair Competition Law Cal.
Bus. & Prof. Code § 17200 ............................................. 105

13. Violation of the California False Advertising Law, Cal.
Bus. & Prof. Code § 17500 ............................................. 108

14. Violation of the Consumer Legal Remedies Act Cal. Civ.
Code § 1750 .................................................................. 110

15. Violation of Song-Beverly Consumer Warranty Act for
Breach of Implied Warranty of Merchantability (California
Lemon Law) .................................................................. 118

E.  Claims Brought on Behalf of the Florida Consumer Class ................... 121

16. Violation of the Florida Deceptive and Unfair Trade Practices Act Fla. Stat. § 501.201 .................................................. 121

F. Claims Brought on Behalf of the Georgia Consumer Class .................. 125

17. Violation of the Georgia Fair Business Practices Act Ga. Code Ann. § 10-1-390 ........................................................ 125

18. Violation of the Georgia Uniform Deceptive Trade Practices Act Ga. Code Ann. § 10-1-370 ........................................ 131

G. Claims Brought on Behalf of the Illinois Consumer Class .................... 135

19. Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS § 505/1 ...................................... 135

20. Violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS § 510/1 .................................................. 141

H. Claims Brought on Behalf of the Indiana Consumer Class .................. 142

21. Violation of the Indiana Deceptive Consumer Sales Act Ind. Code § 24-5-0.5-3 .................................................... 142

22. Breach of the Implied Warranty of Merchantability Ind. Code § 26-1-2-314 .................................................... 149

I. Claims Brought on Behalf of the Maryland Consumer Class ............... 150

23. Breach of the Implied Warranty of Merchantability Md. Code Ann., Com. Law §§ 2-315 and 2A-213 ................................ 150

24. Violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 .................................... 151

J. Claims Brought on Behalf of the Massachusetts Consumer Class ........ 157

25. Deceptive Acts or Practices Prohibited by Massachusetts Law Mass. Gen. Laws Ch. 93A, §1 .................................. 157

26. Breach of the Implied Warranty of Merchantability Mass. Gen. Laws Ann. ch. 106, § 2-314 .................................... 162

K. Claims Brought on Behalf of the Michigan Consumer Class ............... 163

27. Violation of the Michigan Consumer Protection Act Mich. Comp. Laws § 445.903 ................................................. 163

28. Breach of Implied Warranty of Merchantability Mich. Comp. Laws § 440.2314 ................................................. 169

L. Claims Brought on Behalf of the Mississippi Consumer Class ............. 170

29. Breach of Implied Warranty of Merchantability  Miss. Code Ann. §§ 75-2-315, -212 ....................................... 170

M. Claims Brought on Behalf of the Missouri Consumer Class ................. 171

30. Violation of the Missouri Merchandising Practices Act Mo. Rev. Stat. § 407.010 ........................................................................ 171

31. Breach of the Implied Warranty of Merchantability Mo. Ann. Stat. § 400.2-314 ..................................................... 177

N. Claims Brought on Behalf of the New Jersey Consumer Class............. 178

32. Violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 ......................................................... 178

33. Breach of the New Jersey Implied Warranty of Merchantability, N.J. Stat. Ann. § 12a:2-314 ................................. 183

O. Claims Brought on Behalf of the New York Consumer Class ............. 184

34. Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 349...................................................... 184

35. Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 350...................................................... 189

36. Breach of the Implied Warranty of Merchantability, N.Y. U.C.C. Law §§ 2-315, 2-A-213 ...................................... 191

P. Claims Brought on Behalf of the North Carolina Consumer Class ....... 192

37. Violation of the North Carolina Unfair and Deceptive Trade Practices Act N.C. Gen. Stat. § 75-1.1 ................................. 192

38. Breach of the Implied Warranty of Merchantability  N.C. Gen. Stat. § 25-2-314 .................................................... 197

Q. Claims Brought on Behalf of the Ohio Consumer Class ...................... 198

39. Violation of the Consumer Sales Practices Act Ohio Rev. Code § 1345.01 ...................................................... 198

R. Claims Brought on Behalf of the Pennsylvania Consumer Class.......... 204

40. Violation of the Unfair Trade Practices and Consumer Protection Law Pa. Stat. Ann. § 201-1............................................ 204

41. Breach of the Implied Warranty of Merchantability 13 PA. Stat. and Cons. Stat. Ann. §2314 .................................... 209

S. Claims Brought on Behalf of the South Carolina Consumer Class ....... 210

42. Violation of the South Carolina Unfair Trade Practices Act S.C. Code Ann. § 39-5-10................................................ 210

43. Violation of the South Carolina Regulation of Manufacturers,  Distributors, and Dealers Act S.C. Code Ann. §56-15-10................................................ 215

44. Breach of the Implied Warranty of Merchantability S.C. Code Ann. § 36-2-314................................................ 217

T. Claims Brought on Behalf of the Texas Consumer Class..................... 218

45. Violation of the Deceptive Trade Practices Act Tex. Bus. & Com. Code § 17.41 ......................................................................... 218

46. Breach of the Implied Warranty of Merchantability Tex. Bus. & Com. Code Ann. § 2.314 .................................................... 224

PRAYER FOR RELIEF ............................................................................................ 225

Plaintiffs, based on personal knowledge as to themselves, and upon information and belief as to all other matters, allege as follows:

## NATURE OF CLAIMS

1.     The things meant to protect us should not be made in a way that harms or even kills us.  This is particularly true of cars because they are a tool millions of people use every day.  People trust that their cars were designed and built to keep them safe.  And they expect that automakers take every reasonable step to make sure that nothing in their cars endangers the lives of those who ride in them.

2.      This action concerns defective airbags manufactured by Takata Corporation and its related entities, including TK Holdings, Inc. ("Takata"), which contain inflators using the notoriously volatile and unstable compound, ammonium nitrate, but which were nevertheless equipped in vehicles that Defendant FCA US LLC f/k/a/ Chrysler Group LLC ("New Chrysler") manufactured, sold or leased.  New Chrysler misrepresented as safe New Chrysler and Old Chrysler (as defined below) vehicles and deceptively concealed the fact that inflators in these vehicles were prone to explode and maim or kill drivers and passengers.

3.     New Chrysler was created on or about June 1, 2009, in connection with the sale of substantially all of the assets of Chrysler LLC ("Old Chrysler"), pursuant to a Sale Motion and Purchase Agreement ("Sale Agreement") approved by the United States Bankruptcy Court for the Southern District of New York under Section 363 of the U.S. Bankruptcy Code (the "363 Sale").  As a result of the 363 Sale, New Chrysler acquired substantially all of Old Chrysler's books, records, and personnel and knowledge of the defective Takata airbags those books, records, and personnel held.  New Chrysler also took responsibility for any necessary recalls of both New and Old Chrysler vehicles going forward.  The causes of action in this Complaint are directed solely to New Chrysler and are based solely on New Chrysler's wrongful conduct.

4.     An airbag is a critical safety feature of any motor vehicle.  Airbags are meant to prevent occupants from striking hard objects in the vehicle, such as the steering wheel, dashboard, or windshield.  An airbag's inflator, as its name suggests, is supposed to rapidly inflate the airbag upon vehicle impact.  In the milliseconds following a crash, the inflator ignites a propellant to produce gas that is released into the airbag cushion, causing the airbag cushion to expand and deploy.  The term "airbag" shall be used herein to refer to the entire airbag module, including the inflator.

5.     All Takata airbags at issue in this litigation share a common, uniform defect: the use of ammonium nitrate, a notoriously volatile and unstable compound, as the propellant in their defectively designed inflators (the "Inflator Defect").  Under ordinary conditions, including daily temperature swings and contact with moisture in the air, Takata's ammonium-nitrate propellant transforms and destabilizes, causing irregular and dangerous behavior resulting in violent combustion.  Ammonium nitrate is well-known for its explosive power.  Indeed, it is the explosive that Timothy McVeigh and Terry Nichols used in April 1995 to bomb the Alfred P. Murrah Federal Building in downtown Oklahoma City. In 2006, a Takata factory likewise suffered a severe explosion because of ammonium nitrate, a fact known to its original equipment manufacturer ("OEM") clients, including Old Chrysler.  In August 2016, a truck carrying Takata airbag parts crashed on a Texas road, detonating the ammonium nitrate in the truck in an immense blast, destroying a home, killing the elderly homeowner, and injuring four of her visitors.

6.     Because of the common, uniform Inflator Defect, Takata airbags often fail to perform as they should.  Instead of protecting vehicle occupants from bodily injury during accidents, the defective Takata airbags too often violently explode, sometimes expelling metal

debris and shrapnel at drivers and passengers.  As of February 2018, Takata airbags have been responsible for at least 22 deaths and hundreds of serious injuries worldwide.

7.      In the late 1990s, when Takata shelved a safer propellant in favor of the far cheaper ammonium nitrate, it was aware of these risks and did so over the objections and concerns of its engineers in Michigan.  Tellingly, Takata is, on information and belief, the only major airbag manufacturer that uses ammonium nitrate as the primary propellant in its airbag inflators.

8.      Takata's own testing of its airbag inflators containing ammonium nitrate from 2000 to 2007 confirmed problems with the inflators' stability.  The testing results revealed the propellant exhibited ballistic shifts and overly aggressive behavior when deployed, which can lead to explosive airbag ruptures.  The testing also revealed the inflators' tendency to "flame" or catch fire when the airbags ruptured.  Takata shared the results of this testing with Old Chrysler personnel.

9.      In April 2009, Old Chrysler filed for bankruptcy.

10.     On June 1, 2009, the 363 Sale closed.  Thereafter, New Chrysler, carrying with it the same knowledge about the Takata Inflator Defect as Old Chrysler, sold and leased vehicles to consumers that contained deadly Takata airbags and misrepresented the safety of and/or concealed materials facts concerning the Inflator Defect in both New and Old Chrysler vehicles containing the defective airbags.

11.     Moreover, New Chrysler became aware of more evidence of the Inflator Defect. For example, in the summer of 2009, Honda initiated its first significant recall of Takata airbags in the United States, recalling approximately 440,000 vehicles as a result of numerous deaths and injuries caused by the Inflator Defect.  Knowing that New Chrysler used the same Takata airbags

in its own vehicles that likewise contained the same ammonium-nitrate propellant, New Chrysler did nothing to inform consumers or initiate a recall.

12.     Meanwhile, New Chrysler continued to encounter "energetic disassemblies" (*i.e.*, ruptures) in Takata airbags meant for its New Chrysler vehicles.

13.     These "energetic disassemblies" began to emerge in the field as well.  In 2013, an energetic disassembly occurred in a New Chrysler vehicle in the field, causing injury to the occupant.

14.     Tragically, these airbag failures were the first of many to come.  More than a decade after the first incidents of airbag ruptures, Takata's disassemblies and "non-conformances" involving "high performing ballistics" continued, but New Chrysler took no meaningful action in response.

15.     In early 2014, other automakers recalled millions of additional vehicles due to the Inflator Defect. During that same period of time, employees at New Chrysler were communicating with other automakers about the true root cause of Takata airbag ruptures and recalls.  But New Chrysler did not issue any additional recalls, withholding vital information from occupants of other New and Old Chrysler vehicles on the road.

16.     In May 2015, in the face of pressure from the National Highway Traffic and Safety Administration ("NHTSA"), Congress, and the public, Takata finally admitted the existence of the Inflator Defect and agreed to phase out the use of ammonium nitrate in its airbag inflators.  In response, New Chrysler has had no choice but issue its own recalls.  To date, New Chrysler has recalled approximately 5.5 million New and Old Chrysler vehicles containing the deadly Takata airbags.  Yet, New Chrysler continues to misrepresent these vehicles as safe and has delayed the repair of nearly all of these defective airbags while it pleads with NHTSA for

permission to conduct more tests.  New Chrysler has not yet recalled an additional 1.3 million vehicles that contain the same Defective Inflators, leaving its consumers and the occupants of those vehicles in grave danger.

17.     The defective Takata airbags create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury.  New Chrysler put profits ahead of safety by continuing to equip vehicles with Takata airbags year after year, even though it knew or should have known those airbags were defective.  Despite the shocking record of airbag failures, injuries, and deaths caused by the Inflator Defect, New Chrysler was slow to fully investigate the problem and slow to report the full extent of the danger to drivers and passengers of New and Old Chrysler vehicles.  Only relatively recently—on the heels of media scrutiny—has New Chrysler begun recalling the millions of vehicles in the United States with the Inflator Defect.  And these recalls are just a public relations illusion, as New Chrysler has delayed repairing the defective airbags, continuing to misrepresent and/or conceal material facts regarding their safety.

18.     As a result of this misconduct, Plaintiffs and members of the proposed Classes were harmed and suffered actual damages.  Plaintiffs and the Classes did not receive the benefit of their bargain; rather, they purchased or leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation.  Purchasers or lessees of the Class Vehicles (defined below) paid more, either through a higher purchase price or higher lease payments, than they would have had the Inflator Defect been disclosed.  Plaintiffs and the Classes were deprived of having a safe, defect-free airbag installed in their vehicles, and New

Chrysler unjustly benefited from its unconscionable delay in recalling its defective products, as it avoided incurring the costs associated with recalls and installing replacement parts for years.

19.      Plaintiffs and the Classes also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off from work, paying for rental cars or other transportation arrangements, and paying for child care.  Also, as a direct result of misconduct by New Chrysler, each Plaintiff and Class member has out-of-pocket economic damage by virtue of having incurred the expense of taking the time to bring vehicles in for repair.

20.      Plaintiffs and the Classes also suffered damages as a result of New Chrysler's concealment and suppression of the facts concerning the safety, quality, and reliability of New and Old Chrysler vehicles with the defective Takata airbags.   New Chrysler's false representations and omissions concerning the safety and reliability of those vehicles and its concealment of the known safety defects plaguing those vehicles and its brand caused Plaintiffs and Class members to purchase, lease, or retain New and Old Chrysler vehicles of diminished value.

## JURISDICTION AND VENUE

21.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Classes are citizens of states different from New Chrysler's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Also, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, because Plaintiffs' RICO and Magnusson-Moss claims arise under federal law.  This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

22.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.

23.     This Court has personal jurisdiction over New Chrysler pursuant to Florida Statutes § 48.193(1)(a)(1), (2), and (6), because: New Chrysler conducts substantial business in this District; some of the actions giving rise to the Complaint took place in this District; and some of Plaintiffs' claims arise out of New Chrysler operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, committing a tortious act in this state, and causing injury to property in this state arising out of New Chrysler's acts and omissions outside this state; and at or about the time of such injuries New Chrysler was engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by New Chrysler anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.  This Court also has personal jurisdiction over New Chrysler because it consented to jurisdiction by registering to do business in Florida.  This Court has pendant or supplemental personal jurisdiction over the claims of non-Florida Plaintiffs.

24.     This Court also has personal jurisdiction over New Chrysler under 18 U.S.C. § 1965(d) because it is found, has agents, or transacts business in this District.

25.     This Court also has personal jurisdiction over New Chrysler, because transferor courts that have transferred actions to this MDL have general jurisdiction over New Chrysler, and this Court, under 28 U.S.C. § 1407, has personal jurisdiction over New Chrysler to the same extent as any transferor court has personal jurisdiction over it.  The Eastern District of Michigan, which is located in the state in which New Chrysler is headquartered, is a transferor court for this MDL, and thus this Court may exercise general jurisdiction over New Chrysler.  To the extent

necessary for personal jurisdiction purposes, any claims asserted by non-Florida Plaintiffs in this Consolidated Class Action Complaint may be deemed to have filed in a transferor court that may exercise personal jurisdiction over New Chrysler for such claims.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, New Chrysler  has caused harm to Class members residing in this District, and New Chrysler is a resident of this District under 28 U.S.C. § 1391(c)(2) because it is subject to personal jurisdiction in this district. Venue is also proper under 18 U.S.C. § 1965.

**THE PARTIES**

**I.     New Chrysler**

27.     FCA US LLC ("New Chrysler"), formerly known as Chrysler Group LLC, is a Delaware limited liability company with its principal place of business located at 1000 Chrysler Drive, Auburn Hills, Michigan and New Chrysler is a citizen of the States of Delaware and Michigan.  The sole owner of New Chrysler is Fiat Chrysler Automobiles N.V., a public limited liability company incorporated under the laws of the Netherlands with its principal place of business located in London, United Kingdom.

**II.    Plaintiffs**

28.     Unless otherwise indicated, all Plaintiffs identified below purchased or leased their Class Vehicles primarily for personal, family, and household use.  All Plaintiffs identified below and the proposed Classes were harmed and suffered actual damages.

29.     The defective Takata airbags significantly diminished the value of the Class Vehicles in which they are installed.  Such vehicles have been stigmatized as a result of being

recalled and equipped with Takata airbags as well as by the widespread publicity of the Inflator Defect.

30.     The Inflator Defect that New Chrysler concealed throughout the Class Period related to the safety and reliability of the Class Vehicles, and it affected the brand perception and market value of all Class Vehicles.   Information concerning the safety of these vehicles, including whether New Chrysler would implement necessary corrective safety measures for these vehicles, was material.   Reasonable consumers would consider that information important in deciding whether to purchase, lease, operate, trade in, or sell Class Vehicles.   Provided with the truth regarding these vehicles, Plaintiffs and Class Members would not have purchased or leased their Class Vehicles and/or would not have paid as much as they did; and would not, to their practical ability to do so, have continued to drive the Class Vehicles without corrective safety measures or other affirmative steps by New Chrysler to make these vehicles safe and protect their economic value.

31.     Further, all Plaintiffs identified below and in the proposed Classes did not receive the benefit of their bargain; rather, they purchased and leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation.   All Plaintiffs identified below and in the proposed Classes, either through a higher purchase price or higher lease payments, paid more than they would have or would not have otherwise purchased said vehicles, had the Inflator Defect been disclosed.   All Plaintiffs identified below and in the proposed Classes were deprived of having a safe, defect-free airbag installed in their vehicles, and New Chrysler unjustly benefited from its unconscionable delay in recalling its defective

products, as it avoided incurring the costs associated with recalls and installing replacement parts for many years.

32.     All Plaintiffs identified below and in the proposed Classes also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off from work, paying for rental cars or other transportation arrangements, and child care.

33.     All Plaintiffs identified below and members of the proposed Classes who have brought their vehicles to dealerships have suffered out-of-pocket economic damages by virtue of having incurred the expense of taking the time to bring their vehicles in for repair.

34.     The defective Takata airbags create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury to all identified Plaintiffs below and the proposed Classes.

Rmzy Abdallah—New York

35.     Plaintiff Rmzy Abdallah resides in Orchard Park, New York.  Plaintiff owns a 2015 Jeep Wrangler Sahara Edition, which he purchased new on June 14, 2015 for approximately $39,500 from Towne Chrysler Jeep, a New Chrysler dealership in Hamburg, New York.  Plaintiff's vehicle was covered by a written warranty.  Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of his vehicle and New Chrysler vehicles generally.   To Plaintiff's knowledge, the airbags in his vehicle have not been repaired or replaced.  Plaintiff purchased his 2015 Jeep Wrangler Sahara Edition for recreational off-road use but has stopped driving his vehicle off road out of concern for his safety due to the Inflator Defect.  The value of Plaintiff's 2015 Jeep Wrangler Sahara Edition has been diminished as a result of the Inflator Defect.  If Plaintiff had

known about the Inflator Defect, Plaintiff would not have purchased the 2015 Jeep Wrangler Sahara Edition or would not have paid as much as he did for it.

Bridget Boyd—Texas

36.     Plaintiff Bridget Boyd resides in Longview, Texas. Plaintiff Boyd owns a 2009 Chrysler Aspen, which she purchased used on April 11, 2015 for $20,200 from Driver's Choice in White Oak, Texas. On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2009 Chrysler Aspen vehicles contain Takata airbags with the Inflator Defect and are subject to recall. After learning of this recall, Plaintiff attempted to get the airbags in her vehicle replaced but no replacement parts were available. To Plaintiff Boyd's knowledge, the airbags in her 2009 Chrysler Aspen have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect.  If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Carla Campagnone—Massachusetts

37.     Plaintiff Carla Campagnone resides in Everett, Massachusetts. Plaintiff Campagnone owns a 2016 Jeep Wrangler, which was purchased new on June 26, 2016 for $44,610 from Kelly Jeep in Lynnfield, Massachusetts. Plaintiff's vehicle is covered under the original written warranty as well as under Mopar's extended warranty. Plaintiff Campagnone reviewed materials regarding airbags and promotional materials for the 2016 Jeep Wrangler prior to purchasing it, at least some of which mentioned the vehicle was equipped with side airbags. On information and belief, New Chrysler has informed NHTSA and has publicly stated, that its 2016 Jeep Wrangler vehicles contain Takata airbags with the Inflator Defect and are subject to recall. When Plaintiff first learned of the recall, she looked it up and discovered that her vehicle

was not scheduled to received replacement parts for several years. To Plaintiff Campagnone's knowledge, the airbags in her 2016 Jeep Wrangler have never been repaired or replaced. The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

T'Keya Cooper—South Carolina

38.    Plaintiff T'Keyah Cooper resides in Spartanburg, South Carolina. Plaintiff Cooper owns a 2015 Dodge Charger, which she purchased used on September 5, 2017 for $24,772.50 from Spartanburg Chrysler Dodge Jeep Ram in Spartanburg, South Carolina. Plaintiff's 2015 Dodge Charger is covered by a written warranty. Plaintiff Cooper purchased an extended warranty. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2015 Dodge Charger vehicles contain Takata airbags with the Inflator Defect and are subject to recall. Plaintiff Cooper has called her Dodge dealership multiple times in an attempt to get the vehicle repaired, but she has not been able to reach them. To Plaintiff Cooper's knowledge, the airbags in her 2015 Dodge Charger have never been repaired or replaced. The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Daniel Dwinnells—Maryland

39.    Plaintiff Daniel Dwinnells resides in Smithsburg, Maryland. Plaintiff Dwinnells owns a 2006 Dodge Dakota, which he purchased used on August 12, 2013 for $8,995.62 from Ideal Buick GMC in Frederick, Maryland. Prior to purchasing the vehicle, Plaintiff Dwinnells saw television commercials touting Chrysler's safety and reliability. On information and belief,

New Chrysler has informed NHTSA and has publicly stated that its 2011 Dodge Dakota vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Dwinnells' knowledge, the airbags in his 2006 Dodge Dakota have never been repaired or replaced, despite Plaintiff Dwinnells making numerous attempts to participate in the recall.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Michael Eikenberry—Indiana

40.     Plaintiff Michael Eikenberry resides in Tampa, Florida. Plaintiff Eikenberry owns a 2012 Chrysler 300, which he purchased used on June 5, 2015 from Auto World in Kokomo, Indiana. The vehicle was previously covered under a written warranty. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2015 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Eikenberry's knowledge, the airbags in his 2012 Chrysler 300 have been repaired or replaced under the recall.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Kenneth Fischer—Ohio

41.     Plaintiff Kenneth Fischer resides in Greenville, Indiana. Plaintiff Fischer owns a 2007 Dodge 3500 Ram, which he purchased used on October 16, 2014 for $21,698.86 from Troy Auto Group in Troy, Ohio. On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2007 Dodge 3500 Ram vehicles contain Takata airbags with the Inflator Defect and are subject to recall. Plaintiff Fischer learned of these recalls and

was told that the repair or replacement parts were not yet available and that he had to wait approximately nine months to obtain a replacement. To Plaintiff Fischer's knowledge, the airbags in his 2007 Dodge 3500 Ram have been replaced as part of the recall.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

John Fuesting—Illinois

42.     Plaintiff John Fuesting resides in Collinsville, Illinois.  Plaintiff John Fuesting owns a 2015 Jeep Wrangler, which he purchased new on February 25, 2015 for $40,832 from Cassens & Sons Chrysler Dodge Jeep Ram, a New Chrysler dealership in Edwardsville, Illinois.  Prior to purchasing his vehicle, Plaintiff John Fuesting viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of his vehicle and New Chrysler vehicles generally.   To Plaintiff John Fuesting's knowledge, the airbags in his vehicle have not been repaired or replaced.  The value of Plaintiff's 2015 Jeep Wrangler has been diminished as a result of the Inflator Defect.  If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Priscilla Fuesting—Illinois

43.     Plaintiff Priscilla Fuesting resides in Collinsville, Illinois.  Plaintiff Priscilla Fuesting owns a 2015 Jeep Wrangler, which she purchased new on February 27, 2015 for $36,000 from Cassens & Sons Chrysler Dodge Jeep Ram, a New Chrysler dealership in Edwardsville, Illinois.  Prior to purchasing her vehicle, Plaintiff Priscilla Fuesting viewed or heard commercials and reviews through television, radio, and the internet that touted the safety

and reliability of her vehicle and Jeep vehicles generally.  To Plaintiff Priscilla Fuesting's knowledge, the airbags in her vehicle have not been repaired or replaced.  The value of Plaintiff's 2015 Jeep Wrangler has been diminished as a result of the Inflator Defect.  If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Michelle Gibson—Georgia

44.    Plaintiff Michelle Gibson resides in Lithonia, Georgia.  Plaintiff Gibson owns a 2010 Dodge Charger which she purchased used on August 14, 2013 for $36,000 from US Auto Sales, a New Chrysler dealership in Snellville, Georgia.   Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of her vehicle and New Chrysler vehicles generally.  To Plaintiff's knowledge, the airbags in her 2010 Dodge Charger have not been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect.  If Plaintiff Gibson had known about the Inflator Defect, she would not have purchased the vehicle or would not have paid as much as she did for it.

Rushelle Gonder—California

45.    Plaintiff Rushelle Gonder resides in Long Beach, California. Plaintiff Gonder owns a 2010 Chrysler 300 Touring, which she purchased used on July 20, 2012 for $21,000 from Scott Robinson Chrysler in Torrance, California. On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2010 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Gonder's knowledge, the airbags in her 2010 Chrysler 300 Touring have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator

Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Marcia Griffith—Pennsylvania

46.    Plaintiff Marcia Griffith resides in Phoenixville, Pennsylvania. Plaintiff Griffith owned a 2010 Chrysler 300, which she purchased used on December 10, 2011 for $21,700.00 from John Kennedy Ford in Phoenixville, Pennsylvania. The vehicle was covered under a written warranty, and Plaintiff Griffith purchased an extended warranty for her 2010 Chrysler 300. Prior to purchasing the vehicle, Plaintiff Griffith viewed or heard commercials through television, radio, or the internet, touting the safety and reliability of the Chrysler 300 vehicle and New Chrysler vehicles in genral. On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2010 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. Plaintiff Griffith learned of the recall through the internet. To Plaintiff Griffith's knowledge, the airbags in her 2010 Chrysler 300 have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Deborah Hillyer—Michigan

47.    Plaintiff Deborah Hillyer resides in Warren, Michigan. Plaintiff Hillyer owns a 2015 Chrysler 300, which she purchased used on July 29, 2016, for $29,987.76 from AM Automotive LLC in Roseville, Michigan. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2015 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Hillyer's knowledge, the

airbags in her 2015 Chrysler 300 have never been repaired or replaced.   The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Debrah Johnson—Georgia

48.     Plaintiff Debrah Johnson resides in Covington, Georgia.   Plaintiff Johnson owns a 2014 Dodge Charger, which she purchased new on July 29, 2014 for $29,867.98 from Landmark Chrysler Jeep Dodge, a New Chrysler dealership in Morrow, Georgia.   Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of her vehicle and New Chrysler vehicles generally.   To Plaintiff's knowledge, the airbags in her 2014 Dodge Charger have never been repaired or replaced.   The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect.   If Plaintiff Johnson had known about the Inflator Defect, she would not have purchased the 2014 Dodge Charger, or would not have paid as much as she did for it.

Victor Khoury—Florida

49.     Plaintiff Victor Khoury resides in West Palm Beach, Florida. Plaintiff Khoury owns a 2012 Dodge Challenger, which he purchased new on July 23, 2016 for $24,208.13 from Napleton's Chrysler Jeep in Palm Beach, Florida. The vehicle was covered under written warranty, and Plaintiff Khoury purchased an extended bumper to bumper warranty for his 2012 Dodge Challenger to cover the vehicle up to 136,000 miles. To Plaintiff Khoury's knowledge, the airbags in his 2012 Dodge Challenger have never been repaired.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as

- 17 -

much as he did for it.

Dave Krzeminski—Michigan

50.     Plaintiff Dave Krzeminski resides in Howell, Michigan. Plaintiff Krzeminski owns a 2007 Dodge Ram 1500, which he purchased used for roughly $14,000 from a used car dealership in Howell, Michigan in January 2013. On information and belief, Defendant New Chrysler has informed NHTSA and has publicly stated that 2007 Dodge Ram 1500 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. Plaintiff Krzeminski was not notified of this recall until late 2017. To Plaintiff Krzeminski's knowledge, the airbags in his 2007 Dodge Ram 1500 have never been repaired or replaced. The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Jamelle Lowery—South Carolina

51.     Plaintiff Jamelle Lowery resides in Greer, South Carolina. Plaintiff Lowery owns a 2014 Chrysler 300, which she purchased used in August 2015 for $24,000 from Crown Nissan in Greenville, South Carolina. Plaintiff's 2014 Chrysler 300 was covered under a written warranty through 2017. Plaintiff Lowery saw commercials regarding safety for the Chrysler 300 prior to purchasing the vehicle. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2014 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. Plaintiff Lowery has been unable to get her vehicle repaired due to lack of available replacement parts. To Plaintiff Lowery's knowledge, the airbags in her 2014 Chrysler 300 have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff

had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Pedro Lucero—California

52.      Plaintiff Pedro Lucero resides in Fairfield, California. Plaintiff Lucero owns a 2012 Chrysler 300, which he purchased new in April of 2012 for $42,000 from Elk Grove Chrysler in Elk Grove, California. Plaintiff Lucero's 2012 Chrysler 300 is covered under a standard written warranty from Chrysler. Prior to purchasing his vehicle, Plaintiff Lucero viewed television commercials and new car brochures. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2012 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Lucero's knowledge, the airbags in his 2012 Chrysler 300 have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Victoria Lykins—Ohio

53.      Plaintiff Victoria Lykins resides in Sardinia, Ohio. Plaintiff Lykins owns a 2012 Dodge Challenger, which she purchased new in November 2013 for $32,000 from Jeff Wyler, Eastgate Automall in Batavia, Ohio. Plaintiff Lykin's vehicle is currently under written warranty. Plaintiff viewed television and internet advertisements for the vehicle prior to purchase. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2012 Dodge Challenger vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Lykins's knowledge, the airbags in her 2012 Dodge

Challenger have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Ronaldo Maldia—California

54.     Plaintiff Ronaldo Maldia resides in Poway, California. Plaintiff Maldia owns a 2006 Dodge Charger, which was purchased used in December 2010 for $18,554 from Balboa Motors in San Diego, California.  To Plaintiff Maldia's knowledge, the airbags in his 2006 Dodge Charger have never been repaired or replaced. The value of his 2006 Dodge Charger has been diminished as a result of the Inflator Defect. If Plaintiff Maldia had known about the Inflator Defect, he would not have purchased the 2006 Dodge Charger or would not have paid as much as he did for it.

Gene Marsilio—New Jersey

55.     Plaintiff Gene Marsilio resides in Fair Lawn, New Jersey.  Plaintiff Marsilio owns a 2012 Dodge Challenger which he purchased used on March 21, 2016 for $35,351.53 from Luxury Haus, a dealership in Leonia, New Jersey.  Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of his vehicle and New Chrysler vehicles generally.  To Plaintiff's knowledge, the airbags in his 2012 Dodge Challenger have not been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect.  If Plaintiff Marsilio had known about the Inflator Defect, he would not have purchased the vehicle, or would not have paid as much as he did for it.

Michael McClellion—South Carolina

56.     Plaintiff Michael McClellion resides in Pelzer, South Carolina. Plaintiff McClellion owns a 2010 Dodge Charger, which he purchased used on February 9, 2011 for $18,900 from Elite Car Rental in Greenville, South Carolina. Prior to purchasing the vehicle, Plaintiff McClellion viewed advertisements for the vehicle.  On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2010 Dodge Charger vehicles contain Takata airbags with the Inflator Defect and are subject to recall. However, when Plaintiff McClellion contacted the dealership about the airbags, he was told that he could keep driving his vehicle and that his vehicle was fine. To Plaintiff McClellion's knowledge, the airbags in his 2010 Dodge Charger were replaced under the recall; one in August of 2015 and the other in November of 2017.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would not have purchased the vehicle, or would not have paid as much as he did for it.

Shanna Moore—Texas

57.     Plaintiff Shanna Moore resides in Trinity, Texas. Plaintiff Moore owns a 2010 Dodge Charger, which she purchased on January 5, 2010 for $23,300 from Team Dodge in Huntsville, Texas. On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2010 Dodge Charger vehicles contain Takata airbags with the Inflator Defect and are subject to recall. However, when Plaintiff Moore attempted to have the airbags in her vehicle replaced, she was told that the parts were not available. To Plaintiff Moore's knowledge, the airbags in her 2010 Dodge Charger have never been repaired or replaced.  If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Randy Nielsen—Alabama

58.     Plaintiff Randy Nielsen resides in Cape Giradeau, Missouri. Plaintiff Nielsen owns a 2012 Chrysler 300, which he purchased used on January 2, 2014, for $22,500 from Alexander Dodge in Albertville, Alabama. Plaintiff Nielsen's 2012 Chrysler 300 is covered under the manufacturer's written warranty. Prior to purchasing the vehicle, Plaintiff Nielsen reviewed TV and radio advertisements as well as e-mails from Chrysler, which promoted the vehicle's safety. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2012 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. When Plaintiff Nielsen initially called about the recall, the dealership was not able to schedule an appointment to get the vehicle repaired. Plaintiff Nielsen's airbags were replaced in December 2017.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Laquintha O'Neal—North Carolina

59.     Plaintiff Laquintha O'Neal resides in Kannapolis, North Carolina. Plaintiff O'Neal owns a 2012 Dodge Charger, which she purchased on March 8, 2015 for $20,427.50 from Carmax in Charlotte, North Carolina. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2012 Dodge Charger vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff O'Neal's knowledge, the airbags in her 2012 Dodge Charger have been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Cathy Parker—Arkansas

60.     Plaintiff Cathy Parker resides in Charleston, Arkansas. Plaintiff Parker owns a 2014 Chrysler 300, which she purchased new on December 23, 2014, for $33,869 from Breeden Dodge Chrysler Jeep Ram in Fort Smith, Arkansas. Plaintiff's vehicle is covered under the original manufacturer's warranty. On information and belief, New Chrysler has informed NHSTA and has publicly stated that its 2014 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. Plaintiff Parker did not learn of the recall until October of 2017. To Plaintiff Parker's knowledge, the airbags in her 2014 Chrysler 300 have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Reginald Price—Ohio

61.     Plaintiff Reginald Price resides in Cincinnati, Ohio. Plaintiff Price owns a 2005 Chrysler 300, which he purchased used on December 9, 2014 for $9,000 from Dixie Import in Fairfield, Ohio. On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2005 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Price's knowledge, the airbags in his 2005 Chrysler 300 have been repaired or replaced. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Laurie Reynolds—Arizona

62.     Plaintiff Laurie Reynolds resides in Lake Havasu City, Arizona. Plaintiff Reynolds owns a 2013 Dodge Charger, which she purchased used on May 12, 2016 for $21,565.46 from Anderson Toyota in Lake Havasu City, Arizona. On information and belief,

- 23 -

New Chrysler has informed NHTSA and has publicly stated that its 2013 Dodge Charger vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Reynolds' knowledge, the airbags in her 2013 Dodge Charger have been repaired or replaced. The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Bobbie Simmons—Arkansas

63.     Plaintiff Bobbie Simmons resides in Morrilton, Arkansas. Plaintiff Simmons owns a 2010 Jeep Wrangler, which he purchased used in December 2012 for $28,000 from Payton Dodge in Clinton, Arkansas. On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2010 Jeep Wrangler vehicles contain Takata airbags with the Inflator Defect and are subject to recall.  To Plaintiff Simmons's knowledge, the airbags in his 2010 Jeep Wrangler have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect.  If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Arlen Sturgis—Mississippi

64.     Plaintiff Arlen Sturgis resides in Durant, Mississippi. Plaintiff Sturgis owns a 2007 Chrysler Aspen, which he purchased in 2013 for $13,500 from Southern Imports, Inc. in Ridgeland, Mississippi. On information and belief, New Chrysler has informed NHTSA and has publicly stated that 2007 Chrysler Aspen vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Sturgis's knowledge, the airbags in his 2007 Chrysler Aspen have never been repaired or replaced.  The value of Plaintiff's vehicle has

been diminished as a result of the Inflator Defect.  If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

Terrie Swanson—North Carolina

65.     Plaintiff Terrie Swanson resides in Granite Falls, North Carolina. Plaintiff Swanson owns a 2011 Chrysler 300, which she purchased used on April 24, 2013 for $23,991.26 from Hickory Used Car Superstore in Hickory, North Carolina. Plaintiff's vehicle was covered under a written warranty, which has since expired. On information and belief, New Chrysler has informed NHTSA and has publicly stated that its 2011 Chrysler 300 vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Swanson's knowledge, the airbags in her 2011 Chrysler 300 have never been repaired or replaced. She is still waiting to get her airbags repaired or replaced. The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Elizabeth Washington—Illinois

66.     Plaintiff Elizabeth Washington resides in Milwaukee, Wisconsin. Plaintiff Washington owns a 2010 Dodge Challenger, which she purchased used on October 9, 2013from Howard Automotive in Elmhurst, Illinois. On information and belief, Defendant New Chrysler has informed NHTSA and has publicly stated that 2010 Dodge Challenger vehicles contain Takata airbags with the Inflator Defect and are subject to recall. Plaintiff Washington learned of the recall when she received a postcard in the mail. When Plaintiff Washington contacted a dealership to set up an appointment to get her airbag fixed, she was

told that the replacement parts were not available. After multiple attempts to get the recall countermeasure performed, on November 18, 2017, the airbag in Plaintiff Washington's 2010 Dodge Challenger was replaced. The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, she would have not purchased the vehicle, or would not have paid as much as she did for it.

Jason Williams—Missouri

67.     Plaintiff Jason Williams resides in Kansas City, Missouri. Plaintiff Williams owns a 2012 Jeep Wrangler, which he purchased in May 2012 for $33,000 from Dodge Chrysler Jeep and Ram in Gladstone, Missouri. On information and belief, Defendant New Chrysler has informed NHTSA and has publicly stated that its 2012 Jeep Wrangler vehicles contain Takata airbags with the Inflator Defect and are subject to recall. To Plaintiff Williams's knowledge, the airbags in his 2012 Jeep Wrangler have never been repaired or replaced.  The value of Plaintiff's vehicle has been diminished as a result of the Inflator Defect. If Plaintiff had known about the Inflator Defect, he would have not purchased the vehicle, or would not have paid as much as he did for it.

68.     For ease of reference, the following chart organizes the Consumer Plaintiffs by the state in which they acquired their respective Class Vehicles:

| No. | State of Purchase | Plaintiff | Vehicle |
|---|---|---|---|
| 1 | Alabama | Randy Nielsen | 2012 Chrysler 300 |
| 2 | Arizona | Laurie Reynolds | 2013 Dodge Charger |
| 3 | Arkansas | Cathy Parker | 2014 Chrysler 300 |
| 4 | Arkansas | Bobbie Simmons | 2010 Jeep Wrangler |
| 5 | California | Rushelle Gonder | 2010 Chrysler 300 Touring, |
| 6 | California | Pedro Lucero | 2012 Chrysler 300 |
| 7 | California | Ronaldo Maldia | 2006 Dodge Charger |
| 8 | Florida | Victor Khoury | 2012 Dodge Challenger |
| 9 | Georgia | Michelle Gibson | 2010 Dodge Charger |

- 26 -

| No. | State of Purchase | Plaintiff | Vehicle |
|---|---|---|---|
| 10 | Georgia | Debrah Johnson | 2014 Dodge Charger |
| 11 | Illinois | John Fuesting | 2015 Jeep Wrangler |
| 12 | Illinois | Priscilla Fuesting | 2015 Jeep Wrangler |
| 13 | Illinois | Elizabeth Washington | 2010 Dodge Challenger |
| 14 | Indiana | Michael Eikenberry | 2012 Chrysler 300 |
| 15 | Maryland | Daniel Dwinnells | 2006 Dodge Dakota |
| 16 | Massachusetts | Carla Campagnone | 2016 Jeep Wrangler |
| 17 | Michigan | Deborah Hillyer | 2015 Chrysler 300 |
| 18 | Michigan | Dave Krzeminski | 2007 Dodge Ram 1500 |
| 19 | Mississippi | Arlen Sturgis | 2007 Chrysler Aspen |
| 20 | Missouri | Jason Williams | 2012 Jeep Wrangler |
| 21 | New Jersey | Gene Marsilio | 2012 Dodge Challenger |
| 22 | New York | Rmzy Abdallah | 2015 Jeep Wrangler |
| 23 | North Carolina | Laquintha O'Neal | 2012 Dodge Charger |
| 24 | North Carolina | Terrie Swanson | 2011 Chrysler 300 |
| 25 | Ohio | Kenneth Fischer | 2007 Dodge 3500 Ram |
| 26 | Ohio | Victoria Lykins | 2012 Dodge Challenger |
| 27 | Ohio | Reginald Price | 2005 Chrysler 300 |
| 28 | Pennsylvania | Marcia Griffith | 2010 Chrysler 300 |
| 29 | South Carolina | T'Keya Cooper | 2015 Dodge Charger |
| 30 | South Carolina | Jamelle Lowery | 2014 Chrysler 300 |
| 31 | South Carolina | Michael McClellion | 2010 Dodge Charger |
| 32 | Texas | Bridget Boyd | 2009 Chrysler Aspen |
| 33 | Texas | Shanna Moore | 2010 Dodge Charger |

**GENERAL FACTUAL ALLEGATIONS**

I.     **Definitions**

69.     Plaintiffs bring this action on behalf of themselves and all persons similarly situated who purchased or leased Class Vehicles (defined below).  Plaintiffs seek redress individually and on behalf of those similarly situated for economic losses stemming from New Chrysler's manufacture, sale or lease, and false representations concerning the defective airbags in the Class Vehicles, including but not limited to diminished value.  Plaintiffs, on behalf of

themselves and those similarly situated, seek to recover damages, statutory penalties, and injunctive relief/equitable relief.

70.    "Class Vehicles" refers to all vehicles in the United States that have Defective Airbags (defined below) that were: (1) manufactured, sold, distributed, or leased by New Chrysler; or (2) manufactured, sold, distributed, or leased by Old Chrysler and purchased or leased by a Class member after June 1, 2009.

71.    "Defective Airbags" refers to all airbag modules (including inflators) manufactured by Takata ("Takata airbags") that use propellant containing ammonium nitrate in their inflators (the "Inflator Defect"), including: (a) all airbags that are subject to the recalls identified in the tables set forth in paragraphs 73 and 74 below; (b) all Takata airbags in New and Old Chrysler vehicles subject to recalls relating to Takata's May 18, 2015, DIRs, the Coordinated Remedy Order issued by NHTSA in *In re Docket No. NHTSA-2015-0055 Coordinated Remedy Program Proceeding*, and amendments thereto, concerning Takata's ammonium nitrate inflators, and the Consent Order issued by NHTSA in *In re EA 15-001 Air Bag Inflator Rupture*, and any amendments thereto; and (c) all Takata airbags in New and Old Chrysler vehicles subject to any subsequent expansion of pre-existing recalls, new recalls, amendments to pre-existing DIRs, or new DIRs, announced prior to the date of an order granting class certification, relating to the tendency of such airbags to over-aggressively deploy or rupture.

72.    All Defective Airbags contain the Inflator Defect. As a result of the Inflator Defect, all Defective Airbags have an unreasonably dangerous tendency to (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to

occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag.

73.     The following tables identify, to the best of Plaintiffs' understanding and without the benefit of discovery, the New and Old Chrysler vehicles either recalled or scheduled to be recalled to date, and which of the front airbags were included in the recall for each vehicle (driver side or passenger side).  All of these recalls have been issued by New Chrysler, including for vehicles manufactured by Old Chrysler.

| Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|
| 14V-354, 14V-770, 14V-817, 15V-313, 16V-352, 18E-001, 18E-002, 18E-003 | Chrysler | 300 | 2005-2012 | Both |
| 14V-354, 14V-770, 14V-817, 15V-313, 16V-352, 18E-003 | Chrysler | Aspen | 2007-2009 | Both |
| 16V-081 | Chrysler | Crossfire | 2007-2008 | Driver |
| 15V-313, 16V-352 | Chrysler | SRT8 | 2005-2010 | Both |
| 15V-313, 16V-352, 18E-002, 18E-003 | Dodge | Challenger | 2008-20122013 | Both |
| 15V-313, 16V-352, 18E-002, 18E-003 | Dodge | Charger | 2005-2012 | Both |

- 29 -

| Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|
| 14V-354, 14V-770, 14V-817, 15V-313, 16V-352, 18E-002, 18E-003 | Dodge | Dakota | 2005-2011 | Both |
| 14V-354, 14V-770, 14V-817, 15V-313, 16V-352, 18E-003 | Dodge | Durango | 2004-2009 | Both |
| 14V-817, 15V-313, 16V-352 | Dodge | Magnum | 2005-2010 | Both |
| 14V-354, 14V-770, 14V-817, 15V-313, 16V-352, 18E-003 | Dodge Ram | 1500/2500/3500 Pickup | 2003-2009 | Both |
| 14V-354, 14V-770, 14V-817, 15V-313, 16V-352, 18E-003 | Dodge Ram | 3500 Cab Chassis | 2007-2010 | Both |
| 14V-354, 14V-770, 14V-817, 15V-313, 16V-352, 18E-002, 18E-003 | Dodge Ram | 4500/5500 Cab Chassis | 2008-2010 | Both |
| 16V-341 | Ferrari | California | 2009-2011 | Passenger (PSPI-2) |
| 16V-341 | Ferrari | 458 Italia | 2010-2011 | Passenger (PSPI-2) |
| 17V-018 | Ferrari | California | 2012 | Passenger (PSPI-2) |

| *Recall* | *Make* | *Model* | *Model Years* | *Side(s)* |
|----------|--------|---------|---------------|-----------|
| 17V-018 | Ferrari | 458 Italia | 2012 | Passenger (PSPI-2) |
| 17V-018 | Ferrari | 458 Spider | 2012 | Passenger (PSPI-2) |
| 17V-018 | Ferrari | FF | 2012 | Passenger (PSPI-2) |
| 16V-352 | Jeep | Wrangler | 2007-2012 | Passenger |

74.     In addition, as outlined in NHTSA's Third Amendment to the Coordinated Remedy Order, *In re Docket No. NHTSA 2015-0055 Coordinated Remedy Program Proceeding*, the following New and Old Chrysler vehicles will be recalled in the future:

| *Recall* | *Make* | *Model* | *Model Years* | *Side(s)* |
|----------|--------|---------|---------------|-----------|
| Amended Annex A | Chrysler | 300 | 2013-2015 | Both |
| Amended Annex A | Dodge | Challenger | 2014 | Both |
| Amended Annex A | Dodge | Charger | 2014-2015 | Both |
| Amended Annex A | Ferrari | California | 2013-2014 | Passenger |
| Amended Annex A | Ferrari | 458 Italia | 2013-2015 | Passenger |
| Amended Annex A | Ferrari | 458 Spider | 2013-2015 | Passenger |
| Amended Annex A | Ferrari | FF | 2013-2016 | Passenger |
| Amended Annex A | Ferrari | F12 | 2013-2017 | Passenger |
| Amended Annex A | Ferrari | F12 tdf | 2016-2017 | Passenger |
| Amended Annex A | Ferrari | 458 Speciale | 2016-2017 | Passenger |

| Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|
| Amended Annex A | Ferrari | 488 GTB | 2016-2017 | Passenger |
| Amended Annex A | Ferrari | 488 Spider | 2016-2017 | Passenger |
| Amended Annex A | Ferrari | California T | 2015-2017 | Passenger |
| Amended Annex A | Ferrari | F60 | 2016-2017 | Passenger |
| Amended Annex A | Ferrari | GTC4Lusso | 2016-2017 | Passenger |
| Amended Annex A | Jeep | Wrangler | 2013-2016 | Both |

## II.   Takata's Airbags Have a Common, Uniform Defect

### A.   Defendants Chose an Inexpensive and Dangerous Propellant

75.   The part of the airbag at issue in this matter is the inflator. The inflator consists of a metal canister loaded with propellant wafers or pellets, and the inflator is placed in the airbag module. Upon impact, the propellant wafers or pellets ignite, triggering a chemical reaction that produces gas, which in turn inflates the fabric airbag. This process occurs within milliseconds.

76.   The following basic illustration depicts Takata's airbag module:



77. When it began manufacturing airbags in the 1980s, Takata used sodium azide as the propellant within its inflators. In the mid-1990s, Takata began using a different propellant called 5-aminotetrazole, in part due to toxicity issues associated with sodium azide.

78. In the late-1990's, Takata's managers pressured its engineers in Michigan to devise a lower-cost propellant based upon ammonium nitrate, a compound used in fertilizer and explosives.

79. Ammonium nitrate is an inherently volatile and unstable chemical. Daily temperature swings are large enough for ammonium nitrate to cycle through three of its five crystalline states, adding to its volatility. It also readily absorbs moisture from the atmosphere. The chemical's sensitivity to temperature and moisture causes it to break down over time, which can lead to unpredictable and dangerous results, such as violent detonation. As one explosives expert bluntly stated in *The New York Times*, ammonium nitrate "shouldn't be used in airbags," and it is better suited to large demolitions in mining and construction.

80.     From the time it began investigating ammonium nitrate in the late 1990s, Takata understood these risks and publicized them in the industry. Indeed, in a 1996 patent document, Takata expressed concern that an ammonium-nitrate propellant would be vulnerable to temperature changes and that its casing "might even blow up." Takata further recognized "[o]ne of the major problems with the use of ammonium nitrate is that it undergoes several crystalline phase changes," one of which occurs at approximately 90 degrees Fahrenheit. Takata also noted that if ammonium nitrate undergoes this type of temperature change, the compound may "expand and contract and change shape resulting in growth and cracking" of the propellant, which might cause an airbag inflator to "not operate properly or [it] might even blow up because of the excess pressure generated."

81.     Takata further admitted in a 1999 patent document that pure ammonium nitrate is "problematic" because many gas generating compositions made with it are "thermally unstable."

82.     In 1999, as the ammonium nitrate design was being considered, Takata's engineering team in Moses Lake, Washington raised objections and pointed to publicly available explosives manuals that warned of the risk of disintegration and irregular, overly-energetic combustion. As one former Takata engineer noted, "ammonium nitrate stuck out like a sore thumb," and yet his team had only "a couple days" to do its review.

83.     Not surprisingly, other major airbag manufacturers, including Autoliv and Key Safety Systems, have reportedly avoided using ammonium nitrate as a propellant. Indeed, at a Congressional hearing in June 2015, Takata's representative confirmed Takata was the only major airbag manufacturer that uses ammonium nitrate as a primary propellant in its inflators.

84.     The only conceivable advantage to using the ammonium nitrate compound for an airbag manufacturer, according to the expert quoted in *The New York Times*, is that it is "cheap,

unbelievably cheap." Takata had originally planned to use tetrazole as its propellant, which is both more stable than ammonium nitrate and also more environmentally friendly, among other benefits. But tetrazole was too expensive for Takata, and Takata executives ultimately pressured engineers in Michigan to develop a cheaper alternative.

85. Takata began receiving complaints regarding the Inflator Defect shortly after introducing the redesigned airbag to the market, and those complaints continued to multiply over the years. Nevertheless, rather than switch to the compound it knew would be safer, even if more expensive, Takata recklessly opted to try, over the course of many years, to stabilize a compound that resists stabilization.

86. For example, in a 2006 patent application, Takata discussed the need to test the performance of ammonium nitrate at various extreme temperatures because it is an unstable chemical, and these tests could reveal many problems, including "over-pressurization of the inflator leading to rupture." The 2006 patent document purportedly contained a fix for that sort of rupturing.

87. Notably, the alleged fix in 2006 came *after* an inflator rupture incident in 2004 that caused a serious injury, and incidents continued to mount after that time as well. Takata submitted a patent application with other purported "fixes" as recently as 2013. These ongoing, albeit unsuccessful, efforts show that Takata knew throughout the relevant period that its airbags were defective.

88. In a 2007 patent for allegedly phase stabilized ammonium nitrate that incorporates a scavenging additive designed to retain moisture in an effort to prevent these catastrophic inflator ruptures, Takata representatives noted the following:

> Without the addition of the [additive], and as shown in [the patent], the ballistic curves indicate that changes occurred in the gas

- 35 -

generant after 50 cycles.   After 100 cycles the ballistic performance was very aggressive and did not meet USCAR specification.   After 200 cycles the ballistic performance was so aggressive that the inflator ruptured due to extremely high internal pressures.

89.     The inflators were "grenades" in the glove box or steering wheel waiting to detonate after going through 100 or 200 cycles of thermal cycling, which, of course, is something cars in the real world will eventually do.

90.     The use of this additive (or any other) designed to address ammonium nitrate's hygroscopic nature (affinity for moisture) is, at best, a temporary fix because at some point the additive will no longer be able to absorb the excess moisture and the ballistic curves will again exceed specification leading to ruptures.

**B.     The Risks of the Inflator Defect Were Exacerbated by Takata's and New Chrysler's Abysmal Quality Control**

91.     Takata and New Chrysler became further aware of the instability of Takata's ammonium-nitrate propellant from the persistent and glaring quality control problems Takata encountered in its manufacturing operations.   The Takata plants that manufactured the airbags and inflators at issue in this Complaint include plants located in Moses Lake, Washington, LaGrange, Georgia, and Monclova, Mexico.   New Chrysler routinely visited and audited Takata operations, including in response to quality and safety concerns.

92.     Starting in 2001, engineers at Takata's Monclova, Mexico plant identified a range of problems, including rust, which they said could have caused inflators to fail.   Between 2001 and 2003, Takata struggled with at least 45 different inflator problems, according to dozens of internal reports titled "potential failures" and reviewed by *Reuters*.

93.     On at least three occasions between 2005 and 2006, Takata engineers struggled to eliminate leaks found in inflators, according to engineering presentations.  In 2005, Shainin, a U.S. consulting firm, found a pattern of additional problems.  Underscoring Takata's reckless use of the volatile and unstable ammonium nitrate, on March 31, 2006, the Monclova, Mexico plant was rocked by violent explosions in containers loaded with propellant.  New Chrysler employees were made aware of this incident soon after it occurred.

94.     Apparently, not even that terrible accident could prompt serious and lasting improvements: in a February 2007 email to multiple colleagues, one manager stated that "[t]he whole situation makes me sick," referring to Takata's failure to implement checks it had introduced to try to keep the airbags containing the unstable and volatile ammonium-nitrate propellant from failing.

95.     Takata engineers also scrambled as late as 2009 to address its propellant issues after "inflators tested from multiple propellant lots showed aggressive ballistics," according to an internal presentation in June 2009.

96.     Based on internal Takata documents, Takata was struggling to meet a surge in demand for its airbags.  Putting profits ahead of safety, Takata exhibited shoddy and reckless behavior in the handling of its ammonium-nitrate propellant.   In March 2011, a Takata supervisor at the Monclova, Mexico plant sent an e-mail to other employees stating, "A part that is not welded = one life less, which shows we are not fulfilling the mission." The title of the e-mail was "Defectos y defectos y defectos!!!!" This shoddy and reckless attitude permeated all of Takata's operations and facilities.

97.     Yet handling problems at Takata facilities persisted. Another manager urged employees to examine the propellant visible in a cross section of an airbag inflator, noting that

- 37 -

"[t]he propellant arrangement inside is what can be damaged when the airbags are dropped. . . . Here you can see why it is important to handle our product properly." A 2009 presentation of guidelines on handling inflators and airbag units also stressed the dangers of mishandling them. The presentation included a link to a video that appeared to show side-curtain airbags deploying violently, sending one of the airbags' inflators hurtling into the car's cabin.

98.    Despite knowing it was shipping potentially deadly products, including inflators containing unstable and volatile ammonium-nitrate propellant, Takata resisted taking back damaged or wet airbag modules, in part because Takata struggled to keep up with a surge in demand for its airbags through the early and mid-2000s as it won big new clients like Old Chrysler.

### III.    New Chrysler's Knowledge of the Defective Airbag

#### A.    New Chrysler's Inherited Knowledge

99.    As a result of the extensive literature detailing the problems with using ammonium nitrate as well as Old Chrysler's intimate involvement in developing specifications and testing standards for the problematic ammonium nitrate inflators, Old Chrysler had long been aware of the problems associated with the use of ammonium nitrate in Takata's airbags.

100.    In 1992, Old Chrysler, along with Ford and General Motors, founded the United States Council for Automotive Research ("USCAR"). Thereafter, these three U.S. automakers began collaborating on the USCAR specifications for airbag inflators. These specifications included requirements for testing related to the use of ammonium nitrate as a propellant in airbag inflators. These USCAR specifications recognized that inflators using ammonium nitrate were particularly problematic and required additional testing:

> **Propellant Stability**. Ammonium Nitrate containing propellants shall be required to undergo added stability evaluation for

propellant strength and burn rate stability as agreed to by the Responsible Vehicle Engineering Organization.

This required additional testing was based upon the well-known problems with ammonium nitrate losing stability when exposed to moisture and thermal cycling.

101.    In fact, the *New York Times* has reported that, in the late 1990s, Autoliv, another company that supplied airbags to Old Chrysler, had its scientists study the Takata airbag, and they learned that it utilized the dangerously volatile compound, ammonium nitrate.

102.    According to the *New York Times*, Robert Taylor, Autoliv's head chemist at the time, analyzed every facet of the Takata airbag, including the ammonium-nitrate propellant.  The takeaway, Taylor said, was that when the airbag was detonated, "the gas generated so fast, it blows the inflator to bits."  Chris Hock, a former member of Mr. Taylor's team, said a mock ammonium-nitrate inflator test "totally destroyed the fixture" and "turned it into shrapnel." Upon information and belief, these findings were shared with Old Chrysler and subsequently passed on to New Chrysler.

103.    Despite being presented with deviation requests and test results from Takata showing that the ammonium-nitrate inflators did not meet the USCAR specifications, New Chrysler engineers continued to approve the use of ammonium nitrate inflators. This occurred as early as 2004 and continued after the 363 Sale.

104.    New Chrysler did not issue its first official recall until 2014, despite an abundance of public information regarding the dangers associated with Takata airbags using ammonium nitrate, and New Chrysler's own issues and concerns that it has had with these airbags since implementation.

105.    For example, a Takata ammonium-nitrate inflator experienced catastrophic failure during testing, when the structural integrity of the inflator failed upon auto ignition in 2000.

- 39 -

106.    During the early 2000s, Old Chrysler's Product Engineers expressed concerns as to the integrity of the Takata ammonium-nitrate inflator module during and post deployment.

107.    Old Chrysler was also aware, in the early 2000s, that the Takata ammonium-nitrate PSDI-4 inflator did not meet the tank curve targets for its USCAR delta process validation ("PV") tests, and that this out-of-spec performance had a high probability of contributing to issues Old Chrysler had already experienced in previous PV testing.

108.    Furthermore, Old Chrysler had concerns about the ballistic performance of the Takata ammonium-nitrate inflators at an early stage. Old Chrysler did not want to allow a Production Part Approval Process ("PPAP") to be based on the limits proposed by Takata's research entity, Inflation Systems, Inc. ("ISI").  In 2006, Takata was concerned that it would be unable to support the program timing for Chrysler's PSDI -5 driver side airbag due to Takata's inability to mitigate flaming issues, which released molten propellant from the inflator

112.    By 2007, on information and belief, Old Chrysler was also made aware of the Takata ammonium-nitrate inflator's tendency to exhibit "anomaly activity," "ballistic shift," and "aggressive behavior."

113.    At the same time, the long-standing problems associated with ammonium nitrate and its phase stabilized counterpart continued to be publicly disclosed.

114.    The use of an additive designed to address ammonium nitrate's hygroscopic nature (i.e., affinity for moisture) is, at best, a temporary fix because at some point the additive will no longer be able to absorb the excess moisture and the ballistic curves will again exceed specification leading to ruptures.

115.    In April 2009, Old Chrysler filed for bankruptcy.  On June 1, 2009, under Section 363 of the U.S. Bankruptcy Code, the United States Bankruptcy Court for the Southern District

of New York approved the sale of substantially all of Old Chrysler's assets pursuant to the Sale Agreement, and New Chrysler acquired substantially all of Old Chrysler's books, records, and personnel.   When New Chrysler acquired Old Chrysler's books, records, and personnel, it acquired the knowledge of the Inflator Defect that those books, records, and personnel held.

### B.   New Chrysler's Acquisition of Additional Post-Sale Knowledge

116.   In addition to the knowledge of the Inflator Defect that New Chrysler inherited from Old Chrysler, New Chrysler independently knew or should have known of the Inflator Defect almost immediately after the closing of the 363 Sale.

117.   In the fall of 2008, Honda initiated its first recall of Takata airbags in the U.S. Given that the Takata airbags New Chrysler used in its vehicles contained the same ammonium-nitrate propellant as used in the Honda vehicles, New Chrysler was put on notice, but ultimately did nothing meaningful about it and instead ordered a million more ammonium-nitrate inflators from Takata.

118.   In October of 2010, an inflator rupture occurred during PV testing for New Chrysler at Takata's Monclova facility.

119.   In October of 2011, a Chrysler vehicle experienced an inadvertent airbag deployment during vehicle repair at a New Chrysler plant. The repairman noted a hissing sound during deployment and noted that the connectors had melted.

120.   In April of 2013, New Chrysler was made aware that Takata's SDI-X ammonium-nitrate inflator did not meet the slope testing standards during PV testing, but New Chrysler granted deviations and approved the inflator for Chrysler production.

121.    On June 20, 2013, there was an issue with a New Chrysler inflator deployment during testing at Takata's laboratory. New Chrysler was made aware of the issue during a July 2013 visit to Takata's Monclova facility.

122.    On September 7, 2013, a PSDI-4 inflator in a Chrysler vehicle ruptured in the field, injuring the vehicle occupant.

123.    By 2013, NHTSA began to force Takata and the auto industry into action.  In April and May 2013 alone, approximately 4 million vehicles were recalled by ten automotive manufacturers as a result of the Inflator Defect.  During that same period of time, employees at New Chrysler were communicating with other automakers about the root cause of the Takata airbag ruptures and recalls.  For example, in an e-mail to New Chrysler and Ford, General Motors' head of inflator technology said the explanation for the recall given by a Honda spokesperson in April 2013—that the problem stemmed from human errors during production— was "Bull S%$t," and he expressed his view that the Takata defect "has to be a core design issue or process issue, not a 'mistake.'"

124.    Over the past 15 years, worldwide, there have been at least 22 deaths and hundreds of serious injuries linked to defective Takata airbags in a myriad of vehicles made by various automotive manufacturers, including New Chrysler.  Though New Chrysler was aware of these incidents, as well as problems with its own airbag inflators, it continued to equip its vehicles with Takata ammonium-nitrate airbags, maintain publicly that they were safe, and conceal the nature and existence of the Inflator Defect.

125.    New Chrysler knew or should have known that the Takata airbags installed in millions of vehicles were defective and potentially deadly.  New Chrysler, who concealed its knowledge of the nature and extent of the Inflator Defect from the public while continuing to

advertise its products as safe and reliable, has shown a blatant disregard for public welfare and safety.   Moreover, New Chrysler has violated its affirmative duty, imposed under the Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), to promptly advise customers about known defects.

## IV.   New Chrysler Sold Its Vehicles As "Safe" and "Reliable"

126.    At all relevant times, in advertisements and promotional materials, New Chrysler continuously maintained that Chrysler-branded vehicles were safe and reliable and uniformly concealed the Inflator Defect.   Plaintiffs, directly or indirectly, were exposed to these advertisements or promotional materials prior to purchasing or leasing Class Vehicles.   The misleading statements about Class Vehicles' safety in New Chrysler's advertisements and promotional materials were material to decisions to purchase or lease Class Vehicles.

127.    Examples of New Chrysler's safety and reliability representations include the following:

a.    In 2017, New Chrysler's website listed its mission as: "To create the type of exciting, efficient, reliable, safe vehicles you expect and deserve."

b.    In 2017, New Chrysler described the design of the 2007 - 2017 Jeep Wrangler on Jeep's website as: "With an all-new frame, exterior and interior design, engine, safety and security and convenience features, the Jeep Wrangler was built on the successful, original Jeep Brand formula."

c.    A February 9, 2012 press release boasted that the 2012 Chrysler 300 and 2012 Dodge Charger had achieved 5-star safety ratings from NHTSA, and it boasted that the Chrysler 300 and Dodge Charger were named a "Top Safety Pick" by the Insurance Institute for Highway Safety. The press release further quoted the Senior Vice President-Engineering of

Chrysler, who stated: "we're very pleased that both the 2012 Chrysler 300 and 2012 Dodge Charger have achieved the highest overall rating" and that: "both vehicles are robustly designed with a rigid structure to protect occupants and have numerous advanced safety features."

d.      The 2012 Dodge Charger brochure highlighted that the Charger was a 2011 Insurance for Highway Safety ("IHS") top safety pick. The brochure further stated that: "[s]afety and security are the driving principles behind every Dodge vehicle, including Charger" and that: "[a]dvanced multistage front air bags, supplemental front-seat mounted pelvic-thorax side air bags, driver-side knee air bag, and supplemental side-curtain air bags for front and rear outboard occupants are all standard."

e.      The 2011 Dodge Dakota brochure claimed that the: "Dakota heritage of protecting you and your passengers is uncompromising. In addition to the many safety and security features listed here, all 2011 Dakota models now feature supplemental side-curtain air bags as standard equipment and, of course, four-wheel ABS."

f.      The 2011 Jeep Wrangler brochure asserted that: "Wrangler's got your back, your sides, as well as your front end. Just as Wranglers are purpose-built for fun, they're also infused with advanced active and passive systems designed to help keep you safe and secure. At the forefront are the standard advanced multistage front air bags."

g.      The 2011 Chrysler 300 brochure included the slogan: "[t]his kind of safety gives you that kind of security." The brochure further advertised that: "advanced multistage front air bags, supplemental front-seat thorax side air bags, driver-knee air bag, and supplemental side-curtain air bags for front and rear outboard occupants are all standard."

h.      The 2009 Chrysler 300 brochure stated that:

> [n]o one wants to test a vehicle's impact resistance, but 300 is
> ready, if it occurs…. Advanced multistage front air bags deploy in

- 44 -

staged amounts, depending on impact severity, while available front seat-mounted side air bags with supplemental front and rear side-curtain air bags offer additional side-impact protection to front and rear outboard occupants.

## V.   Inadequate Recalls and Failure to Assist Impacted Consumers

### A.   Slow and Inadequate Recalls

128.    Though the first Takata Airbag related recall was launched years earlier, New Chrysler failed to initiate a field action or recall until 2014.

129.    Just prior to the New Chrysler field action in June of 2014, which covered only select vehicles in Florida, Hawaii, Puerto Rico, and the U.S. Virgin Islands, New Chrysler told the public that there was not a safety defect with its inflator. New Chrysler stated:

> Chrysler Group has agreed, in principle, to honor a National Highway Traffic Safety Administration request to replace airbag inflators in certain vehicles registered in four U.S. regions… This is not a safety recall. Chrysler Group has not identified a defect. This is a field action conducted out of an abundance of caution.

130.    New Chrysler failed to initiate a proper safety recall until 2014, which expanded the field action to include roughly a mere 208,700 older-model vehicles originally purchased or ever registered in only seven U.S. states and five territories. This recall would be the first of many for New Chrysler.

131.    Even those vehicles that have been recalled have little chance of being repaired in the near term.   Under the recalls required under NHTSA's Coordinated Remedy Order, approximately 44 million vehicles will be recalled in the United States due to the Inflator Defect.

132.    At a Congressional hearing in June 2015, Takata's representative testified that Takata was shipping approximately 700,000 replacement inflators per month, and it expected to increase production to 1 million replacement inflators per month by September 2015—well short of the number required to supply the ten automakers that have issued recalls.

133.    At the current rate, it will take several years to produce enough inflators to fix all recalled vehicles in the U.S., even setting aside the question of whether service departments would be able to stock parts, field subject vehicles, and provide the necessary services in a timely manner.

134.    Not surprisingly, authorized dealers are experiencing a severe shortage of parts to replace the faulty airbags.  Dealers have been telling frustrated car owners they can expect to wait many months before their airbags can be replaced.

135.    In response to the airbag replacement shortage, certain automakers have taken the extreme step of disabling passenger airbags entirely and putting a "Do Not Sit Here" decal in the vehicle until a proper repair can be made.  In the alternative, some automakers are advising customers to refrain from driving their vehicles until the airbags can be replaced.

136.    Other automakers have also chosen to "repair" their customers' vehicles not by providing temporary replacement vehicles or replacement parts, but by disengaging the Takata airbags entirely.

137.    New Chrysler stated that: "[t]o help control the proper allocation and inventory of parts, customer notifications are being prioritized by geography and make and model year of vehicle," meaning that many drivers will not receive notices for weeks or longer, as they continue to drive vehicles with potentially deadly airbags.

138.    Even to this day, certain New and Old Chrysler vehicles, such at the 2009 Chrysler Aspen, are only under recall if registered in certain geographic zones.

139.    Congress has voiced concerns about this serious problem. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation ("DOT"), said they were:

alarmed and astonished that NHTSA has endorsed a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the front seat if replacement parts for these airbags are unavailable. As a matter of policy, this step is extraordinarily troubling and potentially dangerous. As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (49 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption. We are unaware of an exemption from your office in the case of Takata airbags.

### B.   Failure to Provide Replacement Vehicles

140.   The Class Vehicles are not safe to drive.  They have been recalled, and yet replacement of the Defective Airbags could take years.  Due to New Chrysler's failures, Plaintiffs and Class members are left with poor options: be without use of a vehicle; purchase, lease, or rent a new vehicle until New Chrysler completes the recall; or use a vehicle with a dangerous or disabled airbag over an extended period of time.

141.   As Senators Blumenthal and Markey asserted, "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."

142.   New Chrysler is not providing loaner or replacement vehicles on a comprehensive basis.

### C.   Defective Replacement Airbags

143.   Perhaps most alarming, the replacement components manufactured by Takata that many OEMs, including New Chrysler, are using to "repair" recalled Class Vehicles suffer from the same Inflator Defect that plagues the parts being removed: they use ammonium nitrate as the inflator's primary propellant. Indeed, Takata admitted in its submitted DIRs and at the June 2015 Congressional hearing that inflators installed in recalled vehicles as replacement parts are, in

- 47 -

fact, defective and must be replaced yet again. And even recall notices issued in 2015 acknowledge that certain "replacement inflators are of the same design and materials as the inflators being replaced."

144.    Moreover, inspection of inflators manufactured by Takata as recently as 2014 and installed by manufacturers through the recall process reveals that the ammonium nitrate pellets within the inflators already show signs of moisture-induced instability, such as rust stains, the tendency to clump together, and size variations.  As a result, Takata cannot reasonably assure Plaintiffs or Class members that Class Vehicles equipped with such post-recall replacement parts will be any safer than they were with the initial Defective Airbags.

145.    Yet, the Part 573 Safety Recall Report for Chrysler Recall 15V-312 submitted May 26, 2015, states that: "[r]eplacement inflators are of the same design and materials as the inflators being replaced; however, Takata has communicated to FCA US that the new replacement inflators reflect, continuous process improvements that were introduced in the SPI inflators after MY 2008."  However, both Takata and New Chrysler knew the defect was not corrected.

146.    By way of example, Paragraph 30 of the November 2015 Consent Order provides that the NHTSA Administrator may issue final orders for the recall of Takata's desiccated phase stabilized ammonium nitrate ("PSAN") inflators, used as both original and replacement equipment, if no root cause has been determined by Takata or any other credible source, or if Takata has not otherwise shown the safety and/or service life of the parts by December 31, 2019. But as of July 10, 2017, Takata began recalling certain desiccated PSAN inflators installed in Ford, Mazda, and Nissan vehicles.

147.    Moreover, while Takata and automakers, including New Chrysler, had previously assured the public that the Defective Airbags had been remedied and that the new airbags being placed in recalled vehicles were safe, in fact, several automakers, including New Chrysler, have been or will be required to recall some vehicles from model year 2013 and later because of the risk of the Takata airbags rupturing.  And Takata has now admitted that replacement airbags installed in some recalled vehicles are defective as well and it cannot assure the public that replacement inflators containing ammonium nitrate are safe and not prone to rupture.

## TOLLING OF THE STATUTE OF LIMITATIONS

I.    **Fraudulent Concealment**

148.    New Chrysler has known of the Inflator Defect since June 1, 2009, when New Chrysler obtained all of Old Chrysler's books, records, and personnel, and their knowledge of the Inflator Defect, including Takata's own testing, numerous incidents of energetic disassembly in Defective Airbags made for New and Old Chrysler vehicles, and recalls initiated by other automakers.  New Chrysler obtained further knowledge of the Inflator Defect after June 1, 2009, when it learned of the results of additional Takata testing, field incidents involving the defective Takata Airbags, and mounting recalls by other automakers.  New Chrysler has concealed from, or failed to notify, Plaintiffs, Class members, and the general public of, the full and complete nature of the Inflator Defect.

149.    Although New Chrysler has now acknowledged to safety regulators that Takata's airbags are defective, for years, New Chrysler did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

150.     Any applicable statute of limitations has therefore been tolled by New Chrysler's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**II.      Estoppel**

151.     New Chrysler was, and is, under a continuous duty to disclose to Plaintiffs and proposed Class members the true character, quality, and nature of the Class Vehicles.  They actively concealed the true character, quality, and nature of the vehicles, and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiffs and proposed Class members reasonably relied upon New Chrysler's knowing, and affirmative misrepresentations and/or active concealment of these facts.  Based on the foregoing, New Chrysler is estopped from relying on any statute of limitations in defense of this action.

**III.     Discovery Rule**

152.     The causes of action alleged here did not accrue until Plaintiffs and proposed Class members discovered that their vehicles had the Defective Airbags.

153.     Plaintiffs and proposed Class members, however, had no realistic ability to discern that the vehicles were defective, until after either the Defective Airbags exploded ,or their vehicles were recalled.  Even then, Plaintiffs and proposed Class members would have had no reason to discover their causes of action, because of New Chrysler's active concealment of the true nature of the defect.

**IV.     *American Pipe* Tolling**

154.     A putative class action suit on behalf of a nationwide class was brought against New Chrysler on October 31, 2014.  *See Bonet v. Takata Corporation*, et al., No. 14-cv-24087

(S.D. Fla.). At the time it was brought, Plaintiffs and the other Class members in this case were part of the classes alleged in the action.

155.    Accordingly, pursuant to *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), the claims of Plaintiffs and other Class members were tolled from at least October 31, 2014.   Additional class actions filed by Plaintiffs following the *Bonet* action provide additional bases for *American Pipe* tolling.

## CLASS ACTION ALLEGATIONS

156.    The proposed Classes' claims all derive directly from a single course of conduct by New Chrysler.  This case is about the responsibility of New Chrysler, at law and in equity, for its knowledge, conduct, and products. New Chrysler has engaged in uniform and standardized conduct toward the proposed Classes.  It did not differentiate, in degree of care or candor, in its actions or inactions, or in the content of its statements or omissions, among individual Class members.  The objective facts on these subjects are the same for all Class members.  Within each Claim for Relief asserted by the respective proposed Classes, the same legal standards govern. Additionally, many—and for some, all—states share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf, and on behalf of all other persons similarly situated, as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## I.     The Classes

157.    The Consumer Plaintiffs bring this action, and seek to certify and maintain it as a

class action, under Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or c(4), on

behalf of themselves, and a Nationwide Consumer Class defined as follows:

> All persons in the United States who, prior to the date on which the Class Vehicle
> was recalled and after June 1, 2009, (a) entered into a lease for a Class Vehicles,
> or (b) bought a Class Vehicle, and who (i) still own or lease the Class Vehicle, or
> (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled,
> or (iii) following an accident, whose Class Vehicle was declared a total loss after
> the date on which the Class Vehicle was recalled.

158.    The Consumer Plaintiffs allege statewide class action claims on behalf of separate

classes in the following states: Alabama, Arkansas, Arizona, California, Georgia, Florida,

Indiana, Illinois, Maryland, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New

York, North Carolina, Ohio, Pennsylvania, South Carolina, and Texas. These State Consumer

Classes are initially defined as follows:

> All persons who, prior to the date on which the Class Vehicle was recalled and
> after June 1, 2009, (a) entered into a lease for a Class Vehicle, or (b) bought a
> Class Vehicle in the state of ____ (*e.g.*, California), and who (i) still own or lease
> the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class
> Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was
> declared a total loss after the date on which the Class Vehicle was recalled.

159.    The proposed Nationwide Consumer Class and Statewide Consumer Classes, and

their members, are sometimes referred to herein as the "Class" or "Classes."

160.    Excluded from each Class are Takata and New Chrysler; their employees,

officers, directors, legal representatives, heirs, and successors; wholly or partly owned

subsidiaries or affiliates of New Chrysler; Class Counsel and their employees; and the judicial

officers, their immediate family members, and associated court staff assigned to this case.

## II.    Numerosity

161.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(1). There are millions of Class Vehicles nationwide, and thousands of Class Vehicles in each of the States. Individual joinder of all Class members is impracticable.

162.    Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by New Chrysler or third parties in the usual course of business and within their control.   Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Federal Rules of Civil Procedure 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Rule 23(d).

## III.    Predominance of Common Issues

163.    This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(2) and (b)(3), because questions of law and fact that have common answers, and are the same for each of the respective Classes, predominate over questions affecting only individual Class members. These include, without limitation, the following:

a.    Whether the Class Vehicles suffer from the Inflator Defect;

b.    Whether New Chrysler knew, or should have known, about the Inflator Defect, and, if so, how long New Chrysler has known of the defect;

c.    Whether New Chrysler had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

d.    Whether New Chrysler omitted and failed to disclose material facts about the Class Vehicles;

e.      Whether New Chrysler's concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class members to act to their detriment by purchasing the Class Vehicles;

f.      Whether New Chrysler's conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.      Whether New Chrysler misrepresented that the Class Vehicles were safe;

h.      Whether New Chrysler engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles were designed, manufactured, and sold with defective airbag inflators;

i.      Whether New Chrysler's conduct, as alleged herein, was likely to mislead a reasonable consumer;

j.      Whether New Chrysler's statements, concealments, and omissions regarding the Class Vehicles, were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

k.      Whether New Chrysler violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

l.      Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

m.     Whether New Chrysler's unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the Classes;

n.      Whether the Class Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the airbags at issue;

o.      Whether New Chrysler has been unjustly enriched by its conduct;

p.      Whether Plaintiffs and the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

q.      Whether Plaintiffs and the Classes are entitled to a declaratory judgment stating that the airbag inflators in the Class Vehicles are defective and/or not merchantable;

r.      Whether New Chrysler should be declared responsible for notifying all Class members of the Inflator Defect, and ensuring that all vehicles with the airbag inflator defect are promptly recalled and repaired;

s.      What aggregate amounts of statutory penalties are sufficient to punish and deter New Chrysler, and to vindicate statutory and public policy;

t.      How such penalties should be most equitably distributed among Class members;

u.      Whether New Chrysler conspired with others to violate RICO; and

v.      Whether New Chrysler associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

## IV.    <u>Typicality</u>

164.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs' claims are typical of the claims of the Class members, and arise from the same course of conduct by New Chrysler.  The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

## V.     Adequate Representation

165.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

166.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

## VI.     Superiority

167.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2), because New Chrysler has acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

168.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3), because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The common questions of law and fact regarding New Chrysler's conduct and responsibility predominate over any questions affecting only individual Class members.

169.    Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions; and the burden imposed on the judicial system by individual

litigation—by even a small fraction of the Class—would be enormous, making class adjudication the superior alternative under Federal Rule of Civil Procedure 23(b)(3)(A).

170.   The conduct of this action as a class action presents far fewer management difficulties; far better conserves judicial resources, and the parties' resources; and far more effectively protects the rights of each Class member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Federal Rule of Civil Procedure 23(b)(3)(D).

171.   Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Federal Rule of Civil Procedure 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism, and reduce management challenges. The Court may, on motion of Plaintiffs, or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law, for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

172.   The Classes expressly disclaim any recovery in this action for physical injury resulting from the Inflator Defect without waiving or dismissing such claims.  Plaintiffs are informed and believe that injuries suffered in crashes as a result of Defective Airbags implicate the Class Vehicles; constitute evidence supporting various claims, including diminution of value;

and are continuing to occur because of New Chrysler's delays and inaction regarding the commencement and completion of recalls and installation of Defective Airbags as replacement airbags. The increased risk of injury from the Inflator Defect serves as an independent justification for the relief sought by Plaintiffs and the Classes.

**REALLEGATION AND INCORPORATION BY REFERENCE**

173.   Plaintiffs reallege and incorporate by reference all of the preceding paragraphs and allegations of this Complaint, including the Nature of Claims, Factual Allegations, Tolling Allegations, and Class Action Allegations, as though fully set forth in each of the following Claims for Relief asserted on behalf of the Nationwide Class and the Statewide Classes.

**CLAIMS FOR RELIEF**

**I.     Nationwide Claims**

    **A.     Federal Claims**

**COUNT 1**

**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301**

174.   Consumer Plaintiffs bring this Count against New Chrysler, on behalf of themselves and members of the proposed Nationwide Consumer Class, who are residents of the following States: Alabama, Arkansas, Arizona, California, Florida, Illinois, Indiana, Maryland, Massachusetts, Michigan, Missouri, North Carolina, Ohio, Pennsylvania, South Carolina, and Texas.

175.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

176.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

177. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

178. New Chrysler is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

179. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

180. New Chrysler provided Plaintiffs and the other Class members with an implied warranty of merchantability, in connection with the purchase or lease of their vehicles, that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, New Chrysler warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles; would pass without objection in the trade as designed, manufactured, and marketed; and were adequately contained, packaged, and labeled.

181. New Chrysler breached these implied warranties, as described in more detail above, and is therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common design defect, in that they are equipped with Defective Airbags containing the Inflator Defect. New Chrysler has admitted that the Class Vehicles are defective in issuing its recalls, but its recalls are woefully insufficient to address the Inflator Defect.

182.     Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit liability for the Class Vehicles is null and void.

183.     Any limitations on the warranties are procedurally unconscionable.  There was unequal bargaining power between New Chrysler on the one hand, and Plaintiffs and the other Class members, on the other.

184.     Any limitations on the warranties are substantively unconscionable.  New Chrysler knew that the Class Vehicles were defective, and would continue to pose safety risks after the warranties purportedly expired.  New Chrysler failed to disclose the Inflator Defect to Plaintiffs and the other Class members. Thus, New Chrysler's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

185.     Plaintiffs and each of the other Class members have had sufficient direct dealings with either New Chrysler or its agents (dealerships) to establish privity of contract.

186.     Nonetheless, privity is not required here, because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between New Chrysler and its dealers, and specifically, of the implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles, and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for, and intended to benefit, consumers.   Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Inflator Defect.

187.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action, and are not required to give New Chrysler notice and an opportunity to cure, until such time as

the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

188.    Furthermore, affording New Chrysler an opportunity to cure its breach of written warranties would be unnecessary and futile here.  At the time of sale or lease of each Class Vehicle, New Chrysler knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford New Chrysler a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

189.    In addition, a substantial portion of the Plaintiffs provided written notice of breach of implied warranties and related consumer protection laws and opportunity to cure, by letters dated November 11, 2017 to New Chrysler.

190.    Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because New Chrysler is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Defective Vehicles by retaining them.

191.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law,

including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members, in connection with the commencement and prosecution of this action.

192.    Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses, and costs they have incurred in attempting to rectify the Inflator Defect in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad of expenses involved in going through the recall process.

193.    The right of Class members to recover these expenses as an equitable matter—to put them in the place they would have been but for New Chrysler's conduct—presents common questions of law. Equity and fairness requires the establishment by Court decree, and administration under Court supervision, of a program funded by New Chrysler, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## COUNT 2

### Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)

194.    Plaintiffs bring this claim on behalf of themselves, and the members of the proposed Nationwide Consumer Class, against New Chrysler, with regard to Defective Vehicles that New Chrysler manufactured, sold, or misrepresented as safe.

195.    New Chrysler and Takata are both "persons" under 18 U.S.C. § 1961(3).

196.    Plaintiffs and Class members are "person[s] injured in his or her business or property" by reason of New Chrysler's violation of RICO within the meaning of 18 U.S.C. § 1964(c).

197.    Since the 363 Sale to New Chrysler in June 2009, Takata and New Chrysler shared information about erroneous or injurious airbag deployments, jointly and secretly; investigated the possible causes of those deployments; delayed and/or prevented the release of inculpatory information; misled regulatory authorities; and maintained a consistent public posture as to the scope of vehicles affected by the Defective Airbags, and the safety risks those airbags posed.  New Chrysler's close cooperation with Takata on issues surrounding the Inflator Defect, and joint participation in predicate acts described below, is evidence of the conspiracy to participate in a RICO enterprise, and conspiracy to conduct the affairs of such an enterprise through a pattern of racketeering activity.

## The New Chrysler-Takata RICO Enterprise

198.    The following persons, and others currently unknown, have been members of, and constitute an "association-in-fact enterprise," within the meaning of RICO, and will be referred to herein collectively as the Takata RICO Enterprise:

a.    Takata, who, with New Chrysler's guidance, designed, manufactured, and sold millions of Defective Airbags knowing that they contained the Inflator Defect, the scope and nature of which they concealed from and misrepresented to the public and regulators for more than a decade and still refuse to entirely acknowledge.

b.    Takata's Officers, Executives, and Engineers, who have collaborated and colluded with each other and with other associates in fact in the Takata RICO Enterprise to

deceive Plaintiffs and Class members into purchasing dangerous and defective vehicles, and actively concealing the danger and Inflator Defect from Plaintiffs and Class members.

        c.    <u>New Chrysler</u>, who designed, manufactured, and sold millions of vehicles equipped with Defective Airbags that it knew, or were reckless in not knowing, contained the Inflator Defect, the scope and nature of which they concealed from and misrepresented to the public and regulators since June 1, 2009, while falsely and inaccurately representing that their vehicles were safe, thereby deceiving Plaintiffs and Class members.

        d.    <u>New Chrysler's Officers, Executives. and Engineers</u>, who have collaborated and colluded with each other, and with other associates in fact, in the New Chrysler-Takata RICO Enterprise, to deceive Plaintiffs and Class members into purchasing dangerous and defective vehicles; and actively concealed the danger and Inflator Defect from Plaintiffs and Class members.

    199.    The New Chrysler-Takata RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose.  The New Chrysler-Takata RICO Enterprise had an ongoing organization with an ascertainable structure and functioned as a continuing unit with separate roles and responsibilities.

    200.    At all relevant times, New Chrysler operated, controlled, or managed the New Chrysler-Takata RICO Enterprise through a variety of actions.  New Chrysler's participation in the New Chrysler-Takata RICO Enterprise was necessary for the successful operation of its scheme to defraud, because New Chrysler manufactured, marketed, and sold Class Vehicles with

the Defective Airbags; concealed the nature and scope of the Inflator Defect; and profited from such concealment

201.    The members of the New Chrysler-Takata RICO Enterprise all served a common purpose: to sell as many airbags, and vehicles containing such airbags, as possible, and thereby maximize the revenue and profitability of the New Chrysler-Takata RICO Enterprise's members.

202.    The members of the New Chrysler-Takata RICO Enterprise shared the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud.  Each member of the New Chrysler-Takata RICO Enterprise benefited from the common purpose: New Chrysler sold or leased more Class Vehicles and received more for those vehicles than they would have otherwise, had the scope and nature of the Inflator Defect not been concealed; Takata sold more Defective Airbags to New Chrysler than they would have otherwise, had the scope and nature of the Inflator Defect not been concealed; and the dealerships sold and serviced more Class Vehicles and sold or leased those vehicles at a much higher price, as a result of the concealment of the scope and nature of the Inflator Defect from Plaintiffs and Class members.

203.    At all relevant times, New Chrysler operated, controlled, or managed the New Chrysler-Takata RICO Enterprise through a variety of actions. New Chrysler's participation in the New Chrysler-Takata RICO Enterprise was necessary for the successful operation of its scheme to defraud, because New Chrysler manufactured, marketed, and sold Class Vehicles with the Defective Airbags, concealed the nature and scope of the Inflator Defect, and profited from such concealment.

## Pattern of Racketeering Activity

204.     New Chrysler conducted and participated in the conduct of the affairs of the New Chrysler-Takata RICO Enterprise through a long-running pattern of racketeering activity, beginning June 1, 2009, and continuing to this day, consisting of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

205.     For New Chrysler, the purpose of the scheme to defraud was to conceal the scope and nature of the Inflator Defect found in millions of Defective Airbags in the United States in order to avoid incurring the expenses associated with repairing the Inflator Defect in New and Old Chrysler vehicles that New Chrysler was obligated to recall.  By concealing the scope and nature of the Inflator Defect in its millions of Defective Airbags, New Chrysler also maintained and boosted consumer confidence in the New Chrysler brand and avoided remediation costs and negative publicity, all of which furthered the scheme to defraud and helped New Chrysler and Takata sell more vehicles and airbags than they otherwise would have sold and for a much higher price or profit

206.     As detailed in the general factual allegations, New Chrysler was well aware of the risks of using ammonium nitrate as the propellant in its airbag inflators but intentionally subjected Plaintiffs and Class members to those risks, or consciously disregarded those risks, in order to maximize their profits.  Moreover, even after New Chrysler was aware of multiple ruptures in Takata inflators being used in New Chrysler vehicles and vehicles for which New Chrysler was responsible to recall, and vehicles with the Inflator Defect began maiming and

killing vehicle occupants in other manufacturers' vehicles in the field, New Chrysler continued to conceal the nature and scope of the Inflator Defect.

207.   To further the scheme to defraud, New Chrysler conspired to and did repeatedly misrepresent and conceal the nature and scope of the Inflator Defect.  As late as June 2014, New Chrysler refused to publicly acknowledge that a defect even existed, when in fact New Chrysler knew that there was an Inflator Defect, which is a fundamental, uniform defect—i.e., the reckless use of the unstable and dangerous ammonium nitrate as the propellant in the defectively designed inflator—that plagues every Takata airbag, and manifests itself across the country.

208.   To further the scheme to defraud, New Chrysler conspired to and did conceal the nature and scope of the Inflator Defect from federal regulators, enabling New Chrysler to escape investigation and the costs associated with recalls.

209.   To further the scheme to defraud, New Chrysler promoted and touted the safety, reliability, and quality of its vehicles, while simultaneously concealing the nature and scope of the Inflator Defect.

210.   To carry out or attempt to carry out the scheme to defraud New Chrysler has conducted or participated in the conduct of the affairs of the New Chrysler-Takata RICO Enterprise through the following pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

a.   New Chrysler devised and furthered the scheme to defraud by use of the mail, telephone, and internet and transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, writing(s) and/or signal(s), including the New Chrysler website, communications with NHTSA, statements to the press, and communications with other members of the New Chrysler-Takata RICO Enterprise, as well as

advertisements and other communications to their customers, including Plaintiffs and Class members; and

b.      New Chrysler utilized the interstate and international mail and wires for the purpose of obtaining money or property, by means of the omissions, false pretense, and misrepresentations described herein.

211.    Since June 1, 2009, New Chrysler's pattern of racketeering activity in violation of the mail and wire fraud statutes included, but was not limited to, the following:

a.      New Chrysler transmitted, or caused to be transmitted (which hereinafter also means that Defendants acted with knowledge that the use of the interstate mails and wires would follow in the ordinary course of business, or such use was reasonable foreseeable), by means of mail and wire communication travelling in interstate or foreign commerce, between its facilities in the United States, communications concerning the repeated failure of Takata's inflators to meet the USCAR Specifications, thereby recognizing that Takata's inflators installed in New Chrysler vehicles and vehicles for which New Chrysler is responsible to recall could not meet New Chrysler's own safety standards.

b.      From July 10, 2009 through at least 2017, New Chrysler repeatedly transmitted, or caused to be transmitted, by means of the mail and wire facilities travelling in interstate or foreign commerce, between New Chrysler in Michigan and Takata's facilities in Georgia, Mexico, and/or Japan, countless shipments of, and payments for, millions of inflators. These regular, repeated shipments facilitated and furthered the scheme to defraud.

c.      On or around April 4, 2013, New Chrysler transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler in Michigan to Takata in Japan, Michigan, Mexico, and/or

- 68 -

Washington, communications in which New Chrysler approved of deviations from USCAR specifications for Takata inflators.  New Chrysler failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the Inflator Defect and to promote the purported safety of New Chrysler vehicles.

        d.      Between and around June 12, 2013 and July 16, 2013, New Chrysler transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler in Michigan to Takata in Mexico and Michigan, communications concerning an inflator rupture that occurred during testing at Takata's facility in Mexico.  New Chrysler failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the Inflator Defect and to promote the purported safety of New Chrysler vehicles.

        e.      On June 2014, New Chrysler transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler's offices in Michigan to the public at large, misrepresentations that the Chrysler Group had not identified a defect, when it in fact knew of the Defective Airbags and the Inflator Defect.

        f.      On or about June and November 2014, New Chrysler caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler's offices in Michigan to the offices of federal regulators in Washington, D.C., misrepresentations and omissions regarding the Inflator Defect, including that the defect was only present in airbags in certain high humidity areas.  New Chrysler knew that this statement was misleading and that the defect was present in millions of its vehicles, and yet it did nothing to meaningfully notify the appropriate regulators or notify the Class.

g.    On or around December 3. 2014, New Chrysler caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler's offices in Michigan to the offices of federal regulators in Washington, D.C., misrepresentations and omissions regarding the Inflator Defect, including a chronology of rupture events that omitted numerous ruptures of which New Chrysler was aware, in order to conceal the scope and nature of the Inflator Defect and to promote the purported safety of New Chrysler vehicles.

h.    Beginning in late 2014, and/or sometime in 2015, through the present, New Chrysler caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler's offices in Michigan to Class members in various states in the country, including Florida, recall notices stating that the front driver's side and/or front passenger airbag should be replaced due to a defect.  These notices misleadingly suggested that the replacement airbags would be free of a defect, when in fact, if Takata airbags were used as replacements, they are also plagued by the Inflator Defect.  This communication concealed the nature and scope of the Inflator Defect.  New Chrysler knew that this statement was misleading and yet it did nothing to meaningfully investigate the problem, notify the appropriate regulators, or notify the Class.  Such a communication was transmitted from New Chrysler in Michigan to

i.    On or about May 26, 2015, New Chrysler transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler's offices in Michigan to federal regulators in Washington D.C., a limited recall of certain New and Old Chrysler vehicles.  New Chrysler misleadingly misrepresented the nature and scope of the Inflator Defect and omitted information that the

Inflator Defect was present in many more New and Old Chrysler vehicles, in order to conceal the scope and nature of the Inflator Defect and to promote the purported safety of New Chrysler vehicles.

j.      On or about July 10, 2015, New Chrysler transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler's offices in Michigan to federal regulators in Washington, D.C., a limited recall of certain New and Old Chrysler vehicles.  New Chrysler misleadingly misrepresented the nature and scope of the Inflator Defect, and omitted information that the Inflator Defect was present in many more New  and Old Chrysler vehicles, in order to conceal the scope and nature of the Inflator Defect and to promote the purported safety of New Chrysler vehicles.

k.      To this day, New Chrysler continues to transmit or cause to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from New Chrysler's offices in Michigan advertisements and communications with the public and NHTSA, misrepresenting that the replacement airbags are safe and reliable, when in fact they too suffer from the Inflator Defect.

212.    New Chrysler's conduct in furtherance of this scheme was intentional.  Plaintiffs and Class members were directly harmed as a result of New Chrysler's intentional conduct. Plaintiffs, Class members, and federal regulators, among others, relied on New Chrysler's material misrepresentations and omissions.

213.    As described throughout this Complaint, on or after June 1, 2009, New Chrysler conspired to or did engage in a pattern of related and continuous predicate acts.  The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of

defrauding Plaintiffs and other Class members—and obtaining significant monies and revenues from them—while providing vehicles with Defective Airbags worth significantly less than the purchase price paid.  The predicate acts also had the same or similar results, participants, victims, and methods of commission.  The predicate acts were related and not isolated events.

214.    The predicate acts all had the purpose of generating significant revenue and profits for New Chrysler at the expense of Plaintiffs and Class members.  The predicate acts were committed or caused to be committed by New Chrysler through their participation in the New Chrysler-Takata RICO Enterprise and in furtherance of its fraudulent scheme and were interrelated in that they involved obtaining Plaintiffs' and Class members' funds and avoiding the expenses associated with remediating the Inflator Defect.

215.    By reason of and as a result of the conduct of New Chrysler, and in particular, its pattern of racketeering activity, Plaintiffs and Class members have been injured in their business and/or property in multiple ways, including but not limited to:

a.    overpayment for leased or purchased Class Vehicles, in that Plaintiffs paid for vehicles with safe airbag systems and obtained vehicles with anything but, and were deprived of the benefit of their bargain; and

b.    the values of the Class Vehicles have diminished, thus reducing their resale values.

216.    New Chrysler's violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(a) and (c).

## COUNT 3

### Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d)

217.    Plaintiffs bring this claim on behalf of themselves and members of the Nationwide Consumer Class against the New Chrysler Defendants.

218.    In addition to the General Factual Allegations re-alleged and incorporated herein through the general Reallegation and Incorporation by Reference Paragraph above, Plaintiffs re-allege and incorporate the allegations set forth above in Count 2.

219.    At all relevant times, New Chrysler was associated with the New Chrysler-Takata RICO Enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the New ChryslerTakata RICO Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).  New Chrysler also agreed to the objective of the conspiracy or to commit at least two racketeering predicate acts.

220.    Over the course of the past eight and a half years, the New Chrysler and Takata shared information about the Defective Airbags' inherent flaws, their inability to meet safety specifications, and abnormal airbag deployments experienced by other automakers; delayed and/or prevented the release of inculpatory information; and maintained a consistent public posture as to the scope of vehicles affected by the Defective Airbags and the safety risks those airbags posed. New Chrysler's and Takata's close cooperation on issues surrounding the Inflator Defect and joint participation in predicate acts described below is evidence of the conspiracy.

### Overt Acts

221.    New Chrysler committed, and caused to be committed, a series of overt acts in furtherance of the conspiracy and to affect the objects thereof.

222.   More specifically, the following conduct and overt acts demonstrate the ongoing conspiracy between New Chrysler and Takata:

a.   The volatility and instability of ammonium-nitrate propellant has been underscored by the glaring and persistent quality control problems that have plagued Takata's manufacturing operations.  These problems were well known or should have been well known to New Chrysler almost immediately after the 363 Sale.

b.   Despite being presented with deviation requests and test results from Takata showing that the ammonium nitrate inflators did not meet the USCAR specifications, New Chrysler engineers continued to approve the use of ammonium nitrate inflators.

c.   New Chrysler continued to encounter energetic disassemblies in Takata airbags meant for its own vehicles. In 2010, an energetic disassembly occurred during PV testing. Additional energetic disassemblies occurred during testing in 2013.

d.   These energetic disassemblies began to emerge in the field as well. In 2013, prior to the issuing of a recall, New Chrysler was aware of an energetic disassembly that occurred in a New Chrysler vehicle in the field, and which caused injury to the vehicle occupant.

e.   New Chrysler did not commence an official recall for its vehicles until 2014. Even then, New Chrysler limited the scope of the recall to humid parts of the country. New Chrysler falsely claimed that the risks caused by the Inflator Defect disappeared to the north of some arbitrary latitude in the American South.  New Chrysler also mischaracterized the Inflator Defect as the product of idiosyncratic manufacturing flaws.

223.   In addition, Takata engaged in the following predicate acts in furtherance of the conspiracy:

        a.      In mid-to-late 2004, following a May 2004 accident in Alabama in which a Defective Airbag ruptured and spewed metal debris at the driver, Takata transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from its offices in Japan and/or Michigan to the offices of Honda in California and offices of regulators in Washington, D.C., representations that the rupture was an "anomaly," even though it resulted from the Inflator Defect, thereby concealing the nature and scope of the Inflator Defect.

        b.      In November 2008, Takata caused to be transmitted, by means of mail or wire communication travelling in interstate or foreign commerce, from California to federal regulators in Washington, D.C., regulatory filings stating that approximately 4,000 vehicles subject to a 2008 recall included all "possible vehicles that could potentially experience the problem [of a rupturing airbag inflator]," thereby concealing the nature and scope of the Inflator Defect.

        c.      In December 2008, Takata caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from California to vehicle owners across the country, letters stating that that "[m]etal fragments could pass through the airbag cushion material, possibly causing injury to vehicle occupants."  This letter did not sufficiently communicate the severity of the threat to life and limb, and concealed the scope and nature of the Inflator Defect.  Owners were merely advised to make an appointment to have their vehicle repaired, with no sense of urgency.  In contrast, on October 22, 2014, NHTSA urged affected vehicle owners to "act immediately on recall notices to replace defective Takata airbags."

d.      On July 29, 2009, Takata caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from California to federal regulators in Washington, D.C. an amended report identifying an estimated 440,000 additional vehicles that should have been subject to the earlier recall.  This report stated that "[t]he VIN range reflects all possible vehicles that could potentially experience the problem."  In light of the 100-fold recall expansion, this filing was misleading and served to conceal and/or minimize the threats posed by the Defective Airbags.

e.      On September 16, 2009, Takata caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from California to federal regulators in Washington, D.C. information concerning the initial, narrow recalls of Takata's inflators.  NHTSA wanted to know why the first recall did not include the vehicles covered by the second recall.  Among other things, this letter explained that several "additional deployments" had occurred outside of the VIN ranges of the first recall, prompting the latter recall.  But the letter fraudulently omitted that one of those deployments caused Ashley Parham's death.  Also, the letter claimed that the manufacturing problem was limited to only one high-precision compression press.  Because Takata was by then aware of the litany of problems plaguing its Monclova, Mexico plant, this "explanation" was grossly self-serving and misleading. In addition to the quality control problems stated above, during 2005 and 2006, Takata engineers struggled on three occasions to eliminate leaks found in inflators in the Monclova, Mexico plant.  Once again, NHTSA, and by extension the public, were deprived of accurate and complete information.  As a result of this letter, the Office of Defect Investigation closed its investigation into these two recalls.  Takata thereby concealed the nature and scope of the Inflator Defect.

f.      On February 9, 2010, Takata caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from California to federal regulators in Washington, D.C., another recall communication again falsely assuring NHTSA and the public that "[t]he VIN range reflects all possible vehicles that could potentially experience the problem."   The explanation of the defect in this communication—that two processes were used to prepare the inflator propellant and that one of them was not within specifications—was misleading in light of what Takata knew, or at least should have known in light of the extensive problems at Takata's Monclova, Mexico plant.

g.      On February 19, 2010, Takata transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from Takata's offices in Michigan and/or Japan a response to NHTSA's November 20, 2009 letter seeking more information about earlier inflator recalls.  Takata falsely and misleadingly asserted that it "ha[d] not provided any air bag inflators that are the same or substantially similar to the inflators in vehicles covered by recalls 08V-593 and 09V-259 to any customers other than Honda."  This statement was patently incorrect, as over 10 manufacturers have recalled vehicles containing Defective Airbags since that statement was made.  This statement concealed the nature and scope of the Inflator Defect.

h.      On April 27, 2011, Takata caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from California to federal regulators in Washington, D.C., additional recall communications again misleadingly stating that another recall covered "all possible vehicles" with the problem.  As before, the letter to owners and lessees did not sufficiently raise a sense of urgency.  This statement concealed the nature and scope of the Inflator Defect.

i.     On April 11, 2013, Takata transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from its offices in Japan and/or Michigan to the offices of federal regulators in Washington, D.C., misrepresentations that the defect was limited to inflators produced at a specific plant between certain dates due to a manufacturing error, again concealing the nature and scope of the Inflator Defect.

224.   On June 11, 2014, Takata transmitted or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, from Takata's offices in Michigan or Japan to the ODI in Washington, D.C., a letter titled "Takata Support for Regional Field Actions to Address Potential Inflator Issues."  Takata explained that it would "support the replacement of the identified inflators in vehicles in Puerto Rico, Florida, Hawaii, and the Virgin Islands, based on the high levels of absolute humidity in those areas," because "all six of the potentially-relevant rupture incidents had occurred in either Florida or Puerto Rico." Takata misleadingly omitted Ashely Parham's death in Oklahoma in May 2009, Gurjit Rathore's death in December 2009 in Virginia, and Brandi Owens's injury in October 2013 in Georgia.  By focusing on areas of high humidity, this communication concealed the nature and scope of the Inflator Defect.

225.   New Chrysler agreed to and did conduct and participate in the conduct of the New Chrysler-Takata RICO Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs and Class members, as more fully described above.

226.   As a direct and proximate result of New Chrysler's conspiracy and violation of 18 U.S.C. § 1962(d), Plaintiffs and Class members have been injured in their business and/or property in multiple ways, including but not limited to:

a.    overpayment for leased or purchased Class Vehicles, in that Plaintiffs paid for vehicles with safe airbag systems and obtained vehicles with anything but, and have been deprived of the benefit of their bargain; and

b.    the Class Vehicles' values have diminished, thus reducing their resale values.

227.    Had New Chrysler been entirely forthcoming with NHTSA and with the public in a timely manner about the vast scope of the Inflator Defect and the grave risks it posed to countless vehicle occupants, as was its duty, Plaintiffs would not have suffered these harms. New Chrysler's conspiracy to commit mail fraud and/or wire fraud was reasonably calculated to deceive persons of ordinary prudence and comprehension and was committed with reckless indifference to the truth if not the outright intent to deceive.

228.    Plaintiffs and Class Members seek to hold New Chrysler liable only for damages resulting from conduct of New Chrysler, its co-conspirators, and the New Chrysler-Takata RICO Enterprise that occurred on or after June 1, 2009.

229.    New Chrysler's conspiracy to violate 18 U.S.C. § 1962(c) was committed with the specific intent to defraud, thereby entitling Plaintiffs to treble damages under 18 U.S.C. § 1964(c).

230.    New Chrysler's violations of 18 U.S.C. § 1962(d) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

B.      **Common Law and State Law Claims**

**COUNT 4**

**Fraud**

231.    Plaintiffs (excluding the Florida and Pennsylvania Consumer Plaintiffs) bring this claim on behalf themselves and the members of the Nationwide Consumer Class under the common law of fraud, as there are no true conflicts (case-dispositive differences) among various states' laws of fraud.  In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class Members purchased their Class Vehicles.

232.    New Chrysler concealed and suppressed material facts regarding the Defective Airbags—most the fact that they were equipped with Defective Airbags which, among other things, (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag.

233.    New Chrysler took steps to ensure that its employees did not reveal the known safety Inflator Defect to regulators or consumers.

234.    On information and belief, New Chrysler still has not made full and adequate disclosure, continues to defraud Plaintiffs and the Class, and continues to conceal material information regarding the Inflator Defect that exists in the Class Vehicles.

235.    New Chrysler had a duty to disclose the Inflator Defect because it:

        a.      Had exclusive and/or far superior knowledge and access to the facts, and New Chrysler knew the facts were not known to or reasonably discoverable by Plaintiffs and the Class;

        b.      Intentionally concealed the foregoing from Plaintiffs and Class Members; and

- 80 -

c.     Made incomplete representations about the safety and reliability of the Defective Airbags and, by extension, the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

236.   These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.  Whether a manufacturer's products are safe and reliable and whether that manufacturer stands behind its products are material concerns to a consumer.  Plaintiffs and Class Members trusted New Chrysler not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

237.   New Chrysler concealed and suppressed these material facts to falsely assure purchasers and consumers that its airbags were capable of performing safely, as represented by New Chrysler and reasonably expected by consumers.

238.   New Chrysler also misrepresented the safety and reliability of its vehicles, because it either (a) knew but did not disclose the Inflator Defect; (b) knew that it did not know whether its safety and reliability representations were true or false; or (c) should have known that its misrepresentations were false.

239.   New Chrysler actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and to avoid recalls that would hurt the brand's image and cost New Chrysler money.  New Chrysler concealed these facts at the expense of Plaintiffs and the Class.

240.   Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts.

241. Had they been aware of the Defective Airbags and New Chrysler's callous disregard for safety, Plaintiffs and the Class either would not have paid as much for their Class Vehicles or would not have purchased or leased them at all.

242. Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler's fraudulent conduct.

243. Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they own vehicles that diminished in value as a result of New Chrysler's concealment of, failure to timely disclose, and/or misrepresentations concerning the serious Inflator Defect in millions of Class Vehicles and the serious safety and quality issues caused by New Chrysler's conduct.

244. The value of all Class members' vehicles has diminished as a result of New Chrysler's fraudulent conduct in connection with the Defective Airbags and made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

245. Accordingly, New Chrysler is liable to the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain or overpayment for the Class Vehicles at the time of purchase, the diminished value of the Defective Airbags and the Class Vehicles, and/or the costs incurred in storing, maintaining or otherwise disposing of the defective airbags.

246. New Chrysler's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being and with the aim of enriching New Chrysler. New Chrysler's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and

effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT 5

### Unjust Enrichment

247.    Consumer Plaintiffs (excluding Michael McClellion) bring this claim on behalf of themselves and the members of the Nationwide Consumer Class under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various states' laws of unjust enrichment.  In the alternative, Consumer Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Class Vehicles.

248.    New Chrysler has received and retained a benefit from the Plaintiffs and inequity has resulted.

249.    New Chrysler benefitted through its unjust conduct, by selling Class Vehicles with a concealed safety-and-reliability related defect, at a profit for more than these Vehicles were worth to Plaintiffs, who overpaid for these Vehicles, and/or would not have purchased these Vehicles at all; and who have been forced to pay other costs.

250.    It is inequitable for New Chrysler to retain these benefits.

251.    Consumer Plaintiffs do not have an adequate remedy at law.

252.    As a result of New Chrysler's conduct, the amount of its unjust enrichment should be disgorged in an amount to be proven at trial.

## COUNT 6

### Negligence

253.    Consumer    Plaintiffs    (excluding    Alabama,    California,    Florida,    Illinois, Massachusetts, Michigan, Nevada, North Carolina, Pennsylvania, and South Carolina Consumer

Plaintiffs) bring this claim against New Chrysler on behalf of themselves and the members of the Nationwide Consumer Class under the common law of negligence, as there are no true conflicts (case-dispositive differences) among various states' laws of negligence.  In the alternative, Plaintiffs bring this claim against New Chrysler under the laws of the states where Plaintiffs and Class Members purchased their Class Vehicles.

254.    New Chrysler owed a duty of care to Plaintiffs, who were a foreseeable end user, to design and manufacture its airbags so that they would not be defective or unreasonably dangerous to foreseeable end users, including Plaintiffs.

255.    New Chrysler breached its duty of care by, among other things:

a.    Negligently and recklessly equipping their vehicles with Defective Airbags;

b.    Negligently and recklessly failing to take all necessary steps to ensure that its products—which literally can make the difference between life and death in an accident— function as designed, specified, promised, and intended;

c.    Negligently and recklessly failing to take all necessary steps to ensure that profits took a back seat to safety;

d.    Negligently and recklessly failing to take all necessary steps to ensure that the Defective Airbags did not suffer from a common, uniform defect: the use of ammonium nitrate, a notoriously volatile and unstable compound, as the propellant in their inflators; and

e.    Negligently and recklessly failing concealing the nature and scope of the Inflator Defect.

256. New Chrysler's negligence was the direct, actual, and proximate cause of foreseeable damages suffered by Plaintiffs, as well as ongoing foreseeable damages that Plaintiffs continue to suffer to this day.

257. As a direct, actual, and proximate result of New Chrysler's misconduct, Plaintiffs and the members of the proposed Classes were harmed and suffered actual damages, which are continuing in nature, including:

a. the significantly diminished value of the vehicles in which the defective and unreasonably dangerous airbags are installed; and

b. the continued exposure of Plaintiffs to an unreasonably dangerous condition that gives rise to a clear and present danger of death or personal injury.

258. New Chrysler's negligence is ongoing and continuing, because New Chrysler continues to obfuscate, not fully cooperate with regulatory authorities, and manufacture replacement airbags that are defective and unreasonably dangerous, suffering from the same serious Inflator Defect inherent in the original airbags that are at issue in this litigation, which poses an unreasonable risk of serious foreseeable harm or death, from which the original airbags suffer.

259. In addition to damages, Consumer Plaintiffs seek injunctive relief to enjoin the New Chrysler from continuing its negligence by continuing to install Defective Airbags in Class Vehicles.

II.     **State Class Claims**

A.      **Claims Brought on Behalf of the Alabama Consumer Class**

**COUNT 7**

**Violation of the Alabama Deceptive Trade Practices Act**
**Ala. Code § 8-19-1**

260.    This claim is brought by the Alabama Consumer Plaintiffs on behalf of themselves and the Alabama Consumer Class against New Chrysler.

Alabama Consumer Plaintiffs and the Alabama Consumer Class are "consumers" within the meaning of Ala. Code § 8-19-3(2).

261.    New Chrysler, the Alabama Consumer Plaintiffs, and the Alabama Consumer Class members are "persons" within the meaning of Ala. Code § 8-19-3(5).

262.    The Class Vehicles are "goods" within the meaning of Ala. Code. § 8-19-3(3).

263.    New Chrysler was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

264.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) [r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) [e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

265.    By misrepresenting the Class Vehicles and/or the Defective Airbags as safe and by failing to disclose and actively concealing the Inflator Defect, New Chrysler engaged in deceptive business practices prohibited by the Alabama DTPA, including:

- 86 -

a.      Knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles and/or the Defective Airbags;

b.      Knowingly making a false representation as to whether the Class Vehicles and/or the Defective Airbags are of a particular standard, quality, or grade;

c.      Advertising the Class Vehicles and/or the Defective Airbags with the intent not to sell them as advertised; and

d.      Engaging in unconscionable, false, or deceptive act or practice in connection with the sale of the Class Vehicles and/or the Defective Airbags.

266.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

267.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Alabama DTPA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

268.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect

discussed above.  New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

269.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Alabama Consumer Plaintiffs and the Alabama Consumer Class members about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

270.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Alabama Consumer Plaintiffs and the Alabama Consumer Class members.

271.    New Chrysler knew or should have known that its conduct violated the Alabama DTPA.

272.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as safe and reliable, despite its knowledge of the Inflator Defect or their failure to reasonably investigate it.

273.    To protect its profits, and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, and their tragic consequences and allowed unsuspecting

new and used car purchasers to continue to buy, lease, and drive the highly dangerous Class Vehicles.

274.    New Chrysler owed the Alabama Consumer Plaintiffs and the Alabama Consumer Class members a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from the Alabama Consumer Plaintiffs and the Alabama Consumer Class; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Alabama Consumer Plaintiffs and the Alabama Consumer Class that contradicted these representations.

275.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

276.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Alabama Consumer Plaintiffs and the Alabama Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals the Inflator Defect rather than promptly remedies them.

277.   The Alabama Consumer Plaintiffs and the Alabama Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and its failure to disclose material information.   Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them and New Chrysler's complete disregard for safety, the Alabama Consumer Plaintiffs and the Alabama Consumer Class members either would not have paid as much for their vehicles or would not have purchased or leased them at all.   The Alabama Consumer Plaintiffs and the Alabama Consumer Class members did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

278.   New Chrysler's violations present a continuing risk to the Alabama Consumer Plaintiffs and the Alabama Consumer Class, as well as to the general public.   New Chrysler's unlawful acts and practices complained of herein affect the public interest.   The recalls and repairs instituted by New Chrysler have not been adequate.

279.   As a direct and proximate result of New Chrysler's violations of the Alabama DTPA, the Alabama Consumer Plaintiffs and the Alabama Consumer Class have suffered injury-in-fact and/or actual damage.

280.   Pursuant to Ala. Code § 8-19-10, Alabama Consumer Plaintiffs and the Alabama Consumer Class seek monetary relief against New Chrysler measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama Sub-Class member.

281.   Alabama Consumer Plaintiffs and the Alabama Consumer Class also seek an order enjoining New Chrysler's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Ala. Code § 8-19-1.

282.     In accordance with Ala. Code § 8-19-10(e), Plaintiffs' counsel, on behalf of Alabama Consumer Plaintiffs and the Alabama Consumer Class, served New Chrysler with notice of their alleged violations of the Alabama DTPA relating to the Class Vehicles and/or the Defective Airbags installed in them purchased by Plaintiffs and the Alabama Sub-Class and demanded that New Chrysler correct or agree to correct the actions described therein.  As New Chrysler has failed to do so, Plaintiffs seek compensatory and monetary damages to which Plaintiffs and Class Members are entitled.

### B.     Claims Brought on Behalf of the Arizona Consumer Class

### COUNT 8

**Violation of the Arizona Consumer Fraud Act,
Ariz. Rev. Stat. § 44-1521**

283.     This claim is brought by the Arizona Consumer Plaintiffs on behalf of themselves and the Arizona Consumer Class against New Chrysler.

284.     The Arizona Consumer Plaintiffs, the Arizona Consumer Class members, and New Chrysler are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

285.     The Class Vehicles and/or the Defective Airbags installed in them are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

286.     The Arizona CFA provides that:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

Ariz.Rev. Stat. § 44-1522(A).

- 91 -

287.    In the course of its business, New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

288.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or misrepresentations or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

289.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

290.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Arizona CFA.  New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to violently explode and/or expel vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

291.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect

discussed above.  New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

292.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Arizona Consumer Plaintiffs and the Arizona Consumer Class members, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

293.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Arizona Consumer Plaintiffs and the Arizona Consumer Class.

294.    New Chrysler knew or should have known that its conduct violated the Arizona CFA.

295.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as safe and reliable, despite its knowledge of the Inflator Defect or its failure to reasonably investigate it.

296.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences and allowed unsuspecting new

and used car purchasers to continue to buy/lease the Class Vehicles and to continue driving highly dangerous vehicles.

297.    New Chrysler owed the Arizona Consumer Plaintiffs and the Arizona Consumer Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from the Arizona Consumer Plaintiffs and the Arizona Consumer Class; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Arizona Consumer Plaintiffs and the Arizona Consumer Class that contradicted these representations.

298.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

299.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Arizona Consumer Plaintiffs and the Arizona Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals the Inflator Defect rather than promptly remedies them.

300.     The Arizona Consumer Plaintiffs and the Arizona Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and its failure to disclose material information.   Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the Arizona Consumer Plaintiffs and the Arizona Consumer Class members either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.   The Arizona Consumer Plaintiffs and the Arizona Consumer Class did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

301.     New Chrysler's violations present a continuing risk to the Arizona Consumer Plaintiffs and the Arizona Consumer Class, as well as to the general public.   New Chrysler's unlawful acts and practices complained of herein affect the public interest.   The recalls and repairs instituted by New Chrysler have not been adequate.

302.     As a direct and proximate result of New Chrysler's violations of the Arizona CFA, the Arizona Consumer Plaintiffs and the Arizona Consumer Class have suffered injury-in-fact and/or actual damage.

303.     The Arizona Consumer Plaintiffs and the Arizona Consumer Class seek monetary relief against New Chrysler in an amount to be determined at trial.   The Arizona Consumer Plaintiffs and the Arizona Consumer Class also seek punitive damages because New Chrysler engaged in aggravated and outrageous conduct with an evil mind.

304.     The Arizona Consumer Plaintiffs and the Arizona Consumer Class also seek an order enjoining New Chrysler's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

C.    **Claims Brought on Behalf of the Arkansas Class**

**COUNT 9**

**Violations of the Deceptive Trade Practice Act**
**Ark. Code Ann. § 4-88-101**

305.    This claim is brought by the Arkansas Consumer Plaintiffs on behalf of themselves and the Arkansas Consumer Class against New Chrysler.

306.    New Chrysler, the Arkansas Consumer Plaintiffs, and the Arkansas Consumer Class members are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

307.    The Class Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

308.    The Arkansas DTPA, Ark. Code Ann. § 4-88-107, prohibits "deceptive and unconscionable trade practices" including:

    a.    "Knowingly making a false representation as to the characteristics, . . . uses, benefits, . . . or certification of goods . . . or as to whether goods are . . . of a particular standard, quality, grade, style, or model;"

    b.    "Advertising the goods or services with the intent not to sell them as advertised;" and

    c.    "Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." .

309.    By misrepresenting the Class Vehicles and/or the Defective Airbags as safe and by failing to disclose and actively concealing the Inflator Defect, New Chrysler engaged in deceptive business practices prohibited by the Arkansas DTPA, including:

a.     Knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles and/or the Defective Airbags;

b.     Knowingly making a false representation as to whether the Class Vehicles and/or the Defective Airbags are of a particular standard, quality, or grade;

c.     Advertising the Class Vehicles and/or the Defective Airbags with the intent not to sell them as advertised; and

d.     Engaging in unconscionable, false, or deceptive acts or practices in connection with the sale of the Class Vehicles and/or the Defective Airbags.

310.   New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

311.   By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Arkansas DTPA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

312.   In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect

discussed above.  New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

313.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class members, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

314.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class members.

315.    New Chrysler knew or should have known that its conduct violated the Arkansas DTPA.

316.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as safe and reliable, despite its knowledge of the Inflator Defect or their failure to reasonably investigate it.

317.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences and allowed unsuspecting new

and used car purchasers to continue to buy/lease the Class Vehicles and to continue driving highly dangerous vehicles.

318.   New Chrysler owed the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class members a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class that contradicted these representations.

319.   Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

320.   New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals the Inflator Defect rather than promptly remedies them.

321.    The Arkansas Consumer Plaintiffs and the Arkansas Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and its failure to disclose material information.   Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them and New Chrysler's complete disregard for safety, the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class members either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.   The Arkansas Consumer Plaintiffs and the Arkansas Consumer Class members did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

322.    New Chrysler's violations present a continuing risk to the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class, as well as to the general public.   New Chrysler's unlawful acts and practices complained of herein affect the public interest.   The recalls and repairs instituted by New Chrysler have not been adequate.

323.    As a direct and proximate result of New Chrysler's violations of the Arkansas DTPA, the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class have suffered injury-in-fact and/or actual damage.

324.    Pursuant to Ark. Code Ann. § 4-88-113(f), the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class seek monetary relief against New Chrysler in an amount to be determined at trial.

325.    The Arkansas Consumer Plaintiffs and the Arkansas Consumer Class also seek an order enjoining New Chrysler's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas CPA.

**COUNT 10**

**Breach of the Implied Warranty of Merchantability**
**Ark. Code Ann. §§ 4-2-314 and 4-2A-212**

326.     In the event the Court declines to certify a Nationwide Consumer Class under the

Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Arkansas Consumer

Class against New Chrysler.

327.     New Chrysler is and was at all relevant times a "merchant" with respect to motor

vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and a "seller" of motor vehicles under

§ 4-2-103(1)(d).

328.     With respect to leases, New Chrysler is and was at all relevant times a "lessor" of

motor vehicles under Ark. Code § 4-2A-103(1)(p).

329.     The Class Vehicles are and were at all relevant times "goods" within the meaning

of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

330.     A warranty that the Class Vehicles were in merchantable condition and fit for the

ordinary purpose for which vehicles are used is implied by law pursuant to Ark. Code §§ 4-2-314

and 4-2A-212.

331.     The Class Vehicles and/or the Defective Airbags installed in them, when sold and

at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which

cars and airbags are used. Specifically, they are inherently defective and dangerous in that the

Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a

threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously

injure occupants through contact with the airbag, instead of protecting vehicle occupants from

bodily injury during accidents.

332.    New Chrysler was provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by individual letters and communications sent by the consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

333.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Arkansas Consumer Plaintiffs and the Arkansas Consumer Class have been damaged in an amount to be proven at trial.

**D.**    **Claims Brought on Behalf of the California Consumer Class**

**COUNT 11**

**Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (California Lemon Law)**

334.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the California Consumer Class against New Chrysler.

335.    The California Consumer Plaintiffs bring this claim on behalf of themselves and the members of the California Consumer Class under the laws of California against New Chrysler with regard to Defective Vehicles that New Chrysler manufactured or sold.

336.    The California Consumer Plaintiffs and members of the California Consumer Class are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

337.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

338.    New Chrysler is a "manufacturer" of the Class Vehicles within the meaning Cal. Civ. Code § 1791(j).

339.     New Chrysler impliedly warranted to the California Consumer Plaintiffs and the California Consumer Class that their Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

340.     Cal. Civ. Code § 1791.1(a) states:

341.     "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)     Pass without objection in the trade under the contract description.

(2)     Are fit for the ordinary purposes for which such goods are used.

(3)     Are adequately contained, packaged, and labeled.

(4)     Conform to the promises or affirmations of fact made on the container or label.

342.     The Class Vehicles would not pass without objection in the automotive trade because they were equipped with Defective Airbags, which among other things, have a tendency to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants, instead of protecting vehicle occupants from bodily injury during accidents.

343.     Because of the Inflator Defect, the Class Vehicles are not safe to drive, and thus not fit for ordinary purposes.

344.     The Class Vehicles are not adequately labeled because the labeling fails to disclose the Inflator Defect.  New Chrysler failed to warn about that dangerous Inflator Defect in the Class Vehicles.

345. New Chrysler breached the implied warranty of merchantability by manufacturing and selling Class Vehicles equipped with Defective Airbags containing the Inflator Defect which among other things, causes the airbags to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag. The Defective Airbags have deprived the California Consumer Plaintiffs and the California Consumer Class of the benefit of their bargain, and have caused the Class Vehicles to depreciate in value.

346. Notice of breach is not required because the California Consumer Plaintiffs and the California Consumer Class did not purchase their automobiles directly from New Chrysler. Furthermore, on information and belief, New Chrysler had notice of these issues by its knowledge of the issues, through customer complaints, numerous complaints filed against it and/or others, internal investigations, and individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

347. As a direct and proximate result of New Chrysler's breach of its duties under California's Lemon Law, the California Consumer Plaintiffs and the California Consumer Class received goods whose dangerous condition substantially impairs their value. The California Consumer Plaintiffs and the California Consumer Class have been damaged by the diminished value, malfunctioning, and non-use of their Class Vehicles.

348. Under Cal. Civ. Code §§ 1791.1(d) and 1794, the California Consumer Plaintiffs and the California Consumer Class are entitled to damages and other legal and equitable relief

- 104 -

including, at their election, the purchase price of their Class Vehicles or the overpayment or diminution in value of their Class Vehicles.

349.    Under Cal. Civ. Code § 1794, the California Consumer Plaintiffs and the California Consumer Class are entitled to costs and attorneys' fees.

## COUNT 12

### Violation of the California Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200

350.    California Consumer Plaintiffs bring this claim on behalf of themselves and the members of the California Consumer Class against New Chrysler.

351.    Cal. Bus. & Prof. Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising. . . ."   New Chrysler engaged in conduct that violated each of this statute's three prongs.

352.    New Chrysler committed an unlawful business act or practice in violation of § 17200 by its violations of the Consumer Legal Remedies Act and Cal. Civ. Code § 1750 as set forth below, by the acts and practices set forth in this Complaint.

353.    New Chrysler also violated the unlawful prong because it has engaged in violations of the TREAD Act, 49 U.S.C. § 30101, and its accompanying regulations by failing to promptly notify vehicle owners, purchases, dealers, and NHTSA of the defective Class Vehicles and/or the Defective Airbags installed in them and failing to remedy the Inflator Defect.

354.    Federal Motor Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's responsibility to notify the NHTSA of a motor vehicle defect within five days of determining that a defect in a vehicle has been determined to be safety-related.  *See* 49 C.F.R. § 573.6.

355.    New Chrysler violated the reporting requirements of FMVSS 573 by failing to report the Inflator Defect or any of the other dangers or risks posed by the Defective Airbags within five days of determining the defect existed, and failing to recall all Class Vehicles.

356.    New Chrysler violated the common-law claim of negligent failure to recall, because New Chrysler knew or should have known that the Class Vehicles and/or the Defective Airbags installed in them were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner; New Chrysler became aware of the attendant risks after they were sold; New Chrysler continued to gain information further corroborating the Inflator Defect and dangers posed by it; and New Chrysler failed to adequately recall the defective vehicles in a timely manner, which failure was a substantial factor in causing harm to the California Consumer Plaintiffs and the California Consumer Class, including diminished value and out-of-pocket costs.

357.    New Chrysler committed unfair business acts and practices in violation of § 17200 when it concealed the existence and nature of the Inflator Defect and the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.  New Chrysler represented that the Class Vehicles and/or the Defective Airbags installed in them were reliable and safe when, in fact, they are not.

358.    New Chrysler also violated the unfairness prong of § 17200 by failing to properly administer the numerous recalls of Class Vehicles with the Defective Airbags installed in them. As alleged above, the recalls have proceeded unreasonably slowly in light of the safety-related nature of the Inflator Defect and have been plagued with shortages of replacement parts, as well as a paucity of loaner vehicles available for the California Consumer Class whose vehicles are in the process of being repaired.

359.   New Chrysler violated the fraudulent prong of § 17200 because the misrepresentations and omissions regarding the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them as set forth in this Complaint were likely to deceive a reasonable consumer and the information would be material to a reasonable consumer.

360.   New Chrysler committed fraudulent business acts and practices in violation of § 17200 when it concealed the existence and nature of the Inflator Defect and the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, while representing in its marketing, advertising, and other broadly disseminated representations that the Class Vehicles and/or the Defective Airbags installed in them were reliable and safe when, in fact, they are not. New Chrysler's active concealment of the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them are likely to mislead the public with regard to their true defective nature.

361.   New Chrysler violated the unfair prong of § 17200 because of the acts and practices set forth in the Complaint, including the manufacture and sale of Class Vehicles and/or the Defective Airbags installed in them and New Chrysler's failure to adequately investigate, disclose, and remedy, offend established public policy, and because of the harm they cause to consumers greatly outweighs any benefits associated with those practices.  New Chrysler's conduct has also impaired competition within the automotive vehicles market and has prevented the California Consumer Plaintiffs and the California Consumer Class from making fully informed decisions about whether to purchase or lease Class Vehicles and/or the Defective Airbags installed in them and/or the price to be paid to purchase or lease them.

362.   The California Consumer Plaintiffs and the California Consumer Class have suffered injuries in fact, including the loss of money or property, as a result of New Chrysler's

unfair, unlawful, and/or deceptive practices.  As set forth above, each member of the California Consumer Class, in purchasing or leasing Class Vehicles with the Defective Airbags installed in them, relied on the misrepresentations and/or omissions of New Chrysler with respect of the safety and reliability of the vehicles.  Had the California Consumer Plaintiffs and the California Consumer Class known the truth, they would not have purchased or leased their vehicles and/or paid as much for them.

363.    All of the wrongful conduct alleged herein occurred and continues to occur in the conduct of New Chrysler's businesses.  New Chrysler's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated.

364.    As a direct and proximate result of New Chrysler's unfair and deceptive practices, the California Consumer Plaintiffs and the California Consumer Class have suffered and will continue to suffer actual damages.

365.    The California Consumer Plaintiffs and the California Consumer Class request that this Court enter such orders or judgments as may be necessary to enjoin New Chrysler from continuing its unfair, unlawful, and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203; and for such other relief set forth below.

## COUNT 13

### Violation of the California False Advertising Law,
### Cal. Bus. & Prof. Code § 17500

366.    The California Consumer Plaintiffs bring this claim against New Chrysler on behalf of themselves and the California Consumer Class.

367.    California Bus. & Prof. Code § 17500 states:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in

any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

368.   New Chrysler caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading and which were known or which by the exercise of reasonable care should have been known to New Chrysler to be untrue and misleading to consumers, including the California Consumer Plaintiffs and the California Consumer Class.

369.   New Chrysler violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles and/or the Defective Airbags installed in them as set forth in this Complaint were material and likely to deceive a reasonable consumer.

370.   The California Consumer Plaintiffs and the California Consumer Class have suffered an injury in fact, including the loss of money or property, as a result of New Chrysler's unfair, unlawful, and/or deceptive practices.   In purchasing or leasing their Class Vehicles, California Consumer Plaintiffs and the California Consumer Class relied on the misrepresentations and/or omissions of New Chrysler with respect to the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them.   New Chrysler's representations turned out not to be true because the Class Vehicles and/or the Defective Airbags installed in them are inherently defective and dangerous in that the Defective Airbags violently explode and/or expel vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents.   Had the California Consumer Plaintiffs and the California Consumer Class known the truth, they would not have

purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, the California Consumer Plaintiffs and the California Consumer Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

371.    All of the wrongful conduct alleged herein occurred and continues to occur in the conduct of New Chrysler's business. New Chrysler's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

372.    The California Consumer Plaintiffs, individually and on behalf of the California Consumer Class members, request that this Court enter such orders or judgments as may be necessary to enjoin New Chrysler from continuing its unfair, unlawful, and/or deceptive practices and to restore to the California Consumer Plaintiffs and the California Consumer Class any money New Chrysler acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT 14

### Violation of the Consumer Legal Remedies Act
### Cal. Civ. Code § 1750

373.    The California Consumer Plaintiffs bring this claim on behalf of themselves and the members of the California Consumer Class under the laws of California against New Chrysler.

374.    The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

375.    The California Consumer Plaintiffs, the California Consumer Class members, and New Chrysler are "persons" as defined in Cal. Civ. Code § 1761(c).

376.    The California Consumer Plaintiffs and the California Consumer Class members are "consumers" as defined in Cal. Civ. Code § 1761(d).

377. California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

378. New Chrysler has engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, as described above and below, by among other things, representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not.

379. In the course of its business, New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

380. New Chrysler also engaged in unlawful trade practices by representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and omitting material facts in describing them. New Chrysler is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA. Defendant parent companies are also liable for their subsidiaries' violation of the CLRA,

because the subsidiaries act and acted as the parent companies' general agents in the United States for purposes of sales and marketing.

381.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

382.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the CLRA.  New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

383.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the California Consumer Plaintiffs and the California Consumer Class.

384.    New Chrysler knew or should have known that its conduct violated the CLRA.

385.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary

have included selling and marketing the Class Vehicles as "safe" and "reliable," despite its knowledge of the Inflator Defect or its failure to reasonably investigate it.

386.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles and to continue driving highly dangerous vehicles.

387.    New Chrysler owed the California Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

        a.      Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        b.      Intentionally concealed the foregoing from the California Consumer Plaintiffs and the California Consumer Class; and/or

Made

        c.      Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the California Consumer Plaintiffs and the California Consumer Class that contradicted these representations.

388.    The Class Vehicles and/or the Defective Airbags installed in them posed and/or pose an unreasonable risk of death or serious bodily injury to the California Consumer Plaintiffs and the California Consumer Class, passengers, other motorists, pedestrians, and the public at large, because the Defective Airbags are inherently defective and dangerous in that the Defective Airbags aggressively deploy and/or violently explode and spray vehicle occupants with lethal

amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents.

389.    New Chrysler's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the California Consumer Plaintiffs and the California Consumer Class, about the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the California Consumer Plaintiffs and the California Consumer Class.

390.    New Chrysler has also violated the CLRA by violating the TREAD Act, 49 U.S.C. § 30101, and its accompanying regulations by failing to promptly notify vehicle owners, purchases, dealers, and NHTSA of the defective Class Vehicles and/or the Defective Airbags installed in them and failing to remedy the Inflator Defect.

391.    Under the TREAD Act and its regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect.  49 U.S.C. § 30118(c)(1) & (2).

392.    Under the TREAD Act, if it is determined that the vehicle is defective, the manufacturer must promptly notify vehicle owners, purchasers, and dealers of the defect and remedy the defect.  49 U.S.C. § 30118(b)(2)(A) & (B).

393.    Under the TREAD Act, manufacturers must also file a report with NHTSA within five working days of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist."  49 C.F.R. § 573.6(a) & (b).  At a minimum, the report to NHTSA must include:   the manufacturer's name; the identification of the vehicles or equipment

- 114 -

containing the defect, including the make, line, model year, and years of manufacturing; a description of the basis for determining the recall population; how those vehicles differ from similar vehicles that the manufacturer excluded from the recall; and a description of the defect. 49 C.F.R. § 276.6(b), (c)(1), (c)(2), & (c)(5).

394.   The manufacturer must also promptly inform NHTSA regarding:  the total number of vehicles or equipment potentially containing the defect; the percentage of vehicles estimated to contain the defect; a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with its dates of receipt; and a description of the plan to remedy the defect.  49 C.F.R. § 276.6(b) & (c).

395.   The TREAD Act provides that any manufacturer who violates 49 U.S.C. § 30166 must pay a civil penalty to the U.S. Government.  The current penalty "is $7,000 per violation per day," and the maximum penalty "for a related series of daily violations is $17,350,000."  49 C.F.R. § 578.6(c).

396.   New Chrysler engaged in deceptive business practices prohibited by the CLRA and Cal. Civ. Code § 1750, by failing to disclose and by actively concealing dangers and risks posed by the Defective Airbags, by selling vehicles while violating the TREAD Act, and by other conduct as alleged herein.

397.   New Chrysler knew that the Class Vehicles and/or the Defective Airbags installed in them contained the Inflator Defect that could cause the airbags to violently explode and/or expel vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, but New Chrysler failed for many years to inform NHTSA of this defect.  Consequently, the public, including the California Consumer

Plaintiffs and the California Consumer Class, received no notice of the Inflator Defect.  New Chrysler failed to inform NHTSA or warn the California Consumer Plaintiffs, the California Consumer Class, and the public about these inherent dangers, despite having a duty to do so.

398.  New Chrysler's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the California Consumer Plaintiffs and the California Consumer Class members, about the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them.

399.  Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

400.  New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the California Consumer Plaintiffs and the California Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

401.  The California Consumer Plaintiffs and California Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and its failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them and New Chrysler's complete disregard for safety, the California Consumer Plaintiffs and California Consumer Class members either would not have paid as much for their vehicles as they did or would not have purchased or leased

them at all.  The California Consumer Plaintiffs and the California Consumer Class members did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

402.  The California Consumer Plaintiffs and the California Consumer Class risk irreparable injury as a result of New Chrysler's acts and omissions in violation of the CLRA, and these violations present a continuing risk to the California Consumer Plaintiffs and the California Consumer Class, as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.

403.  The recalls and repairs instituted by New Chrysler have not been adequate.  The recall is not an effective remedy and is not offered for all Class Vehicles and other vehicles with Defective Airbags susceptible to the malfunctions described herein.  Moreover, New Chrysler's failure to comply with TREAD Act disclosure obligations continues to pose a grave risk to the California Consumer Plaintiffs and the California Consumer Class.

404.  As a direct and proximate result of New Chrysler's violations of the CLRA, the California Consumer Plaintiffs and the California Consumer Class members have suffered injury-in-fact and/or actual damage.  The California Consumer Plaintiffs and the California Consumer Class currently own or lease or within the class period have owned or leased Class Vehicles with Defective Airbags installed in them that are defective and inherently unsafe.  The California Consumer Plaintiffs and the California Consumer Class risk irreparable injury as a result of New Chrysler's acts and omissions in violation of the CLRA, and these violations present a continuing risk to the California Consumer Plaintiffs and the California Consumer Class, as well as to the general public.

405.  In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of the California Consumer Plaintiffs, served New Chrysler with notice of its alleged violations of

California Civil Code § 1770(a) relating to the Class Vehicles and/or the Defective Airbags installed in them purchased by the California Consumer Plaintiffs and the California Consumer Class and demanded that New Chrysler correct or agree to correct the actions described therein. New Chrysler has failed to do so.  Plaintiffs therefore seek compensatory and monetary damages to which the California Consumer Plaintiffs and Class Members are entitled.

<u>**COUNT 15**</u>

**Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (California Lemon Law)**

406.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the California Consumer Class against New Chrysler.

407.    The California Consumer Plaintiffs bring this claim on behalf of themselves and the members of the California Consumer Class under the laws of California against New Chrysler with regard to Defective Vehicles that New Chrysler manufactured or sold.

408.    The California Consumer Plaintiffs and members of the Class are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

409.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

410.    New Chrysler is a "manufacturer" of the Class Vehicles within the meaning Cal. Civ. Code § 1791(j).

411.    New Chrysler impliedly warranted to the California Consumer Plaintiffs and the California Consumer Class that their Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

412.    Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

(2)    Are fit for the ordinary purposes for which such goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

413.    The Class Vehicles would not pass without objection in the automotive trade because they were equipped with Defective Airbags, which among other things, have a tendency to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants, instead of protecting vehicle occupants from bodily injury during accidents.

414.    Because of the Inflator Defect, the Class Vehicles are not safe to drive, and thus not fit for ordinary purposes.

415.    The Class Vehicles are not adequately labeled because the labeling fails to disclose the Inflator Defect.  New Chrysler failed to warn about that dangerous Inflator Defect in the Class Vehicles.

416.    New Chrysler breached the implied warranty of merchantability by manufacturing and selling Class Vehicles equipped with Defective Airbags containing the Inflator Defect which among other things, causes the airbags to: (a) rupture and expel metal shrapnel that tears through

the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag.   The Defective Airbags have deprived Plaintiffs and the Class of the benefit of their bargain and have caused the Class Vehicles to depreciate in value.

417.   Notice of breach is not required because the California Consumer Plaintiffs and the California Consumer Class did not purchase their automobiles directly from New Chrysler. Further, on information and belief, New Chrysler had notice of these issues through its direct knowledge of the issues, customer complaints,   numerous complaints filed against it and/or others,  internal investigations, and  individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

418.   As a direct and proximate result of New Chrysler's breach of its duties under California's Lemon Law, the California Consumer Plaintiffs and the California Consumer Class received goods whose dangerous condition substantially impairs their value. The California Consumer Plaintiffs and the California Consumer Class have been damaged by the diminished value, malfunctioning, and non-use of their Class Vehicles.

419.   Under Cal. Civ. Code §§ 1791.1(d) and 1794, the California Consumer Plaintiffs and the California Consumer Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

420.   Under Cal. Civ. Code § 1794, Plaintiffs and the Class are entitled to costs and attorneys' fees.

E.      **Claims Brought on Behalf of the Florida Consumer Class**

## COUNT 16

**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201**

421.    This claim is brought only on behalf of the Florida Consumer Class against New Chrysler.

422.    Plaintiffs are "consumers" within the meaning of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

423.    New Chrysler is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

424.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).  New Chrysler participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

425.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality and by claiming to be a reputable manufacturer that values safety.

426.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or misrepresentations or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

- 121 -

427.     New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

428.     Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

429.     By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the FDUTPA.  New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

430.     In the course of New Chrysler's business it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that

the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality and by claiming to be a reputable manufacturer that values safety.

431.   New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Florida Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

432.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Florida Consumer Plaintiffs and the Florida Consumer Class.

433.   New Chrysler knew or should have known that its conduct violated the FDUTPA.

434.   As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as safe and reliable, despite its knowledge of the Inflator Defect or their failure to reasonably investigate it.

435.   To protect profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles and continue to drive highly dangerous vehicles.

436.   New Chrysler owed the Florida Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from the Florida Consumer Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Florida Consumer Plaintiffs that contradicted these representations.

437.   Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

438.   New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Florida Consumer Plaintiffs and the Florida Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

439.   The Florida Consumer Plaintiffs and the Florida Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and its failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class

Vehicles and/or the Defective Airbags installed in them and New Chrysler's complete disregard for safety, the Florida Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all. The Florida Consumer Plaintiffs did not receive the benefit of their bargain as a result of Chrysler's misconduct.

440.    The Florida Consumer Plaintiffs and the Florida Consumer Class risk irreparable injury as a result of New Chrysler's acts and omissions in violation of the FDUTPA, and these violations present a continuing risk to the Florida Consumer Plaintiffs, the Florida Consumer Class, as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.

441.    As a direct and proximate result of New Chrysler's violations of the FDUTPA, the Florida Consumer Plaintiffs and the Florida Consumer Class have suffered injury-in-fact and/or actual damage.

442.    The Florida Consumer Plaintiffs and the Florida Consumer Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

443.    The Florida Consumer Plaintiffs also seek an order enjoining New Chrysler's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**F.    Claims Brought on Behalf of the Georgia Consumer Class**

**COUNT 17**

**Violation of the Georgia Fair Business Practices Act**
**Ga. Code Ann. § 10-1-390**

444.    This claim is brought by the Georgia Consumer Plaintiffs individually and on behalf of the Georgia Consumer Class against New Chrysler.

- 125 -

445.    Georgia Consumer Plaintiffs and the Georgia Consumer Class members are "consumers" within the meaning of Ga. Code Ann. § 10-1-392(6).

446.    Georgia Consumer Plaintiffs, the Georgia Consumer Class members, and New Chrysler are "persons" within the meaning Ga. Code Ann. § 10-1-392(24).

447.    New Chrysler was and is engaged in "trade" and "commerce" within the meaning of Ga. Code Ann. § 10-1-392(28).

448.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code Ann. § 10-1-393(b).

449.    By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, New Chrysler engaged in unfair or deceptive practices prohibited by the Georgia FBPA, including: (1) representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; and (3) advertising them with the intent not to sell or lease them as advertised.  New Chrysler participated in unfair or deceptive acts or practices that violated the Georgia FBPA.

450.    In the course of its business, New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

451.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

452.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

453.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Georgia FBPA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

454.    In the course of New Chrysler's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator

Defect discussed above.  New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

455.   New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

456.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead Georgia Consumer Plaintiffs and the Georgia Consumer Class.

457.   New Chrysler knew or should have known that its conduct violated the Georgia FBPA.

458.   As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite its knowledge of the Inflator Defect or their failure to reasonably investigate it.

459.   To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting

new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

460.   New Chrysler owed Georgia Consumer Plaintiffs and the Georgia Consumer Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from Georgia Consumer Plaintiffs and the Georgia Consumer Class; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Georgia Consumer Plaintiffs and the Georgia Consumer Class that contradicted these representations.

461.   Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

462.   New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to Georgia Consumer Plaintiffs and the Georgia Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

463.    Georgia Consumer Plaintiffs and the Georgia Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, Georgia Consumer Plaintiffs and the Georgia Consumer Class would not have paid as much for their vehicles or would not have purchased or leased them at all.  Georgia Consumer Plaintiffs and the Georgia Consumer Class did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

464.    New Chrysler's violations present a continuing risk to Georgia Consumer Plaintiffs and the Georgia Consumer Class as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.  The recalls and repairs instituted by New Chrysler have not been adequate.

465.    As a direct and proximate result of New Chrysler's violations of the Georgia FBPA, Georgia Consumer Plaintiffs and the Georgia Consumer Class have suffered injury-in-fact and/or actual damage.

466.    Georgia Consumer Plaintiffs and the Georgia Consumer Class are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code Ann. § 10-1-399(a).

467.    Georgia Consumer Plaintiffs and the Georgia Consumer Class also seek an order enjoining New Chrysler's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code Ann. § 10-1-399.

468.    In accordance with Ga. Code Ann. § 10-1-399(b), Plaintiffs' counsel, on behalf of Plaintiffs, served New Chrysler with notice of their alleged violations of the Georgia FBPA

relating to the Class Vehicles and/or the Defective Airbags installed in them purchased by Plaintiffs and Class Members, and demanded that New Chrysler correct or agree to correct the actions described therein.   New Chrysler have failed to do so.   Plaintiffs therefore seek compensatory and monetary damages to which Plaintiffs and Class Members are entitled.

## COUNT 18

### Violation of the Georgia Uniform Deceptive Trade Practices Act
### Ga. Code Ann. § 10-1-370

469.   This claim is brought by the Georgia Consumer Plaintiffs individually and on behalf of the Georgia Consumer Class against New Chrysler.

470.   Georgia Consumer Plaintiffs, the Georgia Consumer Class members, and New Chrysler are "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. § 10-1-371(5).

471.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).  By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, New Chrysler engaged in deceptive trade practices prohibited by the Georgia UDTPA.

472.   In the course of its business, New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

473.   New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission

of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

474.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

475.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Georgia UDTPA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

476.    In the course of New Chrysler's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

477.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive

reasonable consumers, including Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

478.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead Georgia Consumer Plaintiffs and the Georgia Consumer Class.

479.   New Chrysler knew or should have known that its conduct violated the Georgia UDTPA.

480.   As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite its knowledge of the Inflator Defect or their failure to reasonably investigate it.

481.   To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

482.   New Chrysler owed Georgia Consumer Plaintiffs and the Georgia Consumer Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.     Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.      Intentionally concealed the foregoing from Georgia Consumer Plaintiffs and the Georgia Consumer Class; and/or

c.      Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Georgia Consumer Plaintiffs and the Georgia Consumer Class that contradicted these representations.

483.   Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

484.   New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to Georgia Consumer Plaintiffs and the Georgia Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

485.   Georgia Consumer Plaintiffs and the Georgia Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, Georgia Consumer Plaintiffs and the Georgia Consumer Class either would not have paid as much for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

486.   New Chrysler's violations present a continuing risk to Georgia Consumer Plaintiffs and the Georgia Consumer Class as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.  The recalls and repairs instituted by New Chrysler have not been adequate.

487.   As a direct and proximate result of New Chrysler's violations of the Georgia UDTPA, Georgia Consumer Plaintiffs and the Georgia Consumer Class have suffered injury-in-fact and/or actual damage.

488.   Georgia Consumer Plaintiffs and the Georgia Consumer Class seek an order enjoining New Chrysler's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code Ann. § 10-1-373.

**G.    Claims Brought on Behalf of the Illinois Consumer Class**

**COUNT 19**

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
815 ILCS § 505/1**

489.   This claim is brought on behalf of the Illinois Consumer Class against New Chrysler.

490.   New Chrysler and Takata are "persons" as that term is defined in 815 ILCS 505/1(c).

491.   Plaintiff and the Illinois Class Members are "consumers" as that term is defined in 815 ILCS 505/1(e).

492.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits:

[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise,

misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS § 505/2.

493.    New Chrysler participated in misleading, false, or deceptive acts that violated the Illinois CFDBPA, by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.  New Chrysler also engaged in unlawful trade practices by: (1) representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard and quality when they are not; (3) advertising them with the intent not to sell or lease them as advertised; and (4) otherwise engaging in conduct likely to deceive.

494.    New Chrysler's actions as set forth below and above occurred in the conduct of trade or commerce.

495.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality and by claiming to be a reputable manufacturer that values safety.

496.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or misrepresentations or concealment, suppression, or

omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

497.   New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

498.   Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them

499.   By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Illinois CFDBPA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

500.    In the course of New Chrysler's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality and by claiming to be a reputable manufacturer that values safety.

501.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Illinois Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands and the true value of the Class Vehicles.

502.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Illinois Consumer Plaintiffs and the Illinois Consumer Class.

503.    New Chrysler knew or should have known that its conduct violated the Illinois CFDBPA.

504.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

505.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the

Defective Airbags installed in them and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles and continue driving highly dangerous vehicles.

506.   New Chrysler owed the Illinois Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from the Illinois Consumer Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Illinois Consumer Plaintiffs that contradicted these representations.

507.   Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

508.   New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Illinois Consumer Plaintiffs and the Illinois Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

509.   The Illinois Consumer Plaintiffs and the Illinois Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.   Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the Illinois Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.   The Illinois Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

510.   New Chrysler's violations present a continuing risk to the Illinois Consumer Plaintiffs, to the Illinois Consumer Class, as well as to the general public.   New Chrysler's unlawful acts and practices complained of herein affect the public interest.

511.   As a direct and proximate result of New Chrysler's violations of the Illinois CFDBPA, the Illinois Consumer Plaintiffs and the Illinois Consumer Class have suffered injury-in-fact and/or actual damage.

512.   Pursuant to 815 ILCS § 505/10a(a), the Illinois Consumer Plaintiffs and the Illinois Consumer Class seek monetary relief against New Chrysler in the amount of actual damages, as well as punitive damages because New Chrysler acted with fraud and/or malice and/or were grossly negligent.

513.   The Illinois Consumer Plaintiffs also seek an order enjoining New Chrysler's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1.

**COUNT 20**

**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS § 510/1**

514.    This claim is brought on behalf of the Illinois Consumer Class against New Chrysler.

515.    Illinois's Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), 815 ILCS § 510/2, prohibits deceptive trade practices, including among others:

(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …; (7) represent[ing] that goods or services are of a particular standard, quality, or grade … if they are of another; … (9) advertis[ing] goods or services with intent not to sell them as advertised; … [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

516.    New Chrysler and Takata are "persons" as defined in 815 ILCS § 510/1(5).

517.    In the course of New Chrysler's business, Defendants failed to disclose and actively concealed the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them as described above.  Accordingly, Defendants engaged in deceptive trade practices as defined in 815 ILCS § 510/2, including representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are

not; advertising them with the intent not to sell or lease them as advertised; and otherwise engaging in conduct likely to deceive.

518.   New Chrysler intended for the Illinois Consumer Plaintiff and the Illinois Consumer Class to rely on aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged hereinabove.

519.   New Chrysler's actions as set forth below and above occurred in the conduct of trade or commerce.

520.   New Chrysler's conduct proximately caused injuries to the Illinois Consumer Plaintiff and the Illinois Consumer Class.

521.   The Illinois Consumer Plaintiff and the Illinois Consumer Class were injured as a result of New Chrysler's conduct in that the Illinois Consumer Plaintiff and the Illinois Consumer Class overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of New Chrysler's misrepresentations and omissions.

522.   The Illinois Consumer Plaintiffs seek an order enjoining New Chrysler's deceptive practices, attorneys' fees, and any other just and proper relief available under the Illinois UDTPA per 815 ILCS § 510/3.

### H.   Claims Brought on Behalf of the Indiana Consumer Class

### COUNT 21

**Violation of the Indiana Deceptive Consumer Sales Act**
**Ind. Code § 24-5-0.5-3**

523.   This claim is brought only on behalf of the Indiana Consumer Class against New Chrysler.

- 142 -

524.   New Chrysler and Takata are "persons" within the meaning of Ind. Code § 24-5-0.5-2(2) and "suppliers" within the meaning of Ind. Code § 24-5-.05-2a(3).

525.   The Indiana Class Plaintiffs' and Indiana Consumer Class members' purchases of the Class Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

526.   Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive trade practice," which includes representing:

> (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false.

527.   New Chrysler participated in misleading, false, or deceptive acts that violated the Indiana DCSA, by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.  New Chrysler also engaged in unlawful trade practices by: (1) representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard and quality when they are not; (3) advertising them with the intent not to sell or lease them as advertised; and (4) otherwise engaging in conduct likely to deceive.

528.   New Chrysler's actions as set forth below and above occurred in the conduct of trade or commerce.

529.   In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality and by claiming to be a reputable manufacturer that values safety.

530.   New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or misrepresentations or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

531.   New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel and the knowledge about the defective Takata airbags those books, records, and

personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

532.    Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them

533.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Indiana DCSA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

534.    In the course of New Chrysler's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

535.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to

mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Indiana Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

536.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Indiana Consumer Plaintiffs and the Indiana Consumer Class.

537.   New Chrysler knew or should have known that its conduct violated the Indiana DCSA.

538.   As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite knowledge of the Inflator Defect or their failure to reasonably investigate it.

539.   To protect profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles and to continue driving highly dangerous vehicles.

540.   New Chrysler owed the Indiana Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.     Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.     Intentionally concealed the foregoing from the Indiana Consumer Plaintiffs; and/or

c.     Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Indiana Consumer Plaintiffs that contradicted these representations.

541.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

542.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Indiana Consumer Plaintiffs and the Indiana Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

543.    The Indiana Consumer Plaintiffs and the Indiana Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them and New Chrysler's complete disregard for safety, the Indiana Consumer Plaintiffs either would not have paid as much for their vehicles

as they did or would not have purchased or leased them at all.  The Indiana Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

544.    New Chrysler's violations present a continuing risk to the Indiana Consumer Plaintiffs, to the Indiana Consumer Class, as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.

545.    As a direct and proximate result of New Chrysler's violations of the Indiana DCSA, the Indiana Consumer Plaintiffs and the Indiana Consumer Class have suffered injury-in-fact and/or actual damage.

546.    Pursuant to Ind. Code § 24-5-0.5-4, the Indiana Consumer Plaintiffs and the Indiana Consumer Class seek monetary relief against New Chrysler measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Indiana Consumer Plaintiff and each Indiana Consumer Class member, including treble damages up to $1,000 for New Chrysler's willfully deceptive acts.

547.    The Indiana Consumer Plaintiffs also seek punitive damages based on the outrageousness and recklessness of New Chrysler's conduct and New Chrysler's high net worth.

548.    In accordance with Ind.Code § 24-5-0.5-5(a), the Indiana Consumer Plaintiffs' counsel, on behalf of the Indiana Consumer Plaintiffs, served New Chrysler with notice of their "curable" alleged violations of the Indiana DCSA relating to the Class Vehicles and/or the Defective Airbags installed in them purchased by the Indiana Consumer Plaintiffs and the Indiana Consumer Class, and demanded that New Chrysler correct or agree to correct the actions described therein.  As New Chrysler failed to do so, the Indiana Consumer Plaintiffs seek compensatory and monetary damages to which the Indiana Consumer Plaintiffs and Indiana

Consumer Class members are entitled.  The Indiana Consumer Plaintiffs presently seek full relief for New Chrysler's "incurable" acts.

## COUNT 22

### Breach of the Implied Warranty of Merchantability
### Ind. Code § 26-1-2-314

549.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Indiana Consumer Class against New Chrysler.

550.    New Chrysler is and was at all relevant times a merchant with respect to motor vehicles and/or airbags within the meaning of Ind. Code § 26-1-2-104(1).

551.    A warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Ind. Code § 26-1-2-314.

552.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used.  Specifically, they are inherently defective and dangerous in that the Defective Airbags aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents.

553.    New Chrysler was provided notice of these issues by its knowledge of the issues, through customer complaints, numerous complaints filed against it and/or others,  internal investigations, and  individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

554.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Indiana Consumer Plaintiffs' and the Indiana Consumer Class have been damaged in an amount to be proven at trial.

**I.      Claims Brought on Behalf of the Maryland Consumer Class**

**COUNT 23**

**Breach of the Implied Warranty of Merchantability**
**Md. Code Ann., Com. Law §§ 2-315 and 2A-213**

555.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Maryland Consumer Class against New Chrysler.

556.    New Chrysler is and was at all relevant times a "merchant" with respect to motor vehicles under Md. Code Ann., Com. Law §§ 2-104(1) and 2A-103(3), and a "seller" of motor vehicles under § 2-103(1)(d).

557.    With respect to leases, New Chrysler is and was at all relevant times a "lessor" of motor vehicles under Md. Code Ann., Com. Law §2A-103(1)(p).

558.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Ann., Com. Law §§ 2-105(1) and §2A-103(1)(h).

559.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Ann., Com. Law §§ 2-315 and 2A-213.

560.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the

Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag, instead of protecting vehicle occupants from bodily injury during accidents.

561.    New Chrysler was provided notice of these issues through its direct knowledge of the issues, customer complaints, numerous complaints filed against it and/or others, internal investigations, and individual letters and communications sent by the consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Maryland Consumer Plaintiffs and the Maryland Consumer Class have been damaged in an amount to be proven at trial.

## COUNT 24

### Violation of the Maryland Consumer Protection Act,
### Md. Code Ann., Com. Law § 13-101

562.    This claim is brought by the Maryland Consumer Plaintiffs on behalf of themselves and the Maryland Consumer Class against New Chrysler.

563.    The Maryland Consumer Plaintiffs and the Maryland Consumer Class members are "consumers" within the meaning of Md. Code Ann., Com. Law § 13-101(c).

564.    The Maryland Consumer Plaintiffs, the Maryland Consumer Class members, and New Chrysler are "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(h).

565.    The Class Vehicles and/or the Defective Airbags installed in them are "consumer goods" within the meaning of Md. Code Ann., Com. Law § 13-101(d).

566.    The Maryland Consumer Protection Act ("Maryland CPA") declares several specific actions to be unlawful deceptive trade practices, including:

a. "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;"

b. "Representing that [c]onsumer goods . . . have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;"

c. "Representing that [c]onsumer goods . . . are of a particular standard, quality, grade, style, or model which they are not;"

d. "Failure to state a material fact if the failure deceives or tends to deceive;"

e. "Advertisement or offer of consumer goods . . . [w]ithout intent to sell, lease, or rent them as advertised or offered;" and

f. "Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with [t]he promotion or sale of any consumer goods . . . ."

Md. Code Ann., Com. Law § 13-301.

567. By misrepresenting the Class Vehicles and/or the Defective Airbags as safe and by failing to disclose and actively concealing the Inflator Defect, New Chrysler engaged in deceptive business practices prohibited by the Maryland CPA, including:

a. Making false or misleading oral or written statements about the Class Vehicles and/or the Defective Airbags which have the capacity, tendency, or effect of deceiving or misleading consumers;

b. Representing that the Class Vehicles and/or the Defective Airbags have characteristics, uses, and benefits which they do not have;

c.    Representing that the Class Vehicles and/or the Defective Airbags are of a particular standard, quality, and grade which they are not;

d.    Advertising the Class Vehicles and/or the Defective Airbags without intent to sell or lease them as advertised;

e.    Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts concerning the Class Vehicles and/or the Defective Airbags with the intent that a consumer rely on the same in connection with the promotion or sale the Class Vehicles and/or the Defective Airbags.

568.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

569.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Maryland CPA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

570.     In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above.  New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

571.     New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Maryland Consumer Plaintiffs and the Maryland Consumer Class members, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

572.     New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Maryland Consumer Plaintiffs and the Maryland Consumer Class members.

573.     New Chrysler knew or should have known that its conduct violated the Maryland CPA.

574.     As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as safe and reliable, despite its knowledge of the Inflator Defect or their failure to reasonably investigate it.

575.     To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles and to continue driving highly dangerous vehicles.

576.     New Chrysler owed the Maryland Consumer Plaintiffs and the Maryland Consumer Class members a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

        a.     Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        b.     Intentionally concealed the foregoing from the Maryland Consumer Plaintiffs and the Maryland Consumer Class; and/or

        c.     Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Maryland Consumer Plaintiffs and the Maryland Consumer Class that contradicted these representations.

577.     Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

578.     New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Maryland Consumer Plaintiffs and the Maryland Consumer Class.  A vehicle made by a reputable manufacturer of

safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals the Inflator Defect rather than promptly remedies them.

579.   The Maryland Consumer Plaintiffs and the Maryland Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and its failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them and New Chrysler's complete disregard for safety, the Maryland Consumer Plaintiffs and the Maryland Consumer Class members either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.  The Maryland Consumer Plaintiffs and the Maryland Consumer Class members did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

580.   New Chrysler's violations present a continuing risk to the Maryland Consumer Plaintiffs and the Maryland Consumer Class, as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.  The recalls and repairs instituted by New Chrysler have not been adequate.

581.   As a direct and proximate result of New Chrysler's violations of the Maryland CPA, the Maryland Consumer Plaintiffs and the Maryland Consumer Class have suffered injury-in-fact and/or actual damage.

582.   Pursuant to Md. Code Ann., Com. Law § 13-408, the Maryland Consumer Plaintiffs and the Maryland Consumer Class seek monetary relief against New Chrysler in an amount to be determined at trial.

583.     The Maryland Consumer Plaintiffs and the Maryland Consumer Class also seek an order enjoining New Chrysler's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**J.**     **Claims Brought on Behalf of the Massachusetts Consumer Class**

**COUNT 25**

**Deceptive Acts or Practices Prohibited by Massachusetts Law**
**Mass. Gen. Laws Ch. 93A, §1**

584.     This claim is brought only on behalf of the Massachusetts Consumer Class against New Chrysler.

585.     The Massachusetts Consumer Plaintiffs, the Massachusetts Consumer Class, and New Chrysler are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

586.     New Chrysler engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws 93A, § 1(b).

587.     Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ch. 93A, § 2.  New Chrysler participated in misleading, false, or deceptive acts that violated the Massachusetts Act. By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, New Chrysler engaged in deceptive business practices prohibited by the Massachusetts Act.

588.     In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality and by claiming to be a reputable manufacturer that values safety.

589.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or misrepresentations or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

590.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

591.    Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

592.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Massachusetts Act. New Chrysler deliberately withheld the information about the propensity of Defective Airbags to violently explode and/or expel lethal amounts of metal debris and shrapnel, instead of protecting

vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

593.    In the course of New Chrysler's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality and by claiming to be a reputable manufacturer that values safety.

594.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Massachusetts Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

595.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with intent to mislead the Massachusetts Consumer Plaintiffs and the Massachusetts Consumer Class.

596.    New Chrysler knew or should have known that its conduct violated the Massachusetts Act.

597.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

598.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles and to continue driving highly dangerous vehicles.

599.    New Chrysler owed the Massachusetts Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from the Massachusetts Consumer Plaintiffs; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Massachusetts Consumer Plaintiffs that contradicted these representations.

600.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

601.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Massachusetts Consumer Plaintiffs and the Massachusetts Consumer Class.  A vehicle made by a reputable

manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

602.    The Massachusetts Consumer Plaintiffs and the Massachusetts Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them and New Chrysler's complete disregard for safety, the Massachusetts Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.   The Massachusetts Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

603.    New Chrysler's violations present a continuing risk to the Massachusetts Consumer Plaintiffs, to the Massachusetts Consumer Class, as well as to the general public. New Chrysler's unlawful acts and practices complained of herein affect the public interest.

604.    As a direct and proximate result of New Chrysler's violations of the Massachusetts Act, the Massachusetts Consumer Plaintiffs and the Massachusetts Consumer Class have suffered injury-in-fact and/or actual damage.

605.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Consumer Plaintiffs and the Massachusetts Consumer Class seek monetary relief against New Chrysler measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts Consumer Plaintiff and each Massachusetts Consumer Class member. Because New Chrysler's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Massachusetts Consumer Plaintiff and each

Massachusetts Consumer Class member, up to three times actual damages, but no less than two times actual damages.

606.    The Massachusetts Consumer Plaintiffs also seek an order enjoining New Chrysler's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

607.    On November 14, 2017, the Massachusetts Consumer Plaintiffs' counsel, on behalf of the Massachusetts Consumer Plaintiffs, sent a letter to New Chrysler complying with Mass. Gen. Laws ch. 93A, § 9(3), providing New Chrysler with notice of their alleged violations of the Massachusetts Act relating to the Class Vehicles and/or the Defective Airbags installed in them purchased by the Massachusetts Consumer Plaintiffs and the Massachusetts Consumer Class, and demanding that New Chrysler correct or agree to correct the actions described therein. Because New Chrysler failed to remedy their unlawful conduct within the requisite time period, the Massachusetts Consumer Plaintiffs seek all damages and relief to which the Massachusetts Consumer Plaintiffs and the Massachusetts Consumer Class are entitled.

## COUNT 26

### Breach of the Implied Warranty of Merchantability
### Mass. Gen. Laws Ann. ch. 106, § 2-314

608.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Massachusetts Consumer Class against New Chrysler.

609.    New Chrysler is and was at all relevant times a merchant with respect to motor vehicles and/or airbags within the meaning of Mass. Gen. Laws Ann. ch. 106, § 2-104(1).

610.    A warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Mass. Gen. Laws Ann. ch. 106, § 2-314.

611.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used.  Specifically, they are inherently defective and dangerous in that the Defective Airbags aggressively deploy and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents.

612.    New Chrysler was provided notice of these issues through its direct knowledge of the issues, customer complaints, numerous complaints filed against it and/or others, internal investigations, and individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

613.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Massachusetts Consumer Plaintiffs and the Massachusetts Consumer Class have been damaged in an amount to be proven at trial.


**K.    Claims Brought on Behalf of the Michigan Consumer Class**

**COUNT 27**

**Violation of the Michigan Consumer Protection Act
Mich. Comp. Laws § 445.903**

614.    This claim is brought only on behalf of the Michigan Consumer Class against New Chrysler.

- 163 -

615.    The Michigan Consumer Plaintiffs and the Michigan Consumer Class are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

616.    At all relevant times hereto, Chrysler was a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws §§ 445.902(1)(d) and (g).

617.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." Mich. Comp. Laws § 445.903(1).   New Chrysler engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."   Mich. Comp. Laws § 445.903(1).   By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, New Chrysler participated in unfair, deceptive, and unconscionable acts that violated the Michigan CPA.

618.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New Chrysler also engaged in unlawful trade practices by employing deception,

deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

619.     New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

620.     Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

621.     By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Michigan CPA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags violently exploding and/or expelling vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

622.    In the course of New Chrysler's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

623.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Michigan Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

624.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with intent to mislead the Michigan Consumer Plaintiffs and the Michigan Consumer Class.

625.    New Chrysler, before and after the bankruptcy sale in 2009, knew or should have known that its conduct violated the Michigan CPA.

626.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

627.    To protect profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective

Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

628.   New Chrysler owed the Michigan Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from the Michigan Consumer Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Michigan Consumer Plaintiffs that contradicted these representations.

629.   Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Chrysler's conduct, they are now worth significantly less than they otherwise would be.

630.   New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Michigan Consumer Plaintiffs and the Michigan Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

631.     The Michigan Consumer Plaintiffs and the Michigan Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the Michigan Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.  The Michigan Consumer Plaintiffs did not receive the benefit of their bargain as a result of Chrysler's misconduct.

632.     New Chrysler's violations present a continuing risk to the Michigan Consumer Plaintiffs, the Michigan Consumer Class, as well as to the general public.  Chrysler's unlawful acts and practices complained of herein affect the public interest.

633.     As a direct and proximate result of New Chrysler's violations of the Michigan CPA, the Michigan Consumer Plaintiffs and the Michigan Consumer Class have suffered injury-in-fact and/or actual damage.

634.     The Michigan Consumer Plaintiffs seek injunctive relief to enjoin New Chrysler from continuing its unfair and deceptive acts; monetary relief against New Chrysler New Chrysler measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for the Michigan Consumer Plaintiffs and each Michigan Consumer Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

635.     The Michigan Consumer Plaintiffs also seek punitive damages against New Chrysler because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. New Chrysler intentionally and willfully misrepresented the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them, deceived the

Michigan Consumer Plaintiffs and the Michigan Consumer Class on life-or-death matters, and concealed material facts that only they knew—all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Class Vehicles and/or the Defective Airbags installed in them. New Chrysler's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT 28

### Breach of Implied Warranty of Merchantability
### Mich. Comp. Laws § 440.2314

636.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Michigan Consumer Class against New Chrysler.

637.    New Chrysler is and was at all relevant times a merchant with respect to motor vehicles and/or airbags within the meaning of Mich. Comp. Laws § 440.2314(1).

638.    A warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Mich. Comp. Laws § 440.2314.

639.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used.  Specifically, they are inherently defective and dangerous in that the Defective Airbags aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents.

640.    New Chrysler was provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal

investigations, and by individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

641.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Michigan Consumer Plaintiffs and the Michigan Consumer Class have been damaged in an amount to be proven at trial.

### L.    Claims Brought on Behalf of the Mississippi Consumer Class

### COUNT 29

**Breach of Implied Warranty of Merchantability**
**Miss. Code Ann. §§ 75-2-315, -212**

642.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Mississippi Consumer Class against New Chrysler.

643.    New Chrysler is and was at all relevant times a "merchant" with respect to motor vehicles under Miss. Code Ann. §§ 75-2-104(1) and 75-2A-103(3), and a "seller" of motor vehicles under § 75-2-103(1)(d).

644.    With respect to leases, New Chrysler is and was at all relevant times a "lessor" of motor vehicles under Miss. Code Ann. § 75-2A-103(1)(p).

645.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code Ann. §§ 75-2-105(1) and 75-2A-103(1)(h).

646.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Miss. Code Ann. §§ 75-2-315 and 75-2-212.

647.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which

cars and airbags are used. Specifically, they are inherently defective and dangerous in that the Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag, instead of protecting vehicle occupants from bodily injury during accidents.

648.    New Chrysler was provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by individual letters and communications sent by the consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

649.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Mississippi Consumer Plaintiffs and the Mississippi Consumer Class have been damaged in an amount to be proven at trial.

**M.    Claims Brought on Behalf of the Missouri Consumer Class**

**COUNT 30**

**Violation of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. § 407.010**

650.    This claim is brought only on behalf of the Missouri Consumer Class against New Chrysler.

651.    The Missouri Plaintiffs, the Missouri Consumer Class, and New Chrysler are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

652.    New Chrysler engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

653.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense,

misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

654.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

655.    By failing to disclose the Inflator Defect or facts about the Inflator Defect described herein known to them or that were available to New Chrysler upon reasonable inquiry, New Chrysler deprived consumers of all material facts about the safety and functionality of their vehicle.  By failing to release material facts about the Inflator Defect, New Chrysler curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers. 15 Mo. Code of Serv. Reg. § 60-9.110.

656.    Moreover, New Chrysler has otherwise engaged in activities with a tendency or capacity to deceive.  New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

657.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and

personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

658.    Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

659.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Missouri MPA. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

660.    In the course of New Chrysler's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

661.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to

- 173 -

mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Missouri Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

662.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Missouri Consumer Plaintiffs and the Missouri Counsumer Class, including without limitation by failing to disclose the Inflator Defect in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by New Chrysler about the safety or reliability of the Class Vehicles and/or the Defective Airbags installed in them. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to 15 Mo. Code of Serv. Reg. §60-9.090.

663.   Because New Chrysler knew or believed that their statements regarding safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them were not in accord with the facts and/or had no reasonable basis for such statements in light of their knowledge of the Inflator Defect, New Chrysler engaged in fraudulent misrepresentations pursuant to 15 Mo. Code of Serv. Reg.60-9.100.

664.   New Chrysler's conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers whose vehicles were inherently defective and dangerous in that the Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the

airbag, instead of protecting vehicle occupants from bodily injury during accidents.  Such acts are unfair practices in violation of 15 Mo. Code of Serv. Reg. 60-8.020.

665.   New Chrysler knew or should have known that its conduct violated the Missouri MPA.

666.   As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

667.   To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

668.   New Chrysler owed the Missouri Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from the Missouri Consumer Plaintiffs; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Missouri Consumer Plaintiffs that contradicted these representations.

669.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

670.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Missouri Consumer Plaintiffs and the Missouri Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

671.    The Missouri Consumer Plaintiffs and the Missouri Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the Missouri Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.  The Missouri Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

672.    New Chrysler's violations present a continuing risk to the Missouri Consumer Plaintiffs, to the Missouri Consumer Class, as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.

673.    As a direct and proximate result of New Chrysler's violations of the Missouri MPA, the Missouri Consumer Plaintiffs and the Missouri Consumer Class have suffered injury-in-fact and/or actual damage.

674.    New Chrysler is liable to the Missouri Consumer Plaintiffs and the Missouri Consumer Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining New Chrysler's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT 31

### Breach of the Implied Warranty of Merchantability
### Mo. Ann. Stat. § 400.2-314

675.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Missouri Consumer Class against New Chrysler.

676.    New Chrysler is and was at all relevant times a merchant with respect to motor vehicles and/or airbags within the meaning of Mo. Ann. Stat. § 400.2-314(1).

677.    A warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Mo. Ann. Stat. § 400.2-314.

678.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used.  Specifically, they are inherently defective and dangerous in that the Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously

- 177 -

injure occupants through contact with the airbag, instead of protecting vehicle occupants from bodily injury during accidents.

679.    New Chrysler was provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

680.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Missouri Consumer Plaintiffs and the Missouri Consumer Class have been damaged in an amount to be proven at trial.

### N.    Claims Brought on Behalf of the New Jersey Consumer Class

### COUNT 32

### Violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1

681.    This claim is brought by the New Jersey Consumer Plaintiffs individually and on behalf of the New Jersey Consumer Class against New Chrysler.

682.    New Jersey Consumer Plaintiffs, the New Jersey Consumer Class members, and New Chrysler each is or was a "person" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

683.    New Chrysler engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

684.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment,

suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. Ann. § 56:8-2.

685.    New Chrysler engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class members rely upon their acts, concealment, suppression or omissions.

686.    In the course of its business, New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

687.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

688.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

689.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the New Jersey CFA.

New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

690.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

691.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including New Jersey Consumer Plaintiffs and the New Jersey Consumer Class, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of the New Chrysler's brands, and the true value of the Class Vehicles.

692.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead New Jersey Consumer Plaintiffs and the New Jersey Consumer Class.

693.    New Chrysler knew or should have known that its conduct violated the New Jersey CFA.

694.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either

false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

695.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving these highly dangerous vehicles.

696.    New Chrysler owed New Jersey Consumer Plaintiffs and the New Jersey Consumer Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from New Jersey Consumer Plaintiffs and the New Jersey Consumer Class; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from New Jersey Consumer Plaintiffs and the New Jersey Consumer Class that contradicted these representations.

697.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly

diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

698.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to New Jersey Consumer Plaintiffs and the New Jersey Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals the Inflator Defect rather than promptly remedies them.

699.    New Jersey Consumer Plaintiffs and the New Jersey Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, New Jersey Consumer Plaintiffs and the New Jersey Consumer Class either would not have paid as much for their vehicles or would not have purchased or leased them at all.  New Jersey Consumer Plaintiffs and the New Jersey Consumer Class did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

700.    New Chrysler's violations present a continuing risk to New Jersey Consumer Plaintiffs and the New Jersey Consumer Class, as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.  The recalls and repairs instituted by New Chrysler have not been adequate.

701.    As a direct and proximate result of New Chrysler's violations of the New Jersey CFA, New Jersey Consumer Plaintiffs and the New Jersey Consumer Class have suffered injury-in-fact and/or actual damage.

702.    New Jersey Consumer Plaintiffs and the New Jersey Consumer Class are entitled to recover legal and/or equitable relief including an order enjoining New Chrysler's unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

## COUNT 33

### Breach of the New Jersey Implied Warranty of Merchantability, N.J. Stat. Ann. § 12a:2-314

703.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, New Jersey Consumer Plaintiffs bring this claim on behalf of themselves and the members of the New Jersey Consumer Class under the laws of New Jersey against New Chrysler.

704.    Each Defendant is a merchant with respect to motor vehicles and/or airbags.

705.    When New Jersey Consumer Plaintiffs and the New Jersey Consumer Class purchased or leased their Class Vehicles, the transaction contained an implied warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition.

706.    At the time of sale and all times thereafter, the Class Vehicles and/or the Defective Airbags installed in them were not merchantable and not fit for the ordinary purpose for which cars and airbags are used.  Specifically, the Class Vehicles are inherently defective in that they are equipped with Defective Airbags with the Inflator Defect which causes, among other things, the Defective Airbags to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag.

707.    On information and belief, New Chrysler had notice of the Inflator Defect by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or

others, by internal investigations, and by numerous individual letters and communications sent by consumers before or within a reasonable amount of time after Honda issued the first recalls and the allegations of the Inflator Defect became public.

708.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, New Jersey Consumer Plaintiffs and the New Jersey Consumer Class have been damaged in an amount to be proven at trial.

O.    **Claims Brought on Behalf of the New York Consumer Class**

**COUNT 34**

**Violation of the New York General Business Law,**
**N.Y. Gen. Bus. Law § 349**

709.    This claim is brought by the New York Consumer Plaintiffs individually and on behalf of the New York Consumer Class against New Chrysler.

710.    New York Consumer Plaintiffs and the New York Consumer Class members are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

711.    New Chrysler is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

712.    The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. New Chrysler's conduct directed toward consumers, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

713.    New Chrysler's actions as set forth above occurred in the conduct of trade or commerce.

714.    In the course of its business, New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

715.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

716.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

717.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the New York GBL. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

718.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed

above.  New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

719.   New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including New York Consumer Plaintiffs and the New York Consumer Class, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

720.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead New York Consumer Plaintiffs and the New York Consumer Class.

721.   New Chrysler knew or should have known that its conduct violated the New York GBL.

722.   As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

723.   To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting

new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

724.    New Chrysler owed New York Consumer Plaintiffs and the New York Consumer Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from New York Consumer Plaintiffs and the New York Consumer Class; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from New York Consumer Plaintiffs and the New York Consumer Class that contradicted these representations.

725.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

726.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to New York Consumer Plaintiffs and the New York Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

727.   New York Consumer Plaintiffs and the New York Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.   Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, New York Consumer Plaintiffs and the New York Consumer Class either would not have paid as much for their vehicles or would not have purchased or leased them at all.   New York Consumer Plaintiffs and the New York Consumer Class did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

728.   New Chrysler's violations present a continuing risk to New York Consumer Plaintiffs and the New York Consumer Class, as well as to the general public.   New Chrysler's unlawful acts and practices complained of herein affect the public interest.   The recalls and repairs instituted by New Chrysler have not been adequate.

729.   As a direct and proximate result of New Chrysler's violations of the New York GBL, New York Consumer Plaintiffs and the New York Consumer Class have suffered injury-in-fact and/or actual damage.

730.   New York Consumer Plaintiffs and the New York Consumer Class members seek punitive damages against New Chrysler because New Chrysler's conduct was egregious.   New Chrysler misrepresented the safety and reliability of millions of Class Vehicles and/or the Defective Airbags installed in them, concealed the Inflator Defect in millions of them, deceived New York Consumer Plaintiffs and the New York Consumer Class on life-or-death matters, and concealed material facts that only New Chrysler knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in millions of Class Vehicles and/or the

Defective Airbags installed in them.   New Chrysler's egregious conduct warrants punitive damages.

731.    Because New Chrysler's willful and knowing conduct caused injury to the New York Consumer Class, New York Consumer Plaintiffs and Class Members seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining New Chrysler's deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

## COUNT 35

### Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 350

732.    This claim is brought by the New York Consumer Plaintiffs individually and on behalf of the New York Consumer Class against New Chrysler.

733.    New Chrysler is engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350.

734.    N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

735.    New Chrysler caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to New Chrysler, to be untrue and misleading to consumers and the New York Consumer Class.

- 189 -

736.    New Chrysler violated § 350 because the misrepresentations and omissions regarding the Inflator Defect, and New Chrysler's failure to disclose and active concealing of the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, as set forth above, were material and likely to deceive a reasonable consumer.

737.    New York Consumer Class members have suffered an injury, including the loss of money or property, as a result of New Chrysler's false advertising.  In purchasing or leasing Class Vehicles with the Defective Airbags installed in them, New York Consumer Plaintiffs and the New York Consumer Class relied on the misrepresentations and/or omissions of New Chrysler with respect to the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them.  New Chrysler's representations were false and/or misleading because the concealed the Inflator Defect and safety issues seriously undermine the value of the Class Vehicles.  Had New York Consumer Plaintiffs and the New York Consumer Class known this, they would not have purchased or leased their vehicles and/or paid as much for them.

738.    Pursuant to N.Y. Gen. Bus. Law § 350 e, the New York Consumer Class seeks monetary relief against New Chrysler measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for New York Consumer Class member.  Because New Chrysler's conduct was committed willfully and knowingly, New York members are entitled to recover three times actual damages, up to $10,000, for each New York Class member.

739.    The New York Consumer Class also seeks an order enjoining New Chrysler's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law § 350.

## COUNT 36

### Breach of the Implied Warranty of Merchantability,
### N.Y. U.C.C. Law §§ 2-315, 2-A-213

740.    In the event the Court declines to certify a Nationwide Consumer Class under the

Magnuson-Moss Warranty Act, New York Consumer Plaintiffs bring this claim on behalf of

themselves and the members of the New York Consumer Class under the laws of New York

against New Chrysler.

741.    New Chrysler is and was at all relevant times a "merchant" with respect to motor

vehicles under N.Y. U.C.C. Law §§ 2-104(1) and 2-A-103(3), and a "seller" of motor vehicles

under § 2-103(1)(d).

742.    With respect to leases, New Chrysler is and was at all relevant times a "lessor" of

motor vehicles under N.Y. U.C.C. Law § 2-A-103(1)(p).

743.    The Class Vehicles are and were at all relevant times "goods" within the meaning

of N.Y. U.C.C. Law §§ 2-105(1) and 2-A-103(1)(h).

744.    A warranty that the Class Vehicles were in merchantable condition and fit for the

ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. U.C.C. Law §§

2-315 and 2-A-213.

745.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and

at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which

cars and airbags are used. Specifically, they are inherently defective and dangerous in that the

Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a

threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously

injure occupants through contact with the airbag, instead of protecting vehicle occupants from

bodily injury during accidents.

746.     New Chrysler were provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by numerous individual letters and communications sent by the consumers before or within a reasonable amount of time after the Inflator Defect became public.

747.     As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, New York Consumer Plaintiffs and the New York Consumer Class have been damaged in an amount to be proven at trial.

**P.     Claims Brought on Behalf of the North Carolina Consumer Class**

**COUNT 37**

**Violation of the North Carolina Unfair and Deceptive Trade Practices Act
N.C. Gen. Stat. § 75-1.1**

748.     This claim is brought on behalf of the North Carolina Consumer Class against New Chrysler.

749.     New Chrysler engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

750.     The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. Gen. Stat. § 75-1.1(a).  As alleged above and below, New Chrysler willfully committed unfair or deceptive acts or practices in violation of the North Carolina UDTPA.

751.     In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

- 192 -

752.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them

753.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

754.    Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

755.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the North Carolina UDTPA.  New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from

bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

756.    In the course of New Chrysler's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

757.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the North Carolina Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of Chrysler's brands, and the true value of the Class Vehicles.

758.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with intent to mislead the North Carolina Consumer Plaintiffs and the North Carolina Consumer Class.

759.    New Chrysler knew or should have known that its conduct violated the North Carolina UDTPA.

760.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

761.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

762.    New Chrysler owed the North Carolina Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.      Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.      Intentionally concealed the foregoing from the North Carolina Consumer Plaintiffs; and/or

c.      Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the North Carolina Consumer Plaintiffs that contradicted these representations.

763.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

764.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the North Carolina Consumer Plaintiffs and the North Carolina Consumer Class.  A vehicle made by a reputable

manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

765.    The North Carolina Consumer Plaintiffs and the North Carolina Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the North Carolina Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.  The North Carolina Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

766.    New Chrysler's violations present a continuing risk to the North Carolina Consumer Plaintiffs, the North Carolina Consumer Class, as well as to the general public.  New Chrysler's unlawful acts and practices complained of herein affect the public interest.

767.    As a direct and proximate result of New Chrysler's violations of the North Carolina UDTPA, the North Carolina Consumer Plaintiffs and the North Carolina Consumer Class have suffered injury-in-fact and/or actual damage.

768.    The North Carolina Consumer Class members seek punitive damages against New Chrysler because New Chrysler's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.

769.    New Chrysler fraudulently and willfully misrepresented the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them, deceived North Carolina Class members on life-or-death matters, and concealed material facts that only they knew, all to

avoid the expense and public relations nightmare of correcting the myriad flaws in the Class Vehicles and/or the Defective Airbags installed in them.  Because New Chrysler's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith, it warrants punitive damages.

770.    The North Carolina Consumer Plaintiffs seek an order for treble their actual damages, an order enjoining New Chrysler's unlawful acts, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina UDTPA, N.C. Gen. Stat. § 75-16.

## COUNT 38

### Breach of the Implied Warranty of Merchantability
### N.C. Gen. Stat. § 25-2-314

771.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the North Carolina Consumer Class against New Chrysler.

772.    New Chrysler is and were at all relevant times merchants with respect to motor vehicles and/or airbags within the meaning of N.C. Gen. Stat. § 25-2-314.

773.    A warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to N.C. Gen. Stat. § 25-2-314.

774.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used.  Specifically, they are inherently defective and dangerous in that the Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously

injure occupants through contact with the airbag, instead of protecting vehicle occupants from bodily injury during accidents.

775.    New Chrysler was provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by numerous individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

776.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the North Carolina Consumer Plaintiffs and the North Carolina Consumer Class have been damaged in an amount to be proven at trial

### Q.    Claims Brought on Behalf of the Ohio Consumer Class

### COUNT 39

### Violation of the Consumer Sales Practices Act
### Ohio Rev. Code § 1345.01

777.    This claim is brought only on behalf of the Ohio Consumer Class against New Chrysler.

778.    The Ohio Consumer Plaintiffs and the Ohio Consumer Class are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchases and leases of the Class Vehicles with the Defective Airbags installed in them are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

779.    New Chrysler and Takata are "suppliers" as that term is defined in Ohio Rev. Code § 1345.01(C).  The Ohio Consumer Sales Practices Act ("Ohio CSPA"), Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Ohio CSPA prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which

they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.  Id.  New Chrysler's conduct as alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.

780.    By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, New Chrysler engaged in deceptive business practices prohibited by the Ohio CSPA, including: representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not; and engaging in other unfair or deceptive acts or practices.

781.    New Chrysler's actions as set forth above occurred in the conduct of trade or commerce.

782.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.  New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

783.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

784.    Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

785.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the Ohio CSPA.  New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

786.    In the course of New Chrysler's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class

Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

787.   New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Ohio Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler's brands, and the true value of the Class Vehicles.

788.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with intent to mislead the Ohio Consumer Plaintiffs and the Ohio Consumer Class.

789.   New Chrysler knew or should have known that its conduct violated the Ohio CSPA.

790.   As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

791.   To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

792. New Chrysler owed the Ohio Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from the Ohio Consumer Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Ohio Consumer Plaintiffs that contradicted these representations.

793. Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by New Chrysler's conduct, they are now worth significantly less than they otherwise would be.

794. New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Ohio Consumer Plaintiffs and the Ohio Consumer Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

795. The Ohio Consumer Plaintiffs and the Ohio Consumer Class suffered ascertainable loss caused by New Chrysler's misrepresentations and their failure to disclose material information. Had they been aware of the Inflator Defect that existed in the Class

Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the Ohio Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all. The Ohio Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler's misconduct.

796.   New Chrysler's violations present a continuing risk to the Ohio Consumer Plaintiffs, the Ohio Consumer Class, as well as to the general public. New Chrysler's unlawful acts and practices complained of herein affect the public interest.

797.   As a direct and proximate result of New Chrysler's violations of the Ohio CSPA, the Ohio Consumer Plaintiffs and the Ohio Consumer Class have suffered injury-in-fact and/or actual damage.

798.   The Ohio Consumer Class members seek punitive damages against New Chrysler because their conduct was egregious. New Chrysler misrepresented the safety and reliability of millions of Class Vehicles and/or the Defective Airbags installed in them, concealed the Inflator Defect in millions of them, deceived the Ohio Consumer Class on life-or-death matters, and concealed material facts that only New Chrysler knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in millions of Class Vehicles and/or the Defective Airbags installed in them. New Chrysler's egregious conduct warrants punitive damages.

799.   As a result of the foregoing wrongful conduct of New Chrysler, the Ohio Consumer Plaintiffs and the Ohio Consumer Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining New Chrysler's deceptive and unfair conduct, treble damages, court costs and reasonable attorneys' fees, pursuant to Ohio Rev. Code § 1345.09.

### R.      Claims Brought on Behalf of the Pennsylvania Consumer Class

### COUNT 40

**Violation of the Unfair Trade Practices and Consumer Protection Law**
**Pa. Stat. Ann. § 201-1**

800.     This claim is brought only on behalf of the Pennsylvania Consumer Class against New Chrysler.

801.     The Pennsylvania Consumer Plaintiffs purchased or leased their Class Vehicles with Defective Airbags installed in them primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

802.     All of the acts complained of herein were perpetrated by New Chrysler in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

803.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, …. Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;:" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

804.     New Chrysler engaged in unlawful trade practices, including representing that Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

805.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

806.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

807.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

808.    Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

809.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New

- 205 -

Chrysler engaged in unfair or deceptive business practices in violation of the Pennsylvania CPL. New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

810.   In the course of New Chrysler's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

811.   New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Pennsylvania Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler' brands, and the true value of the Class Vehicles.

812.   New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with intent to mislead the Pennsylvania Consumer Plaintiffs and the Pennsylvania Consumer Class.

813.   New Chrysler knew or should have known that its conduct violated the Pennsylvania CPL.

814.   As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either

false or misleading.  New Chrysler' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

815.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

816.    New Chrysler owed the Pennsylvania Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from the Pennsylvania Consumer Plaintiffs; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Pennsylvania Consumer Plaintiffs that contradicted these representations.

817.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler' conduct, they are now worth significantly less than they otherwise would be.

818.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Pennsylvania Consumer Plaintiffs and the Pennsylvania Consumer Class.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

819.    The Pennsylvania Consumer Plaintiffs and the Pennsylvania Consumer Class suffered ascertainable loss caused by New Chrysler' misrepresentations and their failure to disclose material information.   Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the Pennsylvania Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.   The Pennsylvania Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler' misconduct.

820.    New Chrysler's violations present a continuing risk to the Pennsylvania Consumer Plaintiffs, the Pennsylvania Consumer Class, as well as to the general public.   New Chrysler' unlawful acts and practices complained of herein affect the public interest.

821.    As a direct and proximate result of New Chrysler's violations of the Pennsylvania CPL, the Pennsylvania Consumer Plaintiffs and the Pennsylvania Consumer Class have suffered injury-in-fact and/or actual damage.

822.    New Chrysler is liable to the Pennsylvania Consumer Plaintiffs and the Pennsylvania Consumer Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a).   The Pennsylvania Consumer Plaintiffs and the

Pennsylvania Consumer Class are also entitled to an award of punitive damages given that New Chrysler' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT 41

### Breach of the Implied Warranty of Merchantability
### 13 PA. Stat. and Cons. Stat. Ann. §2314

823.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Pennsylvania Consumer Class against New Chrysler.

824.    New Chrysler is and was at all relevant times a merchant with respect to motor vehicles and/or airbags within the meaning of 13 Pa. Stat. and Cons. Stat. Ann. § 2104.

825.    A warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to 13 Pa. Stat. and Cons. Stat. Ann. § 2314.

826.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used.  Specifically, they are inherently defective and dangerous in that the Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag, instead of protecting vehicle occupants from bodily injury during accidents.

827.    New Chrysler was provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal

investigations, and by individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

828.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Pennsylvania Consumer Plaintiffs and the Pennsylvania Consumer Class have been damaged in an amount to be proven at trial.

### S.    Claims Brought on Behalf of the South Carolina Consumer Class

### COUNT 42

**Violation of the South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. § 39-5-10**

829.    This claim is brought only on behalf of the South Carolina Consumer Class against New Chrysler.

830.    New Chrysler is a "person" under S.C. Code Ann. § 39-5-10. 2740.  The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39-5-20(a).  New Chrysler engaged in unfair and deceptive acts or practices and violated the South Carolina UTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.  New Chrysler' actions as set forth below and above occurred in the conduct of trade or commerce.

831.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

- 210 -

832.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the Class Vehicles and/or the Defective Airbags installed in them

833.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

834.    Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

835.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of the FDUTPA.  New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to aggressively deploy, and/or violently explode and spray vehicle occupants with lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

836.    In the course of New Chrysler's business, after the bankruptcy sale in 2009, both willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

837.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the South Carolina Consumer Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler' brands, and the true value of the Class Vehicles. New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the South Carolina Consumer Plaintiffs and the South Carolina Consumer Class.

838.    New Chrysler knew or should have known that its conduct violated the South Carolina UTPA.

839.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

840.   To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler, after the bankruptcy sale in 2009, concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

841.   New Chrysler owed the South Carolina Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from the South Carolina Consumer Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the South Carolina Consumer Plaintiffs that contradicted these representations.

842.   Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler' conduct, they are now worth significantly less than they otherwise would be.

843.   New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the South Carolina Consumer Plaintiffs and the South Carolina Consumer Class.  A vehicle made by a reputable

manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

844.    The South Carolina Consumer Plaintiffs and the South Carolina Consumer Class suffered ascertainable loss caused by New Chrysler' misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the South Carolina Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.  The South Carolina Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler' misconduct.

845.    New Chrysler's violations present a continuing risk to the South Carolina Consumer Plaintiffs, the South Carolina Consumer Class, as well as to the general public.  New Chrysler' unlawful acts and practices complained of herein affect the public interest.

846.    As a direct and proximate result of New Chrysler's violations of the South Carolina UTPA, the South Carolina Consumer Plaintiffs and the South Carolina Consumer Class have suffered injury-in-fact and/or actual damage.

847.    Pursuant to S.C. Code Ann. § 39-5-140(a), the South Carolina Consumer Plaintiffs seek monetary relief against New Chrysler to recover for their economic losses.  Because New Chrysler' actions were willful and knowing, the South Carolina Consumer Plaintiffs' damages should be trebled. *Id.*

848.    The South Carolina Consumer Plaintiffs further allege that New Chrysler's malicious and deliberate conduct warrants an assessment of punitive damages because New

Chrysler carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting the South Carolina Consumer Plaintiffs and the South Carolina Consumer Class to cruel and unjust hardship as a result.  New Chrysler' intentionally and willfully misrepresented the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them, deceived the South Carolina Consumer Plaintiffs and the South Carolina Consumer Class on life-or-death matters, and concealed material facts that only New Chrysler knew, all to avoid the expense and public relations nightmare of correcting a deadly flaws in the Class Vehicles and/or the Defective Airbags installed in them.  New Chrysler' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.  The South Carolina Consumer Plaintiffs further seek an order enjoining New Chrysler' unfair or deceptive acts or practices.

## COUNT 43

### Violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act
### S.C. Code Ann. §56-15-10

849.    This claim is brought only on behalf of the South Carolina Consumer Class against New Chrysler.

850.    The Vehicle Manufacturing New Chrysler is a "manufacturer" as set forth in S.C. Code Ann.§ 56-15-10, as it was engaged in the business of manufacturing or assembling new and unused motor vehicles.

851.    New Chrysler committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann. § 56-15-30.

- 215 -

852. New Chrysler engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to the South Carolina Consumer Plaintiffs, the South Carolina Consumer Class, and to the public.

853. New Chrysler's bad faith and unconscionable actions include, but are not limited to: (1) representing that Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have, (2) representing that they are of a particular standard, quality, and grade when they are not, (3) advertising them with the intent not to sell or lease them as advertised, (4) representing that a transaction involving them confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not.

854. New Chrysler resorted to and used false and misleading advertisements in connection with their business. As alleged above, they made numerous material statements and omissions regarding the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading. Each of these statements and omissions contributed to the deceptive context of New Chrysler' unlawful advertising and representations as a whole.

855. Pursuant to S.C. Code Ann. § 56-15-110(2), the South Carolina Consumer Plaintiffs bring this action on behalf of themselves and the South Carolina Consumer Class, as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the court.

856. The South Carolina Consumer Plaintiffs and the South Carolina Consumer Class are entitled to double their actual damages, the cost of the suit, attorney's fees pursuant to S.C.

Code Ann. § 56-15-110. The South Carolina Consumer Plaintiffs also seek injunctive relief under S.C. Code Ann. § 56-15-110.  The South Carolina Consumer Plaintiffs also seek treble damages because New Chrysler acted maliciously.

## COUNT 44

### Breach of the Implied Warranty of Merchantability
### S.C. Code Ann. § 36-2-314

857.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the South Carolina Consumer Class against New Chrysler.

858.    New Chrysler is and was at all relevant times a merchant with respect to motor vehicles and/or airbags within the meaning of S.C. Code Ann. § 36-2-314.

859.    A warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to S.C. Code Ann. § 36-2-314.

860.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used.  Specifically, they are inherently defective and dangerous in that the Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag, instead of protecting vehicle occupants from bodily injury during accidents.

861.    New Chrysler was provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal

investigations, and by individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

862.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the South Carolina Consumer Plaintiffs and the South Carolina Consumer Class have been damaged in an amount to be proven at trial.

### T.    Claims Brought on Behalf of the Texas Consumer Class

### COUNT 45

**Violation of the Deceptive Trade Practices Act
Tex. Bus. & Com. Code § 17.41**

863.    This claim is brought only on behalf of the Texas Consumer Class against New Chrysler.

864.    The Texas Consumer Plaintiffs and the Texas Consumer Class are individuals, partnerships and corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets).  *See* Tex. Bus. & Com. Code § 17.41.

865.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree," Tex. Bus. & Com. Code §§ 17.45(5), 17.50(a)(3).  New Chrysler has committed false, misleading, unconscionable, and deceptive acts or practices in the conduct of trade or commerce.

866.    New Chrysler also violated the Texas DTPA by: (1) representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and

qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; (3) advertising them with the intent not to sell or lease them as advertised; and (4) failing to disclose information concerning them with the intent to induce consumers to purchase or lease them.

867.    In the course of its business, New Chrysler willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

868.    New Chrysler also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

869.    New Chrysler has known of the Inflator Defect in the Defective Airbags since at least June 1, 2009, when it acquired substantially all of Old Chrysler's books, records, and personnel, and the knowledge about the defective Takata airbags those books, records, and personnel held.  New Chrysler failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

870.    Furthermore, New Chrysler was again made aware of the Inflator Defect in the Takata airbags in New Chrysler's vehicles in 2009, following Honda's recall; in 2010 following a rupture that occurred during the testing of one of New Chrysler's airbags; and in 2013 following a field rupture in a Chrysler vehicle.  New Chrysler willfully failed to disclose and

actively concealed the dangerous risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

871.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, New Chrysler engaged in unfair or deceptive business practices in violation of FDUTPA.   New Chrysler deliberately withheld the information about the propensity of the Defective Airbags to violently explode and/or expel lethal amounts of metal debris and shrapnel, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

872.    In the course of New Chrysler's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Inflator Defect discussed above. New Chrysler compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

873.    New Chrysler's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of New Chrysler' brands, and the true value of the Class Vehicles.

874.    New Chrysler intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead the Texas Consumer Plaintiffs and the Texas Consumer Class.

875.    New Chrysler knew or should have known that its conduct violated the Texas DTPA.

876.    As alleged above, New Chrysler made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.  New Chrysler' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "safe" and "reliable," despite their knowledge of the Inflator Defect or their failure to reasonably investigate it.

877.    To protect its profits and to avoid remediation costs and a public relations nightmare, New Chrysler concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

878.    New Chrysler owed the Texas Consumer Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because New Chrysler:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from the Texas Consumer Plaintiffs; and/or

c.      Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Texas Consumer Plaintiffs that contradicted these representations.

879.    Because New Chrysler fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by New Chrysler' conduct, they are now worth significantly less than they otherwise would be.

880.    New Chrysler's failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to the Texas Consumer Plaintiffs and the Texas Consumer Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

881.    The Texas Consumer Plaintiffs and the Texas Consumer Class suffered ascertainable loss caused by New Chrysler' misrepresentations and their failure to disclose material information.  Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and New Chrysler's complete disregard for safety, the Texas Consumer Plaintiffs either would not have paid as much for their vehicles as they did or would not have purchased or leased them at all.  The Texas Consumer Plaintiffs did not receive the benefit of their bargain as a result of New Chrysler' misconduct.

882.    New Chrysler's violations present a continuing risk to the Texas Consumer Plaintiffs, the Texas Consumer Class, as well as to the general public.  New Chrysler' unlawful acts and practices complained of herein affect the public interest.

883. As a direct and proximate result of New Chrysler's violations of the Texas DTPA, the Texas Consumer Plaintiffs and the Texas Consumer Class have suffered injury-in-fact and/or actual damage.

884. Pursuant to Tex. Bus. & Com. Code § 17.50(a)(1) and (b), the Texas Consumer Plaintiffs and the Texas Consumer Class seek monetary relief against New Chrysler measured as actual damages in an amount to be determined at trial, treble damages for New Chrysler' knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

885. For those Texas Consumer Class members who wish to rescind their purchases, they are entitled under Tex. Bus. & Com. Code § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

886. The Texas Consumer Plaintiffs and the Texas Consumer Class also seek court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

887. In accordance with Tex. Bus. & Com. Code § 17.505(a), Plaintiffs' counsel, on behalf of the Texas Consumer Plaintiffs, served New Chrysler with notice of their alleged violations of the Texas DTPA relating to the Class Vehicles and/or the Defective Airbags installed in them purchased by the Texas Consumer Plaintiffs and the Texas Consumer Class, and demanded that New Chrysler correct or agree to correct the actions described therein. If New Chrysler fail to do so, the Texas Consumer Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which the Texas Consumer Plaintiffs and the Texas Consumer Class members are entitled.

## COUNT 46

### Breach of the Implied Warranty of Merchantability
### Tex. Bus. & Com. Code Ann. § 2.314

888.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of the Texas Consumer Class against New Chrysler.

889.    New Chrysler is and was at all relevant times a merchant with respect to motor vehicles and/or airbags within the meaning of Tex. Bus. & Com. Code Ann. § 2.104.

890.    A warranty that the Class Vehicles and/or the Defective Airbags installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Tex. Bus. & Com. Code Ann. § 2.314.

891.    The Class Vehicles and/or the Defective Airbags installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used.  Specifically, they are inherently defective and dangerous in that the Defective Airbags: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and/or (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag, instead of protecting vehicle occupants from bodily injury during accidents.

892.    New Chrysler was provided notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by individual letters and communications sent by consumers before New Chrysler issued the recalls and after the allegations of the Inflator Defect became public.

893.    As a direct and proximate result of New Chrysler's breach of the warranties of merchantability, the Texas Consumer Plaintiffs and the Texas Consumer Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against New Chrysler, as follows:

A.      An order certifying the proposed Classes, designating Plaintiffs as the named representatives of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

B.      A declaration that the airbags in Class Vehicles are defective;

C.      An order enjoining New Chrysler to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and such other injunctive relief that the Court deems just and proper;

D.      An award to Plaintiffs and Class Members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

E.      An award to Plaintiffs and Class Members for the return of the purchase prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages, and for reasonable attorney fees;

F.      A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with the Defective Airbags in Plaintiffs' and Class Members' Class Vehicles, can be made and

paid, such that New Chrysler, not the Class Members, absorb the losses and expenses fairly traceable to the recalls of the vehicles and correction of the Defective Airbags;

G.      A declaration that New Chrysler must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles or make full restitution to Plaintiffs and Class Members;

H.      An award of attorneys' fees and costs, as allowed by law;

I.       An award of prejudgment and post judgment interest, as provided by law;

J.       Leave to amend this Complaint to conform to the evidence produced at trial; and

K.      Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

DATED: May 18, 2018

**PODHURST ORSECK, P.A.**

/s/ Peter Prieto
Peter Prieto (FBN 501492)
Aaron S. Podhurst (FBN 63606)
Stephen F. Rosenthal (FBN 131458)
John Gravante  (FBN 617113)
Matthew P. Weinshall (FBN 84783)
Alissa Del Riego (FBN 99742)
SunTrust International Center
One Southeast 3rd Ave, Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com
apodhurst@podhurst.com
srosenthal@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com

*Chair Lead Counsel for Plaintiffs*

| | |
|---|---|
| **COLSON HICKS EIDSON**<br>Lewis S. "Mike" Eidson<br>mike@colson.com<br>Curtis Bradley Miner<br>curt@colson.com<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134<br>T: 305-476-7400<br><br>*Plaintiffs' Personal Injury Track Lead Counsel* | **POWER ROGERS & SMITH, P.C.**<br>Todd A. Smith<br>tsmith@prslaw.com<br>70 West Madison St., 55th Floor<br>Chicago, IL 60602<br>T: 312-236-9381<br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* |
| **BOIES, SCHILLER & FLEXNER LLP**<br>David Boies, Esq.<br>Motty Shulman, Esq. (Fla Bar. No. 175056)<br>333 Main Street<br>Armonk, NY 10504<br>Tel: (914) 749-8200<br>Fax: (914) 749-8300<br>dboies@bsfllp.com<br>mshulman@bsfllp.com<br><br>Stephen N. Zack, Esq. (Fla. Bar. No. 145215)<br>Mark J. Heise, Esq. (Fla. Bar No. 771090)<br>100 Southeast 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel: (305) 539-8400<br>Fax: (305) 539-1307<br>szack@bsfllp.com<br>mheise@bsfllp.com<br><br>Richard B. Drubel, Esq.<br>Jonathan R. Voegele, Esq.<br>26 South Main Street<br>Hanover, NH 03755<br>Tel: (603) 643-9090<br>Fax: (603) 643-9010<br>rdrubel@bsfllp.com<br>jvoegele@bsfllp.com<br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* | **BARON & BUDD, PC**<br>Roland Tellis<br>rtellis@baronbudd.com<br>David Fernandes<br>dfernandes@bardonbudd.com<br>Mark Pifko<br>mpifko@baronbudd.com<br>15910 Ventura Blvd.,<br>Suite 1600<br>Encino, CA 91436<br>T: 818-839-2333<br><br>J.Burton LeBlanc<br>9015 Bluebonnet Blvd.<br>Baton Rouge, LA 70810<br>T: 225-761-6463<br><br>*Plaintiffs' Steering Committee* |

| **CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC** | **LIEFF CABRASER HEIMANN AND BERNSTEIN LLP** |
|---|---|
| James E. Cecchi<br>jcecchi@carellabyrne.com<br>5 Becker Farm Road<br>Roseland, NJ   07068-1739<br>T: 973 994-1700<br>f: 973 994-1744<br><br><br>*Plaintiffs' Steering Committee* | Elizabeth Cabraser<br>ecabraser@lchb.com<br>Nimish R. Desai<br>ndesai@lchb.com<br>275 Battery St., Suite 3000<br>San Francisco, CA 94111-3339<br>T: 415-956-1000<br><br>David Stellings<br>250 Hudson Street, 8th Floor<br>NY, NY 10012<br>212-355-9500<br>dstellings@lchb.com<br><br><br>*Plaintiffs' Steering Committee* |

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on May 18, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/* Peter Prieto_____
    Peter Prieto