## SOUTHERN DISTRICT OF FLORIDA
## UNITED STATES DISTRICT COURT
## MIAMI DIVISION

|  |  |
|---|---|
| IN RE:<br><br>**TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION**<br><br>This Document Relates to All Economic Loss Class Actions and *Whitaker et al. v. General Motors Co. et al.* | MDL No. 2599<br><br>Master File No. 15-MD-2599-MORENO<br><br>S.D. Fla. Case No. 1:14-cv-2409-FAM |

## GENERAL MOTORS LLC'S MOTION TO STAY
## AND INCORPORATED MEMORANDUM OF LAW

Laurie M. Riley, Esq. (FL Bar No. 657751)
Jones Walker LLP
201 South Biscayne Boulevard, Suite 2600
Miami, FL 33131
Telephone: 305-679-5728
Facsimile: 305-679-5818
Email: lriley@joneswalker.com

-and-

Renee D. Smith (*pro hac vice*)
Leonid Feller (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle St
Chicago, IL  60654
Tel:  (312) 862-2000
Fax:  (312) 862-2200
Email: renee.smith@kirkland.com
Email: leonid.feller@kirkland.com

*Attorneys for General Motors LLC*

Dated: August 20, 2018

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

      A.    NHTSA Is The Federal Agency With Specialized Expertise In And
Exclusive Province Over Motor Vehicle Safety Recalls. ...................................... 2

      B.    NHTSA Is Currently Considering Three New GM Petitions For
Inconsequentiality Determinations. ...................................................................... 3

      C.    This Case Raises Questions Identical To Those Pending Before NHTSA............. 6

ARGUMENT & AUTHORITIES ...................................................................................... 8

I.     THE COURT SHOULD GRANT A STAY UNDER THE PRIMARY
JURISDICTION DOCTRINE. ............................................................................... 8

      A.    The Primary Jurisdiction Factors Overwhelmingly Favor A Stay ........................ 8

      B.    Granting A Stay Under The Unique Facts Of This Case Is In Harmony
With The Court's Prior Primary Jurisdiction Opinion .......................................... 11

II.    ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS BROAD
DISCRETION TO ISSUE A STAY PURSUANT TO *LANDIS* AND ITS
PROGENY ............................................................................................................. 13

LOCAL RULE 7.1 CERTIFICATION .......................................................................... 17

REQUEST FOR HEARING ........................................................................................... 17

CONCLUSION ................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barrera v. Comcast Holdings Corp.*,
    2014 WL 1942829 (N.D. Cal. May 12, 2014) ..........................................................................9

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) (*en banc*) ...............................................................................8

*Cheyney State Coll. Faculty v. Hufstedler*,
    703 F.2d 732 (3d Cir. 1983)...............................................................................................14, 16

*Clinton v. Jones*,
    520 U.S. 681 (1997)................................................................................................................13

*Davel Commc'ns, Inc. v. Qwest Corp.*,
    460 F.3d 1075 (9th Cir. 2006) ................................................................................................9

*Dean v. Douglas*,
    2012 WL 6151137 (M.D. Ga. Dec. 11, 2012) .......................................................................16

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006)......................................................................................................9

*Ferrare v. IDT Energy, Inc.*,
    2015 WL 3622883 (E.D. Pa. June 10, 2015) ..........................................................................9

*Fishman Jackson PLLC v. Israely*,
    180 F. Supp. 3d 476 (N.D. Tex. 2016) .................................................................................14

*Garcia v. Acosta Tractors Inc.*,
    2017 WL 4169670 (S.D. Fla. Sept. 20, 2017) ..........................................................2, 13, 14

*Georgia Power Co. v. Charter Commc'ns, LLC*,
    2013 WL 12247036 (N.D. Ga. May 28, 2013).....................................................................10

*In re KIND LLC "Healthy & All Natural" Litig.*,
    209 F. Supp. 3d 689 (S.D.N.Y. 2016).................................................................................10

*In re Korean Air Lines Co., Ltd.*,
    642 F.3d 685 (9th Cir. 2011) ................................................................................................14

*Hulley Enters. Ltd. v. Russian Fed'n*,
    211 F. Supp. 3d 269 (D.D.C. 2016)......................................................................................16

ii

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)........................................................................................ *passim*

*In re Latimer*,
  489 B.R. 844 (Bankr. N.D. Ala. 2013) ...............................................................16

*Leyva v. Certified Grocers of California, Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ..............................................................................14

*Mackiewicz v. Nationstar Mortg., LLC*,
  2015 WL 11983233 (M.D. Fla. Nov. 10, 2015) ..................................................14

*Miccosukee Tribe of Indians v. S. Florida Water Mgmt. Dist.*,
  2007 WL 7377465 (S.D. Fla., Mar. 28, 2007).....................................................15

*Mississippi Power & Light Co. v. United Gas Pipeline Co.*,
  532 F.2d 412 (5th Cir. 1976) .......................................................................2, 8, 10

*Nader v. Allegheny Airlines, Inc.*,
  426 U.S. 290 (1978)................................................................................................2

*U.S. ex rel. Postel Erection Grp., L.L.C. v. Travelers Cas. & Ins. Co. of Am.*,
  2012 WL 2505674 (M.D. Fla. June 28, 2012)......................................................13

*Ricci v. Chicago Mercantile Exch.*,
  409 U.S. 289 (1973)........................................................................................12, 13

*Scoma Chiropractic, P.A. v. Dental Equities, LLC*,
  2018 WL 2455301 (M.D. Fla. June 1, 2018).....................................................9, 10

*SE Prop. Holdings, LLC v. Parks*,
  2014 WL 3687226 (S.D. Ala. July 24, 2014) .......................................................16

*Silvas v. Gen. Motors, LLC*,
  2014 WL 1572590 (S.D. Tex. Apr. 17, 2014) ......................................................10

*Smith v. Sprint Commc'ns Co.*,
  1996 WL 1058204 (N.D. Cal. Sept. 13, 1996) ......................................................9

*Stevens v. Boston Scientific Corp.*,
  152 F. Supp. 3d 527 (S.D. W. Va. 2016)..............................................................10

*In re Takata Airbag Prod. Liab. Litig.*,
  2015 WL 12641693 (S.D. Fla. Sept. 21, 2015) .......................................... *passim*

*U.S. v. W. Pac. R.R.*,
  352 U.S. 64 (1956)..............................................................................................2, 8

**Statutes**

49 U.S.C. § 30118(d) ....................................................................................................1, 4

49 U.S.C. § 30119 ...............................................................................................................3

49 U.S.C. § 30120 ...............................................................................................................3

49 U.S.C. § 30120(h) ......................................................................................................1, 4

**Other Authorities**

49 C.F.R. § 554.1 ................................................................................................................2

49 C.F.R. § 556.4(c) ...........................................................................................................4

49 C.F.R. § 573.5(a) ...........................................................................................................3

81 Fed. Reg. 85681 .........................................................................................................3, 4

82 Fed. Reg. 42718 .............................................................................................................5

## INTRODUCTION

This economic loss suit alleges that certain GM vehicles were equipped with "defective" Takata airbags that created an "unreasonable" risk to motor vehicle safety  (Am. Consolidated Class Complaint, ECF No. 2759 ("Compl.") ¶¶ 2, 18)  Unlike the claims against other economic loss defendants, however, the claims against General Motors LLC ("New GM")—which plaintiffs' lawyers essentially abandoned for over two years while pursuing claims against and securing settlements with their primary targets—involve a distinct vehicle platform, the GMT900 platform, equipped with uniquely designed Takata airbag inflators that: (i) have *no* reported ruptures in the field or elsewhere; and (ii) have not been determined by New GM to be defective or to pose an unreasonable risk to motor vehicle safety.  Because of these unique circumstances, the National Highway Traffic Safety Administration ("NHTSA") is considering New GM's Petitions for a determination that any defects in the airbags are "inconsequential to motor vehicle safety," 49 U.S.C. §§ 30118(d), 30120(h).

Plaintiffs try to invoke the pending NHTSA Inconsequentiality Petitions as a cornerstone of their case.  They wrongly allege, for example, that "New GM continue[s] to misrepresent Takata airbags as safe," and claim that New GM "unconscionably" "delayed the repair of nearly all of them while they plead with NHTSA for permission to conduct more tests," "leaving the occupants of those vehicles in grave danger."  (Compl. ¶¶ 17-19)  Whether the Takata airbags at issue here have safety-related defects; whether any defect is inconsequential to motor vehicle safety; and whether NHTSA's ongoing statutory deferral of certain recall remedy and notice obligations is appropriate are thus questions squarely before both NHTSA and this Court.

In these extraordinary circumstances, the Court should stay the case for six months under the primary jurisdiction doctrine to afford NHTSA—the federal agency with "special competence" to address "technical questions of fact uniquely within [its] expertise and experience" and the

exclusive province to administer and oversee recalls—an opportunity to address these issues in the first instance. *See In re Takata Airbag Prod. Liab. Litig.*, 2015 WL 12641693, at *1 (S.D. Fla. Sept. 21, 2015).[1]  This modest requested deferral will promote uniformity and avoid conflicting findings with or perceived second-guessing of NHTSA's decisions on identical issues regarding whether a defect exists in these unique airbags which affects motor vehicle safety as well as existing recall obligations, timing, and executions. *See id.* at *1-2; *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 420 (5th Cir. 1976).

Alternatively, a stay is independently warranted under the Court's inherent authority to control its own docket because, among other things, it will promote judicial economy by simplifying material issues in this litigation, without prejudicing plaintiffs who had tactically elected to postpone pursuing their economic loss claims against New GM for years. *See Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936); *Garcia v. Acosta Tractors Inc.*, 2017 WL 4169670, at *4 (S.D. Fla. Sept. 20, 2017).

## BACKGROUND

### A.   NHTSA Is The Federal Agency With Specialized Expertise In And Exclusive Province Over Motor Vehicle Safety Recalls.

Established by the 1970 Highway Safety Act, NHTSA is the federal agency tasked by Congress with overseeing the technical and highly-specialized domain of automotive safety defects and recalls by "enforcing federal motor vehicle standards and associated regulations, investigating possible safety-related defects, and making non-compliance and defect determinations." *See* 49 C.F.R. § 554.1.  Its mission is to "[s]ave lives, prevent injuries and reduce economic costs" "through public education, research and and safety standards, and investigations

---

[1] Quoting *U.S. v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956); *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305 (1978).

and enforcement."[2]  NHTSA has specialized expertise regarding safety defect determinations and recall obligations and enforcement.  Recalls are the exclusive province of NHTSA, which (1) administers the intricate rules concerning the content of a recall notice, its timing, and the means of providing notification to affected motorists and dealers, and (2) oversees manufacturers' repair and remediation programs.  49 U.S.C. §§ 30119, 30120.

Of particular significance, NHTSA "has taken unprecedented steps in overseeing the Takata recalls," which are "the largest and most complex vehicle recalls in U.S. history."  *See* 11/17/2017 NHTSA Recall Spotlight: The State of the Takata Recalls.[3]  NHTSA's "vigilant oversight of the Takata recalls" includes the development and execution of a Coordinated Remedy Program, Consent Orders involving independent monitors with authority to assist NHTSA in overseeing and monitoring the Coordinated Remedy Program, and engagement with vehicle manufactures and part suppliers.  *Id.*

**B.     NHTSA Is Currently Considering Three New GM Petitions For Inconsequentiality Determinations.**

On May 16, 2016, Takata filed the first of several Defect Information Reports ("DIRs") pursuant to a NHTSA Consent Order requiring rolling declarations of defects in all frontal driver and passenger air bag inflators that contained a phase-stabilized ammonium nitrate (PSAN)-based propellant and that did not contain a moisture-absorbing desiccant.  81 Fed. Reg. 85681, 85682.  New GM was statutorily obligated to file its own DIR for those GM vehicles implicated by a Takata DIR.  49 C.F.R. § 573.5(a).  New GM submitted two DIRs on May 27, 2016, but stated that it had not independently determined the existence of a safety defect, and was instead filing the DIRs in response to Takata's defect determination.  New GM indicated it would recall the subject

---

[2] Available at https://www.nhtsa.gov/about-nhtsa/nhtsas-core-values (last visited August 20, 2018).

[3] Available at https://www.nhtsa.gov/recall-spotlight/state-takata-recalls (last visited August 20, 2018).

airbag inflators "**unless** GM is able to prove to NHTSA's satisfaction that the inflators in **its vehicles do not pose an unreasonable risk to safety**."[4]   81 Fed. Reg. 85681, 85682 (emphasis added) (internal quotation marks omitted).   New GM's position invoked federal authority allowing vehicle manufacturers to petition NHTSA for a determination that a defect is "inconsequential to motor vehicle safety" which would exempt or toll certain statutory recall obligations related to notifications and/or remedies.   *See* 49 U.S.C. § 30118(d) (providing for procedures for exemption from obligations to provide certain notifications); *see also id.* § 30120(h) (providing for procedures for exemption from obligations to provide certain remedies); 81 Fed. Reg. 85681, 85684 (recall remedy obligations are tolled while NHTSA considers the Petitions).

Because in the then-nine years since their introduction there had never been a rupture in the unique airbags in GM's GMT900 vehicles, on November 15, 2016, New GM submitted to NHTSA the first of three Petitions for Inconsequentiality[5] for certain GMT900[6] vehicles equipped with Takata PSAN inflators.   New GM also requested that NHTSA defer its ruling until August 31, 2017, to permit New GM to complete additional testing as described in the Petition.   In granting the deferral, NHTSA "acknowledge[d] that GM has produced probative evidence to support its inconsequentiality claim," observing that "the testing and data collected by GM to date—while not yet sufficient—tends to support GM's Petition, at least with respect to the short-term safety of the covered passenger inflators."   81 Fed. Reg. at 85684.   NHTSA believed, "based upon the data

---

[4] If the manufacturer has not itself made a determination that a defect exists, such a DIR does "not constitute a concession by the manufacturer of, nor will it be considered relevant to, the existence of a defect related to motor vehicle safety or a nonconformity."   49 C.F.R. § 556.4(c).

[5] Petition for Inconsequentiality and Request for Deferral of Determination, available at https://www.regulations.gov/document?D=NHTSA-2016-0124-0002 (last visited August 20, 2018).

[6] The term "GMT900 inflators" refers to specific Takata inflators designed for and used exclusively in GMT900 vehicles, *i.e.*, vehicles with a structural platform used in certain full-size GM trucks and sport utility vehicles.   (First Petition at 2.)   All but one of the GM vehicles owned by the putative class representatives contain GMT900 inflators. (Compl. ¶ 72 (plaintiff Karu has a 2008 Saab 9-3, which does not have a GMT900 inflator))

GM has developed and presented to date," that this "evidence could ultimately grow and develop to support GM's position with respect to the long-term safety of the covered passenger inflators." *Id.*

On January 11, 2017, in response to additional Takata DIRs, New GM filed a Second Petition for Inconsequentiality,[7] which was consolidated with the First Petition.  82 Fed. Reg. 42718, 42720.[8]  On January 9, 2018, New GM filed a Third Petition for Inconsequentiality, which reiterated the "multiple unique design differences" which made the GMT900 inflators unique from the Takata inflators and airbags in other vehicles, including: (i) lighter, thinner propellant wafers that have more predictable ballistic properties; (ii) stainless steel instead of aluminum inflator end-caps, which improved the inflators' hermetic seals and resistance to high-internal pressures; and (iii) a greater vent-area-to-propellant-mass ratio for more efficient burning and deployment.[9] "These GM-unique design differences were purposeful: To meet GM's airbag inflator sourcing requirements, which were some of the most exacting in the industry," Takata had been "required [ ] to heavily modify the characteristics of their standard SPI and PSPI-L inflators."  *Id.*

NHTSA has not yet made a final inconsequentiality determination, but New GM's robust and expansive internal and third-party expert testing is substantially complete.  The results are compelling:

> [D]espite three decades of [simulated] extreme exposure to humidity- and temperature-related propellant degradation—all of the GMT900 Inflators in the study safely deployed without any ruptures.  The recalled non-GMT900 Takata inflators in the [control] comparison group, by contrast, experienced ruptures and

---

[7] Available at https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/second_gm_petition_for_inconsequential_re_gmt900_takata_inflators-final.pdf (last visited August 20, 2018).

[8] On August 25, 2017, New GM submitted supplemental briefing describing the results of its extensive and robust testing.  Available at https://www.regulations.gov/document?D=NHTSA-2016-0124-0038 (last visited August 20, 2018).

[9] Available at https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/general_motors_llc_third_gm_petition_for_inconsequentiality_re_gmt900_2.pdf (last visited August 20, 2018).

abnormal deployments, at rates and times consistent with ballistic test data generated by the same type of inflators recovered from the field. These results demonstrate that the GMT900 Inflators, which have not ruptured in the field or in ballistic testing, will continue to operate safely for decades, even in the highest temperature and humidity regions.

*Id.*

Thus, in the now-over eleven years the Takata airbags in GM's GMT900 vehicles have been in the field, there have been no reported actual airbag ruptures, and the testing to which the inflators were submitted could not induce a rupture in conditions simulating 30 years of aggressive exposure. As of the date of this filing, New GM's Petitions for Inconsequentiality are still pending and under consideration by the Agency.

### C.   This Case Raises Questions Identical To Those Pending Before NHTSA.

Plaintiffs' economic loss case against New GM comes on the heels of a series of settlements with vehicle manufacturers who (unlike New GM or NHTSA as to the GMT900 inflators at this point) had determined that a defect affecting motor vehicle safety existed in the vehicles of these other manufacturers equipped with Takata airbags.[10] This after-thought lawsuit alleges that certain GM vehicles were equipped with "defective airbags manufactured by Takata Corporation," which contained inflators that "were prone [to] aggressively deploy and/or violently explode," creating an "unreasonable danger of death or personal injury." (Compl. ¶¶ 2, 18) Like the pending NHTSA Petitions, this case turns largely on the question of whether the GMT900 inflators are defective and pose unreasonable safety risks. (*See id.* ¶ 15 (alleging "New GM concealed and/or misrepresented the cause and scope of the Inflator Defect"); ¶ 19 (claiming

---

[10] On April 30, 2015, Plaintiffs filed a putative class action complaint against a dozens of manufacturers, including New GM. (ECF No. 544)  The next turn of that complaint, filed less than six weeks later, dropped claims against New GM. (6/15/2015 2nd Am. Compl., ECF No. 579)  With the exception of transferred cases from other jurisdictions that were promptly placed in "civil suspense," no economic loss claims were pursued against New GM in this MDL until March 14, 2018, when plaintiffs filed a consolidated economic damages complaint against New GM. (ECF No. 2428)  Plaintiffs amended and filed the operative complaint on May 18, 2018.  (ECF No. 2759)

benefit-of-the-bargain damages because plaintiffs allegedly "were deprived of having a safe, defect-free airbag installed in their vehicles").

Equally important, plaintiffs leverage New GM's Inconsequentiality Petitions and the concomitant tolling of certain recall obligations as a fundamental component of their lawsuit. They allege that New GM "continue[s] to misrepresent these vehicles as safe and have delayed the repair of nearly all of them while they plead with NHTSA for permission to conduct more tests," and has "not yet recalled an additional 2.4 million vehicles that contain the same defective inflators, leaving the occupants of those vehicles in grave danger." (*Id.* ¶ 17) Plaintiffs accuse New GM of engaging in a "public relations illusion" and contend that New GM has "unjustly benefited" by "unconscionab[ly]" delaying recall repairs and "continuing to misrepresent [the airbags] as safe." (*Id.* ¶¶ 18, 19)

Specifically referencing New GM's Inconsequentiality Petitions, plaintiffs allege that New GM used "considerable clout with the U.S. auto industry to delay repairs of nearly all of the GM vehicles that are currently under recall." (*Id.* ¶ 136 ("In November 2016, GM Parent and New GM appealed to NHTSA to allow them to delay repairs on all 2.5 million vehicles recalled in May 2016, so that they could conduct more tests on the Defective Airbags. When . . . New GM recalled the additional 820,000 vehicles in January 2017, [it] requested that NHTSA allow repair of those vehicles to be deferred as well"); *see also id.* (New GM has asked NHTSA "to delay repair of nearly 90% of the vehicles that [it has] recalled due to the Inflator Defect")) Plaintiffs' inflammatory allegations include claims that the NHTSA Petitions and recall deferral requests force consumers "to play 'Russian Roulette' with their vehicles." (*Id.* ¶139)

## ARGUMENT & AUTHORITIES

I.    **The Court Should Grant A Stay Under The Primary Jurisdiction Doctrine.**

    A.    **The Primary Jurisdiction Factors Overwhelmingly Favor A Stay.**

A court may apply the primary jurisdiction doctrine when "enforcement of a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."  *In re Takata Airbag Prods. Liab. Litig.*, 2015 WL 12641693, at *1 (S.D. Fla. Sept. 23, 2015) (quoting *W. Pac. R.R. Co.*, 352 U.S. at 63).  Plaintiffs allege that the Takata airbags at issue have defects that affect motor vehicle safety and that New GM's Petitions for inconsequentiality and NHTSA's consideration of those Petitions are somehow wrongful.  (*See, e.g.*, Compl. ¶¶ 6-7, 15-17.)  But NHTSA has specialized expertise and the express authority to decide whether or not the unique Takata airbags in the GMT900 vehicles have a defect which affects motor vehicle safety; if NHTSA determines that they do not have such a defect, it is likewise vested with the exclusive authority to determine that New GM has no recall obligations here.  The pending Petitions thus squarely place with NHTSA the issues that are also at the heart of this litigation.  It is difficult to imagine a clearer case than this one to apply the primary jurisdiction doctrine.  The factors considered by courts in assessing the primary jurisdiction doctrine favor a stay.

*First*, "the need for uniformity" and "the desirability of expert and specialized knowledge of agencies" militate in favor or a stay.  2015 WL 12641693, at *2.  The Fifth Circuit—in a pre-1981 decision binding on this Court[11]—has also approved application of the primary jurisdiction doctrine when an agency's determination will "materially aid" the court in its resolution of litigation.  *See Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 420 (5th

---

[11] Fifth Circuit opinions issued before the close of business on September 30, 1981 are binding precedent in this Circuit.  *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Cir. 1976).  Given the problems that would ensue should the Court issue orders or judgments contrary to or in direct conflict with subsequent NHTSA findings, the uniformity factor supports primary jurisdiction.  *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 2018 WL 2455301, at *3 (M.D. Fla. June 1, 2018) ("As to uniformity of administration, if this case proceeds, there is a risk that the Court could reach a determination that is inconsistent with the FCC's ultimate decision on the AmeriFactors Petition, and this Court is ultimately bound to adhere to the FCC's interpretations of the TCPA.")[12]; *Smith v. Sprint Commc'ns Co.*, 1996 WL 1058204, at *6 (N.D. Cal. Sept. 13, 1996) (finding primary jurisdiction; "[r]esolution of this case, however, necessarily implicates Sprint's tariff, since the FCC requires long distance carriers to list their billing practices in their tariffs").  The Court should not disrupt the uniformity of NHTSA's regulatory oversight— explicitly granted by Congress to NHTSA as to determining whether a defect exists which affects motor vehicle safety and recall execution—by weighing in on these issues before NHTSA does.

Moreover, "[i]n situations where an agency's pending decision applies to the precise issue presented by the litigation, application of the primary jurisdiction doctrine to stay the case is appropriate."  *Barrera v. Comcast Holdings Corp.*, 2014 WL 1942829, at *3–4 (N.D. Cal. May 12, 2014) (citing cases); *see also Ellis v. Tribune Television Co.*, 443 F.3d 71, 89 (2d Cir. 2006) ("[P]rior application to [a federal] agency" "provides support for the conclusion that the doctrine of primary jurisdiction is appropriate."); *Ferrare v. IDT Energy, Inc.*, 2015 WL 3622883, at *4 (E.D. Pa. June 10, 2015) (similar).  This is particularly true where petitions have already been filed and the agency has indicated it will rule on them in due course.  *See Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1090 (9th Cir. 2006) (granting stay under primary jurisdiction doctrine

---

[12] The *Scoma* court discussed both the *Landis* factors and the primary jurisdiction argument. The Court may of course exercise its discretion to grant a stay if it finds doing so to be appropriate under either analysis.

where "there are currently five requests for such a construction pending before the FCC," and [t]he agency has provided some indication that it will determine this issue in due course"); *In re KIND LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 696–97 (S.D.N.Y. 2016) (staying case under primary jurisdiction doctrine where the "FDA has already completed its notice and comment period and seems determined to address the 'all natural' labeling issue").

*Second*, plaintiffs have placed the timing and execution of any recall-related remedy and notification directly at issue.  This court should thus "defer[] to NHTSA under the doctrine of primary jurisdiction" because "NHTSA is far better equipped than this Court to address the broad and complex issues of automotive safety and the regulation of automotive companies in connection with a nationwide recall."  *See Silvas v. Gen. Motors, LLC*, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014); *see also Stevens v. Boston Scientific Corp.*, 152 F. Supp. 3d 527, 537 (S.D. W. Va. 2016) (granting stay under primary jurisdiction doctrine where FDA had power to "exercise[] its expertise and impressive administrative dominance" over the very issues raised in plaintiffs' complaint).

*Third*, the Court should stay the case because NHTSA's determination will "materially aid" the court in its resolution of litigation.  *See Mississippi Power & Light Co.*, 532 F.2d at 420 ("There also can be no doubt that the Commission's informed opinion will be of material aid to the district court in the resolution of the damage action.").  Here, NHTSA's "development of the factual context" concerning the GMT900 inflators and determinations concerning the Petitions will materially aid this Court, and "is an established basis for primary jurisdiction."  *Id*; *see also Georgia Power Co. v. Charter Commc'ns, LLC*, 2013 WL 12247036, at *12 (N.D. Ga. May 28, 2013) (granting stay under primary jurisdiction because agency decision "would certainly influence the litigation" and would "help[ ] to clarify some of the issues in the case); *Scoma*, 2018

10

WL 2455301, at *4 ("In sum, the Court finds that a stay will simplify and streamline the issues raised in this case and reduce the burden of litigation on the parties and on the Court.  Any delay plaintiffs will experience in this case is outweighed by the potential prejudice that could inure to MasterCard and its liability to class members that might very well not fit within the proposed class following the FCC's decision.").

    **B.**    **Granting A Stay Under The Unique Facts Of This Case Is In Harmony With The Court's Prior Primary Jurisdiction Opinion.**

New GM appreciates and has carefully considered this Court's earlier decision denying certain legacy economic loss defendants' motions to stay under the primary jurisdiction doctrine. As the Court recognized in that opinion, however, "no fixed formula exists for applying the [primary jurisdiction] doctrine, [and] courts should assess on a case-by-case basis whether the reasons for the creation of the doctrine are present and whether the purposes it serves will be aided by its application." *See In re Takata Airbag Prods. Liab. Litig.*, 2015 WL 12641693, at *1 (internal quotation marks omitted).  An analysis of the case-specific allegations, judicially noticeable facts, and procedural circumstances here confirms that the Court's reasoning in its early stay decision supports a different outcome here.

*First*, unlike with the earlier motions, plaintiffs here have placed the timing and execution of any recall-related remedy and notification—issues under NHTSA's exclusive authority—directly at issue in their complaint against New GM.  As detailed above, plaintiffs specifically allege that New GM's filing the Petitions for Inconsequentiality was improper and directly attack the issues raised in the pending NHTSA Petitions.

*Second,* the Court recognized that, "with regards to the need for uniformity purpose, invoking the doctrine would be inappropriate when the Court would not unduly interfere with the administrative process."  2015 WL 12641693, at *2 (citation and quotation marks omitted).  At

11

the time of the prior stay motion filed by other defendants, there were no Petitions for Inconsequentiality pending before NHTSA, but now there are, such that the "administrative process" is directly and actively underway.  Indeed, it is difficult to imagine how a federal MDL decision concerning plaintiffs' claims about the Takata airbags in the GMT900 vehicles would not "unduly interfere" with NHTSA's determinations and the administrative process, and directly "impair[] [] NHTSA's investigation or recall processes."  *Id.*

   *Third*, the Court also observed that "it may take years for NHTSA to reach a conclusion as to the existence of any defect, or NHTSA may not reach any conclusion regarding the purported defect.  Should that be the case, this MDL could be stayed for years with no narrowing of the issues—hardly an efficient outcome."  *Id.*  Here, the Petitions have already been filed and if NHTSA grants the Petitions, its finding that the Takata inflators in New GM's GMT900 vehicles do not have a defect which affects motor vehicle safety certainly will be key in defining the scope of plaintiffs' claims, discovery, and motion practice—for example, such a finding would be incompatible with plaintiffs' allegations that there is a defect in these unique airbags or that New GM delayed a recall and that plaintiffs are experiencing continuing harm.  Accordingly, a stay is appropriate here.  *See Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 307–08 (1973) ("And either determination will be of great help to the antitrust court in arriving at the essential accommodation between the antitrust and the regulatory regimes:  The problem disappears entirely if it is found that there has been a violation of the rule; on the other hand, if it is found that the Exchange has merely followed and enforced its own rules, the antitrust court will be in a position to make a more intelligent and sensitive judgment as to whether the antitrust laws will punish what an apparently valid rule of the Exchange permits.").  As the Supreme Court concluded in *Ricci*, "Affording the opportunity for administrative action will prepare the way . . . for a more informed

and precise determination by the Court. . . ."  *Id.*  Allowing NHTSA to rule on the Petitions will do likewise here.

*Fourth*, the previously requested stay would have covered all defendants, but this stay would apply only to the economic loss claims against New GM, and, therefore, will not substantially impact the progress of this MDL.  Moreover, as noted *supra*, plaintiffs did not pursue any case against New GM for over two years.  In addition, the Court previously cautioned that staying claims on the Economic Damages Track would be inefficient while discovery continued in the Personal Injury Track.  2015 WL 12641693, at *3.  There are no personal injury cases currently pending against New GM in the MDL, thus taking this concern off the table altogether.

In sum, as a procedural and substantive matter, this case embodies precisely the circumstances where the "enforcement of a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* at *1.  Accordingly, even under the most "conservative" application, the Court should exercise its discretion and stay the case against New GM for six months while the Petitions are pending before NHTSA under the primary jurisdiction doctrine.  *Id.* at *2.

## II.    Alternatively, The Court Should Exercise Its Broad Discretion To Issue A Stay Pursuant To *Landis* And Its Progeny.

In the alternative, New GM requests that this Court stay proceedings pursuant to the Court's "broad discretion to stay proceedings as incident to its power to control its own docket." *Garcia*, 2017 WL 4169670, at *4 (granting stay) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997) and *Landis,* 299 U.S. at 254); *see also U.S. ex rel. Postel Erection Grp., L.L.C. v. Travelers Cas.*

& *Ins. Co. of Am.*, 2012 WL 2505674, at *1 (M.D. Fla. June 28, 2012) ("This Court has broad authority to stay proceedings incident to its power to control its own docket.").[13]

Judges regularly grant such stays when the outcome of pending proceedings in another forum—including an administrative agency—will likely affect the proceedings in their own courts. *See Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 733 (3d Cir. 1983) (finding that even though primary jurisdiction did not apply, stay pending outcome of state administrative proceedings "was nevertheless a reasonable exercise of the court's power to control its docket"); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) ("This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."); *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 482 (N.D. Tex. 2016) ("Although the court decided the *Landis* case in the context of a district court's decision to grant a stay in favor of related federal litigation, courts have since invoked the *Landis* decision to grant or deny stays in multiple other contexts.") (internal citation to *Landis* omitted).

Courts in this Circuit have articulated various factors that guide the court in exercising its discretion to issue a *Landis* stay. These include "prejudice to the non-moving party, whether the requested stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court." *See Mackiewicz v. Nationstar Mortg., LLC*, 2015 WL 11983233, at *1 (M.D. Fla. Nov. 10, 2015) (granting stay); *see also Garcia*, 2017

---

[13] Of course, an MDL court such as this one has particularly broad authority to manage the litigation before it. *See In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700–01 (9th Cir. 2011) ("There is much, of course, that an MDL court can do in its sound discretion in order to manage multidistrict litigation effectively. It can designate a lead counsel. It can hold some cases in abeyance while proceeding with others. In discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court is at its peak.").

WL 4169670, at *4 (S.D. Fla. Sept. 20, 2017) (granting stay following analysis of same factors). Here, all of these factors support a stay.

*First*, plaintiffs will not be prejudiced by the brief requested stay which would apply exclusively to the economic damages claims brought by the putative class against New GM, since there are no personal injury claims pending against New GM.  Plaintiffs concede that "the damages suffered by each individual Class member may be relatively small."  (Compl. ¶ 177.)[14]  Moreover, given that, plaintiffs' counsel have made the tactical decision to allow claims against New GM to lay dormant for more than two years while they pursued other defendants, they can hardly argue that a modest stay now will cause any harm.

*Second*, New GM has narrowly tailored its requested relief to a six-month stay, with the parties permitted to file memoranda as to the appropriateness of extending the stay for an additional six-month period or ending it sooner if NHTSA rules on the Petitions.  Numerous courts have found that these sorts of stays and related procedures satisfy the Supreme Court's directive that stays not be "immoderate."  *See Landis,* 299 U.S. at 257 (holding that "an order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done").

For example, in *Miccosukee Tribe of Indians v. S. Florida Water Mgmt. Dist.*, 2007 WL 7377465, at *3 (S.D. Fla., Mar. 28, 2007), the Court "exercise[d] the considerable discretion at its disposal in managing its docket to fashion the instant stay such that its force will be spent within reasonable limits."  The Court "enter[ed] a stay in the instant case for a duration of one year or

---

[14] To the extent plaintiffs are seeking injunctive relief in the form of recall oversight and monitoring (*see, e.g.*, Compl. at 215–16 (Prayer for Relief seeking, *inter alia*, "such other injunctive relief that the Court deems just and proper")), such a request should likewise be dismissed based on the primary jurisdiction doctrine.  *See* 2015 WL 12641693, at *3 (in connection with previous stay motion, noting that plaintiffs stated that they did not intend to seek recall-related injunctive relief and had agreed to strike paragraphs seeking such relief).

until the conclusion of the appeals process in [a related case], whichever is sooner," with the parties to file a joint status report and submit memoranda as to their respective positions on whether or not any further stay should issue prior to the expiration of the stay. *Id.*; *see also SE Prop. Holdings, LLC v. Parks*, 2014 WL 3687226, at *6 (S.D. Ala. July 24, 2014) (staying case until "until April 1, 2015" and ordering parties "to file a joint status report on or before October 1, 2014, to advise the Court as to the status of the underlying litigation."); *Dean v. Douglas*, 2012 WL 6151137, at *4 (M.D. Ga. Dec. 11, 2012) ("Thus, with this consideration in mind, the Court enters a stay in this action for a duration of 120 days or until the resolution of the criminal proceedings, whichever is sooner.  At the conclusion of 120 days, such stay will expire by its own terms").[15]

*Third*, NHTSA's decision on the Petitions will certainly streamline and clarify the issues before this Court, as discussed in connection with the case for primary jurisdiction, *supra*.  *Finally*, a stay here will reduce the burden on the parties and the Court.  If the parties were to engage in discovery and motion practice before the Court at this time, they would do so without the benefit of NHTSA's resolution of whether the Takata inflators in GMT900 vehicles affect motor vehicle safety and whether New GM must conduct a recall and provide a recall remedy.  Waiting for NHTSA's action on New GM's Petitions will ultimately conserve the resources of the Court and the parties.

---

[15] *See also In re Latimer*, 489 B.R. 844, 875 (Bankr. N.D. Ala. 2013) (providing for status conference every three months during pendency of stay so that "the parties may report on the progress of the arbitration, or lack thereof, and express their displeasure, if any, with the same or recommendations with respect to going forward"; "[i]n that way the Court can keep its fingers on the pulse of the arbitration, and evaluate the continued necessity of the stay in its present form in light of the circumstances existing at any such point in time."); *Cheyney State Coll. Faculty*, 703 F.2d at 738 ("As we divine the district court's intention, defendants must report at 90-day intervals on the progress of the administrative proceedings.  That provision for oversight will enable the court to gauge whether the stay has produced fruitful results or mere delay.  If it is the latter, we are confident that the court will terminate the stay and proceed forthwith."); *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 288 (D.D.C. 2016) ("[O]n the basis of the Shareholders' representation that those proceedings will conclude within two and a half years, the stay of these proceedings is granted until January 21, 2019, unless the Set-Aside Proceedings conclude earlier.  The parties must, every six months, jointly file a status report advising the Court of the status of the Set-Aside Proceedings.").

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), counsel for New GM has met and conferred with plaintiffs' counsel in an attempt to resolve the issues raised in this motion, and the parties have been unable to reach agreement.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), New GM respectfully requests oral argument on its Motion to Stay. Given the unique circumstances concerning New GM and its Petitions before NHTSA, New GM respectfully submits that a hearing on the motion will assist the Court in its decision-making process and allow counsel for the parties to answer any questions the Court may have. New GM estimates that no more than an hour will be necessary for argument.

## CONCLUSION

For all the foregoing reasons, New GM respectfully requests the Court enter an order staying this case against New GM in its entirety for six months, subject to a request to modify or extend the stay subject to NHTSA's ruling on the Petition.

17

Dated:  August 20, 2018

Respectfully submitted,

 */s/ Laurie M. Riley*

Laurie M. Riley, Esq. (FL Bar No. 657751)
Jones Walker LLP
201 South Biscayne Boulevard, Suite 2600
Miami, FL 33131
Telephone: 305-679-5728
Facsimile: 305-679-5818
Email: lriley@joneswalker.com

-and-

Renee D. Smith (*pro hac vice*)
Leonid Feller (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle St
Chicago, IL  60654
Tel:  (312) 862-2000
Fax:  (312) 862-2200
Email: renee.smith@kirkland.com
Email: leonid.feller@kirkland.com

*Attorneys for General Motors LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2018, I electronically filed the foregoing Motion using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: <u>*/s/ Laurie M. Riley*</u>
Laurie M. Riley, Esq.