# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION**<br><br>This Document Relates to All Economic Loss Class Actions and:<br><br>---<br><br>DAVID WHITAKER, *et al.*, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>GENERAL MOTORS COMPANY, GENERAL MOTORS HOLDINGS LLC, and GENERAL MOTORS LLC,<br><br>              Defendants. | MDL No. 2599<br><br>Master File No.15- MD 2599- FAM<br><br>S.D. Fla. Case No. 1:14-cv-24009- FAM |

## PLAINTIFFS' OPPOSITION TO
## GENERAL MOTORS LLC'S MOTION TO STAY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

I.  Plaintiffs' Complaint Against New GM Complaint Is Premised on the Inherent Danger of Ammonium Nitrate .................................................................................. 3

II.  Takata Has Admitted and NHTSA Has Acknowledged that Takata's Ammonium Nitrate Inflators "Present an Unreasonable Risk of Serious Injury or Death" ................ 4

III.  New GM's Petitions for Inconsequentiality Are Not Relevant to "the Existence of a Defect Related to Motor Vehicle Safety" ................................................................... 5

IV.  NHTSA Has Been Investigating the Safety Risk Posed by Takata Inflators Since 2014 and Recently Expressly Reaffirmed the Important Role of Private Litigation in that Investigation ................................................................................................................ 7

ARGUMENT ...................................................................................................................... 8

I.  The Primary Jurisdiction Doctrine Does Not Apply Here ............................................ 8

A.  Legal Standard ..................................................................................................... 8

B.  The Claims Against New GM Are Within the Conventional Competence of the Courts ................................................................................................................... 9

C.  The Pending Claims Against New GM Do Not Raise a Special Need for Uniformity .......................................................................................................... 10

II.  A Discretionary Stay Is Also Not Warranted Here ...................................................... 16

A.  Legal Standard ................................................................................................... 16

B.  There Is No "Clear Inequity" in Requiring New GM to Defend this Litigation During the Pendency of its Petitions ................................................................. 16

C.  New GM's Requested Stay Is Effectively Indefinite and Therefore Immoderate ... 18

D.  Judicial Economy Is Insufficient to Justify a Stay .......................................... 19

CONCLUSION ................................................................................................................ 20

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Boyes v. Shell Oil Prods. Co.*,
    199 F.3d 1260 (11th Cir. 2000)............................................................8,10

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) ...................................................................17

*Cheyney State Coll. Faculty v. Hufstedler*,
    703 F.2d 732 (3d Cir. 1983)......................................................................19

*Guild v. General Motors Corp.*,
    53 Supp. 2d 363 (W.D.N.Y. 1999) ..............................................................3

*I.A. Durbin, v. Jerfferson Nat. Bank*,
    793 F.2d 1541 (11th Cir. 1986) .................................................................16

*In re Checking Account Overdraft Litig.*,
    307 F.R.D. 630 (S.D. Fla. 2015)................................................................17

*In re Takata Airbag Prod. Liab. Litig.*,
    No. 14-24009-CV, 2015 WL 12641693 (S.D. Fla. Sept. 21, 2015) ............1

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010)...........................................9

*Kent v. DaimlerChrysler Corp.*,
    200 F. Supp. 2d 1208 (N.D. Cal. 2002) .....................................................14

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...............................................................................16,18

*Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*,
    559 F.3d 1191 (11th Cir. 2009) .................................................................19

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290 (1976)................................................................................9,14

*Noel v. Ford Motor Co.*,
    No. 6:11-cv-370, 2013 WL 12160973 (M.D. Fla. May 7, 2013) ................3

*Ortega Trujillo v. Conover & Co. Commc'ns*,
    221 F.3d 1262 (11th Cir. 2000) ...................................................14,16,18-19

*Ricci v. Chi. Mercantile Exch.*,
    409 U.S. 289 (1973)...................................................................................14

*Sanchez-Knutson v. Ford Motor Co.*,
  52 F. Supp. 3d 1223 (S.D. Fla. 2014) ............................................................................ 8-9,13

*United States v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956) ........................................................................................................8

*Varner v. Domestic Corp.*,
  No. 16-22482-CIV, 2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) ..............................................3

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) ......................................................................................3

## STATUTES

49 CFR § 556.1(a)...........................................................................................................7,15

49 CFR § 556.4(c)...........................................................................................................7,15

Plaintiffs respectfully submit this memorandum of law in opposition to General Motors LLC's Motion to Stay (the "Motion to Stay") (ECF No. 2980).

INTRODUCTION

General Motors LLC's ("New GM's") motion to stay the Consumer Class Action (the "New GM Complaint") should be denied.[1] This Court has already addressed this very same issue when Toyota, Nissan, Ford, and Subaru filed a motion to stay in 2015 (the "First Motion to Stay") (ECF No. 610). This Court **denied** the First Motion to Stay. *See In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2015 WL 12641693 (S.D. Fla. Sept. 21, 2015) (Moreno, J.). Whether considered under the "primary jurisdiction" doctrine or as a discretionary stay, New GM's present motion should be denied for the same reasons the First Motion to Stay was denied. As this Court observed when denying the First Motion to Stay, "[f]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Id.* at *1. As with the First Motion to Stay, any alleged need for expertise, uniformity, or judicial efficiency is outweighed by the Court's obligation to exercise jurisdiction.

New GM's attempt to distinguish the First Motion to Stay by invoking its pending Petitions for Inconsequentiality with the National Highway Traffic Safety Administration ("NHTSA") is unavailing. According to New GM, a stay is appropriate because the New GM Complaint "turns largely on the question of whether its GMT900 inflators are defective and pose unreasonable safety risks," and because a stay "will promote uniformity and avoid conflicting findings." (ECF No.

---

[1]   The Motion to Stay has been brought only by New GM, and not by Defendant General Motors Holdings LLC ("GM Holdings"; the sole member and owner of New GM) or Defendant General Motors Company ("GM Parent"; the sole member and owner of GM Holdings). The litigation against GM Holdings and GM Parent would therefore continue regardless of whether New GM's motion is granted. And, New GM has only moved to stay the Consumer Class Action (ECF No. 2759), and not the Automotive Recyclers' separate complaint (ECF No. 2781). Litigation by the Automotive Recyclers against all three GM Defendants would therefore continue regardless of whether New GM's Motion to Stay is granted.

1

2980 at 2, 6.) But this Court rejected these *same arguments* when it denied the First Motion to Stay, where other automakers likewise contended a stay pending NHTSA's investigation was necessary because "the claims would be more efficiently addressed by the Court after NHTSA makes a determination as to the purported vehicular defect," and because there was a risk of "inconsistent findings as to defectiveness from the Court and NHTSA." *In re Takata*, 2015 WL 12641693, at *2 n.3, *3. This Court concluded then that the mere possibility of "inconsistent findings" and alleged "waste of resources" did not warrant application of the primary jurisdiction doctrine, in part, because that doctrine "should be used conservatively." *Id.* at *3. As with the First Motion to Stay, Plaintiffs' claims here fall squarely "within the conventional competence of the courts." *Id.* at *2 (quotation omitted). This Court's earlier rationale for rejecting the First Motion to Stay is therefore equally applicable here.

New GM's motion also fails to even acknowledge that there are over 700,000 other GM vehicles that are currently subject to recalls and are unaffected by New GM's Petitions for Inconsequentiality. New GM has not disputed Takata's determination that a rupture could occur in the event of an airbag deployment in these 700,000 vehicles, which contain Takata driver-side, passenger-side, and side airbags, and New GM has itself "decided that a defect that relates to motor vehicle safety exists." New GM Part 573 Safety Recall Report (15V-324); New GM Part 573 Safety Recall Report (15V-666).[2]

---

[2]   *Available at* https://static.nhtsa.gov/odi/rcl/2015/RCLRPT-15V324-4980.PDF (last visited Sept. 13, 2018); https://static.nhtsa.gov/odi/rcl/2015/RCLRPT-15V666-8365.PDF (last visited Sept. 13, 2018).

BACKGROUND[3]

I.     **Plaintiffs' Complaint Against New GM Is Premised on the Inherent Danger of Ammonium Nitrate.**

Plaintiffs allege in the New GM Complaint that the GM Defendants knowingly equipped GM vehicles with Takata airbags that "share a common, uniform defect: the use of ammonium nitrate, a notoriously volatile and unstable compound" that is prone to "irregular and dangerous behavior resulting in violent combustion." (New GM Complaint, ECF No. 2759, ¶ 6.)  Because they contain ammonium nitrate, the "defective Takata airbags create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury." (*Id.*, ¶ 18.) Indeed, Takata airbags with ammonium nitrate inflators "have been responsible for at least 22 deaths and hundreds of serious injuries in the United States alone." (*Id.*, ¶ 7.)  According to the allegations in the New GM Complaint—which at this stage must be accepted as true— modifications to the inflators are "at best, a temporary fix" because there is no way to change the inherently dangerous properties of ammonium nitrate. (*Id.*, ¶ 92.)  Plaintiffs allege that New GM, GM Holdings, and GM Parent knew about "the lethal instability of Takata's ammonium-nitrate based inflator by no later than 1999," but still used them in millions of New GM vehicles anyway, causing damages to Plaintiffs. (*Id.*, ¶¶ 9-21.)

---

[3]   The materials cited below are publicly available administrative filings and orders and recall notices, of which the Court is permitted to take judicial notice of their existence, not to prove the truth of their contents. *See Varner v. Domestic Corp.*, No. 16-22482-CIV, 2017 WL 3730618, at *3 (S.D. Fla. Feb. 7, 2017) ("Courts have found that '[t]he contents of an administrative agency's publicly available files . . . traditionally qualify for judicial notice . . . .'") (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212-13 (10th Cir. 2012) (taking judicial notice of NHTSA recall notices)). These are also admissible as public records, under Federal Rule of Evidence 803(8). *See Noel v. Ford Motor Co.*, No. 6:11-cv-370, 2013 WL 12160973, at *1 (M.D. Fla. May 7, 2013) (noting that NHTSA reports were admissible under Rule 803(8)'s public records exception to hearsay) (citing *Guild v. General Motors Corp.*, 53 Supp. 2d 363, 366 (W.D.N.Y. 1999) (same)).

## II. Takata Has Admitted and NHTSA Has Acknowledged that Takata's Ammonium Nitrate Inflators "Present an Unreasonable Risk of Serious Injury or Death."

On May 18, 2015, Takata filed four Defect Information Reports ("DIRs") in which it "admitted that certain types of air bag inflators manufactured by Takata with a phase-stabilized ammonium nitrate propellant . . . contain defects constituting an unreasonable risk to safety." NHTSA Coordinated Remedy Order, Nov. 3, 2015, at ¶ 12 (emphasis added).[4] Notably, NHTSA determined that these airbags were defective and dangerous "*regardless* of vehicle architecture, high absolute humidity exposure, or other factors." General Motors LLC, Part 573 Safety Recall Report (15V-324) at 3 (emphasis added).[5] As a result, New GM issued its own DIR, recalling all of the airbags specified in the Takata DIRs. *See id.*

As the unprecedented scope and gravity of the Takata recalls became clear, NHTSA issued its first Coordinated Remedy Order on November 3, 2015. In that Order, NHTSA acknowledged that:

> [T]he propellant in inflators covered by the Inflator Recalls and the recalls within the scope of this Order have, at various rates of frequency, a propensity to ignite and/or burn in an unexpected way that may cause the pressure inside the inflator to increase too quickly, causing the inflator to rupture. That rupture causes the metal canister of the inflator to break away in hot, shrapnel-like fragments, which shoot out of the air into the passenger cabin and towards the driver or any occupants who are nearby.

NHTSA Coordinated Remedy Order, Nov. 3, 2015, ¶ 29.  Accordingly, NHTSA concluded that "[e]ach air bag inflator with the capacity to rupture, as the recalled Takata inflators do, presents an unreasonable risk of serious injury or death." *Id.*, ¶ 32 (emphasis added); *see also id.* 16 n.9 ("All

---

[4]     *Available at* https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/nhtsa-coordinatedremedy order-takata.pdf (last visited Sept. 13, 2018).

[5]     *Available at* https://static.nhtsa.gov/odi/rcl/2015/RCLRPT-15V324-9499.PDF (last visited Sept. 13, 2018).

recalled Takata inflators have previously been determined to pose an unreasonable risk of death or serious injury in a crash, as established in the filing of each of the many DIRs for the recalled inflators.") (emphasis added).

By May 4, 2016, investigations into the root cause of the defect led NHTSA to acknowledge that "the expected rate of degradation will . . . vary considerably depending on the type of inflator at issue and the specific vehicle makes and models in which the inflators are installed." NHTSA, May 3, 2016 Amendment to November 3, 2015 Consent Order, ¶ 6.[6] Nevertheless, NHTSA concluded that "at some point in the future ***all*** non-desiccated frontal Takata PSAN inflators will reach a threshold level of degradation that could result in the inflator becoming unreasonably dangerous." *Id.*, ¶ 12 (emphasis added). Accordingly, "[t]o mitigate and control the risk of serious injury or death due to an air bag inflator rupture," NHTSA set forth a schedule for Takata to issue rolling DIRs covering all non-desiccated Takata PSAN inflators not yet under recall.  *Id.*, ¶ 14.

III.    **New GM's Petitions for Inconsequentiality Are Not Relevant to "the Existence of a Defect Related to Motor Vehicle Safety."**

In response to Takata's rolling DIRs, New GM filed its own DIRs for vehicles containing the defective ammonium nitrate inflators. Despite NHTSA's and Takata's admissions to the contrary, New GM asserted in an attachment to those DIRs that its GMT900 vehicles "do not contain a present defect which poses an unreasonable risk to motor vehicle safety." New GM Petition for Inconsequentiality, Nov. 15, 2016, at 8.[7] On November 15, 2016, New GM thus filed

---

[6]    *Available at*  https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/amendment_nov3_2015-consentorder.pdf (last visited Sept. 13, 2018).

[7]    *Available at* https://www.regulations.gov/document?D=NHTSA-2016-0124-0002 (last visited Sept. 13, 2018).

the first of three Petitions for Inconsequentiality (one following each of the three rolling Takata DIRs due under the May 3, 2016 Amended Consent Order) requesting an exemption from its recall responsibilities because "GM has not determined that a defect that poses an unreasonable risk of safety exists in the Subject GMT900 Vehicles. *Id.* at 9. Recently, in June 2018, New GM informed NHTSA that its investigation was substantially complete and claimed that the results "demonstrate that the Takata inflators in GMT900 vehicles are not defective and will continue to perform safely for decades even in the highest risk climates of the United States." General Motors, GMT900 Takata Airbag Inflator Investigation, June 8, 2018 Presentation to NHTSA, at 3, 5.[8]

As an initial matter, New GM's Petitions cover only vehicles built on the GMT900 platform; they do not cover all of the vehicles at issue in the New GM Complaint.[9] There are over 700,000 other GM vehicles, ranging from the Chevrolet Camaro to the Buick LaCrosse to the Cadillac XTS that are currently subject to recalls—and in the process of having their airbags replaced—that are unaffected by New GM's Petitions. As to these vehicles, New GM has not disputed Takata's determination that a rupture could occur in the event of an airbag deployment or that New GM itself "has decided that a defect that relates to motor vehicle safety exists." New GM Part 573 Safety Recall Report (15V-324); New GM Part 573 Safety Recall Report (15V-666).[10]

---

[8]  *Available at* https://www.regulations.gov/document?D=NHTSA-2016-0124-0163 (last visited Sept. 13, 2018).

[9]  The Petitions only cover vehicles under NHTSA recall numbers 16V381, 16V383, 17V010, 17V019, 17V021, 18E001, 18E002, and 18E003. *Compare* Complaint ¶ 77 (table listing vehicles subject to numerous additional recalls).

[10]  *Available at* https://static.nhtsa.gov/odi/rcl/2015/RCLRPT-15V324-4980.PDF (last visited Sept. 13, 2018); https://static.nhtsa.gov/odi/rcl/2015/RCLRPT-15V666-8365.PDF (last visited Sept. 13, 2018).

Furthermore, New GM's initial Petition was filed nearly two years ago on November 15, 2016. And to date, NHTSA has not given any indication of if and when it will act on New GM's Petitions. If and when NHTSA does act on the Petitions, it will not decide whether the GMT900 vehicles contain a defective airbag inflator—Takata has already admitted and NHTSA has acknowledged that they do—but rather whether "the defect or noncompliance is inconsequential as it relates to motor vehicle safety." 49 CFR § 556.1(a); *see also id.* § 556.4(c) (petition for inconsequentiality is not "considered relevant to[] the existence of a defect related to motor vehicle safety").

## IV. NHTSA Has Been Investigating the Safety Risk Posed by Takata Inflators Since 2014 and Recently Expressly Reaffirmed the Important Role of Private Litigation in that Investigation.

NHTSA has been continuously managing recalls and investigating the defective Takata ammonium nitrate inflators since at least June 11, 2014, when it formally opened preliminary investigation number PE14-016.  In re: Docket No. NHTSA-2015-0055 Coordinated Remedy Program Proceeding, Nov. 3, 2015, ¶ 7; *see also id.*, ¶¶ 8-18 (detailing NHTSA's actions up through the 2015 period).[11]

As part of its cooperation with NHTSA, Takata entered into a Preservation Order and Testing Control Plan that expressly recognizes the role of private litigation in "determining whether the current safety actions are sufficient to address the safety risk and to provide an effective remedy to vehicle owners, and deciding what, if any, further actions are necessary to protect the safety of vehicle occupants." In re: EA15-001 Air Bag Inflator Rupture, Amendment

---

[11]  *Available at* https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/nhtsa-coordinatedremedyorder-takata.pdf (last visited Sept. 13, 2018).

to the February 25, 2015 Preservation Order and Testing Control Plan, April 12, 2018, ¶ 7.[12] In a recent April 2018 amendment to that Preservation Order, NHTSA specifically referenced this MDL and reaffirmed that "[t]here remains a federal interest in ensuring that NHTSA, in the course of its ongoing defect investigation, has full access to information on any testing performed on Takata inflators, including by plaintiffs, their experts, and any plaintiffs' consortium." *Id.*, ¶¶ 9-10.

**ARGUMENT**

## I.     The Primary Jurisdiction Doctrine Does Not Apply.

### A.     Legal Standard.

The primary jurisdiction doctrine is narrow and applies only "when 'enforcement of a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . .'" *In re Takata*, 2015 WL 12641693, at *1 (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956)). "The doctrine is rooted in: (1) the desirability of expert and specialized knowledge of agencies, and (2) the need for uniformity." *Id.* at *2 (citing *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000)). As this Court previously observed, "[the] doctrine should be used conservatively given the Court's 'virtually unflagging obligation to exercise jurisdiction' over cases appropriately before it." *Id.* (quoting *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1238 (S.D. Fla. 2014)).

This Court's ruling denying the First Motion to Stay addressed the two considerations on which the doctrine is based—the specialized knowledge of agencies and the need for uniformity—and rejected the same arguments New GM makes now.

---

[12]     *Available at* https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/takata-preservation-order-02252015.pdf (last visited Sept. 13, 2018).

**B.     The Claims Against New GM Are Within the Conventional
Competence of the Courts.**

In denying the First Motion to Stay, this Court stated that "[w]ith regards to the expert and

specialized knowledge purpose, invoking the primary jurisdiction doctrine would be appropriate

when the matter before the court 'involves technical questions of fact uniquely within the expertise

and experience of an agency,' but would be inappropriate when the 'standards to be applied . . .

are within the conventional competence of the courts.'" *In re Takata*, 2015 WL 12641693, at *2

(quoting *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305 (1976)).  Plaintiffs assert the same

claims against New GM as plaintiffs in the 2015 Complaint against several automakers who

have now settled. (*See* ECF No. 579.) Plaintiffs in the New GM Complaint bring claims for

violations of RICO and the Magnuson-Moss Warranty Act, common law claims for fraudulent

concealment, unjust enrichment, and negligence, and claims under state consumer protection

statutes.  *Cf. In re Takata*, 2015 WL 12641693, at *2.

And as this Court's order on automakers' First Motion to Stay observed, "[c]ourts routinely

hear these types of claims. While the claims may be premised on the existence of a vehicular

defect, courts ***routinely*** make determinations regarding such defects."  *Id.* (emphasis added); *see

also Sanchez-Knutson*, 52 F. Supp. 3d at 1238 ("Ford's argument of deferral to NHTSA because

Plaintiff's claims implicate vehicle safety issues has been offered and rejected."); *In re Toyota

Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp.

2d 1145, 1200 (C.D. Cal. 2010) (declining to apply primary jurisdiction doctrine where "the claims

that Plaintiffs assert in this case do not arise under the Safety Act or NHTSA regulations; rather,

they are based on California statutes, the MMA [Magnuson-Moss Warranty Act], and general

contract and tort principles"). "Accordingly," as this Court already determined, "the claims before

the Court do not involve technical questions of fact uniquely within the expertise and experience

9

of an agency, rather, the issues raised are within the conventional competence of the courts." *In re Takata*, 2015 WL 12641693, at *2 (quotations omitted). New GM makes no attempt to distinguish the claims against it in the New GM Complaint from those that this Court previously found were within the conventional competence of the courts. Nor can it as the claims are the same.

      **C.**      **The Pending Claims Against New GM Do Not Raise a Special Need for Uniformity.**

In denying the First Motion to Stay, this Court also stated that "[w]ith regards to the need for uniformity purpose, invoking the doctrine would be inappropriate when the Court would not unduly interfere with the administrative process." *Id*. (citing *Boyes*, 199 F.3d at 1265). As with the First Motion to Stay, staying the case against New GM would be inappropriate because litigating the claims in Plaintiffs' complaint against New GM will not unduly interfere with NHTSA's administrative process. As the Court previously concluded in denying the First Motion to Stay, "the Court's determination of the pending claims and the underlying issue of the purported defect will not impede NHTSA's progress on its investigation and recall, nor should it impact Defendants' ability to comply with NHTSA's orders." *Id.* The existence of New GM's Petitions does not change this conclusion, and New GM's attempt to distinguish this Court's prior opinion on that basis is unpersuasive.

*First*, New GM suggests that Plaintiffs' reference to the New GM Petitions differentiates the New GM Complaint from the 2015 Complaint and somehow invokes NHTSA's jurisdiction by "plac[ing] the timing and execution of any recall-related remedy and notification"—issues under NHTSA's exclusive authority—"directly at issue." (ECF No. 2980 at 10.) But the "timing and execution" of the recalls were equally at issue in the 2015 Complaint, which this Court declined to stay. (*See, e.g.*, 2015 Complaint, ECF No. 579 ¶ 25 ("As a result of Defendants' concealment of the Inflator Defect for more than a decade, the recalls now underway cannot be

implemented effectively. Defendants have acknowledged that the process could take at least three *years* because of supply constraints."); *id*., ¶ 35 ("Defendants unjustly benefited from their unconscionable delay in recalling their defective products, as they avoided incurring the costs associated with recalls and installing replacement parts for many years."); *id*., ¶ 246 ("In August 2009, NHTSA's Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and 'to evaluate the timeliness of [Honda's] recent defect decision.'"); *id*., ¶ 306 ("[T]he risk of injury remains very real, and is exacerbated by Defendants' poor execution of the recalls . . . .").) New GM's attempt to distinguish its motion from the First Motion to Stay on the timing and execution of recall-related remedies, therefore, fail.

*Second*, New GM asserts that in 2015 "there were no Petitions for Inconsequentiality pending before NHTSA," and now there is an administrative process "directly and actively underway" as a result of New GM's Petitions. (ECF No. 2980 at 11-12.) But there was indeed a complex administrative process "directly and actively underway" in 2015. *See, e.g.*, In re: Docket No. NHTSA-2015-0055 Coordinated Remedy Program Proceeding, Nov. 3, 2015, ¶ 11 ("On February 24, 2015, NHTSA upgraded PE14-016 to an engineering analysis (EA15-001)."); *id*., ¶ 14 ("As part of the Coordinated Remedy Program Proceeding, launched on June 5, 2015, NHTSA sought information from each of the Initial Vehicle Manufacturers, Takata, and other major inflator suppliers[.]"); *id*., ¶ 17 ("On September 23 and 24, 2015, NHTSA convened problem-solving meetings with the Initial Vehicle Manufacturers to examine aggregate data and engage in a collaborative risk analysis to aid NHTSA in developing a principled, rational, risk-mitigation based approach for the prioritization and phasing of recall plans."). Moreover, it was a strongly contested administrative process until Takata agreed to NHTSA's November 2015 Consent Order.

Now, in contrast, Takata has admitted and NHTSA has acknowledged the presence of the safety defect in all non-desiccated Takata PSAN inflators.

Nor are GM's Petitions for Inconsequentiality unique as New GM claims. Indeed, other vehicle manufacturers filed petitions for inconsequentiality determinations by NHTSA during the pendency of this litigation for certain Takata inflator models included in their vehicles. On August 16, 2017, Ford, for example, filed a Petition for Inconsequentiality with NHTSA relating to Takata's PSDI-5 airbag inflators containing calcium sulfate as a desiccant, *i.e.*, a drying agent, which is used in certain Ford vehicles.[13] Mazda also filed a similar Petition at the same time.[14] Neither, however, moved to stay this action while their petitions were pending, and discovery proceeded in this MDL. It is also worth noting that more than a year has passed since New GM's Petitions were filed, and NHTSA has not issued any decisions.

Just like New GM does now, in the First Motion to Stay, automakers argued that this Court should stay the case during the pendency of this administrative process "to allow the NHTSA to address the core issues that underlie all of Plaintiffs' claims—the scope of the problem and whether the airbags at issue are unsafe." (ECF No. 700 at 3.) According to the automakers, "if NHTSA finds for example, that some inflators that use ammonium nitrate are not defective, it will obviously undermine Plaintiffs' claims." *Id.* at 6.

New GM makes the identical flawed arguments here. New GM's Petitions ask NHTSA to determine whether the GMT900 vehicles are unsafe. *See* General Motors, GMT900 Takata Airbag

---

[13]     *Available at* https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/ford_petition_for_ inconsequentiality_re_calcium-sulfate_desiccated_psdi-5_driver-side_inflators_submission.pdf (last visited Sept. 13, 2018).

[14]     *Available at* https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/mazda_petition_for_ inconsequentiality_re_calcium-sulfate_desiccated_psdi-5_driver-side_inflators_submission_2.pdf (last visited Sept. 13, 2018).

Inflator Investigation, June 8, 2018 Presentation to NHTSA, at 32 ("Based on all of the findings described herein, GM concludes that GMT900 Takata inflators do not pose an unreasonable risk to motor vehicle safety and requests that NHTSA grant its inconsequentiality petitions.").[15] And like the automakers in the First Motion to Stay, New GM argues that its motion should be granted "[g]iven the problems that will ensue should the Court issue orders or judgements contrary or in direct conflict with subsequent NHTSA findings . . . ."  (ECF No. 2980 at 9.)  The Court rejected these exact arguments in 2015 and should do so again now because, like the previous round of automakers, New GM has "fail[ed] to point to any direct impairment to NHTSA's investigation or recall processes that a determination from this Court regarding the vehicles' purported defect would have." *In re Takata*, 2015 WL 12641693, at *2; *see also Sanchez-Knutson*, 52 F. Supp. at 1233 ("Ford's argument of deferral to NHTSA because Plaintiff's claims implicate vehicle safety issues has been offered and rejected.").  Indeed, over the last three years the cases in this MDL have been litigated vigorously, this Court has issues numerous rulings and seven automakers have settled without anyone, including NHTSA, alleging any interference with NHTSA's regulatory process.

In denying the First Motion to Stay, the Court noted that a Statement of Interest had been filed by the United States Government in which the Government stated that a stay was not necessary because "NHTSA believes that its regulatory and investigative activities may proceed in parallel with—and indeed may benefit from—the continued pendency of this litigation." *In re Takata*, 2015 WL 12641693, at *2 (quoting Statement of Interest [ECF No. 692 at 1-2]).

*Third*, New GM attempts to assuage this Court's concern about the lengthy, potentially multi-year administrative process by noting that "the Petitions have already been filed" and

---

[15]    *Available at* https://www.regulations.gov/document?D=NHTSA-2016-0124-0163 (last visited Sept. 13, 2018).

speculating that a decision by NHTSA in New GM's favor "will be key in defining the scope of plaintiffs' claims, discovery, and motion practice . . . ." (ECF No. 2980 at 12.) But the Petitions have been pending for nearly two years with absolutely no indication as to if and when NHTSA will act on them. *See In re Takata*, 2015 WL 12641693 at *3 (denying First Motion to Stay in part because "it may take years for NHTSA to reach a conclusion as to the existence of any defect . . . ."). Moreover, as the Court noted in its prior opinion denying the First Motion to Stay, "judicial efficiency is not an independent factor to be considered when invoking primary jurisdiction." *Id.* Accordingly, the Court was not persuaded that the claims in the 2015 Complaint could theoretically, years later, be "more efficiently addressed by the Court after NHTSA makes a determination as to the purported vehicular defect." *Id.* The same conclusion should apply here.

New GM exaggerates the potential aid a decision by NHTSA might provide.  Unlike in *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289 (1973), Plaintiffs here are not challenging any regulation, administrative rule, or agency action.[16] *See Nader*, 426 U.S. at 304 (holding that consideration of uniformity did not justify invoking primary jurisdiction doctrine where plaintiff did not challenge any regulation or practice of the agency); *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1218 (N.D. Cal. 2002) (denying stay where "Plaintiff does not challenge a safety standard or any NHTSA regulation").  Any ruling by NHTSA on New GM's Petitions would not invoke any regulation or practice of the agency.

And more importantly, regardless of how NHTSA rules on New GM's Petitions, per NHTSA's regulatory guidelines, New GM's Petitions are not "considered relevant to[] the

---

[16]   *Ricci* is also distinguishable insofar as its holding turns on the conclusion that adjudication by the agency "promises to be of material aid" to the court.  409 U.S. at 302.  As noted above, this Court has already concluded that "judicial efficiency is not an independent factor to be considered when invoking primary jurisdiction."  *In re Takata*, 2015 WL 12641693, at *3.  *See also Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1265 (11th Cir. 2000) ("[T]he interests of judicial economy alone are insufficient to justify such an indefinite [discretionary] stay.").

existence of a defect related to motor vehicle safety." 49 CFR § 556.4(c); *see* New GM Motion at 4 n. 4.   In other words, the Petitions, if granted, **would not** reverse Takata and NHTSA's determination that ammonium nitrate inflators constitute "a defect related to motor vehicle safety." *Id.* Indeed, the standard for granting a petition for inconsequentiality is whether "the defect or noncompliance is inconsequential as it relates to motor vehicle safety," 49 CFR 556.1(a), and is therefore premised on the acknowledgment of the underlying defect. In short, regardless of their outcome, New GM's Petitions will not change the fact that New GM installed inherently dangerous ammonium nitrate inflators in its vehicles, which rendered them defective.

*Fourth*, in its attempt to portray its motion as unique, New GM erroneously asserts that "the previously requested stay would have covered all defendants." (ECF No. 2980 at 13.) Takata and Honda, who had the most vehicles subject to recall, did not move to stay the operative claims in the 2015 Complaint. (*See* ECF No. 647 at 1.) Here, only New GM has moved for a stay, so discovery will continue against Defendants GM Holdings, GM Parent, and the other automakers even if New GM's motion is granted. Furthermore, New GM has not moved to stay the Automotive Recyclers' separate class action complaint, so that litigation will continue against all three GM Defendants regardless of the outcome of this motion. Nor does New GM explain why the stay should apply to claims based on 700,000 GM vehicles that are not even covered by New GM's Petitions. And while it is true that there are currently no personal injury claims against New GM with which to coordinate discovery, that is not a reason for the Court to eschew its "virtually unflagging obligation" to exercise its jurisdiction over this case. Such piecemeal litigation surely does not advance judicial economy or preserve resources, as New GM suggests.

## II.     A Discretionary Stay Is Also Not Warranted Here.

### A.     Legal Standard.

New GM's request for a discretionary stay under *Landis v. North American Co.*, 299 U.S. 248 (1936) and its progeny is also unavailing. New GM seeks to invoke "the general discretionary power of district courts to stay proceedings in the interest of justice and in control of their dockets." *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1552 n.13 (11th Cir. 1986). But "[c]ourts have held that a discretionary stay is justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration." *Id.* "When a district court exercises its discretion to stay a case pending the resolution of related proceedings in another forum, the district court must limit properly the scope of the stay. A stay must not be immoderate." *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000).

### B.     There Is No "Clear Inequity" in Requiring New GM to Defend this Litigation During the Pendency of its Petitions.

According to New GM, its investigation to support its Petitions is "substantially complete." General Motors, GMT900 Takata Airbag Inflator Investigation, June 8, 2018 Presentation to NHTSA, at 3.[17] At this point, New GM is apparently simply waiting for a decision by NHTSA. As a result, New GM can introduce the same alleged evidence and arguments developed for the New GM Petitions in this MDL. There is simply no "clear inequity" in requiring New GM to defend this litigation in the meantime. *See In re Takata*, 2015 WL 12641693, at *2 n.2 ("The Court is confident Defendants can both defend lawsuits and abide by NHTSA's orders.").

---

[17]     *Available at* https://www.regulations.gov/document?D=NHTSA-2016-0124-0163 (last visited Sept. 13).

More importantly, none of New GM's proffered evidence that supports its Petitions has been tested by discovery or cross-examination, which is Plaintiffs' responsibility in this MDL. Indeed, a filing in the NHTSA docket by the Center for Auto Safety and many others sharply contests New GM's Petitions, asserting that "GM is trying to avoid a recall for products that it knows are unsafe by arguing that those products are merely less unsafe than its competitors," and that "[GM's] investigation raises more concerns than it alleviates, and NHTSA should not rely on it."[18]

In contrast, Plaintiffs would be prejudiced by a stay of this litigation. New GM argues that Plaintiffs will not be prejudiced because "the damages suffered by each individual Class member may be relatively small." (ECF No. 2980 at 15.) But this argument turns the class action standard on its head. One of the purposes of a class action is to provide access to the courts for "individual claims [that] may be too small for a separate action by each class member." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016); *see also In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 649 (S.D. Fla. 2015) ("The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability."). And, this lawsuit is far from an "after-thought," as New GM suggests; the MDL counsel appointed by this Court have worked long and hard, with this Court's guidance, to structure this massive litigation in an efficient manner. Neither the amount of potential recovery by each individual class member, nor the procedural history of this massive MDL, provide a basis for staying this litigation.

---

[18]   *Available at* https://www.regulations.gov/document?D=NHTSA-2016-0124-0168, at 8 (last visited Sept. 13, 2018).

**C.**   **New GM's Requested Stay Is Effectively Indefinite and Therefore Immoderate.**

New GM tries to package its six-month stay request as being "narrowly tailored." (ECF No. 2980 at 15.) But this is the same amount of time that was requested by other automakers in 2015—and rejected by this Court. In any event, New GM implies that the stay should be renewed indefinitely until NHTSA renders a decision on the Petitions. (*See id.* at 15, 17) (requesting six-month stay "subject to a request to modify or extend the stay subject to NHTSA's ruling on the Petition").

The Eleventh Circuit has held that a stay ordered by a district court under similar terms was "immoderate and, therefore, an abuse of discretion."  *Ortega Trujillo*, 221 F.3d at 1264. In *Ortega Trujillo*, the district court ordered a stay pending the resolution of a related (and slowly proceeding) case in another court and required the parties to submit a status report every three months. Quoting the Supreme Court's decision in *Landis*, the Eleventh Circuit held that the stay was an abuse of discretion because "'an order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done.'" *Id.* at 1264 n.3 (quoting *Landis*, 299 U.S. at 257). It would likewise be an abuse of discretion to grant New GM's request to stay this litigation until NHTSA rules on the Petitions, which have already been pending for nearly two years without any indication of a forthcoming decision. *See In re Takata*, 2015 WL 12641693 at *3 (denying First Motion to Stay in part because "it may take years for NHTSA to reach a conclusion as to the existence of any defect . . . .").

The cases cited by New GM do not suggest otherwise. Despite New GM's attempt to convince the Court that judges regularly grant stays pending the outcome of administrative proceedings, only one of the cases it cites granted a stay—and even that older, out-of-circuit case

is readily distinguishable. In *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732 (3d Cir.

1983), the Third Circuit held that it did not have jurisdiction to review a district court's stay order

and then stated in dicta that the district court did not abuse its discretion in staying a class action

challenging Pennsylvania's segregated higher education system pending administrative action by

the Department of Justice and litigation underway in another federal district court. *Cheyney State*

*Coll. Faculty v. Hufstedler*, 703 F.2d 732, 735-38 (3d Cir. 1983).  Here, by contrast, there is no

other litigation to which the Court might yield. Moreover, the Eleventh Circuit has distinguished

stays pending in other federal court proceedings from stays pending administrative actions, noting

that the latter stays force the non-moving party "effectively out of court." *Miccosukee Tribe of*

*Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1196 (11th Cir. 2009) ("The present

case is unlike the traditional effectively out of court cases because this stay was not issued pending

the conclusion of state court or administrative proceedings, . . . . It was issued pending the outcome

of other litigation in federal court—the appeal of a lawsuit filed in the same district court."). All

of New GM's remaining discretionary stay cases involve stays granted under markedly different

circumstances—namely, pending arbitrations, criminal proceedings, or state court proceedings

(under the distinct *Colorado River* doctrine), not administrative proceedings.

> **D.      Judicial Economy Is Insufficient to Justify a Stay.**

Finally, New GM contends that "NHTSA's decision on New GM's Petitions will certainly

streamline and clarify issues before this Court" and a stay will therefore "reduce the burden on the

parties and this Court." (ECF No. 2980 at 16.) According to the Eleventh Circuit, however, "the

interests of judicial economy alone are insufficient to justify such an indefinite stay." *Ortega*

*Trujillo*, 221 F.3d at 1265 (holding discretionary stay was abuse of discretion). Moreover, the

Court already rejected this argument. In 2015, other automakers argued that undertaking discovery

prior to the conclusion of NHTSA's investigation would "result in a needless waste of resources." *In re Takata*, 2015 WL 12641693, at *3. The Court concluded that "this argument ignores that determining the precise cause of the central issue of litigation is often a primary purpose of the discovery process." *Id.* The same is true here. Plaintiffs are entitled to discovery to test New GM's assertions. And discovery, which is already underway, will expedite—not delay—the resolution of the case against New GM.

### CONCLUSION

In sum, this Court should reach the same conclusion it did when it denied the First Motion to Stay that sought an identical stay. The doctrine of primary jurisdiction and the principles governing discretionary stays have no application to Plaintiffs' statutory and common law claims here. These claims fall squarely "within the conventional competence of the courts" and, like the claims against the other automakers, would not interfere with NHTSA's rules, regulations, or investigation.  New GM's Motion to Stay should be denied.

Dated: October 12, 2018

Respectfully submitted,
**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*
Peter Prieto (FBN 501492)
Aaron S. Podhurst (FBN 63606)
Stephen F. Rosenthal (FBN 131458)
John Gravante (FBN 617113)
Matthew P. Weinshall (FBN 84783)
Alissa Del Riego (FBN 99742)
SunTrust International Center
One S.E. Third Ave., Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
Email:  pprieto@podhurst.com
apodhurst@podhurst.com
srosenthal@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com

***Chair Lead Counsel for Plaintiffs***

| | |
|---|---|
| **COLSON HICKS EIDSON**<br>Lewis S. "Mike" Eidson<br>mike@colson.com<br>Curtis Bradley Miner<br>curt@colson.com<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134<br>T: 305-476-7400<br><br>*Plaintiffs' Personal Injury Track Lead Counsel* | **POWER ROGERS & SMITH, P.C.**<br>Todd A. Smith<br>tsmith@prslaw.com<br>70 West Madison St., 55th Floor<br>Chicago, IL 60602<br>T: (312) 236-9381<br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* |
| **BOIES, SCHILLER & FLEXNER LLP**<br>David Boies, Esq.<br>Motty Shulman (Fla Bar. No. 175056)<br>333 Main Street<br>Armonk, NY 10504<br>Tel:    (914) 749-8200<br>Fax:    (914) 749-8300<br>Email: dboies@bsfllp.com<br>         mshulman@bsfllp.com<br><br>Stephen N. Zack (Fla. Bar No. 145215)<br>Mark J. Heise (Fla. Bar No. 771090)<br>100 Southeast 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel:    (305) 539-8400<br>Fax:    (305) 539-1307<br>Email: szack@bsfllp.com<br>         mheise@bsfllp.com<br><br>Richard B. Drubel<br>Jonathan R. Voegele<br>26 South Main Street<br>Hanover, NH 03755<br>Tel:    (603) 643-9090<br>Fax:    (603) 643-9010<br>Email: rdrubel@bsfllp.com<br>         jvoegele@bsfllp.com<br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* | **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**<br>Elizabeth Cabraser<br>ecabraser@lchb.com<br>Phong-Chau Gia Nguyen<br>pgnguyen@lchb.com<br>275 Battery St., Suite 3000<br>San Francisco, CA 94111-3339<br>T:      415-956-1000<br><br>David Stellings<br>250 Hudson Street, 8th Floor<br>New York, NY 10012<br>212-355-9500<br>dstellings@lchb.com<br><br>*Plaintiffs' Steering Committee* |

| | |
|---|---|
| **CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC**<br>James E. Cecchi<br>jcecchi@carellabyrne.com<br>5 Becker Farm Road<br>Roseland, NJ 07068-1739<br>T: 973 994-1700<br>f: 973 994-1744<br><br><br>*Plaintiffs' Steering Committee* | **BARON & BUDD, PC**<br>Roland Tellis<br>rtellis@baronbudd.com<br>David Fernandes<br>dfernandes@bardonbudd.com<br>Mark Pifko<br>mpifko@baronbudd.com<br>15910 Ventura Blvd.,<br>Suite 1600<br>Encino, CA 91436<br>T: 818-839-2333<br><br>J. Burton LeBlanc<br>9015 Bluebonnet Blvd.<br>Baton Rouge, LA 70810<br>T: 225-761-6463<br><br><br>*Plaintiffs' Steering Committee* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: /s/ Peter Prieto
          Peter Prieto