UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 2599
Master File No. 15-02599-MD-MORENO
Economic Loss No. 14-24009-CV-MORENO

IN RE:

**TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION**

THIS DOCUMENT RELATES TO ALL
ECONOMIC LOSS TRACK CASES

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### MOTIONS TO DISMISS BY DEFENDANTS FCA, GENERAL MOTORS,
### MERCEDES-BENZ, AUDI, AND VOLKSWAGEN

This multidistrict litigation ("MDL") consolidates allegations of economic loss and personal injury related to airbags manufactured by defendants Takata Corporation and TK Holdings (collectively, "Takata") and equipped in vehicles manufactured by Defendants FCA US LLC ("FCA"), General Motors Company, General Motors Holdings LLC, General Motors LLC (collectively, "General Motors"), Daimler AG, Mercedes-Benz USA, LLC (collectively, "Mercedes-Benz"), Audi Aktiengesellschaft, Audi of America, LLC (collectively, "Audi"), Volkswagen Aktiengesellschaft, and Volkswagen Group of America, Inc. (collectively, with Audi, "Volkswagen") (all automotive manufacturers collectively, "Defendants"). While the Court divided the MDL's component cases into two tracks—economic loss for plaintiffs alleging purely economic damages and personal injury for plaintiffs alleging damages to a person—this Order pertains only to economic loss cases.

THIS CAUSE comes before the Court upon Defendant FCA's Motion to Dismiss

(**D.E. 2983**), Defendant General Motors's Motion to Dismiss (**D.E. 2981**), and Defendants Mercedes-Benz and Volkswagen's Motion to Dismiss (**D.E. 2988**) (collectively, the "Motions" or "Motions to Dismiss"), all filed on **August 20, 2018**.  Individually, the Motions seek to dismiss all claims alleged in three separate Amended Consolidated Class Action Complaints: *Boyd v. FCA US LLC* ("*Boyd*") (**D.E. 2758**); *Whitaker v. General Motors Company, et al.* ("*Whitaker*") (**D.E. 2759**); and *Puhalla v. Volkswagen Aktiengesellschaft, et al.*[1] ("*Puhalla*") (**D.E. 2762**) (collectively, the "Amended Consolidated Class Action Complaints").

THE COURT has thoroughly reviewed the Amended Consolidated Class Action Complaints, the Defendants' Motions to Dismiss, the Plaintiffs' Omnibus Response in Opposition (**D.E. 3034**), and the Defendants' Reply memoranda (**D.E. 3094, 3098, 3103**).  The Court also heard oral argument from the parties on certain issues raised in the moving papers. (*See* **D.E. 3139**).  This Order pertains only to the direct-file and claim splitting issues raised by certain Defendants.  The Court reserves ruling on all other issues and claims not discussed below (including all claims advanced by the Automotive Recycler Plaintiffs).  For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** the Defendants' Motions to Dismiss.

## I.    BACKGROUND

Plaintiffs are consumers of Defendants' vehicles that are equipped with Takata airbags containing the propellant ammonium nitrate.  Plaintiffs allege ammonium nitrate is an innately volatile and unstable propellant that imposes an unreasonable risk of serious foreseeable harm or death upon drivers of Defendants' vehicles.  The crux of Plaintiffs' legal claims is that Defendants

---

[1] The *Puhalla* Complaint asserts claims against Volkswagen Aktiengesellschaft, Volkswagen Group of America, Inc., Audi Aktiengesellschaft, Audi of America, LLC, Mercedes-Benz USA, LLC, and Daimler AG.

knew or should have known of these defects prior to installing the Takata airbags in their vehicles, and that Defendants concealed from, or failed to notify, the Plaintiffs and the general public of the full and complete nature of the defect, despite being aware of problems arising during the design and testing process, and through various rupture incidents and recalls. Defendants vigorously contest the sufficiency of Plaintiffs' allegations, and the constitutional bases for this Court to exercise personal jurisdiction over Defendants.

### A.   PROCEDURAL BACKGROUND

On March 14, 2018, Plaintiffs commenced this litigation against Defendants by simultaneously filing four complaints in district courts where the Defendants are incorporated, or hold their principal places of business, and by filing three complaints directly in this MDL proceeding. The four complaints filed in transferor district courts (collectively, the "Transferor Complaints") include: *Brugaletta, et. al., v. General Motors Company, et al.*, Case No. 2:18-cv-10852-PDB-DRG (E.D. Mich. Mar. 14, 2018) ("*Brugaletta*"); *Dwinnells, et. al., v. FCA US LLC*, Case No. 2:18-cv-10848-BAF-APP (E.D. Mich. Mar. 14, 2018) ("*Dwinnells*"); *Maestri, et. al., v. Mercedes-Benz USA, LLC, et. al.*, Case No. 1:18-cv-01070-WSD (N.D. Ga. Mar. 14, 2018) ("*Maestri*"); and *McBride v. Audi of America, LLC, et al.*, Case No. 1:18-cv-00284-LO-MSN (E.D. Va. Mar. 14, 2018) ("*McBride*").[2] The same day Plaintiffs filed the Transferor Complaints, they also filed in the Judicial Panel on Multidistrict Litigation's ("JPML") docket a notice of

---

[2] Two other complaints were filed against Volkswagen and Mercedes-Benz in the summer of 2017: *Krmpotic, et. al., v. Takata Corp., et. al.*, Case No. 2:17-cv-04771-KSH-CLW (D.N.J. June 28, 2017) ("*Krmpotic*"); and *Alters, et. al., v. Volkswagen Group of America, Inc., et. al.*, Case No. 2:17-cv-05863-MCA-LDW (D.N.J. Aug. 8, 2017) ("*Alters*"). Plaintiffs also filed in the JPML docket two notices of potential tag-along actions concerning these two complaints. *See In re Takata Airbag Litigation*, MDL No. 2599, D.E. 804 (J.P.M.L. July 14, 2017); *id.*, D.E. 868 (J.P.M.L. Aug. 28, 2017). These cases were subsequently transferred into this MDL proceeding by the JPML. (*See* D.E. 1924–25, 2044–45.)

potential tag-along actions concerning these four complaints. *See In re Takata Airbag Litigation*, MDL No. 2599, D.E. 962 (J.P.M.L. Mar. 14, 2018). This Court later accepted the JPML's transfer of *Brugaletta*, *Dwinnells*, and *McBride* into this MDL in April 2018 (*see* D.E. 2467, 2532–33, 2644), and accepted transfer of *Maestri* in June 2018 (D.E. 2881).

The same day the Transferor Complaints were filed, Plaintiffs directly filed three complaints in this MDL proceeding: *Boyd* (D.E. 2429); *Whitaker* (D.E. 2428); and *Puhalla* (D.E. 2430) (collectively, the "Consolidated Class Action Complaints"). In May 2018, Plaintiffs amended each of the Consolidated Class Action Complaints, pursuant to Court Order, to excluded claims asserted by the so-called "Recycler Plaintiffs." (*See* D.E. 2651.) It is these "Amended Consolidated Class Action Complaints" (collectively, the "Direct File Complaints"), that Defendants' Motions seek to dismiss in their entirety.

## B.   SUBSTANCE OF UNDERLYING COMPLAINTS

The Direct File Complaints are not simply consolidations of the Transferor Complaints. The Direct File Complaints include several new plaintiffs who are not named in the Transferor Complaints and who have not separately filed lawsuits in any other federal district court: the *Boyd* Complaint includes one new plaintiff, Victor Khoury of Florida, who does not appear in the *Dwinnells* Complaint; the *Whitaker* Complaint includes one new plaintiff, David Whitaker of Florida, who does not appear in the *Brugaletta* Complaint; and the *Puhalla* Complaint includes 23

new plaintiffs[3] who never appear in the *Alters, McBride, Krmpotic*, or *Maestri* Complaints.[4]

Furthermore, while the Transferor Complaints assert common-law claims for negligence, fraud, and/or unjust enrichment, in addition to claims for violations of the Magnuson-Moss Warranty Act and the deceptive trade practices statutes of the states where each Transferor Complaint was filed, the Direct File Complaints add a litany of new claims—on behalf of the new plaintiffs and the plaintiffs originating in the Transferor Complaints—including nationwide RICO class action claims, statewide class action claims arising under numerous state deceptive trade practices statutes, claims for breach of the implied warranty of merchantability under the laws of several states, and in some cases, new common-law claims. In this Order, the plaintiffs originating in the Transferor Complaints are referred to as the "Transferor Plaintiffs," and the new plaintiffs originating in the Direct File Complaints are referred to as the "Direct File Plaintiffs."

It is true that the Direct File Complaints subsumed the claims advanced in the Transferor Complaints, but to be clear, Plaintiffs did not simply consolidate two separate legal actions. Instead of filing separate lawsuits in the Southern District of Florida, seeking intra-district transfer of these cases into the MDL proceeding, and then consolidating the locally filed actions with the

---

[3] Of these 23 new plaintiffs, 13 are Volkswagen owners or lessees from various states, and 10 are Florida citizens who own or lease Mercedes-Benz, Audi, or Volkswagen vehicles.

The 13 non-Florida Volkswagen plaintiffs include: Efrain Ferrer and Sean McGinity (California); Linda Dean (Kentucky); Pattie Byrd (New Jersey); Glenn Miller (New York); Christopher Allen Cobb and Michael Riddick (North Carolina); Angela Cook (Ohio); Angela Dickie and Antonia Dowling (South Carolina); and Alandrix Harris, Latecia J. Jackson, and Chloe Wallace (Texas). (*See* D.E. 2762 at 56–57.)

The 10 Florida residents include: Jacqueline Carrillo, Steven Levin, and Harper Tucker (Audi vehicles); Michael C. Kaufman, Mary Jackson Robinson (Mercedes-Benz vehicles); and Bladimir Busto, Jr., Ramoncito Ignacio, Silvia Gil, Stephanie Puhalla, and Charles Sakolsky (Volkswagen vehicles). *Id.* at 56.

[4] The *Puhalla* Complaint also includes two plaintiffs (Susan Knapp and Branko Krmpotic) that appear in both the *Krmpotic* and *Maestri* Complaints. These complaints were transferred into this MDL proceeding at different times.

Transferor Complaints—as the MDL procedural scheme anticipates—Plaintiffs filed the "Consolidated" Class Action Complaints directly in this Court's MDL docket. These complaints directly add the Direct File Plaintiffs and their respective claims, while also adding new claims on behalf of the Transferor Plaintiffs. To this extent, the Direct File Plaintiffs and their claims, and the new claims asserted by the Transferor Plaintiffs, are "direct-filed" here in this MDL proceeding.

## II.     STANDARD OF REVIEW

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

## III.     DISCUSSION

Defendants separately move to dismiss with prejudice each of the Amended Consolidated Class Action Complaints under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendants argue *inter alia*: (1) the Court lacks general personal jurisdiction under the MDL statute, 28 U.S.C. Section 1407, because the Plaintiffs direct-filed the Amended Consolidated Class Action Complaints in the MDL proceeding, and because none of the Defendants are "at home" in Florida; and (2) the Court lacks specific personal jurisdiction under the RICO statute's nationwide service of process provision, 18 U.S.C. Section 1965(d), because Plaintiffs fail to state a plausible RICO claim. In response, Plaintiffs argue the Court can exercise

personal jurisdiction over all Defendants pursuant to its authority as an MDL transferee court under Section 1407, and under the RICO statute's nationwide service of process provision.

The personal jurisdiction issues before the Court are unusual because Plaintiffs filed complaints directly in this MDL proceeding, while also separately transferring related, but significantly different complaints, into the MDL proceeding through the JPML, from district courts where many of the Defendants are jurisdictionally "at home." The complexity of the personal jurisdiction issues are further heightened by Plaintiffs' attempt to invoke personal jurisdiction over German parent corporations. Defendants zealously oppose Plaintiffs' filing strategy and the asserted bases for personal jurisdiction. The Court addresses the Defendants' challenges in turn.

## A.    CHALLENGES TO DIRECT FILING

Defendants lodge numerous jurisdictional attacks from several angles based on the Plaintiffs' decision to file the Direct File Complaints. The Court notes that direct filing complaints in MDL proceedings is not uncommon, nor is it *per se* impermissible under the MDL statute, the JPML Rules of Procedure, or interpretive case law. *See* J.P.M.L. R. 7.2(a) ("Potential tag-along actions filed in the transferee district do not require Panel action. A party should request assignment of such actions to the Section 1407 transferee judge in accordance with applicable local rules."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, Civil Action No. H-10-171, 2011 WL 1232352, at *4 (S.D. Tex. Mar. 31, 2011) ("The JPML's rules expressly provide for joining direct filings with the MDL cases under a court's local rules without transferring through the JPML.") (citing J.P.M.L. R. 7.2(a)); *see also In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1336 n.5 (S.D. Fla. 2001) (declining to dismiss direct-file complaints). Therefore, Defendants' Motions to Dismiss the Amended Consolidated Class Action Complaints on direct-filing grounds is **DENIED**.

As the moving papers reflect, however, the problem with direct filing is that it "present[s] jurisdictional, venue, or related issues." *In re Heartland Payment Sys., Inc*, 2011 WL 1232352, at *4 (citing *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 904 n.2 (E.D. La. 2007)). Moreover, direct filing also creates other "oddit[ies] when cases are eventually transferred to the plaintiffs' home districts for trial, as the traditional 'transferor'/'transferee' roles will be reversed." *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d at 904 n.2; *see also In re Norplant Contraceptive Prods. Liab. Litig.*, 946 F. Supp. 3, 4 (E.D. Tex. 1996) (noting that direct filing complaints "threatens to burden this court with unnecessary transfer decisions").

To avoid thorny spin-off litigation, "promote judicial efficiency," and "eliminate the delays associated with transfer of cases" into an MDL proceeding, some parties stipulate to waiving personal jurisdiction or venue objections to direct-file complaints. *See In re Vioxx Prod. Liab. Litig.*, 478 F. Supp. 2d. at 903. Here, Defendants did not stipulate to waiving personal jurisdiction. And indeed, Defendants are well within their rights to raise such challenges. Accordingly, the Court must resolve the claim splitting, personal jurisdiction, and other related challenges within the context of Plaintiffs' strategic decision to simultaneously file the Transferor Complaints and the related, but significantly different, Direct File Complaints.

## B.   CHALLENGES TO AMENDMENTS TO COMPLAINTS

Multiple Defendants take issue with Plaintiffs asserting several new claims—particularly nationwide RICO class action claims—for the first time in the Direct File Complaints. But Plaintiffs' decision to add new claims on behalf of the Transferor Plaintiffs directly in the MDL proceeding is procedurally permissible, and does not by itself strip this Court of jurisdiction. Allowing MDL plaintiffs to amend their pleadings is consistent with Federal Rule of Civil Procedure 15(a)(2)'s directive that district courts "should freely give leave [to amend] when justice

so requires," and "the general rule that, in multidistrict litigation, a transferee judge can handle all types of pretrial matters that otherwise would have been handled by the transferor court," *In re Korean Air Lines Co., Ltd., Antitrust Litig.*, 642 F.3d 685, 699 (9th Cir. 2011). Indeed, many MDL transferee courts have allowed plaintiffs to amend a transferred-in complaint to add new causes of action at early stages in the proceedings. *See, e.g., Nelson v. Matrixx Initiatives, Inc.*, No. C 09-02904 WHA, 2012 WL 1094316, at *2 (N.D. Cal. Mar. 30, 2012) (granting leave to amend complaint to add new claims in MDL proceeding and noting "[t]he goal of efficiently managing pretrial issues through MDL proceedings should not generally be frustrated," where the new claims "conform[ed] to the run of claims in the MDL proceedings, and therefore cause[d] no surprise to defendants," and where defendants did not "contend that these new claims were foreclosed by the MDL"); *see also Sentner v. Amtrak*, 540 F. Supp. 557, 558 n.2 (D.N.J. 1982) (granting leave to amend complaint to add new claims in MDL proceeding and noting "[t]his [MDL] Court could not be expected to effectively oversee the course of discovery if it did not also have authority to allow adjustment of the pleadings which establish the parameters of the case").

So, to the extent the Court did not previously grant Plaintiffs leave to amend, the Court does so now *nunc pro tunc*. Consequently, Defendants' Motions to Dismiss the Amended Consolidated Class Action Complaints on grounds that Plaintiffs did not properly amend their complaints is **DENIED**.

## C.   CHALLENGES TO TIMING OF THE JPML'S TRANSFER OF THE TRANSFEROR COMPLAINTS

FCA challenges the timing of the Transferor Complaints being transferred into this MDL proceeding. Specifically, FCA argues the Direct File Complaints should be dismissed with prejudice for lack of general personal jurisdiction because even though the Transferor Complaints were "transferred into the MDL, this occurred *after* Plaintiffs filed the [Direct File Complaints]."

(D.E. 2983 at 29 n.10 (emphasis in original).)

This Court confronted—and rejected—a similar argument in another multidistrict litigation case. In *In re Managed Care Litig.*, the plaintiffs direct-filed complaints in the MDL "in anticipation of" the cases initiated in another district court being transferred into the MDL proceeding by the JPML. 150 F. Supp. 2d at 1336 n.5. This Court refused to dismiss the direct-filed complaints under the "first-to-file" rule, and "[i]n the interest of judicial efficiency," treated the direct-filed complaints as "reiterating the substance of the transferred cases." *Id.* This Court consequently ruled the issues "concerning personal jurisdiction and venue [were] moot in light of the MDL Panel's transfer" of the case commenced in the transferor court and by "deeming that transferred case, rather than the complaint filed in the Southern District of Florida, to be the authoritative [complaint] for purposes of th[e] MDL proceeding." *Id.*

Similarly here, in the interests of judicial efficiency, the Court will treat the Direct File Complaints as reiterating the substance of the Transferor Complaints. Accordingly, the Court **DENIES** FCA's Motion to Dismiss the *Boyd* Complaint on timing of transfer grounds.

Notwithstanding, the Court will not treat the Transferor Complaints as legally operative in this MDL proceeding because of the procedural and factual differences that distinguish the underlying complaints in this case from the complaints in *In re Managed Care*. These differences warrant brief additional discussion because, in the context of an MDL proceeding, deciding which complaints are legally operative influences what legal actions are remanded for trial under Section 1407(a), how those legal actions are remanded, and where those legal actions are remanded to. *Cf. In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2015 WL 3619584, at *8 (S.D.N.Y. June 10, 2015) ("Where a consolidated complaint is intended to be legally operative, it is also critical for the court to make clear precisely what effect the filing of the

consolidated complaint has on the underlying complaints so that the parties can take whatever steps are necessary to protect and preserve their substantive rights.").

###    D.    THE LEGALLY OPERATIVE COMPLAINTS

"[L]ike snowflakes, no two MDLs are exactly alike." *Id.* Consequently, whether to treat the Transferor Complaints or the Direct File Complaints as legally operative depends on the particularities of this MDL. *See id.* In contrast to *In re Managed Care*, there are several unique factors in this MDL that lead the Court to treat the Direct File Complaints—instead of the Transferor Complaints—as the legally operative pleadings.

First, the Direct File Complaints significantly amend the Transferor Complaints. Specifically, the Direct File Complaints add numerous new plaintiffs asserting a myriad of new claims for the first time, and, while the Direct File Complaints were originally stylized as *Consolidated* Class Action complaints, in reality, the Direct File Complaints also amended the Transferor Complaints by asserting new claims on behalf of the Transferor Plaintiffs. *See supra* Sec.I.B. As the Supreme Court has recognized, "[n]ormally, an amended complaint supersedes the original complaint," *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009), and "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction," *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). For these reasons, the significant substantive amendments strongly suggest, if not direct, the Court to treat the Direct File Complaints as legally operative.

Second, it appears Plaintiffs intended for the Direct File Complaints to be legally operative. During oral argument, counsel for FCA suggested the Court treat the Transferor Complaints and Direct File Complaints separately at the motion to dismiss stage. (*See* D.E. 3201 at 105:6–106:20.)

Counsel for Plaintiffs strenuously opposed this suggestion, and argued it: "doesn't make any sense" because "the claims . . . are the same as to all the plaintiffs," and it would be "contrary . . . to, number one, MDL practice, which is to consolidate all the claims because they all share the same sort of issues, facts" and "[n]umber two . . . we've got RICO claims here that encompass not simply Florida plaintiffs, but also non-Florida plaintiffs, so this belongs *in one Complaint*." (D.E. 3201 at 106:21-23, 107:7-8, 12-18 (emphasis added).)  Furthermore, Plaintiffs stylized the Direct File Complaints as *Consolidated* Class Action Complaints, which—in contrast to stylizing them as an "administrative summary" of all claims by all plaintiffs—suggests the Direct File Complaints were "meant to have legal effect." *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 591 (6th Cir. 2013).  These reasons also warrant treating the Direct File Complaints as legally operative. *See id.* at 588–92 (determining legally operative complaint based in part on the plaintiffs stylizing their complaint as "consolidated amended complaint," and noting that the court's "holding rest[ed] on the *plaintiffs'* decision to file a *legally operative* combined complaint") (emphases in original).

Finally, the Court notes that Defendants waived service of the Direct File Complaints (D.E. 2840), and all the parties' moving papers address only the Direct File Complaints.  These factors also warrant treating the Direct File Complaints as legally operative. *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d at 591 (treating "consolidated amended complaint" as legally operative in part because the parties' moving papers and the district court's order only addressed the consolidated complaint, and because the plaintiffs served the consolidated complaint on defendants, instead of serving individual complaints).

Because the Direct File Complaints supersede the Transferor Complaints, *Pac. Bell Tel. Co.*, 555 U.S. at 456 n.4, the Court finds it proper to **DISMISS** without prejudice the Transferor

Complaints, *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 3619584, at *8 ("To streamline the litigation and eliminate duplicative claims and complaints, dismissal of the underlying complaints may be the preferred approach.").

### E.     CLAIM SPLITTING CHALLENGE

Treating the Direct File Complaints as legally operative indirectly resolves Mercedes-Benz and Volkswagen's claim splitting challenge. Mercedes-Benz and Volkswagen argue that the Transferor Complaints and Direct File Complaints are "duplicative lawsuits," and that by filing them both, Plaintiffs have "violated the prohibition against claim splitting in a transparent attempt to simultaneously circumvent Defendants' rights to a jury trial in the transferor courts where Plaintiffs originally filed their actions and to manufacture jurisdiction before this Court where none exists." (D.E. 2988 at 34.) They further argue the "appropriate remedy" is dismissal of the *Puhalla* Complaint because failure to do so "would unfairly allow Plaintiffs to have it both ways: [i]f they fail to establish jurisdiction, they will merely seek to fall back on [the Transferor Complaints]. If they succeed, they will have circumvented Defendants' right to a jury trial in the transferor courts." *Id.* at 36.

While the Court appreciates Defendants' concern that Plaintiffs may be getting "two bites at the apple," the Defendants need not worry that Plaintiffs will "have it both ways" because the Transferor Complaints are dismissed. As such, Mercedes-Benz and Volkswagen's Motion to Dismiss on claim splitting grounds is **GRANTED**—to the extent there are no longer multiple legally operative complaints against them. To be clear, Plaintiffs still must meet their burden of establishing the Court can exercise personal jurisdiction over Defendants based on the allegations and claims set forth in the Direct File Complaints. To the extent Plaintiffs cannot satisfy their burden, those claims will be dismissed, and Plaintiffs cannot then litigate those claims elsewhere;

and to the extent Plaintiffs establish personal jurisdiction, the Court will resolve all pretrial matters and remand the appropriate legal actions for trial to the appropriate district courts.

Because this Court "likes to think ahead, but also address[] the issues before it" (D.E. 3201 at 118:16-17), it is ideal to address the issue of remand before resolving jurisdictional challenges because, as noted above, direct-file complaints in MDL proceedings create "oddit[ies] when cases are eventually transferred to the plaintiffs' home districts for trial, [because] the traditional 'transferor'/'transferee' roles will be reversed." *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d at 904 n.2. It is also ideal to discuss remand at this time because at the heart of the claim splitting challenge is Mercedes-Benz and Volkswagen's concern regarding where Plaintiffs' legal actions will be tried.

## F.    REMAND

The Supreme Court has recognized that "[c]ases consolidated for MDL pretrial proceedings ordinarily retain their *separate identities*." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 (2015) (emphasis added). In dicta, the Supreme Court explained that in MDL cases, "[p]arties may elect to file a 'master complaint' . . . which supersede[s] prior individual pleadings" and "[i]n such a case, the transferee court may treat the master pleadings as *merging the discrete actions for the duration of the MDL pretrial proceedings*." *Id.* at 904 n.3 (emphasis added) (citing *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d at 590–92). This means "the filing of a consolidated complaint in a multidistrict case [does not] merge[] the plaintiffs' actions *permanently*." *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d at 592 (emphasis in original). Thus, "when the pretrial phase ends and cases not yet terminated return to their originating courts for trial, the plaintiffs' actions resume their *separate identities*." *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d at 592 (emphasis added); *see also In re*

*Korean Air Lines Co., Ltd., Antitrust Litig.*, 642 F.3d at 700 ("Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over.").

Here, while the Transferor Complaints are dismissed, the legal actions initiated by the Transferor Plaintiffs live on in the Direct File Complaints. But when pretrial proceedings conclude, these legal actions will "resume their separate identities." *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d at 592. So, when pretrial proceedings end, the Court will *sever* the Transferor Plaintiffs' legal actions from the now legally operative Direct File Complaints, and suggest remand and transfer of these legal actions to the appropriate transferor court under Section 1407(a).

The Court can carry out severance in one of two ways. The Court could recommend to the JPML that the appropriate claims be severed and remanded. *See* § 1407(a) ("[T]he panel may separate any claim . . . and remand any of such claims before the remainder of the action is remanded."); J.P.M.L. R. 10.3 ("[T]he Panel is reluctant to order a remand absent the suggestion of the transferee judge . . . ."); *In re Seroquel Prod. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2006 WL 3929707, at *4 (M.D. Fla. Dec. 22, 2006) (recommending JPML sever certain claims and noting need to "open new separate files" for certain plaintiffs), *report and recommendation adopted*, MDL No. 1769, 2007 WL 219989 (M.D. Fla. Jan. 26, 2007).

Alternatively, the Court could exercise its "wide discretion to sever a claim against a party into separate cases" prior to suggesting remand to the JPML. *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014); *see also* Fed. R. Civ. P. 21 ("The court may also sever any claim against a party."); Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and

economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 157 (S.D.N.Y. 2003) (recommending the JPML remand severed claims for trial). The Court will decide how to effectuate severance at a later time. But at this time, the Court will decide how the legal actions will be severed in anticipation of remand.

## G.    SEVERANCE OF CLAIMS

The parties frame the general personal jurisdiction issues as "all or nothing." Defendants contend the Court entirely lacks general personal jurisdiction over them under Section 1407 because there are no transferor courts in this action, as reflected by the Direct File Complaints. (D.E. 2983 at 28–29; D.E. 2988 at 37–38; D.E. 3103 at 19.) Defendants thus seek to treat all legal actions as directly filed in the MDL proceeding. But this is not totally accurate. The Transferor Plaintiffs assert several claims in the Transferor Complaints filed in other district courts, which were later transferred into this MDL proceeding by the JPML—which all Defendants concede in footnote in their moving papers. (D.E. 2981 at 32 n.4 (noting *Brugaletta* was "separately-filed . . . in the Eastern District of Michigan" and "has been transferred into this MDL"); D.E. 2983 at 29 n.10 ("*Dwinnells* was transferred into the MDL . . . ."); D.E. 2988 at 37 n.14 (referring to *Alters*, *McBride*, *Krmpotic*, and *Maestri* as "*other* transferred in cases") (emphasis in original).)

On the other hand, Plaintiffs assert the Court can exercise general personal jurisdiction "over all Plaintiffs' claims against Defendants" pursuant to its authority as an MDL transferee court under Section 1407. (D.E. 3034 at 50.) Plaintiffs thus seek to treat all legal actions as filed in the transferor district courts. But this too does not present a full picture. As demonstrated above, the Direct File Complaints include several new plaintiffs and a myriad of new claims that were never separately filed in the Southern District of Florida or any other federal district court.

*See supra* Sec.I.B.

The Court disagrees with the parties that the legal actions asserted should be treated as either "all transferred-in" or "all direct-filed." Section 1407(a) is clear: "[e]ach *action* so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred . . . ." 28 U.S.C. § 1407(a) (emphasis added). Here, it is clear to the Court that based on Plaintiffs' filing strategy, and consistent with Section 1407(a), there are two types of legal actions: the Transferor Plaintiffs' legal actions and the Direct File Plaintiffs' legal actions. Even though the Transferor Plaintiffs' legal actions were amended by the Direct File Complaints to add nationwide-class RICO claims and statewide-class state consumer protection statute claims, these amendments do not magically transform the legal actions initiated by the Transferor Plaintiffs in transferor district courts, such that the new claims escape Section 1407(a) remand to the appropriate transferor courts for trial. Simply put, because the Transferor Plaintiffs' legal actions were commenced in transferor district courts, these legal actions—even though they were amended in this MDL proceeding—must be remanded back to the appropriate transferor district court under Section 1407(a).

At oral argument, counsel for Plaintiffs suggested that a nationwide RICO class action could be tried in this Court: "[w]hen you're talking about a national class action under RICO or a Federal statute, I think this Court has jurisdiction to try that class assuming it's got Florida plaintiffs and Florida class members, which this Court has a lot of." (D.E. 3201 at 109:18-22.) In response to Plaintiffs' suggestion, the Court expressed serious doubts that as an MDL transferee court, it could try a nationwide RICO class action simply because Plaintiffs direct-filed RICO claims once the Transferor Complaints were transferred into this MDL proceeding by the JPML. The Court explained that Plaintiffs' theory would mean that, "in essence, if you [direct] file a class

action and include RICO, you've gotten rid of *Lexecon*." *Id.* at 109:23-25.

After fully considering oral argument and carefully reviewing the moving papers, the Court confirms its previously expressed doubts: permitting Plaintiffs to obtain a jury trial in an MDL transferee court simply by direct-filing nationwide class action claims under the RICO statute— which grants federal district courts nationwide jurisdiction under a nationwide service of process provision—*after* the JPML *completes transfer* of the legal actions commencing the litigation, would not only thwart the entire purpose of the MDL statute, but it would also turn the Supreme Court's ruling in *Lexecon* on its head. To permit this practice would also allow Plaintiffs to obtain a jury trial in this MDL transferee court over all remaining claims—including newly asserted common-law and statewide class action claims—under the doctrine of pendent personal jurisdiction, which provides that "where a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative facts . . . the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.'" *Azalp LLC v. Silverstein*, No. 14-10079-CIV, 2015 WL 12711232, at *5 (S.D. Fla. Aug. 17, 2015) (quoting *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012)).

The Court cannot permit this kind of strategic pleading. Section 1407(a) is unequivocal: "[e]ach *action so transferred shall be remanded* by the panel at or before the conclusion of such pretrial proceedings *to the district from which it was transferred* . . . ." 28 U.S.C. § 1407(a) (emphasis added). *Lexecon* is also unequivocal: Section 1407 "impos[es] the Panel's responsibility to remand, which *bars recognizing any self-assignment power in a transferee court.*" *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998) (emphasis added). This Order does not bar Plaintiffs from getting the nationwide RICO class action trial they seek.

Rather, this Order makes clear that if any of the underlying legal actions go to trial, they will do so in the appropriate MDL transferor court—which is consistent with *Lexecon*, and required by Section 1407(a).

In short, the Transferor Plaintiffs commenced their legal actions in transferor district courts; and the Direct File Plaintiffs commenced their legal actions directly in this MDL proceeding.   Pursuant to Section 1407(a), these are separate legal actions and they must be remanded accordingly.    Therefore, when pretrial proceedings end, the Court will sever (or recommend that the JPML sever) any remaining claims asserted by the Transferor Plaintiffs— including any claims amended directly in this MDL proceeding.  These legal actions will then "resume their separate identities" upon remand to the appropriate transferor court.   *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d at 592.

On the other hand, the Direct File Plaintiffs' legal actions are uniquely situated for remand. *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d at 904 n.2 (noting direct filing complaints in MDL proceedings reverses "the traditional 'transferor'/'transferee' roles").  Without a stipulation by the parties as to where these legal actions should be transferred, the Court will transfer them "to a federal district court of proper venue as defined by 28 U.S.C. § 1391," "pursuant to the Rules of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1404(a)."  *In re Incretin Mimetics Prod. Liab. Litig.*, No. 13MD2452 AJB (MDD), 2013 WL 12171761, at *1 & n.1 (S.D. Cal. Nov. 13, 2013).  However, the Court defers ruling on the proper venue for these legal actions until a more appropriate time.[5]

---

[5] For the time being, the Court notes the lack of consensus among federal courts concerning what constitutes the proper venue for direct-file cases in MDL proceedings. *Compare In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011) ("[T]he better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated," which is "the state

## IV.   CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART** as follows:

(1)   Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaints on direct-filing grounds is **DENIED**;

(2)   Defendants' Motions to Dismiss the Amended Consolidated Class Action Complaints on grounds that Plaintiffs did not properly amend their complaints directly in the MDL proceeding is **DENIED**;

(3)   FCA's Motion to Dismiss the *Boyd* Complaint on timing of transfer grounds is **DENIED**;

(4)   Mercedes-Benz and Volkswagen's Motion to Dismiss on claim splitting grounds is **GRANTED**—to the extent there are no longer multiple legally operative complaints asserted against Defendants—in light of the *Dwinnells*, *Brugaletta*, *McBride*, *Alters*, *Krmpotic*, and *Maestri* Complaints being **DISMISSED** without prejudice.

The Court reserves ruling on all other issues, including Defendants' personal jurisdiction challenges.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 3 day of May 2019.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

where the plaintiff purchased and was prescribed the subject drug."), *with In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 294, 304 (D. Mass. 2015) (disagreeing with idea that direct file cases "should lead to . . . only one possible originating district") (quoting *In re Yasmin*, 2011 WL 1375011, at *6).