## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| **IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION** | MDL No. 2599 |
| This Document Relates to All Economic Loss Class Actions and: | Master File No.15-MD 2599-FAM |
| | S.D. Fla. Case No. 1:14-cv-24009-FAM |
| Stephanie Puhalla, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| VOLKSWAGEN AKTIENGESELLSCHAFT, VOLKSWAGEN GROUP OF AMERICA, AUDI AKTIENGESELLSCHAFT, AUDI OF AMERICA, LLC, MERCEDES-BENZ USA, LLC, and DAIMLER AG, | |
| Defendants. | |

**DEFENDANTS VOLKSWAGEN AKTIENGESELLSCHAFT, AUDI AG, VOLKSWAGEN GROUP OF AMERICA, INC., AND AUDI OF AMERICA, LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................3

ARGUMENT ...............................................................................................5

I.     PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED ................5

     A.     Plaintiffs Have Unduly Delayed in Seeking To Amend Their Jurisdictional Allegations. .........................................................................6

     B.     Plaintiffs' Proposed Amendments Are Futile. ........................................8

          1.     Plaintiffs Fail To Allege Jurisdiction Under Any State Long-Arm Statute. 9

          2.     Plaintiffs Fail To Plead Jurisdiction Based on Contacts with the United States as a Whole. .........................................................................13

II.     ANY AMENDMENT SHOULD BE SOUGHT  AFTER THE COURT HAS RULED ON ALL OF THE OUSTANDING MOTIONS TO DISMISS ..........................................18

CONCLUSION ...........................................................................................20

Defendants Volkswagen Group of America, Inc. ("VWGoA") and Audi of America LLC ("Audi of America" and, together with VWGoA, the "Domestic Defendants")), and dismissed Defendants Volkswagen Aktiengesellschaft ("VW AG") and Audi AG (the "Foreign Entities"), submit this Opposition to Plaintiffs' Motion for Leave to File an Amended Consolidated Complaint.

## PRELIMINARY STATEMENT

Plaintiffs waited years to bring this lawsuit.  During that time, and despite multiple opportunities to amend their complaints, Plaintiffs "fail[ed] to investigate, collect, and allege sufficient facts prior to initiating this stage of this now 4-year-old complex multidistrict litigation lawsuit."  (ECF No. 3406 ("June 21 Order") at 73.)  Now, four years after initiating this litigation, two years after bringing claims against these parties, and on their *fifth* complaint, Plaintiffs seek a "do-over."  But leave to amend is "by no means automatic."  *Reese* v. *Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008).

Contrary to Plaintiffs' claim, this is not their first opportunity to add jurisdictional allegations.  Plaintiffs have had no fewer than *four* different opportunities when they could have raised, but failed to raise, the jurisdictional allegations they now seek to add belatedly.  *First*, some of these same Plaintiffs filed a complaint against VW AG and VWGoA in New Jersey in August 2017.  *Second*, others of these same Plaintiffs brought a complaint against Audi AG, Audi America and VW AG in the Eastern District of Virginia in March 2018.  *Third*, all of these Plaintiffs direct-filed the *Puhalla* complaint in this Court on March 14, 2018.  *Fourth*, Plaintiffs amended the *Puhalla* complaint in May 2018.  Each of these earlier complaints, brought by the same group of Plaintiffs (and same Plaintiffs' counsel), centers around the same alleged conduct at issue here. And each lacked even the most basic jurisdictional allegations.  Tellingly, in their Motion, Plaintiffs do not explain why they failed to make these jurisdictional allegations earlier, nor do

they claim that such allegations were recently discovered or not previously available. Because Plaintiffs unduly delayed in seeking to add jurisdictional allegations, their Motion should be denied. *See Campbell* v. *Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (denying leave to amend where "[t]he facts upon which the [proposed amendments] were based were available at the time the complaints were filed").

Even on the merits, Plaintiffs' proposed allegations are futile. Although they point to the "pages and pages" of allegations they have added, Plaintiffs have still failed to allege "***facts*** establishing the Foreign [Entities] have sufficient contacts" with any relevant forum. (June 21 Order at 64 (emphasis added).) "[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton Malletier, S.A.* v. *Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Plaintiffs have invoked the long-arm statutes of Florida, Virginia and New Jersey, but they merely allege that the "VW Defendants operate a parts distribution center in Jacksonville, Florida . . . corporate headquarters in Virginia[,] and a parts distribution center and technical center in New Jersey." (Proposed Am. Compl. ("PAC"), ECF No. 3417-2 ¶ 31.) Plaintiffs have alleged ***no*** state-specific conduct that could warrant a finding of specific jurisdiction against the Foreign Entities in those states.

Plaintiffs' attempt to establish jurisdiction based on Federal Rule of Civil Procedure 4(k)(2) fares no better. The "fundamental element" of specific jurisdiction analysis under Rule 4(k)(2) is that "the defendant must have contacts related to or giving rise to the plaintiff's cause of action" and thus targeted the United States with specific conduct giving rise to such claim. *Fraser* v. *Smith*, 594 F.3d 842, 850 (11th Cir. 2010). It is "not sufficient" that a foreign entity's contact with the forum be a "but-for cause of the injury"; the injury "must also be a foreseeable consequence

of the Defendant's contacts" to satisfy due process. *Zanakis* v. *Scanreco, Inc.*, 2019 WL 2211872, at *5 (S.D. Fla. Feb. 6, 2019) (quoting *Oldfield* v. *Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009)). Here, Plaintiffs merely allege in the most conclusory and general terms that the Foreign Entities "purposefully availed themselves of the benefits and protections of conducting business in the United States" and "designed the VW and Audi Class Vehicles specifically for sale in the United States." (PAC ¶¶ 31, 37.) Plaintiffs cannot satisfy their burden by relying on such allegations that have nothing to do with the alleged conduct at issue in this case.

In the alternative, if the Court were inclined to provide Plaintiffs with another opportunity to seek amendment, now is not the proper time. Plaintiffs' proposed piecemeal amendment strategy—amend now on jurisdictional issues and then later based on any further rulings by this Court on the pending motion to dismiss—would be, by design, inefficient and waste both time and resources of the Court and all parties. As Plaintiffs sheepishly recognize in seeking "clarification" on the appropriate time to amend, this Court has already ruled on this issue, ordering Plaintiffs in the first wave of these cases to file an amended complaint only "after the Court has ruled on all pending motions to dismiss." (ECF No. 1040 at 1.) There is no reason to proceed differently here. Plaintiffs' only purported justification is that they need "critical" discovery of the Foreign Entities—who were dismissed from this case after this Court held it lacked personal jurisdiction over them. Having sat on their hands for so long, Plaintiffs cannot now claim urgency, and any purported need is outweighed by the inefficiency Plaintiffs seek to impose on the Court and all parties, and the significant burden and prejudice imposed on the Foreign Entities.

## BACKGROUND

The first lawsuits relating to Takata airbag inflators were consolidated in this MDL in February 2015. (ECF No. 1.) In this "first wave" of cases in this MDL, Plaintiffs' counsel represented consumers in lawsuits alleging the same basic causes of action against seven

automaker defendants, as well as the Takata defendants.  Those seven automaker defendants and the Takata defendants filed various motions to dismiss.  In managing the first wave of this complex litigation, the Court ordered Plaintiffs in April 2016 to file any amended complaint only "after the Court has ruled on all pending motions to dismiss."  (ECF No. 1040 at 1.)

In February 2016, the Volkswagen and Audi Defendants filed their first Defect Information Reports with respect to Takata airbag inflators.  (PAC ¶ 237.)  A year and a half later, in August 2017, a number of Plaintiffs brought a class-action lawsuit against VW AG and VWGoA in the District of New Jersey (the "*Alters* Complaint").  Over six months later, in March 2018, another group of Plaintiffs filed a class-action lawsuit against Audi AG, Audi of America and VW AG in the Eastern District of Virginia (the "*McBride* Complaint").  On the same day Plaintiffs filed the *McBride* Complaint in Virginia, they directly filed a complaint on the MDL docket (the "*Puhalla* Complaint") containing all of the named plaintiffs from the *Alters* Complaint and the *McBride* Complaint, along with several new named plaintiffs, and asserting all of the same claims as in those two complaints plus several new claims, against all four Volkswagen and Audi Defendants. Plaintiffs amended the *Puhalla* complaint on May 18, 2018.  (ECF No. 2762.)

Defendants moved to dismiss the *Puhalla* complaint on a number of grounds, and oral argument was heard on December 11, 2018.  The Court has issued two orders granting in part and denying in part Defendants' motions, and has reserved ruling on the remainder of the issues raised in Defendants' motions.  (*See* ECF No. 3394 ("May 3 Order"), ECF No. 3406 ("June 21 Order").) In the May 3 Order, the Court dismissed the *Alters* and *McBride* Complaints and ruled that their claims had been subsumed into the *Puhalla* complaint, treating the *Puhalla* complaint as the "legally operative" complaint, and as an amendment of those two complaints.  (May 3 Order at 9, 11.)  In doing so, the Court made clear that "Plaintiffs must still meet their burden of establishing

-4-

the Court can exercise personal jurisdiction over Defendants" and that, "[t]o the extent Plaintiffs cannot satisfy their burden, those claims will be dismissed, and Plaintiffs cannot then litigate those claims elsewhere."  (*Id.* at 13.)  In its June 21 Order, the Court did just that:  it (a) dismissed *all* claims against Volkswagen AG and Audi AG for lack of personal jurisdiction, and (b) dismissed claims brought in the *Puhalla* complaint against VWGoA and Audi America for lack of personal jurisdiction.  (June 21 Order at 95).  The Court also dismissed Plaintiffs' RICO claims and reserved ruling on all remaining claims.  (*Id.* at 94-96.)  In the June 21 Order, the Court declined to dismiss without prejudice or grant Plaintiffs leave to amend.

Plaintiffs now seek to amend their complaint again, purportedly addressing the jurisdictional deficiencies the Court identified in its June 21 Order, as well as some small "house-cleaning work."  (Mot. at 5.)  Plaintiffs do not seek amendment relating to any allegations relevant to the issues still pending before this Court on Defendants' motions to dismiss.

## ARGUMENT

## I.    PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED.

"A district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant* v. *Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  Amendment is particularly disfavored where, as here, the "information supporting the proposed amendment" was "public" and "readily accessible . . . even before [the plaintiff] filed suit."  *Sosa* v. *Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).  Moreover, the court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."  *In re Colonial BancGroup, Inc. Sec. Litig.*, 2013 WL 4788627, at *5 (M.D. Ala. Sept. 9, 2013).  Plaintiffs' Motion should be denied because their failure to include the jurisdictional allegations

in their first four complaints constitutes undue delay, and because their proposed amendments remain insufficient to plead personal jurisdiction over the Foreign Entities in any forum, and the Domestic Defendants in Florida.[1]

### A. Plaintiffs Have Unduly Delayed in Seeking To Amend Their Jurisdictional Allegations.

Although Plaintiffs repeatedly characterize this Motion as their first opportunity to amend their claims against the Foreign Entities (*see, e.g.*, Mot. at 1, 2, 8), this is simply not the case. Plaintiffs have already filed four complaints, had at least three opportunities to amend, and for years have had access to the allegations that they now seek to add. Their failure to do so until this Court dismissed their deficient pleadings constitutes undue delay and justifies denial of leave to amend under settled law. *See Bryant*, 252 F.3d at 1163.

*First*, Plaintiffs' efforts to cast the March 2018 direct-filed *Puhalla* complaint as the "original" pleading that initiated this suit against the Volkswagen Defendants are misplaced. (Mot. at 10.) Volkswagen and Audi initiated recalls of Takata airbags in February 2016. Plaintiffs first sued the Volkswagen Defendants in August 2017 in the District of New Jersey (*Alters*), then twice more in March 2018—once in the Eastern District of Virginia (*McBride*), and once directly in the MDL (*Puhalla*), the latter of which purported to "consolidate" the two transferred-in cases. As the Court recognized in its May 3 Order, Plaintiffs' decision to file a new complaint directly in the MDL functioned as an amendment of those complaints. (*See* May 3 Order at 9) ("[T]o the extent the Court did not previously grant Plaintiffs leave to amend, the Court does so now *nunc pro*

---

[1]    Defendants' arguments regarding undue delay and futility are limited to the jurisdictional allegations in the proposed amended complaint. Defendants agree that Plaintiffs should eventually perform the "house-cleaning work" of removing dismissed counts and withdrawing individual plaintiffs. (Mot. at 5.) For the reasons discussed below, however, Plaintiffs should wait to seek amendment until the Court has fully resolved Defendants' pending Motion to Dismiss the Amended Consolidated Class Action Complaint. (*See infra*, Section II.)

*tunc*.").  One month later, Plaintiffs were given yet another opportunity to amend their pleadings when the Court ordered them to "amend and refile" their claims against the Volkswagen Defendants.[2]  (ECF No. 2651 at 2.)  By May 2018, then, over two years after the first recalls of the vehicles at issue, Plaintiffs had filed four complaints against the Volkswagen and Audi Defendants with respect to the same alleged underlying conduct, but failed to make sufficient jurisdictional allegations, as this Court held in the June 21 Order.

The lengthy procedural history of this case renders the cases cited in Plaintiffs' Motion either distinguishable or supportive of Defendants' position.  For example, in *MSP Recovery Claims, Series LLC* v. *Hanover Insurance Co. Inc.*, this Court declined to find undue delay where "the delay [was] due at least in part to the Defendant['s] failure to properly disclose the proper [defendant] in this case." 2018 WL 4963243, at *2 (S.D. Fla. Aug. 6, 2018).  Here, Plaintiffs do not claim—because they cannot—that Defendants are somehow responsible for Plaintiffs' years-long delay in seeking to supplement their jurisdictional allegations.  And several of Plaintiffs' other cases stand for the proposition that leave to amend is improper where, as here, a plaintiff has had several opportunities to amend prior to seeking leave.  *See, e.g.*, *Corsello* v. *Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (denying leave to amend where plaintiff sought to file his "fourth complaint in over five years of litigation").

*Second*, Plaintiffs' delay is particularly egregious in light of the fact that the jurisdictional allegations they now seek to add have been available to them for years.  "A district court may find undue delay when the movant knew of facts supporting [the proposed amendments] long before

---

[2]  Nothing in this Court's April 26, 2018 Order precluded Plaintiffs from amending their pleadings beyond what the Court required with respect to the Automotive Recycler claims (*see* ECF No. 2651), nor did Plaintiffs require leave to amend any portion of their Complaint at that time.  *See Ray* v. *Equifax Info. Svcs., LLC*, 327 Fed. App'x 819, 822 (11th Cir. 2009) ("A plaintiff may amend his complaint once as a matter of course before a responsive pleading is served.").

the movant requested leave to amend, and amendment would further delay the proceedings."
*Tampa Bay Water* v. *HDR Eng'g., Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013), *overruled on other grounds by CSX Transp., Inc.* v. *General Mills, Inc.*, 846 F.3d 1333 (11th Cir. 2017).  Plaintiffs have known about the alleged inflator defect since Volkswagen and Audi began recalling vehicles in February 2016.  (*See, e.g.*, PAC ¶ 175) ("Plaintiff learned of the Inflator Defect . . . in April 2016.").)  Yet Plaintiffs waited three years to plead such general allegations as "VW America . . . has approximately 6,000 employees in the United States," and "VW AG and Audi AG have . . . brought litigation in U.S. courts to protect their distinctive and world-famous trademarks."  (PAC ¶¶ 38, 71.)  Not only are these allegations insufficient to plead personal jurisdiction (*see infra*, Section I.B), but Plaintiffs offer no explanation for why they waited several years to bring these general allegations, presumably culled from public sources that have been available to them for years.   Plaintiffs' unexplained failure to bring these allegations until after dismissal of the Amended Consolidated Complaint constitutes undue delay and warrants denial of leave to amend. *See Campbell* v. *Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (denying leave to amend where "[t]he facts upon which the [proposed amendments] were based were available at the time the complaints were filed").

> **B.      Plaintiffs' Proposed Amendments Are Futile.**

Plaintiffs' Motion should also be denied on the merits because Plaintiffs' proposed amendments do not rectify the pleading deficiencies that this Court identified in its June 21 Order. *See Cockrell* v. *Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

      1.     *Plaintiffs Fail To Allege Jurisdiction Under Any State Long-Arm Statute.*

The proposed amended complaint alleges personal jurisdiction over all Defendants under the long-arm statutes of Florida, New Jersey, and Virginia but still does not include sufficient allegations to allege personal jurisdiction over the Foreign Entities in these (or any other) state.[3] As this Court noted, Plaintiffs bear the burden of presenting "enough evidence to withstand a motion for directed verdict" on the issue of personal jurisdiction.  (June 21 Order at 42) (quoting *Consol. Dev. Corp.* v. *Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)).  Further, courts in this Circuit "strictly construe[]" state long-arm statutes, and "any doubts about applicability of the statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists."  (June 21 Order at 44) (quoting *Keston* v. *FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1352 n.2 (S.D. Fla. 2007)).

Plaintiffs make much of the "pages and pages" of additional allegations in their proposed amended complaint.  (Mot. at 1, 12.)  Notably, however, the only actual in-state conduct they allege is that the "VW Defendants operate a parts distribution center in Jacksonville, Florida . . . corporate headquarters in Virginia[,] and a parts distribution center and technical center in New Jersey."  (PAC ¶ 31.)  Attributed to the "VW Defendants" generally, these allegations suffer from the same defect as those that this Court previously dismissed: they "fail[] to allege specific facts to fit within" any of the long-arm statutes that they cite.[4]  (June 21 Order at 47.)  Not surprisingly,

---

[3]     Defendants understand from Plaintiffs' amendments and motion (*see* PAC ¶¶ 23, 25, 26; Mot. at 12 n.6) that they are seeking to amend only the "Transferor Actions" by adding in Direct-File Plaintiffs, such that all remaining claims will be remanded back to the Eastern District of Virginia or District of New Jersey at the close of pretrial proceedings.  While VWGoA and Audi of America do not contest that they are subject to general jurisdiction in New Jersey and Virginia, respectively, they do contest that Plaintiffs have alleged specific jurisdiction over them in Florida, to the extent Plaintiff is still seeking to establish personal jurisdiction in this forum.

[4]     As in the existing complaint, Plaintiffs' proposed amended jurisdictional allegations simply parrot the text of these statutes.  (*See* PAC ¶ 27.)  But as this Court has already held, the

given the vague and generalized nature of these allegations, Plaintiffs fail to allege any connection whatsoever between these three physical locations and Plaintiffs' claims—a fatal defect to obtaining *specific* jurisdiction. *See Louis Vuitton Malletier, S.A.* v. *Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) ("[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum."). In fact, a Florida Court of Appeal recently rejected this very same "parts distribution center in Jacksonville" as a basis for long-arm jurisdiction over Volkswagen AG in Florida because, as here, the plaintiff failed to "establish[] how this 'parts distribution center' is related to the conduct giving rise to this action." *Volkswagen Aktiengesellschaft* v. *Jones*, 227 So.3d 150, 159 (Fla. 2d DCA 2017). In short, Plaintiffs' amendments still offer nothing more than "generalized allegations [that] are devoid of specificity, and thereby fail to establish that the Foreign [Entities] purposefully availed themselves of the privileges of conducting activity in Florida . . . New Jersey, or Virginia."[5] (June 21 Order at 59.)

The remaining additions to the proposed amended complaint are vague and conclusory allegations regarding Defendants' activities in the United States as a whole. (*See, e.g.*, PAC ¶¶ 31, 37, 55, 61, 64.) Because these allegations say nothing about any Defendants' conduct in Florida, New Jersey or Virginia, they cannot establish the necessary "affiliation between the forum and the underlying controversy" based on "activity . . . that [took] place in the forum State." *Waite* v. *All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) (quoting *Bristol-Myers Squibb Co.* v. *Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773 (2017)); June 21 Order at 59. Indeed, Plaintiffs appear

---

Eleventh Circuit is clear that "such vague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction." (June 21 Order at 47.)

[5]    For the same reasons, Plaintiffs' allegations are insufficient to plead specific jurisdiction over VWGoA and Audi of America in Florida.

to have simply copied-and-pasted many of these so-called jurisdictional "facts" directly from the Eleventh Circuit's opinion in *Vermeulen* v. *Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir. 1993),[6] and from the complaint in *Manlove* v. *Volkswagen Aktiengesellschaft*, 2019 WL 1980688 (E.D. Tenn. May 3, 2019).[7]

The *Manlove* decision, which Plaintiffs rely on heavily in their Motion, is instructive.  The *Manlove* court held that plaintiff's age-discrimination claims arose from a "global policy" that Volkswagen AG had developed in Germany and "establish[ed]" at the Volkswagen Chattanooga plant where plaintiff was employed.  2019 WL 1980688 at *4.  Plaintiffs' attempt to ride the coattails of this decision merely highlights the fundamental problem with their jurisdictional

---

[6]       *Compare, e.g.*, PAC ¶ 58 ("VW AG and Audi AG established channels for marketing Class Vehicles and providing regular advice to owners and lessees.") *with Vermeulen*, 985 F.2d at 1549 ("RNUR, in conjunction with AMSC, established channels for providing regular advice to customers."); PAC ¶ 60 ("VW AG and Audi AG, directly or indirectly, engaged in the financing of authorized dealerships throughout the United States.") *with Vermeulen*, 985 F.2d at 1550 ("RNUR and AMSC jointly engaged in the financing of retail dealerships throughout the United States."); PAC ¶ 61 ("VW AG and Audi AG, through its affiliates VW America and Audi America, created or controlled the distribution network that brought Class Vehicles, including Plaintiffs' vehicles, to the United States.") *with Vermeulen*, 985 F.2d at 1550 ("RNUR created and controlled the distribution network that brought its products into the United States.").

[7]       *Compare, e.g.*, PAC ¶ 46 ("VW AG and Audi AG exert control over the daily affairs of their American affiliates . . . through, inter alia: daily production plans directing worker activities and labor productivity set and sent by German management; requiring weekly reports to be sent from the U.S. to Germany . . . regular meetings held at U.S. facilities in Transferor Jurisdiction to direct activities and establish policies; directing the method of promotions for workers at U.S. affiliates . . . and maintaining a common internal employee platform through which open positions and job transfers are conducted") *with* Amended Complaint, *Manlove* v. *Volkswagen Aktiengesellschaft*, No. 18-cv-145 (E.D. Tenn.), ECF No. 12 ¶ 10(f) ("Volkswagen AG exerts control over the daily affairs of Volkswagen Chattanooga . . . through: daily production plans directing Chattanooga worker activities and labor productivity set by and sent by German management; requiring weekly reports sent from Chattanooga to Germany so that AG employees can set worker activity and labor production; regular meetings held by Volkswagen AG employees in Chattanooga to set directly personnel work activities and production . . . and maintaining a common internal employee platform through which open positions and job transfers are conducted").

allegations: they have not alleged any state-specific contacts by the Foreign Entities giving rise to their claims. Whereas the *Manlove* plaintiff alleged that Volkswagen AG "exercised control over . . . [the] employment procedures" at the Tennessee plant that led to his improper demotion, and thus formed the basis of his employment claim, *id.*, Plaintiffs here do not (and cannot) claim that their consumer-fraud claims relating to allegedly defective airbags arise from the Foreign Entities "directing worker activities and labor productivity" in any state or "maintaining a common internal employee platform through which open positions and job transfers are conducted." (PAC ¶ 46.) Accordingly, Plaintiffs' generalized allegations are insufficient to state a *prima facie* case of specific jurisdiction under any state long-arm statute. *See Bristol-Myers*, 137 S. Ct. at 1781 ("For specific jurisdiction, a defendant's general connections with the forum are not enough.").

Finally, in a last-ditch attempt to conflate the Foreign Entities and Domestic Defendants, Plaintiffs propose to add allegations regarding the corporate relationship among four Volkswagen and Audi entities. But the U.S. Supreme Court has squarely foreclosed the theory that a foreign parent is subject to general jurisdiction to the same extent as its domestic subsidiary. *See Daimler AG* v. *Bauman*, 571 U.S. 117, 136 (2014) (rejecting the "agency theory" of general jurisdiction as "an outcome that would sweep beyond even the sprawling view of general jurisdiction we rejected in *Goodyear*"). And courts in the Eleventh Circuit have "rejected jurisdiction over foreign defendants on an agency theory" in specific jurisdiction cases as well. *Chimene* v. *Royal Caribbean Cruises Ltd.*, 2017 WL 1536055, at *3 (S.D. Fla. Apr. 5, 2017) (rejecting theory that domestic entity's contacts could be "imput[ed]" to foreign entity for specific jurisdiction purposes).

-12-

2.     *Plaintiffs Fail To Plead Jurisdiction Based on Contacts with the United States as a Whole.*

As an initial matter, Plaintiffs do not plead RICO claims in their proposed amended complaint, and therefore their FRCP 4(k)(2) argument rests entirely on the viability of their Magnuson-Moss Warranty Act ("MMWA") claims. *See* FED. R. CIV. P. 4(k)(2) (federal long-arm jurisdiction requires "a claim that arises under federal law"). Plaintiffs' MMWA claims should be dismissed for the reasons set forth in Defendants' pending Motion to Dismiss. (*See* ECF No. 2988 at 50-55.) Should this Court dismiss the MMWA claims, Plaintiffs' proposed allegations regarding the Foreign Defendants' contacts with the United States as a whole are necessarily futile.[8]

At any rate, Plaintiffs cannot plead personal jurisdiction over the Foreign Entities on the basis of contacts with the United States generally, rendering their proposed amended claims against Volkswagen AG and Audi AG wholly futile.[9] The "fundamental element" of specific jurisdiction analysis under Rule 4(k)(2) is that "the defendant must have contacts related to or giving rise to the plaintiff's cause of action."[10] *Fraser* v. *Smith*, 594 F.3d 842, 850 (11th Cir.

---

[8]     At the very least, the fact that there is a pending motion to dismiss Plaintiffs' sole remaining basis for personal jurisdiction warrants delaying leave to amend until after the Court resolves Defendants' Motion to Dismiss. *See infra* Section II; *see also Murungi* v. *Mercedes Benz Credit Corp.*, 2002 WL 1561554, at *1 (E.D. La. July 12, 2002) (denying motion to amend as premature where the "original complaint is currently the subject of a show cause order").

[9]     As this Court has already held, "Rule 4(k)(2) does not apply to the Domestic Defendants, all of which are subject to the general jurisdiction of certain states." (June 21 Order at 55 n.14.)

[10]    Because Plaintiffs allege only specific jurisdiction, their citation to this Court's decision in *Barriere* v. *Juluca*, 2014 WL 652831 (S.D. Fla. Feb. 19, 2014) is misplaced. *Barriere* was a general jurisdiction case, and did not require this Court to consider whether specific jurisdiction attached. *See id.* at *8 (finding that defendant had "such minimum contacts with Florida to be considered 'at home'"). Here, as Plaintiffs have conceded and the Court has held, "neither this Court, nor the transferor courts, can exercise general jurisdiction over the Foreign [Entities]. . . . Consequently, the Court must find that it, and the transferor courts, can exercise 'specific' or 'case-linked' jurisdiction over the Foreign [Entities]." (June 21 Order at 41-42.)

-13-

2010).  In the Eleventh Circuit, it is "not sufficient" that a foreign defendant's contact with the forum be a "but-for cause of the injury"; the injury "must also be a foreseeable consequence of the Defendant's contacts" to satisfy due process.  *Zanakis* v. *Scanreco, Inc.*, 2019 WL 2211872, at *5 (S.D. Fla. Feb. 6, 2019) (quoting *Oldfield* v. *Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009)).  Where a complaint does not "explain why Plaintiffs' injuries . . . are a foreseeable result of [defendant's] conduct" and instead requires the court to fill in "the numerous links in the causal chain" between a foreign defendant's conduct and Plaintiffs' claims, there is no *prima facie* case of personal jurisdiction.  *Id.* at *6 (rejecting allegations of Swiss defendant's "involvement in the design and sale [of the allegedly defective part] . . . with knowledge that they would eventually be incorporated" into products sold in the United States).

Here, none of Plaintiffs' vague allegations about the Foreign Entities' contacts with the United States have the requisite connection to their claims to satisfy their burden for pleading federal long-arm jurisdiction.  For example, Plaintiffs have no basis to argue that their alleged injuries were a foreseeable result of "VW AG and Audi AG employees . . . affix[ing] labels to the engines of Audi and VW class Vehicles," or the Foreign Entities' "involve[ment] in providing information to train personnel in the United States."  (PAC ¶¶ 56, 62.)  Indeed, these contacts could not even be a "but-for" cause of Plaintiffs' claims.  *See Zanakis*, 2019 WL 2211872, at *5 (contacts such as "attendance at trade shows" in the United States and "visits to potential US sales representatives" were "simply not relevant because they are not 'but for' causes of the injury").  Nor does Plaintiffs' allegation that the Foreign Entities "appointed and/or approved . . . [e]xecutive personnel at [the Domestic Defendants]" (PAC ¶ 33) have any plausible connection to Plaintiffs' remaining claims.  It is thus irrelevant for jurisdictional purposes.  Plaintiffs' claims arise out of the manufacture and advertisement of vehicles containing allegedly defective airbags, and nothing

-14-

in their proposed amendments links any of these unnamed "[e]xecutive personnel" to that conduct. *See Bluewater Trading LLC* v. *Fountaine Pajot, S.A.*, 2008 WL 2705432, at *6 (S.D. Fla. July 9, 2008) (declining to exercise jurisdiction under Rule 4(k)(2) where "Plaintiffs' claim does not arise out of any actions on the part of Defendant [] that could be construed as purposely availing itself of the privilege of conducting activities in the United States").

Plaintiffs' reliance on *Vermeulen*, which they correctly recognize as a leading Eleventh Circuit case on specific jurisdiction over foreign corporations, is both misplaced and illustrative of the deficiencies in their proposed amended pleadings. The *Vermeulen* court exercised specific jurisdiction over the foreign defendant ("RNUR") based on extensive factual allegations on RNUR's role in targeting the American automobile market through its domestic distributor ("AMC"). *See* 985 F.2d at 1549-1551. For example, the court noted that AMC agreed in writing to "verify [with RNUR] the technical content of any representation concerning Renault Products," and that RNUR "reviewed all advertising" for the vehicles "before [AMC] used it." *Id.* at 1538, 1549. Here, Plaintiffs merely state the bare conclusion that the Foreign Entities "worked together" with the Domestic Defendants to develop "product brochures" and "advertising," but do not allege any facts regarding the specific role of any Volkswagen or Audi entity in these marketing efforts. (PAC ¶ 52.) Plaintiffs offer nothing approaching the specific allegations held sufficient in *Vermeulen*; instead, they simply parrot that court's conclusions almost verbatim. *See supra* at p. 11 n.7. But those conclusions were based on facts establishing the defendant's contacts with the United States—an indispensable element of specific jurisdiction under Rule 4(k)(2), as this Court recognized in rejecting Plaintiffs' similarly deficient allegations in the existing complaint. (*See* June 21 Order at 64) ("Plaintiffs fail to allege ***facts*** establishing the Foreign Defendants have sufficient contacts with the United States.") (emphasis added).

-15-

Plaintiffs' remaining proposed amendments are either wholly conclusory or unrelated to conduct allegedly giving rise to Plaintiffs' claims—or both.  For example, Plaintiffs allege in the most general and conclusory terms that the Foreign Entities "have a widespread operational presence in the United States" and "solicited the sale or lease of Class Vehicles . . . in the United States."  (PAC ¶¶ 31, 67.)  Like those that this Court has already rejected, these are "generalized allegations [] devoid of specificity" that cannot satisfy the due-process prong of personal jurisdiction analysis.  (June 21 Order at 59.)  In *Vermeulen*, by contrast, the court cited to the "Market Representation Plan" through which the foreign defendant "set the terms according to which [its U.S.] dealerships conducted business."  985 F.2d at 1549-50.  Plaintiffs' proposed amended complaint contains nothing resembling those facts, and instead relies on conclusory assertions such as "VW AG and Audi AG . . . regularly communicated with authorized dealerships in the United States."  (PAC ¶ 64.)  Other proposed allegations—*e.g.*, that Audi AG "registered and maintained registrations with the U.S. government for trademarks", or that the Foreign Entities set "daily production plans directing worker activities" for VWGoA (PAC ¶¶ 46, 73)—have no discernable connection to Plaintiffs' claims, rendering them irrelevant under the settled law in this Circuit.  (*See* June 21 Order at 57) ("[P]laintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum.") (quoting *Louis Vuitton*, 736 F.3d at 1355-56).[11]

---

[11]    For this reason, Plaintiffs' citation to the recent out-of-Circuit decision in *In re German Automotive Manufacturers Antitrust Litigation*, 2019 WL 2509771 (N.D. Cal. June 17, 2019) is inapposite.  In that case, the plaintiffs alleged a "*de facto* whole car conspiracy to reduce innovation" by manufacturing vehicles with "fewer features and reduced performance." *Id.* at *7. Accordingly—and before concluding that plaintiffs had not stated a claim on the merits—the court found that plaintiffs' claims arose when the German Defendants "indirectly sold [cars] in the United States." *Id.* at *5. Here, Plaintiffs allege that the Foreign Entities purchased and designed defective airbags (PAC ¶ 42)—conduct that they concede occurred in Germany.  (Mot. at 5-6.) Accordingly, aside from being non-binding, *In re German Automotive Manufacturers* is distinguishable.

Nor do Plaintiffs' allegations regarding the design of the Class Vehicles come close to the allegations that have been held sufficient in similar cases in this Circuit. In *Vermeulen*, for example, the court noted that "meetings took place between RNUR and AMC[] officials which resulted in RNUR's modification of its vehicles specifically to accommodate the American market." 985 F.2d at 1549. Similarly, the court in *Hunter* v. *Chrysler Canada* exercised jurisdiction over a foreign auto manufacturer where, pursuant to a "Contract Assembly Agreement" with its domestic parent, the foreign defendant designed vehicles "for the United States market" using "technology, specifications, and technical data" provided by the parent company. 2010 WL 11507536, at *7 (M.D. Fla. June 23, 2010). By contrast, Plaintiffs' bare allegation here says only that "VW AG and Audi AG designed and/or manufactured the Class Vehicles . . . for sale in the United States." (PAC ¶ 55.) Plaintiffs allege that the Class Vehicles were designed to meet U.S. safety standards and be sold in the U.S. generally (PAC ¶¶ 37, 55), yet say nothing about the Foreign Entities' alleged role in developing or designing inflators or airbag modules specifically targeted at the U.S. market—and thus plead no "affiliation between the forum and the underlying controversy." *Waite*, 901 F.3d at 1314.

Finally, Plaintiffs' proposed amendments regarding marketing and advertising suffer from the same problem that this Court identified in its June 21 Order—they fail to "specify the nature of the Foreign [Entities'] involvement in, or control over, creating and marketing the advertisements and promotional materials that described the Class Vehicles as safe and reliable." (June 21 Order at 65.) In the existing complaint, Plaintiffs allege that the Foreign Entities "developed, reviewed, and approved the marketing and advertising campaigns designed to sell these Class Vehicles." (ECF No. 2762 ¶ 31.) The proposed amended complaint offers nothing more than a wordier version of these deficient allegations: "VW AG worked together with Audi

-17-

AG, Audi of America, and VW America to develop the owner's manuals, warranty booklets, product brochures, advertisements, and other promotional materials relating to the VW and Audi Class Vehicles sold in the United States." (PAC ¶ 52.) These allegations say nothing specific about "the **nature** of the Foreign [Entities'] involvement" in the marketing of class vehicles, or that the Foreign Entities otherwise "had any **contacts** with the United States related to these promotional materials." (June 21 Order at 65) (emphasis added). Accordingly, Plaintiffs have not pled a "sufficient causal nexus between the alleged torts and" the Foreign Entities' conduct to satisfy due process. *GolTV, Inc.* v. *Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1319 (S.D. Fla. 2017).

## II. ANY AMENDMENT SHOULD BE SOUGHT AFTER THE COURT HAS RULED ON ALL OF THE OUSTANDING MOTIONS TO DISMISS.

This Court has "extensive discretion" in deciding a motion for leave to amend. *Campbell* v. *Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999). Notably, as Plaintiffs concede, this Court has *already* faced, and dealt with, this same question multiple times in the first wave of the MDL litigation. (*See* Mot. at 3.) In April 2016, while motions to dismiss were still pending, Plaintiffs sought guidance on when to file a third amended complaint. This Court ordered Plaintiffs to file a third amended complaint only "after the Court has ruled on all pending motions to dismiss." (ECF No. 1040 at 1.) In November 2016, the issue arose again, and the Court reiterated that it did not want to see piecemeal amendments, informing Plaintiffs that it "didn't want to do what many times happens in Federal court where you have one Complaint after another and we have the Fourth Amended Complaint, the Fifth Amended Complaint." (Mot. at 18 n.10 (citing ECF No. 1964-1 ("Nov. 9, 2016 Hr'g Tr.") at 9-10).) And the Court again expressed the same preference in February 2017, telling Plaintiffs that "we're not going to have the song and dance; amend the

-18-

complaint, new motions to dismiss, responses, replies . . . we're not going to do that." (ECF No. 434 at 34:19-22.) There is no reason for the Court to change its approach now.

Moreover, the Court's rulings on the remaining issues in Defendants' Motion to Dismiss will bear directly on the jurisdictional allegations Plaintiffs seek to add now. As described above, Plaintiffs invoke Rule 4(k)(2), which requires a federal cause of action. (*See* June 21 Order at 63.) This Court has dismissed Plaintiffs' RICO claims and Plaintiffs do not allege RICO in their proposed amended complaint, leaving only their MMWA claims as a federal cause of action sufficient to invoke Rule 4(k)(2)—a claim that Defendants have moved to dismiss.[12] If the Court dismisses these claims, as Defendants believe the Court should, Plaintiffs cannot rely on Rule 4(k)(2) as a basis for personal jurisdiction over the Foreign Entities.

Plaintiffs' only justification for their piecemeal amendment strategy is that they need "critical" discovery now of VW AG and Audi AG. But that claim is specious, at best, and in any event is not a justification to impose significant inefficiency on the Court and the parties. Plaintiffs waited years to sue. As noted above, Plaintiffs informed this Court as early as November 2016 that they would be making a decision on bringing a suit against the Foreign Entities "within the next, you know, 30 days." (Nov. 9, 2016 Hr'g Tr. at 20:7-8.) Plaintiffs instead waited almost a year to bring their first complaint against VW AG, and more than 16 months before bringing a case against Audi AG. Worse, none of Plaintiffs' complaints, even with the benefit of years of preparation, pled a bare modicum of jurisdictional allegations. As this Court recently held,

---

[12]     Plaintiffs have already in effect conceded to the dismissal of their MMWA claims as to Plaintiffs in all but 11 states against Volkswagen AG and Audi AG. (*See* ECF No. 3034 at 116; ECF No. 3103 at 24.) The Foreign Entities have moved to dismiss all of the claims under the MMWA because Plaintiffs have failed to plead the cars are unmerchantable, and have additionally moved to dismiss the claims in 10 of those 11 states as time-barred. As to the 11th state, South Carolina, the Court has already ruled that Plaintiffs have no standing to pursue a claim against Audi AG. (*See* June 21 Order at 22.)

Plaintiffs should not be granted leave to "look for what [they] should have had—but did not—before coming through the courthouse doors." (June 21 Order at 72 (quoting *Lowery* v. *Alabama Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007).)

Further, Plaintiffs articulate no reason why their need for immediate discovery is "critical," nor could they, in light of their own delay in bringing suit. There are no time-sensitive personal injury claims at issue in this case; Plaintiffs allege purely economic injury. And unlike plaintiffs in most cases, these Plaintiffs already have access to a huge trove of documents produced by Takata. By contrast, if Plaintiffs were granted leave to amend and permitted to seek discovery, there would be significant prejudice to the Foreign Entities. VW AG and Audi AG would be subjected to the considerable time and expense of responding to Plaintiffs' excessive document requests in a foreign country where the Court has already found they are not subject to jurisdiction, and the significant additional burden of ensuring compliance with obligations under European data privacy law—all for a case that may be dismissed based on pending motions. *See Campbell*, 166 F.3d at 1162 (leave to amend should be denied where the amendment would "cause[] undue delay and expense, and result[] in unfair prejudice to the . . . defendants"). Because there is no "critical" need for discovery, and in light of the substantial prejudice to the Foreign Entities that discovery would entail, there is no justification for Plaintiffs' piecemeal amendment strategy. [13]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for leave to amend should be denied. In the alternative, the Court should defer ruling on any amendment until all pending motions to dismiss have been decided.

---

[13]    Plaintiffs' request for confirmation that they can amend *further* "based on new evidence collected through discovery," (Mot. at 3), is premature. Defendants reserve all rights to oppose such amendment if and when Plaintiffs actually seek it.

Dated:   Aug. 26, 2019

/s/ Gerald E. Greenberg
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
MIKAYLA ESPINOSA
Florida Bar No. 1008227
mikaylaespinosa@gsgpa.com
GELBER SCHACHTER &
GREENBERG, P.A.
1221 Brickell Avenue, Suite 2010
Miami, Florida  33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

ROBERT J. GIUFFRA JR.
giuffrar@sullcrom.com
SUHANA S. HAN
hans@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone: (212) 558-4000

JAMES H. CONGDON
congdonj@sullcrom.com
SULLIVAN & CROMWELL LLP
1700 New York Ave NW
Washington, DC  20006
Telephone: (202) 956-7500

Counsel for Volkswagen AG, Audi AG,
Volkswagen Group of America, Inc., and
Audi of America, LLC