UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**MDL No. 2599**
**Master File No. 15-02599-MD-MORENO**
**Economic Loss No. 14-24009-CV-MORENO**

IN RE

**TAKATA AIRBAG PRODUCTS**
**LIABILITY LITIGATION**

_____/

DAVID WHITAKER, *et. al.*, individually
and on behalf of all others similarly situated,

       Plaintiffs,

  v.

GENERAL MOTORS LLC,
GENERAL MOTORS COMPANY, and
GENERAL MOTORS HOLDINGS LLC,

       Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**GENERAL MOTORS'S MOTION TO DISMISS**

## I.    INTRODUCTION

This multidistrict litigation consolidates allegations of economic loss and personal injury related to airbags manufactured by former-defendants Takata Corporation and TK Holdings (collectively, "Takata") and equipped in vehicles distributed by General Motors LLC, General Motors Company, and General Motors Holdings LLC ("General Motors"). The allegations are that General Motors's vehicles were equipped with Takata airbags containing the chemical ammonium nitrate, which creates a small explosion to inflate the airbags during a crash. Plaintiffs, who are consumers of General Motors's vehicles, contend that when exposed to high heat and humidity, the explosion is much more forceful and can cause significant injuries and even death.

The crux of Plaintiffs' legal claims is that General Motors knew or should have known of the Takata inflator defect prior to installing the Takata airbags in their vehicles, and that General Motors concealed from, or failed to notify, the Plaintiffs and the general public of the full and complete nature of the inflator defect. Plaintiffs allege that as a result of General Motors's concealment, Plaintiffs would not have purchased their vehicles or would not have paid as much for them as they did.

General Motors vigorously contests the sufficiency of the allegations supporting a myriad of claims remaining in the 40-count Complaint. The Court has thoroughly reviewed the allegations in the Complaint and the arguments in the parties' moving papers. This Order resolves all remaining claims asserted by the Consumer Plaintiffs against General Motors.

For the reasons explained below, General Motors's Motion to Dismiss **(D.E. 2981)** is **GRANTED IN PART** as follows:

- The nationwide-class Magnuson-Moss Warranty Act claim (Count 1) is **DISMISSED** in full;

- The statewide-class breach of implied warranty claims under the laws of Indiana and Kentucky (Counts 16 and 17) are **DISMISSED**;

- The statewide-class statutory consumer protection claims under the laws of Florida, Indiana, Louisiana, Pennsylvania, Tennessee, and Vermont (Counts 12, 15, 19, 31, 33, and 36) are **DISMISSED**;

- The common law fraud claim (Count 4) is **DISMISSED** as to named-Plaintiff Tarus Sibley, and as to all putative class members whose fraud claims are governed under the laws of Florida, Indiana, Kentucky, Louisiana, Tennessee, and Vermont;

- The common law negligence claim (Count 5) is **DISMISSED** as to named-Plaintiff Tarus Sibley, and as to all putative class members whose negligence claims are governed under the laws of Florida, Indiana, Kentucky, Louisiana, Tennessee, and Vermont; and

- The common law unjust enrichment claim (Count 6) is **DISMISSED** as to named-Plaintiffs Gene Paleno and Tarus Sibley, and as to all putative class members whose unjust enrichment claims are governed under the laws of Florida, Indiana, Kentucky, Louisiana, Tennessee, and Vermont.

Furthermore, the Motion to Dismiss is **DENIED** as to the following claims, which will proceed to summary judgment:

- The statewide-class statutory consumer protection and breach of implied warranty claims in Counts 7–11, 13–14, 18, 20–30, 32, 34–35, and 37–40;

- Claims for fraud (Count 4) asserted by all named-Plaintiffs whose claims are governed under the laws of Alabama, California, Georgia, Michigan, Mississippi, Missouri, New Jersey, New York, North Carolina, Texas, Virginia, and West Virginia;

- Claims for negligence (Count 5) asserted by all named-Plaintiffs whose claims are governed under the laws of Georgia, Mississippi, Missouri, New Jersey, New York, Texas, Virginia, and West Virginia; and

- Claims for unjust enrichment (Count 6) asserted by all named-Plaintiffs whose claims are governed under the laws of Alabama, California (except Plaintiff Gene Paleno), Georgia, Michigan, Mississippi, Missouri, New Jersey, New York, North Carolina, Pennsylvania, Texas, Virginia, and West Virginia.

## II.   **LEGAL STANDARD**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations.  *Id.* at 679.  Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action."  *Twombly*, 550 U.S. at 555 (citation omitted). The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted).

Where a cause of action sounds in fraud, the allegations in the complaint must satisfy the particularity pleading requirement of Federal Rule of Civil Procedure 9(b).  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake"; although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b).  To comply with Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (*per curiam*) (citation omitted).  In other words, a plaintiff is

required to plead the "who, what, when, where, and how" pertaining to the underlying fraud. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citation omitted). The purpose of particularity pleading is to alert the defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior. *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation omitted).

Finally, at the motion to dismiss stage, the Court must view the allegations in the complaint in the light most favorable to the plaintiffs and accept well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

## III.    DISCUSSION

In a previous order, the Court resolved standing, personal jurisdiction, and primary jurisdiction challenges, and ruled on the sufficiency of the allegations supporting the Racketeer Influenced and Corrupt Organizations Act claims. *See In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d 1101 (S.D. Fla. 2019). After thoroughly reviewing the Complaint and the moving papers, the Court dismissed the RICO claims (Counts 2 and 3), and the "Direct-File Action" in its entirety for lack of personal jurisdiction.

The Court will now resolve General Motors's challenges to the claims remaining in the 40-count Complaint, which includes: a nationwide-class claim under the Magnuson-Moss Warranty Act (Count 1); nationwide-class common-law claims for fraud, negligence, and unjust enrichment (Counts 4–6); and statewide-class claims alleging breach of implied warranty and violations of various state consumer protection statutes (Counts 7–40). Before addressing the sufficiency of the allegations, the Court will determine the substantive law governing the claims of each named-Plaintiff.

## A.  APPLICABLE LAW

Questions of federal law in cases transferred under 28 U.S.C. Section 1407 are governed by the clearly settled law of the transferee court's circuit. *See In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1336 (S.D. Fla. 2001) (citing *Murphy v. F.D.I.C.*, 208 F.3d 959, 966 (11th Cir. 2000) ("Since the federal courts are all interpreting the same federal law, uniformity does not require that transferee courts defer to the law of the transferor circuit.") (citing *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (ruling, in the context of a Section 1407(a) transfer, that "[b]inding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit"))).

Questions arising under state law are generally governed by the substantive state law dictated by the choice of law rules of the federal court's state. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). But in cases transferred under Section 1407, the transferee court must apply the substantive state law dictated by the choice of law rules of the transferor court's state. *See In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016) (quoting *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003)).

## B.  CHOICE-OF-LAW ANALYSIS

The Complaint consolidates the Plaintiffs and the claims that were filed in the *Brugaletta* Complaint in the Eastern District of Michigan and later transferred to this Court by the Judicial Panel on Multidistrict Litigation, with the claims of Plaintiff David Whitaker, the only plaintiff to file his claims directly in this MDL proceeding. *See In re Takata Airbag Products Liab. Litig.*, 379 F. Supp. 3d 1333, 1336–37 (S.D. Fla. 2019) (summarizing procedural and substantive background of the *Brugaletta* Complaint). The claims asserted by Whitaker were previously dismissed in their entirety, thus obviating any choice of law analysis here. *See In re*

- 6 -

*Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d at 1169 & n.17.

For the remaining named-Plaintiffs, the Court will now apply Michigan choice of law rules, which recognize "a presumption in favor of *lex fori* and apply Michigan law 'unless a 'rational reason' to do otherwise exists.'" *Std. Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (quoting *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W. 2d 466, 471 (Mich. 1997)). In determining whether there is a rational reason to displace Michigan law, the Court must undertake a two-step analysis. *Sutherland*, 562 N.W. 2d at 471. First, the Court "must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome." *Id.* On the other hand, if a foreign state does have an interest in having its law applied, the Court "must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* (citing *Olmstead v. Anderson*, 400 N.W. 2d 292, 304–05 (Mich. 1987)).

To start, there is no doubt that Michigan substantive law applies to the claims asserted by named-Plaintiffs Michael McBride and Gordon McFarland because they are Michigan residents who purchased their vehicles in Michigan.

As for the remaining named-Plaintiffs, states other than Michigan have an interest in having their law applied. Most of these named-Plaintiffs purchased or leased their vehicle in their state of residence—which provides a "rational reason" to depart from applying Michigan substantive law. *See In re Takata Airbag Products Liab. Litig.*, No. 14-24009-CV, 2016 WL 5848843, at \*5 (S.D. Fla. Sept. 21, 2016) ("Michigan courts routinely hold that when an out-of-state plaintiff brings an action against a Michigan manufacturer for injuries sustained in the plaintiff's state of residence, the presumption in favor of *lex fori* is overcome and plaintiff's claims are governed by the law of plaintiff's state of residence.") (citations omitted); *see also In re Takata*

*Airbag Products Liab. Litig.*, No. 14-24009-CV, 2016 WL 6072406, at *6 (S.D. Fla. Oct. 14, 2016). For these named-Plaintiffs, substantive law applies as follows: **Alabama** law to Tommy Rivers and Mary Rivers; **California** law to John Brugaletta, Donovan J. Jacobs, Gene Paleno, and Jay Riojas; **Georgia** law to Dyeshawn Lodge; **Louisiana** law to Tarus Sibley; **Mississippi** law to Arkil Truss and Craig Wise (for the vehicle he purchased in Mississippi); **Missouri** law to David Cox, Clyde Holmes, and April Hughes-Cox; **New Jersey** law to Marlene S. Karu, and Kolmon Nemes, Jr.; **New York** law to John Condon; **North Carolina** law to Leonard Shinhoster; **Pennsylvania** law to Kimberly Dominick and Kenneth Morgan; **Texas** law to Kory Fugazzi; **Virginia** law to Ralph Wayne Packett; and **West Virginia** law to Jay Wymer.

Certain other named-Plaintiffs purchased or leased their vehicle in a state where they do not live. Earlier in this litigation, this Court found that neither a plaintiff's domicile, nor a defendant's domicile, alone, provides a "rational reason" to overcome the presumption of applying Michigan substantive law. *See In re Takata Airbag Products Liab. Litig.*, 2016 WL 5848843, at *5 ("The only significant tie to California alleged is that Toyota is headquartered in California. This tie is not enough to defeat the presumption in favor of Michigan law or the interests of Pennsylvania, which is where [plaintiff] resides and purchased the Toyota."); *In re Takata Airbag Products Liab. Litig.*, 2016 WL 6072406, at *6 ("The state of Pennsylvania's sole potential interest to this litigation is [plaintiff's] residence. The United States Supreme Court has held that residence alone does not create a state interest sufficient to overcome the presumption that Michigan law applies [to] claims filed in the state of Michigan.") (citation omitted).

This Court also explained that because Michigan courts apply the doctrine of *lex fori* (where the claim was filed)—rather than *lex loci delicti* (where the alleged harm occurred)—the location of the harm (where the vehicle was purchased or leased) does not provide a

- 8 -

"rational reason" to overcome the presumption of applying Michigan substantive law. *See In re Takata Airbag Products Liab. Litig.*, 2016 WL 6072406, at *6. Based on these rationales, the Court finds that there is no "rational reason" to depart from applying Michigan substantive law to the claims of these named-Plaintiffs: Sarie Bevins, Ramand Giddings, Judith Gross, Vicky Keen, Calaundra Miller, Gerald Muehl, Tremain Willis, and Craig Wise (for the vehicle he purchased in Louisiana).

Based on this choice-of-law analysis, certain claims must be dismissed. Because the substantive law of Florida, Indiana, Kentucky, Tennessee, and Vermont do not apply to any named-Plaintiffs, the statutory claims under the laws of these states (Counts 12, 15–17, 33, and 36) are **DISMISSED** in full; as are the common law claims (Counts 4–6) to the extent they are asserted under the laws of these states. By extension, all these claims are also **DISMISSED** as to all putative class members with claims under the laws of these states. *See Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1288 (11th Cir. 2001) ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000)).

Even though General Motors attacks these claims with several arguments, for sake of brevity and clarity, the Court will not specifically reference these claims or General Motors's corresponding arguments elsewhere in this Order. For the same reasons, the Court also will not reference these claims in the conclusion sections of each heading. Where applicable, however, the Court refers to these dismissals as the "choice-of-law dismissals."

Having determined the substantive law that governs the claims of each named-Plaintiff, the Court will now address the sufficiency of Plaintiffs' allegations. The Court will begin by reviewing the fraud-based claims (common law and statutory), and then evaluate the remaining

common law claims (negligence and unjust enrichment). Finally, the Court will assess the nationwide-class Magnuson-Moss Warranty Act claim and the statewide-class breach of implied warranty claims.

## C. NATIONWIDE-CLASS COMMON-LAW FRAUD AND STATEWIDE-CLASS STATUTORY CONSUMER PROTECTION CLAIMS

Plaintiffs assert a nationwide-class common-law fraud claim (Count 4) and numerous statewide-class statutory consumer protection claims (Counts 7–10, 13–14, 19–20, 23, 25, 27–28, 30–31, 34, 37, and 39). General Motors argues that all fraud-based claims should be dismissed because Plaintiffs fail to meet the pleading requirements of Rule 9(b), and also fail to allege that General Motors made material misrepresentations or omissions. In addition, General Motors contends that several of the fraud-based claims are barred by the economic loss rule of certain states, and that the Louisiana Products Liability Act bars the common law fraud claim under Louisiana law, as well as the claim under Louisiana's Unfair Trade Practices and Consumer Protection Law.

For ease of reference, the Court refers to the common-law fraud and statutory consumer protection claims as "fraud-based" claims; this term accurately describes the claims and is consistent with the *Puhalla* Order. (*See* D.E. 3834 at 11.)

### 1. Rule 9(b) Pleading

First, General Motors argues that all fraud-based claims must be dismissed because Plaintiffs fail to satisfy the pleading requirements of Rule 9(b). Throughout this case, the Court has rejected this challenge.

In the first significant order in this litigation, this Court ruled that the plaintiffs "pleaded fraudulent concealment with sufficient particularity" against Mazda. *In re Takata Airbag Products Liab. Litig.*, 193 F. Supp. 3d at 1336–37. There, like here, the plaintiffs' fraud-based claims were

premised on Mazda's "fail[ure] to disclose its knowledge of a life threatening inflator defect prior to Plaintiffs' purchases through any mode of communication." (*Id.* at 1337; *see also* D.E. 2759 at ¶ 2 ("Defendants knowingly misrepresented as safe GM vehicles and deceptively concealed the fact that inflators in these vehicles were prone [to] aggressively deploy and/or violently explode and maim or kill drivers and passengers.").)

In the "Mazda Order," this Court carefully explained that, "[b]y definition," the plaintiffs could not "point to one particular statement by Mazda" because an *omission* claim is based on "a non-statement." *In re Takata Airbag Products Liab. Litig.*, 193 F. Supp. 3d at 1337. To support their omission claim, the plaintiffs alleged that Mazda "had a duty to disclose the Inflator Defect because it . . . [m]ade incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations." *Id.* The plaintiffs further alleged that Mazda touted the safety of its vehicles through various marketing materials. *Id.* With these allegations, this Court found that the plaintiffs "sufficiently pleaded the 'who, what, when, and where' of their omission claim"—that is, the plaintiffs alleged that "Mazda failed to disclose its knowledge of a life threatening inflator defect prior to Plaintiffs' purchases through any mode of communication." *Id.*

Following the Mazda Order, this Court rejected several other defendants' attempts to dismiss fraud-based claims on Rule 9(b) grounds. *See, e.g.*, *In re Takata Airbag Products Liab. Litig.*, No. 14-24009-CV, 2017 WL 775811, at *4–6 (S.D. Fla. Feb. 27, 2017) (denying, for reasons stated in Mazda Order, motion to dismiss common law fraudulent concealment claims on Rule 9(b) grounds); *In re Takata Airbag Products Liab. Litig.*, 255 F. Supp. 3d 1241, 1258–59 (S.D. Fla. 2017) (denying, for reasons stated in Mazda Order, motion to dismiss state statutory consumer protection claims on Rule 9(b) grounds); *In re Takata Airbag Products Liab. Litig.*, No. 14-24009-

CV, 2016 WL 5844872, at *3–4 (S.D. Fla. June 20, 2016) (denying, for reasons stated in Mazda Order, motion to dismiss on Rule 9(b) grounds common law fraudulent concealment claims and claims under state consumer protection laws).

Here, Plaintiffs' allegations mirror the allegations of their predecessors. They allege that General Motors "had a duty to disclose the Inflator Defect" because it "[h]ad exclusive and/or far superior knowledge and access to the facts," "[i]ntentionally concealed" the facts from Plaintiffs, and "[m]ade incomplete representations about the safety and reliability of the Defective Airbags and Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations." (D.E. 2759 at ¶ 240.) Plaintiffs further allege that General Motors distributed marketing materials that touted General Motors's commitment as a brand to ensure customer safety, *see id.* at ¶¶ 155(a)–(n), including promoting four vehicles for receiving an Insurance Institute for Highway Safety "top safety pick," which, notably, included models subject to recalls for the Inflator Defect, *id.* at ¶ 155(c). And finally, Plaintiffs allege that through these advertisements and promotional materials, General Motors "continuously maintained that GM-branded vehicles were safe and reliable, and uniformly concealed the Inflator Defect," which was "material to Plaintiffs' decisions to purchase or lease Class Vehicles." *Id.* at ¶ 154. Once more, the Court finds that these allegations satisfy Rule 9(b).[1]

---

[1] Although the Court previously dismissed RICO claims against General Motors because Plaintiffs' allegations lacked particularity, that ruling was specific to Plaintiffs' claim that General Motors "engaged in a pattern of racketeering activity premised on mail and wire fraud." *In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d at 1159.

Notably, stating a RICO claim requires more than just alleging fraudulent conduct; a pattern of racketeering claim requires allegations showing that the defendant engaged in conduct of an *enterprise* through a *pattern* of racketeering activity. *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006), *abrogated on other grounds by Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340 (11th Cir. 2016). And the "essence" of a RICO conspiracy claim is that "each defendant has *agreed* to participate in the conduct of an enterprise's illegal activities." *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008)

## 2.   Omissions and Misstatements

Second, General Motors argues that all fraud-based claims must be dismissed because Plaintiffs do not adequately allege that General Motors either failed to disclose the Takata inflator defect, or made any actionable misstatements. Plaintiffs maintain that General Motors breached a duty owed to the Plaintiffs by failing to fully inform them about the nature of the Takata inflator defect. Plaintiffs also contend that General Motors made actionable misstatements by falsely touting the safety of their vehicles.

In the *Puhalla* Order, the Court resolved a similar challenge brought by Mercedes, Audi, and Volkswagen. Looking to prior rulings in this case, this Court explained that, by definition, Plaintiffs cannot point to one particular statement because an *omission* is a non-statement. (*See* D.E. 3834 at 13 (quoting *In re Takata Airbag Products Liab. Litig.*, 193 F. Supp. 3d at 1337–38).) After reviewing the plaintiffs' allegations, the Court found that the plaintiffs sufficiently alleged that Mercedes, Audi, and Volkswagen had a duty to disclose the Inflator Defect, and thus declined to dismiss the fraud-based claims. *See id.* at 13–14.

Like the plaintiffs in *Puhalla*, Plaintiffs here also allege that General Motors had a duty to disclose the Inflator Defect because it had exclusive and/or far superior knowledge and access to facts that were not known to or reasonably discoverable by Plaintiffs, and which General Motors

---

(emphasis in original) (citing 18 U.S.C. § 1962(d)). Furthermore, "[g]iven the routine use of mail and wire communications in business operations . . .[,] 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)).

The Court dismissed the RICO claims against General Motors because the only particularized "pattern of racketeering" and "conspiracy" allegation was a single communication between Takata and a specific General Motors employee. *See In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d at 1160 (finding that Plaintiffs did not explain how the alleged statement, which was "susceptible to numerous explanations," constituted mail or wire fraud). In short, Plaintiffs' allegations did not clear the pleading hurdles required to state a RICO claim.

intentionally concealed from Plaintiffs, all the while making incomplete representations about the safety and reliability of their vehicles. (*See* D.E. 2759 at ¶¶ 240(a)–(c).) For the reasons explained in the *Puhalla* Order, and as the Court has throughout this case on similar allegations, the Court declines to dismiss any fraud-based claims on this ground.

As for General Motors's "puffery" argument, the Court also explained in the *Puhalla* Order that "[a]lthough the marketing of safety features may be construed as 'puffery' when viewed in isolation, such marketing can 'cross the line from mere puffery to active misrepresentations' when statements about safety are read next to allegations that an automotive manufacturer had actual knowledge of the alleged safety defect." (*See* D.E. 3834 at 14–15 (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 457 (S.D.N.Y. 2017); citing *In re Toyota Motor Corp.*, No. 8:10ML 02151 JVS (FMOx), 2012 WL 12929769, at *18 (C.D. Cal. May 4, 2012) ("Advertising a car as safe and reliable when it actually has a safety-related defect that may render it unable to stop is not 'within the tolerable range of commercial puffery,' especially because Toyota allegedly had exclusive knowledge of the SUA defect.")).)

Like the plaintiffs in *Puhalla*, Plaintiffs here allege that General Motors distributed marketing materials that touted General Motors's commitment to vehicle safety. (*See* D.E. 2759 at ¶¶ 155(a)–(n).) Among other examples, Plaintiffs allege that General Motors: (1) promoted four vehicles as receiving an Insurance Institute for Highway Safety "top safety pick" (which included models subject to recalls for the Inflator Defect); (2) published an interview with General Motors's Executive Director of Vehicle Safety and Crashworthiness, who explained that "internal requirements for vehicle safety and crashworthiness . . . go above and beyond federal standards"; and (3) published a video advertising General Motors's "quality processes in the plant[s] that prevent any defects from getting out." *Id.* at ¶¶ 155(c), (h), (l). Plaintiffs also allege that, through

these promotions, General Motors "continuously maintained that GM-branded vehicles were safe and reliable, and uniformly concealed the Inflator Defect"—which was "material to Plaintiffs' decisions to purchase or lease Class Vehicles." *Id.* at ¶ 154. And finally, as the Court found in a previous order, Plaintiffs' allegations demonstrate that General Motors had actual knowledge of the Inflator Defect. (*See In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d at 1159; *see also* D.E. 2759 at ¶¶ 9–12, 102–23.) Taken together, the Court finds that Plaintiffs sufficiently allege that the promotion of vehicle safety in General Motors's marketing materials crosses the line from mere "puffery" to active misrepresentation.

So, in addition to the duty to disclose, the Court also finds that Plaintiffs' allegations of material misstatements—*i.e.* that General Motors continued to promote the safety of their vehicles despite having actual knowledge of the inflator defect—are sufficient to survive the Motion to Dismiss. Of course, at summary judgment or trial, General Motors can present evidence to disprove these allegations. But for now, the claims survive dismissal.

### 3. Economic Loss Bars

Third, General Motors argues that the economic loss rule bars claims for violation of North Carolina's Unfair or Deceptive Trade Practices Act (Count 30), Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count 31), and Texas's Deceptive Trade Practices-Consumer Protection Act (Count 34) because Plaintiffs only seek economic loss damages. General Motors extends this argument to the common law fraud claims under Michigan, North Carolina, and Texas law. Plaintiffs urge that several of these states recognize a fraud exception to the economic loss rule, and thus their statutory and common law fraud-based claims can proceed under the laws of those states. Beginning with Michigan, the Court addresses these arguments in turn.

a)   **Michigan**

To start, General Motors argues that the common law fraud claim under Michigan law should be dismissed as barred by the economic loss rule. Plaintiffs point out that the Court already determined earlier in this case that Michigan's economic loss rule does not bar fraud claims. More precisely, this Court found that the plaintiffs' fraudulent *concealment* claim against Takata was not barred by Michigan's economic loss rule. *See In re Takata Airbag Products Liab. Litig.*, No. 14-24009-CV, 2017 WL 2406711, at *7 (S.D. Fla. June 1, 2017).

In denying Takata's motion to dismiss, this Court relied on *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, where the Michigan Court of Appeals ruled there is an exception to Michigan's economic loss rule for fraudulent *inducement* claims. 532 N.W. 2d 541 (Mich. Ct. App. 2001). There, the Michigan Court of Appeals reasoned that "[f]raud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *Id.* at 545. The Court of Appeals then explained that "[t]he danger of allowing contract law to 'drown in a sea of tort' exists only where fraud and breach of contract claims are factually indistinguishable. However, a claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute contract or warranty terms subsequently breached by the seller." *Id.* at 546 (internal citations and quotations omitted).

Following *Huron*'s reasoning, this Court found in its previous order that the plaintiffs' fraudulent *concealment* claims "redress[ed] misrepresentations that allegedly induced Plaintiffs to purchase vehicles, but [did] not themselves constitute contract or warranty terms." *In re Takata*

*Airbag Products Liab. Litig.*, 2017 WL 2406711, at \*7. This Court further explained that "[t]his 'precontractual' conduct [was] not covered by contractual remedies and thus application of the economic loss doctrine to bar Plaintiffs' claims [was] inconsistent with the rationale of the doctrine itself—to encourage parties to negotiate economic risks through warranty provisions and price." *Id.* (citing *Huron Tool & Eng'g Co.*, 532 N.W. 2d at 544–45). After finding that the fraudulent concealment claim was "extraneous to any contractual dispute," this Court ruled that Michigan's economic loss rule did not bar the claim. *Id.*

Here, even though the claim in Count 4 is styled as fraud—as opposed to fraudulent concealment or inducement—what matters legally is what Plaintiffs allege. *See Huber v. Crop Prod. Servs., Inc.*, No. 06-14564-BC, 2007 WL 2746625, at \*6 (E.D. Mich. Sept. 19, 2007) (ruling Michigan's economic loss rule did not bar fraud claim where the plaintiff alleged that the defendant's misrepresentations, which were extraneous to the contract, induced the plaintiff to contract with the defendant). And Plaintiffs here allege that General Motors's precontractual conduct—*i.e.* "conceal[ing] and suppress[ing] . . . material facts to falsely assure purchasers and consumers that the Defective Airbags and Class Vehicles were capable of performing safely" (D.E. 2759 at ¶ 242)—induced Plaintiffs to purchase their vehicles because the unknown material facts "would be relied on by a reasonable person purchasing, leasing or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and the Class, *id.* at ¶ 241.

In other words, Plaintiffs' fraud claim seeks to "redress misrepresentations that allegedly induced Plaintiffs to purchase vehicles, but [did] not themselves constitute contract or warranty terms." *In re Takata Airbag Products Liab. Litig.*, 2017 WL 2406711, at \*7. The Court thus finds that the fraud claim is "extraneous to any contractual dispute." *Id.* And, same as before, applying

- 17 -

the economic loss rule to bar Plaintiffs' fraud claim under Michigan law would be "inconsistent with the rationale of the doctrine itself." *Id.* (citing *Huron Tool & Eng'g Co.*, 532 N.W. 2d at 544–45). Therefore, because Plaintiffs allege General Motors's precontractual concealment of material facts induced Plaintiffs to purchase their vehicles, the Court finds that the fraud claim is not barred by Michigan's economic loss rule.

### b) North Carolina and Pennsylvania

In the *Puhalla* Order, the Court resolved economic loss challenges brought by Mercedes, Audi, and Volkswagen to the plaintiffs' claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count 31) and North Carolina's Unfair or Deceptive Trade Practices Act (Count 30). The Court reaches the same conclusions here. The claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law is barred by the economic loss rule. (*See* D.E. 3834 at 16 (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (affirming dismissal of Unfair Trade Practices and Consumer Protection Law claim as barred by economic loss rule); D.E. 1208 at 9 (ruling same under *Werwinski*)).) Accordingly, Count 31 is **DISMISSED**.

As for the claim under North Carolina law, like the plaintiffs in *Puhalla*, Plaintiffs here also allege that General Motors "failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them" "with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them" (D.E. 2759 at ¶¶ 628–29); and that had Plaintiffs "been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them," then Plaintiffs would not have purchased their vehicles or paid as much for them, *id.* at ¶ 641. These allegations sufficiently allege that General Motors had a separate and

- 18 -

distinct duty under North Carolina law to not provide false information to induce the purchase of the vehicles. (*See* D.E. 3834 at 17–18 (citing *Schumacher Immobilien Und Beteiligungs AG v. Prova, Inc.*, No. 1:09cv00018, 2010 WL 3943754, at *2 (M.D.N.C. Oct. 7, 2010) (ruling that a party to a contract "owes the other contracting party a separate and distinct duty not to provide false information to induce the execution of the contract") (citing *Kindred of N.C., Inc. v. Bond*, 584 S.E. 2d 846, 853 (N.C. Ct. App. 2003) (ruling defendant "owed a duty to provide accurate, or at least negligence-free financial information" to the plaintiff))).) Thus, the North Carolina Unfair or Deceptive Trade Practices Act claim is not barred by the economic loss rule.

Although the Court did not address in the *Puhalla* Order whether the economic loss rule bars common law fraud claims under North Carolina law, earlier in this case the Court determined that other plaintiffs' common law fraudulent concealment claim survived the economic loss rule. *See In re Takata Airbag Products Liab. Litig.*, 2017 WL 2406711, at *8 (denying motion to dismiss because it was "clear that claims for fraud are not barred by North Carolina's economic loss rule") (citing *Bradley Woodcraft, Inc. v. Bodden*, 795 S.E. 2d 253, 259 (N.C. Ct. App. 2016)). North Carolina courts have ruled likewise as to common law fraud claims. *See also City of High Point, N.C. v. Suez Treatment Sols. Inc.*, No. 1:19CV540, 2020 WL 1307017, at *11 (M.D.N.C. Mar. 19, 2020) (ruling economic loss rule did not bar plaintiff's fraud claim where plaintiff plausibly alleged a separate and distinct duty to not provide false information to induce the execution of the contract); *SAS Inst. Inc. v. World Programming Ltd.*, No. 5:10-CV-25-FL, 2013 WL 12171748, at *8–9 (E.D.N.C. Aug. 8, 2013) (ruling economic loss rule did not bar fraud claim premised on defendant's duty to not deceive plaintiff). Therefore, the Court also declines to dismiss the common law fraud claim under North Carolina's economic loss rule.

c) **Texas**

Finally, General Motors argues that the fraud-based claims under Texas law are barred by the economic loss rule. The seminal economic loss case in Texas is *Sharyland Water Supply Corp. v. City of Alton.* 354 S.W. 3d 407 (Tex. 2011). There, the Supreme Court of Texas reversed a ruling by the Court of Appeals that barred a negligence claim under the economic loss rule. *Id.* at 415, 424. The Supreme Court of Texas explained that the Court of Appeals "overstate[d] and oversimplifie[d] the economic loss rule," and "overlook[ed] all of the tort claims for which courts have allowed recovery of economic damages even absent physical injury or property damage." *Id.* at 418. Among these claims, are claims for "negligent misrepresentation . . . fraud, fraudulent inducement . . . and some statutory causes of action . . . ." *Id.* at 418–19.

Under Texas law, "[b]reach of 'an independent legal duty, separate from the existence of the contract itself,' represents a particular situation where tort claims (based on that independent duty) may co-exist with contract claims (based on a breach of the contract)." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 474–75 (5th Cir. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W. 2d 41, 47 (Tex. 1998)). Thus, a party can state a tort claim "when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* at 475 (quoting *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W. 3d 716, 718 (Tex. 2014)). And in Texas, there is a duty "to not act illegally to procure a contract [that] is separate and independent from the duties established by the contract itself." *Conquest Drilling Fluids, Inc. v. Tri-Flo Intern., Inc.*, 137 S.W. 3d 299, 309–10 (Tex. App. 2004) (citing *Formosa Plastics Corp. USA*, 960 S.W. 2d at 45–46). Finally, breach of statutory duties "will not be shielded from liability simply by showing [the] violation also violated a contract." *McCaig*, 788

F.3d at 475.

Here, as discussed above, Plaintiffs allege that General Motors "failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them" "with the intent to induce consumers to purchase or lease them," and that had Plaintiffs "been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them," then Plaintiffs would not have purchased their vehicles or paid as much for them. (*See* D.E. 2759 at ¶¶ 700–01, 714.)

The Court finds that these allegations adequately allege that General Motors had a "separate and independent" duty under Texas law to not provide false information to induce the purchase of the Class Vehicles. The Court thus declines to dismiss the fraud-based claims under Texas's economic loss rule. *See also In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 448 (ruling economic loss rule did not bar Texas Deceptive Trade Practices Act claim where gravamen of claim was that General Motors violated statutory duties "not to misrepresent the quality and safety of [its] cars and not to conceal defects prior to Plaintiffs' purchases of their allegedly defective cars"); *see also Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 655 (W.D. Tex. 2019) (ruling common law fraud claim not barred by economic loss rule where plaintiff alleged that defendant had independent duty to not commit fraud); *Peterson Group, Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W. 3d 46, 63 (Tex. App. 2013) (same).

### 4. Louisiana Fraud-Based Claims

Finally, General Motors argues that the Louisiana Products Liability Act bars both the common law fraud claim under Louisiana law, as well as the claim under Louisiana's Unfair Trade Practices and Consumer Protection Law (Count 19). This time, Plaintiffs agree with General Motors. (*See* D.E. 3034 at 164.) These claims are accordingly **DISMISSED**.

### 5.     Conclusion

In summary, Count 4 is **DISMISSED** only as to named-Plaintiff Tarus Sibley, the lone named-Plaintiff whose fraud claim is governed by Louisiana law.  By extension, Count 4 is also **DISMISSED** as to all putative class members with the same claim.  *See Wooden*, 247 F.3d at 1288 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman*, 221 F.3d at 1280).  Finding no other arguments for dismissal, and after accounting for the choice-of-law dismissals and the states excluded by Plaintiffs (Florida and Pennsylvania), surviving and proceeding to summary judgment under Count 4 are the claims of all named-Plaintiffs whose fraud claims are governed under the laws of Alabama, California, Georgia, Michigan, Mississippi, Missouri, New Jersey, New York, North Carolina, Texas, Virginia, and West Virginia.

As for the statewide-class statutory consumer protection claims, only the claims under Louisiana's Unfair Trade Practices and Consumer Protection Law (Count 19) and Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count 31) are **DISMISSED**.  The consumer protection claims in Counts 7–10, 13–14, 20, 23, 25, 27–28, 30, 34, 37, and 39 will proceed.

### D.     REMAINING NATIONWIDE-CLASS COMMON-LAW CLAIMS

The Court will now address General Motors's challenges to the nationwide-class common-law negligence (Count 5) and unjust enrichment (Count 6) claims.  Plaintiffs explain that these claims are asserted "under the common law of" negligence and unjust enrichment "as there are no true conflicts (case-dispositive differences) among various states' laws." (*See* D.E. 2759 at ¶¶ 251, 258.)  Alternatively, though, these claims are asserted under the laws of the states where the vehicles were purchased.  At this stage, the Court will determine whether Plaintiffs have stated negligence and unjust enrichment claims under applicable state common law.  *Cf. In re Takata Airbag Products Liab. Litig.*, 2017 WL 2406711, at *5 (evaluating nationwide fraudulent

- 22 -

concealment claims under applicable state common law).  The Court begins with the negligence claims and then proceeds to the unjust enrichment claims.

### 1.    Negligence (Count 5)

General Motors argues that all negligence claims should be dismissed because Takata's criminal acts—which Takata admitted to in the Takata Plea Agreement—break any causal connection between General Motors's allegedly negligent conduct and Plaintiffs' purported injuries.  Alternatively, General Motors argues that the Louisiana Products Liability Act bars negligence claims under Louisiana law.

#### a)    Causation

To start, the Court previously declined to judicially notice the contents of the Takata Plea Agreement for its truth because, regardless of reliability, meaning, or actual proof, the parties heavily disputed the contents.  *See In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d at 1128–29.  By extension, the Court declined to dismiss the entire complaint for lack of standing on the grounds that Takata's admissions demonstrated that Plaintiffs' injuries were not "fairly traceable" to certain defendants' actions.  *Id.* at 1129.  Likewise here, because the contents of the Takata Plea Agreement are heavily disputed, it is premature to dismiss Count 5 at this stage. Whether Takata's admissions are sufficient to sever the causal connection between Plaintiffs' injuries and General Motors's allegedly negligent conduct is an issue appropriate for resolution at summary judgment or trial.

**b)      The Louisiana Products Liability Act Bar**

Next, after accounting for the choice-of-law dismissals and the states excluded by Plaintiffs,[2] negligence claims remain under the laws of Georgia, Louisiana, Mississippi, Missouri, New Jersey, New York, Texas, Virginia, and West Virginia. General Motors's only remaining argument is that the Louisiana Products Liability Act bars common law negligence claims under Louisiana law because the Act establishes the exclusive theories of liability for manufacturers for damages caused by their products. Here too, Plaintiffs agree. (*See* D.E. 3034 at 164.) Accordingly, Count 5 is **DISMISSED** as to negligence claims asserted under Louisiana law.

**c)      Conclusion**

Finding no other arguments for dismissal, Count 5 is **DISMISSED** only as to named-Plaintiff Tarus Sibley, the lone named-Plaintiff whose negligence claim is governed by Louisiana law. By extension, Count 5 is also **DISMISSED** as to all putative class members with the same claim. *See Wooden*, 247 F.3d at 1288 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman*, 221 F.3d at 1280).

As for the surviving claims, Count 5 will proceed as to all named-Plaintiffs whose negligence claims are governed under the laws of Georgia, Mississippi, Missouri, New Jersey, New York, Texas, Virginia, and West Virginia.

**2.      Unjust Enrichment (Count 6)**

Plaintiffs also assert a nationwide-class common-law unjust enrichment claim. General Motors argues that: (1) certain unjust enrichment claims should be dismissed because

_____

[2] The Complaint specifically excludes from this claim consumers from Alabama, California, Florida, Illinois, Massachusetts, Michigan, Nevada, North Carolina, Pennsylvania, and South Carolina. (D.E. 2759 at ¶ 251.)

- 24 -

Plaintiffs have an adequate remedy at law by virtue of their contractual express warranties; (2) California unjust enrichment claims should be dismissed because California does not recognize unjust enrichment as a standalone cause of action; and (3) Louisiana unjust enrichment claims are barred by the Louisiana Products Liability Act. As to the third argument, Plaintiffs agree with General Motors. Thus, Count 6 is **DISMISSED** as to named-Plaintiff Tarus Sibley, the lone named-Plaintiff whose unjust enrichment claim is governed by Louisiana law. The Court will now address General Motors's other arguments.

### a)   Adequate Remedy at Law (Express Warranties)

First, General Motors argues that the nationwide-class unjust enrichment claim should be dismissed because Plaintiffs have an adequate remedy at law by virtue of their contractual express warranties. The Court finds that General Motors's argument is unavailing for the same reasons explained in the *Puhalla* Order: not only has General Motors failed to provide the Court with any written express warranties covering any of Plaintiffs' vehicles, but also, Plaintiffs allege that they do not have an adequate remedy at law, and that the warranties are not enforceable because they are procedurally and substantively unconscionable. (*See* D.E. 2759 at ¶¶ 190–92, 262; D.E. 3834 at 27–28 (citing *In re Takata Airbag Products Liab. Litig.*, 193 F. Supp. 3d at 1344–45) (rejecting argument that unjust enrichment claims must be dismissed because plaintiffs had adequate remedy at law through contractual express warranties) (Mazda Order); *In re Takata Airbag Products Liab. Litig.*, 2017 WL 775811, at \*6 (citing Mazda Order and ruling same); *see also In re Takata Airbag Products Liab. Litig.*, 255 F. Supp. 3d at 1260 (citing Mazda Order and ruling same as to "any state's law" on this ground); *In re Takata Airbag Products Liab. Litig.*, 2016 WL 5848843, at \*9 (citing Mazda Order and ruling same).)

In addition, Plaintiffs can maintain equitable unjust enrichment claims in the alternative to their legal claims. (*See* D.E. 3834 at 28 (citing *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2018 WL 3405245, at *14 (S.D. Fla. July 12, 2018) ("Plaintiffs may maintain an unjust enrichment claim in the alternative to their breach of express warranty claim.") (citing *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227–28 (S.D. Fla. 2013) ("Plaintiff may, however, maintain an equitable unjust enrichment claim in the alternative to her legal claims against Defendants.")); Fed. R. Civ. P. 8(a)(3), (d)(2) (permitting pleading in the alternative)).) This is because it is "only upon a *showing* that an express contract exists between the parties that the unjust enrichment count fails." *Id.* (emphasis in original) (quoting *In re Takata Airbag Products Liab. Litig.*, 193 F. Supp. 3d at 1344). And because General Motors has not made this showing here, their motion to dismiss "on these grounds is premature." *Id.* at 28–29 (quoting *Martorella*, 931 F. Supp. 2d at 1228).

Finally, even though "equitable relief ultimately may not be awarded [because] there exists an adequate remedy at law," Plaintiffs "certainly may plead alternative equitable relief" at this stage. *Id.* at 29 (quoting *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999)). Provided there is evidence proving the existence of enforceable written express warranties, General Motors may renew their argument at summary judgment. But for now, the claims survive.

### b)    Standalone Cause of Action (California)

Finally, General Motors argues that California unjust enrichment claims should be dismissed because California does not recognize unjust enrichment as a standalone cause of action.

California recognizes the principle behind unjust enrichment by requiring "restitution if [a defendant] is unjustly enriched at the expense of another. The recipient of the benefit is liable

only if the circumstances are such that, as between two persons, it is unjust for the recipient to retain it." *In re Takata Airbag Products Liab. Litig.*, 255 F. Supp. 3d at 1261 (quoting *City of Chula Vista v. Gutierrez*, 143 Cal. Rptr. 3d 689, 692 (Cal. Ct. App. 2012)). Previously, the Court only allowed California unjust enrichment claims to proceed where the plaintiff alleged that they purchased their vehicle from a defendant-affiliated dealership. *See id.*

Here, California law applies to the claims of Plaintiffs John Brugaletta, Donovan J. Jacobs, Gene Paleno, and Jay Riojas. The unjust enrichment claims can proceed for Brugaletta, Jacobs, and Riojas because their vehicles were purchased from General Motors dealerships. (*See* D.E. 2759 at ¶ 42 (Brugaletta purchased new vehicle "from Stewart Chevrolet, a New GM dealership"); *id.* at ¶ 51 (Jacobs purchased new vehicle from "Mark Christopher Auto Center, a New GM dealership"); *id.* at ¶ 63 (Riojas purchased new vehicle "from Courtesy Chevrolet Center, a New GM dealership").) Paleno's unjust enrichment claim, however, is **DISMISSED** because his vehicle was purchased used "in a private party sale" and he offers no additional allegations from which the Court could infer that the private party had any affiliation with Mercedes. *Id.* at ¶ 62.

### c) **Conclusion**

In summary, finding no other arguments for dismissal, Count 6 is **DISMISSED** only as to named-Plaintiffs Gene Paleno and Tarus Sibley. By extension, because there are no class representatives with unjust enrichment claims under Louisiana law, Count 6 is also **DISMISSED** as to all putative class members with this claim. *See Wooden*, 247 F.3d at 1288 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman*, 221 F.3d at 1280).

As for the claims that survive, Count 6 will proceed as to all named-Plaintiffs whose unjust

enrichment claims are governed under the laws of Alabama, California (except Gene Paleno), Georgia, Michigan, Mississippi, Missouri, New Jersey, New York, North Carolina, Pennsylvania, Texas, Virginia, and West Virginia.

## E. NATIONWIDE-CLASS MAGNUSON-MOSS WARRANTY ACT AND STATEWIDE-CLASS BREACH OF IMPLIED WARRANTY CLAIMS

Finally, Plaintiffs assert a nationwide-class Magnuson-Moss Warranty Act claim. In the alternative, they assert statewide-class breach of implied warranty claims under the laws of several states. General Motors argues that the Magnuson-Moss Warranty Act claim must be dismissed because Plaintiffs fail to assert implied warranty claims under the laws of every state, and additionally, because Plaintiffs do not meet the 100-plaintiff requirement to bring a class action under the Act. As to the alternative claims for breach of implied warranty under state law, General Motors argues that certain claims are barred by the statute of limitations, and that claims under Michigan and Texas law must be dismissed for failing to allege pre-suit notice.

### 1. Nationwide-Class Magnuson-Moss Warranty Act Claim (Count 1)

Despite asserting a *nationwide*-class Magnuson-Moss Warranty Act claim, Plaintiffs assert breach of implied warranty claims under the laws of only *13 states*. For the reasons fully explained in the *Puhalla* Order, the nationwide-class Magnuson-Moss Warranty Act claim in Count 1 is **DISMISSED** for lack of standing. (*See* D.E. 3834 at 44–47 ("Because standing is a claim-specific determination and implied warranty claims under the [Magnuson-Moss Warranty] Act 'arise out of and are defined by' state law, the Court finds that the named-Plaintiffs lack standing to represent putative class members of states for which there are no breach of implied warranty claims.").) Furthermore, Count 1 is dismissed in its entirety because—unlike the nationwide-class common-law claims—Plaintiffs explicitly assert that "[i]n the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act," they assert statewide-

- 28 -

class breach of implied warranty claims under the laws of several states. (*See* D.E. 2759 at ¶¶ 344, 449, 455, 468, 517, 523, 553, 580, 617, 669, 721, 772, 803.) Because Count 1 is dismissed for lack of standing, the Court need not address General Motors's separate argument regarding the 100-plaintiff requirement. The Court will now address the state breach of implied warranty claims.

### 2. Statewide-Class Implied Warranty Claims (Counts 11, 18, 21–22, 24, 26, 29, 32, 35, 38, and 40)

Plaintiffs assert breach of implied warranty claims under laws of California, Louisiana, Michigan, Mississippi, Missouri, New Jersey, New York, Pennsylvania, Texas, Virginia, and West Virginia. General Motors argues that several of these claims are barred by the statute of limitations, and that claims under Michigan and Texas law should be dismissed for failure to allege pre-suit notice.

#### a) Time Bars

In the *Puhalla* Order, the Court ruled that fraudulent concealment tolling applies in, among other states, California, Louisiana, Michigan, Mississippi, New Jersey, New York, Pennsylvania, Texas, and Virginia. (*See* D.E. 3834 at 48–49.) The only states left unaccounted for here, Missouri and West Virginia, also recognize fraudulent concealment tolling. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 919–20 (8th Cir. 2008) (citing *Hasenyager v. Bd. of Police Comm'rs of Kansas City*, 606 S.W. 2d 468, 471 (Mo. Ct. App. 1980)); *Dunn v. Rockwell*, 225 W. Va. 43, 53 (W. Va. 2009).

Here, Plaintiffs assert numerous allegations detailing General Motors's knowledge of the risks posed by the Takata airbags installed in their vehicles, their alleged failure to fully investigate or disclose the seriousness of the issue to consumers or regulatory authorities, and their continued selling and leasing of vehicles installed with Takata airbags. *See supra* Sec.III.C.1–2. Viewing these allegations in the light most favorable to Plaintiffs, as the Court must at this stage, the Court

finds that fraudulent concealment tolling applies to the breach of implied warranty claims.

**b)** **Pre-Suit Notice (Michigan and Texas)**

Finally, General Motors argues that the implied warranty claims under Michigan and Texas law should be dismissed because Plaintiffs fail to allege pre-suit notice. Plaintiffs disagree.

Michigan and Texas have adopted the same Uniform Commercial Code provision related to notice of a breach of warranty: "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See* Tex. Bus. & Com. Code § 2.607(c)(1); Mich. Comp. Laws Ann. § 440.2607(3)(a). Previously, this Court declined to dismiss a breach of implied warranty claim under Texas law for lack of pre-suit notice. *In re Takata Airbag Products Liab. Litig.*, 2017 WL 775811, at *8. There, the plaintiffs alleged that Ford Motor Company was on notice of its alleged breach of implied warranty from "from consumer complaints, internal investigations, numerous individual letters sent by consumers, and their knowledge of the alleged inflator defect," as well as from receiving a notice letter from a plaintiff prior to the filing of the complaint. *Id.* Noting that Texas law did "not specify a particular kind of notice, only that notice to the defendant be given," the Court found that the plaintiffs' allegations satisfied the pre-suit notice requirement. *Id.*

Here too, Plaintiffs allege that General Motors was on notice of the breached implied warranties through their "knowledge of the issues" and "by customer complaints, by numerous complaints filed against them and/or others, by internal investigations, and by numerous individual letters and communications sent by consumers before or within a reasonable amount of time after Honda issued the first recalls and the allegations of the Inflator Defect became public." (D.E. 2759 at ¶¶ 521, 725.) Same as before, and because Texas's and Michigan's pre-suit notice requirements are congruent, the Court finds that Plaintiffs sufficiently allege pre-suit notice under Texas and

Michigan law.

### 3.    Conclusion

In sum, the Magnuson-Moss Warranty Act claim in Count 1 is **DISMISSED** in full, and

the breach of implied warranty claims in Counts 11, 18, 21–22, 24, 26, 29, 32, 35, 38, and 40 will

proceed.

## CONCLUSION

For all the reasons explained above, it is

**ADJUDGED** that General Motors's Motion to Dismiss **(D.E. 2981)** is **GRANTED IN**

**PART** as follows:

- The nationwide-class Magnuson-Moss Warranty Act claim (Count 1) is **DISMISSED** in full;

- The statewide-class breach of implied warranty claims under the laws of Indiana and Kentucky (Counts 16 and 17) are **DISMISSED**;

- The statewide-class statutory consumer protection claims under the laws of Florida, Indiana, Louisiana, Pennsylvania, Tennessee, and Vermont (Counts 12, 15, 19, 31, 33, and 36) are **DISMISSED**;

- The common law fraud claim (Count 4) is **DISMISSED** as to named-Plaintiff Tarus Sibley, and as to all putative class members whose fraud claims are governed under the laws of Florida, Indiana, Kentucky, Louisiana, Tennessee, and Vermont;

- The common law negligence claim (Count 5) is **DISMISSED** as to named-Plaintiff Tarus Sibley, and as to all putative class members whose negligence claims are governed under the laws of Florida, Indiana, Kentucky, Louisiana, Tennessee, and Vermont; and

- The common law unjust enrichment claim (Count 6) is **DISMISSED** as to named-Plaintiffs Gene Paleno and Tarus Sibley, and as to all putative class members whose unjust enrichment claims are governed under the laws of Florida, Indiana, Kentucky, Louisiana, Tennessee, and Vermont.

Furthermore, the Motion to Dismiss is **DENIED** as to the following claims, which will

proceed to summary judgment:

- The statewide-class statutory consumer protection and breach of implied warranty claims in Counts 7–11, 13–14, 18, 20–30, 32, 34–35, and 37–40;

- Claims for fraud (Count 4) asserted by all named-Plaintiffs whose claims are governed under the laws of Alabama, California, Georgia, Michigan, Mississippi, Missouri, New Jersey, New York, North Carolina, Texas, Virginia, and West Virginia;

- Claims for negligence (Count 5) asserted by all named-Plaintiffs whose claims are governed under the laws of Georgia, Mississippi, Missouri, New Jersey, New York, Texas, Virginia, and West Virginia; and

- Claims for unjust enrichment (Count 6) asserted by all named-Plaintiffs whose claims are governed under the laws of Alabama, California (except Plaintiff Gene Paleno), Georgia, Michigan, Mississippi, Missouri, New Jersey, New York, North Carolina, Pennsylvania, Texas, Virginia, and West Virginia.

It is further

**ADJUDGED** that General Motors must answer the remaining claims in the

*Whitaker* Complaint **no later than July 20, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th of May 2020.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record