# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **IN RE TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION**<br><br>THIS DOCUMENT RELATES TO ECONOMIC LOSS CASES | MDL No. 2599<br><br>Master File No. 15-2599-MD-MORENO<br><br>S.D. Fla. Case No. 14-24009-CV-MORENO (Economic Loss Track)<br><br>**ORAL ARGUMENT REQUESTED** |

**FCA US LLC'S, NEW GM'S AND MBUSA'S JOINT MOTION TO DISMISS THE CONSUMER AND RECYCLER SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINTS FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants FCA US LLC ("FCA"), General Motors Company, General Motors Holding LLC and General Motors LLC ("New GM"), and Mercedes-Benz USA, LLC ("MBUSA") (together "Defendants") respectfully submit this joint motion to dismiss the Direct-File claims[1] in the Consumer Plaintiffs' Second Amended Consolidated Class Action Complaints against FCA (ECF No. 4024; "*Boyd* SAC"), New GM (ECF No. 4025; "*Whitaker* SAC") and MBUSA (ECF No. 4026; "*Puhalla* SAC"), and the Recycler Plaintiffs' Second Amended Consolidated Class Action Complaint (ECF No. 4027; "Recycler SAC").[2]

## PRELIMINARY STATEMENT

In June 2019, the Court dismissed the claims of the so-called "Direct File" Plaintiffs for lack of personal jurisdiction, admonishing Plaintiffs that they must plead "*specific* facts" to keep their claims alive.  (ECF No. 3406 ("June 2019 Order") at 47 (emphasis added).)  The Court reiterated that point just yesterday, explaining that the onus is on Plaintiffs to plead the "new, *detailed* jurisdictional allegations" that they previously promised they would.  (ECF No. 4039 at 3 (emphasis added).)  Two sets of amendments later, Plaintiffs still fail to plead personal jurisdiction, under both the Florida long-arm statute and constitutional due process.  Indeed, even with their newest sets of allegations, which Plaintiffs added to their previously proposed SACs in a last-ditch attempt to bolster allegations that they clearly recognized were deficient under the Supreme Court's recent guidance, Plaintiffs continue to fail to plead a *prima facie* case of personal jurisdiction over any Defendant.

---

[1]  The non-dismissed "Direct-File" claims are those asserted by Victor Khoury (*Boyd* SAC), David Whitaker (*Whitaker* SAC), Michael C. Kaufman (*Puhalla* SAC), Mary Jackson Robinson (*Puhalla* SAC), and Butler Auto Recycling, Inc. (Recycler SAC).

[2]  For the Court's convenience, Defendants submit as Exhibits A-D redlines of the SACs as against the first amended complaints in each action.

As to the Florida long-arm statute, Plaintiffs have ignored the Court's guidance and stuffed the SACs with pages of vague and conclusory allegations that come nowhere close to satisfying their burden.  Plaintiffs generally declare that Defendants have sold, marketed and advertised vehicles in Florida, but include no factual allegations, let alone "detailed" ones of the sort required, to support those conclusory statements:  nowhere in the SACs do Plaintiffs allege that any Defendant took any *specific* action that Plaintiffs claim gives rise to personal jurisdiction. And for the handful of specific allegations that Plaintiffs do make, they are either duplicative of allegations the Court already held were insufficient (like a single sale in the forum), or insufficient to establish jurisdiction under well-established law (like registering to do business in the forum).

As to constitutional due process, the Supreme Court's recent decision in *Ford Motor Co.* v. *Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), explains what a plaintiff must plead to establish personal jurisdiction, and Plaintiffs decidedly fail to meet that threshold. According to the Supreme Court, Plaintiffs must allege that Defendants systematically served the Florida market for the *very vehicle models* at issue, but Plaintiffs have failed to make such allegations.  Plaintiffs make only *one* allegation about each relevant model, referring to a *single* sale in Florida, which clearly is insufficient under *Ford*.  From there, Plaintiffs rely entirely on general allegations about "Class Vehicles," but that is nothing more than improper group pleading, which, by definition, is devoid of specificity.  Plaintiffs' failure to make a specific set of allegations concerning the at-issue vehicle models is a death knell under *Ford*.  As a result, each of the Consumer SACs should be dismissed, with prejudice, for lack of personal jurisdiction.

The Recycler SAC should meet the same fate.  That SAC not only suffers from (and should be dismissed because of) the same fatal defects that pervade the Consumer SACs, but it is even more fundamentally deficient:  the Recycler SAC includes no facts at all showing that

Defendants' in-forum activity would cause them to "reasonably anticipate" being haled into a Florida court, as federal due process requires.  Indeed, the Recycler Plaintiffs plead no facts showing that Defendants would expect Recyclers to use their products at all, let alone in Florida. To the contrary, not only are Recyclers *not customers of Defendants at all*, but Defendants have expressly denounced the "salvaging" of totaled vehicles given the threats to safety of using second-hand safety equipment.  Under such circumstances, the Recycler Plaintiffs cannot plausibly claim that Defendants "reasonably anticipated" being brought to court in Florida in connection with their attenuated claims.

## LEGAL STANDARD

Under Rule 12(b)(2), "[t]o withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant." *Peruyero* v. *Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014).  "To determine whether personal jurisdiction exists over an out-of-state defendant," a court must determine, first, "whether, pursuant to state law, the applicable state long-arm statute is satisfied," and, "[s]econd, if the state long-arm statute is satisfied, . . . whether the exercise of jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* at 1287 (internal quotation marks omitted).

## ARGUMENT

## I.  THE DIRECT-FILE CONSUMER AND RECYCLER CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

As the Court has held, the Direct-File claims can survive only if the Court "find[s] that it can exercise 'specific' or 'case-linked' jurisdiction over them" in Florida.  (June 2019 Order

at 41.)  To establish specific jurisdiction in Florida,[3] Plaintiffs must show that their claims satisfy

both (i) Florida's long-arm statute and (ii) the requirements of due process under the Fourteenth

Amendment.  *Licciardello* v. *Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008).  The SACs satisfy

neither.

> ### A.     The SACs Fail to Establish Florida Long-Arm Jurisdiction Under this Court's Prior Rulings

Plaintiffs invoke two subsections of the Florida long-arm statute, claiming that

Defendants were "carrying on a business" in Florida under Section 48.193(1)(a)(1), or that they

committed a "tortious act" in the state under Section 48.193(1)(a)(2).  (*Boyd* SAC ¶ 23; *Whitaker*

SAC ¶ 24; *Puhalla* SAC ¶ 28.)[4]  Plaintiffs fail to allege facts sufficient to make out either prong.

In its June 21, 2019 decision on personal jurisdiction, the Court provided clear

guidance on what type of allegations would not pass muster under the Florida long-arm statute.

The task of pleading jurisdiction is not to be taken lightly because, as the Court explained, "the

Florida long-arm statute 'must be strictly construed' with 'any doubts about applicability of the

statute [being] resolved in favor of the defendant and against a conclusion that personal jurisdiction

exists.'"  (June 2019 Order at 48 (quoting *Keston* v. *FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1352

n.2 (S.D. Fla. 2007)).)  Plaintiffs clearly have not taken the Court's guidance to heart; most of their

---

[3]     The Court already has held that it "cannot exercise general jurisdiction over the Domestic Defendants as to the Direct-File Actions because none of these Defendants are incorporated or hold their principal places of business in Florida."  (June 2019 Order at 40-41.)

[4]     Plaintiffs also nominally invoke Fla. Stat. § 48.193(1)(a)(6) (*Boyd* SAC ¶ 23; *Whitaker* SAC ¶ 24), but "Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a)(6)."  *Courboin* v. *Scott*, 596 F. App'x 729, 734 (11th Cir. 2014) (citing *Aetna Life & Cas. Co.* v. *Therm–O–Disc, Inc.*, 511 So.2d 992, 994 (Fla. 1987)).  In prior motion-to-dismiss briefing, Plaintiffs conceded the issue by asserting personal jurisdiction only under subsections (a)(1) and (a)(2) of the long-arm statute.  (*See* ECF No. 3034 at 23.)

"new" jurisdictional allegations fail for exactly the same reasons that their old ones did not make the grade.

      **Vague and Conclusory Allegations.**  To start, virtually none of the "jurisdictional allegations" in the SACs allege "*specific* facts to fit within" the Florida long-arm statute.  (June 2019 Order at 47 (cleaned up).)  For example, Plaintiffs allege generally that "Class Vehicles, including Plaintiffs' vehicles, were the subject of nationwide advertising campaigns that were intended to reach and did reach Florida."  (*Boyd* SAC ¶ 29; *Whitaker* SAC ¶ 30; *Puhalla* SAC ¶ 87.)  But, in its June 2019 Order, the Court held that it was not enough for Plaintiffs to allege that Defendants were engaged in "advertising, marketing and sale of . . . automobiles, in all 50 states." (June 2019 Order at 45.)  The only difference with the new allegations is that Plaintiffs have added to their prior, deficient allegation the boilerplate phrases "in Florida" or in "this District" (*Boyd* SAC ¶ 29; *Whitaker* SAC ¶ 30), as if the problem with the prior allegation was that the Court was unaware that Florida was one of the "50 states."  Plaintiffs have failed entirely to comply with the Court's directive to plead "specific facts," apparently because they have no such facts to plead.

      Indeed, the Court pointed out that, in Plaintiffs' previous complaints, Plaintiffs had alleged a number of specific advertisements and product brochures, but nowhere alleged that they were "seen or heard in Florida or were directed towards Florida citizens."  (June 2019 Order at 46.)  The SACs *still* fail to make those allegations.  (*Boyd* SAC ¶ 127; *Whitaker* SAC ¶ 174; *Puhalla* SAC ¶ 264.)  Thus, Plaintiffs continue to make the same specific allegations that the Court previously found deficient because they are untethered to Florida, as the Court said they must be in order to plead specific jurisdiction.

      Most of Plaintiffs' new jurisdictional allegations similarly are "vague and conclusory."  (June 2019 Order at 45.)  For example, Plaintiffs allege that Defendants "established

channels for marketing Class Vehicles," "regularly communicated with authorized dealerships," "solicited the sale or lease of Class Vehicles," "engage[d] in wide-ranging promotional activities," and "engaged in the financing of authorized dealerships" in Florida. (*See generally Boyd* SAC ¶¶ 23-50; *Whitaker* SAC ¶¶ 24-53; *Puhalla* SAC ¶¶ 67-95.) But nowhere do Plaintiffs provide specifics of conduct that fits within any of these general categories. The vagueness of such allegations prevents Defendants from understanding (and responding to) what *specific* contacts allegedly give rise to specific jurisdiction, rendering those types of allegations plainly insufficient. (June 2019 Order at 45.)

**Vehicles Sold in Florida.** Plaintiffs likewise vaguely allege that Defendants were in the business of "selling automobiles in the United States, including in Florida." (*Boyd* SAC ¶ 24; *Whitaker* SAC ¶ 25; *see Puhalla* SAC ¶ 72.) The Court explained that jurisdictionally relevant allegations might include "the number of Florida clients served," or the "the percentage of overall revenue gleaned from Florida Plaintiffs" (June 2019 Order at 45), but Plaintiffs have failed to make any such specific allegations. Instead, Plaintiffs resort to impermissible generality, alleging only that Defendants "generate[] a substantial percentage of [their] revenue from the sale of [their] vehicles in Florida." (*Boyd* SAC ¶ 24; *Whitaker* SAC ¶ 25; *see Puhalla* SAC ¶ 69.) That clearly is not enough.

**Dealerships**. The SACs also contain a number of allegations concerning dealerships in Florida. (*Boyd* SAC ¶¶ 26-27, 30, 34-35, 38-39 43-45; *Whitaker* SAC ¶¶ 27, 31, 35-36, 39-40, 44-46; *Puhalla* SAC ¶¶ 68-70, 73-74, 82, 84-85, 88.) But as the Court previously explained, Plaintiffs' mere allegation that Defendants maintained a "dealer network to retail customers" is insufficient. (June 2019 Order at 45.) Nor can a dealership's contacts with the forum be imputed to Defendants, absent facts establishing an agency relationship—*i.e.*, that

Defendants "exercise[] operational" and "day-to-day control of the internal affairs" of the dealership.  (June 2019 Order at 46-47 (quoting *Hard Candy, LLC*, v. *Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015)).)  Plaintiffs have alleged no such facts.  They merely claim that certain dealerships in Florida were "authorized dealerships," but that does not establish an agency relationship.  *See Razen* v. *FCA US LLC*, 2019 WL 7482214, at *4 (M.D. Fla. Oct. 23, 2019) ("Plaintiff's bare assertion that Greenway Dodge/Chrysler is an FCA 'authorized dealership' is not sufficient to support the existence of an agency relationship.").

        **Specific Vehicle Purchases.**  Plaintiffs have added allegations about certain Plaintiffs purchasing or leasing their vehicles in Florida, but these simply repackage allegations that already were elsewhere in the complaint, and already were deemed insufficient to plead specific jurisdiction:

- **FCA.**  Plaintiffs "newly" allege that FCA's actions "resulted in the sale of [a] 2012 Dodge Charger . . . to Plaintiff Khoury from Napleton North Lake Chrysler Jeep Dodge in Palm Beach Gardens, Florida, in 2014."  (*Boyd* SAC ¶ 45.)  But that adds not a single alleged fact to Plaintiffs' previously existing (and deficient) allegation about Mr. Khoury's "2012 Dodge [Charger], which he purchased . . . from Napleton's Chrysler Jeep in Palm Beach, Florida."  (ECF No. 2758 ¶ 49.)

- **New GM.**  Likewise, Plaintiffs have "added" that New GM's actions "resulted in the sale of the 2011 Chevrolet Tahoe . . . to Plaintiff Whitaker from AutoNation Chevrolet Fort Lauderdale, a New GM-authorized dealership, in Fort Lauderdale, Florida in 2014."  (*Whitaker* SAC ¶ 46.)  Again, this adds nothing new with respect to Mr. Whitaker's purchase.  (ECF No. 2759 ¶ 68.)

- **MBUSA.**  Plaintiffs now include a "new" allegation that MBUSA purportedly distributed Plaintiff  Kaufman's 2011 Mercedes E-350 Cabriolet to a dealership in Florida.  But this allegation adds no new facts to Plaintiffs' previous allegation that Kaufman purchased his

vehicle from a dealership in Delray, Florida.  (*Compare* ECF No. 2762 ¶¶ 86, 118 *with*
*Puhalla* SAC ¶¶ 85, 88.)

Simply repeating the same allegation in a different place does not cure pleading deficiencies.

**Aftermarket Activities.**  Plaintiffs allege that Defendants engaged in various post-
sale activities in Florida, such as training personnel to repair/service vehicles, providing parts to
dealerships and repair shops, and "directly or indirectly" operating a parts distribution center.
(*Boyd* ¶¶ 27, 38, 47; *Whitaker* ¶¶ 29, 39, 48; *Puhalla* SAC ¶¶ 31, 44, 55, 73, 86.)  But the Florida
Second District Court of Appeal has explicitly rejected the notion that a "parts distribution center"
can give rise to specific jurisdiction in Florida where the plaintiff cannot "establish[] how th[e]
'parts distribution center' is related to the conduct giving rise to this action."  *Volkswagen
Aktiengesellschaft* v. *Jones*, 227 So.3d 150, 159 (Fla. 2d DCA 2017).  Here, because Plaintiffs'
entire case is predicated on allegations of Defendants' *pre*-sale conduct, alleged *post*-sale actions
in the forum simply do not relate to the claim.[5]

**Business Registration.**  Similarly, Plaintiffs allege that Defendants were
"continuously registered to do business in Florida and ha[ve] appointed a registered agent in
Florida." (*Boyd* SAC ¶ 25; *Whitaker* SAC ¶ 26.)  But it is well established that "merely registering
to do business in a state is not a sufficient basis to establish the minimum contacts necessary for a
court to obtain personal jurisdiction over a non-resident defendant."  *PHD@western, LLC* v.
*Rudolf Constr. Partners, LLC*, 2016 WL 5661637, at *4 (S.D. Fla. Sept. 30, 2016).  Thus, this

---

[5]     The same applies to Plaintiffs' allegation that FCA and New GM "travelled to Florida to
discuss, investigate, and evaluate PSAN inflators with Takata entities and investigate reported
rupture and aggressive deployment events." (*Boyd* SAC ¶ 41; *Whitaker* SAC ¶ 42.)  Allegations
of post-sale activities do not relate to the conduct giving rise to the action.

allegation does not move the needle.  Moreover, Plaintiffs do not even allege that MBUSA is registered to do business in Florida.

> **B.     The SACs Do Not Meet the Standard for Federal Due Process Set Out in the Supreme Court's *Ford* Decision**

Not only do the SACs fail to pass muster under the Florida long-arm statute, they also fail to establish personal jurisdiction consistent with constitutional due process.  In *Ford*, the Supreme Court recently set out the standard for establishing specific jurisdiction over a non-resident automobile manufacturer:   plaintiffs must adequately allege that the manufacturer "*systematically served* a market in [the forum state] for the *very vehicles* that the plaintiffs allege malfunctioned and injured them in [the forum state]."  141 S. Ct. at 1019 (emphasis added).  The SACs come nowhere close to meeting that standard.

Far from discharging their burden under *Ford*, Plaintiffs include in the SACs virtually no specific allegations about the vehicle models at issue, pleading only one *single* sale of a relevant vehicle model in the forum.

- **FCA.**  The only vehicle relevant to the Direct-File claims against FCA is the 2012 Dodge Charger, but Plaintiffs make only *one* allegation about *one* sale of that specific vehicle model, from FCA to a dealership in Florida.  (*Boyd* SAC ¶¶ 44-45.)

- **New GM.**  Plaintiffs likewise allege only a *single* sale of a 2011 Chevrolet Tahoe in Florida.  (*Whitaker* SAC ¶ 46.)

- **MBUSA.**  Plaintiffs allege that MBUSA distributed a *single* 2011 Mercedes E-350 to a dealership in Florida. (*Puhalla* SAC ¶¶ 85, 88.)

These allegations of a *single* sale for the relevant vehicle model hardly can be described as "systematic."  *See*, *e.g.*, *N. Ins. Co. of New York* v. *Constr. Navale Bordeaux*, 2011 WL 2682950, at *5 (S.D. Fla. July 11, 2011) (no personal jurisdiction despite allegations of "20 sales in Florida over approximately the last 2.4 years, the control over how the independent dealer makes those

sales, the appearance at six trade shows in Florida (two per year), and the industry advertising").[6]

Moreover, beyond the insufficient allegations discussed above, the SACs contain not a single specific allegation about Defendants' marketing, advertising or selling the specific at-issue models in Florida. That is a far cry from establishing, as *Ford* requires, that Defendants "systematically served" the Florida market by having "advertised, sold and serviced" the "very vehicles" at issue for "many years." *Ford*, 141 S. Ct. at 1028.

Instead of confronting their burden head on, Plaintiffs again resort to impermissible generalities. Over and over again, Plaintiffs allege generally that Defendants were involved in various activities in Florida—*e.g.*, "marketing," "selling," "advertising." (*See generally Boyd* SAC ¶¶ 23-50; *Whitaker* SAC ¶¶ 24-52; *Puhalla* SAC ¶¶ 67-95.) Even setting aside the conclusory nature of those allegations (*see* Section II.A. above), Plaintiffs direct them towards only "Class Vehicles" generally rather than the specific vehicle models at issue, *i.e.*, the models that the individual Direct-File Plaintiffs purchased. That fails the *Ford* standard. The definition of "Class Vehicles" includes dozens of different models and model years,[7] and the SACs include no allegations to show that Defendants "systematically served" Florida for the "very vehicles" at issue, as opposed to one of dozens of other models or model years caught within the definition of "Class Vehicles." Plaintiffs' pleading strategy is tantamount to group pleading of products. But courts routinely reject attempts to lump together multiple defendants in a pleading without

---

[6]    *See also*, *e.g.*, *Oticon, Inc.* v. *Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 514 (D.N.J. 2011) ("[W]hether it is five or nine sales by Sebotek of SDT's allegedly infringing products [into New Jersey], that is simply too small of a number from which to conclude that SDT purposefully availed itself of the New Jersey market.").

[7]    There are 84 different Class Vehicles for FCA (*Boyd* SAC ¶ 89), 211 different Class Vehicles for New GM (*Whitaker* SAC ¶ 96), and 86 different Class Vehicles for MBUSA (*Puhalla* SAC ¶ 171).

specifying what each defendant purportedly has done,[8] and there is no reason why a plaintiff should be permitted to use the same flawed and necessarily generalized pleading technique for vehicles.

After the Supreme Court issued its decision in *Ford*, and clearly in recognition that the jurisdictional allegations in their proposed SACs were deficient, Plaintiffs once again tried to bolster their jurisdictional allegations with even further amendments to their SACs. (*Boyd* SAC ¶¶ 34-40; *Whitaker* SAC ¶¶ 35-41; *Puhalla* SAC ¶¶ 69-74.)[9] But those additional allegations do nothing to meet the *Ford* standard. Indeed, they are not *factual* allegations at all, let alone the "detailed" ones that both this Court and the Supreme Court have instructed are necessary. Rather, Plaintiffs merely copied *verbatim* passages from the *Ford* opinion and dropped them into their SACs. (*Id.*) For example, in *Ford*, Justice Kagan concluded, based on the record in that case, that "Ford did substantial business in the State—among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective." *Ford*, 141 S. Ct. at 1022. Plaintiffs have copied virtually that exact sentence in the SACs, claiming that each Defendant "has engaged in substantial business in Florida—among other things, advertising, selling, and servicing the models of vehicles that Plaintiffs here claim are defective." (*Boyd* SAC ¶ 34; *Whitaker* SAC ¶ 35; *see Puhalla* SAC ¶ 69.) But pasting into their SACs a conclusory statement (and not any factual allegations on which it possibly could be drawn) does not satisfy *Ford*. This Court already has rejected Plaintiffs' argument that they could "plead a *prima facie* showing of personal jurisdiction by tracking the

---

[8]     *See*, *e.g.*, *Libov* v. *Readix, Inc.*, 2011 WL 13216996, at *1 (S.D. Fla. Sept. 8, 2011) ("[A] plaintiff may not lump multiple defendants together because this constitutes impermissible 'group pleading.'"); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 2021 WL 1178216, at *12 (S.D.N.Y. Mar. 29, 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant.").

[9]     For the Court's convenience, Defendants submit as Exhibits E-G redlines of the SACs as against Plaintiffs' proposed SACs in each action.

language of [the Florida long-arm statute], without pleading supporting facts." (June 2019 Order at 47 (cleaned up).)  It is incredible that Plaintiffs have made this ruling necessary, but the Court likewise should conclude that Plaintiffs cannot discharge their burden by "tracking the language of [a Supreme Court opinion], without pleading supporting facts."  (*Id.*)

As the Court explained yesterday, following Plaintiffs' promises of "new, detailed jurisdictional allegations" and the Supreme Court's *Ford* decision, Plaintiffs would be given one more bite at the apple to plead personal jurisdiction.  (ECF No. 4039 at 3.)  As is now clear, Plaintiffs overpromised:  notwithstanding several chances now, Plaintiffs continue to fail to allege sufficient detailed jurisdictional facts to discharge their burden.  The SACs must therefore be dismissed.

### C.    The Recycler Plaintiffs' SAC Should Be Dismissed for the Additional Reason that Their Claims Are Too Attenuated from the Alleged Jurisdictional Contacts

The Recycler Plaintiffs' claim to personal jurisdiction is even more deficient.  As the *Ford* Court has explained, the touchstone of personal jurisdiction is that a defendant "must reasonably anticipate being haled into [the State's] court[s]." *Ford*, 141 S. Ct. at 1027.  Where a non-state resident conducts business in the forum state, they are not suddenly subject to general jurisdiction for any and all claimed injuries.  Instead, the claim must still "relate to" the defendant's in-forum contacts, which the Supreme Court has made clear "incorporates real limits." *Id.* at 1026.

In the Recycler case, the chain of events purportedly linking Defendants' in-forum activities to the claim is incredibly—and impermissibly—attenuated.  Not once in the Recycler SAC do Plaintiffs allege that *any* of Defendants' in-forum contacts were directed towards the Recyclers.  Instead, according to the Recycler Plaintiffs, Defendants must have "reasonably anticipate[d]" that, by marketing a vehicle to retail consumers in Florida, a Recycler would years later rely on those representations to purchase a totaled vehicle at an insurance auction and strip it

for parts.   (Recycler SAC ¶¶ 561-571.)   Finding personal jurisdiction on these facts would eviscerate the "real limits" on personal jurisdiction espoused by the Supreme Court.  *Ford*, 141 S. Ct. at 1026.

In fact, as the *Ford* Court explained, a defendant can "structure its primary conduct to lessen or avoid exposure to a given State's courts."  *Ford*, 141 S. Ct. at 1025 (internal quotation marks omitted).  That is precisely what Defendants did here.  In no uncertain words, Defendants long have warned that supplemental restraint system components (like airbags) should *not* be "removed from a vehicle previously damaged, flooded, burned, scrapped or removed from use for any other reason – commonly referred to as 'salvage parts.'"  (ECF No. 2977-13 at 2.)   These parts, Defendants publicly explained, "could result in degraded performance and, under some circumstances, could render the system inoperative."  (ECF No. 2977-9 at 2.)  Thus, not only did Defendants never market products to the Recyclers, they expressly denounced the salvaging of airbags, which is what the Recycler Plaintiffs are suing about.  Defendants cannot be deemed to have "reasonably anticipated being haled" into Florida courts under such circumstances.

Moreover, the Recycler SAC lacks even a single specific allegation of a sale, marketing or advertising for an at-issue vehicle in Florida.  While the Consumer Plaintiffs allege at least *one* purchase of an at-issue vehicle model in the forum (which is insufficient, as explained above), the Recycler Plaintiffs fail to do even that much.  Thus, while the Consumer Plaintiffs' allegations are insufficient, the Recycler Plaintiffs do not even attempt to meet the *Ford* standard.

## CONCLUSION

For the foregoing reasons, the claims asserted on behalf the Consumer and Recycler Direct-File Plaintiffs in the SACs against FCA, New GM and MBUSA should be dismissed.

-13-

## REQUEST FOR ORAL ARGUMENT

Given the importance of the issues presented herein, Defendants respectfully request oral argument on this motion, and anticipate that a one-hour hearing should be sufficient for that purpose.

Dated: May 7, 2021                                  Respectfully submitted,

/s/ Renee D. Smith                                  /s/ Scott M. Sarason
**Renee D. Smith** (*pro hac vice*)                 **Scott M. Sarason**
renee.smith@kirkland.com                            Florida Bar No. 394718
**Jonathan K. Tshiamala** (*pro hac vice*)          ssarason@rumberger.com
jonathan.tshiamala@kirkland.com                     **RUMBERGER, KIRK & CALDWELL**
**KIRKLAND & ELLIS LLP**                            Brickell City Tower, Suite 3000
300 North LaSalle                                   80 Southwest 8th Street
Chicago, IL  60654-3406                             Miami, FL  33130-3037
Telephone:  312 862-2000                            T: 407 839-4550
                                                    F: 407 835-2050

**Laurie M. Riley, Esq.**
Florida Bar No. 657751                              **Brian D. Glueckstein** (*pro hac vice*)
lriley@joneswalker.com                              gluecksteinb@sullcrom.com
**JONES WALKER LLP**                                **Matthew J. Porpora** (*pro hac vice*)
201 South Biscayne Boulevard, Suite 2600            porporam@sullcrom.com
Miami, FL  33131                                    **Akash M. Toprani** (*pro hac vice*)
T:  305 679-5728                                    toprania@sullcrom.com
F:  305 679-5818                                    **SULLIVAN & CROMWELL LLP**
                                                    125 Broad Street
*Attorneys for Defendants General Motors*           New York, NY  10004
*Company, General Motors Holdings LLC, and*         T: 212 558-4000
*General Motors LLC*                                F: 212 558-3588

                                                    *Attorneys for Defendant FCA US LLC*


                                                    /s/ Raoul G. Cantero
                                                    **Raoul G. Cantero**
                                                    Florida Bar No. 552356
                                                    rcantero@whitecase.com
                                                    **Jaime A. Bianchi**
                                                    Florida Bar No. 908533
                                                    jbianchi@whitecase.com
                                                    **Angela D. Daker**
                                                    Florida Bar No.: 681571
                                                    adaker@whitecase.com
                                                    **WHITE & CASE LLP**
                                                    Southeast Financial Center
                                                    200 South Biscayne Boulevard, Suite 4900
                                                    Miami, FL 33131
                                                    T: 305 371 2700
                                                    F: 305 358 5744

**Troy M. Yoshino** (*pro hac vice*)
troy.yoshino@squirepb.com
**Eric Knapp** (*pro hac vice*)
eric.knapp@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, CA 94111
T: 415 954 0200
F: 415 393 9887

*Attorneys for Defendant Mercedes-Benz USA, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 7, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide service to all counsel of record.

By:    /s/ Scott M. Sarason
       Scott M. Sarason