**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MDL No. 2599**
**MASTER CASE NO. 1:15-md-02599-FAM**
**S.D. Fla. Case No. 14-cv-24009-MORENO**

**IN RE: TAKATA AIRBAG PRODUCTS**
**LIABILITY LITIGATION,**

This Document Relates to:

ALL ECONOMIC LOSS ACTIONS
AGAINST VOLKSWAGEN GROUP OF
AMERICA, INC. AND AUDI OF AMERICA,
LLC

**FINAL ORDER APPROVING CLASS**
**SETTLEMENT AND CERTIFYING SETTLEMENT CLASS**

The Court has considered the Settlement Agreement filed on September 1, 2021, among

Class Representatives, through Settlement Class Counsel, and Defendants Volkswagen Group of

America, Inc. and Audi of America, LLC ("Volkswagen"),[1] the Court's November 10, 2021 Order

Granting Preliminary Approval of the Class Settlement, Directing Notice to the Class, and

Scheduling Fairness Hearing (ECF No. 1853), held a Fairness Hearing on March 7, 2022, and has

considered all of the submissions and arguments with respect to the Settlement Agreement, and is

otherwise fully informed. Accordingly, the Court enters this order and makes the following

findings of fact and conclusions of law:

---

[1]    Plaintiffs' Amended Consolidated Class Action Complaint also named as defendants
Volkswagen AG and Audi AG (collectively, the "German Entities"). In an Order dated June 20,
2019 (ECF No. 3406), this Court dismissed all claims against the German Entities for lack of
personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The German Entities
are therefore no longer parties to these actions, but are among the persons and entities released
from liability pursuant to this Order. The term "Released Parties" shall have the same definition
as it does in the Settlement Agreement.

1.      This Final Order Approving Class Action Settlement incorporates the Settlement Agreement and its exhibits, and the Preliminary Approval Order.

2.      The Court has personal jurisdiction over Plaintiffs and Volkswagen, including all Class Members, and has subject matter jurisdiction over the action, including jurisdiction to approve the Settlement Agreement, grant final certification of the Class, to settle and release all claims released in the Settlement Agreement, and to dismiss the economic loss claims asserted against Volkswagen and the Released Parties in the Actions with prejudice and enter final judgment with respect to Volkswagen and the Released Parties.  Further, venue is proper in this Court.

## I.      THE SETTLEMENT CLASS

3.      Based on the record before the Court, including all submissions in support of the settlement set forth in the Settlement Agreement, objections, and responses thereto and all prior proceedings, as well as the Settlement Agreement itself and its related documents and exhibits, the Court confirms the certification of the following nationwide Class for settlement purposes only:

(1) all persons or entities who or which owned or leased, on the date of the issuance of the Preliminary Approval Order, Subject Vehicles distributed for sale or lease in the United States or any of its territories or possessions; and (2) all persons or entities who or which formerly owned or leased Subject Vehicles distributed for sale or lease in the United States or any of its territories or possessions, and who or which sold or returned, pursuant to a lease, the Subject Vehicles after February 9, 2016, and through the date of the issuance of the Preliminary Approval Order.  Excluded from this Class are: (a) Volkswagen, its officers, directors, employees and outside counsel; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers and directors; and Volkswagen's Dealers and their officers, directors, and employees; (b) Settlement Class Counsel, Plaintiffs' counsel, and their employees; (c) judicial officers and their immediate family members and associated court staff assigned to this case, any of the cases listed in

2

Exhibit 1, or the 11th Circuit Court of Appeals; (d) Automotive Recyclers and their outside counsel and employees; and (e) persons or entities who or which timely and properly exclude themselves from the Class.

4.      The Court finds that only those persons, entities, and organizations listed on Appendix B to this Final Order Approving Class Action Settlement have timely and properly excluded themselves from the Class, based on the submitted declarations of the Notice Administrator (ECF Nos. 4165-1; 4159-1), and, therefore, are not bound by this Final Order Approving Class Action Settlement or the accompanying Final Judgment.

5.      The Court confirms, for settlement purposes and conditioned upon the entry of the Final Order and Final Judgment and upon the occurrence of the Effective Date, that the Class meets all the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3):

      a.      *Numerosity.* The Class, which is ascertainable, consists of more than one million persons located throughout the United States and satisfies the numerosity requirement of FED. R. CIV. P. 23(a)(1). (ECF No. 4143-2, ¶ 22.) Joinder of these widely dispersed, numerous Class Members into one suit would be impracticable.

      b.      *Commonality.* There are some questions of law or fact common to the Class with regard to the alleged activities of Volkswagen in this case. (ECF No. 4105 at 32-35.) These issues are sufficient to establish commonality under FED. R. CIV. P. 23(a)(2).

      c.      *Typicality.* The claims of class representatives are typical of the claims of the Class Members they seek to represent for purposes of settlement. (ECF No. 4105 at 32-35.)

      d.      *Adequate Representation.* Plaintiffs' interests do not conflict with those of absent members of the Class, and Plaintiffs' interests are co-extensive with those of absent Class Members. (ECF No. 4105 at 32-35.) Additionally, this Court recognizes the experience of Settlement Class Counsel. Plaintiffs and their counsel have prosecuted this action vigorously on behalf of the Class. (ECF No. 4143-1, ¶¶ 41-46.) The Court finds that the requirement of adequate representation of the Class has been fully met under FED. R. CIV. P. 23(a)(4).

e.      *Predominance of Common Issues.* For settlement purposes, the questions of law or fact common to the Class Members, including those concerning the alleged activities of Volkswagen, predominate over any questions affecting any individual Class Member. (ECF No. 4105 at 32-35.)

f.      *Superiority of the Class Action Mechanism.* The class action mechanism provides a superior procedural vehicle for resolution of this matter compared to other available alternatives. Class certification promotes efficiency and uniformity of judgment because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country.

6.      The designated class representatives are as follows: Dave DeKing, Chloe Crater, Efrain Ferrer, Christine Palmer, Bladimir Busto, Jr., Jacqueline Carrillo, Silvia Gil, Steven Levin, George O'Connor, Stephanie Puhalla, Charles Sakolsky, Delola Nelson-Reynolds, Holly Stotler, Malia Moore, Linda Dean, Trevor MacLeod, Pattie Byrd, Maureen Dowds, Annette Montanaro, Desiree Jones-Lassiter, Angela Cook, Angela Dickie, Antonia Dowling, Latecia J. Jackson, Nikki Norvell, Chloe Wallace, Michael Farriss, and April Rockstead Barker. The Court finds that these Class Members have adequately represented the Class for purposes of entering into and implementing the Settlement Agreement. (ECF No. 4143-1, ¶ 20.) The Court appoints Peter Prieto of Podhurst Orseck, P.A. as Lead Settlement Class Counsel, and David Boies of Boies Schiller & Flexner L.L.P., Todd A. Smith of Smith Lacien LLP, Roland Tellis of Baron & Budd, P.C., James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody, & Agnello, P.C., and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP as Settlement Class Counsel.

7.      In making its findings, the Court has exercised its discretion in certifying the Class.

## II.      NOTICE AND OUTREACH TO CLASS MEMBERS, AND QUALIFIED SETTLEMENT FUND

8.      The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. (ECF No. 4143-2.)

4

The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. CIV. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

9.      The Court further finds that Volkswagen, through the Settlement Notice Administrator, Patrick Juneau, provided notice of the settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715. (ECF No. 4143-2, ¶ 12.) Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety day time period to comment or object to the Settlement Agreement before entering its Final Order and Final Judgment.

10.     The Parties' Settlement includes an Outreach Program by which the Settlement Special Administrator, Patrick Juneau, will take additional actions to notify vehicle owners about the Takata Airbag Inflator Recalls and to promptly remedy those issues. This Outreach Program—which shall be subject to approval by Volkswagen—includes, but is not limited to: (a) direct contact of Class Members via U.S. mail, landline and cellular telephone calls, social media, email, texting, and canvassing; (b) contact of Class Members by third parties (e.g., independent repair shops); and (c) multi-media campaigns, such as through print, television, radio, and internet. Because of the important public safety concerns involved with such a massive recall effort, the

Court finds that it is in the public interest and that of the federal government to begin this Outreach Program as soon as practicable, if not already begun, and that calls and texts made under the Outreach Program are being made for emergency purposes as that phrase is used in 47 U.S.C. § 227(b)(1)(A). The Settlement Special Administrator and those working on his behalf shall serve as agents of the federal government for these purposes and shall be entitled to any rights and privileges afforded to government agents or contractors in carrying out their duties in this regard.

11. The Court finds that the Escrow Account is to be a "qualified settlement fund" as defined in Section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the following requirements:

(a) The Escrow Account is to be established pursuant to an Order of this Court and is subject to the continuing jurisdiction of this Court;

(b) The Escrow Account is to be established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

(c) The assets of the Escrow Account are to be segregated from other assets of Defendants, the transferor of the payment to the Settlement Fund and controlled by an Escrow Agreement.

12. Under the "relation back" rule provided under Section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that Volkswagen may elect to treat the Escrow Account as coming into existence as a "qualified settlement fund" on the latter of the date the Escrow Account meets the requirements of Paragraphs 11(b) and 11(c) of this Order, or January 1 of the calendar year in which all of the requirements of Paragraph 11 of this Order are met. If such a relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Escrow Account on that date.

### III.    FINAL APPROVAL OF SETTLEMENT AGREEMENT

13. The Court finds that the Settlement Agreement resulted from extensive arm's-length good faith negotiations between Settlement Class Counsel and Volkswagen, through

6

experienced counsel.  (ECF No. 4143-1, ¶¶ 26-29.)

14.     Pursuant to FED. R. CIV. P. 23(e), the Court approves in all respects the Settlement as set forth in the Settlement Agreement and finds that the Settlement Agreement, and all other parts of the settlement are, in all respects, fair, reasonable, and adequate, and in the best interest of the Class and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act, and any other applicable law.  The Court declares that the Settlement Agreement is binding on all Class Members, except those identified on Appendix B, and it is to be preclusive in the Action.  The decisions of the Settlement Special Administrator relating to the review, processing, determination and payment of Claims submitted pursuant to the Settlement Agreement are final and not appealable.

15.     The Court finds that the Settlement Agreement is fair, reasonable and adequate based on the following factors, among other things: (a) there is no fraud or collusion underlying the Settlement Agreement and the proposal was negotiated at arm's length (ECF No. 4143-1, ¶¶ 26-29); (b) the relief provided for the class is adequate, taking into account the complexity, expense, uncertainty and likely duration of litigation in the Action, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of the proposed award of attorney's fees, including timing of payment, and the absence of any other agreements required to be identified under Rule 23(e)(3) (ECF No. 4143-1, ¶¶ 30-38); (c) the Settlement treats class members equitably relative to each other (*id.*); (d) the class representatives and class counsel have adequately represented the class (*id.*); and (e) any and all other applicable factors that favor final approval.

16.     The Parties are directed to implement and consummate the Settlement according to the terms and provisions of the Settlement Agreement.  In addition, the Parties are authorized to agree to and adopt such amendments and modifications to the Settlement Agreement as: (i) shall be consistent in all material respects with this Final Order Approving Class Action Settlement: and

(ii) do not limit the rights of the Class.

17.     The Court has considered all objections, in writing and at oral argument at the fairness hearing, to the Settlement Agreement and denies and overrules them as without merit.

18.     Some objectors have challenged the Outreach Program, claiming that it is ineffective and duplicative of the Notice Plan and National Highway Traffic Safety Administration requirements. (ECF Nos. 4153 at 6-10; 4156 at 2-4.) The Court finds that these objections are inconsistent with the record.  The most recent Status Report filed by the Settlement Special Administrator, as well as the Settlement Special Administrator's unchallenged presentation to the Court at the fairness hearing, demonstrates how successful the Outreach Programs of the first seven settlements have been.  (ECF No. 4140.)  Since the Outreach Programs from the first seven settlements in this MDL began, 9,102,337 Recall Remedies have been completed on Subject Vehicles of the seven prior settling defendants. (*Id.* at 5.)

19.     In addition, contrary to the objectors' claims, the Outreach Program is not duplicative of the Rule 23(c) Notice Plan. The objective of the Rule 23(c) Notice Plan—which is now complete and was implemented by the Court-appointed Notice Administrator following preliminary approval of the Settlement (ECF No. 4159-1)—was simply "to apprise interested parties of the pendency of the action and afford[] them an opportunity to present their objections." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–812 (1985)). In contrast, the objective of the Outreach Program, a central component of the Settlement that will be administered for at least four years, is to "maximiz[e], to the extent practicable, completion of the Recall Remedy in Subject Vehicles for the Takata Airbag Inflator Recalls" (ECF No. 4105-1, § III.B.1)—i.e., to remove as many at-issue Takata inflators from Volkswagen vehicles as practicable.

20.     Nor is the Outreach Program coextensive with Volkswagen's National Highway Traffic Safety Administration–mandated obligations. Federal law governing recall notifications initially obligates an automaker to mail just one recall notice to car owners. *See* 49 U.S.C. §

30119(a)-(d); 49 C.F.R. § 577.7. It also empowers National Highway Traffic Safety Administration to require automakers to send additional notifications to car owners. *See* 49 U.S.C. § 30119(e); 49 C.F.R. §§ 577.10, 577.12. With this authority, National Highway Traffic Safety Administration issued the Third Amendment to the Coordinated Remedy Order on December 9, 2016, which is included as an exhibit to and referenced in the Settlement. (ECF No. 4105-1 at 80.) The Third Amendment to the Coordinated Remedy Order effectively establishes the baseline outreach obligations of automakers for the Takata recalls. (ECF No. 4105-1 at 102-03, ¶ 42.) It requires automakers to conduct "supplemental notification efforts," but ultimately leaves the scope, means, and sophistication of such efforts to the discretion of each automaker, unless specifically instructed to issue a particular notification by the Independent Monitor overseeing the Third Amendment to the Coordinated Remedy Order. (*Id.*)

21. The unique benefit of the Settlement's Outreach Program is that it picks up where the baseline obligations of the Third Amendment to the Coordinated Remedy Order leave off, expressly obligating Volkswagen to expand or go beyond its current outreach efforts. (ECF No. 4105-1, § III.B.1.) Far from leaving outreach to the discretion of Volkswagen, the Settlement's Outreach Program *mandates* that Volkswagen provide massive funding—more than $13 million— for outreach efforts and empowers the Settlement Special Administrator to oversee and administer a dynamic, state-of-the art program. And the Settlement expressly authorizes one of the methods for outreach—"incentives for Class Members to bring their Subject Vehicles to Volkswagen Dealers for the completion of the Recall Remedy" (ECF No. 4105-1, § III.B.2)—that several objectors argued should be utilized.

22. Several objectors also claim that there are intra-class conflicts between former owners of Subject Vehicles and current owners, as well as those who have had their vehicles repaired and those who have not. (ECF Nos. 4153 at 2-7; 4156 at 4-5.) These objections are overruled, because the Court finds that no such conflicts exist, nor would they preclude class certification and final approval of the Settlement. Claims of intra-class conflict implicate the

adequacy prong of Rule 23(a), which requires class representatives and their counsel to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "serves to uncover conflicts of interests between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). But "a party's claim to representative status is defeated only if the conflict between the representative and the class is a *fundamental* one, going to the specific issues in controversy." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (emphasis added). Thus, "a conflict will not defeat the adequacy requirement if it is merely speculative or hypothetical." *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (internal quotation marks omitted).

23.     The Court finds that there are no disabling intra-class conflicts here. The interests of all Class Members align in seeking to establish the alleged defect in Takata inflators installed in Volkswagen's vehicles, proving Volkswagen's knowledge of the alleged defect, and recovering economic damages from Volkswagen. *See Carriuolo v. General Motors Co.*, 823 F.3d 977, 989-90 (11th Cir. 2016) (rejecting intra-class conflict argument because "[e]ach class member is connected by the common predominate inquiry: Did [the defendant] violate FDUTPA by affixing inaccurate Monroney stickers to [the vehicles at issue]"); *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomm., Inc.*, 275 F.R.D. 638, 643 (M.D. Fla. 2011) (finding that no fundamental intra-conflict existed when "[t]he specific issues in this controversy concern whether [defendant's] billing practices were deceptive, fraudulent, or resulted in unjust enrichment" and all class members would benefit if plaintiffs prevailed on their claims); (ECF No. 2318-1, ¶ 8 ("No objector has identified a conflict that would cause a single team of lawyers to harm class members of one type while pressing the claims of class members of another type."); *id.*, ¶ 19 ("There are no conflicts between or among these Plaintiffs that would render joint representation problematic. All of their claims are compatible.")). In addition, "almost every settlement will involve different awards for various class members." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999). "Such differences in settlement value do not, without more, demonstrate conflicting or antagonistic

interests within the class." *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010).

24.     One objector voices dissatisfaction that the Settlement does not compensate his claim for emotional distress. (ECF No. 4149.) But settlements, by their nature, rarely confer complete relief; they are assessed, instead, for fairness, adequacy, and reasonableness, not whether the settlement reflects "the best possible deal" or a result equivalent to a "victory at trial." *In re Checking Account Overdraft Litig.*, No. 09-02036, 2015 WL 12641970, at *8, *10 (S.D. Fla. May 22, 2015) (quotation marks and citation omitted).  Thus, the complaint that the Settlement does not provide full compensation misses the point.  As demonstrated in Plaintiffs' motion for final approval and the affidavit of Plaintiffs' Lead Counsel, the Settlement is fair and reasonable according to the standards established by the Eleventh Circuit. (ECF No. 4143 at 20-28; 4143-1, ¶¶ 26-38.)

### IV.     SETTLEMENT CLASS COUNSEL'S FEE APPLICATION

25.     Class Counsel has filed an application for attorneys' fees and expenses equal to thirty percent (30%) of the $42,000,000 common fund created through their efforts in prosecuting and settling this Action, totaling **$12,600,000**.  This fee award would also amount to roughly 22% of the total Settlement value, based on the valuation of the Settlement's Customer Support Program presented by a warranty valuation expert, Kirk Kleckner.  (ECF No. 4143-3.)

26.     As recognized by the United States Supreme Court, the law is well established that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  And as the Eleventh Circuit made clear in *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir.1991), the law is equally well established in this jurisdiction that "[a]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 771.

11

27.     The "majority of common fund fee awards," the Eleventh Circuit has observed, "fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774-75; *see Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) (affirming fee award above the "25% benchmark"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (directing district courts "to view [the 20% to 30%] range as a 'benchmark,' which 'may be adjusted in accordance with the individual circumstances of each case'") (quoting *Camden I*, 946 F.2d at 774-75). Thus, "[c]ourts nationwide," the Eleventh Circuit recently noted with approval, "have repeatedly awarded fees of 30 percent or higher." *In re Equifax*, 999 F.3d at 1281 (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011)).

28.     Per *Camden I*, the Court may also consider the following nonexclusive list of factors in determining the reasonableness of the attorneys' fees are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

946 F.2d at 772 n. 3.

29.     In support of their request for attorneys' fees, Class Counsel has presented the Declaration of Professor Brian Fitzpatrick (ECF No. 4143-4), a leading scholar on class actions, and the Declaration of Peter Prieto, Esq., the Court-appointed Chair Lead Counsel in this litigation (ECF No. 4143-1).  Both Declarations analyze each of the factors set forth in *Camden I*, and conclude that every applicable one of them supports the reasonableness of the instant fee request. (ECF No. 4143-1, ¶¶ 41-61; 4143-4, ¶¶ 20-31.)  This Court agrees and finds, based on the analysis in the declarations, as well as this Court's independent analysis of the *Camden I* factors and the

12

unique facts of this case, that each and every applicable *Camden I* factor supports the reasonableness of the instant fee request.

30.     Furthermore, two additional factors support the reasonableness of the requested fee. First, as highlighted in the Declarations (ECF No. 4143-1, ¶ 2; 4143-3, ¶ 2.a), the requested fee actually amounts to roughly 22% of the common fund created through the settlement, due to the value of the Customer Support Program made available to all Class Members. *See Carter v. Forjas Taurus, S.A.*, No. 16-15277, 2017 WL 2813844, at *5 (11th Cir. June 29, 2017) (holding that fee award was "a reasonable percentage of the settlement value" when considering the value of an "enhanced warranty, which is itself a significant tangible benefit").

31.     Second, in addition to the time and labor already devoted to this case, Class Counsel will be required to expend considerable time and effort over the four-year lifespan of the settlement overseeing and adjusting the Outreach Program and Out-of-Pocket Claims Process for the benefit of Class Members. *See Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1216 (S.D. Fla. 2006) (holding that class counsel's post-approval work "supports the application of a higher fee percentage award").

32.     The Court has also considered the objections submitted in opposition to the fee request and denies and overrules them as without merit.  At the fairness hearing counsel for objectors did not argue that the $12.6 million fee was too much, but that that Florida law applied. As set out in the following paragraphs (33-36) the Court disagrees with the objectors.

33.     Several objectors argue that Florida law, which applies a lodestar-multiplier method to fee awards, should govern Class Counsel's fee request.  The Court concludes that this objection is inconsistent with Eleventh Circuit precedent, which uniformly applies the *Camden I* percentage-of-the-fund method to class settlements resolving state-law claims. *See, e.g., In re*

13

*Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1258, 1278-82 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021) (awarding fees based on percentage-of-the-fund and *Camden I* for class settlement resolving lawsuit in which all federal claims had been dismissed and only state law claims remained); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011) (applying percentage-of-the-fund method and *Camden I* in a settlement resolving state-law claims for breach of contract and bad faith failure to pay an insurance claim; *Poertner*, 618 F. App'x at 625 (applying percentage-of-the-fund method and *Camden I* in a settlement resolving a diversity case involving a single Florida statutory claim).

34.     The common fund doctrine is rooted in the Court's equitable power, as the Fifth Circuit affirmed forty years ago, when it described "the inherent equitable power of a trial court to allow counsel fees and litigation expenses out of the proceeds of a fund that has been created, increased or protected by successful litigation." *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1017 (5th Cir. 1977).   Thus, several decisions in this District have expressly rejected the objectors' position in diversity cases and have applied the federal common-fund doctrine to award attorneys' fees from class action settlements.  *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n.32 (S.D. Fla. 2011) ("Eleventh Circuit attorneys' fee law governs this request, not the law of Florida."); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) ("The district court presiding over a diversity-based class action pursuant to Fed. R. Civ. P. 23 has equitable power to apply federal common law in determining fee awards irrespective of state law.").

35.     In addition, the Settlement itself incorporates the percentage-of-the-fund approach (ECF No. 4105-1, § VIII.A), undermining one objector's reliance on the Settlement's Florida

choice-of-law provision, which does not purport to displace the Eleventh Circuit's common-fund doctrine.

36.     Some objectors also argue that the fee award should be reduced because the Settlement, together with the seven prior seven settlements in the MDL, constitutes a so-called mega-fund. But the Eleventh Circuit recently held that "our Circuit does not limit attorney's fees in megafund cases as a matter of law." *In re Equifax*, 999 F.3d at 1281 n. 27. Reducing a fee award based on the size of the settlement "is antithetical to the percentage of the recovery method adopted by the Eleventh Circuit." *Allapattah*, 454 F. Supp. 2d at 1213.

37.     Accordingly, the Court approves the application for attorneys' fees in the amount of $12,600,000, to be paid from the common fund.

## V.     DISMISSAL OF CLAIMS, RELEASE

38.     All economic loss claims asserted against Volkswagen and the Released Parties in the actions hereby dismissed with prejudice on the merits and without costs to any party, except as otherwise provided herein or in the Settlement Agreement.

39.     Upon entry of this Final Order Approving Class Action Settlement and the Final Judgment, class representatives and each Class Member (except those listed on Appendix B), on behalf of themselves and any other legal or natural persons and entities who or which may claim by, through or under them, including their executors, administrators, heirs, assigns, privies, predecessors and successors, agree to fully, finally and forever release, relinquish, acquit, discharge and hold harmless the Released Parties from the Claims and any and all other claims, demands, suits, petitions, liabilities, causes of action, rights, losses and damages and relief of any kind or type regarding the subject matter of the Actions, including, but not limited to, compensatory, exemplary, statutory, punitive, restitutionary, expert or attorneys' fees and costs, whether past, present, or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative, vicarious or direct, asserted or un-asserted,

15

and whether based on federal, state or local law, statute, ordinance, rule, regulation, code, contract, tort, physical property damage to the Subject Vehicle, fraud or misrepresentation, common law, violations of any state's or territory's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, or other laws, unjust enrichment, any breaches of express, implied or any other warranties, violations of any state's Lemon Laws, the Racketeer Influenced and Corrupt Organizations Act, or the Magnuson-Moss Warranty Act, or any other source, or any claims under the Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses 16. C.F.R. § 433.2, or any claim of any kind, in law or in equity, arising from, related to, connected with, or in any way involving the Claims or the Actions, the Subject Vehicles' driver or passenger front airbag modules containing desiccated or non-desiccated Takata PSAN inflators, and any and all claims involving the Takata Airbag Inflator Recalls that are, or could have been, alleged, asserted or described in the *Alters* Complaint, the *McBride* Complaint, the Consolidated Class Action Complaint, the Amended Consolidated Class Action Complaint, the Second Amended Consolidated Class Action Complaint, the Actions or any amendments of the Actions.

40.     If a Class Member who does not opt out commences, files, initiates, or institutes any new legal action or other proceeding against a Released Party for any claim released in this Settlement in any federal or state court, arbitral tribunal, or administrative or other forum, such legal action or proceeding shall be dismissed with prejudice at that Class Member's cost.

41.     Notwithstanding the Release set forth in the Settlement and this Order, Class Representatives and Class Members are not releasing and are expressly reserving all rights relating to claims for bodily injury, wrongful death or physical property damage (other than to the Subject Vehicle) arising from an incident involving a Subject Vehicle, including the deployment or non-deployment of a driver or passenger front airbag with a Takata PSAN inflator.

42.     Notwithstanding the Release set forth in the Settlement and this Order, Class Representatives and Class Members are not releasing and are expressly reserving all rights relating

to claims against Excluded Parties.

43.     By not excluding themselves from the Action and to the fullest extent they may lawfully waive such rights, all class representatives and Class Members are deemed to acknowledge and waive Section 1542 of the Civil Code of the State of California and any law of any state or territory that is equivalent to Section 1542.  Section 1542 provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

44.     The Court orders that the Settlement Agreement shall be the exclusive remedy for all claims released in the Settlement Agreement for all Class Members not listed on Appendix B.

45.     Therefore, except for those listed on Appendix B, all class representatives, Class Members and their representatives are hereby permanently barred and enjoined from, either directly, through their representatives, or in any other capacity instituting, commencing, filing, maintaining, continuing or prosecuting against any of the Released Parties any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action described.  In addition, all class representatives, Class Members and all persons and entities in active concert or participation with Class Members are permanently barred and enjoined from organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing, as a purported class action, any lawsuit against the Released Parties based on or relating to any claim of any kind, in law or in equity, arising from, related to, connected with, or in any way involving the Claims or the Actions, the Subject Vehicles' driver or passenger front airbag modules containing desiccated or non-desiccated Takata PSAN inflators, any and all claims involving the Takata Airbag Inflator Recalls that are, or could have been, alleged, asserted or described in the *Alters* Complaint, the *McBride* Complaint, the Consolidated Class Action

17

Complaint, the Amended Consolidated Class Action Complaint, the Second Amended Consolidated Class Action Complaint, the Actions or any amendments of the Actions, or any other facts and circumstances relating thereto or to the release in the Settlement Agreement.  Pursuant to 28 U.S.C. §§1651 (a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of its continuing jurisdiction and authority over the settlement as set forth in the Settlement Agreement, and the Action.

46.    Class Members are not precluded from addressing, dealing with, or complying with requests or inquiries from governmental authorities relating to the issues raised in this class action settlement.

## VI.    OTHER PROVISIONS

47.    Without affecting the finality of this Final Order Approving Class Action Settlement or the accompanying Final Judgment, the Court retains continuing and exclusive jurisdiction over the Action and all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order Approving Class Action Settlement and the accompanying Final Judgment, to protect and effectuate this Final Order Approving Class Action Settlement and the accompanying Final Judgment, and for any other necessary purpose.  The Parties, the class representatives, and each Class Member not listed on Appendix B are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, including the exhibits thereto, and only for such purposes.

48.    In the event that the Effective Date does not occur, certification of the Class shall be automatically vacated and this Final Order Approving Class Action Settlement and the accompanying Final Judgment, and other orders entered in connection with the Settlement Agreement and releases delivered in connection with the Settlement Agreement, shall be vacated and rendered null and void as provided by the Settlement Agreement.

18

49.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.  Likewise, the Parties may, without further order of the Court, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Final Order Approving Class Action Settlement and the accompanying Final Judgment and do not limit the rights of Class Members under the Settlement Agreement.

50.     Nothing in this Final Order Approving Class Action Settlement or the accompanying Final Judgment shall preclude any action in this Court to enforce the terms of the Settlement Agreement.

51.     Neither this Final Order Approving Class Action Settlement nor the accompanying Final Judgment (nor any document related to the Settlement Agreement) is or shall be construed as an admission by the Parties.  Neither the Settlement Agreement (or its exhibits), this Final Order Approving Class Action Settlement, the accompanying Final Judgment, or any document related to the Settlement Agreement shall be offered in any proceeding as evidence against any of the Parties of any fact or legal claim; provided, however, that Volkswagen and the Released Parties may file any and all such documents in support of any defense that the Settlement Agreement, this Final Order Approving Class Action Settlement, the accompanying Final Judgment and any other related document is binding on and shall have res judicata, collateral estoppel, or preclusive effect in any pending or future lawsuit by any person or entity who is subject to the release described above in Paragraph 19 asserting a released claim against any of the Released Parties.

52.     A copy of this Final Order Approving Class Action Settlement shall be filed in, and applies to, each economic loss member action in this multidistrict litigation.  Filed concurrently is the Court's Final Judgment.  Attached hereto as Appendix A is a list of the Subject Vehicles (identified by make, model, and year) to which these Orders and the Court's Final Judgment apply. Also attached hereto as Appendix B is a list of persons, entities, and organizations who have excluded themselves from (or "opted out" of) the Class.

**DONE AND ORDERED** in Chambers at Miami, Florida this 28th day of March 2022.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record

# APPENDIX A

## EXHIBIT 9 -- VOLKSWAGEN SUBJECT VEHICLES

| MODEL YEAR | MAKE AND MODEL |
|---|---|
| 2009-2017 | Volkswagen CC |
| 2010-2016 | Volkswagen Eos |
| 2010-2014 | Volkswagen Golf |
| 2012-2015 | Volkswagen Passat |
| 2006-2008, 2010 | Volkswagen Passat Sedan |
| 2006-2008, 2010 | Volkswagen Passat Wagon |
| 2012-2019 | VW Beetle |
| 2012-2019 | VW Beetle Convertible |
| 2006-2013 | Audi A3 |
| 2005-2008 | Audi A4 Avant |
| 2007-2009 | Audi A4 Cabriolet |
| 2005-2008 | Audi A4 Sedan |
| 2010-2012 | Audi A5 Cabriolet |
| 2006-2011 | Audi A6 Avant |
| 2005-2011 | Audi A6 Sedan |
| 2009-2012 | Audi Q5 |
| 2017 | Audi R8 Coupe |
| 2017 | Audi R8 Spyder |
| 2008 | Audi RS 4 Cabriolet |
| 2007-2008 | Audi RS 4 Sedan |
| 2005-2008 | Audi S4 Avant |
| 2007-2009 | Audi S4 Cabriolet |

| MODEL YEAR | MAKE AND MODEL |
|---|---|
| 2005-2008 | Audi S4 Sedan |
| 2010-2012 | Audi S5 Cabriolet |
| 2007-2011 | Audi S6 Sedan |
| 2016-2017 | Audi TT Coupe |
| 2016-2017 | Audi TT Roadster |

# APPENDIX B

**In Re: Takata Airbag Products Liability Litigation**
**Case No. 1:15-md-02599-FAM**
**Requests for Exclusion**

| | Opt Out # | Class Member Name | Volkswagen Subject Vehicle | VIN |
|---|---|---|---|---|
| 1 | 900000002 | CATHERINE J M WEHRI | VOL | 1VWAP7A31DC067032 |
| 2 | 900000005 | MICHAEL KEVIN RICE | AUD | WA1LKAFP5AA043532 |
| 3 | 900000006 | EILEEN ALCANTAR & CARLOS ALCANTAR | VOL | 1VWAT7A32EC025286 |
| 4 | 900000009 | DEBRA LEE | VOL | WVWAK73C76P117930 |
| 5 | 900000010 | MELISSA JEAN STROM | VOL | WVWDM7AJXCW091088 |
| 6 | 900000011 | JEANNETTE NAOMI MCCREIGHT | VOL | WVWBW8AH4FV000492 |
| 7 | 900000012 | GWEN JEWELL | VOL | WVWBW8AH0DV002351 |
| 8 | 900000017 | VIORICA LOPEZ-AVILA | VOL | 3VWFD7AT6KM709867 |
| 9 | 900000018 | JOSE ANTONIO DE FIGUEIREDO | VOL | WVWJK7AN3AE136337 |