**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**MDL No. 2599**
**Master File No.: 15-MD-02599-MORENO**
**S.D. Fla. Case No. 1:14-cv-24009-MORENO**

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION | |
| THIS DOCUMENT RELATES TO: ECONOMIC LOSS TRACK CASES | **ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION**

Plaintiffs, most respectfully, urge this Court to reconsider limited parts of its recent orders that conflict with this Court's own prior decisions, as well as Eleventh Circuit precedent and binding state authorities.  Reconsideration is appropriate, this Court has explained, to "correct manifest errors of law or fact."  *Frost v. Geovera Specialty Ins. Co.*, No. 18-25163-CIV, 2019 WL 7987828, at *1 (S.D. Fla. May 31, 2019) (Moreno, J.) (internal quotations marks omitted).  Under this standard, this Court has not hesitated to grant meritorious requests for reconsideration.  *See, e.g.*, *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2021 WL 3711444, at *1 (S.D. Fla. Aug. 20, 2021); *Frost*, 2019 WL 7987828, at *1.  Indeed, within this MDL, the Court has, on several occasions, reconsidered decisions to ensure consistency among its rulings and conformity with prevailing law.  (ECF No. 1792 (reconsidering dismissal of claims); ECF No. 1793 (reconsidering order and dismissing claims); ECF No. 3983 (granting motions to reconsider)).  Put simply, this Court has always aimed to be consistent and strived to reach the correct result, even if that meant, after additional reflection and deliberation, acknowledging that an initial decision was incorrect. The same circumstances warrant reconsideration of the following limited set of rulings.

First, the Court should reconsider and vacate summary judgment on Plaintiffs' claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). This Court's ruling that these Florida Plaintiffs—most of whom are residents of this District and all of whom purchased their Class Vehicles in Florida—have no legally recoverable benefit-of-the-bargain damages under FDUTPA radically breaks with decisions of this Court, Florida's intermediate appellate courts, and the Eleventh Circuit. This is precisely the type of manifest legal error for which reconsideration is appropriate.

Second, the Court should reconsider and vacate summary judgment on a *limited* group of statutory consumer protection claims under the laws of four states: California, Illinois, Michigan, and New York. The Court's damages ruling conflicts with either binding precedent or the statutory text, or both, from each respective state. Reconsideration is warranted to correct these legal errors as well. Ultimately, granting this limited relief will enable these non-Florida claims, if they are not resolved in this Court, to be remanded to the appropriate transferor districts for trial with the benefit of pretrial rulings that are faithful to their respective states' laws.

And third, the Court should reconsider and vacate its decision prohibiting Plaintiffs from representing consumers who purchased vehicles in different states than those in which named Plaintiffs purchased their vehicles. An intervening decision from the Eleventh Circuit, issued after this Court ruled on Defendants' motions to dismiss, clarifies the law on this question and confirms that Defendants led the Court astray in advancing an unjustifiably restrictive view of class standing. Under the Eleventh Circuit's recent decision, Plaintiffs are permitted to assert claims and represent putative class members in states other than those in which named Plaintiffs purchased their Class Vehicles. Reconsideration of the Court's prior ruling to the contrary, therefore, is warranted.

I.   **The Court's Dismissal of Plaintiffs' FDUTPA Claims Should Be Reconsidered and Vacated.**

This Court's recent ruling on Plaintiffs' FDUTPA claims (ECF No. 4471) cannot be reconciled with its own prior decisions, or binding precedent from Florida's appellate courts and the Eleventh Circuit.  Respectfully, this significant inconsistency requires reconsideration.

In its recent Order, this Court, relying on arguments advanced by FCA and MBUSA, reasoned that benefit-of-the-bargain damages in Florida are "measured by the lesser of (1) the cost of repair, or (2) the difference between the fair market value of the vehicle as warranted and the fair market vehicle as sold, reduced according to Plaintiffs' ability to mitigate or avoid damages," and since Defendants repaired or offered to repair Plaintiffs' vehicles for free, the cost of repair and thus Plaintiffs' damages were zero.  (*Id.* at 15.)  Less than a year ago, however, this Court unequivocally held that, under FDUTPA, "the ***proper measure of damages*** is the difference in market value of the product as delivered and the condition in which it should have been delivered, ***a value that is completely separate from the cost to repair***."  *Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV, 2021 WL 5811741, at *5 (S.D. Fla. Dec. 6, 2021) (emphasis added).  The cost to repair a vehicle cannot simultaneously be a proper damages measure that limits other remedies, as the Court reasoned here (ECF No. 4471 at 15), and "a value that is ***completely separate***" from the *"**proper measure of damages**,"* as the Court correctly reasoned in *Cardenas*, 2021 WL 5811741, at *5 (emphasis added).  This Court got it right in *Cardenas*, not simply based on supporting caselaw but also based on common sense, because when a vehicle is sold with a defect, a consumer pays a premium for that vehicle at the point of sale, and a repair offered years later does not compensate the consumer for that overpayment.  Accordingly, this Court should adhere to its prior ruling in *Cardenas* and vacate the summary judgment on Plaintiffs' FDUTPA claims.

The Court's earlier ruling in *Cardenas*, unlike the Court's recent Order, finds abundant support in decisions from Florida's appellate courts:

- In *Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. Dist. Ct. App. 1984), the court explained that, for FDUTPA claims, the "measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* 585 (internal quotation marks omitted). The court never suggested that the cost to repair is either an available measure of or limit to damages.

- In *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451 (Fla. Dist. Ct. App. 1985), the court expressly rejected the cost of repair as a measure of damages under FDUTPA, reasoning that "[t]he ***cost of these repairs*** constitutes special or consequential damages which ***fall outside the statutory concept of actual damages*** as defined in section 501.211, Florida Statutes (1981), and *Rollins*." *Id.* at 454 (emphasis added).

- And in an automotive defect case in particular, the court likewise held that "***FDUPTA 'actual damages' do not include*** consequential damages, such as ***repair damages*** or resale damages." *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. Dist. Ct. App. 2008) (emphasis added).

As this Court has recognized (ECF No. 4471 at 4), based on its traditional deference and respect for state courts on issues of state law, such decisions of Florida's intermediate appellate courts are binding authority that federal courts "must follow" when applying state law under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011) ("As a general matter, we must follow the decisions of these intermediate courts."). Numerous courts in this District, also deferring to Florida's intermediate appellate courts on this issue of state law, have likewise followed these authorities and reached the same conclusion as this Court did in *Cardenas*:

- In *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015) (Dimitrouleas, J.), the court held that "***repair costs . . . are unrecoverable under FDUPTA*.**" *Id.* at 538 (emphasis added).

4

- In *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 481 F. Supp. 3d 1258 (S.D. Fla. 2020) (Ruiz, J.), *aff'd*, No. 20-13588, 2021 WL 4427772 (11th Cir. Sept. 27, 2021), the court held that "***it is well-accepted that FDUTPA does not cover repair costs***." *Id.* at 1284 (emphasis added).

- And in *Simmons v. Ford Motor Co.*, No. 18-CV-81558-RAR, 2022 WL 845127 (S.D. Fla. Mar. 21, 2022) (Ruiz, J.), the court also held that "***FDUTPA does not cover repair costs***." *Id.* at *17 (emphasis added).

These authorities establish that, contrary to the errant arguments advanced by FCA and MBUSA (ECF No. 4183-4; ECF No. 4179 at 25),[1] on which this Court relied in its recent Order (ECF No. 4471 at 13), the proper measure of damages for common-law claims involving property injuries and FDUTPA claims is not the same.  Three of the four Florida cases that this Court cited for limiting damages to the cost of repair (ECF No. 4471 at 7-8) involved inapplicable common-law claims for property injury, not FDUTPA claims.  *See Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595, 596 (Fla. 1994) (involving "four common law claims: trespass, negligence, private nuisance, and strict liability" for "the wrongful injury of property"); *Santa Rosa Golf Assocs., Inc. v. Haraway*, 998 So. 2d 1166, 1167 (Fla. Dist. Ct. App. 2008) (involving "negligence action" for "wrongful injury of property"); *Tree Const. Corp. v. Caplinger*, 446 So. 2d 245, 245 (Fla. Dist. Ct. App. 1984) (involving claim of homeowner against builder for construction defects).  And the fourth case differentiated the measure of damages applicable to a breach-of-contract claim and a FDUTPA claim.  *See Orkin Exterminating Co. v. DelGuidice*, 790 So. 2d 1158, 1160 (Fla. Dist. Ct. App. 2001).  The portion of *DelGuidice* that the Court cited regarding cost-of-repair damages involved the breach-of-contract claim (ECF No. 4471 at 7-8 (citing *DelGuidice*, 790 So. 2d at 1160)), but the discussion of FDUTPA later in *DelGuidice* confirmed that "the Act allows

---

[1] GM did not move for summary judgment on this basis as to Plaintiffs' FDUTPA claims, implicitly acknowledging that Florida law is at odds with FCA's and MBUSA's position.  For that reason alone, vacating summary judgment as to GM is warranted.

for recovery of the difference between the value of the defective services or goods provided and the value of non-defective services or goods but ***does not provide*** for recovery of consequential or special damages such as the ***cost of the termite repairs*** themselves." *Id.* at 1162 (emphasis added).[2]

Florida law is clear, therefore, that the measure of damages applicable to FDUTPA claims is different than the measure of damages applicable to common-law claims for property injuries. So, decisions involving common-law claims for property injuries cannot serve as a basis to limit FDUTPA damages to the cost of repair, particularly when numerous Florida intermediate appellate courts, as well as numerous courts in this District—including this Court—have held that cost-of-repair damages are irrelevant to and unrecoverable under FDUTPA.

Indeed, applying such a common-law limit to the expansive remedies afforded under FDUTPA would be inconsistent with the plain language of the statute. *See* Fla. Stat. § 501.213 (1) ("The remedies of this part are in addition to remedies otherwise available for the same conduct under state or local law."); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 609 (Fla. Dist. Ct. App. 1997) (holding that "in administering the FDUTPA, courts do not have the right to limit and, in essence, to abrogate, as the trial court did in this case, the expanded remedies granted to consumers under this legislatively created scheme"); *accord Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. Dist. Ct. App. 1998). And given the

---

[2] This Court also described *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011), as a decision in which a defendant's voluntary recall precluded diminished value damages. (ECF No. 4471 at 8.) But *Jovine* did not involve a recall in which a defendant fixed a defective safety device. Rather, the recall in *Jovine* required the defendant to "return to Plaintiff the money he paid for allegedly defective products." 795 F. Supp. 2d at 1344. That is precisely what Defendants here are ***not*** doing and why the recall repair is inadequate to compensate Plaintiffs. In addition, *Jovine* was decided on a motion to dismiss with a bare, unsupported allegation of damage, not on summary judgment, with an expert report documenting overpayment damages that has properly been admitted over *Daubert* challenges.

absence of supporting state law, placing such a novel restriction on FDUTPA claims would contravene "considerations of comity and federalism [which] counsel that [federal courts] proceed gingerly when venturing into unchartered waters of state substantive law." *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1251 (11th Cir. 2013); *see Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1154 (11th Cir. 2011) ("It is not the function of federal courts to expand state tort doctrine in novel directions absent state authority suggesting the propriety of doing so.").

Finally, this Court's dismissal of Plaintiffs' FDUTPA claims on the basis of a post-sale repair cannot be reconciled with the Eleventh Circuit's decision in *Carriuolo v. General Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016).  This Court correctly acknowledged *Carriuolo* but misconstrued a key part of that decision (ECF No. 4471 at 14).  In *Carriuolo*, the plaintiffs claimed that GM violated FDUTPA by representing that its vehicles had a five-star safety rating when the vehicles had not received any rating yet.  *Id.* at 983.  After the plaintiffs had purchased their vehicles, GM had the vehicles tested, and the vehicles did, in fact, earn a five-star rating in five of the six safety categories but earned a four-star rating in one of the categories.  *Id.*  Because the post-sale safety ratings ultimately confirmed the pre-sale representations in most safety categories, GM argued that "the plaintiffs could not have suffered any injury," *id.* at 987, just as Defendants argue here.  The Eleventh Circuit rejected this argument in reasoning that applies with equal force here:

> A defendant may not escape FDUTPA liability under Florida law merely because a deceptive or misleading statement later turns out to be true. ***The injury occurs at the point of sale because the false statement allows the seller to command a premium on the sales price.*** A vehicle that the manufacturer knows to be safe is more valuable than a vehicle that the manufacturer perhaps anticipates will later be declared safe. Because General Motors could only anticipate five-star safety ratings at the time of sale to class members, it caused actual damages within the meaning of FDUTPA by presenting those ratings as confirmed fact.

*Id.* (emphasis added).

This Court reasoned in its recent Order, however, that the post-sale event in *Carriuolo* was distinguishable from a full repair because the vehicles "received a four-star rating in one category, and thus the sticker remained inaccurate, and the misrepresentation was not remedied." (ECF No. 4471 at 14.)  But that is not what the Eleventh Circuit said.  The Eleventh Circuit rejected GM's argument "***even if we ignore that General Motors displayed a five-star rating for the risk of injury to passengers from frontal impact when in fact the NHTSA awarded only four stars for that category***."  *Carriuolo*, 823 F.3d at 987 (emphasis added).  So, this Court's basis for distinguishing *Carriuolo* is a fact that the Eleventh Circuit specifically "ignore[d]" when concluding that GM used the "wrong metric" for damages under FDUTPA.  *Id.*

Nor is there a valid reason to distinguish *Carriuolo* on the grounds that it did not involve the replacement of a defective part, as FCA incorrectly suggested to the Court (ECF No. 4307 at 41).  The point is that "a defendant may not escape FDUTPA liability under Florida law merely because a deceptive or misleading statement later turns out to be true" due to a post-sale event— i.e., the belated testing in *Carriuolo*, and the recall repair here.  *Id.*  The *Carriuolo* plaintiffs purchased a vehicle that later received safety ratings matching those (under the Eleventh Circuit's explicit assumption) that GM promised at the point of sale.  Because this post-sale remedy in *Carriuolo*, which is akin to the recall repair here, was insufficient to provide the *Carriuolo* plaintiffs with the benefit of their bargain, the recall here could not have provided Plaintiffs—who were stuck with an unsafe airbag for years, if not more than a decade—with the full benefit of their bargain.  In both instances, even though the vehicles would "later be declared safe," the "injury occurs at the point of sale because the false statement [about the vehicle's safety] allows the seller to command a premium on the sales price."  *Id.*

In short, this Court's ruling granting summary judgment on Plaintiffs' FDUTPA claims directly clashes with this Court's own decision in *Cardenas*, 2021 WL 5811741, at *5, binding precedent from Florida's intermediate appellate courts, and the Eleventh Circuit's decision in *Carriuolo*, 823 F.3d at 987. Permitting an automaker to conceal a defect and overcharge consumers for more than a decade and then avoid FDUTPA damages by offering repairs only after getting caught and years after the sale would contravene "the expanded remedies granted to consumers under this legislatively created scheme," *Delgado*, 693 So. 2d at 609. Respectfully, therefore, the Florida Plaintiffs request that the Court vacate summary judgment on Plaintiffs' FDUTPA claims.

**II.    The Court Should Reconsider and Vacate Summary Judgment On Certain Statutory Claims Under California, Illinois, Michigan, and New York Law.**

As the Court correctly recognized, the impact of Defendants' recalls on Plaintiffs' damages "is a matter of state law." (ECF No. 4471 at 6.) Thus, the language of the applicable state statutes and binding decisions of the state appellate courts should govern. *See Lama*, 633 F.3d at 1348. Under these authorities, Defendants' recalls did not eliminate Plaintiffs' legally recoverable damages for certain claims under the laws of four states: California, Illinois, Michigan, and New York law, as explained below.[3]

**California**. The recalls did not eliminate Plaintiffs' damages under the California Legal Remedies Act, Cal. Civ. Code § 1750, or the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791. Both statutes contain provisions detailing the monetary relief available, neither of which limits such relief to the cost of repair.

---

[3] While Plaintiffs respectively disagree with the Court's decision on summary judgment as to all claims, and thus expressly preserve our appellate rights, this motion is limited to a narrow set of claims.

The provision applicable to damages under the California Legal Remedies Act states:

> One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction . . . .

Cal. Civ. Code § 3343.  Applying this provision, California's appellate courts have held that, "[w]hile cost of repairs has some probative worth on the issue of value, it is not of itself the proper measure of damages." *Cent. Mut. Ins. Co. v. Schmidt*, 313 P.2d 132, 135–36 (Cal. Ct. App. 1957).

Likewise, the Song-Beverly Act allows plaintiffs to recover

> the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

Cal. Com. Code § 2714(2).  In addition to these damages, the Act provides that "the measure of damages shall include the cost of repairs necessary to make the goods conform."  Cal. Civ. Code § 1793.2(B).  Thus, under the plain language of the statute, "the cost of repairs" is an ***additional*** form of damages, not a limit on recoverable damages.  Indeed, just last week, an intermediate California appellate court rejected FCA's attempt to impose a limit on damages inconsistent with the text of the Song-Beverly Act, regardless of whether it might prevent a double recovery, because the court was "aware of no public policy that requires FCA be compensated for its own willful violation of the law." *Figueroa v. FCA US, LLC*, No. 2D CIV. B306275, 2022 WL 14396640, at *2 (Cal. Ct. App. Oct. 25, 2022), *reh'g denied* (Nov. 14, 2022).

To be sure, the court in *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 226 (S.D.N.Y. 2019), tentatively concluded that a post-sale recall repair "may well also erase those damages entirely" for claims under California law.  But that court made no effort to reconcile its conclusion, which rested on state court decisions concerning non-statutory claims, with the actual

language of the relevant statutes. *Id.* at 225.[4]   Under prevailing California law and the plain

language of the applicable statutes, the cost of repair cannot, as a matter of law, limit recoverable

damages.

**Illinois**.   Controlling Illinois law likewise establishes that Defendants' recall repair does

not eliminate Plaintiffs' damages under the Illinois Consumer Fraud and Deceptive Business

Practices Act, 815 ILCS 505/1 et seq.  In *Dewan v. Ford Motor Co.*, 842 N.E.2d 756 (Ill. App. Ct.

2005), an automaker repaired a defective part without charge, but the court still held that the

plaintiff asserted a viable claim for damages under the statute:

> The complaint alleged that the defect caused the car to be worth less than
> the plaintiff paid for it. ***The fact that the car was repaired does not defeat***
> ***the plaintiff's claim that the defect caused the car to be worth less than***
> ***the plaintiff paid for it.***

*Id.* at 763 (emphasis added).   The case could hardly be more on-point.   Plaintiffs' claims for

damages under the Illinois Consumer Fraud and Deceptive Business Practices Act remain viable

regardless of the recall repair.

**Michigan.**   Under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903,

et seq., the recall repair does not eliminate Plaintiffs' damages for two separate reasons.  First, at

a minimum, the Michigan statute allows for statutory damages of $250, Mich. Comp. Laws §

445.911, which Plaintiffs sought in the operative complaints.  (ECF No. 4024, ¶ 478; ECF No.

4025, ¶ 417; ECF No. 4026, ¶ 698.)  Second, Michigan law provides that the cost of repair is an

---

[4] The *Ignition Switch* court ultimately certified its decision to the Second Circuit for an interlocutory appeal under 28 U.S.C. § 1292(b), concluding that "there [was] a substantial difference of opinion" regarding its ruling. *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019).  The Second Circuit agreed that the district court's ruling met the criteria of § 1292(b) and granted the plaintiffs' petition for an immediate appeal. *Baker v. General Motors, LLC*, No. 19-4314 (2d Cir. Apr. 1, 2020).  Before the Second Circuit could hear the appeal, however, the *Ignition Switch* plaintiffs and GM reached a settlement and thus dismissed the appeal. *Baker v. General Motors LLC*, No. 20-1119 (2d Cir. Feb. 2, 2021).

*alternative* measure of damages, not a limit on recoverable damages. This is clear in a case that the Court cited, *Jordan v. Rynbrandt*, No. 350289, 2021 WL 942502, at \*5 (Mich. Ct. App. Mar. 11, 2021), which explained that, "[i]n the context of fraud or misrepresentation claims, repair or replacement costs [are] . . . an alternate to difference-in-value damages." Likewise, in another case the Court cited, a Michigan appellate court made clear that "the remedial provisions of the MCPA are to be liberally construed to *broaden* the consumer's remedy," and explained that cost of repair was an additional measure of damages, not an exclusive or limiting measure. *Plymouth Pointe Condo. Ass'n v. Delcor Homes-Plymouth Pointe, Ltd.*, No. 233847, 2003 WL 22439654, at \*8 (Mich. Ct. App. Oct. 28, 2003). These authorities provide no support for limiting or eliminating Plaintiffs' damages.

**New York.** Regardless of the impact of the recall on Plaintiffs' benefit-of-the-bargain damages under New York law, the New York General Business Law authorizes statutory damages of $50. N.Y. Gen. Bus. Law § 349 (providing for "an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions"). Plaintiffs have sought such statutory damages in the operative complaints, so Plaintiffs' claims under the New York General Business Law remain viable. (ECF No. 4024, ¶ 536; ECF No. 4025, ¶ 502; ECF No. 4026, ¶ 765.)

## III. The Court Should Reconsider Its Ruling on Class Standing.

Early in the MDL, this Court agreed with Defendants that "[a] named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise." (ECF No. 975 at 7.) The Court, therefore, dismissed claims pursuant to state laws under which no named Plaintiffs' claims arose. (*E.g.*, ECF No. 3838 at 9; ECF No. 3839 at 8; ECF No. 3834 at 10.) And the Court made clear that Plaintiffs would not be permitted to certify claims on behalf of putative class members under the laws of any states

other than those of the class representatives.  (ECF No. 4334 at 2.)  Plaintiffs therefore limited their motions for class certification to statewide classes with representatives who purchased vehicles in those particular states.  (*Id.*)

In a decision issued earlier this month, however, the Eleventh Circuit clarified the law on class standing.  In *In re Zantac (Ranitidine) Prod. Liab. Litigation*, No. 21-10335, 2022 WL 16729170, at *4 (11th Cir. Nov. 7, 2022), the district court ruled, just as this Court did, that the plaintiffs lacked standing to raise claims on behalf of class members under the laws of states in which no named plaintiff purchased the defective product.  *Id.* The Eleventh Circuit held that the district court erred, observing that "all circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not Article III." *Id.* at *6.  Thus, the Eleventh Circuit concluded that the plaintiffs had Article III standing to assert claims "on behalf of class members who [purchased defective products] in other states," and such claims "need not be stricken or disregarded, as those claims may be considered when determining the appropriateness of class certification under Rule 23." *Id.* at *6 (internal quotation marks omitted).

In light of the Eleventh Circuit's clarification of the law on this significant issue, Plaintiffs respectfully request an opportunity to modify their class certification motions to include the claims of putative class members under the laws of certain states other than those in which the remaining named Plaintiffs purchased their Class Vehicles.  For example, one of Plaintiffs' remaining claims against all three Defendants for which Plaintiffs have sought class certification is a fraud claim under Georgia law.  Based on the Eleventh Circuit's decision in *Zantac*, 2022 WL 16729170, at *6, the Georgia Plaintiffs also have standing to assert claims on behalf of putative class members in states with similar fraud laws, such as Oregon and West Virginia.  *See Amin v. Mercedes-Benz*

*USA, LLC*, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018) ("The tort of fraud has five elements: (1) [] omission of a material fact [which the party is under the obligation to communicate]; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages.") (internal quotation marks omitted); *Strawn v. Farmers Ins. Co. of Oregon*, 258 P.3d 1199, 1209 (Or. 2011) ("The essential elements of a common-law fraud claim are: the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance."); *Gaddy Engr. Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 576, n.26 (W. Va. 2013) ("The elements of fraudulent misrepresentation are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.").

Because the *Zantac* decision represents a significant intervening precedent that conflicts with the Court's prior ruling on class standing, Plaintiffs respectfully submit that reconsideration of the issue is warranted.

## Conclusion

For the foregoing reasons, Plaintiffs, most respectfully, request that the Court reconsider its order on summary judgment as to the Florida Plaintiffs' FDUTPA claims, as well as Plaintiffs' claims under the California Legal Remedies Act, California Song-Beverly Consumer Warranty Act, Illinois Consumer Fraud and Deceptive Business Practices Act, Michigan Consumer Protection Act, and New York General Business Law. In addition, Plaintiffs most respectfully request that the Court reconsider its prior ruling on class standing and permit Plaintiffs to seek

class certification on behalf of putative class members in certain states other than those of the remaining named Plaintiffs.

**Request for Oral Argument**

Plaintiffs respectfully request the opportunity to address the very important issues raised in this motion at oral argument.  Since the issues are potentially case-dispositive as to the claims of millions of class members, including hundreds of thousands of Floridians, Plaintiffs respectfully submit that the extra scrutiny that oral argument affords is warranted.  Although the general issue of damages was briefly addressed at the recent hearing on October 21, 2022, the specific issue of whether the law of particular states bars Plaintiffs' benefit-of-the-bargain damages was neither identified in the Court's pre-hearing notice (ECF No. 4417) nor fully addressed at the hearing. Plaintiffs would therefore welcome and appreciate an opportunity to address these issues in detail at oral argument.

Dated: November 23, 2022

Respectfully submitted,

**PODHURST ORSECK, P.A.**

/s/ Peter Prieto
Peter Prieto (FBN 501492)
Aaron S. Podhurst (FBN 63606)
Stephen F. Rosenthal (FBN 131458)
John Gravante (FBN 617113)
Matthew P. Weinshall (FBN 84783)
Alissa Del Riego (FBN 99742)
SunTrust International Center
One S.E. Third Ave., Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
Email:
apodhurst@podhurst.com
srosenthal@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com

***Chair Lead Counsel for Plaintiffs***

| | |
|---|---|
| **COLSON HICKS EIDSON**<br>Lewis S. "Mike" Eidson<br>mike@colson.com<br>Curtis Bradley Miner<br>curt@colson.com<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134<br>T: 305-476-7400<br><br>*Plaintiffs' Personal Injury Track Lead Counsel* | **SMITH LACIEN LLP**<br>Todd A. Smith<br>tsmith@smithlacien.com<br>70 W Madison St Suite 5770,<br>Chicago, IL 60602<br>(312) 509-8900<br><br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* |
| **BOIES SCHILLER & FLEXNER LLP**<br>David Boies, Esq.<br>Motty Shulman (Fla Bar. No. 175056)<br>333 Main Street<br>Armonk, NY 10504<br>Tel:  (914) 749-8200<br>Fax: (914) 749-8300<br>Email: dboies@bsfllp.com<br>　　　mshulman@bsfllp.com<br><br>Stephen N. Zack (Fla. Bar No. 145215)<br>100 Southeast 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel:  (305) 539-8400<br>Fax:  (305) 539-1307<br>Email: szack@bsfllp.com<br>　　　mheise@bsfllp.com<br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* | **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**<br>Elizabeth Cabraser<br>ecabraser@lchb.com<br>275 Battery St., Suite 3000<br>San Francisco, CA 94111-3339<br>T:    415-956-1000<br><br>David Stellings<br>250 Hudson Street, 8th Floor<br>New York, NY 10012<br>212-355-9500<br>dstellings@lchb.com<br><br>*Plaintiffs' Steering Committee* |

16

| **CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC**<br>James E. Cecchi<br>jcecchi@carellabyrne.com<br>5 Becker Farm Road<br>Roseland, NJ 07068-1739<br>T: 973 994-1700<br>f: 973 994-1744<br><br><br>*Plaintiffs' Steering Committee* | **BARON & BUDD, PC**<br>Roland Tellis<br>rtellis@baronbudd.com<br>David Fernandes<br>dfernandes@bardonbudd.com<br>Mark Pifko<br>mpifko@baronbudd.com<br>15910 Ventura Blvd.,<br>Suite 1600<br>Encino, CA 91436<br>T: 818-839-2333<br><br>J. Burton LeBlanc<br>9015 Bluebonnet Blvd.<br>Baton Rouge, LA 70810<br>T: 225-761-6463<br><br><br>*Plaintiffs' Steering Committee* |
| --- | --- |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 23, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Peter Prieto*
   Peter Prieto