## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION | MDL No. 2599 |
| THIS DOCUMENT RELATES TO ALL ECONOMIC LOSS CASES and: | Master File No.15-2599-MD-MORENO |
| | S.D. Fla. Case No. 1:14-cv-24009-FAM (Economic Loss Track) |
| STEPHANIE PUHALLA, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| VOLKSWAGEN AKTIENGESELLSCHAFT, VOLKSWAGEN GROUP OF AMERICA, AUDI AKTIENGESELLSCHAFT, AUDI OF AMERICA, LLC, MERCEDES-BENZ USA, LLC, and DAIMLER AG, | |
| Defendants. | |

## MERCEDES-BENZ USA, LLC'S OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

WHITE & CASE, LLP
200 South Biscayne Blvd., Suite 4900
Miami, Florida  33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

WINSTON & STRAWN LLP
101 California Street, Suite 3500
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Attorneys for Defendant*
*Mercedes-Benz USA, LLC*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    I.    **A FREE REPLACEMENT AIRBAG SYSTEM HAS BEEN MADE AVAILABLE TO PLAINTIFFS AND ALL PUTATIVE CLASS MEMBERS** ...................................................................................................2

    II.    **THERE IS NO PROOF, MUCH LESS COMMON PROOF, THAT MBUSA HAD ANY KNOWLEDGE OF THE ALLEGED "DEFECT"** .....3

    III.    **PLAINTIFFS' STATEMENT OF FACTS DEMONSTRATES THE LACK OF REQUIRED COMMON, CLASSWIDE PROOF** ......................4

        A.    No Common Proof of Misrepresentations ...............................4

        B.    No Common, Classwide Proof MBUSA Owed a Duty to Disclose .......6

CHOICE OF LAW ...................................................................................................7

ARGUMENT ...................................................................................................7

    I.    **PLAINTIFFS DO NOT MEET ADEQUACY OR TYPICALITY REQUIREMENTS** ...................................................................................................8

        A.    Plaintiffs Cannot Serve as Class Representatives Because They Have No Viable Claims ...................................................................9

        B.    Plaintiffs Are Subject to Individualized Defenses .................................10

        C.    The Named Plaintiffs Cannot "Represent" Class Members with Claims Under Other States Laws without Violating the Rules Enabling Act ...................................................................11

    II.    **PLAINTIFFS FAIL TO PROVE ASCERTAINABILITY IN SEVERAL DIFFERENT WAYS, EACH REQUIRING DENIAL OF THEIR MOTION** ...................................................................12

        A.    Plaintiffs Do Not Prove That IHS Data Will Establish the Facts Necessary for Membership in Their Convoluted Classes ....................12

        B.    Plaintiffs' Proposed Classes Also Fail to Meet Ascertainability Requirements Because They Are Impermissibly Overbroad in Various Ways ...................................................................13

        C.    Individualized Inquiries on Threshold Questions (e.g., "Consumer" Status) Also Preclude Certification of Many Claims ...........................15

    III.    **PLAINTIFFS FAIL TO PROVE NUMEROSITY FOR THEIR MYRIAD CLASSES** ...................................................................16

    IV.    **PLAINTIFFS FAIL TO PROVE COMMONALITY OR PREDOMINANCE** ...................................................................17

        A.    No Common, Classwide Evidence of a Defect ....................................18

B.     No Common, Classwide Evidence to Support Certification of Plaintiffs' Fraud-Based Claims, Which Are Awash in Individualized Issues .................................................................................. 22

     1.     Plaintiffs Fail to Prove Predominance as to Their Fraud-Based Claims ................................................................ 22

     2.     Plaintiffs Fail to Offer Common, Classwide Proof of MBUSA's Knowledge of the Alleged Defect .......................... 23

     3.     Highly Individualized Issues of Reliance Defeat Predominance for the Fraud and Consumer Protection Claims ............................................................................ 24

     4.     Plaintiffs Cannot Use a Presumption to Establish Reliance ..... 25

     5.     Plaintiffs Do Not Prove Commonality and Predominance for Their Common Law Fraud Claims and the Consumer Protection Claims in GA, NC, ME, OR, RI, and WA .............. 28

     6.     Individualized Issues of Causation and Injury Defeat Commonality and Predominance for Consumer Protection Claims in CT, HI, ME, NE, NH, OK, OR, VT, and WA ......... 31

C.     Plaintiffs' Implied Warranty Claims Cannot Be Certified .................. 33

     1.     Individualized Issues of Manifestation Preclude Certification . 33

     2.     Individualized Issues of Merchantability Defeat Predominance .......................................................... 34

D.     Plaintiffs Fail to Carry Their Burden of Proving the New States' Laws Are Substantially Similar ...................................................... 35

     1.     There Are Material Differences Between the Rhode Island Consumer Protection Statute and the Applicable Statutes in the New States .......................................................... 37

     2.     There Are Material Differences Between the Laws of Georgia, North Carolina, Rhode Island, and the New States Concerning Fraud .................................................... 43

**V.    PLAINTIFFS FAIL TO ESTABLISH SUPERIORITY** ............................ 48

**VI.   PLAINTIFFS DO NOT PROFFER ANY VIABLE METHODOLOGY FOR PROVING DAMAGES ON A CLASSWIDE BASIS** ...................... 50

A.     Dubé's Model Is Not Proper Classwide Proof of "Overpayment" Damages ................................................................................ 51

     1.     Dubé's Model Fails to Account for the Impact of Post-Sale Events on Plaintiffs' Benefit-of-the-Bargain Damages Theory .............................................................................. 51

     2.     Dubé's Model Also Fails to Account for Other Differences Among Various Class Members ............................ 52

        B.     Dubé's Model Also Is Not Proper Classwide Proof Because It Does Not Calculate the Legally Relevant Measure of Damages ...................53

**CONCLUSION** ..............................................................................................................54

**CERTIFICATE OF SERVICE** ..........................................................................................55

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)............................................................................25

*Ace Tree Surgery, Inc. v. Terex S.D., Inc.*,
332 F.R.D. 402 (N.D. Ga. 2019)..................................................................13, 29

*Allen v. FCA US LLC*,
2017 WL 1957068 (W.D. Va. May 10, 2017) .....................................................30

*Am. Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013)............................................................................................8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................12

*Anderson v. Kriser*,
266 P.3d 819 (Utah 2011)......................................................................................47

*Armed Forces Ins. Exch. v. Harrison*,
70 P.3d 35 (Utah 2003)...................................................................................23, 45

*Auto Ventures v. Moran*,
1997 WL 306985 (S.D. Fla. Apr. 3, 1997) ..........................................................11

*Bailey v. Monaco Coach Corp.*,
350 F. Supp. 2d 1036 (N.D. Ga. 2004) ................................................................19

*Bank of Red Bay v. King*,
482 So. 2d 274 (Ala. 1985)...................................................................................47

*Barfield v. Hall Realty, Inc.*,
232 P.3d 286 (Colo. App. 2010).....................................................................28, 45

*Bennett v. Kiggins*,
377 A.2d 57 (D.C. 1977) ..........................................................................45, 46, 47

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.*,
22 F. Supp. 3d 1126 (D. Or. 2014) .......................................................................16

*Bishop v. Saab Auto.*,
1996 WL 33150020 (C.D. Cal. Feb. 16, 1996).....................................................15

v

*Bowens v. Allied Warehousing Servs., Inc.*,
  729 S.E.2d 845 (W. Va. 2012) ...................................................................45

*Braverman v. BMW of N. Am., LLC*,
  2020 WL 6532874 (C.D. Cal. May 19, 2020) .................................36, 37

*Bristol Bay Prods., LLC v. Lampack*,
  312 P.3d 1155 (Colo. 2013) ......................................................................23

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ............................................28, 29, 44, 46

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ..........................................1, 8, 25, 34

*Brown v. First Capital Sur. & Trust Corp.*,
  2011 WL 6032714 (Wis. App. Dec. 6, 2011) ...........................................47

*Buck v. The Rsrv.*,
  947 N.W.2d 225 (Iowa Ct. App. 2020)....................................................23

*Bushbeck v. Chi. Title Ins. Co.*,
  2011 WL 131000725 (W.D. Wash. Aug. 15, 2011) ................................31

*Butler v. Porsche Cars N. Am., Inc.*,
  2017 WL 1398316 (N.D. Cal. Apr. 19, 2017) .........................22, 28, 31

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ..................................................................22

*Butler v. Mattel, Inc.*,
  2014 WL 764514 ......................................................................................22

*C & G Realty, LLC v. Salvatore*,
  2015 WL 3923346 (R.I. Super. Jun. 19, 2015).......................................47

*Califano v. Yamasaki*,
  442 U.S. 682 (1979)..................................................................................52

*Cardenas v. Toyota Motor Corp.*,
  2021 U.S. Dist. LEXIS 168176 (S.D. Fla. Sept. 2, 2021) .................32, 53

*Cardenas v. Toyota Motor Corp.*,
  418 F. Supp. 3d 1090 (S.D. Fla. 2019) ...................................................48

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013)...............................................................12, 22

*Carrera v. UPS Supply Chain Sols., Inc.*,
    2012 WL 12860910 (S.D. Fla. Sept. 21, 2012) ........................................................36

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ........................................................................30

*CC Invs. Corp. v. Raytheon Co.*,
    2005 WL 1026904 (D. Del. Apr. 22, 2005) ........................................................45

*Cervantes v. CRST Int'l Inc.*,
    2022 WL 2130811 (N.D. Iowa June 14, 2022) ................................................28, 45

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2021) ...............................................................12, 14, 15

*Childers v. Menard, Inc.*,
    2020 WL 5303934 (W.D. Wis. Sept. 4, 2020) ........................................................23

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998) .............................................................28, 46, 50

*City of St. Petersburg v. Total Containment, Inc.*,
    265 F.R.D. 630 (S.D. Fla. 2010) ........................................................................8

*Cleveland Air Serv. v. Pratt & Whitney Can.*,
    2016 WL 4179987 (N.D. Miss. Aug. 5, 2016) ........................................................11

*Coffey v. WCW & Air, Inc.*,
    2020 WL 3250744 (N.D. Fla. Mar. 25, 2020) ........................................................30

*Cohen v. Subaru of Am., Inc.*,
    2022 WL 714795 (D.N.J. Mar. 10, 2022) ........................................................42

*Cohen v. Subaru of Am., Inc.*,
    2022 WL 721307 (D.N.J. Mar. 10, 2022) ........................................................52

*Cohn v. Massachusetts Mut. Life Ins. Co.*,
    189 F.R.D. 209 (D. Conn. 1999) ........................................................................32

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .............................................................................8, 50, 54

*Contos v. Wells Fargo Escrow Co., Ltd. Liab. Co.*,
    2010 WL 2679886 (W.D. Wash. July 1, 2010) ........................................................29

*Cooper v. S. Co.*,
    390 F.3d 695 (11th Cir. 2004) ........................................................................49

*Corder v. Ford Motor Co.*,
    283 F.R.D. 337 (W.D. Ky. 2012)...........................................................................12, 41

*Corder v. Ford Motor Co.*,
    297 F.R.D. 572 (W.D. Ky. 2014)...................................................................................16

*Cox v. Johnston*,
    484 P.2d 116 (Colo. App. 1971) ....................................................................................45

*Cty. Rd. Baldwyn v. Manchester Anika, LLC*,
    2019 WL 3806376 (N.D. Miss. Aug. 13, 2019) ............................................................23

*Cummings v. Carroll*,
    866 S.E.2d 675 (N.C. 2021)...........................................................................................46

*D'Ercole Sales v. Fruehauf Corp.*,
    501 A.2d 990 (N.J. App. 1985).......................................................................................37

*Daigle v. Ford Motor Co.*,
    2012 WL 3113854 (D. Minn. July 31, 2012) .................................................................50

*Dalton v. Ford Motor Co.*,
    2002 WL 338081 (Del. Super. Feb. 28, 2002)...............................................................48

*Darisse v. Nest Labs, Inc.*,
    2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ....................................................40, 42, 45

*Darne v. Ford Motor Co.*,
    2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) .................................................................44

*Decker v. Mazda Motor of Am., Inc.*,
    2013 WL 12129281 (C.D. Cal. Mar. 29, 2013) .............................................................45

*Dep't of Agric. & Consumer Servs. v. Polk*,
    568 So. 2d 35 (Fla. 1990)...............................................................................................53

*Doll v. Chi. Title Ins. Co.*,
    246 F.R.D 683 (D. Kan. 2007)........................................................................................40

*Donoff v. Delta Air Lines, Inc.*,
    2020 WL 3268272 (S.D. Fla. Jan. 24, 2020) .................................................................17

*Drake v. Allergan, Inc.*,
    63 F. Supp. 3d 382 (D. Vt. 2014)....................................................................................31

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
    431 U.S. 395 (1977)..........................................................................................................9

*Ebin v. Kangadis Fam. Mgmt. LLC*,
   45 F. Supp. 3d 395 (S.D.N.Y. 2014)..................................................................................27

*Elchlepp v. Hatfield*,
   294 S.W.3d 146 (Tenn. App. 2008)..................................................................................45

*Ellis v. J.P. Morgan Chase & Co.*,
   2015 WL 9178076 (N.D. Cal. Dec. 17, 2015) ..................................................................22

*Emilio v. Sprint Spectrum L.P.*,
   2017 WL 3208535 (S.D.N.Y. July 27, 2017) ...................................................................11

*Ex parte Gov't. Empls. Ins. Co.*,
   729 So. 2d 299 (Ala. 1999).............................................................................................25

*Ex parte Household Retail Servs. Inc.*,
   744 So. 2d 871 (Ala. 1999)..............................................................................28, 29, 46, 49

*FinClusive Capital, Inc. v. Q2 Software, Inc.*,
   2021 WL 5225860 (Del. Super. Oct. 28, 2021)................................................................47

*Ford Motor Co. v. Fairley*,
   398 So. 2d 216 (Miss. 1981)............................................................................................35

*Ford Motor Co. v. Rice*,
   726 So. 2d 626 (Ala. 1998)..............................................................................................48

*Francisco v. United States Marshals Serv.*,
   2014 WL 652147 (D.R.I. Feb. 19, 2014)....................................................................23, 26

*Frank v. DaimlerChrysler Corp.*,
   292 A.D.2d 118 (N.Y. Ct. App. Mar. 28, 2002) ..............................................................42

*Freebirds v. Coca-Cola Co.*,
   2023 WL 227629 (Ga. App. Jan. 18, 2023)................................................................28, 46

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
   304 F.R.D. 601 (D. Colo. 2015) ......................................................................................28

*Gaffin v. Teledyne, Inc.*,
   611 A.2d 467 (Del. 1992) ..............................................................................28, 29, 45, 46

*Garcia v. Medved Chevrolet, Inc.*,
   240 P.3d 371 (Colo. App. 2009), *aff'd*, 263 P.3d 92 (Colo. 2011)..................................44, 46

*Gartin v. S&M Nutec*,
   245 F.R.D. 429 (C.D. Cal. 2007) .....................................................................................33

*Gelfound v. Metlife Ins. Co. of Conn.*,
313 F.R.D. 674 (S.D. Fla. 2016).........................................................................36, 37

*Gianino v. Alacer Corp.*,
846 F. Supp. 2d 1096 (C.D. Cal. 2012) ............................................39, 40, 43, 47

*Goers v. L.A. Entm't Grp., Inc.*,
2017 WL 78634 (M.D. Fla. Jan. 9, 2017)................................................................9

*Gomes v. Portfolio Recovery Assocs., LLC*,
2019 WL 978806 (S.D. Fla. Feb. 28, 2019) .........................................................22

*Gray v. Bayer Corp.*,
2011 WL 2975768 (D.N.J. July 21, 2011)............................................................42

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
242 F.R.D. 568 (W.D. Wash. 2007) ...............................................................23, 27

*Guilbeault v. R.J. Reynolds Tobacco Co.*,
84 F. Supp. 2d 263 (D.R.I. 2000) .........................................................................46

*Haag v. Hyundai Motor Am.*,
330 F.R.D. 127 (W.D.N.Y. 2019)..........................................................................25

*Halpert v. Rosenthal*,
267 A.2d 730 (R.I. 1970) ......................................................................................45

*Hammerschmidt v. GM LLC*,
538 F. Supp. 3d 1215 (D. Minn. 2022)..................................................................44

*Harris v. Bradley Mem. Hosp. & Health Ctr., Inc.*,
994 A.2d 153 (Conn. 2010) ..................................................................................31

*Harris v. Nortek Glob. HVAC LLC*,
2016 WL 4543108 (S.D. Fla. Jan. 29, 2016)...................................................14, 22

*Hasemann v. Gerber Prods. Co.*,
2016 WL 547759 (E.D.N.Y. Sep. 28, 2016).....................................................28, 46

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013)..................................................................................17

*Heater v. Gen. Motors, LLC*,
568 F. Supp. 3d 626 (N.D.W. Va. 2021) ..............................................................39

*Heffner v. Blue Cross & Blue Shield of Ala., Inc.*,
443 F.3d 1330 (11th Cir. 2006) ................................................................25, 29, 46

*Henderson v. Henderson*,
   495 S.E.2d 496 (Va. 1998)............................................................................................29, 46

*Herring v. Sec'y, Dep. of Corr.*,
   397 F.3d 1338 (11th Cir. 2005) ...................................................................................22

*Hiller v. Hailey*,
   915 S.W.2d 800 (Tenn. App. 1995)............................................................................29, 46

*Hinkle v. Safe-Guard Prods. Int'l, LLC*,
   839 F. App'x 770 (4th Cir. 2020) ..............................................................................23

*Horst v. Finnigan*,
   2007 WL 2985063 (Wash. Ct. App. Oct. 15, 2007) ..................................................23

*Hudgins v. Wagoner*,
   694 S.E.2d 436 (N.C. Ct. App. 2010) ........................................................................45

*In re Aqua Dots Prods. Liab. Litig.*,
   654 F.3d 748 (7th Cir. 2011) ......................................................................................50

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
   2017 WL 2501756 (N.D. Ga. Jun. 9, 2017)................................................................31

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
   325 F.R.D. 529 (D. Mass. Aug. 15, 2017)..................................................................32

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
   251 F.R.D. 689 (N.D. Ga. 2008).................................................................................50

*In re Cook*,
   2017 WL 532286 (Bankr. M.D.N.C. Feb. 9, 2017) ...................................................47

*In re Egidi*,
   571 F.3d 1156 (11th Cir. 2009) ..................................................................................37

*In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
   2020 WL 1873989 (D. Kan. Feb. 27, 2020) ..............................................................38

*In re Ford Motor Co. Bronco II Litig.*,
   177 F.R.D. 360 (E.D. La. 1998)..............................................................................28, 46

*In re Ford Motor Co. Vehicle Paint Litig.*,
   182 F.R.D. 214 (E.D. La. 1998)...........................................................................28, 45, 46

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ............................................................42

*In re Guardianship of A.T.I.G.*,
   293 P.3d 276 (Utah 2012) ...........................................................................47

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002) .........................................................................40

*In re Metro. Secs. Litig.*,
   2009 WL 36776 (E.D. Wash. Jan. 6, 2009) ................................................26

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. 2021) .................................................................38

*In re OnStar Contract Litig.*,
   278 F.R.D. 352 (E.D. Mich. 2011) ........................................................15, 16

*In re Panacryl Sutures Prods. Liab. Cases*,
   263 F.R.D. 312 (E.D.N.C. 2009) ..................................................................48

*In re Takata Airbag Prod. Liab. Litig.*,
   193 F. Supp. 3d 1324 (S.D. Fla. 2016) ...................................................18, 33

*In re Takata Airbag Prod. Liab. Litig.*,
   2016 WL 6072406 (S.D. Fla. Oct. 14, 2016) ...............................................33

*In re Takata Airbag Prod. Liab. Litig.*,
   2017 WL 2406711 (S.D. Fla. June 1, 2017) ................................................33

*In re Takata Airbags Prods. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) .........................................................14

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
   325 F.R.D. 136 (D.S.C. 2018) ......................................................................29

*In re Toyota Motor Corp. Unintended Accel. Mktg.*,
   2012 U.S. Dist. LEXIS 189744 (C.D. Cal. May 4, 2012) ......................34, 52

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
   534 F. Supp. 3d 1067 (N.D. Cal. 2021) ........................................................41

*J.E. Robert Co. v. J. Robert Co.*,
   231 Va. 338 (1986) .......................................................................................47

*James v. GMAC Mortg. LLC*,
   772 F. Supp. 2d 307 (D. Me. 2011) ..............................................................31

*Jamie S. v. Milwaukee Pub. Sch.*,
   668 F.3d 481 (7th Cir. 2012) ........................................................................21

*Jarman v. United Indus. Corp.*,
  98 F. Supp. 2d 757 (S.D. Miss. 2000)............................................................34, 35

*Jefferson v. Collins*,
  905 F. Supp. 2d 269 (D.D.C. 2012) ....................................................................44

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
  285 F.R.D. 573 (E.D. Cal. 2012) ..................................................................16, 50

*Kanne v. Visa U.S.A. Inc.*,
  723 N.W.2d 293 (Neb. 2006)...............................................................................31

*Kaplan v. Morgan Stanley & Co.*,
  987 A.2d 258 (Vt. 2009) ......................................................................................40

*Keenan v. MBUSA et al.*,
  No. 58-18 (Albany Cnty. Ct. July 26, 2018).......................................................50

*Kellogg v. Key Bank (In re Kellogg)*,
  166 B.R. 504 (Bankr. Conn. 1994) ......................................................................40

*Kelly v. Beliv LLC*,
  2022 WL 16836985 (S.D.N.Y. Nov. 9, 2022).....................................................39

*Kennedy v. Acura & Am. Honda Motor Co.*,
  2002 WL 31331373 (R.I. Super. Ct. Aug. 28, 2002).....................................11, 38

*Kensington Dev. Corp. v. Israel*,
  419 N.W.2d 241 (Wis. 1988)...............................................................................45

*Kia Motors Am. Corp. v. Butler*,
  985 So. 2d 1133 (Fla. 3d DCA 2008) ..................................................................50

*King v. United States Bank Nat'l Ass'n*,
  2013 WL 4718342 (N.D. Ga. Sep. 3, 2013) ........................................................23

*Kingsbury v. U.S. Greenfiber, LLC*,
  2013 WL 12114077 (C.D. Cal. Nov. 5, 2013)......................................................11

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) ........................................................................26

*Laccinole v. Assad*,
  2016 WL 868511 (D.R.I. Mar. 7, 2016) ..............................................................38

*Landen v. Electrolux Home Prods.*,
  2014 WL 2980977 (C.D. Cal. July 1, 2014).................................................18, 33

*Larsen v. Vizio, Inc.*,
  2017 WL 3084273 (C.D. Cal. June 26, 2017) ......................................................42

*Lee Cty. Mental Health Ctr., Inc. v. Lee Cty. Bd. of Sup'rs*,
  2000 WL 1288873 (Iowa Ct. App. Sept. 13, 2000).............................................25

*Lewis Tree Serv. v. Lucent Techs., Inc.*,
  211 F.R.D. 228 (S.D.N.Y. 2002) ........................................................................33

*Lima v. Deutsche Bank Nat'l Trust Co.*,
  2021 WL 4722949 (D. Haw. Oct. 8, 2021) .........................................................31

*Lissys Cortes v. Honeywell Bldg. Sols. Ses Corp.*,
  2014 WL 11958626 (S.D. Fla. Sept. 24, 2014) .....................................................9

*Little v. T-Mobile USA, Inc.*,
  691 F.3d 1302 (11th Cir. 2012) ..........................................................................12

*Lloyd v. Gen. Motors Corp.*,
  266 F.R.D. 98 (D. Md. 2010)...............................................................................45

*Long v. Dell, Inc.*,
  93 A.3d 988 (R.I. 2014) .......................................................................................29

*Longden v. Sunderman*,
  123 F.R.D. 547 (N.D. Tex. 1988) ........................................................................26

*Lowe v. Philip Morris USA, Inc.*,
  207 Or. App. 532 (2006).......................................................................................11

*Lucky v. Bd. of Regents*,
  1981 WL 234 (S.D. Fla. June 29, 1981) ................................................................9

*Lynn v. Philip Morris U.S.*,
  163 A.3d 91 (Del. Super. Ct. 2017) .....................................................................32

*Mabus v. St. James Episcopal Church*,
  13 So. 3d 260 (Miss. 2009)..................................................................................26

*MacFadden v. Louf*,
  182 N.C. App. 745 (N.C. Ct. App. 2007) ............................................................26

*Mack v. Gen. Motors Acceptance Corp.*,
  169 F.R.D. 671 (M.D. Ala. 1996)........................................................................44

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012)...........................................................................32, 33

*Martin v. Ford Motor Co.*,
  292 F.R.D. 252 (E.D. Pa. 2013)......................................................................51

*Martinez v. Nash Finch Co.*,
  2013 WL 1313921 (D. Colo. Jan. 30, 2013)..................................................25

*Mason v. Chrysler Corp.*,
  653 So. 2d 951 (Ala. 1995)............................................................................44

*Mateo v. V.F. Corp.*,
  2009 WL 3561539 (N.D. Cal. Oct. 27, 2009).................................................11

*Matter of Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) .........................................................................45

*McCabe v. Daimler AG*,
  160 F. Supp. 3d 1337 (N.D. Ga. 2015) .....................................................10, 44

*McGee v. Mercedes-Benz USA, LLC*,
  612 F. Supp. 3d 1051 (S.D. Cal. Mar. 30, 2020) ....................19, 34, 35, 49

*McKinnon v. Honeywell Int'l, Inc.*,
  977 A.2d 420 (Me. 2009)...............................................................................40

*McLauchlan v. Boyd*,
  2012 WL 13018730 (D. Haw. Apr. 26, 2012) ...............................................40

*Metrocall of Delaware, Inc. v. Cont'l Cellular Corp.*,
  437 S.E.2d 189 (Va. 1993).............................................................................26

*Monopoli v. MBUSA, LLC*,
  2022 WL 409484 (N.D. Ga. Feb. 10, 2022) ..................................................43

*MSP Recovery Claims v. Atl. Specialty Ins. Co.*,
  2021 WL 6750961 (M.D. Fla. Dec. 29, 2021)...............................................13

*Mulligan v. Choice Mortg. Corp. USA*,
  1998 WL 544431 (D.N.H. Aug. 11, 1998) ....................................................31

*Mullins v. Ethicon, Inc.*,
  2017 WL 345865 (S.D.W. Va. Jan. 20, 2017)...............................................39

*Murphy v. Cent. Falls Det. Facility Corp.*,
  2014 U.S. Dist. LEXIS 183690 (D.R.I. Dec. 16, 2014) ...........................16, 19, 50

*Naparala v. Pella Corp.*,
  153 F. Supp. 3d 884 (D.S.C. 2015)................................................................43

*Neale v. Volvo Cars of N. Am., LLC*,
    2017 WL 6055774 (D.N.J. Dec 6, 2017) .............................................................................13

*Nelson v. Lusterstone Surfacing Co.*,
    605 N.W.2d 136 (Neb. 2000).............................................................................................38

*Nichols v. Gen. Motors Corp.*,
    1999 WL 33292839 (N.H. Super. Dec. 13, 1999) ...............................................................42

*O'Shea v. OMi Holdings, Inc.*,
    2021 WL 4290803 (N.D. Ala. Sept. 21, 2021) ....................................................................23

*Odom v. Oliver*,
    310 S.W.3d 344 (Tenn. Ct. App. 2009) ...............................................................................26

*Ohio State Troopers Ass'n v. Point Blank Enters.*,
    481 F. Supp. 3d 1258 (S.D. Fla. 2020), *aff'd*, 2021 WL 4427772 (11th Cir. Sep. 27,
    2021) .................................................................................................................... passim

*Oriental Trading Co., Inc. v. Yagoozon, Inc.*,
    2016 WL 2859603 (D. Neb. 2016) ......................................................................................38

*Owens v. DRS Auto. Fantomworks, Inc.*,
    764 S.E.2d 256 (Va. 2014)...................................................................................................46

*Passman v. Peloton Interactive, Inc.*,
    2023 WL 3195941 (S.D.N.Y. May 2, 2023) ........................................................................49

*Patterson v. Beall*,
    19 P.3d 839 (Okla. 2000).....................................................................................................31

*Paul v. Providence Health-System Oregon*,
    351 Ore. 587, 591-92 (Ore. 2012)........................................................................................31

*Payne v. FujiFilm U.S.A., Inc.*,
    2010 WL 2342388 (D.N.J. May 28, 2010) ...........................................................................52

*Pearson v. Philip Morris, Inc.*,
    2006 WL 663004 (Or. Cir. Feb. 23, 2006) ..........................................................................32

*Peckerar v. GM*,
    2020 WL 5289919 (C.D. Cal. May 27, 2020) ......................................................................51

*Pinon v. Daimler AG*,
    2019 WL 11648560 (N.D. Ga. Nov. 4, 2019) ......................................................................43

*Ponzio v. MBUSA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020) ......................................................................................44

*Porter v. Braskem Am., Inc.*,
    2020 WL 1942310 (S.D. W. Va. Apr. 22, 2020) ..............................................29, 46

*Powers v. Gov't Emps. Ins. Co.*,
    192 F.R.D. 313 (S.D. Fla. 1998) ..................................................................36, 48

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
    132 A.3d 35 (Del. Ch. 2015) ..............................................................................44

*Puhalla v. MBUSA*,
    462 F. Supp. 3d 1304 (S.D. Fla. 2020) ..............................................................30

*Quackenbush v. Am. Honda Motor Co., Inc.*,
    2021 WL 6116949 (N.D. Cal. Dec. 27, 2021) ...............................................24, 27

*Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA*,
    590 N.W.2d 1 (Wis. App. 1998) .........................................................................47

*Ratcliff v. Am. Honda Motor Co., Inc.*,
    2018 WL 342865 (M.D.N.C. Jul. 23, 2018) .......................................................23

*Richmond Metro Auth. V. McDevitt St. Bovis, Inc.*,
    507 S.E. 2d 344 (Va. 1998) ................................................................................23

*Rink v. Cheminova, Inc.*,
    400 F.3d 1286 (11th Cir. 2005) ............................................................................9

*Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*,
    420 P.3d 223 (Colo. 2018) ..................................................................................47

*Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*,
    2020 WL 5816759 (Del. Ch. Sept. 30, 2020) .....................................................23

*Rosen v. Chrysler Corp.*,
    2000 WL 34609135 (E.D. Mich. July 18, 2000) .................................................43

*S. Indep. Bank v. Fred's, Inc.*,
    2019 WL 1179396 (M.D. Ala. Mar. 13, 2019) ...................................................36

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009) .........................................................................50

*Sanchez-Knutson v. Ford Motor Co.*,
    319 F.R.D. 529 (S.D. Fla. 2015) ........................................................................15

*Sanford v. Nat'l Ass'n for the Self-Employed, Inc.*,
    264 F.R.D. 11 (D. Me. 2010) ..............................................................................29

*Sanneman v. Chrysler Corp.*,
　191 F.R.D. 441 (E.D. Pa. 2000)..................................................................................24

*Sater v. Chrysler Grp. LLC*,
　2016 WL 7377126 (C.D. Cal. Oct. 25, 2016)...........................................................51

*Schiff v. Am. Ass'n of Retired Persons*,
　697 A.2d 1193 (D.C. 1997) .......................................................................................25

*Shea v. Best Buy Homes, LLC*,
　533 F. Supp. 3d 1321 (N.D. Ga. 2021) .....................................................................47

*Shelter Ins. Co. v. Ford Motor Co.*,
　2006 WL 318821 (N.D. Miss. Feb. 9, 2006) ............................................................35

*Shiflett v. Viagogo Ent.*,
　2021 WL 4948144 (M.D. Fla. July 16, 2021) ..........................................................48

*Short v. Amerada Hess Corp.*,
　2019 WL 1430106 (D.N.H. Mar. 29, 2019) .............................................................40

*Sikes v. Teleline, Inc.*,
　281 F.3d 1350 (11th Cir. 2002), *abrogated on other grounds by Bridge v. Phoenix Bond &
　Indemn. Co.*, 553 U.S. 639 (2008) ............................................................................26

*Silvious v. Coca Cola Co.*,
　2012 WL 1155214 (N.D.W. Va. Apr. 5, 2012) ........................................................40

*Simmons v. Ford Motor Co.*,
　592 F. Supp. 3d 1262 (S.D. Fla. Mar. 21, 2022), *reconsideration denied*, 2022 WL 3975106
　(S.D. Fla. Aug. 31, 2022)................................................................................... passim

*Sisemore v. Dolgencorp, LLC*,
　212 F. Supp. 3d 1106 (N.D. Okla. 2016)..................................................................42

*Smith v. First Cmty. Bancshares, Inc.*,
　575 S.E.2d 419 (W. Va. 2002)...................................................................................26

*Smith v. Reynolds Metals Co.*,
　497 So. 2d 93 (Ala. 1986)..........................................................................................46

*Smith v. U.S. Bank, N.A.*,
　2017 WL 698530 (S.D. Fla. Feb. 22, 2017) .............................................................36

*Stanaford v. Genovese*,
　2015 WL 4930568 (S.D. Fla. Aug. 17, 2015)............................................................8

*State ex rel. Rosenblum v. Johnson & Johnson,*
    275 Or. App. 23 (2015) ................................................................................10, 23

*State ex rel. Stenberg v. Consumer's Choice Foods, Inc.,*
    755 N.W. 2d 583 (Neb. 2008) ........................................................................38

*Staudt v. Artifex Ltd.,*
    16 F. Supp. 2d 1023 (E.D. Wis. 1998) ...........................................................26

*Steigerwald v. BHH, LLC,*
    2016 WL 695424 (N.D. Ohio Feb. 22, 2016) ......................................24, 27, 39, 50

*Stirman v. Exxon Corp.,*
    280 F.3d 554 (5th Cir. 2002) .........................................................................48

*Stockinger v. Toyota Motor Sales U.S.A., Inc.,*
    2020 WL 1289549 (C.D. Cal. Mar. 3, 2020) ..................................................21

*Strawn v. Farmers Ins. Co.,*
    350 Ore. 336, 358-59 (2011) .........................................................................29

*Strawn v. Farmers Ins. Co. of Oregon,*
    258 P.3d 1199 (Or. 2011) ..............................................................................29

*Sundberg v. TTR Realty, LLC,*
    109 A.3d 1123 (D.C. 2015) ......................................................................23, 47

*Taylor v. Gasor, Inc.,*
    607 P.2d 293 (Utah 1980) .............................................................................26

*Taylor v. Philip Morris Inc.,*
    2001 WL 1710710 (Me. Super. May 29, 2001) ..............................................40

*Telfair v. First Union Mortg. Corp.,*
    216 F.3d 1333 (11th Cir. 2000) .......................................................................9

*Territorial Sav. & Loan Ass'n v. Baird,*
    781 P.2d 452 (Utah Ct. App. 1989) ..........................................................29, 46

*Tershakovec v. Ford Motor Co.,*
    546 F. Supp. 3d 1348 (S.D. Fla. 2021) .............................................5, 23, 24, 27

*Tietsworth v. Harley-Davidson, Inc.,*
    677 N.W.2d 233 (Wis. 2004) ....................................................................43, 48

*TJF Servs. v. Transp. Media,*
    2020 WL 1870768 (E.D.N.C. Feb. 13, 2020) ................................................29

*Torres v. S.G.E. Mgmt., LLC*,
  38 F.3d 629 (5th Cir. 2016) ........................................................................27

*Townhouse Rest. Of Oviedo, Inc. v. NuCO2, LLC*,
  2020 WL 5440581 (S.D. Fla. Sept. 9, 2020) ...........................................14

*Turnbow v. Life Partners, Inc.*,
  2013 WL 3479884 (N.D. Tex. July 9, 2013) ............................................24

*United States v. Goldman*,
  953 F.3d 1213 (11th Cir. 2020) .................................................................53

*United States v. Takata Corp.*,
  No. 2:16-cr-20810, D.E. 23 (E.D. Mich. Feb 27, 2017) ...........................4

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ..........................................................16, 17

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
  643 F. Supp. 2d 1256 (W.D. Wash. 2009)................................................29

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...............................................................................8, 17

*Walewski v. Zenimax Media, Inc.*,
  502 F. App'x 857 (11th Cir. 2012)) .............................................14, 15, 16

*Walker v. Sunrise Pontiac–GMC Truck, Inc.*,
  249 S.W.3d 301 (Tenn. 2008).......................................................23, 48, 49

*Weidenhamer v. Expedia, Inc.*,
  2015 WL 7157282 (W.D. Wash. Nov. 13, 2015) .....................................27

*Weidman v. Ford Motor Co.*,
  2022 WL 1071289 (E.D. Mich. Apr. 8, 2022)......................29, 41, 46, 47

*Wilson v. Johnson*,
  2006 WL 1555809 (W.D. Okla. 2006) ......................................................40

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) .................................................................48

*Yazd v. Woodside Homes Corp.*,
  143 P.3d 283 (Utah 2006).........................................................................44

*Yeti Enters. v. Tang*,
  2017 WL 3478484 (D. Or. Aug. 14, 2017).................................................26

*Zarella v. Minn. Mut. Life Ins. Co.*,
   1999 WL 226223 (R.I. Super. Apr. 14, 1999) ................................................................29, 46

*Zarrella v. Minn. Mut. Life Ins. Co.*,
   824 A.2d 1249 (R.I. 2003) ................................................................................................45

## STATUTES AND RULES

Fed. R. Evid. 301 ................................................................................................................26

Iowa Code §§ 714H.2(4), H.3 & H.7................................................................................16

Me. Rev. Stat. Ann. tit. 5, § 213 ......................................................................................41

N.H. Rev. Stat. §§ 358-A:10-a.........................................................................................42

Neb. Rev. Stat. Ann. § 59-1612 .......................................................................................40

Okla. Stat. tit. 15, § 761.1 ................................................................................................42

R.I. Gen. Laws § 6-13.1-5.2..............................................................................................41

Rules Enabling Act, 28 U.S.C. § 2072(b)........................................................................12

W. Va. Code Ann. 46A-6-106(a)......................................................................................42

## OTHER AUTHORITY

Another State, J.D. POWER (Nov. 10, 2020) ....................................................................13

4243-11, Exponent, Inc., *Investigation of Takata Inflator Ruptures* (July 2016)..........21

## INTRODUCTION

Plaintiffs move to certify a twelve-state common-law fraud class, an eight-state consumer statute class, and five single-state classes, brought under the laws of dozens of states, covering an unknown number of Mercedes-Benz branded vehicles ("MBVs"), ranging from model year 2005 through 2017, and including dozens of different vehicle models.  D.E. 4610 ("Mot.") at 1–2.  Plaintiffs' new motion, filed more than a year after MBUSA demonstrated the deficiencies in their initial certification motion (*see* D.E. 4241), still fails to satisfy the requirements of Rule 23 for multiple fundamental reasons.

Plaintiffs continue to rely almost exclusively on allegations, inferences and presumptions, instead of common evidence showing they meet Rule 23 for a single state, let alone across multiple states.  For example, plaintiffs repeatedly rely on *allegations* from their Second Amended Complaint (D.E. 4026 ("SAC")) for the assertion that "MBUSA falsely advertised that their Class Vehicles were safe."  Mot. at 14 (citing SAC ¶ 105 alleging, "Prior to purchasing the vehicle, Plaintiff viewed and heard advertisements . . ."); *see also id.* at 7 (citing SAC ¶ 87 for assertion that "MBUSA promotes its vehicles' safety").  Similarly, plaintiffs present no evidence showing MBUSA had pre-sale knowledge of the alleged inflator defect, and rely instead on assertions that "MBUSA should have known" of the alleged defect "because of the well-known issues that *other* major automakers had with Takata airbags[.]"  Mot. at 12 (emphasis added); *see also id.* at 11 (relying repeatedly on SAC's allegations about different automakers' experiences with Takata inflators, which plaintiffs speculate MBUSA "was undoubtedly aware of").  But at class certification, allegations are insufficient.  Plaintiffs have "a burden of *proof*, not a burden of pleading."  *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016).  Plaintiffs' reliance on unwarranted "inferences" and "presumptions" (*id.* at 25–26) further underscores their lack of proof.  For this reason alone, there is no proper class action to be certified on the record before this Court.

Separately, the proposed named plaintiffs are not adequate or typical class representatives because, as MBUSA has shown in its prior summary judgment motions (D.E. 4179, D.E. 4495), their own individual claims fail for many reasons, including lack of damages.  Plaintiffs also cannot overcome the intractable ascertainability, predominance, manageability, and superiority problems caused by their proposed classes.  The many, material variations among the state common law and consumer fraud statutes show plaintiffs cannot meet their burden to prove that common legal issues

predominate or could manageably be tried, and plaintiffs certainly do not prove that they propose a superior method for resolving the myriad of claims.[1]

## **BACKGROUND**

I.    **A FREE REPLACEMENT AIRBAG SYSTEM HAS BEEN MADE AVAILABLE TO PLAINTIFFS AND ALL PUTATIVE CLASS MEMBERS**

The manufacturer of Mercedes-Benz vehicles ("MBVs") launched voluntary recalls of Takata airbags with non-desiccated PSAN inflators starting in early 2016, with parts available, for all recalled MBVs in the United States.  D.E. 4243-1, Declaration of Thomas Brunner ("Brunner Decl.") ¶¶ 6, 10.  MBUSA's comprehensive recall outreach notification program included direct mail, email, mobile and land-line calls, a dedicated website, social media (Facebook, Instagram, etc.) and digital ads (*e.g.*, Google banner ads, etc.), notification via States' DMVs, interaction with insurance companies, customer incentives (*e.g.*, accessory vouchers), at-home/at-work mobile repairs, vehicle pick-up/delivery, CarFax recall alerts, VIN/parts-availability look-up tools, and dealer competitions, among other initiatives.  *Id.* ¶ 9.

For the recall of the Takata airbag inflators in MBVs, the manufacturer of MBVs, with the approval and support of NHTSA, re-designed and re-engineered the airbag systems to employ new technologies with new parts and also use a different type of inflator propellant called guanidine nitrate or "GuNi."  D.E. 4243-1, Brunner Decl. ¶ 7.[2]  This required a significant investment of time and resources.  For example, due to the integrated module design specified by the manufacturer for replacement airbags, the new inflator alone could not be replaced; the entire airbag module had to be re-designed, requiring new development, validation, and certification.  *Id.*  This also optimized recall execution because it permitted replacement of the recalled airbags during a single workshop visit, enhancing completion rates and customer convenience.  *Id.*  In the end, every putative class member has been offered an entirely new airbag system for free.

---

[1] MBUSA opposes plaintiffs' motion for class certification while continuing to assert that plaintiffs have no remaining claims against MBUSA for the reasons set forth in MBUSA's Notice of No Remaining Claims and Motion to Alter or Amend Judgment.  *See* D.E. 4625; D.E. 4495; D.E. 4507.

[2] Plaintiffs recycle a seven-year-old *allegation*, claiming "NHTSA was forced to affirmatively contact MBUSA regarding their use of Takata airbags in September 2015, and eventually issued a recall on MBUSA Class Vehicles [in 2016]."  Mot. at 11 (citing SAC ¶ 258).  Of course, plaintiffs cite no *evidence*.  Nor could they.  NHTSA did not "force" MBUSA to do anything; the recall was initiated after NHTSA received a submission *from Takata* encompassing certain MBVs, and MBUSA has always cooperated with NHTSA and implemented the recalls with its oversight.  D.E. 4243-1, Brunner Decl. ¶ 8.

## II.   THERE IS NO PROOF, MUCH LESS COMMON PROOF, THAT MBUSA HAD ANY KNOWLEDGE OF THE ALLEGED "DEFECT"

MBUSA has many unique defenses to class certification because it does *not* design or manufacture MBVs or any of their component parts, including the Takata airbags at issue.  D.E. 4496 ¶¶ 3, 5; *see also* D.E. 4243-1, Brunner Decl. ¶ 5.  MBUSA warrants and distributes MBVs in the United States.  D.E. 4496 ¶¶ 1, 2, 6, 7.  MBUSA was not involved in the research, development, design, or testing of Takata airbag modules or any of their subcomponents.  D.E. 4243-1, Brunner Decl. ¶ 5.  MBUSA does not have any department, division, or group with knowledge about the development, design, manufacture, assembly, comparison, testing, or analysis of Takata airbags.  D.E. 4496 ¶¶ 3, 5.

Unsurprisingly then, MBUSA had no communications with Takata about the development, design, manufacture, assembly, comparison, testing, or analysis of Takata airbags, or their inflators. *Id.* ¶¶ 1, 4, 6, 7.[3]  Before the recalls of MBVs, MBUSA had no communications with Takata about such things because the manufacturer, not the distributor, has "the relationship with the suppliers." *Id.*; D.E. 4243-1, Brunner Decl. ¶ 5.  Plaintiffs' own technical experts, like Mr. Renz, agree that it is the designer and manufacturer of the vehicles who has information about "the development, qualification and acceptance of inflator technology"—not the U.S. distributor; he understood MBUSA would not have such information.  Ex. 1, Deposition Transcript of Robert Renz ("Renz Dep."), at 426:25-427:13, 427:22-429:25; *id.* at 420:22-421:1.[4]  Plaintiffs' other expert, Mr. Baglini, also agreed that MBUSA would not have such communications with component suppliers or possess design, manufacture, and specification documents for Takata airbags.  Ex. 2, Deposition Transcript of James Baglini ("Baglini Dep."), at 336:14-337:21.  Thus, there is no basis to claim that MBUSA "should have known" of alleged issues.

MBUSA witnesses did not even know that the recalled MBVs were equipped with Takata airbags until at or around the time of the first recall of Takata airbags in MBVs, which was issued in late January 2016. D.E. 4243-4, Deposition Transcript of Thomas Brunner ("Brunner Dep."), at 36:24-37:10, 97:14-98:1 ("[I]n general, as the distributor and marketer of [MBVs], we didn't have

---

[3] *See also* D.E. 4243-1, Brunner Decl. ¶ 5; D.E. 4496 ¶¶ 1, 2, 6, 7.

[4] "[W]hat [response] was provided based on my specific requests for information associated with the development, qualification, and production launch of [Takata] inflators was that [MBUSA] did not have any of those pieces of information."

specific knowledge as to what [supplier's] airbags were being used in our vehicles.").[5]  Put another way, there is simply no evidence—as plaintiffs' own experts have acknowledged—that MBUSA knew of an alleged defect, much less had class-wide knowledge.  Moreover, as this Court is aware, Takata pleaded guilty to felony fraud for deceiving OEMs, including the manufacturer of MBVs. D.E. 4243-5 (*United States v. Takata Corp.*, No. 2:16-cr-20810, D.E. 23 (E.D. Mich. Feb 27, 2017)).

## III.   PLAINTIFFS' STATEMENT OF FACTS DEMONSTRATES THE LACK OF REQUIRED COMMON, CLASSWIDE PROOF

Plaintiffs' "Factual Background" reveals the glaring absence of common proof required to certify their claims.  For example:

### A.     No Common Proof of Misrepresentations

Given their age (back to model year 2005), the significant majority of MBVs were not acquired from MBUSA or authorized dealers; most MBVs have changed ownership multiple times over the past eighteen years.  D.E. 4243-1, Brunner Decl. ¶ 4.[6]  Only one of the seven proposed class representatives still owned her vehicle at the time of her deposition.  D.E. 4496 ¶ 25.  Elsewhere, plaintiffs assert there are "misrepresentations" in ads and brochures.  Mot. at 8-9.  Yet they do not show when or whether putative class members or even a single named plaintiff saw any ads, let alone relied on them.

Regardless, the ads plaintiffs cite are non-actionable puffery.  *See, e.g.*, Mot. at 7 (undated press release: "Hallmark Mercedes high level of safety," and "high-strength safety passenger compartment"; brochure: "legacy of safety innovation," "top-rated safety," and an "orchestrated system that is designed to make the most of the precious milliseconds it takes to avoid, or survive, a collision"; brochure: the vehicle is engineered "to redefine every measure of how an automobile can protect its occupant," and has "visionary safety advances"); *Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348, 1359-60 (S.D. Fla. 2021) ("[P]uffery can be generally understood as 'generalized, vague, nonquantifiable statements of corporate optimism.'").  None of this puffery even mentions front airbags, nor do the other puff pieces that plaintiffs reference.  *See* Mot. at 8-9.  The ads either

---

[5] *See also* D.E. 4496 ¶¶ 2, 6, 7.  To be sure, plaintiffs have not proven that the manufacturer and designer of MBVs knew about any alleged defect either.  The point here is simply that plaintiffs' own experts agree that ***MBUSA*** had ***no reason to know*** of any alleged defect.

[6] Many new vehicles are leased—usually only for 2-3 years.  About 25% of all MBVs were leased. D.E. 4243-1, Brunner Decl. ¶¶ 3-4.

do not mention specific vehicles (much less Class Vehicles) or concern very few of the recalled MBVs, as the sprawling proposed classes encompass over a dozen model years comprised of many different vehicle types. *Id.* Plaintiffs baldly assert some of these "advertisements" were "widely disseminated," but only cite a *single* YouTube video accessed in **February 2022**—several years after the recalls and long after MBUSA sold any of the MBVs at issue. *Id.* at 7.

Plaintiffs also point to Monroney labels or "window stickers" for select vehicles as ostensibly containing misrepresentations about airbags. *Id.* at 9-10. But plaintiffs omit that they are affixed to only the windows of *new* vehicles (D.E. 4243-1, Brunner Decl. ¶ 11)—and thus inapplicable to the vast majority of class members—because most persons within plaintiffs' putative classes purchased *used* vehicles, including four of the seven named plaintiffs. D.E. 4496 ¶¶ 10, 18, 27, 34. Even if identifying front airbags on a window sticker could be construed as a misrepresentation/omission, there exists no common proof. The evidence is to the contrary. There is considerable variation from one Monroney label to the next; a good portion of them do not even mention front airbags. D.E. 4243-1, Brunner Decl. ¶ 11; D.E. 4092-2 ¶¶ 5, 7 & Exs. A-E. MBUSA does not retain Monroney labels before model year 2015 and so cannot say what proportion of labels before then may have listed front airbags. D.E. 4243-1, Brunner Decl. ¶ 11. Plaintiffs also present no common proof that they or any putative class members saw (or heard) or relied on any particular ad or window sticker.

Plaintiffs resort to a single inflator incident as ostensible knowledge of a defect (Mot. at 12-13) out of more than a million recalled MBVs, which have been driven in some cases for over eighteen years and a collective billions of miles. Ex. 3, Expert Report of Mark Warner ("Warner Report") at 12. The likelihood of a driver experiencing an inflator rupture in an MBV is far less than being struck by lightning. *Id.* And now that the vast majority of MBVs have already had their airbags replaced, that chance is now exceedingly remote. *Id.* at 12 n.23; D.E. 4243-1, Brunner Decl. ¶ 10. Indeed, even a recalled airbag is far more likely to save lives than result in harm. NHTSA itself informed owners of vehicles with recalled Takata airbags that they should not disconnect the airbags, stating, "It is much more likely that your air bag will perform properly and protect you in a crash than cause harm." Ex. 3, Warner Report, at 14. In any event, that incident could have been avoided as the vehicle owners received multiple recall notices—the first nearly a year before the accident—advising them that replacement airbags were available, but they never availed themselves of the free repair. D.E. 4243-1, Brunner Decl. ¶ 12. In any event, the incident occurred nearly five years after the recalls were issued, so it is irrelevant to pre-sale knowledge or any other

element of any of plaintiffs' claims here.  Mot. at 13.[7]

### B.    No Common, Classwide Proof MBUSA Owed a Duty to Disclose

MBUSA demonstrated over a year ago that plaintiffs had no evidence of MBUSA's pre-sale knowledge of the alleged defect.  *See* D.E. 4241 at 4-6.  Plaintiffs still provide no proof; instead, they simply repeat verbatim their unsupported assertion that "MBUSA knew about th[e] [alleged] defect before the Class Vehicles were sold."  Mot. at 2-3.  Plaintiffs now walk back that assertion, claiming MBUSA "should have known" of the alleged defect "because of the well-known issues that *other* major automakers had with Takata air bags."  *Compare* Mot. at 2-3 *with* D.E. 4195 at 3 *and* Mot. at 12 *with* D.E. 4195 at 12 (emphasis added).  For that, plaintiffs rely on one out-of-context comment taken from a single MBUSA witness deposition about recalls not applicable to MBVs.  There are over a thousand pages of deposition testimony from seven different MBUSA witnesses from which this one out-of-context comment was extracted.  *Id.* (citing testimony of D. Tait).  Plaintiffs misleadingly crop that testimony, which in context shows that MBUSA had no reason to believe, let alone know, that recalls of *other manufacturers'* vehicles meant MBVs were implicated:

> So we're *focusing on our product and our customer*.  And what happens to BMW or another manufacturer may be interesting or may be a good read in the press, or it may be an indicator of, you know, something that may -- you know, if it affects our vehicles too, we may ask the question of [the manufacturer of MBVs] to say, you know, 'Is that something [applicable to MBVs]?'

D.E. 4243-7, Deposition Transcript of David Tait ("Tait Dep."), at 54:19-55:12 (emphasis added).  Mr. Tait never testified that he or anyone else at MBUSA knew that some MBVs may have had Takata airbags (until at or around the time of the recall applicable to MBUSA), let alone that they might be defective.  Mr. Tait directed plaintiffs to Mr. Brunner at MBUSA, who administers the Takata recall for MBVs in the U.S.  *Id.*  Mr. Brunner testified that MBUSA would have no reason to know whether recalls applicable to *other* manufacturers' vehicles might impact MBVs until the manufacturer of MBVs (then Daimler AG, now named Mercedes-Benz Group AG) notified

---

[7] Plaintiffs also claim that NHTSA data allegedly showed "ruptures triggered *in* MBVs during testing."  Mot. at 13 (emphasis added).  That is not correct, because the testing was conducted in laboratories on replaced parts retrieved from the field; these were ***not*** ruptures in vehicles.  *See* D.E. 4243-8 ¶ 65.  That testing was also done long after the recalls were initiated and long ***after*** the vehicles were sold, so it also is irrelevant to pre-sale knowledge.  In any event, plaintiffs' expert testified MBUSA—as the distributor of MBVs, not the designer or manufacturer—would have no reason to be aware of that data.  Ex. 1, Renz Dep., at 435:11-436:13.

MBUSA about a recall specific to MBVs:

> Q. Did you have any communications with Daimler AG about whether they had done any sort of investigation about how this [recall] came about at one of its airbag suppliers?
>
> A. No. Nothing specifically. Again, Daimler, as the manufacturer, is the entity responsible for compiling the information around any potential recall.
>
> . . .
>
> Q. As a result of what you learned from what was going on in the media in 2014 and 2015 [with the Takata recalls for other automakers], did you take any steps at [MBUSA] to see how it would impact [MBVs]?
>
> A. . . . There wasn't anything that I remember would have been any kind of dialogue at the time since we had not been informed from Daimler that there were any [of our] vehicles that were included in what was going on in the industry.

Ex. 2, Brunner Dep. at 38:16-23; 98:2-12.

Plaintiffs acknowledged that MBUSA distributes and markets MBVs in the U.S. and that it does not design or manufacture them or any of their component parts; it therefore would not know or have reason to know of the brand or maker of the airbags in MBVs. Mot. at 7 ("MBUSA handles virtually every aspect of **selling** MBVs in the United States.") (citing D.E. 4496 ¶ 1) ('Q. Can you give me a general description of what MBUSA's business is[?] A. Yeah. It's the **sales, marketing, and distribution of Mercedes-Benz vehicles in the U.S.**'") (emphases added); *Id.* ¶ 7 ("[A]s the distributor and marketer of [MBVs], we didn't have specific knowledge as to what [supplier's] airbags were being used in our vehicles."). In the end, plaintiffs present no proof MBUSA had any pre-sale knowledge of the alleged defect. Mot., *passim*. Against this backdrop, it is unsurprising plaintiffs present **no** common proof that MBUSA had a duty to disclose the alleged defect. Mot. at 12-13, 24. MBUSA could not disclose what it indisputably did not know.

## CHOICE OF LAW

As this Court ruled, plaintiffs' claims are governed by the laws of the states where they bought their vehicles. D.E. 3834, at 8-10.

## ARGUMENT

Rule 23 "imposes stringent requirements for certification that in practice exclude most claims[.]" *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d

1225, 1233 (11th Cir. 2016).  A court must conduct a "rigorous analysis" as to whether each Rule 23 requirement has been met, even when it "overlap[s] with the merits."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013).

Rule 23 "does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Thus, plaintiffs have a burden of proof, and cannot simply rely on allegations. *Brown*, 817 F.3d at 1233 ("[T]he entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party with the burden of proof loses.").  Plaintiffs must "prove that there [is] in fact" compliance with Rule 23(a), and "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast*, 569 U.S. at 33; *Ohio State Troopers Ass'n v. Point Blank Enters.*, 481 F. Supp. 3d 1258, 1271 (S.D. Fla. 2020), *aff'd*, 2021 WL 4427772 (11th Cir. Sep. 27, 2021).  "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Dukes*, 564 U.S. at 351.  Thus, plaintiffs must provide "generalized evidence that proves or disproves the element[s of their claims] on a simultaneous, class-wide basis."  *City of St. Petersburg v. Total Containment, Inc.,* 265 F.R.D. 630, 637 (S.D. Fla. 2010).  Here plaintiffs continue to rely almost exclusively on allegations and presumptions, instead of classwide, common evidence proving Rule 23 requirements are met.

Plaintiffs also incorrectly contend that the prior approval of settlement-only classes in this MDL relieves them of their burden of proof here or obviates the Court's obligation to conduct the required "rigorous analysis" in ***this*** case.  Mot. at 2.  This case involves different facts and issues, not the least of which is plaintiffs' complete failure to provide common, classwide proof on the essential elements of their claims, including damages and pre-sale knowledge.  It is not enough simply to refer to different settlement-only cases.  A court's "certification of a settlement class is not binding on [its] decision regarding the litigation class."  *Stanaford v. Genovese*, 2015 WL 4930568, at *3 (S.D. Fla. Aug. 17, 2015).

## I.     PLAINTIFFS DO NOT MEET ADEQUACY OR TYPICALITY REQUIREMENTS

"The burden of proof to establish the propriety of class certification rests with the advocate of the class. . . . Plaintiffs are not entitled to any presumption of adequacy."  *Goers v. L.A. Entm't Grp., Inc.*, 2017 WL 78634, at *4 (M.D. Fla. Jan. 9, 2017).  "Although separate prerequisites under Rule 23(a), the courts have frequently considered the requirements of typicality and adequacy of representation together."  *Lucky v. Bd. of Regents*, 1981 WL 234, at *4 (S.D. Fla. June 29, 1981).

As shown below, plaintiffs do not meet adequacy requirements because they have no viable

claims to assert on behalf of the putative classes.  Plaintiffs are also atypical and cannot adequately represent the putative classes because they are subject to individualized defenses.

### A.    Plaintiffs Cannot Serve as Class Representatives Because They Have No Viable Claims

A proposed class representative "must adequately protect the interests of those he purports to represent," *Lissys Cortes v. Honeywell Bldg. Sols. Ses Corp.*, 2014 WL 11958626, at *7 (S.D. Fla. Sept. 24, 2014), and cannot do so if his or her individual case fails.  *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 406 (1977) (named plaintiffs were not adequate class representatives because there individual claims were not viable); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005) ("Because we have found that summary judgment was properly granted as to the underlying claims of the class representatives, the issue of class certification is moot."); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("After determining that none of [plaintiff's] underlying claims had merit, the bankruptcy court came to the ineluctable conclusion that there were no claims to certify as a class action lawsuit.").  This Court has recognized that if it grants summary judgment for MBUSA on plaintiffs' claims, they "of course" cannot assert claims on behalf of putative class members.  *See* 12/19/2022 Hr'g Tr. at 33:10-18.

As MBUSA established in its summary judgment motions, the claims of Calhoun (GA), Knapp (IA), Taylor (MS), Bridges (NC), Phillips (OR), Radican (RI), and Goldberg (WA) fail for many reasons, most notably because they have no legally recoverable benefit-of-the-bargain damages.  D.E. 4179; D.E. 4495.  These states recognize that indisputable effective repairs and remedies like the ones here mean claimants received the benefit of their bargain, and there are no actual damages.[8]  *See* D.E. 4546 at 8-13; D.E. 4578 at 5-10.  As the Court observed, plaintiffs' "have been compensated and made whole" because they "had or could have had the recall, repair and replacement performed free of charge."  D.E. 4471 at 15.

Plaintiffs' fraud claims fail because it is undisputed that MBUSA had no pre-sale knowledge of the alleged defect, and all seven of plaintiffs' states require them to prove MBUSA knew of the allegedly false or concealed information.  *See supra,* Background; D.E. 4179 at 4-9; D.E. 4241 at 21-23.  The omission-based statutory claims of Knapp (IA), Bridges (NC), Phillips (OR), Radican

---

[8] Dubé's damages model—which is the sole basis of plaintiffs' alleged benefit-of-the-bargain damages—also conflicts with the law of these states.  D.E. 4495 at 8-10.  Accordingly, class certification should be denied because plaintiffs have no viable methodology for proving damages on a classwide basis.  *See infra*, Argument Section VI.

(RI), and Goldberg (WA) fail for the same reason: a party cannot "fail to disclose or actively conceal[]" (SAC ¶¶ 836-37) something it did not know. *See, e.g.*, *State ex rel. Rosenblum v. Johnson & Johnson*, 275 Or. App. 23, 35 (2015) (Oregon UTPA requires "seller's failure to disclose a known risk"); D.E. 4546 at 11-12; D.E. 4241 at 6-9.

In addition, plaintiffs Calhoun (GA), Taylor (MS), and Phillips (OR) bought their vehicles from unaffiliated third parties (D.E. 4496 ¶¶ 10, 19, 34), meaning they had **no** transactional relationship with MBUSA required to trigger a duty to disclose as to their fraud-based claims (and necessary to prove the required elements of causation or reliance for Phillips' consumer statute claim). *See, e.g.*, *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015) (holding duty to disclose under Georgia law requires "at least some relationship between the parties" and granting summary judgment on fraudulent concealment claims where MBUSA "had no apparent relationship with Plaintiffs"); D.E. 4546 at 4-7; D.E. 4578 at 3-4.  Knapp (IA), Bridges (NC), Radican (RI), and Goldberg's (WA) fraud and consumer protection claims similarly fail because plaintiffs have no proof that MBUSA had a duty to disclose as these plaintiffs bought their vehicles *before* MBUSA learned of the alleged defect.  D.E. 4546 at 14-15.  Their affirmative misrepresentation claims also fail because, as shown above, they cannot prove that they saw, heard, or relied on a specific misrepresentation. *Id.* at 15-16.

Taylor's (MS) implied warranty claim fails because, as shown below, Mississippi requires evidence of manifestation of the alleged defect and precludes recovery when a plaintiff used his vehicle for years without experiencing the alleged defect. *See infra*, Argument Section IV(C)(1); D.E. 4546 at 16.  Indeed, it is undisputed that no named plaintiff experienced an airbag malfunction. Their claims fail because mere "risk" of injury—one that has now been completely removed due to the free and complete recall repair—is not a cognizable injury. *See, e.g.*, *Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 554 (2006) (rejecting "increase in risk" as cognizable injury); D.E. 4546 at 17-18.

    **B.**    **Plaintiffs Are Subject to Individualized Defenses**

"The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may bring into question the adequacy of the named plaintiffs' representation." *Auto Ventures v. Moran*, 1997 WL 306985, at *5 (S.D. Fla. Apr. 3, 1997) (citation omitted); *see also Mateo v. V.F. Corp.*, 2009 WL 3561539, at *5 (N.D. Cal. Oct. 27, 2009) ("The unique defense that defeated typicality also makes plaintiff an inadequate class representative.").  Even where a

named plaintiff may be able to avoid summary judgment, the arguments surrounding the viability of her claims can defeat typicality and adequacy. *See, e.g.*, *Emilio v. Sprint Spectrum L.P.*, 2017 WL 3208535, at *7 (S.D.N.Y. July 27, 2017) ("[T]he very arguments advanced by [plaintiff] to avoid summary judgment . . . demonstrate why his individual claims are ill-suited to class-wide resolution."); *Kingsbury v. U.S. Greenfiber, LLC*, 2013 WL 12114077, at *4 n.8 (C.D. Cal. Nov. 5, 2013) (denying certification because "significant factual dispute[s] . . . would threaten to distract from issues common to the class.").

As MBUSA's summary judgment motions establish, the named plaintiffs are atypical and inadequate to represent the putative classes because they are subject to individualized defenses. D.E. 4179 at 4-40; D.E. 4495 at 18-19 (showing plaintiffs' consumer-protection and implied warranty claims are time-barred). For example, Radican (RI) needed to file her consumer-protection claims within four years of the date she bought her vehicle, but she bought her vehicle *over ten years* before filing her action. *Kennedy v. Acura & Am. Honda Motor Co.*, 2002 WL 31331373, at *6 (R.I. Super. Ct. Aug. 28, 2002) (four-year limitations period for Rhode Island UTPCPA claims like those asserted here); D.E. 4496 ¶¶ 39, 43. And Taylor (MS) needed to file her implied warranty claim within six years of the date of delivery of the vehicle to the original purchaser, but did not file her claim until over *eight years* after her vehicle was first purchased and delivered. *See Cleveland Air Serv. v. Pratt & Whitney Can.*, 2016 WL 4179987, at *5 (N.D. Miss. Aug. 5, 2016); D.E. 4496 ¶¶ 18, 20, 26. Because these plaintiffs' claims are time-barred, they cannot represent absent class members who *may* have timely claims.

**C.**   **The Named Plaintiffs Cannot "Represent" Class Members with Claims Under Other States Laws without Violating the Rules Enabling Act**

The named plaintiffs are also atypical and inadequate because under the Rules Enabling Act, 28 U.S.C. § 2072(b), they cannot adequately represent putative class members whose claims rely on other states' laws. *See also infra*, Argument Section IV(d); D.E. 4546 at 3-4. Plaintiffs' proposed classes generate claims for an unspecified number of class members in *fifteen* additional states where no evidence exists as to any of them. Plaintiffs' proposed classes therefore foreclose any opportunity for MBUSA to raise defenses as to each alleged violation of the law. Accordingly, class certification would violate the Rules Enabling Act, and due process precludes certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 629 (1997) (class actions may not "abridge, enlarge, or modify any substantive right")*; Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir.

2013) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues."); *Corder v. Ford Motor Co.*, 283 F.R.D. 337, 343 (W.D. Ky. 2012) (holding defendant "has every right to demand a full litigation of that element of the cause of action, and for each putative class member no less").

## II.   PLAINTIFFS FAIL TO PROVE ASCERTAINABILITY IN SEVERAL DIFFERENT WAYS, EACH REQUIRING DENIAL OF THEIR MOTION

### A.   Plaintiffs Do Not Prove That IHS Data Will Establish the Facts Necessary for Membership in Their Convoluted Classes

As discussed, plaintiffs must *prove* compliance with Rule 23—not merely allege it.  Thus, plaintiffs "bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)."  *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)).  Plaintiffs propose a mix of multi-state and single-state classes defined by varying dates of purchase, recall, sale and/or declaration of total loss.  The classes not only require members to have "bought a Class Vehicle in [1 of 22] state[s]" prior to the date on which the Class Vehicle was recalled, but also that they (among other things): (a) "still own the Class Vehicle," (b) "sold the Class vehicle after the date on which the Class Vehicle was recalled," or (c) "following an accident, [have the] Class Vehicle . . . declared a total loss after the date on which the Class Vehicle was recalled."  Mot. at 1-2.

Plaintiffs offer no proof these multi-faceted and multi-jurisdictional classes are ascertainable.  Instead, they offer only an unsupported claim that "[v]ehicle registration data can be purchased from IHS Markit."[9]  Though some cases say IHS data can show registration, courts have *not* assumed that it "allows them to identify the state of *purchase*," or when vehicles are bought in "private person-to-person transactions[.]"  *Neale v. Volvo Cars of N. Am., LLC*, 2017 WL 6055774, at *8 (D.N.J. Dec 6, 2017) (emphasis added); *see also*, *e.g.*, *Ace Tree Surgery, Inc. v. Terex S.D., Inc.*, 332 F.R.D. 402, 406-07 (N.D. Ga. 2019) (class of purchasers of "vehicle[s] equipped with a Terex Hi-Ranger XT" not ascertainable, as plaintiffs must do more than "allege" that certain records "will allow for identification").

---

[9] The URL plaintiffs provided (Mot. at 17, n.4), last visited on May 5, 2023, appears to be outdated.

IHS Markit data does not identify where the vehicle is purchased, only where it is registered. People regularly buy vehicles in a different state from where they are registered; plaintiffs do not prove otherwise. *See, e.g.*, Jack R. Nerad, How to Buy a Car from Another State, J.D. POWER (Nov. 10, 2020) (noting that saving money, availability of different equipment or paint colors, and use of online services are among the reasons for out-of-state purchases) https://www.jdpower.com/cars/shopping-guides/how-to-buy-a-car-from-another-state.  Courts have therefore found proposed classes are "not ascertainable" when, as here, plaintiffs rely on where the vehicle was "bought" (rather than registered) and proffer assertions about IHS data—even when proposed together with other data sources. *See, e.g.*, *Volvo*, 2017 WL 6055774, at *8 (quoting cases holding plaintiffs cannot merely propose a method of ascertaining a class without evidence it will succeed); *cf.* D.E. 3834, at 8-10 (Court's prior ruling relying on place of purchase, making place of registration an infeasible proxy here); Mot. at 17 (arguing the classes are defined by the single "precise and objective criteria" that "a person purchased a Class Vehicle in a specific state during a specific time period").  Even if available, IHS data is also deficient because it cannot be used to determine who is a former owner, which, given the age of the Class Vehicles, will likely be most of the class. *See, e.g.*, *Volvo*, 2017 WL 6055774, at *8 (finding IHS data could not help identify this subset of the proposed class because "the bulk of the class is likely to consist of former owners . . . who no longer know or possess the VIN number of their former Class Vehicle").

Similarly, the IHS Markit data will not show if the vehicle was totaled.  Plaintiffs offer no evidence that registration data will prove which vehicles were "declared a total loss after the date on which the Class Vehicle was recalled" or which vehicles were not sold until after they were recalled. *See* Mot. at 1-2 (all proposed classes requiring proof of such facts).  Plaintiffs also provide no evidence showing their proposed data source will prove which Class Vehicles were bought for personal or commercial use, a dispositive issue for their claims in several states. *See infra*, Argument Section IV(D)(1)(g); D.E. 4241 at 12-14; D.E. 4560.  These are not "administrative feasibility" issues, but failures of ***proof***.  Even after *Cherry*, in the Eleventh Circuit, "Plaintiff has the burden of proving the class *is* ascertainable—not just that it *could* be." *MSP Recovery Claims v. Atl. Specialty Ins. Co.*, 2021 WL 6750961, at *2 (M.D. Fla. Dec. 29, 2021).

### B. Plaintiffs' Proposed Classes Also Fail to Meet Ascertainability Requirements Because They Are Impermissibly Overbroad in Various Ways

Recent decisions from this District have denied class treatment of consumer protection,

fraud, and warranty claims where the proposed class definitions "include both class members whose product has manifested the deficiency and those whose product has performed satisfactorily." *Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1284 (S.D. Fla. Mar. 21, 2022), *reconsideration denied*, 2022 WL 3975106 (S.D. Fla. Aug. 31, 2022) (quoting *Harris v. Nortek Glob. HVAC LLC*, 2016 WL 4543108, at *5 (S.D. Fla. Jan. 29, 2016)); *Ohio State Troopers*, 481 F. Supp. 3d at 1274 (same). These cases all cite Eleventh Circuit precedent involving a proposed class of "persons . . . who purchased" a product, as here. *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 859 (11th Cir. 2012). In *Walewski*, the Eleventh Circuit found the proposed class was overbroad and thus not ascertainable because, among other things, it would include persons who purchased the product: (1) "and re[sold] it for more than [the purchaser] paid for it"; (2) persons "who have no cause of action as a matter of law," such as persons who purchased for business purposes; and (3) persons who were not "injured by (or [did not] experience[]) the alleged . . . [d]efect." *Id.* at 861.

The proposed classes here also include persons with no cognizable claims. *See supra*, Argument Section I(A). As to the latter category, MBUSA recognizes this Court's prior decision that plaintiffs in this case alleged standing and survived the pleading stage without pleading facts showing manifestation of the claimed defect. *See In re Takata Airbags Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1119-22 (S.D. Fla. 2019). MBUSA also recognizes other cases survived the pleading stage with similar allegations. *See, e.g.*, *Simmons*, 592 F. Supp. 3d at 1284; *Ohio State Troopers*, 481 F. Supp. 3d at 1275.

At class certification, however, the inquiry is different. "Unlike at the motion to dismiss stage, the Court does not accept Plaintiffs' allegations as true, and does not draw all inferences and consider all evidence in the light most favorable to Plaintiffs." *Townhouse Rest. Of Oviedo, Inc. v. NuCO2, LLC*, 2020 WL 5440581, at *4 (S.D. Fla. Sept. 9, 2020) (denying plaintiffs' renewed motion for class certification). In fact, the courts in *Simmons* and *Ohio State Troopers* both later denied class certification. *See Simmons*, 592 F. Supp. 3d at 1285 (denying class certification on ascertainability and other grounds; citing cases finding a claim that an "injury occurred at the time of sale, not at failure" is insufficient where the "vast majority" of proposed class members never experienced the alleged issue); *Ohio State Troopers*, 481 F. Supp. 3d at 1274 (same); *see also Bishop v. Saab Auto.*, 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996) (citing multiple cases across the country in concluding that a class asserting warranty and fraud-based claims is not ascertainable when it includes persons who "purchased a product which 'tends to' cause injury," even when

alleged defect could cause non-collision fires).[10]

Plaintiffs can no longer survive on allegations alone, and there are more considerations than simply Article III standing at class certification.  To begin, plaintiffs lack sufficient proof of classwide injury.  Quite obviously, the presence or absence (and type) of injury is affected by manifestation of the alleged issue, the individualized sale of an MBV for more than its purchase price, and individualized facts such as those making a person unable to prove "consumer" status or other essential elements of their claims—all reasons the Eleventh Circuit cited for denying certification in *Walewski*.  *See also infra*, Argument Sections IV(C)(1), (D)(1).  These variable facts also show the class is not ascertainable.  *See, e.g.*, *Simmons*, 592 F. Supp. 3d at 1284-85; *Ohio State Troopers*, 481 F. Supp. 3d at 1276.

Both subsections A and B establish multiple reasons why plaintiffs fail to meet ascertainability requirements.  *Cherry* itself requires proof of ascertainability "before the district court can consider" other aspects of Rule 23.  986 F.3d at 1302.  Thus, plaintiffs' failures of proof here are dispositive and mandate denial of their motion.  For similar reasons, on top of those discussed below (*see infra,* Argument Section III), plaintiffs also do not satisfy numerosity.  *See, e.g.*, *In re OnStar Contract Litig.*, 278 F.R.D. 352, 373 (E.D. Mich. 2011) (numerosity is not met when "the proposed classes are not ascertainable without individualized inquiries").

### C.    Individualized Inquiries on Threshold Questions (e.g., "Consumer" Status) Also Preclude Certification of Many Claims

Many of plaintiffs' claims require each class member to prove they purchased and/or used their MBV primarily for personal or family—not commercial or business—purposes.  *See, e.g*., *Murphy v. Cent. Falls Det. Facility Corp.*, 2014 U.S. Dist. LEXIS 183690, at *33-*34 (D.R.I. Dec. 16, 2014) (Rhode Island consumer law); *Bryan v. Mack Trucks, Inc.*, 2010 WL 1568607, at *6-7 (N.D. Miss. Apr. 19, 2010) (Mississippi motor vehicle warranty laws); *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 22 F. Supp. 3d 1126, 1135-37 (D. Or. 2014) (Oregon consumer law); Iowa Code § 714H.2(4) & H.3 (consumer protection statute limiting protection to "consumer merchandise", i.e., "merchandise offered for sale or lease, or sold or leased, primarily for personal,

---

[10] One of plaintiffs' cases involved the same theory they assert here.  *See Sanchez-Knutson v. Ford Motor Co.*, 319 F.R.D. 529, 535-36 (S.D. Fla. 2015) (alleged defect "manifested when the [vehicle] came off the assembly line").  But *Sanchez-Knutson* does *not* address other claim requirements—such as purchase-for-business, injury caused by the alleged defect, or the need to "experience" the alleged defect—and should not be interpreted as inconsistent with the Eleventh Circuit's decision in *Walewski*.

family, or household purposes").[11]   Declining to certify a claim under the Michigan Consumer Protection Act (MCPA), but speaking in terms applicable to many laws, *OnStar* recognized that "[m]otor vehicles can be purchased for commercial use, personal use, or both.  It is the primary way in which the party utilizes the vehicle that determines whether the MCPA applies," and "the determination of whether a particular good was used primarily for personal or commercial use is a fact-intensive inquiry" that "would require individualized determinations to be made[.]"  *OnStar Contract Litig*., 278 F.R.D. at 380-81; *see, e.g.*, *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 582-83 (E.D. Cal. 2012) (denying certification as to California CLRA claims on same grounds); *Corder v. Ford Motor Co.*, 297 F.R.D. 572, 579 (W.D. Ky. 2014) (citing multiple cases in making same findings).

The Eleventh Circuit recognizes that such threshold inquiries—raising questions where proposed classes would include persons "who have no cause of action as a matter of law"—preclude class certification.  *Walewski*, 502 F. App'x at 861.  Besides personal use, other claims require different individualized—but also threshold—inquiries to determine whether the relevant statute protects the plaintiffs.  *See infra*, Argument Section IV(D)(1)(b) (Nebraska consumer protection statute requires the alleged conduct to affect the "public interest" and thus inapplicable to private transactions such as used car sales between private individuals).

## III.   PLAINTIFFS FAIL TO PROVE NUMEROSITY FOR THEIR MYRIAD CLASSES

Although "a plaintiff need not show the precise number of members in the class," mere "allegations of numerosity are insufficient[.]"  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).  A "plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement."  *Id.* (emphasis in original).  Plaintiffs again ask this Court to *presume* facts instead of offering evidence showing the size of each of their multi-state and single-state classes.  *See* Mot. at 18 (asserting "MBUSA sold more than one million Class Vehicles nationwide, so each statewide Class [presumably] consists of tens of thousands, if not hundreds of thousands, of Class Vehicles and Class Members").

The Eleventh Circuit has squarely rejected almost identical attempts to extrapolate beyond the evidence as "an exercise in sheer speculation."  *Vega*, 564 F.3d at 1267.  In *Vega*, the only

---

[11] Iowa also requires approval of the state AG before assertion of class action claims.  *See* Iowa Code § 714H.7.  Plaintiffs provide no evidence showing they met this requirement.

evidence supporting numerosity for plaintiff's proposed Florida class of employees was testimony that the defendant employed thousands of associates nationwide.  The Eleventh Circuit reversed the district court's certification of a Florida-only class, finding insufficient evidence of numerosity:

> Yes, T-Mobile is a large company, with many retail outlets, and as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1).  However, a plaintiff bears the burden of establishing every element of Rule 23[.] . . . [T]he district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation.

*Id.*; *see also Donoff v. Delta Air Lines, Inc.*, 2020 WL 3268272, at *4 (S.D. Fla. Jan. 24, 2020) (finding nationwide evidence insufficient to support a state-specific class because "[a]lthough it is certainly tempting to conclude that numerosity is present in light of the size of Defendant's operations, [the court] must resist the temptation as *Vega* forecloses such speculation"); *Hayes v. Wal-Mart Stores, Inc*., 725 F.3d 349, 358 (3d Cir. 2013) ("[W]here a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone.").

## IV.   PLAINTIFFS FAIL TO PROVE COMMONALITY OR PREDOMINANCE

Plaintiffs focus on alleged "common questions" (Mot. at 19), but "[w]hat matters . . . is not the raising of common 'questions'—even in droves . . ." *Dukes*, 564 U.S. at 350.  Rather, plaintiffs must offer "convincing proof" that common evidence will "produce a common answer to the crucial question." *Id*. at 350-52, 359 (emphasis added).  At class certification, plaintiffs must show that common evidence will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.  "The Eleventh Circuit has explained that certification is inappropriate when after adjudication of the class wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individualized claims." *Donoff*, 2020 WL 3268272, at *6 (cleaned up).

Plaintiffs mainly rely on allegations and speculation and fail to meet their burden to provide common, classwide proof of the essential elements of their claims.  MBUSA is ***differently*** situated than other OEMs for several reasons, and though plaintiffs again try to analogize to settlement-only certifications in other cases, they fail to ***prove*** commonality or predominance in ***this*** case.  "[I]t is Plaintiff's burden to show that common issues in the case predominate, not Defendant's to show that they do not." *Landen v. Electrolux Home Prods.*, 2014 WL 2980977, at *1 (C.D. Cal. July 1, 2014).  For failure of proof, plaintiffs' motion must be denied.  In any event, as shown below, common

issues will ***not*** predominate.

### A.    No Common, Classwide Evidence of a Defect

This Court acknowledged early in this MDL proceeding "that Defendants [] raised the possibility of other causes and factors contributing to" the alleged airbag inflator defect, which "may be appropriately considered" at later stages in the proceeding. *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016).  Despite being afforded a second opportunity, plaintiffs again fail to provide common evidence of a classwide defect.

Plaintiffs' expert reports and opinion do not provide the type of classwide proof Rule 23 requires.  This is obvious because, among other things, plaintiffs' expert Renz concedes he never even looked at, let alone tested, any of the different types of airbag inflators in MBVs.  Ex. 1, Renz Dep., at 432:13-432:21 ("You did not inspect or test any Takata inflators from a Takata airbag module installed in any Mercedes-Benz passenger vehicle; is that correct? A. *I did not conduct any testing specific to those, no. . . . I have not specifically taken any Mercedes inflators and done analysis or done testing on them*."); *see also id.* at 434:12-435:5 ("Q. *You haven't specifically analyzed the data as it pertains to inflators sourced from a Mercedes-Benz passenger car, correct? A. No, I have not isolated that*.") (emphasis added).  Renz also admits he did not review any "development, qualification, and production launch" materials for inflators used in MBVs as he had done for other OEMs because MBUSA had no such information; it does not design or manufacture MBVs or their component parts.  *Id.* at 426:25-427:13, 427:22-429:25; *id.* at 420:22-421:1.

Plaintiffs' other expert, Baglini, readily conceded at deposition that he was not offering any opinions about the different types of inflators used in MBVs—*i.e.*, Baglini admits he does not offer classwide proof against MBUSA.  Ex. 2, Baglini Dep., at 328:21-23.[12]  Baglini conceded his report "never even mentioned the Takata inflator variants that were used" in the MBVs; rather, his "focus was primarily on GM."  *Id.* at 329:7-18.  In fact, Baglini admits he does not know the differences among the various inflators used in MBVs.  *Id.* at 330:2-4.  Like Renz, Baglini also acknowledged that MBUSA—as the distributor but not the designer or manufacturer of MBVs—would not communicate with component suppliers or possess design, manufacture, or specification documents for Takata airbag inflators.  *Id.* at 336:14-337:21.

Renz and Baglini merely parrot what others have said about using non-dessicated PSAN

---

[12] In fact, Baglini conceded his report does not even mention MBVs or MBUSA.  Ex. 2, Baglini Dep. at 328:21-329:18.

in airbag inflators in **non**-MBVs.  Without testing—much less even looking at—inflators in MBVs, Renz's and Baglini's opinions fail to establish common, classwide evidence of a defect in MBVs.  In the end, Renz mainly relies on the recalls of the MBVs for his conclusory claim that use of PSAN as a propellant renders the airbag inflators per se defective.  D.E. 4243-8, Expert Report of Robert Renz ("Renz Report") at 18-23, ¶¶ 63, 64, 65, and App. C.  Plaintiffs contend "MBUSA has now issued recalls admitting that the Class Vehicles suffer from a 'safety defect.'"  Mot. at 6.  Plaintiffs and Renz have not proven this assertion.  Thus, plaintiffs' motion for class certification must be denied.

To begin, MBUSA has not "admitted" anything, and the mere fact of a recall is not proof of a common defect: "A manufacturer recall *does not admit* a defect in a particular product, but refers to the possibility of a defect in a class of products."  *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1045 (N.D. Ga. 2004) (emphasis added); *McGee v. Mercedes-Benz USA, LLC*, 612 F. Supp. 3d 1051, 1061 (S.D. Cal. Mar. 30, 2020) (noting, in a case involving a Takata airbag recall that "the existence of a safety recall does not adequately allege a substantial safety hazard existed") (citation omitted). Instead, the MBV recalls state that "*Takata* filed a Defect Information Report with NHTSA [in January 2016] announcing a *potential* defect in *some* of the subject inflators" so "in an abundance of caution" the manufacturer of MBVs agreed to conduct a voluntary recall.  D.E. 4243-9, Part 573 Safety Recall Report﹣16V081-8542 at 11 (emphasis added).

The recalls themselves establish that the circumstances that might cause inflators in MBVs to fail are highly individualized, and thus **not** suited to class certification: inflator "ruptures *may* occur in *some* of the subject inflators after *several years* of exposure to persistent conditions of high absolute humidity" and "*other factors*."  *Id.* (emphasis added).  Similar to this case, the plaintiff in *Heard v. FCA US, LLC* claimed the applicable Takata recall notice was sufficient evidence of a defect in her vehicle's passenger-side airbag.  2020 WL 1285743, at *3 (N.D. Ala. Mar. 16, 2020).  In dismissing plaintiff's claims, the court noted that the recall notice, much like those here, said "that the airbag inflator in 'certain' 2004 to 2009 Dodge Ram trucks '*may* rupture' . . . This is a far cry from an admission of a defect in [any particular vehicle]."  *Id.*

As the recall notices applicable to MBVs establish, there are many factors that can affect whether the propellant in any particular inflator in any particular MBV could degrade over time and become unstable, including environmental factors, individual usage, and maintenance, and vehicle design and construction. Ex. 3, Warner Report, at 8-11.  Different vehicles (*e.g.*, SUVs, sedans, two-

seaters, etc.) have different airbag deployment requirements and other particular design criteria; there is no "one size fits all" approach when it comes to airbags. *Id.* at 10.

Indeed, plaintiffs' own experts ***admit*** there are "multiple variables that affect the rate of [PSAN] degradation. It's a complex, multi-variant phenomenon." Ex. 2, Baglini Dep., at 312:22-24. Baglini elaborated: "It's a complex and multivaried equation, if you will. There's multiple factors that contribute to it. They don't all have the same sensitivity. Some factors are more significant than other factors . . . there's a lot of complex interaction effects." *Id.*; *see also* Ex. 1, Renz Dep. at 40:17-43:24, 81:23-25 ("[T]he rate of [PSAN] degradation [is] highly variable and a lot of factors."); *id.* at 85:14-17 ("I would agree that *how the inflator is incorporated* into the design – or into *the vehicle is different*. The *significance of that can be highly variable*.") (emphasis added). For example, Renz agreed that things like "moisture content" or "susceptibilities" to moisture in inflator propellants could "differ [among] different manufacturers," as there are "different technologies." Ex. 1, Renz Dep. at 152:20-153:13. Indeed, he conceded that there are significant differences among variants of inflators across vehicle manufacturers, and even among different models of vehicles from the same manufacturer:

> Q. Do you know what the different types or varian[ts] of Takata inflators there are in Takata airbags installed in Mercedes-Benz vehicles?
>
> A. There is ***a significant number of variances*** associated with lots of vehicle manufacturers . . . Do I know every single variant of Takata inflators installed in a Mercedes vehicle, no. But there is a ***significant number of variances*** associated with Takata airbags.
>
> Q. And there can be significant variances even within the same OEM, correct?
>
> A. Yes, based on what the vehicle platform is and the crash dynamics and stuff like that, yes . . . .

*Id.* at 432:22-433:14 (emphasis added).

One of plaintiffs' other experts conceded she is not offering "any opinions about the appropriateness of PSAN generally as a propellant in an airbag inflator." Ex. 4, Deposition Transcript of Jimmie C. Oxley, at 72:19-73:4. Indeed, Oxley further conceded she has no evidence "to believe all inflators containing PSAN are unsafe." *Id.* at 106:14-17. The host of individualized factors make it improper to surmise that a common defect exists across all the different types of airbag inflators in MBVs; "each vehicle and inflator must be assessed individually." Ex. 3, Warner Report, at 13.

Other experts also agree with plaintiffs' and MBUSA's experts on this point. *See, e.g.*, D.E. 4243-11, Exponent, Inc., *Investigation of Takata Inflator Ruptures*, at 26 (July 2016) ("[P]ropellant

degradation can vary due to individual vehicle differences"); D.E. 4243-12, ATK Orbital Report (September 2016), at 5, ("[M]ultiple variables may affect failure probability, such as manufacturing variability, differences in the specific conditions that individual inflators experience (even between two inflators in the same vehicle platform and the same geographic area) and differences in the designs of various Takata inflators").[13]   It is a truism of physics that all things degrade, so the mere fact that non-desiccated PSAN degrades cannot be a "defect."   Rather, as discussed above, the question at class certification is whether the "vast majority" of putative class members have experienced degradation in a manner causing an issue.  *See, e.g.*, *Simmons*, 592 F. Supp. 3d at 1285; *supra*, Argument Section II(B).

MBUSA submits the answer is no—but for class certification purposes, the most relevant fact is that there are undisputed ***differences*** within the putative classes, due to differences in vehicle design and other factors.  As a result, there is no common, classwide answer to the question of defect. *See, e.g.*, *Stockinger v. Toyota Motor Sales U.S.A., Inc.*, 2020 WL 1289549, at *8 (C.D. Cal. Mar. 3, 2020) (plaintiffs bear the burden at class certification to show "a defect, if it exists, is present in ***the same way*** in all Class Vehicles") (emphasis added); *Butler v. Porsche Cars N. Am., Inc.*, 2017 WL 1398316, at *6 (N.D. Cal. Apr. 19, 2017) ("courts have found class treatment inappropriate where 'the relevant components of a device differ'"); *see also, e.g.*, *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (even if a "question is surely a part of" all claims, Rule 23 is not met if that question "must be answered separately" because of differing facts and "particular situation[s]").

As noted repeatedly, despite the collective billions of miles MBVs have driven, there has been only one rupture involving an alleged injury in a disputed matter.  And given the free and effective recall repair, the chance of any further incident is even more remote.  At class certification, the question is ***not*** merely about whether manifestation of the alleged defect is an essential element of the claims (as the Court discussed at the motion to dismiss stage).  A separate line of cases holds plaintiffs cannot establish ***predominance*** where the "vast majority of the proposed class did not

---

[13] The experts retained by other Defendants agree.  *See, e.g.*, D.E. 4243-13, Expert Report of Dr. Robert Wardle, at 8 ¶ 37 ("Mr. Renz and Mr. Baglini also both opine that the presence of PSAN is the proximate root cause of the failure mode.  I disagree with those opinions.  Every major investigator (Fraunhofer ICT, Exponent, NGC) reached similar conclusions regarding the root cause of the field failures.  Takata and the follow-on organization had similar conclusions. . . .  All of these identify the movement of moisture in and out of the 2004 propellant as opposed to a fundamental instability of AN/PSAN as the relevant cause.").

experience" the alleged defect, because of individualized differences in circumstances, alleged injuries, and other relevant factors.  *See, e.g.*, *Butler v. Mattel, Inc.*, 2014 WL 764514, at *1 (C.D. Cal. Feb. 24, 2014; *Simmons*, 592 F. Supp. 3d at 1287; *Ohio State Troopers*, 481 F. Supp. 3d at 1276; *Harris*, 2016 WL 4543108, at *5 ("[C]ourts have held that a class cannot be maintained that includes putative class members who have merely purchased a potentially defective product and have not yet experienced the failure or deficiency.") (citation omitted).

### B. No Common, Classwide Evidence to Support Certification of Plaintiffs' Fraud-Based Claims, Which Are Awash in Individualized Issues

#### 1. Plaintiffs Fail to Prove Predominance as to Their Fraud-Based Claims

Plaintiffs again fail to offer ***proof*** showing their fraud-based claims raise predominating issues that will be proven with classwide evidence in ***this*** case.  Rule 23 requires plaintiffs to proffer evidence—not mere allegations and arguments based on other cases, raising different circumstances. *See, e.g.*, *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (commonality and predominance must "be satisfied by proof presented at the class certification stage rather than deferred to later stages in the litigation"); *Carrera v. Bayer Corp.*, 727 F.3d 300, 311 (3d Cir. 2013) (plaintiffs cannot rest on "assurance" of meeting Rule 23 at some later time).  For failure of proof alone, plaintiffs' motion must be denied.[14]

Plaintiffs have no proof of MBUSA's knowledge of the alleged defect, much less the type of common, classwide proof required for certification.  In addition, reliance, causation, and injury all raise individualized issues in this case—whether based on an omission or misrepresentation theory. Mot. at 24-27, 34-42.  This precludes certification of both the multi-state classes and all the other single-state classes.  Without discussion—let alone proof that analogous facts exist—plaintiffs bluntly contend "[t]here is no reason to depart from [ ] precedents here."  Mot. at 3.  But, as an example, plaintiffs cannot ***prove*** that *Tershakovec* is the same as this case.  In *Tershakovec*, plaintiffs proffered evidence that Ford not only knew about the alleged defect, but programmed it into the

---

[14] Plaintiffs cannot cure their failure of proof on reply—particularly after being on notice of their deficiencies for an entire year.  *See, e.g.*, *Gomes v. Portfolio Recovery Assocs., LLC*, 2019 WL 978806, at *8 (S.D. Fla. Feb. 28, 2019) (denying certification after rejecting "arguments raised for the first time in a reply memorandum [as] not properly before the Court") (citing *Herring v. Sec'y, Dep. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)); *see also* S.D. Fla. L.R. 7.1 ("reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition"); *Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 9178076, at *5 (N.D. Cal. Dec. 17, 2015) (denying class certification because "[p]laintiffs had the initial obligation to present evidence necessary to satisfy the requirements for class certification in their opening motion").

vehicles. *Tershakovec v. Ford Motor Co.,* 546 F. Supp. 3d 1348, 1358(S.D. Fla. 2021) (Moreno, J.). Here, MBUSA did not know about the claimed defect. There is no common core of actions by MBUSA to outweigh the wide-ranging expanse of individualized representations, individualized negotiations, and individualized purchasing decisions—all of which theoretically caused injuries (if any) in highly individualized manners.

### 2.      Plaintiffs Fail to Offer Common, Classwide Proof of MBUSA's Knowledge of the Alleged Defect

Without common proof that MBUSA knew of the alleged defect and took affirmative steps to conceal it from putative class members across the entire class period, plaintiffs cannot obtain certification of claims based on an omissions or fraudulent concealment theory. Certification of fraudulent concealment claims requires, at a minimum, that plaintiffs have common, classwide proof that defendants knew what they were allegedly concealing. *See, e.g.*, *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007). Whether a defendant has knowledge of a defect is an element under all the various laws plaintiffs invoke.[15]

Plaintiffs have *no* evidence that MBUSA knew of the alleged Takata defect in the relevant timeframe—let alone the entire class period from model years 2005 to 2017. As shown above, all MBUSA witnesses consistently testified that they did not even know MBVs had Takata airbags until at or around the time of the recall in early 2016, and plaintiffs misrepresent the single shred of evidence they cite on this issue. *See supra*, Background.

Here, the proposed class definitions require putative class members to have bought their vehicles before the recall applicable to their vehicles, when MBUSA had no knowledge or any reason

---

[15] **AL**: *O'Shea v. OMi Holdings, Inc.*, 2021 WL 4290803, at *12 (N.D. Ala. Sept. 21, 2021). **CO**: *Bristol Bay Prods., LLC v. Lampack,* 312 P.3d 1155, 1160 (Colo. 2013). **DE**: *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2020 WL 5816759, at *10 (Del. Ch. Sept. 30, 2020) **DC**: *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015). **GA**: *King v. United States Bank Nat'l Ass'n*, 2013 WL 4718342, at *5 (N.D. Ga. Sep. 3, 2013). **IA**: *Buck v. The Rsrv.*, 947 N.W.2d 225 (Iowa Ct. App. 2020). **MS**: *Cty. Rd. Baldwyn v. Manchester Anika, LLC*, 2019 WL 3806376, at *5-6 (N.D. Miss. Aug. 13, 2019). **NC**: *Ratcliff v. Am. Honda Motor Co., Inc.*, 2018 WL 342865, at *2 (M.D.N.C. Jul. 23, 2018).**OR**: *State ex rel. Rosenblum v. Johnson & Johnson*, 275 Or. App. 23, 35 (Or. Ct. App. 2015). **RI**: *Francisco v. United States Marshals Serv.*, 2014 WL 652147, at *13 (D.R.I. Feb. 19, 2014). **TN**: *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). **UT**: *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003). **VA**: *Richmond Metro Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E. 2d 344, 346 (Va. 1998). **WV**: *Hinkle v. Safe-Guard Prods. Int'l, LLC*, 839 F. App'x 770, 777 n. 3 (4th Cir. 2020). **WI**: *Childers v. Menard, Inc.*, 2020 WL 5303934, at *8 (W.D. Wis. Sept. 4, 2020). **WA**: *Horst v. Finnigan*, 2007 WL 2985063, at *3 (Wash. Ct. App. Oct. 15, 2007).

to know of any alleged airbag defect in *MBVs*.  The absence of any knowledge, much less uniform knowledge across the class period, defeats commonality and predominance across all of plaintiffs' proposed classes, and precludes certification of plaintiffs' fraud-based claims.  *See, e.g.*, *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 453 (E.D. Pa. 2000) (commonality and predominance are not met where the evidence establishes the defendant's alleged "knowledge of [the alleged defect] varied significantly over the class period"); *Turnbow v. Life Partners, Inc.*, 2013 WL 3479884, at *10 (N.D. Tex. July 9, 2013) (knowledge "could vary at different times [so certification] would not resolve a central issue in one stroke").  None of plaintiffs' authorities allow for class certification in these circumstances. *See, e.g.*, *Steigerwald v. BHH, LLC*, 2016 WL 695424, at *1 (N.D. Ohio Feb. 22, 2016) ("Defendants had reason to know that their claims and representations were false and contrary to scientific evidence, but they continued to advertise the devices as effectively controlling pests."); *Quackenbush v. Am. Honda Motor Co., Inc.*, 2021 WL 6116949, at *5 (N.D. Cal. Dec. 27, 2021) ("Associated documents dated October 2011, April 2012, October 2012, March 2014, and June 2014 all show that Honda knew about an R44 rattle, diagnosed it, and responded with countermeasures.").

*Tershakovec*, unlike this case, involved evidence of a scheme to knowingly conceal a defect—that Ford had purposefully created the defect and then affirmatively concealed it.  Here, the only evidence shows MBUSA did not know of any alleged defect.  *See supra*, Background Sections II, III(B).  Thus, plaintiffs lack an essential element to allow them to prove fraud by common proof: that MBUSA knowingly concealed a defect.  Their fraud-based claims cannot be certified for that reason alone.

### 3.    Highly Individualized Issues of Reliance Defeat Predominance for the Fraud and Consumer Protection Claims

Plaintiffs present no common ***proof*** of exposure to, and reliance on, a common set of affirmative or partial representations, let alone a common scheme to conceal omissions.  *See supra*, Background Sections III(A-B).  Plaintiffs' fraud-based claims require them to show all putative class members were exposed to and then made decisions based on MBUSA's actions.  In some cases, plaintiffs must expressly prove reliance; in others, plaintiffs must show causation, injury, or both.  But the outcome remains the same: plaintiffs' exposure and detrimental reaction to MBUSA's actions is essential.  In this case, these issues are individualized and preclude class certification.  *See Haag v. Hyundai Motor Am.*, 330 F.R.D. 127, 133 (W.D.N.Y. 2019) (collecting cases discussing challenges of certifying classes involving similar facts).

Individualized issues plague plaintiffs' proposed classes.  For example, three of the seven named plaintiffs purchased from unaffiliated third parties (including online marketplaces like Craigslist and other private sellers), meaning MBUSA-authorized dealerships could not serve as a common channel for an alleged misrepresentations or omissions.  D.E. 4495 at 12-13.  Furthermore, there is no single, uniform misrepresentation such as a misleading ad or label.  While plaintiffs allege—without proof—that class members may have seen and relied on Monroney labels, such labels are not on used MBVs comprising most Class Vehicles.  Moreover, plaintiffs point to varied advertisements that are non-actionable puffery.  *See* D.E. 4241 at 8-9.

Plaintiffs also present no evidence to tie MBUSA to their newly added states.  Plaintiffs repeatedly **allege** MBUSA "represent[ed]" that the Class Vehicles had qualities "which they [did] not have" and were "of a particular standard and quality when they [were] not," and that MBUSA "advertis[ed] the Class Vehicles with intent not to sell or lease them as advertised."  D.E. 4522 (Supplement to Second Amended Complaint) ¶¶ 832, 832(a-h).  But plaintiffs offer no **proof** that any absent class members purchased Class Vehicles in those states, let alone that they relied on a common set of advertisements containing uniform representations.

Each of these issues—the lack of common proof of representations, reliance, and causation— is independently sufficient to defeat certification.  Under these circumstances, Eleventh Circuit precedent mandates denial of certification.  *See, e.g.*, *Brown*, 817 F.3d at 1237 ("These claims do not satisfy predominance because their elements of causation [as a result of reliance elements] require individual proof."); *accord Heffner v. Blue Cross & Blue Shield of Ala., Inc*., 443 F.3d 1330, 1344 (11th Cir. 2006) ("In a variety of contexts, we have held that the reliance element of a class claim presents problems of individualized proof that preclude class certification.").

### 4.      Plaintiffs Cannot Use a Presumption to Establish Reliance

Plaintiffs must demonstrate classwide proof of reliance for their fraud-based claims,[16] but

---

[16] *See, e.g.*, **AL**: *Ex parte Gov't. Empls. Ins. Co.*, 729 So. 2d 299, 304 (Ala. 1999). **CO**: *Martinez v. Nash Finch Co.*, 2013 WL 1313921, at *7 (D. Colo. Jan. 30, 2013). **DE**: *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006). **DC:** *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1198 (D.C. 1997). **IA**: *Lee Cty. Mental Health Ctr., Inc. v. Lee Cty. Bd. of Sup'rs*, 2000 WL 1288873, at *5 (Iowa Ct. App. Sept. 13, 2000). **MS**: *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 264 (Miss. 2009). **NC**: *MacFadden v. Louf*, 182 N.C. App. 745, 747 (N.C. Ct. App. 2007). **OR**: *Yeti Enters. v. Tang*, 2017 WL 3478484, at *5 (D. Or. Aug. 14, 2017). **RI**: *Francisco v. United States Marshals Serv*., 2013 U.S. Dist. LEXIS 185205, at *43 (D.R.I. May 31, 2013). **TN**: *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009). **UT**: *Taylor v. Gasor, Inc.*, 607 P.2d 293, 294 (Utah 1980). **VA**: *Metrocall of Delaware, Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 194 (Va. 1993). **WA**: *In re Metro. Secs. Litig.*, 2009 WL

fail to do so.  Plaintiffs instead contend that they are entitled to an "inference" of reliance because the alleged omission is material.  Mot. at 25.  This argument is incorrect and completely unsupported.

The Eleventh Circuit has rejected any presumption or inference of reliance outside the securities context.  *See Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1363 (11th Cir. 2002), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (securities is a "wholly different context than a consumer fraud case, and neither this circuit nor the Supreme Court has extended a presumption of reliance outside the context of securities cases").  *Sikes* explains why the presumption is improper in consumer cases.  First, "class treatment may not serve to lessen plaintiff's burden of proof."  *Id.* at 1365.  Second, the presumption violates Federal Rule of Evidence 301, as presumptions benefit parties "who do not have control of the evidence on an issue."  *Id.* at 1362.  A defendant "has no evidence regarding whether the plaintiffs 'relied' upon misrepresentations."  *Id.* Putative class members control such information.

More importantly, plaintiffs' authorities on this issue are inapt and demonstrate why a presumption of reliance is not available here.  Plaintiffs cite *Vine v. PLS* for the proposition that "an inference of reliance can be established through circumstantial evidence."  But *Vine* involved an affirmative misrepresentation claim under Texas law and turned on common evidence showing the defendant knew its representations would induce reliance.  807 F. App'x 320, 330 (5th Cir. 2020).  By contrast, plaintiffs do not seek to certify any Texas law claims here, and lack common proof MBUSA made an affirmative misrepresentation to each putative class member.  *See supra*, Background Section III(A).  Moreover, MBUSA had no pre-sale knowledge of the alleged defect. *See supra,* Background Sections II, III(B).  Plaintiffs also rely on a case that is no longer good law, *Longden v. Sunderman*, 123 F.R.D. 547 (N.D. Tex. 1988).  The current law in the Fifth Circuit supports **MBUSA's** position.  *See, e.g.*, *Krogman v. Sterritt*, 202 F.R.D. 467, 479 n.16 (N.D. Tex. 2001) ("*Longden* has since been superseded [by the Fifth Circuit] . . . a fraud class action cannot be certified when individual issues of reliance are present").  Plaintiffs' remaining authorities also do not help them, as they turn on clearly distinguishable facts, inapplicable law, or both.[17]

---

36776, at *2-4 (E.D. Wash. Jan. 6, 2009). **WI**: *Staudt v. Artifex Ltd.*, 16 F. Supp. 2d 1023, 1031 (E.D. Wis. 1998). **WV**: *Smith v. First Cmty. Bancshares, Inc.*, 575 S.E.2d 419, 432 (W. Va. 2002).

[17] *See Torres v. S.G.E. Mgmt., LLC*, 38 F.3d 629, 643 (5th Cir. 2016) (finding plaintiffs may infer reliance to prove proximate cause for a RICO claim because "it is reasonable to infer that individuals do not knowingly join pyramid schemes" because "pyramid schemes are inherently

Plaintiffs' reliance on *Tershakovec* is also misplaced.  Plaintiffs contend "the law 'does not require an individualized showing of reliance.'"  Mot. at 25 (citing *Tershakovec*, 546 F. Supp. 3d at 1380).  Plaintiffs omit this Court was discussing California law claims, which are not at issue.  Further, the plaintiffs in *Tershakovec* alleged Ford not only knew about the alleged defect but also intentionally created a lower-grade vehicle that did not live up to the classwide representations.  *Id.* at 1358 ("This was an intentional design choice.").  Here, MBUSA did not design or manufacture the vehicles at issue, much less the airbag inflators—and the record shows MBUSA did not know that some MBVs had Takata airbags until at or around the recall applicable to MBVs.  *See supra*, Background Sections II, III(B).  Thus, MBUSA could not have acted fraudulently, either by making whole or partial representations or by omitting information it knew it had to disclose.  That also differs substantially from the facts in *Tershakovec*.  546 F. Supp. 3d at 1376 (finding that, because Ford made "uniform," knowing representations across the entire class period, regular vehicle transactions were distinct; in normal cases, "there is more than one logical explanation for plaintiff's participation in the transaction").

Plaintiffs' reliance on law from irrelevant jurisdictions by itself requires denial of class certification because they bear the burden of proof.  Although plaintiffs contend "*certain states* . . . permit a rebuttable presumption of reliance for fraudulent omission claims," they only provide authority from Washington.  Mot. at 25.  But plaintiffs cannot rely on any presumption of reliance under Washington law either.  Washington fraud claims involving affirmative misrepresentations require proof of reliance and courts therefore rarely certify them as class actions.  *Grays Harbor*, 242 F.R.D. at 573.  And to obtain a presumption for an omission-based claim in Washington alone, plaintiffs must (i) establish MBUSA knew of and then affirmatively concealed or withheld information, and (ii) present proof of a "common scheme" to conceal information.  *See id.* Plaintiffs provide no evidence of either.  Any proposed presumption of reliance is also inapplicable

---

deceptive and operate only by concealing their fraudulent nature"); *Quackenbush v. Am. Honda Motor Co., Inc.*, 2021 WL 6116949, at *5 (N.D. Cal. Dec. 27, 2021) (finding reliance may be inferred under California law where all putative class members received information from an authorized dealership); *Ebin v. Kangadis Fam. Mgmt. LLC*, 45 F. Supp. 3d 395, 399 (S.D.N.Y. 2014) (inferring reliance because "the item purchased, by labeling itself as 100% Pure Olive Oil, *in effect defined the product.*  Unlike most fraud and negligent misrepresentation claims, it is thus inconceivable that any individual would not have relied on the tin's labeling in its purchase, since otherwise the individual would merely be purchasing a random tin of unknown fluid.") (emphasis added); *Steigerwald*, 2016 WL 695424, at *8 (inferring reliance based on packaging for pest repellant that "does not work at all, in any circumstances").

here, where plaintiffs' allege—but do not prove—homogenous misrepresentations across a variety of mediums. *Weidenhamer v. Expedia, Inc.,* 2015 WL 7157282, at *13 (W.D. Wash. Nov. 13, 2015) (holding "[t]he presumption of reliance does not apply" under Washington law where plaintiffs "rely on a mixture of affirmative misrepresentations and omissions"); *Friedman v. Dollar Thrifty Auto. Grp., Inc.,* 304 F.R.D. 601, 609 (D. Colo. 2015) (rejecting classwide presumption of reliance where record refuted plaintiffs' claim that defendant made misrepresentations and omissions that were "identical, uniform, and made to all purchasers").

### 5. Plaintiffs Do Not Prove Commonality and Predominance for Their Common Law Fraud Claims and the Consumer Protection Claims in GA, NC, ME, OR, RI, and WA

Because plaintiffs are not entitled to a presumption of reliance, proof of reliance is individualized and precludes class certification. *See, e.g.*, *Butler*, 2017 WL 1398316, at *10 ("[I]ndividualized issues predominate[] over common issues . . . where 'the information to which class members were exposed was not uniform; and where the 'evidence established that awareness of a disclosure would almost certainly vary from consumer to consumer.'") (citation omitted). Certification is improper because there is significant variation in the reliance elements of common law fraud among the proposed states.[18]  *See Ford Motor Co. Vehicle Paint Litig.,* 182 F.R.D. at 224 (denying class certification and noting "[a]n accurate jury charge would have to reflect the proper definition and tests for each type of reliance under each state's laws"); *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 455-62 (D.N.J. 1998) (variations in reliance standards precluded finding of predominance); *In re Ford Motor Co. Bronco II Litig.,* 177 F.R.D. 360, 371-72 (E.D. La. 1998).

The laws of all the states at issue also require individualized proof about what a putative class member heard from MBUSA and individualized assessment of how those representations fit into their decision to purchase an MBV.[19]  For example, proving reliance under Alabama and

---

[18] In Colorado, Delaware, Georgia, and Wisconsin, reliance must be *justified*. *See Barfield v. Hall Realty, Inc.,* 232 P.3d 286, 290 (Colo. App. 2010); *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 474 (Del. 1992); *Freebirds v. Coca-Cola Co.,* 2023 WL 227629, at *2 (Ga. App. Jan. 18, 2023); *Hasemann v. Gerber Prods. Co.,* 2016 WL 547759, at *20 (E.D.N.Y. Sep. 28, 2016) (Wisconsin law).  But Alabama, Utah, and North Carolina require a showing of *reasonable* reliance.  *See Ex parte Household Retail Servs. Inc.,* 744 So. 2d 871, 878-82 (Ala. 1999); *Cervantes v. CRST Int'l Inc.,* 2022 WL 2130811, at *31 (N.D. Iowa June 14, 2022) (reasonable reliance required for Utah fraud claims); *Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 342 (4th Cir. 1998) (same for North Carolina fraud claims).

[19] The requirements of AL, DE, GA ME, NC, OR, RI, and WA law similarly preclude certification. **AL**: *Ex parte Household Retail Servs. Inc.,* 744 So. 2d 871, 878-82 (Ala. 1999). **DE**: *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 474 (Del. 1992). **GA**: *Ace Tree Surgery, Inc. v. Terex S.D., Inc.,* 332

Georgia law on a classwide basis can pose an insurmountable hurdle because it would "present[] individual issues of what each member of the class would have done had they known of the supposedly undisclosed facts." *Weidman v. Ford Motor Co.*, 2022 WL 1071289, at *13 (E.D. Mich. Apr. 8, 2022); *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006) ("[T]he reliance element of a class claim presents problems of individualized proof that preclude class certification.").[20]

Here, there is no ***proof*** putative class members were exposed to the same information. Plaintiffs only cite *allegations* in the SAC on this point. *See, e.g.*, Mot. at 14. Unsurprisingly, plaintiffs cannot even agree whether the alleged defect would have made them avoid the purchase or simply pay less. *See id*. at 14-15. Plaintiffs provide no common proof that class members would have been exposed to an affirmative misrepresentation or omission if one had been made. Common proof is critical here as many vehicles are close to two decades old and were the subject of private party transactions, not dealer sales. Again, plaintiffs show the highly individualized nature of the purchase transactions. Some, like Phillips, bought their vehicle over the internet from a private seller, without reviewing any MBUSA ads or materials. D.E. 4180 ¶ 234. Others, like Calhoun and

---

F.R.D. 402, 411 (N.D. Ga. 2019) ("The consumer protection acts of [Georgia] would also require individual inquiries into elements like reliance and actual damages."). **ME**: *Sanford v. Nat'l Ass'n for the Self-Employed, Inc.*, 264 F.R.D. 11, 16 (D. Me. 2010).**NC**: *TJF Servs. v. Transp. Media*, 2020 WL 1870768 at *5 (E.D.N.C. Feb. 13, 2020); *Broussard*, 155 F.3d at 341 (reliance cannot be presumed on a classwide basis in North Carolina). **OR**: *Strawn v. Farmers Ins. Co.*, 350 Ore. 336, 358-59 (2011); **RI**: *Long v. Dell, Inc.*, 93 A.3d 988, 1003 (R.I. 2014); *Zarella v. Minn. Mut. Life Ins. Co.,* 1999 WL 226223, at *8 (R.I. Super. Apr. 14, 1999). **TN**: Hiller v. Hailey, 915 S.W.2d 800, 803 (Tenn. App. 1995). **UT**: *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 462 (Utah Ct. App. 1989); *Henderson v. Henderson*, 495 S.E.2d 496, 499 (Va. 1998). **WV**: *Porter v. Braskem Am., Inc.*, 2020 WL 1942310, at *5 (S.D. W. Va. Apr. 22, 2020).**WA**: *Contos v. Wells Fargo Escrow Co., Ltd. Liab. Co*., 2010 WL 2679886, at *7-8 (W.D. Wash. July 1, 2010); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 2010 WL 2679886, at *8-9 (S.D. Cal. Apr. 23, 2010).

[20] Plaintiffs' cases (Mot. at 26-27) are inapposite. Some involve a different procedural posture. *See, e.g.*, *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256 (W.D. Wash. 2009) (motion to dismiss stage where mere allegations of reliance were sufficient). Others are distinguishable because they involved fraudulent representations that were enumerated in "policies, practices, and procedures" which were "implemented uniformly across all branches and in each state where [defendant] has a presence." *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 142 (D.S.C. 2018). Others actually support MBUSA's position. *Strawn v. Farmers Ins. Co. of Oregon*, 258 P.3d 1199, 1213 (Or. 2011) ("Not all fraud claims will lend themselves to common evidence of reliance . . . *Newman* is a good example of a case that [does] not. As the decision in *Newman* emphasized, the representation at issue there was one of myriad statements made in a sales brochure for the townhouses, a brochure that the evidence did not establish had been given to every putative class member.") (citing *Newman v. Tualatin Dev. Co. Inc.*, 597 P.2d 800, 804 (1979)).

Taylor, purchased from wholly independent car sellers with no interaction with MBUSA, without reviewing anything MBUSA published, or both.[21]   Plaintiffs *allege* a number of press releases and brochures from MBUSA containing puffery about safety, only two of which mention "airbags." D.E. 4026, *Puhalla* Second Amended Complaint ("*Puhalla* SAC") ¶¶ 264 a-g.

Plaintiffs can no longer rely on allegations; they have the burden to marshal classwide proof of exposure to a common misrepresentation.   *See, e.g.*, *Bryant v. Wal-Mart Stores, Inc.*, WL 4333452, at *11 (S.D. Fla. July 15, 2020) (denying certification and noting "[t]he entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses'").   Plaintiffs do not come close to meeting their burden.   Instead, they reference an assortment of disparate ads containing subjective statements like "high level of safety," "high-strength safety passenger compartment," and a "legacy of safety innovation."  Mot. at 8.  The ads are non-actionable puffery because they make only "generalized" and "non-quantifiable" statements of positivity.  *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019); *see also Allen v. FCA US LLC*, 2017 WL 1957068, at *3(W.D. Va. May 10, 2017) (finding statements such as "PICK [the VEHICLE] FOR ITS SAFETY" and "you're surrounded by advanced features designed to keep you safe and secure" unactionable puffery).  Without *proof* MBUSA actually knew of the alleged defect, these generic statements do not "cross the line" from puffery to misrepresentations.  *Puhalla v. MBUSA*, 462 F. Supp. 3d 1304, 1318 (S.D. Fla. 2020).

Plaintiffs also offer no proof that any putative class members, much less a substantial number, were exposed to or reviewed any ads or materials containing actionable misrepresentations or omissions.  *See, e.g.*, *Coffey v. WCW & Air, Inc.*, 2020 WL 3250744, at *6 (N.D. Fla. Mar. 25, 2020) (denying certification because "[p]laintiffs have not met their burden of proving that it is more likely than not that the core omissions were made to a substantial number of the members of their proposed classes").  For example, plaintiffs provide a table of excerpts from ads and car manuals obtained from third-party websites unaffiliated with MBUSA (*e.g.*, procarmanuals.com, auto-brochures.com, carmanual.org, manualzz.com, motorologist.com, etc.). Mot. at App. B.[22]  But plaintiffs do not prove any class member accessed and navigated these obscure websites, or otherwise viewed any of the materials contained in them, before buying a

---

[21] D.E. 4496 ¶¶ 10, 19; D.E. 4180 ¶¶ 74.

[22] Plaintiffs also reference a puffery press release from Mercedes-Benz *Canada*, a completely different entity from MBUSA.  Mot. at App. B, row 113.

vehicle.  Plaintiffs do not even contend they reviewed any of this material.  Mot., *passim*.  Plaintiffs' failure to present common proof of exposure to any materials MBUSA published dooms certification of their fraud-based claims.  *See, e.g.*, *Butler*, 2017 WL 1398316, at \*11 (denying certification where plaintiff "failed to explain what Porsche materials class members viewed prior to purchase, or how class members otherwise interacted with Porsche prior to purchase").

This is precisely a situation where individualized issues will predominate because "there was material variation in the representations made" and "each class member would need to establish what particular marketing material or industry standard he or she observed and relied upon." *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2017 WL 2501756 at \*11-(N.D. Ga. Jun. 9, 2017).  Failure of common proof of reliance is an additional and independent basis to deny certification of plaintiffs' consumer protection statute and fraudulent concealment claims in all at-issue states.  *See supra*, Argument Section IV(B)(4).

### 6.   Individualized Issues of Causation and Injury Defeat Commonality and Predominance for Consumer Protection Claims in CT, HI, ME, NE, NH, OK, OR, VT, and WA

In Connecticut, Hawaii, Maine, Nebraska, New Hampshire, Oklahoma, Oregon, Vermont, and Washington, causation and injury are additional, essential elements of plaintiffs' statutory consumer protection claims.[23]  The lack of common, classwide proof on these elements and the need for individualized transaction-by-transaction inquiries defeats predominance.  *Id.*  Plaintiffs' failure to provide common proof of causation precludes certification.  *See, e.g.*, *Bushbeck v. Chi. Title Ins. Co.*, 2011 WL 131000725 at \*7 (W.D. Wash. Aug. 15, 2011) (denying certification of Washington consumer protection claim based on lack of predominance where individualized proof of causation was required due to defendant's unstandardized practices and statements).

Certification of plaintiffs' consumer protection claims separately fails because there is no common evidence each class member received the same information and would have been exposed to a disclosure about the alleged defect.  *See Cohn v. Massachusetts Mut. Life Ins. Co.*, 189 F.R.D.

---

[23] **CT**: *Harris v. Bradley Mem. Hosp. & Health Ctr., Inc.*, 994 A.2d 153, 173 (Conn. 2010). **HI**: *Lima v. Deutsche Bank Nat'l Trust Co.*, 2021 WL 4722949, at \*3 (D. Haw. Oct. 8, 2021). **ME**: *James v. GMAC Mortg. LLC*, 772 F. Supp. 2d 307, 322 (D. Me. 2011). **NE**: *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 301 (Neb. 2006). **NH**: *Mulligan v. Choice Mortg. Corp. USA*, 1998 U.S. 1998 WL 544431 at \*11 (D.N.H. Aug. 11, 1998). **OK**: *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). **OR**: *Paul v. Providence Health-System Oregon*, 351 Ore. 587, 591-92 (Ore. 2012). **VT**: *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014).

209, 212 (D. Conn. 1999) (denying certification of CUTPA claim because "[t]he lack of uniformity in the thousands of face-to-face transactions at issue ensures the predominance of individual issues"). Whether each class member actually received MBUSA's marketing materials, and whether those materials directly induced that class member to buy a Class Vehicle, are inherently individualized issues that predominate over any common issues of fact. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 607-08 (3d Cir. 2012) (finding no inference of causation could be drawn in case alleging the defendant fraudulently misrepresented and omitted material information about run-flat tires); *Lynn v. Philip Morris U.S.*, 163 A.3d 91, 110 (Del. Super. Ct. 2017) (explaining "courts generally decline to infer class-wide causation in consumer fraud cases" because "the sheer variability in the reasons people engage in a consumer transaction makes a class-wide inference inadvisable"). Causation also cannot be presumed or inferred under Oregon and Washington's consumer protection statutes. *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 542 (D. Mass. Aug. 15, 2017) (declining to certify WCPA class because individualized showing of causation is required); *Pearson v. Philip Morris, Inc.*, 2006 WL 663004, at *12 (Or. Cir. Feb. 23, 2006) (causation cannot be established on a class-wide basis where misrepresentation in question was a failure to disclose).

Plaintiffs contend class certification is appropriate because "MBUSA *uniformly* marketed the Class Vehicles as safe." Mot. at 3 (emphasis added). But they provide no ***proof*** of causation and make no effort to connect the ***non***-uniform alleged misrepresentations to exposure on a classwide basis. *See supra,* Background Section III; Argument Section IV(B)(3). In *Cardenas v. Ford Motor Co.*, the Court acknowledged cases denying certification of consumer protection claims where, as here, plaintiffs present no evidence "that consumers would have received and cared about a disclosure." 2021 WL 5811741, at *13 (S.D. Fla. Dec. 6, 2021) (distinguishing *Justice*, 318 F.R.D. at 696). The Court concluded that fact did not bar certification in *Cardenas* because it found "a permissible inference that purchasers from an ***authorized dealer*** would have been exposed to a disclosure." *Id.* (emphasis added). That inference can never be made here because the vast majority of putative class members purchased *used* vehicles from third-party sellers—and the putative class covers only owners of MBVs at the time of the recalls, which occurred more than a decade after many were originally sold. *See supra*, Background Section III(A); Argument Section I(B). Determining what minority of putative class members purchased MBVs from authorized dealers compounds these individualized issues. Plaintiffs' failure to meet their burden precludes certification of their consumer protection claims.

As discussed above, plaintiffs do not prove MBUSA knew or should have known of the alleged defect at the time of sale. *See supra*, Background and *passim*. Plaintiffs' contention that MBUSA's knowledge of a potential issue with airbags in MBVs can be inferred based on events involving only *other* OEMs' vehicles is misplaced. If that were permissible (it is not), then many putative class members too, would been aware of recalls by other OEMs and therefore reliance and causation would be highly individualized. For example, plaintiff Bridges (NC) first learned of the recall during her time working at Honda, which may have been before she bought her MBV. Ex. 5, Deposition Transcript of Daphne Bridges, at 70:2-17. Certification is improper when class members' own knowledge varies over time. *See, e.g.*, *Marcus*, 687 F.3d at 607-08 (rejecting "presumption of causation" in such circumstances); *Gartin v. S&M Nutec*, 245 F.R.D. 429, 438 (C.D. Cal. 2007); *Lewis Tree Serv. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 235 (S.D.N.Y. 2002) (individualized issues predominated due to, among other things, "the varying states of knowledge over a decade, the knowledge and sophistication of purchasers"). Class certification must be denied because "it is Plaintiff's burden to show that common issues in the case predominate, not Defendant's to show that they do not." *Landen*, 2014 WL 2980977, at *1.

### C.    Plaintiffs' Implied Warranty Claims Cannot Be Certified

As with all of plaintiffs' claims, the particular laws of each state where they bought their vehicles govern all putative class members' implied warranty claims. D.E. 3834 at 8-10. Plaintiffs seek to certify a single-state class for breach of implied warranty under Mississippi law. Mot. at 1, 49.[24] The putative class members present individualized facts that, when combined with the varying essential elements of breach of implied warranty claims under Mississippi law—including manifestation—preclude class treatment.

### 1.    Individualized Issues of Manifestation Preclude Certification

Early in this MDL, the Court allowed plaintiffs' implied warranty claims past the pleading stage without alleging manifestation of the defect at issue. But the Court repeatedly emphasized its "analysis" on manifestation (as well as other legal elements) "[was] limited to the motion to dismiss stage" and would be addressed at later stages in the litigation. *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016); 2016 WL 6072406, at *10 (S.D. Fla. Oct. 14,

---

[24] Plaintiffs do not move to certify a Rhode Island implied warranty claim. *See* Mot. at 1-2 (omitting claim); *id.* at 48-49 (same).

2016) (same); 2017 WL 2406711, at *10 (S.D. Fla. June 1, 2017) ("[T]he issue of whether the alleged defect manifested itself within the [implied warranty period] requires further factual development."). Plaintiffs must now submit proof that the alleged airbag defect manifested within the warranty period or during product ownership to certify their Mississippi implied warranty claim. *See Jarman v. United Indus. Corp.*, 98 F. Supp. 2d 757, 768 (S.D. Miss. 2000) (dismissing implied warranty claims and holding "[u]nless there is actually a failure in product performance, there is no basis at all for claiming that the plaintiff has been damaged in any way."). In *Brown*, the Eleventh Circuit held that before certifying implied warranty classes, a district court *must* determine whether the applicable state's law "require[s] … manifestation of the defect" and, if so, whether the issue demands "individualized proof." 817 F.3d at 1237-38.

Here, plaintiffs fail to present any proof of manifestation of the alleged defect in *any* MBVs in Mississippi. Instead, plaintiffs claim a de facto breach based solely on the speculative "risk" of manifestation. Mot. at 28. But that is not the law. Plaintiffs do not cite any cases certifying a Mississippi implied warranty claim. And in analogous cases involving Takata airbags, courts have dismissed claims for failure to prove manifestation, even where plaintiffs asserted a risk of malfunction. *See, e.g.*, *McGee,* 612 F. Supp. 3d at 1061 ("While Plaintiff and Mrs. McGee contend that they have lost faith and confidence in the safety of the vehicle due to the Takata Recall, Plaintiff 'provides no support for the proposition that a remote fear or expectation of failure is sufficient to establish [an implied warranty claim]."). Moreover, the burden of proving manifestation cannot be discarded based on the nature of the defect alleged. *See In re Toyota Motor Corp.*, 2012 WL 12929769, at *10 (C.D. Cal. May 4, 2012) (observing that the majority rule requiring proof of manifestation "ma[k]e[s] no distinction between defects that could lead to 'sudden, unexpected, and catastrophic consequences,' and those that could not"). Plaintiffs' only "evidence" are the recall notices themselves. Mot. at 28. But "the existence of the Takata Recall, **without any related malfunction**, is insufficient to raise a genuine dispute of material fact that the vehicle was unfit for its intended use." *McGee*, 612 F. Supp. 3d at 1061 (emphasis added).

## 2. Individualized Issues of Merchantability Defeat Predominance

"Merchantability"—whether the product is fit for its ordinary use—is an essential element of a Mississippi implied warranty claim. *See Shelter Ins. Co. v. Ford Motor Co.*, 2006 WL 318821, at *6 (N.D. Miss. Feb. 9, 2006). The basic inquiry is whether the vehicle was fit for driving. *See Ford Motor Co. v. Fairley*, 398 So. 2d 216, 219 (Miss. 1981) (finding a car driven over two years

34

for 26,649 miles before experiencing difficulty provided "service as a matter of law [that] negates a breach of implied warranty of merchantability"); *see also McGee*, 612 F. Supp. 3d at 1056, 1061 ("Plaintiff and his wife have continued to drive the vehicle with passengers in the front seat even after receiving notice of the Takata Recall, without ever experiencing any issue with the alleged Takata airbag inflator defect. . . .  Plaintiff fails to raise a genuine dispute of material fact as to the ordinary fitness of his vehicle and summary judgment is appropriate.") (cleaned up).

Plaintiffs have failed to meet their burden of presenting common, classwide proof of merchantability.  Simply alleging a safety "defect" at the time of sale and a subsequent recall is not sufficient *proof* that MBVs are not merchantable.  *See Jarman*, 98 F. Supp. 2d at 768; *McGee*, 612 F. Supp. 3d at 1061-62.  Plaintiffs' own experience shows merchantability is an individualized issue.  Taylor (MS) concedes she continued to drive her vehicle after receiving notice of the Takata recall; her airbags never malfunctioned or deployed for any reason before she had them replaced; and her vehicle provided transportation for as long as she owned it.  D.E. 4496 ¶¶ 22, 24, 25.

### D.    Plaintiffs Fail to Carry Their Burden of Proving the New States' Laws Are Substantially Similar

Plaintiffs seek to certify two multistate classes: (1) a class of persons in twelve states for common law fraud,[25] with Calhoun (GA), Bridges (NC), and Radican (RI) as class representatives; and (2) a class of persons in eight states for alleged violation of consumer fraud statutes, with Radican (RI) as the class representative.[26]

Plaintiffs concede "[i]t falls to [them] to demonstrate the homogeneity of [all these] different states' laws, or at least to show that any variation they contain is manageable."  Mot. at 34 (quoting *Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1180 (11th Cir. 2010)).  To satisfy this burden, "more than a perfunctory analysis is required."  *Sacred Heart*, 601 F.3d at 1180.  "Plaintiff[s] must *credibly demonstrate, through an extensive analysis of state law variances*, that class certification does not present insuperable obstacles and that there are no material variations among the law of the states for which certification is sought."  *Gelfound*

---

[25] These states are Georgia, North Carolina, Rhode Island, Alabama, Colorado, Delaware, the District of Columbia, Tennessee, Utah, Virginia, West Virginia, and Wisconsin.  Mot. at 1-2.

[26] The applicable statutes are the Rhode Island Unfair Trade Practices and Consumer Protection Act, the Connecticut Unfair Trade Practices Act, the Hawaii Act, the Maine Unfair Trade Practices Act, the Nebraska Consumer Protection Act, the Oklahoma Consumer Protection Act, the Vermont Consumer Fraud Act, and the West Virginia Consumer Credit and Protection Act.  Mot. at 1-2.

*v. Metlife Ins. Co. of Conn.*, 313 F.R.D. 674, 679 (S.D. Fla. 2016) (quotations omitted and emphasis added); *Braverman v. BMW of N. Am., LLC*, 2020 WL 6532874, at *2 (C.D. Cal. May 19, 2020) ("[B]ecause Plaintiffs bear the overall burden to establish that class certification is proper, they must first establish, at a minimum, a prima facie case that the other states' substantive laws are substantially similar . . . ."). Plaintiffs do not meet their burden.

Plaintiffs' motion contains no analysis, let alone the "extensive analysis" Rule 23 demands. Instead, plaintiffs merely recite the elements of the various additional states' laws. Mot. at 34-42. Plaintiffs fail to prove "there are no material differences in the elements of a fraud claim" under the laws of *a dozen* states (*id.* at 4), and that "the elements of a claim under [*eight* consumer protection] statutes are the same." *Id.* at 12. Courts routinely find plaintiffs' approach "woefully insufficient to satisfy [their] burden of proving 'an extensive analysis of state law variations." *Smith v. U.S. Bank, N.A.*, 2017 WL 698530, at *12 (S.D. Fla. Feb. 22, 2017) (denying certification where plaintiff's chart "include[d] only the generic elements of [her] claim under the laws of each state"); *Powers v. Gov't Emps. Ins. Co.*, 192 F.R.D. 313, 320 (S.D. Fla. 1998) (plaintiff "fails to carry her burden and merely provides a cursory analysis of the laws of the fifteen states from which the proposed class is comprised."); *Braverman*, 2020 WL 6532874, at *2 (plaintiffs "failed to establish a prima facie case" of substantial similarity where they did not "engage in any sort of meaningful analysis as to the similarities of the various other states' laws").[27]

Here, the laws of the new states have many material variations that warrant denial of class certification. Plaintiffs' "failure to identify, let alone analyze, the variations among the applicable [numerous] states' laws is fatal to [their] motion." *Gelfound*, 313 F.R.D. at 677. Because plaintiffs have not—and cannot—establish substantial similarity between the states' laws, the Court need go no further to deny certification. *See id.*; *Braverman*, 2020 WL 6532874, at *2 ("Judges should not be treated like pigs hunting for truffles buried in briefs; it is not the Court's burden to sniff out a prima facie showing as to the substantial similarity of more than 20 state statutes on plaintiffs'

---

[27] *See also S. Indep. Bank v. Fred's, Inc.*, 2019 WL 1179396, at *18 (M.D. Ala. Mar. 13, 2019) (plaintiffs failed to satisfy burden where their "state-law analysis . . . [was] merely a checklist of the elements of negligence showing that each jurisdiction recognizes the tort and its elements of duty, breach causation, and damages"); *Carrera v. UPS Supply Chain Sols., Inc.*, 2012 WL 12860910, at *7 (S.D. Fla. Sept. 21, 2012) (mere "similarity in states' boilerplate definitions" of claims, without "extensive analysis, let alone any analysis whatsoever, that there are no material variations" in the laws could not meet plaintiffs' burden).

behalf.") (citation omitted).[28]

### 1.    There Are Material Differences Between the Rhode Island Consumer Protection Statute and the Applicable Statutes in the New States

Plaintiffs' conclusory assertion that the consumer protection statutes of Rhode Island, Connecticut, Hawaii, Maine, Nebraska, Oklahoma, Vermont, and West Virginia are "indistinguishable" (Mot. at 34) lacks merit—and in any event does not meet plaintiffs' burden of *proof*. *See, e.g.*, *Gelfound*, 313 F.R.D. at 677 ("Plaintiff[s] must credibly demonstrate" what they merely assert in their Motion). As shown below, significant differences exist between and among these state statutes in terms of pre-suit notice, statutes of limitations, available remedies, and even *whether* non-residents can assert class claims, to name a few. These types of variations defeat predominance and resulted in denial of class certification in many cases.

### a.    Scope of Prohibited Conduct

Plaintiffs' cursory argument that there are no material differences between Rhode Island's consumer protection statute ("RIUTPA") and the other states' statutes because they "are all based on the Federal Trade Commission ['FTC'] Act" (Mot. at 42) is unavailing. While statutes based on the FTC Act may share basic language, "the conduct prohibited by such state legislation varies widely from state to state." *D'Ercole Sales v. Fruehauf Corp.*, 501 A.2d 990, 999 (N.J. App. 1985); *Sacred Heart*, 601 F.3d at 1180 (while jurisdictions may define a particular claim in like manner, uniformity may in fact "unravel[ ] beyond the definition"); *Simmons*, 592 F. Supp. 3d at 1290 (plaintiffs' argument that consumer protection statutes "are materially similar" because they prohibit deceptive conduct was a "misguided attempt to mask the marked differences" between the states' laws).

Citing an antitrust case, plaintiffs assert certification is appropriate because the states in question have harmonized consumer protection statutes. Mot. at 3. In antitrust cases, where all "practices that violate the Sherman Act and other antitrust laws satisfy the standard of unfairness under the FTC Act," discrepancies between tests for whether a defendant has engaged in an unfair practice are limited. *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 574 (S.D.N.Y. 2021). In this case, where MBUSA was not even involved in the sale of vehicles to

---

[28] Plaintiffs cannot remedy this deficiency in their reply brief. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

most plaintiffs, and where circumstances among plaintiffs vary drastically, discrepancies among states' consumer protection statutes could be crucial.

Under RIUTPA, courts consider "(1) [w]hether . . . [the practice] is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers (or competitors or other business men)." *Kennedy v. Acura*, 2002 WL 31331373, at *6 (R.I. Super. Aug. 28, 2002). By contrast, the Maine and West Virginia statutes hinge on three *different* factors. *See In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1873989, at *55 n.62 (D. Kan. Feb. 27, 2020) (both states evaluate whether the alleged practice "(1) causes or is likely to cause substantial injury to consumers; (2) which is not reasonably avoidable by the consumer; and (3) not outweighed by countervailing benefits to consumers or to competition."). Nebraska employs yet a different test. *See State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W. 2d 583, 591 (Neb. 2008) (requiring plaintiffs to "prove that the practice either '(1) fell within some common-law, statutory, or other established concept of unfairness or (2) was immoral, unethical, oppressive, or unscrupulous'"). This "disparity of standards" precludes predominance. *See EpiPen Mktg.*, 2020 WL 1873989, at *57 (denying class certification where plaintiffs asserted claims under five of the eight states at issue because of their varying tests for qualifying conduct).

### b.    Public Interest Requirement

RIUTPA and Nebraska's consumer protection statute ("NCPA") are also dissimilar because the NCPA requires that the alleged misconduct "affect[ ] the public interest." *Oriental Trading Co., Inc. v. Yagoozon, Inc.*, 2016 WL 2859603, at *5 (D. Neb. 2016).[29] Thus, the NCPA does not apply to private transactions such as used car sales between private individuals. *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 142 (Neb. 2000) (NCPA did not apply to fraudulent Jeep sale which "affected no one other than the parties to the transaction" where the "appellee has not shown a sufficient impact indirectly or directly on the public").

Plaintiffs contend this element is "satisfied in cases like this about defective products 'distributed across the country, including in Nebraska.'" D.E. 4585 at 4, citing *Monroe v.*

---

[29] *Compare Laccinole v. Assad*, 2016 WL 868511, at *7 (D.R.I. Mar. 7, 2016) (under RIUTPA, plaintiff must prove "(1) that he was the subject of a deceptive practice or act in connection with the purchase of a service; and (2) that he suffered an ascertainable loss of money or property as a result of the deceptive practice").

*Medtronic, Inc.*, 511 F. Supp. 3d 26, 37 (D. Mass. 2021).  But unlike in *Monroe*, plaintiffs have alleged no facts—much less offered proof—of any vehicle transactions in Nebraska.  And if such transactions do exist, they likely involved mostly private, individual sales gien the age of the class vehicles.  Indeed, two of the named plaintiffs bought their vehicles in private transactions (e.g., Phillips, who bought his car from a private seller on Craigslist).  D.E. 4496 ¶¶ 10, 34.  These private transactions cannot be a basis of an NCPA claim.  *See Nelson*, 605 N.W.2d at 142.  But even if they could, individualized issues of causation would predominate in such purely private transactions to which MBUSA was a complete stranger.  *See* D.E. 4241 at 29.  Plaintiffs have failed to meet their burden of showing substantial similarity between the Rhode Island and Nebraska consumer statutes, precluding certification of the NCPA claim.

### c.   Pre-Suit Notice

Unlike RIUTPA, West Virginia's Consumer Credit Protection Act ("WVCCPA") has a mandatory pre-suit notice requirement.  *See Heater v. Gen. Motors, LLC*, 568 F. Supp. 3d 626, 633, (N.D.W. Va. 2021) ("plaintiff's failure to comply with the mandatory prerequisite . . . bars [him] from bringing a [WVCCPA] claim"); *Mullins v. Ethicon, Inc.*, 2017 WL 345865, at *3 (S.D.W. Va. Jan. 20, 2017) (same).  Courts routinely find that variable notice requirements warrant denial of class certification because they "mean the difference between success and failure." *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1102 (C.D. Cal. 2012).  Plaintiffs' case, *Steigerwald*, 2016 WL 695424, at *9, is distinguishable.  The defendants there failed to identify which states required pre-suit notice and which ones did not.

### d.   Limitation to In-State Residents

Unlike RIUTPA, only Connecticut residents or persons injured in Connecticut can assert class claims under Connecticut's consumer statute ("CUTPA").  *See Kelly v. Beliv LLC*, 2022 WL 16836985, at *7 (S.D.N.Y. Nov. 9, 2022) ("CUTPA bars a nonresident of Connecticut who was injured outside of Connecticut from bringing class action claims under CUTPA.").  Courts deny class certification on this ground.  *See, e.g.*, *Gianino,* 846 F. Supp. 2d at 1101 (predominance requirement was not met because, unlike other states, Connecticut and Illinois' consumer protection statutes "restrict class actions to state residents").

### e.   Statute of Limitations

Many courts have ruled that differences among statutes of limitations preclude class certification. *Gianino*, 846 F. Supp. 2d at 1101 (denying certification because consumer protection

statutes, including those from Connecticut, Hawaii, and Rhode Island, have limitations periods that "vary significantly"); *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *9 (N.D. Cal. Aug. 15, 2016) (finding six-year range in consumer protection statues' limitations periods grounds to deny class certification); *Doll v. Chi. Title Ins. Co.*, 246 F.R.D 683, 688-89 (D. Kan. 2007) (declining to certify class that involved "varying limitations laws for tort claims in the 18 jurisdictions in which the class members resided" because "[t]he complexity of these analyses of differing states' laws makes the class action proposed by plaintiffs unmanageable and weighs against a finding that a class action would be superior").[30]

Here, the applicable limitations periods vary materially and substantially among the states. *See Kellogg v. Key Bank (In re Kellogg)*, 166 B.R. 504, 508 (Bankr. Conn. 1994) (three-year period under CUTPA); *Wilson v. Johnson*, 2006 WL 1555809 (W.D. Okla. 2006) (same; Oklahoma CPA); *McLauchlan v. Boyd*, 2012 WL 13018730, at *8 (D. Haw. Apr. 26, 2012) (four years; Hawaii UDAP);[31] *McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420, 424 (Me. 2009) (six years; Maine UTPA); *Kaplan v. Morgan Stanley & Co.*, 987 A.2d 258, 262 (Vt. 2009) (six years; Vermont CFA); *cf.* D.E. 4519 at 19 (plaintiffs arguing RIUTPA is ten years).  The availability of various tolling doctrines also differs among states, compounding the disparities among class members from the different states.  *Compare Taylor v. Philip Morris Inc.*, 2001 WL 1710710, at *4 (Me. Super. May 29, 2001) (discovery rule applicable to Maine UTPA) *with McLauchlan*, 2012 WL 13018730, at *8 ("[T]he discovery rule does not apply" to Hawaii's UDAP).  Accordingly, these differences warrant denial of class certification.

### f.   **Statutory Exemptions**

As MBUSA demonstrated in its pending summary judgment motions, RIUTPA exempts claims for defective auto parts.  *See* D.E. 4495 at 19-20; D.E. 4311 at 21.  Similarly, New Hampshire and Oklahoma's consumer protection statutes exempt conduct governed elsewhere by other federal or state laws, including their own state statutes and administrative codes.  *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1111 (N.D. Cal. 2021) (dismissing

---

[30] Plaintiffs' assertion that individual variations in statutes of limitations rarely defeat predominance is based on a federal antitrust case, where statutes of limitation are routinely tolled due to fraudulent concealment and where evidence of obscuring the fraudulent conduct was rampant and uniform.  *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160-162 (3d Cir. 2002).

[31] Neb. Rev. Stat. Ann. § 59-1612 (same; NCPA); *Silvious v. Coca Cola Co.*, 2012 WL 1155214 at *4 (N.D.W. Va. Apr. 5, 2012) (same; WVCPPA); *Short v. Amerada Hess Corp.*, 2019 WL 1430106, at *20 (D.N.H. Mar. 29, 2019) (same; New Hampshire CPA).

such claims because Toyota's alleged false representations about fuel tank size were covered by other laws).  Such an exemption does not apply to plaintiffs' other state-law claims, underscoring yet again the heterogeneity of their new claims.  Plaintiffs argue that *In re Toyota* extends only to false advertising claims and not design defects, but the court there found that the OCPA exemption applied because plaintiffs' consumer protection claims focused on "how [defendants] allegedly advertised and represented their fuel tank capacity."  534 F. Supp. 3d at 1111.  Plaintiffs' misrepresentation claims against MBUSA turn on the same concept, and are similarly exempted.

### g.      **Personal, Family, or Household Purposes**

Plaintiffs admit their Rhode Island, Hawaii, Maine, Nebraska, Oklahoma, and Vermont statutory fraud claims may be brought only by "consumers" who purchased vehicles "for personal, family, or household purposes."  D.E. 4552 ¶¶ 830, 830b, 830c, 830d, 830f, 830g.  Plaintiffs offer no evidence showing that the purpose behind any vehicle purchases can be gleaned from MBUSA's records.  Nor could they, as many (if not most) putative class members purchased vehicles in private or third-party transactions wholly unaffiliated with MBUSA.  Accordingly, the Court "would have to undertake an individual inquiry" into whether each vehicle sale in these states "was to a consumer as defined by the statute[s], further weighing against certification."  *Weidman*, 2022 WL 1071289, at *14; *see also Corder v. Ford Motor Co.*, 283 F.R.D. 337, 344 (W.D. Ky. 2012) ("[B]efore Ford may be deemed liable to any prospective class member . . . it must be established that the person's primary reason for purchasing a truck was for personal, family, or household use.  That requires an individualized inquiry [which] would quickly subsume any trial in this matter.").

### h.      **Available Remedies**

Plaintiffs' remedies also differ among their multi-state classes.  Although RIUTPA permits punitive damages, *see* R.I. Gen. Laws §§ 6-13.1-5.2, several other statutes bar or limit recovery for punitive damages.  *See* Me. Rev. Stat. Ann. tit. 5, § 213 (limiting recovery to "actual damages," fees, and costs); N.H. Rev. Stat. §§ 358-A:10-a (same); Okla. Stat. tit. 15, § 761.1 (limiting fee awards to $ 10,000 and civil penalties for consumer fraud to $ 2,000 per violation);[32] W. Va. Code Ann. 46A-6-106(a) (limiting recovery to "actual damages or two hundred dollars, whichever is

---

[32] Moreover, "a person may not bring an action as an aggrieved consumer under [Oklahoma's CPA] solely as a result of his or her payment of the purchase price for that product."  *Sisemore v. Dolgencorp, LLC*, 212 F. Supp. 3d 1106, 1110 (N.D. Okla. 2016).

greater"). Predominance is not met where, as here, plaintiffs seek punitive damages. *See* D.E. 4026 at ¶ 848 ("Plaintiffs and the Rhode Island Consumer Sub-Class also seek punitive damages . . ."); *Gray v. Bayer Corp.*, 2011 WL 2975768, at *5 (D.N.J. July 21, 2011) (A "number of states, including Maine, Oklahoma, and West Virginia, limit recovery or do not allow for punitive damages in consumer fraud actions," while other states, "such as Connecticut, Delaware, Kentucky, and Oregon, place no limits on the punitive damages available in consumer fraud actions"); *Darisse*, 2016 WL 4385849, at *10 ("the materiality of these differences [in available damages] is obvious" where plaintiffs allege multiple types of damages when seeking to certify a class across many consumer protection statutes).

### i.     Manifestation of Defect and Other Substantial Variations

Plaintiffs also do not satisfy predominance because there are many other variations between the states. For instance, unlike RIUTPA, manifestation of the alleged defect is a prerequisite to a statutory claim in New Hampshire and Oklahoma. *See Nichols v. Gen. Motors Corp.*, 1999 WL 33292839, at *3 (N.H. Super. Dec. 13, 1999) ("The requirement of a manifestation of the defective condition applies to causes of action for . . . violation of the Consumer Protection Act. . . . Because the alleged unsafe condition has not manifested itself in terms of an actual malfunction in plaintiff's seat causing her injury or damage as a result, none of such causes of action can arise."); *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 125 (N.Y. Ct. App. Mar. 28, 2002) (same; applying New Hampshire law); *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *36 (S.D.N.Y. July 15, 2016) (finding manifestation required under OCPA).

Similarly, individual reliance is an essential element under Maine's statute, *see Larsen v. Vizio, Inc.*, 2017 WL 3084273, at *4 (C.D. Cal. June 26, 2017), but not in Rhode Island. In addition, a duty of disclosure is not an essential element of Vermont's consumer protection law. *Cohen v. Subaru of Am., Inc.*, 2022 WL 714795, at *29 (D.N.J. Mar. 10, 2022) ("Court's research did not identify a duty to disclose requirement for omission-based VCFA claim.").

\* \* \*

"None of the foregoing differences are trivial. The differences are material. . . . They involve the essential requirements to establish a claim. They involve the types of relief or remedies available to a plaintiff. Many of them will mean the difference between success and failure." *Gianino*, 846 F. Supp. 2d at 1102. They show that Radican's RIUTPA claim is not "substantially

similar" to the claims of putative class members in the remaining seven states.

Separately, MBUSA demonstrated that there is no common, classwide *proof* of MBUSA's knowledge of the alleged defect, its duty to disclose, or alleged misrepresentations. *See supra*, Background Sections II, III. Plaintiffs identify no predominating, uniform misrepresentations or omissions made to any putative class members in the new states, let alone prove the content or time frame of any misrepresentation/omission. Many vehicle purchases likely involved purely private transactions with no connection to MBUSA. Here, again, highly individualized issues of reliance defeat predominance as they "necessarily entail individualized factual analysis" and thwart economies of time and scale, thereby defeating class certification. *Rosen v. Chrysler Corp.*, 2000 WL 34609135, at *9 (E.D. Mich. July 18, 2000).

### 2. There Are Material Differences Between the Laws of Georgia, North Carolina, Rhode Island, and the New States Concerning Fraud

Plaintiffs are incorrect in claiming there are "no material differences in the elements of a fraud claim" under the laws of Georgia, North Carolina, Rhode Island, Alabama, Colorado, Delaware, the District of Columbia, Tennessee, Utah, Virginia, West Virginia, and Wisconsin. Mot. at 34. There are material variations precluding a finding of predominance.

### a. Duty to Disclose

Variations in the duty of disclosure mandate denial of class certification. *See, e.g.*, *Monopoli v. MBUSA, LLC*, 2022 WL 409484, at *11 (N.D. Ga. Feb. 10, 2022) ("North Carolina law differs from Georgia law on when a duty to disclose arises."). In Rhode Island, a duty to disclose "typically arises in commercial transactions." But "Wisconsin does not explicitly recognize a duty to disclose in consumer transactions." *Naparala v. Pella Corp.*, 153 F. Supp. 3d 884, 894 (D.S.C. 2015); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004).

Alabama, North Carolina, and Tennessee do not impose a duty to disclose upon automobile companies unless plaintiffs bought from an authorized dealer. *See Pinon v. Daimler AG*, 2019 WL 11648560, at *17 (N.D. Ga. Nov. 4, 2019) (applying Alabama, North Carolina, and Tennessee law; holding no duty to disclose for plaintiffs who did not buy from a Mercedes-Benz dealer); *Ponzio v. MBUSA, LLC*, 447 F. Supp. 3d 194, 232 (D.N.J. 2020) (dismissing North Carolina fraudulent concealment claim where plaintiff "fails to allege" he "purchased his Class Vehicle

from an authorized Mercedes dealership" and no special relationship or duty to disclose existed).[33]

In Virginia, Utah, and the District of Columbia, a duty to disclose exists only where the parties have a fiduciary or other special relationship. *Hammerschmidt v. GM LLC*, 583 F. Supp. 3d 1215, 1222-1223 (D. Minn. 2022) (applying Virginia law); *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 287 (Utah 2006); *Jefferson v. Collins*, 905 F. Supp. 2d 269, 287 (D.D.C. 2012) ("a duty to speak arises in the fraud context only when there is some special relationship or contract between the parties justifying the imposition of a duty").

Delaware does not impose a duty to disclose based on superior knowledge of material facts in an arm's-length setting. *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 52 (Del. Ch. 2015) ("any claims of fraud in an arms' length setting necessarily depends on some form of representation" and "cannot start from an omission" even based on material facts of which one party "knows the other is ignorant"). Likewise, in Colorado, "[n]o fiduciary duty is owed" in an "arm's length transaction between an automobile seller and buyer." *Garcia v. Medved Chevrolet, Inc.*, 240 P.3d 371, 380 (Colo. App. 2009), aff'd, 263 P.3d 92 (Colo. 2011).

There is also no duty to disclose in North Carolina when the information was discoverable with diligence. *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *11 (N.D. Ill. Dec. 18, 2015) (no duty to disclose where information about alleged defect could be discovered with reasonable diligence, including searching NHTSA's website); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998) ("if a plaintiff had an alternative source for the information that is alleged to have been concealed from or misrepresented to him, his ignorance or reliance on any misinformation is not reasonable").

Courts regularly deny certification of multi-state common law fraud classes precisely because duties of disclosure vary significantly and require fact-specific analyses. *See, e.g.*, *Mack v. Gen. Motors Acceptance Corp.*, 169 F.R.D. 671, 677 (M.D. Ala. 1996) ("[T]he court will have to examine all of the facts and circumstances of the transaction between the class member and the automobile dealer to determine whether a duty to disclose arose under the applicable state law. Such a determination will involve literally hundreds of thousands if not millions of individual factually complex hearings."); *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998) (denying certification of multi-state common law fraud class in part because of

---

[33] *See also Mason v. Chrysler Corp.*, 653 So. 2d 951, 955 (Ala. 1995); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1352 (N.D. Ga. 2015).

"state law variations" on duty of disclosure); *Decker v. Mazda Motor of Am., Inc.*, 2013 WL 12129281, at *7 (C.D. Cal. Mar. 29, 2013) (holding common issues were "overwhelmed by individualized factual issues regarding Mazda's duty to disclose"); *Lloyd v. Gen. Motors Corp.*, 266 F.R.D. 98, 111 (D. Md. 2010). For this reason, plaintiffs' limited focus on a single factor—a defendant's knowledge (Mot. at 39-32)—is unavailing. Law may "differ among the states only in nuance," "[b]ut nuance can be important." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995). In any event, there is no common proof of MBUSA's pre-sale knowledge of an alleged defect. *See supra*, Background Sections II, III(B).

### b.   <u>Evidentiary Burden</u>

The evidentiary burden for common-law fraud in the pertinent jurisdictions also varies substantially. Colorado, District of Columbia, Utah, Virginia, West Virginia, and Wisconsin require proof of fraud by clear and convincing evidence,[34] while Alabama, Delaware, North Carolina, Rhode Island, and Tennessee employ a preponderance of the evidence standard.[35] Courts have routinely held that differing burdens of proof are grounds to deny class certification. *See, e.g.*, *CC Invs. Corp. v. Raytheon Co.*, 2005 WL 1026904, at *2 (D. Del. Apr. 22, 2005); *Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. at 222; *Darisse*, 2016 WL 4385849, at *13; *Zarrella v. Minn. Mut. Life Ins. Co.*, 824 A.2d 1249, 1266 (R.I. 2003).

### c.   <u>Reliance</u>

Variations in the reliance element of common law fraud also require the denial of class certification. In Colorado, Delaware, Georgia, and Wisconsin, reliance must be *justified*. *See Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010); *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 474 (Del. 1992); *Freebirds v. Coca-Cola Co.*, 2023 WL 227629, at *2 (Ga. App. Jan. 18, 2023); *Hasemann v. Gerber Prods. Co.*, 2016 WL 5477595, at *20 (E.D.N.Y. Sep. 28, 2016) (Wisconsin law). On the other hand, Alabama, Utah, and North Carolina require a showing of *reasonable* reliance. *See Ex parte Household Retail Servs. Inc.*, 744 So. 2d 871, 878-82 (Ala.

---

[34] *Cox v. Johnston*, 484 P.2d 116, 118 (Colo. App. 1971); *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977); *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 43 (Utah 2003); *Darisse*, 2016 WL 4385849, at *13 (fraud in Virginia must be proven by clear and convincing evidence); *Bowens v. Allied Warehousing Servs., Inc.*, 729 S.E.2d 845, 851 (W. Va. 2012); *Kensington Dev. Corp. v. Israel*, 419 N.W.2d 241, 245 (Wis. 1988).

[35] Alabama Evidence 3d § 3:29 (Aug. 2022 ed.); Del. P.J.I. Civ. § 16.1 (2000) (Delaware); *Hudgins v. Wagoner*, 694 S.E.2d 436, 446 n.8 (N.C. Ct. App. 2010); *Halpert v. Rosenthal*, 267 A.2d 730, 737 (R.I. 1970); *Elchlepp v. Hatfield*, 294 S.W.3d 146, 150 (Tenn. App. 2008).

1999); *Cervantes v. CRST Int'l Inc.*, 2022 WL 2130811, at *31 (N.D. Iowa June 14, 2022) (reasonable reliance required for Utah fraud claims); *Broussard*, 155 F.3d at 342 (same for North Carolina fraud claims). These variations preclude class certification. *Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. at 224 (denying class certification and noting "[a]n accurate jury charge would have to reflect the proper definition and tests for each type of reliance under each state's laws"); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 455-62 (D.N.J. 1998) (variations in reliance standards precluded finding of predominance); *In re Ford Motor Co. Bronco II Litig.*, 177 F.R.D. 360, 371-72 (E.D. La. 1998). Additionally, since none of these states allows a class-wide presumption of reliance,[36] plaintiffs' fraud claims all necessarily require individualized determinations of reliance, rendering them unsuitable for class treatment. *See Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006) ("[T]he reliance element of a class claim presents problems of individualized proof that preclude class certification."); *Weidman*, 2022 WL 1071289, at *13 (denying class certification of Alabama and Georgia common law and statutory fraud claims because proving reliance "presents individual issues of what each member of the class would have done had they known of the supposedly undisclosed facts").

### d. Intent to Deceive

Differences also exist among the applicable states' fraud laws on intent to deceive. Alabama only requires "ignorance of truth." *Smith v. Reynolds Metals Co.*, 497 So. 2d 93, 95 (Ala. 1986). In North Carolina, "intent to deceive" is an "essential element" of a fraud claim. *Cummings v. Carroll*, 866 S.E.2d 675, 693 (N.C. 2021); *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000) (same for Rhode Island); *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014) (same for Virginia); *Anderson v. Kriser*, 266 P.3d 819, 824-825 (Utah 2011) (defendant must have "a willful intent to deceive" in Utah) (cleaned up); *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (Colo. 2018) (Colorado requires proof defendant intended that the concealment be acted on). In the District of Columbia, fraud

---

[36] *Zarella v. Minn. Mut. Life Ins. Co.*, 1999 WL 226223, at *8 (R.I. Super. Apr. 14, 1999); *Household Retail Servs. Inc.*, 744 So. 2d at 878-82; *Garcia*, 240 P.3d at 381; *Gaffin*, 611 A.2d at 474; *Bennett*, 377 A.2d at 57; *Broussard*, 155 F.3d at 341 (reliance cannot be presumed on a class-wide basis in North Carolina); *Hiller v. Hailey*, 915 S.W.2d 800, 803 (Tenn. App. 1995); *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 462 (Utah Ct. App. 1989) (same in Utah); *Henderson v. Henderson*, 495 S.E.2d 496, 499 (Va. 1998); *Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. at 221 (denying certification of multistate class because Delaware, Georgia, and Wisconsin reject presumption of reliance for common law fraud cases); *Porter v. Braskem Am., Inc.*, 2020 WL 1942310, at *5 (S.D. W. Va. Apr. 22, 2020).

also requires intent to deceive, but is inferable by facts showing falsity was knowingly stated. *Bennett*, 377 A.2d at 59-60. Wisconsin also requires intent to defraud and to induce another to act on it. *Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA*, 590 N.W.2d 1, 7 (Wis. App. 1998). Again, courts find these differing standards mean predominance is lacking, precluding class certification. *See, e.g.*, *Gianino*, 846 F. Supp. 2d at 1101.

### e.   Test for Materiality

The new states' laws also differ on the test for materiality. Alabama, North Carolina, Utah, and Virginia employ a subjective test. *See Bank of Red Bay v. King*, 482 So. 2d 274, 282 (Ala. 1985) (fact is material if it is "of such a nature as to induce action on the part of the complaining party"); *In re Cook*, 2017 WL 532286, at *5 (Bankr. M.D.N.C. Feb. 9, 2017) ("[A]n omission or concealment of a fact is material if, had the party known the fact, it would have influenced the party's judgment or decision to act."); *In re Guardianship of A.T.I.G.*, 293 P.3d 276, 287 (Utah 2012); *J.E. Robert Co. v. J. Robert Co.*, 231 Va. 338, 345 (1986). By contrast, Colorado, Delaware, D.C., Georgia, Rhode Island, and Wisconsin use an objective test. *See Rocky Mountain Expl., Inc.*, 420 P.3d at 234 (Colorado) ("A fact is material if a reasonable person under the circumstances would attach importance to it in determining his or her course of action."); *FinClusive Capital, Inc. v. Q2 Software, Inc.*, 2021 WL 5225860, at *11 (Del. Super. Oct. 28, 2021); *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015); *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1337 (N.D. Ga. 2021); *C & G Realty, LLC v. Salvatore*, 2015 WL 3923346, at *3 (R.I. Super. Jun. 19, 2015); *Brown v. First Capital Sur. & Trust Corp.*, 2011 WL 6032714, at *3 (Wis. App. Dec. 6, 2011).

### f.   Manifestation of Defect and Other Substantial Variations

There are material variations among several other elements of common law fraud that also defeat predominance. For example, while Rhode Island does not require a defect to manifest to recover in tort, manifestation of the alleged defect is a required element for fraud in Alabama, Delaware, Utah, and Wisconsin. *See Weidman*, 2022 WL 1071289, at *14 (finding purchasers of an allegedly defective product have no legally recognizable Alabama fraud claim where the alleged defect has not manifested, and denying certification because "confirm[ing] manifestation would require individualized adjudication for each class member").[37]   Tennessee's economic loss

---

[37] *Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998) ("[P]laintiffs may not recover based solely upon the risk that their vehicles could malfunction in the future, given the lack of any claims

doctrine also bars fraud claims premised on misrepresentations and omissions about alleged vehicle defects whereas, for example, Rhode Island law has no such doctrine. *See Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1104 (S.D. Fla. 2019). Additionally, Tennessee has a "general rule" that "oral rather than written communications [are] inappropriate for treatment as a class action" because of the "highly individualized nature of the statements between class members and defendants." *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 312-313 (Tenn. 2008) (denying class certification "[g]iven the individual nature of each transaction [to buy an automobile]" and finding no predominance of law or fact). [38]

## V.   PLAINTIFFS FAIL TO ESTABLISH SUPERIORITY

Plaintiffs have a "high burden to establish the superiority of proceeding as a class action." *Shiflett v. Viagogo Ent.*, 2021 WL 4948144, at *8 (M.D. Fla. July 16, 2021). A court's "predominance analysis has a tremendous impact on [its] superiority analysis . . . [T]he less common the issues, the less desirable a class action will be as a vehicle for resolving them." *Sacred Heart*, 601 F.3d at 1184 (citation and quotation omitted). This is because "a class action containing numerous uncommon issues may quickly become unmanageable." *Id.* The many differences among states' laws, demonstrated above, defeats superiority. *Id.* ("[T]he lack of predominance belies any suggestion that a *fair* administration of the class claims could save[] the resources of both the court[] and the parties.") (emphasis in original; citation and quotation omitted); *Powers v. Gov't Emps. Ins. Co.*, 192 F.R.D. 313, 319 (S.D. Fla. 1998) (no superiority where plaintiff "failed to address the difficulties posed by the variations" in several states' laws). Plaintiffs concede superiority is not met if they fail to prove predominance. *See* Mot. at 47; *Cooper v. S.*

---

indicating manifest injury."); *Dalton v. Ford Motor Co.*, 2002 WL 338081, at *5 (Del. Super. Feb. 28, 2002) (same in Delaware); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1214-1215 (10th Cir. 2012) (same in Utah); *Tietsworth*, 677 N.W.2d at 240 (no fraud claim "where the allegedly defective product has not actually malfunctioned . . . mere possibility of future product failure is too speculative and uncertain to support a fraud claim" in Wisconsin).

[38] Because plaintiffs fail to meet their burden of proving that the laws of the new states are substantially similar to the laws governing their claims, class certification must also be denied for lack of adequacy and typicality. *See In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. 312 (E.D.N.C. 2009) ("'[The] adequate representation requirement overlaps with the typicality requirement' [and] Plaintiffs here have not met their burden of showing that the claims of the prospective class representatives would take into account the variations in state law that preclude a finding of typicality."); *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) ("[T]he test is whether [plaintiff's] claims are typical, not whether she is. Given the differences among the state laws, it cannot be said that [plaintiff's] claims are 'typical' of the class").

*Co.*, 390 F.3d 695, 723 (11th Cir. 2004).

Plaintiffs' authorities (Mot. at 2-3) do not compel a different conclusion.  For example, plaintiffs' heavy reliance on antitrust class actions is misplaced because, unlike fraud, antitrust laws are typically uniform across the states and have far less rigorous elements.  *See id.* at 3 n.6 (citing *In re Namenda Indirect Purchaser Antitrust Litig.*, 2022 WL 4298767, at *10 (S.D.N.Y. Sept. 19, 2022) (burden of establishing the required elements of antitrust claims is "not as rigorous as in other types of cases")).

Plaintiffs also rely on inapt cases in which—unlike here—the fraud claims relied exclusively on specific, written misrepresentations.  *See id.* (citing *Suchanek v. Sturm Foods*, 764 F.3d 750 (7th Cir. 2014) (false advertising claim based on uniform packaging)); *id.* at 5 n.7 (citing *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 661 (S.D. Fla. 2015) (bank used "standardized computer software" to manipulate customers' accounts "in the same manner to all class members")).  Indeed, although plaintiffs have no *proof* of any specific uniform misrepresentations, they *allege* a mix of mediums through which they were allegedly deceived, including verbal communications with vehicle salespersons, which require individualized inquiries.  *See, e.g.*, *Walker*, 249 S.W.3d at 312 ("Courts have generally denied certification of oral communications because of the highly individualized nature of the statements between class members and defendants… These [oral statements] were not part of a standardized written contract, nor were they even part of a canned sales pitch where every customer heard the same explanation from the salesperson."); *Household Retail Servs. Inc.*, 744 So. 2d at 878 ("In cases involving a mix of both oral and written misrepresentations, courts generally find that the claims of the class members are not sufficiently similar to allow class treatment.").  Recent cases clarify this distinction is dispositive.  *See Passman v. Peloton Interactive, Inc.*, 2023 WL 3195941 (S.D.N.Y. May 2, 2023) (denying certification where the "evidence suggest[ed] many of the purchasers were not exposed to" alleged false statements and distinguishing from cases where the "allegedly false statement appears directly on the product label or packaging and the consumer thus would inevitably be exposed to the statement at the point of purchase").

Moreover, the product defect cases plaintiffs cite do not help them because they involve defects that manifest uniformly among all plaintiffs.  *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 484 (N.D. Ill. 2009); *Steigerwald v. BHH, LLC*, 2016 WL 695424 (N.D. Ohio Feb. 22, 2016).  By contrast, the undisputed evidence shows ***none*** of plaintiffs' airbags malfunctioned—and now with

the undisputedly free and effective recall repair, never can.  *See* D.E. 4496 ¶¶ 14, 17, 24, 29, 37, 41, 46.

Plaintiffs also get it backward, claiming they meet superiority because there is "no evidence" individuals would assert separate actions.  *See* Mot. at 47; *see also id.* at 5 (claiming without support that "the courthouse doors will be closed to almost all of these consumers unless a Class is certified"). MBUSA does not have the burden of proof, but individuals have litigated claims much like the ones at issue here.  *See, e.g.*, D.E. 4243-18 (*Keenan v. MBUSA et al.*, No. 58-18 (Albany Cnty. Ct. July 26, 2018)); *McGee*, 612 F. Supp. 3d 1051; *Heard*, 2020 WL 12857432020.  Thus, plaintiffs' failure of proof on this Rule 23 requirement is another independent basis to deny certification.

Furthermore, courts have repeatedly found that an effective, cost-free recall program, such as the one MBUSA implemented here, precludes a finding of superiority under Rule 23(b)(3).  *See Chin v. Chrysler Corp.*, 182 F.R.D. 448, 463 (D.N.J. 1998) (finding a class action was not superior to defendant's NHTSA-supervised recall of anti-lock brake systems); *In re ConAgra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 701 (N.D. Ga. 2008) ("In this case there is no overriding factor suggesting class certification is superior" where defendant instituted a recall); *Daigle v. Ford Motor Co.*, 2012 WL 3113854, at *5-6 (D. Minn. July 31, 2012); *Johnson*, 285 F.R.D. at 584 (NHTSA oversight of recall is superior to class action; citing cases holding same, including *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1142 (Fla. 3d DCA 2008)); *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) (superiority requirement not met where defendant offered recall remedy).

## VI.   PLAINTIFFS DO NOT PROFFER ANY VIABLE METHODOLOGY FOR PROVING DAMAGES ON A CLASSWIDE BASIS

Under "Rule 23(b)(3), a plaintiff must also 'establish that damages are susceptible of measurement across the entire class.'"  *Ohio State Troopers*, 481 F. Supp. 3d at 1271 (quoting *Comcast*, 569 U.S. at 35).  "Predominance . . . requires that damages resulting from the injury be measurable on a class-wide basis through use of a common methodology."  *Simmons*, 592 F. Supp. 3d at 1294.  Moreover, "at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case."  *Comcast*, 569 U.S. at 35.  As shown below, plaintiffs' damages model fails to meet their burden of establishing predominance under Rule 23(b)(3) and *Comcast*.

### A.   Dubé's Model Is Not Proper Classwide Proof of "Overpayment" Damages

#### 1.   Dubé's Model Fails to Account for the Impact of Post-Sale Events on Plaintiffs' Benefit-of-the-Bargain Damages Theory

Plaintiffs' expert Dubé acknowledges he only "estimate[d] the impact of defective airbags at the time of the purchase" and did not evaluate "potentially individualized" post-sale factors. D.E. 4243-14, Dubé Rebuttal Report ¶ 33.  Because post-sale developments are relevant to benefit-of-the-bargain damages, Dubé's model is not proper classwide proof.  *See, e.g.*, *GM Ignition Switch Litig.*, 407 F. Supp. 3d 212, 217 (S.D.N.Y. 2019) ("evidence of [defendant's] post-sale repairs is relevant to the calculation of plaintiffs' damages and, indeed, could theoretically limit those damages altogether" for consumer-protection and common law claims).  Indeed, as this Court reasoned in granting Defendants partial summary judgment, if it "were to allow Plaintiffs to recover benefit of the bargain damages without regard for post-sale remedies provided by the Defendants, Plaintiffs would receive 'an immutable damages asset' that may lead to double recoveries," (D.E. 4471 at 14), or put another way, an impermissible "windfall."  *Id.* at 8; *see also* D.E. 4538 at 6 (rejecting plaintiffs' argument "that *Carriuolo* stands for the overarching proposition that post-sale events—such as repairs or recalls that fully fix an alleged defect as no cost—must be ignored in assessing a plaintiff's entitlement to benefit-of-the-bargain damages.  If this were [] correct, then no seller could give or restore a person's benefit-of-their-bargain post-sale, and double recovery would be commonplace.") (citing *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011) ("Plaintiff cannot plausibly allege that he suffered damages insofar as the amount he paid for the product, for he alleges that Defendants issued a voluntary recall")).

Thus, the recall "must be taken into consideration when awarding monetary damages to each Class member.  If not, an award from this lawsuit may overcompensate certain Class members." *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 277 n.30 (E.D. Pa. 2013); *see, e.g.*, *Peckerar v. GM*, 2020 WL 5289919, at *2 (C.D. Cal. May 27, 2020) (as "a matter of common sense," the economic loss injury "no longer exists if Defendant has, through the recall, offered to remove the complained-of defect free of charge"); *Simmons*, 592 F. Supp. 3d at 1288.

The same is true for any other—individualized—circumstance where a class member would be "in essentially the same position he would have been in had Defendant sold him a non-defective [vehicle]."  *Sater v. Chrysler Grp. LLC*, 2016 WL 7377126, at *7 (C.D. Cal. Oct. 25, 2016).  Plaintiffs recognize one such circumstance: where the vehicle is "declared a total loss"

after "an accident."  Mot. at 1, 2.  But this is true for many other circumstances, *e.g.*, where class members intended to gift their vehicles or otherwise transfer them without recouping the purchase price, where the vehicle becomes unusable or untransferrable due to unrelated issues regardless of whether it is covered by insurance (*e.g.*, due to improper modifications), and where class members did not experience the alleged issue during their ownership.  *See, e.g.*, *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, at *28 (D.N.J. Mar. 10, 2022) (rejecting benefit-of-the-bargain theory of ascertainable loss where free repairs were available to plaintiffs, and they did "not allege that they have experienced the symptoms of the Defect in their vehicles . . . or that they received inadequate repairs").  Plaintiffs must show "[i]t is unlikely that differences in the factual background of each [person's] claim will affect the outcome of the legal issue."  *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

At the least, these individualized post-sale circumstances create individualized issues that Dubé's model does not account for.  As a result, class certification is improper.

### 2. Dubé's Model Also Fails to Account for Other Differences Among Various Class Members

Dubé's model ignores other individualized issues as well, such as the need to prove manifestation of the alleged defect under many states' laws.  *See, e.g.*, *Subaru of Am.*, 2022 WL 721307, at *11-12 (dismissing claims under Oregon, Rhode Island, Connecticut, Tennessee, and North Carolina law by plaintiffs whose vehicles never showed symptoms of the alleged defect).

As shown above, there have been an infinitesimal number of alleged inflator ruptures, and no fatalities.  *See supra*, Background Section III(A).  In the Eleventh Circuit, "'[c]ourts have been particularly reluctant' to certify 'classes that include both class members whose product has manifested the deficiency and those whose product has performed satisfactorily.'"  *Ohio State Troopers Ass'n*, 481 F. Supp. 3d at 1274 (citation omitted).  Put another way, "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."  *Id.* at 1276 (citation omitted) (denying certification and collecting cases); *see also Payne v. FujiFilm U.S.A., Inc.*, 2010 WL 2342388, at *4 (D.N.J. May 28, 2010) ("Proving a class-wide defect where the majority of class members have not experienced any problems with the alleged defective product, if possible at all, would be extremely difficult."); *Toyota Unintended Accel.*, 2012 WL 12929769, at *7 ("[A] 'mixed system' that compensates buyers of products that never manifest a defect and buyers of products that manifest the defect overcompensates the buyers

. . . owners of vehicles with a mere propensity to fail would get everything they bargained for if the alleged defect never manifested, or if it was fixed.").

Additionally, Dubé's model does not account for individualized differences between new and used car purchasers.  This is true, even though pricing for new and used cars is obviously different.  Moreover, Dubé's estimates for used car purchasers are entirely speculative.  *See* D.E. 4178 at 37-39.  Although Dubé's model seeks to compensate purchasers of both new and used vehicles, he did ***not*** survey any used car purchasers or model any market encompassing used cars.  *Id.*  Plaintiffs incorrectly contend this "Court's decision in *Cardenas*, together with the Eleventh Circuit's binding precedent in *Carriuolo*, 823 F.3d at 985, leave no doubt that class certification is appropriate here."  Mot. at 28.  Unlike the sprawling ***eighteen*** state classes that plaintiffs seek to certify here, *Cardenas* and *Carriuolo* involved certification under a single state's laws and do not address many of the individualized issues discussed above.

Moreover, unlike here, none of the cases plaintiffs rely on to support Dubé (Mot. at 43-45) involved consumers who subsequently received free replacements of the allegedly defective product, and thus received the benefit of their bargain.  *Cf. Cardenas*, 2021 WL 5811741, at *1 (noting "no repair was completed" on plaintiff Baker's 2012 or 2014 Camry); *Cardenas*, 2021 WL 6926418, at *6 (plaintiff was advised "it would cost $300 for the dealership to open the dashboard and inspect the vehicle," not given a free repair); *id.* at *3 (pointing to defendant's bulletin noting "that procedures could be permitted to minimize the odors at the customer's expense").  Contrary to plaintiffs' assertion that there "is no reason to depart from [these cases] here" (Mot. at 3-4), these prior decisions actually underscore why this case is different.

### B. Dubé's Model Also Is Not Proper Classwide Proof Because It Does Not Calculate the <u>Legally Relevant</u> Measure of Damages

Dubé fails to model any real-world market for vehicles relevant to the damages sought in this case.  The substantive law of every state at issue in this ligation requires a determination of what the actual or *market* price/value of the vehicle would have been if the information related to the airbag had been disclosed.  *See* D.E. 4175; *see also* D.E. 4178 at 10.  Fair market value is the "price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect."  *United States v. Goldman*, 953 F.3d 1213, 1223 (11th Cir. 2020); *Dep't of Agric. & Consumer Servs. v. Polk*, 568 So. 2d 35, 41 (Fla. 1990) ("Fair market value is generally defined as what a willing buyer would pay to a willing seller,

neither party being obligated to act."); *see also* D.E. 4178 at 13-14 (citing law from other states at issue).

Sales in Dubé's but-for world are between *unwilling* buyers and *unwilling* sellers. *See* D.E. 4178 at 14-21. Rather than model supply and demand for *willing* buyers and sellers, Dubé "did not allow class members to change their purchase behavior" and "mechanically . . . constrained [MBUSA] to sell the same number of automobiles." D.E. 4243-15, Dubé Dep. at 160:8-11; D.E. 4243-16, Dubé Rebuttal Dep. at 43:21-23. Indeed, Dubé concedes his model does not allow consumers who "sufficiently dislike the airbag defect" to forgo "the defective vehicle in the but-for world and either to switch to another car or not purchase any car." D.E. 4243-17, Dubé Report ¶ 104. As a result, Dubé's damages model does not reflect the damages law of the states governing plaintiffs' claims and does not support their liability theory. *See Simmons*, 592 F. Supp. 3d at 1288; *Comcast*, 569 U.S. at 35.

## **CONCLUSION**

For all these reasons, the Court should deny plaintiffs' motion for class certification.[39]

---

[39] MBUSA incorporates by reference all arguments and authorities set forth by defendants General Motors Company, General Motors Holdings LLC, General Motors LLC, and FCA US, LLC in their opposition to plaintiffs' motions for class certifications. To the extent the Court denies plaintiffs' class certification motions for another defendant, it should deny plaintiffs' motion as to MBUSA for the same reasons.

Dated: May 5, 2023                    Respectfully submitted,

*/s/ Raoul G. Cantero*
Raoul G. Cantero (Florida Bar No. 552356)
rcantero@whitecase.com
Jaime A. Bianchi (Florida Bar No. 908533)
jbianchi@whitecase.com
**WHITE & CASE LLP**
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

Troy M. Yoshino (*admitted pro hac vice*)
TYoshino@winston.com
Eric J. Knapp (*admitted pro hac vice*)
EKnapp@winston.com
**WINSTON & STRAWN LLP**
101 California Street, Suite 3500
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Attorneys for Defendant*
*Mercedes-Benz USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the Court's C/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Raoul Cantero*
Raoul Cantero