## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

MDL No. 2599
Master File No.: 15-MD-02599-MORENO
S.D. Fla. Case No. 1:14-cv-24009-MORENO

IN RE: TAKATA AIRBAG PRODUCT
LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

ECONOMIC LOSS TRACK CASES
AGAINST FCA US, LLC

## ORDER GRANTING PLAINTIFFS' MOTION FOR
## CLASS CERTIFICATION AGAINST DEFENDANT FCA US, LLC

THIS CAUSE came before the Court upon Plaintiffs' Motion for Class Certification and Incorporated Memorandum of Law (**D.E. 4608**), filed on **April 7, 2023**. The Court has considered the Plaintiffs' Motion, the Defendant FCA US LLC's ("FCA") Response in Opposition, the Plaintiffs' Reply, and is otherwise fully advised in the premises.

### BACKGROUND

This multidistrict litigation consolidates allegations of economic loss and personal injury related to airbags manufactured by former defendants Takata Corporation and TK Holdings (collectively, "Takata") and equipped in vehicles sold by, among others, FCA. The allegations are that FCA's vehicles were equipped with Takata airbags containing the chemical ammonium nitrate, which creates a small explosion to inflate the airbags during a crash. And Plaintiffs, who are consumers of FCA's vehicles, contend that when exposed to high heat and humidity, the explosion is much more forceful and can cause significant injuries and even death (the "Inflator Defect").

The crux of Plaintiffs' legal claims is that FCA knew or should have known of the Inflator

Defect before installing the Takata airbags in their vehicles, and that FCA concealed from, or failed to notify, Plaintiffs and the general public of the full and complete nature of the defect. Plaintiffs further allege that because of FCA's concealment of the Inflator Defect, Plaintiffs did not receive the benefit of their bargain and overpaid for their vehicles when they purchased them. More specifically, they argue that consumers who purchased vehicles with defective airbag inflators suffered economic injuries when they purchased for x dollars a car that contained a latent defect; had they known about the defect, they would have paid fewer than x dollars for the car (or not bought the car at all), because a car with a safety defect is worth less than a car without one.

This Order follows the Court's November 10, 2022 order granting summary judgment in favor of FCA and the remaining Defendants on Plaintiffs' claims brought in 12 of 14 states based on Plaintiffs' lack of damages under each state's laws because the airbags at issue were either replaced for free or offered to be replaced for free, making the Plaintiffs in those states whole and restoring the benefit of their bargain. *See* ECF No. 4471 at 15. After this Court's ruling, three named Plaintiffs with claims against FCA remain: Michelle Gibson (GA), Debra Johnson (GA), and Laquintha O'Neal (NC) (the "Remaining Plaintiffs"). Now, Plaintiffs seek to certify common law fraud claims in Georgia and North Carolina and nine (9) new states and a District: Alabama, Colorado, Delaware, the District of Columbia, Rhode Island, Tennessee, Utah, West Virginia, and Wisconsin (the "New States," together with a standalone North Carolina consumer fraud class (collectively, the "Proposed Classes"). Therefore, the Court must determine whether to certify the Proposed Classes.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs move to certify the following multistate class for Plaintiffs' fraud claims against FCA, with Plaintiffs Michelle Gibson, Debra Johnson, and Laquintha O'Neal as class representatives:

All persons who, prior to the date on which the Class Vehicle was recalled and after June 10, 2009, bought a Class Vehicle in the state of Georgia, North Carolina, Alabama, Colorado, Delaware, the District of Columbia, Rhode Island, Tennessee, Utah, West Virginia, or Wisconsin, and reside in the same state, and (i) still own the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.

Plaintiffs also move to certify the following single-state class for Plaintiff O'Neal's claim under the North Carolina Unfair and Deceptive Trade Practices Act:

All persons who, prior to the date on which the Class Vehicle was recalled and after June 10, 2009, bought a Class Vehicle in the state of North Carolina and reside in the same state and (i) still own the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.

For the reasons explained below, the Court **GRANTS** Plaintiffs' Motion to certify the Proposed Classes.

## LEGAL STANDARDS

### I.   Choice of Law

Plaintiffs' claims are governed by the laws of the states in which the Class Vehicles[1] were purchased. *In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 6072406 (S.D. Fla. Oct. 14, 2016); *accord see Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348, 1371 (S.D. Fla. 2021). This is because "the injury occurs where the car is sold." *Tershakovec*, 546 F. Supp. 3d at 1371; *see also In re Takata Airbag Prod. Liab. Litig.*, 464 F. Supp. 3d 1291, 1301 (S.D. Fla. 2020) (reasoning that for the Plaintiffs that purchased or leased their vehicle in their state of residence, "there is a 'rational reason' to depart from applying Michigan substantive law," the law that may have otherwise applied under a presumption in favor of *lex fori*).

---

[1]      The list of Class Vehicles is reflected in Appendix A to Plaintiffs' Motion for Class Certification. *See* ECF No. 4608-1.

## II.   <u>Class Certification</u>

In a class action, representative litigants may bring claims on behalf of absent persons called class members.  Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979), and as a result, the presumption is against class certification.  *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).   Although district courts have traditionally enjoyed broad discretion in deciding whether to certify a class, *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992), that discretion must be carefully exercised according to the dictates of Federal Rule of Civil Procedure 23.   *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).

To proceed as a class, the named representatives must complete a burdensome checklist.  Specifically, they "must satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and at least one of the requirements listed in Rule 23(b)." *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 481 F. Supp. 3d 1258, 1270 (S.D. Fla. 2020).  Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are generally referred to as "numerosity, commonality, typicality, and adequacy of representation." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).

If the plaintiffs have affirmatively demonstrated that ascertainability and the four

requirements of Rule 23(a) are satisfied, the Court moves on to Rule 23(b).  Since Plaintiffs seek certification under Rule 23(b)(3), they must also demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Finally, Plaintiffs must establish that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Since it is the Plaintiffs' burden to establish that Rule 23 is satisfied, and that rule does not set forth a mere pleading standard, "the merits of the underlying claim may be considered to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Ohio State Troopers Ass'n, Inc.*, 481 F. Supp. 3d at 1271 (simplified).  Doubts are resolved against class certification.  *Brown*, 817 F.3d at 1234.

## DISCUSSION

### I.  Rule 23(a) is Satisfied

#### A.  Ascertainability

The first step for a plaintiff seeking class certification is to establish that the proposed class is adequately defined and clearly ascertainable.  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  To do so, a plaintiff must show that class members can be identified by reference to objective criteria.  *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014).  And such objective criteria must enable an identification process that is administratively feasible, requiring little, if any, individual inquiry.  *Id.*

FCA first argues that Plaintiffs' proposed class definitions are overbroad and vague because they include vehicles that were manufactured by Old Chrysler (and not FCA) in the

definition of Class Vehicles. The Court, however, disagrees. While FCA is correct that Plaintiffs are barred from attempting to assert claims on behalf of themselves or others that purchased vehicles manufactured by Chrysler prior to June 10, 2009, the Proposed Classes only include people who purchased Class Vehicles *after* June 10, 2009. Moreover, FCA is not shielded from liability for its own alleged concealment of the Inflator Defect and alleged misrepresentations as to the safety of the Class Vehicles that were sold after June 10, 2009, regardless of when they were manufactured. *See Burton v. Chrysler Group*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013).

Next, FCA contends that Plaintiffs' class definitions are overbroad because they include members who did not purchase their vehicles from FCA or its authorized dealers. And FCA further notes that the Proposed Classes must be limited to only those who purchased their Class Vehicle from FCA or an FCA authorized dealer because, if the class member did not purchase their vehicle from FCA or its authorized dealer, the class member could not have been defrauded at the point of purchase by FCA. In response, Plaintiffs correctly argue that FCA's duty to disclose the Inflator Defect in its Class Vehicles was not limited to only those consumers that purchased their vehicle directly from an FCA authorized dealer because FCA's concealment of the Inflator Defect prevented other dealers or individual sellers from being able to inform class members of the defect. On this basis, Plaintiffs assert that they have been defrauded by FCA's alleged omissions and misrepresentations at the point of purchase, regardless of whether they purchased their vehicle directly from FCA authorized dealers or not. The Court agrees that the class definitions are not overbroad on the basis that they include all purchasers of FCA Class Vehicles. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 981 (11th Cir. 2016) (affirmed certification of "a class consisting of all Florida purchasers and lessees of 2014 Cadillac CTS sedans."); *see also In re FCA USL LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 117 (E.D. Mich. 2019) (certifying a class of all

purchasers of FCA vehicles with allegedly defective gearshift regardless of whether purchased from an FCA dealer); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 227 (S.D. Ill. 2018) (certifying a class of "[a]ll persons who purchased or leased vehicles in [multiple states] . . . that were manufactured by FCA and that are equipped with the Uconnect 8.4A or Uconnect 8.4AN systems . . ." regardless if vehicle was purchased from an FCA authorized dealer).

Finally, FCA asserts that Plaintiffs' class definitions are overbroad because they include class members who were not injured. Plaintiffs respond that the class definitions only include injured purchasers because all class members were injured at the point of purchase when they overpaid for their Class Vehicles given that it is "[c]ommon sense" that a car with a safety defect is "worth less" than a car without one. *Carriuolo*, 832 F.3d at 987. The Court agrees with Plaintiffs that, for purposes of class certification, all class members suffered an injury by overpaying for their Class Vehicles at the point of purchase. Nevertheless, whether Plaintiffs ultimately received the benefit of their bargain (and therefore have no damages) due to FCA's free recall and repair is a matter to be determined on summary judgment.

The Court finds that the Proposed Classes satisfy the ascertainability inquiry because they are defined by reference to objective criteria such that the putative class members can be easily identified: persons who purchased a Class Vehicle in a specific state during a specific time period. *See, e.g., Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 535-36 (S.D. Fla. 2015) (finding ascertainable a class of persons who bought or leased 2011-15 Ford Explorers during the class period from authorized Ford dealers); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 678-79, 685 (S.D. Fla. 2009) (finding ascertainable a class consisting of "every owner or lessee of a 2007 Lexus ES 350 who purchased or leased the vehicle in Florida"). Further, it is administratively feasible to identify class members using state vehicle registrant data that provides the name and address of

the registrant and his or her vehicle identification number.  *See, e.g., Berman v. Gen. Motors LLC*, 2019 WL 6163798, at *11 (S.D. Fla. Nov. 18, 2019).  Therefore, the ascertainability requirement is met.

### B. Numerosity

To satisfy the numerosity inquiry, Plaintiffs must show that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Although this requirement is not tied to any fixed numerical threshold, Plaintiffs must "proffer some evidence of the number in the purported class or a reasonable estimate." *Leszcvnski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).  Plaintiffs assert that FCA sold over 6 million Class Vehicles nationwide.  Surely, over 6 million putative plaintiffs satisfies the Eleventh Circuit's rule that "generally less than twenty-one [class members] is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted).  Therefore, the Court finds that Plaintiffs have satisfied the numerosity requirement.

### C. Commonality

Next, under Rule 23(a)(2), there must be questions of law or fact common to the class. This means that more than one common issue of law or fact must exist. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996).  Further, such issues must be susceptible to class-wide proof. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).  The focus is on the "capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Though not always the case, the commonality inquiry is generally satisfied where defendant has engaged in a standardized course of conduct that affects all class members. *See Sanchez-Knutson*, 310 F.R.D. at 536.

Plaintiffs contend that the commonality requirement is satisfied because their claims involve common questions of law and fact that will all be answered with common proof, such as:

- Whether the Class Vehicles were sold to Plaintiffs with airbags containing the Inflator Defect;

- Whether FCA knew or should have known about the Inflator Defect;

- Whether FCA engaged in deceptive acts or practices;

- Whether FCA intentionally misrepresented, concealed, suppressed, and/or omitted material facts concerning the Inflator Defect; and

- Whether FCA's conduct damaged Plaintiffs and Class Members.

In response, FCA argues that Plaintiffs' Proposed Classes fail to satisfy the commonality requirement because FCA's knowledge is only material to a putative class member's claim if that knowledge predated the purchase of the class member's vehicle. And because the Proposed Classes—which span from June 10, 2009 through the date of the recall—cover a multi-year period during which FCA's knowledge of the scope of Takata's false information regarding the performance of its non-desiccated airbags allegedly changed, FCA's knowledge is not a common question.

The question of whether FCA sold to Plaintiffs Class Vehicles that were equipped with the Inflator Defect is common to all putative class members. *Id.* at 537 ("[W]ith regard to the commonality element, the question of whether Defendant sold Ford Explorer model vehicles with an allegedly dangerous and defective condition that allows the exhaust and other gases to enter the passenger compartment of the vehicle during normal use is common to all putative class members.") And FCA's argument regarding the non-uniformity of its knowledge is unavailing because Plaintiffs have sufficiently show that FCA knew about the dangers of using ammonium nitrate in airbags since the early 1990s, and that FCA's engineers voiced concerns about the

integrity of Takata ammonium nitrate-based airbags prior to the sale of any of the Class Vehicles. ECF No. 4608 at 19-24. The Court finds that resolution of the common questions identified by Plaintiffs above has the capacity to generate common answers apt to drive the resolution of the class wide litigation, and therefore Plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement. *See Dukes*, 564 U.S. at 350.

### D. Typicality

Under Rule 23(a)(3), the "claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." This requires that a "sufficient nexus exist[ ] between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). Such a nexus is present if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams*, 568 F.3d at 1357 (citation omitted). Ultimately, if proof of the representative's claims would prove the proposed class's claims, the representative's claims are typical of the proposed class. *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 698 (S.D. Fla. 2015).

Plaintiffs argue that the typicality requirement is satisfied because their claims arise from the same Inflator Defect and FCA's common effort to conceal that defect as the rest of the members of the Proposed Classes. They further contend that they and the members of the Proposed Classes were injured in the same way—by overpaying for their vehicles—and, to support their claims, they will advance the same arguments of law and fact as individual class members would. In response, FCA relies on *Hamm v. Mercedes-Benz USA, LLC*, No. 5:16-cv-03370-EJD, 2021 WL 1238304 (N.D. Cal. Apr. 2, 2021) to support its contention that Plaintiffs fail to satisfy the typicality requirement because the Proposed Classes will include class members who purchased their

vehicles from authorized FCA dealers and those, like Georgia Plaintiff Gibson and North Carolina Plaintiff O'Neal, who did not.   As a result, FCA asserts that theories of reliance, dealership interactions, and materials reviewed prior to purchase will differ among class members, thereby precluding Plaintiffs from satisfying the typicality requirement.

FCA's reliance on *Hamm* misses the mark.   There, the court concluded that Hamm's theory of reliance may be atypical of those of the putative class because Hamm may not have been exposed to Mercedes-Benz's disclosures in its owner's manual due to the fact that he purchased his used Mercedes from a Toyota dealership rather than from Mercedes or an authorized Mercedes dealer. *Hamm v. Mercedes-Benz USA, LLC*, No. 5:16-cv-03370-EJD, 2021 WL 1238304, at *4, *10-12 (N.D. Cal. Apr. 2, 2021).   But unlike in *Hamm*, FCA did not disclose the subject Inflator Defect in any of the Class Vehicles' owner's manuals.   Indeed, Plaintiffs' injuries are alleged to have stemmed from FCA's uniform failure to disclose the Inflator Defect.   That is sufficient to satisfy the typicality requirement under Rule 23(a). *See Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675, 682 (S.D. Fla. 2009) (finding typicality where plaintiff alleged "the same defect in his car as for the rest of the class," which defendant failed to disclose).

### E. Adequacy

The purpose of the adequacy requirement is to "protect the legal rights of absent class members." *Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000).   Adequacy of representation is primarily based on "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the . . . class" and "whether plaintiffs have interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).   This inquiry requires the Court to consider both whether there are any inter-class conflicts and whether class counsel and

11

named plaintiffs will prosecute the case with zeal. *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003).

FCA asserts that Plaintiffs are unable to satisfy the adequacy requirement of Rule 23(a) due to the existence of an intra-class conflict between new and used vehicle purchasers of the same vehicle with respect to the apportionment of damages. This argument is unavailing, however, as Plaintiffs explain that damages will only be awarded to one owner per class vehicle, thereby eliminating any apportionment questions. In addition, the Court finds that Plaintiffs have demonstrated that they possess the integrity and personal characteristics necessary to act as fiduciaries for the Classes. Further, the law firms that have led this multi-district litigation on behalf of the Plaintiffs for the past eight years have substantial experience litigating class actions. Accordingly, the requirements of Rules 23(a)(4) and 23(g) are satisfied. Plaintiffs and Class Counsel are adequate.

## II. Rule 23(b)(3) is Satisfied

In addition to meeting the requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614. Plaintiffs seek class certification under Rule 23(b)(3), which is appropriate when (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and when (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A. Predominance

"Common issues of fact and law predominate if they 'have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and

monetary relief.'" *Klay v. Humana, Inc.*, 382 F.3d at 1255 (internal citation omitted). The predominance inquiry is satisfied "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003). "It is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254 (internal quotation marks omitted). When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

In Section I.C., *supra*, the Court found the existence of common questions surrounding, among other things, the alleged Inflator Defect and FCA's knowledge and concealment of it. Now, the Court must determine whether those common questions will predominate over individual ones such that class certification on each claim is appropriate. The predominance inquiry begins with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). Plaintiffs seeking class certification based on predominance, however, "do not need to prove that each element of a claim can be established by class-wide proof, rather they need to prove that common questions predominate over questions affecting only individual class members." *In re Nissan N. Am., Inc. Litig.*, 2023 WL 2749161, at *7.

### i.   Fraud Claims

Plaintiffs seek certification of their common law fraud claims on behalf of themselves and the members of their proposed multistate class who purchased a Class Vehicle in either Georgia, North Carolina, Alabama, Colorado, Delaware, the District of Columbia, Rhode Island, Tennessee,

Utah, West Virginia, or Wisconsin.  As previously explained, under choice-of-law rules, the Remaining Plaintiffs' fraud claims are governed by Georgia and North Carolina law because the Remaining Plaintiffs purchased their Class Vehicle in those states.  Plaintiffs argue, however, that because the laws of the New States concerning fraud are substantially similar to the laws of Georgia and North Carolina, Plaintiffs' fraud claims are typical of the claims of purchasers from the New States, and common issues of law and fact will predominate.  For the reasons explained *infra*, the Court agrees.  As an initial matter, the elements of a fraud claim in each of these states is as follows:

**Georgia**: "(1) the defendant made representations; (2) knowing they were false; (3) intentionally and for the purpose of deceiving the plaintiff; (4) which the plaintiff reasonably relied on; (5) with the proximate result that the plaintiff incurred damages." *Williams v. Dresser Indus.*, 120 F.3d 1163, 1167 (11th Cir. 1997) (citation omitted).

**North Carolina**: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.  Additionally, any reliance on the allegedly false representations must be reasonable." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (citations and quotations omitted).

**Alabama**: "(1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *Brushwitz v. Ezell*, 757 So. 2d 423, 429 (Ala. 2000).

**Colorado**: "[1] that the defendant made a false representation of a material fact; [2] that the party making the representation knew it was false; [3] that the party to whom the representation

was made did not know of the falsity; [4] that the representation was made with the intent that it be acted upon; and [5] that the representation resulted in damages. *Brody v. Bock*, 897 P.2d 769, 775–76 (Colo. 1995).

**Delaware**: "1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as the result of such reliance." *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

**District of Columbia**: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C.2005) (citations and quotations omitted).

**Rhode Island**: "To establish a prima facie case of common law fraud in Rhode Island the plaintiff must prove that the defendant made a false representation intending thereby to induce plaintiff to rely thereon, and that the plaintiff justifiably relied thereon to his or her damage." *Zaino v. Zaino*, 818 A.2d 630, 638 (R.I.2003)

**Tennessee**: "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006).

**Utah**: "(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for

the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage. *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003).

**West Virginia**: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; (3) that the plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) that the plaintiff was damaged because he relied upon it." *Wolford v. Children's Home Soc'y of W. Va.*, 17 F. Supp. 2d 577, 584 (S.D.W. Va. 1998).

**Wisconsin**: "1. A false representation; 2. Made with the intent to defraud and for the purpose of inducing another to act upon it; and 3. Actually inducing another to rely and act upon the representation causing injury or damage." *Bell v. Edward D. Jones & Co.*, 962 F. Supp. 1188, 1192 (W.D. Wis. 1996) (citation omitted).

Plaintiffs assert that the predominance inquiry is satisfied because the core issues in this action are subject to generalized proof and will be established using common evidence that is applicable to Plaintiffs and all class members. Plaintiffs point to the basis of their fraud claims being the existence of the Inflator Defect, FCA's knowledge of it, and FCA's failure to disclose the Inflator Defect to consumers prior to the sale of Class Vehicles. In this regard, Plaintiffs contend they will prove their fraud claims with common evidence establishing that (1) Class Vehicles were sold with the same Inflator Defect; (2) FCA was aware of the Inflator Defect; (3) FCA inaccurately marketed the Class Vehicles as safe and had a duty to disclose its knowledge but failed to do so; and (4) the facts that FCA failed to disclose were material. But FCA responds that individualized issues of reliance, knowledge, manifestation and damages predominate over common questions, and therefore Plaintiffs cannot satisfy the predominance inquiry of Rule

23(b)(3).  The Court will address each of these purported individualized issues in turn.

a. _Reliance_

FCA contends that the individualized issue of each class member's reliance (i.e., whether the alleged misrepresentations or omissions had any bearing on the class member's purchasing decision) threatens to swamp the common questions concerning FCA's conduct.  In short, FCA's argument is that because certain class members may have received its messaging from different sources, such as television, the internet, print advertising, or Monroney Labels, its messaging was non-uniform.  But Plaintiffs respond that the class members were all exposed to the same, uniform misrepresentation and omission: FCA misrepresented that the Class Vehicles contained properly functioning airbags and simultaneously omitted that the airbags could explode in consumers' faces during deployment.  And Plaintiffs further claim that FCA's messaging was ubiquitous and lasted for the entirety of the Class Period, as established by FCA's Director of Retail Marketing, Bruce Velisek.  _See_ ECF No. 4253 ¶¶ 332-39.

FCA's reliance arguments do not preclude class certification because, when a defendant's challenged marketing conduct is uniform, "fraud can be demonstrated on a class-wide basis." _Steigerwald v. BHH, LLC_, No. 15-cv-741, 2016 WL 695424, at *9 (N.D. Ohio Feb. 22, 2016); _see also Tershakovec_, 546 F. Supp. 3d at 1377 (finding predominance satisfied where defendant engaged in "uniform course of conduct").  And when an omission or misrepresentation is material, an inference of reliance can be established through circumstantial evidence.  _See, e.g., Vine v. PLS Fin. Servs., Inc._, 807 F. App'x 320, 329 (5th Cir. 2020) (affirming class certification of a fraud claim and holding that "common issues can still predominate if common evidence of fraudulent misrepresentation 'gives rise to a reasonable inference that that misrepresentation induced [the class members' actions] and caused their losses'") (quoting _Torres v. S.G.E. Mgmt., L.L.C._, 838

F.3d 629, 641 (5th Cir. 2016) (en banc)).

Here, FCA's alleged conduct was uniform with respect to all class members in at least one important way—it never disclosed the Inflator Defect to consumers prior to the sale of the Class Vehicles. *See Cardenas*, 2021 WL 5811741, at *13 ("all class members received the same information from defendant regarding the purported defect – which is to say, no information.") (citation omitted). And that omission is material because a reasonable factfinder could infer that if consumers knew their Class Vehicles contained defective airbags, they would not have made the purchase, or they would have paid less for their vehicles. In fact, Plaintiffs testified as such. ECF No. 4253 ¶ 543. Moreover, Plaintiffs' expert, Dr. Dubé, presented evidence through a vehicle buyer survey that airbag safety is one of the most important features for car buyers. *Id.* at ¶¶ 626-27. Accordingly, there exists sufficient class-wide evidence to support the proposition that safety and working airbags were material factors for class members' purchasing decisions, and class-wide proof of reliance on FCA's uniform misrepresentation and omission can be inferred by a reasonably jury. *Tershakovec*, 546 F. Supp. 3d at 1376 ("[c]ase law from federal courts from across the country demonstrate that a presumption of causation and reliance is . . . appropriate . . . when a Defendant's representations to the entire class were uniform.")

### b. *Knowledge*

With respect to the knowledge element, FCA does not dispute that in all pertinent jurisdictions a duty to disclose arises from a defendant's exclusive or superior knowledge as to material facts. FCA argues, however, that determining whether its knowledge of the Inflator Defect in the Class Vehicles was superior to Plaintiffs' knowledge of the same, is an inherently individualized issue.

Plaintiffs have presented evidence demonstrating that FCA was aware of the Inflator

Defect years before it announced recalls to fix the issue. *See* ECF No. 4608 at 19-26; ECF No. 4314 at 2-3. Yet FCA points to no evidence in support of its assertion that some individual Plaintiffs may have known as much or more about the airbags installed in the Class Vehicles as FCA did. And although the Takata recall generated significant publicity, public awareness of issues regarding Takata airbag ruptures does not equate with knowledge that Plaintiffs' specific Class Vehicles were being sold with defective airbags. That assumption is too attenuated to block class certification. *See Tershakovec*, 546 F. Supp. 3d at 1376–77 ("Whether [plaintiffs] knowledge was sufficient to conclude they knew their cars could not complete a Track Day without entering Limp Mode is a jury question, but surely a reasonable consumer cannot have been expected to search the Internet for unverified reports of problems she did not know existed. . . . In this particular predominance inquiry, the Court finds that the more relevant considerations are Ford's uniform course of conduct and the dearth of evidence pointing to individual reliance issues that stem from Ford's communications.").

      c. *Manifestation*

Next, FCA argues that individual issues of manifestation predominate in Alabama, Delaware, Utah, and Wisconsin. But this Court has repeatedly rejected the argument that Plaintiffs' fraud claim should fail because the Inflator Defect has not manifested: "[i]f Takata had installed grenades in its airbags that may or may not explode on impact[,] a court would not require an explosion to demonstrate manifestation of a defect." *In re Takata Airbags Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016). Plaintiffs have provided evidence to support their contention that the airbags used in the Class Vehicles contain "innately unstable ammonium nitrate, and thus create an unreasonable and imminent risk of injury to vehicle occupants" and that this defect is uniform across every Class Vehicle. *In re Takata Airbag Prod. Liab. Litig.*, 396 F.

Supp. 3d 1101, 1123–24 (S.D. Fla. 2019); PSOF (ECF No. 4253) ¶¶ 403–16 (serious, uniform safety hazard posed by the use of ammonium nitrate in airbags); ¶¶ 426–28 (failure by Takata to mitigate the Inflator Defect, including in FCA Class Vehicles); ¶¶ 440–44 (expert testimony on the dangers of ammonium nitrate in airbags); *id.* ¶¶ 445–50 (field incidents involving FCA vehicles). And "if a jury believes Plaintiffs' evidence, it could find that the alleged defect was manifested when the [Class Vehicles] came off the assembly line . . . ." *Sanchez-Knutson*, No. 14-61344-CIV-Dimitrouleas, 2016 WL 11783302, at \*4–5 (S.D. Fla. Jul. 25, 2016). Therefore, manifestation of the Inflator Defect is not an individualized issue that prevents class certification.

### d. *Damages*

Rule 23(b)(3) also requires that any model supporting a plaintiff's damages be consistent with its theory of liability. *Comcast Corp.*, 569 U.S. at 35. In short, this requirement ensures that the damages are capable of determination via class-wide proof—just like the theory of liability. *Id.* However, "individualized damages calculations are insufficient to foreclose the possibility of class certification." *Carriuolo*, 823 F.3d at 988. And Rule 23 does not require plaintiffs to prove predominance separately as to both liability and damages. *Id.*

Plaintiffs argue that class certification is appropriate because damages are capable of measurement pursuant to a class-wide methodology. The gravamen of Plaintiffs' damages theory is that all class members have been harmed in the same way by overpaying for their Class Vehicles because a defective vehicle is worth less than a non-defective vehicle. Plaintiffs and members of the Proposed Classes aim to prove their overpayment damages using common evidence in the form of a conjoint analysis and market simulation designed by Plaintiffs' expert, Dr. Dubé. A conjoint analysis is an analytic survey method used to measure customer preferences for specific features of products, and they are routinely accepted as a reliable methodology for calculating overpayment

damages on a class-wide basis in consumer class actions. *See Cardenas*, 2021 WL 5811741, at
*13 (certifying class based on conjoint analysis damages method); *Sanchez-Knutson*, 310 F.R.D.
at 539 (accepting "conjoint analysis damages model for purposes of class certification, finding that
it is sufficiently tied to Plaintiff's legal theory and her proffered evidence that her [vehicle] shares
the same defect as all others in its product line, and meets the predominance requirement under
the Supreme Court's holding in *Comcast*").

Attempting to relitigate its motion to exclude Dr. Dubé's testimony, FCA launches many
of the same previously rejected attacks at Dubé's conjoint analysis to persuade the Court that
individualized issues will predominate with respect to damages. Dubé's proposed damages model,
however, is materially indistinguishable from the same one this Court approved in *Cardenas*, 2021
WL 5811741, at *5. As in *Cardenas*, Dubé sufficiently explains how, after calculating the
percentage of overpayment applicable to each Class Vehicle using a choice-based survey, that
percentage can be objectively multiplied by the price that each class member paid for the vehicle
to calculate damages. ECF No. 4344-23 ¶¶ 111–13, Appendices E–H. Accordingly, the Court
accepts Plaintiffs' proffered expert's proposed conjoint analysis damages model for purposes of
class certification, and the Court finds that it is sufficiently tied to Plaintiffs' legal theory and their
proffered evidence that they overpaid for their vehicles and satisfies the predominance requirement
under *Comcast*.

### ii.    North Carolina Unfair and Deceptive Trade Practices Act Claim

Plaintiffs seek certification of a single-state class for Plaintiff O'Neal's claim under the
North Carolina Unfair and Deceptive Trade Practices Act. While reliance is also an element of a
claim under the North Carolina consumer protection statute, "courts have *presumed* class-wide
reliance and certified Rule 23(b)(3) classes under the statutes at issue where the alleged

misrepresentation or omission (1) is material or likely to deceive a reasonable consumer and (2) was uniformly made to the putative class." *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 161 (D.S.C. 2018) (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 518 (6th Cir. 2015) (finding reliance requirement satisfied because the class-wide proof met these elements and affirming certification of North Carolina Unfair and Deceptive Trade Practices Act claim)).

Here, all class members were exposed to the same uniform omission—FCA's failure to disclose the Inflator Defect. And this omission was material because all Plaintiffs testified that had they known about the Inflator Defect, they would not have purchased their Class Vehicles or would have paid less for them. ECF No. 4253 ¶ 543. Accordingly, the Court finds that sufficient evidence of the uniformity and materiality of the challenged omission has been presented to presume class-wide reliance under the North Carolina statute thereby satisfying the predominance requirement.

### B. Superiority and Manageability

The second requirement of Rule 23(b)(3) is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Four criteria for consideration are offered in a non-exhaustive list: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Generally, this inquiry requires the Court to "consider the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. The outcome of the Court's predominance analysis "has a tremendous impact on the superiority

analysis" because "the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id.*

Plaintiffs argue that superiority is satisfied because there is "no evidence that any class member has shown an interest in individually controlling this action and there is no overlapping litigation involving these claims on behalf of these Class members." ECF No. 4608 at 51. They further note that because the Court is so familiar with this case, it is desirable for this Court to adjudicate all claims in this forum, and that the legal and factual issues giving rise to the Proposed Classes' claims can be easily managed and adjudicated on a class basis because they depend upon a core set of documents, fact witness testimony, and expert testimony. This, they describe, is more efficient than having thousands of repetitive proceedings that will probe the same questions in multiple courts, which could lead to inconsistent rulings. FCA argues in response that its government-mandated recall is a superior method of resolving Plaintiffs' claims. The Court disagrees. Because the government-mandated recall does not resolve the consumer Plaintiffs' legal claims for relief and economic damages, it is not superior to class proceedings.

As for the difficulties associated with managing a class action, the Court finds that a class trial on Plaintiffs' fraud claims will be manageable. Because "the fundamental elements of fraud are substantially similar from state to state," and the Inflator Defect was uniform across the Class Vehicles, a trial will proceed in much of the same way whether it were to address the Georgia and North Carolina claims alone or the claims under the laws of the New States as well. *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 300 (D. Conn. 2009). Minor variations in the laws of the New States does not render class proceedings unmanageable. The same jury will be able to assess Plaintiffs' reliance, regardless of whether that reliance must be "reasonable" or "justifiable." In doing so, the "reasonable" reliance states can all be evaluated together under the

North Carolina claim, and the "justifiable" reliance states can all be evaluated together under the Georgia claim. *See Klay*, 382 F.3d at 1262 (finding that state laws can be applied in groups with "materially identical legal standards"). Likewise, the fact that scienter is a required element for Plaintiffs to prevail on their fraud claims in every state except for Alabama is of no moment. Jury questions on scienter simply need not be answered in the affirmative for Plaintiffs to prevail on the Alabama fraud claims.

At bottom, because common issues predominate over individualized issues, the Court is "hard pressed to conclude that a class action is less manageable than individual actions." *Klay*, 382 F.3d at 1273. The claims advanced by Plaintiffs are similar enough that any material variations can "be dealt with in a simple and efficient manner." *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997). Indeed, the challenges of managing multiple state classes and claims in one case "routinely arise in complex litigation, and they are insufficient to overcome the innumerable advantages that class treatment will afford." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 701 (S.D. Fla. 2004).

## III.   **The Rules Enabling Act Does Not Preclude Class Certification**

The Rules Enabling Act prevents the use of class actions to abridge the substantive rights of any party. *See* 28 U.S.C. § 2072; *see also Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1180–83 (11th Cir. 2010). FCA contends that certification of the Proposed Classes would violate the Rules Enabling Act because it would approve a class procedure that would "abridge" FCA's substantive right to test individualized issues such as reliance and each class member's knowledge of the Inflator Defect. This argument fails, however, as both Supreme Court and Eleventh Circuit precedent confirm that class actions and the use of class-wide or representative evidence to establish common elements of a claim do not "abridge,

enlarge, or modify" any substantive rights. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010); *see also Tyson Foods, Inc.*, 577 U.S. at 454–57; *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1337 (11th Cir. 2015); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155–56 (9th Cir. 2016).

Moreover, FCA's due process challenge is likewise unavailing. The use of the class action procedure and class-wide evidence does not violate the due process clause of the Fourteenth Amendment, as there is no "authority stating that a party in a class action has a due process right to call every class member to testify at trial." *Vasquez v. Leprino Foods Co.*, No. 117CV00796AWIBAM, 2023 WL 1868973, at *11 (E.D. Cal. Feb. 9, 2023). Indeed, "such a right would obliterate the use of representative evidence and defy the class action device's purpose to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Id.* (internal quotations omitted). "Further, such a right could violate the Rules Enabling Act by improperly 'enlarging' the class action defendant's 'substantive rights.'" *Id.* (quoting 28 U.S.C.S. § 2072(b)). "[S]o long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015).

## IV.    Appointment of Class Counsel

Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel," the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge

of the applicable law; and (iv) the resources that counsel will commit to representing the class."
Fed. R. Civ. P. 23(g)(1). The Court appoints as lead Class Counsel under Federal Rule of Civil
Procedure 23(g) Peter Prieto of Podhurst Orseck, P.A.  The Court will consider the necessity to
appoint other counsel at a later date upon submissions by lead counsel of suggested names based
upon work done by experienced attorneys in the past and expected to be done in the future.

## CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Class Certification (**ECF No. 4608**) is **GRANTED**.

2. Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court certifies the
following multistate class for Plaintiffs' fraud claims with Plaintiffs Michelle Gibson, Debra
Johnson and Laquintha O'Neal designated as class representatives:

> All persons who, prior to the date on which the Class Vehicle was recalled and after
> June 10, 2009, bought a Class Vehicle in the state of Georgia, North Carolina,
> Alabama, Colorado, Delaware, the District of Columbia, Rhode Island, Tennessee,
> Utah, West Virginia, or Wisconsin, and reside in the same state, and (i) still own
> the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class
> Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was
> declared a total loss after the date on which the Class Vehicle was recalled.

3. Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court certifies the
following single-state class for Plaintiff O'Neal's claim under the North Carolina Unfair and
Deceptive Trade Practices Act:

> All persons who, prior to the date on which the Class Vehicle was recalled and after
> June 10, 2009, bought a Class Vehicle in the state of North Carolina and reside in
> the same state and (i) still own the Class Vehicle, or (ii) sold the Class Vehicle after
> the date on which the Class Vehicle was recalled, or (iii) following an accident,
> whose Class Vehicle was declared a total loss after the date on which the Class
> Vehicle was recalled.

DONE AND ORDERED in Chambers in Miami, Florida this ___ day of June 2023.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record