**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **IN RE: TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION**<br><br>THIS DOCUMENT RELATES TO ECONOMIC LOSS TRACK CASES | MDL No. 2599<br>MASTER CASE NO. 1:15-md-02599-FAM<br>S.D. Fla. Case No. 1:14-CV-24009-FAM |

**SETTLING DEFENDANTS' JOINT BRIEF IN SUPPORT**
**OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

BMW, Ford, Honda, Mazda, Nissan, Subaru, and Toyota ("Settling Defendants") jointly move under Fed. R. Civ. P. 23(e) for final approval of their respective economic loss class action settlements with the Recycler Plaintiffs and request that the Court find the Settlements fair, adequate, and reasonable.[1]  The Settling Defendants also request that the Court enter permanent injunctions barring Class Members that have not requested exclusion from the Settlements from pursuing litigation related to the released claims in other courts.

## I.     INTRODUCTION.

After several years of litigation and significant, hard-fought negotiations, the Settling Defendants and the Recycler Plaintiffs agreed to the Settlements earlier this year, and the Court has preliminarily approved them.  *See* Docs. 4602, 4603, 4604, 4605, 4606, 4607, and 4626.  The Settlements provide meaningful relief to the Recycler Plaintiffs, most notably by increasing the payouts the Recycler Plaintiffs will earn from turning in or accounting for recalled airbag inflators through a separate Enhanced Inflator Recovery Program.

---

[1] Unless otherwise specified, capitalized terms in this brief have the meanings assigned to them in the Settlement Agreements.

After preliminary approval of the Settlements, a thorough notice plan was implemented and reached approximately 97.7 percent of the Class. To the knowledge of the Settling Defendants and as of this date, no Class Member has requested exclusion or objected to the Settlements. The Court should now give final approval to the Settlements because, as explained in detail below, they easily satisfy the requirements of Rule 23(e), including the amendments thereto, and the multi-factor test of *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984).

II.      **BACKGROUND.**

A.      **Recycler Plaintiffs' Allegations.**

The Recycler Plaintiffs alleged that the Settling Defendants manufactured, distributed, or sold vehicles with allegedly defective airbag inflators manufactured by Takata Corporation and TK Holdings, Inc. Upon deployment, the inflators were alleged to be at risk of rupturing and expelling metal debris into the passenger compartment. The Recycler Plaintiffs alleged that they purchased vehicles with defective inflators, assuming they had functional airbags that could be resold. After the airbags were recalled, the airbags could no longer be resold, allegedly resulting in economic loss.

The ensuing class actions asserted Lanham Act and federal RICO claims—both later dismissed—as well as state law claims, including claims for fraudulent concealment, fraudulent misrepresentation and claims under consumer protection statutes.

B.      **Procedural History, Discovery, and Settlements.**

On October 27, 2014, individual consumer plaintiffs filed a class action complaint in *Dunn v. Takata Corp.*, No. 14-cv-24009 (S.D. Fla.), alleging economic losses as a result of purchasing vehicles with allegedly defective airbags. *See* Doc. 1. The Judicial Panel on Multidistrict Litigation consolidated *Dunn* for pre-trial proceedings with scores of other lawsuits asserting similar claims, brought on behalf of individual consumers or the Recycler Plaintiffs and including

2

both personal injury and economic loss claims. *In re Takata Airbag Products Liability Litigation*, No. 1:15-md-2599-FAM (S.D. Fla.) (MDL 2599).

In 2017 and 2018, the Settling Defendants reached class-wide settlement agreements with the Consumer Plaintiffs. This Court granted final approval of those settlements after the dissemination of class notice, full briefing, and hearings. The settlements with the Consumer Plaintiffs have been implemented, providing compensation to those settlement classes and increasing the replacement of recalled airbag inflators. The settlements with the Consumer Plaintiffs, however, did not resolve the claims of the Recycler Plaintiffs, *i.e.*, persons or entities that currently engage, or at the time of purchase were engaged, in the business of automotive salvage or recycling, or that recycled, refurbished, or removed for sale or re-sale Takata Inflators or Takata Inflator-related component parts.

The Recycler Plaintiffs filed their First Amended Consolidated Class Action Complaint on May 18, 2018. Doc. 2781. The Settling Defendants filed motions to dismiss. Docs. 2976-90. The Court granted the motions in part and denied them in part on March 9, 2021, dismissing the Lanham Act claims, the RICO claims, and several state law claims, but permitting other state law claims to proceed. *See* Doc. 3965.

In the MDL, the parties took extensive discovery. The discovery included the production of more than a million documents and the depositions of at least eighteen representatives of the Settling Defendants and ten representatives of Takata. The parties also conducted recycler-specific discovery.

On April 24, 2021, the Recycler Plaintiffs filed a Second Amended Class Action Complaint. Doc. 4027. The Second Amended Complaint was corrected on May 7, 2021, Doc.

4045, and became the operative pleading for the Recycler Plaintiffs' claims.  The Settling Defendants answered the Second Amended Complaint on May 21, 2021.  Docs. 4054-62.[2]

After the settlements with the Consumer Plaintiffs were reached, Recycler Plaintiffs and the Settling Defendants began lengthy, adversarial negotiations, resulting in the Settlements now before the Court.  The negotiations involved discussion of the parties' views of the law and facts and potential relief for the proposed classes and included the exchange of multiple counterproposals.  Following numerous phone conferences and exchanges of information, the parties reached an agreement in principle in the fall of 2022.  The parties then negotiated the precise terms of the Settlements and signed the Settlements between December 2022 and early 2023.

III.    **GENERAL TERMS OF THE SETTLEMENTS.**

The Recycler Settlements provide benefits to recyclers who have or had recalled Takata airbag inflators in their current or past inventory.  These benefits will be available for two years from the Effective Date of the Settlements, unless implemented prior to that date (in which case they will be available for two years from implementation).  The primary benefits are increased payments for Inflator recovery under existing recovery programs.  The benefits are cost-free to the Class Members.  No attorneys' fees will be taken from the Class recovery.

Prior to the Settlements, BMW, Ford, Honda, Mazda, Nissan, Subaru, and Toyota implemented separate inflator recovery programs administered by Rebuilders Automotive Supply, Inc. ("RAS") or, in BMW's case, Used Car Parts, Inc., d/b/a car-part.com ("Car-Part").  The Ford, Honda, Mazda, Nissan, Subaru, and Toyota Settlements create an Enhanced Inflator Recovery Program, pursuant to which RAS will locate, identify, purchase, recover, and destroy airbag assemblies containing Inflators from Class Members' Subject Vehicles that have been recalled as

---

[2] The operative pleading for Ford is the Fourth Amended Consolidated Class Action Complaint filed in the *Sinclair v. Ford* action. Ford answered that complaint on April 9, 2021.

of the date of the Settlement Agreement.[3]  Under BMW's Settlement, Car-Part will work with Class Members to locate, identify, and obtain a certification of the destruction of the Takata Inflators in Class Members' Subject Vehicles that have been recalled as of the date of the Settlement Agreement.  Under all of the Programs, Class Members will receive 15 percent more than they had previously been paid for recovered airbag assemblies containing Inflators under the existing inflator recovery Programs.  However, none of the Programs compensate Class Members for Inflators for which they have already been compensated under those prior programs.

The Settlement Claims Administrators (RAS and Car-Part) have created websites for the new Settlement programs which, generally speaking, make available to Class Members information applicable to Subject Vehicles; allow them to upload VINs for batch processing and comparison to a list of VINs to determine which, if any, Inflators are subject to purchase under the programs; provide information on how to make a claim under the Settlements; and provide relevant settlement documents.  Section III in each Settling Defendant's Settlement Agreement provides greater detail about these Programs.

In exchange for the benefits provided under these Programs, Class Members who do not exclude themselves from the Class will release the respective OEMs and their Released Parties from liability.  Section VII in each Settling Defendant's Settlement Agreement describes in detail the released claims and Released Parties.

Settlement Class Counsel do not seek and will not accept any attorneys' fees relating to the resolution of the Actions.  Settlement Class Counsel may petition for an award of litigation

---

[3] For Ford's Settlement Agreement, the Enhanced Inflator Recovery program applies only to Inflators that, as of the date of the Settlement Agreement, are eligible for Ford's then-existing inflator recovery program with RAS and does not apply to any other Inflators, such as desiccated Takata inflators.

expenses but have agreed that any such petition will not exceed $26,867.25 in costs and expenses for each Settling Defendant. Recycler Plaintiffs are not seeking any incentive awards.

## IV.   PRELIMINARY APPROVAL OF THE CLASS, THE SETTLEMENT AGREEMENT, AND THE NOTICE PLAN.

On March 22, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Settlements with BMW, Ford, Mazda, Nissan, Subaru, and Toyota, Preliminary Certification of Settlement Classes, and Approval of Class Notice and Incorporated Memorandum of Law. Doc. 4592.[4] On April 4, 2023, the Court entered Orders Preliminarily Approving Class Settlement, Certifying Settlement Class, and Approving the Notice and Notice Program as to each of these Defendants. *See* Doc. 4602-07, 4626.[5] The Court preliminarily certified the following Settlement Classes:

> All Automotive Salvage and/or Recyclers in the United States, the District of Columbia, and the territories and possessions of the United States prior to the date of the Preliminary Approval Order. Excluded from this Class are: (a) [Defendant], their officers, directors and employees; their affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors and employees; and [Defendant's] Dealers and their officers and directors; (b) Settlement Class Counsel and their employees; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class.

*See, e.g.*, Doc. 4602, at 4. The Court found that, for settlement purposes, the specified Classes satisfied all the requirements of Federal Rule of Civil Procedure 23.

The Court also preliminarily approved the Settlements, as well as the exhibits appended to the Motion for Preliminary Approval, Doc. 4592, finding that the Settlements were "fair, reasonable and adequate under Rule 23," were reached "in the absence of collusion, and [were] the product

---

[4] Plaintiffs filed a similar motion as to Honda on April 20, 2023. Doc. 4619.
[5] The Court entered a similar Order Preliminarily Approving Class Settlement as to Honda on April 28, 2023. Doc. 4626.

of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel." *See, e.g.*, Doc. 4602 at 8-9.

The Court further approved the Notice and Notice Program and directed the Settling Defendants to effectuate the Notice Program.   Specifically, the Court approved the form and content of the notices to be provided to the Class and found that the Notice Program described in Section IV of the Settlement Agreements to be the best practicable under the circumstances. *See, e.g.*, *id.* at 9-10.   The Notice provisions in the Settlement Agreements contemplated that Class Notice would be accomplished through a combination of Direct Mailed Notices, Publication Notice, notice through the Settlement website, toll-free telephone number, and a Long Form Notice, each of which was intended to comply with Federal Rule of Civil Procedure 23, the Due Process Clause, and all other applicable statutes, laws, or rules.   The Court appointed Rebuilders Automotive Supply ("RAS") to act as the Settlement Claims Administrator and Kroll Notice Media to act as the Settlement Notice Administrator.[6]

## V.     THE PARTIES COMPLIED WITH CAFA; NOTICE WAS DISSEMINATED AND COMPLIED WITH THE DUE PROCESS CLAUSE.

In March and April 2023, the Settling Defendants, via the Settlement Notice Administrator mailed to the United States Attorney General, as well as the Attorneys General of each of the 50 states, the District of Columbia, and the U.S. territories and possessions, a letter informing them of a settlement in this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. *See generally* Declaration of Jeanne C. Finegan, APR Regarding Implementation of Class Notice dated August 28, 2023 at ¶ 8.   The CAFA Notice Letters informed the attorneys general that the Settlement Agreement, along with all its attachments, as well as all required pleadings and orders, had been posted to www.cafanotice.com.   The CAFA Notice Letters also informed the attorneys

---

[6] The Court appointed Car Part as BMW's Settlement Claims Administrator.

general that no judicial hearings were scheduled in the action, and that it was not feasible to provide the names of each class member who resides in each jurisdiction. *Id.*

Further, the Settling Defendants have complied with the notice provisions set forth in Section IV of the Settlement Agreements.   The Settlement Notice Administrator established a Settlement website, https://www.airbagrecyclersettlement.com/, to inform Class Members of the terms of each of the Agreements and other relevant information. *Id.* ¶ 21.  The website contains a section with Frequently Asked Questions.   The Settlement Notice Administrator also established a toll-free telephone number, listed in the relevant notices and on the Settlement website, that provides settlement-related information to Class Members using an Interactive Voice Response system, with an option to speak with live operators. *Id.* ¶ 22.

The Settlement Notice Administrator caused the Publication Notice as described in the Declaration of the proposed Settlement Administrator to be published in newspapers, magazines, and other media outlets as agreed upon by the parties. *Id.* ¶¶ 14-18.  These included, for example, Automotive Recycling, Auto Recycler's ToolBox Magazine, and American Recycler. *Id.* ¶ 14. Publication Notice directed potential Class Members to visit https://www.airbagrecyclersettlement.com/ for additional information as to their options and requirements for participating or opting out of the Settlement.

The Settlement Notice Administrator also sent 26,219 Direct Mailed Notices, substantially in the form attached as Exhibit 2 to the Settlement Agreements, by U.S. Mail, proper postage prepaid, to Class Members, whose addresses were obtained through reasonable efforts. *Id.* ¶¶ 11-13.   The Direct Mailed Notice informed potential Class Members how to obtain the Long Form Notice from the Settlement website, through regular mail, or from a toll-free telephone number. In addition, the Settlement Notice Administrator remailed any Direct Mailed Notices returned by

the United States Postal Service with a forwarding address and used best efforts to locate a better address and promptly mailed copies of the notice to any better addresses so found.   Courts have frequently determined that notification via first-class mail is the best practicable means of notice. *See, e.g., In re Beef Industry Antitrust Litig.*, 607 F.2d 167, 179 (5th Cir. 1979) (finding that "where class members were sufficiently identified to receive adequate notice by mail, . . . such notice was the best notice practicable in the circumstances and [complied] with Rule 23(c)(2) of the Federal Rules of Civil Procedure"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (finding that sending a summary postcard notice by U.S. Mail was "the 'best practicable notice'" under the circumstances and "was sufficient to satisfy the requirements of due process").   The Direct Mailed Notice is also available on the Settlement website.

The Settlement website includes the Long Form Notice, attached to the Settlement Agreements as Exhibit 6.   The Long Form Notice contains a plain and concise description of the nature of the Actions, the history of the litigation, the preliminary certification of the Class for settlement purposes, and the proposed Settlement, including information on the identity of Class Members, how the proposed Settlements would provide relief to Class Members, what claims are released under the proposed Settlements, and other relevant terms and conditions.   The Long Form Notice also informs Class Members that they have the right to opt out of the Settlement and how to do so, and further informs Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing.   The Direct Mailed Notice provides the deadlines and procedures for exercising those rights.   The Long Form Notice informs Class Members about the amounts that may be sought by Settlement Class Counsel as Attorneys' Fees (none) and Expenses (no more than $26,867.25 per Defendant), and individual awards to the Plaintiffs (none).   *See, e.g.,*

*https://toyota.airbagrecyclersettlement.com/home/documents/* (listing settlement-related documents for Toyota).

Based on the foregoing, the Class Members have received "the best practicable" notice which was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *see also Almanazar v. Select Portfolio Servicing, Inc*., No. 1:14-cv-22586, 2016 WL 1169198 (S.D. Fla. Mar. 25, 2016) (Moreno, J.) (holding that notice plan that included a combination of direct mail notice, publication notice, Internet advertisements, a toll-free telephone number, and a website with information about the settlement was "reasonably calculated" to provide notice to Settlement Class Members and "constituted the best practicable notice under the circumstances").   The notice satisfied the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977); *Saccoccio v. JP Morgan Chase Bank, N.A*., 297 F.R.D. 683, 691 (S.D. Fla. 2011) (Moreno, J.) (granting final approval of settlement where the notice administrator mailed notices apprising the class of the settlement, their rights to submit claims or opt out, the binding effect of the settlement, and relevant deadlines).   The Notice, among other things, defined the Settlement Class, described the release as well as the amount, method, and manner of proposed execution of the settlement, and informed the Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.   The notice also informed Class Members that a class judgment would bind them unless

they opted out, and told them where they could obtain more information, such as access to a full copy of the Settlement Agreements and their attachments.

## VI.    LEGAL STANDARDS GOVERNING FINAL APPROVAL.

"Public policy strongly favors the pretrial settlement of class action lawsuits," *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992), which "have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quotation omitted) (citation omitted).

Final approval requires that the district court find that the settlement "is fair, adequate and reasonable and . . . not the product of collusion between the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)); *see also* Fed. R. Civ. P. 23(e).  The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett*, 737 F.2d at 986.

Pursuant to Rule 23(e)(2)(D), the settlements "treat[] class members equitably relative to each other."  The proposed settlements do not provide "unduly preferential treatment of class representatives or segments of the class." Manual for Complex Litigation 4th § 21.632, at 321. The settlements provide specific and targeted benefits to eligible Class Members.  "The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  *See* Rule 23(e)(2)(C)(ii).  As noted above in Section III, the settlements provide streamlined claims processes to allow Class Members to receive an additional 15 percent for eligible Inflators.

Courts in the Eleventh Circuit evaluate several factors, known as the *Bennett* factors, which are discussed in the next section of this brief.  "In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties."  *Nelson*, 484 F. App'x at 434.

"Indeed, absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Greco*, 635 F. App'x at 632 (quotation omitted) (citation omitted); *see also* Rule 23(e)(2)(C)(i)-(iv).

## VII.   THE SETTLEMENTS ARE FAIR, ADEQUATE, AND REASONABLE.

Once the Court has concluded that the settlements were not the product of collusion, the Court must consider whether the settlements are "fair, adequate and reasonable." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1983)) (footnote omitted).  Courts in the Eleventh Circuit generally weigh the following factors when undertaking that analysis:

1.   The likelihood of success at trial;

2.   The range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;[7]

3.   The complexity, expense, and duration of litigation;

4.   The stage of proceedings at which the settlement was achieved; and

5.   The substance and amount of opposition to the settlement.

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (quoting *Bennett*, 737 F.2d at 986)); *see also Sterling v. Stewart*, 158 F.3d 1199, 1203 n.6 (11th Cir. 1998) (directing that courts should examine the *Bennett* factors "[i]n evaluating whether a settlement is fair").

In assessing the *Bennett* factors, the "ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to

---

[7] Although *Bennett* lists these two factors separately, they "are easily combined" for analysis. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988); *see also Saccoccio*, 297 F.R.D. at 691 (S.D. Fla. 2014) (combining factors for analysis).

trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009). The analysis is informed by the "overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1328, 1331 (5th Cir. 1977); *see also In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991) ("Settlement is generally favored because it conserves scarce judicial resources."). A consideration of all factors demonstrates that the proposed settlements are fair, adequate, and reasonable.

### A.  <u>The Likelihood of Success at Trial.</u>

The unpredictability of trials generally weighs in favor of a finding that the settlement is fair, adequate, and reasonable. That is particularly true where, as here, "plaintiff's success at trial could not be guaranteed." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988). The Court must consider the strength of the claims and whether any defenses "present a significant hurdle to [the class's] potential recovery." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005); *see also Ass'n for Disabled Americans, Inc.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002) (approving class action settlement where "given Defendant's numerous significant defenses, the complexities of the case, and the developing nature of the law [governing Defendant's claims], the outcome of a trial on the merits is extremely uncertain"). Here, there were numerous hurdles for the Recycler Plaintiffs to surmount.

First, this Court dismissed all federal claims and the bulk of the Recycler Plaintiffs' state law claims in response to motions to dismiss. *See* Doc. 3965. This left the Recycler Plaintiffs with a far smaller putative class than the nationwide class they initially sought. And the dismissal of the RICO claims (and any accompanying chance of treble damages) diminished any chance of a substantial recovery.

Second, the Recycler Plaintiffs would have to jump the hurdle of class certification.  The Settling Defendants would hotly contest that issue and would argue that a nationwide litigation class or statewide litigation subclasses cannot be certified given the significant variations in state laws governing the Recycler Plaintiffs' claims.  *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1261 (11th Cir. 2004) ("It goes without saying that class certification [of a litigation class] is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim."), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002) ("[W]hen a survey of the various deceptive trade practices laws is done, it becomes clear that a class action trial in this case would be wholly unmanageable [because of the] patchwork of rules and standards reflecting the diverse policy judgments of lawmakers in fifty states.").  Moreover, to the extent the Recycler Plaintiffs have asserted claims grounded in fraud, the differing standards for reliance, standing alone, could preclude class certification under the laws of many states.  *See, e.g. Tershakovec v. Ford Motor Co.*, ___ F.4th ____, 2023 WL 4377585 (11th Cir. July 7, 2023).  Regardless, any ruling on class certification would surely generate an appeal and lengthy post-order proceedings that could ultimately result in additional motion practice and different outcomes.

Third, even assuming any classes were ultimately certified, the Recycler Plaintiffs would face strong defenses that the Settling Defendants would raise in the context of a motion for summary judgment and, if necessary, at trial.  The Recycler Plaintiffs' claims rest on complaints about the condition of components in vehicles they purchase in the secondary market—often after the vehicles have sustained significant damage—to salvage and resell component parts.  In simple terms, the Recycler Plaintiffs are at least two steps removed from the Settling Defendants who sell

vehicles either to dealer networks for resale, or directly to the consumers.  They have no enforceable expectation that any particular part is functional or capable of resale. Faced with these basic facts, the Recycler Plaintiffs presented untested theories of recovery under laws often designed to protect direct consumers, not remote resellers.  With respect to the few remaining state law fraudulent concealment and statutory claims, the Court explicitly acknowledged a "close call" on various questions of law even at the pleading stage–including key issues such as proximate causation and whether Defendants owed any duty to purchasers of used vehicles in the secondary market. *See id.* at 30 ("[T]he Court denies the Defendants' motion to dismiss on the point, although it acknowledges it is a close question."); *id.* at 32 ("Once again, this is a close question . . . to the extent Defendants rely on a proximate cause defense, the Court Intends to deal with those fact-specific questions at the summary judgment stage.").[8]

The Recycler Plaintiffs' claims would require proof that the Settling Defendants knew of a defect and made an associated misrepresentation or failed to disclose it.[9]  The Settling Defendants intended to present evidence that would undermine any attempt at proof on those points.  For example, the Settling Defendants would show in motion practice, or at trial if necessary, that Takata provided fraudulent test data and studies to support use of its Inflators to induce the Settling Defendants to purchase and use those Inflators.  *See* Doc. 2909 at 26.  The Settling Defendants would present documents and testimony to support those points, which would be corroborated by

---

[8] For similar reasons, the Settling Defendants would also argue that the Recycler Plaintiffs failed to prove justifiable reliance on any purported misrepresentation or omission for the simple fact that any marketing statements would have been directed to the original consumer purchasers of the vehicles, and not the Recycler Plaintiffs. *See, e.g.*, Doc. 3863 at 7-8.

[9] *See, e.g.,* Doc. 3965 at 28 ("The basic elements of a fraudulent concealment claim are generally (1) a duty to disclose on the part of the defendant; (2) concealment or failure to disclose by defendant . . . ." (citing *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 234 (S.D.N.Y. 2015)); *id.* at 37 ("[T]he basic elements of state statutory fraud claims [include] knowledge of the inflator defect, [and] Defendants' false statements/omissions . . . ."); *see also Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant *knowingly* fails to disclose a material defect that diminishes a product's value." (emphasis added)).

the parallel government investigation into Takata's conduct and its subsequent guilty plea. *See* Indictment, *United States v. Takata*, 2:16-cr-20810, at 7 (E.D. Mich. Dec. 7, 2016) ("The purpose of the scheme was for the [Takata] defendants to … induc[e] the victim [original equipment manufacturers ('OEMs')] to purchase airbag systems from Takata . . . by deceiving the OEMs through false and fraudulent reports and other information that concealed the true condition of the inflators, which the OEMs would not otherwise have purchased."). The Settling Defendants planned to present compelling evidence that they lacked any knowledge (actual or constructive) during the relevant period that any Takata Inflators used in the relevant vehicles may rupture or would be subject to recall. Absent any knowledge, and as the victims of fraud themselves, the Settling Defendants had no duty to disclose any alleged defect and lacked the scienter necessary to make out a fraud claim.

Continuing to litigate these and other matters would require Recycler Plaintiffs' counsel to risk time and money over a period of many years, all while the class waits for any possibility of recovery. Given the uncertainties if this case were litigated, the first *Bennett* factor strongly favors a finding that the settlement is fair, adequate, and reasonable.

**B.    The Range of Possible Recovery and the Point on or Below the Range of Recovery at Which the Settlement Is Fair, Adequate, and Reasonable, Favor Approval.**

In evaluating the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable (the second and third *Bennett* factors), "the focus is on the possible recovery at trial." *Lipuma*, 406 F. Supp. 2d at 1322-23 (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981)). But "[t]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation"; rather, the Court should "evaluate the proposed settlement in its totality." *Id.* at 1323 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106–07 (2d Cir. 2005)). Deference to counsels' estimations is

particularly appropriate when the value of possible recovery is difficult to gauge. *See, e.g.*, *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 493 (3d Cir. 2017) ("[W]here valuation of plaintiffs' claims is difficult or impossible without expert testimony . . . the District Court need not delay approval of an otherwise fair and adequate settlement if it has sufficient other information to judge the fairness of the settlement.").

As demonstrated above, whether the Recycler Plaintiffs would succeed at trial is far from certain. Accordingly, "the range of possibility [were the case to continue] spans from a finding of non-liability to a varying range of monetary . . . relief." *See Saccoccio*, 297 F.R.D. at 693. In contrast, the Settlements avoid this uncertainty and confer an immediate and meaningful recovery for the Class Members. *See Lipuma*, 406 F. Supp. 2d at 1323 (finding a court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation," and observing "it has been held proper to take the bird in the hand instead of a prospective flock in the bush") (quotation omitted)). And the Settlement Agreements confer some of the agreed-upon benefits now, not after additional years of litigation and appeals. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation—like the instant case—can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive."); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd.* 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

Moreover, the Settlement Agreements provide the Class Members with monetary compensation for the Inflators that form the basis of the Recycler Plaintiffs' claims. The Recycler Plaintiffs did not quantify any purported damages in any of their complaints, but any purported harm would rest on their allegations that they were unable to resell the Inflators found in the vehicles that they purchased for salvage purposes. As set forth in the relevant Settlement Agreements, the Settling Defendants have agreed to increase payment rates associated with inflator recovery. The Settling Defendants have agreed to (a) pay notice and related costs to raise awareness of the affected Inflators, and (b) pay eligible Settlement Class Members, over the course of at least two years, 15 percent more than the Settling Defendants were paying under the previous programs for deployed, undeployed or missing Inflators in the Subject Vehicles as spelled out in detail in the Settlement Agreements. *See* Settlement Agreements at §§ III.B, III.C.

The newly available payments must be considered against the likelihood of recovery. As detailed above, "[t]he Settlement eliminates a substantial risk that the Class would walk away empty-handed" at the conclusion of the trial and any appeals and uses a straightforward process to allow significant relief to be provided to eligible Class Members. *See* Rule 23(e)(2)(C) and (ii); *Fabricant v. Sears Roebuck & Co.*, No. 98-1281-Civ., 2002 WL 34477904, at *3 (S.D. Fla. Sept. 18, 2002); *see also Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 WL 1153772, at *5 (S.D. Fla. Mar. 20, 2014) (approving settlement that "represent[ed] approximately 35% of the maximum damages potentially recoverable by the Class"); *In re Checking Account*, 830 F. Supp. 2d at 1346 (characterizing settlement recovery range between 9% and 45% of total anticipated recovery as an "exemplary result"); *Behrens*, 118 F.R.D. at 542; ("[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery"). Indeed, "compromise is the essence of a settlement," and "'inherent in compromise is

a yielding of absolutes and an abandoning of highest hopes.'"  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972)). Accordingly, these *Bennett* factors also favor finding that the proposed settlement is fair, adequate, and reasonable.

### C.   The Complexity, Expense, and Duration of the Case.

The Automotive Recyclers Association ("ARA"), purporting to represent all automotive recyclers, first asserted a putative class action against Takata and seven vehicle manufacturers on February 10, 2015.  After several rounds of briefing, this Court dismissed the ARA's claims for lack of standing because the ARA failed to "allege[] the [] purchases of vehicles manufactured by each Automotive Defendant . . . ."  Doc. 975 at 4; *see also* Docs. 977, 979, and 981.  The ARA and multiple individual recyclers filed new complaints, naming additional vehicle manufacturers, that were all subject to multiple additional rounds of briefing – including to sever the Recycler Plaintiffs' claims from the consumer complaints, as well as multiple rounds of motions to dismiss. *See, e.g.*, Docs. 2673, 2781, 2976, 3863, 3874, 3965, and 4045.  As the Court has previously observed, motions to dismiss various claims in this MDL have spanned the course of multiple years.  Doc. 1919.  The cost of getting to this point is reflected by the more than four thousand docket entries filed to date.  There has also been voluminous written discovery, extensive document productions, and global depositions throughout the duration of the entire MDL – discovery that has consumed resources from the parties and the Court itself.  *See Wilson*, 2016 WL 457011, at *7 ("Complex litigation – like the instant case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.") (quotation omitted).

Had the case not settled, it would have consumed even more of the parties' and the Court's resources through the conclusion of expert discovery, class certification, summary judgment, and

potential trial, post-trial motions, and appeal.  These factors heavily favor a finding that the settlement is fair and reasonable here.  *See Saccoccio*, 297 F.R.D. at 694 (approving class action settlement where "[t]he parties have already expended significant energy and money litigating this case and propounding discovery, and, absent settlement, would have had to expend significant resources in litigating a protracted trial and appeal"); *Cifuentes*, 2014 WL 1153772, at *5 (approving class action settlement upon finding that "[h]ad this case proceeded to trial (and, presumably, appeal), . . . the costs would have proliferated considerably" and "the case would have taken much longer"); *Access Now v. Cunard Line Ltd.*, No. 00-7233-CIV, 2001 WL 1622015, at *2 (S.D. Fla. Oct. 31, 2001) (complexity, expense, and duration factor met where, as here, "[t]his matter has already required the parties to retain experts in a variety of fields," "[t]he parties have spent a considerable amount of time and money in analyzing the factual and legal issues the case presents," and "[the] matter will clearly lead to a protracted and expensive trial as well as a possible appeal").

Instead of the continued distraction, uncertainty, and expense of litigation, the Settlement Agreements provide immediate benefits to Class Members.  "Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery.  Hence, this … factor weighs strongly in favor of granting final approval to the Settlement Agreement."  *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd sub nom.  In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

### D.    The Stage of the Proceedings at Which Settlement Was Achieved.

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."  *Lipuma*, 406 F. Supp. 2d at 1324.  In

reviewing a proposed settlement, the Court "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991) (quotation omitted).

It has been more than eight years since the ARA first asserted a purported class action on behalf of various automotive recyclers. Over the course of those eight years—including in connection with parallel consumer claims resting on partially overlapping facts—the parties engaged in extensive litigation and discovery. The parties have produced millions of pages of documents, served many hundreds of pages of interrogatory responses, and conducted dozens of individual and corporate-witness depositions. The parties had ample information and opportunity to engage in meaningful settlement discussions.

In mid-2021, after the parties had already engaged in nearly six years of costly and invasive discovery, the parties began to explore the option of a global settlement of the Recycler Plaintiffs' claims. Among other things, the parties discussed their respective views of the law and facts and potential relief for the proposed class. Those conversations took months, requiring at least four extensions to the schedule to accommodate rigorous debate over the strengths and weaknesses of the claims and defenses, as well as what would qualify as a fair and reasonable settlement amount. *See, e.g.*, Docs. 4138, 4147, 4277, and 4349. Throughout that time, the parties continued to litigate this action and further develop their respective cases. Then, in late 2022, and early 2023, the parties ultimately reached the Settlements that they now present to the Court for approval. In light of these efforts, the Court previously determined that the Settlements were "the result of informed,

good-faith, arm's length negotiations between the parties and their capable and experienced counsel." *See* Doc. 4602, at 2; *accord* Doc. 4603-4607 at 2.

After litigating this case for many years, engaging in extensive discovery, and participating in extensive settlement negotiations, the parties here clearly had "sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324; *see also Saccoccio*, 297 F.R.D. at 694 (approving class action settlement where "[c]lass counsel ha[d] spent over 1.5 years litigating against [the defendants], and during that time ha[d] propounded discovery, including deposing witnesses and reviewing documents . . . as to satisfy itself as to its probability of success on the merits, the possible range of recovery, and the likely expense and duration of the litigation"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (stage of litigation at which settlement was reached favored final approval where "settlement negotiations did not begin until after class counsel had substantively litigated the [case], taken several key depositions, and reviewed thousands of documents"). Thus, this factor also supports approval of the Settlement Agreements.

   **E.**  **The Substance and Amount of Opposition to Settlement.**

Pursuant to the Preliminary Approval Orders, the Settling Defendants are submitting their memorandum in support of final approval before the objection and opt-out deadlines. At this point, the Settling Defendants are not aware of any objections to or opt-outs from the Settlements. The Settling Defendants may submit a brief responding to any timely objections no later than October 20, 2023, as expressly permitted by the Preliminary Approval Orders. *See* Doc. 4602 at 19; *accord* Doc. 4603 at 19; Doc. 4604 at 19; Doc. 4605 at 19; Doc. 4606 at 19; Doc. 4607 at 19.

## VIII.   THE COURT HAS PERSONAL AND SUBJECT MATTER JURISDICTION TO APPROVE THE SETTLEMENT.

The Court has personal jurisdiction over the parties and all Settlement Class Members because, pursuant to the robust notice plan that the Court approved and the Settling Defendants implemented, all Settlement Class Members "were provided with proper notice of the proposed Settlement, its consequences, their right to be excluded, and their right to be heard." *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, at *2 (S.D. Fla. Apr. 15, 2010) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998)) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class.").

Because the Class has received notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," personal jurisdiction is satisfied. *Shutts*, 472 U.S. at 811-12.  The notice provided here included direct mailed notices to Settlement Class Members, broadly disseminated publication notice, a dedicated Settlement website with answers to frequently asked questions and access to the long form notice, and a toll-free telephone number with access to automated information and live operators.

Further, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332(d)(2) (class actions), and 28 U.S.C. § 1367 (supplemental jurisdiction).

IX.   **THE SETTLEMENTS ARE NOT A PRODUCT OF COLLUSION AND A PRESUMPTION OF FAIRNESS IS WARRANTED.**

To finally approve the settlements, the Court must find that "there was no fraud or collusion in arriving at the settlement[s]." *Bennett v. Behring Corp.*, 737 F.2d 986 (11th Cir. 1984); Rule 23(e)(2)(B). That finding is readily supported by the facts of these cases.

"There is a presumption of good faith in the negotiation process." *Saccoccio*, 297 F.R.D. at 692. Here, the Settlements are products of arms-length, extensive, and adversarial negotiations between Settlement Class Counsel and counsel for the Settling Defendants over many months, during which the parties were also engaged in active litigation. In granting Preliminary Approval, the Court carefully scrutinized the Settlements and found that "the Settlement[s] w[ere] reached in the absence of collusion, and [are] the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel." *See* Doc. 4602 at 8-9; Doc. 4603 at 8-9; Doc. 4604 at 9; Doc. 4605 at 8-9; Doc. 4606 at 8-9; Doc. 4607 at 8-9; Doc. 4626 at 8-9; *see also Saccoccio*, 297 F.R.D. at 692 ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion.").

As this Court has recognized, "where the case proceeds adversarially, this counsels against a finding of collusion." *Saccoccio*, 297 F.R.D. at 692 (citing *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001)); *see also Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion where "the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989). That has been the case here.

In its Preliminary Approval Orders, the Court also noted that Settlement Class Counsel "have dedicated substantial resources to the prosecution to the Action" and "have vigorously and competently represented the Class Members' interests in the Action." *See* Doc. 4602 at 6; Doc.

4603 at 6; Doc. 4604 at 6; Doc. 4605 at 6; Doc. 4606 at 6; Doc. 4607 at 6; Doc. 4626 at 6.  Thus, there are no signs of collusion in the negotiation of the settlements.

## X.      THIS COURT SHOULD ISSUE A PERMANENT INJUNCTION.

The rights and interests of the Class Members and the jurisdiction of this Court will be impaired if Class Members who have not opted out of the various settlement classes proceed with other actions alleging substantially similar claims to those asserted in this Action or claims released pursuant to the settlement agreements.   Numerous federal courts, including this one, have recognized their power to enjoin class members who did not opt out of a settlement from filing or continuing to prosecute other actions that would interfere with the implementation of a finally approved class action settlement.  *See, e.g.*, *Almanazar*, 2016 WL 1169198, at *8 (Moreno J.) (granting permanent injunction); *Hall v. Bank of America, N.A.*, No. 1:12-cv-22700-FAM, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014), at *14 (same); *see also Gilbert v. Suntrust Banks, Inc*., No. 15-80415-Civ-Brannon, 2016 WL 4429655, at *2 (S.D. Fla. July 29, 2016); *Montoya v. PNC Bank, N.A*., No. 14-20474-CIV-GOODMAN, 2016 WL 1529902, at *30 (S.D. Fla. Apr. 13, 2016); *Legg v. E-Z Rent A Car, Inc*., No. 6:14-cv-1716-Orl-40DAB, 2015 WL 12839191, at *3 (M.D. Fla. Sept. 25, 2015); *In re American Honda Motor Co., Inc. Dealership Relations Litig*., 315 F.3d 417, 441-42 (4th Cir. 2003); *In re Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002); *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 275 (7th Cir. 1998).  That Settlement Class Members have been afforded an opportunity to opt out of each of the Settlements justifies the issuance of an injunction to aid the Court in its management of the Settlements.  *See Adams v. S. Farm Bureau Life Ins. Co*., 493 F.3d 1276, 1291 (11th Cir. 2007).

In each of the Settlements, the Court should issue permanent injunctions pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  The All Writs Act permits this Court to issue "all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of

law." 28 U.S.C. § 1651(a).  This includes protecting its jurisdiction by enjoining parallel actions by class members that would interfere with the court's ability to oversee a class action settlement. *See Henson v. Ciba-Geigy Corp.*, 261 F.3d 1065, 1068 (11th Cir. 2001) ("[A] district court has the authority under the [All Writs] Act to enjoin a party to litigation before it from prosecuting an action in contravention of a settlement agreement over which the district court has retained jurisdiction."); *Rosner v. United States*, 517 F. App'x 762, 766 (11th Cir. 2013); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 2023 WL 2631070, at *2 ("Through the All Writs Act, Congress codified 'the long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance and thereby avoid relitigation of questions once settled between the same parties.'").  The Court may issue an injunction as soon as the litigation reaches the settlement stage to effectuate a final settlement.  *See Faught v. Am. Home Shield Corp.*, 660 F.3d 1289, 1292–93 (11th Cir. 2011); *In re Mexico Money Transfer Litig.*, Nos. 98-C-2407 and 98-C-2408, 1999 WL 1011788, at *3 (N.D. Ill. Oct. 19, 1999); *see also Saccoccio*, 2015 WL 3822315, at *2 ("The Eleventh Circuit has made clear that when claims are brought by a settlement class member which are barred or would interfere with an approved class settlement, the class action defendant should move for an order to show cause why the settlement class member 'should not be held in contempt for violating the injunction against the prosecution of released claims.'").

Courts may also issue permanent injunctions pursuant to the "necessary in aid of" exception to the Anti-Injunction Act.  28 U.S.C. § 2283.  This exception allows a federal court to prevent its jurisdiction over a settlement from being undermined by parallel litigation in state courts.  *Juris v. Inamed Corp.*, 685 F.3d 1294, 1339 (11th Cir. 2012) ("[T]he 'in aid of its jurisdiction' exception [may] be used 'to enjoin parallel state class action proceedings that might jeopardize a complex federal settlement and state in personam proceedings that threaten to make

26

complex multidistrict litigation unmanageable."); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880–82 (11th Cir. 1989); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2023 WL 2631070, at *2 (N.D. Ga. Mar. 22, 2023) ("Under the Anti-Injunction Act, a federal court may not enjoin state court proceedings except '[1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments.'"). In addition, another exception to the Anti-Injunction Act permits courts to issue injunctions where it is necessary "to protect or effectuate [a court's] judgment[]," such as where a court has finally approved a class action settlement. *Juris*, 685 F.3d at 1340; *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 2023 WL 2631070, at *2.

The present circumstances warrant the Court's issuance of permanent injunctions pursuant to the All Writs Act and the exceptions to the Anti-Injunction Act. *See, e.g.*, *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, No. 2:97-CV-11441, 2010 WL 11506713, at *50-*54 (N.D. Ala. May 19, 2010); *see also In re Managed Care Litig.*, No. 00-1334-MD, 2009 WL 413510, at *7–*8 (S.D. Fla. Feb. 19, 2009) (Moreno, J.) (recognizing Court's "broad authority" to enforce injunctions under All Writs Act and enjoining post-settlement claims brought in Hawaii state court because "[the] Hawaii Plaintiffs could have simply opted out of the settlement and pursued their claims in Hawaii, but they did not do so"). Indeed, this Court has found it necessary and appropriate to issue permanent injunctions as part of the eight finally-approved consumer class action settlements. *See, e.g.*, Doc. 2168 at ¶ 29; *see also* Doc. 2162 at ¶ 29, Doc. 2164 at ¶ 29, Doc. 2166 at ¶ 29, Doc. 2388 at ¶ 25, Doc. 2385 at ¶ 25, Doc. 3182 at ¶ 34, Doc. 4214 at ¶ 45.

Accordingly, this Court should grant final approval to each of the Settlements and issue permanent injunctions in all of the Settlements to prevent settlement class members who did not

opt out from interfering with the implementation of the settlements and jeopardizing the rights and interests of other Class Members jurisdiction.

Dated:  September 1, 2023

/s/ Stanley H. Wakshlag
Michael B. Gallub (admitted *pro hac vice*)
Homer B. Ramsey (admitted *pro hac vice*)
mgallub@shb.com
hramsey@shb.com
SHOOK, HARDY & BACON L.L.P.
1 Rockefeller Plaza, Suite 2801
New York, NY  10020
T:  (212) 989-8844
F:  (929) 501-5455

Stanley H. Wakshlag (Florida Bar No. 266264)
shw@knpa.com
KENNY NACHWALTER, P.A.
Four Seasons Tower
1441 Brickell Avenue, Suite 1100
Miami, FL  33131
T:  (305) 373-1000

***Counsel for Defendants Subaru of America, Inc. and Fuji Heavy Industries Ltd., currently known as Subaru Corporation***

*/s/ S. Carey Villeneuve*
S. Carey Villeneuve
Fla Bar No. 0060621
BUCHANAN INGERSOLL & ROONEY PC
401 East Las Olas Boulevard, Suite 2250
Fort Lauderdale, FL 33301
(954) 703-3901
carey.villeneuve@bipc.com

Christopher J. Dalton (admitted *pro hac vice*)
BUCHANAN INGERSOLL & ROONEY PC
550 Broad Street, Suite 810
Newark, NJ 07102-4582
(973) 273-9800
christopher.dalton@bipc.com

***Attorneys for Defendants,***
***BMW of North America, LLC and***
***BMW Manufacturing Co., LLC***

*/s/ Henry Salas*
Henry Salas
Florida Bar No. 815268
henry.salas@csklegal.com
Sean Hernandez
Florida Bar No. 123834
sean.hernandez@csklegal.com
COLE, SCOTT & KISSANE, P.A.
9150 So. Dadeland Blvd., Suite 1400
Miami, Florida 33156
T: 786-268-6419
F: 305-373-2294

R. Kent Warren (admitted *pro hac vice*)
kwarren@mcguirewoods.com
Jill C. Griset (admitted *pro hac vice*)
jgriset@mcguirewoods.com
T. Richmond McPherson III (admitted *pro hac vice*)
rmcpherson@mcguirewoods.com
Abigail A. Golden (admitted *pro hac vice*)
agolden@mcguirewoods.com
MCGUIREWOODS, LLP
201 N Tryon Street, Suite 3000
Charlotte, NC  28202
T:  (704) 343-2193
F:  (704) 444-8734

Perry W. Miles, IV (admitted *pro hac vice*)
pmiles@mcguirewoods.com
Jonathan T. Tan (admitted *pro hac vice*)
jtan@mcguirewoods.com
MCGUIREWOODS, LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T:  (804) 775-1039
F:  (804) 698-2122

**Counsel for Ford Motor Company**

_/s/ Mitchell E. Widom_
Mitchell E. Widom
mwidom@bilzin.com
BILZIN SUMBERG BAENA PRICE &
AXELROD LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
T: (305) 374-7580
F: (305) 374-7593

Eric S. Mattson
emattson@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
P: (312) 853-7000
F: (312) 853-7036

***Counsel for Defendants Honda Motor Co.,
Ltd., American Honda Motor Co., Inc.,
Honda R&D Co., Ltd., and Honda of America
Mfg., Inc.***

31

By: */s/ Ryan Roman*
Cari K. Dawson
cari.dawson@alston.com
Jason Rottner
jason.rottner@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
T: 404 881-7000
F: 404 881-7777
(admitted *pro hac vice*)

Michael C. Marsh
michael.marsh@akerman.com
Ryan Roman
ryan.roman@akerman.com
AKERMAN LLP
98 Southeast Seventh St., Ste. 1100
Miami, FL 33131
T: 305 374-5600

***Counsel for Mazda Motor of America, Inc.
and Mazda Motor Corporation***

By:  */s/ E. Paul Cauley, Jr.*
paul.cauley@faegredrinker.com
S. Vance Wittie (admitted *pro hac vice*)
vance.wittie@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, TX 75201
T: 469 357-2500
F: 469 327-0860

***Counsel for Nissan Motor Co., Ltd.***

*/s/ Leah Aaronson*
Leah Aaronson
laaronson@kslaw.com
KING & SPALDING LLP
200 South Biscayne Boulevard, Suite 4700
Miami, FL  33131
T:  (305) 462-6000
F:  (305) 462-6100

John P. Hooper (admitted *pro hac vice*)
Eric F. Gladbach (admitted *pro hac vice*)
jhooper@kslaw.com
egladbach@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY  10136
T:  (212) 556-2100
F:  (212) 556-2222

Raymond A. Cardozo (admitted *pro hac vice*)
REED SMITH LLP
101 2nd Street, Suite 1800
San Francisco, CA  94105
T:  (415) 543-8700
F:  (415) 391-8269

Derek S. Whitefield (admitted *pro hac vice*)
dwhitefield@dykema.com
DYKEMA GOSSETT LLP
333 South Grand Avenue Suite 2100
Los Angeles, CA 90071
T: (213) 457-1800
F: (213) 457-1850

***Counsel for Defendants Toyota Motor Corporation***
***Toyota Motor Sales, U.S.A., Inc., and Toyota Motor***
***Engineering & Manufacturing North America, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.


*/s/ Stanley H. Wakshlag*