**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION | MDL No. 2599 |
| | Master File No. 15-MD-2599-FAM |
| This Document Relates to All Economic Loss Class Actions and: | S.D. Fla. Case No. 1:14-cv-24009-FAM |
| | |
| STEPHANIE PUHALLA, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| MERCEDES-BENZ USA, LLC, | |
| Defendant. | |

**MERCEDES-BENZ USA, LLC'S BRIEF IN RESPONSE TO**
**THE COURT'S ORDER OF APRIL 8, 2024**

Raoul G. Cantero
Jaime A. Bianchi
WHITE & CASE LLP
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

Troy M. Yoshino
Eric J. Knapp
WINSTON & STRAWN LLP
101 California Street, Suite 3500
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Attorneys for Defendant*
*Mercedes-Benz USA, LLC*

## TABLE OF CONTENTS

Introduction ........................................................................................................................... vi

Argument ............................................................................................................................... 2

    I.      The record does not support a conclusion that MBUSA had knowledge of the alleged defects, so class certification as to MBUSA should be denied. .................................................. 2

    II.     MBUSA made different showings as to the lack of predominance and ascertainability that the Court had no occasion to address as to GM and FCA. .................................................. 3

    III.    MBUSA is in a different position than FCA and GM because plaintiffs assert state-law claims against MBUSA that this Court has not addressed. ........................................................ 6

        A.   The unaddressed state-law claims are inappropriate for class certification. .................... 7

        B.   Class certification is likewise inappropriate for the state-law claims that overlap between MBUSA and FCA. ................................................................................................ 13

    IV.    Plaintiffs have not and cannot show that a class trial against MBUSA would be manageable. ......................................................................................................................... 17

    V.     It would be error for the Court to certify any class as to MBUSA without addressing the legal viability of plaintiffs' damages theory. ......................................................................... 18

Conclusion .......................................................................................................................... 20

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page(s)**

*Ace Tree Surgery, Inc. v. Terex S.D., Inc.*,
    332 F.R.D. 402 (N.D. Ga. 2019)................................................................5

*Adrian Trucking, Inc. v. Navistar, Inc.*,
    609 F. Supp. 3d 728 (N.D. Iowa 2022)....................................................8

*Am. Honda Motor Co., Inc. v. Allen*,
    600 F.3d 813 (7th Cir. 2010) ..................................................................20

*Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*,
    781 S.E.2d 1 (N.C. 2015).............................................................13, 14, 15

*Babineau v. Fed. Exp. Corp.*,
    576 F.3d 1183 (11th Cir. 2009) ..............................................................20

*Barfield v. Hall Realty, Inc.*,
    232 P.3d 286 (Colo. App. 2010)..............................................................16

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.*,
    22 F. Supp. 3d 1126 (D. Or. 2014) .........................................................12

*Blough v. Shea Homes, Inc.*,
    2014 WL 3694231 (W.D. Wash. July 23, 2014) .....................................9

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008).................................................................................19

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ..................................................................17

*Brown v. Electrolux*,
    817 F.3d 1225 (11th Cir. 2016) ..............................................................18

*Brown v. La.-Pac. Corp.*,
    820 F.3d 339 (8th Cir. 2016) ...............................................................8, 19

*Bryan v. Mack Trucks, Inc.*,
    2010 WL 1568607 (N.D. Miss. Apr. 19, 2010).....................................12

*Bumpers v. Comm. Bank of N. Va.*,
    747 S.E.2d 220 (N.C. 2013).....................................................................13

*Butler v. Porsche Cars N. Am., Inc.*,
    2017 WL 1398316 (N.D. Cal. Apr. 19, 2017) .........................................5

i

*Cervantes v. CRST Int'l, Inc.*,
 2022 WL 2130811 (N.D. Iowa June 14, 2022) ............................................................... 11, 16

*City of McGregor v. Janett*,
 546 N.W.2d 616 (Iowa 1996) ....................................................................................... 8

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
 325 F.R.D. 529 (D. Mass. 2017) .................................................................................. 8

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) .............................................................................................. 19, 20

*Converse v. Vizio, Inc.*,
 2020 WL 729804 (W.D. Wash. Feb. 13, 2020) ............................................................. 9

*In re Cook*,
 2017 WL 532286 (Bankr. M.D.N.C. Feb. 9, 2017) .......................................................... 14

*Corder v. Ford Motor Co.*,
 283 F.R.D. 337 (W.D. Ky. 2012) ........................................................................... 10, 12

*Corder v. Ford Motor Co.*,
 297 F.R.D. 572, 579 (W.D. Ky. 2014) ......................................................................... 12

*Cuene v. Hillard*,
 754 N.W.2d 509 (Wis. Ct. App. 2008) ......................................................................... 15

*Darne v. Ford Motor Co.*,
 2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ................................................................ 17

*Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*,
 2016 WL 8542540 (S.D. Fla. Dec. 1, 2016) ................................................................. 3

*Drake v. Allergan, Inc.*,
 63 F. Supp. 3d 382 (D. Vt. 2014) ............................................................................... 11

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011) ..................................................................................... 20

*Fazzari v. Infinity Partners, LLC*,
 762 S.E.2d 237 (N.C. App. 2014) ............................................................................... 13

*In re Ford Motor Co. Vehicle Paint Litig.*,
 182 F.R.D. 214 (E.D. La. 1998) ................................................................................. 15

*Garcia v. Medved Chevrolet, Inc.*,
 263 P.3d 92 (Colo. 2011) (en banc) ........................................................................... 14

*Green-Cooper v. Brinker Int'l, Inc.*,
   73 F.4th 883 (11th Cir. 2023) ................................................................................19, 20

*Harris v. Bradley Mem. Hosp. & Health Ctr., Inc.*,
   994 A.2d 153 (Conn. 2010) ..............................................................................................11

*Hasemann v. Gerber Prods. Co.*,
   2016 WL 5477595 (E.D.N.Y. Sep. 28, 2016)...................................................................16

*Henderson v. Henderson*,
   495 S.E.2d 496 (Va. 1998)..................................................................................................8

*Huddleston v. John Christner Trucking, LLC*,
   2020 WL 489181 (N.D. Okla. Jan. 30, 2020)...................................................................11

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008)........................................................................................17, 18

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
   170 P.3d 10 (Wash. 2007) (en banc) ..................................................................................8

*James v. GMAC Mortg. LLC*,
   772 F. Supp. 2d 307 (D. Me. 2011) ..................................................................................11

*Jamie S. v. Milwaukee Pub. Sch.*,
   668 F.3d 481 (7th Cir. 2012) ..............................................................................................5

*Jarman v. United Indus. Corp.*,
   98 F. Supp. 2d 757 (S.D. Miss. 2000)...............................................................................10

*Jennings v. Farmers Mut. Ins. Co.*,
   687 S.E.2d 574 (W. Va. 2009)..........................................................................................15

*Johnson v. Hankook Tire Mfg. Co.*,
   2012 WL 12929510 (N.D. Miss. March 14, 2012)............................................................10

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
   285 F.R.D. 573 (E.D. Cal. 2012) ......................................................................................12

*Kanne v. Visa U.S.A. Inc.*,
   723 N.W.2d 293 (Neb. 2006).............................................................................................11

*Larsen v. Vizio, Inc.*,
   2017 WL 3084273 (C.D. Cal. June 26, 2017) ..................................................................11

*Lee Cnty. Mental Health Ctr., Inc. v. Lee Cnty. Bd. of Sup'rs*,
   2000 WL 1288873 (Iowa Ct. App. Sept. 13, 2000)............................................................8

*Lee v. Gen. Motors Corp.*,
   950 F. Supp. 170 (S.D. Miss. 1996).............................................................................10

*Lima v. Deutsche Bank Nat'l Tr. Co.*,
   2021 WL 4722949 (D. Haw. Oct. 8, 2021) ................................................................11

*McGee v. MBUSA*,
   612 F. Supp. 3d 1051 (S.D. Cal. Mar. 30, 2020) ........................................................4

*Metrocall of Del., Inc. v. Cont'l Cellular Corp.*,
   437 S.E.2d 189 (Va. 1993)............................................................................................8

*Mulligan v. Choice Mortg. Corp. USA*,
   1998 WL 544431 (D.N.H. Aug. 11, 1998) ................................................................11

*Murphy v. Cent. Falls Det. Facility Corp.*,
   2014 U.S. Dist. LEXIS 183690 (D.R.I. Dec. 16, 2014) ............................................12

*Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*,
   374 S.E.2d 385 (N.C. 1988).......................................................................................15

*In re MyFord Touch Consumer Litig.*,
   2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ..........................................................15

*Neale v. Volvo Cars of N. Am., LLC*,
   2017 WL 6055774 (D.N.J. Dec 6, 2017) ..................................................................5, 6

*In re OnStar Cont. Litig.*,
   278 F.R.D. 352 (E.D. Mich 2011) ............................................................................12

*Oriental Trading Co., Inc. v. Yagoozon, Inc.*,
   2016 WL 2859603 (D. Neb. May 16, 2016)...............................................................13

*Patterson v. Beall*,
   19 P.3d 839 (Okla. 2000)............................................................................................11

*Paul v. Providence Health Sys.–Or.*,
   273 P.3d 106 (Or. 2012) ............................................................................................11

*Pearson v. Philip Morris, Inc.*,
   361 F.3d 3 (Or. 2015) ...............................................................................................8, 9

*Pitts v. American Security Insurance Co.*,
   550 S.E.2d 179 (N.C. Ct. App. 2001) ........................................................................13

*Porter v. Braskem Am., Inc.*,
   2020 WL 1942310 (S.D. W. Va. Apr. 22, 2020)....................................................15, 16

*Rakes v. Life Invs. Ins. Co.*,
 622 F. Supp. 2d 755 (N.D. Iowa 2008)..........................................................................8

*Rikos v. Procter & Gamble Co.*,
 799 F.3d 497 (6th Cir. 2015) ......................................................................................13

*Roberts v. C.R. Eng., Inc.*,
 318 F.R.D. 457 (D. Utah. 2017) ..................................................................................14

*Shelter Ins. Co. v. Ford Motor Co.*,
 2006 WL 318821 (N.D. Miss. Feb. 9, 2006) ...............................................................10

*Sher v. Raytheon Co.*,
 419 F. App'x 887 (11th Cir. 2011) ...............................................................................20

*Spreitzer v. Hawkeye State Bank*,
 779 N.W.2d 726 (Iowa 2009) ........................................................................................8

*Stockinger v. Toyota Motor Sales U.S.A., Inc.*,
 2020 WL 1289549 (C.D. Cal. Mar. 3, 2020) .................................................................4

*Strawn v. Farmers Ins. Co. of Or.*,
 258 P.3d 1199 (2011)......................................................................................................9

*Tershakovec v. Ford Motor Co.*,
 79 F.4th 1299 (11th Cir. 2023) ............................................................................. *passim*

*State ex rel. U-Haul Co. of W. Va. v. Tabit*,
 2018 WL 2304282 (S. Ct. App. W. Va. May 21, 2018) .........................................14, 15

*Valley Drug Co. v. Geneva Pharms., Inc.*,
 350 F.3d 1181 (11th Cir. 2003) ..............................................................................18, 20

*Vega v. T-Mobile USA, Inc.*,
 564 F.3d 1256 (11th Cir. 2009) ...................................................................................20

*Walewski v. Zenimax Media, Inc.*,
 502 F. App'x 857 (11th Cir. 2012) ...........................................................................3, 12

*Yazd v. Woodside Homes Corp.*,
 143 P.3d 283 (Utah 2006)............................................................................................14

*Yeti Enters. v. Tang*,
 2017 WL 3478484 (D. Or. Aug. 14, 2017).....................................................................8

*Young v. Toyota Motor Sales, U.S.A.*,
 472 P.3d 990 (Wash. 2020)............................................................................................8

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ...........................................................................17, 18

**Statutes**

Iowa Code § 714H. ..........................................................................................................12

Iowa Consumer Protection Act.....................................................................................6, 8

Maine Unfair Trade Practices Act ...................................................................................6

Nebraska Consumer Protection Act.................................................................................6

Oklahoma Consumer Protection Act ...............................................................................6

Oregon Unlawful Trade Practices Act ........................................................................6, 8

R.I. Gen. Laws Ann. § 6-13.1-5.2(a) .............................................................................10

Rhode Island Unfair Trade Practices & Consumer Protection Act ...............................6

Vermont Consumer Fraud Act .........................................................................................6

Washington Consumer Protection Act.........................................................................6, 8

West Virginia Consumer Credit & Protection Act .........................................................6

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................................14, 18, 19, 20

Jack R. Nerad, How to Buy a Car from Another State, J.D. POWER (Nov. 10,
   2020), https://www.jdpower.com/cars/shopping-guides/how-to-buy-a-car-
   from-another-state.............................................................................................................5

As the Court requested, Defendant Mercedes-Benz USA, LLC ("MBUSA") explains in this brief why the Court should not grant plaintiffs' motion for class certification, "consistent . . . with its previous Orders Granting Class Certification" as to FCA US, LLC ("FCA") and General Motors, LLC ("GM"). D.E. 4764.

In short, the evidence shows that MBUSA did not have any pre-recall knowledge of the alleged inflator defects. There is thus no support for a finding—like the Court reached for GM and FCA—of pre-sale knowledge. This lack of knowledge means class certification should be denied.

MBUSA has also showed that, different from GM and FCA, plaintiffs' experts did not inspect, test, or analyze *any* of the airbag inflators in any Mercedes-Benz vehicles ("MBVs"). And MBUSA also uniquely (and correctly) argued that plaintiffs' proposal to use IHS Markit data was not sufficient to ascertain members of the proposed class against MBUSA because that data does not allow determinations about many of the requirements for class membership.

Plaintiffs' motion as to MBUSA also implicates the laws of many states that either were not addressed as to GM or FCA, or else did not receive any significant analysis after the Eleventh Circuit's recent decision in *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299 (11th Cir. 2023). These varying state laws are both substantively inappropriate for certification and emphasize plaintiffs' failure to prove manageability.

Finally, MBUSA respectfully suggests that the Court needs to substantively address the legal viability of the damages theory underpinning plaintiffs' damages expert's model as to MBUSA. For this reason as well, the proper result is to deny plaintiffs' motion for class certification against MBUSA.

<u>ARGUMENT</u>

I.   **The record does not support a conclusion that MBUSA had knowledge of the alleged defects, so class certification as to MBUSA should be denied.**

MBUSA is materially distinct from both FCA and GM because the evidence shows that MBUSA did *not* have pre-recall knowledge of the alleged inflator defects. Unlike FCA and GM, MBUSA does not manufacture MBVs—it distributes them. D.E. 4496 ¶¶ 1, 2, 6, 7; *see also* D.E. 4635 at 3–4 (setting forth record evidence showing MBUSA's lack of knowledge). MBUSA had no role in the research, development, design, or testing of the Takata airbag modules or any of their subcomponents. D.E. 4243-1, Brunner Decl. ¶ 5. MBUSA also had no communications with Takata about the development, design, manufacture, assembly, comparison, testing, or analysis of Takata airbags, or their inflators. D.E. 4496 ¶¶ 4, 6, 7. Even *Plaintiffs' own experts*, Renz and Baglini, agreed that MBUSA would not have any communications with Takata or information about the airbag inflator technology. D.E. 4636-1 at 426:25–427:13, 427:22–429:25; *id.* at 420:22–421:1; D.E. 4636-2 at 336:14–337:22. Unrebutted testimony of MBUSA witnesses confirms this lack of knowledge. D.E. 4243-4 at 36:24–37:10, 97:14–98:1 ("[W]e didn't have specific knowledge as to what [supplier's] airbags were being used in our vehicles."); D.E. 4496 ¶¶ 2, 6, 7. In short, the evidence shows that MBUSA did not know or have reason to know of the alleged inflator defect.

MBUSA's lack of knowledge distinguishes it from GM and FCA and justifies a different result. In certifying classes as to both GM and FCA, the Court relied on evidence of those parties' knowledge of the alleged defect. The Court observed that GM's knowledge of the alleged defect was the "crux of Plaintiffs' legal claims" and held that the "evidence demonstrates that General Motors had superior knowledge of the Inflator Defect and concealed it for years." D.E. 4689 at 2, 11. As to FCA, the Court held that plaintiffs had "sufficiently show[n] that FCA knew about the dangers of using ammonium nitrate in airbags since the early 1990s, and that FCA's engineers voiced concerns about the integrity of Takata ammonium nitrate-based airbags prior the sale of any of the Class Vehicles." D.E. 4659 at 9–10. No such finding is justified as to MBUSA—as noted above, the evidence of its lack of knowledge is unrebutted, acknowledged even by plaintiffs' own experts.

2

The absence of any proof of MBUSA's knowledge—indeed, unrebutted evidence of a *lack* of knowledge—means that plaintiffs cannot establish class members' right to recover in many instances. A class consisting of many members "who have no cause of action as a matter of law" is *per se* overbroad and cannot be certified. *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 859 (11th Cir. 2012); *Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*, 2016 WL 8542540, at *2 (S.D. Fla. Dec. 1, 2016).

Moreover, given the lack of any evidence of MBUSA's pre-sale knowledge, it would be error to find that plaintiffs have provided any method of class-wide proof of a duty to disclose, as the Court did for GM and FCA. *See* D.E. 4635 at 6–7, 22–24. An essential, predominating common issue that the Court found present in the FCA and GM classes is thus absent here. *See* D.E. 4659 at 18–19; D.E. 4689 at 13–14. Because MBUSA, unlike FCA and GM, did not know of the alleged inflator defect, the Court should decline to certify any class against MBUSA.

## II.   MBUSA made different showings as to the lack of predominance and ascertainability that the Court had no occasion to address as to GM and FCA.

MBUSA made several showings in opposition to class certification that differed from those FCA and GM made. MBUSA reserves all its arguments, and respectfully points the Court to its opposition to class certification for a full discussion of each. D.E. 4635. Here, MBUSA focuses on two key arguments that have not been yet been addressed: (1) plaintiffs fail to provide common, classwide evidence of a defect in MBVs, most notably because their experts failed to address the airbag inflators used in any MBVs; and (2) plaintiffs fail to prove ascertainability because they rely on IHS data, but do not show that such data will establish the facts necessary for class membership; indeed, it will not.

***First***, as to MBUSA, plaintiffs have not shown common, classwide evidence of a defect. *See* D.E. 4635 at 18–22. Plaintiff's expert Robert Renz admits that he did not inspect, test, or analyze the Takata airbag inflators in any MBVs. *See* D.E. 4636-1, Renz Dep. 432:13–21. Likewise, plaintiffs' expert James Baglini concedes that he offers no classwide proof against MBUSA. *See* D.E. 4636-2, Baglini Dep. 328:21–23. Indeed, Baglini admitted that he did not know

the differences among the various inflators used in MBVs and was not offering an opinion about the different types of inflators used in MBVs. *Id.* at 329:7–18, 330:2–4.

Plaintiffs' failure to address the particular MBVs at issue cannot be ignored—many factors affect whether the propellant in any particular inflator in any particular MBV could degrade over time, including the vehicle, the inflator's design, or construction. *See* D.E. 4635 at 18–19 (collecting evidence). Plaintiffs' experts *admit* that these factors vary not just from vehicle manufacturer to vehicle manufacturer, but even among vehicles produced by the same manufacturer. *See id.* at 19–20 (collecting testimony to this effect from plaintiffs' experts, MBUSA's experts, and third-party experts). Indeed, one of plaintiffs' experts, Oxley, conceded that she has "no evidence to believe that *all* inflators containing PSAN are unsafe." *See id.* at 20 (emphasis added). Since plaintiffs' experts did not test or even look at inflators in MBVs, their opinions cannot establish common, classwide evidence of a defect in MBVs.

In summarily asserting that PSAN as a propellant renders the airbag inflators defective *per se*, Plaintiffs may, like their experts, point to recalls of MBVs with Takata inflators. *See* D.E. 4243-8, Expert Report of Robert Renz, at 18–23, ¶¶ 63–65, App. C (contending that "MBUSA has now issued recalls admitting that the Class Vehicles suffer from a 'safety defect'"). But the fact of a recall is not proof of a defect. *See, e.g.*, *McGee v. MBUSA*, 612 F. Supp. 3d 1051, 1061 (S.D. Cal. Mar. 30, 2020). Rather, the MBV recalls state that "*Takata* filed a Defect Information Report with NHTSA [in January 2016] announcing a *potential* defect in *some* of the subject inflators," so "in an abundance of caution," the manufacturer of MBVs agreed to conduct a voluntary recall. D.E. 4243-9, Part 573 Recall Report 16V081-8542, at 11 (emphasis added).

As the MBV recall notices show, many different factors affect whether the propellant in any particular inflator in any particular MBV could degrade over time and become unstable, including environmental factors, individual usage and maintenance, and vehicle design and construction. D.E. 4243-6, Expert Report of Mark Warner, at 8–12. Given that there are undisputed differences amongst the MBVs, and no analysis by plaintiffs' experts as to *any* of the MBVs, Plaintiffs have not proffered any common, classwide proof of defects in MBVs. *See* D.E. 4635 at 18–22; *see also, e.g.*, *Stockinger*

*v. Toyota Motor Sales U.S.A., Inc.*, 2020 WL 1289549, at *8 (C.D. Cal. Mar. 3, 2020) (plaintiffs bear the burden at class certification to show "a defect, if it exists, is present in the same way in all Class Vehicles"); *Butler v. Porsche Cars N. Am., Inc.*, 2017 WL 1398316, at *6 (N.D. Cal. Apr. 19, 2017) ("[C]ourts have found class treatment inappropriate where 'the relevant components of a device differ[.]'"); *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 498 (7th Cir. 2012) (even if a "question is surely a part of" all claims, no common proof exists if that question "must be answered separately" because of differing facts and "particular situation[s]").

**Second**, MBUSA showed (where GM and FCA did not) that plaintiffs failed to prove that IHS data will establish the facts necessary for class membership and thus failed to prove ascertainability. *See* D.E. 4635 at 12–13. Plaintiffs propose a mix of multi-state and single-state classes defined by varying dates of purchase, recall, sale, and/or declaration of total loss. Plaintiffs' putative classes against MBUSA require members to have "bought a Class Vehicle in [1 of 22] state[s]" before the Class Vehicle was recalled *and* that they (among other things): (a) "still own the Class Vehicle"; (b) "sold the Class vehicle after the date on which the Class Vehicle was recalled"; or (c) "following an accident, [had the] Class Vehicle . . . declared a total loss after the date on which the Class Vehicle was recalled." D.E. 4610 at 17 n.4.

Without any supporting evidence, plaintiffs' motion for class certification asserted that the members of this class were ascertainable because "[v]ehicle registration data can be purchased from IHS Markit." *See* D.E. 4610 at 17 n.4. But courts have **not** assumed IHS *registration* data allows them to "identify the state of **purchase**" or when vehicles are bought in "private person-to-person transactions." *See Neale v. Volvo Cars of N. Am., LLC*, 2017 WL 6055774, at *8 (D.N.J. Dec 6, 2017) (emphasis added); *see also*, *e.g.*, *Ace Tree Surgery, Inc. v. Terex S.D., Inc.*, 332 F.R.D. 402, 406–07 (N.D. Ga. 2019). Plaintiffs do not prove that the state of purchase and registration are the same.[1] *See, e.g.*, Jack R. Nerad, *How to Buy a Car from Another State*, J.D.

---

[1] This also introduces individualized questions into the choice-of-law analysis. *See* D.E. 4689 at 4 ("Plaintiffs' claims are governed by the laws of the states in which the Class Vehicles were purchased. This is because 'the injury occurs where the car is sold.'").

Power (Nov. 10, 2020) (saving money, availability of different equipment or paint colors, and use of online services are among the reasons for out-of-state purchases), https://www.jdpower.com/cars/shopping-guides/how-to-buy-a-car-from-another-state.

IHS data cannot be used to determine other aspects of class membership either, e.g., who is a former owner, or whether the vehicle was totaled. *See, e.g.*, *Volvo*, 2017 WL 6055774, at *8 (finding that IHS data could not help identify this subset of the proposed class because "the bulk of the class is likely to consist of former owners . . . who no longer know or possess the VIN number of their former Class Vehicle"). Plaintiffs' proposed classes, relying on where the vehicle was "bought" (rather than registered) and proffering unsupported assertions about IHS data, are thus not ascertainable. *See id.* at *8 (plaintiffs cannot merely propose a method of ascertaining a class without evidence it will succeed); *cf.* D.E. 3834, at 8–10 (Court's prior ruling relying on place of purchase, making place of registration an infeasible proxy here).

## III. MBUSA is in a different position than FCA and GM because plaintiffs assert state-law claims against MBUSA that this Court has not addressed.

The proposed class for MBUSA differs from those against FCA and GM because of the sheer number of states involved. The GM and FCA class certification briefing did not address state law for 13 states asserted against MBUSA: Connecticut, Hawaii, Iowa, Maine, Mississippi, Nebraska, Oklahoma, Oregon, Rhode Island, Vermont, Virgina, Washington, and West Virginia. Under these state laws, plaintiffs continue to assert a combination of fraudulent concealment, consumer protection, and (for Mississippi alone) implied warranty claims against MBUSA.[2] Each of these claims are inappropriate for class certification.

For the states that were also at issue for FCA (Colorado, North Carolina, Utah, Virginia,

---

[2] **CT:** Connecticut Unfair Trade Practices Act. **HI:** Hawai'i Unfair and Deceptive Acts or Trade Practices Act. **IA:** common-law fraudulent concealment, Iowa Consumer Protection Act. **ME:** Maine Unfair Trade Practices Act. **MS:** Implied warranty. **NE:** Nebraska Consumer Protection Act. **OK:** Oklahoma Consumer Protection Act. **OR:** fraudulent concealment, Oregon Unlawful Trade Practices Act. **RI:** Rhode Island Unfair Trade Practices & Consumer Protection Act. **VE:** Vermont Consumer Fraud Act. **VA:** fraudulent concealment. **WA:** Washington Consumer Protection Act. **WV:** West Virginia Consumer Credit & Protection Act.

West Virginia, Wisconsin), none were fully analyzed by this Court's orders as required in the recent *Tershakovec* Eleventh Circuit decision, and MBUSA respectfully submits the Court erred in concluding they are appropriate for class certification.

### A.  The unaddressed state-law claims are inappropriate for class certification.

The state law claims unique to MBUSA are anchored to five named plaintiffs: Radican for Connecticut, Hawaii, Maine, Nebraska, Oklahoma, Rhode Island, Vermont, and West Virginia; Knapp for Iowa; Taylor for Mississippi; Goldberg for Washington; and Phillips for Oregon. Each of these states' laws requires individualized determinations that make class certification inappropriate. And the non-Rhode Island claims tied to Rhode Island also fail because they materially differ from Rhode Island law, so Radican is not a proper class representative.

> ### i.  Many of the unaddressed state-law claims require individualized proof of reliance or a reliance-like showing for causation.

The following claims require individualized proof of reliance to prove liability, causation, or both:

| Named Plaintiffs' Claims Requiring Reliance or Reliance-Like Showing for Causation | |
|---|---|
| **Claim** | **Authority** |
| Iowa Consumer Protection Act | *Brown v. La.-Pac. Corp.*, 820 F.3d 339, 349 (8th Cir. 2016) (Iowa's statute requires reliance; plaintiff must show that "but-for [defendant's] purported misrepresentation, he would not have elected to purchase" the product at issue). |
| Iowa Fraudulent Concealment | *City of McGregor v. Janett*, 546 N.W.2d 616, 619 (Iowa 1996) (fraud requires proof of reliance); *Lee Cnty. Mental Health Ctr., Inc. v. Lee Cnty. Bd. of Supervisors*, 2000 WL 1288873, at *5–6 (Iowa Ct. App. Sept. 13, 2000) (affirming dismissal of fraudulent nondisclosure claim where plaintiff did not establish reliance). |
| Oregon Fraudulent Concealment | *Yeti Enters. v. Tang*, 2017 WL 3478484, at *5 (D. Or. Aug. 14, 2017) ("To establish a claim for fraud in Oregon, a party must prove . . . that the acting party in fact justifiably relied on the material misrepresentation."). |
| Oregon Unlawful Trade Practices Act | *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 27 (Or. 2015) ("As a function of logic, not statutory text, when the claimed loss is the purchase price, and when that loss must be 'as a result' of a misrepresentation, reliance is what 'connects the dots' to provide the |

| Named Plaintiffs' Claims Requiring Reliance or Reliance-Like Showing for Causation | |
|---|---|
| **Claim** | **Authority** |
|  | key causal link between the misrepresentation and the loss."). |
| Virginia Fraudulent Concealment | *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 194 (Va. 1993) (justifiable reliance is "essential" to establishing fraud); *Henderson v. Henderson*, 495 S.E.2d 496, 499 (Va. 1998) ("Fraud, whether actual or constructive, is *never* presumed and must be strictly proved as alleged.") (emphasis added). |
| Washington Consumer Protection Act | *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 996–97 (Wash. 2020) (proof of reliance is required when plaintiffs allege reliance on alleged misrepresentations in making vehicle purchase);[3] *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 542 (D. Mass. 2017) ("[P]roximate cause is required to show causation under the WCPA" and thus plaintiffs must show "that but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred," and this is an "individual issu[e].") (quoting in part *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (Wash. 2007) (en banc) ("A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury.")). |

These individualized reliance requirements cannot be overcome by use of a classwide presumption of reliance. Iowa and Virginia do not permit such a presumption. *See, e.g.*, *Adrian Trucking, Inc. v. Navistar, Inc.*, 609 F. Supp. 3d 728, 749 (N.D. Iowa 2022) (under Iowa law, reliance "depends on the qualities and characteristics of the *particular* plaintiff and the *specific* surrounding circumstances") (quoting *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 736 (Iowa 2009) (emphasis added); *Brown*, 820 F.3d at 348 & n.5 (inference of causation not supported by Iowa law); *Rakes v. Life Invs. Ins. Co.*, 622 F. Supp. 2d 755, 767 (N.D. Iowa 2008) (neither Virginia nor Iowa permits a presumption of reliance); *Henderson*, 495 S.E.2d at 499 (under

---

[3] Although *Tershakovec* indicates that reliance is not *always* a necessary element of a Washington CPA claim (79 F.4th at 1311), the Washington Supreme Court's decision in *Young* requires proof of reliance in **this** case because plaintiffs allege reliance. *See Young*, 472 P.3d at 996–97; *see, e.g.*, D.E. 4026 ¶¶ 344, 348-49, 922. Indeed, plaintiffs' motion for class certification does not contest that they must prove reliance, but only that Washington permits a presumption reliance for omissions. D.E. 4610 at 25-26. And this is not a pure omissions case but, at best, a case of "mixed" alleged omissions and misrepresentations. *See Tershakovec*, 79 F.4th at 1310.

Virginia law, fraud is *never* presumed).[4]

Even in states that may allow a presumption of reliance in *some* circumstances, the "serious[] investigat[ion]" *Tershakovec* requires shows that those circumstances are absent here. *See* 79 F.4th at 1307. For example, the Oregon Supreme Court has rejected a presumption of reliance when class members may have bought a product for "a variety of reasons"—the exact situation *Tershakovec* attributes to car purchases. *See Pearson*, 361 F.3d at 33; *Tershakovec*, 79 F.4th at 1310 n.6; *see also Strawn v. Farmers Ins. Co. of Or.*, 258 P.3d 1199, 1213 (Or. 2011) (reliance may be presumed only when "the same misrepresentation [was made] without material variation to the members of the class" and was of such a nature that class members "would have relied on it to the same degree and in the same way"). Washington has also rejected a presumption of reliance or causation when, as here, there are "variations among the purchase experiences, knowledge, and motivations of class members," or where plaintiffs allege, as here, a mix of alleged affirmative misstatements and omissions. *See Converse v. Vizio, Inc.*, 2020 WL 729804, at *9–10 (W.D. Wash. Feb. 13, 2020) (quoting *Blough v. Shea Homes, Inc.*, 2014 WL 3694231, at *14 (W.D. Wash. July 23, 2014)).

This Court's reasoning in denying class certification as to Georgia claims against GM applies equally to other states here:

> [T]he evidence reflects that purchasers were exposed to different representations that were conveyed through many different mediums. Some Plaintiffs reviewed brochures, and some did not; some reviewed General Motors-affiliated websites, and some did not; some saw General Motors' commercials, and some did not; some spoke with sales representatives about safety features, and some did not; and notably, some Plaintiffs disclaimed viewing any General Motors advertisements at all.

D.E. 4689 at 20. This heterogeneity in class members' experiences applies across all of plaintiffs' proposed classes against MBUSA and should result in denial of class certification as to MBUSA. *See* D.E. 4673 at 6–7; D.E. 4635 at 27–33.

---

[4] None of plaintiffs' class certification briefing has cited any case allowing such a presumption under Virginia law. Their response to MBUSA's brief on *Tershakovec* claimed otherwise. D.E. 4683 at 15 (citing D.E. 4674 at 9-10). But their citation did not point to any case law allowing a presumption under Virginia law. *See* D.E. 4674 at 9-10.

**ii.    The consumer protection claims tied to the Rhode Island plaintiff each require individualized proof.**

The Court has also not previously addressed plaintiffs' request to certify consumer protection claims for Connecticut, Hawaii, Maine, Nebraska, Oklahoma, and Vermont, which are asserted against MBUSA through Rhode Island purchaser Radican. Under *Tershakovec*, these claims cannot be certified, because each of these states (including Rhode Island) requires different elements of individualized proof beyond reliance that cannot be shown on a classwide basis. *Tershakovec*'s mandate to apply substantive state-law requirements when analyzing predominance applies to more than just reliance issues. 79 F.4th at 1315 (court assessing implied warranty claims is required to determine applicable states' laws on pre-suit notice, opportunity to cure, and manifestation of defect).

First, the Rhode Island statutory claim requires individual proof that purchases were made for personal, family, or household purposes—a subjective inquiry that, like reliance, would predominate.[5] This statute also exempts claims based on allegedly defective auto parts. *See* D.E. 4495 at 19–20; D.E. 4311 at 21. Likewise, Mississippi implied-warranty claims present individualized issues of whether class members' vehicles were merchantable[6] and whether the alleged defect manifested.[7] In Connecticut, Hawaii, Maine, Nebraska, and Vermont—different

---

[5] R.I. Gen. Laws § 6-13.1-5.2(a); *Corder v. Ford Motor Co.*, 283 F.R.D. 337, 344 (W.D. Ky. 2012) ("[B]efore Ford may be deemed liable to any prospective class member . . . it must be established that the person's primary reason for purchasing a truck was for personal, family, or household use. That requires an individualized inquiry [which] would quickly subsume any trial in this matter.").

[6] *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 172, 174 (S.D. Miss. 1996) (implied warranty claim failed, even for "potentially life-threatening" defect, because the vehicle performed as expected for a reasonable period) (collecting cases); *Shelter Ins. Co. v. Ford Motor Co.*, 2006 WL 318821, at *6 (N.D. Miss. Feb. 9, 2006) (same); *Johnson v. Hankook Tire Mfg. Co.*, 2012 WL 12929510, at *6 (N.D. Miss. Mar. 14, 2012) (same). This issue is not and cannot be addressed by the Court's conclusion in the FCA class certification order that the jury could find that the defect manifested at the time of purchase because of an "unreasonable and imminent *risk* of injury." D.E. 4659 at 19 (emphasis added). The same could be said of all the defects alleged in the cases cited above, but all held there is no implied warranty claim if the *individual plaintiff's vehicle* in fact performed as expected for a reasonable period.

[7] Defendants acknowledge that this Court has previously held that plaintiffs have alleged the defect was manifest at the time of sale, but that simply cannot be squared with Mississippi law. *Jarman v. United Indus. Corp.*, 98 F. Supp. 2d 757, 768 (S.D. Miss. 2000) ("[U]nless there is actually a

than Rhode Island—causation and injury are additional, essential elements of plaintiffs' statutory consumer-protection claims.[8] In Oklahoma, causation requires individualized proof.[9] And at least Maine and Vermont require individualized proof of reliance.[10]

These individualized issues show not only that classes may not be certified for these states, but also that Rhode Island's named plaintiff is not a proper representative for a class asserting all these different state-law claims. There are myriad differences between Rhode Island's consumer protection statute and those in Connecticut, Hawaii, Maine, Nebraska, Oklahoma, Vermont, and West Virginia. As MBUSA's opposition to plaintiffs' motion for class certification explains in greater detail, the states differ in the scope of prohibited conduct (D.E. 4635 at 37–38), public interest requirements (*id.* at 38–39), pre-suit notice requirements (*id.* at 39), state residency requirements (*id.*), statutes of limitations (*id.* at 39–40), applicable statutory exemptions (*id.* at 40–41), and other issues (*id.* at 41–42). But the Court need not reach these issues because, as MBUSA noted, it was plaintiffs who bore the burden of *proving* the substantial similarity among these laws, and their motion for class certification made no such showing. *Id.* at 35–36.

### iii.   Other threshold inquiries for Iowa, Mississippi, Nebraska, Oregon, and Rhode Island preclude class certification.

Several other individualized, threshold inquiries this Court has not previously addressed

---

failure in product performance, there is no basis at all for claiming that the plaintiff has been damaged in any way."); D.E. 4635 at 33–35 (collecting authorities); *Tershakovec*, 79 F.4th at 1315 (requiring consideration of state law requirements for implied warranty claims).

[8] **CT**: *Harris v. Bradley Mem. Hosp. & Health Ctr., Inc.*, 994 A.2d 153, 173 (Conn. 2010). **HI**: *Lima v. Deutsche Bank Nat'l Tr. Co.*, 2021 WL 4722949, at *3 (D. Haw. Oct. 8, 2021). **ME**: *James v. GMAC Mortg. LLC*, 772 F. Supp. 2d 307, 322 (D. Me. 2011). **NE**: *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 301 (Neb. 2006). **NH**: *Mulligan v. Choice Mortg. Corp. USA*, 1998 WL 544431, at *11 (D.N.H. Aug. 11, 1998). **OK**: *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). **OR**: *Paul v. Providence Health Sys.–Or.*, 273 P.3d 106, 109 (Or. 2012). **VT**: *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014).

[9] **OK**: *Cervantes v. CRST Int'l, Inc.*, 2022 WL 2130811, at *29 (N.D. Iowa June 14, 2022) (citing *Huddleston v. John Christner Trucking, LLC*, 2020 WL 489181, at *17 (N.D. Okla. Jan. 30, 2020)).

[10] **ME:** *Larsen v. Vizio, Inc.*, 2017 WL 3084273, at *4 (C.D. Cal. June 26, 2017). **VT:** *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014).

are required for the state-law claims under Iowa, Mississippi, Nebraska, Oregon, and Rhode Island law. The Eleventh Circuit recognizes that such threshold inquiries—which would mean that the proposed classes include persons "who have no cause of action as a matter of law"—preclude class certification. *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012).

For example, many of plaintiffs' claims require class members to prove they purchased and/or used their vehicle primarily for personal or family—not commercial or business—purposes. *See, e.g.*, *Murphy v. Cent. Falls Det. Facility Corp.*, 2014 U.S. Dist. LEXIS 183690, at *33–34 (D.R.I. Dec. 16, 2014) (Rhode Island consumer law); *Bryan v. Mack Trucks, Inc.*, 2010 WL 1568607, at *6–7 (N.D. Miss. Apr. 19, 2010) (Mississippi motor vehicle warranty laws); *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 22 F. Supp. 3d 1126, 1136–37 (D. Or. 2014) (Oregon consumer law); Iowa Code §§ 714H.2(4), 714H.3 (Iowa consumer law limiting protection to "consumer merchandise," i.e., "merchandise offered for sale or lease, or sold or leased, primarily for personal, family, or household purposes").[11] Noting the individualized inquiries this issue raises, *OnStar* held that "[m]otor vehicles can be purchased for commercial use, personal use, or both. It is the primary way in which the party utilizes the vehicle that determines whether the MCPA applies," and "the determination of whether a particular good was used primarily for personal or commercial use is a fact-intensive inquiry" that "would require individualized determinations to be made[.]" *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 380–81 (E.D. Mich 2011); *see also, e.g.*, *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 582–83 (E.D. Cal. 2012) (denying certification as to California CLRA claims on same grounds); *Corder v. Ford Motor Co.*, 297 F.R.D. 572, 579 (W.D. Ky. 2014) (citing multiple cases in making same findings).

Besides personal use, other claims require different individualized—but also threshold—inquiries to determine whether the relevant statute protects the plaintiffs. *See, e.g.*, *Oriental Trading Co., Inc. v. Yagoozon, Inc.*, 2016 WL 2859603, at *5 (D. Neb. May 16, 2016) (Nebraska consumer law requires the alleged conduct to affect the "public interest").

---

[11] Iowa also requires the state attorney general's approval before asserting class action claims. *See* Iowa Code § 714H.7. Plaintiffs provide no evidence they met this requirement.

**B. Class certification is likewise inappropriate for the state-law claims that overlap between MBUSA and FCA.**

**i. The overlapping states require an individualized showing of reliance.**

MBUSA respectfully submits that the Court erred in certifying plaintiffs' claims against FCA under Colorado, North Carolina, Utah, West Virginia, and Wisconsin law, and should not certify such claims against MBUSA. Each of these claims requires a showing of reliance that cannot be proven using a presumption.

The sole case this Court cited holding that North Carolina law allows a presumption of reliance was *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 517–18 (6th Cir. 2015), which relied on *Pitts v. American Security Insurance Co.*, 550 S.E.2d 179, 189 (N.C. Ct. App. 2001), *aff'd*, 569 S.E.2d 647 (N.C. 2002), as the source of North Carolina law allowing such a presumption. D.E. 4688 at 7 n.2. But to the extent that *Rikos* read *Pitts* to allow a presumption of reliance, it was entirely unjustified—indeed, contrary to North Carolina law. *Pitts* did not endorse a presumption of reliance—to the contrary, it *expressly* stated that reliance is an "individual issue." *See* 550 S.E.2d at 189. *Pitts* certified a class only by concluding that reliance would not predominate **despite** being an individual issue, **not** by recognizing a presumption of reliance. *Id.* at 13–14. The North Carolina Supreme Court and others do not allow presumed reliance; rather, North Carolina "requir[es] **actual** reliance to establish [the] proximate cause element of an unfair and deceptive trade practice claim." *See Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1, 10 (N.C. 2015) (emphasis added); *Bumpers v. Comm. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013) ("[A] claim under [NC UDTPA] stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause."). In the Eleventh Circuit, following Federal Rule 23(b)(3), if individual reliance must be proven, that "would predominate over other common questions." *Tershakovec*, 79 F.4th at 1307–08.[12]

_____

[12] Moreover, North Carolina requires evidence of a duty to disclose and subjective materiality, neither of which plaintiffs have shown. *Arnesen*, 781 S.E.2d at 9 ("BB&T could not have violated the MLA by acting in bad faith when it did not disclose information it did not have, was not asked

As to Utah, the Court cited *Roberts v. C.R. Eng., Inc.*, 318 F.R.D. 457, 514 (D. Utah. 2017). D.E. 4688 at 7 n.2. But *Roberts* permitted an inference of reliance ***only*** when there were uniform misrepresentations and common circumstantial evidence of reliance—the same requirements that this Court's analysis of Georgia law shows are absent here. *See id.* at 514. Moreover, *Roberts* relied on the notion that the misrepresentation there was the only reason for class members to enroll in the defendants' school. *Id.* That logic is precisely what *Tershakovec* explained does ***not*** apply in the context of car purchases, where a purchaser "may choose to rely on any of a number of marketing and branding representations." 79 F.4th at 1310 n.6.[13]

As to Colorado, the Court cited *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011) (en banc). But *Garcia* allowed an inference of reliance ***only*** when that inference flows from *uniform* circumstantial evidence. *Id.* As this Court found in the context of Georgia law, there is no uniform circumstantial evidence of reliance here. D.E. 4689 at 18–20. *Garcia* also recognized that individual face-to-face interactions at a dealership could rebut any inference and cause individualized issues to predominate. 263 P.3d at 100–01. There were individualized face-to-face interactions in this case, both at dealerships and in the many used-car purchases at issue. Nor is there any reason to infer that class members would uniformly have relied on any of the alleged misstatements here—which is precisely what *Tershakovec* recognized. *See* 79 F.4th at 1310 n.6.

As to West Virginia, the Court relied on *State ex rel. U-Haul Co. of W. Va. v. Tabit*, 2018 WL 2304282, at *9 (W. Va. May 21, 2018). But by its terms, *Tabit* applies only to cases about omissions alone. *Id.* As *Tershakovec* shows, such law regarding omission-based claims does not apply when the plaintiffs allege "a mix of misrepresentations and corollary omissions." 79 F.4th at 1310. This is such a "mixed" case. Plaintiffs' complaint and motion for class certification, for

---

to provide, or was not contractually obligated to produce."); *In re Cook*, 2017 WL 532286, at *5 (Bankr. M.D.N.C. Feb. 9, 2017).

[13] *Roberts* also did not cite or discuss any Utah state-court decisions, but relied on the availability of an inference under RICO and the Eleventh Circuit's decision in *Klay*, which *Tershakovec* rejects in automotive cases. *See* 79 F.4th at 1310 n.6. Utah also requires individualized proof of a special relationship to impose a duty to disclose. *See Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 287 (Utah 2006).

example, rely on verbal representations by salespeople, press releases, advertisements, marketing materials, and online videos, window stickers, brochures, and other alleged affirmative statements. *E.g.*, D.E. 4026 ¶¶ 105, 120, 135, 148, 154, 264; D.E. 4610 at 7–10; *see also* D.E. 4318 at 20 n.7 (plaintiffs asserting that "MBUSA's ubiquitous marketing campaign . . . was both a misstatement misstatement and omission"). West Virginia law has not recognized a presumption of reliance in cases alleging a mix of misrepresentations and omissions; it instead has insisted that plaintiffs prove all elements of the alleged fraud. *See, e.g.*, *Porter v. Braskem Am., Inc.*, 2020 WL 1942310, at *5 (S.D. W. Va. Apr. 22, 2020); *see Jennings v. Farmers Mut. Ins. Co.*, 687 S.E.2d 574, 579 (W. Va. 2009).

As to Wisconsin, the Court relied on *Cuene v. Hillard*, 754 N.W.2d 509, 513 (Wis. Ct. App. 2008). But *Cuene* also applies only in omissions cases, and only in the context of securities fraud. *Id.* at 512 ("[A] common law fraud claim requires the plaintiff to show reliance."). This case is neither. Wisconsin law does not recognize a presumption in cases alleging misrepresentations. *See In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 221–22 (E.D. La. 1998) (collecting cases, including *Staudt v. Artifex, Ltd.*, 16 F. Supp. 2d 1023 (E.D. Wis. 1998)).

Finally, even if a presumption of reliance were allowed in these states (and it is not), given the myriad different alleged statements and documents to which the putative class members may or may not have been exposed, the question of whether that reliance was *reasonable* or *justified* is individualized. *Reasonable* reliance is a required element for fraudulent concealment in North Carolina. *Arnesen*, 781 S.E.2d at 10 ("[R]easonable reliance must be shown to make a case for actionable fraud.") (citing *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385, 391–93 (N.C. 1988)). The requirement that the reliance be "reasonable" requires denial of class certification here. *E.g.*, *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *23 n.22 (N.D. Cal. Sept. 14, 2016) ("Even though the determination of whether reliance is 'reasonable' is an objective inquiry, it cannot readily be determined on a classwide basis, where, as here, reasonable reliance turns on e.g., exposure (or not) to misleading advertising and to media disclosing the problems/defects to the public—factors which vary amongst class members.

15

***Certification would thus be inappropriate*** even if the Court presumed classwide exposure.")
(emphasis added). In Colorado and Wisconsin, reliance must be *justified*. *See Barfield v. Hall
Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010); *Hasemann v. Gerber Prods. Co.*, 2016 WL
5477595, at *19–20 (E.D.N.Y. Sep. 28, 2016) (Wisconsin law). Utah requires a showing of
*reasonable* reliance as an element of fraud. *See Cervantes v. CRST Int'l Inc.*, 2022 WL 2130811,
at *31 (N.D. Iowa June 14, 2022) (reasonable reliance required for Utah fraud claims) (citing
*Roberts*, 318 F.R.D. at 508, 514). West Virginia specifically requires plaintiffs to show "how" they
relied on the alleged fraud. *Porter v. Braskem Am., Inc.*, 2020 WL 1942310, at *5 (S.D. W. Va.
Apr. 22, 2020). Thus, even if reliance could be presumed, plaintiffs' lack of evidence showing
uniform written misrepresentations creates individualized issues as whether any reliance was
reasonable or justified.

### ii.     Bridges is not a proper class representative for other states' fraudulent concealment claims.

Plaintiffs seek to certify classes under six states' laws for common-law fraud with plaintiff
Bridges of North Carolina as class representative. These states are Colorado, North Carolina, Utah,
Virginia, West Virginia, and Wisconsin.[14] Certification of these states under plaintiff Bridges' North
Carolina fraudulent concealment claim is improper because individual issues predominate.

A claim for fraudulent concealment in North Carolina requires numerous individualized
inquiries. For example, as shown above, reliance must be proven individually. There is also no
duty to disclose in North Carolina when the information was discoverable with diligence. *Darne
v. Ford Motor Co.*, 2015 WL 9259455, at *11 (N.D. Ill. Dec. 18, 2015) (no duty to disclose where

---

[14] Plaintiffs' motion for class certification also sought to include fraud claims under Alabama,
Delaware, Georgia, Rhode Island, Tennessee, and Washington, D.C. law and sought to include
Rhode Island plaintiff Radican and Georgia plaintiff Paulette Calhoun as class representatives for
the putative fraud class. However, plaintiffs' motion to narrow the certified class as to FCA
indicated that they were no longer pursuing a fraud class as to Alabama, Delaware, Rhode Island,
Tennessee, and Washington, D.C. (D.E. 4663 at 2), and the chart they provided to MBUSA and
the Court at the last hearing did not include those claims. As to Georgia, this Court has already
held in the context of FCA and GM that certification of that claim is not appropriate because no
presumption of reliance is available. D.E. 4689 at 3–6. This brief thus addresses only Colorado,
North Carolina, Utah, Virginia, West Virginia, and Wisconsin's laws as to fraud.

information about alleged defect could be discovered with reasonable diligence, including searching NHTSA's website); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998) ("[I]f a plaintiff had an alternative source for the information that is alleged to have been concealed from or misrepresented to him, his ignorance or reliance on any misinformation is not reasonable.").

Even if plaintiff Bridges' fraudulent concealment claim could be certified (it cannot), there are material differences between the common-law fraud laws of Colorado, North Carolina, Utah, Virginia, West Virginia, and Wisconsin that make Bridges an inappropriate representative for the non–North Carolina state claims. As MBUSA's opposition to plaintiffs' motion for class certification explains in greater detail, the states differ as to duty to disclose (D.E. 4635 at 43–45), evidentiary burden (D.E. 4635 at 45), reliance (D.E. 4635 at 45–46), intent to deceive (D.E. 4635 at 46–47), materiality (D.E. 4635 at 47), and manifestation of defect (D.E. 4635 at 47–48).

## IV. Plaintiffs have not and cannot show that a class trial against MBUSA would be manageable.

The broad swath of additional state-law claims against MBUSA that were not raised as to GM and FCA create another important basis for denying class certification—plaintiffs have not proven manageability. *Tershakovec* warns that, to prove manageability, plaintiffs must "clearly articulate a [trial] plan." 79 F.4th at 1316. This is consistent with requirements in other circuits. *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319 (3d Cir. 2008) ("[A] party requesting class certification [must] present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) ("[A] court cannot rely merely on assurances of counsel that any problems with predominance or superiority can be overcome.") (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir.1996)).

Plaintiffs failed to present the required trial plan with either their original motion or their supplemental class certification motion—which seeks to greatly expand the claims for trial—and that failure of proof alone is sufficient to warrant denial of class certification.

17

The Court's conclusion that the proposed class as to FCA was manageable should not change the analysis here. *See* D.E. 4659 at 23–24. The Court concluded that differences in the requirements for scienter and reliance did not defeat manageability because there were only two species of reliance requirements that could be grouped and because the lack of a scienter requirement for Alabama would mean that jury questions on scienter "simply need not be answered in the affirmative." *Id.* at 24. But the situation here is far more complex. As noted above, the various state laws differ as to duties to disclose, evidentiary burdens, scienter, reliance, materiality, manifestation requirements, statutes of limitation, residency requirements, personal-use requirements, and other issues. There is no manageable way to lump all these claims together into an orderly trial, and plaintiffs have certainly not *proven* that is possible.

## V.   It would be error for the Court to certify any class as to MBUSA without addressing the legal viability of plaintiffs' damages theory.

In certifying the GM and FCA classes, the Court made a "mistake" (*see* D.E. 4764 at n.1) by not addressing the legal viability of plaintiffs' damages theory. *See* D.E. 4659 at 7 (FCA Order); D.E. 4689 at 9 (GM Order). In each order, the Court concluded that "whether Plaintiffs ultimately received the benefit of their bargain (and therefore have no damages) due to [defendant's] free recall and repair is a matter to be determined on summary judgment." D.E. 4659 at 7; *accord* D.E. 4689 at 9. But MBUSA submits the Court cannot defer this issue because it is a legal question critical to the Rule 23 analysis—and this Court is obligated to address all legal questions that bear on whether Rule 23's requirements are met. *See Brown v. Electrolux*, 817 F.3d 1225, 1237 (11th Cir. 2016) ("It does not matter whether the question also pertains to the merits; if a question of law bears on a requirement of Rule 23, then the district court must answer it."); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003) ("[T]he trial court can *and should* consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."); *Hydrogen Peroxide*, 522 F.3d at 324 (district court was required to resolve questions about the damages expert's model because it "may not decline to resolve a genuine legal or factual dispute because of concern for an overlap with the merits").

18

MBUSA's arguments about the law governing damages raise a threshold legal question that, if decided in MBUSA's favor, means that plaintiffs' expert's proffered model could not measure legally relevant damages on a classwide basis. Plaintiffs seek only benefit-of-the-bargain damages. But as MBUSA has shown (and it incorporates that showing herein by reference), the law in all the remaining named plaintiffs' states—Iowa, Mississippi, North Carolina, Oregon, Rhode Island, and Washington[15]—limits such damages to no more than the cost of repair. Effective repairs and remedies like the recall here mean that no legally cognizable benefit-of-the-bargain damages remain. D.E. 4495 4–8; *see also* D.E. 4546 at 8–12 (same for other states that the named plaintiffs seek to represent). And, as MBUSA's opposition to class certification showed, plaintiffs' expert Dubé's damages model did not address the post-sale recall (or any other post-sale event). D.E. 4635 at 51–52. Thus, if MBUSA's legal arguments as to damages are correct, then Dubé's model does not measure any legally relevant damages—much less provide classwide evidence of damages.

This legal question is highly relevant to the Rule 23 analysis. The Court's orders on the FCA and GM motions illustrate this, repeatedly relying on Dubé's model to determine that plaintiffs had shown predominance. D.E. 4689 at 23–24; D.E. 4659 at 20–21. As the Court recognized, plaintiffs are required to prove that "damages are susceptible of measurement across the entire class." D.E. 4659 at 5 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). And this cannot simply be a model that, mechanically speaking, could provide a measure of damages— it must be a model "consistent with [plaintiffs'] liability case." *Comcast*, 569 U.S. at 35; *accord Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 893 (11th Cir. 2023). It is precisely this requirement **for class certification** that cannot be addressed without answering the threshold legal question—does the relevant state law allow benefit-of-the-bargain "damages" that fail to account for free and effective repairs?

---

[15] MBUSA does not address Georgia here on the assumption that Calhoun's claims will not be certified for the same reasons briefed in the parties' earlier, post-*Tershakovec* briefing, but it made this showing as to Georgia as well. *See* D.E. 4495 at 4-5.

It is true that, in general, class certification is not the time to "determine the merits" of a plaintiff's claim. *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (quoting *Valley Drug*, 350 F.3d at 1188 n.15). But "the trial court can and ***should consider*** the merits of the case ***to the degree necessary to determine whether the requirements of Rule 23 will be satisfied***." *Id.* (emphasis added); *accord Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (same); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court ***must*** consider the merits if they overlap with the Rule 23(a) requirements.") (emphasis added).

Plaintiffs have not met their burden under *Comcast* to demonstrate that a viable damages model exists for their purported class claims, so certification would be improper. Because the relevant state law does not allow benefit-of-the-bargain damages based on the point of sale in the face of a free and effective recall, Dubé's model simply does not measure "only those damages attributable to [plaintiffs'] theory" of liability. *See Green-Cooper*, 73 F.4th at 893 (quoting *Comcast*, 569 U.S. at 35). The Court cannot certify plaintiffs' proposed classes without scrutinizing plaintiffs' damages model. *See* D.E. 4764 at n.1; *see also Sher v. Raytheon Co.*, 419 F. App'x 887, 891 (11th Cir. 2011) ("Tough questions must be faced and squarely decided.") (quoting *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010)). Instead, the Court should hold that, because post-sale developments affect damages recoverable by the class under relevant state law, plaintiffs' failure to offer any model that can account for those differences means they have not met their burden of proving that class certification is appropriate.

## CONCLUSION

For the foregoing reasons, and all those set forth in MBUSA's prior briefing on summary judgment, plaintiffs' motion for class certification as to MBUSA should be denied.

Dated: April 19, 2024                    Respectfully submitted,

_/s/ Raoul G. Cantero_
Raoul G. Cantero (Florida Bar No. 552356)
Jaime A. Bianchi (Florida Bar No. 908533)
jbianchi@whitecase.com
**WHITE & CASE LLP**
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

Troy M. Yoshino (*admitted pro hac vice*)
TYoshino@winston.com
Eric J. Knapp (*admitted pro hac vice*)
**WINSTON & STRAWN LLP**
101 California Street, Suite 3500
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Attorneys for Defendant*
*Mercedes-Benz USA, LLC*

21

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2024, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: <u>*/s/ Raoul G. Cantero*</u>
Raoul G. Cantero