**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
**MDL No. 2599**
**Master File No.: 15-MD-02599-MORENO**

**IN RE: TAKATA AIRBAG PRODUCT**
**LIABILITY LITIGATION**

**THIS DOCUMENT RELATES TO**:

**ECONOMIC LOSS TRACK CASES**
**AGAINST <u>MERCEDES-BENZ USA, LLC</u>**

<u>**PLAINTIFFS' RESPONSE TO MERCEDES-BENZ USA, LLC'S BRIEF REGARDING**
**CLASS CERTIFICATION**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...............................................................................................................1

ARGUMENT....................................................................................................................2

   I.  No Factual Distinctions Justify Revisiting This Court's Prior Decisions. .........................2

      A.  MBUSA's Knowledge Of The Inflator Defect Is A Common, Class-Wide
          Question That Supports Class Certification. ......................................................2

      B.  The Existence Of An Inflator Defect In MBUSA's Class Vehicles Is A
          Common, Class-Wide Question. .......................................................................5

      C.  The Proposed Classes Are Ascertainable....................................................................6

   II.  Prevailing Eleventh Circuit And State Law Support Class Certification .........................8

      A.  Certification of Plaintiffs' Multi-State Statutory Class Is Appropriate Under
          *Tershakovec* .................................................................................................8

      B.  Certification of Plaintiffs' Separate State Statutory Classes Comports With
          *Tershakovec*.............................................................................................11

      C.  Certification of Plaintiffs' Fraud Claims Is Appropriate Under This Court's
          Prior Rulings And *Tershakovec*....................................................................12

   III. A Class Trial Will Be Manageable........................................................................14

   IV. MBUSA's Recycled Damages Arguments Should Be Rejected Again. ........................14

CONCLUSION ...............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ace Tree Surgery, Inc. v. Terex South Dakota, Inc.*,
  332 F.R.D. 402 (N.D. Ga. Sept. 23, 2019)...............................................................................7

*Acevedo v. BrightView Landscapes, LLC*,
  No. 13-2529, 2017 WL 1062377 (M.D. Pa. Mar. 21, 2017) ...................................................14

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) .......................................................................................14

*Alderman v. GC Serv. Ltd. P'ship.*,
  No. 2:16-CV-14508, 2018 WL 542455 (S.D. Fla. Jan 19, 2018) ...........................................10

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ..........................................................................................................5, 14

*Amin v. Mercedes-Benz USA, LLC*,
  1:17-cv-01701-AT (N.D. Ga. Sept. 11, 2020) .........................................................................7

*Berman v. General Motors LLC*,
  No. 2:18-CV-14371, 2019 WL 6163798 (S.D. Fla. Nov. 18, 2019)........................................8

*Bernard v. First Nat. Bank of Oregon*,
  550 P.2d 1203 (Or. 1976) ......................................................................................................12

*Cardenas v. Toyota Motor Corp.*,
  No. 18-cv-22798-CIV, 2021 WL 5811741 (S.D. Fla. Dec. 6, 2021) .......................................8

*Chapman v. Gen. Motors LLC*,
  No. 2:19-CV-12333, 2023 WL 2746780 (E.D. Mich. Mar. 31, 2023)....................................11

*Cherry v. Dometic Corp.*,
  986 F.3d 1296 (11th Cir. 2021)................................................................................................6

*Chisolm v. TranSouth Fin. Corp.*,
  194 F.R.D. 538 (E.D. Va. 2000).............................................................................................13

*Cohen v. Subaru of Am., Inc.*,
  2022 WL 714795 (D.N.J. Mar. 10, 2022).................................................................................9

*Collins v. Erin Capital Mgmt., LLC*,
  290 F.R.D. 689 (S.D. Fla. 2013) ............................................................................................10

*Cook v. Hayden*,
  31 S.E.2d 625 (Va. 1944).......................................................................................................13

*Corder v. Ford Motor Company*,
  297 F.R.D. 572 (W.D. Ky. 2014) .......................................................................................10

*Corson v. Toyota Motor Sales U.S.A., Inc.*,
  No. CV 12-8499-JGB, 2016 WL 1375838 (C.D. Cal. Apr. 4, 2016)..........................................7

*Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*,
  No. 15-24375-CIV, 2016 WL 8542540 (S.D. Fla. Dec. 1, 2016) .............................................5

*Dernier v. Mortgage Network, Inc.*,
  87 A.3d 465 (Vt. 2013).........................................................................................................9

*Detmer v. La'James Coll. of Hairstyling, Inc. of Fort Dodge*,
  974 N.W.2d 182 (Iowa Ct. App. 2021) ...............................................................................12

*Durrett v. John Deere Co.*,
  150 F.R.D. 555 (N.D. Tex. 1993).......................................................................................10

*Fath v. Am. Honda Motor Co.*,
  No. 18-CV-1549, 2019 WL 6799796 (D. Minn. Dec. 13, 2019).............................................7

*Gold v. Midland Credit Mgmt., Inc.*,
  306 F.R.D 623 (N.D. Cal. 2014) .......................................................................................10

*In re Gen. Motors LLC Ignition Switch Litig.*,
  No. 14-MD-2543, 2020 WL 7480323 (S.D.N.Y. Dec. 18, 2020)............................................7

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  252 F.R.D. 83 (D. Mass. 2008) ..........................................................................................9

*In re: Takata Airbag Prod. Liab. Litig.*,
  84 F. Supp. 3d 1371 (J.P.M.L. 2015) .................................................................................13

*Johnson v. Harley Davidson Motor Company Group, LLC*,
  285 F.R.D. 573 (E.D. Cal. 2012)........................................................................................10

*Lee v. Phelan Hallinan, PLC*,
  No. 14-60154-CV, 2015 WL 12633008 (S.D. Fla. Feb. 4, 2015)..........................................10

*Long v. Dell, Inc.*,
  93 A.3d 988 (R.I. 2014).......................................................................................................8

*Lytle v. Nutramax Lab'ys, Inc.*,
  No. 22-55744, ---F. 4th---, 2024 WL 1710663 (9th Cir. Apr. 22, 2024) ................................14

*Moeller v. Samsung Elecs. Am., Inc.*,
  623 F. Supp. 3d 978 (S.D. Iowa 2022) ...............................................................................11

*Neale v. Volvo Cars of N. Am., LLC*,
No. 10-4407, 2021 WL 3013009 (D.N.J. July 15, 2021) ....................................................7

*Neale v. Volvo Cars of North America, LLC*,
No. 10-4407, 2017 WL 6055774 (D.N.J. Dec. 6, 2017) ....................................................7

*Nuwer v. FCA US LLC*,
343 F.R.D. 638 (S.D. Fla. 2023) .......................................................................................7

*Ocwen Loan Serv., LLC v. Belcher*,
2018 WL 3198552 (11th Cir. June 29, 2018) ..................................................................10

*Onstar Contract Litigation*,
278 F.R.D. 352 (E.D. Mich. 2011) ..................................................................................10

*Pearson v. Philip Morris*, Inc.,
361 P.3d 3 (Or. 2015) ......................................................................................................12

*Roundtree v. Bush Ross, P.A.*,
304 F.R.D. 644 (M.D. Fla. 2015) ....................................................................................10

*State ex rel. Miller v. Vertrue, Inc.*,
834 N.W.2d 12 (Iowa 2013) ............................................................................................11

*Strawn v. Farmers Ins. Co.*,
258 P.3d 1199 (Or. 2011) ...........................................................................................12, 13

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
143 S. Ct. 2141 (2023) ......................................................................................................9

*Tershakovec v. Ford Motor Co., Inc.*,
79 F.4th 1299 (11th Cir. 2023) ......................................................... 8, 9, 10, 11, 13

*Tungate v. MacLean-Stevens Studios*,
714 A. 2d 792 (Me. 1998) .................................................................................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 457 (2016) ..........................................................................................................5

*Victorino v. FCA US LLC*,
No. 16cv1617-GPC(JLB), 2019 WL 5268670 (S.D. Cal. Oct. 17, 2019) ...............................10

*Victorino v. FCA US LLC*,
No. 16cv1617-GPC, 2022 WL 1125769 (S.D. Cal. Apr. 14, 2022)...........................................7

*Vos. v. Farm Bureau Life Ins. Co.*,
667 N.W.2d 36 (Iowa 2002) ...........................................................................................13

*Walewski v. Zenimax Media, Inc.*,
  502 F. App'x 857 (11th Cir. 2012)...........................................................................................5

**Other Authorities**

Richard A. Nagareda, Class Certification in the Age of Aggregate Proof,
  84 N.Y.U. L. Rev. 97, 107 (2009)...........................................................................................5

<u>**INTRODUCTION**</u>

Plaintiffs respectfully submit this response to MBUSA's recent submission regarding class certification (ECF No. 4765). MBUSA provides no valid reason for this Court to depart from its well-reasoned decisions certifying classes against FCA and GM, both of which the Eleventh Circuit declined to disturb.

First, contrary to MBUSA's claims, the record amply demonstrates that MBUSA had knowledge of the Inflator Defect prior to selling the Class Vehicles, and that the Inflator Defect is uniform across Class Vehicles. Like its co-Defendants, MBUSA was aware of concerns raised about ammonium nitrate by its own engineers and suppliers before the inflators were installed in Plaintiffs' vehicles, and it received field reports of inflator ruptures once the vehicles were on the road. Likewise, its own admissions to NHTSA, as well as the testimony of Plaintiffs' experts, establish the uniformity of the Inflator Defect. Ultimately, these factual questions of MBUSA's knowledge and the defectiveness of its inflators are common to all class members and will be answered with the same class-wide evidence, so MBUSA's arguments only reinforce the case for class certification.

Second, MBUSA's arguments regarding ascertainability merely rehash points that this Court has already considered and rejected in certifying classes against FCA and GM, as well as the eight settlement classes, all of which relied on data from industry vendor IHS Markit to identify class members. The record disproves MBUSA's ascertainability objection.

Third, MBUSA's arguments premised on state law are inconsistent with prevailing authority. The remaining states either do not require a showing of actual reliance under their consumer protection statutes or permit the use of a class-wide presumption or inference to establish reliance for fraud-based claims (either statutory or common law). Under the Eleventh Circuit's binding decision in *Tershakovec*, this is sufficient to defeat MBUSA's predominance objection. MBUSA's arguments to the contrary largely track the dissenting opinion in *Tershakovec*, signaling their infirmity.

Fourth, MBUSA's manageability concerns lack merit. This Court's own experience presiding over several class trials in just the past two years—two of which resulted in complete defense verdicts in favor of automobile manufacturers—demonstrates that a class trial on these claims not only would be manageable but fair and superior to the alternative of tens of thousands of separate individual trials.

1

Finally, MBUSA's objections to Plaintiffs' damages model are no different than the arguments that this Court and others have repeatedly and correctly rejected.  Indeed, just last week, a federal appellate court affirmed an order granting class certification that relied on a conjoint-analysis model from Plaintiffs' expert, Dr. Dubé.

In short, MBUSA has failed to rebut the showing Plaintiffs have already made to satisfy the requirements of Rule 23 for class certification.  Consistent with its prior rulings, which certified claims for fraud under North Carolina, Colorado, Utah, West Virginia, and Wisconsin law, a statutory claim under North Carolina law (ECF No. 4688 at 6), and a claim for breach of implied warranty under Louisiana law (ECF No. 4689 at 27), this Court should certify the following classes:

(1) common law fraud claims under North Carolina, Colorado, Utah, Virginia, West Virginia, and Wisconsin law, with Plaintiff Bridges (North Carolina) as the class representative;

(2) statutory consumer protection claims for violation of the relevant Rhode Island, Connecticut, Hawaii, Maine, Nebraska, Oklahoma, Vermont, and West Virginia statutes, with Plaintiff Radican (Rhode Island) as the class representative; and

(3) Plaintiff Knapp's common law fraud and statutory claims under Iowa law (Counts 9 and 25), Plaintiff Bridges's statutory claim under North Carolina law (Count 39), Plaintiff Phillip's common law fraud and statutory claims under Oregon law (Counts 9 and 41), Plaintiff Goldberg's statutory claim under Washington law (Count 54), and Plaintiff Taylor's common law fraud and breach of implied warranty claims under Mississippi law (Counts 9 and 33).

**ARGUMENT**

**I.**    **No Factual Distinctions Justify Revisiting This Court's Prior Decisions.**

**A.**    **MBUSA's Knowledge Of The Inflator Defect Is A Common, Class-Wide Question That Supports Class Certification.**

MBUSA now plays ignorant, claiming repeatedly that it did not design the Class Vehicles, it did not have any knowledge of the Defective Airbags, and it did not know that Takata airbags were in the Class Vehicles.  (ECF No. 4765 at 1–2.) After securing the dismissal of its parent company, Daimler AG, for lacking sufficient contacts to this suit, MBUSA now claims that Daimler manufactures vehicles entirely on its own and MBUSA merely advertises and distributes them within the United States.  Rewarding this shell game would make a mockery of the civil justice system.  It also cannot support denial of class certification, both because it is inconsistent with the record and the issue is common across the class.

2

Abundant evidence demonstrates that MBUSA marketed the safety attributes of its Class Vehicles and was either aware, or should have been aware, of the Defective Airbags and the safety issues they posed.  As soon as Honda started recalling Takata airbags, which began in 2008, MBUSA's head of engineering grew "concerned."  *See* ECF No. 4339-20 (Tait Dep. Tr.) at 54:19–21 (MBUSA's head of engineering acknowledging that "I would say that - - that in the very beginning of the Takata recall, I think we're always concerned.").  This is because MBUSA's engineers knew that Class Vehicles came equipped with Takata inflators.  *See* Tait Dep. Tr., at 59:18–60:1 ("[S]pecifically to Takata, I mean, I think the first -- the first indicators that we had some incidents that were happening with Honda vehicles.   And -- and so -- so I vaguely remember seeing a report on that and then asking Tom [Brunner], 'Hey, what does that mean for us?' Because I knew that Takata was one of the manufacturers that we -- that we used in our vehicles[.]").

Further, MBUSA's self-congratulatory statements on its own website confirm that it is more than a mere distributor, as it boasts of its long record of manufacturing Class Vehicles in Alabama.  *See* Ex. A (MBUSA  2017 press release); Ex. B (MBUSA 2012 press release).  And American employees from these manufacturing facilities—alongside Daimler employees—visited Takata airbag facilities to perform audits.  *See* Ex. C (TKPOD03255744 at TKPOD03255749–50) (MBUSI's "SQE" employee Steven Wood visited Takata's Torreon facility with Daimler AG employees to observe the DAB run rate and VDA audit on both sewing and assembly lines, and during the "Mercedes VDA audit[,] Mercedes rated the maturity level / risk condition red" such that "Mercedes will visit Torreon by the end of June again to review improvements on the open items");  *see also* Ex. D (Steve Wood LinkedIn profile evidencing his role as "Supplier Quality at Mercedes Benz USI").

Additionally, as Daimler's "designated agent," MBUSA plays a crucial role in gathering information regarding its Takata airbags from Daimler to supply to NHTSA and other OEMs, which further evidenced MBUSA's access to information regarding Takata inflators and test results.  *See* Ex. E (Brunner Dep. Tr. Sept. 24, 2020), at 158:16–160:15 (All inquiries or requests by NHTSA for information regarding Mercedes Takata airbags are made by NHTSA to MBUSA, and MBUSA, as Daimler's official "designated agent," gathers any requested information from Daimler for MBUSA to provide to NHTSA.); *id.* at 159:10–161:14 (MBUSA employee Thomas Brunner could not recall a single instance where MBUSA requested Takata airbag information from Daimler and Daimler refused to provide information, explaining that MBUSA had always

sought that information in response to an inquiry or request directly from NHTSA, or in response to FCA seeking more information regarding Chrysler recalls by NHTSA); Ex. F (MBUSA_00031893 at MBUSA_00031893–MBUSA_00031895) (MBUSA provided FCA information regarding the affected PSDI-5 inflators in Crossfire vehicles based on information MBUSA had received from Daimler that "came from Takata") (emphasis added).

In this role, MBUSA routinely received and investigated reports of inflator ruptures. For example, MBUSA knew that a "[c]ustomer claim[ed] fragment from airbag left scar over eye related to Takata" in an event that took place "sometime in 2013," and MBUSA would have investigated this claim. *See* Brunner Dep. Tr., at 64:3–67:7, 73:12–22 (emphasis added); Ex. G (Excerpt of MBUSA_00085931) (Excerpt of Brunner Dep. Tr., Ex. 26) (MBUSA customer claim report) at row 9019.

MBUSA knew, therefore, that Daimler was still manufacturing MBUSA Class Vehicles that would be subject to future Takata airbag recalls. Brunner Dep. Tr., at 130:5–20. Nonetheless, MBUSA distributed vehicles to its dealers that MBUSA knew would be subject to future Takata airbag recalls. *Id.* at 130:24–131:24.

Beyond MBUSA's actual knowledge of the Inflator Defect, its willful ignorance is also actionable. *See* ECF No. 4610 at 19 (holding that common question that predominates over this matter is "[w]hether MBUSA knew or ***should have known*** about the Inflator Defect.") (emphasis added). Moreover, as Plaintiffs argued in opposition to MBUSA's motion for summary judgment (as this is really a merits issue), Daimler's knowledge should be imputed to MBUSA, as it is a subsidiary of Daimler that handles all of Daimler's business in the United States and Daimler plays an intimate role in the research, design, and manufacturing of the Class Vehicles that MBUSA sells. *See* Opp. to Mot. for Summary Judgment (ECF No. 4249) at 13–15.[1]

In either event, the extent of MBUSA's knowledge, as well as whether Daimler's knowledge must be imputed to MBUSA, are common issues of fact and law that are subject to classwide evidence and resolution. These merits arguments, therefore, do not warrant denying class certification. MBUSA never suggests that evidence of its knowledge varies by class member

---

[1] ECF Nos. 4336-65 and 4336-66 are certified translations of German emails that were submitted in response to MBUSA's motion for summary judgment, which confirm Daimler's knowledge of the dangers of ammonium nitrate within Takata's inflators.

because, of course, it does not. Because evidence of MBUSA's conduct and knowledge will be established with generalized evidence common to all class members, it only supports a finding that common issues predominate. As the Supreme Court explained in *Tyson Foods, Inc. v. Bouaphakeo*, "[w]hen . . . 'the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification.'" 577 U.S. 442, 457 (2016) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 107 (2009)). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).[2]

**B.**      **The Existence Of An Inflator Defect In MBUSA's Class Vehicles Is A Common, Class-Wide Question.**

For similar reasons, MBUSA's arguments regarding the existence of the Inflator Defect cannot defeat class certification. MBUSA does not dispute that each Class Vehicle came equipped with a Takata inflator containing non-desiccated ammonium nitrate ("PSAN"). As Plaintiffs' expert Robert Renz explained, the use of non-desiccated ammonium nitrate in each inflator constitutes the common, class-wide defect. *See* ECF No. 4339-22 (Renz Expert Rept.) at ¶ 24 ("In my expert opinion, the use of PSAN in an all-pyrotechnic automotive application, such as the Relevant Inflators, renders the component defective and unreasonably dangerous. . . . In my expert opinion, all of the non-desiccated Takata PSAN inflators equipped in the Defendant automakers' vehicles, including the Mercedes-Benz Subject Vehicles, are defective and share a common and uniform defect."). Defendants previously attacked Mr. Renz for not inspecting each inflator, but this Court properly rejected Defendants' challenge. (ECF No. 4509.) MBUSA provides no reason to revisit that decision now.

---

[2] MBUSA's reliance on *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012), is misplaced. That case involved a class that failed to meet the ascertainability requirement, not a determination that the plaintiffs' claims failed on the merits. Likewise, in *Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*, No. 15-24375-CIV, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016), class certification was denied because the class definition was too broad, not because the class's claims all rose or fell together.

While MBUSA may disagree with Plaintiffs' experts and will be free to challenge them through cross examination, it cannot avoid their testimony that all MBUSA Class Vehicles had a common, uniform defect stemming from the use of ammonium nitrate, an unstable explosive unsuitable for safety devices. (Baglini Dep. (ECF No. 4340-22) at 35:8–17, 115:1–21; Renz Dep. (ECF No. 4340-21) at 444:17–20, 441:1–18, 447:10–15; Renz Rept. (ECF No. 4339-22) at ¶ 24.) It also cannot avoid the admissions of the manufacturer of the Takata inflators themselves that each one is defective and unreasonably dangerous. (*See* Takata DIR 15E-041, 16E-005, 16E-006, 16E-042, 16E-043, 16E-044, 17E-001, 17E-002, 17E-003, 18E-001, 18E-002, 18E-003, 19E-001, 19E-002, 19E-003, ECF No. 4318-2); (Renz Rept. (ECF No. 4339-22) at ¶¶ 60–61.)

This evidence is common to all class members and would be presented at trial regardless of how many Plaintiffs are added, satisfying the predominance requirement. *See Klay*, 382 F.3d at 1255 ("[I]f the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate."). As this Court concluded in *Cardenas*, "[r]esolving whether there is in fact a defect, then, will answer the question for all Class members." *Cardenas*, 2021 WL 5811741, at *9. MBUSA does not show that this evidence varies among class members, because it plainly does not. This common issue, therefore, only further supports class certification.

### C.     The Proposed Classes Are Ascertainable.

Plaintiffs' proposed class definition is adequate because "its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). MBUSA repeats its contention that IHS Markit data cannot be used to ascertain class membership. (ECF No. 4765 at 5–6.) But IHS Markit data has already been used by the Settlement Administrator in other cases in this MDL to identify class members. As explained by the administrator in those cases, "[g]enerally, defendants provide Epiq with a list of affected VINs which we then provide to IHS Markit. IHS Markit, in turn, will provide ownership records for those affected VINs during the relevant class period. In particular, paragraph 8 of the attached discusses obtaining data from IHS Markit for noticing purposes." (*See* ECF No. 4143-2, Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Settlement Class Notice Program.). This comports with information on IHS Markit's website, where the vendor lists the data available, including new vehicle registrations, subnational vehicle registrations, vehicles-in-operation/PARC, used vehicle registrations, etc. *See* https://ihsmarkit.com/products/automotive-market-data-analysis.html.

Indeed, IHS Markit data has been used in various other cases to ascertain class membership. *See, e.g.*, *Victorino v. FCA US LLC*, No. 16cv1617-GPC, 2022 WL 1125769, at *3 (S.D. Cal. Apr. 14, 2022); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2020 WL 7480323, at *8  (S.D.N.Y. Dec. 18, 2020); *Fath v. Am. Honda Motor Co.*, No. 18-CV-1549, 2019 WL 6799796, at *8 (D. Minn. Dec. 13, 2019); *Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB, 2016 WL 1375838, at *2 (C.D. Cal. Apr. 4, 2016).  And in another class case recently tried in this District, the class was similarly defined according to the state in which a vehicle was purchased, undercutting MBUSA's claim that ascertaining class members is infeasible. *Nuwer v. FCA US LLC*, 343 F.R.D. 638, 657 (S.D. Fla. 2023); Order, *Nuwer v. FCA US LLC*, No. 20-cv-60432 (S.D. Fla. Dec. 15, 2023) (ECF No. 264).

MBUSA nevertheless attacks this data source because other courts outside of this District have not assumed that it allows them to establish class membership.  In *Neale v. Volvo Cars of North America, LLC*, No. 10-4407, 2017 WL 6055774 (D.N.J. Dec. 6, 2017), for example, the court found that because "the bulk of the class is likely to consist of former owners . . . who no longer know or possess the VIN number of their former Class Vehicle," it was unclear how IHS Markit data could assist in identifying "this subset of the proposed class." *Id.* at *8. Importantly, however, the *Neale* court was later satisfied that plaintiffs could ascertain class membership, although certification of the class was denied for other reasons. *See Neale v. Volvo Cars of N. Am., LLC*, No. 10-4407, 2021 WL 3013009, at *8 n.19 (D.N.J. July 15, 2021).  And in *Ace Tree Surgery, Inc. v. Terex South Dakota, Inc.*, 332 F.R.D. 402 (N.D. Ga. Sept. 23, 2019), which MBUSA also cites, plaintiffs did not offer the use of IHS Markit data to identify class membership, but instead simply alleged that defendant's records would allow for identification or that class members could self-identify. Moreover, it is clear data exists either with MBUSA or third parties that would identify class members. MBUSA even recently settled claims involving a different defect, providing direct class notice to all current and former owners or lessees of various C, G, E, and M class vehicles spanning from 2008 to 2019. *See Amin v. Mercedes-Benz USA, LLC*, 1:17-cv-01701-AT, ECF No. 117 (N.D. Ga. Sept. 11, 2020); *see also* Mercedes HVAC Settlement, https://www.mercedeshvacsettlement.com.

Plaintiffs, moreover, have established that identifying class members is a manageable process that can be established with reference to existing records maintained either by MBUSA or third parties. Indeed, in *Cardenas v. Toyota Motor Corp.*, No. 18-cv-22798-CIV, 2021 WL

5811741, at *7 (S.D. Fla. Dec. 6, 2021), this Court found ascertainability requirements satisfied where Plaintiffs maintained that class membership could be established "through Defendants' records and through public records, like Vehicle Identification Numbers, which are maintained by various public and private entities." The Court specifically found that "use of this data is sufficient to render a class ascertainable." *Id.* (citing *Berman v. General Motors LLC*, No. 2:18-CV-14371, 2019 WL 6163798, at *11 (S.D. Fla. Nov. 18, 2019)). In sum, MBUSA's challenge to the ascertainability of the class lacks merit.

## II. Prevailing Eleventh Circuit And State Law Support Class Certification

The Eleventh Circuit's decision in *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299 (11th Cir. 2023), strengthened the case for class certification of several claims against MBUSA. In the context of state "fraud-based causes of actions," the court explained, the predominance inquiry entails "carefully examining the particular state laws on which plaintiffs' claims in this case are based" to determine "whether proof of reliance is necessary" and, if so, whether it "must be affirmatively proved" or "may be presumed, at least under certain circumstances." *Id.* at 1307, 1310. "[W]here the presumption of reliance applies, it does so generally and can therefore be resolved on a class-wide basis." *Id.* at 1307. Applying these principles, *Tershakovec* affirmed certification of a claim under Washington's consumer fraud statute and held that class certification would be appropriate for a similar claim that either did not require proof of reliance or permitted reliance to be proved with a class-wide presumption or inference. *Id.* at 1310–11. Plaintiffs have moved to certify claims under the same Washington statute, as well as several other statutes that either do not require reliance or permit reliance to be established on a class-wide basis. Under *Tershakovec*, therefore, class certification should be granted.

### A. Certification of Plaintiffs' Multi-State Statutory Class Is Appropriate Under *Tershakovec.*

The named Plaintiff for the multi-state statutory class is Ms. Radican, who purchased a Mercedes C-300 in Rhode Island from an MBUSA-authorized dealership. As MBUSA appears to concede, the Rhode Island Deceptive Trade Practices Act does not require a showing of individual reliance. The Rhode Island Supreme Court has adopted an objective standard to determine whether conduct is deceptive, considering whether it "is likely to mislead consumers acing reasonably under the circumstances." *Long v. Dell, Inc.*, 93 A.3d 988, 1003 (R.I. 2014) (internal quotation marks omitted). *See also e.g., Cohen v. Subaru of Am., Inc.*, 2022 WL 714795, at *32 (D.N.J. Mar.

10, 2022) (reliance not required under Rhode Island's UDTPA). Courts have, therefore, certified claims under the statute, after finding the predominance requirement satisfied. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 109 (D. Mass. 2008).

In addition to representing a class of Rhode Island purchasers, Ms. Radican seeks to represent purchasers from seven other states whose laws likewise do not require individualized evidence of reliance: Connecticut, Hawaii, Maine, Nebraska, Oklahoma, Vermont, and West Virginia.  MBUSA only disputes the reliance element as to Maine and Vermont.  (ECF No. 4765 at 11.)  But decisions from the supreme courts of both states indicate that individualized evidence of reliance is not required.  *See Tungate v. MacLean-Stevens Studios*, 714 A. 2d 792, 797 (Me. 1998) (applying an objective standard and holding that "a practice may be deceptive if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted"); *Dernier v. Mortgage Network, Inc.*, 87 A.3d 465, 481 (Vt. 2013) (holding that reliance need not be proved when a consumer can show injury caused by an unfair or deceptive act).  Under *Tershakovec*, these state-court decisions must prevail over the federal decisions upon which MBUSA relies.  *See Tershakovec*, 79 F.4th at 1312 (following "state courts in Missouri" over conflicting decision from federal district court).

As the reliance element supports class certification of claims under the law of these seven states, MBUSA shifts its attention to other elements, contending that proving causation and injury raises individualized issues.  (ECF No. 4765 at 7–11.)  But that is precisely what the dissent in *Tershakovec* argued, to no avail.  *Tershakovec*, 79 F.4th at 1327–29 (Tjoflat, J., dissenting).  As Chief Justice Roberts recently observed, "[a] dissenting opinion is generally not the best source of legal advice on how to comply with the majority opinion."  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2176 (2023).

In either event, MBUSA merely cites cases holding that causation and injury are elements of certain claims.  (ECF No. 4765 at 7-10.)  But that is beside the point.  The question, instead, is whether such elements "will likely be proved using the same evidence for all class members." *Tershakovec*, 79 F.4th at 1306.  And here, causation and damages will be established with the same class-wide evidence for all class members in the form of Dr. Dubé's conjoint model.  Thus, the causation and injury elements only support class certification.

MBUSA also reiterates its prior argument that the Rhode Island consumer protection statute is limited to consumers.  (ECF No. 4765 at 10.)  But there is no dispute that Ms. Radican

is a consumer, and Plaintiffs do not dispute that the class should be limited as such. This approach has been implemented in other cases where statutes require such limitations, *see, e.g., Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 651–52 (M.D. Fla. 2015),[3] and the Eleventh Circuit has found certification of a class limited to consumers was not an abuse of discretion, *see Ocwen Loan Serv., LLC v. Belcher*, 2018 WL 3198552, at \*4 (11th Cir. June 29, 2018).

MBUSA cites to three out-of-circuit cases—*Onstar Contract Litigation*, 278 F.R.D. 352 (E.D. Mich. 2011); *Johnson v. Harley Davidson Motor Company Group, LLC*, 285 F.R.D. 573 (E.D. Cal. 2012); and *Corder v. Ford Motor Company*, 297 F.R.D. 572, 579 (W.D. Ky. 2014)— in which district courts did not certify classes that limited membership to consumers. But the courts denied certification of claims in these cases for a multitude of other reasons that do not apply here. In *Onstar*, for example, the court also found that various other individualized issues, such as whether certain class members' decisions not to upgrade their service meant that they did not value it, defeated predominance. *See* 278 F.R.D. at 378–82. Similarly, in *Johnson*, the court found there were individualized issues on materiality and denied certification because, amongst other things, plaintiffs "offered no general method to measure damages." 285 F.RD. at 580–82.

Remarkably, MBUSA never cites, let alone attempts to distinguish, the on-point decision in *Belcher*, where the class certification order limited class members to those incurring a debt "for personal, family, or household purpose," and the Eleventh Circuit held that the defendant failed to show "a substantial weakness in the class certification decision," despite defendant's argument that "determining whether each putative class member's loan was acquired for 'personal, family, or household purposes'" would "require arduous individualized record sifting." 2018 WL 3198552, at \*4. Nor can MBUSA reconcile its position with this Court's certification of a Missouri Merchandising Practices Act class in *Tershakovec*, which also requires that "purchases or leases [of] merchandise [be] primarily for personal family or household purposes," Mo. Ann. Stat. § 407.025(1)(1), and the Eleventh Circuit's subsequent affirmance of that decision, *Tershakovec*, 79 F.4th at 1311. MBUSA's position is, thus, inconsistent with prevailing law.

---

[3] *See Victorino v. FCA US LLC*, No. 16cv1617-GPC(JLB), 2019 WL 5268670, at \*11–12 (S.D. Cal. Oct. 17, 2019); *Alderman v. GC Serv. Ltd. P'ship.*, No. 2:16-CV-14508, 2018 WL 542455, at \*3, \*7 (S.D. Fla. Jan. 19, 2018); *Lee v. Phelan Hallinan, PLC*, No. 14-60154-CV, 2015 WL 12633008, at \*1 (S.D. Fla. Feb. 4, 2015); *Gold v. Midland Credit Mgmt., Inc*., 306 F.R.D 623, 635 (N.D. Cal. 2014); *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 701 (S.D. Fla. 2013); *Durrett v. John Deere Co*., 150 F.R.D. 555, 563 (N.D. Tex. 1993).

Finally, MBUSA remarks, in passing, that Plaintiffs did not demonstrate that Rhode Island's statute is substantially similar to the statutes of the seven additional states at issue. (ECF No. 4765 at 11.) But MBUSA is mistaken, for it ignores the pages of briefing submitted at class certification demonstrating substantial similarity, none of which MBUSA directly confronts. (ECF No. 4648 at 19-25; ECF No. 4610 at 32-47.)

**B.      Certification of Plaintiffs' Separate State Statutory Classes Comports With _Tershakovec._**

Plaintiffs have also moved to certify separate state classes under the consumer fraud statutes of Iowa, North Carolina, Oregon, and Washington, and for breach of implied warranty under Mississippi law. This Court certified a class under the North Carolina statute as to FCA (ECF No. 4688 at 6), and the Eleventh Circuit affirmed this Court's certification of a class under the Washington statute, _Tershakovec_, 79 F.4th at 1311. MBUSA offers no valid reason to depart from these rulings. Aside from the misguided factual points discussed earlier, MBUSA does not contend that it is in a different position than FCA or Ford, the _Tershakovec_ defendant, nor does it suggest that any intervening, controlling authority requires a different result. Instead, it merely seeks to relitigate issues that this Court resolved against FCA in this MDL and Ford in _Tershakovec_. This Court should reject MBUSA's unwarranted request for reconsideration.

As to Iowa and Oregon, MBUSA contends that individualized evidence of reliance is required. (ECF No. 4765 at 7-8.) Again, however, it misreads state law. Iowa courts apply an objective test to determine whether conduct is unfair and deceptive. _See Moeller v. Samsung Elecs. Am., Inc._, 623 F. Supp. 3d 978, 985 (S.D. Iowa 2022). "A course of conduct contrary to what an _ordinary consumer_ would anticipate contributes to a finding of an unfair practice." _State ex rel. Miller v. Vertrue, Inc._, 834 N.W.2d 12, 37 (Iowa 2013) (emphasis added). "To ascertain whether a practice is likely to mislead in the consumer protection context, courts typically evaluate the overall or 'net impression' created by the representation." _Id._ at 34. Because this standard is objective, courts have certified classes under the Iowa statute. _See Chapman v. Gen. Motors LLC_, No. 2:19-CV-12333, 2023 WL 2746780, at *15 (E.D. Mich. Mar. 31, 2023) ("common issues of GM's knowledge and concealment will predominate."). Iowa's state appellate courts, recognizing that "class actions for claims involving the Consumer Fraud Act are explicitly provided for in the statute," likewise have certified classes, holding that "[u]niform misrepresentations weigh in favor

11

of certifying the class." *Detmer v. La'James Coll. of Hairstyling, Inc. of Fort Dodge*, 974 N.W.2d 182 (Iowa Ct. App. 2021).

Similarly, the Oregon Supreme Court has rejected the proposition that "reliance always must be established by separate evidence specific to each class member." *Pearson v. Philip Morris*, Inc., 361 P.3d 3, 30 (Or. 2015) (discussing *Strawn v. Farmers Ins. Co.*, 258 P.3d 1199 (Or. 2011). Rather, Oregon law permits "a factual inference of classwide reliance." *Id.* While such an inference may not be appropriate when evidence in the record indicates that a large number of consumers did not rely on the defendant's unfair practice, *id.* at 31–32 (describing surveys showing that consumers purchased light cigarettes for irrational reasons), this is not such a case. To the contrary, Dr. Dubé's buyer survey highlighted the central role of safety to purchasers, and there is no evidence that, when presented with two vehicles, one of which contains a serious safety defect, any consumers would pay the same price for the two vehicles. Under such circumstances, a defendant who claims that individual inquiries are needed "may be 'dreaming up a theoretical defense requiring individual inquiries for which there is little basis in fact,'" *id.* at 31 (quoting *Bernard v. First Nat. Bank of Oregon*, 550 P.2d 1203 (Or. 1976)), and a class-wide inference of reliance is appropriate under Oregon law.

Finally, MBUSA offers just one sentence on Plaintiffs' claim for breach of implied warranty under Mississippi law, contending that the issues of merchantability and manifestation may present individualized issues. (ECF No. 4765 at 10.) But MBUSA fails to explain why this must be so. As this Court held in certifying similar claims under Louisiana law against GM, these common questions can be answered with the same evidence common to all class members establishing the existence and severity of the Inflator Defect. (ECF No. 4689 at 22–24.) And as MBUSA itself acknowledges, its manifestation argument runs counter to this Court's ruling that the Inflator Defect—inherent in the design of each inflator equipped in every Class Vehicle—"was manifest at the time of sale." (ECF No. 4765 at 10 n.7.) The Mississippi warranty class should be certified.

**C.  Certification of Plaintiffs' Fraud Claims Is Appropriate Under This Court's Prior Rulings And *Tershakovec.***

This Court thoroughly analyzed applicable state law in certifying fraud claims against FCA under North Carolina, Colorado, Utah, West Virginia, and Wisconsin law. (ECF No. 4688.) And despite FCA's submission of three Rule 23(f) petitions challenging that analysis, the Eleventh

Circuit declined to disturb this Court's rulings.  MBUSA does not point to any intervening, contrary authority compelling a different result now.  Instead, it simply reargues the same authorities that FCA and Plaintiffs exhaustively briefed and that this Court considered.  (ECF No. 4765 at 13–17.)  Given that one of the stated reasons for creating this MDL in the first place was to "prevent inconsistent pretrial rulings on class certification," *In re: Takata Airbag Prod. Liab. Litig.*, 84 F. Supp. 3d 1371, 1372 (J.P.M.L. 2015), MBUSA's repackaging of FCA's prior unsuccessful arguments should be rejected.[4]

Beyond the five states at issue in the FCA order, Plaintiffs also moved to certify separate classes for fraud claims under Iowa, Mississippi, Oregon, Virginia, and Washington law.  MBUSA does not dispute that Mississippi and Washington law permit a class-wide inference of reliance for fraud claims, limiting its arguments on reliance to Iowa, Oregon, and Virginia law.  (ECF No. 4765 at 7–8.)  But it again relies on cases merely holding that reliance is an element of a fraud claim in all three states.  The relevant question under *Tershakovec* is whether courts in the three states permit reliance to be proven with class-wide evidence or an inference.  The clear answer is that they do.  *See Strawn*, 258 P.3d at 1209–15 (holding that reliance for fraud claim did not have to be established through individual proofs, but could be inferred from evidence common to class); *Vos. v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 53-54 (Iowa 2002) (denying class certification on the facts of the case, but citing cases where a presumption of reliance was based on consumers receiving "the same mix of information"); *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 563 (E.D. Va. 2000) ("Often reliance is a matter that is demonstrated inferentially and by circumstantial proof.") (citing *Cook v. Hayden*, 31 S.E.2d 625 (Va. 1944) (holding in analyzing common law fraud that "[c]ircumstantial evidence is not only sufficient, but in most cases is the only proof that can be adduced.")).  Under *Tershakovec* and this Court's prior decisions, therefore, this Court should certify Plaintiffs' fraud claims under Iowa, Mississippi, Oregon, Virginia, and Washington law.

---

[4] MBUSA contends that individualized issues apply to Plaintiff Bridges, who purchased her vehicle in North Carolina, because North Carolina law does not impose a duty to disclose when "the information was discoverable with diligence." (ECF No. 4765 at 16.) But there is no evidence here that any Plaintiff could have discovered the Inflator Defect, even with the utmost diligence.

### III.   <u>A Class Trial Will Be Manageable.</u>

MBUSA questions whether a class trial would be manageable, accusing Plaintiffs of failing to present a viable "trial plan." (ECF No. 4765 at 17–18.) But Plaintiffs addressed this argument in their initial class certification brief and reply. (ECF Nos. 4610 at 45-47; 4648 at 25-27.) In addition, Plaintiffs proposed a reasonable grouping of claims, with a structure for jury questions, in their initial motion for class certification. (ECF No. 4195-3.) The grouping of claims from multiple states where the law is materially similar remains a far superior alternative to the resolution of these claims through thousands of individual trials. *See, e.g.*, *Acevedo v. BrightView Landscapes, LLC*, No. 13-2529, 2017 WL 1062377, at *8 (M.D. Pa. Mar. 21, 2017); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571 (W.D. Wash. 2012). Indeed, this Court's own experience presiding over two class trials involving automobile defects, one of which involved multiple state laws, demonstrates that MBUSA's manageability concerns are unfounded.

### IV.   <u>MBUSA's Recycled Damages Arguments Should Be Rejected Again.</u>

Like its co-Defendants did, MBUSA attempts "to relitigate its motion to exclude Dr. Dubé's testimony," launching "many of the same previously rejected attacks" at his conjoint analysis. (ECF No. 4689 at 24.) As this Court previously ruled, these attacks should be rejected again. (*Id.*) In fact, MBUSA's attacks are even less viable now, because just last week, a federal appellate court affirmed an order granting class certification that relied on Dr. Dubé's conjoint work, rejecting arguments similar to those presented here. *Lytle v. Nutramax Lab'ys, Inc.*, No. 22-55744, ---F. 4th---, 2024 WL 1710663, at *10 (9th Cir. Apr. 22, 2024).

In addition, MBUSA's demand that the Court rule on the merits of Plaintiffs' damages claims in advance of class certification contravenes the Supreme Court's clear guidance that Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc.*, 568 U.S. at 466. Instead, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The Court has adhered to this guidance in determining the admissibility of Plaintiffs' damages model. Rule 23 neither requires nor permits anything further at this stage. Whether Plaintiffs ultimately prevail on the merits of their claims "does not undermine predominance, because that result would nonetheless be common to the class." *Lytle*, 2024 WL 1710663, at *7.

<u>C<span style="font-variant:small-caps">ONCLUSION</span></u>

For the foregoing reasons, and for the reasons set forth in Plaintiffs' briefs on class certification (ECF Nos. 4683, 4648, 4610, 4318, 4195), Plaintiffs respectfully request that the Court grant class certification.

Dated: May 1, 2024                                    Respectfully submitted,

                                                    **P<span style="font-variant:small-caps">ODHURST</span> O<span style="font-variant:small-caps">RSECK</span>, P.A.**

                                                    */s/ Peter Prieto*
                                                    Peter Prieto (FBN 501492)
                                                    Aaron S. Podhurst (FBN 63606)
                                                    Stephen F. Rosenthal (FBN 131458)
                                                    Matthew P. Weinshall (FBN 84783)
                                                    SunTrust International Center
                                                    One S.E. Third Ave., Suite 2300
                                                    Miami, Florida 33131
                                                    Phone: (305) 358-2800
                                                    Fax: (305) 358-2382
                                                    Email: pprieto@podhurst.com
                                                         apodhurst@podhurst.com
                                                         srosenthal@podhurst.com
                                                         mweinshall@podhurst.com

                                                    ***Chair Lead Counsel for Plaintiffs***

15

| | |
|---|---|
| **COLSON HICKS EIDSON**<br>Lewis S. "Mike" Eidson<br>mike@colson.com<br>Curtis Bradley Miner<br>curt@colson.com<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134<br>T: 305-476-7400<br><br>    *Plaintiffs' Personal Injury Track Lead Counsel* | **SMITH LACIEN LLP**<br>Todd A. Smith<br>tsmith@smithlacien.com<br>70 W Madison St Suite 5770,<br>Chicago, IL 60602<br>(312) 509-8900<br><br><br>    *Plaintiffs' Economic Damages Track Co-Lead Counsel* |
| **BOIES, SCHILLER & FLEXNER LLP**<br>David Boies, Esq.<br>Motty Shulman (Fla Bar. No. 175056)<br>333 Main Street<br>Armonk, NY 10504<br>Tel:  (914) 749-8200<br>Fax: (914) 749-8300<br>Email: dboies@bsfllp.com<br>    mshulman@bsfllp.com<br><br>Stephen N. Zack (Fla. Bar. No. 145215)<br>100 Southeast 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel:  (305) 539-8400<br>Fax:  (305) 539-1307<br>Email: szack@bsfllp.com<br>    mheise@bsfllp.com<br><br>    *Plaintiffs' Economic Damages Track Co-Lead Counsel* | **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**<br>Elizabeth Cabraser<br>ecabraser@lchb.com<br>275 Battery St., Suite 3000<br>San Francisco, CA 94111-3339<br>T:    415-956-1000<br><br>David Stellings<br>250 Hudson Street, 8th Floor<br>New York, NY 10012<br>212-355-9500<br>dstellings@lchb.com<br><br>*Plaintiffs' Steering Committee* |

16

| **CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC** | **BARON & BUDD, PC** |
|---|---|
| James E. Cecchi | Roland Tellis |
| jcecchi@carellabyrne.com | rtellis@baronbudd.com |
| 5 Becker Farm Road | David Fernandes |
| Roseland, NJ 07068-1739 | dfernandes@bardonbudd.com |
| T: 973 994-1700 | Mark Pifko |
| f: 973 994-1744 | mpifko@baronbudd.com |
| | 15910 Ventura Blvd., |
| | Suite 1600 |
| *Plaintiffs' Steering Committee* | Encino, CA 91436 |
| | T: 818-839-2333 |
| | |
| | J. Burton LeBlanc |
| | 9015 Bluebonnet Blvd. |
| | Baton Rouge, LA 70810 |
| | T: 225-761-6463 |
| | |
| | |
| | *Plaintiffs' Steering Committee* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on May 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Peter Prieto*

Peter Prieto