# EXHIBIT NO. 2

```
1              ** ROUGH DRAFT ** ROUGH DRAFT ** ROUGH DRAFT **
2                       UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA
3
                             MDL NO.: 2599
4                 MASTER FILE NO.: 15-2599-MD-MORENO
               S.D. FLA. CASE NO.: 14-C-24009-MORENO
5
   IN RE:
6
   TAKATA AIRBAG PRODUCT LIABILITY            Courtroom 12-2
7  LITIGATION,
                                              Miami, Florida
8
                                              May 29, 2024
9
   _____
10
                    PROCEEDINGS ON ORAL ARGUMENTS
11             BEFORE THE HONORABLE FEDERICO A. MORENO
                  SENIOR UNITED STATES DISTRICT JUDGE
12 _____
13 APPEARANCES:
   FOR PLAINTIFFS:           PETER PRIETO, ESQ.
14                           MATTHEW P. WEINSHALL, ESQ.
                             Podhurst Orseck, P.A.
15                           One Southeast Third Avenue
                             Suite 2300
16                           Miami, Florida 33131
                                                    305-358-2800
17                                       Fax:   305-358-2382
18                           ROBERT MARTINEZ, ESQ.
                             Colson Hicks Eidson, P.A.
19                           255 Alhambra Circle
                             Penthouse
20                           Coral Gables, Florida 33134
                                                    305-476-7400
21                                       Fax:   305-476-7444
22                           ANDREW L. BEYDA, ESQ.
                             Boies, Schiller & Flexner LLP
23                           100 Southeast 2nd Street
                             Suite 2800
24                           Miami, Florida 33131
                                                    305-539-8400
25                                       Fax: 305-539-1307
```

Draft Copy

```
 1                               ZACHARY S. BOWER, ESQ.
                                 Carella Byrne Cecchi
 2                               Brody Angello, P.C.
                                 2222 Ponce de Leon Boulevard
 3                               Miami, Florida 33134
                                                     973-422-5593
 4                                          Fax: 973-994-1744
 5   FOR DEFENDANT GENERAL
     MOTORS:                     RENEE D. SMITH, ESQ.
 6                               Kirkland & Ellis LLP
                                 300 North LaSalle Street
 7                               Chicago, Illinois 60654
                                                     312-862-2000
 8                                          Fax: 312-862-2200
 9   FOR DEFENDANT
     MERCEDES-BENZ USA:          RAOUL G. CANTERO, ESQ.
10                               SHELDON PHILP, ESQ.
                                 White & Case LLP
11                                Southeast Financial Center-Suite 4900
                                 200 South Biscayne Boulevard
12                               Miami, Florida 33131
                                                     305-371-2700
13                                          Fax: 305-358-5744
14                               TROY M. YOSHINO, ESQ.
                                 ERIC J. KNAPP, ESQ.
15                               Winston & Strawn LLP
                                 101 California Street
16                               Suite 3500
                                 San Francisco, California 94111
17                                                   415-591-1000
18                               JEFF WILKERSON, ESQ.
                                 Winston & Strawn LLP
19                               300 South Tryon Street
                                 16th Floor
20                               Charlotte, North Carolina 28202
                                                     704-350-7700
21
     FOR DEFENDANT FCA LLC:      DANIEL T. GRAHAM, ESQ.
22                               MICHAEL CROGHAN, ESQ.
                                 Clark Hill PLC
23                               130 E. Randolph Street
                                 Suite 3900
24                               Chicago, Illinois 60601
                                                     312-985-5945
25                                          Fax: 312-985-5999
```

Draft Copy

1  REPORTED STENOGRAPHICALLY
   BY:                        GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C
2                             Official United States Court Reporter
                              Wilkie D. Ferguson Jr. US Courthouse
3                             400 North Miami Avenue - Suite 12-24
                              Miami, Florida  33128  305.523.5118
4                             gphofficialreporter@gmail.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Draft Copy

4

1                          TABLE OF CONTENTS

2                                                           Page

3

4

5

6

7

8
                              EXHIBITS
9
     Exhibits                  Marked for        Received
10                             Identification   in Evidence

11   Description               Page    Line     Page    Line

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Draft Copy

Rough/Oral Argument

5

1      (The following proceedings were held at 9:45 a.m.)

2          THE COURT:  Okay.  The case that won't go away, Takata.

3   I mean, even the Court of Appeals doesn't want this case, no

4   matter what.  I get criticized for saying, go ahead and review

5   it, guys, and they say, no, you've got to give me enough reasons

6   to review it.  You can be on the record.  I don't care.  They

7   like that.  You've got to tell me why you want us to review it.

8   That's because you're smarter.  But look at that, they say, no,

9   you do it.

10         15-MD-02599.  15, how many years is that now?  Wow.

11  Who do we have on behalf of the plaintiffs?

12         MR. PRIETO:  Good morning, Your Honor.  Peter Prieto,

13  Podhurst Orseck, on behalf of the plaintiffs.

14         MR. WEINSHALL:  Good morning, Your Honor.  Matthew

15  Weinshall of Podhurst Orseck on behalf of the plaintiffs.

16         MR. BOWER:  Good morning, Your Honor.  Zachary Bower of

17  Carella Byrne on behalf of the plaintiffs.

18         MR. BEYDA:  Good morning, Your Honor.  Andrew Beyda

19  with Boies, Schiller & Flexner on behalf of the plaintiffs.

20         MR. MARTINEZ:  Your Honor, good morning.  Bob Martinez

21  of Colson Hicks Eidson.  I'm substituting in for my law partner

22  Curtis Miner.

23         THE COURT:  Where is he, vacationing?

24         MR. MARTINEZ:  He's in Hallo Bay.

25         THE COURT:  Hallo Bay, what a beautiful place it is.

Rough/Oral Argument

1    I've been there.

2            MR. MARTINEZ:  It's gorgeous.

3            THE COURT:  It's far away.  Hopefully, he has better

4    Wi-Fi than I had when I was there.

5            MR. MARTINEZ:  He can get it.

6            THE COURT:  Well, I couldn't, but that's okay.  My

7    staff probably conspired to make sure I couldn't get everything.

8            All righty.  Who do we have on behalf of the

9    defendants?

10           MR. YOSHINO:  Good morning, Your Honor.  Troy Yoshino

11   of Winston & Strawn for Mercedes-Benz USA, LLC.

12           MR. KNAPP:  Good morning, Your Honor.  Eric Knapp of

13   Winston & Strawn for Mercedes-Benz USA, LLC.

14           THE COURT:  Are you guys here in Miami now?

15           MR. YOSHINO:  No, Your Honor.

16           MR. KNAPP:  We have an office.

17           THE COURT:  But not you guys?

18           MR. YOSHINO:  No.

19           THE COURT:  Okay.  You don't like Miami.

20           MR. KNAPP:  I love it.

21           MR. WILKERSON:  My name is Jeff Wilkerson.  I'm also

22   with Winston & Strawn, I'm in Charlotte now, here for

23   Mercedes-Benz.

24           MR. CANTERO:  Your Honor, Raoul Cantero, White & Case

25   in Miami for Mercedes-Benz.

Rough/Oral Argument

1           THE COURT:  Okay.

2           MR. PHILP:  Good morning, Your Honor.  Sheldon Philp,

3   also White & Case, also Miami.

4           THE COURT:  Okay.

5           MS. SMITH:  Good morning, Your Honor.  Renee Smith,

6   Kirkland & Ellis, not of Miami, but we do have a Miami office

7   now.  I wish I was at the Miami office.

8           THE COURT:  Well, you can't do that?  I thought

9   everybody wanted to do that.

10          MS. SMITH:  Yeah, I think a Court order would probably

11  be helpful in that regard, but I'm here for General Motors even

12  though I know this argument is really for Mercedes today.

13          THE COURT:  Okay.  So that's why you were seated there.

14  You're just observing.  All right.

15          And we have someone who rose in the back.

16          MR. GRAHAM:  Good morning, Your Honor.  Dan Graham from

17  Clark Hill for FCA US from Chicago.

18          MR. CROGHAN:  Michael --

19          THE COURT:  You know, the court reporter, she loves

20  those microphones, so you're going to have to have a booming

21  voice.

22          MR. CROGHAN:  Michael Croghan also from Clark Hill for

23  FCA.

24          THE COURT:  Okay.  I read what you have all filed and

25  my request, and the question, of course, is:  Should I be

Rough/Oral Argument

8

1   consistent or not?  How do I do this and that's in the best

2   interest of -- well, the right thing to do under the law?

3        You can all sit down and then we will figure out what

4   you want to say to add to what has been in writing, and since

5   it's been in writing it's been preserved, so there's no need to

6   repeating something.

7        The damages model issue, I'm starting from what I think

8   is the back, is no different than the past.  I agree with the

9   plaintiffs on that.  So now we have even more guidance from

10  Appellate Courts on the plaintiffs' expert, Dr. Dubé, so I don't

11  want to hear any argument on that because I don't think that

12  would influence me.

13       The manageability concerns, I don't want to say they

14  lack merit totally, but I think I can manage.  I don't think I

15  get like good Bordeaux wine, better with age, but I don't get

16  worse either, so I think I can do it.  And we will figure out a

17  way to do it when it comes to the states that we have to deal

18  with if and when I rule on the class certification and any other

19  expected motions, but we have to get this thing going.

20       So having done that, I will let anyone from the defense

21  who wishes to speak on whatever you want to say, including any

22  evidence of presale knowledge or lack of it.  Tell me where

23  exactly that would be.  That seems to be the only thing that may

24  concern me now and maybe eventually.

25            MR. YOSHINO:  Sure, Your Honor.

```
 1              THE COURT:  Or anything else since you came all the way
 2   from where, Chicago, New York?
 3              MR. YOSHINO:  From San Francisco.
 4              THE COURT:  San Francisco, so far.  Oh, my goodness.
 5              MR. YOSHINO:  It's always nice to see you though.
 6              THE COURT:  Okay.  Not everybody says that, but -- or a
 7   lot of people say that, but not everyone means it.
 8              MR. YOSHINO:  So we --
 9              THE COURT:  What do you want me to do now that I have
10   done so much?
11              MR. YOSHINO:  We would like you to deny plaintiffs'
12   motion for class certification against MBUSA.
13              THE COURT:  That would upset a lot of people who have
14   settled this case already.
15              MR. YOSHINO:  It would also make a number of people
16   happy.
17              THE COURT:  But then it would have to go up to the
18   Court of Appeals.  Maybe that's the best way for something to go
19   to the Court of Appeals, right?
20              MR. YOSHINO:  I think, though, Your Honor, MBUSA is
21   differently situated than other parties based on the facts in
22   the record.
23              THE COURT:  Okay.  Tell me the most important facts
24   that you think make it different.  Does it have something to do
25   with knowledge or not?
```

Draft Copy

1    MR. YOSHINO:  Sure, Your Honor.  I was actually going

2 to start with the lack of presale knowledge.

3    THE COURT:  Okay.

4    MR. YOSHINO:  Before I get there, I just wanted to flag

5 for you that there are, obviously, a lot of issues.  We have

6 made a few different assignments, so you will likely see a few

7 attorneys come to the podium, up and down a little bit here.

8    THE COURT:  You are the knowledge guy.

9    MR. YOSHINO:  I am the knowledge guy, or the lack of

10 knowledge guy.  So as discussed in our briefing, MBUSA's

11 witnesses surely showed that MBUSA did not have presale

12 knowledge of the alleged defect.  That is summarized, for

13 example -- the evidence there is summarized at pages 3 and 6 and

14 7 of the pending class cert opposition.  Plaintiffs --

15    THE COURT:  Who's going to speak on knowledge from the

16 plaintiffs' side?

17    MR. PRIETO:  I will, Your Honor.

18    THE COURT:  Mr. Prieto.  Why don't you grab the other

19 lectern.  You know, I don't do it, you probably know this by

20 now, like the Court of Appeals, you have 15 minutes, and then at

21 the end they chat among themselves and then an order comes out

22 so -- because I'm not as good as they are and there are not

23 three of us.  So we will go back and forth on this knowledge

24 because that helps me.

25    MR. YOSHINO:  Sure, Your Honor.

Rough/Oral Argument

1      THE COURT:  So do I make -- obviously, Mr. Prieto, you

2  believe that there's enough evidence of knowledge.

3      MR. PRIETO:  Absolutely, Your Honor.

4      THE COURT:  And the most important evidence of that is

5  through what witness or what factor?  Give me the top three.

6      MR. PRIETO:  Number one, they are the same inflators

7  that were used in all the other automakers in a particular

8  Honda, which were Takata nondesiccated ammonium nitrate

9  inflators.

10      THE COURT:  Now, you disagree with that, they are the

11  same inflators?

12      MR. YOSHINO:  What we say is that MBUSA did not know

13  what inflators were in the vehicles because it's a distributor

14  of the vehicles.

15      THE COURT:  But -- I understand that argument, but you

16  don't disagree with the fact that they are the same inflators.

17      MR. YOSHINO:  We don't disagree with the fact that they

18  have ammonium nitrate in the inflators.  As we say in our

19  papers, we believe that there are distinguishing factors for our

20  inflators.

21      THE COURT:  And your inflators are different.

22      MR. YOSHINO:  Correct, Your Honor.

23      THE COURT:  And how do I deal with the fact that the

24  defense says those inflators are different, Mr. Prieto?

25      MR. PRIETO:  First of all, Your Honor, there is an

Rough/Oral Argument

1  issue of fact.  First of all, let me back up a second.

2          THE COURT:  Okay.

3          MR. PRIETO:  If I may say, this is a merits issue.

4          THE COURT:  That happens in a lot of class

5  certifications.  So I should wait until summary judgment and you

6  would probably argue it's a question of credibility, the amount

7  of facts, the substance, let a jury decide that.  Right?

8          MR. PRIETO:  This is a classic summary judgment issue

9  because the argument is not that the knowledge is different

10 depending on the class member or depending on, you know, what

11 Mercedes knew or didn't know.  All the knowledge is based on one

12 party, which is the defendant.  So it's the defendant's

13 knowledge that is -- applies to all the class members, and I

14 think we have to get the standard if --

15         THE COURT:  So I should grant class cert --

16         MR. PRIETO:  I know what you are going to say.

17         THE COURT:  -- consistently with that.  All discovery

18 has been taken already.

19         MR. PRIETO:  Correct.

20         THE COURT:  The Motion to Dismiss, I know it's pending,

21 but then they filed a summary judgment motion, and then that

22 summary judgment motion you're going to argue should be denied.

23         MR. PRIETO:  Correct.

24         THE COURT:  But the opponents can say it should be

25 granted -- see, it is totally different -- and then decided

1  then.  That's your argument with that.

2           MR. PRIETO:  The argument is that that is where this

3  particular issue, which is a summary judgment issue, should be

4  decided, not class cert.

5           THE COURT:  What's wrong with that?  Sometimes they

6  kind of get merged, I understand that, but if we divide that you

7  still have your shot at the summary judgment and we are going to

8  do that quickly.  So you're going to get your wish one way or

9  another.

10          MR. YOSHINO:  In this case, Your Honor, we believe that

11  the lack of knowledge is a class certification issue.  There are

12  several reasons why.

13          First of all, the Court itself has recognized in

14  granting class certification as to GM and FCA that knowledge of

15  the alleged defect was part of "the crux of plaintiffs' legal

16  claims" and this makes sense.  The Eleventh Circuit has held

17  that the a class action cannot proceed if a class has many

18  members who have no cause of action as a matter of law.  That's

19  reason number one.

20          THE COURT:  So I should grant class cert, figure out

21  what happens, and then grant your summary judgment.

22          MR. YOSHINO:  No, Your Honor.

23          THE COURT:  And then they can go up to the Court of

24  Appeals.

25          MR. YOSHINO:  No, Your Honor.  We submit that it's a

Rough/Oral Argument

1  class certification issue to be decided on this motion.

2        I think the second reason will highlight this.  We

3  believe that many of the claims being asserted are time barred

4  and would require proof of active concealment for tolling.

5        THE COURT:  Which claims are time barred?

6        MR. YOSHINO:  Well, amongst other claims -- and my

7  partners and I have kind of divided up the various states, but

8  significantly Ms. Radican from Rhode Island, who seeks to

9  represent all of the consumer fraud claims, her claims are time

10  barred.  She purchased in 2007.

11        THE COURT:  All right.  I am going to stop you because

12  I've read it.  It's not that I don't want to listen to you, but

13  then I go to your opponent.

14        So what I should do on the class certification is not

15  certify certain claims.

16        MR. PRIETO:  No, Your Honor.

17        THE COURT:  It's all or nothing, huh?

18        MR. PRIETO:  That is a summary -- these are all

19  basically summary judgment arguments repackaged as class cert

20  arguments.

21        THE COURT:  So I can certify a class with time barred

22  claims.

23        MR. PRIETO:  Yes, at this point --

24        THE COURT:  I can?

25        MR. PRIETO:  Yes, you can for sure.

1    THE COURT:  Why am I uncomfortable doing that instead

2  of dividing and getting rid of people who aren't going to be

3  here anyway?

4    MR. PRIETO:  Because that is appropriate for summary

5  judgment, Your Honor.  It's not appropriate for class cert, and

6  I didn't see that argument made at least in the documents or I

7  my -- I have read a lot over the last couple of weeks.

8    THE COURT:  I know.  I feel bad, but that's part of

9  life.

10    MR. PRIETO:  I am not even sure that argument was made

11  in response to your order to show cause as to why you should not

12  grant the certification for this class.

13    THE COURT:  Sometimes we learn something new in oral

14  argument, which is why I like it.

15    MR. PRIETO:  Right.  So that is a defense that -- that

16  is a defense that they have that basically knocks out a

17  plaintiff.  It's not the argument that these defenses are

18  different, and all you have to look at is Tyson Foods where they

19  had kind of a similar argument and the Supreme Court at Tyson

20  Foods, 577 U.S. at 457, essentially said the classic standard or

21  principle in determining what should be looked at in a summary

22  judgment motion as opposed to in a class cert motion and

23  analysis, and this is what the Court said, quote --

24    THE COURT:  That case went -- at what stage did it go

25  to the Supreme Court?

1          MR. PRIETO:  I believe it went to the Supreme Court --

2          THE COURT:  On summary judgment.

3          MR. PRIETO:  Denied motion for certification -- denied

4    employer's motion for decertification.

5          THE COURT:  For decertification.

6          MR. PRIETO:  Right, and went to a jury verdict, after a

7    jury verdict.

8          THE COURT:  Okay.

9          MR. PRIETO:  But let me just say this.  This is a quote

10   from Tyson Foods.  When it's here, quote, "the concern about the

11   proposed class is not that it exhibits some fatal

12   dissimilarity," which is what they're saying, it's a fatal --

13   no, they are saying something different.  Let me back up.

14          "When it's here, the concern about the proposed class

15   is not that it exhibits some fatal dissimilarity, but rather a

16   fatal similarity and alleged failure of proof as to an element

17   of the plaintiff's cause of action.  Courts should engage that

18   question as a matter of summary judgment, not class

19   certification."

20          THE COURT:  But I assume the Court did do that since it

21   went to a jury trial.

22          MR. PRIETO:  Correct.  The Court let it go to a jury

23   trial after not saying -- after denying the motion for

24   decertification, but the analysis, Judge, is not whether there

25   is fatal proof on one element.  That is for summary judgment.

Draft Copy

Rough/Oral Argument

17

1    The analysis --

2              THE COURT:  Even on a time barred claim?

3              MR. PRIETO:  That is for summary judgment, Your Honor,

4    because that knocks out one element of our claim or a defense

5    that they have as to one class rep.

6              THE COURT:  Which case is the one that you want me to

7    include in an order on this time barred issue?

8              MR. YOSHINO:  So, Your Honor, what I would submit is

9    that Mr. Prieto is talking about a commonalty issue.  I am not

10   talking about commonalty in the second point that I --

11             THE COURT:  Give me the case where it says this was

12   time barred, the judge screwed up by allowing this in the first

13   place.

14             MR. YOSHINO:  So I would submit that this is similar to

15   plaintiff Lodge in the GM certification order and is a

16   typicality or an atypicality issue and an inadequacy issue.  If

17   Ms. Radican cannot assert her personal claim she cannot be a

18   named plaintiff, is not a proper member of the classes being

19   asserted and class certification should be denied, just as the

20   fraud class was denied as to GM.

21             So I think it would be Judge Moreno's decision, Your

22   Honor.

23             THE COURT:  All right.  Okay.  All right.

24             MR. YOSHINO:  But it's an atypicality and --

25             THE COURT:  The inflators are different.  What else?

 1           MR. YOSHINO:  So --

 2           MR. PRIETO:  I'm sorry.

 3           THE COURT:  I am going to let you all talk.

 4           MR. PRIETO:  I thought were you directing it at me,

 5    Your Honor.

 6           THE COURT:  No, no.  I should have used names.

 7           MR. YOSHINO:  The third reason that --

 8           THE COURT:  What was the second reason?

 9           MR. YOSHINO:  Sorry.  The second reason is inadequate

10    and atypical class representatives with time barred claims who

11    would need to show active concealment.  So lack of knowledge --

12           THE COURT:  And there is no one who can replace them?

13           MR. YOSHINO:  That's correct, Your Honor.  I mean,

14    that's what we believe, especially given the passage of time in

15    this particular case now.  But active -- showing active

16    concealment is impossible because MBUSA did not have presale

17    knowledge of the alleged defect.

18           THE COURT:  And what proof do you have of lack of

19    knowledge?

20           MR. YOSHINO:  Well, Your Honor, we cite substantial

21    proof.

22           THE COURT:  Who is going to testify as to that?

23           MR. YOSHINO:  For example, the testimony of Tom Brenner

24    is -- which is cited at Pages 3 and 6 and 7 of the class

25    certification that's pending right now.

1          THE COURT:  What do I do with Tom Brenner, Mr. Prieto?

2          MR. PRIETO:  Your Honor, he has provided also evidence

3    of knowledge.  I mean, they may cite to certain references in

4    his testimony that they didn't -- that MBUSA did not have

5    knowledge, but we believe that the collective evidence -- and

6    again, this is an issue for summary judgment because we are

7    focused on not whether knowledge can be proven on a class-wide

8    basis, but whether knowledge can be proven at all.  That's what

9    they are saying.

10          They are saying you cannot prove knowledge at all in a

11   class cert context, which is inappropriate --

12          THE COURT:  Well, I mentioned this before and that's

13   why I've been sitting on this for a while.  Should I -- we don't

14   have a pending motion for summary judgment, so what I should do

15   in your view, in the plaintiffs' view, is rule on the expected

16   motion for summary judgment.  Once I do that, then it's easier

17   to decide the class certification.

18          I think you're probably going to say, no, you

19   shouldn't, but tell me why, other than the strategic thing that

20   once you get class cert plaintiffs are better off for strategic

21   reasons.

22          MR. PRIETO:  Well, Your Honor, you have already

23   certified essentially two identical --

24          THE COURT:  I know.  So you're better off than you were

25   a couple of years ago.

```
 1          MR. PRIETO:  Well, it just doesn't make sense that
 2   you've gone down this path of addressing class certification
 3   first with two of the three defendants and then veer off and do
 4   the summary judgment.
 5          We will do what the Court wants, but one thing is
 6   clear.  I think the Court should proceed to essentially be
 7   consistent, not a foolish consistency, but be consistent and
 8   certify the Mercedes classes, number one.  And then two, have
 9   the parties -- have the defendants file -- refile the Motions
10   for Summary Judgment and on that record address the arguments
11   that they are making, which are classic summary judgment
12   arguments.
13          THE COURT:  I know.  But if I grant it in part and say
14   some claims are time barred, some individuals are not adequate
15   representatives because the claims are time barred for whatever
16   other reason, then that kind of messes up the class
17   certification, and then they would file a motion to decertify
18   the class.  So I'm doing things twice, which I can do, you know,
19   no problem, but it takes longer and you are here longer.
20          It makes more sense perhaps.  Maybe I should have done
21   that before, but now that it's more narrow, right, it's narrower
22   now, maybe it makes sense to do the summary judgment.
23          MR. PRIETO:  That's fine with us, Your Honor.  I
24   think --
25          THE COURT:  What's negative about that?
```

Draft Copy

1      MR. PRIETO:  Well, no, there's no negative.  The only

2  comment I'm making is that really there is no distinction

3  between what you have done with respect to General Motors and

4  FCA that you should do here.  That's --

5      THE COURT:  All right.  I got that.  I got that

6  argument.

7      MR. PRIETO:  That's the only reason that I say, you

8  know, but if the Court wants the parties to rebrief the issues

9  of summary judgment and frankly --

10     THE COURT:  What do you mean, rebrief the issues?

11     MR. PRIETO:  Well, because I believe you said there are

12 no pending motions for summary judgment.

13     THE COURT:  Is that right?

14     MR. PRIETO:  That is correct.

15     THE COURT:  Okay.

16     MR. PRIETO:  You issued an order that essentially said

17 once you determine the class cert motions you would ask the

18 parties to rebrief the issues -- to refile the motions for

19 summary judgment, and you actually noted in your order, and I

20 have it somewhere, where you said, look, it's -- you said, I'm

21 sorry that you're going to have to rebrief it, but there's

22 cutting and pasting and it shouldn't be that inefficient.

23     So you did issue that order saying that once these

24 motions were decided, you would ask the parties to refile their

25 motions for summary judgment.

 1          THE COURT:  So I made a mistake because they haven't

 2  filed them in the first place.

 3          MR. PRIETO:  No, because you said that the motions for

 4  summary judgment have been filed.

 5          THE COURT:  But now they are going to be narrower.

 6          MR. PRIETO:  They should be narrower.  I would assume

 7  they should be narrower.

 8          THE COURT:  You agree?

 9          MR. YOSHINO:  That a second -- that another motion for

10  summary judgment would address fewer claims?  Yes, Your Honor.

11          THE COURT:  Okay.  And that's a better way of doing it.

12          MR. YOSHINO:  Well, Your Honor --

13          THE COURT:  You're willing to say, you know what, we

14  can win them on both.

15          MR. YOSHINO:  That's exactly --

16          THE COURT:  Here is our summary judgment, we are going

17  to file a summary motion the way you want it with these same

18  issues that are linked to class cert.  That happens a lot in

19  these cases where there is blending of that.  Then you -- I rule

20  maybe in your favor in part, and then you have a better argument

21  for the class cert, and I can grant it in part, the class cert,

22  or deny it, or grant it in full, but it's perfectly teed up for

23  the Court of Appeals who then will have to take it.  It will be

24  a different panel, but sooner or later they are probably going

25  to have to take it.

Rough/Oral Argument

1          The better way of doing it would be that way, don't you

2     think, and I could do it quickly.  Give you like a month to file

3     whatever -- you can, you know, repaste that.  We know the

4     arguments, they are kind of same, and maybe do both orders by

5     July.  If I grant cert, we can go to trial in September.  If I

6     grant class certification, we can go to trial in September.

7     That's what I was thinking.  And if I deny it, you can go to the

8     Court of Appeals.  And if it's granted in part and denied in

9     part, you are going to be stuck with that and go to trial in

10    September.

11          What do you think about that schedule?

12          MR. YOSHINO:  Your Honor, we certainly agree that

13    summary judgment would be proper.  I think Your Honor granted

14    summary judgment as to a variety of states on damages.

15          THE COURT:  Yes.  So they won't be part --

16          MR. YOSHINO:  We believe, among other things, that the

17    damages claims pending before this Court are similar in nature

18    and, amongst other things, make the class representatives still

19    before this Court inadequate and atypical representatives as

20    well.  So I think, Your Honor, you know, the claims could be out

21    on summary judgment, but Your Honor can also deal with them on

22    class certification.

23          THE COURT:  At the same time.  That's the better way of

24    doing it.  So divide and conquer is probably not a good strategy

25    for me, like it would normally be.  You can talk with your

Rough/Oral Argument

1    colleagues.  I don't want to box you in.

2         MR. YOSHINO:  Your Honor, we would be fine with that.

3         THE COURT:  Okay.  And you would too.

4         MR. PRIETO:  Absolutely.

5         THE COURT:  Look at that.  I got you agreeing.

6         MR. PRIETO:  One more thing, Your Honor.  The Eleventh

7    Circuit has twice rejected Rule 23(f) petitions by both GM and

8    FCA of your class cert orders.

9         THE COURT:  I know, but they do it for other reasons.

10   The bottom line is, they say I haven't explained myself enough.

11        MR. PRIETO:  No, no, that wasn't a class cert order.

12   That was an opinion from the appeal that we took.

13        THE COURT:  Oh.  So you've lost that too.

14        MR. PRIETO:  Your Honor, sometimes you win, sometimes

15   you lose.  I have told the Court that before, but that was from

16   our appeal of your motion dismissing Daimler --

17        THE COURT:  Of my order.  I don't make motions anymore.

18        MR. PRIETO:  I'm sorry, your order dismissing Daimler

19   for lack of personal jurisdiction, as well as the partial grant

20   of summary judgment on the damages issue.

21        THE COURT:  They said wait till final.

22        MR. PRIETO:  Correct.

23        THE COURT:  And we will do that.

24        MR. PRIETO:  Correct.  But my point is that the

25   Eleventh Circuit has more than once rejected the 23(f) appeals

Rough/Oral Argument

1    from General Motors and FCA of your class cert orders.

2              THE COURT:  I know, but the standard is a little bit

3    different.

4              MR. PRIETO:  It is.

5              THE COURT:  What you want to do is get the case fully

6    adjudicated, right?

7              MR. PRIETO:  Understood, and I believe --

8              THE COURT:  And you can do that.  You can be ready in

9    September if I rule quickly on this.  Quickly, it means in June.

10             MR. PRIETO:  I think that the key is to rule on those

11   motions for summary judgment because it will speed up the

12   process and I think --

13             THE COURT:  And your opponents agree.

14             MR. PRIETO:  Yeah.  It will crystallize the issue and

15   if there's no resolution, then there will be a trial.

16             THE COURT:  All right.  All right.  What else does the

17   defense wish to say about anything?

18             MR. YOSHINO:  So, Your Honor, you know, just to close

19   up the knowledge concept here, as we cited in our briefing, for

20   example at Page 2 of the supplemental brief, even plaintiffs'

21   experts, Mr. Ranz (phonetic) and Mr. Baglini (phonetic), agreed

22   that they would not expect a distributor like MBUSA to have

23   information about parts like airbag inflators in the vehicles.

24             The plaintiffs new citations are improper rebuttal and

25   they do not show that MBUSA has knowledge, particularly on a

1   class-wide basis.

2          THE COURT:  Now, something like that -- so if we ever

3   went to trial on this, and we may in September, is a Verdict

4   Form -- if you were to lose on summary judgment and if you were

5   to lose on class cert, the Verdict Form that you would suggest

6   would have a question for the jury on knowledge, right?

7          MR. YOSHINO:  Well, I think it arises in several

8   different contexts, Your Honor, which is why knowledge is a

9   class certification issue.  Obviously it is an essential element

10  of all of the fraud based claims remaining in the case.

11         THE COURT:  But if I were to disagree with you and say

12  we are going to go to trial, I am not saying I would, but if I

13  were, it would be a good idea to submit proposed Verdict Forms

14  for the jury about what the jurors should find.

15         MR. YOSHINO:  Sure, Your Honor.  On knowledge, I would

16  just submit that it also arises in, you know, tolling of any

17  time barred claims, as well as duty of disclosure.

18         THE COURT:  All right.  And that would be something --

19  if I were to see what your proposed Verdict Forms are on that,

20  that would probably help me decide one way or another the

21  summary judgment motion that you're going to refile, and also it

22  would help me understand better the class certification.

23         (Phone message playing.)

24         First ring -- or I guess that's not even a ring -- is

25  free, second is $500.  Which probably doesn't mean anything, you

1    know.

2           Does that make sense?  Would that be a good thing to

3    propose, have you do Verdict Forms?

4           MR. YOSHINO:  If it would help Your Honor to identify

5    where, for example, knowledge is a -- we can do that.

6           THE COURT:  Yeah, because, see, the argument from the

7    plaintiffs is, look, we have enough evidence of knowledge, it's

8    a question of fact.  That's your argument, right?

9           MR. PRIETO:  Absolutely.

10          THE COURT:  Let's find out what the question of facts

11   would be that the jury would have to decide.  I know it's like

12   getting ahead of ourselves, but I have found lately that that

13   helps me if we get ahead.  Everybody doesn't think about the

14   trial, hardly anybody thinks about the trial, let's just work

15   about this.  I think about the trial because a couple of times,

16   for better or for worse, it goes to trial and it helps me rule

17   on the summary judgment because I really want to do this in

18   June.

19          So I think it would be helpful if any party that's

20   still remains wants to file the Verdict Forms, assuming you were

21   to lose your summary judgment, and you don't have to yield, but

22   assuming you were, these would be the Verdict Forms that you

23   would want the jury to fill out.  Not necessarily what I would

24   do at the end, but I could find out, and I think that's very

25   helpful for the summary judgment arguments.  Don't you think?

Rough/Oral Argument

28

 1          MR. YOSHINO:  Your Honor, if it would help in

 2   addressing issues --

 3          THE COURT:  Probably helps you, too.

 4          MR. YOSHINO:  -- we're happy to do that.

 5          THE COURT:  Okay.  What else do you want to say?

 6          MR. YOSHINO:  So if I can discuss the ascertainability

 7   issue for a bit.

 8          THE COURT:  All right.

 9          MR. YOSHINO:  I have a hand up or a visual aid here to

10   help on that topic.

11          THE COURT:  Look at that.  It takes three individuals

12   to handle your visual.  I like this even better than this

13   because I can do it right here.  Okay.

14          MR. YOSHINO:  So I think the ascertainability issue has

15   perhaps gotten a little bit confused and just to reset here,

16   plaintiffs have the burden of proof.  They have not offered any

17   evidence to prove ascertainability in this case with their class

18   certification motion.  The plaintiffs only referred to decisions

19   in other cases discussing inapposite circumstances.

20          So in this case the Court has held that the place of

21   purchase controls the choice of law analysis, and so you can see

22   on the first slide that plaintiffs' class has a number of

23   different limitations in it, place of purchase being one of

24   them.

25          For example, a person is not a class member if they

Draft Copy

Rough/Oral Argument

```
 1  purchased the vehicle in Florida, but later registered their car
 2  in North Carolina.
 3        Plaintiffs class definition also has other limitations
 4  because of their allegations and theories in the case.  For
 5  example, plaintiffs do not and cannot attempt to prove damages
 6  for every current owner of class vehicles because of the post
 7  recall repairs, post repair purchases, those types of things.
 8        So if we go to slide 2, one big problem for the
 9  plaintiffs on ascertainability is that the IHS data the
10  plaintiffs propose to use provides only state of registration.
11  It does not show place of purchase.
12        THE COURT:  Okay.  Let me interrupt you for a second if
13  you don't mind.
14        MR. YOSHINO:  Sure.
15        THE COURT:  What about that problem?
16        MR. PRIETO:  It's a non -- Your Honor, ascertainability
17  in this case is a non-controversial issue.  You have certified
18  eight classes using the same exact data.  Hundreds of millions
19  of dollars have been distributed to class members in those
20  settlements using the exact same data.
21        THE COURT:  Of course they are going to say, and they
22  are saying you were wrong in doing that.  Just because you did
23  it doesn't mean you should continue to do it, and that the class
24  certification in this case they might even concede should be
25  narrower.
```

Draft Copy

1          MR. PRIETO:  Right, but --

2          THE COURT:  To the purchase date.

3          MR. PRIETO:  Right.  In Cardenas you said -- we gave

4    notice after you certified the class, and you said, quote --

5          THE COURT:  And then it was limited, right?

6          MR. PRIETO:  Yes, it was limited, but it was limited --

7          THE COURT:  Why don't we limit it now?

8          MR. PRIETO:  Your Honor, when you say limited, I

9    don't -- this class has already been limited significantly by

10   your prior orders.

11         THE COURT:  They want it more limited.

12         MR. PRIETO:  Understood.  We all want different things,

13   right?

14         THE COURT:  Of course.

15         MR. PRIETO:  But I think if there is -- if the Court --

16   the proper sort of method to limit this class, assuming it's

17   valid, assuming they have good arguments at summary judgment,

18   you limit the claims because you say, you know, there's no --

19   for example, you limited prior claims based on different state

20   laws on the damage theory.  We disagree with that.  We tried to

21   appeal it.  We couldn't.  But you narrowed significantly, I

22   think by, you know, 10, 15 states, you took those states out of

23   the class.  That is the proper way to limit a class, assuming

24   it's appropriate.

25         THE COURT:  But doesn't it make sense to learn from

1   that experience and be able to limit it ahead of time if you

2   have the evidence?

3           MR. PRIETO:  At summary judgment.

4           THE COURT:  Okay.  But I can do the summary judgment

5   and the class cert at the same time.  I guess I'll do summary

6   judgment first and then it makes the class cert easier.

7           MR. PRIETO:  That's fine, but I think this is not --

8   first of all, ascertainability simply means that the class can

9   be ascertained based on objective criteria.  There are no easier

10  classes to ascertain than auto defect cases because you get a

11  VIN number from the automaker and then you get a company like we

12  have used in this case that will give you registration --

13  historical registration of where they are registered and where

14  they have been previously registered.

15          THE COURT:  Unless the class is limited to the purchase

16  date.

17          MR. PRIETO:  No, that's not appropriate, Your Honor.

18  That's a choice of law issue that will come up eventually,

19  depending on what the Court does on summary judgment, but this

20  class has been -- this is not the appropriate forum to limit the

21  class.  The appropriate forum to limit the class is, as the

22  Court has done previously, what claims or plaintiffs do not

23  belong in this case for X reasons.  That's at summary judgment,

24  not at --

25          THE COURT:  We are going around in circles.  I got it.

Rough/Oral Argument

32

1          MR. PRIETO:  But ascertainability is a

2   non-controversial issue, and they are trying to make it because

3   you told them, find me something so that I don't have to certify

4   this class that I didn't do with FCA and General Motors.  So

5   they are coming up with whatever reasons they can, which I

6   probably would do the same thing, but this is not a hill that

7   they should be even arguing or climbing, or even going on

8   because it's non-consequential.

9          THE COURT:  All right.  Give me another mountain you

10  want to climb.

11         MR. YOSHINO:  Your Honor, it's anything but a

12  non-controversial issue, and this one is one that plaintiffs

13  can't kick down the road because they need to have a proper

14  class definition in order to have a class action in the first

15  instance.

16         Mr. Prieto referred back to the prior settlements for

17  example, but if you jump to slide 4 you will see that the

18  settlement class definitions in this Takata MDL have been very

19  different than the one that the plaintiffs are proposing as to

20  MBUSA.  Right?  The Volkswagen settlement class definition, for

21  example, just captures anyone who owned or leased anywhere in

22  the United States, and that is something that is reflected in

23  the registration data.  If you owned or leased a vehicle, it is

24  reflect in the registration data.

25         But place of purchase, total loss, and other

1    characteristics are not relevant to the VW settlement class

2    definition and this is our point, right, that it doesn't show

3    you place of purchase.  If you go back, sorry, again to slide 3,

4    it doesn't -- registration data does not show other aspects of

5    the class definition in this case either.  For example, in the

6    Neil versus Volvo case the Court observes that IHS data is

7    useless with respect to any former owner who did not retain

8    their VIN.

9        And the plaintiffs haven't even proven -- haven't

10    addressed actually the point that IHS data cannot show whose

11    class vehicle was in an accident and then declare a total loss.

12    And it's correct that this is a point that is an argument

13    distinct for MBUSA, and so this argument about registration data

14    not establishing the place of purchase, not establishing total

15    loss, or other characteristics of the plaintiffs' unusual class

16    definition in this case is one of the reasons -- one of the

17    distinct reasons to deny plaintiffs' class certification motion

18    as to MBUSA.

19        Plaintiffs, again, have the burden of proof on

20    ascertainability and they just have not met it here.

21        THE COURT:  All right.  Thank you.

22        MR. PRIETO:  Your Honor, let me just make two points

23    and I'll turn it over to Mr. Weinshall, but just two points on

24    those two cases that were cited:

25        Neil versus Volvo involved former owners, but the Court

1  eventually decided, determined that the class was

2  ascertainable, but denied class cert because of predominance.

3  That's Neil versus Volvo.  The Astry (phonetic) versus Surgery

4  case that they cite -- and those two are the only cases they

5  cite for the proposition that this data does not permit the

6  Court to ascertain the class.  Astry (phonetic) versus Surgery,

7  plaintiffs did not offer any of this data, but simply the Court

8  concluded that it wasn't ascertainable because all the

9  plaintiffs did was say we can prove it somehow using certain

10 data.

11        Those two cases -- the only two cases they cite for the

12 proposition that this data does not permit ascertainability are

13 distinguishable, and I'm going to let Mr. Weinshall on this

14 issue of the data because he dealt with this when we were giving

15 notice in the prior settlements, if he can address the Court for

16 a minute.

17        THE COURT:  Sure.

18        MR. WEINSHALL:  Thank you, Your Honor.  I just wanted

19 to follow-up with a few points.  One is, this does not

20 distinguish FCA and GM orders because those classes are defined

21 the exact same way that the MBUSA class is defined.  So it's not

22 grounds for distinguishing those two orders.

23        Number two is, we are talking about two different

24 things really.  One is notice to the class, the other one is

25 ascertainability.  Ascertainability is objective criteria and

1  certainly it's an testing criteria what state you purchased your

2  vehicle in.  That is not something that is sort of vague.

3  Someone can identify what state they purchased their vehicle in

4  either through the dealership or through the purchase records,

5  so it meets the ascertainability requirement.

6          The question is:  Can we notify all these people with

7  the VINs that are registered in a certain state?  Certainly we

8  can.  We can send out -- we can say, give me all the VINs that

9  were registered in North Carolina, if North Carolina is

10  certified.

11          Now, is it possible that a few VINs would be left out?

12  Yes, but you don't need -- the reasonable notice requirement

13  under Rule 23 is not every single person gets notified, you just

14  have to make a reasonable effort, and we certainly would do that

15  through all the VINs that are registered in North Carolina,

16  perhaps registered in states around there, plus a publication

17  notice, which would be sufficient to get people who are not in

18  those specific VINs.  And we have already received VINs from GM,

19  from FCA, and we are sending those to IHS so that we can notify

20  the class members.

21          And then, in terms of if you were to limit it and say,

22  okay, it's only people who purchased in that state, maybe more

23  people would be notified than would be in a class and then they

24  would have to prove their class membership sometime down the

25  line.  That is not a problem with ascertainability.

Rough/Oral Argument

36

1          Then the final issue is:  There have been several

2     classes in this Southern District of Florida that have been

3     limited by state of purchase.  The Newark case, which was tried

4     in front of Judge Singhal, was limited by state of purchase and

5     we still were able to notify all class members and ascertain the

6     class, that was against FCA.  The Cardenas case that we tried in

7     front of Your Honor was also limited to Florida purchasers and

8     we still were able to notify the class.

9          So I think these are good examples that show that it's

10    ascertainable and that it is feasible to notify the class.

11         MR. YOSHINO:  So, Your Honor, again, the Plaintiffs

12    have the burden of proof on ascertainability and what

13    Mr. Weinshall just said about purchase documents and dealerships

14    and so on and so forth, none of that is in the record proving

15    ascertainability in this case.  The plaintiffs have, we submit,

16    failed to meet their burden of proof.

17         THE COURT:  All right.

18         MR. YOSHINO:  And again, the registration data simply

19    does not show things like total loss, what vehicles were in

20    accidents, or other characteristics that are part of plaintiffs'

21    class definition in this particular case.

22         THE COURT:  Okay.  Thank you.

23         MR. YOSHINO:  My colleague will move on to another

24    issue here.

25         THE COURT:  Okay.  Who?  Let me do this.  How long do

Rough/Oral Argument

1    you think you want to speak?

2              MR. KNAPP:  Not long.

3              THE COURT:  Wow.  That's too good of --

4              MR. KNAPP:  Famous last words.  Five minutes.

5              THE COURT:  Okay.  Come forward if it's five minutes.

6    Because I want -- the Marshals were here late last night and I

7    have to do one other criminal matter.  That's the reason.  I am

8    not going to stop you all.  We are going to take a short recess

9    while I do that.

10             MR. KNAPP:  Sure.  Good morning again, Your Honor.

11   Eric Knapp for MBUSA.

12             Mr. Yoshino was talking earlier about the lack of

13   common proof on lack of presale knowledge and we submit, as

14   you've seen in our briefing, that what distinguishes here from

15   FCA and GM, which you asked for, is also that here there is lack

16   of common class-wide proof as to the existence of a defect in

17   Takata airbag inflators in Mercedes-Benz vehicles, and of

18   course, under the case law we cite in our brief, including

19   Stopinjer (phonetic) versus Toyota Motor Sales, that must be

20   shown at class certification and we submit that plaintiffs have

21   failed to meet their burden there.

22             Different from FCA and GM in particular is the fact

23   that plaintiffs' experts did no analysis or testing of any

24   Takata inflator in a Mercedes-Benz vehicle.  In fact, they have

25   even acknowledged they weren't even aware of the different types

Draft Copy

1    of inflators that might exist in Mercedes-Benz vehicles.

2         And they also go on, these same experts, and we cite

3    their testimony in our briefing and cross-reference other

4    briefing where their own deposition testimony is cited, they

5    also concede there are many factors that must be considered when

6    assessing whether there is a propensity for propellant PSAN

7    degradation over time, and that includes things like the

8    different designs of the different vehicles spanning a --

9         THE COURT:  Isn't that a question of fact though?

10        MR. KNAPP:  Well, no, Your Honor.  We believe it does

11   go to Rule 23, in showing common proof of a class-wide defect it

12   is required that you must show, if it exists, according to

13   Stopinjer and Toyota and other cases, if it exists, it is

14   present in the same way in all class vehicles.  In here they

15   haven't met that burden, we submit, based upon their own

16   experts' testimony and failure to do any analysis or testing.

17        Now, I will say, Your Honor, what plaintiffs have

18   pointed to is that you denied MBUSA's Motion to Strike their two

19   experts, Ranz and Baglini.  Ranz spoke somewhat to MBUSA.

20   Baglini was really a witness as to GM.  But nonetheless, we

21   moved to strike their testimony and plaintiffs say, well, you

22   denied that, so therefore this really has already been decided,

23   but that's just not the case because it's a Motion to Strike

24   where you were looking at qualifications and weight versus

25   admissibility, like issues of credibility.

1    But here the focus is what proof do they have, what

2 common class-wide proof have they presented on the issue of

3 defect, and we submit the record shows that is just absent.  So

4 they then turn towards the recalls themselves, the recall

5 notices if you will, and they say, that there alone, that is per

6 se -- that is evidence of a per se defect in PSAN, but that is

7 just not common class-wide proof of a defect, Your Honor.

8    We believe the record shows that because the notices

9 themselves talk about all the variables that have to be

10 considered and how the recalls were done in an abundance of

11 caution only after the supplier gave notice to the National

12 Highway Traffic Safety Administration.  But we submit, as the

13 case law we cite shows in our briefing, that simply giving a

14 recall, that does not suffice as common class-wide proof of

15 knowledge.

16    So again, Your Honor, we would say that, given the

17 undisputed differences here across all the different

18 Mercedes-Benz vehicles across 20 years, from roadsters to SUVs,

19 all those differences, the failure to conduct any analysis or

20 testing whatsoever, we think plaintiffs have failed to meet

21 their burden on the issue of common class-wide evidence of a

22 defect required under the case law.

23    THE COURT:  All right.  Thank you.

24    MR. PRIETO:  Less than five minutes, Your Honor.

25    THE COURT:  Okay.  Go ahead.

Rough/Oral Argument

40

1      MR. PRIETO:  So, Your Honor, again, a non-controversial

2  issue that the Court already decided.

3      THE COURT:  It's not non-controversial with your

4  opponents, with your new opponents.  Maybe with the Court.  I

5  don't know.

6      MR. PRIETO:  So both our experts, and this is the way

7  you prove commonalty of a defect in these kind of cases, both

8  our experts, James Baglini and Robert Ranz, said these inflators

9  are all defective.  They have the common uniform defect because

10  they have the same ammonium nitrate that degrades over time.

11  Mind you, this ammonium nitrate none of these defendants are

12  using anymore.  Why?  Because it's defective.  They took it off

13  the market as soon as they started degrading and exploding in

14  people's faces.

15      This is what Mr. Ranz said in his report and what he

16  confirmed in his deposition, quote, "In my expert opinion, all

17  of the nondesiccated Takata PSAN inflators equipped in the

18  defendants' automakers' vehicles, including Mercedes-Benz

19  vehicles, are defective and share a common and uniform defect."

20      That is what Mr. Ranz testified in his deposition.

21  That is a quote from his report, and the same thing that

22  Mr. Baglini said as it related to all these inflators.  The

23  Takata direct defect information reports which they sent to

24  NHTSA all say that these inflators, including Mercedes

25  inflators, are defective.

1          Again, that's why they are no longer on the market.

2   They replaced all these inflators, all of them, not certain of

3   them, because they were defective.

4          THE COURT:  If we go to trial and I certify the class,

5   is that going to be your defense?

6          MR. KNAPP:  No evidence of a defect?

7          THE COURT:  Yeah.

8          MR. KNAPP:  It will certainly be one of them for sure.

9          THE COURT:  Is that going to be the big defense?

10          MR. KNAPP:  I would say it's a key component.  I would

11   say it's definitely a key component, sure.

12          THE COURT:  Okay.  So I will be able to see that in the

13   Verdict Form that you are going to propose as well --

14          MR. KNAPP:  Sure, if that's what Your Honor --

15          THE COURT:  -- saying it's defective, non-defective.

16   Okay.

17          MR. KNAPP:  If that's what Your Honor would like.

18          THE COURT:  I am going to interrupt you all to

19   accommodate the Marshals because they stayed here.  Let me do a

20   short sentencing hearing.  That way you can leave your stuff

21   there.  You can stay there or go outside, and then we will bring

22   you back because I suspect others want to speak.  Am I right?

23   So I don't want -- but I have to accommodate them.  So come back

24   in 10 minutes.

25   XXX

1   (I'm skipping about 6 pages)

2            THE COURT:  Let the record reflect I am offering the

3   court reporter a break.

4            Tell the defense lawyers I granted class cert.  I'll

5   submit a written order.

6            THE COURT SECURITY OFFICER:  All rise.

7            THE COURT:  I'm kidding.

8            Who wishes to speak on behalf of the defense who hasn't

9   spoken before?

10           Mr. Yoshino, what do you want to say?

11           MR. YOSHINO:  We just wanted to address the state law

12  claims in a bit of an umbrella and exemplar fashion.  I am not

13  going to march through all of the claims that are remaining,

14  which I think are --

15           THE COURT:  You did that in writing.

16           MR. YOSHINO:  That's correct, Your Honor.

17           THE COURT:  And it was very well written you think,

18  right?  And so do I, right?

19           MR. YOSHINO:  I hope it was persuasive to Your Honor.

20           THE COURT:  Well, it won't be more persuasive by you

21  reading it to me or summarizing.

22           MR. YOSHINO:  I am certainly not planning on doing

23  that, but I am planning on sort of tying it together, hopefully

24  with a little bit of perspective.

25           THE COURT:  All right.  We will let you.

1          MR. YOSHINO:  And we are in a very different position

2    than GM and FCA on these claims.  For starters, there are 15 new

3    claims under 13 different states' laws that have not been

4    analyzed at all.  Significantly, though, MBUSA is distinct

5    because all of the claims against MBUSA lack a proper

6    representative.

7          As one example, representatives Radican and Bridges

8    admitted that they did not view any MBUSA materials in

9    connection with their purchases.  As such, they cannot establish

10   reliance or any relationship with MBUSA, much less the type of

11   special relationship that many of plaintiffs' claims require.

12         THE COURT:  That would take care of Rhode Island and

13   what other state?

14         MR. YOSHINO:  It would take care of really, I think,

15   all of the consumer fraud states if Radican's personal claim

16   is -- if the Court agrees that Radican cannot establish her

17   personal claim because Radican cannot establish reliance.

18         THE COURT:  And that applies to which states?

19         MR. YOSHINO:  I'm sorry.  That would be --

20         THE COURT:  Iowa, Mississippi, Nebraska, Oregon.

21         MR. YOSHINO:  That would be Connecticut -- in addition

22   to Rhode Island, it would be Connecticut, Hawaii, Maine,

23   Nebraska, Oklahoma, Vermont, and the West Virginia CPA claim.

24         THE COURT:  All right.  What else?

25         MR. YOSHINO:  And then Plaintiff Bridges would be the

1    common law claims in North Carolina, Colorado, Utah, Virginia,

2    and Wisconsin.

3         In addition, Your Honor, as to all of the remaining

4    claims against MBUSA, we believe there is no cognizable

5    damages -- as we discussed a little bit earlier, Your Honor had

6    granted summary judgment as to some of the states, had not ruled

7    on other of the states, but we believe that all of the states

8    remaining now should also be out for the same reasons set forth

9    in you summary judgment.

10        THE COURT:  Through summary judgment.

11        MR. YOSHINO:  Well, again, Your Honor, we can address

12   that either --

13        THE COURT:  When do you think you can file a summary

14   judgment motion?  Give me a date --

15        MR. YOSHINO:  So we were --

16        THE COURT:  -- in June.

17        MR. YOSHINO:  We were talking about this a little bit,

18   Your Honor, and given the fact that we have I think 18 remaining

19   states, we would ask for something like July 15th.

20        THE COURT:  Oh my goodness.  Why not June?  Are you

21   going away all of June or what?

22        MR. YOSHINO:  I will be traveling some, unfortunately

23   nothing fun, Your Honor.

24        THE COURT:  But vacation.

25        MR. YOSHINO:  No, no, no, for -- on business for a fair

Rough/Oral Argument

45

1  amount of the month.

2          THE COURT:  On an older case than this one?

3          MR. YOSHINO:  Probably about similar ages.

4          THE COURT:  Really?

5          MR. YOSHINO:  Yeah.  I also think -- so we have 18

6  states, we obviously have some updating of the law to do.  You

7  know, these motions were filed about a year ago or so.

8          THE COURT:  Yeah, but it should be easier now, right?

9          MR. YOSHINO:  Well, I mean, it's correct that Your

10 Honor dismissed a number of the claims.  I think Your Honor also

11 has sharpened some of the issues here for us today.

12         THE COURT:  All right.

13         MR. YOSHINO:  As one example on the damages issue --

14         THE COURT:  Remember how I started a couple of hours

15 ago?  I don't want to know about damages.

16         MR. YOSHINO:  I'm sorry.  Well, as one example on --

17 this is, sorry, different than the damages model issue.

18         THE COURT:  Oh, okay.

19         MR. YOSHINO:  I am talking about the inability of the

20 particular plaintiff to establish the type of damage that is at

21 issue in a given state, and I think if you look at the GM

22 ignition swith case, the Oklahoma CPA aligns Oklahoma with the

23 states that have already been dismissed from the case.  Oklahoma

24 also requires manifestation of the alleged defect for any

25 recovery under that state's law.

1          And in class certification terms again, what that would

2    mean is that these proposed state law classes have no proper

3    representative and therefore can't be certified.

4          To go through just a couple of examples for you, for

5    Vermont, right, Plaintiff Radican is the class representative.

6    She is not an adequate or typical representative.  As we have

7    discussed, her personal claim is time barred.  She purchased all

8    the way back on October 8, 2007.

9          THE COURT:  Mr. Prieto, would you consider -- or

10   whoever, Mr. Weinshall, whoever wants to talk about this.

11   Whenever we have discussions about a plaintiff eventually, it

12   may be too late, I say, why not just change the plaintiff if

13   that's the issue?  And I know it must be hard to find plaintiff

14   in Vermont, I don't know, or Rhode Island, but why not just do

15   that and then we resolve that issue?

16         MR. WEINSHALL:  We could do that, Your Honor, if that's

17   the holdup for Rhode Island.  I would --

18         THE COURT:  But what's the difficulty in doing that?

19   There's a lot of -- it's a big class, right?

20         MR. WEINSHALL:  Yes.

21         THE COURT:  And if you did that, what would be the

22   harm?

23         MR. WEINSHALL:  No harm.

24         MR. PRIETO:  Your Honor, let me just say this:  Given

25   the passage of time, finding class representatives has become

Rough/Oral Argument

47

```
 1  more and more difficult over time just because time has passed.

 2  So that's, you know -- and we are not necessarily conceding that

 3  he is right and we are not, but the only thing I would say is

 4  that obviously the Court can always substitute a class rep, but

 5  sometimes it's not that easy finding a class rep simply because

 6  of the passage of time of this --

 7            THE COURT:  Have you looked?

 8            MR. PRIETO:  No, because this is the first time that we

 9  have considered this issue because we don't believe that he's

10  right.

11            THE COURT:  All right.  I understand.

12            MR. YOSHINO:  Your Honor, though, I would point out, as

13  you have already today, that this is a 2015 case, that the

14  plaintiffs have had multiple bites at the apple.

15            THE COURT:  Well, with different --

16            MR. YOSHINO:  With different representatives.

17            THE COURT:  But different defendants.

18            MR. YOSHINO:  Different complaints and we believe --

19            THE COURT:  I have been the cause of the delay and the

20  Court of Appeals a little bit.

21            MR. YOSHINO:  I am not saying that.  What I am saying

22  is that the case is very well advanced now, that the plaintiffs

23  have had multiple different chances to keep claims in the case,

24  and we are now talking about a plaintiff who is time barred, and

25  actually even under the GM and FCA class definitions, Plaintiff
```

 1  Radican would be out because those class definitions don't cover
 2  anyone who purchased prior to July 10, 2009.
 3        The 2007 purchase is also nine years prior to the
 4  recall --
 5        THE COURT:  All right.
 6        MR. YOSHINO:  -- and any involvement of MBUSA in the
 7  case.  Second, Radican admitted that she did not review any
 8  advertisements or marketing materials before --
 9        THE COURT:  You told me that already.
10        MR. YOSHINO:  Yeah.  And then third, Radican's personal
11  claim allows only for recovery of cost of repair damages, and
12  because of the recall, Radican has no such damages and thus has
13  no personal claim, and therefore, like Plaintiff Lodge in the GM
14  order, cannot represent others.
15        In addition, there are a few individualized issues in
16  Vermont requiring denial of plaintiffs' motion as to that state.
17        So first of all, in Vermont each claimant must purchase
18  for personal, household, or family use.  Plaintiffs have not
19  offered a methodology to prove that they would be able to narrow
20  the group to people that meet that prerequisite equity for a
21  claim.
22        Plaintiffs must prove causation and injury to recover.
23  Proof of causation is lacking to be individualized in any event.
24        Plaintiffs cite no authority proving that Vermont would
25  allow for a presumption of reliance or causation.  They only

1    claim they don't need to prove reliance because they have the

2    option of proving damages.

3          As a preliminary matter, the lone case the plaintiffs

4    cite, the Dernier case, D-e-r-n-i-e-r, is about whether

5    statutory standing is properly alleged.  It's not a class action

6    and that case does not discuss the presumption of reliance, but

7    regardless, or in addition, the problem for plaintiffs in

8    Vermont is that they have not met their burden of proof as to

9    either option at this point, either reliance or the individual

10   damage claim of Radican.

11         Virginia is another example that I wanted to take you

12   through because that is a state involving Plaintiff Bridges.  As

13   I mentioned, Bridges also did not rely on any advertising or

14   marketing materials at the time she was researching her

15   purchase, and she also could not prove cognizable damages

16   because her personal claims are limited to cost of repair and

17   fully addressed by the recall.

18         In addition, Virginia also does not allow for

19   presumption of reliance.  The lone case that the plaintiffs cite

20   on this point, Chisolm versus TranSouth Financial Corporation,

21   specifically says that the Virginia rule is, quote, "Not so much

22   a showing of presumed reliance as it is a showing of

23   demonstrated reliance via circumstantial proof," end quote.

24   That is the Chisolm case, 194 FRD 538, at 560, Note 24.

25         Plaintiff did not offer any proof of reliance even via

1  circumstantial proof, and as discussed, the named plaintiff for

2  this claim, that is representative Bridges, admits that she did

3  not rely on anything from MBUSA.

4          Mr. Wilkerson will address the Oregon law claims.

5          THE COURT:  All right.  Mr. Wilkerson, you've got the

6  floor.  Thank you, Mr. Yoshino and Mr. Knapp as well.

7          MR. WILKERSON:  Good morning, Judge.  I just was --

8          THE COURT:  You can raise that lectern.

9          MR. WILKERSON:  I don't know if the --

10         THE COURT:  Not the mic.

11         MR. WILKERSON:  Oh, the lectern itself.

12         THE COURT:  Yeah, we do that.

13         MR. WILKERSON:  That's service.

14         THE COURT:  That way the next fellow is going to have

15  to lower it, whoever that is.  Go ahead.

16         MR. WILKERSON:  I just want to talk briefly about

17  Oregon and I think -- Oregon is not a state that's got a

18  plaintiff that's attempting to represent other states as well.

19  It's a stand-alone state that Mr. Phillips is the class rep on.

20  But I think it's a good example of the necessity of looking

21  closely at the adequacy of these class representatives, which

22  are issues that we talked about as to Radican and Bridges, but

23  Oregon -- Phillips has some real issues being an adequate class

24  representative that are sort of separate from some of the other

25  reliance issues that we discussed as to Oregon that I just want

1  to highlight here.

2       So Mr. Phillips, first of all, his statutory claim is

3  time barred and it's not close.  There's a one-year requirement

4  to file after the discovery of the unlawful method or practice

5  in Oregon.  Mr. Phillips received a recall notice in May 2016,

6  and he did not file his claims until March 2018, so almost two

7  years later.  That is not an issue that can be resolved, as Your

8  Honor alluded to before, by substituting in another class

9  representative because no one will have brought a claim within a

10  year.

11       It's also -- just to sort of allude back to what you

12  were talking about before, I think substituting class

13  representatives at all is going to be very difficult under China

14  Agritech because they are going to have serious statute of

15  limitations problems at this point.

16       The other thing about Mr. Phillips is that he is a used

17  car purchaser.  He bought his car over Craig's List, he had no

18  transactional relationship with Mercedes-Benz USA at all, and

19  this creates also serious adequacy problems, and that's

20  independent of whether there's a reliance presumption in Oregon,

21  which there isn't for the reasons that we have briefed, but even

22  if there were, that presumption would not be irrebuttable and

23  it's plainly rebutted as to Mr. Phillips.  Mr. Phillips did not

24  see any MBUSA materials.  He bought his car from a third party

25  he found on Craig's List.

1          It also would defeat the special relationship

2    requirement that is required under Oregon law.  Again, it's not

3    just a merits issue, this is an issue as to adequacy of this

4    class rep.  That is a legal requirement, that he -- even if

5    other class members could meet, he cannot, so he can't be a

6    typical or adequate rep here.

7          There's also actually a transactional relationship

8    requirement for both the fraud and the consumer protection

9    claims under Oregon.  We cite cases on that in our brief, the

10   Santoro case and the Federal Bank and Trust case.

11         Lastly, and I know we have gone over this somewhat ad

12   nauseam, but there are serious damages issues, that this

13   plaintiff doesn't have damages that would qualify under Oregon

14   law for reasons we have briefed.

15         So like, you know, like Lodge, you know, because

16   Mr. Phillips doesn't have his own claim there's no way he can be

17   an adequate rep for a class made up of folks in Oregon even if

18   there were ways for that class to proceed.

19         THE COURT:  All right.

20         MR. WILKERSON:  Thank you.

21         THE COURT:  What do you want to say about Phillips?

22         MR. WEINSHALL:  Phillips is the Oregon rep?

23         THE COURT:  Oh, yeah.

24         MR. WEINSHALL:  So most of the issues that Mercedes has

25   raised are appropriate for summary judgment, not necessarily

Rough/Oral Argument

1    class cert in terms of they are arguing that he has no claim at

2    all, not that he is not an adequate representative for other

3    purchasers in Oregon.  I think that applies --

4         THE COURT:  Can someone who doesn't have his own claim

5    be a representative of others?

6         MR. WEINSHALL:  No, but --

7         THE COURT:  Well, that's what they are saying, they

8    just are more eloquent than I am, but that's what they are

9    saying.

10        MR. WEINSHALL:  But if Your Honor is going to decide

11   summary judgment, which I think is the plan, then you can decide

12   that at summary judgment, does he have a claim or not.  If he

13   does, he survives summary judgment and that defeats their

14   arguments that he doesn't have a claim and he is not adequate to

15   represent the class.

16        THE COURT:  But if he doesn't, then he is out and

17   Oregon is out.

18        MR. WEINSHALL:  Correct.

19        THE COURT:  Okay.

20        MR. WEINSHALL:  If he doesn't survive --

21        THE COURT:  So I should do the summary judgment first.

22        MR. WEINSHALL:  Yes, Your Honor.

23        THE COURT:  And that would simplify the class cert.

24        MR. WEINSHALL:  Yes, Your Honor.

25        THE COURT:  You agree with that.

Rough/Oral Argument

1       MR. WILKERSON:  I think that is a fine approach to

2  take.  I don't agree with the notion, Your Honor, that you have

3  to do that.  This is an appropriate adequacy argument and you

4  see this sort of thing happen all the time.

5       THE COURT:  I got it.  It might be easier and that way

6  we can deal with what's left.  All right.  I think it's been

7  helpful.

8       MR. WILKERSON:  Okay.

9       THE COURT:  And you can do that summary judgment by mid

10 June because it's so simple?

11      MR. WILKERSON:  I am going to defer to Mr. Yoshino and

12 suggest July 15th.

13      THE COURT:  He is gone for a whole month.

14      MR. WILKERSON:  Right, so he is going to leave it on my

15 plate if --

16      THE COURT:  You got it, at least as to Phillips and

17 Oregon.  You can divide up the states, I mean, however you do

18 it.  All right.  It's been helpful.  Thank you.

19      MR. WILKERSON:  Thank you, Your Honor.

20      THE COURT:  Who else is going to speak?  You're so far

21 there removed from -- you're going to lower that lectern now.

22      MR. WEINSHALL:  Your Honor, before we switch to GM,

23 because I think Ms. Smith is going to discuss GM, not

24 Mercedes --

25      THE COURT:  I would assume so, but I don't know.  She

Rough/Oral Argument

55

 1    has waited long enough, I will let her talk about any car

 2    manufacturer.

 3            MR. WEINSHALL:  If I could just respond to just a few

 4    of the points regarding MBUSA quickly.

 5            THE COURT:  Because you haven't done it adequately in

 6    writing.

 7            MR. WEINSHALL:  No.  I was actually just going to say

 8    most of this is in writing and --

 9            THE COURT:  Then I have read it and I'll read it again.

10            MR. WEINSHALL:  Agreed.  And I think all of the issues

11    in terms of reliance and authorized dealerships, those are issue

12    regarding summary judgment.

13            THE COURT:  I know.  I got it.  If I don't have that by

14    now, then you guys are in trouble.

15            MR. WEINSHALL:  You got it.

16            THE COURT:  Okay.  Yes.

17            MS. SMITH:  Good morning, Your Honor.  I'll start this,

18    this is Renee Smith on behalf of General Motors.  I do want to

19    address a couple of things that are specific to General Motors.

20            First, I am going to actually agree with Mr. Weinshall

21    in that I do not believe the ascertainability issues are

22    distinct for GM or FCA or Mercedes.  We raised those issues in

23    our opening briefs.  Your Honor disagreed with them, but I just

24    want to make the record clear those issues are prevalent also

25    for General Motors.

1    And I believe Mr. Weinshall or Mr. Prieto noted that

2    General Motors had provided some VIN, vehicle information

3    number, data for class notice purposes, and just to be clear, us

4    providing that information does not show there is no

5    ascertainability issue.  It shows there is an ascertainability

6    issue because it's a hot mess and we, of course, leave it in

7    plaintiffs' court to propose something where they could actually

8    do something that is ascertainable, but we think it is a problem

9    not only for Mercedes, but also for FCA and GM.

10    And then at the beginning of the argument one of the

11    counsel raised I think the Court's order in August 2023, where

12    following some of the class certification decisions the Court

13    did issue an order, and it's Docket 4690 --

14    THE COURT:  4690.

15    MS. SMITH:  It seems like only yesterday.  -- where

16    because the claims and the parties had been significantly

17    narrowed either through summary judgment or dismissals, saying

18    once all of the class certification briefing and rulings had

19    been done, the Court would issue an order where the parties

20    could rebrief the narrow summary judgment motions.

21    So I know we have been talking about Mercedes here, but

22    General Motors does still have one remaining plaintiff, it's a

23    Louisiana plaintiff, Tarus Sibley (phonetic), and Your Honor

24    certified a Louisiana class, but we very much look forward to

25    briefing the summary judgment on Mr. Sibley's claim because it

Rough/Oral Argument

57

1   is going to raise the issue --

2           THE COURT:  You can do that by mid June?

3           MS. SMITH:  I am getting in trouble with my brothers

4   over here.  I think I could do it by mid June, but we just have

5   one state and one plaintiff, so we are probably in a different

6   position than them.

7           THE COURT:  No, they have a lot more than one person.

8   That takes care of that.

9           MS. SMITH:  There you go.  But I think we can do it at

10  whatever time the Court wants it to be done, but I do think it

11  is going to highlight why what I think is the proposed approach

12  on the table to do summary judgment first makes sense, because

13  there are at least five different reasons why this class rep

14  does not have a claim, and we now have a certified class that I

15  think is going to be subject, hopefully, to decertification and

16  raises many of these issues, statute of limitations, things like

17  that.  I agree with Mr. Wilkerson --

18          THE COURT:  Which class is going to be subject to it?

19          MS. SMITH:  So this is the Louisiana class.  It's an

20  implied warranty claim for redhibitory defect, something like

21  that, one of those Louisiana claims.  But the claimant --

22  Louisiana has a one-year statute of limitations period and this

23  claimant has statute of limitations issues.  He has got issues

24  about the bankruptcy sale order that I won't go into now.

25          But I just want to emphasize that I do think that

1   summary judgment is the way to go, and depending on how the

2   Court comes out on that, we may have to deal with what happens

3   with the class in that respect, so we very much look forward to

4   bringing those issues to the Court's attention.

5           THE COURT:  Thank you, Ms. Smith.  Someone rose from

6   the back, from the Bar.

7           MR. GRAHAM:  Good morning, Your Honor.  Dan Graham on

8   behalf of FCA US, LLC.  I will very brief.  We also agree that

9   the postponed or mooted motions for summary judgment back in

10  August could be and should be restarted, and we also agree with

11  MBUSA's timing.

12          We have six states, so a little bit more than GM and a

13  little bit less than MBUSA.  We have also a certification issue.

14  We have got North Carolina certified and four tag-along states.

15  The tag-along states are those states that did not have a named

16  plaintiff, so our motions for summary judgment would need to be

17  updated.  There has been about 14, 15 months since our reply

18  brief was filed.  There is a whole host of new cases on

19  prudential mootness, lack of damages, that we would supplement

20  our brief with.

21          THE COURT:  What do you mean, a whole set of new cases?

22          MR. GRAHAM:  There has been a lot of additional Court

23  decisions determining that after a NHTSA recall, the plaintiffs

24  who are seeking damages would be getting a windfall since their

25  vehicle was repaired or --

Rough/Oral Argument

59

1          THE COURT:  They are summary judgment cases?

2          MR. GRAHAM:  Summary judgment cases, there are some on

3   Motion to Dismiss, including in Georgia.  So what we would do is

4   supplement our briefs, and July 15th sounds like a very good

5   date to do that.

6          THE COURT:  I think I said June 15th.

7          MR. GRAHAM:  I think Your Honor will choose whatever

8   date the Court --

9          THE COURT:  I don't want to disturb people's vacations.

10         MR. GRAHAM:  -- deems appropriate.  But we also

11  provided some VIN information for our North Carolina class to

12  plaintiffs' counsel.  We agree with GM's comments on issues

13  related to the VINs and issues related to the class reps, and we

14  also have the same sale order issue, vehicles that were

15  manufactured prior to June of 2009 are also going to have a

16  problem.

17         So we think that summary judgment is the appropriate

18  way to go.  Your Honor did a very detailed review for our

19  Georgia plaintiffs, we have two, in its motion denying class

20  certification for Georgia.

21         THE COURT:  The order, the order.  You guys keep saying

22  motions.  Maybe I should leave.

23         MR. GRAHAM:  So our motion and your order.  You know,

24  Your Honor did analyze all the lack of reliance issues for our

25  two Georgia plaintiffs, which really does tee this up for

1    summary judgment.  Thank you very much.

2              THE COURT:  Okay.

3              MR. WEINSHALL:  I would just note, Your Honor, because

4    FCA wanted to flag the issue, prudential mootness does not apply

5    certainly in the Eleventh Circuit, but the Southern District of

6    Florida has a number of decisions rejecting that type of claim

7    and that defense that we have cited in our summary judgment

8    papers.

9              There's not been a single case from the Eleventh

10   Circuit, not a single case from the Southern District of Florida

11   that has embraced that concept for a damages claim.  It's for an

12   equitable claim, that's where the idea comes from, is that if

13   you're seeking injunctive relief and that relief is already

14   granted, you can't in equity come seek that from a Court.  No

15   Court in the Southern District of Florida has embraced that; a

16   number have expressly rejected it.

17             THE COURT:  Well, you'll write about it and I'll read

18   about it.  Okay.

19             MR. GRAHAM:  Thank you.

20             THE COURT:  And hopefully write about it sometime.

21             Okay.  Who else?  No one else needs to speak from

22   either side?  This is it, right?

23             So you want a schedule, right?  And I think I am going

24   to set a deadline to file any motion for summary judgment that

25   is appropriate.  I want to be reasonable with -- some people

Rough/Oral Argument

1  take vacations, some people have other priorities and I

2  understand, but that way it forces me to rule on it this time

3  quickly.  Otherwise, we have got to come to an end with this, we

4  really do.  And it's my fault primarily, but this is it.

5       Now, any motion for summary judgment must be filed no

6  later than July 12th at noon, Friday, July 12th at noon.  Any

7  response will be -- since a lot of this is repeat, can be done

8  quickly, by July 26th, two weeks later, because you know what

9  the issues are.  Look at that.

10      MR. WEINSHALL:  Well, Your Honor --

11      THE COURT:  But you know what they are going to do.

12 They have done it already.

13      MR. WEINSHALL:  It sounds like they are going to make

14 some new arguments that --

15      THE COURT:  So you only have to respond to the new

16 arguments and then the old arguments are the same.

17      MR. WEINSHALL:  Can we have maybe one more week at

18 least?

19      MR. PRIETO:  Your Honor, we are also responding to

20 three defendants and they are simply -- you know, each of them

21 are making their own individual arguments about -- no, I

22 understand, but we need a little bit more time.

23      THE COURT:  Okay.  I could see July 26th is probably

24 not a good day anyway for some people I would think.  Some of

25 you know what I'm talking about, some don't.  August 2nd you

1    want to do.

2            MR. WEINSHALL:  Thank you, Your Honor.

3            MR. PRIETO:  Thank you, sir.

4            THE COURT:  August 2nd.  I don't think I need replies

5    because the replies is just a regurgitation many times.

6            MS. SMITH:  Your Honor, may I request -- what if we did

7    a very short reply, such as no more than five pages, to avoid

8    moving later for need to file a reply.

9            THE COURT:  I like normally replies because, I will

10   confess, that's what I first read, is the reply.  Then usually

11   the motion is a cover your behind motion where everything is

12   mentioned, but you want a reply.  Okay.  By August 9th any

13   reply.

14           Then what my hope is that -- by the end of August is

15   what my hope is, is that I will rule on the summary judgment and

16   maybe the class cert.  I'll be able to blend that.  That's my

17   goal.  But that means that if I'm taking that long to do that, I

18   probably -- if I grant class cert we probably can't go to trial

19   in September.  Maybe we will have a new judge by then, another

20   one, since it took four years for my seat to be filled, but I

21   think -- I don't even know whose seat is still -- but there is

22   one vacancy.  Who is it?

23           THE LAW CLERK:  Judge Scola.

24           THE COURT:  Judge Scola.  He could never be replaced,

25   but he probably doesn't care if he doesn't get replaced.  He is

Rough/Oral Argument

63

1   a great judge.  I always said he was probably, and I said this

2   publicly, the most qualified individual to be a Federal Judge.

3   We can put that in writing, he'll probably pay for the

4   transcript.  The reason is he had been a private practitioner, a

5   civil judge, a criminal judge, a criminal practitioner, ran his

6   own business, a State judge in every division, and he actually

7   had all the qualifications that anyone would have, but he is

8   very happy to be senior.  He didn't hesitate at all like I did.

9   I hesitated for several years.

10          MR. PRIETO:  Your Honor, do you think you'll have a

11   hearing on the summary judgment?

12          THE COURT:  I don't know.  I don't know because -- you

13   know, I do like hearings because I think it focuses the issues,

14   but all the things you've brought up already, I'm thinking about

15   it, and I'm going to start even writing about it.

16          I'll give you this one sore story so you'll know that

17   writing helps.  I think it was -- I don't care if we're on -- be

18   off the record.

19       (There was a brief discussion off the record.)

20          THE COURT:  Back on the record.  So will I have oral

21   argument?  I don't know.  I don't know, but if I have oral

22   argument, I'll have it in September and -- but I'm going to rule

23   quickly, with the hope that if I certify the class and we go to

24   trial it will be in the fall, in the early fall.

25          It's going to be at a rapid pace and the way we are

Rough/Oral Argument

```
 1    going to do the trial will be, we have done it before, with
 2    different states, different state laws, the Verdict Forms and --
 3    that you want for each jury to go through it.  That's how we are
 4    going to do it.
 5           Now that I have shocked you, I have to impose that
 6    limit upon myself and upon you because, if not, it will be next
 7    year and this thing keeps on getting -- we are going to have
 8    some plaintiffs forget about any statute of limitations in one
 9    year.  They may not be around.
10           You rose for some reason.
11           MR. WEINSHALL:  Sorry, Your Honor, I just was, since
12    you mentioned that --
13           THE COURT:  The fall.
14           MR. WEINSHALL:  No, no, that you might start writing
15    based on some of the issues that you --
16           THE COURT:  I do that on other occasions, I have just
17    never confessed.
18           MR. WEINSHALL:  It makes sense.  A lot of the issues
19    that MBUSA in particular raised were not in the supplemental
20    brief, but --
21           THE COURT:  Did you take notes, too?  And they even
22    mentioned cases and all of that.
23           MR. WEINSHALL:  Yeah, but a lot of the issues, like the
24    timeliness, for example, of certain plaintiffs, that might be
25    addressed in some of the prior summary judgment briefings, so I
```

Draft Copy

1  would just --

2          THE COURT:  That was or was not?

3          MR. WEINSHALL:  I don't recall some of that briefing,

4  but to the extent it was litigated before, that's where our

5  response would be because this wasn't raised -- for example, the

6  timeliness of plaintiff Radican's claim was not raised in the

7  supplemental briefing, so we didn't respond to it there.

8          THE COURT:  All right.

9          MR. WEINSHALL:  But to the extent that they previously

10  moved for summary judgment as to plaintiff Radican's claim on

11  timeliness, we would have responded in our prior response of

12  summary judgment.  I would just encourage the Court to -- for

13  our response to look at that docket entry.

14          THE COURT:  To look at what docket entry?

15          MR. PRIETO:  Let me be more specific.

16          THE COURT:  You want me to read the old motions.

17  Obviously that's what I'm going to do again.

18          MR. PRIETO:  Right, because obviously they have raised

19  certain arguments that were not raised in the supplement you

20  asked us to file.  My concern is that you took notes when they

21  were arguing stuff that they argued months ago and, you know,

22  that were not part of the supplement as to why Mercedes was

23  distinct from General Motors and FCA.

24          So would it be help the Court if we identified the

25  prior pleadings where we responded to those arguments?

 1          THE COURT:  Sure.

 2          MR. PRIETO:  The docket is pretty heavy.  We could

 3   actually do it jointly, these are the motions for summary

 4   judgment that have been pending and the responses, because I

 5   don't want the Court to start writing when it only heard one

 6   version of the arguments based on pleadings that were filed

 7   months ago and that really were not at issue during today's

 8   hearing because the focus of today's hearing was why are you

 9   different than General Motors and FCA.

10          THE COURT:  Well, that's true, but there are other

11   issues now, right?

12          MR. PRIETO:  There are other issues now.

13          THE COURT:  That I haven't ruled as to these

14   defendants.

15          MR. PRIETO:  That is correct.  So all I'm saying is,

16   would it help the Court if we identified -- we can it for

17   ourselves, they can do it for themselves, simply the pleadings

18   that have been filed in a close to 5,000, you know, docket entry

19   case that could help the Court.

20          THE COURT:  Well, obviously that would help, but you

21   know what would help better is to just tell me what it is that

22   you said and any new cases, as opposed to telling me, look at

23   docket entry 4690.  Okay.  We can look at the entry 4690.  It's

24   probably a very thick -- that was the last thing you mentioned.

25          Why not put it in a paragraph form?  If you want to

1  help me, why don't you just say, this is how we would respond to

2  their arguments about timeliness, things that are time barred.

3  I know it's related to adequacy and the argument by the

4  plaintiff was, you know what, that's summary judgment, that's

5  summary judgment, that's summary judgment, but it does link it

6  to class representation.

7         MR. PRIETO:  Understood.  Again, Your Honor, our

8  concern is --

9         THE COURT:  You know what you could do is, you could

10  say, you know what, we don't care about Vermont and Rhode Island

11  anyway.  They are little states anyway.  We care about the big

12  primary states.  You know what I mean.  And you say we are

13  focused on this, on these plaintiffs.  I don't know.  I'm not

14  mediating the case or anything.  If you want to help me, that

15  would help me.  Just tell me in writing.  You want to submit a

16  summary pleading before?

17         MR. PRIETO:  Well, there's two different things, right?

18  There is the briefing of the motions for summary judgment, which

19  we are going to do, number one.  Number two, the only point that

20  I wanted to make is they raised certain arguments here --

21         THE COURT:  They did.

22         MR. PRIETO:  -- that were made months ago.

23         THE COURT:  Yes.

24         MR. PRIETO:  And not necessarily the arguments that you

25  wanted, which is how -- I understand.  It's fine.  All I'm

Rough/Oral Argument

1    saying is, when the Court said I am going to start writing based

2    on what they argued, I want to make sure that the Court also

3    considers the arguments that we made at the time that they made

4    those same arguments.

5         THE COURT:  You want to file something that would tell

6    me we have already discussed this, you've considered this in the

7    past, as you have in docket entry 5,000 something, and you can

8    summarize it in two or three paragraphs and put in parentheses,

9    as we stated in docket entry so-and-so.  You can do that.

10        By when do you want to do that?  But you don't want to

11   do that.  You want to wait until they file their motion and then

12   do that.

13        MR. PRIETO:  No, no.  Like I said, two different

14   things.  When the Court said I already started writing based on

15   what they said --

16        THE COURT:  I'm not going to do it today.

17        MR. PRIETO:  I know, but that's not -- the issue is, I

18   don't want the Court to write based on what they said, which was

19   not part of today's hearing, but they eventually made those

20   arguments.

21        THE COURT:  When can you submit that, that is

22   reasonable to keep families together and vacations and other

23   judges?

24        MR. YOSHINO:  Your Honor --

25        MS. SMITH:  Your Honor --

1          THE COURT:  Hold on.  Let me deal with them first.

2     Divide and conquer.

3          MR. PRIETO:  We would file something by next Wednesday

4     that simply addresses those arguments that they made --

5          THE COURT:  That went beyond how different are we from

6     what you did before.

7          MR. PRIETO:  That is correct.  That's all we're going

8     to do.

9          MR. YOSHINO:  Your Honor, I would make two points about

10    this.  So first of all, the inadequacy and typicality points

11    that we raised today are in our opposition to the class

12    certification motion that was pending.  So plaintiffs already

13    had --

14         THE COURT:  I got it.  He is more worried about summary

15    judgment now.

16         MR. YOSHINO:  But I am saying that these are -- the

17    points that we made are inadequacy and typicality points and

18    they are in the pending class certification opposition where

19    plaintiffs do have two briefs.  I mean --

20         THE COURT:  Do you want to write something, too?

21         MR. YOSHINO:  What I would submit --

22         THE COURT:  Or you don't?

23         MR. YOSHINO:  -- is that we are dealing with 18 states

24    and I think 23 claims, or something of that nature, so --

25         THE COURT:  How do you all divide up the stuff?

Rough/Oral Argument

70

 1          MR. KNAPP:  Draw straws.

 2          MR. YOSHINO:  Yeah.  But, you know, I think given the

 3   fact that we are dealing with so many states, we would perhaps

 4   ask for 40 pages in the summary judgment motion.

 5          THE COURT:  Do you think some of your points are

 6   stronger for certain plaintiffs and certain states?

 7          MR. YOSHINO:  Well, I mean --

 8          THE COURT:  You won't even yield that?  You don't even

 9   think your case is stronger in certain places with certain

10   plaintiffs?

11          MR. YOSHINO:  I mean, I think that we are entitled to

12   summary judgment on all of them, Your Honor.

13          THE COURT:  I know, you are not giving up anything.

14          MR. YOSHINO:  Sure.

15          THE COURT:  Some are stronger than others.

16          MR. YOSHINO:  I think the arguments are different as

17   to the --

18          THE COURT:  But they are not stronger in certain

19   places.

20          MR. YOSHINO:  I mean --

21          THE COURT:  They are all the same.

22          MR. YOSHINO:  There are more arguments for some of the

23   plaintiffs.  That would be maybe a way of saying it.

24          THE COURT:  More arguments, all of equal strength.

25   Okay.  All right.  And you have made them already.

Rough/Oral Argument

 1              MR. YOSHINO:  Well, Your Honor --

 2              THE COURT:  You haven't made them.

 3              MR. YOSHINO:  Sorry.  Excuse me.

 4              THE COURT:  See, what -- you want to be able to respond

 5    to what they file next week?

 6              MR. YOSHINO:  I think it would be sufficient for us to

 7    get an extension of the page limits on our motion.

 8              THE COURT:  Of the page limits.

 9              MR. YOSHINO:  Yes, correct.  That's what I am asking

10    for.

11              THE COURT:  That's a different issue.

12              MR. YOSHINO:  Yes.

13              THE COURT:  Okay.  I mean, that's probably reasonable

14    unless you would divide it up.  If you wanted to divide it --

15    see, I think -- what I was getting to is, if I could corner you

16    into telling me these are our strong arguments, they are all

17    strong, but these are the strongest arguments, these are the

18    stronger arguments, and these are the strong arguments based

19    upon what you've done before.

20              You divide it up like that, that would help me begin

21    thinking and writing about what you perceive to be the strongest

22    arguments, but if you are telling me they are all strong, Judge,

23    they are all strong -- but one is stronger than the other, don't

24    you think?

25              MR. YOSHINO:  So --

Rough/Oral Argument

1        THE COURT:  Not every state is the same, or if you can

2  do it by state, then I can concentrate on the states that are --

3        MR. YOSHINO:  Certainly not every state is the same.

4  So just to ask I guess --

5        THE COURT:  You're better off in some states than

6  others, right?

7        MR. YOSHINO:  I'm sorry?

8        THE COURT:  You're better off as a defendant in some

9  states than others based upon the powerful interest with the

10  State Legislatures.

11        MR. YOSHINO:  We certainly have more arguments as to

12  some states than others, but is Your Honor proposing that we

13  sort of phase the briefing in some way or another?

14        THE COURT:  No.  If you want to divide it up among

15  yourselves, then I give you a deadline for certain things that

16  is shorter but, you know, I don't want to manage your --

17        MR. YOSHINO:  I think it is probably easier for us to

18  do one brief because it will also help us to, you know, perhaps

19  state the point more fully as to some state or some plaintiff,

20  and then summarize it as to other states and other plaintiffs.

21  I think that would result in Your Honor having less paper.

22        THE COURT:  You'd want no page limitation.

23        MR. YOSHINO:  No, Your Honor, I think 40 -- we would

24  request 40 at this point.

25        THE COURT:  And you have no problem with that, the

```
 1  plaintiffs?
 2            MR. PRIETO:  As long as we get the equal --
 3            THE COURT:  Of course you get 40, equal everything.
 4            MR. PRIETO:  40/40.  And the reply is?
 5            THE COURT:  Well, we haven't even gotten to that
 6  because someone suggested five pages.
 7            MS. SMITH:  I'm sorry.
 8            MR. YOSHINO:  Your Honor, we do have a few more claims
 9  than GM at issue.
10            THE COURT:  For a reply.
11            MR. YOSHINO:  Just in general we have a few more claims
12  than GM does.
13            MS. SMITH:  Yes.
14            MR. YOSHINO:  I suppose we'd ask for 20 on the reply.
15            THE COURT:  Sure.  See, that's when -- the only time I
16  regret not being an appellate judge, pages, lines, and all of
17  that, but we will do it.  Do it however you want.
18            So do you want to file something?  You feel like
19  something was presented that was a surprise to you.
20            MR. PRIETO:  Sure.
21            THE COURT:  And you want to do that by next Wednesday?
22            MR. PRIETO:  Next Wednesday.
23            THE COURT:  Not very long.
24            MR. PRIETO:  It's really to point out what we said
25  previously on these particular topics.
```

Rough/Oral Argument

1      THE COURT:  Okay.  And you can point out where you said

2  it before.

3      MR. PRIETO:  That's what we're going to do.

4      THE COURT:  And why it's different.  Then, if you do

5  that by Wednesday and your opponents want to respond to that

6  summary, without giving up any rights to raise anything on

7  summary judgment, they can do it a week later.  How is that?

8  You don't have to if you don't want to.

9      MS. SMITH:  Your Honor, may I just raise a point of

10  clarification?  Are plaintiffs seeking to do this kind of

11  preview summary --

12      MR. PRIETO:  No.

13      MS. SMITH:  -- with respect --

14      THE COURT:  See what you presented.

15      MS. SMITH:  -- with respect to the Mercedes issues?  I

16  am a little confused as to what this is.  If it has nothing to

17  do with GM I will be quiet.

18      MR. PRIETO:  Only Mercedes.

19      THE COURT:  There you go.  You can sit down before you

20  get into trouble.  General Motors will say nothing.  Okay.

21      MR. PRIETO:  Your Honor --

22      THE COURT:  Have you got it?

23      MR. PRIETO:  Yes.  Would Ms. Pastor be able to give us

24  a transcript by week's end?

25      THE COURT:  I don't know.  If you are nice to her and

Rough/Oral Argument

```
 1    you do things on an expedited basis -- I think she charges more
 2    when it's expedited.
 3         Let the record reflect that I don't have the rear view
 4    mirror that I'd like, but I can even recognize facial
 5    recognition from the back just by the move of her shoulders and
 6    the head.  Of this whole thing in the morning?
 7         MR. PRIETO:  Even if it's a rough -- we just want to
 8    identify, so we are efficient, the particular issues that were
 9    raised.
10         THE COURT:  We are off the record.
11      (There was a brief discussion off the record.)
12         THE COURT:  You want to do something -- I'll tell you
13    what -- you want to respond to new items that were responded --
14    that were addressed here in court, and I'll let you do that, not
15    by next Wednesday, but I'll give you more time.
16         When do you come back from your cruise?  Then we have
17    the 4th of July.
18         Do it by July 12th -- no, by June 14th.  June 14th I
19    meant.  File whatever you want by June 14th.  Okay?
20         MR. PRIETO:  Understood.
21         THE COURT:  And then by June 14th -- and you'll file
22    supplemental briefing and the defendants, whichever defendant
23    wants to file something, you don't have to file anything, you
24    don't give up the right to file your motion for summary
25    judgment, but if you want to do a preliminary attack after the
```

1  14th, we will let you do that by June 28th.  Okay?

2         That means I won't write anything -- I caused this in

3  the first place by blabbing too much -- until July.

4         MR. PRIETO:  We don't get a reply like they do?

5         THE COURT:  A reply.

6         MR. PRIETO:  Your Honor, they went from a normal page

7  limit of 20 to 40, and from no reply to 5 to 20.

8         THE COURT:  You know what a 40-page thing is?  I don't

9  have enough time to put it down in 20 pages.  That's what really

10  40 pages are.

11        What I think would actually be helpful might be to

12  categorize the topics by state or by issues.  I actually think

13  that's easier, as opposed to one big order or big motion on

14  everything, but I hate telling lawyers how to do things because

15  I don't know who does what.  They may not even be -- the person

16  who is doing it may not even be in the courtroom now, is just

17  sitting there and has vacation plans or something.  I don't

18  know.

19        That might be easier for me, but I don't want to tell

20  you do it this way, but that's how I will do it even if it's one

21  big order or several orders.  I divide and conquer is easier for

22  me.

23        MR. PRIETO:  Actually I think, they probably won't

24  agree to this, but a lot -- not a lot, but a few judges in this

25  district would say if you're going to argue that Oregon law is

1    not subject to class certification for whatever reason, and

2    let's say more than one defendant is going to make that

3    argument, then only one -- it's a joint submission.

4           So if they are going to argue that whether it's North

5    Carolina or Washington, Judge Altonaga, Judge Gayles, at least

6    on a Motion to Dismiss and even on motions for summary judgment,

7    they say you file a joint submission.  I am sure defendants

8    don't like that, but it makes the briefing more succinct and

9    more truncated, but --

10          THE COURT:  Except like some appellate opinions, you

11   don't know who wrote which part until you see it.  You know, the

12   clients are paying for a particular lawyer, they want their

13   lawyer to do it.

14          MR. PRIETO:  Understood.

15          THE COURT:  Then you waste time having arguments like

16   sometimes plaintiffs have and the plaintiffs committee.  That's

17   what I'm surmising.  Not having been there, I don't know, but

18   knowing human nature -- I don't want to create extra work.  I

19   want you to do something that will help me decide.  That's why

20   maybe I shouldn't have submitted that order, but it's to tell

21   you to tell me why it's different.  And they said, this is why

22   it's different, but there are some other issues that you've got.

23          Well, I have to deal with the issues because I sat on

24   this for a long time.  It's my fault for not ruling quicker, but

25   I have been doing even trials on class cert cases and summary

```
 1   judgment, and it takes awhile to do that, but I really want to
 2   do it.  That is my goal, to be able to do this this summer, come
 3   out with the order.  This summer come out with the order just
 4   to -- it won't be perfect, it won't be as good as what you
 5   write, but it will be done.  Okay.
 6             MR. PRIETO:  Yes, sir.
 7             THE COURT:  Because it's got to be done one way or
 8   another.
 9             MR. PRIETO:  Understood.
10             THE COURT:  And then it's decided.  I am not going to
11   go through the trite thing of have you talked with anybody about
12   settlement because you won't do it until I actually have some
13   rulings on it and give incentives to either side.  So that's my
14   goal, to give you incentives to talk about whatever is left.
15   Okay?
16             Anything -- Ms. Smith, you rise for what occasion?
17             MS. SMITH:  Thank you, Your Honor.  Hopefully this will
18   be the last rise.
19             THE COURT:  No, it's not.
20             MS. SMITH:  First of all, just to clarify for the
21   record, I keep saying we only have one plaintiff left.  We have
22   one class rep left, but we do have two individual plaintiffs, so
23   I keep forgetting about those people.  I didn't want to forget
24   about them.
25             THE COURT:  And you won't.
```

1        MS. SMITH:  Yes.  I just didn't want you to be

2   surprised when you saw them in our summary judgment brief.

3        And secondly, I know there's been some discussion about

4   a trial, but at least as to the cases remaining for GM, just so

5   we preserve all lexicon rights, as I don't believe at least some

6   of our classes could be tried in this beautiful court without a

7   waiver of lexicon.

8        THE COURT:  Without a what?

9        MS. SMITH:  Without a waiver of lexicon rights.

10        THE COURT:  Okay.  That's a big issue.  So we could --

11   what could be tried that doesn't violate lexicon?

12        MS. SMITH:  Your Honor, I don't believe any of the

13   claims at least against GM could be tried here.

14        THE COURT:  Does the plaintiff agree?

15        MS. SMITH:  And I don't --

16        THE COURT:  Hold on.  I am dividing and conquering.

17        MR. PRIETO:  Since your dismissal of the FDUPTA, that

18   is correct.

19        THE COURT:  Okay.  So you don't have anything -- so GM

20   is fine, you don't have to worry about it.

21        MR. YOSHINO:  Your Honor, it's the same for MBUSA as

22   well.

23        MR. GRAHAM:  Again, Dan Graham for FCA USA.  We also

24   have no Florida claims pending, so we would be going to

25   Michigan --

Draft Copy

Rough/Oral Argument

1          THE COURT:  No one has any Florida claims.

2          MR. GRAHAM:  Correct.

3          THE COURT:  So I can't even force you to go to trial.

4   All I can do is volunteer to go to those districts and try the

5   case.  How come nobody ever does that with a multidistrict?

6          MS. SMITH:  Your Honor, sometimes the judges --

7          THE COURT:  Where is it?

8          MS. SMITH:  For us, I believe we would be in the

9   beautiful town of Detroit, Michigan, but, Your Honor, I think

10  sometimes MDL judges do do that.

11         THE COURT:  They do?  They go and try the case?

12         MS. SMITH:  Sometimes, yes, very rarely, but Your

13  Honor, I also --

14         THE COURT:  In Detroit?

15         MS. SMITH:  I don't know that it's happened in Detroit,

16  but it has happened in some places for sure.  But, Your Honor, I

17  think obviously none of that needs to be addressed now.

18         THE COURT:  You're right.

19         MS. SMITH:  I just didn't want any suggestion of a

20  lexicon waiver, which is why I wanted to raise it.

21         THE COURT:  No, no.  I would never force a waiver.

22  Maybe we could go in the fall in Vermont.  Just kidding.

23         Anything else I can help you with?  Any other

24  suggestions?  I'm open to suggestions.

25         MR. PRIETO:  Not for the plaintiff, Your Honor.

1        THE COURT:  None for the defendants.

2        MR. KNAPP:  Nothing.

3        THE COURT:  Thank you.  Have a good rest of the

4   morning.

5        THE COURT SECURITY OFFICER:  All rise.

6        MR. YOSHINO:  Thank you, Your Honor.

7        MR. PRIETO:  Thank you, Your Honor.

8        THE COURT:  We are in recess.

9     (The hearing concluded at 11:55 a.m.:)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Draft Copy

**A**

able 31:1 36:5,8 41:12 48:19
  62:16 71:4 74:23 78:2
about 16:10,14 17:9,10 20:25
  23:11 25:17,23 26:14 27:13
  27:14,15,1 5 29:15 33:13
  34:23 36:13 37:12 39:9 42:1
  44:17 45:3,7,15,1 9 46:10,11
  47:24 49:4 50:16,22 51:12,16
  52:21 55:1 56:21 57:24 58:17
  60:17,18,20 61:21,25 63:14
  63:15 64:8 67:2,10,1 1 69:9,14
  71:21 78:11,14,23,2 4 79:3,20
absent 39:3
Absolutely 11:3 24:4 27:9
abundance 39:10
accident 33:11
accidents 36:20
accommodate 41:19,23
according 38:12
acknowledged 37:25
across 39:17,18
action 13:17,18 16:17 32:14
  49:5
active 14:4 18:11,15,15
actually 10:1 21:19 33:10 47:25
  52:7 55:7,20 56:7 63:6 66:3
  76:11,12,23 78:12
ad 52:11
add 8:4
addition 43:21 44:3 48:15 49:7
  49:18
additional 58:22
address 20:10 22:10 34:15 42:11
  44:11 50:4 55:19
addressed 33:10 49:17 64:25
  75:14 80:17
addresses 69:4
addressing 20:2 28:2
adequacy 50:21 51:19 52:3 54:3
  67:3
adequate 20:14 46:6 50:23 52:6
  52:17 53:2,14
adequately 55:5
adjudicated 15:3
Administration 39:12
admissibility 38:25
admits 50:2
admitted 43:8 48:7
advanced 47:22
advertisements 48:8
advertising 49:13
after 16:6,23,23 30:4 39:11 51:4
  58:23 75:25
again 19:6 33:3,19 36:11,18
  37:10 39:16 40:1 41:1 44:11
  46:1 52:2 55:9 65:17 67:7
  79:23
against 9:12 36:6 43:5 44:4
  79:13
age 8:15
ages 45:3
ago 19:25 45:7,15 65:21 66:7
  67:22
agree 8:8 22:8 23:12 25:13 53:25
  54:2 55:20 57:17 58:8,10
  59:12 76:24 79:14
agreed 25:21 55:10
agreeing 24:5
agrees 43:16
Agritech 51:14
ahead 5:4 27:12,13 31:1 39:25
  50:15
aid 28:9
airbag 1:6 25:23 37:17
Alhambra 1:19
aligns 45:22
allegations 29:4
alleged 10:12 13:15 16:16 18:17

allow 48:25 49:18
allowing 17:12
allows 48:11
allude 51:11
alluded 51:8
almost 51:6
alone 39:5
already 9:14 12:18 19:22 30:9
  35:18 38:22 40:2 45:23 47:13
  48:9 60:13 61:12 63:14 68:6
  68:14 69:12 70:25
Altonaga 77:5
always 9:5 47:4 63:1
ammonium 11:8,18 40:10,11
among 10:21 23:16 72:14
amongst 14:6 23:18
amount 12:6 45:1
analysis 15:23 16:24 17:1 28:21
  37:23 38:16 39:19
analyze 59:24
analyzed 43:4
Andrew 12:2 5:18
Angello 2:2
another 13:9 22:9 26:20 32:9
  36:23 49:11 51:8 62:19 72:13
  78:8
anybody 27:14 78:11
anymore 24:17 40:12
anyone 8:20 32:21 48:2 63:7
anything 9:1 25:17 26:25 31:21
  50:3 67:14 70:13 74:6 75:23
  76:2 78:16 79:19 80:23
anyway 15:3 61:24 67:11,11
anywhere 32:21
appeal 24:12,16 30:21
appeals 5:3 9:18,19 10:20 13:24
  22:23 23:8 24:25 47:20
APPEARANCES 1:13
appellate 8:10 73:16 77:10
apple 47:14
applies 12:13 43:18 53:3
apply 60:4
approach 54:1 57:11
appropriate 15:4,5 30:24 31:17
  31:20,21 52:25 54:3 59:10,17
  60:25
argue 12:6,22 76:25 77:4
argued 65:21 68:2
arguing 32:7 53:1 65:21
argument 7:12 8:11 11:15 12:9
  13:1,2 15:6,10,14,17,19 21:6
  22:20 27:6,8 33:12,13 54:3
  56:10 63:21,22 67:3 77:3
arguments 1:10 14:19,20 20:10
  20:12 23:4 27:25 30:17 53:14
  61:14,16,16,2 1 65:25,25 66:6
  67:2,20,24 68:3,4,20 69:4
  70:16,22,24 71:16,17,18,18,22
  72:11 77:15
arises 26:7,16
around 31:25 35:16 64:9
ascertain 31:10 34:6 36:5
ascertainability 28:6,14,17 29:9
  29:16 31:8 32:1 33:20 34:12
  34:25,25 35:5,25 36:12,15
  55:21 56:5,5
ascertainable 34:2,8 36:10 56:8
ascertained 31:9
asked 37:15 65:20
asking 71:9
aspects 33:4
assert 17:17
asserted 14:3 17:19
assessing 38:6
assignments 10:6
assume 16:20 22:6 54:25
assuming 27:20,22 30:16,17,23
Astry 34:3,6

attack 75:25
attempt 29:5
attempting 50:18
attention 58:4
attorneys 10:7
atypical 18:10 23:19
atypicality 17:16,24
August 56:11 58:10 61:25 62:4
  62:12,14
authority 48:24
authorized 55:11
auto 31:10
automaker 31:11
automakers 11:7 40:18
Avenue 1:15 3:3
avoid 62:7
aware 37:25
away 5:2 6:3 44:21
awhile 78:1
a.m 5:1 81:9

**B**

back 7:15 8:8 10:23 12:1 16:13
  32:16 33:3 41:22,23 46:8
  51:11 58:6,9 63:20 75:5,16
bad 15:8
Baglini 25:21 38:19,20 40:8,22
Bank 52:10
bankruptcy 57:24
Bar 58:6
barred 14:3,5,10,2 1 17:2,7,12
  18:10 20:14,15 26:17 46:7
  47:24 51:3 67:2
based 9:21 12:11 26:10 30:19
  31:9 38:15 64:15 66:6 68:1,14
  68:18 71:18 72:9
basically 14:19 15:16
basis 19:8 26:1 75:1
Bay 5:24,25
beautiful 5:25 79:6 80:9
become 46:25
before 1:11 10:4 19:12 20:21
  23:17,19 24:15 42:9 48:8 51:8
  51:12 54:22 64:1 65:4 67:16
  69:6 71:19 74:2,19
begin 71:20
beginning 56:10
behalf 5:11,13,15,17,1 9 6:8 42:8
  55:18 58:8
behind 62:11
being 4:3 17:18 28:23 50:23
  73:16
believe 11:2,19 13:10 14:3 16:1
  18:14 19:5 21:11 23:16 25:7
  38:10 39:8 44:4,7 47:9,18
  55:21 56:1 79:5,12 80:8
belong 31:23
best 8:1 9:18
better 6:3 8:15 19:20,24 22:11
  22:20 23:1,23 26:22 27:16
  28:12 66:21 72:5,8
between 21:3
Beyda 1:22 5:18,18
beyond 69:5
big 29:8 41:9 46:19 67:11 76:13
  76:13,21 79:10
Biscayne 2:11
bit 10:7 25:2 28:7,15 42:12,24
  44:5,17 47:20 58:12,13 61:22
bites 47:14
blabbing 76:3
blend 62:16
blending 22:19
Bob 5:20
Boies 1:22 5:19
booming 7:20
Bordeaux 8:15
both 22:14 23:4 24:7 40:6,7 52:8
bottom 24:10

bought 51:17,24
Boulevard 2:2,11
Bower 2:1 5:16,16
box 24:1
break 42:3
Brenner 18:23 19:1
Bridges 43:7,25 49:12,13 50:2
  50:22
brief 25:20 37:18 52:9 58:8,18
  58:20 63:19 64:20 72:18
  75:11 79:2
briefed 51:21 52:14
briefing 10:10 25:19 37:14 38:3
  38:4 39:13 56:18,25 65:3,7
  67:18 72:13 75:22 77:8
briefings 64:25
briefly 50:16
briefs 55:23 59:4 69:19
bring 41:21
bringing 58:4
Brody 2:2
brothers 57:3
brought 51:9 63:14
burden 28:16 33:19 36:12,16
  37:21 38:15 39:21 49:8
business 44:25 63:6
Byrne 2:1 5:17

**C**

California 2:15,16
came 9:1
Cantero 2:9 6:24,24
captures 32:21
car 29:1 51:17,17,24 55:1
Cardenas 30:3 36:6
care 5:6 43:12,1 4 57:8 62:25
  63:17 67:10,11
Carella 2:1 5:17
Carolina 2:20 29:2 35:9,9,15
  44:1 58:14 59:11 77:5
case 1:4 2:10 5:2,3 6:24 7:3 9:14
  13:10 15:24 17:6,11 18:15
  25:5 26:10 28:17,20 29:4,17
  29:24 31:12,23 33:5,6,16 34:4
  36:3,6,15,2 1 37:18 38:23
  39:13,22 45:2,22,23 47:13,22
  47:23 48:7 49:3,4,6,19,24
  52:10,10 60:9,10 66:19 67:14
  70:9 80:5,11
cases 22:19 28:19 31:10 33:24
  34:4,11,11 38:13 40:7 52:9
  58:18,21 59:1,2 64:22 66:22
  77:25 79:4
categorize 76:12
causation 48:22,23,25
cause 13:18 15:11 16:17 47:19
caused 76:2
caution 39:11
Cecchi 2:1
Center-Suite 2:11
cert 10:14 12:15 13:4,20 14:19
  15:5,22 19:11,20 21:17 22:18
  22:21,21 23:5 24:8,11 25:1
  26:5 31:5,6 34:2 42:4 53:1,23
  62:16,18 77:25
certain 14:15 19:3 34:9 35:7
  41:2 64:24 65:19 67:20 70:6,6
  70:9,9,18 72:15
certainly 23:12 35:1,7,14 41:8
  42:22 60:5 72:3,11
certification 8:18 9:12 13:11,14
  14:1,14 15:12 16:3,19 17:15
  17:19 18:25 19:17 20:2,17
  23:6,22 26:9,22 28:18 29:24
  33:17 37:20 46:1 56:12,18
  58:13 59:20 69:12,18 77:1
certifications 12:5
certified 19:23 29:17 30:4 35:10
  46:3 56:24 57:14 58:14

**certify** 14:15,21 20:8 32:3 41:4
63:23
**chances** 47:23
**change** 46:12
**characteristics** 33:1,15 36:20
**charges** 75:1
**Charlotte** 2:20 6:22
**chat** 10:21
**Chicago** 2:7,24 7:17 9:2
**China** 51:13
**Chisolm** 49:20,24
**choice** 28:21 31:18
**choose** 59:7
**Circle** 1:19
**circles** 31:25
**Circuit** 13:16 24:7,25 60:5,10
**circumstances** 28:19
**circumstantial** 49:23 50:1
**citations** 25:24
**cite** 18:20 19:3 34:4,5,1 1 37:18
38:2 39:13 48:24 49:4,19 52:9
**cited** 18:24 25:19 33:24 38:4
60:7
**civil** 63:5
**claim** 17:2,4,17 43:15,17,2 3 46:7
48:11,13,2 1 49:1,10 50:2 51:2
51:9 52:16 53:1,4,12,14 56:25
57:14,20 60:6,11,12 65:6,10
**claimant** 48:17 57:21,23
**claims** 13:16 14:3,5,6,9,9,15,22
18:10 20:14,15 22:10 23:17
23:20 26:10,17 30:18,19
31:22 42:12,13 43:2,3,5,11
44:1,4 45:10 47:23 49:16 50:4
51:6 52:9 56:16 57:21 69:24
73:8,11 79:13,24 80:1
**clarification** 74:10
**clarify** 78:20
**Clark** 2:22 7:17,22
**class** 8:18 9:12 10:14 12:4,10,13
12:15 13:4,11,14,17,17,20
14:1,14,19,2 1 15:5,12,22
16:11,14,18 17:5,19,20 18:10
18:24 19:11,17,20 20:2,16,18
21:17 22:18,21,21 23:6,18,22
24:8,11 25:1 26:5,9,22 28:17
28:22,25 29:3,6,19,23 30:4,9
30:16,23,23 31:5,6,8,15,20,21
31:21 32:4,14,14,18,2 0 33:1,5
33:11,15,17 34:1,2,6,21,24
35:20,23,24 36:5,6,8,10,21
37:20 38:14 41:4 42:4 46:1,5
46:19,25 47:4,5,25 48:1 49:5
50:19,21,23 51:8,12 52:4,5,17
52:18 53:1,15,23 56:3,12,18
56:24 57:13,14,18,19 58:3
59:11,13,19 62:16,18 63:23
67:6 69:11,18 77:1,25 78:22
**classes** 17:18 20:8 29:18 31:10
34:20 36:2 46:2 79:6
**classic** 12:8 15:20 20:11
**class-wide** 19:7 26:1 37:16 38:11
39:2,7,14,21
**clear** 20:6 55:24 56:3
**CLERK** 62:23
**clients** 77:12
**climb** 32:10
**climbing** 32:7
**close** 25:18 51:3 66:18
**closely** 50:21
**cognizable** 44:4 49:15
**colleague** 36:23
**colleagues** 24:1
**collective** 19:5
**Colorado** 44:1
**Colson** 1:18 5:21
**come** 10:7 31:18 37:5 41:23
60:14 61:3 75:16 78:2,3 80:5
**comes** 8:17 10:21 58:2 60:12

**coming** 32:5
**comment** 21:2
**comments** 59:12
**committee** 77:16
**common** 37:13,16 38:11 39:2,7
39:14,21 40:9,19 44:1
**commonalty** 17:9,10 40:7
**company** 31:11
**complaints** 47:18
**component** 41:10,11
**concealment** 14:4 18:11,16
**concede** 29:24 38:5
**conceding** 47:2
**concentrate** 72:2
**concept** 25:19 60:11
**concern** 8:24 16:10,14 65:20
67:8
**concerns** 8:13
**concluded** 34:8 81:9
**conduct** 39:19
**confess** 62:10
**confessed** 64:17
**confirmed** 40:16
**confused** 28:15 74:16
**Connecticut** 43:21,22
**connection** 43:9
**conquer** 23:24 69:2 76:21
**conquering** 79:16
**consider** 46:9
**considered** 38:5 39:10 47:9 68:6
**considers** 68:3
**consistency** 20:7
**consistent** 8:1 20:7,7
**consistently** 12:17
**conspired** 6:7
**consumer** 14:9 43:15 52:8
**CONTENTS** 4:1
**context** 19:11
**contexts** 26:8
**continue** 29:23
**controls** 28:21
**Coral** 1:20
**corner** 71:15
**Corporation** 49:20
**correct** 11:22 12:19,23 16:22
18:21 21:14 24:22,24 33:12
42:16 45:9 53:18 66:15 69:7
71:9 79:18 80:2
**cost** 48:11 49:16
**counsel** 56:11 59:12
**couple** 15:7 19:25 27:15 45:14
46:4 55:19
**course** 7:25 29:21 30:14 37:18
56:6 73:3
**court** 1 2:3 2 5:2,3,23,25 6:3,6
6:14,17,19 7:1,4,8,10,13,19
7:19,24 9:1,4,6,9,13,17,18,19
9:23 10:3,8,15,18,20 11:1,4
11:10,15,21,2 3 12:2,4,15,17
12:20,24 13:5,13,20,23,23
14:5,11,17,21,2 4 15:1,8,13,19
15:23,24,25 16:1,2,5,8,20
16:22 17:2,6,11,22,25 18:3,6
18:8,12,18,22 19:1,12,24 20:5
20:6,13,25 21:5,8,10,13,15
22:1,5,8,11,13,16,2 3 23:8,15
23:17,19,23 24:3,5,9,13,15,17
24:21,23 25:2,5,8,13,16 26:2
26:11,18 27:6,10 28:3,5,8,11
28:20 29:12,15,21 30:2,5,7,11
30:14,15,25 31:4,15,19,22,25
32:9 33:6,21,25 34:6,7,15,17
36:17,22,25 37:3,5 38:9 39:23
39:25 40:2,3,4 41:4,7,9,12,15
41:18 42:2,3,6,7,15,17,20,25
43:12,16,18,20,2 4 44:10,13,16
44:20,24 45:2,4,8,12,14,18
46:9,18,21 47:4,7,11,15,17,19
47:20 48:5,9 50:5,8,10,12,14

52:19,21,23 53:4,7,16,19,21
53:23,25 54:5,9,13,16,20,25
55:5,9,13,16 56:7,12,14,19
57:2,7,10,1 8 58:2,5,21,22
59:1,6,8,9,2 1 60:2,14,15,17
60:20 61:11,15,2 3 62:4,9,24
63:12,20 64:13,16,2 1 65:2,8
65:12,14,16,2 4 66:1,5,10,13
66:16,19,20 67:9,21,23 68:1,2
68:5,14,16,18,2 1 69:1,5,14,20
69:22,25 70:5,8,13,15,21,22
70:24 71:2,4,8,11,1 3 72:1,5,8
72:14,22,25 73:3,5,10,15,21
73:23 74:1,4,14,19,22,25
75:10,12,14,2 1 76:5,8 77:10
77:15 78:7,10,19,2 5 79:6,8,10
79:14,16,19 80:1,3,7,11,14,18
80:21 81:1,3,5,8
**Courthouse** 3:2
**courtroom** 1:6 76:16
**Courts** 8:10 16:17
**Court's** 56:11 58:4
**cover** 48:1 62:11
**CPA** 43:23 45:22
**Craig's** 51:17,25
**create** 77:18
**creates** 51:19
**credibility** 12:6 38:25
**criminal** 37:7 63:5,5
**criteria** 31:9 34:25 35:1
**criticized** 5:4
**Croghan** 2:22 7:18,22,22
**cross-reference** 38:3
**cruise** 75:16
**crux** 13:15
**crystallize** 25:14
**current** 29:6
**Curtis** 5:22
**cutting** 21:22

**D**

**D** 2:5 3:2
**Daimler** 24:16,18
**damage** 30:20 45:20 49:10
**damages** 8:7 23:14,17 24:20
29:5 44:5 45:13,15,17 48:11
48:12 49:2,15 52 12,13 58:19
58:24 60:11
**Dan** 7:16 58:7 79:23
**DANIEL** 2:21
**data** 29:9,18,20 32:23,24 33:4,6
33:10,13 34:5,7,10,12,14
36:18 56:3
**date** 30:2 31:16 44:14 59:5,8
**day** 61:24
**de** 2:2
**deadline** 60:24 72:15
**deal** 8:17 11:23 23:21 54:6 58:2
69:1 77:23
**dealership** 35:4
**dealerships** 36:13 55:11
**dealing** 69:23 70:3
**dealt** 34:14
**decertification** 16:4,5,24 57:15
**decertify** 20:17
**decide** 12:7 19:17 26:20 27:11
53:10,11 77:19
**decided** 12:25 13:4 14:1 21:24
34:1 38:22 40:2 78:10
**decision** 17:21
**decisions** 28:18 56:12 58:23 60:6
**declare** 33:11
**deems** 59:10
**defeat** 52:1
**defeats** 53:13
**defect** 10:12 13:15 18:17 31:10
37:16 38:11 39:3,6,7,22 40:7
40:9,19,23 41:6 45:24 57:20
**defective** 40:9,12,19,25 41:3,15

**defendant** 2:5,9,21 12:12 72:8
75:22 77:2
**defendants** 6:9 20:3,9 40:11,18
47:17 61:20 66:14 75:22 77:7
81:1
**defendant's** 12:12
**defense** 8:20 11:24 15:15,16
17:4 25:17 41:5,9 42:4,8 60:7
**defenses** 15:17
**defer** 54:11
**defined** 34:20,21
**definitely** 41:11
**definition** 29:3 32:14,20 33:2,5
33:16 36:21
**definitions** 32:18 47:25 48:1
**degradation** 38:7
**degrades** 40:10
**degrading** 40:13
**delay** 47:19
**demonstrated** 49:23
**denial** 48:16
**denied** 12:22 16:3,3 17:19,20
23:8 34:2 38:18,22
**deny** 9:11 22:22 23:7 33:17
**denying** 16:23 59:19
**depending** 12:10,10 31:19 58:1
**deposition** 38:4 40:16,20
**Dernier** 49:4
**Description** 4:11
**designs** 38:8
**detailed** 59:18
**determine** 21:17
**determined** 34:1
**determining** 15:21 58:23
**Detroit** 80:9,14,15
**differences** 39:17,19
**different** 8:8 9:24 10:6 11:21,24
12:9,25 15:18 16:13 17:25
22:24 25:3 26:8 28:23 30:12
30:19 32:19 34:23 37:22,25
38:8,8 39:17 43:1,3 45:17
47:15,16,17,18,2 3 57:5,13
64:2,2 66:9 67:17 68:13 69:5
70:16 71:11 74:4 77:21,22
**differently** 9:21
**difficult** 47:1 51:13
**difficulty** 46:18
**direct** 40:23
**directing** 18:4
**disagree** 11:10,16,17 26:11
30:20
**disagreed** 55:23
**disclosure** 26:17
**discovery** 12:17 51:4
**discuss** 28:6 49:6 54:23
**discussed** 10:10 44:5 46:7 50:1
50:25 68:6
**discussing** 28:19
**discussion** 63:19 75:11 79:3
**discussions** 46:11
**Dismiss** 12:20 59:3 77:6
**dismissal** 79:17
**dismissals** 56:17
**dismissed** 45:10,23
**dismissing** 24:16,18
**dissimilarity** 16:12,15
**distinct** 33:13,17 43:4 55:22
65:23
**distinction** 21:2
**distinguish** 34:20
**distinguishable** 34:13
**distinguishes** 37:14
**distinguishing** 11:19 34:22
**distributed** 29:19
**distributor** 11:13 25:22
**district** 1:2,2,11 36:2 60:5,10,15
76:25
**districts** 80:4
**disturb** 59:9

**divide** 13:6 23:24 54:17 69:2,25
71:14,14,20 72:14 76:21
**divided** 14:7
**dividing** 15:2 79:16
**division** 63:6
**docket** 56:13 65:13,14 66:2,18
66:23 68:7,9
**documents** 15:6 36:13
**doing** 15:1 20:18 22:11 23:1,24
29:22 42:22 46:18 76:16
77:25
**dollars** 29:19
**done** 8:20 9:10 20:20 21:3 31:22
39:10 55:5 56:19 57:10 61:7
61:12 64:1 71:19 78:5,7
**down** 8:3 10:7 20:2 32:13 35:24
74:19 76:9
**Dr** 8:10
**DRAFT** 1:1,1,1
**Draw** 70:1
**Dubé** 8:10
**during** 66:7
**duty** 26:17
**D-e-r-n-i-e-r** 49:4

**E**

**E** 2:23
**each** 48:17 61:20 64:3
**earlier** 37:12 44:5
**early** 63:24
**easier** 19:16 31:6,9 45:8 54:5
72:17 76:13,19,21
**easy** 47:5
**efficient** 75:8
**effort** 35:14
**Eidson** 1:18 5:21
**eight** 29:18
**either** 8:16 33:5 35:4 44:12 49:9
49:9 56:17 60:22 78:13
**element** 16:16,25 17:4 26:9
**Eleventh** 13:16 24:6,25 60:5,9
**Ellis** 2:6 7:6
**eloquent** 53:8
**embraced** 60:11,15
**emphasize** 57:25
**employer's** 16:4
**encourage** 65:12
**end** 10:21 27:24 49:23 61:3
62:14 74:24
**engage** 16:17
**enough** 5:5 11:2 24:10 27:7 55:1
76:9
**entitled** 70:11
**entry** 65:13,14 66:18,23,23 68:7
68:9
**equal** 70:24 73:2,3
**equipped** 40:17
**equitable** 60:12
**equity** 48:20 60:14
**Eric** 2:14 6:12 37:11
**especially** 18:14
**ESQ** 1:13,14,18,22,2 2:1,5,9,10,14
2:14,18,21,22
**essential** 26:9
**essentially** 15:20 19:23 20:6
21:16
**establish** 43:9,16,17 45:20
**establishing** 33:14,14
**even** 5:3 7:11 8:9 15:10 17:2
25:20 26:24 28:12 29:24 32:7
32:7 33:9 37:25,25 47:25
49:25 51:21 52:4,17 62:21
63:15 64:21 70:8,8 73:5 75:4
75:7 76:15,16,20 77:6,25 80:3
**event** 48:23
**eventually** 8:24 31:18 34:1
46:11 68:19
**ever** 26:2 80:5
**every** 29:6 35:13 63:6 72:1,3

**everybody** 7:9 9:6 27:13
**everyone** 9:7
**everything** 6:7 62:11 73:3 76:14
**evidence** 4:10 8:22 10:13 11:2,4
19:2,5 27:7 28:17 31:2 39:6
39:21 41:6
**exact** 29:18,20 34:21
**exactly** 8:23 22:15
**example** 10:13 18:23 25:20 27:5
28:25 29:5 30:19 32:17,21
33:5 43:7 45:13,16 49:11
50:20 64:24 65:5
**examples** 36:9 46:4
**Except** 77:10
**Excuse** 71:3
**exemplar** 42:12
**exhibits** 4:8,9 16:11,15
**exist** 38:1
**existence** 37:16
**exists** 38:12,13
**expect** 25:22
**expected** 8:19 19:15
**expedited** 75:1,2
**experience** 31:1
**expert** 8:10 40:16
**experts** 25:21 37:23 38:2,16,19
40:6,8
**explained** 24:10
**exploding** 40:13
**expressly** 60:16
**extension** 71:7
**extent** 65:4,9
**extra** 77:18

**F**

**faces** 40:14
**facial** 75:4
**fact** 11:16,17,23 12:1 27:8 37:22
37:24 38:9 44:18 70:3
**factor** 11:5
**factors** 11:19 38:5
**facts** 9:21,23 12:7 27:10
**failed** 36:13 37:21 39:20
**failure** 16:16 38:16 39:19
**fair** 44:25
**fall** 63:24,24 64:13 80:22
**families** 68:22
**family** 48:18
**Famous** 37:4
**far** 6:3 9:4 54:20
**fashion** 42:12
**fatal** 16:11,12,15,16,25
**fault** 61:4 77:24
**favor** 22:20
**Fax** 1:17,21,25 2:4,8,13,25
**FCA** 2:21 7:17,23 13:14 21:4
24:8 25:1 32:4 34:20 35:19
36:6 37:15,22 43:2 47:25
55:22 56:9 58:8 60:4 65:23
66:9 79:23
**FDUPTA** 79:17
**feasible** 36:10
**Federal** 52:10 63:2
**FEDERICO** 1:11
**feel** 15:8 73:18
**fellow** 50:14
**Ferguson** 3:2
**few** 10:6,6 34:19 35:11 48:15
55:3 73:8,11 76:24
**fewer** 22:10
**figure** 8:3,16 13:20
**file** 1:4 20:9,17 22:17 23:2 27:20
44:13 51:4,6 60:24 62:8 65:20
68:5,11 69:3 71:5 73:18 75:19
75:21,23,23,24 77:7
**filed** 7:24 12:21 22:2,4 45:7
58:18 61:5 66:6,18
**fill** 27:23
**filled** 62:20

**final** 24:21 36:1
**Financial** 2:11 49:20
**find** 26:14 27:10,24 32:3 46:13
**finding** 46:25 47:5
**fine** 20:23 24:2 31:7 54:1 67:25
79:20
**first** 11:25 12:1 13:13 17:12 20:3
22:2 26:24 28:22 31:6,8 32:14
47:8 48:17 51:2 53:21 55:20
57:12 62:10 69:1,10 76:3
78:20
**five** 37:4,5 39:24 57:13 62:7 73:6
**FLA** 1:4
**flag** 10:4 60:4
**Flexner** 1:22 5:19
**floor** 2:19 50:6
**Florida** 1:2,7,16,20,2 4 2:3,12
3:3 29:1 36:2,7 60:6,10,15
79:24 80:1
**focus** 39:1 66:8
**focused** 19:7 67:13
**focuses** 63:13
**folks** 52:17
**following** 5:1 56:12
**follow-up** 34:19
**Foods** 15:18,20 16:10
**foolish** 20:7
**force** 80:3,21
**forces** 61:2
**forget** 64:8 78:23
**forgetting** 78:23
**form** 26:4,5 41:13 66:25
**former** 33:7,25
**Forms** 26:13,19 27:3,20,2 2 64:2
**forth** 10:23 36:14 44:8
**forum** 31:20,21
**forward** 37:5 56:24 58:3
**found** 27:12 51:25
**four** 58:14 62:20
**FPR** 3:1
**FPR-C** 3:1
**Francisco** 2:16 9:3,4
**frankly** 21:9
**fraud** 14:9 17:20 26:10 43:15
52:8
**FRD** 49:24
**free** 26:25
**Friday** 61:6
**from** 7:16,17,22 8:7,9,20 9:2,3
10:15 14:8 16:10 24:12,15
25:1 27:6 30:25 31:11 35:18
35:19 37:14,22 39:18 40:21
45:23 50:3,24 51:24 54:21
58:5,6 60:9,10,12,14,2 1 65:23
69:5 75:5,16 76:6,7
**front** 36:4,7
**full** 22:22
**fully** 25:5 49:17 72:19
**fun** 44:23

**G**

**G** 2:9
**Gables** 1:20
**gave** 30:3 39:11
**Gayles** 77:5
**general** 2:5 7:11 21:3 25:1 32:4
55:18,19,25 56:2,22 65:23
66:9 73:11 74:20
**Georgia** 59:3,19,20,25
**gets** 35:13
**getting** 15:22 27:12 57:3 58:24
64:7 71:15
**GILDA** 3:1
**give** 5:5 11:5 17:11 23:2 31:12
32:9 35:8 44:14 63:16 72:15
74:23 75:15,24 78:13,14
**given** 18:14 39:16 44:18 45:21
46:24 70:2
**giving** 34:14 39:13 70:13 74:6

**GM** 13:14 17:15,20 24:7 34:20
35:18 37:15,22 38:20 43:2
45:21 47:25 48:13 54:22,23
55:22 56:9 58:12 73:9,12
74:17 79:4,13,19
**GM's** 59:12
**go** 5:2,4 9:17,18 10:23 13:23
14:13 15:24 16:22 23:5,6,7,9
26:12 29:8 33:3 38:2,11 39:25
41:4,21 46:4 50:15 57:9,24
58:1 59:18 62:18 63:23 64:3
74:19 78:11 80:3,4,11,22
**goal** 62:17 78:2,14
**goes** 27:16
**going** 7:20 8:19 10:1,15 12:16,22
13:7,8 14:11 15:2 18:3,22
19:18 21:21 22:5,16,24 23:9
26:12,21 29:21 31:25 32:7
34:13 37:8,8 41:5,9,13,18
42:13 44:21 50:14 51:13,14
53:10 54:11,14,20,21,23 55:7
55:20 57:1,11,15,18 59:15
60:23 61:11,13 63:15,22,25
64:1,4,7 65:17 67:19 68:1,16
69:7 74:3 76:25 77:2,4 78:10
79:24
**gone** 20:2 52:11 54:13
**good** 5:12,14,16,18,20 6:10,12
7:2,5,16 8:15 10:22 23:24
26:13 27:2 30:17 36:9 37:3,10
50:7,20 55:17 58:7 59:4 61:24
78:4 81:3
**goodness** 9:4 44:20
**gorgeous** 6:2
**gotten** 28:15 73:5
**gphofficialreporter@gmail.com**
3:4
**grab** 10:18
**Graham** 2:21 7:16,16 58:7,7,22
59:2,7,10,23 60:19 79:23,23
80:2
**grant** 12:15 13:20,21 15:12
20:13 22:21,22 23:5,6 24:19
62:18
**granted** 12:25 23:8,13 42:4 44:6
60:14
**granting** 13:14
**great** 63:1
**grounds** 34:22
**group** 48:20
**guess** 26:24 31:5 72:4
**guidance** 8:9
**guy** 10:8,9,10
**guys** 5:5 6:14,17 55:14 59:21

**H**

**Hallo** 5:24,25
**hand** 28:9
**handle** 28:12
**happen** 54:4
**happened** 80:15,16
**happens** 12:4 13:21 22:18 58:2
**happy** 9:16 28:4 63:8
**hard** 46:13
**hardly** 27:14
**harm** 46:22,23
**hate** 76:14
**having** 8:20 72:21 77:15,17
**Hawaii** 43:22
**head** 75:6
**hear** 8:11
**heard** 66:5
**hearing** 41:20 63:11 66:8,8
68:19 81:9
**hearings** 63:13
**heavy** 66:2
**held** 5:1 13:16 28:20
**help** 26:20,22 27:4 28:1,10 65:24
66:16,19,20,2 1 67:1,14,15

71:20 72:18 77:19 80:23
helpful 7:11 27:19,25 54:7,18
76:11
helps 10:24 27:13,16 28:3 63:17
her 14:9 17:17 43:16 46:7 49:14
49:16 55:1 74:25 75:5
hesitate 63:8
hesitated 63:9
he'll 63:3
Hicks 1:18 5:21
highlight 14:2 51:1 57:11
Highway 39:12
hill 2:22 7:17,22 32:6
historical 31:13
Hold 69:1 79:16
holdup 46:17
Honda 11:8
Honor 5:12,14,16,18,2 0 6:10,12
6:15,24 7:2,5,16 8:25 9:20
10:1,17,25 11:3,22,25 13:10
13:22,25 14:16 15:5 17:3,8,22
18:5,13,20 19:2,22 20:23
22:10,12 23:12,13,20,21 24:2
24:6,14 25:18 26:8,15 27:4
28:1 29:16 30:8 31:17 32:1
33:22 34:18 36:7,11 37:10
38:10,17 39:7,16,24 40:1
41:14,17 42:16,19 44:3,5,11
44:18,23 45:10,10 46:16,24
47:12 51:8 53:10,22,24 54:2
54:19,22 55:17,23 56:23 58:7
59:7,18,24 60:3 61:10,19 62:2
62:6 63:10 64:11 67:7 68:24
68:25 69:9 70:12 71:1 72:12
72:21,23 73:8 74:9,21 76:6
78:17 79:12,21 80:6,9,13,16
80:25 81:6,7
HONORABLE 1:11
hope 42:19 62:14,15 63:23
hopefully 6:3 42:23 57:15 60:20
78:17
host 58:18
hot 56:6
hours 45:14
household 48:18
huh 14:17
human 77:18
Hundreds 29:18

### I

idea 26:13 60:12
identical 19:23
Identification 4:10
identified 65:24 66:16
identify 27:4 35:3 75:8
ignition 45:22
IHS 33:9,10,16,10 35:19
Illinois 2:7,24
implied 57:20
important 9:23 11:4
impose 64:5
impossible 18:16
improper 25:24
inability 45:19
inadequacy 17:16 69:10,17
inadequate 18:9 23:19
inapposite 28:19
inappropriate 19:11
incentives 78:13,14
include 17:7
includes 38:7
including 8:21 37:18 40:18,24
59:3
independent 51:20
individual 49:9 61:21 63:2 78:22
individualized 48:15,23
individuals 20:14 28:11
inefficient 21:22
inflator 37:24

inflators 11:6,9,11,13,16,18,20
11:21,24 17:25 25:23 37:17
38:1 40:8,17,22,24,25 41:2
influence 8:12
information 25:23 40:23 56:2,4
59:11
injunctive 60:13
injury 48:22
instance 32:15
instead 15:1
interest 8:2 72:9
interrupt 29:12 41:18
involved 33:25
involvement 48:6
involving 49:12
Iowa 43:20
irrebuttable 51:22
Island 14:8 43:12,22 46:14,17
67:10
issue 8:7 12:1,3,8 13:3,3,11 14:1
17:7,9,16,16 19:6 21:23 24:20
25:14 26:9 28:7,14 29:17
31:18 32:2,12 34:14 36:1,24
39:2,21 40:2 45:13,17,21
46:13,15 47:9 51:7 52:3,3
55:11 56:5,6,13,19 57:1 58:13
59:14 60:4 66:7 68:17 71:11
73:9 79:10
issued 21:16
issues 10:5 21:8,10,18 22:18
28:2 38:25 45:11 48:15 50:22
50:23,25 52:12,24 55:10,21
55:22,24 57:16,23,23 58:4
59:12,13,24 61:9 63:13 64:15
64:18,23 66:11,12 74:15 75:8
76:12 77:22,23
items 75:13

### J

J 2:14
James 40:8
Jeff 2:18 6:21
joint 77:3,7
jointly 66:3
Jr 3:2
judge 1:11 16:24 17:12,21 36:4
50:7 62:19,23,24 63:1,2,5,5,6
71:22 73:16 77:5,5
judges 68:23 76:24 80:6,10
judgment 12:5,8,21,22 13:3,7,21
14:19 15:5,22 16:2,18,25 17:3
19:6,14,16 20:4,10,11,22 21:9
21:12,19,25 22:4,10,16 23:13
23:14,21 24:20 25:11 26:4,21
27:17,21,25 30:17 31:3,4,6,19
31:23 44:6,9,10,14 52:25
53:11,12,13,2 1 54:9 55:12
56:17,20,25 57:12 58:1,9,16
59:1,2,17 60:1,7,24 61:5
62:15 63:11 64:25 65:10,12
66:4 67:4,5,5,18 69:15 70:4
70:12 74:7 75:25 77:6 78:1
79:2
July 23:5 44:19 48:2 54:12 59:4
61:6,6,8,23 75:17,18 76:3
jump 32:17
June 25:9 27:18 44:16,20,21
54:10 57:2,4 59:6,15 75:18,18
75:19,21 76:1
jurisdiction 24:19
jurors 26:14
jury 12:7 16:6,7,21,22 26:6,14
27:11,23 64:3
just 7:14 10:4 16:9 17:19 20:1
25:18 26:16 27:14 28:15
29:22 32:21 33:20,22,23
34:18 35:13 36:13 39:23
39:7 42:11 46:4,12,14,24 47:1
50:7,16,25 51:11 52:3 53:8

### K

keep 47:23 59:21 68:22 78:21,23
keeps 64:7
key 25:10 41:10,11
kick 32:13
kidding 42:7 80:22
kind 13:6 14:7 15:19 20:16 23:4
40:7 74:10
Kirkland 2:6 7:6
Knapp 2:14 6:12,12,16,2 0 37:2
37:4,10,11 38:10 41:6,8,10,14
41:17 50:6 70:1 81:2
knew 12:11
knocks 15:16 17:4
know 7:12,19 10:19,19 11:12
12:10,11,16,2 0 15:8 19:24
20:13,18 21:8 22:13 23:3,5,20
24:9 25:2,18 26:16 27:1,11
30:18,22 40:5 45:7,15 46:13
46:14 47:2 50:9 52:11,15,15
54:25 55:13 56:21 59:23 61:8
61:11,20,25 62:21 63:12,12
63:13,16,21,2 1 65:21 66:18
66:21 67:3,4,9,10,12,13 68:17
70:2,13 72:16,18 74:25 76:8
76:15,18 77:11,11,17 79:3
80:15
knowing 77:18
knowledge 8:22 9:25 10:2,8,9,10
10:12,15,23 11:2 12:9,11,13
13:11,14 18:11,17,19 19:3,5,7
19:8,10 25:19,25 26:6,8,15
27:5,7 37:13 39:15

### L

L 1:22
lack 8:14,22 10:2,9 13:11 18:11
18:18 24:19 37:12,13,15 43:5
58:19 59:24
lacking 48:23
LaSalle 2:6
last 15:7 37:4,6 66:24 78:18
Lastly 62:11
late 37:6 46:12
lately 27:12
later 22:24 29:1 51:7 61:6,8 62:8
74:7
law 5:21 8:2 13:18 28:21 31:18
37:18 39:13,22 42:11 44:1
45:6,25 46:2 50:4 52:2,14
62:23 76:25
laws 30:20 43:3 64:2
lawyer 77:12,13
lawyers 42:4 76:14
learn 15:13 30:25
leased 32:21,23
least 5:16 54:16 57:13 61:18
77:5 79:4,5,13
leave 41:20 54:14 56:6 59:22
lectern 10:19 50:8,11 54:21
left 35:11 54:6 78:14,21,22
legal 13:15 52:4
Legislatures 72:10
Leon 2:2
less 39:24 43:10 58:13 72:21
let 8:20 12:1,7 16:9,13,22 18:3
29:12 33:22 34:13 36:25
41:19 42:2,25 46:24 55:1
65:15 69:1 75:3,14 76:1
let's 27:10,14 77:2
lexicon 79:5,7,9,11 80:20
LIABILITY 1:6
life 15:9

like 5:7 6:19 8:15 9:11 10:20
15:14 23:2,25 25:22,23 26:2
27:11 28:12 31:11 36:19 38:7
38:25 41:17 44:19 48:13
52:15,15 56:15 57:16,20 59:4
61:13 62:9 63:8,13 64:23
68:13 71:20 73:18 75:4 76:4
77:8,10,15
likely 10:6
limit 30:7,16,18,23 31:1,20,21
35:21 64:6 76:7
limitation 72:22
limitations 28:23 29:3 51:15
57:16,22,23 64:8
limited 30:5,6,6,8,9,11,1 9 31:15
36:3,4,7 49:16
limits 71:7,8
line 4:11,11 24:10 35:25
lines 73:16
link 67:5
linked 22:18
List 51:17,25
listen 14:12
litigated 65:4
LITIGATION 1:7
little 10:7 25:2 28:15 42:24 44:5
44:17 47:20 58:12,13 61:22
67:11 74:16
LLC 2:21 6:11,13 58:8
LLP 1:22 2:6,10,15,18
Lodge 17:15 48:13 52:15
lone 49:3,19
long 36:25 37:2 55:1 62:17 73:2
73:23 77:24
longer 20:19,19 41:1
look 5:8 15:18 21:20 24:5 27:7
28:11 45:21 56:24 58:3 61:9
65:13,14 66:22,23
looked 15:21 47:7
looking 38:24 50:20
lose 24:15 26:4,5 27:21
loss 32:25 33:11,15 36:19
lost 24:13
lot 9:7,13 10:5 12:4 15:7 22:18
46:19 57:7 58:22 61:7 64:18
64:23 76:24,24
Louisiana 56:23,24 57:19,21,22
love 6:20
loves 7:19
lower 50:15 54:21

### M

M 2:14
made 10:6 15:6,10 22:1 52:17
67:22 68:3,3,19 69:4,17 70:25
71:2
Maine 43:22
make 6:7 9:15,24 11:1 20:1
23:18 24:17 27:2 30:25 32:2
33:22 35:14 55:24 61:13
67:20 68:2 69:9 77:2
makes 13:16 20:20,22 31:6
57:12 64:18 77:8
making 20:11 21:2 61:21
manage 8:14 72:16
manageability 8:13
manifestation 45:24
manufactured 59:15
manufacturer 55:2
many 5:10 13:17 14:3 38:5
43:11 57:16 62:5 70:3
march 42:13 51:6
Marked 4:9
market 40:13 41:1
marketing 48:8 49:14
Marshals 37:6 41:19
Martinez 1:18 5:20,20,24 6:2,5
MASTER 1:4
materials 43:8 48:8 49:14 51:24

matter 5:4 13:18 16:18 37:7
  49:3
Matthew 1:14 5:14
may 1:8 8:23 12:3 19:3 26:3
  46:12 51:5 58:2 62:6 64:9
  74:9 76:15,16
maybe 8:24 9:18 20:20,22 22:20
  23:4 35:22 40:4 59:22 61:17
  62:16,19 70:23 77:20 80:22
MBUSA 9:12,20 10:11 11:12
  18:16 19:4 25:22,25 32:20
  33:13,18 34:21 37:11 38:19
  43:4,5,8,10 44:4 48:6 50:3
  51:24 55:4 58:13 64:19 79:21
MBUSA's 10:10 38:18 58:11
MDL 1:3 32:18 80:10
mean 5:3 18:13 19:3 21:10 26:25
  29:23 45:9 46:2 54:17 58:21
  67:12 69:19 70:7,11,20 71:13
means 9:7 25:9 31:8 62:17 76:2
meant 75:19
mediating 67:14
meet 36:16 37:21 39:20 48:20
  52:5
meets 35:5
member 12:10 17:18 28:25
members 12:13 13:18 29:19
  35:20 36:5 52:5
membership 35:24
mentioned 19:12 49:13 62:12
  64:12,22 66:24
Mercedes 7:12 12:11 20:8 40:24
  52:24 54:24 55:22 56:9,21
  65:22 74:15,18
Mercedes-Benz 2:9 6:11,13,23
  6:25 37:17,24 38:1 39:18
  40:18 51:18
merged 13:6
merit 8:14
merits 12:3 52:3
mess 56:6
message 26:23
messes 20:16
met 33:20 38:15 49:8
method 30:16 51:4
methodology 48:19
Miami 1:7,16,24 2:3,12 3:3,3
  6:14,19,25 7:3,6,6,7
mic 50:10
Michael 2:22 7:18,22
Michigan 79:25 80:9
microphones 7:20
mid 54:9 57:2,4
might 29:24 38:1 54:5 64:14,24
  76:11,19
millions 29:18
mind 29:13 40:11
Miner 5:22
minute 34:16
minutes 10:20 37:4,5 39:24
  41:24
mirror 75:4
Mississippi 43:20
mistake 22:1
model 8:7 45:17
month 23:2 45:1 54:13
months 16:17 65:21 66:7 67:22
mooted 58:9
mootness 58:19 60:4
more 8:9 20:20,21 24:6,25 30:11
  35:22 42:20 47:1,1 53:8 57:7
  58:12 61:17,22 62:7 65:15
  69:14 70:22,24 72:11,19 73:8
  73:11 75:1,15 77:2,8,9
MORENO 1:11
Moreno's 17:21
morning 5:12,14,16,18,2 0 6:10
  6:12 7:2,5,16 37:10 50:7
  55:17 58:7 75:6 81:4

most 9:23 11:4 52:24 55:8 63:2
motion 9:12 12:20,21,22 14:1
  15:22,22 16:3,4,23 19:14,16
  20:17 22:9,17 24:16 26:21
  28:18 33:17 38:8,22 44:14
  48:16 59:3,19,23 60:24 61:5
  62:11,11 68:11 69:12 70:4
  71:7 75:24 76:13 77:6
motions 8:19 20:9 21:12,17,18
  21:24,25 22:3 24:17 25:11
  45:7 56:20 58:9,16 59:22
  65:16 66:3 67:18 77:6
Motor 37:19
Motors 2:5 7:11 21:3 25:1 32:4
  55:18,19,25 56:2,22 65:23
  66:9 74:20
mountain 32:9
move 36:23 75:5
moved 38:21 65:10
moving 62:8
much 9:10 43:10 49:21 56:24
  58:3 60:1 76:3
multidistrict 80:5
multiple 47:14,23
must 37:19 38:5,12 46:13 48:17
  48:22 61:5
myself 24:10 64:6

N

name 6:21
named 17:18 50:1 58:15
names 18:6
narrow 20:21 48:19 56:20
narrowed 30:21 56:17
narrower 20:21 22:5,6,7 29:25
National 39:11
nature 23:17 69:24 77:18
nauseam 52:12
Nebraska 43:20,23
necessarily 27:23 47:2 52:25
  67:24
necessity 50:20
need 8:5 18:11 32:13 35:12 49:1
  58:16 61:22 62:4,8
needs 60:21 80:17
negative 20:25 21:1
Neil 33:6,25 34:3
never 62:24 64:17 80:21
new 9:2 15:13 25:24 40:4 43:2
  58:18,21 61:14,15 62:19
  66:22 75:13
Newark 36:3
next 50:14 64:6 69:3 71:5 73:21
  73:22 75:15
NHTSA 40:24 58:23
nice 9:5 74:25
night 37:6
nine 48:3
nitrate 11:8,18 40:10,11
nobody 80:5
non 29:16
nondesiccated 11:8 40:17
none 36:14 40:11 80:17 81:1
nonetheless 38:20
non-consequential 32:8
non-controversial 29:17 32:2,12
  40:1,3
non-defective 41:15
noon 61:6,6
normal 76:6
normally 23:25 62:9
North 2:6,20 3:3 29:2 35:9,9,15
  44:1 58:14 59:11 77:4
note 49:24 60:3
noted 21:19 56:1
notes 64:21 65:20
nothing 14:17 44:23 74:16,20
  81:2
notice 30:4 34:15,24 35:12,17

39:11 51:5 56:3
notices 39:5,8
notified 35:13,23
notify 35:6,19 36:5,8,10
notion 54:2
number 9:15 11:6 13:19 20:8
  28:22 31:11 34:23 45:10 56:3
  60:6,16 67:19,19

O

objective 31:9 34:25
observes 33:6
observing 7:14
obviously 10:5 11:1 26:9 45:6
  47:4 65:17,18 66:20 80:17
occasion 78:16
occasions 64:16
October 46:8
off 19:20,24 20:3 40:12 63:18,19
  72:5,8 75:10,11
offer 34:7 49:25
offered 28:16 48:19
offering 42:2
office 6:16 7:6,7
OFFICER 42:6 81:5
Official 3:2
Oh 9:4 24:13 44:20 45:18 50:11
  52:23
okay 5:2 6:6,19 7:1,4,13,24 9:6
  9:23 10:3 12:2 16:8 17:23
  21:15 22:11 24:3 28:5,13
  29:12 31:4 35:22 36:22,25
  37:5 39:25 41:12,16 45:18
  53:19 54:8 55:16 60:2,18,21
  61:23 62:12 66:23 70:25
  71:13 74:1,20 75:19 76:1 78:5
  78:15 79:10,19
Oklahoma 43:23 45:22,22,23
old 61:16 65:16
older 45:2
once 19:16,20 21:17,23 24:25
  56:18
one 1:15 11:6 12:11 13:8,19
  16:25 17:4,5,6 18:12 20:5,8
  24:6 26:20 28:23 29:8 32:12
  32:12,19 33:16,16 34:19,24
  34:24 37:7 41:8 43:7 45:2,13
  45:16 51:9 56:10,22 57:5,5,7
  57:21 60:21 61:7 62:20,22
  63:16 64:8 66:5 67:19 71:23
  72:18 76:13,20 77:2,3 78:7,21
  78:22 80:1
one-year 51:3 57:22
only 8:23 21:1,7 28:18 29:10
  34:4,11 35:22 39:11 47:3
  48:11,25 56:9,15 61:15 66:5
  67:19 73:15 74:18 77:3 78:21
open 80:24
opening 55:23
opinion 24:12 40:16
opinions 77:10
opponent 14:13
opponents 12:24 25:13 40:4,4
  74:5
opposed 15:22 66:22 76:13
opposition 10:14 69:11,18
option 49:2,9
oral 1:10 15:13 63:20,21
order 7:10 10:21 15:11 17:7,15
  21:16,19,23 24:11,17,18
  32:14 42:5 48:14 56:11,13,19
  57:24 59:14,21,21,23 76:13
  76:21 77:20 78:3,3
orders 23:4 24:8 25:1 30:10
  34:20,22 76:21
Oregon 43:20 50:4,17,17,23,25
  51:5,20 52:2,9,13,17,22 53:3
  53:17 54:17 76:25
Orseck 1:14 5:13,15

other 8:18 9:21 10:18 11:7 14:6
  19:19 20:16 23:16,18 24:9
  28:19 29:3 32:25 33:4,15
  34:24 36:20 37:7 38:3,13
  43:13 44:7 50:18,24 51:16
  52:5 53:2 61:1 64:16 66:10,12
  68:22 71:23 72:20,20 77:22
  80:23
others 41:22 48:14 53:5 70:15
  72:6,9,12
Otherwise 61:3
ourselves 27:12 66:17
out 8:3,16 10:21 13:20 15:16
  17:4 23:20 27:10,23,24 30:22
  35:8,11 44:8 47:12 48:1 53:16
  53:17 58:2 73:24 74:1 78:3,3
outside 41:21
over 15:7 33:23 38:7 40:10 47:1
  51:17 52:11 57:4
own 38:4,15 52:16 53:4 61:21
  63:6
owned 32:21,23
owner 29:6 33:7
owners 33:25

P

P 1:14
pace 63:25
page 4:2,11,11 25:20 71:7,8
  72:22 76:6
pages 10:13 18:24 42:1 62:7
  70:4 73:6,16 76:9,10
panel 22:24
paper 72:21
papers 11:19 60:8
paragraph 66:25
paragraphs 68:8
parentheses 68:8
part 13:15 15:8 20:13 22:20,21
  23:8,9,15 36:20 65:22 68:19
  77:11
partial 24:19
particular 11:7 13:3 18:15 36:21
  37:22 45:20 64:19 73:25 75:8
  77:12
particularly 25:25
parties 9:21 20:9 21:8,18,24
  56:16,19
partner 5:21
partners 14:7
parts 25:23
party 12:12 27:19 51:24
passage 18:14 46:25 47:6
passed 47:1
past 8:8 68:7
pasting 21:22
Pastor 74:23
PASTOR-HERNANDEZ 3:1
path 20:2
pay 63:3
paying 77:12
pending 10:14 12:20 18:25
  19:14 21:12 23:17 66:4 69:12
  69:18 79:24
Penthouse 1:19
people 9:7,13,15 15:2 35:6,17,22
  35:23 48:20 60:25 61:1,24
  78:23
people's 40:14 59:9
per 39:5,6
perceive 71:21
perfect 78:4
perfectly 22:22
perhaps 20:20 28:15 35:16 70:3
  72:18
period 57:22
permit 34:5,12
person 28:25 35:13 57:7 76:15
personal 17:17 24:19 43:15,17

46:7 48:10,13,18 49:16
**perspective** 42:24
**persuasive** 42:19,20
**Peter** 1:13 5:12
**petitions** 24:7
**phase** 72:13
**Phillips** 50:19,23 51:2,5,16,23
  51:23 52:16,21,22 54:16
**Philp** 2:10 7:2,2
**Phone** 26:23
**phonetic** 25:21,21 34:3,6 37:19
  56:23
**place** 5:25 17:13 22:2 28:20,23
  29:11 32:25 33:3,14 76:3
**places** 70:9,19 80:16
**plainly** 51:23
**plaintiff** 15:17 17:15,18 43:25
  45:20 46:5,11,12,13 47:24,25
  48:13 49:12,25 50:1,18 52:13
  56:22,23 57:5 58:16 65:6,10
  67:4 72:19 78:21 79:14 80:25
**plaintiffs** 1:13 5:11,13,15,17,19
  8:9,10 9:11 10:14,16 13:15
  19:15,20 25:20,24 27:7 28:16
  28:18,22 29:3,5,9,10 31:22
  32:12,19 33:9,15,17,19 34:7,9
  36:11,15,20 37:20,23 38:17
  38:21 39:20 43:11 47:14,22
  48:16,18,22,24 49:3,7,19 56:7
  58:23 59:12,19,25 64:8,24
  67:13 69:12,19 70:6,10,23
  72:20 73:1 74:10 77:16,16
  78:22
**plaintiff's** 16:17
**plan** 53:11
**planning** 42:22,23
**plans** 76:17
**plate** 54:15
**playing** 26:23
**PLC** 2:22
**pleading** 67:16
**pleadings** 65:25 66:6,17
**plus** 35:16
**Podhurst** 1:14 5:13,15
**podium** 10:7
**point** 14:23 17:10 24:24 33:2,10
  33:12 47:12 49:9,20 51:15
  67:19 72:19,24 73:24 74:1,9
**pointed** 38:18
**points** 33:22,23 34:19 55:4 69:9
  69:10,17,17 70:5
**Ponce** 2:2
**position** 43:1 57:6
**possible** 35:11
**post** 29:6,7
**postponed** 58:9
**powerful** 72:9
**practice** 51:4
**practitioner** 63:4,5
**predominance** 34:2
**preliminary** 49:3 75:25
**prerequisite** 48:20
**presale** 8:22 10:2,11 18:16 37:13
**present** 38:14
**presented** 39:2 73:19 74:14
**preserve** 79:5
**preserved** 8:5
**presumed** 49:22
**presumption** 48:25 49:6,19
  51:20,22
**pretty** 66:2
**prevalent** 55:24
**preview** 74:11
**previously** 31:14,22 65:9 73:25
**Prieto** 1:13 5:12,12 10:17,18
  11:1,3,6,24,25 12:3,8,16,19
  12:23 13:2 14:16,18,23,25
  15:4,10,15 16:1,3,6,9,22 17:3
  17:9 18:2,4 19:1,2,22 20:1,23

21:1,7,11,14,1 6 22:3,6 24:4,6
24:11,14,18,22,2 4 25:4,7,10
25:14 27:9 29:16 30:1,3,6,8
30:12,15 31:3,7,17 32:1,16
33:22 39:24 40:1,6 46:9,24
47:8 56:1 61:19 62:3 63:10
65:15,18 66:2,12,15 67:7,17
67:22,24 68:13,17 69:3,7 73:2
73:4,20,22,24 74:6,4,23 77:14
74:23 75:7,20 76:4,6,23 77:14
78:6,9 79:17 80:25 81:7
**primarily** 61:4
**primary** 67:12
**principle** 15:21
**prior** 30:10,19 32:16 34:15 48:2
  48:3 59:15 64:25 65:11,25
**priorities** 61:1
**private** 63:4
**probably** 6:7 7:10 10:19 12:6
  19:18 22:24 23:24 26:20,25
  28:3 32:6 45:3 57:5 61:23
  62:18,18,25 63:1,3 66:24
  71:13 72:17 76:23
**problem** 20:19 29:8,15 35:25
  49:7 56:8 59:16 72:25
**problems** 51:15,19
**proceed** 13:17 20:6 52:18
**proceedings** 1:10 5:1
**process** 25:12
**PRODUCT** 1:6
**proof** 14:4 16:16,25 18:18,21
  28:16 33:19 36:12,16 37:13
  37:16 38:11 39:1,2,7,14 48:23
  49:8,23,25 50:1
**propellant** 38:6
**propensity** 38:6
**proper** 17:18 23:13 30:16,23
  32:13 43:5 46:2
**properly** 49:5
**propose** 27:3 29:10 41:13 56:7
**proposed** 16:11,14 26:13,19
  46:2 57:11
**proposing** 32:19 72:12
**proposition** 34:5,12
**protection** 52:8
**prove** 19:10 28:17 29:5 34:9
  35:24 40:7 48:19,22 49:1,15
**proven** 19:7,8 33:9
**provided** 19:2 56:2 59:11
**provides** 29:10
**providing** 56:4
**proving** 36:14 48:24 49:2
**prudential** 58:19 60:4
**PSAN** 38:6 39:6 40:17
**publication** 35:16
**publicly** 63:2
**purchase** 28:21,23 29:11 30:2
  31:15 32:25 33:3,14 35:4 36:3
  36:4,13 48:3,17 49:15
**purchased** 14:10 29:1 35:1,3,22
  46:7 48:2
**purchaser** 51:17
**purchasers** 36:7 53:3
**purchases** 29:7 43:9
**purposes** 56:3
**put** 63:3 66:25 68:8 76:9
**P.A** 1:14,18
**P.C** 2:2

**Q**
**qualifications** 38:24 63:7
**qualified** 63:2
**qualify** 52:13
**question** 7:25 12:6 16:18 26:6
  27:8,10 35:6 38:9
**quicker** 77:24
**quickly** 13:8 23:2 25:9,9 55:4
  61:3,8 63:23
**quiet** 74:17

**quote** 15:23 16:9,10 30:4 40:16
  40:21 49:21,23

**R**
**Radican** 14:8 17:17 43:7,16,17
  46:5 48:1,7,12 49:10 50:22
**Radican's** 43:15 48:10 65:6,10
**raise** 50:8 57:1 74:6,9 80:20
**raised** 52:25 55:22 56:11 64:19
  65:5,6,18,19 67:20 69:11 75:9
**raises** 57:16
**ran** 63:5
**Randolph** 2:23
**Ranz** 25:21 38:19,19 40:8,15,20
**Raoul** 2:9 6:24
**rapid** 63:25
**rarely** 80:12
**rather** 16:15
**RE** 1:5
**read** 7:24 14:12 15:7 55:9,9
  60:17 62:10 65:16
**reading** 42:21
**ready** 25:8
**real** 50:23
**really** 7:12 21:2 27:17 34:24
  38:20,22 43:14 45:4 59:25
  61:4 66:7 73:24 76:9 78:1
**rear** 75:3
**reason** 13:19 14:2 18:7,8,9 20:16
  21:7 37:7 63:4 64:10 77:1
**reasonable** 35:12,14 60:25 68:22
  71:13
**reasons** 5:5 13:12 19:21 24:9
  31:23 32:5 33:16,17 44:8
  51:21 52:14 57:13
**rebrief** 21:8,10,18,2 1 56:20
**rebuttal** 25:24
**rebutted** 51:23
**recall** 29:7 39:4,14 48:4,12
  49:17 51:5 58:23 65:3
**recalls** 39:4,10
**received** 4:9 35:18 51:5
**recess** 37:8 81:8
**recognition** 75:5
**recognize** 75:4
**recognized** 13:13
**record** 5:6 9:22 20:10 36:14 39:3
  39:8 42:2 55:24 63:18,19,20
  75:3,10,11 78:21
**records** 35:4
**recover** 48:22
**recovery** 45:25 48:11
**redhibitory** 57:20
**references** 19:3
**referred** 28:18 32:16
**refile** 20:9 21:18,24 26:21
**reflect** 32:24 42:2 75:3
**reflected** 32:22
**regard** 7:11
**regarding** 55:4,12
**regardless** 49:9
**registered** 29:1 31:13,14 35:7,9
  35:15,16
**registration** 29:10 31:12,13
  32:23,24 33:4,13 36:18
**regret** 73:16
**regurgitation** 62:5
**rejected** 24:7,25 60:16
**rejecting** 60:6
**related** 40:22 59:13,13 67:3
**relationship** 43:10,11 51:18 52:1
  52:7
**relevant** 33:1
**reliance** 43:10,17 48:25 49:1,6,9
  49:19,22,23,2 5 50:25 51:20
  55:11 59:24
**relief** 60:13,13
**rely** 49:13 50:3
**remaining** 26:10 42:13 44:3,8,18

56:22 79:4
**remains** 27:20
**Remember** 45:14
**removed** 54:21
**Renee** 2:5 7:5 55:18
**rep** 17:5 47:4,5 50:19 52:4,6,17
  52:22 57:13 78:22
**repackaged** 14:19
**repair** 29:7 48:11 49:16
**repaired** 58:25
**repairs** 29:7
**repaste** 23:3
**repeat** 61:7
**repeating** 8:6
**replace** 18:12
**replaced** 41:2 62:24,25
**replies** 62:4,5,9
**reply** 58:17 62:7,8,10,12,1 3 73:4
  73:10,14 76:4,5,7
**report** 40:15,21
**REPORTED** 3:1
**reporter** 3:2 7:19 42:3
**reports** 40:23
**represent** 14:9 48:14 50:18
  53:15
**representation** 67:6
**representative** 43:6 46:3,5,6
  50:2,24 51:9 53:2,5
**representatives** 18:10 20:15
  23:18,19 43:7 46:25 47:16
  50:21 51:13
**reps** 59:13
**request** 7:25 62:6 72:24
**require** 14:4 43:11
**required** 38:12 39:22 52:2
**requirement** 35:5,12 51:3 52:2,4
  52:8
**requires** 45:24
**requiring** 48:16
**researching** 49:14
**reset** 28:15
**resolution** 25:15
**resolve** 46:15
**resolved** 51:7
**respect** 21:3 33:7 58:3 74:13,15
  71:4 74:5 75:13
**respond** 55:3 61:15 65:7 67:1
  71:4 74:5 75:13
**responded** 65:11,25 75:13
**responding** 61:19
**response** 15:11 61:7 65:5,11,13
**responses** 66:4
**rest** 81:3
**restarted** 58:10
**result** 72:21
**retain** 33:7
**review** 5:4,6,7 48:7 59:18
**Rhode** 14:8 43:12,22 46:14,17
  67:10
**rid** 15:2
**right** 7:14 8:2 9:19 12:7 14:11
  15:15 16:6 17:23,23 18:25
  20:21 21:5,13 25:6,16,16 26:6
  26:18 27:8 28:8,13 30:1,3,5
  30:13 32:9,20 33:2,21 36:17
  39:23 41:22 42:18,18,25
  43:24 45:8,12 46:5,19 47:3,10
  47:11 48:5 50:5 52:19 54:6,14
  54:18 60:22,23 65:8,18 66:11
  67:17 70:25 72:6 75:24 80:18
**rights** 74:6 79:5,9
**righty** 6:8
**ring** 26:24,24
**rise** 42:6 78:16,18 81:5
**road** 32:13
**roadsters** 39:18
**Robert** 1:18 40:8
**rose** 7:15 58:5 64:10
**rough** 1:1,1,1 75:7
**RPR** 3:1

**rule** 8:18 19:15 22:19 24:7 25:9 25:10 27:16 35:13 38:11 49:21 61:2 62:15 63:22
**ruled** 44:6 66:13
**ruling** 77:24
**rulings** 56:18 78:13

**S**

**S** 2:1
**Safety** 39:12
**sale** 57:24 59:14
**Sales** 37:19
**same** 11:6,11,16 22:17 23:4,23 29:18,20 31:5 32:6 34:21 38:2 38:14 40:10,21 44:8 59:14 61:16 68:4 70:21 72:1,3 79:21
**San** 2:16 9:3,4
**Santoro** 52:10
**sat** 77:23
**saw** 79:2
**saying** 5:4 16:12,13,23 19:9,10 21:23 26:12 29:22 41:15 47:21,21 53:7,9 56:17 59:21 66:15 68:1 69:16 70:23 78:21
**says** 9:6 11:24 17:11 49:21
**schedule** 23:11 60:23
**Schiller** 1:22 5:19
**Scola** 62:23,24
**screwed** 17:12
**se** 39:6,6
**seat** 62:20,21
**seated** 7:13
**second** 12:1 14:2 17:10 18:8,9 22:9 26:25 29:12 48:7
**secondly** 79:3
**SECURITY** 42:6 81:5
**see** 9:5 10:6 12:25 15:6 26:19 27:6 28:21 32:17 41:12 51:24 54:4 61:23 71:4,15 73:15 74:14 77:11
**seek** 60:14
**seeking** 58:24 60:13 74:10
**seeks** 14:8
**seems** 8:23 56:15
**seen** 37:14
**send** 35:8
**sending** 35:19
**senior** 1:11 63:8
**sense** 13:16 20:1,20,22 27:2 30:25 57:12 64:18
**sent** 40:23
**sentencing** 41:20
**separate** 50:24
**September** 23:5,6,10 25:9 26:3 62:19 63:22
**serious** 51:14,19 52:12
**service** 50:13
**set** 44:8 58:21 60:24
**settled** 9:14
**settlement** 32:18,20 33:1 78:12
**settlements** 29:20 32:16 34:15
**several** 13:12 26:7 36:1 63:9 76:21
**share** 40:19
**sharpened** 45:11
**Sheldon** 2:10 7:2
**shocked** 64:5
**short** 37:8 41:20 62:7
**shorter** 72:16
**shot** 13:7
**shoulders** 75:5
**show** 15:11 18:11 25:25 29:11 33:2,4,10 36:9,19 38:12 56:4
**showed** 10:11
**showing** 18:15 38:11 49:22,22
**shown** 37:20
**shows** 39:3,8,13 56:5
**Sibley** 56:23
**Sibley's** 56:25

**side** 10:16 60:22 78:13
**significantly** 14:8 30:9,21 43:4 56:16
**similar** 15:19 17:14 23:17 45:3
**similarity** 16:16
**simple** 54:10
**simplify** 53:23
**simply** 31:8 34:7 36:18 39:13 47:5 61:20 66:17 69:4
**since** 8:4 9:1 16:20 58:17,24 61:7 62:20 64:11 79:17
**Singhal** 36:4
**single** 35:13 60:9,10
**sir** 62:3 78:6
**sit** 8:3 74:19
**sitting** 19:13 76:17
**situated** 9:21
**six** 58:12
**skipping** 42:1
**slide** 28:22 29:8 32:17 33:3
**smarter** 5:8
**Smith** 2:5 7:5,5,10 54:23 55:17 55:18 56:15 57:3,9,19 58:5 62:6 68:25 73:7,13 74:9,13,15 78:16,17,20 79:1,9,12,15 80:6 80:8,12,15,19
**some** 16:11,15 20:14,14 44:6,22 45:6,11 50:23,24 56:12 59:2 59:11 60:25 61:1,14,24,24,25 64:8,10,15,2,5 65:3 70:5,15,22 72:5,8,12,13,19,1 9 77:10,22 78:12 79:3,5 80:16
**somehow** 34:9
**someone** 7:15 35:3 53:4 58:5 73:6
**something** 8:6 9:18,24 15:13 16:13 26:2,18 32:3,22 35:2 44:19 56:7,8 57:20 68:5,7 69:3,20,24 73:18,19 75:12,23 76:17 77:19
**sometime** 35:24 60:20
**sometimes** 13:5 15:13 24:14,14 47:5 77:16 80:6,10,12
**somewhat** 38:19 52:11
**somewhere** 21:20
**soon** 40:13
**sooner** 22:24
**sore** 63:16
**sorry** 18:2,9 21:21 24:18 33:3 43:19 45:16,17 64:11 71:3 72:7 73:7
**sort** 30:16 35:2 42:23 50:24 51:11 54:4 72:13
**sounds** 59:4 61:13
**South** 2:11,19
**Southeast** 1:15,23 2:11
**Southern** 1:2 36:2 60:5,10,15
**so-and-so** 68:9
**spanning** 38:8
**speak** 8:21 10:15 37:1 41:22 42:8 54:20 60:21
**special** 43:11 52:1
**specific** 35:18 55:19 65:15
**specifically** 49:21
**speed** 25:11
**spoke** 38:19
**spoken** 42:9
**staff** 6:7
**stage** 15:24
**standard** 12:14 15:20 25:2
**standing** 49:5
**stand-alone** 50:19
**start** 10:2 55:17 63:15 64:14 66:5 68:1
**started** 40:13 45:14 68:14
**starters** 43:2
**starting** 8:7
**state** 29:10 30:19 35:1,3,7,22 36:3,4 42:11 43:13 45:21 46:2

**48:16 49:12 50:17,19 57:5 63:6 64:2 72:1,2,3,10,19,19 76:12
**stated** 68:9
**states** 1:2,11 3:2 8:17 14:7 23:14 30:22,22 32:22 35:16 43:3,15 43:18 44:6,7,7,19 45:6,23 50:18 54:17 58:12,14,15,15 64:2 67:11,12 69:23 70:3,6 72:2,5,9,12,20
**state's** 65:21
**statute** 51:14 57:16,22,23 64:8
**statutory** 49:5 51:2
**stay** 41:21
**stayed** 41:19
**STENOGRAPHICALLY** 3:1
**still** 13:7 23:18 27:20 36:5,8 56:22 62:21
**stop** 14:11 37:8
**Stopinjer** 37:19 38:13
**story** 63:16
**strategic** 19:19,20
**strategy** 23:24
**Strawn** 2:15,18 6:11,13,22
**straws** 70:1
**Street** 1:23 2:6,15,19,23
**strength** 70:24
**strike** 38:18,21,23
**strong** 71:16,17,18,22,23
**stronger** 70:6,9,15,18 71:18,23
**strongest** 71:17,21
**stuck** 23:9
**stuff** 41:20 65:21 69:25
**subject** 57:15,18 77:1
**submission** 77:3,7
**submit** 13:25 17:8,14 26:13,16 36:15 37:13,20 38:15 39:3,12 42:5 67:15 68:21 69:21
**submitted** 77:20
**substance** 12:7
**substantial** 18:20
**substitute** 47:4
**substituting** 5:21 51:8,12
**succinct** 77:8
**suffice** 39:14
**sufficient** 35:17 71:6
**suggest** 26:5 54:12
**suggested** 73:6
**suggestion** 80:19
**suggestions** 80:24,24
**Suite** 1:15,23 2:16,23 3:3
**summarize** 68:8 72:20
**summarized** 10:12,13
**summarizing** 42:21
**summary** 12:5,8,21,22 13:3,7,21 14:18,19 15:4,21 16:2,18,25 17:3 19:6,14,16 20:4,10,11,22 21:9,12,19,19,25 22:4,10,16,17 23:13,14,21 24:20 25:11 26:4 26:21 27:17,21,25 30:17 31:3 31:4,5,19,2,3 44:6,9,10,13 52:25 53:11,12,13,21 54:9 55:12 56:17,20,2,5 57:12 58:1 58:9,16 59:1,2,17 60:1,7,24 61:5 62:15 63:11 64:25 65:10 65:12 66:3 67:4,5,5,16,18 69:14 70:4,12 74:6,7,11 75:24 77:6,25 79:2
**summer** 78:2,3
**supplement** 58:19 59:4 65:19,22
**supplemental** 25:20 64:19 65:7 75:22
**supplier** 39:11
**suppose** 73:14
**Supreme** 15:19,25 16:1
**sure** 6:7 8:25 10:1,25 14:25 15:10 26:15 29:14 34:7 37:10 41:8,11,14 66:1 68:2 70:14 73:15,20 77:7 80:16

**surely** 10:11
**Surgery** 34:3,6
**surmising** 77:17
**surprise** 73:19
**surprised** 79:2
**survive** 53:20
**survives** 53:13
**suspect** 41:22
**SUVs** 39:18
**switch** 54:22
**swith** 45:22
**S.D** 1:4

**T**

**T** 2:21
**table** 4:1 57:12
**tag-along** 58:14,15
**Takata** 1:6 5:2 11:8 32:18 37:17 37:24 40:17,23
**take** 22:23,25 37:8 43:12,14 49:11 54:2 61:1 64:21
**taken** 12:18
**takes** 20:19 28:11 57:8 78:1
**taking** 62:17
**talk** 18:3 23:25 39:9 46:10 50:16 55:1 78:14
**talked** 50:22 78:11
**talking** 17:9,10 34:23 37:12 44:17 45:19 47:24 51:12 56:21 61:25
**Tarus** 56:23
**tee** 59:25
**teed** 22:22
**tell** 5:7 8:22 9:23 19:19 42:4 66:21 67:15 68:5 75:12 76:19 77:20,21
**telling** 66:22 71:16,22 76:14
**terms** 35:21 46:1 53:1 55:11
**testified** 40:20
**testify** 18:22
**testimony** 18:23 19:4 38:3,4,16 38:21
**testing** 35:1 37:23 38:16 39:20 50:6 52:20 54:18,19 58:5 60:1 60:19 62:2,3 78:17 81:3,6,7
**Thank** 33:21 34:18 36:22 39:23 50:6 52:20 54:18,19 58:5 60:1 60:19 62:2,3 78:17 81:3,6,7
**their** 21:24 28:17 29:1,4 33:8 35:3,24 36:16 37:21 38:3,4,15 38:18,21 39:21 43:9 49:8 53:13 58:24 61:21 67:2 68:11 77:12
**themselves** 10:21 39:4,9 66:17
**theories** 29:4
**theory** 30:20
**thick** 66:24
**thing** 8:2,19,23 19:19 20:5 24:6 27:2 32:6 40:21 47:3 51:16 54:4 64:7 66:24 75:6 76:8 78:11
**things** 20:18 23:16,18 29:7 30:12 34:24 36:19 38:7 55:19 57:16 63:14 67:2,17 68:14 72:15 75:1 76:14
**think** 7:10 8:7,11,14,14,1 6 9:20 9:24 12:14 14:2 17:21 19:18 20:6,24 23:2,11,13,20 25:10 25:12 26:7 27:13,15,19,24,25 28:14 30:15,22 31:7 36:9 37:1 39:20 42:14,17 43:14 44:13 44:18 45:5,10,21 50:17,20 51:12 53:3,11 54:1,6,23 55:10 56:8,11 57:4,9,10,11,15,25 59:6,7,17 60:23 61:24 62:4,21 63:10,13,17 69:24 70:2,5,9,11 70:16 71:6,15,24 72:17,21,23 75:1 76:11,12,23 80:9,17
**thinking** 23:7 63:14 71:21
**thinks** 27:14
**third** 1:15 18:7 48:10 51:24

**though** 7:12 9:5,20 38:9 43:4 47:12
**thought** 7:8 18:4
**three** 10:23 11:5 20:3 28:11 61:20 68:8
**through** 11:5 35:4,4,15 42:13 44:10 46:4 49:12 56:17 64:3 78:11
**till** 24:21
**time** 14:3,5,9,21 17:2,7,12 18:10 18:14 20:14,1,5 23:23 26:17 31:1,5 38:7 40:10 46:7,25 47:1,1,6,8,2,4 49:14 51:3 54:4 57:10 61:2,22 67:2 68:3 73:15 75:15 76:9 77:15,24
**timeliness** 64:24 65:6,11 67:2
**times** 27:15 62:5
**timing** 58:11
**today** 7:12 45:11 47:13 68:16 69:11
**today's** 66:7,8 68:19
**together** 42:23 68:22
**told** 24:15 32:3 48:9
**tolling** 14:4 26:16
**Tom** 18:23 19:1
**top** 11:5
**topic** 28:10
**topics** 73:25 76:12
**total** 32:25 33:11,14 36:19
**totally** 8:14 12:25
**towards** 39:4
**town** 80:9
**Toyota** 37:19 38:13
**Traffic** 39:12
**transactional** 51:18 52:7
**transcript** 63:4 74:24
**TranSouth** 49:20
**traveling** 44:22
**trial** 16:21,23 23:5,6,9 25:15 26:3,12 27:14,14,15,16 41:4 62:18 63:24 64:1 79:4 80:3
**trials** 77:25
**tried** 30:20 36:3,6 79:6,11,13
**trite** 78:11
**trouble** 55:14 57:3 74:20
**Troy** 2:14 6:10
**true** 66:10
**truncated** 77:9
**Trust** 52:10
**try** 80:4,11
**trying** 32:2
**Tryon** 2:19
**turn** 33:23 39:4
**twice** 20:18 24:7
**two** 19:23 20:3,8 33:22,23,24 34:4,11,11,22,23,23 38:18 51:6 59:19,25 61:8 67:17,19 68:8,13 69:9,19 78:22
**tying** 42:23
**type** 43:10 45:20 60:6
**types** 29:7 37:25
**typical** 46:6 52:6
**typicality** 17:16 69:10,17
**Tyson** 15:18,19 16:10

---

**U**

**umbrella** 42:12
**uncomfortable** 15:1
**under** 8:2 35:13 37:18 39:22 43:3 45:25 47:25 51:13 52:2,9 52:13
**understand** 11:15 13:6 26:22 47:11 61:2,22 67:25
**Understood** 25:7 30:12 67:7 75:20 77:14 78:9
**undisputed** 39:17
**unfortunately** 44:22
**uniform** 40:9,19
**United** 1:2,11 3:2 32:22

---

**unlawful** 51:4
**unless** 31:15 71:14
**until** 12:5 51:6 68:11 76:3 77:11 78:12
**unusual** 33:15
**updated** 58:17
**updating** 45:6
**upset** 9:13
**USA** 2:9 6:11,13 51:18 79:23
**use** 29:10 48:18
**used** 11:7 18:6 31:12 51:16
**useless** 33:7
**using** 29:18,20 34:9 40:12
**usually** 62:10
**Utah** 44:1
**U.S** 15:20

---

**V**

**vacancy** 62:22
**vacation** 44:24 76:17
**vacationing** 5:23
**vacations** 59:9 61:1 68:22
**vague** 35:2
**valid** 30:17
**variables** 39:9
**variety** 23:14
**various** 14:7
**veer** 20:3
**vehicle** 29:1 32:23 33:11 35:2,3 37:24 56:2 58:25
**vehicles** 11:13,14 25:23 29:6 36:19 37:17 38:1,8,14 39:18 40:18,19 59:14
**verdict** 16:6,7 26:3,5,13,19 27:3 27:20,22 41:13 64:2
**Vermont** 43:23 46:5,14 48:16,17 48:24 49:8 67:10 80:22
**version** 66:6
**versus** 33:6,25 34:3,3,6 37:19 38:24 49:20
**very** 27:24 32:18 42:17 43:1 47:22 51:13 56:24 58:3,8 59:4 59:18 60:1 62:7 63:8 66:24 73:23 80:12
**via** 49:23,25
**view** 19:15,15 43:8 75:3
**VIN** 31:11 33:8 56:2 59:11
**VINs** 35:7,8,11,15,18,1 8 59:13
**violate** 79:11
**Virginia** 43:23 44:1 49:11,18,21
**visual** 28:9,12
**voice** 7:21
**Volkswagen** 32:20
**volunteer** 80:4
**Volvo** 33:6,25 34:3
**VW** 33:1

---

**W**

**wait** 12:5 24:21 68:11
**waited** 55:1
**waiver** 79:7,9 80:20,21
**want** 5:3,7 8:4,11,13,2 1 9:9 14:12 17:6 22:17 24:1 25:5 27:17,23 28:5 30:11,12 32:10 37:1,6 41:22,23 42:10 45:15 50:16,25 52:21 55:18,24 57:25 59:9 60:23,25 62:1,12 64:3 65:16 66:5,25 67:14,15 68:2,5,10,10,11,1 8 69:20 71:4 72:14,16,22 73:17,18,21 74:5 74:8 75:7,12,13,19,25 76:19 77:12,18,19 78:1,23 79:1 80:19
**wanted** 7:9 10:4 34:18 42:11 49:11 60:4 67:20,25 71:14 80:20
**wants** 20:5 21:8 27:20 46:10 57:10 75:23
**warranty** 57:20

---

**Washington** 77:5
**wasn't** 24:11 34:8 65:5
**waste** 77:15
**way** 8:17 9:1,18 13:8 22:11,17 23:1,1,23 26:20 30:23 34:21 38:14 40:6 41:20 46:8 50:14 52:16 54:5 58:1 59:18 61:2 63:25 70:23 72:13 76:20 78:7
**ways** 52:18
**Wednesday** 69:3 73:21,22 74:5 75:15
**week** 61:17 71:5 74:7
**weeks** 15:7 61:8
**week's** 74:24
**weight** 38:24
**Weinshall** 1:14 5:14,15 33:23 34:13,18 36:13 46:10,16,20 46:23 52:22,24 53:6,10,18,20 53:22,24 54:22 55:3,7,10,15 55:20 56:1 60:3 61:10,13,17 62:2 64:11,14,18,2 3 65:3,9
**well** 6:6 7:8 8:2 14:6 18:20 19:12 19:22 20:1 21:1,11 22:12 23:20 24:19 26:7,17 38:10,21 41:13 42:17,20 44:11 45:9,16 47:15,22 50:6,18 53:7 60:17 61:10 66:10,20 67:17 70:7 71:1 73:5 77:23 79:22
**went** 15:24 16:1,6,21 26:3 69:5 76:6
**were** 5:1 7:13 11:7,8,13 18:4 19:24 21:24 26:4,4,11,13,19 27:20,22 29:22 33:24 34:15 35:9,21 36:5,8,19 37:6 38:24 39:10 41:3 44:15,17 45:7 51:12,22 52:18 59:14 64:19 65:19,21,22 66:6,7 67:22 75:8 75:13,14
**weren't** 37:25
**West** 43:23
**we're** 24:8 63:17 69:7 74:3
**whatsoever** 39:20
**whichever** 75:22
**while** 19:13 37:9
**White** 2:10 6:24 7:3
**whole** 54:13 58:18,21 75:6
**Wilkerson** 2:18 6:21,21 50:4,5,7 50:9,11,13,16 52:20 54:1,8,11 54:14,19 57:17
**Wilkie** 3:2
**willing** 22:13
**win** 22:14 24:14
**windfall** 58:24
**wine** 8:15
**Winston** 2:15,18 6:11,13,22
**Wisconsin** 44:2
**wish** 7:7 13:8 25:17
**wishes** 8:21 42:8
**witness** 11:5 38:20
**witnesses** 10:11
**Wi-Fi** 6:4
**words** 37:4
**work** 27:14 77:18
**worried** 69:14
**worry** 79:20
**worse** 8:16 27:16
**Wow** 5:10 37:3
**write** 60:17,20 68:18 69:20 76:2 78:5
**writing** 8:4,5 42:15 55:6,8 63:3 63:15,17 64:14 66:5 67:15 68:1,14 71:21
**written** 42:5,17
**wrong** 13:5 29:22
**wrote** 77:11

---

**X**

**X** 31:23
**XXX** 41:25

---

**Y**

**yeah** 7:10 25:14 27:6 41:7 45:5,8 48:10 50:12 52:23 64:23 70:2
**year** 45:7 51:10 64:7,9
**years** 5:10 19:25 39:18 48:3 51:7 62:20 63:9
**yesterday** 56:15
**yield** 27:21 70:8
**York** 9:2
**Yoshino** 2:14 6:10,10,15,18 8:25 9:3,5,8,11,15,2 0 10:1,4,9,25 11:12,17,22 13:10,22,25 14:6 17:8,14,24 18:1,7,9,13,20,23 22:9,12,15 23:12,16 24:2 25:18 26:7,15 27:4 28:1,4,6,9 28:14 29:14 32:11 36:11,18 36:23 37:12 42:10,11,16,19 42:22 43:1,14,19,21,25 44:11 44:15,17,22,2 5 45:3,5,9,13,16 45:19 47:12,16,18,2 1 48:6,10 50:6 54:11 68:24 69:9,16,21 69:23 70:2,7,11,14,16,20,22 71:1,3,6,9,12,2 5 72:3,7,11,17 72:23 73:8,11,1 4 79:21 81:6

---

**Z**

**Zachary** 2:1 5:16

---

**$**

**$500** 26:25

---

**1**

**10** 30:22 41:24 48:2
**100** 1:23
**101** 2:15
**11:55** 81:9
**12th** 61:6,6 75:18
**12-2** 1:6
**12-24** 3:3
**13** 43:3
**130** 2:23
**14** 58:17
**14th** 75:18,18,19,2 1 76:1
**14-C-24009-MORENO** 1:4
**15** 5:10 10:20 30:22 43:2 58:17
**15th** 44:19 54:12 59:4,6
**15-MD-02599** 5:10
**15-2599-MD-MORENO** 1:4
**16th** 2:19
**18** 44:18 45:5 69:23
**194** 49:24

---

**2**

**2** 25:20 29:8
**2nd** 1:23 61:25 62:4
**20** 39:18 73:14 76:7,7,9
**200** 2:11
**2007** 14:10 46:8 48:3
**2009** 48:2 59:15
**2015** 47:13
**2016** 51:5
**2018** 51:6
**2023** 56:11
**2024** 1:8
**2222** 2:2
**23** 35:13 38:11 69:24
**23(f)** 24:7,25
**2300** 1:15
**24** 49:24
**255** 1:19
**2599** 1:3
**26th** 61:8,23
**28th** 76:1
**2800** 1:23
**28202** 2:20
**29** 1:8

---

**3**

**3** 10:13 18:24 33:3
**300** 2:6,19
**305-358-2382** 1:17
**305-358-2800** 1:16
**305-358-5744** 2:13
**305-371-2700** 2:12
**305-476-7400** 1:20
**305-476-7444** 1:21
**305-539-1307** 1:25
**305-539-8400** 1:24
**305.523.5118** 3:3
**312-862-2000** 2:7
**312-862-2200** 2:8
**312-985-5945** 2:24
**312-985-5999** 2:25
**33128** 3:3
**33131** 1:16,24 2:12
**33134** 1:20 2:3
**3500** 2:16
**3900** 2:23

_____ **4** _____
**4** 32:17
**4th** 75:17
**40** 70:4 72:23,24 73:3 76:7,10
**40-page** 76:8
**40/40** 73:4
**400** 3:3
**415-591-1000** 2:17
**457** 15:20
**4690** 56:13,14 66:23,23
**4900** 2:11

_____ **5** _____
**5** 76:7
**5,000** 66:18 68:7
**538** 49:24
**560** 49:24
**577** 15:20

_____ **6** _____
**6** 10:13 18:24 42:1
**60601** 2:24
**60654** 2:7

_____ **7** _____
**7** 10:14 18:24
**704-350-7700** 2:20

_____ **8** _____
**8** 46:8

_____ **9** _____
**9th** 62:12
**9:45** 5:1
**94111** 2:16
**973-422-5593** 2:3
**973-994-1744** 2:4