UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 2599
Master File No.: 15-MD-02599-MORENO
S.D. Fla. Case No. 15-cv-20664-MORENO
S.D. Fla. Case No. 14-cv-MORENO

| | |
|---|---|
| In re | ) |
| | ) |
| **TAKATA AIRBAG PRODUCT LIABILITY LITIGATION** | ) ) ) ) ) ) ) |
| _____ | ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| ALL CASES | ) ) ) ) |

**NON-PARTY VERISTAR, LLC'S
APPLICATION FOR PAYMENT OF FEES AND EXPENSES**

Veristar, LLC, as assignee of Planet Data Solutions, Inc., ("***Movant***") by and through its undersigned counsel, files this application (the "***Application***") for Payment Pursuant to the Order Granting Unopposed Joint Motion for Order Approving Bankruptcy Protective Order Relating to Data of Bankruptcy Takata Entities (D.E. 3327) (the "***Order Adopting the Stipulated Order***"). In support thereof, Movant respectfully states as follows:

**I.   SUMMARY OF RELIEF REQUESTED**

Movant, as Planet Data's assignee, incurred substantial and unpaid charges that need to be paid for the storage of databases acquired from certain of the Takata Entities in accordance with the Confidentiality and Data Privacy Agreement and Stipulated Protective Order (the "***Stipulated Protective Order***") entered in the Takata Entities Bankruptcy Proceeding. Since Movant's

acquisition of Planet Data's assets in January of 2021, Movant maintained and administered the processed data originally received by Planet Data in accordance with the protocol established in the Stipulated Protective Order. The amount of Transferred Data that was processed and is currently being maintained on Movant's Exego platform – 128 terabytes – is significant. Movant's unpaid charges over the last three (3) years are equally significant and continue to add up on the large amount of data Movant is maintaining.

Chair Lead Plaintiff's Counsel, (the "**MDL Counsel**") and other litigants were admittedly made aware of Movant's involvement in February of 2021, and counsel for the Takata Entities a short time thereafter. Yet, counsel have not paid the expenses Movant incurred. Movant's suggestions regarding options for reducing the accruing expenses on the Transferred Data have similarly been ignored. Instead, Movant received multiple demands to continue to maintain the data in accordance with the Stipulated Protective Order for the benefit of the parties and potential future litigants. Movant has done so at considerable expense. Despite being advised that motions would be filed in the Takata Entities bankruptcy proceeding (the "**Bankruptcy Proceeding**"), to address Movant's continued involvement and the resolution of these issues, none of the parties have followed through. Further, when Movant sought payment through the Bankruptcy Proceeding, MDL Counsel argued Movant sought relief in the incorrect forum. Movant has not been paid and the disposition of the Transferred Data has lingered for months.

Movant is not a litigant. It is not counsel to any of the parties. Movant is merely a vendor providing services at the demand of the parties involved. Its only "position" is to be compensated for the fees it has been "leveraged" to incur. Movant has therefore filed the instant motion to resolve this matter.

Under these circumstances, Movant requests that orders be entered approving Movant's processing and storage of the Transferred Data under the protocol established in the Stipulated Protective Order and Order Adopting the Stipulated Order and authorizing and directing payment of all sums owed for Movant's services with respect to the Transferred Data in this case.

## II.  BACKGROUND

### A.  The Bankruptcy Cases.

1. On June 25, 2017 (the "**Petition Date**"), each of the TKH Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Case**").

2. To address certain anticipated discovery issues involving litigants in various lawsuits related to Takata PSAN Inflator and related claims, the Debtors and certain affiliated entities in a civil rehabilitation case in Japan (the "**Takata Entities**") negotiated a framework for tendering relevant data in the control of certain Takata Entities and making it available in a usable form to litigants, all while preserving relevant privileges and complying with the data protection laws of Japan.

3. On November 29, 2018, the Stipulated Protective Order was entered in the Chapter 11 Case memorializing the framework of the parties to govern the data produced by the Takata Entities. It was executed by, among other signatories, the Chair Lead Plaintiffs' Counsel in the Takata Airbag Products Liability Litigation, Podhurst Orseck, P.A. ("**Podhurst**"), and counsel for the Takata Entities and adopted by Planet Data Solutions, Inc. ("**Planet Data**").

### B.  The Stipulated Protective Order.

4. The Stipulated Protective Order provides parameters (the "**Protocol**") for processing and providing access to the relevant data to litigants. The Protocol contemplates essentially two (2) undertakings for the data processor: (i) the processing of raw data into a more

3

usable form for further processing; and (ii) the formatting and/or exporting of the processed data to a platform that permits effective access by third parties. Planet Data was the agreed upon data processer for the effort.

### (1) Processing and Storage of the Takata Entities' "Raw Data"

5. The Protocol provided for certain "raw" data under the control of the Takata Entities and other "custodians" to be transferred (the "**Transferred Data**") to Planet Data and processed and stored "***at the expense of MDL Counsel***." *See* Stipulated Protective Order, para.3 (emphasis added). Planet Data was required to process all of the raw data it received from the various custodians and maintain the data for further processing in accordance with the Protocol. Such processing is a necessary interim step to allow for further processing and effective use by litigants.

6. As contemplated in the Protocol, certain of the Takata Entities tendered hard drives containing raw data to Planet Data for processing. Planet Data processed the raw data and stored the resulting databases on Planet Data's proprietary "Exego" platform. While still not in a form easily accessible by litigants, the processed data could be extracted and placed on a platform for more effective access by litigants. Once established, the databases containing the Transferred Data remained on the Exego platform for further processing in accordance with the Protocol.

7. Upon information and belief, Planet Data retained the original hard drives containing the raw data that it had received from the Takata Entities.

### (2) Processing and Access to a Particular Custodian's Data

8. Pursuant to Steps One through Five of the Protocol, qualified third party litigants (each a "**Requesting Party**") can gain access to the targeted data of a particular custodian relevant to the litigant's matter.

9. More particularly, upon a formal request, the subset of processed data sought by a Requesting Party (the "**Custodian's Data**") is to be formatted and/or exported to Planet Data's platform where the data can be accessed by the respective Requesting Party.[1] *See* Stipulated Protective Order, para 3.

10. Planet Data received such requests from two (2) litigation counsel, namely, Podhurst and Motley Rice LLC ("**Motley**"). Accordingly, Planet Data entered into two individual, separate statements of work with those counsel regarding their rights in accessing the particular Custodian's Data that they had requested. Both SOWs incorporate and make applicable the "steps" established in the Protocol for providing access to the requested Custodian's Data. The Podhurst SOW, dated May 8, 2019, was approved on June 5, 2019. The Motley SOW, dated May 14, 2019, was apparently on June 6, 2019.

**(3)   Disposition of the Transferred Data Upon the Conclusion of the Litigation**

11. The Protocol further contemplates that the Transferred Data is to be given back, "if possible," to TK Holdings at the termination of the MDL Litigation. *See* Stipulated Protective Order, para.3.

12. If another litigant in any of the actions referenced in the Stipulated Protective Order decides to extend Planet Data's services, however, the Transferred Data is to remain with Planet Data, provided the litigant "pays the required storage fees" to Planet Data. *See* Stipulated Protective Order. *See* Stipulated Protective Order, para.3.

13. Presumably, if none of the other contemplated litigants extend Planet Data's services additional times, the data would be either delivered where possible to TK Holdings

---

[1] The Protocol permits a Requesting Party to obtain and enjoy access to the subset of Transferred Data relevant to the Requesting Party's particular needs. Subsequent Requesting Parties seeking access to the same Custodian's Data already processed through these steps would share in the expense by paying the original Requesting Party for a portion of the processing fees based on a cost-sharing calculation provided in the Stipulated Protective Order.

pursuant to the Protocol or destroyed. Since the Transferred Data in all of its processed forms contains information subject to various privileges and requirements under the law of Japan, it cannot be turned over to other litigants or even used by Planet Data for other purposes.

      **C.**     **Movant's Acquisition of Planet Data's Rights and Interests**

14. Effective as of January 1, 2021, Movant acquired substantially all of the assets of Planet Data (the **"Planet Data Acquisition"**). As a result of the Planet Data Acquisition, Movant owns Planet Data's Exego platform and servers containing databases established by Planet Data pursuant to the Protocol. The Exego platform and databases acquired by Movant incorporate valuable and proprietary processes, scripts, programming and other data analytics not accessible by the public. *See* Declaration, para. 15.

15. From and after the Planet Data Acquisition through the present, Movant has taken up performing PDS' obligations under the Protocol. In that regard, Movant was in possession of one-hundred twenty-eight (128) terabytes of fully processed Transferred Data on an Exego platform that were acquired from Planet Data. *See* Declaration, para. 16. During this time, Movant continued to maintain the integrity and confidentiality of the respective databases in accordance with the Protocol.

16. Movant also interacted with the parties involved from and after the Planet Data Acquisition. As addressed in more detail below, Movant continued to provide Podhurst and Motley with access to the particular Custodian's Data as had Planet Data. Movant billed each directly for such services as well. *See* Declaration, para 26. Movant also communicated with counsel for the Takata Entities. *See* Declaration, para's 29, 36.

17. To date, Movant has relied on the directions of the respective counsel for the parties and complied with their demands regarding the Transferred Data.

      **D.**     **Movant's Unpaid Storage Charges and Attempts to Limit Costs**

18.     The storage of the processed Transferred Data on Movant's Exego servers in accordance with the Protocol has generated significant fees and expenses which have gone unpaid. The fees owed to Movant for storing the Transferred Data during the period of January 1, 2021, through the present were incurred at the rate of $3.00 per gigabyte per month. *See* Declaration, para 20.

19.     While the Stipulated Protective Order does not reflect a specific rate for the storage fees on Transferred Data, the cost per gigabyte charged by Movant and the market rates for data storage are generally established and change very slowly over time. *See* Declaration, para 19.

20.     The pricing of $3.00 per gigabyte is consistent with Movant's approach in 2021, as well as the market generally speaking at that time. *See* Declaration, para. 20.[2] The sheer volume of the Transferred Data, the resulting storage space dedicated to it and the manner in which the data was stored adds to the Movant's costs.[3]

21.     After the Planet Data Acquisition, in July of 2021, Motley's need for access to its requested Custodian's Data had concluded. Motley's SOW was allowed to expire. By November of 2021, Podhurst's need for access to the requested Custodian's Data was subsequently satisfied as well. Podhurst's SOW expired also.

---

[2] Further, the market rate for storing non-promoted, processed data during 2021 ranged between $2.00 per gigabyte up to $4.00 per gigabyte. Such rates are lower than those of prior years as competition and improvements in storage techniques have increased. For example, in 2018, when the Stipulated Protective Order was negotiated and entered into, the rate for storage charges ranged from $3.00 to $5.00. *See* Declaration, para. 22.

[3] The monthly costs to Movant for maintaining the large amount of processed data that makes up the Transferred Data are significant. Movant calculates that we are incurring costs of not less than $1.31 per gigabyte per average month (30 days). Accordingly, during the period of January 1, 2021, through June 30, 2022, Movant has incurred costs of an amount of not less than $171,704.32 per month to simply maintain the Transferred Data on its Exego servers, before considering any value for Movant's efforts. *See* Declaration, para. 21.

22. Podhurst and Motley have each fully paid Movant for their respective access to the Custodian's Data that each had identified. No other person or entity has sought access to any of the Transferred Data through Movant.

23. Unlike with respect to expenses related to the Custodian's Data, however, Movant has not received any storage fees related to the Transferred Data, notwithstanding Movant's continued performance in accordance with the Protocol. Movant has continued to store the very large amount of data for more than three (3) years. Yet, despite the obligations of the parties to satisfy storage costs pursuant to the Protocol, no such payments have been made to Movant.

24. In August of 2021, as the litigants need for access to the Custodian's Data was wrapping up, Movant pressed Podhurst for payment of Movant's storage fees. On August 27, 2021, Movant served a formal demand for payment upon Podhurst for the ongoing charges to store the Transferred Data on Movant's Exego platform at the same rate charged by Movant and Planet Data for handling the custodian's Data: $3.00 per gigabyte per month. *See* Declaration, para. 28. At that time, Movant indicated its willingness to forgo payment for any such charges accruing prior to the Planet Data Acquisition, provided future charges would be provided for. *Id.* In response, Podhurst initially advised that it would not pay for such ongoing storage charges that had been incurred.

25. Movant also at the same time attempted to formulate alternatives for addressing the future storage costs that would be incurred for the storage of Transferred Data. In particular, in October of 2021, Movant suggested to Podhurst that the Transferred Data could be moved to another, less costly storage medium at a certain cost. At that time, Movant outlined the parameters and costs for accomplishing the migration of the *admittedly large* set of Transferred Data. *See* Declaration, para. 31.

26. Unfortunately, Podhurst rejected Movant's proposal for limiting storage expenses. At that time, Podhurst advised that it was not willing to pay for any storage charges contemplated in the Stipulated Protective Order and advised Movant that Podhurst would seek relief. *See* Declaration, para 32. Yet, Podhurst never sought the proposed relief case to limit Movant's ongoing charges and failed to file any motion regarding this matter. Neither Motley nor any other party has sought relief to address the expenses and status of the Transferred Data.

27. Movant previously sought relief from the Bankruptcy Court pursuant to the Stipulated Protective Order but the Bankruptcy Court directed the Movant to seek relief in the Southern District of Florida in the MDL.

28. As of the filing of this Motion, Movant is continuing to store the Transferred Data on Movant's Exego platform in accordance with the demands of the parties.

### IV. RELIEF REQUESTED

29. Pursuant to the court's authority to enforce its own orders,[4] Movant requests that orders be entered recognizing Movant as the substituted party for Planet Data under the Protocol and authorizing and directing payment of all sums due for the services performed by Movant in connection with the Transferred Data in this case.

**A. The Informal Recognition and Treatment of Movant as Planet Data's Substitute for Satisfying the Protocol Should Be Formalized By Court Order.**

---

[4] Generally, "the issuing court retains jurisdiction over…its own protective order." *Santiago v. Honeywell Int'l, Inc.*, 2017 U.S. Dist. LEXIS 184483 at *8 (S.D. Fla. Apr. 6, 2017) (collecting numerous cases that stand for the proposition that the court who issued an order retains the jurisdiction to modify and otherwise adjudicate matters related to that order); *See also Beebe v. Nutribullet L.L.C.,* 2019 U.S. Dist. LEXIS 164889 at *22 (C.D. Cal. July 3, 2019) (compiling numerous cases regarding the enforcement of protective orders by subsequent courts and noting that "[a]s a general matter, the court that issues a protective order retains jurisdiction to enforce it…").
).

30. Movant, MDL Counsel and counsel for certain of the Takata Entities have been acting for almost two (2) years as if Movant had replaced Planet Data as the data processor under the Protocol.

31. As stated, Podhurst and Motley have both been using their access to the Custodian's Data through Movant since the Planet Data Acquisition. Movant has billed both Podhurst and Motley and both have paid Movant for such services.

32. Similarly, counsel for the Takata Entities were initially made aware of Movant's involvement and after further considering the circumstances, advised Movant to continue to maintain the Transferred Data in accordance with the Protocol.[5]

33. Moreover, Movant acquired Planet Data's Exego platform and holds ownership rights in, among other things, all of the related databases acquired from Planet Data, including the databases making up the processed Transferred Data, in accordance with copyright[6] and other applicable law.[7]

34. Similarly, Movant is in possession of the hard drives containing the Transferred Data in its original form.

---

[5] More specifically, on September 14, 2021, counsel advised Movant as follows: "Under no circumstances shall Veristar transfer, manipulate, process or use the Transferred Data until such time as deemed appropriate by the requisite parties, including TKJP and TKH, and potentially the U.S. Bankruptcy Court for the District of Delaware. *See* Declaration, para. 29; Exhibit B. Movant was subsequently advised to hold onto the Transferred Data in all of its forms and continue work with MDL Counsel to work out the issues. *See* Declaration, para. 36; Exhibit F.

[6] *Cf. Assessment Techs. Of WI, LLC v. WIREdata, Inc.,* 350 F.3d 640 (7th Cir. 2003). Indeed, a work comprised of material which in itself is not protected may become protectable as a compilation if the copyright holder has utilized sufficient creativity in selecting and arranging the material. "All that is needed for a finding of sufficient originality is a 'distinguishable variation' that is not merely trivial, even if the copyrighted work is based on prior copyrighted or public. domain works*." Re-Alco Indus., Inc. v. National Ctr. for Health Educ., Inc.,* 812 F. Supp. 387, 393 (S.D.N.Y. 1993) (citation omitted). Originality in selection and arrangement "is a function of (i) the total number of options available; (ii) external factors that limit the viability of certain options and render others non-creative; and (iii) prior uses that render certain selections 'garden variety.'" *Matthew Bender & Company v. West Publ'g Co.,* 158 F.3d 674, at 681, 682- 83 (2nd Cir. 1998) (holding that enhancements made by publisher of judicial opinions -- such as shortening the form of titles, inserting parallel citations, providing subsequent case history, and providing information concerning counsel -- are not copyrightable because they miss the creative spark).

[7] *Cf. Thyroff v. Nationwide Mut .In. Co.*, 8 N.Y.3d 283, 864 N.E.2d 2d 1272, 832 N.Y.S.2d 873 (2007).

95174\314647337.v5

35. Under these circumstances, Movant is desirous of the entry of an order approving Movant's performing Planet Data's obligations under the Protocol on and after January 1, 2021, the date of the Planet Data Acquisition.

**B. Movant is Entitled to Payment for the Storage Services Performed In Accordance with the Protocol as Demanded by the Parties**

36. The Protocol clearly and unequivocally established that Podhurst and any other party requesting that Planet Data's services be extended are each responsible for paying Movant's expenses.

37. More specifically, the Protocol provides as follows:

> The Japan Data and TKH Data (together, the ***"Transferred Data"***) will be transferred to PDS at the expense of the Takata Entities and JSS, up to the total combined amount of $75,000.00. **. . .** For the avoidance of doubt, the Parties agree that any costs or expenses arising after the receipt of the Transferred Data by PDS and related to the processing, hosting, review, management, or use of any kind of the Transferred Data shall not be borne by the Takata Entities or JSS. **PDS will store the Transferred Data at MDL Counsel's expense until the termination of the MDL Action. Upon termination of the MDL Action, the Transferred Data will be transferred to TKH for storage (if possible), unless any litigant in another Action or Claims Resolution Facility, the Special Master, or the Trustee decides to extend the services of PDS and such party extending the services pays the required storage fees to PDS.** The Transferred Data is comprised of PSAN Data and JSS Data. In order for any Requesting Party to obtain possession of, or review, any PSAN Data, except Previously Produced PSAN Data, this Protocol must be strictly followed according to thesteps (the ***"Steps"*** or ***"Step"***) outlined below and at the Requesting Party's sole cost or expense, unless otherwise specified herein. **. . .** The terms of this Protocol supersede any prior agreements, understandings or representations (whether written or oral) by or between the Parties to the extent they relate in any way to the Transferred Data, but do not affect or supersede the terms of any existing protective order or confidentiality order entered in any Action with respect to Previously Produced PSAN Data. (Emphasis Added)

Stipulated Protective Order, para. 3

11

38. The Protocol reflects the agreement and contractual obligation of counsel in the MDL litigation to satisfy Planet Data's and now Movant's storage expenses with respect to the Transferred Data.[8]

39. Accordingly, pursuant to the Protocol, Podhurst and Motley are directly responsible for paying Movant's fees generated in storing the Transferred Data all of these many months. Podhurst is responsible in accordance with the plain language of the Stipulated Protective Order referenced above, which Podhurst through its agent personally executed. Motley is similarly responsible pursuant to the aforementioned paragraph 3 of the Stipulated Protective Order as a result of Motley's written demand that Movant continue to preserve and not destroy such data. *See* Declaration, para 32, 33.

40. On October 27, 2021, Podhurst advised Movant that the Transferred Data *could not* be destroyed, as it was necessary to obtain approval by the court and the other parties to the Stipulated Protective Order for such an act. *See* Declaration, para. 32. And Podhurst had confirmed that TK Holdings did not want any of the Transferred Data returned to it. In light of these circumstances, Podhurst agreed to seek the approval of the other parties to the Stipulated Protective Order and file a motion in the Bankruptcy Case for authority to destroy the Transferred Data.

41. Unfortunately, Podhurst failed to follow up with Movant or seek any relief in the Chapter 11 Case. It is believed that Podhurst contacted the other parties and presumably did not receive the approval of the other litigants to destroy the Transferred Data. Movant did not receive any follow-up from Podhurst thereafter.

---

[8] Courts have long held that a court approved settlement agreement should be treated and construed as a contract where, as here, the core of the agreement consists of consensual obligations and the rights and obligations of the parties do not derive solely from the court's judgment, but depend on the performance of the parties. *Enter. Energy Corp. v. United States (In re Columbia Gas Sys.)*, 50 F.3d 233, 238 (3rd Cir. 1992).

42. Accordingly, as of the filing of this Motion, Movant has been constrained from limiting costs by destroying the PDS Property pursuant to the demands of the parties and the terms of the Protocol.

43. Accordingly, Movant is desirous of the entry of an order directing Podhurst and Motley, jointly and severally, to promptly remit payment to Movant of a sum equal to $393,216.00 per month for each month that Movant maintained the processed Transferred Data that Planet Data and now Movant has processed from January 1, 2021 to April 2023.

44. In addition, Movant is entitle to recover its fees and expenses from those parties who are being benefited by Movant's efforts but are not within the scope of parties' agreement memorialized in the Protocol for the payment of such fees.

45. Movant's performance of services in good faith by maintaining the Transferred Data as demanded by the litigant's agents has benefited existing and future litigants. Courts have also long recognized the rights of parties to recover in such circumstances from the benefited party under quasi-contract remedies.

46. As stated, the value bestowed upon the parties benefited by the storage of the Transferred Data is significant. The value of such services is $3.00 per gigabyte per month. *See* Declaration, para's 20, 22.

47. Accordingly, Movant seeks recovery from all parties benefited by Movant's services in storing the Transferred Data in accordance with the Protocol to the extent not satisfied by Podhurst and Motley.

    **C.**    **The Transferred Data Should Either Be Migrated to Another Vendor, After Payment of the Costs of Doing So, or Destroyed.**

48. The hard drives maintaining the Transferred Data have been returned to TK Holdings.

49. Should the parties decide to keep continue storing the Transferred Data in its processed form Movant remains willing to migrate the databases at the parties expense to another platform held by a third party, such that Movant's intellectual property rights in Movant's Exego platform are preserved. As stated, Podhurst had been unwilling to accept the cost of such a migration in the past. *See* Declaration, para. 31.

50. In light of the foregoing, Movant request the entry of order(s):

   (a) approving Movant's assumption of Planet Data's obligations pursuant to the Protocol established in the Stipulated Protective Order effective as of January 1, 2021;

   (b) directing the payment of Movant's expenses at the rate of $393,216.00 per month from January 1, 2021, through the date that the Transferred Data on Movant's Exego platform is either terminated or migrated to a third party as requested in the Motion; and

   (c) providing for the disposition of the Transferred Data by specific date and time and under terms consistent with the relief requested in the Motion.

**WHEREFORE**, Movant respectfully prays for the entry of order(s) in accordance with the forgoing and for such further relief as is just and proper.

Dated: June 14, 2024June 14, 2024June 14, 2024

    Respectfully submitted,

    HINSHAW & CULBERTSON LLP

    */s/ Siobhan E. P. Grant*
    **Siobhan E. P. Grant**
    Florida Bar No. 68892
    2811 Ponce de Leon Blvd, 10th Floor
    Coral Gables, FL 33134
    Telephone: 305-428-5118
    Primary: sgrant@hinshawlaw.com
    Secondary: lleon@hinshawlaw.com

95174\314647337.v5