**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**MDL No. 2599**
**Master File No.: 15-MD-02599-MORENO**
**S.D. Fla. Case No. 15-cv-20664-MORENO**
**S.D. Fla. Case No. 14-cv-MORENO**

| | |
|---|---|
| In re | ) |
| | ) |
| **TAKATA AIRBAG PRODUCT LIABILITY** | ) |
| **LITIGATION** | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| ALL CASES | ) |
| | ) |
| | ) |

**DECLARATION OF RICK KAMINSKI IN SUPPORT OF**
**APPLICATION FOR PAYMENT OF FEES AND EXPENSES**

Pursuant to 28 U.S.C. §1746, I, Rick Kaminski, hereby declare under penalty of perjury as follows:

1.       I am the Chief Operating Officer for Veristar, LLC ("**Veristar**") and submit this declaration on behalf of Veristar in support of its Application for Payment of Fees and Expenses (the "**Application**") simultaneously filed herewith in the above captioned Multi-District Litigation (collectively, the "**MDL Case**").

2.       Veristar was in the business of providing solutions for complex forensic data collection, document processing to enable loading into a review tool, eDiscovery document hosting (including Relativity hosting) for review, and document review services, along with specialized legal staffing support to law firms and other businesses.

3.      Prior to my current role, I served as Senior Director of E-Discovery Operations from February 2022 until September 2023. In my current role as Chief Operating Officer of Veristar, among other things, I work to ensure operational efficiency and client success.

4.      I am authorized to submit this Declaration on behalf of Veristar.

## I.      GENERAL BACKGROUND

5.      On November 29, 2018, the Court in the bankruptcy proceeding pending in the District of Court of Delaware regarding Takata Corporation, TK Holdings, Inc. as well as other related entities (the "**Takata Entities**") entered an order approving the Confidentiality and Data Privacy Agreement, and Stipulated Protective Order (collectively, the "**Stipulated Protective Order**") for the handling of certain data of the Takata Entities (the "**Transferred Data**") and Joyson Safety Systems Acquisition LLC d/b/a Joyson Safety Systems ("**JSS**'') in connection with pending and future litigation..

6.      The Stipulated Protective Order indicates that it was executed by, among other signatories, the Chair Lead Plaintiffs' Counsel in the Takata Airbag Products Liability Litigation, Podhurst Orseck, P.A. ("**Podhurst**"), the Takata Entities and JSS and adopted by Planet Data Solutions, Veristar's predecessor in interest ("**PDS**").

7.      The Stipulated Protective Order contemplates and provides the parameters (the "**Protocol**") for collecting raw data from various custodians related to the Takata litigation, processing the data into a usable form and extending access to the processed data to requesting parties.

### A.      Processing and Storing the "Raw Data"

8.      The Stipulated Protective Order establishes the Protocol for the delivery and processing of raw data as follows:

3. **Protocol.**  On or about October 12, 2018,  . . .

The Japan Data and TKH Data (together, the ***"Transferred Data"***) will be transferred to PDS at the expense of the Takata Entities and JSS, up to the total combined amount of $75,000.00. **. . .** For the avoidance of doubt, the Parties agree that any costs or expenses arising after the receipt of the Transferred Data by PDS and related to the processing, hosting, review, management, or use of any kind of the Transferred Data shall not be borne by the Takata Entities or JSS. **PDS will store the Transferred Data at MDL Counsel's expense until the termination of the MDL Action. Upon termination of the MDL Action, the Transferred Data will be transferred to TKH for storage (if possible), unless any litigant in another Action or Claims Resolution Facility, the Special Master, or the Trustee decides to extend the services of PDS and such party extending the services pays the required storage fees to PDS.** The Transferred Data is comprised of PSAN Data and JSS Data. In order for any Requesting Party to obtain possession of, or review, any PSAN Data, except Previously Produced PSAN Data, this Protocol must be strictly followed according to thesteps (the ***"Steps"*** or ***"Step"***) outlined below and at the Requesting Party's sole cost or expense, unless otherwise specified herein. **. . .** The terms of this Protocol supersede any prior agreements, understandings or representations (whether written or oral) by or between the Parties to the extent they relate in any way to the Transferred Data, but do not affect or supersede the terms of any existing protective order or confidentiality order entered in any Action with respect to Previously Produced PSAN Data. (Emphasis Added)

9.       Pursuant to the Protocol, PDS was required to process all of the raw data of the various custodians and maintain the resulting database for future use in accordance with the Protocol. PDS' efforts were to be "at MDL Counsel's expenses until the termination of the MDL Action."

10.      PDS' services were to continue notwithstanding the termination of the MDL Action if a litigant or other party decides to extend such services and the litigant or other party "pays for the required storage fees to PDS."

**B.       Services for Access to Custodian's Data**

11.      Once the Transferred Data was processed and stored on a data platform, third party litigants (each a "**Requesting Party**") were able to obtain access to the Transferred Data of one or more particular custodians of the original data. Upon a formal request, the subset of Transferred Data sought by a Requesting Party (the "**Custodian's Data**") was to be formatted and/or exported

by PDS to a platform where the Requesting Party could access it in accordance with the Protocol's strict, multiple step process:

. . .

**Protocol Step One.** PDS shall maintain a list of custodians, to be provided by the Takata Entities, from which the Transferred Data was originally collected (the *"Custodian List"*) and shall provide the Custodian List to a Requesting Party upon request. A Requesting Party that desires to search for relevant PSAN Data for use in the Actions or Claims Resolution Facilities shall provide PDS with an executed *Statement of Work* substantially in the form attached hereto as Exhibit 3 (the *"SOW"*), with the requisite retainer fee as described therein, and provide a copy of such SOW to the Takata Entities and JSS. The Requesting Party shall identify a custodian or custodians from the Custodian List, from which the Requesting Party desires to search for relevant PSAN Data for the Requesting Party's use in the Actions or Claims Resolution Facilities, as required by the SOW (the *"Custodian's Data")*. Upon receipt of an SOW satisfactory to PDS, if the requested Custodian's Data has not been processed through this Protocol, PDS shall implement Protocol Steps Two and Three as to the requested Custodian's Data. If the requested Custodian's Data has been processed through this Protocol, PDS need not repeat Protocol Steps Two and Three and shall implement the remaining Protocol Steps, but the Requesting Party shall pay to PDS its per capita proportion of the costs previously incurred for implementing Protocol Steps Two and Three as to the requested Custodian's Data, and PDS shall distribute such payment, per capita, to the Parties that previously paid the costs for implementing Protocol Steps Two and Three as to the requested Custodian's Data (*"Cost-Sharing Provision"*).

**Protocol Step Two.** PDS shall retrieve the requested Custodian's Data from its off-line storage and shall upload said Custodian's Data onto an active PDS database. . . .

**Protocol Step Three.** PDS shall then perform a series of searches on the PSAN Dataset designed to segregate out any potentially Privileged PSAN Data using search terms (the *"Privilege Search Terms"*) agreed to by the Parties and provided to PDS. . . . PDS shall then create a privilege log of withheld data (the *"Withheld Data Log"*) which describes the nature of the potentially Privileged PSAN Data in a manner that will enable the Requesting Party to assess the possibility of privilege, pursuant to Fed.R.Civ.P. 26(b)(5), including by listing which PSAN Search Terms and Privilege Search Terms are contained in each document listed on the Withheld Data Log. . . . The Trustee will identify the particular TKH data as to which the Trustee has determined, in his sole discretion,

to waive any potential TKH privilege (the ***"Waived TKH Data")*** in writing to the Requesting Party and the Requesting Party will provide written notice thereof to TKJ, TKH, and JSS (the ***"Notice of Proposed Waived TKH Data"***). Unless TKJ or JSS provides an objection in writing to the Requesting Party (with a copy sent to the Trustee) to the production of any Waived TKH Data, within fourteen (14) days of receipt of the Notice of Proposed Waived TKH Data by TKJ or JSS (with an additional fourteen (14) days to be provided upon request by TKJ or JSS, if needed, due to the quantity of proposed Waived TKH Data or logistical issues) on the grounds that such data is subject to a TKJ privilege, joint TKJ-TKH privilege, or a JSS privilege: (1) the Requesting Party will inform PDS of the Waived TKH Data identified by the Trustee; (2) PDS will remove the Waived TKH Data from the Withheld Data Log; and (3) the Waived TKH Data will be included in the Searchable Dataset (as defined below)to the Requesting Party. . . .

**Protocol Step Four**. PDS shall provide the Requesting Party access to the resulting dataset comprised of the PSAN Dataset without the potentially Privileged PSAN Data, and the associated Withheld Data Log (the "***Searchable Dataset***").  The Requesting Party, pursuant to its respective SOW, will be granted licenses, at a per-license cost, which will allow it to perform searches of the Searchable Dataset from which the Requesting Party may identify data it wishes to download from the PDS database for the Requesting Party's use in the appropriate Action or Claims Resolution Facility.  Nothing herein shall prevent the Trustee from exercising its right to waive the privilege solely as to TKH data.

**Protocol Step Five**. PDS shall output the data identified by the Requesting Party in accordance with the terms of the SOW, . . .

12.     Pursuant to these steps, a "Requesting Party" as contemplated in the Stipulated Protective Order could obtain access to particular Custodian's Data, namely the subset of Transferred Data relevant to the Requesting Party's particular needs. To obtain such an individualized set of data, the Requesting Party was to select the relevant custodian and the corresponding Custodian's Data would be formatted and/or exported by PDS to a platform for reviewing by the requestor.

13.     PDS would only be compensated one time by the original Requesting Party for the expenses generated for processing the requested Custodian's Data.  Subsequent Requesting Parties seeking access to the same Custodian's Data already processed through these steps would share in

the expense by paying the original Requesting Party for a portion of the processing fees based on the cost-sharing calculation.

## II.     VERISTAR'S PRESERVATION AND HANDLING OF TAKATA DATA

14.     Effective as of January 1, 2021, Veristar acquired substantially all of the assets of PDS (the **"Planet Data Acquisition"**).

15.     As a result of the Planet Data Acquisition, Veristar owns PDS' Exego platform and servers containing databases established by PDS to maintain and provide access to the Transferred Data pursuant to the Stipulated Protective Order. Such property incorporates valuable processes, scripts, programming and other analytics proprietary to Veristar.

16.     In that regard, Veristar had possession and control of one-hundred twenty-eight (128) terabytes of fully processed Transferred Data on the Exego platform.[1]

### A.     Storage of the Transferred Data on the Exego Platform

17.     Upon information and belief, PDS initially received and processed the Transferred Data in accordance with the Protocol.

18.     At all times on and after the Planet Data Acquisition, Veristar had maintained the integrity and confidentiality of the Transferred Data as a segregated mass on its Exego platform in compliance with the Protocol. Veristar had taken up performing PDS' obligations under the Protocol from January 1, 2021, to March 2023.

19.     The storage of the processed Transferred Data on Veristar's Exego servers in accordance with the Stipulated Protective Order generated significant fees and expenses which

---

[1] In the course of my duties on behalf of Veristar, I became aware of Veristar's possession and maintenance of the Transferred Data originally transferred pursuant to the Stipulated Protective Order. Beginning in August of 2021 and through the beginning of March of 2023, I supervised Veristar's team with regard to the maintenance of the Transferred Data.

have gone unpaid. While the Stipulated Protective Order does not reflect a specific rate for the storage fees on Transferred Data, the cost per gigabyte incurred by Veristar and the market rates for data storage[2] are established and change very slowly over time.

20.     The fees owed to Veristar for storing the Transferred Data during the period of January 1, 2021, through April 2023 were $3.00 per gigabyte. The sheer volume of the Transferred Data and the resulting storage space dedicated to it was significant. Additionally, the manner in which the data was stored means there were significant costs. The pricing of $3.00 per gigabyte was consistent with Veristar's approach in 2021. Veristar identified and discussed lesser cost alternatives with Podhurst as a way to lessen future costs, however, those alternatives were never accepted.

21.     The monthly costs to Veristar for maintaining the large amount of processed data that made up the Transferred Data are significant.  Veristar calculated that it was incurring costs of not less than $1.31 per gigabyte per average month (30 days).  Accordingly, during the period of January 1, 2021, through April 2023, Veristar incurred average monthly costs of an amount of not less than $171,704.32 per month to maintain the Transferred Data on its Exego servers, before considering any value for Veristar's efforts.

22.     Further, the market rate for storing non-promoted, processed data during 2021 ranged between $2.00 per gigabyte up to $4.00 per gigabyte. Such rates were lower than those of prior years as competition and improvements in storage techniques have increased. For example,

---

[2]In my role as Senior Managing Director of Sales for Veristar, I helped to set data storage, processing and handling rates for Veristar on a national basis. In the process, I monitored Veristar's cost variables and also data storage and handling rates in all types of markets nationwide. Larger data processing companies are often able to charge lower rates due to economies of scale. Veristar is somewhat larger than PDS, but not as large as some of the largest vendors in the data handling space.

in 2018, when the Stipulated Protective Order was negotiated and entered into, the rate for storage charges ranged from $3.00 to $5.00.

23.     In summary, for the period of January 1, 2021, through April 2023 the storage fees owed to Veristar with respect to the Transferred Data was $393,216.00 per month times twenty-eight months.  This amount does not include the storage fees owed for the storage of Transferred Data prior to the Planet Data Acquisition (*i.e.* January 1, 2021).  Assuming the storage fees incurred prior to January 1, 2021, extended from July 1, 2019, the first full month that the Custodian's Data was made available to Podhurst and Motley, through December 31, 2020, at a minimum cost rate of $3.00 per gigabyte, Veristar is owed $393,216.00 per month for storage fees or $11,010,048.00 for the period.[3]

24.     Notwithstanding Veristar's continued performance in accordance with the Stipulated Preservation Order, Veristar has not received any storage fees related to the Transferred Data.  Veristar continued to host the very large amount of data for more than eighteen (18) months before removing the data per agreed order. Yet, despite the relevant counsels' obligations to satisfy storage costs pursuant to the Stipulated Preservation Order, no such payments have been received by Veristar from anyone for the storage of the Transferred Data.

### B.     Services for Extracting and Hosting Custodian's Data

25.     To date, Veristar has been involved with only two (2) specific instances of extracting and hosting Custodian's Data for a Requesting Party. PDS had entered into individual, separate Statements of Work with Podhurst and Motley Rice LLC ("**Motley**"), respectively,

---

[3] The books, records and other files received by Veristar in connection with the Planet Data Acquisition do not reflect any payments having been received by PDS for general storage fees incurred with regard to the Transferred Data. Retainer invoices dated May 10, 2019, and May 14, 2019, to MDL Counsel, including Podhurst and Motley, respectively, pursuant to their Respective SOWs indicate that Custodian's Data would be extracted and made accessible in August, 2019.

covering Custodian's Data from each Requesting Party's designated custodians. Both SOWs incorporate and make applicable the "steps" established in the Protocol for providing access to the requested Custodian's Data. The Podhurst SOW, dated May 8, 2019, was apparently approved on June 5, 2019. The Motley SOW, dated May 14, 2019, was apparently approved on June 6, 2019.

26.     After the Planet Data Acquisition, Veristar continued to provide Podhurst and Motley with access to the requested Custodian's Data on Veristar's Relativity workspace in accordance with the Protocol and the respective SOW.  Podhurst's need for access to the requested Custodian's Data was subsequently satisfied and the Podhurst's SOW has expired. Motley's need for access to its requested Custodian's Data has similarly concluded, such that the Motley SOW has expired as well. Commencing in early February, 2021, both Podhurst and Motley were separately invoiced by Veristar for the fees that were owed by each for access to their respective Custodian's Data. Podhurst and Motley each fully-paid Veristar for their respective access to the Custodian's Data that each had identified.

27.     No other person or entity has sought access to any of the Transferred Data through Veristar.

III.     **VERISTAR'S DEMANDS FOR PAYMENT OF ITS STORAGE EXPENSES**

28.     On August 27, 2021, Veristar served a formal request for payment upon Podhurst for the ongoing charges to store the Transferred Data on Veristar's Exego platform:

> "The Stipulated Protection Order states MDL Counsel is responsible for payment of all "stored data".  Currently we are in possession of approximately 135 TB of stored data related to the Takata matter.  The processing of the data was finalized and PDS commenced storing the full data set in August of 2019.  Per the Statements of Work and Court Order, $3 per GB would result in a combined monthly cost of approximately $415,000 to MDL Counsel for the stored data portion of the billing.  In addition, since the date of the Stipulated Order of 2018, PDS had also been incorrectly invoicing MDL Counsel on a monthly basis.
>
> Although Veristar maintains the right to seek payment for the correct amounts both pre- and post-acquisition, in an effort of good faith, at this time we are only seeking

payment for these monthly amounts as of January 1, 2021, which is the date of the PDS acquisition.  A calculation of the amount owed since January 2021 results in an outstanding debt of approximately $3.28M.  Moving forward, as of September 1, 2021, the MDL Counsel portion of the monthly invoice amount will be approximately $415,000, in addition to the current invoice that you receive for your specific Requester Privilege data set that we/Veristar host for Takata's potential review."

*See* Correspondence, dated August 27, 2021, between Declarant and Matthew Weinshall attached

hereto as Exhibit A and made a part hereof.

29.     In response, Podhurst advised that it refused to pay for the ongoing hosting charges

that had incurred pursuant to the Stipulated Protective Order. Thereafter, Veristar received written

notice from bankruptcy counsel for certain of the Takata Entities regarding the applicability of the

Stipulated Protective Order to the Transferred Data in Veristar's possession:

"My firm represents TKJP Corporation in relation to its chapter 15 bankruptcy case. As I'm sure you are aware, TKJP and TKH transferred a large volume of data (the "Transferred Data") to Planet Data pursuant to an order entered by the Bankruptcy Court in both the TKJP and TKH bankruptcy cases.

I have just learned that Veristar acquired the assets of Planet Data earlier this year, and may also be in possession of the Transferred Data. Under no circumstances shall Veristar transfer, manipulate, process or use the Transferred Data until such time as deemed appropriate by the requisite parties, including TKJP and TKH, and potentially the U.S. Bankruptcy Court for the District of Delaware. I am copying hereto Ross Hamilton, counsel to TKH. I think it makes sense for us to have a call in the next few days to discuss. I have some availability tomorrow afternoon and Thursday morning."

*See* Correspondence, date September 14, 2021, between Declarant and Andrew Riccio attached

hereto as Exhibit B and made a part hereof.

30.     From Veristar's formal request for payment through October, 2021, Veristar

attempted to formulate alternatives for addressing the ongoing costs for maintaining the

Transferred Data.

31.     In particular, in October of 2021, Veristar suggested to Podhurst that the

Transferred Data could be moved to another, less costly storage medium at a certain cost. At that

time, I outlined the parameters for accomplishing the conversion of the Transferred Data, which

included the costs for doing so:

> "Good afternoon Matt. In follow up to your note and our Outside Counsel Mark Belangio's response, I would also like to set up a quick call to discuss the go forward plan. We'd like to make sure that we migrate the appropriate data in the appropriate format to offline storage.
>
> Additionally, though your e-mail mentioned that the storage "should not result in any storage expenses or charges," there is still a cost associated with moving the data and the subsequent storing of the data, though how this is priced in the marketplace varies widely based on a number of factors. Veristar would love to continue to host this data, but we cannot do so at no charge. I'd also like to go over this topic on the call."

*See* Correspondence, dated October 21, 2021, of Declarant attached hereto as Exhibit C and made

a part hereof.

32.     Unfortunately, on October 27, 2021, Podhurst rejected Veristar's proposal for

limiting storage expenses. At that time, Podhurst advised that it was not willing to pay for *any*

storage charges contemplated in the Stipulated Protective Order. Instead, Podhurst advised that the

Transferred Data should simply be destroyed, after obtaining the necessary court approval, to limit

further expense:

> "Thanks for following up. I wanted to speak with the TK entities' counsel before I got back to you, and I got the chance to do so earlier today. We appreciate your patience and efforts to develop a proposal. Since fact discovery in the MDL is now complete, however, we cannot justify bearing the substantial one-time processing and monthly hosting fees that your proposal includes. We understand that, as a result, VeriStar is not interested in serving as a repository for the Takata Data, per the Stipulated Protective Order. Consequently, it appears that the only solution is to remove the data from your computers and destroy it, as the TK entities have indicated that they do not want the data returned. Before that step is taken, however, we think that it is necessary to get appropriate approval from the bankruptcy and MDL courts, as well as the other parties to the Stipulated Protective Order. **We will attempt to get the consent of the other parties this week and file an unopposed motion with the bankruptcy court as soon as possible.** We hope it is possible to work with your firm in the future. Please let me know if you have any questions." (Emphasis Added)

*See*, Correspondence, dated October 27, 2021, of Matthew Weinshall to Declarant attached hereto as Exhibit D and made a part hereof.

33.     Yet, Podhurst never sought the proposed relief in the Takata Entities' bankruptcy proceeding to limit Veristar's ongoing charges. Specifically, Podhurst was to prepare a motion regarding MDL's proposed method of handling the Transferred Data for consideration by the Bankruptcy Court. Neither Veristar nor its outside counsel ever received a draft motion for consideration. Similarly, a motion was never filed by Podhurst in the bankruptcy proceeding. Veristar's subsequent request for a copy of the draft motion similarly did not receive a response.

34.     Instead, consistent with Podhurst's observations, Veristar received communications from Motley indicating that the Transferred Data *should not* be destroyed as suggested by Podhurst in his October 27 communication. Motley demanded that Veristar retain the Transferred Data for access by future claimants. Motley's demand could not have been more clear:

> "Let's discuss, but be advised I will fight anyone anywhere and anytime that makes an attempt to destroy this data.  Let's get on a call soon pls and avoid a courtroom if possible.  I don't want you to loose money, but there are future ops for you to preserve and consider here as well as lives forever to be changed in the future needing our and your help sir."

*See* Correspondence, dated January 19, 2022, of  Kevin R. Dean attached hereto as Exhibit E  and made a part hereof.

35.     Veristar necessarily accepted and relied upon Motley's demand in light of the comments of other counsel and the requirements of the Stipulated Protective Order.  *See* Stipulated Protective Order, para. 3.

36.     In April 2023, counsel for the Takata Entities advised that the Transferred Data could be destroyed and the hard drives which stored the Transferred Data returned to TK Holdings, Inc.

37.     Veristar has complied with the request of counsel for the Takata Entities but still has not received payment for the prior storage of the Transferred Data.

38.     Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge, information and belief.

Date:  February 15, 2024          /s/  *Rick Kaminski*  (with  permission)
                                  Rick Kaminski, Chief Operating Officer

# EXHIBIT A

**From:** Mark Plaehn <███████████████████>
**Sent:** Friday, August 27, 2021 7:22 PM
**To:** PETER PRIETO ██████████████████; MATT P. WEINSHALL ████████████████████
**Cc:** Mark D. Belongia <████████████████>; Sandra Chu <s████████████; Lori Burr
██████████████ >
**Subject:** Takata - MDL Counsel Fees

Peter and Matt,

My name is Mark Plaehn and I'm the CRO and Senior Managing Director of Sales for Veristar LLC.  It has come to our attention as the acquirer of the Planet Data Solutions (PDS) assets as of January 1, 2021, that Veristar's previous invoicing to you since the acquisition has been incomplete/incorrect.  The Stipulated Protection Order states MDL Counsel is responsible for payment of all "stored data".  Currently we are in possession of approximately 135 TB of stored data related to the Takata matter.  The processing of the data was finalized and PDS commenced storing the full data set in August of 2019.  Per the Statements of Work and Court Order, $3 per GB would result in a combined monthly cost of approximately $415,000 to MDL Counsel for the stored data portion of the billing.  In addition, since the date of the Stipulated Order of 2018, PDS had also been incorrectly invoicing MDL Counsel on a monthly basis.

Although Veristar maintains the right to seek payment for the correct amounts both pre- and post-acquisition, in an effort of good faith, at this time we are only seeking payment for these monthly amounts as of January 1, 2021, which is the date of the PDS acquisition.  A calculation of the amount owed since January 2021 results in an outstanding debt of approximately $3.28M.  Moving forward, as of September 1, 2021, the MDL Counsel portion of the monthly invoice amount will be approximately $415,000, in addition to the current invoice that you receive for your specific Requester Privilege data set that we/Veristar host for Takata's potential review.

Thanks Peter and Matt.  Please let me know if you have any questions, and please also advise when we can expect payment.  We kindly appreciate a response within 5 business days.

Thank you…

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO
Mobile - (312) 961-3601
e-Mail - ██████████████████



website - www.veristar.tech
Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco

# EXHIBIT B

**From:** Riccio, Andrew <█████████████████████████>
**Sent:** Tuesday, September 14, 2021 3:13 PM
**To:** Mark Plaehn <████████████████; Sandra Chu████████████████
**Cc** ████████████████████████████
**Subject:** RE: TAKATA - VERISTAR TRANSITION

Thank you, Lori. It was a pleasure to speak with you again. I am moving you to BCC so as not to clog your inbox.

Dear Mark and Sandra,

My firm represents TKJP Corporation in relation to its chapter 15 bankruptcy case. As I'm sure you are aware, TKJP and TKH transferred a large volume of data (the "Transferred Data") to Planet Data pursuant to an order entered by the Bankruptcy Court in both the TKJP and TKH bankruptcy cases.

I have just learned that Veristar acquired the assets of Planet Data earlier this year, and may also be in possession of the Transferred Data. Under no circumstances shall Veristar transfer, manipulate, process or use the Transferred Data until such time as deemed appropriate by the requisite parties, including TKJP and TKH, and potentially the U.S. Bankruptcy Court for the District of Delaware. I am copying hereto Ross Hamilton, counsel to TKH. I think it makes sense for us to have a call in the next few days to discuss. I have some availability tomorrow afternoon and Thursday morning.

Notwithstanding the foregoing, TKJP reserves all of its rights under the (i) Agreement Regarding Cross Border Transfer of Personal Information, (ii) the Order Granting Joint Motion of TKJP Corporation and TK Holdings, Inc. for Order Approving Confidentiality and Data Privacy Agreement, and Stipulated Protective Order, and (iii) as to any remedy available to TKJP Corporation under any applicable law or agreement related to the Transferred Data.

Best,

**L Andrew S. Riccio**
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018 USA
Tel:  +1 212 626 4229
Mob: +1 303 709 9473
Fax:  +1 212 310 1697



www.bakermckenzie.com | LinkedIn

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

**From:** Lori Burr <L███████████████
**Sent:** Tuesday, September 14, 2021 15:08
**To:** Riccio, Andrew ██████████████████████

**Cc:** Mark Plaehn ████████████████ ; Sandra Chu ███████████████
**Subject:** [EXTERNAL] TAKATA - VERISTAR TRANSITION

Andrew,

Good afternoon.  Thank you for the call earlier and it was nice to speak with you.

As we discussed briefly, Planet Data was acquired by Veristar, LLC in January 2021.  Dave Cochran is no longer with the company.

I am copying Mark Plaehn (Senior Managing Director of Sales & CRO) and Sandra Chu (Chief Operating Officer) from Veristar on this email as new points of contact regarding this matter.  I have also placed their contact phones below.

Sandra/Mark, by way of introduction, Andrew was counsel for Takata during the transition of the data sets to PDS and heavily involved with the protocol that was implemented.  Please feel free to reach out to them regarding the status of this matter.

> Sandra Chu
> Chief Operating Officer
> VERISTAR
> Chicago -New York-Washington DC-Cleveland-Atlanta-Houston-Los Angeles-San Francisco
> Cell: 248-464-1563
>
> **Mark A. Plaehn**
> Senior Managing Director of Sales & CRO
> Mobile - (312) 961-3601

Thank you,
Lori

**Lori K. Burr**
**Sr. Discovery Consultant**



Chicago -New York-Washington DC-Cleveland-Atlanta-Houston-Los Angeles-San Francisco-Pittsburgh-Richmond-Raleigh

**Phone:  704-287-6668**

████████████████

# EXHIBIT C

**From:** Mark Plaehn <███████████████████████>
**Sent:** Thursday, October 21, 2021 2:42 PM
**To:** MATT P. WEINSHALL <██████████████████████>
**Cc:** Hamilton, Ross ███████████████████   Riccio, Andrew
<█████████████████████   PETER PRIETO ████████████████████████; Mark D. Belongia
███████████████   Sandra Chu ████████ | ████████
**Subject:** RE: Takata Data -- Veristar


Good afternoon Matt.  In follow up to your note and our Outside Counsel Mark Belangio's response, I would also like to set up a quick call to discuss the go forward plan.  We'd like to make sure that we migrate the appropriate data in the appropriate format to offline storage.

Additionally, though your e-mail mentioned that the storage "should not result in any storage expenses or charges", there is still a cost associated with moving the data and the subsequent storing of the data, though how this is priced in the marketplace varies widely based on a number of factors.  Veristar would love to continue to host this data, but we cannot do so at no charge.  I'd also like to go over this topic on the call.

Do you have some time tomorrow to discuss?

Thanks…

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO
Mobile - (312) 961-3601
e-Mail - ████████████████████████
<image001.jpg>
website - www.veristar.tech
Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco

**From:** Mark D. ████████████████████████
████████████████████   20, 2021 10:23 AM
**To:** MATT P. WEINSHALL ████████████████████████; Mark Plaehn ██████████████████████;
PETER PRIETO ███████████
**Cc:** Sandra Chu███████████████████   Lori Burr ████████████████████; Hamilton, Ross
<██████████████████████; Riccio, Andrew ██████████████████████>
**Subject:** RE: Takata Data -- Veristar

Please circulate a draft motion as noted below. Thanks.

**From:** MATT P. WEINSHALL████████████████████████>
**Sent:** Tuesday, October 19, 2021 1:57 PM
**To:** Mark Plaehn <████████████████████   PETER PRIETO <██████████████████████m>
**Cc:** Mark D. Belongia <███████████████████; Sandra Chu███████████████   Lori Burr
<██████████████████████; Hamilton, Ross <R██████████████████████; Riccio, Andrew

███████████████████████

**Subject:** Takata Data -- Veristar

Mark,

I'm following up on our call several weeks ago regarding Veristar's possession and storage of the Takata data that is subject to the bankruptcy and MDL courts' stipulated protective orders. I've copied counsel for the bankrupt Takata entities, who agree with us that there is no need to host the entire dataset in an online format and that it can, consistent with the protective order, be kept on a hard drive offline. This is what we contemplated with Planet Data—the mere storage and possession of the data by the vendor should not result in any storage expenses or charges. Rather, only those who access the data of particular custodians should be charged for the associated and particularized processing and hosting fees.

Since the stipulated protective order only identifies Planet Data as the vendor permitted to possess the data, however, we believe that it would be appropriate for the Plaintiffs to file a short motion with the Courts to replace Planet Data with Veristar, along with a declaration from Veristar agreeing to be bound by the provisions of the protective order and Data Transfer Agreement with the Takata entities. If you are in agreement with this approach, we will draft and circulate the proposed motion and declaration. If you have any questions or would like to discuss this on a call, please let us know. Thanks.

--Matt

**Matthew P. Weinshall**
**Podhurst** Orseck **P.A**.
SunTrust International Center
One S.E. 3rd Ave., Suite 2300
Miami, FL 33131
Office: (305) 358-2800
Fax: (305) 358-2382
Email: m████████████████

Mark D. Belongia, Attorney at Law

<image002.jpg>

33 West Monroe Street, Suite 2700
Chicago, Illinois 60603-5404
T: (312) 372-0770 | F: (312) 372-9818
**D: (312) 984-0271**

███████████████████

_____

All contents of this e-mail and any attachment are private & confidential. If received or viewed by anyone other than the intended recipient, neither this e-mail nor any attachments, or anything derived from these, may be used or passed on for any purpose whatsoever, and all materials must be destroyed and the sender notified immediately.

# EXHIBIT D

**From:** MATT P. WEINSHALL █████████████████████
**Sent:** Wednesday, October 27, 2021 5:23 PM
**To:** Mark Plaehn █████████████████
██████████████████ Hamilton, Ross ███████████████; Riccio, Andrew < ████████████ >; Mark D. Belongia ███████████████ Sandra Chu

**Subject:** RE: UPDATE FOLLOW-UP TO CALL: Re: Takata Data -- Veristar

Mark,

Thanks for following up.  I wanted to speak with the TK entities' counsel before I got back to you, and I got the chance to do so earlier today.  We appreciate your patience and efforts to develop a proposal.  Since fact discovery in the MDL is now complete, however, we cannot justify bearing the substantial one-time processing and monthly hosting fees that your proposal includes.  We understand that, as a result, VeriStar is not interested in serving as a repository for the Takata Data, per the Stipulated Protective Order.  Consequently, it appears that the only solution is to remove the data from your computers and destroy it, as the TK entities have indicated that they do not want the data returned.  Before that step is taken, however, we think that it is necessary to get appropriate approval from the bankruptcy and MDL courts, as well as the other parties to the Stipulated Protective Order.  We will attempt to get the consent of the other parties this week and file an unopposed motion with the bankruptcy court as soon as possible.  We hope it is possible to work with your firm in the future.  Please let me know if you have any questions.

Best,
Matt

**From:** Mark Plaehn █████████████████████
**Sent:** Wednesday, October 27, 2021 11:48 AM
**To:** MATT P. WEINSHALL < █████████████
**Cc:** PETER PRIETO ██████████████████ Hamilton, Ross ████████████████ Riccio, Andrew ████████████████ >; Mark D. Belongia < ████████████████ Sandra Chu
███████████████

**Subject:** RE: UPDATE FOLLOW-UP TO CALL: Re: Takata Data -- Veristar


Good morning Matt.  As the end of the month is approaching, I was just checking back to see if you and your team had any open questions or made any decisions.

One item to consider that I believe we talked about, but that I wanted to reiterate just in case.  If you choose the option to have the original hard drives returned, which of course is your least costly option in the short-term, vs. having the current processed data exported to a lower cost storage option, and if the data on those returned hard drives ever needs to be processed again for use by a future requestor, then, in the long-term, the future costs to reprocess the drives would very likely exceed the contemplated present-time export costs.  Additionally, the time involved to reprocess would likely be substantial.  Not to mention that the amount of data that was originally processed, coupled with the different formats that it came in, presented numerous hurdles that would once again need to be overcome.

We stand ready to continue to provide you with a high level of service whichever option you choose.  All the best…

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO
Mobile - (312) 961-3601
e-Mail - ███████████████

VERISTAR

website - www.veristar.tech
Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco

**From:** Mark Plaehn
**Sent:** Monday, October 25, 2021 10:21 AM
**To:** MATT P. WEINSHALL ███████████████
**Cc:** PETER PRIETO ███████████████ Hamilton, Ross <███████████████>; Riccio, Andrew <███████████████ e.c ██ >; Mark D. Belongia ███████████████ Sandra Chu ███████████████ >
**Subject:** UPDATE FOLLOW-UP TO CALL: Re: Takata Data -- Veristar

Matt,

Thanks again for your time on the phone.  As soon as we got off the call, my team updated me with a more firm estimate as to the amount of data.  We are estimating that the combined total of all responsive and privilege data that contains the search terms is likely closer to around 9 TBs of data vs. the 15 TBs I mentioned on the call.  I figured you'd like to know for estimating purposes right away.

All the best…

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO
Mobile - (312) 961-3601
e-Mail - ███████████████

VERISTAR

website - www.veristar.tech
Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco

**From:** MATT P. WEINSHALL ███████████████
**Sent:** Saturday, October 23, 2021 9:29 AM

**To:** Riccio, Andrew ██████████████████████>
**Cc:** Mark Plaehn ████████████████>; Hamilton, Ross ██████████████████>; PETER PRIETO ██████████████; Mark D. Belongia ██████████████m>; Sandra Chu ███████████

**Subject:** Re: [EXTERNAL] Re: Takata Data -- Veristar

Thanks, Andrew.  I don't think it's necessary for you to join.  I can fill you in after.

—Matt

On Oct 23, 2021, at 2:37 AM, Riccio, Andrew ██████████████████> wrote:

I am not available at 11ET Monday if you wanted me to join for TKJ. I'm not sure it's necessary for me to be on, but if so, I could speak at 10 or 12 ET Monday.

**L Andrew S. Riccio**
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018 USA
Tel:   +1 212 626 4229
Mob: +1 303 709 9473
Fax:  +1 212 310 1697
████████████████████████

On Oct 22, 2021, at 05:54, Mark Plaehn █████████████████> wrote:

Thanks Matt. I'll confirm on our end but I think that time will work. I'll confirm tomorrow. Thanks.

Mark A. Plaehn
Senior Managing Director of Sales & CRO - Veristar
Mobile - (312) 961-3601
███████████████

Veristar - www.veristar.tech

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

**From:** MATT P. WEINSHALL <███████████████████
**Sent:** Thursday, October 21, 2021 9:51:04 PM
**To:** Mark Plaehn ████████████████
███████████████████████████ Riccio, Andrew

███████████████████████████; PETER PRIETO <████████████████>; Mark D. Belongia
████████████████████████████████████████

**Subject:** RE: Takata Data -- Veristar

Thanks, Mark.  I'm tied up in a deposition tomorrow, but I'm available at 11am on Monday.  If that doesn't work for you, please let me know when you're free.  Thanks.

--Matt

**From:** Mark Plaehn <███████████████████
**Sent:** Thursday, October 21, 2021 2:42 PM
**To:** MATT P. WEINSHALL ██████████████████████████████ Andrew
<███████████████████████████████████████ D. Belongia
<████████████████████████████████████

**Subject:** RE: Takata Data -- Veristar


Good afternoon Matt.  In follow up to your note and our Outside Counsel Mark Belangio's response, I would also like to set up a quick call to discuss the go forward plan.  We'd like to make sure that we migrate the appropriate data in the appropriate format to offline storage.

Additionally, though your e-mail mentioned that the storage "should not result in any storage expenses or charges", there is still a cost associated with moving the data and the subsequent storing of the data, though how this is priced in the marketplace varies widely based on a number of factors.  Veristar would love to continue to host this data, but we cannot do so at no charge.  I'd also like to go over this topic on the call.

Do you have some time tomorrow to discuss?

Thanks…

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO
Mobile - (312) 961-3601
e-Mail - ██████████████████████
████████████jpg>
website - <u>www.veristar.tech</u>
Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco


**From:** Mark D. Belongia <█████████████████
**Sent:** Wednesday, October 20, 2021 10:23 AM
**To:** MATT P. WEINSHALL <██████████████████████████████████████
███████████████████████████████
████████████████████████████████████Hamilton, Ross

████████████████████████████████████████████████ <

**Subject:** RE: Takata Data -- Veristar

Please circulate a draft motion as noted below. Thanks.

**From:** MATT P. WEINSHALL ██████████████████
**Sent:** Tuesday, October 19, 2021 1:57 PM
**To:** Mark Plaehn ██████████████████; PETER PRIETO ████████████████
**Cc:** Mark D. Belongia ██████████████████ Chu <█████████████ Lori Burr <██████████████; Hamilton, Ross ██████████████████>; Riccio, Andrew ██████████████

**Subject:** Takata Data -- Veristar

Mark,

I'm following up on our call several weeks ago regarding Veristar's possession and storage of the Takata data that is subject to the bankruptcy and MDL courts' stipulated protective orders. I've copied counsel for the bankrupt Takata entities, who agree with us that there is no need to host the entire dataset in an online format and that it can, consistent with the protective order, be kept on a hard drive offline.  This is what we contemplated with Planet Data—the mere storage and possession of the data by the vendor should not result in any storage expenses or charges.  Rather, only those who access the data of particular custodians should be charged for the associated and particularized processing and hosting fees.

Since the stipulated protective order only identifies Planet Data as the vendor permitted to possess the data, however, we believe that it would be appropriate for the Plaintiffs to file a short motion with the Courts to replace Planet Data with Veristar, along with a declaration from Veristar agreeing to be bound by the provisions of the protective order and Data Transfer Agreement with the Takata entities.  If you are in agreement with this approach, we will draft and circulate the proposed motion and declaration.  If you have any questions or would like to discuss this on a call, please let us know.  Thanks.

--Matt


**Matthew P. Weinshall**
**Podhurst** Orseck **P.A**.
SunTrust International Center
One S.E. 3rd Ave., Suite 2300
Miami, FL 33131
Office: (305) 358-2800
Fax: (305) 358-2382
Email: ████████████████████

Mark D. Belongia, Attorney at Law

<image002.jpg>

33 West Monroe Street, Suite 2700
Chicago, Illinois 60603-5404
T: (312) 372-0770 | F: (312) 372-9818
**D: (312) 984-0271**
b███████████████ | www.johnsonandbell.com

_____

All contents of this e-mail and any attachment are private & confidential. If received or viewed by anyone other than the intended recipient, neither this e-mail nor any attachments, or anything derived from these, may be used or passed on for any purpose whatsoever, and all materials must be destroyed and the sender notified immediately.

# EXHIBIT E

**From:** Dean, Kevin R. ████████████████
**Sent:** Wednesday, January 19, 2022 6:27 PM
**To:** ███████████████████████ O'Neill, John David █████████████ ████████
**Cc:** Brown, Emily ████████████████████>; MATT P. WEINSHALL████████████████████>; David Moulton█████████████████████; Rick Wyron███████████████████████; Curt Miner ██████████████████ AFelix@ForThePeople.com
**Subject:** Re: Takata Data

Let's discuss, but be advised I will fight anyone anywhere and anytime that makes an attempt to destroy this data. Let's get on a call soon pls and avoid a courtroom if possible. I don't want you to loose money, but there are future ops for you to preserve and consider here as well as lives forever to be changed in the future needing our and your help sir.

Kevin

Get Outlook for iOS

---

**From:** Mark Plaehn███████████████
**Sent:** Wednesday, January 19, 2022 6:40:36 PM
**To:** Dean, Kevin R.██████████████████ O'Neill, John David <████████████████████
**Cc:** Brown, Emily ████████████████; MATT P. WEINSHALL███████████████████
**Subject:** RE: Takata Data

CAUTION:EXTERNAL

Yep. We'd love to keep it and be able to assist on future projects. It seems we're all stuck at a point that we all wish we could solve, but there doesn't seem to be a solution. Veristar can no longer bear the cost of storage without being compensated. And the cost to export the data for future review, whether on our platform or with another provider, is an export cost that I know you and Podhurst feel doesn't make sense with no future need readily apparent.

So if nobody is willing to pay Veristar to house/store the processed data, and nobody is willing to pay Veristar to export the processed data, then I believe the only option that leaves is for Veristar to delete the processed data. Our counsel is currently working with MDL to amend the order to allow for this. We would return the original media/hard drives to Takata and TKH, and if the data was needed for future use, the entire data set would need to be reprocessed. I don't see another path, though I'm open to other ideas.

As a side note, we have presented a few ways to bring down the cost to store the data. Let me know if you want to jump on a call to discuss. Thanks Kevin.

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO

Mobile - (312) 961-3601
e-Mail - ██████████████████

**V E R I S T A R**

website - www.veristar.tech
Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco

**From:** Dean, Kevin R. ████████████████████
**Sent:** Wednesday, January 19, 2022 5:22 PM
**To:** Mark Plaehn ████████████████>; O'Neill, John David████████████████>
**Cc:** Brown, Emily████████████████m>; MATT P. WEINSHALL████████████████>
**Subject:** Re: Takata Data

We are not going to use another party to access, would be you in next case.  We just can't pay your storage fees to keep it up nor the MDL

Call good

Get Outlook for iOS

---

**From:** Mark Plaehn <████████████████
**Sent:** Wednesday, January 19, 2022 5:53:14 PM
**To:** Dean, Kevin R.████████████████O'Neill, John David ████████████████
**Cc:** Brown, Emily████████████████
**Subject:** RE: Takata Data

CAUTION:EXTERNAL

We could, though it's a little more complex that just transferring the processed data based on how the data is stored.  The processed data is currently stored in a proprietary platform called Exego, and if we downloaded the data to the drives, it would in essence be jibberish for the next party that went to access it.  It probably makes more sense to go over all the permutations on a phone call, as if I attempt to put it to paper, I might make a mockery of trying to describe the decision tree options that present.

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO
Mobile - (312) 961-3601
e-Mail - ██████████████████



website - www.veristar.tech

Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco

**From:** Dean, Kevin R. ██████████████████>
**Sent:** Wednesday, January 19, 2022 4:30 PM
**To:** Mark Plaehn ████████████████; O'Neill, John David ████████████████
████████ Emily <ebrown@████████████
**Subject:** Re: Takata Data

Why can't you save to these devices and send them to a neutral if all approve? No one can afford the cost to keep online as no cases pending with need but will come.





Get Outlook for iOS

---

**From:** Mark Plaehn ▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Wednesday, January 19, 2022 5:08:17 PM
**To:** O'Neill, John David <▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Emily <▓▓▓▓▓▓▓▓▓▓▓>
**Subject:** RE: Takata Data

CAUTION:EXTERNAL

Good afternoon John.  I wanted to follow up back up on this to see if you might have some time tomorrow or Friday.  Thanks…

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO
Mobile - (312) 961-3601
e-Mail - ▓▓▓▓▓▓▓▓▓▓▓▓▓▓



website - www.veristar.tech
Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco

---

**From:** Mark Plaehn
**Sent:** Wednesday, January 12, 2022 12:51 PM
**To:** O'Neill, John David <▓▓▓▓▓▓▓▓▓▓▓▓
**Cc:** Dean, Kevin R. <▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Emily <g▓▓▓▓▓▓▓▓▓▓▓▓▓
**Subject:** RE: Takata Data

Hi John.  Thanks for the follow up.  I'm still working through the backlog from when I was in Florida last week, so I appreciate the reminder.  I'm available and ready to jump on a call whenever it's convenient for you.  I have time yet today or tomorrow if that works.  Thanks…

**Mark A. Plaehn**
Senior Managing Director of Sales & CRO
Mobile - (312) 961-3601
e-Mail - mplaehn@veristar.tech



website - www.veristar.tech
Chicago · New York · Washington DC · Cleveland · Atlanta · Houston · Los Angeles · San Francisco

**From:** O'Neill, John David ████████████████
████████████   January 12, 2022 11:41 AM
**To:** Mark Plaehn ████████████████████
**Cc:** Dean, Kevin R. ████████████████; Brown, Emily ████████████████>
**Subject:** RE: Takata Data

Good afternoon Mark,

Following up on this request. Kevin and I have been tasked with running this information down and had follow up requests conveyed to us.

**John David O'Neill** | Attorney At Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464 | ████████████████
o. 843.216.9629 | c. 843.834.0949 | f. 843.216.9450

**From:** O'Neill, John David
**Sent:** Wednesday, January 5, 2022 10:55 AM
**To:** ████████████████
████████████████████████   Brown, Emily <████████████████
**Subject:** Takata Data

Good morning Mark,

It was a pleasure speaking with you. As I indicated, the Plaintiffs in the Takata MDL and the Personal Injury Tort Claimants Committee in the Takata Bankruptcy are looking to stop incurring costs for the storage of data which is not immediately useful, but may be needed by individual plaintiffs in the future. This includes the data stored by Veristar, previously by Planet Data. To accomplish the front end of this task, we need to get a better idea of what we are dealing with and how the data is stored. Specifically we would like to know, is it stored on hard drives? If so, how many? What are the dimensions of the hard drives (size, quantity, weight, etc)? If it is not on hard drives, how did Planet Data receive the data?

I understand more folks will need to be looped in on this conversation, so feel free to pass this email along.

Thank you,

**John David O'Neill** | Attorney At Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464 | ████████████████
o. 843.216.9629 | c. 843.834.0949 | f. 843.216.9450

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this

communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.