IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ECONOMIC LOSS TRACK CASES AGAINST FORD AND VOLKSWAGEN DEFENDANTS | Case No. 1:15-md-02599-FAM<br><br>FILED BY _____ D.C.<br>JUN 17 2024<br>ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S. D. OF FLA. - MIAMI |

REPORT BY THE SETTLEMENT SPECIAL ADMINISTRATOR ON THE IMPLEMENTATION OF THE OUTREACH PROGRAMS PURSUANT TO THE FORD AND VOLKSWAGEN SETTLEMENT AGREEMENTS

STATUS REPORT NO. 25 FILED JUNE 14, 2024

The Settlement Special Administrator of the Ford and Volkswagen Settlement Agreements (collectively, the "Settlement Agreements") submits this Report to the Court to provide information and insight as to the ongoing efforts of the Outreach Programs under the Settlement Agreements[1].

As explained in further detail below, the Outreach Programs have been designed through discussion with the Parties, the National Highway Traffic Safety Administration, and the Independent Monitor of the Takata recalls to utilize techniques and approaches not previously applied in the recall industry, with a focus on personalized, targeted direct campaigns aimed at increasing the volume of outreach attempts per consumer via traditional and non-traditional channels with the goal of maximizing the recall remedy completion rate to the extent practicable given the applicable provisions of the Settlement Agreements. Consistent with this, the Settlement Special Administrator and Outreach Program vendors regularly confer and communicate with the

---

[1] The data and information contained in this report is generally as of late-Q2 2024.

automobile manufacturers to coordinate concerted efforts to ensure that outreach to affected vehicle owners is conducted as efficiently and as effectively as possible and to continually improve the overall process.

1. **Direct Outreach**

    a. Current and Future Campaigns in Direct Outreach to Affected Consumers

The Settlement Special Administrator and Outreach Program vendors continue to deploy various direct outreach activities which have been discussed in prior Status Reports, including activities, such as vehicle tagging, and thematic materials that have traditionally performed best in terms of response, appointment, and remedy rates, all of which have been described extensively in prior Reports.

In addition to those outreach types which are continually utilized and rotated on a periodic basis, the Settlement Special Administrator and Outreach Program vendors are implementing some new outreach formats to try to engage recipients who have yet to have the Recall Remedy performed, despite numerous touchpoints over the last several years. One example of this in the coming months are personalized video mailers. Rather than simply relying upon written language in a letter or on a postcard as has traditionally been the case, each of these mailers will include a "QR-code" which the recipient can scan on a mobile phone. This will direct the recipient to a "newsflash"-type video, including audio, the content of which will be personalized to the recipient in that it will utilize their first name and include an image of their vehicle. The video and audio will inform the recipient that the Recall Remedy has not been performed on their vehicle; that millions of other individuals with affected vehicles have had the Recall Remedy performed already; and that, as the vehicle continues to age, the risk of death or serious injury due to an inflator rupture increases, specifically calling out Zone A states where the risk is the highest. The

video will conclude with instructions for how the recipient can schedule an appointment for the Recall Remedy. The Settlement Special Administrator and Outreach Program vendors are excited to see how this unique initiative performs, especially with those vehicle owners who have failed to take action following numerous prior recall notifications.[2]

Furthermore, the Settlement Special Administrator and Outreach Program vendors have engaged a nationwide insurer for a campaign in which the insurer will notify its customers who own vehicles for which the Recall Remedy has not yet been performed. While similar efforts have been made in the past, the insurer for this round of outreach attempts has agreed to notify its customers by way of its mobile phone app, rather than through more traditional channels of outreach like mail, email, or phone. This method of notification in conjunction with the source of the notification will hopefully highlight the legitimacy and seriousness of the Takata recall with those who have not acted to date.

Lastly, in an effort to continually tailor creative materials and messaging to increase Recall Remedy rates, the Settlement Special Administrator and Outreach Program vendors are beginning to utilize "creative gaze sequencing" and "heatmapping" to assess the letters and emails used in Outreach campaigns. This technology utilizes artificial intelligence models to "look at" creative materials to predict the probability of where a recipient's eyes will be drawn during the first three to five seconds of looking at the material. This analysis therefore informs the development process to design outreach materials in a way that guides the recipient's attention to the most important and most relevant portions of the creative, resulting in a higher likelihood of Recall Remedy.

---

[2] Similar notifications will also be sent by e-mail which will include links directing the recipients to similarly personalized videos.

3

b. Continued Efforts with State Departments and Other Entities

As reported, the Settlement Special Administrator and the automobile manufacturers have engaged various state departments to endorse the deployment of letters on behalf of their respective states to inform affected citizens of the Takata inflator recall and its severity, as well as to provide information on how to have the Recall Remedy completed. These efforts generally have resulted in some of the highest response rates and remedy rates of any communications in the Outreach Program. In addition to the states in which these letters have previously been mailed[3], similar letters have been mailed or are anticipated to be mailed in the coming months in California (its second mailing) and New York (its sixth mailing). The fact that several states have now re-engaged on this type of effort for second, third, fourth, and even fifth mailings is encouraging considering the significant success of these letters in generating repairs. The Settlement Special Administrator and the automobile manufacturers continue to contact state departments to seek their cooperation in this valuable and effective effort.

c. Overall Deployment and Response

A total of 170,321,590 outbound deployments across all available channels have been made by the Settlement Special Administrator and Outreach Program vendors to affected consumers. These deployments are broken out by primary channels below:

---

[3] Louisiana, Michigan, New York, Mississippi, Alabama, Kentucky, Wisconsin, Minnesota, North Carolina, Virginia, Arkansas, Florida, Georgia, Pennsylvania, South Carolina, Ohio, Nebraska, Tennessee, Florida, Texas, Idaho, California, Puerto Rico, Colorado, New Mexico, Massachusetts, Nevada.

| Channel | Volume | Total Appointments |
|---|---|---|
| Direct Mail Pieces | 31,796,152 | 56,827 |
| Emails | 18,724,320 | 2,223 |
| Outbound Calls | 12,537,522 | 113,652 |
| Digital/Facebook Impressions | 107,134,289 | 6[4] |
| Tagging[5] | 122,593 | 5,920 |

d. Overall Results

The Settlement Special Administrator and Outreach Program vendors have performed outreach resulting in a total of 363,031[6] appointments and "warm transfers" to allow consumers to schedule appointments directly with dealers, and 834,473 Recall Remedies have been completed since the transition of outreach to the Settlement Special Administrator and Outreach Program vendors.[7]

2. **Additional Activities and Efforts**

At the end of 2021, the Settlement Special Administrator discontinued the use of earned media efforts as part of its Takata Outreach Program. Given the significant media coverage over

---

[4] Social media deployment on Facebook and other platforms is an extremely low-cost channel used primarily to maintain consumer awareness and a social presence to support other outreach activities which more regularly result in appointments and repairs, such as direct mail and outbound phone calls.

[5] "Tagging" refers to the process referenced in this and prior reports, whereby the Settlement Special Administrator's Outreach Program vendors actively search for affected vehicles on the road and, when located, place recall notifications on those vehicles.

[6] This figure exceeds the aggregate sum of the Total Appointments by Channel in the chart above because many of the inbound calls resulting from Outreach Program materials for Ford vehicles are currently being routed directly to Ford's call center for appointment scheduling purposes. Also see Footnote 6 below which is similarly applicable here.

[7] Considering the significant efforts put forth towards indirect outreach methods such as mass media and public relations-type activities, Status Reports now provide the total number of Recall Remedies performed, irrespective of whether direct outreach had been performed on a vehicle. As previously mentioned, consumers often schedule repair appointments directly with the automobile manufacturer or their local dealership rather than by calling the Outreach Programs' call center to do so. As such, the total Recall Remedy completion count presented herein cannot be attributed solely to those direct activities conducted by the Settlement Special Administrator and Outreach Program vendors and exceeds the number of appointments and "warm transfers" set by Outreach Program vendors. This is also consistent with the fact that each automobile manufacturer continues significant and extensive outreach efforts beyond those activities performed by the Settlement Special Administrator in the Outreach Programs under the Settlement Agreements.

the last several years, these earned media strategies greatly assisted in raising affected vehicles owners' awareness and understanding of the legitimacy and gravity of the Takata recalls. In ongoing consultation with the Parties and the National Highway Traffic Safety Administration, the Settlement Special Administrator and Outreach Program vendors continue to evaluate other activities to be performed in addition to and in conjunction with direct outreach to consumers.

### 3. Conclusion

The Settlement Special Administrator offers this Report to ensure that the Court is informed of the status of the Outreach Programs to date. If the Court would find additional information helpful, the Settlement Special Administrator stands ready to provide it at the Court's convenience.

                                                 /s/ Patrick A. Juneau
                                                 PATRICK A. JUNEAU
                                                 Settlement Special Administrator



After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.