# EXHIBIT C

## DECLARATION OF DAVID COCHRAN

I, David Cochran, hereby declare:

1. I am over the age of 21 and have personal knowledge of the facts set forth herein. I make this declaration in accordance with 28 U.S.C. § 1746, for use in the MDL Plaintiffs' response to Veristar, LLC's Application for Payment of Fees and Expenses.

2. I worked as the Chief Operating Officer ("COO") at Planet Data Solutions, Inc. from approximately 2008 through 2020.

3. In 2018, Planet Data began negotiating with counsel representing Plaintiffs in the Takata MDL ("Takata MDL Counsel") regarding a protocol for accessing a large amount of unprocessed data then possessed by the bankrupt Takata entities (the "Unprocessed Takata Data"). As Planet Data's COO, I participated in these negotiations.

4. In general, the protocol called for the bankrupt Takata entities to transfer to Planet Data hard drives containing the Unprocessed Takata Data, after which parties to the Takata litigation could submit requests to Planet Data ("Requesting Parties"), through a "Statement of Work" form, for specified subsets of the Unprocessed Takata Data to be processed, produced, and stored on Planet Data's Exego platform. Due to the large volume of data, Planet Data pre-processed the entire data set and stored it in the Exego platform, so that Planet Data would be able to quickly respond to requests for data from the parties.

5. A copy of the Statement of Work form is attached as Exhibit 1 to this declaration.

6. As I recall, Planet Data agreed to accept an initial payment of $75,000 from the bankrupt Takata entities and payments from Requesting Parties for the subsets of data that they requested, according to the terms set forth in the Statement of Work, as full compensation for its services with respect to the Unprocessed Takata Data.

7. Per the Statement of Work, Planet Data's compensation was linked to the data that Requesting Parties specifically requested, Planet Data agreed not to charge, and Takata MDL Counsel did not agree to pay a monthly storage fee for the entire set of Unprocessed Takata Data.

To the best of my knowledge, I declare and certify under penalty of perjury that the foregoing is true and correct.

Dated: June 27, 2024

*David Cochran*

David Cochran

# EXHIBIT 1

## Statement of Work

This Statement of Work ("SOW") has been assigned Project number [X].

The following work (the "Work")will be performed by Planet Data Solutions, Inc. ("PDS") pursuant to and in accordance with the Confidentiality and Data Privacy Agreement, and Stipulated Protective Order dated [MMMMM dd], 2018, ("Confidentiality Agreement"), and the Protocol as set out in Section 3 thereof ("Protocol"), and incorporates them by reference, including the definitions and parenthetical identifications set out in the Confidentiality Agreement. The Work will be charged at the rates set forth hereunder or in Exhibit 1.

[INSERT CLIENT NAME] ("Client") will sign and provide PDS with an ACKNOWLEDGMENT OF CONFIDENTIALITY AND DATA PRIVACY AGREEMENT, AND STIPULATED PROTECTIVE ORDER as attached to the Confidentiality Agreement as Exhibit 2.

PDS and Client will sign a Letter Agreement of the form attached as Exhibit 2 [(the "Letter Agreement")].

Pursuant to Step One of the Protocol, upon execution of the instant SOW, PDS will provide Client with the List of Custodians ("Custodians List") that was furnished to PDS by the Takata Entities.

Client as a Requesting Party under the Confidentiality Agreement requests that PDS make available a filtered database containing the Custodian's Data of the custodians included on the Custodians List and listed in Exhibit 3 hereto ("Requested Custodians").

PDS will provide an estimate of the cost of the work required to produce and host a Searchable Dataset of the Requested Custodians' Data. Client will pay PDS the retainer of 25% of the estimated costs specified in the signed Letter Agreement before PDS commences further work hereunder.

If any of a Requested Custodian's Data has already been processed and loaded into a PDS Exego Select database, PDS will:

1. create a new Exego Select database for that new Requesting Party; and
2. implement Protocol Steps Two and Three with respect to the Custodian's Data if they have not already been implemented. If Protocol Steps Two or Three have already been implemented, Client will be charged a per capita fee pursuant to the Cost-Sharing Provision of Protocol Step One.

If any of a Listed Custodian's Data has not been processed consistent with the previous processing specifications from the previous Requesting Party (deduplication approach, for example) and loaded into an Exego Select database, PDS will:

1. process the data for loading into a database;
    a. The processing specifications will be discussed during a planning call prior to the processing of the data. Depending upon processing requirements, the already processed custodians may need additional processing (rendering of images according to specifications, deduplication approach, etc.).
2. load the data into a PDS Exego Select database; and
3. implement Protocol Steps Two and Three with respect to the data.

Pursuant to Protocol Step Four, PDS will then provide the Requesting Party access to the resulting dataset comprised of the PSAN Dataset without the potentially Privileged PSAN Data, (the "Client Searchable Dataset SOW [number]") in an active Exego Select database and the associated Withheld Data Log.

Any Listed Custodian data in the Client Searchable Dataset SOW [number] will be available without storage charges for six months, and at the rate of $3 per GB per month after that. Access will be provided to Client on a per-license per user charge of $75 per month.

The Client may, pursuant to Protocol Step Four, select documents within the Client Searchable Dataset SOW [number] to be produced to them by PDS in a standard format attached hereto as Exhibit 4 (the Processing Specification Addendum). Any page images produced will contain the following legend printed on the top right side: ""**CONFIDENTIAL PSAN DATA – ATTORNEYS' EYES ONLY - SOW [SOW number].**"

PDS will, pursuant to Protocol Step Five, produce and deliver the documents selected by Client in the format specified in Exhibit 4 (the Processing Specification Addendum).

Client will notify PDS when it no longer needs access to the Client Searchable Dataset (Exego Select Database) SOW [number], and PDS will then archive the Client Searchable Dataset (Exego Select Database) SOW [number] at $3 per GB per month. The requesting party will pay $3 per GB per month for the active and archived Client Searchable Dataset (Exego Select Database) until such time that the requesting party requests deletion of that database.

**Exhibit 1**

| Description | Price |
|---|---|
| ESI Processing Services –Charges based on the extracted file size during processing, includes ingestion, de-duplication, metadata/text extraction, native file processing; delivery of metadata, text, native files, load file creation and the use of Exego® Select - ECA/Prereview/Analytics Platform | $25 per extracted GB |
| Database Setup, Design, Training, User Fees and Exego® Analytics | No Charge |
| Monthly user fee | $75 per user |
| Monthly data storage fee (First six months at no charge) | $3 per GB |
| Technical Support includes implementation of Protocol Steps Two and Three, outputting data under Protocol Step Five, and foldering, creating searches, productions, database changes, manipulation of load files received from third party hosting or processing platforms for loading into Exego® Select or Relativity® | $175 per hour Billed in 15-minute increments with a 15-minute minimum. |
| Loading data processed by PDS into Exego® Select. | No Charge |
| Cost-sharing fees for use of previously incurred implementations of Protocol Steps Two and Three with respect to restored data | As calculated pursuant to Protocol Step One |
| Import of 3rd party data into Exego® Select. (Data not processed by PDS) | $25 per GB |
| Encrypted USB Hard Drive, Travel Expenses & Shipping | At Cost |
| Machine Translation | Pricing provided upon request |

**Exhibit 2**

[INSERT DATE], 2018

Re: Services Agreement with [INSERT CLIENT NAME]

Dear:

This letter is to present an understanding of the services for an engagement between your firm, _____ ("Client" or "You") and Planet Data Solutions, Inc. ("PDS"), effective as of the date of execution of this agreement (the "Agreement"), whereby PDS personnel will provide to the Client the services outlined in the Statement of Work ("SOW") executed in conjunction herewith. We understand that such services are requested by the Client in connection in its role as _____ in _____.

## 1 Project Overview

PDS will be providing the following services for this project:

1. ESI processing as detailed in the companion processing specification addendum and pursuant to and in accordance with the Confidentiality and Data Privacy Agreement, and Stipulated Protective Order dated [MMDD], 2018, ("Confidentiality Agreement"), and the Protocol as set out in Section 3 thereof ("Protocol").
2. The work will be charged at the rates set forth in Exhibit 1 of the SOW.
3. Culled and filtered data will be delivered to the requesting party's hosting platform, pursuant to Step Five of the Protocol.

## 2 Planet Data Contact List

| CONTACT | TITLE | EMAIL | PHONE | FAX |
|---|---|---|---|---|
|  |  |  |  | 914-593-6901 |
|  |  |  |  |  |
|  |  |  |  |  |

## 3 Client Contact List

| CONTACT | TITLE | EMAIL | PHONE | FAX |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

| | | | | |
|---|---|---|---|---|
| | | | | |

## 4 Billing Information

| Invoices will be addressed to: | Other information required on invoices – internal billing numbers etc. |
|---|---|
| | TBD |

## 5 Project Schedule

PDS expects to begin processing of electronic documents upon delivery and will continue on a rolling basis until completed. This assumes that the Statement of Work is approved by the client in writing prior to the start of any processing.

## 6 Planet Data Terms and Conditions

1. **Pricing & Payment:** Planet Data Solutions, Inc. (PDS) shall invoice the Client the fees set forth in Exhibit 1 to the Statement of Work. Prices do not include applicable State or Federal taxes. All such fees are due and owing within thirty (30) days of the invoice date. Client shall be in default of this Agreement if payment in full is not received by PDS within sixty (60) days of the invoice date. In addition to its other remedies with respect to such default, PDS may charge Client interest at a rate of 1.5% per month, compounded monthly, if the invoice is not paid within that sixty (60) days. PDS has the right to suspend its services with three (3) days written notice if payments in full are not received on all invoices within 60 days of the invoice date. The party executing this Services Agreement on behalf of the client shall be responsible for all payments under this Agreement.

2. **Client Responsibilities:** The Client agrees: (a) to use its best efforts to provide PDS with defined project specifications, (b) to sign and provide PDS with an ACKNOWLEDGMENT OF CONFIDENTIALITY AND DATA PRIVACY AGREEMENT, AND STIPULATED PROTECTIVE ORDER as attached to the Confidentiality Agreement as Exhibit 2; (c) to use its best efforts to be reasonable in imposing demands and deadlines for services; (d) to report promptly to PDS of any PDS data delivery, any problems or errors which the Client observes or discovers; and (e) to notify PDS, in writing, of all court orders restricting the use, distribution or disposition of the Services, pursuant to the Protocol and this Statement of Work to be provided by PDS. The Client shall indemnify and hold PDS, its officers, agents and representatives harmless from all claims, actions, and causes of action, damages and fines resulting from or related to the Client's failure to so notify.

3. **Term:** This Agreement shall commence upon the execution date by all parties and will continue until the Client gives written notice that its need for the Services is no longer required or until this Agreement has otherwise been terminated as provided herein. Upon termination, the Client shall be responsible for payment for all Services performed by PDS prior to the effective date of termination. PDS may terminate this

Agreement (i) immediately if Client fails to pay any amounts owing when due, or (ii) otherwise, upon three (3) days written notice for any reason.

4. **Confidentiality:** PDS agrees to use information obtained in this engagement for the sole purpose of fulfilling its obligations under this Agreement and agrees to hold such information as confidential subject to the terms of the Confidentiality Agreement. Confidentiality obligations shall not apply to any information that enters into the public domain through no fault of PDS, which was disclosed to PDS by a third party not in breach of any obligations of confidentiality to the disclosing party, which is independently developed by PDS, or which is required to be disclosed in compliance with applicable law or court order. PDS understands that the work product and files of PDS, and its communications with You, are protected by the doctrine of attorney-client privilege and/or attorney work product and may not be subject to discovery. Accordingly, our records and materials will be maintained by us as confidential in accordance with the terms thereof. It is agreed that those materials and all other working papers and other documents prepared or received by us pursuant to this engagement will not be disclosed by us to third parties without Client's consent, except as may be required by judicial or administrative process. The Requesting Party will implement appropriate measures to protect the Personal Data in accordance with the Data Protection Laws and commensurate with the Data Transfer Agreement.

5. **Limitation of Liability.** IN NO EVENT with the exception of breach of confidentiality by PDS in violation of Paragraph 4 of this Agreement, SHALL THE LIABILITY OF PDS UNDER THIS AGREEMENT, WHETHER IN RESPECT OF A SINGLE OCCURRENCE OR A SERIES OF OCCURRENCES AND WHETHER ARISING UNDER CONTRACT OR TORT (INCLUDING ANY BREACH OF A STATUTORY DUTY) OR OTHERWISE, EXCEED TWO TIMES THE AMOUNT OF THE INVOICES THAT THE CLIENT RECEIVED FROM PDS FOR SERVICES RELATED TO THIS SPECIFIC PROJECT..

6. **Miscellaneous:** (a) Governing Law. This Agreement shall be governed by, and interpreted and construed in accordance with, the laws of the State of New York, U.S.A. without considering the New York conflicts of laws rules. Jurisdiction and venue shall be in New York, New York. (b) Entire Agreement. This Agreement, including all exhibits attached and incorporated as an integral part of this Agreement, constitutes the entire agreement of the parties with respect to the subject matter hereof, and supersedes all previous proposals, oral or written, and all negotiations, conversations or discussions heretofore had between the parties related to this agreement and the Confidentiality Order. (c) The parties have signed this Agreement effective as of the date set forth below.

7. **PDS Policy for Data Retention, Preservation and Return.** Pursuant to the requirements of PDS's SSAE 18 Level II Certification, PDS's policy for maintaining all forms of client data are as follows:

Client data forwarded to PDS on magnetic media shall be secured in our vault when not in use. This media shall be returned to the client at the end of a project or when it is no longer needed onsite at PDS. Data electronically transmitted to PDS shall be deleted from our server once the data has been ingested into our Source Data Management system (SDM) or moved to our hosting environment if the data requires no processing by PDS prior to loading to the review database. No further backups shall be made of data electronically transmitted. Productions from our review environment or other data that are posted to our FTP site for downloading by the client or affiliated parties shall be deleted from that site after 30 days without any further backup. Data resident in our SDM system will be backed up on a 100-day cycle for disaster recovery purposes but shall be retained online in the SDM system until it is no longer needed by PDS.

PDS performs backups of project processing batches. These backups are performed on a 100-day cycle for disaster recovery (DR) purposes. These DR backups are kept online until the project is either deleted or archived. Once a project has reached 180 days of inactivity, PDS shall archive the processing batches and they shall be retained for 36 months. The client shall be notified at the time of this archiving. At the end of that time-period, if the client has not requested the data to be restored, the processing batches shall be deleted. EXEGO Select databases may be kept online for searching even when the processing batches have been deleted, however, EXEGO Select databases shall be deleted at the end of the project archive period of 36 months if they are still online. EXEGO Select databases are backed up on a 100-day cycle for DR

purposes. Retention of processing batches beyond 36 months shall result in the assessment of a monthly storage fee charged to the client.

Review databases, inclusive of document production sets, are backed up daily on a 100-day cycle. The backup media is overwritten at the end of each 100-day cycle. When a client notifies PDS that an individual review database is no longer needed, PDS shall either archive the database prior to deleting it, or PDS shall delete the review database and any associated productions sets without performing any further backups. If an archive is not performed, the database shall cease to exist in any form after 100 days. The costs for creating a Relativity archive or exporting a Relativity database in a generic load format shall be borne by the client. Those costs are outlined in the Pricing Summary section of the Statement of Work. PDS shall ship the backup media to the client upon completion of the archive/export process and the receipt by PDS of all funds owed by the client, including the costs associated with creating the archive or export. PDS shall maintain the original review database in a near-line state for a period not to exceed 30 days while the client confirms that the backup media has been received and is in good working order. At that time, or after 30 days from the delivery of the archive media to the client or client's representative, the version of the database maintained in a near-line state at PDS shall be deleted. The backup created by PDS can only be restored within the review environment in place at PDS. Longer retention periods can be implemented for a specific matter, upon prior written agreement. The costs associated with establishing a separate backup regime shall be borne by the client.

8. **PDS Policy for the Protection of Client Data.** The following defines the standard policy for the handling all forms of client data pursuant to the requirements of PDS's SSAE 18 Level II Certification.

    **Data Security:** Client data shall be encrypted when it is transferred from PDS to the client and any other recipients of the data as designated by the client. PDS shall use the following policies and practices to effect secure data transfers:

    **Media Delivery:** All physical media that supports the transferred data shall be encrypted using the AES-256 encryption algorithm. If media cannot be encrypted to that level, then the strongest available encryption method shall be used. This procedure requires the transfer of the password from PDS to the client in a secure manner. Our standard protocol for this shall be to send the password to only pre-designated users (as determined by the client).

    **Electronic Transfer of Client Data:** It is common to transfer client data via electronic means such as FTP and/or e-mail. For FTP transfers to PDS, the data should be archived using an encrypted container (such as WINZIP and others similar applications) and then transferred via our Secure FTP Server. For data transfers to the client, PDS shall encrypt the data in a standard archive container using AES-256 encryption on our FTP site. The client should access our FTP site using secure and encrypted protocols. Our FTP site supports industry standard secure FTP (SFTP and HTTPS) transfers.

    Transfer of data via e-mail is discouraged by PDS. However, should a client insist on this method of transfer, PDS shall use our standard archiving method to encrypt the data. It is our policy to send the password in a separate e-mail and only to the recipient of that encrypted data. Given the inherent insecure nature of email, the client is <u>strongly</u> urged to only e-mail data to PDS via this secure e-mail

Case 4:15-cv-02356-YK-D Document 47-3 Filed 11/25/18 Page 65 of 114
Case 1:22-cv-02356-PAK-D Document 47-3 Filed 10/28/22 Page 65 2 of
Case 17-11375-BLS Doc 3493 Filed 11/25/18 Page 69 of 114
1134

method. PDS shall <u>not</u> be responsible for any data breach that may occur when data is not forwarded to PDS using the secure data transfer methods described above. Data transferred to the PDS FTP site by the client, or third parties associated with the project, shall not be retained on the FTP site once downloaded to our network. If copies of the uploaded data are required, it is the responsibility of the client, or the third parties associated with the project, to maintain copies on their premises. Productions posted by PDS to the FTP site for download by the client, opposing counsel or third parties associated with the project, shall be maintained on the site for 30 days, after which this data shall be deleted from the site. Maintaining such data on the site beyond 30 days requires prior written notice to, and prior written approval by, PDS.

## 7 Client Acceptance Procedures

Please sign and date in the appropriate section below. Executed signature page should be returned to PDS via email as a PDF attachment or sent via fax at 914-593-6901.

Approved by: Firm or Corporation name here

_____            _____
                                           Date



_____            _____
Printed Name                               Title


Executed by: Planet Data Solutions, Inc.



_____            _____
David S. Cochran, Chief Operating Officer   Date

Planet Data Solutions, Inc.

Case 4:15-cv-02556-YGR Document 479-3 Filed on 05/30 Docket 10/28/2024 Page 613 of 1134
Case 1:22-cv-02556-YWK-D Document 479-3 Entered on FLSD Docket 10/28/2024 Page 613 of 1134
Case 17-11375-BLS Doc 3498-1 Filed 11/29/18 Page 60 of 114

555 Taxter Road

Suite 425

Elmsford, NY 10523

P – 914-593-6900

F – 914-593-6901


www.PlanetData.com