# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

IN RE:

TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION

THIS DOCUMENT RELATES TO
ECONOMIC LOSS TRACK CASES:

|  |  |
|---|---|
| BRIDGET BOYD, *et. al*., individually and on behalf of all others similarly situated,<br>        *Plaintiffs,*<br>v.<br><br>FCA US LLC,<br>        *Defendant.* | MDL No. 2599<br><br>Master File No.: 1:15-md-2599-FAM<br><br>S.D. Fla. Case No. 1:14-cv-24009-FAM |

**DEFENDANT FCA US LLC'S MOTION FOR SUMMARY JUDGMENT AGAINST ALL ECONOMIC LOSS PLAINTIFFS IN GEORGIA AND NORTH CAROLINA AND UNDER THE LAWS OF COLORADO, UTAH, WEST VIRGINIA AND WISCONSIN AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Dated July 12, 2024

Scott M. Sarason
Florida Bar No. 0394718
ssarason@rumberger.com
RUMBERGER KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130
Tel: (305) 995-5422
Fax: (786) 536-3446

Daniel T. Graham (*pro hac vice*)
dgraham@clarkhill.com
Michael P. Croghan (*pro hac vice*)
mcroghan@clarkhill.com
Jeffrey M. Sniadanko (*pro hac vice*)
jsniadanko@clarkhill.com
Paul C. Do (*pro hac vice*)
pdo@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
Tel: (312) 985-5945
Fax: (312) 985-5954

*Attorneys for FCA US LLC*

19454165

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL POSTURE .................................................................................................... 3

LEGAL STANDARD .............................................................................................................. 5

ARGUMENT .......................................................................................................................... 6

    I.   THE REMAINING PLAINTIFFS HAVE NO REDRESSABLE INJURY OR LEGALLY RECOVERABLE DAMAGES ..........................................................................6

        A.   The Remaining Plaintiffs cannot recover any damages under applicable Georgia and North Carolina law because the cost of replacement was zero and offered no evidence of diminution in market value after the replacement. .................6

        B.   Plaintiffs have already received the benefit of their bargain through the recall.........10

            1.   The benefit-of-the-bargain theory of damages is intended to place the plaintiff in the same position as if the defendant fully performed. ............................11

            2.   Courts around the country have rejected automobile defect claims where the defendant has offered no-cost repairs. ...............................................................12

        C.   Pursuing benefit-of-the-bargain damages despite free replacements and no post-replacement diminution in value seeks an impermissible windfall...................15

        D.   The Remaining Plaintiffs offer no evidence of consequential damages such as out-of-pocket expenses, loss-of-use, or compensable lost time. ...............................16

        E.   Plaintiffs lack concrete, non-speculative harm required for Article III standing. .......................................................................................................................17

        F.   Plaintiffs lack redressable injury-in-fact. .................................................................17

        G.   Plaintiffs' claims are prudentially mooted by the recall............................................19

    II.   THE REMAINING PLAINTIFFS CANNOT ESTABLISH FCA'S LIABILITY FOR THEIR COMMON LAW FRAUD OR CONSUMER PROTECTION CLAIMS...................................................................................................................................21

        A.   None of the Remaining Plaintiffs offer evidence of affirmative misrepresentations made to them by FCA, let alone reliance on such. ......................21

19454165

    B.   Gibson and O'Neal's omission-based fraud claims fail because there was no duty to disclose pursuant to Georgia or North Carolina law. ....................................25

III.  THE GEORGIA PLAINTIFFS DID NOT GIVE PRE-SUIT NOTICE TO FCA AS REQUIRED BY THE GEORGIA FAIR BUSINESS PRACTICES ACT. ........................26

IV.  THE APPLICABLE STATUTE OF LIMITATIONS BARS GIBSON'S CLAIMS. ........26

V.  THE SUPPLEMENT TO THE SAC MUST ALSO BE DISMISSED BECAUSE THE CLAIMS OF THE REMAINING PLAINTIFFS FAIL. ............................................27

VI.  FCA IS ENTITLED TO SUMMARY JUDGMENT IN THE NEW STATES. .................27

    A.   Colorado ................................................................................................................27

    B.   Utah ......................................................................................................................28

          1.    There can be no damages for Utah claims because the cost of repair is zero. ....................................................................................................................28

          2.    FCA is entitled to judgment for Utah claims because a plaintiff in Utah cannot seek relief for an unmanifested defect. ............................................29

    C.   West Virginia .......................................................................................................29

    D.   Wisconsin .............................................................................................................30

          1.    There can be no damages for Wisconsin claims because the cost of repair is zero. ............................................................................................................30

          2.    FCA is entitled to judgment because a Wisconsin plaintiff cannot seek relief for an unmanifested defect. ....................................................................31

          3.    FCA is entitled to judgment because Wisconsin does not recognize a duty to disclose in consumer transactions. ............................................................32

CONCLUSION ............................................................................................................. 32

REQUEST FOR HEARING ........................................................................................... 34

CERTIFICATE OF SERVICE ....................................................................................... 35

19454165

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Airborne, Inc. v. Denver Air Center, Inc.*,
  832 P.2d 1086 (Colo. App. 1992) .....................................................................................27, 28

*Ali v. Cangemi*,
  419 F.3d 722 (8th Cir. 2005) ................................................................................................19

*Allen v. Tyson Foo ds, Inc.*,
  121 F.3d 642 (11th Cir. 1997) ................................................................................................5

*Allison v. McGhan Medical Corp.*,
  184 F.3d 1300, 52 Fed. R. Evid. Serv. 1081 (11th Cir. 1999) ..............................................25

*Anderson v. Liberty Lobby Inc.*,
  477 U.S. 242 (1986)................................................................................................................5

*Baltimore & O.R. Co. v. Bonafield's Heirs*,
  90 S.E. 868 (W. Va. 1916)....................................................................................................30

*Bledsoe v. FCA US LLC*,
  2022 WL 989333 (E.D. Mich. Mar. 31, 2022) .......................................................................1

*Blodgett v. State Farm Mut. Auto. Ins. Co.*,
  2002 WL 664157 (Wis. Ct. App. Apr. 24, 2002) .................................................................31

*Bloomgarden v. Allstate Fire & Cas. Ins. Co.*,
  499 F. Supp. 3d 1160 (S.D. Fla. 2020) .................................................................................17

*Bodie v. Purdue Pharma Co.*,
  236 Fed. Appx. 511 (11th Cir. 2007)........................................................................22, 23, 24

*Brazil v. Janssen Research & Dev. LLC*,
  249 F. Supp. 3d 1321 (N.D. Ga. 2016).............................................................................22, 23

*Breeden v. Richmond Cmty. Coll.*,
  171 F.R.D. 189 (M.D.N.C. 1997) .........................................................................................22

*Briehl v. Gen. Motors Corp.*,
  172 F.3d 623 (8th Cir. 1999) ................................................................................................29

*Brooks v. City of Huntington*,
  234 W.Va. 607 (W. Va. 2014) .........................................................................................29, 30

19454165

*Brown v. Hyundai Motor Am.*,
    2019 WL 4126710 (D.N.J. Aug. 30, 2019) ................................................................25, 26

*Burns v. Halsted Fin. Servs., LLC*,
    2016 WL 5417218 (N.D. Ga. Sept. 14, 2016) .................................................................26

*Burton v Chrysler Group LLC*,
    492 B.R. 392 (Bankr. S.D.N.Y. 2013) ..............................................................................1

*Canal Ins. Co. v. Tullis*,
    237 Ga. App. 515, 515 S.E.2d 649 (1999) .......................................................................6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................................................5

*Charlton v. LG Energy Solution Mich., Inc.*,
    No. 321CV02142RBMJLB, 2023 WL 1420726 (S.D. Cal. Jan. 31, 2023) .....................21

*Cheng v. BMW of N. Am.*,
    No. CV-12-09262, 2013 WL 3940815 (C.D. Cal. July 26, 2013) .............................17, 20

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .........................................................................................................17

*Combs v. Plantation Patterns*,
    106 F.3d 1519 (11th Cir. 1997) .........................................................................................6

*Crawford v. FCA US LLC*,
    No. 2:20-cv-012341, 2021 WL 3603342 (E.D. Mich. Aug. 13, 2021) ...........................12

*Crawford v. FCA US LLC*,
    No. 2:20-cv-012341, 2024 WL 919830 (E.D. Mich. Mar. 4, 2024) ...............................31

*Daubert v. Merrell Dow Pharmaceuticals*,
    509 U.S. 579 (1993) ...........................................................................................................8

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*,
    744 F.3d 1124 (9th Cir. 2014) .........................................................................................19

*Diaz v. Ford Motor Co.*,
    No. 23-10029, 2023 WL 6164455 (E.D. Mich. Sept. 21, 2023) .....................................21

*Earl v. Boeing*,
    53 F.4th 897 (5th Cir. 2022) ...........................................................................................17

*Ellis v. King*,
    400 S.E.2d 235 (W. Va. 1990) ........................................................................................30

*F.D.I.C. v. Kooyomjian,*
 220 F.3d 10 (1st Cir. 2000) ................................................................................19

*First Union Nat'l Bank v. Naylor,*
 102 N.C.App. 719 (1991) ...................................................................................10

*Flores v. FCA US, LLC,*
 No. 19-cv-10417, 2020 WL 7024850 (E.D. Mich. Nov. 30, 2020) .....................20

*Fortis Inc. Co. v. Kahn,*
 683 S.E.2d 4 (Ga. Ct. App. 2009) ........................................................................4

*Franklin v. Pence,*
 36 S.E.2d 505 (W. Va. 1945) ..............................................................................30

*In re Gen. Motors LLC Ignition Switch Litig.,*
 257 F. Supp. 3d 372 (S.D.N.Y. 2017),
 *modified on reconsideration,* 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ...........32

*In re Gen. Motors LLC Ignition Switch Litig.,*
 407 F. Supp. 3d 212 (S.D.N.Y. 2019) .................................................................10

*Georgia Ltd. Partners v. City Nat'l Bank,*
 748 S.E. 2d 131 (Ga. Ct. App. 2013) ................................................................9, 10

*Green v. Green Mountain Coffee Roasters, Inc.,*
 279 F.R.D. 275 (D.N.J. 2011) .............................................................................15

*Greenbaum v. U.S.E. P.A.,*
 370 F.3d 527 (6th Cir. 2004) ..............................................................................19

*Griffin v. Dugger,*
 823 F.2d 1476 (11th Cir. 1987) ..........................................................................27

*Gutherie v. Ford Equip. Leasing Co.,*
 424 S.E.2d 889 (Ga. Ct. App. 1992) .................................................................9, 10

*Hadley v. Chrysler Group, LLC,*
 624 Fed. Appx. 374 (6th Cir. 2015) ...............................................................18, 20

*Hardin v. KCS Int'l, Inc.,*
 199 N.C. App. 687, 682 S.E.2d 726 (N.C. Ct. App. 2009) ..................................26

*Hickman v. Subaru of Am., Inc.,*
 2022 WL 11021043 (D.N.J. Oct. 19, 2022) .........................................................20

*Hickson Corp. v. N. Crossarm Co., Inc.,*
 357 F.3d 1256 (11th Cir. 2004) ...........................................................................5

v

*Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*,
    479 Fed.Appx. 955 (11th Cir. 2012)....................................................................................19

*Jeffery v. Sarasota White Sox, Inc.*,
    64 F.3d 590 (11th Cir. 1995) ...............................................................................................5

*Jimenez v. Houseboats on Lanier, Inc.*,
    370 Ga. App. 788, 899 S.E.2d 334 (2024)......................................................................23, 24

*Joint Venture v. Onion*,
    938 F.2d 35 (5th Cir. 1991) .................................................................................................19

*Kattar v. Demoulas*,
    739 N.E.2d 246 (Mass. 2000) .............................................................................................16

*Kommer v. Ford Motor Co.*
    2017 WL 3251598 (N.D.N.Y. July 28, 2017) ...........................................................13, 14, 15

*Laska v. Steinpreis*,
    231 N.W.2d 196 (Wis. 1975).................................................................................................31

*Legacy Acad., Inc. v. JLK, Inc.*,
    330 Ga. App. 397 (2014) ...............................................................................................10, 11

*Leishman v. Kamas Valley Lumber Co.*,
    19 Utah 2d 150, 427 P.2d 747 (1967)..............................................................................28, 29

*Letson v. Ford Motor Co.*,
    No. 23-10420, 2024 WL 845844 (E.D. Mich. Feb. 28, 2024)..............................................21

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998).............................................................................................................2, 3

*Lytle v. Nutramax Laboratories, Inc.*,
    99 F.4th 557 (9th Cir. 2024) ..................................................................................................9

*McCabe v. Daimler AG*,
    160 F. Supp. 3d 1337 (N.D. Ga. 2015) .............................................................22, 23, 24, 25

*Mize v. Jefferson City Bd. of Educ.*,
    93 F.3d 739 (11th Cir. 1996) .................................................................................................5

*Moore v. Lovein Funeral Home, Inc.*,
    852 S.E.2d 876 (Ga. Ct. App. 2020).................................................................................23, 24

*N. Carolina Dep't of Transp. v. Mission Battleground Park, DST*,
    370 N.C. 477 (2018) ..............................................................................................................7

vi

*Naparala v. Pella Corp.*,
    153 F. Supp. 3d 884 (D.S.C. 2015).........................................................................32

*Pacheco v. Ford Motor Co.*,
    No. 22-11927, 2023 WL 2603937 (E.D. Mich. Mar. 22, 2023) ..................................21

*Penthouse Int'l, Ltd. v. Meese*,
    939 F.2d 1011 (D.C. Cir. 1991) ...............................................................................19

*Philips v. Ford Motor Co.*,
    2016 WL 693283 (N.D. Cal. Feb. 22, 2016) ...........................................................12

*Pitts v. Am. Sec. Ins. Co.*,
    550 S.E.2d 179 (N.C. Ct. App. 2001) .....................................................................25

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ..............................................................................27

*Price v. L'Oreal USA, Inc.*,
    2020 WL 4937464 (S.D.N.Y. Aug. 24, 2020) ...........................................................9

*Pueblo Bancorporation v. Lindoe, Inc.*,
    63 P.3d 353 (Colo. 2003) ........................................................................................28

*Raymo v. FCA US LLC*,
    475 F. Supp. 3d 680 (E.D. Mich. 2020)...................................................................12

*S. Utah Wilderness All. v. Smith*,
    110 F.3d 724 (10th Cir. 1997) ................................................................................19

*Sater v. Chrysler Group LLC*,
    EDCV 14-700-VAP(DTBx), 2016 WL 7377126 (C.D. Cal. Oct. 25, 2016) .............12, 15, 16

*In re Se. Eye Ctr.-Pending Matters*,
    2019 WL 2051336 (N.C. Super. May 7, 2019) ..............................................22, 24

*Sharp v. FCA US LLC*,
    637 F.Supp.3d 454 (E.D. Mich. Oct. 25, 2022)..............................................20, 21

*Sierra Club v. U.S. Army Corps of Engineers*,
    277 F. App'x 170 (3d Cir. May 14, 2008) ...............................................................19

*Solak v. Ford Motor Co.*,
    83 F.Supp.3d 658 (E.D. Mich. July 19, 2023).........................................................21

*Song v. Brown*,
    565 S.E.2d 884 (Ga. Ct. App. 2002)................................................................15, 16

*Soo Line R. Co. v. Wisconsin Dep't of Revenue,*
   278 N.W.2d 487 (Wis. Ct. App. 1979), *aff'd*, 292 N.W.2d 869 (Wis. 1980)........................31

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016)..................................................................................................................18

*Sprinkle v. N.C. Wildlife Res. Comm'n,*
   165 N.C. App. 721, 600 S.E.2d 473 (2004)....................................................................7, 16, 17

*State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,*
   225 Wis. 2d 305 (Wis. 1999).....................................................................................................31

*United States ex rel. Stebner v. Stewart & Stevenson Servs., Inc.,*
   305 F. Supp. 2d 694 (S.D. Tex. 2004).......................................................................................15

*Strader v. Sunstates Corp.,*
   129 N.C.App. 562, 500 S.E.2d 752 (N.C. Ct. App. 1998)
   *disc. rev. denied*, 349 N.C. 240, 514 S.E.2d 274 (1998) ........................................................ 11

*Sugasawara v. Ford Motor Company,*
   2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) .................................................................17, 18

*Surrat v. Grain Dealers Mut. Ins. Co.,*
   74 N.C. App. 288, 328 S.E.2d 16 (1985)...............................................................................9, 10

*In re Takata Airbag Products Liab. Litig.,*
   379 F. Supp. 3d 1333 (S.D. Fla. 2019) .......................................................................................2

*Telfair v. First Union Mortgage Corp.,*
   216 F.3d 1333 (11th Cir. 2000) .................................................................................................27

*Tershakovec v. Ford Motor Co., Inc.,*
   79 F.4th 1299 (11th Cir. Jul 7, 2023).........................................................................................4

*Thiedemann v. Mercedes-Benz USA, LLC*
   872 A.2d 783 (N.J. 2005)....................................................................................................14, 15

*Tietsworth v. Harley-Davidson, Inc.,*
   677 N.W.2d 233 (Wis. 2004)...............................................................................................31, 32

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prods. Liab. Litig.*
   915 F. Supp. 2d 1151 (C.D. Cal. 2013)................................................................................13, 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod.*
   *Liab. Litig.,*
   785 F. Supp. 2d 925 (C.D. Cal. 2011) ......................................................................................32

*United States v. (Under Seal)*,
    757 F.2d 600 (4th Cir. 1985) ..........................................................................20

*Utah Dep't of Transp. v. Rayco Corp.*,
    599 P.2d 481 (Utah 1979).............................................................................29

*Waller v. Hewlett-Packard Co.*,
    295 F.R.D. 472 (S.D. Cal. 2013) ...................................................................15

*Ward-Richardson v. FCA US LLC*,
    690 F. Supp. 3d 1372 (N.D. Ga. Sept. 6, 2023)......................................19, 21

*Weber, Hodges & Godwin Commercial Real Estate Services, LLC v. Cook*,
    186 N.C. App. 288 ........................................................................................11

*Weidman v. Ford Motor Co.*,
    2022 WL 1071289 (E.D. Mich. Apr. 8, 2022)..............................................12

*Winzler v. Toyota Motor Sales USA, Inc.*,
    681 F.3d 1208 (10th Cir. 2012) ........................................................19, 20, 29

*Winzler v. Toyota Motor Sales USA, Inc.*,
    No. 1:10-cv-00003-TC, 2010 WL 3064364 (D. Utah Aug. 3, 2010) ........29, 30

*Wright v. Metro. Atlanta Rapid Transit Auth.*,
    283 S.E.2d 466 (Ga. 1981)..............................................................................7

*In re Zantac (Ranitidine) Prod. Liab. Litigation*,
    2022 WL 16729170 (11th Cir. Nov. 7, 2022)................................................27

**Statutes**

15 U.S.C. § 2301 et seq.......................................................................................15

49 U.S.C. § 30101, et seq. ...................................................................................15

Cal. Bus. & Prof. Code § 17200.....................................................................13, 18

Cal. Civ. Code §§ 1750–1784 ........................................................................13, 18

Cal. Civ. Code § 1790 .........................................................................................18

Fla. Stat. § 501.204 ...............................................................................................3

N.C. Gen. Stat § 75-1.1..........................................................................................4

N.J.S.A. 56:8-1 et seq. .........................................................................................14

N.Y. Gen. Bus. Law § 349 ...........................................................................3, 14, 31

ix

N.Y. Gen. Bus. Law § 350 ..................................................................................................3, 14, 31

O.C.G.A. § 9–3–33 ........................................................................................................................27

O.C.G.A. §§ 10-1-390—10-1-408 ...........................................................................................2, 3, 26

O.C.G.A. § 23-2-53 ......................................................................................................................25

**Rules**

Fed. R. Civ. Proc. 12(b)(1) ...........................................................................................................18

Fed. R. Civ. Proc. 23(b)(3) .............................................................................................................4

Fed. R. Civ. Proc. 56(a) ..................................................................................................................5

**Other Authorities**

1 Dan B. Dobbs, LAW OF REMEDIES § 3.3(7) at 312 (2d ed. 1993) .................................................15

5 Mark C. Hansen, et al., BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL
    COURTS § 47:37 (4th ed. Dec. 2016 update)............................................................................11

RESTATEMENT (SECOND) OF CONTRACTS § 347, cmt. A ....................................................................11

24 WILLISTON ON CONTRACTS § 64:1 (4th ed. May 2017 update) ................................................11

19454165

## PRELIMINARY STATEMENT

This Court granted FCA US LLC ("FCA") summary judgment on Plaintiffs' claims brought in 12 of 14 states because Plaintiffs could not prove damages. Plaintiffs' claims in the remaining states of Georgia and North Carolina suffer from the same deficiencies. Plaintiffs Michelle Gibson (Georgia), Debra Johnson (Georgia), and Laquintha O'Neal (North Carolina) (the "Remaining Plaintiffs") each owned a FCA vehicle subject to the NHTSA coordinated Takata airbag recall. FCA either replaced their vehicles' non-desiccated inflators or offered to do so free of charge.

Further, although they lack a resident plaintiff, the new claims in the Supplement to Plaintiffs' Second Amended Complaint add allegations to Count 4, common law fraud, regarding four new states: Colorado, Utah, West Virginia, and Wisconsin (the "New States"). *See* D.E. 4521. The unnamed class members who purchased a FCA vehicle with a non-desiccated Takata airbag in the New States were undeniably given the same offer made to Gibson, Johnson, and O'Neal.

The Court granted summary judgment in states where damages are measured by the lesser of the cost of repair and the difference between fair market value of the vehicle as warranted and the fair market value of the vehicle as sold.[1] *See* D.E. 4471 at 15 ("Judgment Order"). The Court held that Plaintiffs in such states, each of whom it is undisputed has already had or could have had the recall replacement free of charge, "have been compensated and made whole. They got what they bargained for." *Id*. The Court reasoned that "they have no legally recoverable benefit-of-the-bargain damages" because they are now in the same position had FCA sold them vehicles without non-

---

[1] The Court's Judgment Order also resulted in the dismissal of the Named Plaintiffs who had purchased Chrysler vehicles manufactured *before* June 10, 2009 (the "FCA Sale Order"). Further, some class members purchased vehicles that were manufactured by Chrysler prior to the FCA Sale Order but purchased used after the FCA Sale Order; they do not bring independent claims against FCA and are subject to dismissal. *See* Dkt. 4183 at 27-32, FCA US LLC's Motion for Summary Judgment against All Economic Loss Plaintiffs and Incorporated Memorandum of Law, Section II.A.2.f. The FCA Sale Order, which allowed FCA to purchase assets of Chrysler out of its bankruptcy, *bars* such claims against FCA due to the lack of post-closing conduct by FCA and FCA having no duty to warn those purchasers about Chrysler vehicles. *See* D.E. 4183 at 27-32; *Bledsoe v. FCA US LLC*, 2022 WL 989333, at *1 (E.D. Mich. Mar. 31, 2022) (applying Sale Order to grant judgment on the pleadings for FCA against plaintiff purchasers of *Chrysler* vehicles and refusing to extend liability to FCA as expressly prohibited by the Sale Order); *Burton v Chrysler Group LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013) (holding FCA also has no duty to warn).

desiccated Takata airbags. *Id*. The Court's application of the laws in the states at issue in this Motion mandates the same result.

But that is not the only basis relating to damages upon which the Court can grant FCA summary judgment. The Remaining Plaintiffs also lack Article III standing for two reasons: (1) because they have not suffered concrete harm, and (2) because the free recall replacement has stripped them of a redressable injury. Moreover, a growing chorus of courts around the country have found that vehicle owners' causes of action are mooted for lack of damages when their vehicles are subject to a NHTSA-coordinated recall. The Remaining Plaintiffs have in fact received the benefit of their bargain after the free recall replacement, meaning any additional recovery by the Remaining Plaintiffs would amount to a double-recovery windfall prohibited by state law.

With respect to liability, the Remaining Plaintiffs' fraud or consumer fraud claims also suffer from a failure to prove facts to support either a misrepresentation, duty to disclose, or reliance. At an earlier stage of these proceedings, this Court noted that there was no evidence in the record of any Remaining Plaintiff identifying with any specificity an affirmative misrepresentation that they heard, saw, or read – much less relied on – when deciding to purchase their vehicle. D.E. 4666. FCA also had no duty to disclose any alleged defect under either Georgia or North Carolina law. As for their statutory consumer protection claims, neither Georgia Plaintiff Gibson or Johnson provided pre-suit notice to FCA as required by the Georgia Fair Business Practices Act ("GFBPA"), and Gibson's claims are time-barred.

Finally, the New States – Colorado, Utah, West Virginia, and Wisconsin – do not have a resident plaintiff. As a result, the claims in the New States would fall along with the Remaining Plaintiffs' claims. Specific to Utah and Wisconsin, the lack of a manifested defect further precludes claims in those states, and FCA had no duty to disclose in this case under Wisconsin law. For these reasons as set forth more fully below, the Court should grant FCA summary judgment on the Remaining Plaintiffs' claims in the Second Amended Complaint and the Supplement to the Second Amended Complaint, disposing of this case in its entirety.[2]

---

[2] This Court has noted that "when pretrial proceedings end, the Court will sever the Transferor Plaintiffs' legal actions from the now legally operative Direct File Complaints and suggest remand and transfer of these legal actions to the appropriate transferor court (here the Eastern District of Michigan) under Section 1407(a)." *In re Takata Airbag Products Liab. Litig.*, 379 F. Supp. 3d 1333, 1343 (S.D. Fla. 2019). To the extent any claims survive this motion practice, FCA expressly reserves

19454165

## PROCEDURAL POSTURE

On November 10, 2022, this Court granted FCA summary judgment on each of Plaintiffs' claims brought in Arizona, California, Florida, Illinois, Maryland, Massachusetts, Michigan, New Jersey, New York, Ohio, South Carolina, and Texas for lack of damages (*1:15-md-02599-FAM*, Docket Entry ("D.E.") 4471 at 16.) The Court further requested that Defendants file motions for summary judgment pertaining to the remaining Plaintiffs' claims in those states not addressed in the Judgment Order. *Id*. On December 16, 2022, FCA moved for summary judgment on the Remaining Plaintiffs' claims brought under the laws of Georgia and North Carolina in the Second Amended Consolidated Class Action Complaint (D.E. 4024, the "Second Amended Complaint" or "SAC"). *See* D.E. 4488.

Plaintiffs subsequently moved for reconsideration of the Judgment Order with respect to the Court's summary judgment ruling on the claims brought pursuant to the California, Illinois, Michigan, and New York consumer protection laws as well as the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), along with the Court's prior dismissal of claims brought on behalf of class members whose claims arose under the laws in which no named plaintiff resides on Article III standing grounds. *See* D.E. 975, D.E. 4476, D.E. 4478, D.E. 4483. The Court denied Plaintiffs' Motion for Reconsideration with respect to the Court's dismissal of the claims brought pursuant to the California, Illinois, Michigan, and New York consumer protection laws as well as the FDUTPA. *See* D.E. 4538. The Court partially granted Plaintiffs' Motion for Reconsideration on different grounds, allowing Plaintiffs to file a supplement to the Second Amended Complaint (D.E. 4521, the "Supplement to the Second Amended Complaint" or "the Supplement to the SAC") to assert claims in other states with "similar" laws, and FCA to file a supplemental motion for summary judgment. *See* D.E. 4504 at 2. FCA answered and moved for summary judgment on the supplemental portion of the SAC. *See* D.E. 4540.

On April 7, 2023, Plaintiffs filed a motion for class certification against FCA. *See* D.E. 4608. In their Motion, Plaintiffs moved to certify two classes: (1) a multistate common law fraud class under the laws of 11 jurisdictions (Georgia, North Carolina, Alabama, Colorado, Delaware, the District of Columbia, Rhode Island, Tennessee, Utah, West Virginia, and Wisconsin) (the "Fraud

---

and does not waive its rights under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998), including but not limited to, its right to seek remand of the Transferor Plaintiffs' legal actions to the transferor district for trial.

Class")[3]; and (2) a North Carolina consumer protection class under the North Carolina Unfair and Deceptive Trade Practices Act (the "Statutory Class"). The multistate Fraud Class was anchored to the fraud claims of named Plaintiffs from Georgia (Gibson and Johnson) and North Carolina (O'Neal), along with the North Carolina Unfair and Deceptive Trade Practices Act claim.

On June 20, 2023, the Court initially granted Plaintiffs' motion to certify. *See* D.E. 4659. However, shortly thereafter, the Eleventh Circuit issued its ruling in *Tershakovec,* substantially impacting the viability of certifying certain of the fraud claims. *See Tershakovec v. Ford Motor Co., Inc.,* 79 F.4th 1299 (11th Cir. Jul 7, 2023). Following *Tershakovec,* Plaintiffs moved to narrow the definition of their certified multistate Fraud Class against Defendant FCA to exclude purchasers from five jurisdictions – Alabama, Delaware, the District of Columbia, Rhode Island, and Tennessee – because, as Plaintiffs conceded, a class-wide presumption of reliance was not permitted for common law fraud claims in those states. *See* D.E. 4663 at 2. On July 13, 2023, the Court granted Plaintiffs' motion to narrow the certified Fraud Class to exclude purchasers in Alabama, Delaware, the District of Columbia, Tennessee, and Rhode Island. *See* D.E. 4666.

The July 13, 2023 order did not address Plaintiffs' arguments with respect to Georgia (or the other states' laws). Instead, the Court ordered the Parties to submit additional briefing "as to whether the Georgia purchasers should also be excluded" from the class. D.E. 4665, at 1. Following the parties' briefing on the predominance issue (D.E. 4761, D.E. 4674, D.E. 4676, D.E. 4681), on August 23, 2023, the Court issued two orders. The first order further narrowed Plaintiffs' certified Fraud Class against FCA to exclude all Georgia purchasers because Georgia law requires "misrepresentations made in writing on standardized, uniform documents sent to all class members" to support a presumption of reliance and there was no evidence of written misrepresentations conveyed in standardized, uniform documents received by all class members in this case. D.E. 4688 at 4-5 (citing *Fortis Inc. Co. v. Kahn*, 683 S.E.2d 4, 8 (Ga. Ct. App. 2009).) Because class-wide reliance could not be inferred under Georgia law, the Court held that the predominance requirement of Rule 23(b)(3) was not satisfied. *See id.* at 6. The second order denied as moot FCA's Motion for Summary Judgment Against All Economic Loss Plaintiffs in Georgia and North Carolina and Incorporated Memorandum of Law (D.E. 4488) and FCA's Motion for

---

[3] Plaintiffs failed to include Virginia purchasers within their proposed Class Definition and therefore Virginia was not certified in the Fraud Class. *See* D.E. 4608 at 1, 52; D.E. 4659; D.E. 4688 at 2, fn.1.

Summary Judgment on Plaintiffs' Supplement to Second Amended Complaint and Incorporated Memorandum of Law in Support (D.E. 4540). D.E. 4690. Pursuant to this Court's ruling during the hearing held on May 29, 2024, the Court allowed FCA to file a new motion for summary judgment to address the Remaining Plaintiffs' claims. *See* D.E. 4785.

Accordingly, FCA moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on the Remaining Plaintiffs' claims brought under the laws of Georgia and North Carolina in the SAC (D.E. 4024) and on the Supplement to the SAC (D.E. 4521).

## **LEGAL STANDARD**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). The party opposing summary judgment must make a sufficient showing to establish the existence of an essential element in that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323-24. If the nonmovant fails to adduce evidence which would be sufficient to support a jury finding for the nonmovant when viewed in a light most favorable to the nonmovant, summary judgment may be granted. *Anderson*, 477 U.S. at 254-55. The burden on the nonmoving party is substantial: "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247-48. As such,

19454165

the nonmoving party "must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

## ARGUMENT

## I.     THE REMAINING PLAINTIFFS HAVE NO REDRESSABLE INJURY OR LEGALLY RECOVERABLE DAMAGES.

FCA is entitled to summary judgment because the Remaining Plaintiffs have no legally recoverable damages following FCA's replacement or an offer to replace their vehicles' non-desiccated Takata airbag(s) for free. Both Plaintiff Johnson and O'Neal's vehicles have received the recall replacement and Gibson failed to take advantage of the recall. Without admissible evidence of injury or damages, the Remaining Plaintiffs cannot recover on any of their claims.

### A.     The Remaining Plaintiffs cannot recover any damages under applicable Georgia and North Carolina law because the cost of replacement was zero and offered no evidence of diminution in market value after the replacement.

The Court has already dismissed plaintiffs' claims brought under a total of 14 states' laws: Arizona, California, Florida, Illinois, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, Ohio, Pennsylvania, South Carolina, and Texas – 12 of which applied to plaintiffs suing FCA. The Court held that "Plaintiffs' benefit-of-the-bargain damages are properly measured as the lesser of (1) the cost of repair or (2) the difference between the fair market value of the vehicle as warranted and the fair market value of the vehicle as sold, reduced according to Plaintiffs' ability to mitigate or avoid damages." D.E. 4471 at 16. Accordingly, "that means evidence of Defendants' post-sale repairs is not only relevant to the calculation of Plaintiffs' damages, but eliminates those damages altogether." *Id*. The Court's analysis applies with equal force to the Remaining Plaintiffs' claims brought under the laws of Georgia and North Carolina.

**Georgia**. Georgia law allows plaintiffs to seek one of two alternative measures: "[w]hen a plaintiff seeks recovery for damages to an automobile, he may claim the reasonable value of repairs [necessary to repair the defect], together with hire on the vehicle while rendered incapable of use, and the value of any permanent impairment, *provided the aggregate amount of these items does not exceed the fair market value of the automobile before the injury*. In the alternative, plaintiff may prove the difference in fair market value of the property before the injury and afterwards." *Canal Ins. Co. v. Tullis*, 237 Ga. App. 515, 516, 515 S.E.2d 649, 650 (1999) (emphasis in original). These

19454165

alternative measures are (1) cost of repair *plus* loss of use *plus* permanent impairment (the "**Cost of Repair Plus Measure**") and (2) market value (the "**Market Value Measure**").

As to the Cost of Repair Plus Measure, Plaintiffs Gibson and Johnson offer *no evidence* of such damages. Plaintiffs offer no evidence of the "cost of repair," which, of course, is zero. Plaintiffs also concede that they are *not* offering any "loss of use" damages. *See* D.E. 4478 at 17 and at Exhibit A (10/21/2022 Hr'g Tr. at 56:12-13 (Plaintiffs "not seeking a separate category of damages for loss of use")); D.E. 4538 at 9-10. Nor do Plaintiffs offer any evidence of the value of any "permanent impairment." Instead, the evidence in the record irrefutably proves that FCA has replaced, or offered to replace, Gibson and Johnson's airbag(s) free of charge and at no cost to them. *See* SOF at ¶¶ 94, 104. As a result, Gibson and Johnson cannot recover under the Cost of Repair Plus Measure because they have not offered any evidence to support such a claim under Georgia law.

**North Carolina**. Although North Carolina courts do not describe the measure of damages as a Cost of Repair Plus Measure like Georgia, it does provide a market-based damages measure:

> [North Carolina courts are] committed to the general rule that the measure of damages for injury to personal property is the difference between the market value of the damaged property *immediately before and immediately after the injury*. The purpose of the rule is to pay the owner for his loss. If the damaged article has market value, the application of the before and after rule is relatively simple. Even in that case, however, the cost of repairs is some evidence of the extent of the damage.

*Sprinkle v. N.C. Wildlife Res. Comm'n*, 165 N.C. App. 721, 726, 600 S.E.2d 473, 477 (2004) (emphasis in original). This is a market value measure to which cost of repairs is relevant which both Georgia and North Carolina courts apply (the "**Market Value Measure**").

**Market Value Measure – <u>*Georgia and North Carolina*</u>**. Summary judgment is warranted for FCA because none of the Remaining Plaintiffs have presented competent evidence of their vehicles' market value, either before or after the injury, let alone the Market Value Measure of damages under Georgia and North Carolina law. In Georgia, "[f]air market value is the price a seller who desires, but is not required, to sell and a buyer who desires, but is not required, to buy, would agree is a fair price, after due consideration of all the elements reasonably affecting value." *Wright v. Metro. Atlanta Rapid Transit Auth.*, 283 S.E.2d 466, 469 (Ga. 1981). In North Carolina, "[f]air market value … is defined as 'the price to which a willing buyer and a willing seller would agree.'" *N. Carolina Dep't of Transp. v. Mission Battleground Park, DST*, 370 N.C. 477, 485 (2018). Plaintiffs offer *no evidence* of the fair market value of Gibson's, Johnson's, or O'Neal's vehicles

before and after the "injury" – whether injury is defined as point-of-purchase, date of recall, or date of repair – such as with vehicle appraisals at *any* of those times.

Instead, Plaintiffs rely solely on a damages model based on a conjoint survey and purported market simulations.[4] Plaintiffs' damages expert Professor Jean-Pierre Dubé conceded that the measure of damages he calculated is:

> [T]he difference between the *market price actually paid* for a Class Vehicle and the *but-for market price Class Members would have paid for the Class Vehicle had they been aware of the airbag defect at the point of sale*.

D.E. 4222-6 at Page 12 of 212 (Dubé Rpt. ¶ 25 (emphasis added).) But the *market price actually paid*, according to Plaintiffs' theory of the case, was not a transaction between a willing buyer and willing seller because the Plaintiffs either would not have purchased the vehicles had they known about the alleged defect or would not have paid as much as they did. *See* SAC at ¶ 56 ("Provided with the truth regarding these vehicles, Plaintiffs … would not have purchased ... their Class Vehicles and/or would not have paid as much as they did."). Conversely, the *but-for market price Class Members would have paid for the Class Vehicle had they been aware of the airbag defect at the point of sale* also is not evidence of a transaction between a willing buyer and willing seller because, although it purports to determine what a willing *buyer* would have paid, it says nothing about the willingness of the seller. There is no evidence that FCA would have willingly sold their vehicles to Plaintiffs at the loss Dubé calculated and without adjusting supply to account for shifting demand. Whatever Dubé attempted to calculate – call it a *pseudo*-willingness to pay demand-side market simulation – it is not, in either instance, *fair market value*. Dubé measured consumer preferences, *not* fair market value.

Specifically, Dubé did not measure fair market value **_before_** the injury. In creating his conjoint survey and in running the market simulations from which he purports to show a difference in market price, Dubé never relied upon the purchase price plaintiffs paid. Rather, Dubé used Kelley Blue Book 2020-2021 MSRP to generate the price attribute factor he used in his conjoint survey.

---

[4] Although the Court denied FCA's *Daubert* motion to exclude Plaintiffs' damages expert, FCA notes that had that motion been granted, FCA would have been entitled to summary judgment on benefit-of-the-bargain damages because there would be no evidence supporting a market or actual value calculation as required under both Georgia and North Carolina law. To the extent the Court revisits and reconsiders the *Daubert* decision, as the Court suggested it might (*see* D.E. 4417 at ¶ 4), FCA expressly reserves the right to re-raise this argument as well. *See* D.E. 4183 at 15; *see also* D.E. 4478 at Exhibit A (10/21/2022 Hr'g Tr. at 55:8-20, 57:8-12 (Plaintiffs' counsel conceding that if Dubé does not testify, they lose.)).

*See* D.E. 4222-6 at Page 30-31 of 212 (Dubé Rpt. ¶¶ 58-59.) Then, in order to run his market simulations, he used the MSRP based on Ward's specification and sales data for the model vehicle of each brand having the largest number of affected vehicles and his random assignment of trim packages from which he calculated price premiums, which again was not tethered to the price plaintiffs paid. *See* D.E. 4222-6 at Page 48-50 of 212 (Dubé Rpt. ¶¶ 99-104.) Thus, Dubé's model does not align with applicable state law in either Georgia or North Carolina with respect to calculating fair market value before the injury. A "MSRP is determined based on how [the manufacturer] seeks to portray the product and competitor pricing, and not on any market research regarding what customers actually pay." *Price v. L'Oreal USA, Inc.*, 2020 WL 4937464, at *6-8 (S.D.N.Y. Aug. 24, 2020) (emphasis added). The *L'Oreal* court held that: "Accordingly, Dr. Dubé[s] assumption that **MSRP is an accurate proxy for price paid ... is unreliable.**" *Id.* (Dr. Dubé's damages report was excluded) (emphasis added).

Dubé's model also fails to present an acceptable damages model setting forth fair market value ***after*** the injury. The substantive law in Georgia and North Carolina differentiates between fair market value and the price an unwilling seller obtains in a forced sale.[5] Dubé's model does not sufficiently account for these types of supply-side considerations. Dubé's model unacceptably presumes that the quantity of vehicles sold and market share of each brand must remain fixed even as prices change, *i.e.*, each automaker may not offer different or fewer products. *See* D.E. 4222-6 at Page 11-12, 50 of 212 (Dubé Rpt. ¶¶ 22, 27, 104); *see also* D.E. 4222-9 at Page 15 of 20 (Dubé 1st Dep. Tr., 196:10-12.) Moreover, his model's use of quantities actually produced and sold in the real world is directly contradicted by the court's well-reasoned ruling in *Ignition Switch*: "To

---

[5] *See Georgia Ltd. Partners v. City Nat'l Bank*, 748 S.E. 2d 131, 132 (Ga. Ct. App. 2013) ("Because foreclosure sales are forced sales and are conducted under conditions that differ from the ordinary market for the property in question, they notoriously fail to bring the true market price of the property.") (internal quotations omitted); *Gutherie v. Ford Equip. Leasing Co.,* 424 S.E.2d 889 (Ga. Ct. App. 1992) ("[E]vidence of the 'quick sale' value of the subject property . . . does not reflect the price that would be obtained in a sale under the usual market conditions."); *Surrat v. Grain Dealers Mut. Ins. Co.*, 74 N.C. App. 288, 293, 328 S.E.2d 16, 19-20 (1985) ("[t]he term 'actual cash value' means the fair or reasonable cash price for which the property could be sold in the market in the ordinary course of business, and not at forced sale, or what property is worth in money, allowing for depreciation" and that actual cash value is "synonymous" with fair market value) (cleaned up)).

assume ... that [the manufacturer] would sell the same number of vehicles in the but-for world despite commanding a lower price for each vehicle at the same marginal cost per sale is to assume a massive forced sale – contrary to the substantive law in [California, Missouri, and Texas]." *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 240 (S.D.N.Y. 2019). For the same reason it is also contrary to the law in Georgia and North Carolina set forth in *Georgia Ltd. Partners, Gutherie*, and *Surrat*. Dubé's model is not sufficient to meet the Market Value Measure of damages under Georgia or North Carolina law, and as a result, the remaining Plaintiffs have no evidence to support the Market Value Measures in these jurisdictions.

Accordingly, FCA is entitled to summary judgment because the Remaining Plaintiffs have failed to offer competent evidence to support a Cost or Repair Plus Measure in Georgia or a Market Value Measure in North Carolina and Georgia.

**B.     Plaintiffs have already received the benefit of their bargain through the recall.**

Another flaw in the Remaining Plaintiffs' claim for benefit-of-the-bargain damages is that it ignores the impact of free recall replacements under the applicable state's laws. The benefit-of-the-bargain damages theory in both Georgia and North Carolina is intended to place the plaintiff in the same position as if the defendant had fully performed. *See Legacy Acad., Inc. v. JLK, Inc.*, 330 Ga. App. 397, 406 (2014) (benefit-of-the-bargain "damages should … place that party in the position he or she would have been in if the contract had been performed"); *see also First Union Nat'l Bank v. Naylor*, 102 N.C.App. 719, 725 (1991) (benefit-of-the-bargain damages place "the injured party … in the same position he would have occupied if the contract had been performed"). Although each Plaintiff alleged that they purchased a vehicle with an alleged latent defect, FCA undeniably notified each of them about the Takata non-desiccated airbags in their vehicles as part of the recall and paid (or offered to pay) to replace those airbags at no cost to them. *See* SAC at ¶¶ 69 (Gibson), 72 (Johnson), 81 (O'Neal); SOF at ¶¶ 81-82, 84-85 (Gibson), 94, 96 (Johnson), 104 (O'Neal). As a result, Plaintiffs have no benefit-of-the-bargain damages, because FCA already replaced or offered to replace the non-desiccated airbag free of charge thereby giving each the benefit of the bargain. As addressed more fully below, Remaining Plaintiffs have received what they bargained for when they purchased their vehicles.

1.  **The benefit-of-the-bargain theory of damages is intended to place the plaintiff in the same position as if the defendant fully performed.**

The recall replacements put the Remaining Plaintiffs in the same position as if FCA had performed at the point of sale. The basic rule of benefit-of-the-bargain damages is to determine the amount to put a plaintiff in the same position as if there had been no breach. Learned treatises have long-described the benefit-of-the-bargain damage theory as: "[T]he plaintiff-promisee is entitled to the benefit of his or her bargain and should be placed, as nearly as possible through an award of money damages, in the position he or she would have been in had the defendant-promisor fully performed the contract." 24 WILLISTON ON CONTRACTS § 64:1 (4th ed. May 2017 update); *see also* 5 Mark C. Hansen, et al., BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS § 47:37 (4th ed. Dec. 2016 update); RESTATEMENT (SECOND) OF CONTRACTS § 347, cmt. A. "[S]ince that is all that the plaintiff expected to receive from the defendant's performance, as a corollary to this rule, ordinarily a plaintiff may recover no more than is necessary to provide what he or she would have obtained had both parties fully performed their respective promises." 24 WILLISTON ON CONTRACTS § 64:1; HANSEN, BUS. & COMMERCIAL LITIG. FED. CTS. § 47:37 ("Courts are vigilant, however, not to put the plaintiff in a better position through the award of expectancy damages than if there had been no breach of contract, and will not allow the non-breaching party to use expectation damages to recover a windfall."). Courts in Georgia and North Carolina follow this fundamental rule. *See Legacy Acad., Inc.,* 330 Ga. App. at 406, 765 S.E.2d at 479; *see Weber, Hodges & Godwin Commercial Real Estate Services, LLC v. Cook,* 186 N.C. App. 288, 291 (quoting *Strader v. Sunstates Corp.*, 129 N.C.App. 562, 571, 500 S.E.2d 752, 757 (N.C. Ct. App. 1998), *disc. rev. denied*, 349 N.C. 240, 514 S.E.2d 274 (1998)  ("As a general rule, the injured party in a breach of contract action is awarded damages which attempt to place the party, insofar as possible, in the position he would have been in had the contract been performed.")).

Remaining Plaintiffs' benefit-of-the-bargain theory is premised on their vehicles having alleged defects at the point of sale. *See* SAC at ¶¶ 183-185. By recalling and replacing Plaintiffs' non-desiccated airbag(s) at its own expense, FCA has remedied any alleged defects and given them the benefit of their bargain.[6] Remaining Plaintiffs also have not offered any evidence that the value

---

[6]   In previous summary judgment briefing, Plaintiffs failed to cite a single high court or intermediate court opinion from Georgia or North Carolina permitting a plaintiff to pursue post-repair damages after completion of a free-of-charge recall approved by NHTSA. *See* D.E. 4536 at 6. Rather, Plaintiffs have cited and relied on distinguishable decisions from federal courts sitting in

of the fully repaired vehicles is less than the value of a vehicle that never had a defect. It is undisputed that Dubé did not calculate or opine on these damages. Instead, Dubé attempted to calculate – as the Plaintiffs openly admit – the pre-repair demand-side "prices that would have prevailed had consumers been aware of both the existence of the Inflator Defect and the eventuality of the recall at the time of purchase." D.E. 4516 at 11. That is not the post-repair calculation contemplated after FCA's free-of-charge recall approved by NHTSA. *See Sater v. Chrysler Group LLC*, EDCV 14-700-VAP(DTBx), 2016 WL 7377126, *8 (C.D. Cal. Oct. 25, 2016). The *Sater* court got it right: after a no-cost recall repair is offered, the proper inquiry into damages is the post-repair difference in value of a fully-repaired vehicle and a vehicle that never had a defect in the first place. *Id.* Dubé admittedly never calculated such a diminution in value damage.[7] Remaining Plaintiffs wrongly ignore that the alleged airbag(s) with defects giving rise to their claimed damages *have been* replaced (or have been offered to be replaced), eliminating the claimed loss. The Remaining Plaintiffs are now in the same position as if their vehicles had never had the non-desiccated Takata inflators. Therefore, under the laws of both Georgia and North Carolina, Remaining Plaintiffs have no legally recoverable benefit-of-the-bargain damages.

> 2. Courts around the country have rejected automobile defect claims where the defendant has offered no-cost repairs.

Although not specifically citing to Georgia and North Carolina law, courts in several jurisdictions have consistently held that plaintiffs receive the benefit of their bargain when a seller

---

other states: *Weidman v. Ford Motor Co*., 2022 WL 1071289 (E.D. Mich. Apr. 8, 2022), *Crawford v. FCA US LLC*, 2021 WL 3603342 (E.D. Mich. Aug. 13, 2021), *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680 (E.D. Mich. 2020), and *Philips v. Ford Motor Co.*, 2016 WL 693283 (N.D. Cal. Feb. 22, 2016). *See* D.E. 4516 at 11. But *Crawford* and *Raymo* were decided on motions to dismiss in which the overpayment theory was analyzed in connection with an Article III standing challenge, not summary judgment for lack of recoverable damages. *Crawford*, 2021 WL 3603342, at *2, *Raymo*, 475 F. Supp. 3d at 695. *Phillips* was decided on a motion to dismiss, not summary judgment, and it was also distinguishable because plaintiffs sought to recover cost to repair the defect as well as loss in value of vehicles. *Philips*, 2016 WL 693283 at *7. *Weidman,* the only summary judgment case of the lot, is distinguishable because there was evidence in the record suggesting that the recall redesign did *not* remedy the defect, that the redesign only served to delay manifestation of the defect, and that defendant issued two subsequent recalls related to the defective braking system. *Weidman*, 2022 WL 1071289 at *4. None of these issues are present here – once the non-desiccated Takata airbag was replaced, the alleged defect was remedied.

[7] *See* D.E. 4536 at 6.

19454165

subsequently repairs or offers to repair defects with a like-kind product. For example, in *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prods. Liab. Litig.,* the plaintiff alleged "that the Class Vehicles contain a defect in the anti-lock braking system ("ABS") that causes the ABS to improperly engage when it is not needed, resulting in increased stopping time and distance, and creating an unreasonable safety risk to consumers." 915 F. Supp. 2d 1151, 1153 (C.D. Cal. 2013). The plaintiff brought consumer protection and breach of implied warranty claims under California law, including the Consumer Legal Remedies Act and the Unfair Competition Law. *Id.* at 1154. The plaintiff argued under a benefit-of-the-bargain theory that he "suffered an actual injury because he would not have paid the same purchase price for his vehicle had he known of the problem with the ABS prior to Toyota's national recall." *Id.* at 1157.

Toyota countered that the recall to update the ABS software resolved any defects "Toyota is adamant that the updated software installed in [plaintiff's] vehicle as part of the national recall rectified and remedied any actual or perceived problem with the braking performance of the ABS." *Id.* at 1156. The plaintiff admitted that after the recall he experienced no brake problems, just like the Remaining Plaintiffs here who have had their vehicles repaired. *Id.* at 1154, 1159. The court rejected the plaintiff's claims because he had received the benefit of his bargain, holding that plaintiff "cannot complain that he received less than what he paid for—that is a vehicle with a safe and operable ABS." *Id.* at 1159. "The undisputed evidence [regarding the recall repairs] before the Court establishes that [plaintiff] received precisely what he bargained for with Toyota. Consequently, he has no claim against the company." *Id.*

Similarly, in *Kommer v. Ford Motor Co.,* the plaintiff purchased a vehicle where the "doors would not latch closed and the electric locks would not open in below-freezing temperatures." 2017 WL 3251598, at *1 (N.D.N.Y. July 28, 2017). Plaintiff claimed that Ford knew about but failed to disclose the problem at the point of sale, alleging violations of N.Y. General Business Law sections 349 and 350. *Id.* at *2. Plaintiff alleged "he overpaid for a vehicle that had diminished value due to its defects," even though he did not allege that he had taken advantage of the recall repair or that his vehicle was not currently under warranty. *Id.* at *4; *see also id.* at *5 (Plaintiff "alleges that he overpaid for a product that has diminished value because of its defects"). Ford had issued a technical service bulletin instructing dealers how to address door latches not working in freezing temperatures, and the plaintiff's truck was eligible for the repair under warranty. Based on these

facts, Ford argued that plaintiff's benefit-of-the-bargain theory was legally insufficient. *Id*. at *1, *5.

The *Kommer* court agreed, dismissing the claims because a plaintiff "who allege[d] that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement" of New York consumer protection law, but "if the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury." *Id.* at *5 (internal citations and quotations omitted). While plaintiff "alleges that he overpaid for a product that has diminished value because of its defects," he "has a perfectly adequate remedy available to him, and that defeats his price-premium theory of injury." *Id.* Plaintiff "has not suffered any injury if the defect can be repaired for free as part of the warranty." *Id.* Indeed, even though the plaintiff claimed that Ford's repair did not work based on evidence of a different consumer's complaint, the court still rejected his claims because he did not allege a failed repair. *Id.* Accordingly, the court denied plaintiff's New York consumer protection claim based on the defect benefit-of-the-bargain theory. *Id.*

Likewise, *Thiedemann v. Mercedes-Benz USA, LLC* holds that plaintiffs cannot seek benefit-of-the-bargain damages after recall repairs. 872 A.2d 783, 786 (N.J. 2005). In *Thiedemann,* plaintiffs alleged that their vehicles "contained defective fuel sending units, which would cause the dashboard fuel gauge to reflect inaccurately the amount of gasoline in the fuel tanks and thereby place consumers at risk of 'sudden, unexpected, and dangerous operational failure of their automobiles' due to the 'sudden, unexpected, and dangerous depletion of fuel.'" *Id.* Plaintiffs alleged that Mercedes was aware of the defect but had concealed it from the vehicle owners at the point of sale. *Id.* Plaintiffs brought claims under the New Jersey Consumer Fraud Act, breach of implied warranty, and the Magnuson-Moss Warranty Act. *Id.* The New Jersey appellate court, later reversed, held that plaintiff had stated a claim on the theory that if the plaintiffs "were to advise a future buyer of their vehicle about the potential defect in the fuel sending unit's replacement parts, the [plaintiffs] would receive less than if the defect was not present." *Id.* at 790; *see also id.* at 793. The New Jersey Supreme Court reversed and ordered that judgment for Mercedes be entered based on the repairs of the plaintiffs' fuel gauge sensors. *Id.* at 797. Because plaintiffs' vehicles had been repaired, plaintiffs had no

14

1 af the top

legally recoverable damages. *Id.* at 794. The same is true here for alleged defects repaired via a NHTSA coordinated recall, which is exactly what FCA did.[8]

Consistent with the holdings of *Hybrid Brake, Kommer,* and *Thiedemann,* and the underpinnings of the benefit-of-the-bargain theory, many other courts have rejected claims for damages where the defendant has offered no-cost product repairs. *See Sater*, 2016 WL 7377126 at *7; *Waller v. Hewlett-Packard Co.,* 295 F.R.D. 472, 487-88 (S.D. Cal. 2013); *United States ex rel. Stebner v. Stewart & Stevenson Servs., Inc.,* 305 F. Supp. 2d 694, 701-02 (S.D. Tex. 2004); *Green v. Green Mountain Coffee Roasters, Inc.,* 279 F.R.D. 275, 282 (D.N.J. 2011). These authorities confirm that the Remaining Plaintiffs who have been offered replacement fully-desiccated airbags for free have no legally cognizable benefit-of-the-bargain damages. FCA replaced both Remaining Plaintiffs Johnson's and O'Neal's Takata non-desiccated inflators at no cost to them. SOF at ¶¶ 81-82, 84 (Gibson); ¶ 94 (Johnson); ¶ 104 (O'Neal). The replacements (and offer to replace to Gibson) gave them each exactly what they bargained for – fully functioning vehicles without the alleged defect. FCA is entitled to summary judgment on all Remaining Plaintiffs' claims for benefit-of-the-bargain damages.

### C.   Pursuing benefit-of-the-bargain damages despite free replacements and no post-replacement diminution in value seeks an impermissible windfall.

Permitting Remaining Plaintiffs' claims to proceed in spite of the free recall replacements would pose another problem: allowing double recoveries. "Within the limits of practical damages measures, compensation remains the goal of damages. Overcompensation is undesirable, not only because it is unjust but also because it provides the wrong incentives to both parties." 1 Dan B. Dobbs, LAW OF REMEDIES § 3.3(7) at 312 (2d ed. 1993). "Compensation is that amount of money that reasonably will make the injured party whole. Compensatory damages may not exceed this amount. Anything beyond that amount is a windfall." *Kattar v. Demoulas,* 739 N.E.2d 246, 258 (Mass. 2000). Where a plaintiff has no damages or has incurred damages but seeks a "double recovery," overcompensation through compensatory damages is prohibited as a matter of law in Georgia and North Carolina. *See Song v. Brown,* 565 S.E.2d 884, 885 (Ga. Ct. App. 2002) ("[T]he

---

[8] The Safety Act reinforces the fact that recall repairs are how vehicle owners should receive the benefit of the bargain. Under the Safety Act, a manufacturer "shall remedy the defect or noncompliance" by "repairing the vehicle." 49 U.S.C. § 30120(a)(1). The Safety Act thus confirms that repairing the vehicle pursuant to a recall "remed[ies] the defect" and gives the buyer the benefit of the bargain.

plaintiff is entitled only to the benefit of the bargain or to be made whole and not to recover a windfall."); *Sprinkle,* 165 N.C. App. at 728, 600 S.E.2d at 478 ("[P]laintiff was awarded double recovery: the difference in value before repair, plus the cost of repair. ... [W]e modify the ... award to exclude ... the cost of repair, as it would be double recovery."). In both *Song* and *Sprinkle*, the Courts denied additional damages that would have resulted in overcompensation to plaintiffs.

Allowing the Remaining Plaintiffs to recover benefit-of-the-bargain damages would, as the Court explained in its Judgment Order, overcompensate them by granting them "'an immutable damages asset' that may lead to double recoveries." *See* D.E. 4471 at 14. FCA already replaced or offered to replace the Takata non-desiccated airbag inflators in Remaining Plaintiffs' vehicles for free. Providing Plaintiffs with the opportunity to recover additional benefit-of-the-bargain damages would constitute a double recovery and overcompensate them.

Plaintiffs have (or could have) a vehicle with replaced airbag inflators and yet also seek an award for the purported "price premium" or difference in the vehicle's price at the point of purchase had they known the vehicle had a defect. Awarding *both* measures would give Plaintiffs a clear double recovery. *See Sater*, 2016 WL 7377126 at *7 ("Permitting [plaintiff] to retain benefit-of-the-bargain damages for the difference in value between a non-defective truck and the defective truck, even though Defendant has repaired his truck, would afford him precisely the type of double-recovery windfall Texas courts have held is impermissible."). Because Plaintiffs are entitled to only one recovery, which they received when their airbag(s) were replaced (or replacements were made available), any benefit-of-the-bargain damages providing them a windfall are barred as a matter of law. This is so "even though benefit-of-the-bargain damages must be measured at the 'time of sale.'" *See* D.E. 4471 at 14; *see Song,* 565 S.E.2d at 885; *see also Sprinkle,* 165 N.C. App. at 728.

**D.      The Remaining Plaintiffs offer no evidence of consequential damages such as out-of-pocket expenses, loss-of-use, or compensable lost time.**

The Remaining Plaintiffs initially alleged that, despite the airbag replacements, they "suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off from work, paying for rental cars or other transportation arrangements, and childcare." *See* SAC at ¶ 58. While  FCA offered to cover a vehicle owner's expenses associated with the recall, none of the Remaining Plaintiffs produced any evidence that they incurred any expenses or costs associated with taking time off from work,

19454165

paying for transportation arrangements, or childcare. *See* SOF at ¶¶ 88, 97, 106. Therefore, FCA is entitled to summary judgment on all consequential damage claims.

**E.    Plaintiffs lack concrete, non-speculative harm required for Article III standing.**

The NHTSA – FCA recall further negates the Remaining Plaintiffs' standing based on a lack of damages. In Article III terms, they lack standing because they lack concrete harm. Remaining Plaintiffs cannot meet Article III's standing requirements by complaining of an unmaterialized past risk of physical or property injury to which they were allegedly exposed because of defendants' failure to notify them of a potential defect in their vehicles. *See Earl v. Boeing*, 53 F.4th 897, 903 (5th Cir. 2022) (finding no injury-in-fact where plaintiffs purchased airline ticket on plane with defective component but latent defect never materialized); *see also Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, 499 F. Supp. 3d 1160, 1166–67 (S.D. Fla. 2020) (no "concrete and particularized" injury where insured was "made whole under the [insurance] Policy"); *Cheng v. BMW of N. Am.*, No. CV-12-09262, 2013 WL 3940815, *4 (C.D. Cal. July 26, 2013) ("[I]t is unclear how Plaintiff can demonstrate injury in light of BMW's offer to completely repair the ... defect."). Like the Remaining Plaintiffs here, the *Boeing* plaintiffs suffered no physical harm and only sued for economic losses due to alleged overpayment of a plane fare since they were unaware of an undisclosed safety risk. The Fifth Circuit squarely addressed the issue: "[a]t bottom, plaintiffs complain of a *past risk* of physical injury to which they were allegedly exposed because of defendants' fraud. But because that risk never materialized, plaintiffs have suffered no injury in fact and lack Article III standing." *Boeing*, 53 F.4th at 903 (emphasis added). With no concrete harm, Remaining Plaintiffs' prior speculative risk (especially now that their vehicle's non-desiccated airbags were replaced) is insufficient to confer Article III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.6 (2016); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

**F.    Plaintiffs lack redressable injury-in-fact.**

Remaining Plaintiffs also do not have a redressable injury. The recall repairs eliminated their alleged injury, stripping them of a redressable injury-in-fact sufficient to confer Article III standing. In *Sugasawara v. Ford Motor Company*, plaintiffs brought a variety of claims under state and federal law, including California's Consumer Legal Remedies Act, the California Unfair Competition Law, negligence, the Song-Beverly Warranty Act, and claims for violations of other states' Deceptive

19454165

Trade Practices Acts, seeking to represent a class of nationwide consumers who formerly owned or currently own or lease certain trucks relating to recalled seatbelt pretensioners that were allegedly defective. 2019 WL 3945105, *1, *3 (N.D. Cal. Aug. 21, 2019). Sugasawara alleged that he had his vehicle repaired, but Tumbarello's allegations did not disclose whether he availed himself of the free repair yet. *Id*. at *3. Both Plaintiffs asserted an "overpayment" theory of economic injury. *Id*. at *3, *6-*7. The court held that neither plaintiff could articulate a plausible theory of economic loss based on overpayment at point of purchase, noting that "[i]f the post-recall remedy Vehicles perform as they would without the Defect, then it follows that the Vehicles' pre-defect values have likewise been restored." *Id*. at *6-*7. The court dismissed plaintiffs' complaint in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id* at *7. The *Sugasawara* court held that:

> The plaintiffs have failed to establish a concrete injury that can be redressed by a judgment in their favor. They do not allege that they ever stopped using their vehicle; they do not allege any facts in support of their diminished value claim; and they do not even allege that they incurred any expenses as a result of New Chrysler's delay in repairing the ORC Module. Without a concrete and particularized injury causally related to the defendants' alleged wrongdoing, the plaintiffs cannot sustain a claim for damages. (citing *Hadley v. Chrysler Group, LLC*, 624 Fed. Appx. 374, 379 (6th Cir. 2015)).

The same principles apply here at the summary judgment stage of these proceedings. The Court here should grant summary judgment in FCA's favor against Gibson, Johnson, and O'Neal's because the replacement or the offer to replace the allegedly defective non-desiccated airbags in their vehicles free of charge left them with no damages. Johnson and O'Neal had their vehicles' affected airbags replaced at no cost to them. *See* SOF at ¶¶ 94, 104. Furthermore, FCA sent no less than 64 communications to Gibson advising her of the recall on her vehicle between July 2, 2015 and January 4, 2020. *See* SOF at ¶ 82. These communications included direct mailings, emails, and automated telephone calls. *Id*. Gibson testified that she never took her vehicle to a dealer for the replacement of its airbag and admitted that she ripped-up the notices because she "got frustrated." *See* SOF at ¶ 84. Moreover, NHTSA approved replacing the non-desiccated Takata airbag inflators with desiccated inflators. *See* SOF at ¶ 24. The undisputed evidence shows that FCA has not received information of any inflator rupture in a Takata airbag recall replacement inflators in any of the recalled vehicles. *See* SOF at ¶ 71. As a result, the named Plaintiffs lack a redressable injury and lack standing under Article III.

### G.   Plaintiffs' claims are prudentially mooted by the recall.

The Remaining Plaintiffs' claims are prudentially mooted by the fact that NHTSA instituted a coordinated recall of the Takata non-desiccated airbags beginning in May 2015 (SOF at ¶¶ 20) and continuing through today, specifying FCA's free repair. The campaign has resulted in 93.0% of the recalled FCA vehicles being remedied. D.E. 4490 at ¶ 73. Under the doctrine of prudential mootness, "[t]he critical question becomes whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 Fed.Appx. 955, 962 (11th Cir. 2012) (internal quotation omitted).[9] The "[p]rudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief [the plaintiff] seeks." *Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). "[O]nce the plaintiff has a remedial promise from a coordinate branch in hand, [courts] will generally decline to add the promise of a judicial remedy to the heap. While deciding the lawsuit might once have had practical importance, given the assurance of relief from some other department of government it doesn't any longer." *Id*. "[R]emedial commitments of the coordinate branches of the United States government bear special gravity." *Id*. at 1211 (citations omitted). They are taken seriously "because they are generally trustworthy" and "because affording a judicial remedy on top of one already promised by a coordinate branch risks needless inter-branch disputes over the execution of the remedial process and the duplicative expenditure of finite public resources." *Id*.

---

[9] The doctrine of prudential mootness has been applied by district courts in the Eleventh Circuit, while invoked and adopted by several sister Circuits and their district courts. *Ingaseosas Int'l Co.*, 479 Fed.Appx. at 962 (Eleventh Circuit holding that "[e]ven if this appeal is not technically moot, we hold that it should be treated as such for prudential reasons" since "under the particular and unique facts of the instant case," "we cannot see how an order from [the district court below] would provide [the appellant] with any *meaningful* relief" (emphasis original)); *see also Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1379 (N.D. Ga. Sept. 6, 2023); *see also F.D.I.C. v. Kooyomjian*, 220 F.3d 10, 14–15 (1st Cir. 2000); *Sierra Club v. U.S. Army Corps of Engineers*, 277 F. App'x 170, 172–73 (3d Cir. May 14, 2008); *United States v. (Under Seal)*, 757 F.2d 600, 603 (4th Cir. 1985); *281-300 Joint Venture v. Onion*, 938 F.2d 35, 38 (5th Cir. 1991); *Greenbaum v. U.S.E. P.A.*, 370 F.3d 527, 534–35 (6th Cir. 2004); *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005); *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124, 1137 (9th Cir. 2014); *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997); *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991).

Here, Plaintiffs Johnson and O'Neal admit their respective vehicle's non-desiccated airbag inflators were replaced free of charge through the recall process. *See* SOF at ¶¶ 94, 104. Plaintiff Gibson received *64* communications since July 2015 advising her of the available free recall replacement, but chose not to do so. *See* SOF at ¶ 82. Like the named plaintiff in *Winzler* and the plaintiffs in other cases where courts found their claims prudentially moot, the Remaining Plaintiffs here "ha[ve] in hand a remedial commitment from our coordinate branches all the same. By filing documents with NHTSA notifying it of a defect, [FCA] set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process." *Winzler*, 681 F.3d at 1211; *see also Hadley*, 624 F. App'x at 379 (finding case moot when "[t]here was never a dispute between the parties as to whether a safety defect exist[ed] in the vehicles or whether [the defendant] would repair that defect ... as [the defendant] acknowledged the safety defect in the recall notice and promised to repair it, for free, 'as quickly as possible'"); *Cheng*, 2013 WL 3940815 at *4 (finding *Winzler* "highly analogous," as the "[p]laintiff filed th[e] lawsuit ... just *days* after BMW announced a recall of [the defective vehicles]—following a lengthy and cooperative investigation with NHTSA" (emphasis original)); *see Sharp v. FCA US LLC*, 637 F.Supp.3d 454, 466-67 (E.D. Mich. Oct. 25, 2022) (dismissing claims as prudentially moot because their "injury is remedied by the repair of the defective part and any affected system").[10]

Although "application of the prudential mootness doctrine ... is not appropriate where legal relief is sought that exceeds the relief provided through a recall," that situation does not apply here. *See Hickman v. Subaru of Am., Inc.*, 2022 WL 11021043, *5 (D.N.J. Oct. 19, 2022). Plaintiffs seek only benefit-of-the-bargain damages in this case. *See* D.E. 4471, D.E. 4538 at 10. No Remaining Plaintiff has evidenced "any out-of-pocket costs, such as those associated with taking time off from work, paying for rental cars or other transportation arrangements, and childcare, or loss-of use-expenses relating to the airbag recall repair, and/or loss-of-use expenses incurred." *See* SOF at ¶¶ 88, 97, 106.

---

[10] Even without a commitment from a coordinate branch of government, the court in *Flores v. FCA US, LLC*, No. 19-cv-10417, 2020 WL 7024850 (E.D. Mich. Nov. 30, 2020), found the case prudentially moot where FCA, independent of a statutorily mandated recall, promised to repair the defective vehicles, had repaired vehicles presented for repair, and reimbursed owners who submitted valid repair receipts. *Id*. at *4.

Many courts have dismissed cases as prudentially moot following successful recall campaigns. *See* FCA's Notices of Supplemental Authority, D.E. 4428 (citing *Sharp*, 637 F.Supp.3d 454); D.E. 4596 (citing *Pacheco v. Ford Motor Co.*, No. 22-11927, 2023 WL 2603937 (E.D. Mich. Mar. 22, 2023)); D.E. 4612 (citing *Charlton v. LG Energy Solution Mich., Inc.*, No. 321CV02142RBMJLB, 2023 WL 1420726, (S.D. Cal. Jan. 31, 2023)); D.E. 4677 (citing *Solak v. Ford Motor Co.*, 683 F.Supp.3d 658 (E.D. Mich. July 19, 2023)); *see also Diaz v. Ford Motor Co.*, No. 23-10029, 2023 WL 6164455 (E.D. Mich. Sept. 21, 2023); *Ward-Richardson*, 690 F. Supp. 3d at 1379; *Letson v. Ford Motor Co.*, No. 23-10420, 2024 WL 845844 (E.D. Mich. Feb. 28, 2024). Courts have applied the prudential mootness doctrine even where plaintiffs sought benefit-of-the-bargain damages*. See, e.g.*, *Sharp*, 637 F.Supp.3d at 460-61, 466-67 (holding that injury is remedied by repair and dismissing case under the doctrine of prudential mootness in case where plaintiffs alleged benefit-of-bargain damages). These courts have recognized that plaintiffs are not damaged if their vehicle is recalled and a free replacement part is given. *Id*. at 467. This Court should do the same.

## II.     THE REMAINING PLAINTIFFS CANNOT ESTABLISH FCA'S LIABILITY FOR THEIR COMMON LAW FRAUD OR CONSUMER PROTECTION CLAIMS.

The Remaining Plaintiffs' claims include common-law fraud claims and statewide-class statutory consumer protection claims under Georgia and North Carolina law. As explained above, each of their claims fail for lack of evidence to support damages. And as set forth below, they also fail to support other necessary elements of the fraud claims – namely evidence of any misrepresentation to them from FCA and lack of reliance. FCA is entitled to summary judgment on the remaining Plaintiffs' fraud and consumer protection claims because the evidence is insufficient to impose liability.[11]

### A.     None of the Remaining Plaintiffs offer evidence of affirmative misrepresentations made to them by FCA, let alone reliance on such.

Under Georgia and North Carolina law, a fraud claim requires proof of a specific affirmative misrepresentation. *See Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321,

---

[11] The Court's November 10, 2022, Judgment Order dismissed all remaining Named Plaintiffs who purchased vehicles prior to June 2014. Although not relevant to the remaining claims, FCA maintains that Plaintiffs have not established FCA had knowledge of the rupture risk in its vehicles prior to June 2014. *See* D.E. 4183 at 21-26.

19454165

1339 (N.D. Ga. 2016) (applying Georgia law) (cleaned up) (a fraud claim under Georgia law includes "facts as to time, place, substance of the defendants alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them … who, what, when, where, and how"); *see also Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (applying North Carolina law) ("An affirmative misrepresentation involves a specific statement made at a specific place and time and involves specific persons."). Eleventh Circuit precedent holds the same. *See Bodie v. Purdue Pharma Co*., 236 Fed. Appx. 511, 524 (11th Cir. 2007) (applying Alabama law) (proof of fraud includes "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.").

Each of the Remaining Plaintiffs' misrepresentation claims can be based only on alleged statements he or she saw or heard. In their depositions and interrogatory responses, *none* of the Remaining Plaintiffs were able to precisely (and in many cases even generally) identify alleged fraudulent statements made by FCA in any commercial or by FCA-affiliated dealer employee to them. Consequently, as held in *Bodie*, summary judgment on fraud is appropriate where alleged misstatements are non-existent or "highly vague and general in nature." *Id*. at 526 (granting summary judgment on fraud claim); *see also McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015) (granting summary judgment on fraud claim under Georgia law); *see also In re Se. Eye Ctr.-Pending Matters,* 2019 WL 2051336, *17-*23 (N.C. Super. May 7, 2019) (granting summary judgment on fraud claim under North Carolina law).

Plaintiffs allege that FCA distributed "marketing materials" that promoted FCA's commitment to vehicle safety, constituting actionable affirmative misrepresentations. *See*, e.g., SAC at ¶ 127. The undisputed evidence, however, establishes that FCA did not make any actionable affirmative misrepresentations to the three Remaining Plaintiffs.

*First*, Gibson cannot prove an affirmative misrepresentation by FCA. There is no dispute that Gibson purchased a used 2010 Dodge Charger from a third-party dealer neither owned nor controlled by FCA. *See* SOF at ¶¶ 75-77. As a result, she could not have been exposed to or relied upon any Monroney label or a misleading statement *by FCA* at the point of purchase. Gibson also could not have relied on any FCA advertisements prior to purchase because the undisputed

evidence demonstrated that she could not recall any specific commercials about FCA's vehicles. *See* SOF at ¶ 78. The only thing she could remember was that she saw commercials before she purchased the vehicle. *Id*. In her deposition, Gibson was asked if she remembered "a specific TV ad for Dodge that mentioned safety." *Id*. She answered, "not a specific one." *Id*. Gibson testified in her deposition that, aside from the process of getting her Takata airbag inflator replaced after the recall had started, FCA did not make any false statements to her regarding the vehicle's airbags. *Id*. That is not sufficient evidence to sustain a fraud claim.[12] *See McCabe*, 160 F. Supp. 3d at 1350 (granting summary judgment on fraud claim under Georgia law); *see also Jimenez v. Houseboats on Lanier, Inc.*, 370 Ga. App. 788, 793, 899 S.E.2d 334, 338 (2024) (affirming summary judgment on common law fraud claim for lack of reliance); *see also Moore v. Lovein Funeral Home, Inc.*, 852 S.E.2d 876, 884 (Ga. Ct. App. 2020) (affirming summary judgment where plaintiff "failed to meet his burden to show that he relied on a misrepresentation by the Defendants"); *see also Bodie*, 236 Fed. Appx. at 524 (granting summary judgment on common law fraud claim where plaintiff "failed to present specific evidence of [Defendant's] representations" and deposition testimony was "highly vague and general in nature").

*Second*, Johnson also cannot prove an affirmative misrepresentation to support her fraud claims. Johnson purchased a new 2014 Dodge Charger from Landmark Dodge Chrysler Jeep, an FCA affiliate, in Morrow, Georgia on July 31, 2014. *See* SOF at ¶ 90. It is undisputed that Johnson did not rely on any statements about the 2014 Dodge Charger's safety or airbags made by FCA or in any written materials when she purchased her vehicle. *See* SOF at ¶ 91. There is no evidence in the record that Johnson relied on the owner's manual before purchasing her vehicle either. There is also no dispute that Johnson could not recall viewing or hearing commercials through the radio, television, and internet that touted the safety and dependability of FCA's vehicles prior to purchasing her Charger. *Id*. As for her dealership interactions at the point of purchase, Johnson

---

[12] When it ruled in favor of FCA denying Plaintiffs' motion to certify a Georgia class, the Court already noted that because Gibson "purchased a used vehicle, she could not have been exposed to nor relied on a Monroney label at the point of purchase." D.E. 4688 at 5. The Court also noted that Gibson "does not recall any specific commercials, or on which dates the commercials aired," that "there is no record evidence establishing that Gibson ever received or was otherwise exposed to the owner's manual or any other brochure before purchasing her vehicle," and that "Gibson admitted that FCA did not make any false statements to her prior to her purchasing a Class Vehicle." *Id*.

admitted in discovery that she never discussed the safety features or airbags in the vehicle with the salesperson. *See* SOF at ¶ 92. Like Gibson, Johnson's inability to cite to a single affirmative misrepresentation by FCA renders summary judgment on her common law fraud and consumer protection claims appropriate.[13] *See McCabe*, 160 F. Supp. 3d at 1350; *see also Jimenez*, 370 Ga. App. at 793; *see also Moore*, 852 S.E.2d at 884; *see also Bodie*, 236 Fed. Appx. at 524.

*Third*, O'Neal does not dispute that she purchased a <u>used</u> 2012 Dodge Charger on March 8, 2015, from a North Carolina dealer unaffiliated with FCA. *See* SOF at ¶ 99. As a result, O'Neal could not have been exposed to a sales pitch from an FCA dealer at the point of purchase. Nor is there evidence in the record that O'Neal read or relied on the owner's manual before purchasing her vehicle. O'Neal testified that she cannot recall seeing or hearing any specific commercials about her 2012 Dodge Charger or the dates or media on which she saw or heard those commercials. *See* SOF at ¶ 101. Moreover, O'Neal admitted that she did not rely on statements made in any commercials when she bought her Dodge. *Id.* There is no evidence that O'Neal reviewed a Monroney label at the point of purchase. *See* SOF at ¶ 103. As a result, O'Neal failed to present evidence necessary to prove the element of a misrepresentation by FCA in connection with the purchase of her vehicle. O'Neal's common law fraud and NCUDTPA claims are thus subject to summary judgment. *See In re Se. Eye Ctr.-Pending Matters,* 2019 WL 2051336 at *17-*23 (granting summary judgment on fraud claim under North Carolina law); *see also Bodie*, 236 Fed. Appx. at 524.

Plaintiffs have previously argued that a classwide presumption of reliance is available under North Carolina law. FCA maintains that this is incorrect. *See Pitts v. Am. Sec. Ins. Co.*, 550 S.E.2d 179, 189 (N.C. Ct. App. 2001) (holding that reliance is an "individual issue"). But even if there were a presumption of reliance, it would be rebutted because O'Neal testified that she could not recall any commercials about the vehicle she purchased, admitted that she did not rely on any statements made in commercials, was not exposed to a sales pitch by an FCA dealer, and can provide no evidence she read or relied on the owner's manual or Monroney label at the point of purchase.

---

[13] On class certification, the Court noted that "Johnson testified that she did not rely on any statements about the 2014 Dodge Charger in any written materials when she purchased her vehicle," that "there is no record evidence that Johnson ever received or was otherwise exposed to the owner's manual before purchasing her vehicle," and that "Johnson does not recall viewing any written advertisements that touted the safety and dependability of FCA's vehicles prior to purchasing her Charger." D.E. 4688 at 5-6.

Because none of the Remaining Plaintiffs have presented evidence regarding what statements FCA allegedly made that they heard or read that were fraudulent, they cannot sustain their misrepresentation claims. They also do not prove reliance given the lack of any identified misrepresentation. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1308 (11th Cir. 1999) (applying Georgia law) (affirming summary judgment where plaintiff was unable to show any detrimental reliance on representations by manufacturer). FCA is entitled to summary judgment on all of the Remaining Plaintiffs' fraud-based claims.

## B.   Gibson and O'Neal's omission-based fraud claims fail because there was no duty to disclose pursuant to Georgia or North Carolina law.

Gibson and O'Neal's omission-based common law fraud claims under Georgia and North Carolina law, respectively, fail because FCA owed no duty to disclose at the time of purchase. *First*, Georgia only imposes a duty to disclose in a confidential or special relationship, and there was no such relationship between FCA and Gibson. *See* O.C.G.A. § 23-2-53; *McCabe*, 160 F. Supp. 3d at 1350. Gibson purchased her used vehicle from U.S. Auto Sales, an independent dealership unaffiliated with Chrysler or FCA. *See* SOF at ¶¶ 75-77. Faced with similar facts, Georgia courts hold the manufacturer has no duty to disclose. *McCabe*, 160 F. Supp. 3d at 1340-41, 1351 ("Plaintiffs have failed to cite to a single case in which a court has applied Georgia law to find a duty to disclose outside of a confidential or special relationship in facts similar to this case, where there is no evidence that Defendants had direct knowledge of Plaintiffs' purchases of the vehicles in question and had no apparent relationship with Plaintiffs"); *see also Brown v. Hyundai Motor Am.*, 2019 WL 4126710, *8 (D.N.J. Aug. 30, 2019) (dismissing Georgia fraud claim where plaintiff failed to allege a "confidential relationship" or any "pre-purchase communication or relationship" with defendant manufacturer). Accordingly, FCA is entitled to summary judgment on Gibson's common law fraud claim to the extent it is premised purely on an omission at the point-of-purchase.

*Second*, North Carolina only imposes a duty to disclose where: "(1) a fiduciary relationship exists between the parties to the transaction; (2) there is no fiduciary relationship and a party has taken affirmative steps to conceal material facts from the other; and (3) there is no fiduciary relationship and one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Hardin v. KCS Int'l, Inc*., 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (N.C. Ct. App. 2009). Plaintiffs do not assert, and there is no evidence of, a fiduciary relationship between FCA and

O'Neal. In fact, O'Neal purchased her vehicle from CarMax – not a Chrysler – let alone a FCA – affiliated dealership – and as a result had no interaction at all with FCA at the point of purchase. *See* SOF at ¶ 99. Consequently, O'Neal can offer no evidence that FCA took affirmative steps to conceal material facts from O'Neal or had any negotiations at all with O'Neal whereby FCA could have concealed a latent defect from her. Accordingly, FCA is entitled to summary judgment on O'Neal's common law fraud claim to the extent it is premised purely on an omission at the point-of-purchase.

## III.   THE GEORGIA PLAINTIFFS DID NOT GIVE PRE-SUIT NOTICE TO FCA AS REQUIRED BY THE GEORGIA FAIR BUSINESS PRACTICES ACT.

FCA is entitled to summary judgment on Gibson and Johnson's Georgia Fair Business Practices Act claims because neither Gibson nor Johnson provided written notice at least 30 days in advance of filing suit identifying themselves as a claimant and describing the allegedly unfair practices and injuries suffered as required by Ga. Stat. § 10-1-399(b).[14] *See* SOF at ¶¶ 83, 95; *see also Brown,* 2019 WL 4126710 at *7 (dismissing GFBPA claim for lack of pre-suit notice); *Burns v. Halsted Fin. Servs., LLC,* 2016 WL 5417218, *4 (N.D. Ga. Sept. 14, 2016) ("The failure to provide [requisite] notice is fatal to a GFPBA claim." (internal citations omitted)).

## IV.   THE APPLICABLE STATUTE OF LIMITATIONS BARS GIBSON'S CLAIMS.

Plaintiff Gibson's fraud and Georgia Fair Business Practices Act claims are also barred by the applicable statutes of limitations. The statutes of limitations for Gibson's fraud claim and Georgia Fair Business Practices Act claim are two years. *See* Ga. Code § 9–3–33 (fraud); *see also* O.C.G.A. § 10-1-401(a) (GFBPA). FCA mailed Gibson a recall notice on July 2, 2015. *See* SOF ¶ 81. As a result, her claims expired on July 2, 2017, which was more than seven months *before* initiation of her lawsuit against FCA, and are therefore time barred.

---

[14] While pre-suit notice is not required for a defendant who "does not maintain a place of business or does not keep assets within the state," FCA owns real property located at 1149 Citizens Parkway, Morrow, Georgia 30260 and operates a distribution facility at this location. *See* SOF at ¶ 107.

19454165

## V.  THE SUPPLEMENT TO THE SAC MUST ALSO BE DISMISSED BECAUSE THE CLAIMS OF THE REMAINING PLAINTIFFS FAIL.

For the reasons set forth above, FCA is entitled to summary judgment on all of the Remaining Plaintiffs' claims. The Eleventh Circuit has long recognized that a "claim cannot be asserted unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)). While the Eleventh Circuit's recent *Zantac* opinion stated that a class representative could have Article III standing to "represent unnamed class members based on the laws of states where their similar injuries took place," it did not dispense with the longstanding requirement of "at least one named representative of each class or subclass ha[s] standing for each proffered class or subclass claim." *In re Zantac (Ranitidine) Prod. Liab. Litigation*, 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022) (quoting *Prado*, 221 F.3d at 1280).

As the Court previously recognized,[15] if it grants summary judgment in FCA's favor on the Georgia and North Carolina claims, there are no Remaining Plaintiffs with standing to represent the additional common law fraud claims raised in Plaintiffs' Supplement to the SAC. Because the Remaining Plaintiffs have no viable claims for themselves, they cannot assert claims under the laws of the New States, requiring dismissal of those claims. *See Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) (where named plaintiff has no meritorious claims, the class action cannot proceed).

## VI.  FCA IS ENTITLED TO SUMMARY JUDGMENT IN THE NEW STATES.

FCA is entitled to summary judgment in the New States because Plaintiffs lack recoverable damages in each of the New States, the manifest defect rule bars recovery in Utah and Wisconsin, and FCA had no duty to disclose in Wisconsin.

### A.  Colorado

Under Colorado law, when damage to property is reparable, the measure of damages is the cost of repair together with the post-repair decrease in market value if evidence of such is presented to the court. *Airborne, Inc. v. Denver Air Center, Inc.*, 832 P.2d 1086, 1092-1093 (Colo. App. 1992)

---

[15] 12/19/2022 Hr'g Tr. at 33:10-18 ("[I]f the Georgia case, for example, goes out on summary judgment, then the issue of whether the Georgia plaintiff could represent Oregon will be mooted in a way. THE COURT: Of course.").

19454165

("If damage to property is reparable, plaintiff is entitled to recover reasonable costs of repair together with any decrease in market value as repaired"). Here, it is undisputed that the Remaining Plaintiffs' costs of repair is zero, and they have informed this Court that they have not and will not present any evidence of post-repair diminution in value. *See* D.E. 4183, § I.A.-I.D. (citing to D.E. 4188 at ¶ 70). Without evidence of damages based on the cost of repair or based on any decrease in the market value of their vehicles, FCA is entitled to summary judgment on the Colorado fraud claim for lack of damages.[16]

*Airborne* involved an action to recover damages for breach of contract and negligence for faulty work performed on an aircraft that resulted in engine damage necessitating repair. *Id.* at 1088. The court held that "[i]f damaged property is repairable, plaintiff is entitled to recover reasonable costs of repair together with any decrease in market value as repaired," and that additionally a plaintiff "may recover for the loss of use of personal property for the length of time reasonably required for repair," but that a "plaintiff has a duty to mitigate damages" and the damage award cannot "create a windfall to plaintiff ... or result in a double recovery." *Id.* at 1089, 1091, 1092-1093. The holding in *Airborne* is clearly on point and dispositive here. The Remaining Plaintiffs lack damages after FCA's replacement of their vehicles' non-desiccated airbag inflators for free, and without any evidence of "loss of use" let alone diminution in value damages, any claims in Colorado likewise fail.

**B.     Utah**

1.     There can be no damages for Utah claims because the cost of repair is zero.

The free repairs made or offered to owners of FCA vehicles with non-desiccated Takata airbags preclude damages under Utah law as well. When damage to property is repairable and the cost of repair is less than the diminution of value, the proper measure of damages is the cost of restoration. *Leishman v. Kamas Valley Lumber Co.*, 19 Utah 2d 150, 152, 427 P.2d 747, 749 (1967) ("Where the cost of restoration is less than the diminution of value, the former is the proper

---

[16] The law of Colorado on fair market value also requires, and Plaintiffs lack, admissible evidence based on a sale between **willing sellers** and **willing buyers**. *See* D.E. 4488 at 8-10. *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 362 (Colo. 2003) ("Fair market value is typically defined as the price at which property would change hands between a willing buyer and a willing seller when neither party is under an obligation to act.").

measure of damages"). Remaining Plaintiffs offer no cost of repair damages, let alone any diminution in value damages. As a result, FCA is entitled to summary judgment on the Utah fraud claim for lack of recoverable damages.[17]

> 2.   FCA is entitled to judgment for Utah claims because a plaintiff in Utah cannot seek relief for an unmanifested defect.

The lack of a manifested defect also prohibits a Utah fraud claim. *See Winzler v. Toyota Motor Sales USA, Inc.*, 1:10-cv-00003-TC, 2010 WL 3064364 at *2-3 (D. Utah Aug. 3, 2010) (plaintiff could not seek relief where no defect had manifested in her vehicle, relying on *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999), and other cases), *vacated sub nom. Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (vacating on grounds that lawsuit was equitably moot because a recall had been initiated). No Remaining Plaintiff has experienced a rupture of their non-desiccated Takata airbag; both Johnson and O'Neal received replacement airbag inflators, and Gibson was offered a free replacement before her vehicle was totaled. *See* D.E. 393 at 1-2 (March 17, 2015 Order); *see also* D.E. 4188 at ¶ 67. As a result, Utah's manifest defect rule bars any Utah fraud claim.[18]

**C.     West Virginia**

West Virginia, like the laws of the rest of the New States, precludes damages as a matter of law when damage to property is repairable and the cost of repair is less than the diminution in value. *Brooks v. City of Huntington,* 234 W.Va. 607, 612 n. 9 (W. Va. 2014) ("When, however, injured personal property can be restored by repairs to the condition which existed before the injury

---

[17] The Utah fair market value test also requires what Plaintiffs lack – evidence of a sale between **willing sellers** and **willing buyers**. *See* D.E. 4488 at 8-10. *Utah Dep't of Transp. v. Rayco Corp.*, 599 P.2d 481, 489 (Utah 1979) ("The accepted formula for determining fair market value is what would a purchaser willing to buy, but not required to do so, pay; and what would a seller willing to sell, but not required to do, ask.").

[18] Remaining Plaintiffs previously attempted to cast *Winzler* as inapposite because they say the plaintiff in *Winzler* only sought equitable relief. *See* D.E. 4561 at 18. This is not accurate. The *Winzler* court noted that the Plaintiffs "also seem[ed] to claim that the potential defect in the engine has damaged her economically, but such damages are clearly barred by the economic loss rule." *Winzler*, 2010 WL 3064364 at *2 n.1. The result is the same whether couched as the manifest defect rule or economic loss rule: the claim should be dismissed "[b]ecause the Plaintiff has not alleged that her vehicle has manifested any defect." *Id.* at *4.

19454165

and the cost of such repairs is less than the diminution of the market value due to the injury, the measure of damages may be the amount required to restore such property to its previous condition."). For motor vehicles specifically, West Virginia limits damages to cost of repair unless the plaintiff shows post-repair "structural damage" that results in "diminution in value." *Ellis v. King*, 400 S.E.2d 235, 237-239 (W. Va. 1990) ("damages are limited to cost of repair unless the plaintiff submits "actual proof that the value was diminished" based on "structural damage" that "would affect the future use of the vehicle even after repair.") Thus, when the proper measure of damages is the cost of repair, and that cost of repair is zero, FCA is entitled to summary judgment under West Virginia law.[19]

### D. Wisconsin

1. <u>There can be no damages for Wisconsin claims because the cost of repair is zero.</u>

Under Wisconsin law, the proper measure of damages is the cost of restoration when damage to property is repairable, and the cost of repair is less than the diminution of value. *Laska v. Steinpreis*, 231 N.W.2d 196, 200 (Wis. 1975) (holding "diminished value" and "reasonable cost of repairs" are "alternative approaches" but that the "end to be served is not that of permitting the damage claimant to elect the approach that results in a higher award of damages" and the "lesser amount awardable under the two tests [is] the proper measure of damages"); *Blodgett v. State Farm Mut. Auto. Ins. Co.*, 2002 WL 664157 at *1 (Wis. Ct. App. Apr. 24, 2002) ("When recovery is sought for damage to property, and evidence is presented as to both the cost of repair of the property and the diminution in value of the damaged property, the jury is required to award the lesser of the two amounts.").

---

[19]  Plaintiffs also lack necessary evidence of a sale between **willing sellers** and **willing buyers** under West Virginia fair market value law. *See* D.E. 4488 at 8-10. *Franklin v. Pence*, 36 S.E.2d 505, 509 (W. Va. 1945) ("The proper measure of damages in this case is the difference between the contract price and the market value of the lumber at the time and the place of delivery called for by the contract.... Market value may be established, under proper conditions of time and place, by the price at which a seller who is willing to sell, and a buyer who is willing to buy, effect a sale of property when both act voluntarily and without compulsion."); *Baltimore & O.R. Co. v. Bonafield's Heirs*, 90 S.E. 868, 873 (W. Va. 1916) (holding there is "such a wide and essential difference" between "values from sales made without any compulsion or necessity" and "sales made to a person who was compelled" such that "no reliable information as to the market value can be gained by comparison of sales made under dissimilar circumstances").

Because the property is repairable and cost of repair is indisputably zero, a Wisconsin fraud claim fails for lack of damages. *See also* D.E. 4471 at 7, 9, 11 (granting summary judgment in states with substantially similar rules such as Florida, Maryland, Massachusetts, Michigan, and New York).[20] The free repairs made or offered to owners of FCA vehicles with non-desiccated Takata airbags restored Remaining Plaintiffs (and any putative class members) to "the position he would have been in had the product functioned properly… [and the] benefit of the bargain damages are zero dollars." *See Crawford v. FCA US LLC*, No. 2:20-cv-012341, 2024 WL 919830, *7 (E.D. Mich. Mar. 4, 2024) (citing *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 317–18 (Wis. 1999) (applying the economic loss doctrine to consumer transactions.)) The application of this straightforward rule requires summary judgment in FCA's favor for any claims raised under Wisconsin law.

      2.    FCA is entitled to judgment because a Wisconsin plaintiff cannot seek relief for an <u>unmanifested defect.</u>

Without a manifested defect, there can be no recovery under Wisconsin law. In *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 240 (Wis. 2004), the court held that allegations of "diminished value premised upon a mere possibility of future product failure is too speculative and uncertain to support a fraud claim." The court sided with the "many federal and state court decisions" that preclude a fraud claim "where the allegedly defective product has not actually malfunctioned." *Id.*; *see also In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 459 (S.D.N.Y. 2017), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) (holding *Tietsworth's* manifest defect rule bars common law fraud claims); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 785 F. Supp. 2d 925, 932 (C.D. Cal. 2011) (citing *Tietsworth* for the principle that Wisconsin would preclude fraud claim "asserted by Plaintiffs whose products have manifested no defect"). Because the Remaining Plaintiffs' vehicles did not experience a ruptured Takata airbag, they cannot provide a proxy for any Wisconsin vehicle owner who likewise never experienced a ruptured airbag to support a claim. *See* D.E. 393 at 1-2 (March 17, 2015 Order); *see also* D.E. 4188 at ¶ 67. As a result, Wisconsin's

---

[20]  To prove fair market value under Wisconsin law, Plaintiffs must prove (and lack evidence of) a sale between ***willing sellers*** and ***willing buyers***. *See* D.E. 4488 at 8-10. *Soo Line R. Co. v. Wisconsin Dep't of Revenue*, 278 N.W.2d 487, 489 (Wis. Ct. App. 1979) ("[T]he willing buyer, willing seller test is the legal definition of fair market value."), *aff'd*, 292 N.W.2d 869 (Wis. 1980).

manifest defect rule bars any Wisconsin fraud claims where the alleged defect did not manifest itself.

      3.   FCA is entitled to judgment because Wisconsin does not recognize a duty to <u>disclose in consumer transactions.</u>

Wisconsin has yet to recognize a duty to disclose in fraud for "sales of consumer goods" as opposed to business transactions. *Tietsworth*, 677 N.W.2d at 239; *Naparala v. Pella Corp.*, 153 F. Supp. 3d 884, 894 (D.S.C. 2015) (holding fraudulent concealment failed because "Wisconsin does not explicitly recognize a duty to disclose in consumer transactions"). Remaining Plaintiffs assert that they were all consumers who purchased a FCA vehicle. *See e.g.* SAC at ¶¶ 157, 158. Consequently, FCA is entitled to judgment as a matter of law on any fraudulent omission claim in Wisconsin for consumer transactions.

<b><u>CONCLUSION</u></b>

Summary judgment in FCA's favor is warranted on all of the Remaining Plaintiffs' claims. The free recall replacements that FCA provided as coordinated by NHTSA have eviscerated any legally-recoverable damages in the states at issue. A lack of damages further supports judgment based on a lack of standing and the doctrine of prudential mootness. Although the Court can (and should) end this case based on Remaining Plaintiffs' failure to prove damages, their claims collapse equally on their failure to identify a single misrepresentation by FCA that they heard, saw, read, or relied upon when deciding to purchase their vehicles. For a case premised on fraud at the point of purchase, this critical lack of evidence dooms their case.

For all of the foregoing reasons, this Court should grant FCA US LLC's Motion for Summary Judgment on all remaining claims and grant such other relief as this Court deems appropriate.

Dated: July 12, 2024

Respectfully submitted,

By: */s/ Scott M. Sarason*
Scott M. Sarason
Florida Bar No. 0394718
ssarason@rumberger.com
RUMBERGER KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130
Tel: (305) 995-5422
Fax: (786) 536-3446


By: */s/ Daniel T. Graham*
Daniel T. Graham (*pro hac vice*)
dgraham@clarkhill.com
Michael P. Croghan (*pro hac vice*)
mcroghan@clarkhill.com
Jeffrey M. Sniadanko (*pro hac vice*)
jsniadanko@clarkhill.com
Paul C. Do (*pro hac vice*)
pdo@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
Tel: (312) 985-5945 (Graham)
Fax: (312) 985-5954 (Graham)

*Attorneys for FCA US LLC*

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), counsel for FCA US LLC ("FCA") respectfully requests oral argument on its Motion for Summary Judgment Against All Economic Loss Plaintiffs in Georgia and North Carolina and Under the Laws of Colorado, Utah, West Virginia and Wisconsin and incorporated Memorandum of Law in Support (the "Motion") to answer any questions that the Court may have about the legal and evidentiary issues raised herein. FCA believes oral argument would help the Court identify the significant allegations and discuss the controlling legal principles. FCA estimates that two hours is required for argument.

19454165

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2024, a true and correct copy of the foregoing was filed via CM/ECF and served on all counsel of record via electronic notices generated by CM/ECF.

By: */s/ Scott M. Sarason*

19454165