**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| IN RE: | |
| **TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION** | MDL No. 2599 |
| | Master File No. 15-MD-2599-MORENO |
| This Document Relates to *Whitaker et al. v. General Motors Co. et al.* | S.D. Fla. Case No. 1:14-CV-24009-FAM (Economic Loss Track) |

**DEFENDANTS GENERAL MOTORS COMPANY,**
**GENERAL MOTORS HOLDINGS LLC, AND GENERAL MOTORS LLC'S**
**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**

Dated: July 12, 2024

Laurie M. Riley, Esq. (FL Bar No. 657751)
Jones Walker LLP
201 South Biscayne Boulevard, Suite 3000
Miami, FL 33131
Telephone: (305) 679-5728
Facsimile: (305) 679-5710
Email: lriley@joneswalker.com

R. Allan Pixton (pro hac vice)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 North Wacker Dr., Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
Email: allanpixton@quinnemanuel.com

Renee D. Smith (pro hac vice)
Sam Ikard (pro hac vice)
Nadia Abramson (FL Bar No. 121763)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: renee.smith@kirkland.com
sam.ikard@kirkland.com
nadia.abramson@kirkland.com

*Attorneys for Defendant General Motors Company,*
*General Motors Holdings LLC, and General Motors LLC*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ............................................................................................................ 1

**BACKGROUND** ............................................................................................................... 2

    A.     The GMT900 Takata Airbag Inflators. ................................................................ 2

    B.     The Free And Effective Recall Repair. ............................................................... 3

    C.     The Litigation. ................................................................................................... 4

          1.      The Court Dismissed Most Of The Claims Against GM. ......................... 4

          2.      The Court Certified One Louisiana State Law Class. ............................... 6

          3.      Four Remaining Plaintiffs Have Claims Under Three States' Laws. ......... 7

**ARGUMENT AND AUTHORITIES** ............................................................................. 8

**I.**     **The Court Should Grant Summary Judgment On All Remaining Claims Because They Are Prudentially Moot And Have Been Substantively Eliminated.** ...................................................................................................... 9

    A.     The Free Recall Repair Prudentially Moots This Entire Lawsuit. ...................... 9

    B.     The Free Recall Repairs Eliminate State-Law Damages. .................................. 11

          1.      Louisiana. ............................................................................................ 12

          2.      Alabama. ............................................................................................. 13

          3.      Georgia. .............................................................................................. 14

**II.**    **The Court Should Grant Summary Judgment On All Remaining Claims Because They Are Based On Expert Models That Contravene And Expand State Law.** ....................................................................................................... 15

    A.     Plaintiffs' Expert's Opinions Do Not Fit Their State Law Claims. ..................... 15

    B.     Plaintiffs' Damages Expert's Opinions Are Unreliable. ..................................... 17

**III.**   **The Court Should Grant Summary Judgment On The Louisiana Plaintiff's Claim For Additional Reasons And Should Decertify The Louisiana Class.** ............ 18

    A.     Plaintiff's Claim Is Time-Barred. .................................................................... 18

    B.     New GM Was Not The Manufacturer Or Seller Of Plaintiff's Old GM Vehicle. ........................................................................................................... 21

    C.    The Court Should Decertify The Louisiana Class. ................................................ 22

**IV.    The Court Should Grant Summary Judgment On The Alabama Plaintiffs' Claim For Additional Reasons........................................................................................ 24**

    A.    The Manifest Defect Rule Bars Plaintiffs' Claim.................................................. 24

    B.    Plaintiffs Cannot Satisfy Reliance And Duty To Disclose Elements. .................. 26

**V.    The Court Should Grant Summary Judgment On The Georgia Plaintiff's Claims For Additional Reasons. ........................................................................................ 27**

    A.    Plaintiff Is Judicially Estopped From Pursuing Undisclosed Claims. .................. 27

    B.    Plaintiff Cannot Show Reliance Or Duty To Disclose. ........................................ 29

**CONCLUSION** ........................................................................................................... **30**

**REQUEST FOR HEARING** ........................................................................................ **31**

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aliant Bank v. Four Star Invs., Inc.*,
     244 So. 3d 896 (Ala. 2017) ............................................................................27

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
     568 U.S. 455 (2013) .......................................................................................22

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242 (1986) .........................................................................................8

*Atlanta Recycled Fiber Co. v. Tri-Cities Steel Co.*,
     262 S.E.2d 554 (Ga. Ct. App. 1979) ...............................................................14

*Austin v. N. Am. Forest Prod.*,
     656 F.2d 1076 (5th Cir. 1981) ........................................................................18

*Barnco Int'l, Inc. v. Arkla, Inc.*,
     684 So. 2d 986 (La. Ct. App. 1996)*, writ denied*, 688 So. 2d 511 (La. 1997) ........................11

*Blair-Naughton L.L.C. v. Diner Concepts, Inc.*,
     369 F. App'x 895 (10th Cir. 2010) ..................................................................15

*Bloomgarden v. Allstate Fire & Cas. Ins. Co*.,
     499 F. Supp. 3d 1160 (S.D. Fla. 2020) ...........................................................10

*Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*,
     582 F.3d 1227 (11th Cir. 2009) ......................................................................17

*Bridgers v. Investors Am., Inc.*,
     267 S.E.2d 801 (Ga. Ct. App. 1980) ...............................................................11

*In re Bridgestone/Firestone, Inc.*,
     288 F.3d 1012 (7th Cir. 2002) ........................................................................25

*Briehl v. Gen. Motors Corp.*,
     172 F.3d 623 (8th Cir. 1999) ..........................................................................26

*Brown v. Hyundai Motor Am.*,
     2019 WL 4126710 (D.N.J. Aug. 30, 2019) .....................................................30

*Bussian v. DaimlerChrysler Corp.*,
     411 F. Supp. 2d 614 (M.D.N.C. 2006) ............................................................26

*Camp v. Mapp*,
  95 Ga. App. 262 (Ga. Ct. App. 1957) ..................................................................16

*Canal Ins. Co. v. Tullis*,
  515 S.E.2d 649 (Ga. Ct. App. 1999) ..................................................................15

*Cardenas v. Toyota Motor Corp.*,
  2022 WL 19521722 (S.D. Fla. Dec. 7, 2022) ..............................................22, 23

*Casanova v. Pre Solutions, Inc.*,
  228 F. App'x 837 (11th Cir. 2007) ....................................................................27

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................8

*Cheng v. BMW of N. Am.*,
  2013 WL 3940815 (C.D. Cal. July 26, 2013) .....................................................10

*Cloud v. Huffman Motor*,
  416 So. 2d 266 (La. Ct. App. 1982) ..............................................................12, 16

*Club Madonna, Inc. v. City of Miami Beach*,
  500 F. Supp. 3d 1304 (S.D. Fla. 2020), *aff'd*, 42 F.4th 1231 (11th Cir. 2022) ....................30

*Cook v. Mixon*,
  700 So. 2d 1264 (La. Ct. App. 1997) ................................................................16

*Crawford v. Williams*,
  375 S.E.2d 223 (Ga. 1989) ................................................................................29

*Crump v. Geer Bros.*,
  336 So. 2d 1091 (Ala. 1976) .............................................................................16

*De Atley v. Victoria's Secret Catalogue, LLC*,
  876 So. 2d 112 (La. Ct. App. 2004) ..................................................................11

*Delta Chevrolet, Inc. v. Wells*,
  371 S.E.2d 250 (Ga. Ct. App. 1988) .................................................................29

*Earl v. Boeing*,
  53 F.4th 897 (5th Cir. 2022) .............................................................................10

*Edel v. Southtowne Motors of Newnan II, Inc.*,
  789 S.E.2d 224 (Ga. Ct. App. 2016) .................................................................11

*Ehrlich v. Roby Motors Co.*,
  117 So. 590 (La. 1928) .................................................................................12, 13

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
  982 F. Supp. 388 (E.D. La. 1997) ..........................................................................1, 19, 20, 23

*Ford Motor Co. v. Rice*,
  726 So. 2d 626 (Ala. 1998) .................................................................................14, 24, 25, 26

*In re Ford Motor Co. Vehicle Paint Litig.*,
  1996 WL 426548 (E.D. La. July 30, 1996) ...........................................................................20

*Fuller v. Martin*,
  125 So. 2d 4 (Ala. Ct. App. 1960), *overruled on other grounds by Ex parte S*
  *& M, LLC*, 120 So. 3d 509 (Ala. 2012) ..........................................................................13, 14

*Fulton Cnty. v. Ward-Poag*,
  849 S.E.2d 465 (Ga. 2020)......................................................................................................27

*Gaspard v. Camping World RV Sales, L.L.C.*,
  304 So. 3d 1050 (La. Ct. App. 2020).......................................................................................19

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2016 WL 874778 (S.D.N.Y. Mar. 3, 2016) ...................................................................2, 21, 22

*In re Gen. Motors LLC Ignition Switch Litig.*,
  339 F. Supp. 3d 262 (S.D.N.Y. 2018)......................................................................................26

*In re Gen. Motors LLC Ignition Switch Litig.*,
  407 F. Supp. 3d 212 (S.D.N.Y. 2019), *mot. to certify appeal granted*,
  *reconsideration denied*, 427 F. Supp. 3d 374 (S.D.N.Y. 2019)..............................................17

*Georgia Ne. R. Co. v. Lusk*,
  587 S.E.2d 643 (Ga. 2003)................................................................................................14, 15

*Goody Prod., Inc. v. Dev. Auth. of City of Manchester*,
  740 S.E.2d 261 (Ga. App. Ct. 2013) .......................................................................................14

*Hadley v. Chrysler Gr., LLC*,
  624 F. App'x. 374 (6th Cir. 2015) ...........................................................................................10

*Harewood v. Miami-Dade Cnty.*,
  2018 WL 1156010 (S.D. Fla. Mar. 1, 2018), *aff'd*, 780 F. App'x 748 (11th
  Cir. 2019) ................................................................................................................................28

*Henderson v. Franklin*,
  782 F. App'x 866 (11th Cir. 2019) ....................................................................................27, 28

*Hinton ex rel. Hinton v. Monsanto Co.*,
  813 So. 2d 827 (Ala. 2001)......................................................................................................24

*Home Ins. Co. v. N. River Ins. Co.*,
   385 S.E.2d 736 (Ga. Ct. App. 1989) ..................................................................14

*Hunt Petroleum Corp. v. State*,
   901 So. 2d 1 (Ala. 2004) .................................................................................27

*Hutto v. Shedd*,
   353 S.E.2d 596 (Ga. Ct. App. 1987) ..................................................................15

*Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*,
   479 F. App'x 955 (11th Cir. 2012) ...........................................................1, 9, 10

*John Thurmond & Assocs., Inc. v. Kennedy*,
   668 S.E.2d 666 (Ga. 2008) ..................................................................12, 14, 15

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prod.
   Liab. Litig.*,
   2024 WL 1914881 (D.N.J. Apr. 30, 2024) ...........................................................18

*Jones v. Savage Servs. Corp.*,
   2019 WL 2058715 (N.D. Ala. May 9, 2019) .........................................................29

*Lance Toland v. Phoenix Ins. Co.*,
   2021 WL 1200263 (11th Cir. Mar. 30, 2021) .......................................................30

*Lanzas v. Am. Tobacco Co.*,
   46 F. App'x 732 (5th Cir. 2002) .........................................................................19

*Larry Savage Chevrolet, Inc. v. Richards*,
   470 So. 2d 1168 (Ala. 1985) .............................................................................16

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) ...............................................................10

*Letson v. Ford Motor Co.*,
   2024 WL 845844 (E.D. Mich. Feb. 28, 2024) .........................................................9

*Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*,
   510 So. 2d 142 (Ala. 1987), *overruled on other grounds by Alfa Mut. Ins. Co.
   v. Roush*, 723 So. 2d 1250 (Ala. 1998) ..............................................................16

*Maison Blanche, Inc. v. La. Dep't of Lab.*,
   604 So. 2d 670 (La. Ct. App. 1992) ....................................................................19

*Mason v. Chrysler Corp.*,
   653 So. 2d 951 (Ala. 1995) ...............................................................................26

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................8

*McCabe v. Daimler AG*,
    160 F. Supp. 3d 1337 (N.D. Ga. 2015) .............................................29, 30

*McGowan v. Chrysler Corp.*,
    631 So. 2d 842 (Ala. 1993)....................................................................27

*MCI Commc'ns Servs. v. CMES, Inc.*,
    728 S.E.2d 649 (Ga. 2012)....................................................................14

*Medberry v. Crosby*,
    351 F.3d 1049 (11th Cir. 2003) ............................................................11

*Menville v. Stephens Chevrolet, Inc.*,
    300 So. 2d 858 (La. Ct. App. 1974).................................................13, 16

*Ex parte Moebes*,
    709 So. 2d 477 (Ala. 1997) ...................................................................13

*Moore v. Lovein Funeral Home, Inc.*,
    852 S.E.2d 876 (Ga. Ct. App. 2020) .....................................................29

*Moore v. Meek*s,
    483 S.E.2d 383 (Ga. Ct. App. 1997) .....................................................30

*Original Appalachian Artworks v. S. Diamond Assocs.*,
    44 F.3d 925 (11th Cir. 1995) ................................................................27

*Orkin Exterminating Co. v. Bryan*,
    294 S.E.2d 683 (Ga. Ct. App. 1982) .....................................................15

*Pfizer, Inc. v. Farsian*,
    682 So. 2d 405 (Ala. 1996)........................................................24, 25, 26

*Phillips v. Am. Honda Motor Co.*,
    238 F. App'x 537 (11th Cir. 2007) .......................................................17

*Poffenbarger v. Merit Energy Co.*,
    972 So. 2d 792 (Ala. 2007)...............................................................11, 13

*Raysoni v. Payless Auto Deals, LLC*,
    766 S.E.2d 24 (Ga. 2014)......................................................................29

*Rider-Bey v. United States*,
    2022 WL 3234422 (E.D. Mich. July 12, 2022) ....................................11

*Rosen v. Mercedes-Benz USA, LLC*,
　　2022 WL 20766104 (N.D. Ga. Nov. 1, 2022) ......................................................10

*Royal Cap. Dev. LLC v. Maryland Cas. Co.*,
　　728 S.E.2d 234 (Ga. 2012)...............................................................................14, 15

*Ex parte S & M, LLC*,
　　120 So. 3d 509 (Ala. 2012).....................................................................................13

*S. Bakeries, Inc. v. Knipp*,
　　852 So. 2d 712 (Ala. 2002).....................................................................................24

*Sharp v. FCA US LLC*,
　　637 F. Supp. 3d. 454 (E.D. Mich. 2022)...................................................................9

*Sherrin v. Nw. Nat'l Life Ins. Co.*,
　　2 F.3d 373 (11th Cir. 1993) ....................................................................................11

*Shin v. Cobb Cnty. Bd. of Educ.*,
　　248 F.3d 1061 (11th Cir. 2001) ..............................................................................22

*Siqueiros v. Gen. Motors LLC*,
　　2021 WL 2115400 (N.D. Cal. May 25, 2021)..........................................................24

*Solak v. Ford Motor Co.*,
　　683 F. Supp. 3d 658 (E.D. Mich. 2023)....................................................................9

*Song v. Brown*,
　　565 S.E.2d 884 (Ga. Ct. App. 2002).......................................................................15

*State Farm Fire & Cas. Co. v. Owen*,
　　729 So. 2d 834 (Ala. 1998).....................................................................................26

*State v. Ford Motor Co.*,
　　965 So. 2d 438 (La. App. Ct. 2007), *writ denied*, 965 So. 2d 405 (La. 2007)..................23, 24

*Sugasawara v. Ford Motor Co.*,
　　2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) .....................................................9, 10

*In re Takata Airbag Prod. Liab. Litig.*,
　　2022 WL 17546365 (S.D. Fla. Nov. 10, 2022), *reconsideration motion
　　denied,* 2023 WL 2388488 (S.D. Fla. Jan. 31, 2023) ....................................6, 11, 24

*In re Takata Airbag Prod. Liab. Litig.*,
　　2022 WL 18956175 (S.D. Fla. Dec. 28, 2022)........................................................18

*In re Takata Airbag Prod. Liab. Litig.*,
　　2022 WL 3584510 (S.D. Fla. Aug. 16, 2022)..........................................................17

*In re Takata Airbag Prod. Liab. Litig.*,
   2023 WL 2388488 (S.D. Fla. Jan. 31, 2023) ........................................................................11

*In re Takata Airbag Prod. Liab. Litig.*,
   2023 WL 6274837 (S.D. Fla. Aug. 24, 2023).................................................................7, 20

*In re Takata Airbag Prod. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ...............................................................................24

*In re Takata Airbag Prods. Liab. Litig.*,
   2020 WL 3286821 (S.D. Fla. May 29, 2020) .......................................................................5

*In re Takata Airbag Prods. Liab. Litig.*,
   379 F. Supp. 3d 1333 (S.D. Fla. 2019) .................................................................................5

*Tershakovec v. Ford Motor Co., Inc.*,
   79 F.4th 1299 (11th Cir. 2023) .........................................................................................6, 7

*Tietsworth v. Harley-Davidson, Inc.*,
   677 N.W.2d 233 (Wis. 2004)..............................................................................................26

*Timmons v. Scotch Plywood Co.*,
   2019 WL 3468209 (S.D. Ala. July 31, 2019) .....................................................................29

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   785 F. Supp. 2d 925 (C.D. Cal. 2011) ................................................................................25

*Vegas v. UPS Ground Freight, Inc.*,
   2019 WL 13152026 (M.D. Fla. May 6, 2019).....................................................................28

*Ward-Richardson v. FCA US LLC*,
   690 F. Supp. 3d 1372 (N.D. Ga. 2023) .......................................................................1, 9, 10

*Weakley v. Eagle Logistics*,
   894 F.3d 1244 (11th Cir. 2018) ..........................................................................................28

*Weber v. Crescent Ford Truck Sales, Inc.*,
   393 So. 2d 919 (La. Ct. App. 1981).....................................................................................12

*Weidman v. Ford Motor Co.*,
   2022 WL 1071289 (E.D. Mich. Apr. 8, 2022), *vacated on other grounds sub. nom. In re Ford Motor Co.*, 86 F.4th 723 (6th Cir. 2023) .......................................................25

*West v. Home Depot U.S.A., Inc.*,
   2024 WL 1834112 (N.D. Ill. Apr. 26, 2024), *modified on denial of reconsideration*, 2024 WL 2845988 (N.D. Ill. June 5, 2024)..................................................18

*Williams v. Golden Peanut Co., LLC,*
  2022 WL 3867557 (11th Cir. Aug. 30, 2022)........................................................29

*Williamson v. Indianapolis Life,*
  741 So. 2d 1057 (Ala. 1999)..................................................................................24

*Windsor Forest, Inc. v. Rocker,*
  154 S.E.2d 627 (Ga. Ct. App. 1967)......................................................................16

*Winzler v. Toyota Motor Sales U.S.A., Inc.,*
  681 F.3d 1208 (10th Cir. 2012) ...............................................................................9

*Wright v. Metro. Atlanta Rapid Transit Auth.,*
  283 S.E.2d 466 (Ga. 1981).....................................................................................16

*In re Zantac (Ranitidine) Prods. Liab. Litig.,*
  2022 WL 16729170 (11th Cir. Nov. 7, 2022)...........................................................6

**Statutes**

49 U.S.C. § 30118(d) .....................................................................................................4

La. Civ. Code Ann. Art. 2520 .....................................................................................21

La. Civ. Code Ann. Art. 2524 .....................................................................................21

O.C.G.A. § 23-2-53......................................................................................................29

**Rules**

Fed. R. Civ. P. 23 ................................................................................................6, 7, 22

Fed. R. Civ. P. 56 ...................................................................................................8, 30

Fed. R. Evid. 702 ........................................................................................................18

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS § 344 (1981)................................................11

# INTRODUCTION

In March 2018, 32 plaintiffs filed class action lawsuits alleging that model year 2007-2014 trucks and SUVs built on the GMT900 platform were equipped with defective Takata airbag inflators that could rupture in real-world accidents. Plaintiffs do not allege their own (or a single class member's) airbags ruptured, failed to perform safely, or personally injured them or anyone else in their nearly 18 years on the road. And since this case began, GM, in coordination with NHTSA, offered a free recall repair to every GMT900 owner—including each remaining named plaintiff—that eliminates any speculative rupture risk. Each plaintiff nonetheless seeks thousands of dollars in overpayment benefit-of-the-bargain damages (on top of the free repair) for an alleged defect that never has (and never will) materialize in their vehicles.

The Court already dismissed the claims brought under all but three states' laws: Louisiana, Alabama, and Georgia. It also denied certification of all but the Louisiana class. The Court should now grant summary judgment dismissing the remaining claims and decertify the Louisiana class.

*First*, the Court should dismiss <u>all remaining claims</u> because GM's free and effective recall repair prudentially mooted and eliminated any benefit-of-the-bargain damages. These NHTSA-coordinated recalls are precisely the type of action by a "coordinate branch of government" that "change[d] circumstances that prevailed at the beginning of the litigation" and "forestalled any occasion for meaningful relief." *Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 F. App'x 955, 962 (11th Cir. 2012); *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1377 (N.D. Ga. 2023). The free repair also eliminates plaintiffs' damages claims because any further relief would confer a windfall double-recovery in violation of the substantive law of each state.

*Second*, the Court should grant summary judgment on plaintiff Tarus Sibley's <u>Louisiana claim</u> for breach of implied warranty against redhibitory defects (Count 18). The widespread publicity about the Takata recalls (as well as a recall letter sent directly to Sibley's home address) means that the alleged defect "had been sufficiently publicized that any amount of diligence would have alerted plaintiff[] to the issue" by July 2016. *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 395-96 (E.D. La. 1997). Sibley, however, did not file suit until March 2018—well after the one-year statute of limitations for his claim had expired. His claim is time barred. *See id.* Additionally, because Sibley's 2007 GMC Sierra was manufactured by Old GM—years before Old GM filed for bankruptcy and before New GM was created in 2009, his claim is barred by the Bankruptcy Court's Sale Order and because he was not "in a buyer-seller relationship

with New GM." *See In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 874778, at *1, 6 (S.D.N.Y. Mar. 3, 2016).

*Third,* the Court should dismiss the <u>Alabama claim</u> for common law fraud (Count 4) because Alabama plaintiffs Tommy and Mary Rivers' vehicle did not manifest the alleged defect and there is no genuine issue of material fact on misrepresentation or duty to disclose.

*Fourth*, the Court should dismiss the <u>Georgia claims</u> for common law and statutory fraud (Counts 4, 13) because Georgia plaintiff Dyeshawn Lodge is judicially estopped from pursuing claims she did not disclose in her Chapter 13 bankruptcy case, and there is no triable issue of fact on required elements of reliance and duty to disclose.

*          *          *

In short, any alleged defect in the remaining plaintiffs' GMT900 vehicles posed (at most) a theoretical risk of rupture that to this day has never manifested in their own (or *any*) GMT900 vehicle, and, due to the free and effective recall repair, never will. Each plaintiff got precisely the benefit that he or she bargained for; there are no damages, no injuries, and no case. The Court should dismiss with prejudice all remaining claims against GM and decertify the Louisiana class.

**BACKGROUND**

### A.     The GMT900 Takata Airbag Inflators.

Plaintiffs' claims center on certain model year 2007 to 2014 full-size trucks and sport utility vehicles built on the GMT900 architecture platform. More than six million GMT900 vehicles were equipped with uniquely designed Takata passenger airbag inflators utilizing a non-desiccated phase-stabilized ammonium nitrate-based ("PSAN") propellant.[1] SUF ¶¶ 4-14.[2] Since their

---

[1] The GMT900 vehicles were: MY 2007-2014 Chevrolet Silverado heavy duty; MY 2007-2013 Chevrolet Silverado light duty; MY 2007-2013 Chevrolet Avalanche; MY 2007-2014 Chevrolet Suburban; MY 2007-2014 Chevrolet Tahoe; MY 2007-2014 GMC Sierra heavy duty; MY 2007-2013 GMC Sierra light duty; MY 2007-2014 GMC Yukon; MY 2007-2014 GMC Yukon XL; MY 2007-2014 Cadillac Escalade; MY 2007-2014 Cadillac Escalade extended stretch vehicles; and MY 2007-2013 Cadillac Escalade extended crossover trucks. SUF ¶ 11.

[2] This brief uses the following citation conventions: "<u>GM</u>" or "<u>New GM</u>" refers to General Motors LLC, General Motors Co., and General Motors Holdings LLC; "<u>Old GM</u>" refers to General Motors Corp.; "<u>SUF</u>" refers to GM's Statement of Undisputed Material Facts (D.E. 4185) and "<u>Supp. SUF</u>" refers to the contemporaneously filed Supplemental Statement of Undisputed Materials Facts; "<u>Ex.</u>" refers to the Exhibits to the prior (D.E. 4189, 4492) and supplemental declarations filed with this Motion; "<u>SAC</u>" refers to the Second Amended Class Action Complaint (D.E. 4025).

2

introduction in 2006, the GMT900 inflators have performed safely as designed over the course of more than 18 years and billions of miles on the road.

As of June 2018, there had been approximately 67,000 passenger airbag deployments in real world accidents in GMT900 vehicles (a number which has surely increased since then) without a single report of a rupture. *Id.* ¶ 15. To this day, no one, not even plaintiffs' experts, has quantified any potential risk of GMT900 inflator rupture or opined on when such risk is reasonably likely to manifest (if at all) within 15 years or within a vehicle's useful life. *Id.* ¶¶ 19-20. No named plaintiff (past or present) claims the Takata passenger airbags in his or her vehicles ever ruptured, malfunctioned, or even deployed. Indeed, plaintiffs cannot identify ***a single rupture*** of a GMT900 inflator in the field. *Id.* ¶ 16. Thus, as plaintiffs' experts concede, the observed rupture rate of the GMT900 inflators across six million vehicles is ***zero***. *Id.* ¶ 18.

**B.    The Free And Effective Recall Repair.**

This MDL was created in the wake of well-publicized reports of ruptures in some vehicles equipped with Takata airbag inflators, which led to what NHTSA has described as "the largest and most complex vehicle recalls in U.S. history."[3] Although GM had not independently determined the existence of a safety defect in the GMT900 vehicles, on May 27, 2016, GM issued preliminary recalls for certain GMT900 vehicles, including each remaining named plaintiff's vehicle. D.E. 4340-1, GM Resp. to Pls. RFA No. 67. GM sent recall letters stating Takata had "decided that a defect which relates to motor vehicle safety exists" in certain GMT900 vehicles based on Takata's "decision that front passenger airbag inflators it supplied to GM are defective." Supp. SUF ¶¶ 25, 51; SUF ¶¶ 95, 106, 118. The GM recalls were widely covered in the mainstream news media and on major automotive websites like Cars.com, including articles with titles like "GM Recalls 1.9 Million Trucks and SUVs for Defective Takata Airbags" and "Car Makers Recall More Vehicles With Faulty Takata Airbags: Ford, GM recalling around 1.9 million vehicles each with defective Takata air bags." Supp. SUF ¶ 52. Given the unprecedented scope of the Takata recalls, by the fall of 2016, NHTSA had created a standalone website related to the recalls, which identified the 2007-2011 GMT900 vehicles among the "Vehicles Affected" thus far. *Id.* ¶ 54.

---

[3] *The State of the Takata Recalls*, NAT'L HIGHWAY & TRAFFIC SAFETY ADMIN. (Nov. 17, 2017), https://www.nhtsa.gov/recall-spotlight/state-takata-recalls.

Beginning in November 2016, GM petitioned NHTSA for a determination that a defect is "inconsequential to motor vehicle safety" which would exempt or toll certain recall obligations related to notifications and/or remedies. *See* 49 U.S.C. § 30118(d). After considering the unique performance and design of the GMT900 inflators, NHTSA deferred resolution of GM's Petition, and thus deferred recall repairs. NHTSA found the "data GM has developed and presented to date," "could ultimately grow and develop to support GM's position with respect to the long-term safety of the covered passenger inflators."[4] 81 Fed. Reg. at 85684. Over the following years, GM provided NHTSA with the results of robust and expansive internal and third-party expert testing that simulated three decades of humidity- and temperature-related propellant degradation.[5]

Notwithstanding this evidence and data, on November 20, 2020, NHTSA denied GM's Petitions. 85 Fed. Reg. 76159.[6] Plaintiffs' lawyers immediately notified the Court of the NHTSA recall decision. D.E. 3913. While GM disagreed with NHTSA's decision, it agreed to recall and replace all Takata non-desiccated PSAN passenger airbags inflators in GMT900 vehicles. The recall repair and replacement airbag are provided at no cost to consumers. SUF ¶ 32. GM estimated it would spend approximately $1 billion replacing the GMT900 inflators through its recall campaigns. Supp. SUF ¶ 71. No plaintiff or expert challenges the adequacy of the recall remedy or replacement. In fact, plaintiffs' technical experts disclaimed knowledge about the types of inflators used in the replacements and repairs. SUF ¶ 34.

### C.    The Litigation.

### 1.    The Court Dismissed Most Of The Claims Against GM.

On February 5, 2015, the JPML created this MDL No. 2599. D.E.1. In April 2015, plaintiffs filed a class action complaint against dozens of manufacturers, including GM. D.E. 544. Weeks

---

[4] Publicly available at https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/112116-gm_petition_for_inconsequential_re_gmt900_takata_inflators-filing_copy.pdf.

[5] *See* GM's Third Petition for Inconsequentiality at 3 (April 25, 2018).Publicly available at *available at* https://www.regulations.gov/document/NHTSA-2016-0124-0144.

[6] The issue that NHTSA addressed was not whether there was sufficient evidence to show that the GMT900 inflators were defective or posed an unreasonable risk to safety (as is one of plaintiffs' burdens here). NHTSA instead considered whether GM could demonstrate that the absence of a risk of rupture and the absence of a risk to safety was "not important or capable of being ignored," which it deemed a "heavy burden." *Id.* at 76165. NHTSA determined that GM could not meet this "heavy burden of persuasion." *Id.*

later, plaintiffs amended their complaint, dropped all the claims against GM, and did not pursue any cases against GM for nearly three years. They instead sued and collectively secured billions of dollars in settlements from other manufacturing defendants.[7] This lawsuit is procedurally and substantively a far cry from the ones some of the same plaintiffs' lawyers brought against other manufacturers nearly a decade ago.

In March 2018, 32 plaintiffs filed two complaints against GM: (1) the *Brugaletta* Complaint in the Eastern District of Michigan, which the JPML transferred to this Court, and (2) the *Whitaker* Complaint (filed by Florida resident David Whitaker) directly into this MDL. *See In re Takata Airbag Prods. Liab. Litig.*, 2020 WL 3286821, at *3 (S.D. Fla. May 29, 2020) (summarizing litigation history); *In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1336 (S.D. Fla. 2019) (same). Plaintiffs pled a total of 40 counts, alleging violations of federal law (RICO and Magnuson-Moss Warranty Act) and the laws of 19 states.

In June 2019 and May 2020, the Court granted GM's motion to dismiss, among other things, the federal RICO and Magnuson-Moss Warranty Act claims, and claims brought under the laws of Indiana, Kentucky, Tennessee, and Vermont. *In re Takata*, 2020 WL 3286821, at *1, 5, 14. Eight named plaintiffs later dropped out of the case after refusing to meet discovery obligations, including the sole named plaintiffs with claims under the laws of Mississippi, North Carolina, Virginia, and West Virginia. *Compare* D.E. 2759, FAC ¶ 72 *with* D.E. 4025, SAC ¶ 91; *see also e.g.*, SAC at 139, 147-148 (identifying certain claims as "Dismissed").[8]

Over the next two years, the parties conducted extensive fact and expert discovery. Plaintiffs deposed 13 current and former GM employees and five Rule 30(b)(6) corporate representatives, while GM obtained discovery from and deposed 24 of the original 32 named plaintiffs. The parties disclosed and produced reports for 11 experts, each of whom was deposed.

On March 16, 2022, GM moved for summary judgment on the remaining 24 plaintiffs who asserted claims under the laws of 11 states. D.E. 4182. On July 7, 2022, the Court granted summary

---

[7] On June 15, 2015, plaintiffs filed an amended complaint that dropped claims against GM. D.E. 579. Except for cases from other jurisdictions that were promptly placed in "civil suspense," no economic loss claims were pursued against GM in this MDL until March 14, 2018, when plaintiffs filed a consolidated economic damages complaint against New GM. D.E. 2428.

[8] Plaintiffs dropped the West Virginia plaintiff's claims too, but inadvertently omitted that claim from the list of other dismissed claims, like the North Carolina and Virginia plaintiffs.

judgment dismissing 13 uncontested claims, including all claims by two named plaintiffs. D.E. 4346. On November 8, 2022, the Court granted summary judgment in GM's favor on all claims asserted by 18 plaintiffs under the laws of California, Florida, Michigan, Missouri, New Jersey, New York, Pennsylvania, and Texas. The Court held the "Plaintiffs in these states—each of whom it is undisputed has already had or could have had the recall, repair and replacement performed free of charge—have been compensated and made whole" and thus "have no legally recoverable benefit-of-the-bargain damages." *In re Takata Airbag Prod. Liab. Litig.*, 2022 WL 17546365, at *7 (S.D. Fla. Nov. 10, 2022), *reconsideration motion denied,* 2023 WL 2388488, at *1 (S.D. Fla. Jan. 31, 2023).

In sum, from March 2018 to January 2023, the case winnowed down from 32 plaintiffs bringing claims under federal law and the laws of 19 states to four plaintiffs bringing claims under the laws of three states: Alabama, Georgia, and Louisiana.

2.    **The Court Certified One Louisiana State Law Class.**

In March 2022, plaintiffs moved to certify three multistate Rule 23(b)(3) damages classes under the laws of eleven states. *See* D.E. 4193. In December 2022 (after the November 2022 summary judgment order dismissed claims under the laws of eight of those eleven states), GM filed summary judgment motions on the remaining plaintiffs' claims. D.E. 4471 at 16, D.E. 4489. Around the same time, based on the Eleventh Circuit's decision in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 16729170 (11th Cir. Nov. 7, 2022), the Court granted plaintiffs' motion for reconsideration of the prior dismissal of claims arising under the substantive law of states without named plaintiffs. *See* D.E. 4476 at 12-14, D.E. 4504. On January 13, 2023, plaintiffs filed their Supplement to their Second Amended Consolidated Class Action Complaint, which added 11 claims from 10 jurisdictions tied to the Alabama and Georgia named plaintiffs. D.E. 4520.

On April 7, 2023, plaintiffs filed a new motion for class certification, and GM filed its opposition on May 5, 2023. D.E. 4609, 4632. On July 8, 2023, the Eleventh Circuit issued its decision in *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299 (11th Cir. 2023). That opinion instructed district courts to examine whether governing state law permits a classwide presumption

or inference of reliance and, if so, under what circumstances. The parties filed supplemental briefs on the impact of *Tershakovec* on class certification.[9] D.E. 4667, D.E. 4672, 4674, 4679, 4682.

On August 24, 2023, the Court granted in part and denied in part plaintiffs' class certification motion. *See In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 6274837 (S.D. Fla. Aug. 24, 2023). The Court denied certification of proposed common law and consumer protection statutory classes, but granted certification of one Louisiana implied warranty class. *Id.* at *13-14. It deferred resolution of whether GM's recall repairs eliminated plaintiffs' benefit-of-the-bargain damages under the laws of the remaining states, finding it was "best suited to be addressed at summary judgment." *Id.* at *4. GM timely filed a Rule 23(f) petition for permission to appeal the certification order, which the Eleventh Circuit denied on November 3, 2023. *See* D.E. 4721-1.

In its certification order, the Court also denied as moot GM's pending summary judgment motions until "[a]fter the Court has ruled on all of the pending motions for class certification." D.E. 4690 at 2. At the time, the Court had yet to resolve plaintiffs' motion for class certification against Mercedes-Benz USA, LLC (MBUSA). On May 29, 2024, the Court held a hearing on the MBUSA certification motions and set a July 12, 2024 date for defendants to file new motions for summary judgment. D.E. 4764, D.E. 4792, 5/29/2024 Hr'g Tr. at 62:9-13; *see also* D.E. 4785.

GM now respectfully moves for summary judgment on the remaining claims against it.

### 3. Four Remaining Plaintiffs Have Claims Under Three States' Laws.

Four named plaintiffs remain with a total of four claims under three states' laws: (1) Louisiana plaintiff Tarus Sibley: breach of implied warranty against redhibitory defects (Count 18); (2) Alabama plaintiffs Tommy and Mary Rivers: common law fraud (Count 4); and (3) Georgia plaintiff Dyeshawn Lodge: common law fraud and violation of the Georgia Fair Business Practices Act (Counts 4 and 13). Each of these plaintiffs has driven their GMT900 vehicle extensively—over 210,000 miles on average—for well over a decade. Supp. SUF ¶¶ 16, 23, 64. Each of these plaintiffs was offered the free repair and informed that parts were available to replace the Takata airbags by early 2021. *Id.* ¶¶ 14, 27, 56.

● Louisiana plaintiff Sibley obtained the free replacement airbag at some point in the middle of 2022—more than a year after GM offered the free repair and also after GM had already

---

[9] At the time, the Court had already certified come classes against FCA US LLC. D.E. 4659. In response to *Tershakovec*, plaintiffs moved to exclude Alabama from certified classes, conceding that Alabama would not permit a classwide inference of reliance. D.E. 4663 at 2.

filed its initial summary judgment motion. *Id.* ¶¶ 56-58. Under plaintiffs' damages model, Sibley gets $9,673 (46% of the purchase price) to compensate him for an alleged defect that never manifested in his vehicle and that never will. D.E. 4341-38, Dube Rpt. at 56. (According to Carfax, this is about $1,300 more than his car is currently worth. *See* Ex. 218.)

● Alabama plaintiffs the Rivers got the free recall repair for their 2009 Chevrolet Avalanche on March 31, 2021. Supp. SUF ¶ 14. Under plaintiffs' damages model, the Rivers would get $10,855 (32% of their purchase price) to compensate them for an alleged defect that never manifested in their vehicle and that never will. D.E. 4341-38, Dube Rpt. at 56.

● Georgia plaintiff Dyeshawn Lodge did not get the recall repair for her 2010 Chevrolet Suburban, but it appears she no longer drives her vehicle, which she described as "inoperable" after being driven more than 220,000 miles. Supp. SUF ¶¶ 23, 28, 35. Under plaintiffs' damages model, Lodge would get $6,363 (21% of her purchase price) to compensate her for an alleged defect that never manifested in her vehicle and that she could have gotten fixed for free if she decided to do so. D.E. 4341-38, Dube Rpt. at 55.

If any of the remaining plaintiffs' claims survive this motion, their claims will be remanded back to the transferor court in the Eastern District of Michigan for any trial. *In re Takata*, 379 F. Supp. 3d, 1333, 1345 (S.D. Fla. 2019) ("[I]f any of the underlying legal actions go to trial, they will do so in the appropriate MDL transferor court—which is consistent with *Lexecon*, and required by Section 1407(a).").

## ARGUMENT AND AUTHORITIES

The Court "shall" grant summary judgment where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-movant must set forth admissible evidence that would permit a reasonable factfinder to find in their favor, not just raise "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## I.     The Court Should Grant Summary Judgment On All Remaining Claims Because They Are Prudentially Moot And Have Been Substantively Eliminated.

### A.     The Free Recall Repair Prudentially Moots This Entire Lawsuit.

The Court should dismiss all remaining claims (and the case writ large) because the free and effective recall repair has prudentially mooted any alleged benefit-of-the-bargain injuries. The prudential mootness doctrine "allows courts to withhold requested relief" where a "coordinate branch of government steps in to promise the relief [the plaintiff] seeks." *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1377 (N.D. Ga. 2023) (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210–13 (10th Cir. 2012) (Gorsuch, J.)). "The critical question becomes whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 F. App'x 955, 962 (11th Cir. 2012) (internal quotation marks omitted).

After this litigation began, GM implemented NHTSA-coordinated recalls offering each named plaintiff and all GMT900 owners a free replacement airbag that eliminates the alleged defect on which plaintiffs' benefit-of-the-bargain damages are based. *See* SUF ¶¶ 29-35. As many courts hold, this free-and-effective recall repair should end the case, because "any additional relief that this Court could award would constitute an impermissible double recovery."[10] *Ward-Richardson*, 690 F. Supp. 3d at 1380 (dismissing claims for "diminished-value damages" from automotive defect as prudentially moot where, as here, defendant-manufacturer implemented a NHTSA-coordinated recall); *see also Letson v. Ford Motor Co.*, 2024 WL 845844, at *3 (E.D. Mich. Feb. 28, 2024) (holding "diminished-value injuries" were prudentially moot because defendant's "recall measures would remediate the very same defect upon which" those injuries are based); *Sharp*, 637 F. Supp. 3d. at 469 (dismissing claims as prudentially moot because "the anticipated repairs will remove the defect upon which Plaintiffs' claim for benefit-of-the-bargain damages is based"); *Solak v. Ford Motor Co.*, 683 F. Supp. 3d 658, 664 (E.D. Mich. 2023) (holding defendant's "remedial measures, coupled with NHTSA's authority to ensure they are fully implemented, renders [plaintiff's] claims prudentially moot," even "claims for money damages");

---

[10] The same result should follow regardless of whether a plaintiff (such has Lodge) has yet to avail herself of the free recall remedy. *See Sharp v. FCA US LLC*, 637 F. Supp. 3d. 454, 469 (E.D. Mich. 2022) (granting dismissal although "Plaintiffs trucks may not yet be repaired"); *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (finding plaintiff who refuses recall repair "cannot thereby manufacture standing").

*Cheng v. BMW of N. Am.*, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) ("[I]t is unclear how Plaintiff can demonstrate injury in light of BMW's offer to completely repair the…defect.").

The Eleventh Circuit has held that prudential mootness applies where, as here, there has been "changes in circumstances that prevailed at the beginning of the litigation [that] have forestalled any occasion for meaningful relief." *Ingaseosas*, 479 F. App'x at 962.[11] The same is true of the Sixth Circuit—where any remaining claims would be remanded if they are not dismissed. In *Hadley v. Chrysler Gr., LLC*, 624 F. App'x. 374, 378-79 (6th Cir. 2015), for example, the Sixth Circuit affirmed dismissal of a Louisiana redhibition claim for damages—the same claim the Louisiana plaintiff makes here—as moot. The Court agreed that plaintiffs could not "establish a concrete injury that can be redressed by a judgment in their favor" where the recall repair "removed the defect upon which the plaintiffs' diminished-value injury claim is based." *Id.*[12]

Relatedly, because "[a]t bottom, plaintiffs complain of a past risk of physical injury to which they were allegedly exposed because of defendants' fraud" and "that risk never materialized," they have no injury in fact, no redressable injury, and no Article III standing. *See Earl v. Boeing*, 53 F.4th 897, 903 (5th Cir. 2022); *see also Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, 499 F. Supp. 3d 1160, 1166–67 (S.D. Fla. 2020) (holding no "concrete and particularized" injury where insured was "made whole under the [insurance] Policy"); *Sugasawara*, 2019 WL 3945105, at *7 (dismissing case involving free recall repairs, finding "the plaintiffs have failed to establish a concrete injury that can be redressed by a judgment in their favor").

---

[11] Plaintiffs' reliance on *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017), is misplaced. As other courts recognize*, Leon* involved claims for relief that exceeded benefit of the bargain damages, so "[i]f the Court were to rule that this case is moot, Plaintiffs would be left without complete relief because they claim both money damages and that the Program [did] not fix the underlying defect." *Rosen v. Mercedes-Benz USA, LLC*, 2022 WL 20766104, at *2 (N.D. Ga. Nov. 1, 2022). Here, the only claims for damages and relief are squarely within the scope of—and thus mooted by—the free and effective recall repairs. *Ward-Richardson*, 690 F. Supp. 3d at 1380.

[12] Contrary to plaintiffs' arguments elsewhere, *Hadley* did not turn on the issue of injunctive or declaratory relief. *Hadley*, like the Louisiana claim here, also involved claims for damages under Louisiana's breach of implied warranty for redhibitory defect. 624 F. App'x at 376.

In short, the free and effective recall repair should end this litigation.[13] This Court should grant summary judgment and dismiss all remaining claims against GM.

### B.     The Free Recall Repairs Eliminate State-Law Damages.

Damages is an indispensable element of each of plaintiffs' remaining claims.[14] Plaintiffs have confirmed that monetary benefit-of-the bargain damages are the only form of relief they seek, relying solely on their damages expert, Jean-Pierre Dubé. *See In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 2388488, at *5 (S.D. Fla. Jan. 31, 2023) (holding plaintiffs confirmed their "intent to pursue only actual damages under a benefit-of-the-bargain theory" based on admission that "plaintiffs would not have a claim" if Court adopted defendants' position that recall repairs "zeroed out damages"); *see also* SAC ¶ 64.

"The benefit-of-the-bargain theory aims to compensate a plaintiff who did not receive what she bargained for." *In re Takata*, 2022 WL 17546365, at *2 (citing RESTATEMENT (SECOND) OF CONTRACTS § 344 (1981)). The Court previously held that GM's effective and free recall repair eliminated plaintiffs' benefit-of-the-bargain damages in eight states. *See id.* at *1-8; *see also In re Takata*, 2023 WL 2388488, at *6 (denying plaintiffs' motion for partial reconsideration).

The same result follows under the law of the three remaining states where the free recall repair restores plaintiffs to the benefit of their bargain and eliminates any claim for damages.[15] *See Barnco Int'l, Inc. v. Arkla, Inc.*, 684 So. 2d 986, 999-1000 (La. Ct. App. 1996) (holding "primary aim of the law of damages is to place the plaintiff in the same position in which he would have been in if the contract had been fulfilled" and "great care must be exercised to ensure that the plaintiff is not actually placed in a *better* position than he would have attained had the contract been performed")*, writ denied*, 688 So. 2d 511 (La. 1997); *Poffenbarger v. Merit Energy Co.*, 972

---

[13]   Because "mootness 'strik[es] at the heart of federal subject matter jurisdiction,'" it may "be raised *sua sponte*." *Rider-Bey v. United States*, 2022 WL 3234422, at *1 (E.D. Mich. July 12, 2022) (quoting *Medberry v. Crosby*, 351 F.3d 1049, 1054 n. 3 (11th Cir. 2003)).

[14] *See, e.g., De Atley v. Victoria's Secret Catalogue, LLC*, 876 So. 2d 112, 115 (La. Ct. App. 2004) (redhibition); *Sherrin v. Nw. Nat'l Life Ins. Co.*, 2 F.3d 373, 378 (11th Cir. 1993) (Alabama fraud); *Bridgers v. Investors Am., Inc.*, 267 S.E.2d 801, 803 (Ga. Ct. App. 1980) (Georgia fraud); *Edel v. Southtowne Motors of Newnan II, Inc.*, 789 S.E.2d 224, 228 (Ga. Ct. App. 2016) (GFBPA).

[15] Recalling and repairing an alleged defect aligns precisely with the bargain struck here as each plaintiff's owner's manual expressly states that, if "[NHTSA] finds that a safety defect exists in a group of vehicles, it may order a recall and remedy campaign." Supp. SUF ¶¶ 9, 24, 55.

So. 2d 792, 801-02 (Ala. 2007) (holding damages should compensate plaintiff for "actual damages sustained" and make plaintiff "whole," not generate "economic waste" with the "specter of a windfall"); *John Thurmond & Assocs., Inc. v. Kennedy*, 668 S.E.2d 666, 668 (Ga. 2008) (holding damages "are intended to place an injured party, as nearly as possible, in the same position they would have been if the injury had never occurred").

The Court thus should grant summary judgment dismissing the remaining Louisiana, Alabama, and Georgia claims (as it did for multiple other states) because the recall repair eliminated benefit-of-the-bargain damages under each of the three states' laws.

### 1. **Louisiana.**

Plaintiff Sibley is not entitled to any reduction in price (under a benefit-of-the-bargain or any other theory) for his redhibition claim because any alleged defect has been eliminated by the free and effective recall repair. Where a plaintiff seeks reduction in the purchase price paid for a vehicle containing a redhibitory defect, the "object…is to compensate the buyer for any *uncorrected* vices and defects by a comparable reduction in the purchase price." *Weber v. Crescent Ford Truck Sales, Inc.*, 393 So. 2d 919, 924 (La. Ct. App. 1981) (emphasis added). Thus, where a "defect ha[s] been removed" at no cost to the plaintiff and had the "effect of placing the car in as good a condition as if the defect had never existed," there can be no damages awarded for diminished value. *Ehrlich v. Roby Motors Co.*, 117 So. 590, 561-63 (La. 1928) ("While there is evidence in the record to the effect that a car of this description, with a defective cowl, is worth from $750 to $1,000 less than if the cowl were not defective, still this evidence does not take into consideration that, in this instance, the defect had been removed."); *Cloud v. Huffman Motor*, 416 So. 2d 266, 270 (La. Ct. App. 1982) (affirming denial of damages for price reduction because defendant "satisfactorily repaired" the plaintiff's vehicle "at no cost to the plaintiff").

There are no circumstances that would justify awarding any damages for reduction in price based on the undisputed facts that the alleged defect: (1) did not manifest in Sibley's vehicle over his many years of use (Supp. SUF ¶¶ 59, 61, 64); (2) has not manifested in a single putative class vehicle on the road (SUF ¶¶ 15-18); and (3) has been effectively repaired at no cost to Sibley (Supp. SUF ¶ 58), which has the "effect of placing the car in as good a condition as if the defect had never existed." *Ehrlich*, 117 So. at 561.

Indeed, under the undisputed facts, it would be unreasonable as a matter of (and a violation of) Louisiana law to award Sibley **$9,673**, or a ***46% reduction*** in his purchase price, as the damages

model from plaintiffs' expert Dubé would. *Menville v. Stephens Chevrolet, Inc.*, 300 So. 2d 858 (La. Ct. App. 1974) is instructive. There, the plaintiff experienced extensive problems with his Corvette over a prolonged period that required multiple lengthy repairs, affecting his ability to use the car for work purposes, and left several "uncured" defects. *Id.* at 861. The trial court awarded plaintiff $1,600, which was approximately $1,000 more than the out-of-pocket repair costs he incurred. *Id.* at 860-61. The court of appeals held the award of $1,000 over the cost of repairs was unreasonable because it "would suppose that if both parties had known of the defects and the seller had agreed to pay for all repairs attributable to defects existing at the time of sale, the buyer and seller still would have agreed on a reduction in price of almost 20%." *Id.* at 862. Here, Sibley seeks a reduction of almost 50% for an alleged defect that did not manifest and has been repaired for free. "[F]ully informed of all [those] facts," a "reduction of this extent would not have been agreed upon by a reasonable buyer and a reasonable seller" and it would be unreasonable as a matter of law to award Sibley the damages he seeks. *Id.* Put differently, a reasonable seller would never agree to a buyer's demand for a nearly $10,000 discount for a latent airbag defect where—as Louisiana law requires—both sides know (1) the defect will never manifest is the vehicle; (2) the defect will never manifest in any other vehicles containing the airbags; (3) the defect will be repaired for free; and (4) the buyer will get almost 200,000 miles of use out of the vehicle.

Dubé's model could not sustain an award for Sibley because his vehicle has been repaired for free. Under Louisiana law. Sibley's damages are $0 because "the car [is] in as good a condition as if the defect had never existed." *Ehrlich*, 117 So. at 561

2. **Alabama.**

"[T]he purpose of compensatory damages in Alabama is to make the injured party whole by reimbursing him or her for the loss or harm suffered." *Ex parte S & M, LLC*, 120 So. 3d 509, 516 (Ala. 2012) (cleaned up); *see also Ex parte Moebes*, 709 So. 2d 477, 478 (Ala. 1997) (similar). A damages award "may not serve the end of making the victim whole as much as it raises the specter of a windfall" where, as here, it grossly overcompensates the plaintiff and amounts to "economic waste" compared to the loss suffered. *Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 801-02 (Ala. 2007); *cf. Fuller v. Martin*, 125 So. 2d 4, 6 (Ala. Ct. App. 1960) (holding "the cost of repairs must not exceed the difference in the market value of the car before and after the

13

injury" because plaintiff is entitled to a vehicle "equal to but not better" than before the injury).[16] The Alabama plaintiffs' actual losses are zero because GM replaced their allegedly defective airbag at no charge. The vehicle has provided safe and reliable transportation for the Alabama plaintiffs for over 200,000 miles. Supp. SUF ¶¶ 14-16. Thus, the recall made plaintiffs whole and awarding them additional damages would be an impermissible windfall. Dismissing this claim also aligns with the Alabama Supreme Court's holding that a recall repair, not damages, is the remedy for unmanifested vehicle defects. *Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998).

3.   **Georgia.**

"Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole." *Georgia Ne. R. Co. v. Lusk*, 587 S.E.2d 643, 644 (Ga. 2003). Moreover, "the purpose of damages is to place an injured party in the same position as it would have been had there been no injury or breach of duty, that is, to compensate for the injury actually sustained….[C]ompensation, not enrichment, is the basis for the award of damages." *Home Ins. Co. v. N. River Ins. Co.*, 385 S.E.2d 736, 742 (Ga. Ct. App. 1989).[17] So too with benefit-of-the-bargain damages, which seek to "award to the plaintiff that which it expected to receive had there been no [alleged] fraud." *Goody Prod., Inc. v. Dev. Auth. of City of Manchester*, 740 S.E.2d 261, 271 (Ga. App. Ct. 2013).

In furthering this principle, the Georgia Supreme Court dictates that the method of calculating benefit-of-the-bargain damages "should be flexible so as to reasonably compensate the injured party, and at the same time, to be fair to all litigants." *Kennedy*, 668 S.E.2d at 670. "As a general rule," the difference in market value based on a defect should be "determined by measuring the cost of repairing or restoring the damage, unless the cost of repair is disproportionate to the

---

[16] *Overruled on other grounds by Ex parte S & M, LLC* 120 So. 3d at 516.

[17] *See also Royal Cap. Dev. LLC v. Maryland Cas. Co.*, 728 S.E.2d 234, 236 (Ga. 2012) (damages are "intended to place an injured party, as nearly as possible, in the same position they would have been if the injury had never occurred"); *John Thurmond & Assocs., Inc. v. Kennedy*, 668 S.E.2d 666, 668 (Ga. 2008) (same); *MCI Commc'ns Servs. v. CMES, Inc.*, 728 S.E.2d 649, 653 (Ga. 2012) (declining to award damages because it "would only result in an unfair windfall to [plaintiff]"); *Atlanta Recycled Fiber Co. v. Tri-Cities Steel Co.*, 262 S.E.2d 554, 559 (Ga. Ct. App. 1979) ("The rationale of damages, as in this case, is to compensate the plaintiff and not to unreasonably burden the defendant beyond the point of compensating the plaintiff.").

property's probable loss of value." *Id.* at 668; *see also Hutto v. Shedd*, 353 S.E.2d 596, 598 (Ga. Ct. App. 1987) ("[t]his difference in value may be established by evidence of the reasonable cost of correcting the defect."); *Orkin Exterminating Co. v. Bryan*, 294 S.E.2d 683, 684 (Ga. Ct. App. 1982); *Canal Ins. Co. v. Tullis*, 515 S.E.2d 649, 650 (Ga. Ct. App. 1999). Since the cost of repair is $0 to consumers, plaintiff Lodge is limited to seeking cost of repair for her damages and cannot also seek diminished value damages. *See Blair-Naughton L.L.C. v. Diner Concepts, Inc.*, 369 F. App'x 895, 900 (10th Cir. 2010) (applying Georgia law and reducing jury award to cost of repair because "the cost of putting the property in the condition for which the plaintiffs contracted constitutes an upper limit to the amount that may be awarded").

Georgia courts recognize that a plaintiff may seek both repair costs and diminished value damages "where the repair does not fully restore the property to its pre-damage value." *See Royal Capital*, 728 S.E.2d at 237; *Kennedy*, 668 S.E. 2d at 669 n.2 (potential for recovery of both cost of repair and diminished value where "there remains a diminution in value of the property" after repair); *Lusk*, 587 S.E.2d at 645 (reversing judgment because jury's award of diminution damages for land may have provided "an improper double recovery" where it also awarded restoration costs); *Song v. Brown*, 565 S.E.2d 884, 885 (Ga. Ct. App. 2002) ("[T]he plaintiff is entitled only to the benefit of the bargain or to be made whole and not to recover a windfall."). But that exception does not apply here because plaintiffs offer no expert or other evidence that their vehicles are worth less *after* the recall, and the repair thus puts them "in the same position they would have been if the [alleged] injury had never occurred." *Kennedy*, 668 S.E.2d at 668. Any further award would be a double recovery and windfall, which Georgia law forbids.

## II.     The Court Should Grant Summary Judgment On All Remaining Claims Because They Are Based On Expert Models That Contravene And Expand State Law.

The remaining claims should also be dismissed on summary judgment because they all turn on benefit-of-the-bargain damages that require admissible supporting expert opinions. But plaintiffs' expert Dubé's damages model is contrary to the applicable state substantive law and is otherwise unreliable; it thus cannot satisfy plaintiffs' burden on summary judgment.

### A.     Plaintiffs' Expert's Opinions Do Not Fit Their State Law Claims.

Dubé concedes that the appropriate measure of damages here "the difference between the *market* price actually paid for a Class Vehicle at the point of sale and the but-for *market* price Class Members would have paid for the Class Vehicle had they been aware of the airbag defect at the

point of sale."[18] This requires a determination of what the actual or *market* price of the vehicle would have been if information related to the defect had been disclosed. And under the law of every state at issue, market price is determined between a **willing buyer** and a **willing seller**:

Louisiana: Fair market value is what a "willing and informed buyer would pay a willing and informed seller for a particular piece of property, with neither being under any compulsion to buy or sell." *Cook v. Mixon*, 700 So. 2d 1264, 1266 (La. Ct. App. 1997); *Cloud*, 416 So. 2d at 270 (redhibition damages are "difference between the actual sales price and the price that a reasonable buyer and seller would have agreed upon had the defect been known to them at the time of the sale").

Alabama. "[R]easonable market value" or "fair market value" must be determined by the highest price "a willing seller and willing buyer" would agree to for the sale of an item. *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.,* 510 So. 2d 142, 144 (Ala. 1987) ("[T]he instruction was in accordance with the law of damages in Alabama."), *overruled on other grounds by Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250 (Ala. 1998); *see also Crump v. Geer Bros.*, 336 So. 2d 1091, 1096–97 (Ala. 1976) ("[M]arket value may be defined as the price that a willing seller would sell, and a willing buyer would buy, neither being compelled to sell or buy.").

Georgia. Fair market value must be measured by the highest price a "seller who desires, but is not required, to sell and a buyer who desires, but is not required, to buy would agree is a fair price, after due consideration of all the elements reasonably affecting value." *Wright v. Metro. Atlanta Rapid Transit Auth.*, 283 S.E.2d 466, 469 (Ga. 1981); *see also Camp v. Mapp*, 95 Ga. App. 262, 263 (Ga. Ct. App. 1957) ("Market value is the value at what a seller who is willing to sell but not compelled to sell to a buyer who is willing to buy but not compelled to buy.").

Thus, in each of the three states at issue, the "law requires that benefit-of-the-bargain damages be calculated based on the difference in *market* value between the product as warranted

---

[18]  D.E. 4181-1, Dubé Rpt. ¶ 25; *Menville v. Stephens Chevrolet, Inc.*, 300 So.2d 858, 862 (La. Ct. App. 1974) (measuring "difference between the sale price and the price the reasonable buyer and seller would have agreed upon if they had known of the defects"); *Larry Savage Chevrolet, Inc. v. Richards*, 470 So. 2d 1168, 1171 (Ala. 1985) ("Generally, in an action for fraud the measure of damages is the difference between the value of the property as represented and its actual value."); *Windsor Forest, Inc. v. Rocker*, 154 S.E.2d 627, 632 (Ga. Ct. App. 1967) ("The measure of damages in an action for fraud and deceit is the actual loss sustained, and if the contract is one of purchase and sale the actual damages are the difference between the value of the thing sold at the time of delivery and what its value would have been if the representations made had been true.").

and the product as sold and defines market value as the product of *both* a consumer's willingness to pay *and* a merchant's willingness to sell, when *neither* are under any compulsion to do so." *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 240-41 (S.D.N.Y. 2019), *mot. to certify appeal granted*, *reconsideration denied*, 427 F. Supp. 3d 374 (S.D.N.Y. 2019). But Dubé does not determine *market* prices and does not model transactions between *willing buyers and willing sellers*. Instead, he simulates "markets" in which defendants are forced to unwillingly and unreasonably sell vehicles at any price that buyers demand. Dubé's post-hoc rationalizations for letting buyers and buyers alone set the market price cannot displace binding state law holding that market value cannot be determined by a coerced sale.[19]

In short, because Dube's models cannot prove benefit-of-the-bargain damages under state law, there is "an absence of evidence" on an "essential element" of "all of their claims." *Ignition Switch*, 407 F. Supp. 3d. at 239, 241. The Court should grant summary judgment. *See id.*

**B.     Plaintiffs' Damages Expert's Opinions Are Unreliable.**

As GM explained in its *Daubert* motion (D.E. 4178), Dube's opinions are unreliable and inadmissible for myriad reasons, including that he "did not sufficiently account for supply-side factors, especially since he does not model transactions in any real-world market data." *See In re Takata Airbag Prod. Liab. Litig.*, 2022 WL 3584510, at *2 (S.D. Fla. Aug. 16, 2022). The Court acknowledged that "courts have done different things with respect to this argument," but held "[t]his Court has expressly taken a more liberal approach, viewing arguments about what a conjoint analysis does and does not include as credibility arguments for the jury." *Id.* The Court thus denied the motion to exclude, finding "Defendants' challenges to Dr. Dubé's model are not sufficient to exclude his opinion." *Id.*

On October 13, 2022, the Court *sua sponte* suggested it may reconsider "allowing testimony from Dr. Jean-Pierre Dubé." D.E. 4417 at 1-2. While the Court declined to do at that

---

[19] For these reasons, Dubé's damages opinions also should be excluded (and should not be considered on summary judgment) for lack of "fit" because they do not have a "valid scientific connection to the pertinent inquiry." *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009); *see also Phillips v. Am. Honda Motor Co.*, 238 F. App'x 537, 540 n.2 (11th Cir. 2007) ("[W]hen an expert's data is not directly relevant to the matter at issue in a case, the expert's testimony does not assist the trier of fact and is therefore inadmissible"). But even the opinions are considered, the cannot meet plaintiffs' burden here.

time, GM respectfully renews the issue for the Court's consideration, especially in light of the December 1, 2023 amendments to Rule 702. Those amendments "clarif[ied] and emphasize[d] that expert testimony may not be admitted unless the *proponent demonstrates* to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment (emphasis added). As another MDL court has recently done, this Court should consider whether these clarifying amendments merit a second look (including new briefing) to determine not whether Defendant's *challenges* are sufficient to warrant exclusion, but instead whether *plaintiffs* met *their burden* to "demonstrate[] to the court that it is more likely than not" that Dubé's opinions satisfy the requirements of Rule 702. *Id.*; *see In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2024 WL 1914881, at *3 (D.N.J. Apr. 30, 2024) (declining to "*preclude* any retrospective challenges to [court's] previous *Daubert* holdings in light of recent changes to Federal Rule of Evidence 702, the emergence of new relevant science, and the language of [court's] previous *Daubert* Opinion") (internal quotation marks omitted); *West v. Home Depot U.S.A., Inc.*, 2024 WL 1834112, at *4 (N.D. Ill. Apr. 26, 2024) (rejecting "the historic safe harbor" relied on by plaintiff to oppose *Daubert* motion because the cited authorities reflected the "precise type of weight vs. admissibility distinction the recent amendment Rule 702 aimed to correct"), *modified on denial of reconsideration*, 2024 WL 2845988 (N.D. Ill. June 5, 2024).[20]

### III. The Court Should Grant Summary Judgment On The Louisiana Plaintiff's Claim For Additional Reasons And Should Decertify The Louisiana Class.

#### A. Plaintiff's Claim Is Time-Barred.

Plaintiff Sibley's breach of warranty claim is subject to a one-year statute of limitations (or "prescriptive period") that runs from the time of the sale, or at the latest "the date of the discovery of the defect by the buyer." *Austin v. N. Am. Forest Prod.*, 656 F.2d 1076, 1084 (5th Cir. 1981)

---

[20] The Court should similarly consider a second look at its order denying GM's motion to exclude the defect opinions of plaintiffs' technical experts, which held that GM's arguments went to "weight," not admissibility. *In re Takata Airbag Prod. Liab. Litig.*, 2022 WL 18956175, at *3-5, 7-9 (S.D. Fla. Dec. 28, 2022). Without these opinions, plaintiffs lack admissible evidence of any defect in their vehicles, because the unrebutted evidence is that the GMT900 inflators are not susceptible to an unreasonable risk of rupture for, at a minimum, their 15-year service life, and up to more than 30 years. SUF ¶¶ 21-23.

(applying Louisiana law).[21] The limitations period begins when the buyer knew or **should have known** of the defect, and a "plaintiff will be deemed to know that which he could have learned through reasonable diligence." *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 395-96 (E.D. La. 1997); *see also Maison Blanche, Inc. v. La. Dep't of Lab.*, 604 So. 2d 670, 674 (La. Ct. App. 1992) (same). The undisputed facts show Sibley knew or should have known through the exercise of reasonable diligence that his 2007 GMC Sierra had an allegedly defective Takata airbag well over a year before filing his claims in March 2018.

*First*, by early June 2016, the mainstream media extensively covered GM's preliminary recalls with eye catching headlines like: "GM Recalls 1.9 Million Trucks and SUVs for Defective Takata Airbags" and "Car Makers Recall More Vehicles With Faulty Takata Airbags: Ford, GM recalling around 1.9 million vehicles each with defective Takata air bags." Supp. SUF ¶ 52. By the fall of 2016, NHTSA had created a standalone website related to the recalls, which identified Sibley's 2007 GMC Sierra 1500 as one of the affected vehicles. *Id.* ¶ 54.

*Second*, in July 2016, GM sent a letter to the registered owners of vehicles subject to the May 2016 preliminary recalls. *See* SUF ¶¶ 95, 106, 118; Supp. SUF ¶¶ 65-66. GM sent a letter to Sibley's home address stating that Takata had "decided that a defect which relates to motor vehicle safety exists in certain GM 2007 model year GMC Sierra LD vehicles" based on Takata's "decision that front passenger airbag inflators it supplied to GM are defective." Supp. SUF ¶ 51.

*Third*, also in July 2016, GM's preliminary recalls were linked to the VINs for affected vehicles, including Sibley's. *Id.* ¶ 53 & Ex. 208 (NHTSA Recall No. 16V381 reported on Carfax for Sibley's VIN); *see also* Supp. SUF ¶¶ 68, 70 & Ex. 42 (NHTSA Recall No. 16V381 on Rivers' Carfax Report). At least one other named plaintiff in this case testified that he learned of the alleged defect in his vehicle's airbag from an alert from Carfax.[22] Supp. SUF ¶ 67.

*Fourth*, the undisputed facts show many other avenues that Sibley could have learned about the alleged defect more than a year before he filed suit in March 2018. *See* Supp. SUF ¶ 69 (Holmes

---

[21] *See Lanzas v. Am. Tobacco Co.*, 46 F. App'x 732, at *2 (5th Cir. 2002) ("[T]he prescriptive period applicable to Lanzas's redhibition and breach of warranty claims ran for one year from the date Lanzas discovered the defect."); *Gaspard v. Camping World RV Sales, L.L.C.*, 304 So. 3d 1050, 1054 (La. Ct. App. 2020) (redhibitory claims subject to one-year prescriptive period).

[22] GM had also sent that plaintiff the same July 2016 letter that other plaintiffs admitted to receiving. *See* D.E. 4239-41 (July 2016 letter to dismissed plaintiff Ramand Giddings).

testifying he learned of defect from family members in "latter part of 2016, first part of 2017");
SUF ¶ 201 (Hughes-Cox testifying she learned of defect from her father in late February 2017).

In short, minimal diligence would have alerted Sibley to a potential claim based on the
presence of a Takata airbag by early 2017 at the latest. But Sibley did not file his lawsuit until
March 2018. Because he provided no evidence that any alleged ignorance was not "attributable to
his own willfulness or neglect" and that he "exercised reasonable diligence to discovery the alleged
defect," his claims should be dismissed as time barred. *See In re Ford Motor Co. Bronco II Prod.
Liab. Litig.*, 982 F. Supp. at 395; *see also id.* at 396 (prescriptive period started when alleged defect
"had been sufficiently publicized that any amount of diligence would have alerted plaintiffs to the
issue"); *In re Ford Motor Co. Vehicle Paint Litig.*, 1996 WL 426548, at *5 (E.D. La. July 30,
1996) (dismissing plaintiffs who alleged "fraudulent concealment to prevent the running of
prescription" because none alleged "with particularity that he was unable to discover the paint peel
defect until on or after December 29, 1992, despite his exercise of due diligence").

*Finally*, GM recognizes that in its class certification order, the Court accepted plaintiffs'
contention that GM "cites no evidence that any class members were aware of theirs claims more
than one year before this action was commenced." *Compare In re Takata Airbag Prod. Liab. Litig.*,
2023 WL 6274837, at *6 *with* D.E. 4647 (Pls. Class Certification Reply) at 29. But GM
respectfully submits that—contrary to what plaintiffs argued—the record is clear that GM
submitted substantial evidence (which it again cites and submits here) of actual and constructive
notice to class members. This including the following evidence showing many named plaintiffs
actually learned about the alleged defect more than one year before this action was commenced:

- Many current or former named plaintiffs received GM's July 2016 recall letter and thus
had actual knowledge of the alleged defect more than one year before this action was
commenced.[23] For example, GM challenged the Alabama plaintiffs' ADTPA claim because it was
barred by the one-year limitations period, supported in part by GM's July 2016 recall letter stating

---

[23]   *See* D.E. 4632-1(identifying 11 named plaintiffs who were sent July 2016 recall letter); D.E.
4238-1 (same); Ex. 68, Paleno Dep. Ex. 3 (plaintiff-produced July 2016 letter); Ex. 74, Riojas Dep.
Ex. 4 (plaintiff-produced July 2016 letter); Ex. 78, Whitaker Dep. Tr. at 124:4-126:10; Ex. 79,
Whitaker Dep. Ex. 4 (plaintiff-produced July 2016 letter); Ex. 130, D. Cox Dep. Tr. at 50:4-20;
Ex. 131, A. Hughes-Cox Dep. Tr. at 79:2-19. GM highlighted this same evidence in its April 2022
opposition to plaintiffs' initial motion for class certification. *See* D.E. 4238 at 10-11; D.E. 4238-
1; D.E. 4239-35, -36, -37, -41, -44, -46, -50 (July 2016 letters sent to plaintiffs).

that Takata had determined their airbag was defective. D.E.4182 at 56.  Mrs. Rivers testified that she first learned of the alleged defect when she received that letter.[24]

- The alleged defect was publicly disclosed through various avenues—websites, newspaper articles, and word-of-mouth—from May 2016 to February 2017.[25] The breadth of publicly available information is why plaintiffs limited membership in the now-certified Louisiana class (D.E. 4689 at 27-28) to those who owned the vehicle on the "operative" recall date.[26] *See* D.E. 4316. According to plaintiffs, for Sibley, the "operative" recall date is May 27, 2016, because that is when GM issued the preliminary recall for his vehicle (NHTSA Recall No. 16V381). At the latest, once the recall happened, any consumers who purchased would have had actual (or at least constructive) knowledge of the defect and, therefore, would not be members of the class.[27]

### B.    New GM Was Not The Manufacturer Or Seller Of Plaintiff's Old GM Vehicle.

Summary judgment should be granted against Sibley's claim because New GM was not the "seller" of his 2007 GMC Sierra, which was manufactured and sold by Old GM. Supp. SUF ¶ 46; SUF ¶¶ 2-3. Louisiana only creates an action by a "buyer" against a "seller." La. Civ. Code Ann. Art. 2520; La. Civ. Code Ann. Art. 2524. New GM did not exist when the vehicle was manufactured. The *Ignition-Switch* MDL court's ruling in a Louisiana-plaintiff bellwether case is on all fours. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 874778, at *1 (S.D.N.Y.

---

[24]  *See* Ex. 43, M. Rivers Dep. Tr. at 48:15-24; Ex. 47, RIVERS_000025. Plaintiffs did not respond to this statute of limitations argument and instead conceded that summary judgment was appropriate on this claim without explanation. D.E. 4248 at 3 n.1. The Court granted summary judgment in GM's favor in July 2022. *See* D.E. 4346.

[25]  *See* D.E. 4632 at 11-13; D.E. 4238. at 10-12 (same); Ex. 132, 1/19/2017 NHTSA Website (publicly identifying class vehicles as containing Takata airbags); D.E. 4239-20 (June 2016 media articles about preliminary recalls); D.E. 4239-23 (media articles re December 2016 announcement of NHTSA coordinated remedy order that disclosed vehicles with Takata airbags); *see also* D.E. 4632 at 11-13 (discussing publicly available information about alleged defect in class vehicles from May 2016 to February 2017); D.E. 4632-1(identifying 11 named plaintiffs who were sent July 2016 recall letter).

[26]  Plaintiffs' damages rebuttal expert (Dr. Lamb) testified that the relevant recall dates for Dube's model are GM's February 2021 recalls. D.E. 4182 at 19-20. But plaintiffs have argued the relevant recall dates are the dates of the first preliminary recalls, which is mid-2016 for Sibley's vehicle.

[27] *See* Ex. 39, Lamb Dep. Tr. at 99:4-14 (testifying there is only "one claim" for damages per vehicle and the person must "buy the vehicle prior to the recall date" and "must not have sold that class vehicle prior to the relevant recall date").

Mar. 3, 2016). There, as here, the Louisiana plaintiff purchased a used model year 2007 vehicle from a GM-authorized dealership in 2013 and asserted a claim for redhibition related to the ignition switch defect in the vehicle. *Id.* at *1, 6. The court nevertheless granted summary judgment on the redhibition claim for two reasons. First, the claim was precluded under the Bankruptcy Sale Order because it was not an assumed liability and was not based on any independent post-Closing New GM conduct. Second, plaintiff could not establish she was "in a buyer-seller relationship with New GM" as "New GM neither manufactured nor sold the car to [plaintiff]." *Id.* at *6. The same is true here.[28] The Court should grant summary judgment dismissing this claim for this additional reason.

### C.    The Court Should Decertify The Louisiana Class.

The Court should decertify the Louisiana class under Rule 23(c)(1)(C), which permits decertification at any point "before final judgment." Fed. R. Civ. P. 23(c)(1)(C). As this Court has recognized, it "retains the ability, and perhaps even a duty, to alter or amend a certification decision." *Cardenas v. Toyota Motor Corp.*, 2022 WL 19521722, at *2 (S.D. Fla. Dec. 7, 2022) (Moreno, J.) (quoting *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001)) *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013) ("[C]ertifications are not frozen once made."). Decertification is warranted here.

*First*, the record shows many—if not a supermajority—of absent class members will face significant statute of limitations challenges. *See* D.E. 4792, 5/29/2024 Hr'g Tr. at 15:4-11 (the Court noting it was "uncomfortable" certifying classes "with time barred claims"). Nearly 75% of the class vehicles in high humidity states like Louisiana were recalled in May 2016 or earlier. *See* Ex. 8, GMT900 Vehicle Population Data Submitted To NHTSA (native). Because they did not file a claim before Sibley did in March 2018, individual class members can only overcome the time bar with individualized proof that their ignorance was induced by GM or not "attributable to his own willfulness or neglect," which requires evidence "plaintiffs exercised reasonable diligence to

---

[28] Unlike here, the Louisiana *Ignition Switch* plaintiffs also alleged personal injuries. While the court granted summary judgment on most of their claims (including the redhibition claim), plaintiffs proceeded to trial on two claims: (1) a Louisiana Products Liability Act claim based on New GM's assumption of liabilities for personal injuries in Old GM vehicles in the Sale Order, and (2) a common law fraudulent misrepresentation theory based on New GM's alleged independent, post-Sale misrepresentations about the plaintiff's vehicle. *In re Ignition Switch*, 2016 WL 874778, at *5, 7. Sibley does not plead either of these claims, nor could he since neither he (nor any other plaintiff) has asserted personal injury claims against New GM in this MDL, nor is his single claim premised on GM's independent, post-Closing conduct.

discover the alleged defect." *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. at 395; *see also Cardenas*, 2022 WL 19521722, at *3-4 (decertifying 85% of class based on "need for individualized evidence to determine whether each class member exercised reasonable diligence" to overcome statute of limitations defense). As one Louisiana state appellate court explained in reversing certification of a redhibitory defect class in an automotive defect case, "[e]ach potential plaintiff may have different issues regarding prescription" and there is "no evidence, or reason to believe under the facts in this case, that the issue of prescription can be resolved on behalf of all plaintiffs by inquiry as to the class representative only." *State v. Ford Motor Co.*, 965 So. 2d 438, 444 (La. App. Ct. 2007) (reversing certification of implied warranty class under Louisiana class action law where alleged defect was subject of lawsuits and substantial media coverage), *writ denied*, 965 So. 2d 405 (La. 2007).

 *Second*, the widespread publicity presents additional individualized merits issues for absent class members, many of whom would seek damages for vehicles purchased up until January 1, 2019—*i.e.*, *nine months after* this lawsuit was filed and *more than two years after the recall*.[29] "[A]n essential requirement to maintain a suit in redhibition is that the complained of defect is hidden." *Ford*, 965 So. 2d at 444. Many class members purchased their vehicles after extensive media attention and after they had actual (or at a minimum constructive) knowledge of a potential defect.[30] Those class members would not have valid redhibition claims because the defect was not hidden. Thus, Louisiana state courts have held it is inappropriate to certify a class (like this one) that includes individuals who purchased vehicles during a period when there was "widespread

---

[29] For example, GM previously explained how dismissed plaintiff Kenneth Morgan sued GM in March 2018 when one of his two class vehicles (a 2012 Chevrolet Tahoe) had not been recalled and would not be recalled until January 2019. Mr. Morgan sold his Tahoe in August 2018, forfeiting class membership and any damages claim for the vehicle. The vehicle was sold yet again in October 2018. *See* D.E. 4632 at 14. If that person were a Louisiana class member, GM would challenge the merits of their redhibition claim on the grounds that the alleged defect was reasonably discoverable (*i.e.* not hidden) at the time of their October 2018 purchase.

[30] At least one prior plaintiff (Mr. Cox) purchased his vehicle despite being informed about the alleged defect by his wife months earlier. *See* SUF ¶ 201. Moreover, at least 11 dismissed plaintiffs sued GM before their vehicles were even recalled, some of whom resold their vehicles before the class period was closed at a time when the buyer could have learned about the alleged defect from a multitude of sources. *See* D.E. 4632-6, App'x F to GM Class Cert Opp.

dissemination of information" about the defect that raises questions about the "knowledge of the alleged defect possessed by each member of the putative class." *Id.*

## IV.   The Court Should Grant Summary Judgment On The Alabama Plaintiffs' Claim For Additional Reasons.

### A.   The Manifest Defect Rule Bars Plaintiffs' Claim.

The Alabama plaintiffs' only claim is for common law fraud, which fails because "Alabama has long required a manifest, present injury before a plaintiff may recover in tort." *S. Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 716 (Ala. 2002). The Court earlier declined to dismiss, holding that Alabama "would not require an explosion to demonstrate manifestation of a defect." *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1120 (S.D. Fla. 2019). But the summary judgment record confirms that the Rivers' claim fails as a matter of law under Alabama's manifest defect rule.

*First*, this Court's decision was "limited to the motion to dismiss stage." *Siqueiros v. Gen. Motors LLC*, 2021 WL 2115400, at *21 (N.D. Cal. May 25, 2021). The Court's reliance on plaintiffs' allegations is no longer applicable. Any speculative risk of rupture that may have existed has evaporated with the free recall, which the Alabama plaintiffs received. Supp. SUF ¶ 14.[31]

*Second*, the initial ruling (which cited no Alabama law) is irreconcilable with the black-letter Alabama law, including the Alabama Supreme Court's rulings, which the Court "must follow." *In re Takata*, 2022 WL 17546365, at *2; *see, e.g., S. Bakeries*, 852 So. 2d at 716 (requiring "a manifest, present injury before a plaintiff may recover in tort."); *Hinton ex rel. Hinton v. Monsanto Co.*, 813 So. 2d 827, 829 (Ala. 2001) (same); *Ford Motor Co. v. Rice*, 726 So. 2d at 631 ("[P]laintiffs may not recover based solely upon the risk that their vehicles could malfunction in the future, given the lack of any claims indicating manifest injury."); *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) (same).[32]

---

[31] Plaintiffs' allegations that the airbags are the functional equivalent of grenades are not only irrelevant, but also have been debunked through discovery. The alleged defect has not manifested in any plaintiff's vehicle nor in a *single proposed class vehicle ever*. SUF ¶¶ 15-18. And far from proving that the risk of rupture was imminent, plaintiffs' experts were unable to say that the defect will manifest within the reasonable service life of any Class Vehicle. *Id.* ¶¶ 19-20. *In re Takata*, 396 F. Supp. 3d at 1123-24.

[32] *See also Williamson v. Indianapolis Life*, 741 So. 2d 1057, 1060-61 (Ala. 1999) (citing *Ford* for the proposition that "the owner of a sport-utility vehicle could not maintain an action alleging fraudulent suppression based solely on the risk that her vehicle might roll over because of an

Critically, Alabama courts apply the manifest defect rule even where the alleged defect might manifest in a catastrophic failure and cause serious injury or death. *See Ford Motor Co. v. Rice*, 726 So. 2d at 627-28 (reversing denial of summary judgment where plaintiffs alleged that their vehicles were defective and susceptible to a heightened rollover risk but "[n]o plaintiff alleged that his or her [vehicle] had actually rolled over and thereby caused personal injuries or property damages"); *Pfizer*, 682 So. 2d at 406-07 (denying recovery where plaintiff's heart valve had not failed even though he alleged the same model valve had failed 295 times, "resulting in 178 deaths"). Thus, Alabama law requires plaintiffs' airbag to rupture to have a cognizable claim.

Despite multiple chances, plaintiffs have been unable to cite a single authority beyond the Court's motion to dismiss opinion that permits an Alabama claim to proceed without defect manifestation that causes actual product failure and actual injury. Instead, they have repeatedly argued these binding Alabama authorities were inapposite and relied on *dicta* in *Ford v. Rice* to suggest that allegations of economic loss damages are sufficient to overcome the manifest defect rule. D.E. 4248 at 39-40. But plaintiffs have yet to cite any authority from an Alabama court—or any court—adopting their reading of that dicta. Multiple federal courts have rejected it and recognized that Alabama's manifest defect rule bars economic loss claims for automotive defects. *See Weidman v. Ford Motor Co.*, 2022 WL 1071289, at *14 (E.D. Mich. Apr. 8, 2022) (denying certification of Alabama class because "[w]hether a proposed class member actually experienced a problem with their master cylinder is a required element for all the claims asserted"), *vacated on other grounds sub. nom. In re Ford Motor Co.*, 86 F.4th 723 (6th Cir. 2023); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 785 F. Supp. 2d 925, 932 (C.D. Cal. 2011) (denying request to pursue a nationwide class under California law because "a number of states, including Alabama…would preclude or would highly likely preclude some or all of the claims asserted by plaintiffs whose products have manifested no defect").

Courts addressing economic loss claims in automotive defect cases routinely identify Alabama as a jurisdiction with a clear manifest defect rule.*See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (citing *Rice* among authorities that "most states would not entertain" the "consumer fraud" theory that "selling products with undisclosed attributes and thus

---

alleged defect" and precedent that it "has consistently held that if the plaintiff has suffered no harm, loss, injury, or damage, then the plaintiff has no claim to be adjudicated").

worth less than represented, is fraudulent" because "[i]f tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly means excess compensation."); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627-28 (8th Cir. 1999) (citing *Pfizer* among authority for courts "requiring allegations of injury or damages in products liability cases" and affirming dismissal where plaintiffs "have not alleged that their ABS brakes have malfunctioned or failed" but that they "suffered economic harm in the form of lost resale value"); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 299 (S.D.N.Y. 2018) (citing *Farsian* in discussing "[s]tates that require manifestation [that] have equated the manifestation of a defect with the malfunctioning or failure to perform of the product"); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 630 (M.D.N.C. 2006) (identifying Alabama among "overwhelming majority of jurisdictions" precluding claims of "class members whose ball joints have not manifested any defects and who merely allege that they have suffered diminished value or loss of resale value of their Durangos"); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 240-41 (Wis. 2004) (citing *Rice* among "representative sample" of the "many federal and state court decisions that have affirmed the dismissal of claims brought under fraud…theories where the allegedly defective product has not actually malfunctioned").

Put simply, Alabama's manifest defect rule is well settled and requires summary judgment in GM's favor. The Alabama Supreme Court made clear that "the remedy that will best promote consumer safety and address the parties' concern for their own safety" is to petition NHTSA to "direct[] the manufacturer to remedy it through a recall." *Rice*, 726 So. 2d at 631. Thus, GM has already provided the Rivers with the exact remedy that the Alabama Supreme Court contemplated for consumers, like them, who claim an unmanifested safety defect in their vehicle. Supp. SUF ¶ 14. Their fraud claim should be dismissed.

### B. Plaintiffs Cannot Satisfy Reliance And Duty To Disclose Elements.

The Alabama plaintiffs' fraud claim separately fails for two more reasons. *First*, GM owed them no duty to disclose under the circumstances of their vehicle purchase. The existence of a duty to disclose is "a question of law to be determined by the trial judge." *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). In connection with an arm's length transaction, like a vehicle purchase, "no obligation to disclose information arises when the information is not requested." *Mason v. Chrysler Corp.*, 653 So. 2d 951, 955 (Ala. 1995). While Alabama permits a fraud claim on a concealment theory, that requires substantial evidence of defendant's knowledge

of an alleged defect, and active and knowing concealment of that knowledge "with an intent to deceive" the purchasers. *McGowan v. Chrysler Corp.,* 631 So. 2d 842, 847 (Ala. 1993). Any intent-to-deceive theory is unsupported and implausible where Takata pled guilty to falsifying test results and admitted to defrauding GM. SUF ¶¶ 44-54. Summary judgment should be granted to GM.

*Second*, Alabama law requires actual reliance on a *defendant's* misrepresentation of a material fact. *See, e.g.*, *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4 (Ala. 2004) ("An essential element of any fraud claim is that the plaintiff must have reasonably relied on the alleged misrepresentation."). But plaintiffs only claimed to rely on a Monroney label from Old GM (not New GM), which in any event simply made the true statement that their car was equipped with various airbags that have functioned as advertised. D.E. 4250 at ¶¶ 59-60. Summary judgment is thus proper. *See Aliant Bank v. Four Star Invs., Inc.*, 244 So. 3d 896, 925 (Ala. 2017) (affirming summary judgment where plaintiff "had no knowledge" of any misrepresentation "and accordingly could not have taken, or refrained from taking, any action in reliance upon those representations").

## V.    The Court Should Grant Summary Judgment On The Georgia Plaintiff's Claims For Additional Reasons.

### A.    Plaintiff Is Judicially Estopped From Pursuing Undisclosed Claims.

The Georgia plaintiff's claims are precluded by "judicial estoppel" because she did not disclose them in her recently confirmed Chapter 13 bankruptcy. *Henderson v. Franklin*, 782 F. App'x 866, 872-73 (11th Cir. 2019). "The equitable doctrine of judicial estoppel precludes a party from 'asserting a claim in a legal proceeding that is inconsistent with a claim made by that party in a previous proceeding.'" *Casanova v. Pre Solutions, Inc.*, 228 F. App'x 837, 840 (11th Cir. 2007). When a plaintiff fails to identify a pending civil claim as an asset in a bankruptcy proceeding, the district court uses a "two-part test" to determine whether a party is judicially estopped from pursuing her claims because he did not disclose them to the bankruptcy court.[33] Under that test, the court asks (1) whether the party took inconsistent positions under oath in separate proceedings, and (2) whether those inconsistent positions were "calculated to make a mockery of the judicial system." *Henderson*, 782 F. App'x at 871. Both parts are satisfied here.

---

[33] "[T]he application of the doctrine of judicial estoppel is governed by state law[]", *Original Appalachian Artworks v. S. Diamond Assocs.*, 44 F.3d 925, 930 (11th Cir. 1995), but Georgia courts apply federal judicial estoppel. *Fulton Cnty. v. Ward-Poag*, 849 S.E.2d 465, 472 (Ga. 2020).

*Lodge took an inconsistent position in the bankruptcy proceeding.* By not disclosing this lawsuit in her June 15, 2022 bankruptcy petition, Lodge took a position inconsistent with pursuing her claim here. *Id.* ("Step one is satisfied when the plaintiff fails to disclose a claim against a third party in a bankruptcy proceeding (regardless of the chapter) and then pursues that claim in court."). But she did disclose a pending garnishment action in response to the question requiring her to disclose whether she was a party to any litigation. Supp. SUF ¶ 36. And she disclaimed interest in claims "against third parties." *Id.* ¶ 38. Lodge "declare[d] under penalty of perjury that the answers are true and correct." *Id.* ¶ 39. Prosecution of her claims here is clearly inconsistent.

*Lodge intended to make a mockery of the judicial system.* To determine whether a plaintiff intended to make a mockery of the judicial system, the Court may consider factors such as the plaintiff's sophistication, whether she corrected the inaccurate disclosures, whether she identified any other lawsuits to which she is a party and any other factors it deems relevant to the inquiry. *Henderson*, 782 F. App'x at 871-72. The facts and circumstances here show that Lodge's nondisclosure of this action in bankruptcy was calculated to undermine the judicial system.

This is not Lodge's first bankruptcy. In December 2010, she filed for bankruptcy and, aware of her disclosure obligations, subsequently amended the disclosure schedules. Supp. SUF ¶¶ 32-33. In her pending bankruptcy, not only did Lodge disclose another lawsuit to which she is a party, but she also amended her disclosure schedules. *Id.* ¶¶ 36, 41-42. Lodge's previous bankruptcy, multiple amendments, and her disclosure of another lawsuit demonstrate she understands that she must disclose claims she might have, submit accurate information to the bankruptcy court, and promptly correct any inaccuracies related to her claims. *See, e.g., Harewood v. Miami-Dade Cnty.*, 2018 WL 1156010, at *5 (S.D. Fla. Mar. 1, 2018), *aff'd*, 780 F. App'x 748 (11th Cir. 2019) (applying judicial estoppel where "Plaintiff also understood the requirement to amend his disclosures—this is evident from Plaintiff's update to the bankruptcy court following initial filing."). Yet, Lodge did not disclose this action in her recent or amended petitions.[34]

In both bankruptcy actions and the instant lawsuit, Lodge has also had the benefit of counsel, further belying any argument that she did not know she had to disclose this lawsuit. Her failure to disclose this action despite representation and a demonstrated understanding of her

---

[34] Lodge's belated amendment of her bankruptcy filing *after* GM moved for summary judgment should not preclude estoppel. *See, e.g., Weakley v. Eagle Logistics*, 894 F.3d 1244, 1246 (11th Cir. 2018); *Vegas v. UPS Ground Freight, Inc.*, 2019 WL 13152026, at *3 (M.D. Fla. May 6, 2019)

disclosure obligations reveals her intent to mislead and warrants the application of judicial estoppel. *Timmons v. Scotch Plywood Co.*, 2019 WL 3468209, at *2 (S.D. Ala. July 31, 2019) (applying judicial estoppel where represented plaintiff had previously been in bankruptcy).

Further, Lodge cannot plausibly claim her non-disclosure was inadvertent because she was aware of her obligations, this action was pending when she filed for bankruptcy, and she swore under penalty of perjury that she had no interests in any other lawsuits. *See Jones v. Savage Servs. Corp.*, 2019 WL 2058715, at *2 (N.D. Ala. May 9, 2019) (barring plaintiff's claims where he failed to disclose a pending EEOC charge and "declared under the penalty of perjury in his petition that he had no pending claims against third parties); *Williams v. Golden Peanut Co., LLC*, 2022 WL 3867557, at *1 (11th Cir. Aug. 30, 2022) (affirming summary judgment where, as here, a represented plaintiff knew that she could have amended her bankruptcy filing and she did not disclose litigation claims). The Court should hold that judicial estoppel bars Lodge's claims.

### B. Plaintiff Cannot Show Reliance Or Duty To Disclose.

Plaintiff Lodge's common law fraud and Georgia Fair Business Practices Act (GFBPA) claims fail for two additional reasons.

*First*, she neither received nor relied upon any representation by GM in purchasing her vehicle. Supp. SUF ¶¶ 21-22. It is well-established under Georgia law that both causes of action require a plaintiff to prove that they "relied upon [a] misrepresentation" made by the defendant. *Raysoni v. Payless Auto Deals, LLC*, 766 S.E.2d 24, 25 (Ga. 2014); *see also Crawford v. Williams*, 375 S.E.2d 223, 224 (Ga. 1989); *Delta Chevrolet, Inc. v. Wells*, 371 S.E.2d 250, 251 (Ga. Ct. App. 1988). Lodge provided no evidence she viewed any alleged misrepresentation by GM or relied on any specific misrepresentation in making her purchasing decision. Summary judgment is thus required for both of her remaining claims. *See Moore v. Lovein Funeral Home, Inc.*, 852 S.E.2d 876, 884 (Ga. Ct. App. 2020) (affirming summary judgment where plaintiff "failed to meet his burden to show that he relied on a misrepresentation by the Defendants"); *Delta Chevrolet*, 371 S.E.2d at 251 (similar).

*Second*, Georgia only imposes a duty to disclose in a confidential or special relationship, and there was no such relationship between GM and Lodge. *See* O.C.G.A. § 23-2-53; *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337 (N.D. Ga. 2015). Lodge bought her vehicle used from a third-party dealer, not GM. Supp. SUF ¶ 20. A remote manufacturer like GM does not owe a duty to disclose to a subsequent purchaser absent evidence that the manufacturer "had direct knowledge"

of the purchase in question. *McCabe*, 160 F. Supp. 3d at 1340-41, 1351 (granting summary judgment on Georgia fraud claim against manufacturer where plaintiff purchased vehicle used from Mercedes-Benz dealership); *see also Brown v. Hyundai Motor Am.*, 2019 WL 4126710, at *8 (D.N.J. Aug. 30, 2019) (same); *Moore v. Meek*s, 483 S.E.2d 383, 384 (Ga. Ct. App. 1997) (similar). There is no evidence that GM had "direct knowledge" of Lodge's purchase of a used Chevy Suburban from a GMC dealership. *McCabe*, 160 F. Supp. 3d at 1351. Thus, GM is entitled to summary judgment on her claims for this additional reason.

## CONCLUSION

For these reasons,[35] the Court should grant summary judgment dismissing with prejudice all remaining claims against GM and should also decertify the Louisiana class.

---

[35] To the extent the Court grants summary judgment to any other defendants for reasons not raised herein, the Court should also do so for GM. *See* Fed. R. Civ. P. 56(f)(2); *Club Madonna, Inc. v. City of Miami Beach*, 500 F. Supp. 3d 1304, 1313 n.1 (S.D. Fla. 2020) (Moreno, J.) ("[T]he Court may grant summary judgment *sua sponte* under Federal Rule of Civil Procedure 56(f)"), *aff'd*, 42 F.4th 1231 (11th Cir. 2022); *Lance Toland v. Phoenix Ins. Co.*, 2021 WL 1200263, at *481 (11th Cir. Mar. 30, 2021) (affirming summary judgment without formal notice).

## REQUEST FOR HEARING

GM respectfully submits that the Court would benefit from oral argument on GM's Motion for Summary Judgment and estimates 30 minutes for argument.

Dated: July 12, 2024

Respectfully submitted,

By: /s/ *Nadia Abramson*
Renee D. Smith (*pro hac vice*)
Sam Ikard (*pro hac vice*)
Nadia Abramson (FL Bar No. 121763)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: renee.smith@kirkland.com
sam.ikard@kirkland.com
nadia.abramson@kirkland.com

-and-

R. Allan Pixton (pro hac vice)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 North Wacker Dr., Suite 2700
Chicago, IL  60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
Email: allanpixton@quinnemanuel.com

-and-

By: /s/ *Laurie M. Riley*
Laurie M. Riley, Esq. (FL Bar No. 657751)
Jones Walker LLP
201 South Biscayne Boulevard, Suite 3000
Miami, FL 33131
Telephone: (305) 679-5728
Facsimile: (305) 679-5710
Email: lriley@joneswalker.com

*Attorneys for Defendants General Motors Company, General Motors Holding LLC, and General Motors LLC*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2024, I electronically filed the foregoing Motion using the CM/ECF system, which will serve notification of such filing to the email of all counsel of record in this action.

By: <u>/s/ *Nadia Abramson*</u>