**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| **IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION** | MDL No. 2599 |
| This Document Relates to All Economic Loss Class Actions and: | Master File No. 15-MD-2599-FAM |
| | S.D. Fla. Case No. 1:14-cv-24009-FAM |
| STEPHANIE PUHALLA, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| MERCEDES-BENZ USA, LLC, | |
| Defendant. | |

**DEFENDANT MERCEDES-BENZ USA, LLC'S MOTION FOR**
**SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Raoul G. Cantero
Jaime A. Bianchi
WHITE & CASE LLP
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

Troy M. Yoshino
Eric J. Knapp
WINSTON & STRAWN LLP
101 California Street, Suite 3500
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Attorneys for Defendant*
*Mercedes-Benz USA, LLC*

## **TABLE OF CONTENTS**

**Page**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ iii

Introduction ........................................................................................................................ 1

Relevant Procedural Background ....................................................................................... 1

Legal Standard ................................................................................................................... 5

Argument ............................................................................................................................ 5

    I.    Plaintiffs' claims fail for lack of knowledge, damages, and standing. .............................. 5

       A.  MBUSA did not know of the alleged defect when plaintiffs purchased their vehicles. .. 5

       B.  Plaintiffs have no damages to recover under their benefit-of-the-bargain theory ........... 7

       C.  Plaintiffs' claims are not justiciable. .................................................................... 9

    II.    Radican's personal and *Zantac* claims fail. ................................................................. 10

       A.  Radican cannot maintain her Rhode Island claims. ................................................ 10

          1.    Radican lacks standing to pursue any claim because she is deceased. .................... 10

          2.    All Radican's claims fail because she lacks cognizable damages. .......................... 11

          3.    Radican's individual fraudulent concealment claim fails. .................................... 12

          4.    Radican's Rhode Island UDTPA claim fails. ....................................................... 13

          5.    Radican's individual implied-warranty claim fails. .............................................. 14

       B.  Radican's *Zantac* claims on behalf of proposed Connecticut, Hawaii, Maine, Nebraska, Oklahoma, Vermont, and West Virginia classes fail. ............................................. 15

          1.    Radican has no claims under the Connecticut UTPA. ........................................... 16

          2.    Radican has no claims under the Hawaii UDTPA. ................................................ 17

          3.    Radican has no claims under the Maine UTPA. .................................................... 17

          4.    Radican has no claims under the Nebraska CPA. .................................................. 18

          5.    Radican has no claims under the Oklahoma CPA. ................................................ 19

          6.    Radican has no claims under the Vermont CFA. ................................................... 20

          7.    Radican has no claims under the West Virginia CCPA. ........................................ 21

    III.    Bridges' personal and *Zantac* claims fail. ................................................................. 21

       A.  Bridges' North Carolina claims fail because she cannot prove damages, reliance, or a duty to disclose. .................................................................................................. 22

       B.  Bridges' *Zantac* claims on behalf of proposed Colorado, Utah, Virginia, West Virginia, and Wisconsin classes fail. ........................................................................... 24

          1.    Bridges cannot maintain a claim for Colorado fraudulent concealment. .................. 24

2.    Bridges cannot maintain a claim for Utah fraudulent concealment..........................25

3.    Bridges cannot maintain a claim for Virginia fraudulent concealment. ..................26

4.    Bridges cannot maintain a claim for West Virginia fraudulent concealment...........27

5.    Bridges cannot maintain a claim for Wisconsin fraudulent concealment.................28

IV.    The remaining named plaintiffs' claims fail.........................................................29

A.  The Phillipses' Oregon claims fail. ................................................................29

B.  Knapp's Iowa claims fail................................................................................32

C.  Goldberg's Washington claims fail.................................................................33

D.  Taylor's Mississippi claims fail. ....................................................................35

E.  Calhoun's Georgia claims fail. .......................................................................38

Conclusion ....................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2016 Primary Election*,
   836 F.3d 584 (6th Cir. 2016) .......................................................30

*Ace Am. Ins. v. Grand Banks Yachts, Ltd.*,
   587 F. Supp. 2d 697 (D. Md. 2008) ..............................................15

*Airborne, Inc. v. Denver Air Ctr., Inc.*,
   832 P.2d 1086 (Colo. App. 1992) ...........................................24, 25

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................15, 24

*Anderson v. Hannaford Bros.*,
   659 F.3d 151 (1st Cir. 2011) ........................................................18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................5

*Armed Forces Ins. Exch. v. Harrison*,
   70 P.3d 35 (Utah 2003) .................................................................25

*In re Asbestos Prods. Liab. Litig.*,
   311 F.R.D. 152 (E.D. Pa. 2015)...................................................11

*Ault v. Dubois*,
   739 P.2d 1117 (Utah Ct. App. 1987) ..........................................25

*Averett v. Shircliff*,
   237 S.E.2d 92 (Va. 1977)..............................................................26

*B&B Asphalt Co. v. T.S. McShane Co.*,
   242 N.W.2d 279 (Iowa 1976) ...................................................6, 33

*Barfield v. Hall Realty, Inc.*,
   232 P.3d 286 (Colo. App. 2010) ..................................................25

*Bd. of Cnty. Comm'rs v. Slovek*,
   723 P.2d 1309 (Colo. 1986)..........................................................24

*Beaty v. Ford Motor Co.*,
   854 F. App'x 845 (9th Cir. 2021) ..................................................7

*Bell v. First Columbus Nat'l Bank*,
    493 So. 2d 964 (Miss. 1986) ................................................................38

*Bennett v. Skyline Corp.*,
    52 F. Supp. 3d 796 (N.D.W. Va. 2014) ...............................................21

*Blodgett v. State Farm Mut. Auto. Ins.*,
    646 N.W.2d 854 (Wis. Ct. App. 2002) ................................................28

*Bourdon's, Inc. v. Ecin Indus., Inc.*,
    704 A.2d 747 (R.I. 1997) .....................................................................13

*Bowens v. Allied Warehousing Servs., Inc.*,
    729 S.E.2d 845 (W. Va. 2012) .............................................................27

*Brennen v. Aston*,
    84 P.3d 99 (Okla. 2003) ......................................................................19

*Bronowiski v. Bridges*,
    44 A.3d 116 (R.I. 2012) .......................................................................11

*Brooks v. City of Huntington*,
    768 S.E.2d 97 (W. Va. 2014) ..........................................................21, 27

*Brown v. La.-Pac. Corp.*,
    820 F.3d 339 (8th Cir. 2016) ...............................................................33

*Brown v. McKee*,
    242 So. 3d 121 (Miss. 2018) ...............................................................38

*Buck v. The Rsrv.*,
    947 N.W.2d 225 (Iowa Ct. App. 2020) ..................................................7

*Bumpers v. Cmty. Bank of N. Va.*,
    747 S.E.2d 220 (N.C. 2013) ................................................................23

*Cadco, Ltd. v. Doctor's Assocs., Inc.*,
    204 A.3d 737 (Conn. App. 2019) ..........................................................6

*Canal Ins. v. Tullis*,
    515 S.E2d 649, 650 (Ga. App. 1999) ..................................................39

*Carney v. Kardinal Land*,
    813 A.2d 50 (R.I. 2003) .......................................................................14

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2012) ................................................................16

*Cavanaugh v. City of Omaha*,
   580 N.W.2d 541 (Neb. 1998) ................................................................. 19

*Celotex Corp. v. Cartrett*,
   477 U.S. 317 (1986) ........................................................................... 5

*Chapman v. Priceline Grp., Inc.*,
   2017 WL 4366716 (D. Conn. Sept. 30, 2017) ............................................ 16

*Chlopek v. Schmall*,
   396 N.W.2d 103 (Neb. 1986) ................................................................. 18

*City of McGregor v. Janett*,
   546 N.W.2d 616 (Iowa 1996) ................................................................. 33

*Cleveland Air Serv., Inc. v. Pratt & Whitney Can.*,
   2016 WL 4179987 (N.D. Miss. Aug. 5, 2016) ........................................... 36

*Club Madonna, Inc. v. City of Miami Beach*,
   500 F. Supp. 3d 1304 (S.D. Fla. 2020) (Moreno, J.), *aff'd*, 42 F.4th 1231 (11th
   Cir. 2022) ...................................................................................... 40

*Coccoli v. Town of Scituate Town Council*,
   184 A.3d 1113 (R.I. 2018) ................................................................... 13

*Cohen v. Subaru of Am., Inc.*,
   2022 WL 721307 (D.N.J. Mar. 10, 2022) ................................................. 14

*Cohn v. Knowledge Connections, Inc.*,
   585 S.E.2d 578 (Va. 2003) ................................................................... 27

*Colomar v. Mercy Hosp., Inc.*,
   2007 WL 2083562 (S.D. Fla. July 20, 2007) ............................................ 16

*Corder v. Ford Motor Co.*,
   283 F.R.D. 337 (W.D. Ky. 2012) ........................................................... 16

*Cuene v. Hillard*,
   754 N.W.2d 509 (Wis. Ct. App. 2008) ................................................... 29

*Cushman v. Kirby*,
   536 A.2d 550 (Vt. 1987) ..................................................................... 20

*Dickens v. Sahley Realty Co.*,
   756 S.E.2d 484 (W. Va. 2014) ........................................................... 6, 7

*Doe v. Baker*,
   857 S.E.2d 573 (Va. 2021) ............................................................... 6, 27

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*,
   2019 WL 1418292 (W.D. Mo. Mar. 21, 2019)........................................................................29

*Drake v. Allergan, Inc.*,
   63 F. Supp. 3d 382 (D. Vt. 2014)....................................................................................7, 20

*Ebrahimi v. E.F. Hutton & Co.*,
   794 P.2d 1015 (Colo. App. 1989) ..........................................................................................6

*Elcon Const., Inc. v. E. Wash. Univ.*,
   273 P.3d 965 (Wash. 2012)...................................................................................................6

*Ellis v. King*,
   400 S.E.2d 235 (W. Va. 1990)............................................................................................28

*Estes v. Lanx, Inc.*,
   2015 WL 9462964 (N.D. Miss. Dec. 23, 2015) ..................................................................36

*Faulkingham v. Seacoast Subaru, Inc.*,
   619 A.2d 987 (Me. 1993)....................................................................................................17

*Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*,
   523 So. 2d 324 (Miss. 1988)..............................................................................................36

*Forbes v. Gen. Motors Co.*,
   993 So. 2d 822 (Miss. 2008)..............................................................................................36

*Forbis v. Neal*,
   649 S.E.2d 382 (N.C. 2007)...............................................................................................23

*Ford Motor Co. v. Fairley*,
   398 So. 2d 216 (Miss. 1981)..............................................................................................36

*In re Ford Motor Co. Vehicle Paint Litig.*,
   182 F.R.D. 214 (E.D. La. 1998).........................................................................................29

*Fraiser v. Stanley Black & Decker, Inc.*,
   109 F. Supp. 3d 498 (D. Conn. 2015) ................................................................................16

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
   991 F.3d 370 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 757 (2022) ..........................................11

*G.G. v. Valve Corp.*,
   579 F. Supp. 3d 1224 (W.D. Wash. 2022)...........................................................................35

*In re Gen. Motors LLC Ignition Switch Litig.*,
   407 F. Supp. 3d 212 (S.D.N.Y 2019)....................................................................................8

*Giraud v. Quincy Farm & Chem.*,
   6 P.3d 104 (Wash. App. 2000)..........................................................................34

*In re GM Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. 2016)............................................................19, 20

*Gold Standard, Inc. v. Getty Oil Co.*,
   915 P.2d 1060 (Utah 1996)..........................................................................26

*Guilbeault v. R.J. Reynolds Tobacco Co.*,
   84 F. Supp. 2d 263 (D.R.I. 2000) .............................................................12, 13

*Halpert v. Rosenthal*,
   267 A.2d 730 (R.I. 1970) ..........................................................................6, 12

*Hardin v. KCS Int'l, Inc.*,
   682 S.E.2d 726 (N.C. Ct. App. 2009) ..........................................................24

*Heater v. Gen. Motors, LLC*,
   568 F. Supp. 3d 626 (N.D.W. Va. 2021) ......................................................21

*Heejoon Chung v. U.S. Bank, N.A.*,
   250 F. Supp. 3d 658 (D. Haw. 2017) ..........................................................17

*Hencle v. Ditech Fin.*,
   2021 WL 1397882 (S.D. Fla. Apr. 13, 2021) ............................................11, 30

*Henderson v. Henderson*,
   495 S.E.2d 496 (Va. 1998)..........................................................................27

*Hennig v. Ahearn*,
   601 N.W.2d 14 (Wis. App. 1999)................................................................29

*Houllahan v. Gelineau*,
   296 A.3d 710 (R.I. 2023)............................................................................14

*House v. Mitra QSR KNE LLC*,
   796 F. App'x 783 (4th Cir. 2019) ................................................................11

*Hudson v. Peavey Oil Co.*,
   566 P.2d 175 (Or. 1977) .............................................................................31

*Inniss v. Methot Buick-Opel, Inc.*,
   506 A.2d 212 (Me. 1986)..............................................................................6

*Isbell v. Carnival Corp.*,
   462 F. Supp. 2d 1232 (S.D. Fla. 2006) .........................................................5

*Jarman v. United Indus. Corp.*,
    98 F. Supp. 2d 757 (S.D. Miss. 2000) ..................................................................36

*Jennings v. Farmers Mut. Ins.*,
    687 S.E.2d 574 (W. Va. 2009) ..........................................................................28

*Jimenez v. Houseboats on Lanier, Inc.*,
    899 S.E.2d 334 (Ga. App. 2024) ........................................................................39

*John Thurmond & Assocs., Inc. v. Kennedy*,
    668 S.E.2d 666 (Ga. 2008) ................................................................................39

*Johnson v. Johnson*,
    747 S.E.2d 518 (Ga. App. 2013) ....................................................................6, 39

*In re Kekauoha-Alisa*,
    674 F.3d 1083 (9th Cir. 2012) ..........................................................................17

*Kennedy v. Acura*,
    2002 WL 31331373 (R.I. Super. Ct. Aug. 28, 2002) ...................................13, 14

*Kenney v. Medlin Constr. & Realty Co.*,
    315 S.E.2d 311 (N.C. App. 1984) ......................................................................23

*Knepper v. Brown*,
    195 P.3d 383 (Or. 2008) ....................................................................................31

*Kramer v. Chabot*,
    564 A.2d 292 (Vt. 1989) ....................................................................................20

*Kunkel v. Digirolamo*,
    2017 WL 7053946 (Conn. Super. Ct. Dec. 28, 2017) ......................................16

*Laska v. Steinpreis*,
    231 N.W.2d 196 (Wis. 1975) ............................................................................28

*Lee Cnty. Mental Health Ctr., Inc. v. Lee Cnty. Bd. of Sup'rs*,
    2000 WL 1288873 (Iowa App. Ct. Sept. 13, 2000) ..........................................33

*Lee v. Gen. Motors Corp.*,
    950 F. Supp. 170 (S.D. Miss. 1996) ..................................................................36

*Leibert v. Fin. Factors, Ltd.*,
    788 P.2d 833 (Haw. 1990) ................................................................................17

*Leishman v. Kamas Valley Lumber Co.*,
    427 P.2d 747 (Utah 1967) ..................................................................................25

*Levens v. Campbell*,
  733 So. 2d 753 (Miss. 1999) .................................................................37

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ...............................................................................4

*LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*,
  957 F.3d 943 (9th Cir. 2020) ...............................................10, 11, 30

*Long v. Dell, Inc.*,
  93 A.3d 988 (R.I. 2014) .......................................................................13

*Long v. McAllister*,
  319 N.W.2d 256 (Iowa 1982) .............................................................32

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................11, 30

*Lynas v. Williams*,
  454 S.E.2d 570 (Ga. App. 1995) ........................................................39

*Mabus v. St. James Episcopal Church*,
  13 So. 3d 260 (Miss. 2009) .................................................................37

*Malgeri v. Vitamins Because LLC*,
  2022 WL 16635274 (S.D. Fla. Sept. 30, 2022) ................................10

*Malzewski v. Rapkin*,
  723 N.W.2d 156 (Wis. App. 2006) .......................................................6

*Martell v. Gen. Motors LLC*,
  492 F. Supp. 3d 1131 (D. Or. 2020) ..................................................31

*Martin v. Howard*,
  784 A.2d 291 (R.I. 2001) .....................................................................13

*Martin v. Winfield*,
  455 So. 2d 762 (Miss. 1984) ...........................................................6, 14

*Martino v. Am. Sec. Ins.*,
  2022 WL 9418415 (S.D. Fla. Oct. 14, 2022) ....................................11

*Marx v. Elkader Co-op. Co.*,
  2002 WL 663690 (Iowa Ct. App. Apr. 24, 2002) ........................32, 33

*Masure v. Donnelly*,
  962 F.2d 128 (1st Cir. 1992) ................................................................6

*McCabe v. Daimler AG,*
  160 F. Supp. 3d 1337 (N.D. Ga. 2015) ................................................................39

*McCormick v. City of Portland,*
  82 P.3d 1043 (Or. App. 2004) ...............................................................................31

*McGahey v. Fed. Nat'l Mortg. Ass'n,*
  266 F. Supp. 3d 421 (D. Me. 2017) .......................................................................18

*McKinnon v. Honeywell Int'l, Inc.,*
  977 A.2d 420 (Me. 2009) .......................................................................................18

*Mercury Marine v. Clear River Const. Co.,*
  839 So. 2d 508 (Miss. 2003) ..................................................................................36

*Metrocall of Del., Inc. v. Cont'l Cellular Corp.,*
  437 S.E.2d 189 (Va. 1993) .....................................................................................27

*Miron v. MNI, Inc.,*
  879 N.W.2d 809 (Wis. App. 2016) ..........................................................................6

*Mooneyham v. Progressive Gulf Ins.,*
  910 So. 2d 1223 (Miss. App. 2005) .......................................................................37

*Morabit v. Hoag,*
  80 A.3d 1 (R.I. 2013) .............................................................................................12

*Morasch v. Hood,*
  222 P.3d 1125 (Or. App. 2009) ..............................................................................31

*Morgan v. Green-Save, Inc.,*
  2 So. 3d 648 (Miss. App. 2008) .............................................................................37

*Motley v. Jaguar Land Rover N. Am., LLC,*
  2012 WL 5860477 (Conn. Super. Ct. Nov. 1, 2012) ...............................................6

*Mullins v. Ethicon, Inc.,*
  2017 WL 345865 (S.D.W. Va. Jan. 20, 2017) .......................................................21

*Myers & Chapman, Inc. v. Thomas G. Evans, Inc.,*
  374 S.E.2d 385 (N.C. 1988) ....................................................................................6

*Naparala v. Pella Corp.,*
  153 F. Supp. 3d 884 (D.S.C. 2015) .......................................................................29

*Newstone Dev., LLC v. E. Pac., LLC,*
  140 A.3d 100 (R.I. 2016) ..............................................................................11, 12

*Norton v. Wilkins & Co. Realty, Inc.*,
  2022 WL 3050673 (W.D. Va. Aug. 2, 2022) ........................................................................27

*Parker's Classic Auto Works, Ltd. v. Nationwide Mut. Ins.*,
  215 A.3d 1084 (Vt. 2019) ....................................................................................................20

*Paulk v. Thomasville Ford Lincoln Mercury*,
  732 S.E.2d 297 (Ga. App. 2012) ............................................................................................7

*Pearson v. Philip Morris, Inc.*,
  361 P.3d 3 (Or. 2015) ................................................................................................... *passim*

*Phillips v. Chesson*,
  58 S.E.2d 343 (N.C. 1950) ....................................................................................................23

*Pitts v. Am. Sec. Ins.*,
  550 S.E.2d 179 (N.C. Ct. App. 2001) ...................................................................................23

*Quintanilla v. Lexington Ins.*,
  2023 WL 11799707 (S.D. Fla. Apr. 24, 2023) ...............................................................30, 31

*Rafferzeder v. Zellner*,
  613 S.E.2d 229 (Ga. App. 2005) ..........................................................................................39

*Rakes v. Life Invs. Ins.*,
  622 F. Supp. 2d 755 (N.D. Iowa 2008) .................................................................................27

*Rathgeber v. James Hemenway, Inc.*,
  335 Or. 404 (Or. 2003) ...........................................................................................................7

*Rawson v. Conover*,
  20 P.3d 876 (Utah 2001) .........................................................................................................6

*RD&J Props. v. Lauralea-Dilton Enters., LLC*,
  600 S.E.2d 492 (N.C. App. 2004) ...........................................................................................6

*Reinbrecht v. Walgreen Co.*,
  742 N.W.2d 243 (Neb. App. 2007) ........................................................................................7

*Richmond Metro Auth. v. McDevitt St. Bovis, Inc.*,
  507 S.E.2d 344 (Va. 1998) ..............................................................................................26, 27

*Ridley v. Wendel*,
  795 S.E.2d 807 (N.C. App. 2016) .........................................................................................22

*Roberts v. C.R. Eng., Inc.*,
  318 F.R.D. 457 (D. Utah 2017) .............................................................................................26

*Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*,
   420 P.3d 223 (Colo. 2018)..............................................................................25

*State ex rel. Rosenblum v. Johnson & Johnson*,
   362 P.3d 1197 (Or. App. 2015)..........................................................................7

*Ryan v. Roman Cath. Bishop of Providence*,
   941 A.2d 174 (R.I. 2008)..................................................................................14

*Sales, Inc. v. Cent. Puget Sound Reg'l Transit Auth.*,
   2011 WL 13206153 (Jan. 21, 2011) .................................................................34

*Sanford v. Nat'l Ass'n. for the Self-Employed, Inc.*,
   264 F.R.D 11 (D. Me. 2010)...............................................................................18

*Sharp v. FCA US LLC*,
   637 F. Supp. 3d 454 (E.D. Mich. 2022).............................................................9

*Shaver v. N.C. Monroe Const. Co.*,
   306 S.E.2d 519 (N.C. App 1983).......................................................................22

*Shelter Ins. v. Ford Motor Co.*,
   2006 WL 318821 (N.D. Miss. Feb. 9, 2006) ...................................................36

*Sierra v. City of Hallandale Beach, Fla.*,
   996 F.3d 1110 (11th Cir. 2021) ........................................................................11

*Speerly v. Gen. Motors*,
   343 F.R.D. 493 (E.D. Mich. 2023) ....................................................................29

*Sprinkle v. N.C. Wildlife Res. Comm'n*,
   600 S.E.2d 473 (N.C. App. 2004).....................................................................23

*State Farm Mut. Auto. Ins. v. Parrish*,
   899 P.2d 285 (Colo. App. 1994) ......................................................................25

*Staudt v. Artifex Ltd.*,
   16 F. Supp. 2d 1023 (E.D. Wis. 1998)..............................................................29

*Stiley v. Block*,
   925 P.2d 194 (Wash. 1996)..............................................................................35

*Sullivan v. Young Bros. & Co.*,
   91 F.3d 242 (Me. 1996) ...................................................................................18

*Taylor v. State Farm Bureau Cas. Co.*,
   954 So. 2d 1045 (Miss. App. 2007) .................................................................37

*Tershakovec v. Ford Motor Co.*,
   546 F. Supp. 3d 1348 (S.D. Fla. 2021) ...............................................................7, 26

*Tershakovec v. Ford Motor Co.*,
   79 F.4th 1299 (11th Cir. 2023) ...........................................................................3, 26

*Thomas v. Glob. Boat Builders & Repairmen Inc.*,
   482 So. 2d 1112 (Miss. 1986) ..................................................................................38

*Thompson v. King Feed & Nutrition Serv.*,
   105 P.3d 378 (Wash. 2005) .......................................................................................34

*Tietsworth v. Harley Davidson*,
   677 N.W.2d 233 (Wis. 2004) ...............................................................................28, 29

*Tokuhisa v. Cutter Mgmt. Co.*,
   223 P.3d 246 (Haw. App. 2009) ................................................................................6

*Tortolano v. Di Filippo*,
   349 A.2d 48 (R.I. 1975) .............................................................................................11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod.
Liab. Litig.*,
   785 F. Supp. 2d 925 (C.D. Cal. 2011) .....................................................................28

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
   534 F. Supp. 3d 1067 (N.D. Cal. 2021) ..............................................................19, 20

*Tri-Tech Corp. of Am. v. Americomp Services, Inc.*,
   646 N.W.2d 822 (Wis. 2002) ...................................................................................28

*In re Trilegiant Corp.*
   11 F. Supp. 3d 82 (D. Conn. 2014) .........................................................................17

*Trinos v. Quality Staffing Servs. Corp.*,
   250 F.R.D. 696 (2008) ..............................................................................................30

*R.I. Laborers' Health & Welfare Fund ex rel. Trs. v. Philip Morris, Inc.*,
   99 F. Supp. 2d 174 (D.R.I. 2000 ..............................................................................13

*Tungate v. MacLean-Stevens Studios, Inc.*,
   714 A.2d 792 (Me. 1998) ..........................................................................................18

*W. Cap. Partners, LLC v. Allegiance Title & Escrow*,
   520 F. Supp. 2d 777 (E.D. Va. 2007) ......................................................................27

*Wachob Leasing Co. v. Gulfport Aviation Partners, LLC*,
   2016 WL 10536040 (S.D. Miss. Nov. 29, 2016) .....................................................38

*Walls v. Am. Tobacco Co.*,
    11 P.3d 626 (Okla. 2000) ................................................................................. 19

*Ward-Richardson v. FCA US LLC*,
    690 F. Supp. 3d 1372 (N.D. Ga. Sept. 6, 2023) ............................................. 10

*Watson Quality Food, Inc. v. Casanova*,
    999 So. 2d 830 (Miss. 2008) ............................................................................. 36

*Webb v. Clark*,
    546 P.2d 1078 (Or. 1976) ............................................................................. 6, 31

*Wiley v. Byrd*,
    408 P.2d 72 (Colo. 1965) .................................................................................. 24

*Williams v. Jet One Jets, Inc.*,
    755 F. Supp. 2d 1281 (N.D. Ga. 2010) .......................................................... 39

*Wilson v. Phillips*,
    495 S.E.2d 904 (Ga. App. 1998) ..................................................................... 40

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
    681 F.3d 1208 (10th Cir. 2012) ......................................................................... 9

*Women's Dev. Corp. v. City of Cent. Falls*,
    764 A.2d 151 (R.I. 2001) .............................................................................. 6, 12

*Yazd v. Woodside Homes Corp.*,
    143 P.3d 283 (Utah 2006) ................................................................................. 26

*Young v. Toyota Motor Sales, U.S.A.*,
    472 P.3d 990 (Wash. 2020) .............................................................................. 35

*Zakikhani v. Hyundai Motor Co.*,
    2022 WL 1740034 (C.D. Cal. Jan. 25, 2022) ................................................ 15

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    2022 WL 16729170 (11th Cir. Nov. 7, 2022) ......................................... *passim*

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) .............................................................. 7

*Zwick v. Simpson*,
    572 P.2d 133 (Colo. 1977) ................................................................................ 24

**Statutes**

28 U.S.C. § 2072(b) ................................................................................................ 16

Conn. Gen. Stat. § 42–110g(b) ..................................................................................16

Conn. Gen. Stat. § 42–110g(f) ..................................................................................17

Connecticut Unfair Trade Practices Act .......................................................................4

Ga. Code § 9–3–33 ..................................................................................................40

Georgia Fair Business Practices Act ..............................................................4, 38, 39

Haw. Rev. Stat. § 480–13(b)(1) ................................................................................17

Haw. Rev. Stat. § 480–24 .........................................................................................17

Hawai'i Unfair and Deceptive Acts or Trade Practices Act ...........................................4

Iowa Consumer Fraud Act .................................................................................4, 32

Magnuson–Moss Warranty Act ..................................................................................14

Maine Unfair Trade Practices Act .........................................................................4, 6

Me. Stat. § 213(1) ...................................................................................................18

Me. Stat. § 752 .......................................................................................................18

Miss. Code. § 15-1-49(1) .........................................................................................37

Miss. Code. § 75-2-725(1)-(2) .................................................................................36

Neb. Rev. Stat. § 59–1612 ......................................................................................19

Neb. Rev. Stat. § 59–1617(1) ..................................................................................19

Neb. Rev. Stat. § 60–1411.03(23) ............................................................................19

Nebraska Consumer Protection Act .............................................................................4

Nebraska Motor Vehicle Industry Regulation Act .......................................................19

North Carolina Unfair and Deceptive Trade Practices Act ................................... *passim*

Okla. Stat. Ann. tit. 15, § 753 ....................................................................................7

Okla. Stat. tit. 15, § 754 ...........................................................................................20

Okla. Stat. tit. 15, § 761.1(A) ...................................................................................19

Oklahoma Consumer Protection Act .............................................................................4

Or. Stat. § 646.638(6) ...................................................................................................32

Oregon Unlawful Trade Practices Act .........................................................................4

R.I. Gen. Laws § 6A-2-316(2) ....................................................................................15

Rhode Island Unfair Trade Practices & Consumer Protection Act ............................4

Rules Enabling Act ......................................................................................................16

Vermont Consumer Fraud Act .....................................................................................4

Wash. Rev. Code § 4.16.080(4) ..................................................................................34

Wash. Rev. Code § 19.86.120 .....................................................................................34

Washington Consumer Protection Act .....................................................................4, 34

W. Va. Code Ann. § 46A-5-108 ..................................................................................21

W. Va. Code § 46A-6-102(7)(m) ..................................................................................7

West Virginia Consumer Credit & Protection Act ......................................................4

**Other Authorities**

15 Am. Jur. 2d *Damages* § 110..................................................................................23

Fed. R. Civ. P. 23 ........................................................................................................16

Fed. R. Civ. P. 56(a) .................................................................................................1, 5

U.S. Const. art. III      1, 11, 30

Defendant Mercedes-Benz USA, LLC ("MBUSA") moves for summary judgment under Federal Rule of Civil Procedure 56(a) on all remaining claims the Second Amended Consolidated Class Action Complaint (D.E. 4026) and Supplement to the Second Amended Consolidated Class Action Complaint (D.E. 4522).

## INTRODUCTION

Despite six years of litigation, plaintiffs still lack evidence on key elements of *all* their claims against MBUSA. Two plaintiffs (Theresa Radican and Jack Phillips) *died* a year or more ago—which MBUSA learned only recently while researching this motion. Plaintiffs' counsel never shared this information with MBUSA or the Court, despite repeatedly arguing, after their deaths, that the Court should appoint Radican and Phillips as class representatives. Those plaintiffs' claims, and Radican's *Zantac* claims under other states' law, fail for lack of standing.

All remaining plaintiffs' claims fail on the merits as well. Plaintiffs lack evidence that MBUSA knew of the alleged defect at the time of their purchases, which dooms their fraud and consumer-protection claims. They also lack cognizable damages. The law in every relevant state recognizes that MBUSA's free and effective recall repair eliminated any "benefit of the bargain" damages—the only damages plaintiffs seek here. And for that and other reasons, plaintiffs also lack Article III standing. Plaintiffs also have at least one (and often more) additional failure of proof for each of the remaining causes of action, including on issues such as reliance, notice, statutes of limitations, and privity. In short, plaintiffs fail to create a genuine issue of material fact on any of their claims, and MBUSA is entitled to summary judgment.

## RELEVANT PROCEDURAL BACKGROUND

Plaintiffs initiated their claims against MBUSA in March 2018 by filing seven separate complaints: four in other courts and three directly in this Court. *See* D.E. 3394 at 4. The Court consolidated plaintiffs' claims, dismissing all but the *Puhalla* complaint. *Id.* at 10. Plaintiffs then filed the Second Amended Consolidated Class Action Complaint, D.E. 4026 (the "Second Amended Complaint"), and the Supplement to the Second Amended Consolidated Class Action Complaint, D.E. 4522, which now together constitute the operative complaint.

1

In March 2022, MBUSA moved for summary judgment on the Second Amended Complaint.  D.E. 4179.  In response, plaintiffs conceded that their unjust enrichment claims, the claims of certain named plaintiffs, and their request for injunctive relief were all subject to dismissal.  D.E. 4249.  At a subsequent hearing, plaintiffs disclaimed any damages beyond benefit-of-the-bargain damages.  D.E. 4482 at 55:2–10.  Additional types of damages—such as out-of-pocket expenses, loss-of-use, or statutory damages—are thus no longer at issue.  *Id.*

In November 2022, the Court granted MBUSA summary judgment on each of plaintiffs' claims brought in Arizona, California, Florida, Illinois, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, Ohio, Pennsylvania, South Carolina, and Texas.  D.E. 4471 at 1–2, 14–15.  The Court found that MBUSA's post-sale recall eliminated benefit-of-the-bargain damages under the laws of these states.[1]  *Id.*  In January 2023, the Court denied plaintiffs' motion for partial reconsideration of its summary judgment order.  D.E. 4538.

In December 2022, MBUSA moved for summary judgment on plaintiffs' remaining claims under Georgia, Iowa, Mississippi, North Carolina, Oregon, Rhode Island, and Washington law.  D.E. 4495.  Before the Court could rule on that motion, in January 2023, plaintiffs filed their Supplement to the Second Amended Complaint, which added common law fraudulent concealment claims under the laws of Alabama, Colorado, Delaware, the District of Columbia, Tennessee, Utah, Virginia, West Virginia, and Wisconsin; and statutory consumer-protection claims under the laws of Connecticut, Hawaii, Maine, Nebraska, New Hampshire, Oklahoma, Vermont, and West Virginia.  D.E. 4522 at ¶¶ 338a, 829a.  No named plaintiff resides or bought vehicles in these new states.  Plaintiffs instead assert claims in these new states based on the standing theory adopted by the two-judge panel in the unpublished *Zantac* opinion.  *Id.*; *see In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 16729170, at *4–*5 (11th Cir. Nov. 7, 2022).  *But see* D.E. 4478 (explaining why the Court should not follow the non-precedential standing

---

[1] The Court's order did not address whether the free and effective recall repair also eliminated benefit-of-the-bargain damages under other states' laws—it addressed only the law of the states for which it granted summary judgment.  D.E. 4471 at 6–13.

analysis of *Zantac*).

In January 2023, MBUSA moved for summary judgment on the new claims.[2]  D.E. 4546. Since MBUSA filed that motion, the Court has focused on class-certification issues, including requesting briefing on the effect of *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299 (11th Cir. 2023). The Court then certified narrowed classes against FCA and GM, and denied all pending summary judgment motions as moot, saying that it would order renewed summary judgment briefing after it decided the remaining class-certification issues.  D.E. 4688; D.E. 4689; D.E. 4690.  In April 2024, the Court requested additional supplemental briefing on plaintiffs' motion for class certification against MBUSA.  D.E. 4764 (citing D.E. 4659, D.E. 4689).  In their supplemental brief, plaintiffs abandoned their *Zantac* claims for fraudulent concealment under Alabama, Delaware, D.C., and Tennessee law, proposed Radican as the sole class representative for *Zantac* claims for statutory consumer protection claims and Bridges as the sole class representative for *Zantac* claims for common-law fraud, and omitted from any proposed classes Radican's Rhode Island fraudulent-concealment and implied-warranty claims, Goldberg's Washington fraudulent-concealment claim, and Calhoun's Georgia claims.  D.E. 4779 at 2; *see also* D.E. 4765 at n.14 (explaining that plaintiffs previously abandoned Alabama, Delaware, D.C., and Tennessee claims against FCA (citing D.E. 4663 at 2)); D.E. 4610 at 24 n.6 (plaintiffs noting they are no longer seeking certification of Georgia claims).  Following oral argument on the supplemental class-certification briefing, the Court ordered MBUSA to file, by July 12, 2024, a new motion for summary judgment collectively addressing all remaining claims.  D.E. 4785; *see also* D.E. 4792, 5/29/2024 Hr'g Tr., at 21:16–24:2, 61:5–9.

MBUSA accordingly moves for summary judgment on plaintiffs' remaining fraudulent-concealment, consumer-protection, and implied-warranty claims under the laws of 18 states, as summarized in the following chart, organized by the corresponding named plaintiff, in the order

---

[2] MBUSA concurrently moved to dismiss the Supplement.  D.E. 4545.  That motion remains pending.  *See* D.E. 4792, 5/29/2024 Hr'g Tr., at 12:20.

addressed in the argument section below:[3]

| Plaintiff | Claims Asserted |
|-----------|-----------------|
| Radican | Rhode Island Unfair Trade Practices & Consumer Protection Act (Count 45) |
|  | Rhode Island Fraudulent Concealment (Count 9)[*] |
|  | Rhode Island Implied Warranty (Count 44)[*] |
|  | Connecticut Unfair Trade Practices Act (Count 45) |
|  | Hawai'i Unfair and Deceptive Acts or Trade Practices Act (Count 45) |
|  | Maine Unfair Trade Practices Act (Count 45) |
|  | Nebraska Consumer Protection Act (Count 45) |
|  | Oklahoma Consumer Protection Act (Count 45) |
|  | Vermont Consumer Fraud Act (Count 45) |
|  | West Virginia Consumer Credit & Protection Act (Count 45) |
| Bridges | North Carolina Unfair and Deceptive Trade Practices Act (Count 39) |
|  | North Carolina Fraudulent Concealment (Count 9) |
|  | Colorado Fraudulent Concealment (Count 9) |
|  | Utah Fraudulent Concealment (Count 9) |
|  | Virginia Fraudulent Concealment (Count 9) |
|  | West Virginia Fraudulent Concealment (Count 9) |
|  | Wisconsin Fraudulent Concealment (Count 9) |
| Phillips | Oregon Fraudulent Concealment (Count 9) |
|  | Oregon Unlawful Trade Practices Act (Count 41) |
| Knapp | Iowa Fraudulent Concealment (Count 9) |
|  | Iowa Consumer Fraud Act (Count 25) |
| Goldberg | Washington Fraudulent Concealment (Count 9)[*] |
|  | Washington Consumer Protection Act (Count 54) |
| Taylor | Mississippi Fraudulent Concealment (Count 9) |
|  | Mississippi Breach of Implied Warranty (Count 33) |
| Calhoun | Georgia Fraudulent Concealment (Count 9)[*] |
|  | Georgia Fair Business Practices Act (Count 21)[*] |

---

[3] MBUSA has prepared and attached as Exhibit A to this motion proposed verdicts form addressing each of the remaining claims, as requested by the Court.  *See* D.E. 4792, 5/29/2024 Hr'g Tr., at 26:10–25.  These are *not* intended as any waiver of MBUSA's rights under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).  Rather the proposed verdict forms simply illustrate the issues a jury would have to address in any potential class trial, regardless of venue.

[*] Denotes a claim on which plaintiffs <u>do not</u> seek class certification.  *See* D.E. 4779 at 2.

## LEGAL STANDARD

A court must grant summary judgment when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where—as is true on all issues discussed below—the non-moving plaintiffs bear the burden of proof at trial, they must produce evidence to establish genuine disputes of material fact on each of the essential elements of their claims.[4] *Celotex Corp. v. Cartrett*, 477 U.S. 317, 325 (1986). Plaintiffs cannot rest on their allegations, *id.*, nor does the "mere existence of a scintilla of evidence" suffice to raise a genuine dispute, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The lack of a genuine dispute on any "essential element necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1238 (S.D. Fla. 2006) (Moreno, J.).

## ARGUMENT

I. **Plaintiffs' claims fail for lack of knowledge, damages, and standing.**

A. **MBUSA did not know of the alleged defect when plaintiffs purchased their vehicles.**

MBUSA does *not* design or manufacture Mercedes-Benz vehicles or any of their parts, including the Takata inflators at issue. Defendant Mercedes-Benz USA, LLC's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ¶ 3 ("SOF"). MBUSA distributes, retails, and warrants Mercedes-Benz vehicles in the U.S. market. *Id.* ¶ 1. As a distributor, MBUSA was not involved in the research, development, analysis, or testing of Takata inflators or inflator propellant. *Id.* ¶ 4. Plaintiffs' own experts agree that MBUSA would have no information, documents, or communications regarding the design of Takata inflators. *See, e.g.*, Ex. 39,[5] Baglini Dep., at 336:14–338:22; Ex. 40, Renz Dep. at 420:18–421:2, 426:5–429:25. It is the manufacturer, not the distributor, that maintains the relationship with suppliers. *See* SOF ¶¶ 4– 7; Ex. 39, Baglini Dep., at 337:4–21; Ex. 40, Renz Dep., at 426:5–429:25. Nor did MBUSA ever

---

[4] Here, the laws of the states of the relevant purchase or lease govern each of plaintiffs' claims. D.E. 3834 at 8–10.

[5] Numbered exhibits refer to the exhibits attached to the concurrently filed Declaration of Raoul G. Cantero in Support of Defendant Mercedes-Benz, USA LLC's Motion for Summary Judgment.

communicate with Takata about the airbag inflators' design.  SOF ¶ 5.  MBUSA did not even

know its vehicles were equipped with Takata inflators until late 2015.  *Id.* ¶ 6.[6]

    The laws governing plaintiffs' fraudulent-concealment and consumer-protection claims

require them to prove that MBUSA knew of the information it allegedly misrepresented, omitted,

or concealed.[7]  MBUSA plainly could not have fraudulently concealed a fact it was unaware of,

---

[6] Though MBUSA received no information from Takata, it is worth noting that Takata pleaded guilty to felony fraud for deceiving auto manufacturers, including the manufacturer of Mercedes-Benz vehicles, as to the alleged defect.  D.E. 3406 at 25.

[7] **Fraudulent concealment**: **R.I.:** *Women's Dev. Corp. v. City of Cent. Falls*, 764 A.2d 151, 161 (R.I. 2001) ("[k]nowledge of the statement's falsity" an element of fraud); *Halpert v. Rosenthal*, 267 A.2d 730, 733 (R.I. 1970) (plaintiff has burden of proving defendant "knew [the statements] were false").  **N.C.:** *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385, 391 (N.C. 1988) ("knowledge of the falsity of the statement made" and "intent to deceive" are elements of fraud); *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 600 S.E.2d 492, 500 (N.C. App. 2004) (affirming summary judgment for defendants due to lack of knowledge).  **Colo.:** *Ebrahimi v. E.F. Hutton & Co.*, 794 P.2d 1015, 1017 (Colo. App. 1989) ("[T]he gravamen of [fraud] is the defendant's conscious knowledge of the falsity of the representation or such recklessness as amounts to a conscious indifference to the truth.").  **Utah:** *Rawson v. Conover*, 20 P.3d 876, 883 (Utah 2001) (affirming summary judgment because plaintiffs had no evidence that defendants "knew they had insufficient knowledge upon which to base [their] statements").  **Va.:** *Doe v. Baker*, 857 S.E.2d 573, 589 (Va. 2021) (elements of fraudulent misrepresentation and fraudulent concealment).  **W. Va.:** *Dickens v. Sahley Realty Co.*, 756 S.E.2d 484, 492 n.26 (W. Va. 2014) (elements of fraudulent misrepresentation and fraudulent concealment).  **Wis.:** *Miron v. MNI, Inc.*, 879 N.W.2d 809, at *5 (Wis. App. 2016) (applying *Malzewski v. Rapkin*, 723 N.W.2d 156, 162 (Wis. App. 2006), to conclude plaintiff had no evidence showing defendant had knowledge "at the time" of transaction).  **Or.:** *Webb v. Clark*, 546 P.2d 1078, 1080 (Or. 1976) (en banc) (plaintiff must establish defendant's knowledge by clear and convincing evidence).  **Iowa:** *B&B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976) (requiring reckless disregard as to falsity or actual knowledge).  **Wash.:** *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012) (en banc) (plaintiff must establish defendant's knowledge "by clear, cogent, and convincing evidence").  **Miss.:** *Martin v. Winfield*, 455 So. 2d 762, 764 (Miss. 1984) (fraud requires "knowledge of [the representation's] falsity").  **Ga.:** *Johnson v. Johnson*, 747 S.E.2d 518, 521 (Ga. App. 2013) (requiring evidence that defendant made statement "knowingly" and "with false design").  **Consumer-protection**: **R.I.:** *Motley v. Jaguar Land Rover N. Am., LLC*, 2012 WL 5860477, at *15 (Conn. Super. Ct. Nov. 1, 2012) (common question existed as to whether defendant "fail[ed] to disclose its knowledge of the common defect so as to mislead consumers").  **Conn.:** *See Cadco, Ltd. v. Doctor's Assocs., Inc.*, 204 A.3d 737, 747, 752 (Conn. App. 2019) (CUTPA imposes liability for failure to disclose only where defendant has a duty to do so and otherwise for "immoral, unethical, oppressive, or unscrupulous" practices).  **Haw.:** *Tokuhisa v. Cutter Mgmt. Co.*, 223 P.3d 246, 259 (Haw. App. 2009) (describing unfair trade practices as "immoral, unethical, oppressive, unscrupulous or substantially injurious" and deceptive practices as requiring a specific "representation, omission or practice").  **Me.:** *See, e.g.*, *Inniss v. Methot Buick-Opel, Inc.*, 506 A.2d 212, 216 (Me. 1986) (plaintiff failed to establish evidentiary basis for fraud-based assertions, and defendant's conduct must "have some attribute of unfairness or deception to trigger" Maine UTPA); *Masure v. Donnelly*, 962 F.2d 128, 134 (1st Cir. 1992) ("knowing[]" sale of house with defects considered a violation of Maine UTPA).  **Neb.:** *See*

let alone have a duty to disclose it.[8]  *See Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348, 1364–65 (S.D. Fla. 2021) (Moreno, J.) (granting summary judgment because plaintiffs failed to present sufficient evidence that manufacturer knew of the alleged defect at the time of sale).

There is no genuine dispute that MBUSA lacked knowledge of the alleged inflator defect until January 2016, when Takata first announced an airbag-inflator recall on certain Mercedes-Benz vehicles.  And it is undisputed that each of the plaintiffs bought their vehicles prior to then. SOF ¶¶ 14, 24, 33, 44, 55, 62, 72.  On this basis alone, the Court should grant summary judgment for MBUSA on all plaintiffs' claims.

### B.  Plaintiffs have no damages to recover under their benefit-of-the-bargain theory.

Plaintiffs seek only benefit-of-the-bargain damages and have expressly disclaimed all other damages theories.  D.E. 4482, 10/21/2022 Hr'g Tr., at 55:2–10; *see also* D.E. 4538 at 10 (Court agreeing that plaintiffs "expressly disclaimed all non-benefit-of-the-bargain damages at the October 21, 2022 summary judgment hearing").  It is also undisputed that every plaintiff "already had or

---

*Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 249 (Neb. App. 2007) (describing unfair trade practices as "immoral, unethical, oppressive, or unscrupulous" and deceptive practices as "fraud, misrepresentation, and similar conduct" under Nebraska CPA).  **Okla.:** Okla. Stat. Ann. tit. 15, § 753 (requiring that wrongful acts be conducted "knowingly or with reason to know").  **VT.:** *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014) (courts should consider whether an act is "immoral, unethical, oppressive or unscrupulous.").  **W. Va.:** W. Va. Code § 46A-6-102(7)(m) ("Unfair methods of competition and unfair or deceptive acts or practices" includes the "use or employment . . . of any . . . misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon [it] in connection with the sale or advertisement of any goods or services."); *Dickens v. Sahley Realty Co.*, 756 S.E.2d 484, 492 n.26 (W. Va. 2014) (elements of fraudulent misrepresentation and fraudulent concealment).  **N.C.:** *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 793 (C.D. Cal. 2022) (permitting NCUDTPA claim to proceed notwithstanding economic-loss rule only because plaintiff alleged failure to disclose a *known* defect).  **Or.:** *Rathgeber v. James Hemenway, Inc.*, 335 Or. 404, 412–13 (Or. 2003) (private party seeking recovery under Oregon UTPA must prove "willful" violation); *State* ex rel. *Rosenblum v. Johnson & Johnson*, 362 P.3d 1197, 1204 (Or. App. 2015) (liability for "seller's failure to disclose a known risk").  **Iowa:** *Buck v. The Rsrv.*, 947 N.W.2d 225 (Iowa Ct. App. 2020) (Iowa's CFA requires plaintiff to show that defendant's representations "were known or should have been known to be unfair or untrue at the time they were made.").  **Wash.:** *Beaty v. Ford Motor Co.*, 854 F. App'x 845, 848 (9th Cir. 2021) ("Similarly under the [Washington] CPA, a duty to disclose arises only when the seller has knowledge of a latent defect.").  **Ga:** *Paulk v. Thomasville Ford Lincoln Mercury*, 732 S.E.2d 297, 301 (Ga. App. 2012) (GFBPA requires a deceptive act plus "culpable knowledge").

[8] As explained more fully below where applicable, the same logic precludes any attempt to toll the statute of limitations on a fraudulent-concealment theory.  *See infra* note 11 & Sections IV.C, IV.E.

could have had the recall, repair[,] and replacement performed free of charge." D.E. 4471 at 15; SOF ¶¶ 17–18, 27, 35–36, 49, 57, 66–68, 75–76. MBUSA's free and effective recall eliminates plaintiffs' benefit-of-the-bargain damages.

This Court has already recognized that the free and effective recall fully "compensated and made whole" prior plaintiffs in states that award the lesser of the cost of repair or diminution in value as benefit-of-the-bargain damages. D.E. 4471 at 14. MBUSA, GM, and FCA previously moved for summary judgment on claims asserted under Arizona, California, Florida, Illinois, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, Ohio, Pennsylvania, South Carolina, and Texas law, among other states. *See id.* at 1–2. Addressing only the listed states, the Court concluded that each state followed the general rule that the "benefit-of-the-bargain theory aims to compensate a plaintiff who did not receive what she bargained for." *Id.* at 5. This theory requires a plaintiff "to mitigate damages." *Id.* In each state that the Court analyzed, "post-sale mitigation"—such as the recall repair that MBUSA offered—eliminated the recoverable damages by giving the plaintiff exactly what she bargained for. *Id.* at 6–13.

In rejecting plaintiffs' attempt to obtain a double recovery, the Court concluded that under the relevant states' laws, "the Court *must* consider the cost of repair in tandem with the alleged point-of-sale overpayment and award the lesser of these damages measures." *Id.* at 14 (emphasis added). This definition of benefit-of-the-bargain damages "does not vary based on the particular claim at issue," because "Plaintiffs' damages are measured by the same standards jurisdictions use for other types of property losses[.]" D.E. 4471 at 13. Regardless of the claim, the Court held, "if the Court were to allow Plaintiffs to recover benefit-of-the-bargain damages without regard for post-sale remedies provided by the Defendants, Plaintiffs would receive . . . 'an immutable damages asset' that may lead to double recoveries." *Id.* at 14 (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 231 (S.D.N.Y 2019)).

As demonstrated below, the Court's prior holding that MBUSA's free and effective recall eliminates damages applies with equal force to all remaining claims, i.e., plaintiffs' Rhode Island claims, *infra*, Section II.A.2; consumer-protection claims under Connecticut, Hawaii, Maine,

Nebraska, Oklahoma, Vermont, and West Virginia law, *id.* II.B.; North Carolina claims, *id.* III.A; fraudulent-concealment-claims under Colorado, Utah, Virginia, West Virginia, and Wisconsin law, *id.* III.B; Oregon claims, *id.* IV.A; Iowa claims, *id.* IV.B; Washington claims, *id.* IV.C; Mississippi claims, *id.* IV.D; and Georgia claims, *id.* IV.E.  Each of these states either expressly holds that benefit-of-the-bargain damages are measured as the lesser of the cost of repair or diminution in value, or otherwise recognizes that the type of damages plaintiffs seek would constitute an impermissible double recovery.  Under these facts (and the Court's own prior reasoning), MBUSA's free and effective repair requires summary judgment against plaintiffs on all remaining claims.[9]

### C.  Plaintiffs' claims are not justiciable.

Because the free and effective recall remedied the alleged defect—restoring the benefit of plaintiffs' bargain—plaintiffs' claims should be dismissed as prudentially moot.  The prudential mootness doctrine "permit[s] [courts] to withhold relief [they] have the authority to grant" when "a case [] reach[]es the point where prolonging the litigation any longer would itself be inequitable."  *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1209, 1210 (10th Cir. 2012) (Gorsuch, J.).  In the context of alleged automotive defects, that point comes when a distributor "set[s] into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process."  *Id.* at 1211.  Here, that point passed long ago, as MBUSA has not only initiated the recall process, but has offered a free and effective recall repair to every plaintiff.  SOF ¶¶ 7–9, 17–18, 27, 35–36, 49, 57, 66–68, 75–76.  It would now be "inequitable" to "prolong[] the litigation any longer."  *Winzler*, 681 F.3d at 1210; *see also, e.g.*, *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 469 (E.D. Mich. 2022) ("[T]he anticipated repairs will remove the defect upon which Plaintiffs' claim for benefit-of-the-bargain damages is based.").  The Court should grant summary judgment on plaintiffs' claims as prudentially moot.  *See, e.g.*,

---

[9] MBUSA joins in the arguments in FCA's concurrently filed motion for summary judgment demonstrating that plaintiffs also have no evidence of diminution-in-value damages because Dr. Dubé's model assumes an *un*willing seller and thus skews the hypothetical market value.  D.E. 4797 at 8–10; *See also, infra*, note 21.

*Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1380 (N.D. Ga. Sept. 6, 2023) (dismissing damages claim as moot due to free, effective recall).

The Court should also grant summary judgment for the more fundamental reason that plaintiffs never had standing in the first place. As previously briefed in more detail, plaintiffs purchased a vehicle that functioned exactly as expected. *See* D.E. 4495 at 16–18 & 18 n.11; D.E. 4488 at 4–7; D.E. 4489 at 6–8. Because the "'probability' of having purchased a deceptive product" is not a cognizable injury, plaintiffs do not have standing. *See Malgeri v. Vitamins Because LLC*, 2022 WL 16635274, at *14 (S.D. Fla. Sept. 30, 2022).

## II. Radican's personal and *Zantac* claims fail.

The Court should grant MBUSA summary judgment on Radican's personal claims and the purported *Zantac* claims tied to other states because she no longer has standing to pursue these claims and because each of the claims independently fails.

Public records reflect that Radican died in July 2023. SOF ¶ 13. She bought the vehicle at issue (a 2008 C 300) from UAG West Bay Inskip Auto Center in Warwick, Rhode Island, in October 2007, more than 11 years before first filing her claims. *Id.* ¶¶ 14, 23. She did *not* review any MBUSA advertising or marketing materials before her purchase. *Id.* ¶ 16. Rather, she owned an earlier C-Class, and bought her 2008 C 300 because she "liked the design much better than the previous one." *Id.* ¶ 15. Radican received a recall notice letter from MBUSA in July 2016, which offered to replace her airbags for free. *Id.* ¶ 17. Her airbags were replaced free of charge, and her airbag inflators never malfunctioned before that. *Id.* ¶¶ 18–19. Radican sustained no out-of-pocket expenses. *Id.* ¶ 20. Based on these undisputed facts, summary judgment is appropriate.

### A. Radican cannot maintain her Rhode Island claims.

#### 1. Radican lacks standing to pursue any claim because she is deceased.

Because Radican died over a year ago (a fact MBUSA only learned when preparing this motion), she lacks standing to assert any claims. *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 955 (9th Cir. 2020) (joining sister circuits in holding a deceased person cannot maintain or join a lawsuit). A deceased person does not have standing to sue. *See, e.g., id.* at 950,

954; *Martino v. Am. Sec. Ins.*, 2022 WL 9418415, at *2 (S.D. Fla. Oct. 14, 2022); *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 787 (4th Cir. 2019) (collecting cases); *In re Asbestos Prods. Liab. Litig.*, 311 F.R.D. 152, 156 (E.D. Pa. 2015) (same). Allowing Radican's claims to proceed after her death would deprive MBUSA of due process and this Court of the "concrete adverseness" essential to a case or controversy under Article III. *LN Mgmt.*, 957 F.3d at 955; *see Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 384 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 757 (2022) (no case or controversy "absent a plaintiff with legal existence"). Moreover, since Radican is deceased, a favorable ruling would not provide her redress. *House*, 796 F. App'x at 787. Thus, this Court should dismiss her claims for lack of standing. *See Hencle v. Ditech Fin.*, 2021 WL 1397882, at *2 (S.D. Fla. Apr. 13, 2021) (dismissing deceased plaintiff's claims); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing required at all stages of litigation); *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1115 (11th Cir. 2021) ("Our precedent is clear that a court cannot rule on the merits of a case after finding that the plaintiff lacks standing.").

### 2.  All Radican's claims fail because she lacks cognizable damages.

Even if Radican could posthumously pursue her claims, they fail because she has no cognizable damages under Rhode Island law. Radican seeks only benefit-of-the-bargain damages measured as the alleged difference between the price she paid for her vehicle and the price she would have paid had she known of the alleged defect. D.E. 4471 at 5; D.E. 4249 at 22 n.6 ("Plaintiffs are not seeking post-repair diminution in value or cost of repair damages."); *id.* at 22 n.7 ("Plaintiffs are not seeking stigma, post-repair diminution in value, or cost of repair damages[.]"). Such "damages," however, are not cognizable under Rhode Island law, which instead treats the cost of repair as the measure of damages if the repair can restore the at-issue property. *See Newstone Dev., LLC v. E. Pac., LLC*, 140 A.3d 100, 104 (R.I. 2016) ("Generally, when the damages to property is temporary, the cost of repair is the proper measure of damages."); *Tortolano v. Di Filippo*, 349 A.2d 48, 52 (R.I. 1975) (similar); *Bronowiski v. Bridges*, 44 A.3d

11

116, 121 (R.I. 2012) (similar).[10]  Rhode Island courts recognize that the "overall goal" in awarding damages "is to place the injured [party] as near as possible to his or her pre-injury position, not to grant the [party] a windfall." *Morabit v. Hoag*, 80 A.3d 1, 18–19 (R.I. 2013); *Newstone*, 140 A.3d at 106 (declining to "grant the plaintiff a windfall").

Any award to Radican based on alleged "damages" suffered at the point of sale would violate Rhode Island law.  It is undisputed that MBUSA offered to replace Radican's airbags for free; Radican indeed had the airbags replaced for free; the repair was effective; Radican's airbag inflators never malfunctioned or deployed before her airbags were replaced; and Radican sold the vehicle to her daughter in August 2018 for $500.00, a "nominal sum" not based on the car's value. SOF ¶ 21.  Thus, the free recall put Radican in her "pre-injury" position, precluding windfall damages. *See* D.E. 4471 at 14 (this Court concluding that allowing benefit-of-the-bargain damages "without regard for post-sale remedies provided by the Defendants" would create an "immutable damages asset" that could "lead to double recoveries").

### 3.  Radican's individual fraudulent concealment claim fails.

Radican's fraudulent concealment claim fails because, as shown above, there is no evidence that MBUSA knew of the alleged defect before January 2016.  *See, supra* Section I.A. And there *certainly* is no evidence that MBUSA knew years earlier, in **October 2007**, when Radican bought her car.  This alone warrants summary judgment for MBUSA, because fraudulent concealment requires the defendant's "[k]nowledge of the statement's falsity."  *Women's Dev. Corp. v. City of Cent. Falls*, 764 A.2d 151, 161 (R.I. 2001); *accord Halpert v. Rosenthal*, 267 A.2d 730, 733 (R.I. 1970) (in actions based on fraud, plaintiff has burden of proving defendant's knowledge); *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000) (fraudulent misrepresentation and duty to disclose require defendant's knowledge).

Radican also cannot prove, as required to prevail on a Rhode Island fraudulent-concealment claim, that she "relied on defendant's misrepresentation and that such reliance was

---

[10] In this regard, Rhode Island is identical to the laws of other states this Court has already held required summary judgment on damages. *See* D.E. 4471 at 6, 8, and 12.

the proximate cause of [her] injury." *R.I. Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris, Inc.*, 99 F. Supp. 2d 174, 189 (D.R.I. 2000); *accord Coccoli v. Town of Scituate Town Council*, 184 A.3d 1113, 1120–21 (R.I. 2018) (fraud requires "sufficient proof that the [plaintiff] detrimentally relied upon the fraudulent representation"); *see also Guilbeault*, 84 F. Supp. 2d at 269 (plaintiff must "identify specific advertising he [saw] and how it . . . affected him").  Again, when asked whether she or her husband reviewed any MBUSA advertising or marketing materials before her purchase, Radican responded with an explicit "No." SOF ¶ 16.  Radican thus has no evidence that she reviewed or relied on any alleged MBUSA misstatement.

### 4. Radican's Rhode Island UDTPA claim fails.

Radican's claim under the Rhode Island UDTPA—the only Rhode Island claim she seeks to bring on behalf of absent class members—is barred by the statute of limitations.  Rhode Island UDTPA claims premised on alleged vehicle defects are subject to a four-year statute of limitations.  *See Kennedy v. Acura*, 2002 WL 31331373, at *6 (R.I. Super. Ct. Aug. 28, 2002) (four-year limitations period for claims like Radican's).  Counsel for Radican have claimed that the applicable statute of limitations is ten years because her UDTPA claim is really for "fraud or deceit."  D.E. 4789 at 2 (citing *Bourdon's, Inc. v. Ecin Indus., Inc.*, 704 A.2d 747, 753 (R.I. 1997)).  But even if that is correct, Radican's claim still fails on the independent grounds of lack of pre-sale knowledge, as shown above—there is no evidence that MBUSA knew about the alleged defect in 2007, when Radican bought her car.  *See Long v. Dell, Inc.*, 93 A.3d 988, 1003 (R.I. 2014) (Rhode Island UDTPA requires "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material."); *Guilbeault*, 84 F. Supp. 2d at 268 (misrepresentation and duty to disclose under Rhode Island UDTPA require defendant's knowledge).

Regardless, even if the limitations period is ten years, there is no dispute that Radican purchased her vehicle more than ten years before she first filed her claims. SOF ¶¶ 14, 23.  Since Radican asserts she was injured at the time of purchase, the statute of limitations has run.  *Martin v. Howard*, 784 A.2d 291, 299 (R.I. 2001) ("Generally, a cause of action accrues and the applicable

statute of limitations begins to run at the time of the injury to the aggrieved party."). Radican's claims are thus barred by the statute of limitations.

Plaintiffs' attempts to avoid this outcome with the "discovery rule" lack merit. Citing *Martin*, plaintiffs claim this case falls into the "narrowly circumscribed factual situations" in which the statute of limitations will not begin to run until the plaintiff discovers their alleged injury. *See* D.E. 4789 at 2. But the Rhode Island Supreme Court has held that this requires evidence of a plaintiff's "reasonable reliance" on some "affirmative deception" by the defendant. *Carney v. Kardinal Land*, 813 A.2d 50, 53 (R.I. 2003) (applying this requirement to discovery rule). Radican has no evidence of reliance on any affirmative misstatements. As discussed above, Radican testified she did *not* review any MBUSA marketing or advertising prior to her purchase. SOF ¶ 16.[11] She thus cannot establish the requisite reliance, and the discovery rule does not apply.

In the alternative, Radican's UDTPA claim also fails because it is in fact a consumer product warranty claim subject to the Magnuson–Moss Warranty Act and thus is exempt under the Rhode Island statute. *Kennedy*, 2002 WL 31331373, at *3 (R.I. Super. Ct. Aug. 28, 2002) (finding that UDPTA exempts claims based on "any activities and businesses subject to monitoring by state and federal regulatory bodies and offices" and dismissing on this basis where plaintiffs' claims "deal[t] with defendant's possible liability for its own defective goods"). The plaintiffs in *Kennedy* alleged that a vehicle defect damaged their vehicles' transmissions. *Id*. at *1–2. The court held that plaintiffs' UDTPA claims were "in fact, consumer warranty claims because they deal with defendant's possible liability for its own defective goods" and that such claims were governed by other state and federal law, and thus *exempt* from the UDTPA. *Id*. at 3.

### 5.   Radican's individual implied-warranty claim fails.

Radican's implied warranty claim fails because she used her vehicle for a reasonable time (indeed, the entire time she owned the vehicle) without any malfunction. *Cohen v. Subaru of Am.,*

---

[11] For similar reasons, Radican also cannot toll the statute of limitations under a fraudulent concealment theory. *Houllahan v. Gelineau*, 296 A.3d 710, 724–25 (R.I. 2023) (tolling for fraudulent concealment likewise requires reliance on "an actual misrepresentation of fact") (quoting *Ryan v. Roman Cath. Bishop of Providence*, 941 A.2d 174, 182–83 (R.I. 2008)).

*Inc.*, 2022 WL 721307, at *11 (D.N.J. Mar. 10, 2022) (dismissing Rhode Island implied warranty claim where plaintiff did not show that the defect "ever caused their vehicles to malfunction" making "their vehicles are unfit for ordinary use"). Here, it is undisputed that the airbag inflators in Radican's vehicle never malfunctioned. SOF ¶ 19. Radican's vehicle performed as intended for over a decade. *Id.* ¶¶ 14, 19, 21. And Radican is not seeking any loss-of-use damages and thus has no viable claim for damages at all. D.E. 4482, 10/21/2022 Hr'g Tr., at 55:2–10.

Additionally, Radican's express warranty on her vehicle limited the term of any implied warranty to no more than 48 months. SOF ¶¶ 10–12. This time limitation is enforceable under Rhode Island law because it mentions the warranty of merchantability in conspicuous writing. *See* R.I. Gen. Laws § 6A-2-316(2). Radican bought her vehicle in 2007, more than a decade before she filed this case. SOF ¶¶ 14, 23. Thus, the implied warranty expired in 2011, and it is undisputed that the alleged defect never manifested. *Id.* ¶¶ 10, 14, 19.

Radican also cannot establish privity with MBUSA, as required to maintain an implied warranty claim, because she bought her vehicle from a dealer, not MBUSA. *Id.* ¶ 14; *see Ace Am. Ins. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 708 (D. Md. 2008) (entering summary judgment against plaintiff's Rhode Island implied warranty claim for lack of privity). Buying from an authorized dealer does *not* establish the required privity. *See Zakikhani v. Hyundai Motor Co.*, 2022 WL 1740034, at *10 n.11 (C.D. Cal. Jan. 25, 2022). This provides an independent basis for summary judgment.

### B. Radican's *Zantac* claims on behalf of proposed Connecticut, Hawaii, Maine, Nebraska, Oklahoma, Vermont, and West Virginia classes fail.

Because Radican's Rhode Island claims fail (and she lacks standing, as she is deceased), she cannot pursue claims on behalf of putative class members from other states. *See* D.E. 4689 at 20 ("[B]ecause Plaintiff Lodge (Georgia) is the only class representative for Plaintiffs' proposed Fraud Class [and was dismissed], the class cannot be certified as there is no class representative who is 'part of the class.'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997))).

But even if Radican could pursue her Rhode Island claims, MBUSA has the right to

challenge the merits of her claims under the new states' laws (the same is true of Bridges, whose *Zantac* claims will be discussed below).  That is, while *Zantac* suggested that a named plaintiff may have *standing* to pursue claims under other states' laws, it warned that this "may present a merits problem."  2022 WL 16729170, at *4–5.  A contrary holding would create serious due process problems, depriving the defendant of the opportunity to challenge the merits of those claims at summary judgment.  Indeed, for every element of every claim, defendants have the right to "demand a full litigation of that element of the cause of action, and for each putative class member no less.  The Rules Enabling Act forbids interpreting the Federal Rules of Civil Procedure, including Rule 23, to 'abridge, enlarge, or modify any substantive right.'"  *Corder v. Ford Motor Co.*, 283 F.R.D. 337, 343 (W.D. Ky. 2012) (quoting 28 U.S.C. § 2072(b)); *see, e.g.*, *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2012) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims[.]").

In short, *Zantac* does not lessen the named plaintiffs' burden to prove violations of every relevant state's law.  And since there are no other named plaintiffs for those states, Radican (or Bridges, as the case may be) must be the focus of that analysis.  *See, e.g.*, *Colomar v. Mercy Hosp., Inc.*, 2007 WL 2083562, at *4 (S.D. Fla. July 20, 2007) (where named plaintiff failed to establish an essential element of a claim at issue, the court must grant summary judgment as to that claim).  Here, the evidence shows that Radican has no claim under any of the new states' laws.

### 1.  Radican has no claims under the Connecticut UTPA.

Radican's claim under the Connecticut UTPA fails at the outset because, by statute, she cannot proceed without pleading residency or injury in Connecticut.  *See* Conn. Gen. Stat. § 42–110g(b); *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 505 (D. Conn. 2015); *Chapman v. Priceline Grp., Inc.*, 2017 WL 4366716, at *7 (D. Conn. Sept. 30, 2017).

Even if the statute did not bar Radican from pursuing the Connecticut UTPA claim, it would fail for lack of damages.  Connecticut calculates damages for injury to a vehicle as "the cost of repair only," so long as the vehicle can be "substantially restored."  *Kunkel v. Digirolamo*, 2017 WL 7053946, at *3 (Conn. Super. Ct. Dec. 28, 2017) (collecting cases).  There is no genuine

16

dispute that Radican's vehicle was fully "restored" when her airbags were replaced for free.  SOF ¶ 18.  The Court should therefore enter summary judgment, consistent with its prior treatment of states with identical damages rules.  D.E. 4471 at 1–2, 14–15.

Finally, Radican's claim is time-barred.  The Connecticut statute has a three-year statute of limitations.  Conn. Gen. Stat. § 42–110g(f).  Claims accrue when the violation occurs, not when the plaintiff discovers it.  *In re Trilegiant Corp.* 11 F. Supp. 3d 82, 121 (D. Conn. 2014).  For Radican, any "deceptive" conduct or statements necessarily occurred over ten years before she filed suit.  SOF ¶¶ 14, 23.

### 2.   Radican has no claims under the Hawaii UDTPA.

A plaintiff alleging deceptive trade practices under the Hawaii UDTPA may sue only for "damages sustained."   Haw. Rev. Stat. § 480–13(b)(1).   This encompasses only expectation damages "sufficient to make the plaintiff whole."  *In re Kekauoha-Alisa*, 674 F.3d 1083, 1092 (9th Cir. 2012) (citing *Leibert v. Fin. Factors, Ltd.*, 788 P.2d 833, 836–37 (Haw. 1990)).  As this Court reasoned in the context of other states' laws, plaintiffs' benefit-of-the-bargain damages theory is "a species of expectation damages" meant to return the plaintiffs to the position they would have been in without the injury.  D.E. 4471 at 5.  It is undisputed that Radican's airbags were replaced at no cost.  SOF ¶ 18.  With a free replacement "sufficient to make [her] whole," Radican thus has no recoverable damages under Hawaii's UDTPA.

Radican's claim is also barred by the Hawaii UDTPA's four-year statute of limitations. *See* Haw. Rev. Stat. § 480–24.  The limitations period begins when the violation occurs—not when the plaintiff discovers the injury.  *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 671 (D. Haw. 2017) (collecting cases).  Again, for Radican, any violation occurred over a decade before filing suit.

### 3.   Radican has no claims under the Maine UTPA.

Radican has no cognizable injury or damages for her Maine UTPA claim.  Maine's highest court has recognized cost of repairs as the measure of damages for alleged vehicle defects.  *See Faulkingham v. Seacoast Subaru, Inc.*, 619 A.2d 987, 988 (Me. 1993) (affirming award for the

cost of future repairs less the cost of repairs defendant already provided, as awarding the cost of defendant's successful repairs would be "an unjustified windfall"); *see also Sullivan v. Young Bros. & Co.*, 91 F.3d 242, 255 (Me. 1996) (cost of repair used to measure damages for allegedly defective vessel). By statute, a private plaintiff alleging deceptive trade practices may seek only "actual damages." 5 Me. Stat. § 213(1). These are damages that put plaintiffs "in the position they would have been in had the violation not occurred." *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 436 (D. Me. 2017). Given the free and effective recall repair, Radican has no "actual damages" to recover under plaintiffs' benefit-of-the-bargain theory, just as the Court concluded for states with similar damages rules. D.E. 4471 at 1–2, 14–15. She could not have suffered a "substantial injury," as required under the statute, for the same reason. *See McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420, 427 (Me. 2009); *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998) (requirement "weed[s] out" speculative harms); *Anderson v. Hannaford Bros.*, 659 F.3d 151, 160 (1st Cir. 2011) ("What is clear is that the Maine courts have consistently read the private right of action provision of the UTPA narrowly.").

Radican also has no evidence of reliance, a requirement of any Maine UTPA claim premised on "deceptive or misleading statements." *Sanford v. Nat'l Ass'n. for the Self-Employed, Inc.*, 264 F.R.D 11, 16 (D. Me. 2010); *see also McKinnon*, 977 A.2d at 426 (plaintiff could not proceed on "weak, inconsistent, and vague" evidence). Radican expressly denied reviewing *any* advertising or marketing materials before buying her vehicle. SOF ¶ 16.

Finally, Radican's claim is barred by the Maine statute's six-year limitations period. *See* 14 Me. Stat. § 752. Claims accrue when the plaintiff sustains a "judicially cognizable injury," namely "when [Radican] alleges that [s]he overpaid" for her vehicle. *McKinnon*, 977 A.2d at 424–25. That was 2007—over a decade before she filed.

### 4. Radican has no claims under the Nebraska CPA.

Radican has no cognizable damages under Nebraska law. The Nebraska Supreme Court has held that where a vehicle can be "restored," damages are measured by the cost of repair. *Chlopek v. Schmall*, 396 N.W.2d 103, 110 (Neb. 1986) (per curiam). Just as the Court previously

concluded for states with similar damages rules (D.E. 4471 at 1–2, 14–15), Radican has no cognizable damages under the Nebraska CPA because she received a free and effective repair.

Radican's Nebraska claim is also time-barred.  The Nebraska CPA has a four-year statute of limitations, Neb. Rev. Stat. § 59–1612, with claims accruing when the plaintiff has a right to bring suit "even though [she] may be ignorant of the existence of the cause of action," *Cavanaugh v. City of Omaha*, 580 N.W.2d 541, 544 (Neb. 1998).  Radican had a right to sue MBUSA for her alleged injury—overpaying for an allegedly defective vehicle—over a decade before she filed.

Even if Radican's claim were not time-barred, MBUSA's alleged conduct is exempt under the Nebraska CPA.  That statute does not apply to conduct otherwise regulated under state law, and the Nebraska Motor Vehicle Industry Regulation Act regulates the conduct at issue here.  *See* Neb. Rev. Stat. § 59–1617(1) (exempting regulated conduct); Neb. Rev. Stat. § 60–1411.03(23) (regulating fraudulent misrepresentations and false advertising of motor vehicles); D.E. 4522 ¶ 832d (alleging fraudulent misrepresentation, false advertising, and deceptive conduct).  Radican's claim cannot proceed.  *See, e.g.*, *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1110–11 (N.D. Cal. 2021) (dismissing Nebraska CPA claim on these grounds).

### 5.  Radican has no claims under the Oklahoma CPA.

Oklahoma CPA claims are not viable when the only damages sought are benefit of the bargain.  *In re GM Ignition Switch Litig.*, 2016 WL 3920353, at *36 (S.D.N.Y. 2016); *Walls v. Am. Tobacco Co.*, 11 P.3d 626, 630 (Okla. 2000) ("Accordingly, a person may not bring an action as an aggrieved consumer under § 761.1(A) solely as a result of his or her payment of the purchase price for that product.").  MBUSA is entitled to summary judgment because benefit-of-the-bargain damages are the only damages plaintiffs seek.  Moreover, even if Radican could pursue an Oklahoma CPA claim for benefit-of-the-bargain damages, in situations such as this, Oklahoma limits recovery of damages to cost of repair: "[W]here the injury is susceptible to repair at reasonable expense, the proper measure of damages is the cost of the repairs and the value of the loss of the use of it while it is being repaired." *Brennen v. Aston*, 84 P.3d 99, 101 (Okla. 2003).  As it did for claims under the laws of other states with similar damages rules, the Court should

grant summary judgment here too.  D.E. 4471 at 1–2, 14–15.

The lack of a manifested defect also precludes any Oklahoma CPA claims.  *GM Ignition Switch Litig.*, 2016 WL 3920353, at *36.  This is true even when the plaintiff alleges a "deadly safety defect of which [the defendant] was aware."  *See id.* at *39.  Here, it is undisputed that Radican's vehicle did not experience a ruptured airbag inflator.  SOF ¶ 19.

Radican's Oklahoma CPA claim also fails because the statute exempts conduct governed by other federal or state laws, including Oklahoma's own state statutes and administrative codes.  Okla. Stat. tit. 15, § 754.  This exemption bars claims based on alleged false or misleading advertising of motor vehicles.  *See In re Toyota RAV4 Litig.*, 534 F. Supp. 3d at 1111 (Oklahoma regulations on advertising of motor vehicles bar Oklahoma CPA claims based on how the defendant "advertised and represented" their vehicles).

### 6.  Radican has no claims under the Vermont CFA.

Radican has no cognizable damages under the Vermont CFA.  In Vermont, "[t]he measure of damages when an item is harmed but not taken or destroyed is usually diminution in market value; but this often is to be *measured by the sum necessary to repair the item.*"  *Parker's Classic Auto Works, Ltd. v. Nationwide Mut. Ins.*, 215 A.3d 1084, 1090 (Vt. 2019) (emphasis added).  As with other states the Court previously addressed (D.E. 4471 at 6–13), when "restoration can cure the harm, the reasonable cost of repair" is the appropriate measure.  *See Cushman v. Kirby*, 536 A.2d 550, 578 (Vt. 1987); *see also Kramer v. Chabot*, 564 A.2d 292, 294 (Vt. 1989) ("If the harm could be cured by restoration, the reasonable cost of repair might provide adequate and fair compensation.").  Given the free recall repair, cost of repair here is zero.

Radican also cannot prove, as the Vermont CFA requires, either reliance or damages caused by the alleged wrongdoing.  *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014).  Radican has no proof of reliance, as it is undisputed that she did not view any MBUSA advertising or marketing material before buying her vehicle.  SOF ¶ 16.  And as shown above, she also has no damages given the free and effective recall repair.

### 7.   Radican has no claims under the West Virginia CCPA.

Radican has no cognizable damages under the West Virginia CCPA.  West Virginia applies the "lesser of cost of repair" approach: "When, however, injured personal property can be restored by repairs to the condition which existed before the injury and the cost of such repairs is less than the diminution of the market value due to the injury, the measure of damages may be the amount required to restore such property to its previous condition." *Brooks v. City of Huntington*, 768 S.E.2d 97, 102 n.9 (W. Va. 2014).  As the Court held for other states that follow this approach, the free and effective recall repair requires summary judgment for MBUSA.  *See* D.E. 4471 at 1–2; 6-7, 9-11 (granting summary judgment under similar legal standards in Arizona, Florida, Maryland, Massachusetts, Michigan, Missouri, and New York).

Radican's West Virginia CCPA claim also fails because she did not provide the pre-suit notice required by W. Va. Code Ann. § 46A-5-108.  *See Heater v. Gen. Motors, LLC*, 568 F. Supp. 3d 626, 633 (N.D.W. Va. 2021) ("plaintiff's failure to comply with the mandatory prerequisite . . . bars [him] from bringing a [WVCCPA] claim"); *Mullins v. Ethicon, Inc.*, 2017 WL 345865, at *3 (S.D.W. Va. Jan. 20, 2017) (same).  Plaintiffs have pointed to a generic notice—but that notice nowhere mentions the asserted West Virginia CCPA claim and is thus legally insufficient.  *See* D.E. 4570 (citing D.E. 4260–16); *Bennett v. Skyline Corp.*, 52 F. Supp. 3d 796, 812 (N.D.W. Va. 2014) ("[C]ourts will grant a defendant's motion to dismiss when the notice letter fails even to mention the WVCCPA.").

## III.   Bridges' personal and *Zantac* claims fail.

The Court should grant MBUSA summary judgment on Bridges' North Carolina claims for fraudulent concealment and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") and on Bridges' purported *Zantac* claims for fraudulent concealment under the laws of Colorado, Utah, Virginia, West Virginia, and Wisconsin.[12]

---

[12] *See* D.E. 4026 ¶¶ 338–53, 774–795; D.E. 4249 at 3 n.1 (conceding dismissal of all unjust-enrichment claims); D.E. 4500 at 1 (identifying NCUDTPA and fraud as Bridges' only remaining claims); D.E. 4522 ¶¶ 346a, 350a, 338a (purporting to assert Bridges' *Zantac* claims); D.E. 4779 at 2 (identifying proposed class claims).

Bridges bought her used 2014 C 250 from Hendrick Motors of Charlotte in Charlotte, North Carolina in April 2014.  SOF ¶ 24.  She does not recall seeing any MBUSA marketing for her car, other than marketing concerning financing deals.  *Id.*  She has never maintained that she relied on any statements by MBUSA about the safety of the C-Class vehicles or their airbags.  *See id.*  She received a recall notice letter from MBUSA offering to replace her airbags for free.  *Id.* ¶ 27.  Thereafter, she continued to use her C 250, and allowed her significant other to ride in the car.  *Id.* ¶ 28.  The airbag inflators in Bridges' C 250 never malfunctioned.  *Id.* ¶ 29.  In June 2020, Bridges traded in her C 250 without replacing the airbags.  *See id.* ¶¶ 17–31.  She received a trade-in value that neared or exceeded what she expected to receive based on her own research.  *Id.* ¶ 31.  Bridges sustained no out-of-pocket costs or loss-of-use expenses because of the Takata recall.  *Id.* ¶ 30.  Bridges first filed her claims on March 14, 2018.  *Id.* ¶ 32.

The undisputed material facts show that Bridges cannot prove damages, reliance, or a duty to disclose, as required by North Carolina law.  Similarly, the evidence shows that Bridges cannot prove elements of her Colorado, Utah, Virginia, West Virginia, or Wisconsin claims.

### A.  Bridges' North Carolina claims fail because she cannot prove damages, reliance, or a duty to disclose.

Bridges cannot prove that she suffered any damages recoverable under her NCUDTPA or fraudulent-concealment claims.  Consistent with this Court's prior holding that plaintiffs cannot "recover benefit of the bargain damages without regard for post-sale remedies," D.E. 4471 at 14, in a case like this one, North Carolina law prohibits recovery of damages on top of an effective recall repair, *Ridley v. Wendel*, 795 S.E.2d 807, 814 (N.C. App. 2016) (a plaintiff may only "recover an amount in damages which will put him in the same position as if the fraud had not been practiced on him" and "should not recover a windfall"); *Shaver v. N.C. Monroe Const. Co.*, 306 S.E.2d 519, 526 (N.C. App 1983) (declining to award a windfall and noting that benefit-of-the-bargain damages have "generally been applied in fraud cases").  That is, consistent with North Carolina's general policy against windfalls, "when the cost of repair does not involve an imprudent expense, the cost of repair method may best ensure the injured party of receiving the benefit of his

or her bargain." *Kenney v. Medlin Constr. & Realty Co.*, 315 S.E.2d 311, 315 (N.C. App. 1984); *see also Phillips v. Chesson*, 58 S.E.2d 343, 348 (N.C. 1950) ("As a general rule the diminished market value of the property will not be used as a measure of damages for a temporary injury . . . ." (quoting 15 Am. Jur. 2d *Damages* § 110)).

Here, there is no genuine dispute that MBUSA offered Bridges a free and effective recall repair. SOF ¶ 27. The cost to repair the alleged defect was therefore zero. Awarding Bridges any further damages would result in a double recovery that is impermissible under North Carolina law. *See Sprinkle v. N.C. Wildlife Res. Comm'n*, 600 S.E.2d 473, 478 (N.C. App. 2004) (reducing damages where "plaintiff was awarded double recovery: the difference in value before repair, plus the cost of repair"). Thus, the Court should grant summary judgment.

Bridges also cannot create a genuine issue of fact about whether she reasonably relied on any statement or omission by MBUSA in buying her car. Both North Carolina fraud and NCUDTPA claims require reasonable reliance. *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 227 (N.C. 2013) (likening the NCUDTPA reliance element to the "detrimental reliance requirement under a fraud claim"); *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) ("[A]ny reliance on the allegedly false representations must be reasonable."). Bridges has no evidence she relied on any statements or omissions by MBUSA. SOF ¶ 25. At best, she reviewed some ads related to the irrelevant issue of vehicle *financing*. *Id.* As such, the Court should grant summary judgment.[13]

Nor can Bridges establish a duty to disclose. North Carolina imposes a duty to disclose only on a party that is a fiduciary, took "affirmative steps" to conceal material facts, or has knowledge relevant to the parties' "negotiations" not discoverable through reasonable diligence.

---

[13] Bridges has previously argued that a classwide presumption of reliance is available under North Carolina law. D.E. 4674 at 9 n.7. As MBUSA has explained in prior briefing, Bridges' argument in that regard is incorrect. D.E. 4678 at 10; D.E. 4765 at 13; *see Pitts v. Am. Sec. Ins.*, 550 S.E.2d 179, 189 (N.C. Ct. App. 2001) (holding that reliance is an "individual issue"). But even if there were a presumption of reliance, it would be rebutted as to Bridges who, again, has testified that she did *not* review (and thus could not have relied) on anything from MBUSA other than unspecified materials relating to the irrelevant issue of vehicle financing.

*Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 733 (N.C. Ct. App. 2009).  It is undisputed that MBUSA had no knowledge of the alleged defect prior to Bridges' purchase, *see, supra*, Section I.A, and that Bridges purchased her vehicle used, SOF ¶ 24.  Bridges has no proof of "negotiations" with MBUSA, much less affirmative concealment or a fiduciary relationship.  Without proof of knowledge or any relationship between the parties, the Court should grant summary judgment.

**B. Bridges' *Zantac* claims on behalf of proposed Colorado, Utah, Virginia, West Virginia, and Wisconsin classes fail.**

The Court should also grant MBUSA summary judgment on the fraudulent-concealment claims that Bridges seeks to assert as a class representative under *Zantac*.  Because Bridges' North Carolina claims fail, she cannot pursue claims on behalf of putative class members from other states.  *See* D.E. 4689 at 20 ("[B]ecause Plaintiff Lodge (Georgia) is the only class representative for Plaintiffs' proposed Fraud Class [and was dismissed], the class cannot be certified as there is no class representative who is 'part of the class.'" (quoting *Amchem*, 521 U.S. at 594)).  Moreover, as explained below, the evidence shows that Bridges cannot prove claims under Colorado, Utah, Virginia, West Virginia, and Wisconsin law.

**1.   Bridges cannot maintain a claim for Colorado fraudulent concealment.**

Bridges' Colorado claim fails for several reasons.[14]  First, she has no cognizable damages under Colorado law.  In Colorado, reasonable cost of repair is the measure of damages, allowing for any decrease in market value as repaired.  *See Airborne, Inc. v. Denver Air Ctr., Inc.*, 832 P.2d 1086, 1091 (Colo. App. 1992) (holding that when damage to property is reparable, plaintiff is entitled to recover "reasonable costs of repair" together with any decrease in market value as repaired); *see also Bd. of Cnty. Com'rs v. Slovek*, 723 P.2d 1309, 1317 (Colo. 1986) (en banc) (noting that the "cardinal objective" is "making the plaintiff whole" and not to provide a "windfall"); *Zwick v. Simpson*, 572 P.2d 133, 134 (Colo. 1977) (en banc) ("Since the goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered, there

---

[14] Bridges must prove her Colorado claim by "clear and convincing" evidence.  *Wiley v. Byrd*, 408 P.2d 72, 74 (Colo. 1965).

may, of course, be instances in which repair or restoration cost may be a more appropriate measure."). There is no evidence that Bridges' vehicles "decrease[d] in market value as repaired," so her damages are zero. *See Airborne*, 832 P.2d at 1091. The Court should enter summary judgment on Bridges' Colorado claims, as it did for states with similar damages rules. D.E. 4471 at 1–2, 14–15.

Second, Bridges cannot prove the justifiable reliance required for her Colorado fraud claim. *Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010) (identifying justifiable reliance as an element of Colorado fraud claim); *see also State Farm Mut. Auto. Ins. v. Parrish*, 899 P.2d 285, 288 (Colo. App. 1994) (plaintiff must "specify the statements it claims were false or misleading"). Again, Bridges admitted she did not recall reviewing any MBUSA materials when buying her vehicle, except for the irrelevant issue of financing. SOF ¶ 25.

For fraudulent concealment, Colorado also requires proof that the defendant intended "that the concealment be acted upon." *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (Colo. 2018). Bridges cannot prove intent because, as shown, there is no genuine dispute that MBUSA lacked pre-sale knowledge of the alleged defect. *Supra* Section I.A.

### 2.   Bridges cannot maintain a claim for Utah fraudulent concealment.

Bridges' Utah claim fails on multiple grounds.[15] First, MBUSA's free and effective recall repair precludes damages under Utah law. "Where the cost of restoration is less than the diminution of value, the former is the proper measure of damages." *Leishman v. Kamas Valley Lumber Co.*, 427 P.2d 747, 749 (Utah 1967); *accord Ault v. Dubois*, 739 P.2d 1117, 1120–21 (Utah Ct. App. 1987) (the measure of damages is the cost of repairing the property by restoring it to its condition before the injury). Consistent with the Court's prior summary judgment order, MBUSA's free and effective recall repair eliminates damages under Utah's rule. *See* D.E. 4471 at 1–2, 14 (holding that "evidence of post-sale repairs . . . eliminates [the plaintiffs'] damages altogether" in the states that measure benefit-of-the-bargain damages as the lesser of the cost of

---

[15] Bridges must prove her Utah fraud claim by clear and convincing evidence. *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 43 (Utah 2003).

repair and the diminution of value).

Second, Bridges cannot satisfy the reasonable reliance element of her Utah fraud claim. *See Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996).  Even if Utah law permitted a presumption of reliance, plaintiffs can benefit from that presumption only if they prove a uniform misrepresentation.  *Roberts v. C.R. Eng., Inc.*, 318 F.R.D. 457, 519–20 (D. Utah 2017).  As explained in *Tershakovec*, car purchasers "may choose to rely on any of a number of marketing and branding representations."  79 F.4th at 1310 n.6.  Bridges has produced no evidence showing that MBUSA made uniform misrepresentations.  She thus fails to satisfy the predicate for presuming reliance.  And even if reliance could be presumed, Bridges' own testimony would rebut that presumption.  She testified she did not view any safety-related MBUSA marketing in making her purchase decision.  SOF ¶ 25.  In fact, she testified that she did not view any Mercedes-Benz marketing other than irrelevant dealership financing promotions.  *Id.*

Third, to the extent Bridges bases her fraud claims on alleged omissions, there is no evidence showing that MBUSA owed her duty to disclose.  Under Utah law, a duty to disclose requires individualized proof of a special relationship between MBUSA and the purchaser.  *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 287 (Utah 2006).  There is no evidence that Bridges had any special relationship with MBUSA.  SOF ¶ 24.

### 3.   Bridges cannot maintain a claim for Virginia fraudulent concealment.

Bridges has no cognizable damages under Virginia law,[16] which measures damages by the costs of repair if those costs are less than diminution of value.  *Averett v. Shircliff*, 237 S.E.2d 92, 95 (Va. 1977).  The Virginia Supreme Court has expressly "adopt[ed] [this] as the rule . . . for determining the proper measure of damages to motor vehicles."  *Id.* at 96.  Just as the Court held for states with similar rules, Bridges has no damages under Virginia law because MBUSA's free and effective recall reduced the cost of repair to zero.  D.E. 4471 at 14.

Bridges also cannot establish a duty to disclose under Virginia law, which requires

---

[16] Bridges must prove her Virginia claim by "clear and convincing evidence."  *Richmond Metro Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1998).

evidence of a fiduciary or confidential relationship with MBUSA.  *Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581 n.2 (Va. 2003) ("[C]oncealment can give rise to constructive fraud only in cases where there is a duty to disclose the concealed fact."); *Norton v. Wilkins & Co. Realty, Inc.*, 2022 WL 3050673, at *10 (W.D. Va. Aug. 2, 2022) ("Concealment of a material fact may constitute fraud where a 'legal obligation, or some fiduciary or confidential relationship . . . between the parties giv[es] rise to a duty to disclose.'" (quoting *W. Cap. Partners, LLC v. Allegiance Title & Escrow*, 520 F. Supp. 2d 777, 782 (E.D. Va. 2007))).  Bridges has no such proof.  Indeed, Bridges purchased her car used.  SOF ¶ 24.  Nor does Bridges have evidence of "intent to mislead" by MBUSA, without which her Virginia fraud claim fails.  *See, e.g.*, *Richmond Metro Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E. 2d 344, 346 (Va. 1998).

Finally, Bridges cannot prove reasonable reliance because, as shown above, she did not view any relevant MBUSA marketing.  SOF ¶ 25; *see Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 194 (Va. 1993) (reasonable reliance is "essential" to establishing fraud).  Virginia law does not permit a presumption of reliance.  *Henderson v. Henderson*, 495 S.E.2d 496, 499 (Va. 1998) ("Fraud, whether actual or constructive, is never presumed and must be strictly proved as alleged."); *see also Rakes v. Life Invs. Ins.*, 622 F. Supp. 2d 755, 765 (N.D. Iowa 2008) ("Whether Iowa, Missouri or Virginia law applies, Plaintiffs must show their reliance on the alleged fraudulent representations or omissions was reasonable."); *Doe*, 857 S.E.2d at 589 (plaintiff also must prove "a false representation").

### 4. Bridges cannot maintain a claim for West Virginia fraudulent concealment.

Bridges' West Virginia claim fails for lack of damages.[17]  West Virginia law permits damages only for the *lesser* of the cost of repair or diminution in value.  *See Brooks v. City of Huntington*, 768 S.E.2d 97, 102 n.9 (W. Va. 2014) ("When, however, injured personal property can be restored by repairs to the condition which existed before the injury and the cost of such

---

[17] Bridges must prove her West Virginia fraud claim by clear and convincing evidence.  *Bowens v. Allied Warehousing Servs., Inc.*, 729 S.E.2d 845, 852 (W. Va. 2012).

repairs is less than the diminution of the market value due to the injury, the measure of damages may be the amount required to restore such property to its previous condition."); *Ellis v. King*, 400 S.E.2d 235, 238–39 (W. Va. 1990) (limiting damages to cost of repair).  MBUSA's free and effective recall therefore eliminates damages in West Virginia just like in the other states addressed here and in the Court's prior summary judgment order.  *See* D.E. 4471 at 1–2, 14–15.

Bridges' West Virginia fraud claim also fails because she has no evidence of the required element of justified reliance.  *See Jennings v. Farmers Mut. Ins.*, 687 S.E.2d 574, 579 (W. Va. 2009).  Again, Bridges testified that she did not view any MBUSA advertising or marketing before her purchase other than irrelevant information about financing.  SOF ¶ 25.

### 5.   Bridges cannot maintain a claim for Wisconsin fraudulent concealment.

As in many other states, Wisconsin law measures damages as the "lesser" of the cost of repair or the diminution of value.[18]  *Laska v. Steinpreis*, 231 N.W.2d 196, 200 (Wis. 1975) (plaintiff may recover only the "lesser amount awardable under" the two alternative "diminished value" and "reasonable cost of repairs" tests); *see also Blodgett v. State Farm Mut. Auto. Ins.*, 646 N.W.2d 854, at *1 (Wis. Ct. App. 2002).  MBUSA's free and effective recall thus defeats any claim for damages under Wisconsin law, and the Court should enter summary judgment.  D.E. 4471 at 1–2, 14–15 (this Court granting summary judgment in states with identical damages rules).

Wisconsin law also requires proof that the alleged defect manifested, even in cases alleging a latent safety defect.  *Tietsworth v. Harley Davidson*, 677 N.W.2d 233, 238, 240–41 (Wis. 2004) (requiring manifestation of the defect where the alleged defect in a motorcycle's bearing was "dangerous" and could leave motorcyclists stranded or injured); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 785 F. Supp. 2d 925, 932 (C.D. Cal. 2011) (manifestation required by Wisconsin law despite allegations that the defect could cause unintended and immediate acceleration of vehicles).  It is undisputed that Bridges' airbag inflator never malfunctioned, and she thus cannot prove manifestation.  SOF ¶ 29.

---

[18] Bridges must prove her Wisconsin claim by "clear, satisfactory, and convincing evidence." *Tri-Tech Corp. of Am. v. Americomp Services, Inc.*, 646 N.W.2d 822, 827 (Wis. 2002).

Bridges' Wisconsin fraud claim is also barred by Wisconsin's economic-loss doctrine, which bars fraud claims based on alleged misrepresentations or omissions regarding defects in products that cause purely economic loss—including vehicle purchases. *Tietsworth*, 677 N.W.2d at 168. It is undisputed that plaintiffs seek only benefit-of-the-bargain damages here. D.E. 4482, 10/21/2022 Hr'g Tr., at 55:2–10.

Bridges also cannot prove reliance given her testimony that she did not recall viewing any relevant MBUSA marketing or advertising in connection with her purchase. *See* SOF ¶ 25; *Hennig v. Ahearn*, 601 N.W.2d 14, 22 (Wis. App. 1999) ("In order to prevail on any misrepresentation claim, [a plaintiff] must establish both that [the defendant] made a representation of fact that was untrue, and that [the plaintiff] justifiably relied on the misrepresentation."). *Cuene v. Hillard*— which this Court previously cited—expressly holds that a Wisconsin "common law fraud claim requires the plaintiff to show reliance." 754 N.W.2d 509, 514 (Wis. Ct. App. 2008); *accord Staudt v. Artifex Ltd.*, 16 F. Supp. 2d 1023, 1031 (E.D. Wis. 1998) (to maintain a fraud claim, a plaintiff must "establish that [plaintiff] relied on the defendants' alleged fraudulent misrepresentations or omissions"). Wisconsin also does not permit a presumption of reliance. *See In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 221–22 (E.D. La. 1998) (collecting cases, including *Staudt v. Artifex, Ltd.*, 16 F. Supp. 2d 1023 (E.D. Wis. 1998)).[19]

Finally, Bridges has no evidence MBUSA owed her any duty of disclosure, as Wisconsin law has not yet "recognize[d] a duty to disclose in consumer transactions." *Naparala v. Pella Corp.*, 153 F. Supp. 3d 884, 894 (D.S.C. 2015) (citing *Tietsworth*, 677 N.W.2d at 239).

## IV.   The remaining named plaintiffs' claims fail.

### A.   The Phillipses' Oregon claims fail.

Jack and Nancy Phillips, husband and wife, both seek to sue MBUSA for the same

---

[19] Plaintiffs previously relied on cases involving statutory (rather than common law) fraud claims that do not require reliance. *See, e.g.*, D.E. 4674 at 9 n.4 (first citing *Speerly v. General Motors*, 343 F.R.D. 493, 520 (E.D. Mich. 2023), and then citing *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 2019 WL 1418292, at *26, *30 (W.D. Mo. Mar. 21, 2019)). These cases do not establish a presumption of reliance for common law fraud claims that in fact require reliance.

claims—fraudulent concealment under Oregon law and a violation of the Oregon UTPA—based on their May 2014 purchase of a used 2010 R 350 BlueTEC from a private seller in Portland, Oregon. SOF ¶ 33; D.E. 4610 at 13. The Phillipses received a recall notice from MBUSA in May 2016, and their airbags were replaced for free at Mercedes-Benz Portland. SOF ¶¶ 35–36. Their airbag inflators never malfunctioned. *Id.* ¶ 37. After the airbags were replaced, the Phillipses ran into a large tree while driving their vehicle and received a total-loss payment from their insurer. *Id.* ¶ 38. They first filed suit in March 2018. *Id.* ¶ 40.

The Phillipses' claims fail as a matter of law. First, Mr. Phillips—who testified he was the primary driver of the vehicle and conducted the research leading to their purchase—passed away on February 9, 2023 (as with Radican, MBUSA learned this only recently in conducting research for this motion). *See id.* ¶¶ 41–42. That alone requires summary judgment for MBUSA, because it "self-evident" that a deceased person lacks standing to be party to litigation. *LN Mgmt.*, 957 F.3d at 950; *see also, supra*, Section II.AA.1. Put simply, "[t]here is no plaintiff with standing if there is no plaintiff." *In re 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016); *Hencle*, 2021 WL 1397882, at *2 (dismissing deceased plaintiff's claims because there cannot be an Article III "case or controversy" absent a plaintiff "with legal existence"); *Lujan*, 504 U.S. at 561 (standing required at all stages of litigation).

Nancy Phillips cannot maintain the Oregon claims in Mr. Phillips' stead. Mr. Phillips was responsible for the Phillipses' purchase decision. And it would be fundamentally unfair to permit Mrs. Phillips to proceed because she could not be deposed—despite MBUSA noticing her for deposition—due to her disability and illness. *See* SOF ¶ 43; *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 699 (2008) (defendants generally have a right to depose plaintiffs); *Quintanilla v. Lexington Ins.*, 2023 WL 11799707, at *3 (S.D. Fla. Apr. 24, 2023) (finding refusal to produce plaintiff for deposition after discovery cutoff "untenable" when defendant had been unable to depose her due to her medical condition).

Even if Mrs. Phillips could proceed with her claims, they would fail as a matter of law. Neither Jack nor Nancy Phillips could recall viewing any advertisements or marketing materials

identified in the complaint.  SOF ¶ 34.  And Mr. Phillips testified that he could not remember seeing or hearing any specific MBUSA advertisements or marketing before purchasing the vehicle. *Id.*  In fact, he did not recall any specific advertisements or marketing *at all* besides a CARFAX report and the private seller's Craigslist ad.  *Id.*

Thus, Mrs. Phillips's claims would fail because she has no evidence of reliance, which Oregon requires both for fraudulent concealment claims and for UTPA claims based on alleged fraud that prevented the plaintiff from "get[ting] what they believed they were buying."  *See Knepper v. Brown*, 195 P.3d 383, 329 (Or. 2008) (common-law fraud); *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 23, 27–28 (Or. 2015) (UTPA); *see also Webb*, 546 P.2d at 1080 (fraud requires "a representation").  Again, the Phillipses cannot identify a single MBUSA representation on which they even *might* have relied—they cannot recall seeing any MBUSA materials at all (unsurprising, since they bought their car used).

A fraud-by-omission theory fails as a matter of Oregon law because the Phillipses had no special relationship with MBUSA.  In Oregon, fraud by omission requires a duty to disclose. *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1142–43 (D. Or. 2020).  And a defendant owes a duty to disclose only when the parties have a "special relationship," as when "the plaintiff has authorized the defendant to exercise independent judgment on [their] behalf."  *Id.* at 1143.  Here, it is undisputed that the Phillipses bought their used vehicle from a private, individual seller.  SOF ¶ 33.  Thus, the Phillipses did not have a transactional relationship with MBUSA *at all*, much less a "special relationship" of trust.

The Phillipses also have no cognizable damages under Oregon law.  Oregon recognizes the cost of repair as an application of the benefit-of-the-bargain rule.  *Morasch v. Hood*, 222 P.3d 1125, 1131 (Or. App. 2009).  And the proper damages for temporary harm, or harm "susceptible of repair," is the cost of repair.  *McCormick v. City of Portland*, 82 P.3d 1043, 1048–49 (Or. App. 2004) (citing *Hudson v. Peavey Oil Co.*, 566 P.2d 175, 179 (Or. 1977)).  Anything more would be a windfall.  *See id.* at 1047.  Because of MBUSA's free and effective recall repair, there are simply no damages for Mrs. Phillips to recover.  The Court should therefore enter summary judgment for

MBUSA on the Phillipses' Oregon claims, as it previously did for claims under states laws with similar damages rules.  D.E. 4471 at 1–2, 14–15.

Finally, the Phillipses' UTPA claim is barred by the statute of limitations.  Under Oregon law, a plaintiff must file their UTPA claims within one year of discovering any alleged misconduct.  Or. Stat. § 646.638(6).  Here, the Phillipses received a recall notice in May 2016, but they did not file until March 2018, almost two years later.  SOF ¶¶ 35, 40.

### B.  Knapp's Iowa claims fail.

In May 2011, Knapp purchased a new 2011 Mercedes-Benz E 550 from Mercedes-Benz of Des Moines in Des Moines, Iowa.  SOF ¶ 44.  Knapp could not recall viewing any specific advertisements or brochures before buying the vehicle.  *Id*. ¶ 45.  Further, there is no dispute that Knapp's airbag inflators never malfunctioned or deployed.  *Id*. ¶ 46.  Indeed, at the time Knapp relinquished her vehicle, the airbags and their inflators were found to be intact and in working order.  *Id*. ¶ 52.  Knapp testified that she learned of the recall in 2016, when she received a notice letter offering a free airbag replacement.  *Id*. ¶¶ 48–49.  Knapp elected not to have the recall performed.  *Id*. ¶ 53.  Knapp traded in her vehicle for a new vehicle on November 1, 2019.  *Id*. ¶ 50.  Knapp filed her claims in June 2017, asserting fraudulent concealment and a violation of the Iowa Consumer Fraud Act.  *Id.* ¶ 54; *see also* D.E. 4026 (operative complaint asserting Knapp's claims).  Both claims fail.

First, Knapp has no cognizable damages.  Just like the states addressed in the Court's prior summary judgment order (D.E. 4471 at 1–2, 14–15), under Iowa law, the measure of damages for injury to a motor vehicle is the cost of repair when such cost is less than the loss in market value.  *Long v. McAllister*, 319 N.W.2d 256, 261 (Iowa 1982) ("When the injury to the motor vehicle can be repaired so that, when repaired, it will be in as good condition as it was in before the injury, and the cost of repair does not exceed the difference in market value of the vehicle before and after the injury, then the measure of damages is the reasonable cost of repair [plus 'loss-of-use' damages].");  *see also Marx v. Elkader Co-op. Co.*, 2002 WL 663690, at *2 (Iowa Ct. App. Apr. 24, 2002) ("When either of two measures of damages will fully compensate a plaintiff for his or her loss, the

measure must be adopted which is less expensive to defendant."); *id.* ("No injured party should receive more than has been lost as a result of another's wrongdoing."); D.E. 4471 at 13 ("[T]he definition of benefit-of-the-bargain damages does not vary based on the particular claim at issue[.]").  Here, plaintiffs concede they are not seeking "loss of use" damages (D.E. 4482, 10/21/2022 Hr'g Tr., at 55:2–10), so the free and effective recall repair negates any recoverable damages under Iowa law.  Consistent with the Court's previous treatment of states with identical damages rules, the Court should enter summary judgment for MBUSA on Knapp's Iowa claims. D.E. 4471 at 1–2, 14–15.

Second, Knapp's claims fail because she has no evidence of reliance.  Knapp does not recall viewing *any* advertising or marketing material before her purchase.  SOF ¶ 45; *see also B&B Asphalt*, 242 N.W.2d at 284 (plaintiff must establish "a representation").  This defeats both fraud and CFA claims under Iowa law.  *Brown v. La.-Pac. Corp.*, 820 F.3d 339, 349 (8th Cir. 2016) (under Iowa CFA, plaintiff must show that "but-for [defendant's] purported misrepresentation, he would not have elected to purchase" the product at issue); *Lee Cnty. Mental Health Ctr., Inc. v. Lee Cnty. Bd. of Sup'rs*, 2000 WL 1288873, at *5 (Iowa App. Ct. Sept. 13, 2000) (affirming trial court's directed verdict on fraudulent nondisclosure claim where plaintiff did not establish reliance); *City of McGregor v. Janett*, 546 N.W.2d 616, 619 (Iowa 1996) (fraud requires proof of reliance).

### C.  Goldberg's Washington claims fail.

Goldberg bought a new 2011 GLK 350 from Mercedes-Benz of Bellevue in Bellevue, Washington in December 2010.  SOF ¶ 55.  Before purchasing, Goldberg viewed unspecified TV ads related to Mercedes-Benz generally and a brochure specific to the GLK 350.  *Id.* ¶ 56. Goldberg did not testify that he viewed or relied on any statements particular to the airbag inflators in the GLK 350, and plaintiffs have not pointed to any allegedly false or misleading statements in the brochure Goldberg reviewed.  *See id.*  Goldberg received a recall notice letter from MBUSA that offered to replace his airbags for free, but he traded in his GLK 350 before taking advantage of the free recall.  *Id.* ¶¶ 57, 60.  The airbag inflators in Goldberg's GLK 350 never malfunctioned,

and he sustained no out-of-pocket costs or loss-of-use expenses as a result of the Takata inflator recall. *Id.* ¶¶ 58–59. Goldberg first filed his claims on March 14, 2018. *Id.* ¶ 61.

The Court should grant MBUSA summary judgment on Goldberg's Washington fraudulent concealment and Washington Consumer Protection Act ("CPA") claims for several reasons. First, because MBUSA offered Goldberg a free and effective recall repair, he has no cognizable damages. Under Washington law, damages are calculated as the *lesser of* "(1) The reasonable value of necessary repairs to any property that was damaged; or (2) The difference between the fair cash market value of the property immediately before the occurrence and the fair cash market value of the unrepaired property immediately after the occurrence." *Thompson v. King Feed & Nutrition Serv.*, 105 P.3d 378, 381 (Wash. 2005) (en banc); *accord CF Sales, Inc. v. Cent. Puget Sound Reg'l Transit Auth.*, 2011 WL 13206153, *4 (Jan. 21, 2011) ("The measure of damages is the lesser of the cost to restore the property to its previous condition versus any diminution in its value as a result of such damage. The court awards damages . . . as the cost to restore the property to its prior condition without conferring a windfall[.]"). MBUSA's free and effective recall reduces the cost of repair to zero, eliminating Goldberg's damages. *Cf.* D.E. 4471 at 14 ("[T]he Court must consider the cost of repair in tandem with the alleged point-of-sale overpayment and award the lesser of these damages measures."). The Court should therefore enter summary judgment for MBUSA consistent with its prior order. D.E. 4471 at 1–2, 14–15.

Second, Goldberg's claims are time-barred. Goldberg bought his car in December 2010, but did not file his claims against MBUSA until 2018. SOF ¶¶ 55, 61. That eight-year delay far exceeds the four-year statute of limitations applicable to Goldberg's CPA claim and the three-year statute of limitations applicable to his fraud claim. Wash. Rev. Code § 19.86.120 (Washington CPA); *id.* § 4.16.080(4) (fraud claims). Goldberg cannot invoke tolling in Washington, which requires active concealment by the defendant. *Giraud v. Quincy Farm & Chem.*, 6 P.3d 104, 110 (Wash. App. 2000). Because plaintiffs cannot prove MBUSA knew of the alleged defect (*see supra* Section I.A.), Goldberg cannot invoke tolling.

Finally, Goldberg has not raised a genuine dispute of material fact as to reliance.

Washington requires reliance for both common-law fraud claims and CPA claims where—as here—a plaintiff incorporates reliance into his causation theory. *See* D.E. 4026 ¶¶ 344, 348–49, 922 (alleging reliance); *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (en banc) (describing reliance as an element of fraud); *G.G. v. Valve Corp.*, 579 F. Supp. 3d 1224, 1233 (W.D. Wash. 2022) (describing reliance as an aspect of causation under the Washington CPA); *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 996 (Wash. 2020) (Washington CPA requires proof of reliance when it is the alleged mechanism of causation); *see also Stiley*, 925 P.2d at 204 (plaintiff must prove "a representation"). Goldberg has no evidence that he relied on any statements or omissions by MBUSA. He did not testify to reliance. SOF ¶ 56. To the contrary, Goldberg testified that he viewed only unspecified TV ads related to Mercedes-Benz generally and that he reviewed a GLK 350 brochure—he did not testify that these materials contained any representations about the safety of the airbags or that he relied on any such statements in deciding to buy his car. *Id.*

### D. Taylor's Mississippi claims fail.

Taylor bought a used 2010 C 300 from a third-party dealership, not affiliated with MBUSA, in Meridian-Forest, Mississippi on May 5, 2012. SOF ¶¶ 62–63. She cannot recall any advertisements she relied on when deciding to purchase the vehicle. SOF ¶ 65. Nor does she recall seeing or hearing any MBUSA advertisements regarding the C 300 model she purchased, only general ads. *Id.* Of those, Taylor does not recall where she saw or heard them or even whether she encountered them before buying her vehicle. *Id.* She cannot recall whether she ever visited the MBUSA website, read any MBUSA press releases, or viewed the MBUSA advertisements and marketing materials identified in the complaint. *Id.* She cannot recall any statements made by MBUSA at all. *Id.*

Taylor received a recall notice from MBUSA in May 2016, and her airbags were replaced for free at her dealership. *Id.* ¶¶ 66, 68. The Takata airbag inflators in her vehicle never malfunctioned. *Id.* ¶ 67. As of her deposition in September 2020, Taylor still owned the vehicle. *Id.* ¶ 70. The vehicle was delivered to the original owner, before Taylor, on November 30, 2009. *Id.* ¶ 64. Taylor first filed suit on March 14, 2018. *Id.* ¶ 74. She now asserts claims for fraudulent

concealment and breach of implied warranty of merchantability under Mississippi law individually and on behalf of a proposed Mississippi class.  D.E. 4610 at 13.

Taylor cannot recover for breach of implied warranty for three reasons.  First, MBUSA cured the alleged defect when given a reasonable opportunity.  In Mississippi, a plaintiff cannot recover unless she gives the defendant a "reasonable opportunity to cure."  *Watson Quality Food, Inc. v. Casanova*, 999 So. 2d 830, 834–35 & n.3 (Miss. 2008); *Mercury Marine v. Clear River Const. Co.*, 839 So. 2d 508, 512 (Miss. 2003) (failure to afford opportunity to cure was "fatal" to implied-warranty claim); *Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So. 2d 324, 328 (Miss. 1988) (same); *Estes v. Lanx, Inc.*, 2015 WL 9462964, at *8–9 (N.D. Miss. Dec. 23, 2015) (same). Here, MBUSA replaced the airbags in Taylor's vehicles for free.  SOF ¶ 68.  Any alleged defect was cured.

Second, Taylor has no evidence that the alleged inflator defect ever manifested in her vehicle, and she thus lacks any evidence of the "failure in product performance" required for a Mississippi implied-warranty claim.  *See Jarman v. United Indus. Corp.*, 98 F. Supp. 2d 757, 768 (S.D. Miss. 2000).  In the context of an alleged vehicle defect, this principle applies even for "potentially life-threatening defects."  *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 172, 174 (S.D. Miss. 1996).[20]  Without manifestation of a defect, Taylor has no claim.

Third, Taylor's implied warranty claim is time-barred.  The relevant statute of limitations is six years, and the implied-warranty claim accrues when the alleged breach of warranty occurs, *not* when the plaintiff discovers it.  Miss. Code. § 75–2–725(1)–(2).  Mississippi's highest court has expressly held that this period begins to run upon delivery for warranty claims against auto manufacturers.  *Forbes v. Gen. Motors Co.*, 993 So. 2d 822, 824 (Miss. 2008).  And "the relevant delivery is delivery to the *original* purchaser."  *Cleveland Air Serv., Inc. v. Pratt & Whitney Can.*, 2016 WL 4179987, at *5 (N.D. Miss. Aug. 5, 2016) (emphasis added).  Taylor's vehicle was

---

[20] A plaintiff's ability to drive a car for years—and for thousands of miles—without encountering difficulty also negates any claim of breach of implied warranty of merchantability.  *See Ford Motor Co. v. Fairley*, 398 So. 2d 216, 219 (Miss. 1981); *Shelter Ins. v. Ford Motor Co.*, 2006 WL 318821, at *7 (N.D. Miss. Feb. 9, 2006).

delivered to the original purchaser in 2009, and Taylor did not file suit until nine years later, in 2018. SOF ¶¶ 64, 71. Taylor's claim is thus barred by the six-year limitations period.

Taylor's fraudulent concealment claim fails because she has no evidence of reliance, an essential element of fraud under Mississippi law. *See Levens v. Campbell*, 733 So. 2d 753, 761–62 (Miss. 1999); *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 264 (Miss. 2009) (same for claims of fraud by omission). There is no evidence that Taylor relied on anything from MBUSA in purchasing her vehicle. SOF ¶ 65. She cannot even identify any MBUSA statement related to her vehicle. *Id.*; *see also Mabus*, 13 So. 3d at 264 (plaintiff must prove "a representation"). Nor can she confirm that she ever viewed—much less relied on—the MBUSA materials identified in the complaint. SOF ¶ 65. Without recalling anything from MBUSA she might even *theoretically* have relied on, Taylor has no hope of proving reliance.

Taylor also cannot prove a duty to disclose, which Mississippi law recognizes only when one party has information the other should know due to "a fiduciary or other similar relation of trust and confidence." *Mooneyham v. Progressive Gulf Ins.*, 910 So. 2d 1223, 1227 (Miss. App. 2005). A duty to disclose cannot arise in an arm's length transaction. *See Taylor v. State Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049–50 (Miss. App. 2007) ("In Mississippi, the duty to disclose material facts only arises where there is a fiduciary relationship between the parties."). And absent such a duty, an "affirmative act of concealment" must be shown. *Morgan v. Green-Save, Inc.*, 2 So. 3d 648, 653 (Miss. App. 2008). As the undisputed facts show, Taylor bought her vehicle from a third party, unaffiliated with MBUSA. SOF ¶¶ 62–63. Her purchase thus does not involve any transaction with MBUSA, much less a "relation of trust and confidence." Nor could Taylor prove any "affirmative act of concealment" by MBUSA, because MBUSA had no knowledge of the Takata airbag inflators until well after Taylor purchased her vehicle in 2012. *See, supra,* Section I.A.

Taylor's fraud claim is also time-barred. In Mississippi, the three-year catchall statute of limitations governs fraud claims. *See* Miss. Code. § 15–1–49(1). Fraud claims accrue "upon the completion of the sale induced by such false representation, or upon the consummation of the

37

fraud." *Brown v. McKee*, 242 So. 3d 121, 127–28 (Miss. 2018).  Taylor's fraud claim thus accrued upon her purchase of the vehicle in 2012, and is barred by the three-year statute of limitations since she did not file her claim until 2018.

Finally, Taylor has no cognizable damages for either the warranty or fraud claim.  It is a "well-established principle" of Mississippi law that the cost of repairs is the proper measure of damages when property can be restored. *Wachob Leasing Co. v. Gulfport Aviation Partners, LLC*, 2016 WL 10536040, at \*7 (S.D. Miss. Nov. 29, 2016); *see also Bell v. First Columbus Nat'l Bank*, 493 So. 2d 964, 970 (Miss. 1986) ("[I]f repairs to damaged personal property will make it worth the same as it was before the damage, the calculation of the cost of repairs is all that is necessary."); *Thomas v. Glob. Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1115 (Miss. 1986) (similar). Consistent with the Court's reasoning as to other states with similar damages rules (D.E. 4471 at 14), Taylor is entitled to only the cost of repair—zero.

### E.  Calhoun's Georgia claims fail.

Calhoun bought a used 2011 C 300 from a private seller in Atlanta, Georgia in September 2015.  SOF ¶ 72.  She did not recall seeing or hearing any specific MBUSA advertisements or marketing.  SOF ¶ 74.  Nor did she review any advertising in connection with her purchase of the vehicle, except the private seller's for-sale advertisement.  *Id.*  In December 2017, Calhoun received a recall notice from MBUSA offering to replace her airbags for free.  *Id.* ¶ 75.  But before the airbags could be replaced, another driver rear-ended Calhoun's vehicle, and she received a total-loss payment from the driver's insurance company.  *Id.* ¶ 76.  The airbag inflators did not malfunction in that collision, nor did they ever malfunction.  *Id.* ¶ 77.  The Takata airbag inflators did not factor into the valuation.  *Id.*  Calhoun—already aware of the Takata inflator recall—bought a *second* 2011 Mercedes-Benz C 300 from a private seller without asking about the vehicle's airbags or inflators.  SOF ¶ 79.  She first filed suit in March 2018 and now asserts claims for fraudulent concealment under Georgia law and a violation of the Georgia Fair Business Practices Act ("FBPA") on her own behalf.  SOF ¶ 80; *see* D.E. 4610 at 13.

The undisputed evidence precludes any finding of justifiable reliance, which Georgia

requires for both fraud and FBPA claims.  *See Jimenez v. Houseboats on Lanier, Inc.*, 899 S.E.2d 334, 339 (Ga. App. 2024); *Lynas v. Williams*, 454 S.E.2d 570, 574 (Ga. App. 1995); *see also Johnson*, 747 S.E.2d at 521 ("false representation" an element of fraud).  Calhoun not only failed to point to a single MBUSA statement she *might* have relied on, but also testified that she did not rely on *any* advertising outside of the private seller's for-sale ad.  SOF ¶ 74.

Calhoun also cannot prove that MBUSA owed her a duty to disclose.  In Georgia, fraudulent concealment requires that the defendant had a duty to disclose arising from a "confidential or special relationship." *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1351 (N.D. Ga. 2015). *McCabe*, for example, held that plaintiffs who bought used cars from an unaffiliated third party and a Mercedes-Benz dealership could not show a duty to disclose because "there [wa]s no evidence that Defendants had direct knowledge of Plaintiffs' purchases of the vehicles in question and had no apparent relationship with Plaintiffs." *Id.* Similarly, Calhoun bought her vehicle used from an unaffiliated third party.  SOF ¶ 72.  Because MBUSA had no relationship with Calhoun, MBUSA had no duty to disclose under Georgia law.  Her fraudulent concealment claim cannot stand.

Nor can Calhoun prove any cognizable damages.  Georgia recognizes the general principle that "damages are intended to place an injured party, as nearly as possible, in the same position they would have been if the injury had never occurred." *John Thurmond & Assocs., Inc. v. Kennedy*, 668 S.E.2d 666, 668 (Ga. 2008).  Following this principle, a plaintiff may not recover damages for injury to a vehicle that would put her "in a position superior to that which [she] previously held." *Canal Ins. v. Tullis*, 515 S.E.2d 649, 650 (Ga. App. 1999).  Any additional damages would be a windfall, which is "forbidden." *See Rafferzeder v. Zellner*, 613 S.E.2d 229, 231 (Ga. App. 2005).  Under the Georgia FBPA, likewise, a plaintiff may seek only damages equal to the "actual injury suffered." *Williams v. Jet One Jets, Inc.*, 755 F. Supp. 2d 1281, 1289 (N.D. Ga. 2010).  Here, it is undisputed that MBUSA offered to replace the airbags in Calhoun's vehicle at no cost to her; that Calhoun received full payment for the value of her vehicle; and that the valuation did not take the Takata airbag inflators into account.  SOF ¶ 76.  As the Court has

explained in the context of other states' laws, and consistent with Georgia law, Calhoun cannot recover damages that would put her in a *better* position than she bargained for.  *See* D.E. 4471 at 5.  Any recovery now, after she has already received full compensation, is "forbidden."

Finally, Calhoun's fraud claim is time-barred.  Common-law fraud is subject to Georgia's catchall two-year statute of limitations.  *See* Ga. Code § 9–3–33.  To toll the statute, a plaintiff must prove that the alleged fraud involved "moral turpitude" and that she exercised "reasonable diligence" to discover her claim.  *Wilson v. Phillips*, 495 S.E.2d 904, 905 (Ga. App. 1998).  The defendant must have concealed the claim by affirmative conduct beyond "mere silence."  *Id.* at 905.  Calhoun cannot toll the Georgia statute, as she has produced *no* evidence of "moral turpitude" or "reasonable diligence."  And MBUSA could not have affirmatively concealed Calhoun's claim, because it lacked pre-sale knowledge of the alleged defect.  *See supra* Section I.A.  Since it is undisputed that Calhoun bought her vehicle in 2015 and filed suit in 2018, over two years later, her fraud claim is time-barred.  SOF ¶¶ 72, 80.

## CONCLUSION

For all these reasons,[21] the Court should grant MBUSA's motion for summary judgment.

---

[21] MBUSA hereby adopts by reference arguments raised by GM and FCA in their concurrently filed motions for summary judgment.  To the extent the Court grants summary judgment as to those defendants for reasons not otherwise raised herein, the Court should do the same for MBUSA.  *Club Madonna, Inc. v. City of Miami Beach*, 500 F. Supp. 3d 1304, 1313 n.1 (S.D. Fla. 2020) (Moreno, J.) ("[T]he Court may grant summary judgment *sua sponte* under Federal Rule of Civil Procedure 56(f)"), *aff'd*, 42 F.4th 1231 (11th Cir. 2022).

Dated: July 12, 2024                    Respectfully submitted,

                                        */s/ Raoul G. Cantero*
                                        Raoul G. Cantero (Florida Bar No. 552356)
                                        raoul.cantero@whitecase.com
                                        Jaime A. Bianchi (Florida Bar No. 908533)
                                        jbianchi@whitecase.com
                                        **WHITE & CASE LLP**
                                        200 South Biscayne Boulevard, Suite 4900
                                        Miami, FL 33131
                                        Telephone: (305) 371-2700
                                        Facsimile: (305) 358-5744

                                        Troy M. Yoshino (*admitted pro hac vice*)
                                        TYoshino@winston.com
                                        Eric J. Knapp (*admitted pro hac vice*)
                                        EKnapp@winston.com
                                        **WINSTON & STRAWN LLP**
                                        101 California Street, Suite 3500
                                        San Francisco, CA 94111-5840
                                        Telephone: (415) 591-1000
                                        Facsimile: (415) 591-1400

                                        *Attorneys for Defendant*
                                        *Mercedes-Benz USA, LLC*

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: *<u>/s/ Raoul G. Cantero</u>*
      Raoul G. Cantero