# Exhibit 6

Page 1

```
 1           UNITED STATES DISTRICT COURT FOR THE
                SOUTHERN DISTRICT OF FLORIDA
 2                     MDL No. 2599
 3           Master File No. 15-2599-MD-MORENO
             S.D. Fla. Case No. 15-20664-CV-MORENO
 4                  (Personal Injury Track)
             S.D. Fla. Case No. 14-24009-CV-MORENO
 5                   (Economic Loss Track)
 6    IN RE:
 7    TAKATA AIRBAG PRODUCTS
 8    LIABILITY LITIGATION
 9    _____/
10
11                          Remote Proceeding
                            July 28, 2021
12                          10:12 a.m. - 1:50 p.m.
13
14           VIDEO DEPOSITION OF GREG GUNTHER
15                    (via teleconference)
16       Taken before SUZANNE VITALE, R.P.R., F.P.R.
17    and Notary Public for the State of Florida at Large,
18    pursuant to Notice of Taking Deposition filed in the
19    above cause.
20
21
22
23
24
25
```

Page 74

1 A. Research and development.
2 Q. So is it your testimony, sir, that the
3 reason that Daimler made defect determinations is
4 because it is -- has research and development
5 expertise in airbags?
6 A. They're the ones who developed the system
7 in our vehicles.
8 Q. What do you mean by "the system"?
9 A. The SRS system or airbag system.
10 Q. Is there anything that would prevent MB
11 U.S.A from hiring someone with such expertise in
12 order for it to be able to make independent
13 determinations of a defect?
14     MR. KNAPP: Objection to form.
15     THE WITNESS: MB U.S.A would not be in a
16   position to hire an outside expert or to say
17   whether or not an outside expert is the
18   appropriate expert to investigate it. Daimler
19   would have to make that decision.
20 BY MR. BOWER:
21 Q. Why is it that Daimler would have to make
22 that decision?
23 A. They're the experts in the systems. They
24 know them better than anyone else.
25 Q. What do you mean by "the systems"? Can

Page 75

1 you be more specific?
2 A. SRS or, in this case, airbag.
3 Q. So because Daimler knows the airbag
4 systems better than anyone else, they're the only
5 ones capable of making it a defect determination?
6     MR. KNAPP: Objection to form.
7     THE WITNESS: Yes.
8 BY MR. BOWER:
9 Q. But in this case, sir, wasn't the defect
10 determination based on the decision of Takata?
11 A. In this case, yes.
12 Q. Was MB U.S.A aware that its vehicles had
13 Takata airbags installed in them prior to the
14 recall?
15 A. Sorry. Can you repeat the question?
16 Q. Sure. I'll rephrase.
17     Do you know whether MB U.S.A knew that
18 vehicles were installed with Takata airbags prior to
19 Daimler agreeing to Takata's decision to recall the
20 vehicles?
21 A. MB U.S.A does not select suppliers for our
22 vehicles.
23 Q. What airbags are the current models of MB
24 U.S.A vehicles equipped with?
25 A. I don't know. I don't know what you're

Page 76

1 referring to as current models.
2 Q. Does MB U.S.A sell new vehicles today?
3 A. Yes.
4 Q. What airbags are the vehicles equipped
5 with?
6 A. Are you looking for a supplier?
7 Q. Yes.
8 A. I don't know.
9 Q. So, sir, as head of vehicle compliance for
10 Mercedes-Benz USA, you're unaware of what suppliers
11 supplies the airbags for the Mercedes-Benz vehicles;
12 is that correct?
13     MR. KNAPP: Objection, asked and answered.
14     THE WITNESS: I don't select suppliers for
15   airbags. If there is a specific request for us
16   to check the certification or meeting the
17   standards of Federal Motor Vehicle Safety
18   Standard related to airbags, then we would
19   supply information coming from Daimler as to
20   what the supplier of those airbags are.
21 BY MR. BOWER:
22 Q. I understand, sir, that you're not the
23 ones who select the suppliers.
24     But it's also true that you don't know who
25 those suppliers are; is that correct?

Page 77

1 A. It's on a case-by-case basis. I can't
2 tell you if we have multiple suppliers and which
3 ones supply for different models until we look into
4 it.
5 Q. Under what circumstance would you look
6 into it?
7 A. We would look into it if we had a request
8 from NHTSA on the certification side.
9 Q. If you could just turn back one page in
10 that exhibit to page ending in 758.
11 A. Okay.
12 Q. The third question from the top, the
13 question is "I demand that another type of airbag
14 brand (not Takata) is installed in my car. Will you
15 do this?"
16     The answer is "Each airbag needs to meet
17 strict U.S. crash and safety design requirements."
18     Do you see that?
19 A. Yes, I do.
20 Q. How does MB U.S.A ensure that each airbag
21 that it sells in the United States meets these
22 strict U.S. crash and safety design requirements?
23 A. MB U.S.A does not ensure. Our Daimler
24 colleagues who develop the airbag system or the
25 safety restraint system are the ones that ensure

20 (Pages 74 - 77)

Veritext Legal Solutions
800-726-7007                                                              305-376-8800

Page 78

1  that it meets U.S. crash and safety design
2  requirements.
3      Q.  So would you agree that MB U.S.A has an
4  obligation to make sure that those requirements are
5  met?
6          MR. KNAPP:  Objection to form.
7          THE WITNESS:  When we have requests from
8      NHTSA to make sure that that obligation is met,
9      we work with our Daimler counterparts to
10     provide that information.
11 BY MR. BOWER:
12     Q.  What about separate -- aside from when you
13 have requests from NHTSA?
14         Just generally speaking, would you agree
15 that MB U.S.A has an obligation to make sure that,
16 for the cars that it sells in the United States,
17 those strict U.S. crash and safety design
18 requirements are met?
19         MR. KNAPP:  Objection to form.
20         THE WITNESS:  No, we do not have an
21     obligation.
22 BY MR. BOWER:
23     Q.  And what's your basis for that statement?
24     A.  We are not designers of the airbag system.
25     Q.  Sir, when was the last time you issued a

Page 79

1  news channel update in relation to Takata airbags?
2      A.  I don't recall exactly.  It would be the
3  last priority group launch.
4      Q.  Do you recall approximately when that was?
5      A.  I don't.
6      Q.  Do you know whether it was in the last six
7  months or so?
8      A.  I don't recall.
9      Q.  Are there any plans to issue future news
10 channel updates related to the Takata airbag recall?
11     A.  None that I'm aware of.
12     Q.  Just give me a second.  I'm going to use
13 another exhibit here.
14         Sir, you should be able to hit refresh.
15 Exhibit 4, which is a -- appears to be either a
16 chart or a PowerPoint slide, I'm not sure.  But it's
17 minutes from a customer service general management
18 meeting.
19         Let me know if you've had a chance to pull
20 it up and review it, okay?
21     A.  Yeah.  I just pulled it up.  I'm reviewing
22 it right now.  Okay.
23         (Thereupon, the referred-to document was
24 marked for Identification as Plaintiffs' Exhibit 4.)
25 BY MR. BOWER:

Page 80

1      Q.  Sir, just generally speaking, do you know
2  what this meeting -- these minutes refer to?
3      A.  The title is "Customer Services General
4  Management Meeting," so this would be a management
5  meeting amongst the GMs and the VP of customer
6  service.
7      Q.  And this is September 2016, correct, sir?
8      A.  September 29, 2016 is what the document
9  states.
10     Q.  And during this time period, what would be
11 the purpose for you to attend those meetings?
12     A.  This would have been in my prior role in
13 product technical support.  I do not recall why I
14 was in this meeting.
15     Q.  Were these meetings -- strike that.
16         Did you attend these meetings regularly in
17 that role?
18     A.  No.
19     Q.  Do you see it says, on the first page, it
20 says "Guest Presenters," and your name is listed
21 there?
22     A.  Yes, I do.
23     Q.  Do you recall what you would have been
24 presenting on during this time period?
25     A.  It was likely something related to a

Page 81

1  powertrain topic in my previous role.
2      Q.  Do you recall attending meetings during
3  this time period where the Takata recall was
4  discussed?
5      A.  No, I don't recall.
6      Q.  You see, sir, if you just turn to the
7  second page of the document, the first topic is
8  "Takata."
9          Do you see that?
10     A.  Yes, I do.
11     Q.  If you look at the third kind of dash or
12 bullet point down there, sir, it says "We can only
13 accrue the goodwill funds for Takata in 2017 if we
14 know what program will be used in 2017."
15         Do you see that?
16     A.  Yes, I do.
17     Q.  Do you know what that refers to?
18     A.  No, I don't.
19     Q.  If you can turn back, then, to the first
20 page.
21         Sir, do you know, looking at kind of this
22 list of folks and based on your experience as
23 manager of vehicle compliance, who on this -- of
24 these attendees would have been involved in Takata
25 during this time period?

21 (Pages 78 - 81)

Page 102

1  act as quickly as possible to remedy defects in
2  products that they sell?
3       MR. KNAPP: Objection to form.
4       THE WITNESS: We act as quickly as
5    possible to remedy any issues that a customer
6    might experience.
7  BY MR. BOWER:
8     Q. Would you agree that one injury caused by
9  a defective component in a consumer product is one
10 too many?
11      MR. KNAPP: Objection to form.
12      THE WITNESS: It depends on the context of
13   the injury.
14 BY MR. BOWER:
15    Q. What if the injury is caused by a
16 defective component, would you agree, then, that it
17 would be one too many?
18      MR. KNAPP: Same objection.
19      THE WITNESS: It's never our intention to
20   have defective components in vehicles, let
21   alone have them lead to an injury.
22      But this is exactly why we conduct safety
23   recalls.
24 BY MR. BOWER:
25    Q. Sir, would you agree that Mercedes-Benz

Page 103

1  USA has an obligation to its customers to make sure
2  that the parts it puts into vehicles are not
3  defective?
4       MR. KNAPP: Objection to form.
5       THE WITNESS: We have an obligation to
6    introduce remedies. We do not select
7    suppliers. We do not oversee quality of
8    suppliers, and we do not design the systems
9    that are in our vehicles that we sell.
10 BY MR. BOWER:
11    Q. What do you mean by "We have an obligation
12 to introduce remedies"?
13    A. Remedies when it comes to a defect
14 determination. So when a defect determination is
15 made, it's our job to launch that as quickly as
16 possible.
17    Q. And it's your position, as head of
18 department for vehicle compliance, that a remedy for
19 a part in a vehicle that might be dangerous would be
20 to issue a recall; is that correct?
21      MR. KNAPP: Objection to form.
22      THE WITNESS: If there's a safety risk,
23   then we state that inside our 573 reports, and
24   we issue a remedy to -- to remedy that issue in
25   the field.

Page 104

1  BY MR. BOWER:
2     Q. So you would agree that there's a safety
3  risk with the Takata airbags, correct?
4       MR. KNAPP: Objection to form.
5       THE WITNESS: Yes, as stated in the Takata
6    holdings or the Takata filing 573 as well as
7    our own 573 filings.
8  BY MR. BOWER:
9     Q. I just want to be clear on one more thing,
10 sir. I think then we can wrap up.
11      As head of vehicle compliance for
12 Mercedes-Benz USA, do you believe that Mercedes has
13 any obligation to its United States customers to
14 test the safety of the parts that go into the
15 vehicles itself?
16    A. Not MB USA.
17    Q. Go ahead.
18    A. We work as part of the chain of reporting
19 those issues in working with our Daimler
20 counterparts that are responsible for creating those
21 systems or engineering those systems in order to
22 figure out if there is a problem.
23    Q. But I'm trying to figure out what should
24 happen before those products are sold to customers,
25 not after the fact but prior to the sale.

Page 105

1       And so do you think Mercedes has any
2  obligation to make sure that those products are safe
3  prior to selling them to customers?
4       MR. KNAPP: Objection to form.
5       THE WITNESS: We do not design the
6    vehicles. So MB USA, as an entity, does not
7    have that obligation.
8       MR. BOWER: I have nothing further. Thank
9    you.
10      MR. KNAPP: Can we just take a quick
11   break? Five minutes?
12      MR. BOWER: Sure.
13      THE VIDEOGRAPHER: We're going off the
14   record. The time is 1:46 p.m.
15      (Short recess taken.)
16      THE VIDEOGRAPHER: We're going back on the
17   record. The time is 1:50 p.m.
18      MR. KNAPP: This is Eric Knapp for
19   Mercedes-Benz USA. We have no questions and
20   the witness will read and sign. Thank you.
21      THE VIDEOGRAPHER: This concludes today's
22   testimony given by Greg Gunther.
23      The time is 1:50 p.m. The total number of
24   media units is three and will be retained by
25   Veritext Legal Solutions Florida.

Page 106

1  THE COURT REPORTER: Does anyone need a
2  rough or just regular?
3      MR. BOWER: I think we have a standing
4  order, but whatever that is for us.
5      MR. KNAPP: For MB USA, I think we also
6  have a standing order, but it's typically a
7  rough and a final.
8      (Concluded at 1:50 p.m.)

Page 107

1           AFFIDAVIT
2   STATE OF FLORIDA    )
3   COUNTY OF _____ )
4
     I, _____, being
5  first duly sworn, do hereby acknowledge that I did
   read a true and certified copy of my deposition
6  which was taken in the case of TAKATA AIRBAG
   LITIGATION, taken on the 28th day of July, 2021, and
7  the corrections I desire to make are as indicated on
   the attached Errata Sheet.
8       _____
                (Deponent)
9
10    + + + + + + + + + + + + + + + + +
11           CERTIFICATE
12
13 STATE OF FLORIDA    )
   COUNTY OF _____ )
14
15    Before me personally appeared
16 _____,
   to me well known / known to me to be the person
17 described in and who executed the foregoing
   instrument and acknowledged to and before me that he
18 executed the said instrument in the capacity and for
   the purpose therein expressed.
19
20    Witness my hand and official seal, this
   ____ day of _____, _____.
21
22
23       _____
               (Notary Public)
24
   My Commission Expires:
25

Page 108

1           ERRATA SHEET
2  TAKATA AIRBAG LITIGATION
   Deponent: GREG GUNTHER
3  Date of :  July 28, 2021
4
5  PAGE   LINE     REMARKS
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20
21       _____
22         Signature of Witness
         _____
23 (Notary Public)
24 Dated this _____ day of _____, _____.
   My Commission Expires: _____
25

Page 109

1
2        CERTIFICATE OF OATH
3
4  STATE OF FLORIDA   )
5  COUNTY OF BROWARD  )
6
7     I, the undersigned authority, certify
8  that GREG GUNTHER personally appeared before me
9  and was duly sworn.
10    WITNESS my hand and official seal this
11 5th day of August, 2021.
12
13
14       *Suzanne Vitale*
15    SUZANNE VITALE, R.P.R., F.P.R.
   Notary Public, State of Florida
16 My Commission No. DD179981
   Expires: 5/24/2024

```
                                                         Page 110
 1
 2              CERTIFICATE
 3
 4  STATE OF FLORIDA  )
 5  COUNTY OF BROWARD )
 6
 7         I, SUZANNE VITALE, R.P.R., F.P.R. do
 8  hereby certify that I was authorized to and did
 9  stenographically report the foregoing deposition
10  of GREG GUNTHER; that a review of the transcript
11  was requested; and that the transcript is a true
12  record of my stenographic notes.
13         I FURTHER CERTIFY that I am not a
14  relative, employee, attorney, or counsel of any
15  of the parties, nor am I a relative or employee
16  of any of the parties' attorney or counsel
17  connected with the action, nor am I financially
18  interested in the action.
19         Dated this 18th day of August, 2021.
20
21
            SUZANNE VITALE, R.P.R., F.P.R.
22          My Commission No. DD179981
            Expires: 5/24/2024
23
24
25
```

```
                                                         Page 111
 1       VERITEXT FLORIDA, LLC
         Two South Biscayne Blvd., Suite 2250
 2           MIAMI, FL  33131
             305-376-8800
 3
 4  GREG GUNTHER c/o
    SQUIRE PATTON BOGGS, LLP
 5  275 Battery Street
    Suite 2600
 6  San Francisco, California 94111
    ATTENTION:  ERIC J. KNAPP, ESQ.
 7
 8           August 5, 2021
 9  RE:  Takata Airbag Litigation
    AVAILABLE FOR READING UNTIL:  30 days
10
    GREG GUNTHER:
11
          This letter is to advise you that the
12  transcript of your deposition is available for
    reading and signing.
13
           PLEASE CALL THE ABOVE NUMBER TO MAKE AN
14  APPOINTMENT to come to the Veritext office closest
    to you to read and sign the transcript.  Our office
15  hours are 8:30 a.m. to 4:30 p.m., Monday through
    Friday.
16        In the event other arrangements are made,
    please send us a notarized list of any and all
17  corrections and/or changes, noting page and line
    numbers, and the reason for such changes, so that we
18  can furnish respective counsel with a copy.
           If the reading and signing has not been
19  completed prior to the above-referenced date, we
    shall conclude that you have waived the reading and
20  signing of the deposition transcript.
           Your courtesy in this matter is
21  appreciated.
            SUZANNE VITALE, R.P.R., F.P.R.
22
23
24
25
```