UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
MDL No. 2599
Master File No.: 15-MD-02599-MORENO

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION | |
| THIS DOCUMENT RELATES TO: ECONOMIC LOSS TRACK CASES AGAINST <u>GENERAL MOTORS, LLC</u> | |

**PLAINTIFFS' RESPONSE TO
GENERAL MOTORS, LLC'S STATEMENT OF MATERIAL FACTS AND PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS
IN OPPOSITION TO GM'S MOTION FOR SUMMARY JUDGMENT,
PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1(a)(2), Plaintiffs respectfully submit the following response to Defendant General Motors LLC's ("GM's") Statement of Material Facts in Support of Its Motion for Summary Judgment (ECF No. 4803), without admitting that any of GM's statements are material. In the interest of efficiency and brevity, Plaintiffs do not repeat but instead incorporate by reference Paragraphs 1 through 56, 91, 95, 101, 106, 115, 118, 119, 162, 201, 210, 218, 222, 291 through 311, 313 through 408, 436 through 461, 483 through 505, 536 through 549, 592 through 600, and 722 through 733, 736, 738, and 739 through 741 of its prior Response to GM's Motion for Summary Judgment ("PSOF 4250") (ECF No. 4250) and Paragraphs 60 through 70 of its prior Response to GM's Motion for Summary Judgment ("PSOF 4515") (ECF No. 4515). Plaintiffs' responses to GM's Statement (ECF. No. 4803) are followed by Plaintiffs' Statement of Material Facts in opposition to GM's Motion.

**Alabama Plaintiffs – Mary Rivers and Tommy Rivers**

1. Undisputed that Plaintiffs Mary and Tommy Rivers (the "Rivers") are residents of Alpine, Alabama and that the Rivers jointly own a 2009 Chevrolet Avalanche C1500 LT, which they purchased new from Harbin Chevrolet in Scottsboro, Alabama on November 24, 2009.

2. Undisputed that GM manufactured and distributed the Chevrolet Avalanche that the Rivers purchased in November 2008.

3. Disputed, in part. The Rivers conducted research prior to purchasing the Avalanche. However, the research of vehicles "was a collective effort" between the Rivers. **Ex. __** (Deposition of Tommy River ("T. Rivers Dep. Tr.")) at 64:21–65:2. The Rivers spent "close" to multiple months searching for vehicles. *Id.* at 65:3–5.

4. Undisputed that the Rivers looked into and relied on the representations made on Monroney Labels when deciding which vehicle to purchase.

5. Undisputed that Plaintiff M. Rivers relied on the representations made on the dealership website when deciding what vehicle to purchase. While Plaintiff M. Rivers did not rely on "any other ads or brochures," Plaintiff T. Rivers stated that Plaintiff M. Rivers is a "guru on [researching vehicles]" and that she did "all the LTVs" based on the cars' features. *Id.* at 65:6–11.

6. Disputed, in part. It is undisputed that GM created and affixed the Monroney labels, which identified the features of the vehicle, to the window of Avalanche the Rivers purchased. Defendant's reliance on Carter Avery's testimony that GM had the "practice" of affixing labels to

2

vehicles "during manufacturing" does not support the statement that this particular label was printed and affixed according to that practice.

7. Disputed. Although Plaintiff T. Rivers did not recall "advertisements," he testified that he chose the Avalanche over other vehicles based on the "ratings of the Avalanche" listed on the Monroney label they "saw in the window" of the car regarding "safety and different features it had on it." *Id.* at 69:12–25.

8. Disputed, in part. Plaintiff M. Rivers "didn't ask specifically about any particular airbags because it was actually written on the [Monroney label.]. **Ex. __** (Deposition of Mary Rivers ("M. Rivers Dep. Tr.")) at 30:9–20.

9. Disputed, in part. It is undisputed that the owner's manual provided with the Rivers' 2009 Chevrolet Avalanche stated: "If you believe that your vehicle has a defect which could cause a crash or could cause injury or death, you should immediately inform the National Highway Traffic Safety Administration (NHTSA) in addition to notifying General Motors. If NHTSA receives similar complaints, it may open an investigation, and if it finds that a safety defect exists in a group of vehicles, it may order a recall and remedy campaign." Plaintiff T. Rivers testified that he received an owner's manual and while he recalled reading the owner's manual, "[he] did not read the whole thing." **Ex. __** (T. Rivers Dep. Tr.) at 78:2–12. Likewise, Plaintiff M. Rivers testified that she "received the owner's manual [but] I never totally examined all of the information." **Ex. __** (M. Rivers Dep. Tr.) at 93:14–16.

10. Undisputed.

11. Undisputed that the Rivers became aware of the airbag defect when they received a letter from GM regarding their Chevrolet Avalanche.

12. Undisputed.

13. Undisputed.

14. Objection. This paragraph states a conclusion of law as opposed to a fact. Without waiver of this objection, it is undisputed that in 2021 the Takata passenger airbag inflator was replaced.

15. Undisputed that at the time the Takata airbag inflator was replaced the odometer indicated the vehicle had 200,688 miles.

16. Disputed. The cited document does not support this point. The Carfax report relied on by GM states that the total mileage on the Rivers' Class Vehicle was 226,548 miles as of July 11, 2023.

17. Undisputed that Plaintiff M. Rivers does not know what damages she is seeking in this case, but she "[does not] feel that [she] would receive a fair market value [for her vehicle] based on the stigma of the defective airbag that is . . . attached to this actual vehicle." **Ex. ___** (M. Rivers Dep. Tr.) at 137:11–15.

18. Disputed, in part. Plaintiff T. Rivers testified that he believes his vehicle "would be worth less" due to the airbag defect and that he would base the amount of its devaluation on expert determinations. **Ex. ___** (T. Rivers Dep. Tr.) at 133:16–134:4.

19. Objection. This paragraph states a conclusion of law as opposed to a fact.

**Georgia Plaintiff – Dyshawn Lodge**

20. Undisputed.

21. Undisputed.

22. Disputed. Plaintiff Lodge, when asked to recall "specific statements," responded, "I can't remember verbatim" but testified that she made a list of vehicles and the Suburban "was on [her] list because of the safety features that Chevrolet offered, even on the website it went by the safety features." **Ex. ___** (Deposition of Dyeshawn Lodge ("Lodge Dep. Tr.") at 72:3–19.

23. Undisputed.

24. Disputed, in part. It is undisputed that the owner's manual presented to Plaintiff Lodge during her deposition stated: "If you believe that your vehicle has a defect which could cause a crash or could cause injury or death, you should immediately inform the National Highway Traffic Safety Administration (NHTSA) in addition to notifying General Motors. If NHTSA receives similar complaints, it may open an investigation, and if it finds that a safety defect exists in a group of vehicles, it may order a recall and remedy campaign." *Id.* at 74:18–20. Plaintiff Lodge testified that she believes she received an owner's manual when she purchased her Suburban, but she could not recall seeing a statement like this in the owner's manual that she received. *Id.* at 75:9–76:17

25. Disputed, in part. The cited letter was addressed to Plaintiff Lodge and authored by GM. Disputed whether the letter was actually sent, and whether Plaintiff Lodge received the letter.

Plaintiff Lodge testified that she never received any letters about the airbag issue in her Suburban. *Id.* at 77:16–19.

  26.  Undisputed.

  27.  Disputed, in part. Although GM authored a letter addressed to Plaintiff Lodge, it is disputed whether the letter was actually sent, and whether Plaintiff Lodge received the letter. Plaintiff Lodge testified that she never received any letters about the airbag issue in her Suburban.

  28.  Undisputed.

  29.  Undisputed.

  30.  Disputed. GM mischaracterized Plaintiff Lodge's testimony. Plaintiff Lodge testified that she was unable to quantify exactly how much the airbag issue caused her Class Vehicle to decrease in value. *Id.* at 102:22–103:4. Plaintiff Lodge testified that because she "couldn't trade it in twice," the value of her vehicle was "obviously" lower because of the airbag issue. *Id.* at 102:16–21.

  31.  Objection. This paragraph states a conclusion of law as opposed to a fact.

  32.  Undisputed. *See* PSOF 4515, ¶¶ 63–69.

  33.  Undisputed. *Id.*

  34.  Undisputed. *Id.*

  35.  Undisputed. *Id.*

  36.  Disputed, in part. Undisputed to the extent that Plaintiff Lodge, in her 2022 petition, identified one pending action: a garnishment case against her by Prestige Financial Services Inc. Disputed to the extent that Plaintiff Lodge is neither an attorney nor an expert in bankruptcy law and relied on the advice of her bankruptcy counsel to complete and submit the requisite forms in the bankruptcy case. **Ex. \_** (Declaration of Dyeshawn Lodge), ¶ 3; *see* PSOF 4515, ¶¶ 63–69. In addition, "During the bankruptcy case, [she] did not realize that [she] was required to list [her] participation in the Whitaker action as a pending lawsuit or asset. In fact, given the passage of time since [her] deposition was taken in the Whitaker action in August 2022, [she] did not recall the Whitaker action when [she] was completing the forms for the bankruptcy case. And in June of 2022, during the same month that [her] bankruptcy case was filed, [she] underwent knee surgery, which occupied most of [her] attention." *Id.* at 4.".

  37.  Disputed, in part. Undisputed that Plaintiff Lodge did not identify any other lawsuit, court action, or administrative proceeding to which she was a party. Disputed for the reasons stated

5

in response to statement 36. In addition, Plaintiff Lodge "did not inform counsel in the Whitaker action of [her] pending bankruptcy case" and "[t]he omission of the Whitaker action from documents in the bankruptcy case was unintentional and inadvertent." **Ex.** _ (Declaration of Dyeshawn Lodge), ¶¶ 5–6; *see* PSOF 4515, ¶¶ 63–69..

38. Disputed, in part. Undisputed that Plaintiff Lodge answered "No" when asked to identify any claims she possessed "against third parties, whether or not you have filed a lawsuit or made a demand for payment." Disputed for the reasons stated in response to statements 36 and 37. In addition, it is her understanding that the omission of the Whitaker action from documents in the bankruptcy case would not have affected the outcome of the bankruptcy case in any way. **Ex.** __ (Declaration of Dyeshawn Lodge), ¶ 8; *see* PSOF 4515, ¶¶_63–69..

39. Disputed, in part. Undisputed to the extent that Plaintiff Lodge affirmed her answers under penalty of perjury that the information provided was "true and correct." Disputed to the extend this paragraph suggests Plaintiff Lodge intentional perjured herself. **Ex.** __ (Declaration of Dyeshawn Lodge), ¶ 6; *see* PSOF 4515, ¶¶ 63–69.

40. Undisputed. *See* PSOF 4515, ¶¶ 63–69.

41. Undisputed. *See* PSOF 4515, ¶¶ 63–69.

42. Undisputed. *See* PSOF 4515, ¶¶ 63–69.

43. Undisputed that the bankruptcy court held a confirmation hearing on Plaintiff Lodge's Chapter 13 plan on October 19, 2022. In connection with the Chapter 13 bankruptcy plan, Plaintiff Lodge is now repaying her debts. **Ex.** __ (Declaration of Dyeshawn Lodge), ¶ 7; *see* PSOF 4515, ¶¶ 63–69..

44. Undisputed. *See* PSOF 4515, ¶¶ 63–69.

45. Undisputed. *See* PSOF 4515, ¶¶ 63–69.

**Louisiana Plaintiff – Tarus Sibly**

46. Undisputed.
47. Undisputed.
48. Undisputed.
49. Undisputed.
50. Undisputed.
51. Undisputed.

52. Disputed. The cited documents do not support the contentions raised. GM provides no support for the contention that the recall for the 2007 GMC Sierra LD was publicly announced. Plaintiffs dispute that the use of the phrase "publicly announced." Without waiving the objection, it is undisputed that Edmunds published an article in 2016 regarding "defective Takata airbags." Undisputed that the Wall Street Journal published an article in 2016 regarding faulty Takata airbags.

53. Undisputed.

54. Undisputed.

55. Disputed, in part. It is undisputed that the owner's manual presented to Plaintiff Sibley at his deposition stated: "If you believe that your vehicle has a defect which could cause a crash or could cause injury or death, inform the National Highway Traffic Safety Administration (NHTSA) immediately, in addition to notifying General Motors. If NHTSA receives similar complaints, it may open an investigation. If it finds that a safety defect exists in a group of vehicles, it may order a recall and remedy campaign." Plaintiff Sibley testified that although he received an owner's manual when he purchased the GMC Sierra, he did not read it. **Ex. __** (T. Sibley Dep. Tr.) at 56:5–11

56. Disputed. There is no support for the contention whether the cited letter was actually sent or received by Plaintiff Sibley or his brother. Undisputed that GM authored the cited letter and that it was addressed to Plaintiff Sibley's brother.

57. Disputed in part. Plaintiff Sibley testified that, as of the date of his deposition (September 9, 2020) he had not had any recall related work performed on his vehicle. (Sibley Dep. Tr.) at 125:9-13. Plaintiff Sibley testified that he had learned of the Takata airbag recall in late 2017. *Id*. at 130:6-11. Plaintiff Sibley testified that he had called Ross Downey Chevrolet, a Chevrolet dealership, about the airbag recall but he had been told that he did not have an open recall on his vehicle. *Id*. at 125:14-127:7. Plaintiff Sibley testified that he had not followed up with Ross Downey Chevrolet as of the date of his deposition. *Id*. at 127:11-14. Plaintiff Sibley later specified that the dealership had told him that his vehicle was not under recall, but if it were to be placed under recall, Plaintiff Sibley would receive a notice in the mail. Plaintiff Sibley testified that he never received anything in the mail regarding the recall on his Class Vehicle. *Id*. at 129:16-130:23.

58. Undisputed.

7

59. Undisputed that the Carfax report relied on by GM states the total mileage on Plaintiff Sibley's Class Vehicle is 182,479 miles as of July 19, 2022.

60. Undisputed that the Carfax report cited shows that between November 3, 2017 and July 19 2022 Plaintiff Sibley's 2007 GMC Sierra was driven approximately 50,000 miles.

61. Undisputed that Plaintiff Sibley testified that the airbags have not deployed. Plaintiffs dispute the use of the phrase "malfunction" as far as it relates to a legal conclusion.

62. Disputed, in part. Plaintiff Sibley testified that his Sierra had lost 100% of its value due to the airbag defect. Although it is undisputed that at the time of his deposition Plaintiff Sibley testified that he had not conducted an "investigation or analysis" on the impact of the airbag issue on his Sierra, Plaintiff Sibley testified that his determination of diminished value was "easy, because [the Sierra was] not safe." **Ex. __** (Deposition of Tarus Sibley ("Sibley Dep. Tr.") at 165:12–17. He explained that because the airbag defect made his car unsafe "[t]hat takes all the value away." *Id.* He further stated, "how can you have a vehicle that you don't know what will happen if you get in a crash or not get in a crash[?] That has no value." *Id.* The "number one" factor in Plaintiff Sibley's decision to purchase his GMC Sierra was its "safety." *Id.* at 22:12-17. He said, "I don't care how cheap or how low a vehicle is, if there's a possibility of some unsafe technology, I don't want it. I'm not going to spend my hard earned money on it either." *Id.* at 138:25–139:7. GM mischaracterizes Plaintiff Sibley's testimony. Although Plaintiff Sibley testified "I'm not putting a price on anything" he went on to state "I'm saying like when I bought it and the airbags weren't working, they didn't want to fix them, whatever I spent was just like putting in a fire pit but as far as this case goes, I can't say what you lawyers in the courtroom are going to come up with because I'm not even a judge nor a lawyer so that's what I'm saying." *Id.* at 169:9–17.

63. Objection. This paragraph states a conclusion of law as opposed to a statement of fact.

64. Undisputed.

**Dismissed Named Plaintiffs**

65. Undisputed.

66. Undisputed.

8

67. Undisputed. Upon learning about the recall, Dismissed Plaintiff Giddings contacted the Kristal Automobile dealership in New York to have the Class Vehicle repaired, but was told "they didn't have any parts at that time. **Ex. __** (Deposition of Ramand Giddings ("Giddings Dep. Tr.") at 19:24–20:10. Dismissed Plaintiff Giddings followed up with the dealership about the availability of parts and was informed they would contact him; he was never contacted. *Id.* at 26:13–27:15. Since 2018, Dismissed Plaintiff Giddings followed up with the dealership about parts a three times and was told there were no parts available. *Id.* at 26:16–23. Dismissed Plaintiff Giddings made the decision to no longer allow his wife and children to ride in the Yukon Denali after learning of the recall because he did not deem to Class Vehicle safe. *Id.* at 25:20–26:5.

68. Undisputed. The Carfax Report for Dismissed Plaintiff Giddings' 2008 GMC Yukon Denali shows that the remedy was still not available as of August 5, 2020. *See generally* **Ex. __** (Screenshot of Carfax Report for VIN 1GKFK638X8J102750).

69. Undisputed. Dismissed Plaintiff Holmes inquired about who to contact to get the problem resolved and the mechanic told him, "that is a problem with that automobile that most people don't know to look for, but [the mechanic does] it every day." **Ex. __** (Deposition of Clyde Holmes ("Holmes Dep. Tr.") at 28:19 – 29:13.

70. Disputed, in part. Undisputed that GM initiated NHTSA Recall No. 16V-381 on May 27, 2016, but disputed as to Dismissed Plaintiff Holmes' knowledge of the recall at that time since the Carfax report shows the "remedy not yet available" for the Class Vehicle subject to NHTSA Recall No. 16V-381 as of July 6, 2016. **Ex. __** (Holmes Dep. Tr. Ex. 1) at 5.

**Recall Cost**

71. Undisputed.

### Plaintiffs' Statement of Additional Undisputed Material Facts

72. Each Plaintiff purchased a Class Vehicle unaware of the Inflator Defect and testified that he or she would not have paid as much for the vehicle or would not have purchased it at all if the Inflator Defect had been disclosed. *See* **Ex. __** (Giddings Dep. Tr.) at 93:3-17; **Ex. __** (Holmes Decl.), ¶ 4; **Ex. __** (Lodge Dep. Tr.) at 69:8-15, 102:3-5; **Ex. __** (Paleno Dep. Tr.) at 136:23-137:6; **Ex.** (Riojas Dep. Tr.) at 153:18-22; **Ex. __** (T. Rivers Dep. Tr.) at 131:23-132:3; **Ex. __** (Sibley Dep. Tr.) at 138:16-139:11.

73. Ruptures in relevant Takata Inflators are known to have injured at least 400 people and caused at least 27 deaths in the United States. *See* **Ex.** __ (NHTSA, July 25, 2024, "Takata Airbag Recall Spotlight") (www.nhtsa.gov/vehicle-safety/takata-recall-spotlight); **Ex.** __ ("*Takata Airbag Recall: Everything You Need to Know*"; Consumer Reports, July 10, 2024.)

74. GM Brazil received an allegation that on May 23, 2022, a 2013 MY Chevrolet Camaro was in a crash and the front-driver Takata airbag inflator ruptured during deployment. **Ex.** __ (23V-516 Part 573 Report – 07/27/2023) (https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V516-9669.PDF) at 3. After obtaining and inspecting the vehicle, on May 26, 2023, GM Brazil confirmed that the front driver airbag inflator in the GM vehicle ruptured during deployment. *Id.* GM Brazil then shipped inflator components and driver side carpet from the subject vehicle to Joyson Safety Systems' facility in Armada, Michigan for further analysis. *Id.*

75. GM claimed that "[i]nitial findings, including the post-deployment condition of the inflator, indicate[d] the rupture is likely related to a manufacturing defect in the inflator and not due to propellant degradation from age or environmental exposure." *Id.* GM's claim is similar to the claims originally made by Takata and other OEMs regarding the inflator ruptures in Takata non-desiccated inflator ruptures. *See, e.g.*, **Ex.** __ (NHTSA Historical Timeline) (https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/nhtsa_historical_timeline_takata_inflators.pdf) at 2 (In 2009, Takata and Honda claimed that the repeated expansions of the 2008 recall of the Takata non-desiccated inflators in Honda vehicles were not actually caused—as they had originally claimed—by improper mishandling of the propellant during manufacturing of the inflator, but instead due to a manufacturing defect related to the Stokes press that made the PSAN propellant for the inflator); *id.* at 3 (In 2013, Takata and Honda claimed that its new recalls of the Takata non-desiccated inflators in Honda vehicles were caused by a manufacturing defect relating to a lack of an interlock device for the auto-reject function analyzing propellant wafers).

76. Although GM claimed to NHTSA in July 2023 that it was "continuing its investigation into this incident" (*see* **Ex.** __ (23V-516 Part 573 Report – 07/27/2023) (https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V516-2679.PDF), as of GM's most recent Part 573 Report filed on April 30, 2024 and through the present day, GM has still failed to provide NHTSA and the public any update on the investigation. *See* **Ex.** __ (23V-516 Part 573 Report – 04/30/2024) (https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V516-9669.PDF) at 3.

77. On July 20, 2023, GM decided to conduct a safety recall on all front-driver airbag modules containing a Takata inflator from the suspect production lot, which included not only the Chevrolet Camaro but also the Buick Verano, the Chevrolet Sonic, and the Chevrolet Volt *Id.* at 1-3. GM's vehicles involved in Recall 23V-516 used Takata PSAN-based inflators. *See* **Ex. ___** (GM-MDL2599-000742925).

78. GM's description of the safety risk in its Takata inflators in Recall 23V-516 was similar to its description of the defect for its Takata non-desiccated inflator recalls. *Compare id.* at 3 (explaining that "[t]he driver airbag inflator may rupture, causing metal fragments to pass through the airbag and into the vehicle interior, which may result in injury or death to vehicle occupants") at 2, *with* **Ex. ___** (15V-324 Part 573 Report) ("In the event of an inflator rupture, metal fragments could pass through the air bag cushion material, which may result in injury or death to vehicle occupants.").

79. Although GM admitted that at least one person had been injured in the Takata airbag inflator rupture in the Chevrolet Camaro accident, GM refused to publicly provide any details regarding the purported manufacturing defect. *See* **Ex. ___** (AP News - *GM recalls nearly 900 vehicles with Takata air bag inflators, blames manufacturing problem*) (https://apnews.com/article/general-motors-gm-takata-air-bag-dba441bc766c53281af7b0692da8ef66).

Dated: August 2, 2024

Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*

Peter Prieto (FBN 501492)
Aaron S. Podhurst (FBN 63606)
Stephen F. Rosenthal (FBN 131458)
Matthew P. Weinshall (FBN 84783)
Alissa Del Riego (FBN 99742)
SunTrust International Center
One S.E. Third Ave., Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
Email: pprieto@podhurst.com
apodhurst@podhurst.com
srosenthal@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com

*Chair Lead Counsel for Plaintiffs*

| | |
|---|---|
| **COLSON HICKS EIDSON**<br>Lewis S. "Mike" Eidson<br>mike@colson.com<br>Curtis Bradley Miner<br>curt@colson.com<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134<br>T: 305-476-7400<br><br>*Plaintiffs' Personal Injury Track Lead Counsel* | **SMITH LACIEN LLP**<br>Todd A. Smith<br>tsmith@smithlacien.com<br>70 W Madison St Suite 5770,<br>Chicago, IL 60602<br>(312) 509-8900<br><br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* |
| **BOIES, SCHILLER & FLEXNER LLP**<br>David Boies, Esq.<br>Motty Shulman (Fla Bar. No. 175056)<br>333 Main Street<br>Armonk, NY 10504<br>Tel: (914) 749-8200<br>Fax: (914) 749-8300<br>Email: dboies@bsfllp.com<br>mshulman@bsfllp.com | **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**<br>Elizabeth Cabraser<br>ecabraser@lchb.com<br>275 Battery St., Suite 3000<br>San Francisco, CA 94111-3339<br>T: 415-956-1000<br><br>David Stellings<br>250 Hudson Street, 8th Floor<br>New York, NY 10012 |

| | |
|---|---|
| Stephen N. Zack (Fla. Bar No. 145215)<br>100 Southeast 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel: (305) 539-8400<br>Fax: (305) 539-1307<br>Email: szack@bsfllp.com<br>        mheise@bsfllp.com<br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* | 212-355-9500<br>dstellings@lchb.com<br><br>*Plaintiffs' Steering Committee* |
| **CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC**<br>James E. Cecchi<br>jcecchi@carellabyrne.com<br>5 Becker Farm Road<br>Roseland, NJ 07068-1739<br>T: 973 994-1700<br>f: 973 994-1744<br><br>*Plaintiffs' Steering Committee* | **BARON & BUDD, PC**<br>Roland Tellis<br>rtellis@baronbudd.com<br>David Fernandes<br>dfernandes@bardonbudd.com<br>Mark Pifko<br>mpifko@baronbudd.com<br>15910 Ventura Blvd.,<br>Suite 1600<br>Encino, CA 91436<br>T: 818-839-2333<br><br>J. Burton LeBlanc<br>9015 Bluebonnet Blvd.<br>Baton Rouge, LA 70810<br>T: 225-761-6463<br><br>*Plaintiffs' Steering Committee* |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on August 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Peter Prieto*
Peter Prieto