## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:

TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION

THIS DOCUMENT RELATES TO
ECONOMIC LOSS TRACK CASES:

| | |
|---|---|
| BRIDGET BOYD, *et. al.*, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>v.<br><br>FCA US LLC,<br><br>          Defendant. | MDL No. 2599<br><br>Master File No.: 1:15-md-2599-FAM<br><br>S.D. Fla. Case No. 1:14-cv-24009-FAM |

## DEFENDANT FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST ALL ECONOMIC LOSS PLAINTIFFS IN GEORGIA AND NORTH CAROLINA AND UNDER THE LAWS OF COLORADO, UTAH, WEST VIRGINIA AND WISCONSIN AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Dated August 9, 2024

Scott M. Sarason
Florida Bar No. 0394718
ssarason@rumberger.com
RUMBERGER KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130
Tel: (305) 995-5422
Fax: (786) 536-3446

Daniel T. Graham (*pro hac vice*)
dgraham@clarkhill.com
Michael P. Croghan (*pro hac vice*)
mcroghan@clarkhill.com
Jeffrey M. Sniadanko (*pro hac vice*)
jsniadanko@clarkhill.com
Paul C. Do (*pro hac vice*)
pdo@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
Tel: (312) 985-5945
Fax: (312) 985-5954

*Attorneys for FCA US LLC*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.    UNDER THE COURT'S POST-RECALL DAMAGES ANALYSIS, PLAINTIFFS CANNOT PROVE INJURY OR LEGALLY RECOVERABLE DAMAGES.......................................................................... 1

    A.  The Remaining Plaintiffs have failed to present evidence of recoverable damages.............................................................................................. 1

    B.  The Remaining Plaintiffs have already received the benefit of their bargain through the recall. .......................................................................... 5

    C.  The Remaining Plaintiffs' lack of measurable damages means they also lack Article III standing. .......................................................................... 6

    D.  The Remaining Plaintiffs' free recall replacements leave no injury to redress. .................................................................................................... 7

    E.  The Remaining Plaintiffs' claims are prudentially moot. ............................ 8

II.    THE REMAINING PLAINTIFFS FAIL TO CREATE A GENUINE ISSUE OF MATERIAL FACT ON FRAUD. ........................................................ 10

    A.  None of the Remaining Plaintiffs offer evidence of affirmative misrepresentations to them made by FCA. .................................................. 10

        1.  Gibson and Johnson failed to provide evidence of misrepresentation or reliance.......................................................................................... 11

        2.  O'Neal failed to provide evidence of misrepresentation or reliance. ........ 12

    B.  Gibson and O'Neal's omission-based fraud claims fail because there was no duty to disclose pursuant to Georgia or North Carolina law. .............. 14

III.   PLAINTIFFS FAIL TO CREATE A GENUINE ISSUE OF MATERIAL FACT REGARDING PRE-SUIT NOTICE UNDER THE GFBPA. .................... 15

IV.     PLAINTIFFS FAIL TO CREATE A GENUINE ISSUE OF MATERIAL FACT REGARDING THE STATUTE OF LIMITATIONS ON GIBSON'S FRAUD AND GFBPA CLAIMS. ..........................................................................16

V.     PLAINTIFFS FAIL TO EFFECTIVELY REBUT APPLICABLE LAW IN THE NEW STATES. .................................................................................16

CONCLUSION...........................................................................................................20

CERTIFICATE OF SERVICE ..................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Cantrell*,
 197 Ga. App. 672, 399 S.E.2d 237 (1990)................................................................11

*Airborne, Inc. v. Denver Air Center, Inc.*,
 832 P.2d 1086 (Colo. App. 1992)........................................................................17

*Allison v. McGhan Medical Corp.*,
 184 F.3d 1300 (11th Cir. 1999)..........................................................................11

*Bennett v. D. L. Claborn Buick, Inc.*,
 414 S.E.2d 12 (Ga. Ct. App. 1991)......................................................................4

*Bodie v. Purdue Pharma Co.*,
 236 Fed. Appx. 511 (11th Cir. 2007)..................................................10, 11, 12, 14

*Bolton v. Ford Motor Co.*,
 2024 WL 3328522 (D. Del. July 8, 2024) ..............................................................9

*Brazil v. Janssen Research & Dev. LLC*,
 249 F. Supp. 3d 1321 (N.D. Ga. 2016)..............................................................10, 14

*Breeden v. Richmond Cmty. Coll.*,
 171 F.R.D. 189 (M.D.N.C. 1997)......................................................................10, 14

*Brooks v. Dime Sav. Bank of New York, FSB*,
 457 S.E.2d 706 (Ga. Ct. App. 1995)....................................................................3, 4

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
 155 F.3d 331 (4th Cir. 1998) ..............................................................................13

*Brown v. Hyundai Motor Am.*,
 2019 WL 4126710 (D.N.J. Aug. 30, 2019) ........................................................14, 15

*Canal Ins. Co. v. Tullis*,
 515 S.E.2d 649 (Ga. Ct. App. 1999).....................................................................5

*Chamber of Com. v. U.S. Dep't of Energy*,
 627 F.2d 289 (D.C. Cir. 1980)............................................................................8

*Club Matrix, LLC v. Nassi*,
 284 P.3d 93 (Colo. App. 2011)...........................................................................16

*Cole v. Gen. Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007) ................................................................6, 7

*Colonial Lincoln-Mercury Sales, Inc. v. Molina*,
    262 S.E.2d 820 (Ga. Ct. App. 1979) ........................................................4

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ...................................................................................8

*Crawford v. FCA US LLC*,
    2021 WL 3603342 (E.D. Mich. Aug. 13, 2021) ......................................9

*Daubert v. Merrell Dow Pharmaceuticals*,
    509 U.S. 579 (1993) .................................................................................8

*Debernardis v. IQ Formulations, LLC*,
    942 F.3d 1076 (11th Cir. 2019) ............................................................6, 7

*Dilworth v. Lauritzen*,
    18 Utah 2d 386 (1967) ...........................................................................17

*Earl v. Boeing Co.*,
    53 F.4th 897 (5th Cir. 2022) ....................................................................6

*Ellis v. King*,
    400 S.E.2d 235 (W.Va. 1990) ...............................................................18

*In re Evenflo Co., Inc.*,
    54 F.4th 28 (1st Cir. 2022) .....................................................................6, 7

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    280 F. Supp. 3d 975 (E.D. Mich. 2017) ...............................................19

*First Atl. Mgmt. Corp. v. Dunlea Realty Co.*,
    507 S.E.2d 56 (N.C. Ct. App. 1998) ........................................................4

*Fortis Inc. Co. v. Kahn*,
    683 S.E.2d. 4 (Ga. Ct. App. 2009) .........................................................11

*Friche v. Hyundai Motor, Am.*,
    2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) ..........................................8

*Ga. Ltd. Partners v. City Nat'l Bank*,
    748 S.E.2d 131 (Ga. Ct. App. 2013) .....................................................2, 3

*In re Gen. Motors LLC Ignition Switch Litig.*,
    407 F. Supp. 3d 212 (S.D.N.Y. 2019) .....................................................3

*Gutherie v. Ford Equip. Leasing Co.*,
424 S.E.2d 889 (Ga. Ct. App. 1992)........................................................................2, 3

*Hadley v. Chrysler Group, LLC*,
624 Fed. Appx. 374 (6th Cir. 2015)........................................................................8, 9

*Hardin v. KCS Int'l, Inc.*,
199 N.C. App. 687, 682 S.E.2d 726 (N.C. Ct. App. 2009)......................................15

*Hardy v. Toler*,
218 S.E.2d 342 (N.C. 1975)........................................................................................4

*Horne v. Claude Ray Ford Sales, Inc.*,
290 S.E.2d 497 (Ga. Ct. App. 1982)...........................................................................4

*Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*,
479 Fed.Appx. 955 (11th Cir. 2012)...........................................................................9

*Jersild v. Aker*,
775 F. Supp. 1198 (E.D. Wis. 1991)........................................................................19

*Jimenez v. Houseboats on Lanier, Inc.*,
370 Ga. App. 788, 899 S.E.2d 334 (2024)...............................................................12

*Johannessohn v. Polaris Indus., Inc.*,
450 F. Supp. 3d 931 (D. Minn. 2020).........................................................................2

*Johnson v. Nissan N. Am., Inc.*,
2022 WL 2869528 (N.D. Cal. July 21, 2022).............................................................2

*JW Const. Co., Inc. v. Elliott*,
253 P.3d 1265 (Colo. App. 2011).............................................................................16

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ................................................................................13

*Kommer v. Ford Motor Co.*,
2017 WL 3251598 (N.D.N.Y. July 28, 2017) ............................................................5

*Laska v. Steinpreis*,
231 N.W.2d 196 (Wis. 1975)....................................................................................19

*Leishman v. Kamas Valley Lumber Co.*,
19 Utah 2d 150 (1967) .............................................................................................18

*Leon v. Cont'l AG*,
301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..................................................................8, 9

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) .............................................................................................1

*Liberty Lending Servs. v. Canada*,
  668 S.E.2d 3 (Ga. Ct. App. 2008) ......................................................................11

*McCabe v. Daimler AG*,
  160 F. Supp. 3d 1337 (N.D. Ga. 2015) .............................................9, 12, 14, 15

*McMahon v. Volkswagen Aktiengesellschaft*,
  2023 WL 4045156 (D.N.J. June 16, 2023) .........................................................9

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
  587 U.S. 370 (2019) ............................................................................................8

*Moore v. Lovein Funeral Home, Inc.*,
  852 S.E.2d 876 (Ga. Ct. App. 2020) .................................................................12

*Mueller v. Harry Kaufmann Motorcars, Inc.*,
  859 N.W.2d 451 (Wisc. Ct. App. 2014) .............................................................19

*Naparala v. Pella Corp.*,
  153 F. Supp. 3d 884 (D.S.C. 2015) ...................................................................19

*Nguyen v. Nissan N. Am., Inc.*,
  932 F.3d 811 (9th Cir. 2019) ...........................................................................7, 8

*Pace v. Parrish*,
  122 Utah 141 (1952) ....................................................................................17, 18

*Patlan v. BMW of N. Am., LLC*,
  2024 WL 1328012 (D.N.J. Mar. 28, 2024) ........................................................9

*Pitts v. Am. Sec. Ins. Co.*,
  144 N.C. App. 1 (2001) .....................................................................................13

*Poor v. Hill*,
  530 S.E.2d 838 (N.C. Ct. App. 2000) .................................................................4

*Price v. L'Oreal USA, Inc.*,
  2020 WL 4937464 (S.D.N.Y. Aug. 24, 2020) .....................................................2

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) ............................................................................13

*Rosen v. Mercedes-Benz USA, LLC*,
  2022 WL 20766104 (N.D. Ga. Nov. 1, 2022) .....................................................8

*Sater v. Chrysler Group LLC*,
　2016 WL 7377126 (C.D. Cal. Oct. 25, 2016) ........................................................5, 6

*Schmidt v. Bassett Furniture Indus.*,
　2009 WL 3380354 (E.D. Wis. Oct. 20, 2009) ........................................................19

*In re Se. Eye Ctr.-Pending Matters*,
　2019 WL 2051336 (N.C. Super. May 7, 2019) ......................................................14

*Sprinkle v. N.C. Wildlife Res. Comm'n*,
　600 S.E.2d 473 (N.C. Ct. App. 2004) .....................................................................5

*Stevens v. Thomas*,
　257 Ga. 645 (1987) ................................................................................................11

*Sugasawara v. Ford Motor Company*,
　2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) .....................................................7, 8

*Surratt v. Grain Dealers Mut. Ins. Co.*,
　328 S.E.2d 16 (N.C. Ct. App. 1985) ....................................................................2, 3

*In re Takata Airbag Products Liab. Litig.*,
　379 F. Supp. 3d 1333 (S.D. Fla. 2019) ..................................................................1

*In re TD Bank, N.A.*,
　325 F.R.D. 136 (D.S.C. 2018) .........................................................................12, 13

*Tershakovec v. Ford Motor Co., Inc.*,
　79 F.4th 1299 (11th Cir. Jul 7, 2023) ...................................................................13

*Thiedemann v. Mercedes-Benz USA, LLC*,
　872 A.2d 783 (N.J. 2005) ........................................................................................5

*Tietsworth v. Harley-Davidson*,
　677 N.W.2d 233 (Wis. 2004) ................................................................................19

*Tobacco II Cases*,
　207 P.3d 20 (Cal. 2009 .........................................................................................10

*In re Toyota Motor Corp. Hybrid Brake*,
　915 F. Supp. 2d 1151 (C.D. Cal. 2013) ..................................................................5

*Waller v. Hewlett-Packard Co.*,
　295 F.R.D. 472 (S.D. Cal. 2013) ............................................................................5

*Ward-Richardson v. FCA US LLC*,
　690 F. Supp. 3d 1372 (N.D. Ga. 2023) ..................................................................9

*Weaver v. Champion Petfoods USA Inc.*,
    2019 WL 2774139 (E.D. Wis. July 1, 2019) ........................................................................19

*Winzler v. Toyota Motor Sales USA, Inc.*,
    681 F.3d 1208 (10th Cir. 2012) ........................................................................8, 9, 18

*Witters v. Daniels Motors, Inc.*,
    524 P.2d 632 (Colo. App. 1974) ........................................................................17

**Statutes**

28 U.S.C. § 1407(a) ........................................................................1

Ga. Code Ann. § 10-1-399 ........................................................................15

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................9

Fed. R. Civ. P. 12(b)(6) ........................................................................9

Fed R. Civ. P. 56 ........................................................................1

Fed. R. Civ. P. 56.1(b)(2)(C) ........................................................................11, 12, 13

## INTRODUCTION

Defendant FCA US LLC ("FCA") is entitled to summary judgment because Plaintiffs have failed to present a genuine dispute as to any material fact on their consumer fraud or common law fraud claims. Most critically, Plaintiffs Gibson, Johnson, and O'Neal (the "Remaining Plaintiffs") fail to provide sufficient evidence of damages after FCA replaced or offered to replace their vehicles' non-desiccated airbag inflators for free. Like the 12 other states' laws that this Court previously reviewed in granting summary judgment in FCA's favor, the laws of the states applicable to Remaining Plaintiffs' claims, Georgia and North Carolina, mandate the same result.

Remaining Plaintiffs' fraud or consumer fraud claims also suffer from a failure to present facts to support either an affirmative misrepresentation, duty to disclose, or reliance.[1] At an earlier stage of these proceedings, the Court addressed the lack of evidence in the record of any Remaining Plaintiff identifying with specificity an affirmative misrepresentation that they heard, saw, or read – much less relied on – when deciding to purchase their vehicle. Nothing in Plaintiffs' Response alters these conclusions, let alone to create a genuine issue of material fact. Lastly, Remaining Plaintiffs did not challenge that if summary judgment is granted on O'Neal's claims, it must also be granted for claims arising out of the headless New States – Colorado, Utah, West Virginia, and Wisconsin. *See* Docket Entry ("D.E.") 4818-3 at 1-2. For these reasons, and the reasons set forth in in FCA's Motion, FCA is entitled summary judgment pursuant to Rule 56.

## ARGUMENT

### I.   UNDER THE COURT'S POST-RECALL DAMAGES ANALYSIS, PLAINTIFFS CANNOT PROVE INJURY OR LEGALLY RECOVERABLE DAMAGES.

#### A.  The Remaining Plaintiffs have failed to present evidence of recoverable damages.

For Plaintiffs' consumer fraud and common law fraud claims relating to an undisclosed latent defect that was later fully remedied, Georgia and North Carolina law allow plaintiffs to seek

---

[1] As already decided by the Court, "when pretrial proceedings end, the Court will sever the Transferor Plaintiffs' legal actions from the now legally operative Direct File Complaints and suggest remand and transfer of these legal actions to the appropriate transferor court (here the Eastern District of Michigan) under Section 1407(a)." *In re Takata Airbag Products Liab. Litig.,* 379 F. Supp. 3d 1333, 1343 (S.D. Fla. 2019). Accordingly, should any claims survive motion practice, FCA expressly reserves and does not waive its rights under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 40 (1998), including but not limited to, its right to seek remand of the Remaining Plaintiffs' legal actions to the transferor district for trial.

a Market Value Measure of damages calculated by the difference between the fair market value of the damaged property immediately (1) before and immediately (2) after the injury. *See* D.E. 4797 at 7-8. However, Plaintiffs' damage expert (Dr. Dubé) did not present a damages model comporting with either state's applicable law and thus Plaintiffs fail to present sufficient evidence to avoid summary judgment.

*First*, Plaintiffs argue that Dr. Dubé's use of Kelley Blue Book 2020-2021 MSRP to generate the price attribute factor is sufficient evidence of the fair market value of the vehicle *before* the injury. D.E. 4818-3 at 17. In support, Plaintiffs cite *Johannessohn v. Polaris Indus., Inc.,* 450 F. Supp. 3d 931 (D. Minn. 2020) and *Johnson v. Nissan N. Am., Inc.,* 2022 WL 2869528 (N.D. Cal. July 21, 2022). But the *Johannessohn* court denied class certification on manifestation and predominance grounds after criticizing the use of MSRP data as a proxy for price paid. *See Johannessohn,* 450 F. Supp. 3d at 973, 979-87. And the *Johnson* court similarly criticized the use of MSRP data as an "oversimplification." *See Johnson,* 2022 WL 2869528, at *7. These courts were correct to criticize the assumption that MSRP is an accurate proxy for the price paid. *See Price v. L'Oreal USA, Inc*., 2020 WL 4937464, at *6-8 (S.D.N.Y. Aug. 24, 2020) (noting that "MSRP is determined based on how [the manufacturer] seeks to portray the product and competitor pricing, and not on any market research regarding what customers actually pay" and "Dr. Dubé[s] assumption that **MSRP is an accurate proxy for price paid ... is unreliable.**") (emphasis added) (excluding Dr. Dubé's damages report).

*Second*, Dr. Dubé's model fails to set forth the fair market value *after* the injury or after the vehicle is repaired. Georgia and North Carolina law barring damages premised upon a forced sale is applicable here, contrary to Plaintiffs' argument otherwise. *See* D.E. 4818-3 at 17, fn. 6. Plaintiffs attempt to distinguish these authorities on the basis that they involve other types of property. *See Id*. (arguing inapplicability of *Ga. Ltd. Partners v. City Nat'l Bank*, 748 S.E.2d 131, 132 (Ga. Ct. App. 2013) (because it involved a foreclosure sale of real property); *Gutherie v. Ford Equip. Leasing Co.*, 424 S.E.2d 889, 892 (Ga. Ct. App. 1992) (same); *Surratt v. Grain Dealers Mut. Ins. Co.*, 328 S.E.2d 16, 20 (N.C. Ct. App. 1985) (because it involved valuation of insured property)). This Court has already rejected those distinctions when it came to determining the appropriate measure of damages for a vehicle. *See* D.E. 4471 (the Court disagreeing with Plaintiffs that "damages from a consumer transaction is treated differently from the same measure of

damages arising from injury to personal or real property").[2] Accordingly, Dr. Dubé's model fails and Plaintiffs present no evidence that aligns with the Market Value Measure of damages under the laws of Georgia or North Carolina.

*Third,* Plaintiffs appear to argue that they have presented evidence of diminution in value of a vehicle post-repair. *See* D.E. 4818-3 at 27-28 ("Dr. Dubé's conjoint surveys expressly informed participants that the defective airbags would be replaced for free in the future and measured the impact of the time until repair on the amount of overpayment."). Fatally however, Plaintiffs *never* offered any evidence of *actual* post-repair diminution-in-value for Plaintiffs' vehicles. Indeed, Dr. Dubé disclaimed what Plaintiffs assert, offering no opinion on the market values of Class Vehicles after they were repaired because his opinions were expressly limited to so-called "price premiums" paid at the point of purchase. *See* D.E. 4222-7, Dubé Rebuttal Rpt. ¶ 76 fig. 2. He did not "actually model whether or not the consumer exercises that option and gets the car repaired," and admitted there is "no reason to anticipate any price reduction" after a vehicle is repaired because he concedes that "the car is no longer defective." Dubé Rebuttal Rpt. ¶¶ 31, 76 78.

Also lacking, Plaintiffs cite no <u>Georgia</u> authority that addresses benefit of the bargain damages in a case where an alleged latent defect was repaired or an offer was made to provide repairs for free. *See* D.E. 4818-3 at 15. Instead, Plaintiffs cite cases that are inapposite because the purported misrepresentations were unrelated to a remediable defect.[3] *See Brooks v. Dime Sav.*

---

[2] As noted in FCA's Motion, the substantive law in Georgia and North Carolina differentiates between fair market value and the price an unwilling seller obtains in a forced sale. *See* D.E. 4797 at 9-10. Yet, without authority, Plaintiffs purport Dr. Dubé's "widely accepted methodology" sufficiently accounts for supply-side considerations *due to competition* (as opposed to an alleged defect). *See* D.E. 4818-3 at 16-17. But Plaintiffs cannot ignore the consequence of his assumption the quantity of vehicles sold and market share of each brand remain fixed even as prices change, *i.e.*, each automaker may not offer different or fewer products. *See* D.E. 4222-6 at 11-12, 50 of 212, Dubé Rpt. ¶¶ 22, 27, 104; *see also* 4222-9 at 15 of 20, Dubé Dep. 196:10-12. "To assume … that [the manufacturer] would sell the same number of vehicles in the but-for world despite commanding a lower price for each vehicle at the same marginal cost per sale is to assume a massive, forced sale – contrary to the substantive law in [California, Missouri, and Texas]," as well as in Georgia and North Carolina. *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 240 (S.D.N.Y. 2019); *Georgia Ltd. Partners*, 748 S.E. 2d at 132; *Gutherie*, 424 S.E.2d at 892; *Surrat*, 74 N.C. App. at 293, 328 S.E.2d at 19-20.

[3] The grant of summary judgment in *Brooks* supports FCA's position because there, as here,

3

*Bank of New York, FSB*, 457 S.E.2d 706, 708 (Ga. Ct. App. 1995) (new homes' prices inflated through conspiracy of lender, agent and attorney); *see also Bennett v. D. L. Claborn Buick, Inc.*, 414 S.E.2d 12, 14 (Ga. Ct. App. 1991) (used vehicle misrepresented as new); *see also Horne v. Claude Ray Ford Sales, Inc.*, 290 S.E.2d 497, 498 (Ga. Ct. App. 1982) (same); and *see also Colonial Lincoln-Mercury Sales, Inc. v. Molina*, 262 S.E.2d 820, 822 (Ga. Ct. App. 1979) (same). Plaintiffs' argument contravenes the Court's summary judgment ruling on how damages are calculated in the 12 other states. *See* D.E. 4471 (finding that once "the recall, repair and replacement [of the non-desiccated Takata airbag inflators in their vehicles was] performed free of charge—[Plaintiffs] have been compensated and made whole" under various states' laws).

Plaintiffs also fail to cite any authority in North Carolina that addresses benefit of the bargain damages in a case where an alleged latent defect was repaired or offered to be repaired for free.[4] Instead, Plaintiffs argue that North Carolina law on damages for fraud is calculated as "the amount of loss caused by the difference between what was received and what was promised through a false representation." D.E. 4813-3 (citing *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56, 65 (N.C. Ct. App. 1998).) However, the misrepresentation in *First Atlantic* related to the sale of property management accounts, not a defect in a vehicle *that could be repaired*. Similarly, the purported misrepresentations in *Hardy v. Toler* – used vehicle's mileage, accident history, and warranty transferability – are also inapposite because none of these "defects" could be remedied or repaired. *See* D.E. 4818-3, citing *Hardy v. Toler*, 218 S.E.2d 342, 343 (N.C. 1975).[5] At issue in *Hardy* was whether the vehicle was in an accident or it was not. *Id*. That's an entirely

---

plaintiffs provided no evidence that they were exposed to any misrepresentations made by the defendants, and therefore could not "show the existence of damages." 457 S.E.2d at 708.

[4] Plaintiffs also appear to conflate the damages sought against FCA under North Carolina common-law fraud and its consumer protection statute with those obtainable under a breach of contract theory that is not present here. *See* D.E. 4848-3 at 16, fn. 5 (citing *Poor v. Hill*, 530 S.E.2d 838, 848 (N.C. Ct. App. 2000)). There is nothing under North Carolina state law that would require a different result than the Court's prior analysis involving point-of-purchase benefit of the bargain damages that found the purchaser is made whole once the alleged latent defect is remedied. *See supra* at Section I.A.; D.E. 4471 at 15.

[5] *Hardy* also involved misrepresentations between the purchaser and the used car salesman at the dealership, unlike O'Neal who had no direct contact or contractual relationship with FCA because she purchased her used vehicle from CarMax. D.E. 4798 at ¶¶ 99, 102, 103.

uncurable misstatement. Plaintiffs' cited authorities in North Carolina simply do not address that damage measures when personal property can be repaired or an offer was made to repair it for free.

FCA's authority, on the other hand, comports with this Court's damages analysis involving products with remediable defects. *See* D.E. 4471; *see also Canal Ins. Co. v. Tullis*, 515 S.E.2d 649, 649 (Ga. Ct. App. 1999) (reparable automobile); *Sprinkle v. N.C. Wildlife Res. Comm'n*, 600 S.E.2d 473 (N.C. Ct. App. 2004) (remediable boat). Plaintiffs have not and still cannot rebut the authorities in FCA's Motion with a single high court or intermediate court opinion in Georgia or North Carolina that would permit a plaintiff to pursue post-repair damages after completion of a free-of-charge recall approved by NHTSA, let alone pursue such a theory *without* any evidence of the post-repair diminution in value of that vehicle. *See* D.E. 4797 at 11-12. Having failed to provide a damages model that satisfies the Market Value Measure under Georgia or North Carolina law, Plaintiffs have no evidence of legally recoverable damages. FCA is entitled to summary judgment on this issue alone.

### B. The Remaining Plaintiffs have already received the benefit of their bargain through the recall.

Plaintiffs also attack the weight of authority cited by FCA in which courts have rejected claims for damages where the defendant has offered no-cost product repairs: *In re Toyota Motor Corp. Hybrid Brake*, *Kommer*, *Thiedemann*, *Sater*, and *Waller*. D.E. 4818-3 at 20-22. The biggest issue, according to Plaintiffs, is that those cases did not involve "evidence" like Dr. Dubé's unrealistically structured market simulation. Plaintiffs completely miss the point. And in so doing, they point to *Sater v. Chrysler Group LLC*, 2016 WL 7377126 (C.D. Cal. Oct. 25, 2016). Yet *Sater* highlights the glaring weakness of their theory: "the plaintiffs had 'not argued in their briefing that the value of the fully repaired trucks is less than the value of a truck that never had a defect.'" D.E. 4818-3 at 21. Like the claims in *Sater*, Plaintiffs here have not presented any evidence that the post-repair value of the fully repaired vehicles is less than the value of a vehicle that never had a defect. Certainly, Dr. Dubé never attempted to calculate such purported damages. Dr. Dubé admitted he never attempted to calculate the post-repair value of any of Plaintiffs' vehicles. *See* D.E. 4222-7, Dubé Rebuttal Rpt. ¶ 76 fig. 2.

Instead, Dr. Dubé attempted to calculate – as the Plaintiffs openly admit – the *pre*-repair "market prices that would have prevailed had consumers been aware of both the existence of the Inflator Defect and the eventuality of the recall at the time of purchase." D.E. 4818-3 at 20. That

is not the post-repair calculation contemplated by the *Sater* court (let alone required under Georgia and North Carolina law). Under the recall repair rubric, the *Sater* court got it right: once a no-cost recall repair is made or offered, the proper inquiry into damages is the post-repair difference in the value of the fully-repaired vehicle and a vehicle that never had a defect in the first place. *Sater*, 2016 WL 7377126 at *8. Plaintiffs' failure to offer any such evidence is undisputed and must result in summary judgment for FCA.

### C. The Remaining Plaintiffs' lack of measurable damages means they also lack Article III standing.

Plaintiffs concede that they are not pursuing a theory of injury based on risk of future harm. D.E 4818-3 at 18-19. Once again, they assert that they are only pursuing an overpayment theory at the point-of-purchase, *i.e.*, a past risk of harm. *Id*. In pursuit of their theory, they argue that *Earl v. Boeing Co.*, 53 F.4th 897 (5th Cir. 2022) is distinguishable because their expert, Dr. Dubé, modeled his survey disclosure on a form that FCA had customers sign at the point of purchase advising them of a future recall. D.E 4818-3 at 24-26. Again, Plaintiffs are wrong. In fact, the 8,775 purchasers of FCA vehicles that signed the disclosure form made their vehicle purchases ***with knowledge of the alleged defect and anticipated future recall repair*** – and Plaintiffs explicitly excluded them from their proposed classes of FCA vehicle owners. D.E. 4608 at 1 and Appx. B. Similarly, the *Boeing* plaintiffs suffered no physical harm and apparently sued for economic losses due to overpayment since they were unaware of an undisclosed safety risk.[6] The Fifth Circuit squarely addressed and rejected such a claim: "[a]t bottom, plaintiffs complain of a past risk of physical injury to which they were allegedly exposed because of defendants' fraud. But because that risk never materialized, plaintiffs have suffered no injury in fact and lack Article III standing." *Boeing*, 53 F.4th at 903 (emphasis added).[7] The same result should be reached here—

---

[6] The Fifth Circuit rejected the proposed conjoint survey-based damages in *Boeing*. The Fifth Circuit held that the assumption that the same number of flights would have been offered in the but-for world was rebutted by the much "more plausible inference" that the airlines "would have offered zero MAX 8 flights until the defect could be fixed." *See Boeing*, 53 F.4th at 902-903. The same is true here where Dr. Dubé's assumed that FCA offer the same number of vehicles at a discount to compensate Plaintiffs for their past heightened risk. It is not plausible, and NHTSA would not allow it.

[7] Plaintiffs also rely on *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 (11th Cir. 2019), *In re Evenflo Co., Inc.*, 54 F.4th 28 (1st Cir. 2022), and *Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th

without measurable damages, Plaintiffs lack standing.

**D.  The Remaining Plaintiffs' free recall replacements leave no injury to redress.**

Plaintiffs try, and fail, to sidestep the rationale and holding in *Sugasawara v. Ford Motor Company*, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019). There, the court held that a plaintiff who had his vehicle repaired for free pursuant to NHTSA recall could not articulate a plausible theory of economic loss based on overpayment at point of purchase because "after the recall remedy has been completed … the Vehicles' pre-defect values have likewise been restored." *Id.* at *6 (plaintiffs sought a nationwide class of vehicle purchasers). Plaintiffs' retort in their Response is that *Sugasawara* "was decided on a motion to dismiss, not on a record with any expert testimony demonstrating overpayment at the point of sale." D.E. 4818-3 at 23. But this distinction hurts rather than helps Plaintiffs. The court in *Sugasawara* accepted the plaintiffs' overpayment allegations as true, drew all reasonable inferences in the plaintiffs' favor, and still determined that it was not plausible for the plaintiffs to recover on an overpayment theory after a completed recall remedy.

Plaintiffs further suggest that it is "doubtful" *Sugasawara* can be reconciled with *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019). *Sugasawara* and *Nguyen* can be easily reconciled: ***Nguyen* did <u>not</u> involve a completed recall remedy**. As a result, the *Nguyen* court did not consider whether a recall remedy bars plaintiffs' claims for overpayment damages, as in *Sugasawara*. Moreover, the benefit-of-the-bargain model in *Nguyen*, unlike Dr. Dubé's "overpayment" theory, measured the "average ***cost of replacing*** the allegedly defective clutch system." *Id.* at 816 (emphasis added). That is not what Dr. Dubé modeled and he never considered the zero-dollar replacement cost to the consumer. Indeed, his model resulted in absurd damage calculations for a Plaintiff's vehicle – in one instance as much as 87% – had the purchaser known that the vehicle's non-desiccated airbag would need to be replaced in the future for free. In an apparent attempt to distinguish *Sugasawara*, Plaintiffs argue that Dr. Dubé's model purported to test the price impact of the challenged defect with an anticipated recall. D.E. 4818-3 at 20. This

---

Cir. 2007). But *Debernardis* and *Evenflo* were not recall cases, and while *Cole* was a recall case, it only addressed the injury-in-fact element of Article III standing, not the redressability element challenged by FCA. *Cole*, 484 F.3d at 721-23. Moreover, the *Cole* court reversed the district court's ruling granting class certification and remanded the case for entry of an order denying class certification because Plaintiffs failed to adequately address, much less extensively analyze, variations in state law and the obstacles such variations present to the predominance requirement. *Id.* at 730.

type of model was not approved by *Nguyen*'s cost-of-repair analysis, runs afoul of *Sugasawara*'s rejection of post-repair overpayment damages, and, as explained by all Defendants in their respective *Daubert* and *Comcast* challenges to Dr. Dubé's unreliable methodologies, has never been peer-reviewed or attempted in any other matter.[8]

    **E.  The Remaining Plaintiffs' claims are prudentially moot.**

    Plaintiffs argue that prudential mootness has no applicability except in cases where injunctive relief is sought. Given their claims for monetary relief, Plaintiffs urge this Court to refuse to apply prudential mootness and further attempt to distinguish *Hadley* and *Winzler* on this basis. *See* D.E. 4818-3 at 26-27.[9] But Plaintiffs openly admit that in both *Hadley* and *Winzler* "plaintiffs sought damages to compensate them for the cost of repair" and the plaintiffs in *Hadley* "alleged they suffered monetary harm from the diminished value of their car." *Id*. at 27 (citing *Hadley v. Chrysler Group, LLC*, 624 Fed. Appx. 374 (6th Cir. 2015). Nonetheless, these Circuit Courts dismissed the cases on prudential mootness grounds after the manufacturer offered a free recall repair. The Court should do the same here.

    Faced with FCA's citation to seven cases dismissed on prudential mootness grounds – including one where the plaintiffs sought benefit-of-the-bargain damages – Plaintiffs stress that many of the cases FCA relies on came from outside the Eleventh Circuit and all of them arose on a motion to dismiss. *See* D.E. 4818-3 at 28. The same can be said for many of the cases on which Plaintiffs rely.[10] *See* D.E. 4818-3 at 26-27 (citing *Chamber of Com. v. U.S. Dep't of Energy*, 627

---

[8] Plaintiffs also rely on *Friche v. Hyundai Motor, Am.*, 2022 WL 1599868 (C.D. Cal. Jan. 28, 2022). *See* D.E. 4818-3 at 24. But *Friche* is materially distinguishable because the plaintiff in that case alleged that he incurred pre-recall-remedy costs and reduced battery capacity before the recall. *Id*. That is not the case here, where Plaintiffs are only seeking overpayment damages at the point-of-purchase.

[9] Plaintiffs rely on *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377-78 (2019). *See* D.E. 4818-3 at 26. However, in *Mission* there was no subsequent intervening event like the NHTSA-mandated recall applicable here. Instead, *Mission* involved a bankruptcy debtor's rejection of an executory licensing agreement and its scheduled expiration date, meaning that regardless of the debtor's insolvency and the prior distribution of all of its assets, the resultant breach of contract and potential monetary damages remained and ensured a live controversy. *Mission*, 587 U.S. at 377-78.

[10] Plaintiffs also rely on *Rosen v. Mercedes-Benz USA, LLC*, 2022 WL 20766104 (N.D. Ga. Nov. 1, 2022) and *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017). Plaintiffs in *Rosen* sought

F.2d 289 (D.C. Cir. 1980) (outside the circuit and on a motion to dismiss); *Bolton v. Ford Motor Co.,* 2024 WL 3328522 (D. Del. July 8, 2024) (outside the circuit and on a motion to dismiss); *Patlan v. BMW of N. Am., LLC,* 2024 WL 1328012 (D.N.J. Mar. 28, 2024) (outside the circuit and on a motion to dismiss); *McMahon v. Volkswagen Aktiengesellschaft,* 2023 WL 4045156 (D.N.J. June 16, 2023) (outside the circuit and on a motion to dismiss)). The only case Plaintiffs cite that was decided on summary judgment rejected prudential mootness solely because the Plaintiffs in that case sought *post-repair diminished value*, incidental, and consequential damages, which Plaintiffs have told this Court that they do not seek. *See Crawford v. FCA US LLC*, 2021 WL 3603342, *4 -*5 (E.D. Mich. Aug. 13, 2021).

The decision last year in *Ward-Richardson*, however, did arise in this Circuit and the court dismissed plaintiffs' case on prudential mootness grounds. *See Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372 (N.D. Ga. 2023). In a misguided attempt to distinguish *Ward-Richardson*, Plaintiffs contend that no court in this Circuit has seriously grappled with whether a claim for monetary damages forecloses a prudential mootness argument. *See* D.E. 4818-3 at 26-28. Not so. The court in *Ward-Richardson* specifically analyzed whether the doctrine of prudential mootness applied in a case where the plaintiffs sought both equitable and monetary relief, analyzing many of the same authorities discussed here, including some relied on by Plaintiffs: *Hadley* (relied on by FCA*), Winzler* (relied on by FCA*), Ingeososas* (relied on by Plaintiffs*), Cheng* (relied on by FCA*), McCabe* (relied on by Plaintiffs*), Sharp* (relied on by FCA*), Flores* (relied on by FCA*), and Pacheco* (relied on by FCA). *See Ward-Richardson* at 1377-1380. The *Ward-Richardson* court agreed with FCA that the doctrine applied because the **recall** "provides the exact relief Plaintiffs seek, namely free repairs and reimbursement; otherwise … any additional relief this Court could award would constitute an impermissible double recovery." *Id*. at 1377-78. Here, the successful NHTSA-coordinated recall resulting in Plaintiffs Johnson's and O'Neal's[11] vehicles having

---

post-repair diminished value damages, which of course Plaintiffs are not seeking in this case. And *Leon* declined to dismiss the claims pursuant to the doctrine of prudential mootness "because Plaintiffs' claims are subject to dismissal for other reasons," namely Rules 12(b)(1) and 12(b)(6). *Leon*, 301 F. Supp. 3d at 1220 fn.10.

[11] Plaintiffs suggest that footnote 1 in FCA's Motion for Summary Judgment is insufficient to preserve issues related to the FCA Sale Order's impact on any claim brought based on a vehicle purchased prior to June 10, 2009. That is not so. Plaintiff O'Neal of North Carolina, the only

received a desiccated airbag inflator for free, and the offer to Gibson for the same relief, moot their damages claims.

## II.   THE REMAINING PLAINTIFFS FAIL TO CREATE A GENUINE ISSUE OF MATERIAL FACT ON FRAUD.

### A.  None of the Remaining Plaintiffs offer evidence of affirmative misrepresentations to them made by FCA.

The Court has already disposed of Plaintiffs' attempts to characterize generalized marketing materials as affirmative misrepresentations. *See* D.E. 4818-3 at 3-6; D.E. 4688 (the Court decertifying classes of Georgia purchasers). Although the Court acknowledged "the myriad different representations concerning safety and airbags that were conveyed through different mediums (*e.g.*, through print/radio/ television/internet advertisements, brochures, owner's manuals, sales pitches at FCA dealerships, and Monroney Labels," the Court analyzed and found wholly lacking Plaintiffs' evidence that either Gibson or Johnson specified any affirmative misrepresentations by FCA. *See* D.E. 4688 at 5-6. Similarly now, and fatal to their respective state law fraud claims that require proof of a specific affirmative misrepresentation, none of the Remaining Plaintiffs offer any specific affirmative misrepresentations by FCA to them upon which they relied. *See* D.E. 4806 at ¶¶ 78-80 and 109-114 (Gibson repeatedly citing to "safety" without a specific misrepresentation and no reference to her vehicle's airbag); ¶¶ 91-92, fn. 2 and 115-116 (same for Johnson), ¶¶ 101-102 and 117-124 (same for O'Neal). This failure requires summary judgment be granted for FCA for failing to provide evidence of reliance. *See Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321, 1339 (N.D. Ga. 2016) (applying Georgia law); *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (applying North Carolina law); *Bodie v. Purdue Pharma Co.*, 236 Fed. Appx. 511, 524 (11th Cir. 2007) (stating Eleventh Circuit precedent). Moreover, Plaintiffs appear to concede the point by arguing that reliance can be inferred.[12] D.E. 4818-3 at 29-30.

_____

remaining class representative in this case, purchased a used 2012 Dodge Charger – as such there is no dispute that her vehicle was both manufactured by FCA and purchased by O'Neal after the June 10, 2009 FCA Sale Order. The Sale Order issue simply does not apply to her because summary judgment is limited to the Remaining Plaintiffs, not unnamed class members. The issue is properly preserved because FCA raised the Sale Order issue in its class certification briefing (D.E. 4634 at 13-14).

[12] Plaintiffs also cite *Tobacco II Cases*, 207 P.3d 20 (Cal. 2009), but *Tobacco II* was decided under

1.       *Gibson and Johnson failed to provide evidence of misrepresentation or reliance.*

To argue evidence of reliance exists under Georgia law, Plaintiffs rely on inapposite authorities addressed by this Court during class certification. *See* D.E. 4818-3 at 30 (citing *Aetna Cas. & Sur. Co. v. Cantrell*, 197 Ga. App. 672, 673, 399 S.E.2d 237, 239 (1990)). *Aetna* denied class certification under Georgia law because, rather than alleging a scheme based on "identical" printed misrepresentations, the only common factor shared by the plaintiffs was that each individual received a denial of benefits after submitting an insurance claim. *Aetna*, 197 Ga. App. at 673 (1990).

Plaintiffs' position is even shakier when considering the case law relied upon by *Aetna*, the *Stevens v. Thomas*, 257 Ga. 645 (1987) decision which did not establish a presumption or inference of reliance under Georgia law. Instead, *Stevens* never reached the issue because the plaintiffs alleged a fraudulent scheme was based on oral misrepresentations. *Id*. at 649. *Stevens* held that a claim for fraud is based on oral misrepresentations "is not appropriate for class certification." *Id*. The *Aetna* and *Stevens* rulings are consistent with this Court's denial of class certification of the Georgia Plaintiffs' class claims because there is no evidence of uniform written misrepresentations in standardized documents received by all class members to which reliance could be inferred, in addition to a lack of evidence of all class members' conduct demonstrating reliance. *See* D.E. 4688 (citing *Fortis Inc. Co. v. Kahn*, 683 S.E.2d. 4, 8 (Ga. Ct. App. 2009) and *Liberty Lending Servs. v. Canada*, 668 S.E.2d 3 (Ga. Ct. App. 2008)). There is no basis for the Court to waver from its analysis of Plaintiffs' arguments at decertification, thus warranting summary judgment here. *See* D.E. 4688 at 5-6; *see also Bodie*, 236 Fed. Appx. at 524; *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1308 (11th Cir. 1999) (applying Georgia law and affirming summary judgment without reliance).

In an attempt to stave-off summary judgment, Johnson inserts mischaracterized and irrelevant facts in violation of Local Rule 56.1(b)(2)(C) regarding what she considered when purchasing the vehicle. D.E. 4806 at ¶¶ 91-92 and ¶¶ 115-116. Johnson points to testimony that she "researched" Chargers in the past, including looking at crash test results, but she does not identify the source of her research or results. *See* D.E. 4806 at ¶ 91. Plaintiffs fail to mention that

---

California law, not Georgia or North Carolina.

this "evidence" relates to Johnson's testimony regarding *previous* vehicle purchases, neither of which are the vehicle at issue in this case. *See* D.E. 4317 at ¶ 138. As for her dealership interactions at the point of purchase, Johnson admitted in discovery that she never discussed the safety features or airbags in the vehicle with any salesperson. *See* D.E. 4798 at ¶ 92. Johnson simply points out, generally, that safety and reliability were important to her – but she never identified a specific statement made by FCA regarding safety or reliability. D.E. 4806 at ¶¶ 91-92 and ¶¶ 115-116. Summary judgment is warranted on Johnson's claims for lack of evidence of any specific misrepresentation that she relied upon. *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015) (granting summary judgment under Georgia law); *Jimenez v. Houseboats on Lanier, Inc.*, 370 Ga. App. 788, 793, 899 S.E.2d 334, 338 (2024) (affirming summary judgment on common law fraud claim for lack of reliance); *see also Moore v. Lovein Funeral Home, Inc.*, 852 S.E.2d 876, 884 (Ga. Ct. App. 2020) (affirming summary judgment where plaintiff "failed to meet his burden to show that he relied on a misrepresentation by the Defendants").

Gibson also inserts new and irrelevant facts in violation of Local Rule 56.1(b)(2)(C) regarding what she considered when purchasing the vehicle. *See* D.E. 4806 at ¶¶ 78-80. Gibson simply points out, generally, that safety and reliability were important to her – but she never identified a specific statement made by FCA regarding safety or reliability. Gibson also asserts that a U.S. Auto Sales associate (not a FCA dealership representative and no evidence in the record was produced by Plaintiffs to the contrary) advised that her vehicle was "safe and reliable." *See* D.E. 4806 at ¶ 77. It is undisputed she purchased a used vehicle from a dealership unaffiliated with FCA and therefore could not have been exposed to an affirmative misrepresentation by FCA or its affiliated dealers at the point of purchase. *See* D.E. 4806 at ¶ 77. Moreover, prior to the point of purchase, it is undisputed she could not recall "a specific TV ad for Dodge that mentioned safety" or any FCA statements made to her. *See* D.E. 4806 at ¶ 78. Because Gibson failed to present evidence of any affirmative misrepresentation (*see* D.E. 4806 at ¶¶ 78-80 and 109-114), FCA is entitled to summary judgment on her fraud claim. *See McCabe*, 160 F. Supp. 3d at 1350; *Jimenez*, 370 Ga. App. at 793; *Moore*, 852 S.E.2d at 884; *see also Bodie*, 236 Fed. Appx. at 524.

2.   *O'Neal failed to provide evidence of misrepresentation or reliance.*

Under North Carolina law, Plaintiffs argue that reliance can be proven by circumstantial evidence when a misrepresentation is "uniformly made," citing *In re TD Bank, N.A.*, 325 F.R.D. 136 (D.S.C. 2018). D.E. 4818-3 at 30. But the *TD Bank* decision, which is not controlling on this

12

Court, did *not* cite to *any* North Carolina state court cases establishing that reliance can be proven by circumstantial evidence where a misrepresentation was "uniformly made." The *TD Bank* decision cites to *Broussard*, a case where the Fourth Circuit denied class certification on a North Carolina common law fraud claim based on alleged written and oral misrepresentations because such claims are "not readily susceptible to class-wide proof" insofar as "proof of reasonable reliance would depend upon a fact-intensive inquiry." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998). *Broussard*, addressing the very issue raised here by Plaintiffs, did not cite to a binding North Carolina opinion holding that reliance can be presumed.

Plaintiffs also rely on *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015), but the *Rikos* case (a) is not controlling; (b) relied on distinguishable precedent *Klay v. Humana*; and (c) misinterpreted *Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1 (2001), a non-precedential opinion based on public policy rather than a presumption of reliance. The *Rikos* case was about a dietary supplement and the Sixth Circuit held that reliance on the "alleged misrepresentation that Align promotes digestive health" could be presumed because, as in *Klay*, it "is the reason to buy Align." *Id.* (citing *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004).) That is the same heart-of-the-transaction rationale that the Eleventh Circuit found does *not* apply to a car purchase because car purchasers "may choose to rely on any of a number of marketing and branding representations." *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1311, fn.6. (11th Cir. Jul 7, 2023).

Clearly, reliance cannot be inferred (or presumed) here under North Carolina law because the Plaintiffs were not exposed to uniformly made misrepresentations and the evidence demonstrates that O'Neal relied on a number of marketing and branding representations when making her decision to purchase. Indeed, all Remaining Plaintiffs' testimony establishes that they were exposed to a variety of different advertising and information, yet none were able to recall a specific FCA advertising or representations upon which they relied at all. *See* D.E. 4797 at 23-24; *see also* D.E 4488 at 17-18; D.E. 4806, *generally* (repeatedly referring to "safety" without a specific misrepresentation or reference to their vehicle's airbag).

Like Johnson and Gibson, O'Neal improperly argues new facts in violation of Local Rule 56.1(b)(2)(C), and in doing so admits that the only commercials she remembers seeing about Dodge Chargers were "in general." *See* D.E. 4806 at ¶ 101. O'Neal admitted that she did not rely on these commercials when she bought her Dodge anyway. *See id.* O'Neal also raises new facts regarding her interaction with the sale representative at the point of purchase, claiming that they

13

discussed her vehicle's "safety features." D.E. 4806 at ¶ 123. O'Neal critically leaves out that this sales representative was a CarMax employee, not an FCA dealership sales representative. *See* D.E. 4798 at ¶ 102. And while she claims to have been presented with and read the CarMax equivalent of a "Monroney label" at the point of purchase, she failed to identify any specific false statements on it. *See* D.E. 4798 at ¶ 103. O'Neal's common law fraud and NCUDTPA claims are thus subject to summary judgment. *See In re Se. Eye Ctr.-Pending Matters*, 2019 WL 2051336, *17-*23 (N.C. Super. May 7, 2019) (granting summary judgment on fraud claim under North Carolina law); *see also Bodie*, 236 Fed. Appx. at 524.

In sum, none of the Remaining Plaintiffs can prove the element of misrepresentation by FCA in connection with the purchase of their vehicles under these facts. *See Brazil*, 249 F. Supp. 3d at 1339 (stating elements of fraud claim under Georgia law); *see also Breeden*, 171 F.R.D. at 195 (same under North Carolina law). Their common law fraud, GFBPA, and NCUDTPA claims are subject to summary judgment to the extent they are based on affirmative misrepresentations. *See McCabe*, 160 F. Supp. 3d at 1350; *In re Se. Eye Ctr.-Pending Matters*, 2019 WL 2051336 at *17-*23; *Bodie*, 236 Fed. Appx. at 526.

### B. Gibson and O'Neal's omission-based fraud claims fail because there was no duty to disclose pursuant to Georgia or North Carolina law.

Plaintiffs argue that a duty to disclose may have existed in Georgia and North Carolina. *See* D.E. 4818-3 at 32-33. But cases *McCabe v. Daimler AG* and *Brown v. Hyundai*, relied upon by Plaintiffs, both held that automotive manufacturers owed ***no*** duty to disclose to plaintiffs in connection with their common law fraudulent omission claims. *See McCabe*, 160 F. Supp. 3d at 1352 (finding summary judgment warranted under Georgia consumer protection statute where there was no evidence of a confidential or special relationship between the parties); *see also Brown v. Hyundai Motor Am.*, 2019 WL 4126710, *8 (D.N.J. Aug. 30, 2019), (dismissing Georgia fraud claim where plaintiff failed to allege a "confidential relationship" or any "pre-purchase communication or relationship" with defendant manufacturer).

Plaintiffs argue that FCA's marketing means that *McCabe* and *Brown* do not apply, because they view the marketing as proof of pre-purchase communications between FCA and Gibson and Johnson. But Gibson and Johnson do not point to a single specific pre-purchase communication between them and FCA. Gibson purchased a used vehicle from a dealer unaffiliated with FCA and could not remember any specific marketing. *See* D.E. 4798 at ¶¶ 75,

14

77, 78. Johnson, who purchased from a dealer affiliated with FCA, also could not recall any specific marketing statements made to her pre-purchase and admitted that *she did not rely* on any statements about her vehicle's safety or airbags when making the purchase. *See* D.E 4798 at ¶ 91 (stating "Other than reading reviews of other customers, Johnson did not rely on any statements about the 2014 Dodge Charger made by other people or in any written materials when she purchased her vehicle."). Under these circumstances, FCA is entitled to summary judgment under Georgia law on the fraud claims to the extent they are premised purely on an omission at the point-of-purchase. *See McCabe*, 160 F. Supp. 3d at 1352; *Brown*, 2019 WL 4126710 at *8.

As for North Carolina, Plaintiffs incorrectly state that FCA took the position that a "fiduciary relationship" must exist before a court imposes a duty to disclose. *See* D.E. 4818-3 at 33. This is not accurate. FCA argued that a duty to disclose can arise from three circumstances: a fiduciary relationship between the parties, concealment of material facts from the other, or defendant's superior knowledge of a latent defect in the subject matter of the negotiations. *See* D.E. 4797 at 25-26. But FCA explained why the undisputed facts in this case - there is no evidence that FCA took affirmative steps to conceal facts from O'Neal or that FCA had any negotiations at all with O'Neal, who purchased her car from CarMax, during which FCA could not have concealed a latent defect - demonstrate that FCA had no duty to disclose to O'Neal. FCA is therefore entitled to summary judgment under North Carolina law.  *See Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (N.C. Ct. App. 2009).

## III.   PLAINTIFFS FAIL TO CREATE A GENUINE ISSUE OF MATERIAL FACT REGARDING PRE-SUIT NOTICE UNDER THE GFBPA.

Plaintiffs argue that counsel – not Gibson and Johnson – sent letters to FCA in late 2017 and early 2018. *See* D.E. 4818-3 at 34. Aside from the fact Plaintiffs provide no binding authority from Georgia that letters from their counsel would be sufficient notice when neither Gibson nor Johnson individually provided notice, and neither letter sent by Plaintiffs' counsel references either Gibson or Johnson. *See* D.E. 4338-195 and D.E. 4338-196. Accordingly, their purported pre-suit notices fail on their face. *See* Ga. Code Ann. § 10-1-399 (stating that "[a]t least 30 days prior to the filing of any such action, a written demand for relief, ***identifying the claimant*** and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent") (emphasis added)).

IV.    **PLAINTIFFS FAIL TO CREATE A GENUINE ISSUE OF MATERIAL FACT REGARDING THE STATUTE OF LIMITATIONS ON GIBSON'S FRAUD AND GFBPA CLAIMS.**

Plaintiffs argue that FCA cites no evidence that Gibson received the Notice of Recall FCA mailed to her or that the notice provided Gibson sufficient information to trigger the limitations period barring her fraud and GFBPA claims. *See* D.E. 4818-3 at 35. Both arguments fail. FCA presented undisputed evidence establishing that FCA sent the notice to Gibson's long-time residence advising her of the recall of her driver's side airbag on or about July 2, 2015, and that the communication notified the recipients that the vehicle is subject to a safety recall and the availability of a repair. *See* D.E. 4798 at ¶ 81. Plaintiffs' Response does not genuinely rebut this conclusion.[13] Plaintiffs cite no authority that requires proof of receipt when notice is mailed to an individual's long-time residence. Gibson herself testified she received several recall notices at her residence but "ripped them up because no one was responding to [her] calls to get [her] vehicle repaired." D.E. 4798 at ¶ 84 (citing Gibson Dep. Tr. at p. 195:2-9). As there is no disputed fact Gibson was provided notice at her long-time residence where she admitted receiving FCA's recall notices, FCA is entitled to summary judgment.

V.     **PLAINTIFFS FAIL TO EFFECTIVELY REBUT APPLICABLE LAW IN THE NEW STATES.**

The substantive laws in the New States dictate that FCA is entitled to summary judgment as a matter of law for failing to produce evidence of damages. Plaintiffs' authorities, organized by state, are distinguished below.

   **A.  FCA is entitled to summary judgment as a matter of Colorado law on damages.**

<u>Plaintiffs have no evidence of damages.</u> In their Response, Plaintiffs cite two Colorado cases generally describing benefit of the bargain damages, *Club Matrix, LLC v. Nassi*, 284 P.3d 93 (Colo. App. 2011) and *JW Const. Co., Inc. v. Elliott*, 253 P.3d 1265 (Colo. App. 2011). *See* D.E. 4818-3 at 35. These cases are inapplicable because they do not involve any type of property damage. *See Club Matrix*, 284 P.3d at 95 (fraudulent inducement to enter into a commercial lease); *see also JW Const.*, 253 P.3d at 1268 (fraud action by homeowners against their general contractor

---

[13] Plaintiffs' argument about whether a four-year or two-year statute of limitations applies to the Georgia Uniform Deceptive Trade Practices Act is a moot point, the parties have already jointly notified the Court that this claim is no longer pending. *See* D.E. 4484 at 2.

for fraud and excessive liens as a result of fabricated or altered invoices). FCA, on the other hand, relies on *Airborne, Inc. v. Denver Air Center, Inc.*, 832 P.2d 1086 (Colo. App. 1992), which involved an action to recover damages for breach of contract and negligence for faulty work performed on an aircraft that resulted in engine damage necessitating repair. *Id.* at 1088. The court held that "[i]f damaged property is repairable, plaintiff is entitled to recover reasonable costs of repair together with any decrease in market value as repaired," and that additionally a plaintiff "may recover for the loss of use of personal property for the length of time reasonably required for repair," but that a "plaintiff has a duty to mitigate damages" and the damage award cannot "create a windfall to plaintiff … or result in a double recovery." *Id.* at 1089, 1091, 1092-93. The holding in *Airborne* is clearly on point and dispositive.

Plaintiffs also cite *Witters v. Daniels Motors, Inc.*, 524 P.2d 632 (Colo. App. 1974), for the proposition that cost of repair is an "option" rather than a "cap on recoverable damages." *See* D.E. 4818-3 at 35. *Witters* was an action for fraud by new car purchaser against dealership alleging failure to disclose, prior to sale, that the automobile had been damaged in transit and later repaired. 524 P.2d at 635. The appellate court found that Plaintiff had a choice of remedies: rescission or monetary damages based on the difference in value between a new car and the car received or the cost of repairing the alleged defect. *Id.* Notably, the appellate court did not rule that the plaintiff could seek both difference in value and cost of repair damages, as Plaintiffs suggest. The appellate court had no opportunity to rule on difference in value damages because the plaintiff elected to seek cost of repair damages. *Id.* And because the plaintiff failed to establish a causal connection between the alleged fraud and the repairs, the court did not need to address plaintiff's duty to mitigate and Colorado law's bar against windfall double recoveries. *Id.* Accordingly, since Dr. Dubé never provided any evidence of diminished value after repair, FCA is entitled to summary judgment for any claim brought under Colorado law.

## B. FCA is entitled to summary judgment as a matter of Utah law on damages and manifestation.

Plaintiffs have no evidence of damages. Plaintiffs cite two Utah cases generally addressing benefit of the bargain damages: (1) *Dilworth v. Lauritzen*, 18 Utah 2d 386 (1967) and (2) *Pace v. Parrish*, 122 Utah 141 (1952). *See* D.E. 4818-3 at 36-37. The *Dilworth* case is clearly inapplicable because it involved an action for fraudulent inducement into a distributorship contract. Further, the *Pace* decision supports FCA's position. *Pace* involved an action for fraudulent inducement in

17

connection with the purchase of a farm. One of the fraudulent misrepresentations involved the condition of fences on the farm. As to the fences, the Utah Supreme Court affirmed damages in the amount of "actual estimated cost to put it in reasonable condition and repair." *Pace*, 122 Utah at 150.

Plaintiffs are also incorrect to conclude *Leishman v. Kamas Valley Lumber Co.*, 19 Utah 2d 150 (1967), cited by FCA, is inapplicable simply because it involved neither fraud nor automobiles. *Leishman* involved an allegedly defective product and the evidence demonstrated that the cost of repair was less than the evidence of the difference in value. *Id*. at 748-49. The Utah Supreme Court affirmed the damages finding that the *cost of repair was the proper measure of damages* and a damage award less than the cost of repair was not excessive. *Id*. As in *Leishman*, this Court should apply the cost of repair – zero – as the proper measure of damages here.

Plaintiffs cannot seek relief for unmanifested defect. Plaintiffs try to distinguish *Winzler* because the decision was "later vacated on mootness grounds." *See* D.E. 4818-3 at 38-39. It is no wonder why Plaintiffs do not explain why it was vacated, because the Tenth Circuit dismissed the case on prudential mootness grounds because the NHTSA-coordinated recall provided the relief necessary to make plaintiffs whole. *See Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). Plaintiffs' claims fail both because the defect did not manifest and because the claims are prudentially moot.

## C. FCA is entitled to summary judgment as a matter of West Virginia law on damages.

Plaintiffs have no evidence of damages. Plaintiffs cite general West Virginia case law describing benefit of the bargain damages, but they do not cite any controlling authority in West Virginia that would permit a plaintiff to recover money damages after a free recall repair. *See* D.E. 4818-3 at 36-37. Plaintiffs attempt to distinguish *Ellis v. King*, 400 S.E.2d 235 (W.Va. 1990), by arguing that damages for diminution in value are permitted in addition to cost of repair without recognizing Plaintiffs are not seeking and have not provided any evidence of such damages. *See* D.E. 4818-3 at 37. The court in *Ellis* made clear that damages are limited to cost of repair unless the plaintiff submits "actual proof that the value was diminished" based on "structural damage" that "would affect the future use of the vehicle even after repair." *Id.* at 238-39. This clear-cut rule requires summary judgment for FCA because FCA has remedied the alleged airbag inflator defect with a free and effective recall replacement for all Plaintiffs' FCA vehicles. None of the Plaintiffs

are asserting diminution in value or an airbag malfunction.

**D.  FCA is entitled to summary judgment as a matter of Wisconsin law on damages, manifestation, and duty to disclose.**

<u>Plaintiffs have no evidence of damages</u>. Like West Virginia, Plaintiffs cite Wisconsin case law generally describing benefit-of-the-bargain damages, but they do not effectively address the Wisconsin Supreme Court's holding that a court should award the "lesser amount" of diminished value and cost of repair because a plaintiff cannot "elect the approach that results in a higher award of damages." *Laska v. Steinpreis*, 231 N.W.2d 196, 200 (Wis. 1975). This straightforward rule requires summary judgment in FCA's favor because the cost of repair is zero for all Named Plaintiffs (and any putative class members).

<u>Plaintiffs cannot seek relief for an unmanifested defect</u>. The manifest defect rule established in *Tietsworth v. Harley-Davidson*, 677 N.W.2d 233 (Wis. 2004) is also fatal to Plaintiffs' claims. Plaintiffs continue to insist that the defect has "manifested" in their vehicles simply because they say it has, but do not cite any case law allowing recovery of damages for a latent defect that has not manifested in actual product failure. Although multiple courts have adopted FCA's position, Plaintiffs insist by way of unsupported footnote that those courts got it wrong. Neither of the two cases Plaintiffs cite are on point. One involved a vehicle with numerous defects where the plaintiff "began experiencing problems with the car only hours after purchasing it." *See Mueller v. Harry Kaufmann Motorcars, Inc.*, 859 N.W.2d 451, 455 (Wisc. Ct. App. 2014). The other involved securities fraud. *Jersild v. Aker*, 775 F. Supp. 1198 (E.D. Wis. 1991). None of the Plaintiffs would meet the manifestation requirements as set forth under Wisconsin law.

<u>FCA had no duty to disclose</u>. The court in *Tietsworth* also limited the duty to disclose to business transactions and left open the question of whether a duty to disclose exists for consumer transactions. Plaintiffs cite three non-controlling federal court decisions in support of their argument: *Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139 (E.D. Wis. July 1, 2019), *Schmidt v. Bassett Furniture Indus.*, 2009 WL 3380354, at *1 (E.D. Wis. Oct. 20, 2009), and *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017). But in reaching their conclusions, the *Weaver*, *Schmidt*, and *Monostable* courts cite to Wisconsin case law in applying a duty to disclose in the context of business transactions rather than consumer transactions. Other federal district courts applying Wisconsin law have exercised restraint in imposing such a duty without any explicit recognition from Wisconsin courts. *See Naparala v.*

19

*Pella Corp.*, 153 F. Supp. 3d 884, 894 (D.S.C. 2015). Given the dearth of Wisconsin authority, the Court should decline to recognize a duty to disclose in consumer transactions.

## **CONCLUSION**

Plaintiffs' Response fails to identify a genuine issue of material fact to avoid summary judgment under the laws governing their claims. Unable to present sufficient evidence to satisfy essential elements of their claims, FCA is entitled to summary judgment against the Remaining Plaintiffs, consistent with this Court's November 10, 2022 Opinion addressing Plaintiffs' failure to prove damages in the 12 other states.

Dated:  August 9, 2024

By: */s/ Scott M. Sarason*

Scott M. Sarason
Florida Bar No. 0394718
ssarason@rumberger.com
RUMBERGER KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130
Tel: (305) 995-5422
Fax: (786) 536-3446

By: */s/ Daniel T. Graham*

Daniel T. Graham (*pro hac vice*)
dgraham@clarkhill.com
Michael P. Croghan *(pro hac vice)*
mcroghan@clarkhill.com
Jeffrey M. Sniadanko *(pro hac vice)*
jsniadanko@clarkhill.com
Paul C. Do (pro hac vice)
pdo@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
Tel: (312) 985-5945 (Graham)
Fax: (312) 985-5954 (Graham)

*Attorneys for FCA US LLC*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2024, a true and correct copy of the foregoing was filed via CM/ECF and served on all counsel of record via electronic notices generated by CM/ECF.

By: <u>*/s/ Scott M. Sarason*</u>

21