**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| IN RE: | |
| **TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION** | MDL No. 2599 |
| | Master File No. 15-MD-2599-MORENO |
| This Document Relates to *Whitaker et al. v. General Motors Co. et al.* | S.D. Fla. Case No. 1:14-CV-24009-FAM (Economic Loss Track) |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS GENERAL MOTORS COMPANY, GENERAL MOTORS HOLDINGS LLC, AND GENERAL MOTORS LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**

Dated: August 9, 2024

Laurie M. Riley, Esq. (FL Bar No. 657751)
Jones Walker LLP
201 South Biscayne Boulevard, Suite 3000
Miami, FL 33131
Telephone: (305) 679-5728
Facsimile: (305) 679-5710
Email: lriley@joneswalker.com

R. Allan Pixton (pro hac vice)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 North Wacker Dr., Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
Email: allanpixton@quinnemanuel.com

Renee D. Smith (pro hac vice)
Sam Ikard (pro hac vice)
Nadia Abramson (FL Bar No. 121763)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: renee.smith@kirkland.com
sam.ikard@kirkland.com
nadia.abramson@kirkland.com

*Attorneys for Defendant General Motors Company,*
*General Motors Holdings LLC, and General Motors LLC*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**................................................................................................................... **1**

**ARGUMENT AND AUTHORITIES**.................................................................................. **2**

**I.**      **The Monetary Damages Claims Are Prudentially Moot**.................................... **2**

**II.**     **The Damages Claims Were Substantively Eliminated.** .................................... **4**

      A.      The Free And Effective Recall Repairs Eliminated State Law Damages............... 4

          1.      Louisiana ................................................................................................... 4

          2.      Alabama ..................................................................................................... 7

          3.      Georgia....................................................................................................... 7

      B.      Plaintiffs Violate The "Willing Seller" State Law Damages Requirement. ........... 8

**III.**    **Plaintiffs' Claims Fail for Additional Reasons.** ................................................. **8**

      A.      The Louisiana Claim Is Untimely And Brought Against The Wrong
          Company. ...................................................................................................... 8

          1.      The Claim Is Barred By The One-Year Prescriptive Period..................... 8

          2.      The Redhibition Claim For An Old GM Vehicle Is Barred..................... 11

      B.      The Court Should Grant Summary Judgment On The Alabama and
          Georgia Claims For Additional Reasons. .................................................... 12

          1.      The Manifest Defect Rule Bars The Alabama Plaintiffs' Claim. ............ 12

          2.      Judicial Estoppel Bars The Georgia Plaintiff's Claims. ......................... 13

          3.      Reliance And Duty To Disclose Problems Bar The Alabama And
             Georgia Claims. ..................................................................................... 15

**IV.**    **The Court Should Decertify The Louisiana Class.** ....................................... **17**

**CONCLUSION** ................................................................................................................. **19**

**REQUEST FOR HEARING** ............................................................................................ **19**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Fred's Inc.*,
  25 So. 3d 821 (La. 2010) ..............................................................................................11

*Amin v. Mercedes-Benz USA, LLC*,
  301 F. Supp. 3d 1277 (N.D. Ga. 2018).........................................................................17

*Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*,
  611 So. 2d 238 (Ala. 1992)...........................................................................................16

*Beth Israel v. Bartley, Inc.*,
  579 So. 2d 1066 (La. Ct. App. 1991).............................................................................8

*Brown v. Hyundai Motor Am.*,
  2019 WL 4126710 (D.N.J. Aug. 30, 2019) ..................................................................17

*Cardenas v. Toyota Motor Corp.*,
  2022 WL 19521722 (S.D. Fla. Dec. 7, 2022)..........................................................18, 19

*Club Madonna, Inc. v. City of Miami Beach*,
  500 F. Supp. 3d 1304 (S.D. Fla. 2020), *aff'd*, 42 F.4th 1231 (11th Cir. 2022) .......19

*Colangelo v. Champion Petfoods USA, Inc.*,
  2022 WL 991518 (N.D.N.Y. Mar. 31, 2022) ...............................................................8

*Cornelious v. Bailey Lincoln-Mercury, Inc.*,
  566 So. 2d 85 (La. Ct. App. 1990)................................................................................6

*Crawford v. FCA US LLC*,
  2024 WL 919830 (E.D. Mich. Mar. 4, 2024) ...........................................................3, 13

*Culpepper v. Stryker Corp.*,
  968 F. Supp. 2d 1144 (M.D. Ala. 2013) .......................................................................16

*Debernardis v. IQ Formulations*,
  942 F.3d 1076 (11th Cir. 2019) ....................................................................................4

*Earl v. Boeing Co.*,
  53 F.4th 897 (5th Cir. 2022) .........................................................................................4

*Eastin v. Entergy Corp.*,
  865 So. 2d 49 (La. 2004) ..............................................................................................9

ii

*Ehrlich v. Roby Motors Co.*,
117 So. 590 (La. 1928) ................................................................................................1

*Encompass Off. Sols., Inc. v. La. Health Serv. Indem. Co.*,
2013 WL 12310676 (N.D. Tex. Sept. 17, 2013).........................................................9

*In re Evenflo Co., Mktg., Sales Pracs. & Prods. Liab. Litig.*,
54 F.4th 28 (1st Cir. 2022)..........................................................................................4

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
982 F. Supp. 388 (E.D. La. 1997) ...................................................................... *passim*

*Ford Motor Co. v. Rice*,
726 So. 2d 626 (Ala. 1998) ..........................................................................................7

*Franco v. Mercedes-Benz USA*,
2017 WL 10992256 (La. Dist. Ct. May 23, 2017), *rev'd*, 258 So. 3d 1054 (La.
Ct. App. 2018)...................................................................................................1, 5, 6

*Franco v. Mercedes-Benz USA, LLC*,
258 So. 3d 1054 (La. Ct. App. 2018).................................................................1, 4, 5, 6

*Ga. Ne. R.R. Co. v. Lusk*,
587 S.E.2d 643 (Ga. 2003)...........................................................................................7

*In re Gen. Motors LLC Ignition Switch Litig.*,
2016 WL 874778 (S.D.N.Y. Mar. 3, 2016) ...............................................................12

*In re Gen. Motors LLC Ignition Switch Litig.*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019)...................................................................4, 12

*Griffin v. Coleman Oldsmobile, Inc.*,
424 So. 2d 1116 (La. Ct. App. 1982).........................................................................6

*Hadley v. Chrysler Group, LLC*,
624 F. App'x 374 (6th Cir. 2015)................................................................................3

*Harewood v. Miami-Dade Cnty.*,
780 F. App'x 748 (11th Cir. 2019) ............................................................................13

*Hosp. Serv. Dist. No. 1 of Jefferson Par. v. Alas*,
657 So. 2d 1378 (La. Ct. App. 1995).........................................................................11

*Ex parte Household Retail Servs. Inc.*,
744 So. 2d 871 (Ala. 1999).........................................................................................16

*Hunt v. Tucker*,
93 F.3d 735 (11th Cir. 1996) .....................................................................................12

*Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*,
    479 F. App'x 955 (11th Cir. 2012) ..................................................................1, 2, 3

*John Thurmond & Assocs., Inc. v. Kennedy*,
    668 S.E.2d 666 (Ga. 2008)......................................................................................7

*Lance Toland v. Phoenix Ins. Co.*,
    855 F. App'x 474 (11th Cir. 2021) .......................................................................19

*Leon v. Cont'l AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..................................................................3

*Maison Blanche, Inc. v. La. Dep't of Lab.*,
    604 So. 2d 670 (La. Ct. App. 1992).......................................................................9

*Marin v. Exxon Mobil Corp.*,
    48 So. 3d 234 (La. 2010) ...................................................................................9, 10

*Mason v. Chrysler Corp.*,
    653 So. 2d 951 (Ala. 1995)...................................................................................16

*McCabe v. Daimler AG*,
    160 F. Supp. 3d 1337 (N.D. Ga. 2015).................................................................17

*McCabe v. Daimler Ag*,
    2015 WL 11199196 (N.D. Ga. Aug. 19, 2015) ......................................................3

*McMahon v. Volkswagen Aktiengesellschaft*,
    2023 WL 4045156 (D.N.J. June 16, 2023)..............................................................3

*Menville v. Stephens Chevrolet, Inc.*,
    300 So. 2d 858 (La. Ct. App. 1974).......................................................................6

*Mire v. EatelCorp, Inc.*,
    849 So. 2d 608 (La. Ct. App. 2003).....................................................................18

*Mobile Dodge, Inc. v. Waters*,
    404 So. 2d 26 (Ala. 1981) ......................................................................................7

*In Matter of Motors Liquidation Co.*,
    829 F.3d 135 (2d Cir. 2016)..................................................................................12

*Navarro v. City of Riviera Beach*,
    192 F. Supp. 3d 1353 (S.D. Fla. 2016) ..................................................................5

*Nguyen v. Nissan N. Am., Inc.*,
    932 F.3d 811 (9th Cir. 2019) ................................................................................13

*Patlan v. BMW of N. Am., LLC*,
 2024 WL 1328012 (D.N.J. Mar. 28, 2024).............................................................................3

*Pilgrim v. Gen. Motors Co.*,
 2020 WL 7222098 (C.D. Cal. Nov. 19, 2020).....................................................................12

*Reed v. Gen. Motors Corp.*,
 400 So. 2d 919 (La. Ct. App. 1981).........................................................................8, 10, 11

*Roberto v. Shendell & Assocs., P.A.*,
 2018 WL 1367445 (S.D. Fla. Mar. 16, 2018)........................................................................5

*Sanders v. Earnest*,
 793 So. 2d 393 (La. Ct. App. 2001).....................................................................................11

*Sharp v. FCA US LLC*,
 637 F. Supp. 3d 454 (E.D. Mich. 2022).................................................................................3

*Shin v. Cobb Cnty. Bd. of Educ.*,
 248 F.3d 1061 (11th Cir. 2001) ...........................................................................................17

*Simmons Auto Sales, Inc. v. Royal Motor Co.*,
 489 So. 2d 518 (Ala. 1986)....................................................................................................7

*Slater v. U.S. Steel Corp.*,
 871 F.3d 1174 (11th Cir. 2017) ...........................................................................................14

*Smith v. BP Expl. & Prod., Inc.*,
 2024 WL 1693874 (5th Cir. Apr. 19, 2024)....................................................................9, 15

*Smith v. Haynes & Haynes P.C.*,
 940 F.3d 635 (11th Cir. 2019) .............................................................................................15

*Stanley v. Nissan N. Am., Inc.*,
 2024 WL 814496 (M.D. Tenn. Feb. 27, 2024).....................................................................17

*State v. Ford Motor Co.*,
 965 So. 2d 438 (La. Ct. App. 2007)......................................................................................18

*Storey v. Cap. Link Mgmt., LLC*,
 2021 WL 4862667 (M.D. Fla. Oct. 19, 2021) ......................................................................15

*Stroderd v. Yamaha Motor Corp., U.S.A.*,
 2005 WL 2037419 (E.D. La. Aug. 4, 2005) ...........................................................................5

*Summit Auto Sales, Inc. v. Draco, Inc.*,
 2017 WL 3896691 (N.D. Ala. Sept. 6, 2017).......................................................................16

*In re Takata Airbag Prod. Liab. Litig.*,
  2022 WL 17546365 (S.D. Fla. Nov. 10, 2022)....................................................4, 12

*In re Takata Airbag Prod. Liab. Litig.*,
  2023 WL 2388488 (S.D. Fla. Jan. 31, 2023) ............................................................6

*In re Takata Airbag Prod. Liab. Litig.*,
  2023 WL 6274837 (S.D. Fla. Aug. 24, 2023).............................................2, 17, 18

*In re Taxotere (Docetaxel) Prod. Liab. Litig.*,
  995 F.3d 384 (5th Cir. 2021) ...................................................................................9

*Tershakovec v. Ford Motor Co.*,
  2021 WL 3711444 (S.D. Fla. Aug. 20, 2021)........................................................10

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009) ........................................................................................16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.
  Liab. Litig.*,
  785 F. Supp. 2d 925 (C.D. Cal. 2011) ...................................................................13

*Traylor v. Ford*,
  185 F. Supp. 2d 1338 (N.D. Ga. 2002)...................................................................14

*Vegas v. UPS Ground Freight, Inc.*,
  2019 WL 13152026 (M.D. Fla. May 6, 2019)..................................................13, 14

*Ward-Richardson v. FCA US LLC*,
  690 F. Supp. 3d 1372 (N.D. Ga. 2023)........................................................1, 2, 3, 4

*Weakley v. Eagle Logistics*,
  894 F.3d 1244 (11th Cir. 2018) ..............................................................................13

*Weber v. Crescent Ford Truck Sales, Inc.*,
  393 So. 2d 919 (La. Ct. App. 1981)..........................................................................6

*Williams v. Golden Peanut Co.*,
  2022 WL 3867557 (11th Cir. Aug. 30, 2022)..........................................................15

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) ............................................................................1, 4

*Young v. Popeye's Chicken*,
  2019 WL 3817644 (N.D. Ala. Aug. 14, 2019) .................................................14, 15

**Statutes**

La. Stat. Ann. § 9:2800.53 .......................................................................................11

**Rules**

Fed. R. Civ. P. 23(c) ............................................................................................19

Fed. R. Civ. P. 56 ................................................................................................19

Fed. R. Evid. 201 ................................................................................................5

**Other Authorities**

Ala. Pattern Civ. Jury Instruction § 11.35 ....................................................7

## INTRODUCTION

Plaintiffs' opposition brief (D.E. 4818-2) cannot overcome the fundamental and dispositive problems with their case—namely that any alleged defect has never manifested in their own vehicles (or in any of the more than six million vehicles that have been on the road for more than 18 years), and the free and effective recall repair means that it never will.

*First*, because the NHTSA recalls are textbook examples of a "coordinate branch of government step[ping] in to promise the relief [the plaintiff] seeks," the Court should dismiss the case under the prudential mootness doctrine. *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1377 (N.D. Ga. 2023).[1] Plaintiffs' argument that the doctrine does not apply to monetary damages claims breaks with the overwhelming weight of authority. And plaintiffs' reliance on cases where (unlike here) repairs did not fix the alleged defect—while ignoring recent on-point opinions like *Ward-Richardson*—is misplaced. Because the recalls here "forestalled any occasion for meaningful relief," the doctrine applies and allows the Court to dismiss the case. *Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 F. App'x 955, 962 (11th Cir. 2012).

*Second*, the free recall repair also eliminates any state law benefit-of-the bargain damages, which are the only damages at issue here. Plaintiffs identify no case applying Louisiana, Georgia, or Alabama law holding that such damages are available where the alleged defect never manifested and was fully remedied free of charge. For example, plaintiffs argue that *Franco v. Mercedes-Benz USA, LLC*, 258 So. 3d 1054 (La. Ct. App. 2018), "could hardly be more on-point" to support their Louisiana damages claims. But the *Franco* case addressed federal preemption principles, not whether damages are available where there was a free and full remedy. In fact, the *Franco* plaintiff alleged there was *no current remedy to correct the defect*. Where, as here, a "defect ha[s] been removed" there are no damages. *Ehrlich v. Roby Motors Co.*, 117 So. 590, 561-63 (La. 1928).

*Third*, several other state-law and/or plaintiff-specific problems independently support summary judgment. For example, even though the Louisiana claim is facially time barred, plaintiffs argue (1) the prescriptive (statute of limitations) period did not start running until he had "actual" knowledge of an alleged defect, or (2) the limitations was tolled by GM's statements that plaintiff never saw and which do not toll claims as a matter of law. Plaintiffs' position is irreconcilable with Louisiana law, including *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,

---

[1] Quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210–13 (10th Cir. 2012).

982 F. Supp. 388, 395-96 (E.D. La. 1997)—a directly on point MDL case that plaintiffs do not even mention (let alone address) in their opposition brief.

*Fourth*, the Court should use this opportunity to correct manifest errors in its class certification order. Those errors stem from plaintiffs' incorrect claims that GM had provided "no evidence that any class members were aware of their claims more than one year before this action commenced," when GM had, in fact, provided such evidence. *In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 6274837, at 6 (S.D. Fla. Aug. 24, 2023). This record evidence fundamentally alters the predominance balance and requires decertification.

The Court should reject plaintiffs' arguments, grant summary judgment in GM's favor on all remaining claims, and decertify the Louisiana class.

## ARGUMENT AND AUTHORITIES

### I.   THE MONETARY DAMAGES CLAIMS ARE PRUDENTIALLY MOOT.

In this case, "prudence and comity" support dismissal because a coordinate branch of government has offered relief that fully remedied the alleged defect. *Ward-Richardson*, 690 F. Supp. 3d at 1377-78 (quoting *Ingaseosas*, 479 F. App'x at 962); *see also* Mot.[2] at 9-10. The Court should reject the argument that prudential mootness nonetheless is inapplicable because plaintiffs seek monetary (instead of equitable) damages. Opp. at 12-13.

*First*, although the "Eleventh Circuit has not yet addressed the question of whether the prudential mootness doctrine applies to claims seeking monetary relief," *Ward-Richardson*, 690 F. Supp. 3d at 1378, district courts in both the Eleventh Circuit and Sixth Circuit (where any remaining claims would be remanded for trial) recognize that claims for benefit-of-the-bargain damages should be dismissed as prudentially moot where, as here, there is a free and effective recall repair in coordination with NHTSA. Mot. at 9-10. Applying prudential mootness principles to both monetary and equitable claims is fully consistent with Eleventh Circuit jurisprudence,

---

[2] In addition to the conventions from GM's opening brief (D.E. 4799 at 2 n.2), the following conventions apply to this brief: "Mot." refers to GM's Summary Judgment Motion (D.E. 4799); "Opp." refers to Plaintiffs' Corrected Opposition (D.E. 4818-2); "PSOF" refers to Plaintiffs' Response to GM's Statement of Material Facts and Pls.' Statement of Additional Facts (D.E. 4250); "Supp. PSOF" refers to Plaintiffs' Responses to GM's Supplemental Statement of Material Facts and Pls' Supplemental Statement of Additional Facts (D.E. 4515, 4807); "Supp. Reply SUF" refers to GM's earlier and contemporaneously-filed Response to Plaintiffs' Statement of Additional Facts (D.E. 4534).

which does not distinguish between monetary and non-monetary claims. Instead, the "critical question" in the prudential mootness analysis is "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ingaseosas*, 479 F. App'x at 962 (internal quotation marks omitted). That is precisely what happened here when the recalls prudentially mooted all plaintiffs' claims.[3]

*Second*, plaintiffs' other authorities are neither on point nor persuasive because they involve alleged defects that actually manifested in those plaintiffs' vehicles, allegations that the recall repair was inadequate, or both. *See, e.g., Leon v. Cont'l AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017) (rejecting prudential mootness because plaintiffs sought damages beyond diminished value including out-of-pocket expenses and "ill-gotten profits" that exceeded "the scope of the relief requested in *Hadley* and the scope of the already-performed recall and repairs here"); *McCabe v. Daimler Ag*, 2015 WL 11199196, at *4–5 (N.D. Ga. Aug. 19, 2015) (concerning extended warranty, not NHTSA recall, and plaintiffs alleged warranty did not cover all issues and required manufacturer approval); *Crawford v. FCA US LLC*, 2024 WL 919830, at *1 (E.D. Mich. Mar. 4, 2024) (denying prudential mootness where named plaintiffs all experienced coolant loss prior to recall); *Patlan v. BMW of N. Am., LLC*, 2024 WL 1328012, at *6 (D.N.J. Mar. 28, 2024) (holding claims not prudentially moot where second recall "suggest[ed] the possibility that the previous recall and respective repairs did not fully address the issues presented in the instant complaint); *McMahon v. Volkswagen Aktiengesellschaft*, 2023 WL 4045156, at *9 (D.N.J. June 16, 2023) ("Plaintiffs adequately allege that the recall remedy may be insufficient, requiring at least some Plaintiffs to take their car to be fixed multiple times.").

In short, as in *Ward-Richardson*, the weight of authority supporting dismissal is "directly on point" and thus "more persuasive" under the facts presented here. 690 F. Supp. 3d at 1377-78. It is undisputed that the alleged defect has not manifested and will not manifest in any of the named

---

[3] Plaintiffs argue that *Hadley v. Chrysler Group, LLC*, 624 F. App'x 374 (6th Cir. 2015), limits the prudential mootness doctrine to declaratory and injunctive relief alone. Opp. at 12. But *Hadley* also involved claims for damages and, in fact, affirmed the dismissal of a Louisiana redhibition claim because the recall repair that was provided to the plaintiff had "removed the defect upon which the plaintiffs' diminished-value injury claim is based." 624 F. App'x at 378. In any event, many Sixth Circuit district courts reject the notion that *Hadley* is constrained to injunctive and equitable relief, focusing instead on *Hadley*'s holding that a recall repair eliminates the defect on which diminished-value damages claims are based. *See e.g.*, *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 467 (E.D. Mich. 2022); *see also* Mot. at 9-10 (citing cases).

plaintiffs' vehicles (or any putative class member's vehicle for that matter). This case "now contains all the 'traditional ingredients' of a prudentially moot case," and the Court should dismiss all the remaining claims. *See id.* at 1379 (quoting W*inzler v. Toyota Motor Sales U.S.A., Inc*., 681 F.3d 1208, 1211-13 (10th Cir. 2012)).[4]

## II.   THE DAMAGES CLAIMS WERE SUBSTANTIVELY ELIMINATED.

### A.   The Free And Effective Recall Repairs Eliminated State Law Damages.

The Court has previously held that "by recalling and fixing (or offering to fix) the defect in each vehicle free of charge," plaintiffs in 14 states "already received the benefit of their bargain and are not entitled to additional damages." *In re Takata Airbag Prod. Liab. Litig.*, 2022 WL 17546365, at *1 (S.D. Fla. Nov. 10, 2022). The same legal principles and reasoning compel summary judgment on the Louisiana, Alabama, and Georgia claims. *See* Mot. at 11-15. Plaintiffs offer no new facts, and instead recycle (often verbatim) the same arguments the Court rejected. *Compare* Opp. at 15-17 *with* D.E. 4248 at 28-30. For example, they again argue their damages are fixed at the point of purchase and all post-sale conduct is irrelevant. Opp. at 16. But the Court rejected this argument as both logically inconsistent and a recipe for improper double recovery by rendering a defective vehicle an "immutable damages asset." 2022 WL 17546365, at *7 (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 231 (S.D.N.Y. 2019)). Plaintiffs' arguments do not meaningfully address or distinguish the laws of Louisiana, Alabama, and Georgia from the 14 states for which the Court already granted summary judgment.

#### 1.   **Louisiana**

Plaintiffs argue *Franco v. Mercedes-Benz USA, LLC*, 258 So. 3d 1054 (La. Ct. App. 2018), a Louisiana state appellate court opinion reversing dismissal of a redhibition claim involving a

---

[4] The Court can and should dismiss the case on prudential mootness grounds and need not reach Article III standing. However, plaintiffs' Article III arguments are also misguided. For example, they argue that *Earl v. Boeing Co.*, 53 F.4th 897 (5th Cir. 2022) is irreconcilable with *Debernardis v. IQ Formulations*, 942 F.3d 1076, 1084 (11th Cir. 2019). Opp. at 10-11. But *Debernardis* is distinct from both *Earl* and this case because the economic injury there was rooted in the purchase of dietary supplements that were banned by the FDA and therefore were entirely worthless. *Debernardis*, 942 F.3d at 1084-88. By contrast, both here and in *Boeing*, plaintiffs' alleged injury stems from purchasing a product that allegedly exposed them to a risk that never came to fruition, and that did not stop them from using their vehicles or otherwise receiving exactly what they bargained for. As in *Boeing*, plaintiffs cannot create a cognizable injury with an "overcharge-by-fraud" theory. 53 F.4th at 902. *In re Evenflo Co., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28, 35 (1st Cir. 2022), is also unhelpful because it did not involve a product recall.

Takata airbag, supports their damages claims. They argue *Franco* "could hardly be more on-point" and is "incompatible" with GM's argument, and they claim it "is challenging to imagine a decision more squarely on-point." Opp. 19-20. But *Franco* does not support plaintiffs' position.

*First*, *Franco* did not examine whether a free and effective repair of an unmanifested defect precluded damages. Rather, the court held only that a redhibition claim is not—as the defendant had argued and the lower court held—preempted by a NHTSA safety recall. *Franco*, 258 So. 3d at 1057-58 (holding a redhibition claim "does not conflict [with] or undermine" the "purpose of the Safety Act" and therefore the "NHTSA does not preempt [plaintiff's] redhibition claim" (quoting *Stroderd v. Yamaha Motor Corp., U.S.A.*, 2005 WL 2037419, at *5 (E.D. La. Aug. 4, 2005)).[5] Thus, the decision is not "on-point" to any issues in GM's summary judgment motion.

*Second*, *Franco* was also decided at the pleadings stage where the relevant inquiry was "whether the law affords a remedy on the facts alleged in the pleading." *Id.* at 1056. The appellate court held the plaintiff had adequately pled a redhibition claim in a case involving a defect for which there was "no current suitable replacement available to remedy the defect." 258 So. 3d at 1055-57; Ex. A, Petition for Redhibition ¶¶ 7-9, *Franco v. Mercedes-Benz USA, LLC*, Case No. 767559 (La. Dist. Ct. Dec. 22, 2016) (alleging claim for return of purchase price because the "defect in the driver side airbag constitutes a redhibitory defect" and "*there is no current remedy to correct the defect*") (emphasis added).[6] The summary judgment record here shows (unlike in *Franco*) there *was* a remedy to correct the defect and the defect *has been* corrected.

*Third*, while *Franco* held that a redhibition claim is not preempted by the Safety Act, it did not address what types of damages are available. Plaintiffs argue that a redhibition claim entitles

---

[5] *See also Id. at* 1055 ("MBUSA additionally argued that the claims are subject to dismissal because they are preempted by the National Highway Transportation Safety Act (NHTSA), which provides exclusive remedies for Mr. Franco's claims."); *Franco v. Mercedes-Benz USA*, 2017 WL 10992256, at *1 (La. Dist. Ct. May 23, 2017) (holding that NHTSA recall preempted redhibition claim "unless and until those efforts prove to be unsuccessful"); Def. Memo. in Supp. of Peremptory Exception of No Cause of Action, *Franco v. Mercedes-Benz USA, LLC*, 2017 WL 11181442 (La. Dist. Ct. Feb. 27, 2017) (arguing "Plaintiffs claims are preempted by the Safety Act, or in the alternative, subject to NHTSA's primary jurisdiction").

[6] The Court can take judicial notice of public pleadings. Fed. R. Evid. 201; *see, e.g.*, *Roberto v. Shendell & Assocs., P.A.*, 2018 WL 1367445, at *1 (S.D. Fla. Mar. 16, 2018) (taking judicial notice of "complaint filed in state court"); *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016) ("[C]ourts may take judicial notice of public records, such as a pleading filed in another court….").

a plaintiff to a "*cumulative* array of remedies, remedies, including "return of the price with interest from the time it was paid," reasonable expenses, "***and also . . . damages***." Opp. at 20 (plaintiffs' emphasis; quoting *Franco*, 258 So. 3d at 1057). Regardless of what "array" of damages may be available for redhibition claims, plaintiffs have confirmed their "intent to pursue only actual damages under a benefit-of-the-bargain theory." *In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 2388488, at *5 (S.D. Fla. Jan. 31, 2023) (noting plaintiffs' admission that "plaintiffs would not have a claim" if Court adopted defendants' position that recall repairs "zeroed out damages"). Whether Sibley could have claimed other damages (*e.g.*, out-of-pocket, loss-of-use, or lost wages damages) is beside the point; he expressly disclaimed them during discovery and to the Court. *See* Supp. SUF ¶ 63. There are no damages at issue here that were not fully eliminated by the free and effective recall which corrected any alleged defect.

Beyond *Franco*, plaintiffs relegate to a footnote their response to Louisiana Supreme Court precedent holding that damages should not be awarded where, as here, a single defect is corrected at no cost to the plaintiff. Opp. at 18 n.8. They also try to distinguish this precedent only on a ground that this Court already rejected—that Dr. Dubé's damages model substantiates post-repair damages because it assumes a repair would be offered in the future. Plaintiffs also fail to distinguish GM's other supporting authorities. They incorrectly argue that *Menville v. Stephens Chevrolet, Inc.*, 300 So. 2d 858 (La. Ct. App. 1974), supports their case. Opp. at 18. But the vehicle there contained a multitude of defects that manifested in repeated breakdowns and multiple lengthy repairs, and the court's award of a price reduction beyond cost of repairs hinged on the existence of "uncured defects." *Menville*, 300 So. 2d at 861. They similarly claim that *Weber v. Crescent Ford Truck Sales, Inc.*, 393 So. 2d 919 (La. Ct. App. 1981), "strongly supports" their position (Opp. at 18), again ignoring the many manifested defects in the truck at issue. 393 So. 2d at 921 (summarizing "problems with the lights, shift, wheels, and the engine running hot immediately after sale," multiple repairs to replace "seven pistons and all rods, bearings and rings," only for the radiator to break "shortly after departing" the dealership). None of those facts are at play here.

Plaintiffs' other cited cases all involve vehicles with multiple defects that manifested, caused repeated breakdowns, required multiple lengthy repairs, and/or were not adequately remedied by repair. *See Cornelious v. Bailey Lincoln-Mercury, Inc.*, 566 So. 2d 85, 86-87 (La. Ct. App. 1990) (vehicle required five separate repairs in six months, had collapsed front end on a road trip, and plaintiff testified the "car was never properly repaired"); *Griffin v. Coleman Oldsmobile,*

*Inc.*, 424 So. 2d 1116, 1118 (La. Ct. App. 1982) (vehicle had "an inordinate number of defects," and dealer repeatedly kept vehicle for "excessive periods of time," *e.g.*, three months, for repairs).[7]

### 2.   **Alabama**

Plaintiffs do not address Alabama authorities holding that damages should not be awarded where, as here, they go beyond making the plaintiff whole and amount to economic waste and an impermissible windfall. Mot. at 10. They instead argue the Alabama Supreme Court's *Rice* decision rejected the cost of repair as a measure of damages. Opp. at 21. That misses the mark; that case rejected cost of repair because under Alabama law, *there are no damages period if the alleged defect did not manifest. Ford Motor Co. v. Rice*, 726 So. 2d 626, 631-32 (Ala. 1998). The manifest defect doctrine should end this case. *See* Section 0 below.[8] In cases where there are damages of some kind, repair costs are a relevant measure that (when combined with windfall and economic waste principles) confirm that any damages would be zero here. *See* Ala. Pattern Civ. Jury Instruction § 11.35 (Personal Property—Cost to Repair).

### 3.   **Georgia**

Plaintiffs rely on the Georgia Supreme Court's statement that "cost of repair and diminution in value are alternative, although oftentimes interchangeable, measures of damages." Opp. at 21 (quoting *John Thurmond & Assocs., Inc. v. Kennedy*, 668 S.E.2d 666, 668-69 (Ga. 2008)). But those damages are mutually exclusive unless a plaintiff can show diminished value *after* repair (which plaintiffs do not). Mot. at 14-15. Their argument is also contrary to bedrock Georgia damages law holding that benefit-of-the-bargain damages are intended to place the party "in the same position they would have been if the [alleged] injury had never occurred." *Kennedy*, 668 S.E.2d at 668. A plaintiff cannot receive both diminished value damages and repair damages because that confers a windfall. *See Ga. Ne. R.R. Co. v. Lusk*, 587 S.E.2d 643, 645 (Ga. 2003).

---

[7] Again, plaintiffs have disavowed damages aside from benefit-of-the-bargain damages, so even if any of these facts applied here, they could not save the Louisiana claim from summary judgment.

[8] None of the cases cited in plaintiffs' portion of the *Rice* opinion involves alleged latent product defects that never manifested and are subject to repair. *See, e.g.*, *Simmons Auto Sales, Inc. v. Royal Motor Co.*, 489 So. 2d 518, 520 (Ala. 1986) (fraud claim for vehicle sold with rolled back odometer); *Mobile Dodge, Inc. v. Waters*, 404 So. 2d 26 (Ala. 1981) (fraud claim for 1977 model year vehicle represented for sale as a 1978 model year vehicle).

**B.     Plaintiffs Violate The "Willing Seller" State Law Damages Requirement.**

Plaintiffs also fail to meaningfully address the requirements in each of the three remaining states that benefit-of-the-bargain damages must be determined by market value based on a sale by a ***willing seller*** who is not under ***compulsion*** to sell. Mot. at 15-17. Whether a damages model that does not reliably incorporate the willing seller requirement satisfies Rule 702[9] is distinct from whether the damages model comports with state law for purposes of summary judgment. *See Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at *9 (N.D.N.Y. Mar. 31, 2022) (finding of sufficient reliability under *Daubert* does not answer whether "New York law allows for the use of 'willingness to pay' in calculating benefit-of-the-bargain damages"). Because plaintiffs do not have damages evidence that complies with these state-law requirements, the Court should grant summary judgment on this additional basis.

**III.    PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS.**

**A.     The Louisiana Claim Is Untimely And Brought Against The Wrong Company.**

**1.     The Claim Is Barred By The One-Year Prescriptive Period.**

Plaintiffs do not dispute that the Louisiana plaintiffs filed his claim well over a year after the well-publicized Takata airbag defect allegations and massive product recalls. They instead oppose summary judgment by misstating Louisiana law and ignoring directly on-point authorities.

**a.     Constructive Knowledge Triggers The Prescriptive Period.**

Plaintiffs argue the limitations period did not begin until plaintiff had *actual* knowledge of the facts underlying his claim. Opp. at 22. But under well-settled Louisiana law—as confirmed in both of plaintiffs' cited cases—the prescription period commences upon "actual *or constructive knowledge*." *Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066, 1072 (La. Ct. App. 1991) (emphasis added); *Reed v. Gen. Motors Corp.*, 400 So. 2d 919, 920 (La. Ct. App. 1981) (same). Thus, a plaintiff cannot save an untimely claim by arguing he did not actually know of his claim until within one year of filing. Instead, a plaintiff is "deemed to know that which [they] could have

---

[9] Plaintiffs argue August 2022 *Daubert* Order resolved this issue (Opp. at 14-15), but they offer no response to the intervening December 2023 amendments to Rule 702. Mot. at 17-18. And plaintiffs are wrong to argue GM is "[f]lagrantly disregarding this Court's directive" with respect to damages issues. Opp. at 14. The cited Court statements were in the context of a class certification argument based on briefing that did not address the Rule 702 amendments. *See generally* D.E. 4765, 4/19/2024 MBUSA Supp. Class Cert. Opp.

learned through reasonable diligence." *In re Ford Motor Co. Bronco*, 982 F. Supp. at 395-96; *accord Maison Blanche, Inc. v. La. Dep't of Lab.*, 604 So. 2d 670, 674 (La. Ct. App. 1992).

Plaintiffs conflate actual and constructive knowledge, arguing GM must show Sibley actually read the various public media that reported the presence of an allegedly defective Takata airbag in his vehicle in mid-2016 before he can be charged with notice.[10] They assert that his claim is timely because he "found out about the recall in late 2017," and there is no evidence he has ever read the Wall Street Journal or visited car-related websites like Edmunds.com. Opp. at 22. But this theory of accrual is unsupported and has been rejected by courts applying Louisiana law.

For instance, in *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388 (E.D. La. 1997), plaintiffs argued it was unreasonable to expect class members to "scour the wire services for articles relating to a problem of which they were not even aware." *Id.* at 396. The court held that pleading ignorance of a widely covered issue was not sufficient to avoid the commencement of the limitations period. *Id.* This same is true here where Sibley pleads ignorance of his claim arising out of the largest automotive recalls in United States history. Mot. at 3; *cf. In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 394 (5th Cir. 2021) (applying Louisiana law and holding plaintiffs were "charged with knowledge of all that a reasonable inquiry would have revealed" including media reports); *Smith v. BP Expl. & Prod., Inc.*, 2024 WL 1693874, at *1 (5th Cir. Apr. 19, 2024) (applying Louisiana law and rejecting argument that plaintiff lacked constructive knowledge because he "did not read the newspaper or listen to the radio").

    b.    **The Exceptional *Contra Non Valentem* Tolling Does Not Apply.**

Plaintiffs alternatively argue that Louisiana claim is timely under the equitable doctrine of *contra non valentem*. This tolling doctrine "applies an exception to the statutory prescriptive period where *in fact and for good cause* a plaintiff is *unable* to exercise his cause of action when it accrues." *Eastin v. Entergy Corp.*, 865 So. 2d 49, 55 (La. 2004). It "only applies in exceptional circumstances." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010); *Encompass Off. Sols., Inc. v. La. Health Serv. Indem. Co.*, 2013 WL 12310676, *21 (N.D. Tex. Sept. 17, 2013) ("Louisiana courts strictly construe the doctrine of *contra non valentem*."). These exceptional

---

[10] Plaintiffs argue these are the only public sources in the record (Opp. at 22), but the presence of the Takata airbag in Sibley's truck was discoverable via a multitude of sources including NHTSA's website (MSJ Ex. 132), the Third Amendment to the Coordinated Remedy Order (MSJ Ex. 53), and Carfax Reports, which pull publicly reported recalls (MSJ Ex. 208).

circumstances do not exist here. Plaintiffs argue that the limitations period was tolled because GM publicly denied the GMT900 airbags were defective. Opp. at 23 (arguing for tolling based on GM's petitions for inconsequentiality, recall letters, and "telling customers and the government that there was no defect").[11] This is insufficient. A plaintiff must show not only that the defendant engaged in conduct rising "to the level of concealment, misrepresentation, fraud or ill practices," but also that the misconduct lulled the plaintiff into inaction despite their reasonable diligence. *In re Ford Motor Co. Bronco II*, 982 F. Supp. at 394; *accord Marin*, 48 So. 3d at 252. Plaintiffs do not satisfy any of these requirements.

*First*, a manufacturer's public defense of its product as safe and non-defective does not rise to the level of concealment, misrepresentation, fraud, or ill practices. *In re Bronco II* is squarely on point. Plaintiffs claimed that Ford had engaged in a "disinformation campaign" to deny safety risks in its vehicles, including in media coverage alerting the public to rollover issues. 982 F. Supp. at 395. The *Bronco* court rejected this theory, holding that the fact "Ford has made no concessions as to plaintiffs' defect allegations and has chosen to defend the safety of the Bronco II in courts of law and the media is insufficient evidence of the kind of concealment or ill practice required to trigger [tolling of the limitations period]." *Id.*; *see also id.* at 397 ("That defendant stood by its vehicle and denied the existence of a defect did not stifle or vitiate the information otherwise available to plaintiffs."). Plaintiffs have no answer for this authority and ignore it entirely.[12]

*Second,* plaintiffs' reliance on *Reed v. General Motors Corp.*, 400 So. 2d 919 (La. Ct. App. 1981), does not support their tolling theory. Opp. at 23. There, the plaintiff had experienced four separate car accidents that she later alleged was caused by an improperly installed hand control.

---

[11] GM's exercise of its First Amendment right to petition the government was perfectly appropriate. Beginning in 2016, NHTSA deferred resolution on GM petition for inconsequentiality for years because if found GM had "produced probative evidence to support its inconsequentiality claim" and "believe[d]s that in the coming months this evidence could ultimately grow and develop to support GM's position with respect to the long-term safety of the covered passenger inflators." 81 CFR at 85684. Such a finding rebuts any suggestion that GM's petitions amounted to fraud or ill practices that could support the exceptional tolling theory plaintiffs advance here.

[12] Plaintiffs' argument that their own class definition cannot be used against them is unsupported. In any event, they do not dispute that they used the recall date as the class cutoff date because recalls make the alleged defect discoverable with reasonable diligence. *See Tershakovec v. Ford Motor Co.*, 2021 WL 3711444, at *1 (S.D. Fla. Aug. 20, 2021) (class cutoff date eliminated 47% of class "because as time goes on, potential purchasers become increasingly likely to discover the truth about the class vehicles' defect").

400 So. 2d at 920. After the first two accidents, the plaintiff asked the service employees at the defendant dealership to find the problem, and *was told by them that there was none,* leading her to believe "no problem (defect) existed." *Id.* at 921 The court held that such facts supported tolling because plaintiff "relied upon this in assessing the situation." *Id.* In this case, however, Sibley cannot show that GM lulled him to inaction despite his reasonable diligence because he denies seeing any statements from or communicating with GM about the alleged defect or recalls. Opp. at 22 ("Q. And you never received notice of a recall in the mail? A. No, ma'am." (quoting D.E. 4512-7, Sibley Dep. Tr. at 132:8-10)). He cannot seek tolling for being misled by statements he did not see nor claim he acted with reasonable diligence when he waited almost 18 months after numerous public disclosures of the alleged Takata defect in his vehicle to take any action. *See In re Ford Bronco II*, 982 F. Supp. at 396 (rejecting tolling for plaintiffs "closing their eyes" to public information); *Allstate Ins. Co. v. Fred's Inc.*, 25 So. 3d 821 (La. 2010) (reversing application of tolling plaintiff's conduct "evidences a lack of due diligence…precluding application of the contra non valentem doctrine"); *Hosp. Serv. Dist. No. 1 of Jefferson Par. v. Alas*, 657 So. 2d 1378, 1383 (La. Ct. App. 1995) (rejecting tolling "if an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest and he fails or refuses to profit by it" and "closes his eyes to the notice spread before him").

2.    **The Redhibition Claim For An Old GM Vehicle Is Barred.**

Plaintiffs cannot advance any theory of liability that reconciles the undisputed facts, the Sale Order, and Louisiana law. *First*, a buyer's ability to bring an "action against all sellers in the chain of sales back to the original manufacturer" (Opp. at 24) does not help them. New GM was not in the chain of sales, did not manufacturer his vehicle, and did even not exist until July 2009 and therefore was not the "original manufacturer" or "seller" of any 2007 GMC Sierra LD trucks, including Sibley's. SUF ¶¶ 1-3. There is no evidence that New GM had any role in his 2013 purchase, and he has never produced a single document related to his purchase. Without proof of a buyer-seller relationship with New GM, his claim fails as a matter of law. *See Sanders v. Earnest*, 793 So. 2d 393, 408 (La. Ct. App. 2001) ("The redhibition claim is between sellers and purchasers. A redhibition claim cannot be maintained absent such relationship."); *see also* La. Stat. Ann. § 9:2800.53 (defining "Seller" as "a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value").

*Second*, plaintiffs argue the Second Circuit eliminated the bankruptcy Sale Order's protections for "claims related to vehicles manufactured by Old GM, but that are involved in a sales transaction after the bankruptcy and creation of New GM." Opp. at 23 (citing *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 157 (2d Cir. 2016)). But following the Second Circuit's 2016 opinion, courts continue to enforce the Sale Order and bar implied warranty claims against New GM for Old GM vehicles.[13] *See, e.g.*, *Pilgrim v. Gen. Motors Co.*, 2020 WL 7222098, at *8 (C.D. Cal. Nov. 19, 2020) (granting summary judgment on implied warranty claims against New GM "for vehicles manufactured by Old GM that were never in New GM's possession or control"). Plaintiffs argue that *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 874778, at *1 (S.D.N.Y. Mar. 3, 2016), is "inapposite" because Sibley purchased his vehicle "from a GM-authorized dealer." Opp. at 23-24. But the *Ignition Switch* plaintiff also bought a used 2007 Old GM vehicle in 2013 from "an authorized General Motors dealership," making her claim factually indistinguishable from Sibley's. *In re Gen. Motors*, 2016 WL 874778, at *1.

## B. The Court Should Grant Summary Judgment On The Alabama and Georgia Claims For Additional Reasons.

### 1. The Manifest Defect Rule Bars The Alabama Plaintiffs' Claim.

The Alabama manifest-defect doctrine is clear and dispositive here. *See* Mot. at 24-26. Yet again, plaintiffs offer no new arguments or authorities in opposition. Instead, they continue to rely on the Court's motion to dismiss holdings, which did not address any controlling state law, and are inconsistent with Alabama Supreme Court authority and all other state and federal case law applying it. *Id.* As this Court recognized in its summary judgment order, "[w]here the highest state court has spoken on a topic, the federal court must follow its rule." *In re Takata*, 2022 WL 17546365, at *2. Thus, the Court's rulings at the pleadings stage must yield to the Alabama Supreme Court's repeated pronouncements that defect manifestation is required. *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996) ("[F]ederal courts must follow the interpretation of Alabama law made by the highest court of that State absent a constitutional violation.").

Plaintiffs renew their previous assertion that the alleged defect was manifest in every

---

[13] As explained elsewhere (D.E. 4300 at 43-44), in addition to the Sale Order bar, plaintiffs do not show that Old GM liability can be imputed to New GM under Louisiana successor liability law, particularly given that plaintiffs' explicitly allege that their "causes of action...are directed solely to GM Parent, GM Holdings, and New GM and are based solely on their wrongful conduct." D.E. 4025, 3d Am. Cons. Compl. ¶ 4.

vehicle on day one and therefore their fraud claim was perfected at the moment of purchase. Opp. at 29. But they still cannot support their argument with a single authority applying Alabama law. They cite *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019), even though it applies California law.[14] Opp. at 29. They also rely on *Crawford v. FCA US LLC*, 2024 WL 919830 (E.D. Mich. Mar. 4, 2024), which applies the laws of six states, none of which is Alabama. *Id.* at *5 (applying law of North Carolina, Wisconsin, Texas, Minnesota, Utah, and California).

Plaintiffs also re-argue that all Alabama Supreme Court authority is inapposite, citing dicta to argue that Dubé's damages opinions make their case different. Opp. at 29-30. But plaintiffs do not cite a single case from any court applying Alabama law that supports their position. By contrast, in addition to five Alabama Supreme Court cases, GM cited five federal products liability cases recognizing that Alabama law bars economic loss tort claims for the purchase of an allegedly defective vehicle where, as here, the defect has not actually manifested in product failure. Mot. at 25-26. Plaintiffs do not grapple with these authorities beyond dismissing them because they "do not address the facts and circumstances present in this case." Opp. at 30. But the facts are that plaintiffs' airbag never ruptured and has been replaced at no charge, and thus they have no fraud claim under Alabama law. Supp. SUF ¶¶ 13-14.

### 2. Judicial Estoppel Bars The Georgia Plaintiff's Claims.

Plaintiffs cannot avoid judicial estoppel with a belated Chapter 13 disclosure amendment and a self-serving declaration. Critically, in considering estoppel, the "court is *not required to accept as true* the plaintiff's own denial" or "explanation." *Harewood v. Miami-Dade Cnty.*, 780 F. App'x 748, 751 (11th Cir. 2019) (emphasis added); *Vegas v. UPS Ground Freight, Inc.*, 2019 WL 13152026, at *3 (M.D. Fla. May 6, 2019). And the Court should not do so here.

*First*, plaintiff claims she "cured" her nondisclosure by amending her bankruptcy petition *after* GM filed its motion. Opp. at 26. But courts routinely estop plaintiffs who amend their bankruptcy disclosures only after an opposing party identifies their failure to disclose a lawsuit to the bankruptcy court. *See, e.g.*, *Weakley v. Eagle Logistics*, 894 F.3d 1244, 1246 (11th Cir. 2018) (affirming summary judgment where "it was not until the defendants in both lawsuits had relied

---

[14] California law is different than Alabama law as the *Unintended Acceleration* MDL court recognized in declining to apply California law to a nationwide class. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 785 F. Supp. 2d 925, 932 (C.D. Cal. 2011).

on his failure to disclose as grounds for dismissal of the lawsuits that [plaintiff] finally amended his bankruptcy filings"); *Vegas*, 2019 WL 13152026, at *5 (rejecting argument that "omissions resulted from inadvertence or mistake" where plaintiff amended bankruptcy forms "only after [defendant]" asserted estoppel).

*Second*, plaintiffs assert that "[s]everal factors identified in *Slater* preclude a finding that Ms. Lodge intended to mislead anyone with the omission." Opp. at 26. But their only "support" is a self-serving claim that her "omission of the *Whitaker* action from documents in the bankruptcy case was unintentional and inadvertent." Pls. MSJ Opp. Ex. 5, Lodge Dec. ¶ 6; Opp. at 26-27. She claims she was unaware the litigation was even ongoing in *June 2022*—an assertion belied by representations from her counsel on **June 1, 2022** that they were investigating whether Lodge had any additional documents responsive to GM's discovery requests.[15] Supp. Reply SUF ¶ 65.

Plaintiffs further argue that because Lodge is "neither an attorney or [sic] an expert in bankruptcy law, so her 'level of sophistication' cuts against a finding of bad faith." Opp. at 26 (citation omitted). But estoppel does not only apply to bankruptcy legal experts, and her prior bankruptcy filings and amendments undercut claims that she was unaware of her disclosure obligations. *See Vegas*, 2019 WL 13152026, at *5 (applying judicial estoppel where plaintiff had previously filed for bankruptcy); *Young v. Popeye's Chicken*, 2019 WL 3817644, at *4 (N.D. Ala. Aug. 14, 2019) (same). And while *pro se* plaintiffs may be given some leeway on these issues,[16] here Lodge was represented by sophisticated experienced attorneys in both the bankruptcy case

---

[15] Lodge's averment under penalty of perjury that she was unaware this case was ongoing in 2022 contradicts her counsel's contemporaneous arguments that she is an adequate class representative because she was actively involved in the litigation. D.E. 4193 at 32. If the Court denies the application of judicial estoppel based on the facts asserted in Lodge's declaration, it should do so without prejudice and with leave to GM to conduct discovery on the assertions made in the declaration including (1) her conflicting claim she was not aware the litigation was ongoing in June 2022 in light of her counsel's representations, (2) her bankruptcy counsel's advice which she claims to have relied on in filling out her petition, and (3) other mitigating factors she claims.

[16] *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1186 (11th Cir. 2017) ("It is not difficult to imagine that some debtors, particularly those proceeding *pro se*, may not realize that a pending lawsuit…must be disclosed on a schedule of assets." (footnote omitted)). *But see Traylor v. Ford*, 185 F. Supp. 2d 1338, 1340 (N.D. Ga. 2002) (holding fact that plaintiff was "proceeding *pro se* in the bankruptcy matter" was "inconsequential" because to "truthfully answer the questions in the bankruptcy proceeding, no attorney was needed").

and this case.[17] It is not plausible that these attorneys failed to inform her of her disclosure obligations. Indeed, Lodge's "knowledge that [s]he could have amended [her] bankruptcy filings [and] the fact that [she] was counseled" outweigh any purported lack of sophistication. *Williams v. Golden Peanut Co.*, 2022 WL 3867557, at *1 (11th Cir. Aug. 30, 2022) (affirming determination that plaintiff "intended to make a mockery of the judicial system").

And any failure to inform her bankruptcy counsel of her claim cuts against plaintiff. *See Young*, 2019 WL 3817644, at *5 (applying judicial estoppel where plaintiff did not inform her bankruptcy attorneys of civil claims because "the Court cannot assume…that her attorneys, despite their professional obligations, chose not to disclose this information to the bankruptcy court"). Plaintiffs' emphasis that this was a Chapter 13 case (Opp. at 26) does not matter either. Courts apply judicial estoppel to equal force to Chapter 13 petitions because the claimant still "receive[d] the protections of bankruptcy while her petition[] [was] pending and the benefits of a Chapter 13 payment plan based on an assessment of her assets, which did not include the civil claim[] she was simultaneously pursuing." *Young*, 2019 WL 3817644, at *5.

Finally, the cases plaintiffs cite are inapposite. In *Smith*, the parties agreed the plaintiff had "no contingent claims at the time of [bankruptcy] filing." *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 645 (11th Cir. 2019). In *Storey*, the purported undisclosed lawsuit arose from a creditor's "attempts to collect a debt during the Bankruptcy Case. So it was impossible for [plaintiff] to disclose her claim on her initial petition." *Storey v. Cap. Link Mgmt., LLC*, 2021 WL 4862667, at *3 (M.D. Fla. Oct. 19, 2021). Here, Lodge filed her claims against GM years before she filed her bankruptcy petition and chose not to report her claims, despite being represented by sophisticated counsel and knowing she had an ongoing obligation to disclose her assets to the bankruptcy court. Accordingly, she should be judicially estopped from pursuing her claims against GM.

3.    **Reliance And Duty To Disclose Problems Bar The Alabama And Georgia Claims.**

The Alabama and Georgia plaintiffs fail to establish any genuine dispute of material fact permitting a jury to find that (1) they actually relied on an actionable representation by GM as

---

[17] https://www.slblawgroup.com/about-us/stacey-l-butler/ ("Her primary focus has been in the area of bankruptcy since 2007."); D.E. 4193 at 32 (arguing plaintiffs' counsel is adequate because they are "some of the largest and most experienced class actions firms in the country"); Supp. Reply SUF ¶ 64 n.9 (Steering Committee member's partner averring in Lodge's bankruptcy that she has "represented [Lodge] since January 31, 2018 and is deeply involved in this case").

opposed to Old GM or third parties, or (2) GM owed them a duty to disclose for their purchase.

**Alabama Plaintiffs**: Plaintiffs acknowledge their affirmative misrepresentation case is based on the Monroney label, which Old GM created and affixed to their vehicle before New GM even existed. Supp. SUF ¶ 6. *See Culpepper v. Stryker Corp.*, 968 F. Supp. 3d 1144, 1156 (M.D. Ala. 2013) (misrepresentation claim requires representation by the defendant). Plaintiffs assert that New GM assumed liability for Old GM's representations but cite no Alabama law to support that theory. Plaintiffs also point to statements on an independent dealership's website but cite no authority showing GM's liability for those third-party statements. Opp. at 32. Their only supporting authority involved a classwide inference of reliance in circumstances that do not apply here or concern the law of another state entirely *Id.* at 32-33; *see Ex parte Household Retail Servs. Inc.*, 744 So. 2d 871, 878 (Ala. 1999) (reversing class certification where purchasers were exposed to non-uniform oral and written representations); *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009) (applying California fraud law).

Plaintiffs also cannot save their omission theory. They argue a duty to disclose arises where one party has "superior knowledge" of the alleged defect. Not so. *See Summit Auto Sales, Inc. v. Draco, Inc.*, 2017 WL 3896691, at *12 (N.D. Ala. Sept. 6, 2017) ("Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information."). Where there is only an "arm's length [transaction], with no confidential relationship, no obligation to disclose information arises when the information is not requested." *Mason v. Chrysler Corp.*, 653 So. 2d 951, 955 (Ala. 1995); *see also Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, 611 So. 2d 238, 246 (Ala. 1992).

**Georgia Plaintiff**: While Lodge claims to have seen materials generally referring to safety features, there is no record evidence she actually relied on any of them. Supp. SUF ¶ 20-21. Plaintiffs argue that reliance can be inferred because GM engaged in a "uniform and pervasive marketing scheme."[18] Opp. at 27. But the Court already held such an inference of reliance is not

---

[18] Plaintiffs' opposition contains a lengthy background section, nearly all of which is immaterial and irrelevant to GM's motion and the arguments to which they are responding. Opp. at 2-9. GM has addressed many plaintiffs' misstatement of the facts and evidence in prior briefs and responses to plaintiffs' additional statements of fact. See D.E. 4300 at 39-41; D.E. 4303 at 1-46. GM respectfully incorporates these responses by reference. In furtherance of judicial efficiency, however, GM will not address them again this brief. For the avoidance of doubt, GM does not

permitted under Georgia law here because "the evidence reflects that purchasers were exposed to different representations that were conveyed through many different mediums." *In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 6274837, at *10 (S.D. Fla. Aug. 24, 2023). Thus, Lodge's failure to identify any representation she actually relied on is dispositive.

As to her omission theory, Lodge does not establish special circumstances imposing a duty to disclose. She bought her vehicle used from an independent dealership—not from GM—and without more, Georgia law does not recognize a duty to disclose. *See McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1352 (N.D. Ga. 2015) (no duty where plaintiffs bought vehicles from authorized dealers); *Brown v. Hyundai Motor Am.*, 2019 WL 4126710, at *8 (D.N.J. Aug. 30, 2019) (no duty to disclose in Georgia "[w]here there was no pre-purchase communication or relationship between plaintiff and defendant"); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018) (same).[19]

## IV.   THE COURT SHOULD DECERTIFY THE LOUISIANA CLASS.

Plaintiffs do not dispute that this Court "retains the ability, and perhaps even a duty, to alter or amend a certification decision…to correct any errors in the certification order." *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001). In opposing decertification, plaintiffs attack GM's request as "brazen[]" and "baseless," claiming that GM has not identified any basis for reconsidering the Court's certification order.[20] Opp. at 24. But, as GM explained, the certification order contains a manifest error of fact that appears to be based on plaintiffs' misstatement of the record. Specifically, although GM submitted substantial evidence that many

---

agree with or admit the relevance or accuracy of plaintiffs' claims and allegations included in the background section of their brief.

[19] Plaintiffs cite the recent decision in *Stanley v. Nissan N. Am., Inc.*, 2024 WL 814496, at *2 (M.D. Tenn. Feb. 27, 2024), which does not discuss, apply, or cite Georgia law. Opp. at 27.

[20] Plaintiffs also rely on the Eleventh Circuit's non-precedential, single-line denial of GM's Rule 23(f) petition for interlocutory review as evidence that GM's arguments lack merit. Opp. at 24-25. As the Court noted at the May 2024 hearing when plaintiffs raised the Eleventh Circuit's denial of GM's and FCA's 23(f) petitions, a Rule 23(f) petition is subject to "a little bit different standard" and the Eleventh Circuit often denies such petitions for "other reasons." 5/29/2024 Hr'g Tr. at 24:17-21, 25:12-16.In any event, the Eleventh Circuit has made clear that interlocutory review of a class certification order "should be an avenue of last resort" and the "better way" to resolve issues is for a district court to revisit its order as necessary to "correct any errors" or "recognize the importance of new facts." *Shinn*, 248 F.3d at 1064.

named plaintiffs actually knew of the alleged defect up to 20 months before Sibley filed suit, the Court—relying on plaintiffs' statement to the contrary—found GM had presented "no evidence that any class members were aware of their claims more than one year before this action commenced." *In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 6274837, at 6 (S.D. Fla. Aug. 24, 2023). Plaintiffs do not dispute that the Court's factual finding was incorrect.

Instead, plaintiffs maintain that the Court's analysis of "the limitations issue at class certification was spot on." Opp. at 25. But the fact that many class members *did* know about the alleged defect more than one year before this suit was filed upends the Court's predominance analysis and injects individualized inquiries about knowledge and diligence to resolve limitations defenses against the vast majority of class member's claims. Mot. at 22-23. The Court already crossed this bridge in the *Cardenas* case, where it concluded that individualized inquiries on limitations issues for the vast majority of class members required decertification. *See Cardenas v. Toyota Motor Corp.*, 2022 WL 19521722 (S.D. Fla. Dec. 7, 2022). Plaintiffs do not respond to or address GM's discussion of *Cardenas*, even though plaintiffs here are represented by the same counsel. Nor do they respond to GM's evidence that the alleged defect was discoverable to class members who could claim damages for buying a vehicle as late as January 1, 2019—nearly a year after this lawsuit was filed. Mot. at 23-24.

Plaintiffs instead claim that GM's continuous denial of the existence of a defect obviates the need for any of these inquiries. Opp. at 25. This is a legally incorrect statement (as explained above), and also gets the tolling analysis backward. Under Louisiana law, the statute of limitations inquiry turns on the actions, knowledge, and diligence of the individual plaintiff in uncovering their claim. *See In re Ford Motor Co.*, 982 F. Supp. at 396 (analyzing whether plaintiffs had "exercised reasonable diligence to discover the alleged defect"); *State v. Ford Motor Co.*, 965 So. 2d 438, 444-45 (La. Ct. App. 2007) (reversing certification because "[e]ach individual potential plaintiff may have different issues regarding prescription" including "the knowledge of the alleged defect possessed by each member of the putative class, and when it was discovered").[21] These questions of fact cannot be resolved on a classwide basis without violating GM's "due process right to present individual evidence challenging any class member's reasonable diligence by

---

[21] Plaintiffs claim *Mire v. EatelCorp, Inc.*, 849 So. 2d 608, 613 (La. Ct. App. 2003) is somehow "more applicable" even though it predates by several years and concerns a "subsidy lock" on cell phones, not an automotive defect. Opp. at 25.

showing what he or she did or did not do to discover the factual basis for their claim." *Cardenas*, 2022 WL 19521722, at *4.

GM has raised the decertification issue in connection with the summary judgment briefing to facilitate judicial efficiency. Regardless of whether the Court prefers to have additional briefing on the issue or decides it in this round of motion practice, the Court can and should decertify the Louisiana class under Rule 23(c). *See* Fed. R. Civ. P. 23(c)(1)(C).

**CONCLUSION**

For these reasons and those raised in its opening brief,[22] the Court should grant summary judgment on all remaining claims against GM and should also decertify the Louisiana class.

**REQUEST FOR HEARING**

GM respectfully submits that the Court would benefit from oral argument on GM's Motion for Summary Judgment and estimates 30 minutes for argument.

---

[22] To the extent the Court grants summary judgment to any other defendants for reasons not raised herein, the Court should also do so for GM. *See* Fed. R. Civ. P. 56(f)(2); *Club Madonna, Inc. v. City of Miami Beach*, 500 F. Supp. 3d 1304, 1313 n.1 (S.D. Fla. 2020) (Moreno, J.) ("[T]he Court may grant summary judgment *sua sponte* under Federal Rule of Civil Procedure 56(f)"), *aff'd*, 42 F.4th 1231 (11th Cir. 2022); *Lance Toland v. Phoenix Ins. Co.*, 855 F. App'x 474, 481 (11th Cir. 2021) (affirming summary judgment without formal notice).

Dated: August 9, 2024

Respectfully submitted,

By: /s/ *Nadia Abramson*
Renee D. Smith (*pro hac vice*)
Sam Ikard (*pro hac vice*)
Nadia Abramson (FL Bar No. 121763)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: renee.smith@kirkland.com
       sam.ikard@kirkland.com
       nadia.abramson@kirkland.com

-and-

R. Allan Pixton (pro hac vice)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 North Wacker Dr., Suite 2700
Chicago, IL  60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
Email: allanpixton@quinnemanuel.com

-and-

By: /s/ *Laurie M. Riley*
Laurie M. Riley, Esq. (FL Bar No. 657751)
Jones Walker LLP
201 South Biscayne Boulevard, Suite 3000
Miami, FL 33131
Telephone: (305) 679-5728
Facsimile: (305) 679-5710
Email: lriley@joneswalker.com

*Attorneys for Defendants General Motors
Company, General Motors Holding LLC,
and General Motors LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2024, I electronically filed the foregoing Motion using the CM/ECF system, which will serve notification of such filing to the email of all counsel of record in this action.

By: <u>/s/ *Nadia Abramson*</u>