IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO: ECONOMIC LOSS TRACK CASES AGAINST FORD AND VOLKSWAGEN DEFENDANTS | Case No. 1:15-md-02599-FAM<br><br>FILED BY_____D.C.<br>SEP 16 2024<br>ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S. D. OF FLA. - MIAMI |

### REPORT BY THE SETTLEMENT SPECIAL ADMINISTRATOR ON THE IMPLEMENTATION OF THE OUTREACH PROGRAMS PURSUANT TO THE FORD AND VOLKSWAGEN SETTLEMENT AGREEMENTS

### STATUS REPORT NO. 26 FILED SEPTEMBER 12, 2024

The Settlement Special Administrator of the Ford and Volkswagen Settlement Agreements (collectively, the "Settlement Agreements") submits this Report to the Court to provide information and insight as to the ongoing efforts of the Outreach Programs under the Settlement Agreements[1].

As explained in further detail below, the Outreach Programs have been designed through discussion with the Parties, the National Highway Traffic Safety Administration, and the Independent Monitor of the Takata recalls to utilize techniques and approaches not previously applied in the recall industry, with a focus on personalized, targeted direct campaigns aimed at increasing the volume of outreach attempts per consumer via traditional and non-traditional channels with the goal of maximizing the recall remedy completion rate to the extent practicable given the applicable provisions of the Settlement Agreements. Consistent with this, the Settlement Special Administrator and Outreach Program vendors regularly confer and communicate with the

---

[1] The data and information contained in this report is generally as of mid-Q3 2024.

automobile manufacturers to coordinate concerted efforts to ensure that outreach to affected vehicle owners is conducted as efficiently and as effectively as possible and to continually improve the overall process.

1. **Direct Outreach**

   a. Current and Future Campaigns in Direct Outreach to Affected Consumers

The Settlement Special Administrator and Outreach Program vendors continue to deploy various direct outreach activities which have been discussed in prior Status Reports, such as vehicle tagging and thematic materials that have traditionally performed best in terms of response, appointment, and remedy rates, all of which have been described extensively in prior Reports.

In addition to those Outreach types which are continually utilized and rotated on a periodic basis, the Settlement Special Administrator and Outreach Program vendors plan to send "audio mailers" to a high-risk portion of the remaining population of vehicle owners with unremedied vehicles. The "audio mailer" will be delivered in a bubble-wrap envelope to stand out in the recipient's mailbox, increasing the likelihood that it is opened. Inside the bubble-wrap envelope will be a greeting-type card with an audio message that will be played from a speaker within the card itself, explaining to the recipient the urgency and importance of completing the Takata Recall Remedy, in the hopes that this unique and compelling format increases the probability of action in individuals who have neglected to have their vehicles repaired in the past.

Additionally, the Settlement Special Administrator and Outreach Program vendors will be deploying a mailer dubbed the "make them stop" letter. This concept seizes on the unfortunate fact that some affected vehicle owners have received dozens of notifications over the life of the Takata recall, with a variety of themes, messages, and imagery, through several different channels, informing of the ever-increasing risks of continuing to drive a vehicle with an unremedied Takata

inflator. Despite these clear notifications of the inherent dangers, they have failed to act, so this letter attempts to appeal to a different potential thought-driver in these individuals, namely, that they will no longer receive recall notices through their mail, e-mail, phone call, social media, etc., if they simply have the Recall Remedy performed.

Lastly, along the similar lines, the Settlement Special Administrator and Outreach Program vendors plan to send letters that highlight various conveniences offered around having the Recall Remedy performed, including loaner vehicles, mobile repair where available, and vehicle pickup/delivery where available, to overcome or eliminate some of the most common excuses why drivers of affected vehicles have failed to act.

      b. <u>Continued Efforts with State Departments and Other Entities</u>

As reported, the Settlement Special Administrator and the automobile manufacturers have engaged various state departments to endorse the deployment of letters on behalf of their respective states to inform affected citizens of the Takata inflator recall and its severity, as well as to provide information on how to have the Recall Remedy completed. These efforts have resulted in some of the highest response rates and remedy rates of any communications in the Outreach Program. In addition to the states in which these letters have previously been mailed[2], similar letters have been mailed or are anticipated to be mailed in the coming months in Georgia (its third mailing). The fact that several states have now re-engaged on this type of effort for second, third, fourth, and even fifth mailings is encouraging considering the significant success of these letters in generating repairs. The Settlement Special Administrator and the automobile manufacturers continue to contact state departments to seek their cooperation in this valuable and effective effort.

---

[2] Louisiana, Michigan, New York, Mississippi, Alabama, Kentucky, Wisconsin, Minnesota, North Carolina, Virginia, Arkansas, Florida, Georgia, Pennsylvania, South Carolina, Ohio, Nebraska, Tennessee, Florida, Texas, Idaho, California, Puerto Rico, Colorado, New Mexico, Massachusetts, Nevada.

c. Overall Deployment and Response

A total of 176,756,525 outbound deployments across all available channels have been made by the Settlement Special Administrator and Outreach Program vendors to affected consumers. These deployments are broken out by primary channels below:

| Channel | Volume | Total Appointments |
|---|---|---|
| Direct Mail Pieces | 33,081,496 | 61,544 |
| Emails | 19,549,380 | 2,445 |
| Outbound Calls | 13,522,748 | 117,417 |
| Digital/Facebook Impressions | 110,468,961 | 6[3] |
| Tagging[4] | 127,226 | 5,981 |

d. Overall Results

The Settlement Special Administrator and Outreach Program vendors have performed outreach resulting in a total of 373,527[5] appointments and "warm transfers" to allow consumers to schedule appointments directly with dealers, and 857,152 Recall Remedies have been completed since the transition of outreach to the Settlement Special Administrator and Outreach Program vendors.[6]

---

[3] Social media deployment on Facebook and other platforms is an extremely low-cost channel used primarily to maintain consumer awareness and a social presence to support other outreach activities which more regularly result in appointments and repairs, such as direct mail and outbound phone calls.

[4] "Tagging" refers to the process referenced in this and prior reports, whereby the Settlement Special Administrator's Outreach Program vendors actively search for affected vehicles on the road and, when located, place recall notifications on those vehicles.

[5] This figure exceeds the aggregate sum of the Total Appointments by Channel in the chart above because many of the inbound calls resulting from Outreach Program materials for Ford vehicles are currently routed directly to Ford's call center for appointment scheduling purposes. Also see Footnote 6 below which is similarly applicable here.

[6] Considering the significant efforts put forth towards indirect outreach methods such as mass media and public relations-type activities, Status Reports now provide the total number of Recall Remedies performed, irrespective of whether direct outreach had been performed on a vehicle. As previously mentioned, consumers often schedule repair appointments directly with the automobile manufacturer or their local dealership rather than by calling the Outreach Programs' call center to do so. As such, the total Recall Remedy completion count presented herein cannot be attributed solely to those direct activities conducted by the Settlement Special Administrator and Outreach Program vendors and exceeds the number of appointments and "warm transfers" set by Outreach Program vendors. This is also

2. **Additional Activities and Efforts**

At the end of 2021, the Settlement Special Administrator discontinued the use of earned media efforts as part of its Takata Outreach Program. Given the significant media coverage over the last several years, these earned media strategies assisted in raising affected vehicles owners' awareness and understanding of the legitimacy and gravity of the Takata recalls. In ongoing consultation with the Parties and the National Highway Traffic Safety Administration, the Settlement Special Administrator and Outreach Program vendors continue to evaluate other activities to be performed in addition to and in conjunction with direct outreach to consumers.

3. **Conclusion**

The Settlement Special Administrator offers this Report to ensure that the Court is informed of the status of the Outreach Programs to date. If the Court finds additional information helpful, the Settlement Special Administrator stands ready to provide it at the Court's convenience.

/s/ Patrick A. Juneau
PATRICK A. JUNEAU
Settlement Special Administrator

---

consistent with the fact that each automobile manufacturer continues significant and extensive outreach efforts beyond those activities performed by the Settlement Special Administrator in the Outreach Programs under the Settlement Agreements.



After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.