## UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF FLORIDA
**Miami Division**
**Master File No.: 15-MD-02599-MORENO**

| |
|---|
| IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION |
| THIS DOCUMENT RELATES TO: |
| ECONOMIC LOSS TRACK CASES AGAINST MERCEDES-BENZ, USA LLC |

### ORDER GRANTING IN PART
### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs move to certify several single and multistate classes (D.E. 4610) for claims against Defendant Mercedes-Benz, USA LLC. The Court has considered Plaintiffs' Motion, Defendant Mercedes-Benz's Response in Opposition, Plaintiffs' Reply, and is otherwise fully advised in the premises. For the reasons stated below, the Court grants Plaintiffs' Motion in part.

### BACKGROUND

This multidistrict litigation consolidates allegations of economic loss and personal injury related to airbags manufactured by former defendants Takata Corporation and TK Holdings (collectively, "Takata") and equipped in vehicles sold by, among others, Mercedes-Benz. The allegations are that Mercedes-Benz's vehicles were equipped with Takata airbags containing the chemical ammonium nitrate, which creates a small explosion to inflate the airbags during a crash. Plaintiffs, who are consumers of Mercedes-Benz's vehicles, contend that when exposed to high heat and humidity, the explosion is much more forceful and can cause significant injuries and even death (the "Inflator Defect").

The crux of Plaintiffs' legal claims is that Mercedes-Benz knew or should have known of the Inflator Defect before installing the Takata airbags in their vehicles, and that Mercedes-Benz

concealed from or otherwise failed to notify Plaintiffs and the general public of the full and complete nature of the alleged Inflator Defect. Plaintiffs aver that because of Mercedes-Benz's concealment of the alleged Inflator Defect, Plaintiffs did not receive the benefit of their bargain and overpaid for their vehicles when they purchased them. Put differently, they argue that Plaintiffs who purchased vehicles with defective airbag inflators suffered economic injuries when they purchased for x dollars a car that contained a latent defect; had they known about the defect, they would have paid fewer than x dollars for the car (or not bought the car at all), because a car with a safety defect is worth less than a car without one.

This Order follows the Court's November 10, 2022, order granting partial summary judgment in favor of Defendants on Plaintiffs' claims brought in 12 of 14 states based on their lack of damages under each state's laws because the airbags at issue were replaced for free or offered to be replaced for free thereby making the Plaintiffs in those states whole and restoring the benefit of their bargain. *See* D.E. 4471 at 15. After this Court's partial summary judgment ruling, the Court allowed Plaintiffs to file a supplement to their Second Amended Consolidated Class Action Complaint, in which Plaintiffs included a mix of fraudulent concealment and consumer protection claims brought under the laws of sixteen additional states. *See* ECF No. 4504; *see also* ECF No. 4522. Plaintiffs also stipulated to a dismissal with prejudice of claims of Plaintiffs Theresa Radican and John and Nancy Phillips. *See* ECF No. 4850. Now, five named Plaintiffs remain in the case against Mercedes-Benz: Paulette Calhoun (Georgia), Daphne Bridges (North Carolina), Susan Knapp (Iowa), Bettie Taylor (Mississippi), and William Goldberg (Washington).

On July 7, 2023, the Eleventh Circuit issued its decision in *Tershakovec v. Ford Motor Co., Inc.*, No. 22-10575, 79 F. 4th, 1299 (11th Cir. 2023). In light of the *Tershakovec* decision,

Plaintiffs moved to narrow the definition of their certified multistate common law fraud class against Defendant FCA US, LLC to exclude purchasers from five jurisdictions—Alabama, Delaware, the District of Columbia, Rhode Island, and Tennessee—because, as Plaintiffs conceded, a class-wide presumption of reliance was not permitted for fraud claims in those states. *See* ECF No. 4663 at 2. Thereafter, this Court granted Plaintiffs' motion to narrow the class definition to exclude purchasers in Alabama, Delaware, the District of Columbia, Tennessee, and Rhode Island. *See* ECF No. 4666. Since Plaintiffs do not contend that the relevant states' laws differ in application for the various Defendants, purchasers in Alabama, Delaware, the District of Columbia, Tennessee, and Rhode Island are likewise excluded from the proposed multistate common law fraud class that Plaintiffs seek to certify against Defendant Mercedes-Benz.

Against that backdrop, Plaintiffs move to certify numerous multistate and single-state classes against Mercedes-Benz.[1] First, Plaintiffs move to certify the following multistate class for Plaintiffs' fraud claims, with Plaintiffs Paulette Calhoun and Daphne Bridges as class representatives:

> All persons who, prior to the date on which the Class Vehicle was recalled, bought a Class Vehicle in the state of Georgia, North Carolina, Colorado, Utah, Virginia, West Virginia, or Wisconsin and who (i) still own the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.

Plaintiffs also move for certification of the following single-state classes for Plaintiff

---

[1] Plaintiffs withdrew their request to certify the following classes or claims against Defendant Mercedes-Benz: Alabama common law fraud, Delaware common law fraud, Rhode Island common law fraud, Tennessee common law fraud, District of Columbia common law fraud, Mississippi common law fraud, and Washington common law fraud. ECF No. 4683 at 11 n.7. Further, Plaintiff voluntarily dismissed the claims of Plaintiffs Theresa Radican and John and Nancy Phillips. ECF No. 4850.

Susan Knapp's common law fraud and statutory claims under Iowa law (Counts 9 and 25),

Plaintiff Bettie Taylor's breach of implied warranty claim under Mississippi law (Count 33),

Plaintiff Daphne Bridges's statutory claim under the North Carolina Unfair and Deceptive Trade

Practices Act (Count 39), and Plaintiff William Goldberg's statutory claim under Washington

law (Count 54):

> All persons who, prior to the date on which the Class Vehicle was recalled, bought a Class Vehicle in the state of _____ (Iowa, Mississippi, North Carolina, Oregon, or Washington) and who (i) still own the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.

## LEGAL STANDARDS

### I.    Choice of Law

Plaintiffs' claims are governed by the laws of the states in which the Class Vehicles were

purchased. *In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 6072406 (S.D.

Fla. Oct. 14, 2016); *accord See Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348, 1371

(S.D. Fla. 2021). This is because "the injury occurs where the car is sold." *Tershakovec*, 546 F.

Supp. 3d at 1371; *see also In re Takata Airbag Prod. Liab. Litig.*, 464 F. Supp. 3d 1291, 1301

(S.D. Fla. 2020) (reasoning that for the Plaintiffs that purchased or leased their vehicle in their

state of residence, "there is a 'rational reason' to depart from applying Michigan substantive

law," the law that may have otherwise applied under a presumption in favor of *lex fori*).

### II.    Class Certification

In a class action, representative litigants may bring claims on behalf of absent persons

called class members.   Class actions are "an exception to the usual rule that litigation is

conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442

U.S. 682, 700–701 (1979), and as a result, the presumption is against class certification. *Brown*

*v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).  Although district courts have traditionally enjoyed broad discretion in deciding whether to certify a class, *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992), that discretion must be carefully exercised according to the dictates of Federal Rule of Civil Procedure 23.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).

To proceed as a class, the named representatives must complete a burdensome checklist. Specifically, they "must satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and at least one of the requirements listed in Rule 23(b)."  *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 481 F. Supp. 3d 1258, 1270 (S.D. Fla. 2020).  Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are generally referred to as "numerosity, commonality, typicality, and adequacy of representation." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).

If the plaintiffs have affirmatively demonstrated ascertainability and that the four requirements of Rule 23(a) are satisfied, the Court moves on to Rule 23(b).  Since Plaintiffs proceed under Rule 23(b)(3), they must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3).  Finally, Plaintiffs must also establish that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Since it is the Plaintiffs' burden to establish that Rule 23 is satisfied, and that rule does not set forth a mere pleading standard, "the merits of the underlying claim may be considered to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Ohio State Troopers Ass'n, Inc.*, 481 F. Supp. 3d at 1271 (simplified). Doubts are resolved against class certification. *Brown*, 817 F.3d at 1234.

## DISCUSSION

### I.   Rule 23(a) is Satisfied

#### A.  Ascertainability

The first step for a plaintiff seeking class certification is to establish that the proposed class is adequately defined and clearly ascertainable. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  In other words, the plaintiff must show that class members can be identified by reference to objective criteria. *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014).  And such objective criteria must enable an identification process that is administratively feasible, requiring little, if any, individual inquiry. *Id.*

As to the ascertainability requirement, Plaintiffs argue that "it is feasible to identify Class members using state vehicle registration data that provides the name and address of the registrant and his or her vehicle identification number."  This data can be purchased from Information Handling Services Markit, which obtains registration data from all states and the District of Columbia. Mercedes-Benz, however, counters that "[t]hough some cases say IHS data can show registration, courts have not assumed that it 'allows them to identify the state of purchase," or

when vehicles are brought in "private person-to-person transactions[.]" Mercedes-Benz's argument continues that this data does not necessarily identify where the vehicle was *purchased*—only where it is *registered*.

Nonetheless, the Court finds that the Proposed Classes satisfy the ascertainability inquiry. Mercedes-Benz relies on *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) to properly assert that plaintiffs "bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable.'" However, as Plaintiffs point out, a class is "clearly ascertainable" if membership is "capable of being" determined. *Id.* at 1303. Further, "membership can be capable of determination without being capable of *convenient* determination[,]" and mere "[a]dministrative feasibility is not an inherent aspect of ascertainability." *Id.*

Here, Plaintiffs' proposed class membership is capable of determination. Contrary to Mercedes-Benz's argument, Information Handling Services Markit data can be used and *has been* used to ascertain class membership in various other cases. *See, e.g., Victorino v. FCA US LLC*, 2022 WL 1125769, at *3 (S.D. Cal. Apr. 14, 2022); *In re Gen. Motors LLC Ignition Switch Litig.*, 2020 WL 7480323, at *8 (S.D.N.Y. Dec. 18, 2020); *Corson v. Toyota Motor Sales U.S.A., Inc.*, 2016 WL 1375838, at *2 (C.D. Cal. Apr. 4, 2016). Even in this Multidistrict Litigation, the Settlement Administrator has used Information Handling Services Markit data to identify class members. *See* Doc. No. 4143-2, Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Settlement Class Notice Program ("Data was available to provide individual notice to virtually all Class Members. The data was obtained from IHS Automotive, driven by Polk and combined with data from Volkswagen. All lists were combined and de-duplicated in order to find the most likely current address for each identified Class Member.").

Further, Mercedes-Benz argues that Plaintiffs' claim that vehicle registration data can be purchased from IHS Markit is "unsupported" because the Plaintiffs' Internet Uniform Resource Locator ("URL") was outdated. Although the URL was indeed inoperable, it was the result of an error in the text of the link missing an additional hyphen. The corrected link works, and IHS Markit data is available.

Moreover, Mercedes-Benz relies on *Neale v. Volvo Cars of N. Am.*, 2017 WL 6055775, at *8 (D.N.J. Dec. 6, 2017), for the proposition that other courts have not assumed that Information Handling Services Markit Data allows them to establish class membership. There, the court found that because "the bulk of the class [was] likely to consist of former owners . . . who no longer [knew] or possess[ed] the VIN number of their former Class Vehicle," the Court had "no way of assessing the reasonableness of Plaintiffs' proposed scheme for this subset of the proposed class." *Id.* However, that same court later noted that ascertainability was not "destroyed," despite other "deficiencies in Plaintiffs' class definition." *Neal v. Volvo Cars of N. Am.*, 2021 WL 3013009, at *8 (n.19) (D.N.J. July 15, 2021).

As *Cardenas v. Toyota Motor Corp.*, 2021 WL 5811741, at *7 (S.D. Fla. Dec. 6, 2021), shows, ascertainability may be satisfied when the class "is defined by reference to objective criteria." There, the Court found ascertainability when plaintiffs maintained that class membership could be established "through Defendants' records and through public records, like Vehicle Identification Numbers." *Id.* Use of such data was "sufficient to render [the] class ascertainable" in that case. *Id.* Further, it is administratively feasible to identify class members using state vehicle registrant data that provides the name and address of the registrant and his or her vehicle identification number. *See, e.g., Berman v. Gen. Motors LLC*, 2019 WL 6163798, at *11 (S.D. Fla. Nov. 18, 2019). In conclusion, Mercedes-Benz's challenge to the ascertainability

of the class fails, as Plaintiffs have met their burden.

## B. Numerosity

To satisfy the numerosity requirement, Plaintiffs must show that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although this requirement is not tied to any fixed numerical threshold, Plaintiffs must "proffer some evidence of the number in the purported class or a reasonable estimate." *Leszcvnski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Plaintiffs assert that Mercedes-Benz sold over one million Class Vehicles nationwide. Surely, over one million putative plaintiffs satisfies the Eleventh Circuit's rule that "generally less than twenty-one [class members] is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted). Therefore, the Court finds that Plaintiffs have satisfied the numerosity requirement.

## C. Commonality

Next, under Rule 23(a)(2), there must be questions of law or fact common to the class. This means that more than one common issue of law or fact must exist. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996). Further, such issues must be susceptible to class-wide proof. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). The focus is on the "capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Though not always the case, the commonality inquiry is generally satisfied where a defendant has engaged in a standardized course of conduct that affects all class members. *See Sanchez-Knutson*, 310 F.R.D. at 536.

Plaintiffs contend that the commonality requirement is satisfied because their claims

involve common questions of law and fact that will all be answered with common proof, such as:

- Whether the Class Vehicles were sold to Plaintiffs with airbags containing the Inflator Defect;

- Whether Mercedes-Benz knew or should have known about the Inflator Defect;

- Whether Mercedes-Benz engaged in deceptive acts or practices;

- Whether Mercedes-Benz intentionally misrepresented, concealed, suppressed, and/or omitted material facts concerning the Inflator Defect; and

- Whether Mercedes-Benz's unlawful conduct damaged Plaintiffs and Class Members.

The Court finds that resolution of the common questions identified by Plaintiffs above has the capacity to generate common answers apt to drive the resolution of the class-wide litigation, and therefore Plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement. *See In re Nissan N. Am., Inc. Litig.*, 2023 WL 2749161, at *4 (M.D. Tenn. Mar. 31, 2023) (finding plaintiffs satisfied commonality where fraud, warranty, and consumer protection claims based on an automotive defect were "capable of class-wide resolution" even where "different class vehicle sensors [may have had] different configurations as a result of different software updates"); *Speerly v. Gen. Motors, LLC*, 2023 WL 2572457, at *4, *7 (E.D. Mich. Mar. 20, 2023) (finding commonality based on alleged automobile transmission design defects, pursuant to plaintiffs' various legal theories under the laws of 26 different states, including consumer fraud claims); *Cardenas v. Toyota Motor Corp.*, 2021 WL 5811741, at *12–14 (S.D. Fla. Dec. 6, 2021) (finding commonality based on an alleged automobile HVAC defect where plaintiffs alleged common issues—such as defendants' omissions and whether a reasonable person would have been deceived by said omissions—would be established on a class-wide basis through common evidence); *Salas v. Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 1940619, at *5 (C.D. Cal. Mar.

27, 2019) (finding common questions including whether automaker knew about the defect and concealed the defect); *Sanchez-Knutson*, 310 F.R.D. at 537 (holding plaintiffs satisfied commonality based on an alleged defective condition allowing exhaust to enter the passenger compartment of vehicles); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 523–24 (C.D. Cal. 2012) (finding commonality based on plaintiffs' claims of the same alleged suspension defect in class vehicles); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681 (S.D. Fla. 2009) (finding commonality where all class members owned the same class vehicle which contained the allegedly defective airbag system); *see also Edwards v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015) (affirming common questions under Rule 23(a)(2), including whether a defect existed and whether defendant had a duty to disclose the defect); *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (reasoning that whether a defendant's "conduct would deceive an objective reasonable consumer is a common issue for all the putative class members, amenable to classwide proof"); *Chamberlain v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (finding no error of law with district court's finding of commonality based on the same alleged automobile design defect).

### D. Typicality

Under Rule 23(a)(3), the "claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." This requires that a "sufficient nexus exist[ ] between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). Such a nexus is present if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams*, 568 F.3d at 1357 (citation omitted).

Plaintiffs argue that the typicality requirement is satisfied because their claims arise from the Inflator Defect and Mercedes-Benz's common effort to conceal that defect as the rest of the members of the Proposed Classes. They further contend that they and the members of the Proposed Classes were injured in the same way—by overpaying for their vehicles—and, to support their claims, they will advance the same arguments of law and fact as individual class members would. Regarding adequacy, Plaintiffs assert that they have demonstrated they possess integrity and personal characteristics necessary to act as fiduciaries for the Classes, as each of the named Plaintiffs has been actively involved in the litigation of this matter.

In response, Mercedes-Benz first contends that typicality is not satisfied because the proposed classes are subject to individualized defenses. For instance, Mercedes-Benz alleges that the Mississippi class representative's claims were time-barred, so they could not represent absent class members who *may* have timely claims. Plaintiffs properly counter, however, that statute of limitations defenses do *not* preclude class certification, as such issues will not force Plaintiffs to devote energy and resources to their own cases at the expense of the class. *See Bruhl v. Price Waterhousecoopers Intern.*, 257 F.R.D. 684, 690 (S.D. Fla. Sept. 30, 2008) ("Unique defenses" do not negate class representatives' "ability to serve as class representatives [when] their claims share the same essential characteristics as the claims of the class at large."). Mercedes-Benz also argues that typicality is not satisfied because such a determination runs afoul of the Rules Enabling Act, 28 U.S.C. § 2072(b). This argument is addressed below.

### E. Adequacy

With respect to the adequacy requirement, under Rule 23(a)(4), Plaintiffs must show they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 n.13 (11th Cir. 2003). The purpose of

the adequacy requirement is to "protect the legal rights of absent class members." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000). Adequcy of representation is primarily based on "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the . . . class" and "whether plaintiffs have interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). This inquiry requires the Court to consider both whether there are any inter-class conflicts and whether class counsel and named plaintiffs will prosecute the case with zeal. *Valley Drug Co.*, 350 F.3d at 1181.

Plaintiffs assert that they have demonstrated they possess the integrity and personal characteristics necessary to act as fiduciaries for the Classes, as each of the named Plaintiffs has been actively involved in the litigation of this matter. They have responded to written discovery requests, sat for depositions, and selected competent counsel to represent the interests of the Classes. Moreover, Plaintiffs note that there is no conflict of interest that would prevent Plaintiffs or their counsel from representing the Proposed Class. In response, Mercedes-Benz argues that the proposed named Plaintiffs are not adequate class representatives because their individual claims are not viable. For example, Mercedes-Benz proffers that Plaintiffs have been made whole and that Plaintiffs Calhoun (GA) and Taylor (MS) have no transactional relationship with Mercedes-Benz. In turn, Plaintiffs argue that merit arguments are premature at this juncture.

The purpose of determining whether class-certification is appropriate "is not to adjudicate the case," but "to select the method best suited to adjudication of the controversy." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). And while adjudicating the merits to determine certification "put[s] the cart before the horse," questions of merit "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23

prerequisites for class certification are satisfied." *Id.* At 460, 466. Here, the Court is satisfied that the class representatives will fairly and adequately represent the interests of the Proposed Class and that there are no disqualifying conflicts of interest. In addition, the Court finds that Plaintiffs have demonstrated that they possess the integrity and personal characteristics necessary to act as fiduciaries for the Classes.

Mercedes-Benz further argues that the named Plaintiffs are inadequate because under the Rules Enabling Act, 28 U.S.C. § 2072(b), they cannot adequately represent putative class members given that the proposed classes generate claims for an unspecified number of class members in fifteen additional states. Additionally, Mercedes-Benz asserts that class certification is against due process as it forecloses any opportunity for Mercedes-Benz to raise defenses as to each alleged violation of the law. In response, Plaintiffs argue that class actions in general and the use of class-wide or representative evidence to establish common elements of a claim do not encroach on any substantive rights.

The Rules Enabling Act prevents the use of class actions to abridge the substantive rights of any party. *See* U.S.C. § 2072; *see also Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1180–83 (11th Cir. 2010). A class action comports with notions of due process and "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). The Eleventh Circuit has been clear: "The fact that unnamed class members' injuries may have occurred in other states does not change things so long as the alleged injuries and interests are substantially the same." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 16728190, at *6 (11th Cir. Nov. 7, 2022). Although the Eleventh Circuit's discussion addressed a standing issue as opposed to class certification under Rule 23(a), the same reasoning applies.

Plaintiffs have demonstrated that the unnamed class members' alleged injuries and interests are substantially the same as the proposed class representatives, regardless of whether such injuries occurred in other states. Plaintiffs have also, as discussed above, successfully demonstrated that "the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20. The Court is thus satisfied that class certification will not "abridge, enlarge, or modify any substantive right," and does not run afoul of the Rules Enabling Act. 28 U.S.C. § 2072(b). As such, the Court finds that Plaintiffs have affirmatively demonstrated ascertainability and that the four requirements of Rule 23(a) are satisfied.

## II.   Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614.  Plaintiffs seek class certification under Rule 23(b)(3), which is appropriate when (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and when (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A. Predominance

"Common issues of fact and law predominate if they 'have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay*, 382 F.3d at 1255 (internal citation omitted).  The predominance inquiry is satisfied "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis." *Allapattah Servs., Inc.*, 333 F.3d at 1260.  "It is not necessary

that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254 (internal quotation marks omitted). When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

In Section II.C., *supra*, the Court found the existence of common questions surrounding, among other things, the alleged Inflator Defect and Mercedes-Benz's knowledge and concealment of it. Now, the Court must determine whether those common questions will predominate over individual ones such that class certification on each claim is appropriate.

### i.   Fraud Classes

Plaintiffs seek certification for Plaintiffs Bridges' (North Carolina) and Plaintiff Calhoun's (Georgia) fraud claims as class representatives for members of their proposed multistate class who purchased a Class Vehicle in either Georgia, North Carolina, Colorado, Utah, Virginia, West Virginia, or Wisconsin. Additionally, Plaintiffs move for certification for single-state classes for Plaintiff Knapp's common law fraud claim under Iowa law.

#### a.  Multistate Fraud Class

As a preliminary matter, the Court notes that Plaintiff Calhoun's fraud claim is governed by Georgia law because she purchased her Class Vehicle in that state. Plaintiffs argue that because the laws of the additional states concerning fraud are substantially similar to the laws of Georgia, Plaintiff Calhoun's fraud claim is typical of the claims of purchasers from the additional states, and common issues of law and fact will predominate. Importantly, Plaintiff

Calhoun is not the only proposed class representative, and as such, the claims of the proposed multistate Fraud Class are not anchored to Plaintiff Calhoun's fraud claim under Georgia law. This distinction is discussed below.

A fraud-related claim generally requires a misrepresentation or omission, materiality, reliance, causation, and injury. *See* Restatement (Second) of Torts §§ 525, 550 (1977); W. Prosser, The Law of Torts §§ 108, 110, at 714, 731–32 (4th ed. 1971). The parties vigorously dispute, among other things, whether the reliance element is capable of class-wide proof or whether reliance is too individualized. Because the reliance element in this case is dispositive on the issue of whether predominance is satisfied, the Court focuses only on reliance as it pertains to Plaintiffs with claims arising under Georgia law.

Under *Tershakovec*, a district court must determine "on a state-by-state (and claim-by-claim) basis" whether each cause of action "permits a presumption of reliance and, if it does, under what circumstances." 79 F. 4th at 1308. A court is permitted to impose a class-wide presumption of reliance "only if the relevant state's common-law fraud cause of action or deceptive-practices statute allows for that presumption." *Id.* at 1307. Where a particular state "require[s] proof of reliance but allow[s] it to be presumed in certain circumstances," the court must determine "if the circumstances support the presumption's application" based on the "details specific to the case." *Id.* at 1314. If the "precondition to the presumption's application" is not satisfied, class treatment is inappropriate because "a[a]ffirmatively proving reliance is a very individualized inquiry, the kind that would predominate over other common questions in a class action." *Id.* at 1314, 1307-08. The Eleventh Circuit has cautioned district courts to exercise restraint and "decline to expand state law" "[a]bsent any indication that a presumption is permissible" based on the facts of the case before it. *Id.* at 1313. Applying these principles to the

17

"details specific to this case" compels the exclusion of Georgia purchasers from Plaintiffs' multistate fraud class, as well as Plaintiff Calhoun's common law fraud claim. *See id.* at 1310.

Georgia intermediary appellate courts have permitted a class-wide presumption of reliance for fraud claims only when (1) a defendant makes uniform written misrepresentations in standardized documents that are received by all proposed class members, and (2) there is common circumstantial evidence of all class members' conduct demonstrating their reliance. *See Fortis Inc. Co. v. Kahn*, 683 S.E.2d 4, 8 (Ga. Ct. App. 2009); *Liberty Lending Servs. v. Canada*, 668 S.E.2d 3 (Ga. Ct. App. 2008).

For example, in *Fortis*, an insured brought a class action against his health insurer for misrepresenting that his policy was a group policy when in fact it was an individual policy. 683 S.E.2d 4. The *Fortis* court found that a jury could reasonably infer class-wide reliance based on "class members' continued *renewal* of their policies after receiving the uniform, standard documents" containing the alleged "uniform written misrepresentations" because the alleged "misrepresentations were made in writing on the standardized, uniform documents sent to all class members" . . . and "[a]ll 5,757 class members allegedly received the same standard, uniform written documents and the same kind of policy." *Id.* at 8 (emphasis in original). Similarly, in *Liberty Lending*, a group of homeowners brought fraud claims related to specific paragraphs in standardized security agreements executed between putative class members and the defendant home lenders. 668 S.E.2d at 6-7. Affirming certification of a Georgia fraud subclass, the court held that reliance could be presumed because the claim was "based upon the written representations contained in the provisions of the security agreements" and "similar written misrepresentations were common to all the security agreements at issue." *Id.* at 12.

The facts of this case do not fit within the narrow circumstances outlined in *Fortis* and

*Liberty Lending* because there is no evidence that all putative class members were uniformly exposed to a uniform written representation in a standardized document. Indeed, the evidence reflects that purchasers were exposed to different representations that were conveyed through many different mediums. Some Plaintiffs reviewed brochures or pamphlets, and some did not; some reviewed saw Mercedes-Benz's commercials, and some did not; some visited Mercedes-Benz's website, and some did not; some spoke with sales representatives about sales features, and some did not; and notably, some Plaintiffs disclaimed viewing any Mercedes-Benz advertisements at all. Thus, because Plaintiffs lack evidence establishing that all putative class members received uniform representations made in the same, standardized documents, there can be no class-wide presumption of reliance under Georgia law. *See Peck v. Lanier Golf Club*, 697 S.E.2d 922, 926 (Ga. Ct. App. 2010) (rejecting class-wide presumption where "there was no evidence showing that the relators had used the same materials, plat, and representations in marketing their respective subdivisions" and individual inquiries were needed to determine the "representations made to each property owner"). All Georgia purchasers of Class Vehicles, therefore, must be excluded from the multistate Fraud Class, including Plaintiff Calhoun.

However, Plaintiff Calhoun (Georgia) is not the only class representative for Plaintiffs' proposed multistate Fraud Class as Plaintiff Bridges (North Carolina) is a second proposed class representative. As such, the Court must determine whether Plaintiff Bridges may serve as a class representative for the remaining states: North Caroline, Colorado, Utah, Virginia, West Virginia, and Wisconsin. The predominance inquiry begins with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). As an initial matter, the elements of a fraud claim in each of these states is as follows:

**North Carolina**: "(1) False representation or concealment of a material fact, (2)

reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Additionally, any reliance on the allegedly false representations must be reasonable." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (citations and quotations omitted).

**Colorado**: "[1] that the defendant made a false representation of material fact; [2] that the party making the representation knew it was false; [3] that the party to whom the representation was made did not know of the falsity; [4] that the representation was made with the intent that it be acted upon; and [5] that the representation resulted in damages." *Brody v. Bock*, 897 P.2d 769, 775–76 (Colo. 1995).

**Utah**: "(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage." *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003).

**Virginia**: "(1) a false representation by the defendant, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the misled party, and (6) resulting injury to the party misled." *Carlucci v. Han*, 907 F.Supp.

**West Virginia**: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; (3) that the plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) that the plaintiff was damaged because he relied upon it." *Wolford v. Children's Home Soc'y of W. Va.*, 17 F. Supp. 2d 577, 584

(S.D.W.Va. 1998).

**Wisconsin**: "1. A false representation; 2. Made with the intent to defraud and for the purpose of inducing another to act upon it; and 3. Actually inducing another to rely and act upon the representation causing injury or damage." *Bell v. Edward D. Jones & Co.*, 962 F. Supp. 1188, 1192 (W.D. Wis. 1996) (citation omitted).

Plaintiffs assert that the predominance inquiry is satisfied because the core issues in this action are subject to generalized proof and will be established using common evidence that is applicable to Plaintiffs and all class members. Plaintiffs point to the basis of their fraud claims being the existence of the Inflator Defect, Mercedes-Benz's knowledge of it, and Mercedes-Benz's failure to disclose the Inflator Defect to consumers prior to the sale of Class Vehicles. In this regard, Plaintiffs contend they will prove their fraud claims with common evidence establishing that (1) Class Vehicles were sold with the same inflator defect; (2) Mercedes-Benz was aware of the Inflator Defect; (3) Mercedes-Benz inaccurately marked the Class Vehicles as safe and had a duty to disclose its knowledge but failed to do so; and (4) the facts that Mercedes-Benz failed to disclose were material. Mercedes-Benz responds that individualized issues of knowledge, reliance, causation, and injury predominate over common questions, and therefore Plaintiffs cannot satisfy the predominance inquiry of Rule 23(b)(3). Further, Mercedes-Benz argues that Plaintiffs fail to carry their burden of proving that the states' laws for the multistate classes are substantially similar. The Court will address each of these purported individualized issues in turn.

i. *Knowledge*

Mercedes-Benz argues that Plaintiffs fail to offer common proof that Mercedes-Benz had any knowledge, much less uniform knowledge across the class period. Plaintiffs respond that this

is a merits argument and further argue that evidence of Mercedes-Benz's knowledge will be established with generalized evidence common to all class members.

Mercedes-Benz focuses on the merits of Plaintiffs' fraud claim as opposed to whether individualized issues predominate over common issues. The Court's responsibility at this juncture is not to determine whether Plaintiffs have conclusively proven an element of their claim, but rather, to determine whether common issues of law or fact predominate. Here, the Court is satisfied that the "central issue," i.e., whether Mercedes-Benz was aware of the inflator defect, "can be said to predominate" over individualized issues. *Bouaphakeo*, 577 U.S. at 453. Plaintiffs need not present the Court with common proof that demonstrates the alleged fraud, but rather must demonstrate that "some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1245 (internal quotation marks omitted). Thus, the Court finds that evidence regarding Mercedes-Benz's knowledge does not vary by class member and that if evidence of such knowledge exists, it will be established with evidence common to all class members.

ii. *Reliance and Causation*

Mercedes-Benz contends that the individualized issues of each class member's reliance and subsequent causation (i.e., whether the alleged misrepresentations or omissions had any bearing on the class member's purchasing decision) threaten to swamp the common questions concerning Mercedes-Benz's conduct. In short, Mercedes-Benz's argument is that because certain class members may have received its messaging from different sources, such as television, the internet, print advertising, or unaffiliated third-party adverts, its messaging was non-uniform. Further, Mercedes-Benz argues that a presumption or inference of reliance is misplaced in this context. Plaintiffs argue that class members were exposed to the same, uniform

misrepresentation and omission: that the Class Vehicles contained safe, working airbag, a message that Plaintiffs argue was ubiquitous and lasted for the entirety of the Class Period. Moreover, Plaintiffs respond that the remaining states—North Carolina, Colorado, Utah, Virginia, West Virginia, and Wisconsin—permit the use of a class-wide presumption or inference of reliance when a defendant's fraudulent conduct is uniform with respect to the class.

Mercedes-Benz's reliance and causation arguments do not preclude class certification because predominance may be satisfied where defendant engaged in a "uniform course of conduct." *See Tershakovec*, 546 F. Supp. 3d at 1377. And when an omission or misrepresentation is material, an inference of reliance can be established through circumstantial evidence. *See, e.g., Vine v. PLS Fin. Servs., Inc.* 807 F. App'x 320, 329 (5th Cir. 2020) (affirming class certification of a fraud claim and holding that "common issues can still predominate if common evidence of fraudulent misrepresentation 'gives rise to a reasonable inference that that misrepresentation induced [the class members' actions] and caused their losses'") (quoting *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 628, 641 (5th Cir. 2016) (en banc)).

Here, Mercedes Benz's alleged conduct was uniform with respect to all class members in at least one important way: it never disclosed the Inflator Defect to consumers prior to the sale of the Class Vehicles. *See Cardenas*, 2021 WL 5811741, at *13 ("[A]ll class members received the same information from defendant regarding the purported defect – which is to say, no information.") (citation omitted). And that omission is material because a reasonable factfinder could infer that if consumers knew their Class Vehicles contained defective airbags, they would not have made the purchase, or they would have paid less for their vehicles. Moreover, Plaintiffs' expert, Dr. Dubé, presented evidence through a vehicle buyer survey that airbag safety is one of the most important features for car buyers. ECF No. 4251 ¶ 365–66. Accordingly, there exists

sufficient class-wide evidence to support the proposition that safety and working airbags were material factors for class members' purchasing decisions, and class-wide proof of reliance on Mercedes-Benz's uniform misrepresentation and omission can be offered by a reasonable jury. *Tershakovec*, 546 F. Supp. 3d at 1376 ("Case law from federal courts from across the country demonstrate that a presumption of reliance is . . . appropriate . . . when a Defendant's representations to the entire class were uniform.").

Further, the Court finds that the remaining states all allow for the use of a class-wide presumption or inference of reliance when a defendant's alleged fraudulent conduct is uniform with respect to the class, as it is here. *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 518 (6th Cir. 2015) (holding that "class-wide proof—that the alleged misrepresentation is material and was made in a generally uniform manner to all class members—would also suffice in North Carolina to show actual reliance such that individual issues would not predominate") (citing *Pitts v. Am. Sec. Ins. Co.*, 550 S.E.2d 179, 1189 (N.C. Ct. App. 2001)); *Garcia v. Medved Chevrolet, Inc.*, 273 P.3d 92, 98 (Colo. 2011) ("Reliance may be inferred from circumstantial evidence common to a class."); *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 514 (D. Utah 2017) (applying a class-wide "inference of reliance and causation" and finding predominance satisfied where "members of the class had been exposed, through a variety of mediums, to generally uniform representations that may have been inaccurate"); *State ex rel. U-Haul Co. of W. Virginia v. Tabit*, No. 17-1052, 2018 WL 2304282, at *9 (W. Va. May 21, 2018) (affirming class certification of a fraud claim and holding that an omission claim "only requires proof that an objective 'reasonable consumer' would not have suffered the loss absent the omission"); *Sonneveldt v. Mazda Motors of Am., Inc.*, No. 8:18-cv-012980JLS-KES, 2022 WL 17357780, at *31 (C.D. Cal. Oct. 21, 2022) ("[A] federal district court applying Virginia law in the class

action context reasoned that '[o]ften reliance is a matter that is demonstrated inferentially and by circumstantial proof' and could be proven indirectly and inferentially for a class of consumers. Accordingly, the Court concludes that individualized showings of reliance are not required to prove actual reliance under Virginia law, and therefore that individualized issues of reliance do not overwhelm common issues as to the Virginia Class's common law fraud claims.") (quoting *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 563 (E.D. Va. 2000)); *Cuene v. Hilliard*, 754 N.W.2d 509, 513 (Wis. Ct. App. 2008) (holding that "reliance may be presumed in an omissions case").

### iii. *Substantial Similarity of States' Laws*

The Court must now determine whether Plaintiffs have proven that the states' laws (North Carolina, Colorado, Utah, Virginia, West Virginia, and Wisconsin) for the multistate classes are substantially similar. Defendant argues that Plaintiffs have not met their burden because there exists substantial deviation in the states' laws regarding a duty to disclose, evidentiary burdens, materiality, and reliance.[2] The Court addresses each argument in turn.

As for the alleged variations in state law regarding a duty to disclose, Mercedes-Benz's arguments fail because in all pertinent jurisdictions, a duty to disclose arises from a defendant's exclusive or superior knowledge as to undisclosed material facts. *Robinson v. Gen. Motors LLC*, No. CV 20-663-RGA-SRF, 2021 WL 3036353, at *8 (D. Del. July 19, 2021), *report and recommendation adopted*, No. 1:20-CV-00663, 2021 WL 7209365 (D. Del. Nov. 30, 2021) (holding that an automaker's duty to disclose arises when "a defendant has superior knowledge

---

[2] Mercedes-Benz also advances arguments that the Court declines to address, given that they are no longer relevant. The arguments regarding variations among the states' surrounding a defect to manifest to recover in tort no longer present an issue given that Rhode Island is not included in the proposed class. Likewise, the arguments regarding the economic loss doctrine and oral rather than written communications in class actions no longer present an issue given that Tennessee is not included in the proposed class. Finally, the argument that differences exist among the applicable states' fraud laws on intent to deceive similarly is no longer an issue as Alabama is no longer included in the proposed class.

of an alleged defect" under North Carolina law) (citation omitted); *In re Est. of Gattis*, 318 P.3d 549, 554 (Co. Ct. App. 2013) (holding that "a seller who has actual knowledge of a latent defect" has a duty to disclose the defect "where disparate knowledge exists"); *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1162 (D. Utah 2018) (holding that duty to disclose existed where defendants "were in a superior position to know the truth of the statements made to Plaintiffs"); *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999) (holding that a duty to disclose arises "if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist"); *Robinson*, 2021 WL 3036353, at *8 (holding that an automaker's duty to disclose arises when "a defendant has superior knowledge of an alleged defect" under West Virginia law) (citations omitted); *Ollerman v. O'Rourke Co., Inc.*, 288 N.W.2d 95, 107 (1980) (holding that a duty to disclose arises when material facts "are known to the vendor, which are material to the transaction, and which are not readily discernible to the purchaser").

Defendant further argues that the evidentiary burden for common law fraud varies substantially as Colorado, Utah, Virginia, West Virginia, and Wisconsin require proof of fraud by clear and convincing evidence, while North Carolina employs a preponderance of the evidence standard. However, the Court finds that Plaintiffs have adequately demonstrated that the underlying factual proof will be the same for the purported class members of each state. Accordingly, North Carolina's lesser evidentiary burden can adequately be addressed with a verdict form. In any event, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254 (internal quotation marks omitted). Accordingly, a singular state's variation does not defeat predominance.

Defendant next argues that while North Carolina, Utah, and Virginia employ a subjective test for materiality, Colorado and Wisconsin use an objective test. Plaintiff argues that this argument fails as objective materiality and subjective materiality are closely related concepts with substantial overlap in analysis and proof and further posits that the life-or-death information that was not disclosed would be material under any legal standard. Nevertheless, the Court agrees with Plaintiffs. The subjective standard would be met if this type of omission is proven, as such information, if known, would have "influenced the party's judgment or decision to act." *In re Cook*, 2017 WL 532286, at *5 (Bankr. M.D.N.C. Feb 9, 2017); *see also In re Guardianship of A.T.I.G.*, 293 P.3d 276, 287 (Utah 2012); *J.E. Robert Co. v. J. Robert Co.*, 231 Va. 338, 345 (1986). Likewise, under the objective standard, such an omission would cause "a reasonable person under the circumstances [to] attach importance to it in determining his or her course of action." *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (Colo. 2018); *see also Brown v. First Capital Sur. & Trust Corp.*, 2011 WL 6032714, at *3 (Wis. App. Dec. 6, 2011). Furthermore, just as above, the Court finds that any issue regarding these minor differences can adequately be addressed with a verdict form.

Mercedes-Benz's final argument is that variations exist amongst the states in the reliance element of common law fraud. The Court's analysis above regarding reliance applies to the argument here and fails for those same reasons.

### iv.  *Conclusion on Predominance for the Proposed Multistate Fraud Class*

Above, the Court determined that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Accordingly, the Court finds that the predominance requirement is met with regard to Plaintiffs' proposed multistate fraud class.

### b. Iowa Fraudulent Concealment

Plaintiffs have also moved to certify a separate state class for common-law fraud under Iowa law. Under Iowa law, fraud requires a showing of the following elements: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) justifiable reliance, and (7) resulting injury and damage." *McGough v. Gabus*, 526 N.W.2d 328, 331 (Iowa 1995) (citations omitted).

The Court's analysis above as to knowledge applies here. As for reliance, the parties dispute whether Iowa permits a presumption or inference of reliance in cases involving fraud. Mercedes-Benz cites to *Adrian Trucking, Inc. v. Navistar, Inc.* 609 F.Supp.3d 728 (N.D. Iowa 2022) to support the proposition that Iowa has not recognized a class-wide presumption or inference of reliance. In response, Plaintiffs cite to *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36 (Iowa 2002) to support the proposition that Iowa permits use of a class-wide presumption or inference of reliance.

In *Adrian Trucking, Inc.*, the court explained that when proving fraudulent concealment under Iowa law, a plaintiff must show justifiable reliance. 609 F.Supp.3d at 749. Justifiable reliance "depends on the qualities and characteristics of the particular plaintiff and the specific surrounding circumstances." *Id.* However, in *Vos*, the Supreme Court of Iowa cited to Iowa case law and noted that when plaintiffs allege that class members "were victims of standardized misrepresentations and omissions," a presumption of reliance is "not appropriate where the individual plaintiffs did not receive the same mix of information." 667 N.W.2d at 53. Here, the Court finds that Iowa permits a use of a class-wide presumption or inference of reliance because Plaintiffs have alleged that they received the same mix of information from Mercedes-Benz, i.e., that its cars were safe while omitting information about the airbag defect. Accordingly, this does

not preclude a finding of predominance under Rule 23(b)(3).

> ii.   **Separate Statutory Classes**

Next, the Court must determine whether Plaintiffs' separate proposed statutory classes satisfy the predominance requirement. These proposed statutory classes include single-state classes under the Iowa Consumer Protection Act and the North Carolina Unfair and Deceptive Trade Practices Act. Further, Plaintiffs move for certification for a multistate class under the Washington Consumer Protection Act.

> a.   **Iowa Consumer Protection Act**

Mercedes-Benz argues that the Iowa Consumer Protection Act requires a plaintiff to demonstrate that "but-for [defendant's] purported misrepresentation, he would not have elected to purchase" the product at issue. *Brown v. Louisiana-Pac. Corp.*, 820 F.3d 339, 349 (8th Cir. 2016). Thus, says Mercedes-Benz, predominance is not satisfied because there is no state law recognizing availability of a class-wide presumption or inference of reliance. *See id.* at 348–49. Plaintiffs respond that the statute requires a private plaintiff to show that the defendant aced with intent to cause reliance, which is different than requiring the consumer to show that he relied on the unfair or deceptive act. Plaintiffs assert that *Brown* stands for the proposition that "but for" causation is sufficient for a private claim under the statute. *See id.* at 348. The Court agrees.

The Supreme Court of Iowa has clarified that this statute "was not merely a codification of common-law fraud" as it "provides broader protection to the citizens of Iowa by eliminating common-law fraud elements of reliance and damage." *State ex rel. Miller v. Hydro Mag. Ltd.*, 436 N.W.2d 617, 622 (Iowa 1989). Mercedes-Benz argues that even if a presumption of reliance is allowed, Iowa requires plaintiffs to show that the information was "widely disseminated" which Plaintiffs have not proven. However, courts have certified for class treatment claims under

this statute when a defendant has widely disseminated misleading information "on its website" and in hard copies given to plaintiffs. *See Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411, 426 (D. Mass. 2018). And, as discussed above, there is evidence that Mercedes-Benz marketed its products as safe on widely available platforms, including on its website, in press releases, and via marketing information on the internet. Accordingly, a finding of predominance under Rule 23(b)(3) is not precluded for a single state class under the Iowa Consumer Protection Act.

### b.  North Carolina Unfair and Deceptive Trade Practices Act

To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act, a plaintiff must allege "(1) an unfair or deceptive act or practice (2) in commerce (3) which proximately caused injury to the plaintiff or his business." *Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F.Supp.2d 471, 477 (E.D.N.C. 2013). The North Carolina Supreme Court has clarified that "a claim under [the statute] stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226 (2013).

The crux of Mercedes-Benz's argument as to the certification of a statutory class under the North Carolina Unfair and Deceptive Trade Practices Act is that predominance is not met because there is no state law recognizing the availability of a class-wide presumption or inference of reliance. Plaintiffs argue that North Carolina indeed allows for a presumption or inference of reliance, citing to a sixth circuit holding wherein a class was certified where all of the alleged misrepresentation was material or likely to deceive a reasonable consumer and was uniformly made to the putative class. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 518 (6th

Cir. 2015).

Mercedes-Benz cites to *Pitts v. Am. Sec. Ins. Co.* to support their assertion, as the court there held that reliance is an "individual issue." 550 S.E.2d 179, 189 (N.C. App. 2001), *aff'd*, 569 S.E.2d 647 (2002). However, in *Pitts*, the North Carolina Court of Appeals held that the trial court erred in holding that a class action bringing a claim of fraud can never be certified because "establishing the elements of fraud requires Plaintiff to make individual showings of facts on the element of reliance." *Id.* at 189. As the court explained, "although individualized showings may be required in actions for fraud, this does not in and of itself preclude a finding of the existence of a class" so long as common issues predominate. *Id.* at 190. The court further added that "the benefit of allowing consumer fraud actions to proceed as class actions must be considered when determining whether the element of reliance, an individual issue, renders a class non-existent." *Id.* at 189. Here, whether a vehicle is safe would be material to or likely to deceive a reasonable consumer into purchasing a vehicle. Further, Mercedes-Benz undertook a comprehensive marketing strategy with a generally uniform core message such that all class members were likely exposed to the alleged misrepresentation. Thus, the Court finds, just as the Sixth Circuit did in *Rikos*, that while this is "a somewhat closer call . . . this classwide proof—that the alleged misrepresentation is material and was made in a generally uniform manner to all class members—would [] suffice in North Carolina to show actual reliance such that individual issues would not predominate." 799 F.3d at 519. Accordingly, the predominance requirement is met under Rule 23(b)(3).

### c. Washington Consumer Protection Act

Plaintiffs next move for certification for Plaintiff William Goldberg's statutory claim under Washington law for:

All persons who, prior to the date on which the Class Vehicle was recalled, bought a Class Vehicle in the state of _____ (Iowa, Mississippi, North Carolina, Oregon, or Washington) and who (i) still own the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.

Mercedes-Benz argues that Washington does not permit a class-wide presumption or inference of reliance. Plaintiffs argue that under Washington law, claims brought under the statute do not require a showing of reliance. Both cite to *Tershakovec* for support.

The Eleventh Circuit clarified that while a plaintiff suing under this statute must prove a causal link between the act and the injury, "reliance is not itself a necessary element" because reliance is only one way to establish causation. 79 F.4th at 1311. The portion of the opinion Defendant cites to, and quotes, states that "Washington common-law fraud claims are not appropriate for class treatment." *Id.* at 1313. However, at this point, Plaintiffs only seek to certify a class under Washington's Consumer Protection Act, making that portion of the opinion irrelevant to the Court's inquiry here. The Court finds that predominance is met with respect to the proposed multistate class under the Washington Consumer Protection Act. *See id.* at 1311 (rejecting defendant's reliance-based predominance objection to class treatment of plaintiffs' proposed class under the statute).

### iii.    Warranty Class – Mississippi Law

Plaintiffs also move for certification for Plaintiff Bettie Taylor's breach of implied warranty claim under Mississippi law. Defendant argues that such claims present individualized issues of whether class members' vehicles were merchantable and whether the alleged defect manifested.

With regard to merchantability, Mercedes-Benz argues that under the statute, the basic inquiry is whether the vehicle was fit for driving – a question that Plaintiffs have failed to answer

with common, class-wide proof. Plaintiffs respond that their claim that Mercedes-Benz breached the implied warranty of merchantability is supported by common class-wide proof that Takata inflators, packed with ammonium nitrate, were installed in each Class Vehicle rendering the Vehicles unmerchantable from the day they were purchased. Mercedes-Benz cites to *McGee v. Mercedes-Benz USA, LLC*, where the court held that because the plaintiff had continued to drive the vehicle even after receiving notice of the recall, and without every experiencing any issues with the alleged defect, there was no genuine dispute of material fact as to the ordinary fitness of the vehicle. No. 19CV513-MMA (WVG), 2020 WL 1530921, at *6 (S.D. Cal. Mar. 30, 2020). In *McGee*, however, plaintiff relied entirely on the recall notice as the basis for establishing a defect and breach of the implied warranty of merchantability. *Id.* Here, however, Plaintiffs' have provided expert reports and confirmed ruptures to establish a defect and do not merely rely on the recall. In any event, the Court cannot find that a Class Vehicle installed with ammonium nitrate airbags could be "fit for driving" in any sense of the phrase. "[T]he big question of whether the product was defective at the time it was sold is a common one," and thus the Court finds that merchantability does not defeat predominance. *Tershakovec*, 546 F. Supp. 3d at 1383.

As for manifestation, this Court has repeatedly rejected the argument that Plaintiffs' claims should fail because the Inflator Defect has not manifested: "[i]f Takata had installed grenades in its airbags that may or may not explode on impact[,] a court would not require an explosion to demonstrate manifestation of a defect." *In re Takata Airbags Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016). Plaintiffs have provided evidence to support their contention that the airbags used in the Class Vehicles contain "innately unstable ammonium nitrate, and thus create an unreasonable and imminent risk of injury to vehicle occupants" and that this defect is uniform across every Class Vehicle. *In re Takata Airbags Prods. Liab. Litig.*,

396 F. Supp. 3d 1101, 1123–24 (S.D. Fla. 2019); PSOF (ECF No. 4250) ¶¶ 308–12 (serious, uniform safety hazard posed by the use of ammonium nitrate in airbags); ¶¶335–52 (Mercedes-Benz was aware of the Inflator Defect and failed to disclose it); ¶¶ 378–85 (field incidents involving Mercedes-Benz vehicles). And "if a jury believes Plaintiffs' evidence, it could find that the alleged defect was manifested when the [Class Vehicle] came off the assembly line . . . ." *Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV-Dimitrouleas, 2016 WL 11783302, at *4-5 (S.D. Fla. Jul. 25, 2016). Therefore, manifestation of the Inflator Defect is not an individualized issue that prevents class certification.

### iv.    Damages

Rule 23(b)(3) also requires that any model supporting a plaintiff's damages be consistent with its theory of liability. *Comcast Corp.*, 569 U.S. at 35. In short, this requirement ensures that the damages are capable of determination via class-wide proof—just like the theory of liability. *Id.* However, "individualized damages calculations are insufficient to foreclose the possibility of class certification." *Carriuolo*, 823 F.3d at 988. And Rule 23 does not require plaintiffs to prove predominance separately as to both liability and damages. *Id.*

Plaintiffs argue that class certification is appropriate because damages are capable of measurement pursuant to a class-wide methodology. The gravamen of Plaintiffs' damages theory is that all class members have been harmed in the same way by overpaying for their Class Vehicles because a defective vehicle is worth less than a non-defective vehicle. Plaintiffs and members of the Proposed Class aim to prove their overpayment damages using common evidence in the form of a conjoint analysis and market simulation designed by Plaintiffs' expert, Dr. Dubé. A conjoint analysis is an analytic survey method used to measure customer preferences for specific features of products, and they are routinely accepted as a reliable

methodology for calculating overpayment damages on a class-wide basis in consumer class actions. *See Cardenas*, 2021 WL 5811741, at *13 (certifying class based on conjoint analysis damages method); *Sanchez-Knutson*, 310 F.R.D. at 539 (accepting "conjoint analysis damages model for purposes of class certification, finding that it is sufficiently tied to Plaintiff's legal theory and her proffered evidence that her [vehicle] shares the same defect as all others in its product line, and meets the predominance requirement under the Supreme Court's holding in *Comcast*").

Attempting to relitigate its motion to exclude Dr. Dubé's testimony, Mercedes-Benz launches many of the same previously rejected attacks at Dubé's conjoint analysis to persuade the Court that individualized issues will predominate with respect to damages. Dubé's proposed damages model, however, is materially indistinguishable from the same on this Court approved in *Cardenas*, 2021 WL 5811741, at *5. As in *Cardenas*, Dubé sufficiently explains how, after calculating the percentage of overpayment applicable to each Class Vehicle using a choice-based survey, that percentage can be objectively multiplied by the price that each class member paid for the vehicle to calculate damages. ECF No. 4339-64 (Appendices E–H) at ¶¶ 111–13. Accordingly, the Court accepts Plaintiffs' proffered expert's proposed conjoint analysis damages model for purposes of class certification, and the Court finds that it is sufficiently tied to Plaintiffs' legal theory and their proffered evidence that they overpaid for their vehicles and satisfies the predominance requirement under *Comcast*.

### v.    Conclusion on Predominance

For the reasons stated above, the Court finds that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" for the proposed classes discussed above. Fed. R. Civ. P. 23(b)(3).

## B. Superiority and Manageability

The second requirement of Rule 23(b)(3) is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Four criteria for consideration are offered in a non-exhaustive list: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Generally, this inquiry requires the Court to "consider the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. The outcome of the Court's predominance analysis "has a tremendous impact on the superiority analysis" because "the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id.*

Plaintiffs argue that superiority is satisfied because there is "no evidence that any class member has shown an interest in individually controlling this action and there is no overlapping litigation involving these claims on behalf of these Class members." ECF No. 4610 at 47. They further note that because the Court is so familiar with this case, it is desirable for this Court to adjudicate all claims in this forum, and that the legal and factual issues giving rise to the class claims can be easily managed and adjudicated on a class-wide basis because they depend upon a core set of documents, fact witness testimony, and expert testimony. This, they describe, is more efficient than having thousands of repetitive proceedings that will probe the same questions in multiple courts, which could lead to inconsistent rulings. Mercedes-Benz argues in response that

the many purported difference among states' laws defeats superiority and further, that a cost-free recall program precludes a finding of superiority. The Court disagrees. As for the purported differences among states' laws, the analysis above applies. And because the recall does not resolve the consumer Plaintiffs' legal claims for relief and economic damages, it is not superior to class proceedings. *See Daffin v. Ford Motor Co.*, 2004 WL 5705647, at *8 (S.D. Ohio July 15, 2004), *aff'd*, 458 F.3d 549 (6th Cir. 2006).

As for the difficulties associated with managing a class action, the Court finds that a class trial on Plaintiffs' claims is manageable. At bottom, because common issues predominate over individualized issues, the Court is "hard pressed to conclude that a class action is less manageable than individual actions." *Klay*, 382 F.3d at 1273. The claims advanced by Plaintiffs are similar enough that any material variations can "be dealt with in a simple and efficient manner." *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997). Indeed, the challenges of managing multiple state classes and claims in one case "routinely arise in complex litigation, and they are insufficient to overcome the innumerable advantages that class treatment will afford." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 701 (S.D. Fla. 2004).

## III.    Appointment of Class Counsel

Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel," the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1). The Court appoints as Class Counsel under Federal Rule of Civil Procedure 23(g) Peter Prieto of Podhurst Orseck, P.A.; Curtis Miner of

Colson Hicks Eidson; Todd A. Smith of Smith LaCien LLP; David Boies of Boies, Schiller & Flexner LLP; Elizabeth Cabraser of Lieff Cabraser Heimann & Bernstein LLP; James E. Cecchi of Carella Byrne Cecchi Olstein Brody & Agnello, PC; and Roland Tellis of Baron & Budd, PC.

## **CONCLUSION**

Based upon the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiffs' Motion for Class Certification (**D.E. 4610**) is **GRANTED IN PART**.

2. Plaintiffs' request to certify their Multistate Fraud Class pursuant to Federal Rule of Civil Procedure 23(b)(3) is **GRANTED IN PART**. Plaintiff Paulette Calhoun and all Georgia purchasers are excluded from the class. Plaintiff Daphne Bridges is designated as the class representative for:

> All persons who, prior to the date on which the Class Vehicle was recalled, bought a Class Vehicle in the state of North Carolina, Colorado, Utah, Virginia, West Virginia, or Wisconsin and who (i) still own the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.

3. Plaintiffs' request to certify a single-state class for Plaintiff Susan Knapp's common law fraud and statutory claims under Iowa Law pursuant to Federal Rule of Civil Procedure 23(b)(3) is **GRANTED**.

4. Plaintiffs' request to certify a single-state class for Plaintiff Bettie Taylor's breach of implied warranty claims under Mississippi Law pursuant to Federal Rule of Civil Procedure 23(b)(3) is **GRANTED**.

5. Plaintiffs' request to certify a single-state class for Plaintiff Daphne Bridges' statutory claim under the North Carolina Unfair and Deceptive Trade Practices Act pursuant to Federal Rule of Civil Procedure 23(b)(3) is **GRANTED**.

6. Plaintiffs' request to certify a class for Plaintiff William Goldberg's statutory claim under

Washington Law pursuant to Federal Rule of Civil Procedure 23(b)(3) is **GRANTED**:

> All persons who, prior to the date on which the Class Vehicle was recalled, bought a Class Vehicle in the state of _____ (Iowa, Mississippi, North Carolina, Oregon, or Washington) and who (i) still own the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.

DONE AND ORDERED in Chambers at Miami, Florida, this 26th of February 2025.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record