IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO: ECONOMIC LOSS TRACK CASES AGAINST VOLKSWAGEN DEFENDANT | Case No. 1:15-md-02599-FAM<br><br>FILED BY _____ D.C.<br>SEP 05 2025<br>ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S. D. OF FLA. - MIAMI |

## REPORT BY THE SETTLEMENT SPECIAL ADMINISTRATOR ON THE IMPLEMENTATION OF THE OUTREACH PROGRAMS PURSUANT TO THE VOLKSWAGEN SETTLEMENT AGREEMENT

### STATUS REPORT NO. 30 FILED SEPTEMBER 3, 2025

The Settlement Special Administrator of the Volkswagen Settlement Agreement (the "Settlement Agreement") submits this Report to the Court to provide updates and insights into the ongoing efforts of the Outreach Program under the Settlement Agreement[1].

As explained in further detail below, the Outreach Program has been designed through discussion with the Parties, the National Highway Traffic Safety Administration, and the Independent Monitor of the Takata recalls to utilize techniques and approaches not previously applied in the recall industry, with a focus on personalized, targeted direct campaigns aimed at increasing the volume of outreach attempts per consumer via traditional and non-traditional channels with the goal of maximizing the recall remedy completion rate to the greatest extent practicable given the applicable provisions of the Settlement Agreement. To this end, the Settlement Special Administrator and Outreach Program vendors regularly confer and communicate with the automobile manufacturers to coordinate concerted efforts to ensure that

---

[1] The data and information contained in this report is generally as of mid-Q3 2025.

1

outreach to affected vehicle owners is conducted as efficiently and effectively as possible and to continually improve the overall process.

1. **Direct Outreach**

    a. Current and Future Campaigns in Direct Outreach to Affected Consumers

The Settlement Special Administrator and Outreach Program vendors continue to deploy various direct outreach activities previously discussed in prior Status Reports, including specific thematic materials by mail and email (including, but not limited to, "new owner" creative, "missed appointment" creative, and "mobile repair" creative) that have traditionally performed best in terms of response, appointment, and remedy rates, all of which have been described extensively in prior Reports.

In addition to those Outreach types that are continually used and rotated on a periodic basis, the Settlement Special Administrator and Outreach Program vendors note that the inclusion of personalized video messages in email communications or the inclusion of QR codes linking to similar videos continues to have a significant correlation with increased Recall Remedy rates when those videos are viewed by the recipients. In view of this, upcoming outreach mailers and emails will continue to leverage this technology, especially in large-format, high-visibility mailings, in order to maximize engagement rates.

Additionally, the Settlement Special Administrator and Outreach Program vendors have implemented "personal agent" letters, in which recipients are "assigned" a personal agent to assist them throughout the process of scheduling the Recall Remedy appointment. This form of personalization, as with the above-referenced videos, along with the concept of individualized assistance has proven highly effective in driving engagement, response and repair rates.

Furthermore, previously designed creative materials and campaigns are being redeployed to urge consumers to have their vehicles remedied by easing the burden on owners of scheduling appointments. These mailers include a QR codes whereby consumers can scan the code with their cellular phones to directly schedule an appointment online, along with perforated "reminder card" for consumers to write down their appointment dates and times. The mailer also offers a recipient-specific Recall ID and Campaign ID for the individual to reference if there are specific reasons why the recipient has not previously had the Recall Remedy performed (*e.g.*, they no longer own the vehicle). In this way, even if the mailer does not generate an appointment and Recall Remedy, it may result in actionable data that the Settlement Special Administrator and Outreach Program vendors can utilize to that end.

Lastly, the main Outreach Program landing page, which was previously brand-agnostic, has been re-designed and re-deployed to be Volkswagen- and Audi-specific, providing, among other things, information tailored to Volkswagen and Audi owners around vehicles affected by the Takata Recall, Vehicle Identification Number look-up tools where owners can check to see whether the Recall Remedy has been completed on their vehicles, and how owners can take action by scheduling a Recall Remedy appointment.

      b.  <u>Continued Efforts with State Departments and Other Entities</u>

As reported, the Settlement Special Administrator and the automobile manufacturers have engaged various state departments to endorse the deployment of letters on behalf of their respective states to inform affected citizens of the Takata inflator recall and its severity, as well as to provide information on how to have the Recall Remedy completed. These efforts have resulted in some of the highest response rates and remedy rates of any communications in the Outreach Program. In

addition to the states in which these letters have previously been mailed[2], similar letters have been mailed or are anticipated to be mailed in the coming months in Texas (its third mailing), New York (its sixth mailing), and Puerto Rico (its third mailing). The fact that several states have now re-engaged on this type of effort for even sixth mailings is encouraging, considering the significant success of these letters in generating repairs. The Settlement Special Administrator and the automobile manufacturers continue to contact state departments to seek their cooperation in this valuable and effective effort.

    c. Overall Deployment and Response

A total of 22,738,011 outbound deployments across all available channels have been made by the Settlement Special Administrator and Outreach Program vendors to affected consumers. These deployments are broken out by primary channels below:

| Channel | Volume | Total Appointments |
|---|---|---|
| Direct Mail Pieces | 6,657,509 | 36,330 |
| Emails | 3,638,193 | 1,496 |
| Outbound Calls | 2,998,646 | 42,487 |
| Digital/Facebook Impressions | 9,433,611 | 1[3] |
| Tagging[4] | 10,052 | 410 |

---

[2] Louisiana, Michigan, New York, Mississippi, Alabama, Kentucky, Wisconsin, Minnesota, North Carolina, Virginia, Arkansas, Florida, Georgia, Pennsylvania, South Carolina, Ohio, Nebraska, Tennessee, Florida, Texas, Idaho, California, Puerto Rico, Colorado, New Mexico, Massachusetts, Nevada, Arizona.

[3] Social media deployment on Facebook and other platforms is an extremely low-cost channel used primarily to keep consumer awareness and a social presence to support other outreach activities which more regularly result in appointments and repairs, such as direct mail and outbound phone calls.

[4] "Tagging" refers to the process referenced in this and prior reports, whereby the Settlement Special Administrator's Outreach Program vendors actively search for affected vehicles on the road and, when found, place recall notifications on those vehicles. As of January 1, 2025, these efforts were ceased as the specific sub-vendor used to implement tagging dropped this service. However, the Settlement Special Administrator and Outreach Program vendors continue to seek out other sub-vendors that may be able to provide the same or similar services in the future.

### d. Overall Results

The Settlement Special Administrator and Outreach Program vendors have performed outreach resulting in a total of 81,747[5] appointments and "warm transfers" to facilitate consumers to schedule appointments directly with dealers, and 84,572 Recall Remedies have been completed since the transition of outreach to the Settlement Special Administrator and Outreach Program vendors.[6]

## 2. Additional Activities and Efforts

At the end of 2021, the Settlement Special Administrator discontinued the use of earned media efforts as part of its Takata Outreach Program. Given the significant media coverage over the last several years, these earned media strategies aided in raising affected vehicle owners' awareness and understanding of the legitimacy and gravity of the Takata recalls. In ongoing consultation with the Parties and the National Highway Traffic Safety Administration, the Settlement Special Administrator and Outreach Program vendors continue to evaluate other activities to be performed in addition to and in conjunction with direct outreach to consumers.

---

[5] This figure slightly exceeds the aggregate sum of the Total Appointments by Channel in the chart above because some appointments are set through other means more difficult to directly quantify, such as the Outreach Program Landing Page.

[6] Considering the significant efforts put forth towards indirect outreach methods such as mass media and public relations-type activities, Status Reports provide the total number of Recall Remedies performed, irrespective of whether direct outreach had been performed on a vehicle. As previously mentioned, consumers often schedule repair appointments directly with the automobile manufacturer or their local dealership rather than by calling the Outreach Program's call center to do so. As such, the total Recall Remedy completion count presented here cannot be attributed solely to those direct activities conducted by the Settlement Special Administrator and Outreach Program vendors and exceeds the number of appointments and "warm transfers" set by Outreach Program vendors. This is also consistent with the fact that each automobile manufacturer continues significant and extensive outreach efforts beyond those activities performed by the Settlement Special Administrator in the Outreach Program under the Settlement Agreement.

3. **Conclusion**

The Settlement Special Administrator offers this Report to ensure that the Court is informed of the status of the Outreach Program to date. If the Court finds more information helpful, the Settlement Special Administrator stands ready to provide it at the Court's convenience.

/s/ Patrick J. Hron
PATRICK J. HRON
Settlement Special Administrator

After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.