# EXHIBIT 1

2025 WL 2911767
Only the Westlaw citation is currently available.
United States Bankruptcy Court, S.D. New York.

IN RE: MOTORS LIQUIDATION COMPANY,
et al., f/k/a General Motors Corp., et al. Debtors.

Case No. 09-50026 (MG) (Jointly Administered)
|
Signed October 14, 2025

**Attorneys and Law Firms**

KING & SPALDING LLP Attorneys for General Motors LLC
and OnStar, LLC 1185 Avenue of the Americas New York,
New York 10036 By: Scott Davidson, Esq.

KEN PAXTON Attorney General of Texas BRENT W
WEBSTER First Assistant Attorney General RALPH M
OLINA Deputy First Assistant Attorney General AUSTIN K.
KLINGHORN Deputy Attorney General for Civil Litigation
Attorneys for the State of Texas By: Johnathan Stone, Esq.
Chief, Consumer Protection Division.

**MEMORANDUM OPINION AND ORDER
GRANTING THE MOTION OF GENERAL
MOTORS LLC AND ONSTAR, LLC TO
ENFORCE THE SALE ORDER AND
INJUNCTION AGAINST THE STATE OF TEXAS**

MARTIN GLENN, CHIEF UNITED STATES
BANKRUPTCY JUDGE

**\*1** Pending before the Court is the *Motion by General
Motors LLC and OnStar, LLC* (together, "New GM") *to
Enforce the Bankruptcy Court's July 5, 2009 Sale Order and
Injunction and the Rulings in Connection Therewith Against
the State of Texas* (the "Motion," ECF Doc. # 14826), *Texas's
Response to New GM's Motion to Enforce*, (the "Response,"
ECF Doc. # 14836) and the *Reply Supporting New GM's
Motion to Enforce the Sale Order and Injunction and the
Rulings in Connection Therewith Against the State of Texas*
(the "Reply," ECF Doc. # 14838).

This case arises from an underlying dispute between New GM
and the State of Texas taking place in the District Court for
Montgomery County, Texas (the "Texas Court"). At a high
level, Texas alleges that beginning in 2011 New GM violated

the Deceptive Trade Practices-Consumer Protection Act.
Texas accuses New GM of operating a "mass surveillance
program" involving the collection of data pertaining to a
user's driving behavior, geolocation data, and disclosing that
data to third parties without adequate disclosure to consumers.
In its petition, Texas seeks to incorporate a variety of
allegations against New GM over a broad period of history. [1]
New GM filed the Motion in this Court to enjoin the State
of Texas from asserting allegations in its state court suit
(the "Texas Lawsuit") that New GM believes violate the
Sale Order entered by this Court in the General Motors
bankruptcy proceeding in July 2009. New GM contends that
the Sale Order's "free and clear" sale provision bars Texas
from asserting conduct of Old GM against New GM when
seeking damages for its data collection program.

As explained in greater detail below, this Court exercises its
role as a "gatekeeper," determining whether claims asserted
against New GM are barred by the Sale Order and prior
decisions of this Court. The merits of any claims that pass
through the gate are not for this Court to pass upon. The Court
concludes below that Texas's claims regarding Old GM's
conduct predating the sale to New GM may not be asserted
against New GM because the claims seek to hold New GM
accountable for conduct of Old GM and are barred by the
Sale Order and this Court's prior rulings. Therefore, Texas
is enjoined from proceeding until it strikes the allegations
regarding Old GM's conduct from the Second Amended
Complaint.

The Motion is therefore **GRANTED** to the extent described
herein.

# I. BACKGROUND

A. General Motions Corporation Bankruptcy & Sale
Order

General Motors Corp. ("Old GM ") filed for bankruptcy on
June 1, 2009, and on the same day, filed a motion to sell
substantially all of its assets to a predecessor of New GM.
Motion ¶ 9; *see In re Gen. Motors Corp.*, 407 B.R. 463,
473 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part,
reversed in part*, 829 F.3d 135 (2d Cir. 2016), *cert. denied*,
581 U.S. 938, 137 S.Ct. 1813, 197 L.Ed.2d 758 (2017).

On July 5, 2009, the Court entered the *Order (I) Authorizing
Sale of Assets Pursuant to Amended and Restated Master Sale
and Purchase Agreement with NGMCO., Inc. a U.S. Treasury-*

*Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Grating Related Relief*, (the "Sale Order," ECF Doc. # 2968). The Master Sale and Purchase Agreement (the "Sale Agreement") provided the list of liabilities to be assumed by New GM (the "Assumed Liabilities") and the Sale Order explicitly noted that the Purchased Assets (defined in the Sale Agreement) were transferred free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, except the Assumed Liabilities. (Sale Order ¶ 7.)

**\*2** Three kinds of liabilities were assumed by New GM related to GM's vehicles. Under the Sale Agreement, (i) Product Liabilities (defined in the Sale Agreement), which include, *inter alia*, liabilities to third parties for death, personal injury or other injury as a result of the operation of motor vehicles on a public roadway or by the components of such motor vehicles, (ii) liabilities arising from express written warranties, and (iii) all obligations arising under Lemon Laws, were assumed by New GM. (Sale Agreement §§ 2.3(a)(vii), 2.3(a)(ix).)

The sale ("363 Sale") closed on July 10, 2009. (Motion ¶ 9.) The State of Texas filed an objection to the 363 Sale but ultimately withdrew its objection on the record at the sale hearing. [2] (*Id.*) The Sale Order specified that New GM was not liable for any claims against Old GM, including claims based on Old GM's conduct and successor liability claims. (*Id.* ¶ 10.) The Sale Order further provided that this Court would retain jurisdiction to enforce and implement the terms and provisions of the Sale Order. (Sale Order ¶ 71.)

New GM points toward several prior interpretations of the Sale Order from this Court. (Motion ¶ 15.) New GM focuses on the four following matters: *In re Motors Liquidation Co.*, 576 B.R. 313 (Banker. S.D.N.Y. 2017), *aff'd in part, rev'd in part, In re Motors Liquidation Co.*, 590 B.R. 39 (S.D.N.Y. 2018); Judgment dated December 4, 2015 (ECF Doc. # 13563); *In Matter of Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015). (*Id.*)

B. The Texas Lawsuit & New GM's Motion

In August 2024, the Texas Attorney General filed the Texas Lawsuit against the New GM alleging violations of the Texas Deceptive Trade Practices Act ("DTPA"). (*Id.* ¶ 1.) The initial complaint filed by the State of Texas did not contain allegations regarding Old GM's conduct; however, following

the filing of an amended petition (the "First Amended Petition") on May 20, 2025, New GM claims the State of Texas added numerous allegations pertaining to Old GM's pre-bankruptcy conduct. (*Id.* ¶¶ 1-2.) New GM contends that the First Amended Complaint introduced Old GM conduct including: tracking Ralph Nadar in the 1960s and its related settlement in the 1970s, TARP loans and bankruptcy in 2008 and 2009, fuel tank fires from the 1970s through the 1990s, allegedly monopolistic and anti-consumer conduct based on court cases from 1941 and 1951, respectively, vehicle emissions issues based on a news article from 1995. (*Id.* ¶ 2.) New GM informed Texas that the New GM believed this Court's prior rulings barred specifically identified allegations, claims, and the request for civil penalties based thereon. (*Id.* ¶ 3.)

Texas agreed to file a new petition, and on June 5, 2025, filed the second amended petition (the "Second Amended Petition"), which is annexed to the Response as Exhibit E. New GM argues that Texas's Second Amended Petition failed to cure the impermissible allegations present in the First Amended Petition and continues to allege conduct of Old GM in violation of the Sale Order. (*Id.* ¶ 4.) New GM contends that the Second Amended Petition acknowledges Old GM was responsible for the complained of acts, yet it still requests that a jury consider the conduct of both New and Old GM when determining civil penalties. (*Id.* ¶¶ 21-22.)

**\*3** New GM notes Texas has disclaimed successor liability in the Second Amended Petition. (*See* Second Amended Petition ¶ 278 n.3 (stating "For the avoidance of doubt, the State of Texas is not asserting successor liability against [New GM] for liabilities arising from [Old GM's] conduct prior to the closing of the bankruptcy sale. The assessment of penalties is only sought based on [New GM's] conduct post-closing of the bankruptcy sale.").) New GM claims that simply stating that Texas is not asserting successor liability claims is insufficient for purposes of curing Texas's violation of the Sale Order and the discovery requests and deposition notice and the Texas Lawsuit must be halted until Texas cures its violations of the Sale Order. (*Id.* ¶¶ 27-28.)

C. The State of Texas's Response

The State of Texas begins its response by arguing this Court lacks subject matter jurisdiction over the dispute. (Response at 5.) Texas advances two theories why the Court lacks subject matter jurisdiction. First, Texas claims New GM cannot demonstrate that its sovereign immunity has been abrogated or otherwise waived. (*Id.* at 6-7.) Second, Texas argues that

*In re Motors Liquidation Company, --- B.R. ---- (2025)*

the Anti-Injunction Act prevents this Court from enforcing its prior injunction, and the New GM has not demonstrated the applicability of any exception of the Anti-Injunction Act. (*Id.* at 8-11.)

Texas's second contention is that this Court either must or should abstain from exercising jurisdiction over this matter. (*Id.* at 11.) Texas first argues that mandatory abstention is applicable pursuant to the *Younger* Abstention Doctrine. (*Id.* at 12, 14.) With respect to the *Younger* Doctrine, Texas argues that all elements are met, and this Court must abstain from exercising jurisdiction. (*Id.* at 12-13.) Texas claims that there is an ongoing state court proceeding, Texas's enforcement of its consumer protection laws implicates an important state interest, and New GM has raised the same arguments in the state proceedings. (*Id.* at 13.) Furthermore, Texas purports that New GM has not met its burden in demonstrating that an exception to the *Younger* Doctrine is applicable. (*Id.*) Therefore, Texas argues this Court must abstain.

Texas argues in the alternative that mandatory abstention pursuant to 28 U.S.C § 1334(c)(2) is applicable. Texas believes it has satisfied the requirements of section 1334(c)(2) because it has filed a timely request for relief from the Court, the proceeding does not implicate the Court's "core" jurisdiction, and New GM's request relates to a state-law claim, subject to an ongoing state court proceeding, that can be timely adjudicated in the state court. (*Id.* at 14-15.) Furthermore, Texas claims that the Motion does not pertain to a "core proceeding" under Title 11 because the Texas Lawsuit does not "arise under" or "relate to" a proceeding under Title 11. (*Id.* at 15.)

Texas continues further by arguing that the instant case is analogous to *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2017 WL 5195234, at *2 (S.D.N.Y. Nov. 9, 2017) (hereafter, *Synott*). Like the state-court claims in *Synott*, Texas claims that the claims do not "arise under" or "arise in" Title 11 because Texas seeks to hold New GM liable for conduct occurring after the Sale Order. (*Id.* at 15-16.) Texas proceeds by arguing that the enforcement of the injunctive terms of a sale order is not a core proceeding enumerated by Congress. (*Id.* at 16.) Texas explicitly requests that this Court not follow the precedent set forth by the Southern District of New York in *In re Motors Liquidation Co.*, 428 B.R. 43, 57 (S.D.N.Y. 2010), which held that subsequent proceedings involving the enforcement of an injunction and sale order were core proceedings. (*Id.*) Texas argues that the case was wrongly decided, lacks *stare decisis* value, and that

its non-binding holding may be revisited to "correct a clear error of law." (*Id.*) Texas takes issue with the district court's determination that the enforcement of the injunction involved a core proceeding because it was an extension of 28 U.S.C. § 157(b)(2)(N), which states that "orders approving the sale of property" fall within a court's core jurisdiction. (*Id.*)

**\*4** Texas requests the Court find that the specific language of 28 U.S.C. § 157(b)(2)(N) and "approving a sale order" and "enforcing the injunctive terms of the sale order" are not synonymous. (*Id.* at 16-17.) Texas discusses the difference between to "approve" a sale order and to "enforce" a sale order, and Texas argues the latter falls outside the scope of 28 U.S.C. § 157(b)(2)(N). (*Id.* at 17.) Therefore, Texas believes this Court must abstain.

Texas then argues that this case warrants permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) and the Supreme Court's decision in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). (*Id.* at 18, 21.) Turning first to section 1334(c)(1), Texas argues that permissive abstention is warranted because a variety of factors weigh in favor of abstention. (*Id.* at 18-20.) First, Texas contends that there would be a lack of efficient administration of the estate because abstention would have no impact on GM's bankruptcy estate. (*Id.* at 19.) Texas claims that it does not seek to hold New GM liable for any conduct prior to the Sale Order and any resulting judgment would be against New GM. (*Id.*) Texas further argues that the case involves difficult or unsettled issues of applicable state law, coupled with the pending Texas Lawsuit, weigh in favor of abstention. (*Id.* at 19-20.) Texas claims that the Texas Lawsuit is only remotely related to the bankruptcy proceeding in degree and substance, the state law claims are not severable from the proceedings before this Court, and that resolving the Motion would unnecessarily burden this Court when there is already an ongoing state court proceeding. (*Id.* at 19.) Texas argues the defendant is forum shopping, thus warranting abstention. (*Id.*) Lastly, Texas notes that the underlying Texas Lawsuit involves the right to a jury trial and that both New GM and the State of Texas are non-debtor entities, further indicating this Court should abstain. (*Id.*)

Next, Texas argues this Court should abstain pursuant to *Burford* abstention doctrine. (*Id.* at 21.) Texas claims that it meets all requirements for *Burford* abstention. (*Id.*) Texas purports that if this Court were to preempt the state court from determining what information a jury is permitted to consider, it will disrupt Texas's efforts to establish a coherent policy

regarding the imposition of civil penalties on corporations who violate its consumer protection laws. (*Id.*) Accordingly, Texas requests this Court decline to exercise its jurisdiction over this matter.

Texas then proceeds to argue that should the Court not be persuaded by its jurisdictional and abstention arguments, that this Court should deny the Motion because Texas is not asserting successor liability claims against New GM. (*Id.* at 22.) Texas claims that it only seeks to hold New GM liable for conduct regulated by the DTPA from 2011 onward, two years after the Sale Order. (*Id.* at 23.) Moreover, Texas argues its claims under the DTPA are "wholly independent" of GM's bankruptcy proceeding because the claims are solely a result of New GM's conduct. (*Id.*) Texas delineates its reliance on conduct of Old GM by noting that it seeks to include evidence about Old GM to be considered by the jury, after it has already decided liability and is considering the amount to award. (*Id.* at 24.) Texas believes that its statutory methodology for calculating a civil penalty and is not a "claim" as defined under the Bankruptcy Code. (*Id.*)

**\*5** Texas believes that the "G-Factor" [3] allegations related to Old GM are not "claims" because they do not involve a right to payment. (*Id.* at 24-25.) Texas believes the right to payment arises from New GM's violation of the DTPA, which entitles Texas to pursue civil penalties. (*Id.* at 25.) Texas bifurcates the right to payment and the calculation of civil penalties. (*Id.*) The right to payment, Texas claims, arises entirely from New GM's conduct and cannot be a claim under the Bankruptcy Code, while the calculation of penalties results from Texas's right to payment. (*Id.*)

Texas further claims that its allegations cannot be claims under the Bankruptcy Code because they did not arise before the Sale Order. (*Id.* at 26.) Texas argues that this Circuit's precedent prevents the definition of a claim from being extended to include unknown or unidentified claimants as of the petition date. (*Id.*) As a result, Texas believes that interpreting its allegations regarding Old GM's conduct as a "claim" under the Bankruptcy Code would improperly stretch the definition of a claim and that it would be unduly burdensome to expect an entity to file a proof of claim alleging it may use past conduct against the successor in interest for the future violations of the successor. (*Id.*)

Texas continues its argument by claiming its allegations are not barred by the Sale Order. (*Id.* at 27.) Texas first argues that its claims are independent because they solely involve New GM's post-closing wrongful conduct. (*Id.*) Texas discusses this Court's prior rulings involving groundwater contamination litigation and how this Court permitted claims against New GM because the allegations involved conduct on behalf of New GM. (*Id.* at 27-28.) Texas further discusses how New GM in the groundwater litigation provided the Court with a copy of the complaint and the Court went line by line striking allegations it found impermissible. (*Id.* at 28.) Texas claims that many paragraphs that were not objected to by New GM or ruled upon by the Court discussed Old GM and its conduct. (*Id.*) Accordingly, Texas asks this Court to deny the Motion.

Texas then argues that this Court's prior rulings do not bar its claims. (*Id.* at 29.) Texas notes that this Court has previously held that the New GM did not assume liability for punitive damages regarding Old GM's conduct; however, Texas seeks to distinguish the civil penalties it seeks from the punitive damages that the Sale Order barred. (*Id.*) Texas claims that unlike punitive damages, civil penalties cannot be discharged in bankruptcy, citing section 523(a)(7), and that civil penalties are only available to the government. (*Id.*) Additionally, civil penalties under the DTPA differ from punitive damages because information about Old GM's conduct is used only for the purposes of damages calculation and not for the purposes of establishing liability. (*Id.* at 30.) Texas further alleges that enjoining its allegations against Old GM would "thwart the purpose of the Bankruptcy Code." (*Id.*) Texas again points to section 523(a)(7) to argue the Code does not permit the discharge of civil awards to governmental entities, and notes that governmental regulatory actions are exempt from the automatic stay under section 362(b)(4) of the Bankruptcy Code. (*Id.*)

Texas's next point is that the Sale Order does not bar its allegations against Old GM. (*Id.* at 31.) Texas believes its allegations fall within an exception to the sale order that this Court has recognized in prior holdings. (*Id.*) Texas believes its allegations against Old GM are not barred because it seeks to use Old GM's conduct as a comparator to New GM's conduct to determine the amount necessary to deter future violations by a major automobile manufacturer. (*Id.*) Texas contends that the penalties against Old GM were insufficient to deter it from engaging in future misconduct. (*Id.* at 32.) As a result, Texas posits that the jury can use information about similarly situated automobile manufacturers as a floor when determining the amount of civil penalties necessary to prevent New GM from committing future violations. (*Id.*) Texas claims that New GM has not demonstrated anything

from the Bankruptcy Code, this Court's prior rulings, or the Sale Order that prevents it from using Old GM's conduct as a comparator and this Court should deny the Motion. (*Id.*)

**\*6** Texas then argues that the knowledge of Old GM may be imputed to New GM. (*Id.*) New GM inherited the knowledge of Old GM's history because it obtained Old GM's books and records through the Sale Order. (*Id.*) Texas points to this Court's decision regarding the Ignition Switch Scandal [4] as demonstrative of how knowledge can be imputed on to New GM. (*Id.*) Texas claims that New GM inherited additional knowledge regarding Old GM's history of prior violations. (*Id.* at 33.) In the alternative, Texas argues New GM was aware of Old GM's prior violations because they should have disclosed liabilities and debts in the Chapter 11 proceedings. (*Id.*) Texas also claims New GM had knowledge of Old GM's prior conduct because its violations relating to consumers are matters of public record.

Texas's final argument is a brief discussion claiming that justice requires that the jury consider Old GM's history. (*Id.* at 34.)

### D. New GM' Reply

New GM begins its reply by arguing this Court has the requisite jurisdiction to enforce the Sale Order, and the Eleventh Amendment and the Anti-Injunction Act are not applicable. (Reply at 2.) New GM argues that this Court has ancillary and bankruptcy jurisdiction from the original case, providing this Court authority to enforce its own orders. (*Id.*) New GM also claims this Court has original jurisdiction to enforce its own orders pursuant to 28 U.S.C. § 1334(b). (*Id.*) This Court's jurisdiction, New GM argues, constitutes a civil proceeding "arising in" a case under Title 11. (*Id.*)

New GM then argues that sovereign immunity does not bar this Court from exercising jurisdiction over the State of Texas. (*Id.* at 3.) New GM posits that sovereign immunity is not implicated by a sale order pursuant to section 363(f) of the Bankruptcy Code because such an order is *in rem*. (*Id.*) Additionally, New GM argues that Congress has abrogated sovereign immunity with respect to certain enumerated provisions of the Bankruptcy Code. (*Id.*) Specifically, section 106(a) of the Bankruptcy Code expressly abrogates sovereign immunity for a governmental unit with respect to sections 363 and 105 of the Code. (*Id.*) Governmental unit is defined under section 101(27), which New GM notes, incorporates a "state" in its definition. (*Id.*) New GM further contends that

the Motion requests that the Court determine issues pertaining to the application of sections 363 and 105 of the Code, which falls within the ambit of section 106(a)'s abrogation of sovereign immunity. (*Id.*) New GM also notes that prior decisions by this Court further indicate that this Court may enforce the Sale Order against states that violate its terms. (*Id.* at 4.)

New GM's next argument is that the Anti-Injunction Act does not prevent this Court from enforcing the Sale Order. (*Id.*) New GM first claims that the Anti-Injunction Act is inapplicable because it involves the enforcement of an existing injunction, not the institution of a new injunction. (*Id.*) Second, New GM argues that the Anti-Injunction Act does not apply when an injunction is "expressly authorized by Act of Congress." (*Id.*) New GM believes that sections 105 and 363 of the Bankruptcy Code constitute express authorization of Congress. (*Id.* at 4-5.)

New GM's next point is that abstention is unwarranted. (*Id.* at 6.) Turning first to *Younger* abstention, New GM contends that *Younger* abstention is inapplicable because it does not apply to expressly authorized acts of Congress. (*Id.*) New GM contends that Texas has the burden of demonstrating that *Younger* abstention applies and has it has failed to meet its burden. (*Id.* at 7.) New GM claims that *Younger* applies to three "exceptional circumstances" as articulated by the Supreme Court in *Sprint Communications*,[5] none of which apply to this matter. (*Id.*) Even if Texas has demonstrated this proceeding falls within the ambit of an "exceptional circumstance," the additional factors from *Middlesex*[6] demonstrate that *Younger* abstention is unwarranted. (*Id.* at 7-8.) Therefore, New GM believes *Younger* abstention does not apply.

**\*7** New GM then turns to *Burford* abstention, arguing that it is also inapplicable to this case. (*Id.* at 8.) New GM claims they are not asking this Court to enjoin portions of the DTPA or assess the merits of the underlying claims. (*Id.* at 9.) Instead, New GM requests that this Court examines its own prior order. (*Id.*) New GM claims that there is no basis to determine that staying the Texas Lawsuit would prejudice Texas or its attempt to hold corporations accountable for violations of its consumer protection laws. (*Id.*)

Furthermore, New GM argues that mandatory and permissive bankruptcy abstention pursuant to 28 U.S.C. § 1334 are also inapplicable. (*Id.* at 9-10.) Turning to mandatory abstention first, New GM repeats its argument that the interpretation

*In re Motors Liquidation Company*, --- B.R. ---- (2025)

of the Sale Order is a core proceeding under 28 U.S.C. § 1334, and as a result, mandatory abstention is inapplicable. (*Id.* at 10.) Next, New GM claims that permissive abstention is not applicable. (*Id.*) New GM claims that Texas erroneously acts as if the Motion removed the entire Texas Lawsuit to this Court. (*Id.*) New GM claims that bankruptcy issues predominate the Motion, other decisions from this district have granted motions to enforce sale orders, and the Texas Court's recent orders have demonstrated its intent to defer to this Court to interpret and enforce the Sale Order. (*Id.* at 11-12.)

New GM then argues that Texas is seeking successor liability in violation of the Sale Order. (*Id.* at 12.) New GM first turns to prior rulings from this Court and the Second Circuit. (*Id.*) New GM claims that a prior decision from the Second Circuit in this case clarified that the Sale Order bars any successor liability claims against New GM based on Old GM's conduct. [7] (*Id.*) Instead, New GM argues that claims must allege solely conduct by New GM to not run afoul of the Sale Order. (*Id.* at 13.) New GM claims that Texas's argument that it is unreasonable to expect it to have filed a proof of claim against Old GM is unavailing. (*Id.*) New GM argues that the failure to file a proof of claim is not an issue, rather New GM is not a successor in interest to Old GM. (*Id.*) New GM also argue that the Bankruptcy Code's priority scheme requires unsecured creditors to be paid in full before punitive damages are paid out, exposing buyers to the civil penalties based on the conduct of the seller would have a chilling effect, and imposing civil penalties on a free-and-clear buyer for the conduct of its predecessor is not appropriate. (*Id.* at 14.)

New GM then claims that Texas improperly pursues claims predicated on successor liability. (*Id.* at 15.) New GM alleges Texas violates the Sale Order by seeking to assess penalties, or increase penalties, based on conduct of Old GM in connection with the Purchased Assets that occurred prior to the closing. (*Id.*) Both the attempt to impose civil penalties based on theories of successor liability and fix rights of recovery and remedies based on successor liability are impermissible violations of the Sale Order. (*Id.* at 16)

New GM's final primary argument is that Texas has not satisfied any exceptions to the Sale Order. (*Id.*) New GM claims that Texas does not assert independent rights or claims when seeking to penalize New GM based on Old GM conduct. (*Id.* at 17.) New GM begins by claiming this Court's decision in *In re Motors Liquidation Co.*, 585 B.R. 708 (Bankr. S.D.N.Y. 2018) ("*Motors*") does not support

Texas's argument. (*Id.*) New GM argues that the plaintiffs in *Motors* asserted causes of actions alleging continued acts of New GM that could support an argument that New GM was independently liable. (*Id.*) New GM claims that Texas's historical allegations fall outside the scope of what this Court permitted in *Motors*. (*Id.*)

 **\*8** New GM then argues Texas cannot use Old GM's conduct as a comparator to show the amount of penalty it takes to deter future violations. (*Id.* at 18.) New GM claims that case law does not support Texas's position, and it has not cited any cases that would permit this act. (*Id.* at 19.) New GM further contends that a prior ruling of this Court does not authorize Texas to seek civil penalties on an imputation theory. (*Id.*) Lastly, New GM rejects the argument that justice requires a jury to hear the conduct of Old GM. (*Id.* at 20.)

For these reasons, New GM ask this Court to grant the Motion.

## II. DISCUSSION

### A. Jurisdiction

At the hearing, the State of Texas stated on the record that it waived several of its arguments present in its briefing. Texas did not inform the Court of its waiver prior to the hearing and the Court only became aware of the waiver after questioning Texas's counsel. One such waived argument is that this Court lacks subject matter jurisdiction. The Court nonetheless addresses this issue and other waived arguments as they were raised in the pleadings submitted for this matter.

### 1. Legal Standard

A bankruptcy court's jurisdiction "is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). District courts have original but not exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts may refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." 28 U.S.C § 157(a).

A bankruptcy court's decision to interpret and enforce a prior sale order falls under this formulation of "arising in" jurisdiction. *In re Motors Liquidation Co.*, 829 F.3d 135, 153

In re Motors Liquidation Company, --- B.R. ---- (2025)

(2d Cir. 2016). The meaning of the "arising in" jurisdiction may not be entirely clear, but at a minimum, a bankruptcy court's "arising in" jurisdiction includes claims that "are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson,* 613 F.3d 346, 351 (2d Cir. 2010) (quoting *In re Wood,* 825 F.2d 90, 97 (5th Cir. 1987)); *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.,* 487 B.R. 158, 162 (S.D.N.Y. 2013). "Arising in" claims may include "[m]atters involving the enforcement or construction of a bankruptcy court order ...." *Lothian Cassidy, LLC,* 487 B.R. at 162 (quoting *In re Sterling Optical Corp.,* 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003)); *see In re Ames Dep't Stores, Inc.,* 317 B.R. 260, 272 (Bankr. S.D.N.Y. 2004) ("This Court has subject matter jurisdiction to enforce its orders not only because they were entered in proceedings in a case under title 11 ... with respect to which it undoubtedly had subject matter jurisdiction, but also by reason of the power granted to any federal court to enforce its own orders.")

### 2. Discussion

This Court has jurisdiction to interpret and enforce the Sale Order. This Circuit's precedent makes clear that bankruptcy courts possess jurisdiction to interpret their own orders, including when disputes arise. *In re Motors Liquidation Co.,* 829 F.3d at 153; *In re Millenium Seacarriers, Inc.,* 419 F.3d 83, 96 (2d Cir. 2005); *Lothian Cassidy, LLC,* 487 B.R. at 162. The Sale Order plainly falls within the Court's "arising in" jurisdiction under 28 U.S.C. § 1334(b), as it involves the enforcement of this Court's own order.

Additionally, this Court has previously rejected the argument that it lacks jurisdiction over the Sale Order. *In re Old Carco LLC,* 636 B.R. 347, 355 (Bankr. S.D.N.Y. 2022); *In re Motors Liquidation Co.,* 514 B.R. 377, 379-80 (Bankr. S.D.N.Y. 2014) (Gerber, J.) ("[T]heir claim that I don't have subject matter to construe and enforce the Sale Order ... is frivolous, disregard[s] controlling decisions of the United State Supreme Court and Second Circuit; district court authority in this District; four earlier decisions that I have personally issued; three decisions by other bankruptcy judges in the Southern District of New York, and the leading treatise in the area, Collier."), *aff'd sub nom. In re Motors Liquidation Co.,* 829 F.3d 135 (2d Cir. 2016); *see also e.g., In re Petrie Retail, Inc.,* 304 F.3d 223, 229–30 (2d Cir. 2002) ("[T]he dispute in this case was based on rights established in the sale order. Orders approving the sale of property

are core bankruptcy proceedings.") (internal quotation marks and alterations omitted); *In re Allegheny Health, Educ. & Research Found.,* 383 F.3d 169, 176 (3d Cir. 2004) ("[W]e hold that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders."); *see also In re Motors Liquidation Co.,* 829 F.3d at 153–54 (stating that "[a] bankruptcy court's decision to interpret and enforce a prior sale order falls under this formulation of 'arising in' jurisdiction" and finding "the bankruptcy court had jurisdiction to interpret and enforce the Sale Order."); *In re Motors Liquidation Co.,* 428 B.R. at 56 (finding "injunctive provisions in the Sale Order enjoining successor liability would thus be within the Bankruptcy Court's core jurisdiction ...."). Texas has asked this Court to ignore the holding in *In re Motors Liquidation Co.,* 428 B.R. 43 (S.D.N.Y. 2010), but this Court finds no reason to do so. The case law is clear. This decision was not wrongly decided, and no colorable claim has been presented by Texas to indicate it was.

**\*9** The Sale Order further provided this Court with jurisdiction regarding the interpretation and enforcement of the provisions of the Sale Order. (Sale Order ¶ 71.) The Order provides for the retention of jurisdiction with respect to the interpretation and enforcement of the Sale Order. The Sale Order states in relevant part "[t]his Court ***retains exclusive jurisdiction*** to enforce and implement the terms and provisions of this Order, the MPA, all amendments thereto ... [to] ***interpret, implement, and enforce the provisions of this Order*** ...." (*Id.* (emphasis added).) In the instant case, New GM requests the Court reexamine the Sale Order to determine whether any of Texas's claims against it in the Texas Court Proceeding violate the Sale Order. (Motion ¶¶ 6, 8.) This request squarely falls within the Court's "core" jurisdiction as it pertains exclusively to the interpretation of the Sale Order, and this Court has jurisdiction to enforce its own orders.

In addition to "core" jurisdiction, this Court also has ancillary jurisdiction to enforce the Sale Order. "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009); *see In re Wilshire Courtyard,* 729 F.3d 1279, 1289 (9th Cir. 2013); *LTV Corp. v. Back (In re Chateaugay Corp.),* 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd in part,* 213 B.R. 633 (S.D.N.Y. 1997) ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334");

*see also* *In re Congoleum Corp.*, No. 23-1295, 2025 WL 2424578, at *3 (3d Cir. Aug. 22, 2025) ("We have repeatedly held that bankruptcy courts have jurisdiction to interpret their own orders."). The Supreme Court has previously ruled that bankruptcy courts have jurisdiction "ancillary to an original case or proceeding in the same court ... to preserve the fruits and advantages of a judgment or decree rendered therein, is well settled." *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (collecting cases). The Motion pertains to an original proceeding in this Court, and this Court has ancillary jurisdiction over this proceeding.

Accordingly, the Court finds that it possesses jurisdiction to interpret and enforce the Sale Order.

### B. Sovereign Immunity

Texas also waived its sovereign immunity contention at hearing. The Court nevertheless finds that sovereign immunity does not bar the Motion.

### 1. Legal Standard

Supreme Court precedent has categorized sovereign immunity as "jurisdictional in nature," which prevents a court from presiding over suits against the United States absent Congress's express consent. *United States v. Miller*, 604 U.S. 518, 519, 145 S.Ct. 839, 221 L.Ed.2d 373 (2025) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). A waiver of sovereign immunity is a prerequisite for jurisdiction that does not create new rights or alter any pre-existing ones. *Miller*, 604 U.S. at 519, 145 S.Ct. 839. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The Constitution also provides that Congress may establish "uniform Laws on the subject of Bankruptcies throughout the United States ...." U.S. CONST. art. I, § 8, cl. 4. Congress may also waive sovereign immunity expressly through statute. *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 345, 143 S.Ct. 1176, 215 L.Ed.2d 321 (2023). However, the standard for finding a congressional abrogation of sovereign immunity is stringent. "Congress ... must make its intent to abrogate sovereign immunity unmistakably clear in the language of the statute." *Id.* at 346, 143 S.Ct. 1176 (internal quotation marks omitted). If "there is a plausible interpretation of the statute" that preserves sovereign immunity, Congress has not unambiguously expressed the requisite intent to abrogate sovereign immunity. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 385, 143 S.Ct. 1689, 216 L.Ed.2d 342 (2023).

### 2. Discussion

**\*10** Sovereign immunity does not bar this Court from exercising jurisdiction over this matter for two reasons. First, the interpretation and enforcement of the Sale Order is ancillary to this Court's exercise of its *in rem* jurisdiction. "[J]urisdiction exercised in bankruptcy proceedings was chiefly *in rem*—a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other kinds of jurisdiction. *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 378, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006). The ratification of the Constitution by each state signified its agreement "not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.' " *In re DPH Holdings Corp.*, 448 F. App'x 134, 137 (2d Cir. 2011). This form of non-statutory abrogation is related to a Bankruptcy Court's in rem jurisdiction. *In re DPH Holdings Corp.*, 437 B.R. 88, 98 (S.D.N.Y. 2010), *aff'd*, 448 F. App'x 134 (2d Cir. 2011). The Supreme Court in *Katz* noted that the Bankruptcy Clause went further than allowing Congress to abrogate States' sovereign immunity, instead "*the Bankruptcy Clause itself* did the abrogating." *Allen v. Cooper*, 589 U.S. 248, 258, 140 S.Ct. 994, 206 L.Ed.2d 291 (2020) (emphasis in original). In other words, the Supreme Court determined that the States had agreed "in the plan of the [Constitutional] Convention not to assert any sovereign immunity defense in bankruptcy proceedings." *Id.* at 258-59, 140 S.Ct. 994 (quoting *Katz*, 546 U.S. at 377, 126 S.Ct. 990) (internal quotation marks omitted) (alteration in the original).8 This interpretation is consistent with the historical approach to the interplay of the Bankruptcy Clause and sovereign immunity. *Katz*, 546 U.S. at 375, 126 S.Ct. 990 ("This history strongly supports the view that the Bankruptcy

In re Motors Liquidation Company, --- B.R. ---- (2025)

Clause of Article I, the source of Congress's authority to effect this intrusion upon state sovereignty, simply did not contravene the norms this Court has understood the Eleventh Amendment to exemplify."). Accordingly, Texas cannot assert a sovereign immunity defense because the Eleventh Amendment is not implicated in the context of bankruptcy proceedings.

Additionally, Congress has created an express limited waiver of certain provisions of the Bankruptcy Code. The Bankruptcy Code abrogates the sovereign immunity of "governmental unit[s]" for specified purposes. 11 U.S.C. §§ 106(a), 101(27). Section 106 provides that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section." 11 U.S.C. § 106(a). Section 106(a) provides for the abrogation of sovereign immunity of a governmental unit with respect to fifty-nine (59) provisions of Title 11. *Id.* Included in the enumerated provisions are sections 105 and 363 of the Code. *Id.* Governmental unit is defined in the Bankruptcy Code as the following:

> [t]he term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27).

Texas argues that New GM has not shown that it has abrogated sovereign immunity.

[New GM] contend[s] that the Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. Dk. 14826-1 at ¶ 14; App'x 40 ("This Court has jurisdiction over the Motion, the MPA, and the 363 Transaction pursuant to 28 U.S.C.§§ 157 and 1334."). But neither §§ 157 nor 1334 are among the list of enumerated sections in the Bankruptcy Code for which Congress abrogated sovereign immunity.

(Response at 6-7.) Texas is correct to note that section 106(a) does not include sections 157 and 1334 in its enumeration of sections where a governmental unit has abrogated sovereign immunity. *See* 11 U.S.C. § 106(a). Texas fails to note however, that section 106(a) provides for the abrogation of sovereign immunity with respect to provisions of Title 11, of which neither section 157 nor 1334 are a part of. Moreover, section 106(a) provides for the abrogation of sovereign immunity for section 363 of the Code, pursuant to which the Sale Order was ordered. *Id.* Therefore, Texas's argument fails because the Bankruptcy Clause abrogates Texas's sovereign immunity and Congress has expressly abrogated sovereign immunity by statute.

C. Anti-Injunction Act

Texas waived its argument that the Anti-Injunction Act applies.

**1. Legal Standard**

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "[T]he [Anti–Injunction] Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 630, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). If an injunction is "expressly authorized" then it does not run afoul of the Anti-Injunction Act. 28 U.S.C. § 2283.

**\*11** Express authorization does not require Congress to specifically mention section 2283; instead, statutory language may permit a federal court to issue injunctions against state court proceedings. *In re Parker,* 499 F.3d 616, 626 (6th Cir. 2007); *see also Mitchum v. Foster,* 407 U.S. 225, 237, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) ("[A] federal law need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception."). Two provisions of the Bankruptcy Code are relevant to the case before the Court. First, is section 105(a), which states:

[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Second, is section 363, which states in relevant part "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ...." 11 U.S.C. § 363(b)(1).

## 2. Discussion

Courts have widely affirmed that injunctions issued under bankruptcy law fall within the "expressly authorized" exception to the Anti-Injunction Act. *In re Parker*, 499 F.3d at 627; *see In re Davis*, 730 F.2d 176, 184 (5th Cir.1984) ( "[Section 105] includes the authority to enjoin litigants from pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate."); *Matter of Davis*, 691 F.2d 176, 178 (3d Cir.1982) (citing 11 U.S.C. § 105(a)) ("The Bankruptcy Code, however, is an 'expressly authorized' exception to the statute."); *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398 (9th Cir. 1970) ("In the exercise of its jurisdiction over the debtor's property, the court had power to issue injunctions and all other writs necessary to protect the estate from interference, and to ensure its orderly administration."); *In re U.S.H. Corp. of N.Y.*, 280 B.R. 330, 338 (Bankr. S.D.N.Y. 2002) ("Section 105(a) ... is an 'expressly authorized' exception to the Anti–Injunction Act."); *In re Berg*, 172 B.R. 894, 897 (Bankr. E.D. Wis. 1994) (finding section 105(a), taken together with another provision of the Code, creates "a viable exception to the Anti–Injunction Act"); *In re Baptist Med. Ctr. of N.Y.*, 80 B.R. 637, 641 (Bankr. E.D.N.Y. 1987); *In re Earned Cap. Corp.*, 393 B.R. 362, 370 (Bankr. W.D. Pa. 2008); *In re City of San Bernardino, California*, 566 B.R. 46, 62–63 (Bankr. C.D. Cal. 2017); *Huse v. Huse-Sporsem (In re Birting Fisheries, Inc.)*,

300 B.R. 489, 497 n.7 (9th Cir. BAP 2003); H.R. Rep. No. 95–959, 95th Cong., 1st Sess., at 316–17 (1977), reprinted in, 1978 U.S.C.C.A.N. 5787, 5815 (stating that section 105 is "an authorization, as required under 28 U.S.C. § 2283, for a court of the United States to stay the action of a State court"). [8] This Court similarly finds that section 363 provides an express authorization to enjoin parties to effectuate the purpose of a "free and clear" sale under section 363(f).

**\*12** Furthermore, several of the cases cited by the State of Texas pertain to the Anti-Injunction Act present in the tax code—a *different* Anti-Injunction Act. *See generally* 26 U.S.C. § 7421(a); Response at 8 (citing *United States (Internal Revenue Serv.) v. Ries*, 765 F. Supp. 3d 564, 572 (N.D. Tex. 2025); *In re John Renton Young, Ltd.*, 87 B.R. 635, 638 (Bankr. D. Nev. 1988)). The Anti-Injunction Act in the tax code lacks an exception for injunctions expressly authorized by Congress and does not apply to the interpretation or enforcement of the Sale Order. 26 U.S.C. § 7421(a).

For the above-mentioned reasons, this Court finds that the Anti-Injunction Act does not bar this Court from exercising jurisdiction over this matter.

D. Abstention

### 1. Younger Abstention

#### a. Legal Standard

*Younger* abstention refers to the principle that federal courts should generally abstain from interfering with an ongoing state court proceeding. *See Younger v. Harris*, 401 U.S. 37, 43–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The principle of abstention is premised upon "interrelated principles of comity and federalism." *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). Although originally pertaining exclusively to criminal proceedings, the Supreme Court extended *Younger* to quasi-criminal and civil contexts. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Moreover, the Court identified three conditions that must be satisfied for abstention to be mandatory "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351 F.3d at 75; *see*

*also Middlesex*, 457 U.S. at 432–23, 102 S.Ct. 2515. With respect to the first element, the word "pending" has been interpreted by courts in this Circuit to encompass only those matters where "the proceedings [were] ... initiated before any proceedings of substance on the merits have taken place in the federal court." *Tolliver v. Skinner*, 2013 WL 658079, at *13 (S.D.N.Y. Feb. 11, 2013) (quoting *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009)) (internal quotation marks omitted).

The Supreme Court further refined its holding in *Younger*, noting that the only circumstances that justify a federal court's abstention in deference to a state proceeding are (i) "ongoing state criminal prosecutions," (ii) "certain civil enforcement proceedings" and (iii) "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc.*, 571 U.S. at 78, 134 S.Ct. 584 (internal quotation marks omitted). *Younger* has not been applied outside of the "three exceptional categories' and they "define *Younger*'s scope." (*Id.* at 70, 134 S.Ct. 584.)

If the Texas Lawsuit falls into one of the "exceptional" categories, then this Court must consider whether abstention is warranted under the *Middlesex* factors. The three *Middlesex* factors are the existence of "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) ... provide[s] an adequate opportunity to raise [federal] challenges." *Sprint*, 571 U.S. at 81, 134 S.Ct. 584 (quoting *Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515).

### b. Discussion

The interpretation and enforcement of the Sale Order does not fall into any of the three categories to which *Younger* abstention is applicable.[9] This Texas Lawsuit is not a state criminal proceeding, and Texas does not argue so. The second category, certain civil enforcement proceedings, appears to be able to incorporate the Texas Lawsuit. However, the Second Circuit has explained that "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.' " *Sprint*, 571 U.S. at 79, 134 S.Ct. 584 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)).

**\*13** The Texas Lawsuit is not a criminal proceeding, but it may be a civil enforcement that is akin to one. In determining

what constitutes a civil enforcement proceeding akin to a criminal prosecution, each case cited by the Supreme Court in *Spirit* where *Younger* abstention was valid pertained to parallel proceedings closely related to criminal statutes or were "aimed at punishing a wrongful act through penalty or sanction." *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 589 (9th Cir. 2022); *see e.g.*, *Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (pertaining to state-initiated administrative proceedings enforcing state civil rights laws, noting "potential sanctions for the alleged sex discrimination"); *Middlesex*, 457 U.S. at 427, 433–34, 102 S.Ct. 2515 (involving state-initiated disciplinary proceedings against lawyer for violation of state ethics rules, noting the availability of "private reprimand" and "disbarment or suspension for more than one year"); *Moore v. Sims*, 442 U.S. 415, 419–20, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (regarding state-initiated proceeding to gain custody of children allegedly abused by their parents, noting the action was "in aid of and closely related to criminal statutes"); *Trainor v. Hernandez*, 431 U.S. 434, 435, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil proceeding "brought by the State in its sovereign capacity" to recover welfare payments defendants had allegedly obtained by fraud, a crime under applicable state law); *Huffman.*, 420 U.S. at 592, 95 S.Ct. 1200 (state-initiated proceeding to enforce public nuisance laws, which provided for "closure for up to a year of any place determined to be a nuisance," "preliminary injunctions pending final determination of status as a nuisance," and "sale of all personal property used in conducting the nuisance"). The Texas Lawsuit is a state-initiated proceeding to enforce its consumer protection laws and appears to fall within the second "exceptional category" described in *Spirit*.

With respect to the last category, the Texas Lawsuit does not fall into this category because Texas's interest in enforcing its orders and judgments is not impacted. This Court's determination regarding whether Texas can include certain allegations of Old GM's conduct does not prejudice the Texas Court from pursuing the Texas Lawsuit's attempt to hold New GM liable for its alleged violations of the DTPA for its data collection. Instead, Texas is only impacted with respect to the evidence that may be presented to the jury on two elements of what the state argues the jury may consider under the DTPA.[10] Tex. Bus. & Com. Code § 17.47(g). Texas may still present information regarding previous violations of New GM's conduct or information related to other categories permitted under the DTPA. Therefore, Texas's state courts' ability to perform its judicial function is not diminished

by this ruling. This Court expresses no view regarding the underlying allegations of the liability under the DTPA in the Texas Lawsuit. This Court's inquiry is limited to the determination whether the inclusion of certain facts of Old GM's conduct constitutes a violation of the Sale Order. Therefore, the State of Texas's interest in enforcing the orders and judgements of its courts is not implicated.

Assuming the Texas Lawsuit falls under the second "exceptional category," the *Middlesex* factors indicate that *Younger* abstention is unwarranted. In the present case, there is an ongoing state proceeding, but it is not parallel to the case before this Court. *Riggi v. Charlie Rose Inc.*, 777 F. Supp. 3d 356, 362 (S.D.N.Y. 2025) (finding that proceedings are only parallel for abstention purposes when the proceedings are "essentially the same" and there is an "identity of parties, and the issues and relief sought are the same"). The underlying claims regarding the DTPA are not before this Court and the Texas Court is not tasked with interpreting and enforcing the Sale Order. Finding that there is no ongoing state judicial proceeding parallel to this proceeding, the Court does not need to turn to the remaining two factors. However, for the sake of completeness, the remaining two factors would still encourage this Court to decline abstention. The Texas Lawsuit arguably implicates an important state interest, sufficing for the second factor, but there is not an adequate opportunity to raise federal challenges in the Texas Court. Therefore, abstention pursuant to the Supreme Court's decision in *Younger* is not appropriate.

### 2. Burford Abstention

#### a. Legal Standard

**\*14** In a seminal decision, the Supreme Court in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) identified certain circumstances in which federal court abstention was appropriate. Abstention would enable courts to "to avoid needless conflict with the administration by a state of its own affairs." 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, Federal Practice and Procedure § 4244, at 382 (3d. ed 2007). *Burford* abstention permits a court to abstain in two circumstances:

(1) when there are "difficult questions of state law bearing on policy problems of substantial important whose importance transcends the results in the case at bar"; or (2) where the "exercise of federal review of the question in a

case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

The Second Circuit identified three additional factors to assist in determining whether *Burford* abstention is appropriate: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (quoting *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998)) (internal quotation marks omitted); *see also In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 156 (Bankr. S.D.N.Y. 2010).

Furthermore, lower courts have been instructed to balance competing interests:

> [t]his equitable decision [of whether to abstain] balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the States interests in maintaining uniformity in the treatment of an essentially local problem and retaining local control over difficult questions of state law bearing on policy problems of substantial public import.

*In re New York City Off-Track Betting Corp.*, 434 B.R. at 156 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)).

#### b. Discussion

*Burford* abstention is inapplicable to this case. Similar to the plaintiffs in the *Texaco* case before Judge Jones, Texas misconstrues the purpose of *Burford* abstention. [11] This Court has not been tasked with reviewing the merits of the dispute

between New GM and the State of Texas and does not involve "difficult questions of state law" as the Court outlined in *Burford*. Moreover, although Texas claims that the exercise of federal review would be disruptive to the Texas Court's ability to establish a coherent policy, this Court is not persuaded that review would create any such result. The Texas Court can easily remove allegations regarding Old GM's conduct, and the State of Texas can maintain a coherent policy regarding its civil penalty calculations without including the conduct of a company prior to a 363 sale.

Even considering the factors enumerated by the Second Circuit, this Court finds no reason to abstain under the *Burford* abstention doctrine. The first factor focuses on "the extent to which the federal claim requires the federal court to meddle in a complex state scheme. *In re New York City Off-Track Betting Corp.,* 434 B.R. at 156 (quoting *Kshel Realty Corp. v. City of New York,* No. 01 Civ. 9039(LMM), 2003 WL 21146650, at *6 (S.D.N.Y. May 16, 2003).) When a Court may limit its review of a state regulatory structure to federal law, this factor will generally not weigh in favor of abstention. *See In re New York City Off-Track Betting Corp.,* 434 B.R. at 156. In this case, this Court is able to limit its review to the Sale Order and avoid making determinations of state law. Therefore, this factor does not weigh in favor of abstention.

**\*15** The second and third factors also do not weigh in favor of abstention. There is no need to give a "debatable construction" to the DTPA, as this Court's review is limited to the Sale Order. The subject matter of the litigation is not typically one of state concern. Bankruptcy law is in the exclusive purview of federal courts, and this Court is the best positioned to rule on matters concerning the Sale Order.

Therefore, abstention pursuant to the Supreme Court's decision in *Burford* is not appropriate.

### 3. Bankruptcy Abstention

Texas waived its argument that mandatory bankruptcy abstention applies at hearing, but still contends permissive abstention applies. The Court addresses both.

The statute governing a lower court's jurisdiction over bankruptcy cases, 28 U.S.C. § 1334, states:

(c)(1) [e]xcept with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(1)-(2). Abstention from core proceedings pursuant to section 1334(c)(1) is permissive—it is left to Court's discretion. *In re Petrie Retail, Inc.,* 304 F.3d 223, 232 (2d Cir. 2002). Abstention with respect to non-core matters pursuant to section 1334(c)(2) is mandatory. (*Id.*) In its Response, the State of Texas argued that either permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) or mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) are applicable. (Response at 14, 18.)

### i. Permissive Abstention

#### 1. Legal Standard

In deciding whether a court should exercise permissive abstention, courts have identified twelve factors that may be considered:

(1) the effect or lack thereof on the efficient administration of

the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 4747785, at *14 (Bankr. S.D.N.Y. Aug. 4, 2015) (citing *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003). "Not all of these factors need be applied, however, although the balance should be heavily weighted in favor of the exercise of jurisdiction." *In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y. 2009) (internal citations and quotation marks omitted). Abstention is warranted only in a few "extraordinary and narrow exceptions" because federal courts have a "virtually unflagging obligation ... to exercise jurisdiction given to them." *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 513 (S.D.N.Y. 2015) (cleaned up).

**\*16** Furthermore, the movant, in this case the State of Texas, bears the burden of establishing that permissive abstention is warranted. *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021). "[T]he policy of this district does not favor abstention in matters involving court's interpretation of its own orders. *In re U.S.H. Corp. of New York*, 280 B.R. at 338. "[A] bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders ... therefore, should not

abstain from doing so." *Id.* (quoting *In re Texaco, Inc.*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995)).

### 2. Discussion

Permissive abstention is also unwarranted. Permissive abstention is warranted when a case state law issues or unsettled questions of state law are pervasive in a case. *U.S.H. Corp. of New York*, 280 B.R. at 337. However, this district's policy does not favor abstention involving a court's interpretation of its own orders. *Id. at 338*; *In re Texaco Inc.*, 182 B.R. at 947. Additionally, comity does not weigh in favor of abstention because it is "not strained when a federal court cuts off state proceedings that entrench upon the federal domain." *In re Texaco Inc.*, 182 B.R. at 947 (quoting *In re Pan American Corp.*, 950 F.2d 839, 847 (2nd Cir.1991)) (internal quotation marks omitted). Because the Court may decide whether the Texas Lawsuit violates sections 105 and 363 of the Bankruptcy Code without the need to decide issues of state law, this Court has no reason to abstain.

### ii. Mandatory Abstention

#### 1. Legal Standard

With respect to mandatory abstention under section 1334(c) (2), abstention applies only when "*each* of the conditions set forth in that subsection is satisfied." *In re Residential Cap., LLC*, 519 B.R. 890, 902 (Bankr. S.D.N.Y. 2014) (emphasis in original); *see also Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.)*, 628 F. Supp.2d 432, 445 (S.D.N.Y. 2008) ("A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements") (citation and internal quotation marks omitted).

The conditions are:

> (1) the motion was timely brought; (2) the proceeding in federal court is based upon a state law claim; (3) the proceeding is related to a bankruptcy proceeding, but does not arise under Title 11 or arise in a Title 11 case; (4) section 1334 is the sole basis for federal jurisdiction; (5) an action is

commenced in state court; and (6) the action can be timely adjudicated in state court.

*Allstate Ins. Co. v. Ace Sec. Corp.*, No. 11 Civ.1914 (LBS), 2011 WL 3628852, at *6 (S.D.N.Y. Aug. 17, 2011) (citation and internal quotation marks omitted). The burden is on the moving party to satisfy each required element. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003).

### 2. Discussion

Mandatory abstention applies only to an action "related to a case under title 11" and not an action "arising under title 11 or arising in a case under title 11 ...." 28 U.S.C. § 1334(c)(2). Having already determined that the Motion falls within this Court's "arising in" jurisdiction, mandatory abstention is inapplicable. Each factor must be met for abstention to be mandatory and having found that one factor has not been met, the Court does not reach the remaining factors. *See In re Residential Cap., LLC*, 519 B.R. at 902.

### 3. Texas's Allegations Constitute Successor Liability and are Barred by the Sale Order

The Sale Order provides for the sale of Old GM's assets free and clear, in other words, with no successor liability. (*See* Sale Order, ¶¶ AA, 7-9, 46-48 (Purchased Assets were transferred free and clear, without successor liability).) Furthermore, the Second Circuit held that the "Sale Order's free and clear provision bars punitive damages claims under a theory of successor liability." *In re Motors Liquidation Co.*, 943 F.3d 125, 133 (2d Cir. 2019). The "Sale [Order] reflect[s] ... that New GM did not contractually assume claims for punitive damages based on Old GM's conduct." *Id.* at 132. Theories of successor liability are the "paradigmatic example" of claims barred by a sale order. *In re Motors Liquidation Co.*, 531 B.R. 354, 359 (Bankr. S.D.N.Y. 2015), *as corrected* (Aug. 10, 2015). This Court has also previously held that purchases of assets "cannot be placed at risk of liability for claims based on seller conduct premised on the notion that the claims are not exactly for 'successor liability.'" *Id.* Successor liability claims derive from the liability of the predecessor entity. *In re Motors Liquidation Co.*, 590 B.R. 39, 63 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019), and *aff'd*, 792 F. App'x 28

(2d Cir. 2019), and *aff'd*, 957 F.3d 357 (2d Cir. 2020); *see, e.g.*, *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) ("[S]uccessor liability is not a separate cause of action but merely a theory for imposing liability on a defendant based on the predecessor's conduct.") (internal quotation marks omitted); *see also Tindall v. H & S Homes, LLC*, No. 10-CV-044 (CAR), 2012 WL 369286, at *2 (M.D. Ga. Feb. 3, 2012); *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 920 (Bankr. W.D. Tex. 1995), *vacated on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998).

**\*17** Texas is correct that independent claims based on New GM's conduct are not barred by the Sale Order. *In re Old Carco LLC*, 636 B.R. at 360; *In re Motors Liquidation Co.*, 457 B.R. 276, 288–89 (Bkrtcy.S.D.N.Y. 2011). However, an attempt to hold New GM liable for the acts of Old GM is not an independent claim, violates the Sale Order, and constitutes a form of successor liability.

Texas's claims against New GM are not wholly independent to the extent that it seeks a civil penalty based on the conduct of Old GM. Even if the underlying claim to establish liability under the DTPA is wholly independent, Texas destroys the claim's independence by seeking to base the civil penalty, even if only in part, on Old GM's conduct and merely disclaiming that Texas is not seeking successor liability is not a remedy. The Texas Lawsuit cannot be wholly independent if the conduct of Old GM is used to determine the extent of liability of New GM.

Moreover, this Court has conclusively stated that New GM is not a successor in interest to Old GM. *In re Motors Liquidation Co.*, 549 B.R. 607, 613 (Bankr. S.D.N.Y. 2016) (explaining that "the record in this bankruptcy case and the prior decisions of this Court make it abundantly clear that New GM is *not* a successor in interest to Old GM" (emphasis in original)).

This Court is not persuaded by Texas's argument that punitive damages and civil penalties are meaningfully different in the context of asserting successor liability and violation of the Sale Order. [12] Although Texas is correct that the Bankruptcy Code makes civil penalties nondischargeable, section 523(a)(7) only applies to individual debtors—thus it is not applicable to this matter. Furthermore, it is not clear why the fact that a civil penalty is only available to the government creates a difference so great that civil penalties cannot be analogized to punitive damages. In fact, the cases Texas cites for this point appear to show that civil penalties

and punitive damages are analogous. Texas cites *Austin v. United States*, 509 U.S. 602, 610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), to argue that the purpose of a civil penalty is not merely remedial, but it also serves as a punishment with either a retributive or deterrent purpose. Response at 29-30. The same is true of punitive damages. "Punitive damages are awarded for the purpose of deterrence and retribution." *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 220 (E.D.N.Y. 2004); *see also Smith v. Wade*, 461 U.S. 30, 54, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("Punitive damages are awarded in the jury's discretion to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." (citing Restatement (Second) of Torts § 908(1) (1977)) (internal quotation marks omitted)). While punitive damages and civil penalties are not identical, this Court does not see why this Court's prior rulings regarding punitive damages are not applicable in the context of successor liability claims.

### 4. Texas's Statutory Methodology for Determining Civil Penalties Violates Section 363(f)

The State of Texas argues that its methodology for the calculation of civil damages is not a "claim" against the New GM. (Response at 26.) Relying on the definition of a "claim" under the Bankruptcy Code, Texas again claims that its statutory method of calculating civil penalties is not a right to payment that arose before the filing of the bankruptcy petition. *See* 11 U.S.C. § 101(5).

**\*18** The DTPA provides for liability once a violation of the DTPA has occurred. Tex. Bus. & Com. Code § 17.46(a). Following the determination that a violation has occurred, the DTPA authorizes penalties of not more than $10,000 for each violation. (*Id.* at § 17.47(c).) Texas contends that a jury may use the information about Old GM and similarly situated automobile manufacturers to determine the amount of civil penalties necessary to prevent the New GM from committing future crimes. (Response at 32.) The DTPA provides that:

(g) [i]n determining the amount of penalty imposed under Subsection (c), the trier of fact shall consider:

(1) the seriousness of the violation, including the nature, circumstances, extent, and gravity of any prohibited act or practice;

(2) **the history of previous violations**;

(3) the amount necessary to deter future violations;

(4) the economic effect on the person against whom the penalty is to be assessed;

(5) knowledge of the illegality of the act or practice; and

(6) **any other matter that justice may require**.

Tex. Bus. & Com. Code § 17.47(g) (emphasis added). Section 17.47(g)(2) of the DTPA creates liability for the past conduct of a company, in this case Old GM, without having to assert a direct claim for successor liability.

The Sale Order provides the sale of "the Purchased Assets free and clear of liens, claims, encumbrances, and other interests, ... including rights or claims ... based on any successor or transferee liability ...." (Sale Order ¶ AA.) The term "claim" is defined in the Sale Order as "having the meaning ascribed to such term in section 101(5) of the Bankruptcy Code," *Id.* ¶ 71, but the term "interest" is not, *see* Sale Order. The Sale Order further provides that the assets are sold free and clear of "other interests of any kind or nature whatsoever," which includes rights based on any theory of successor or transferee liability. (Sale Order ¶¶ BB, 7, 10.)

A claim includes "all legal obligations of the debtor ... will be able to be dealt with in a bankruptcy case" and is invested with the "broadest possible definition." *In re Chateaugay Corp.*, 53 F.3d 478, 496 (2d Cir. 1995) (quoting H.R. Rep. No. 95–595, at 310 (1977)). The Bankruptcy Code defines a "claim" as either:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The Bankruptcy Code permits a debtor-in-possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate ...." 11 U.S.C. § 363(b)(1). Section 363 of the Code permits the sale of assets "free and clear of any interest in such property of an entity other than the estate" if one of the enumerated factors is present. 11 U.S.C. § 363(f). However, the Bankruptcy Code does not define "interest in property" or delineate what "claims fall within the ambit of interests." In re Motors Liquidation Co., 829 F.3d at 154 (internal quotation omitted).

Courts have wrestled with the definition of "interests" in property and have addressed this issue on a "case-by-case basis." In re PBBPC, Inc., 484 B.R. 860, 867 (B.A.P. 1st Cir. 2013). As a baseline, section 363(f) permits the sale of property free and clear of in rem interests in the property. In re Motors Liquidation Co., 829 F.3d at 155; see In re Trans World Airlines, Inc., 322 F.3d 283, 288 (3d Cir. 2003). However, many courts have adopted a "broader definition that encompasses other obligations that may flow from ownership of the property." 3 Collier on Bankruptcy ¶ 363.06[1]; In re Trans World Airlines, Inc., 322 F.3d 283, 289 (3d Cir. 2003) (noting there is a "trend" towards a more expansive reading of the term "interests in property"); see Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252 (3d Cir. 2000) (finding that affirmative defenses of setoff, recoupment, and other contract defenses were constituted "interests" under section 363(f) and the free and clear sale extinguished the affirmative defenses).

*19 Recognizing that the scope of the phrase "interest" in property is difficult to define, "interests in property" includes obligations that are connected to, or arise from, the property being sold. See In re Leckie Smokeless Coal Co., 99 F.3d 573, 582 (4th Cir. 1996). Additionally, the Second Circuit has held that successor liability claims "can be 'interests' when they flow from a debtor's ownership of transferred assets." In Matter of Motors Liquidation Co., 829 F.3d at 155. And here, the State of Texas seeks to impose obligations under the DTPA which flow from New GM's purchase of the Purchased Assets, in violation of the Sale Order.

Although Texas is correct that its underlying lawsuit seeks to impose liability under the DPTA for the acts of New GM alone, Texas also seeks the right to pursue additional civil penalties for conduct of Old GM arising exclusively from the assets prior to the 363 Sale. As in Trans World Airlines and in Leckie, the assets of the debtor, here Old GM, give rise to the liability sought. But for the Purchased Assets, there is

no link between Old and New GM. Therefore, the pursuing New GM for penalties arising from the conduct of Old GM violates section 363(f) of the Bankruptcy Code because the civil penalty constitutes the incurrence of an obligation from the Purchased Assets that is an "interest" that was expunged by the Sale Order.

The plain text of section 363(f) provides that a trustee or debtor-in-possession may sell estate property "free and clear of any interest in such property ...." 11 U.S.C. § 363(f). The argument that the State of Texas asserts under DTPA requires the opposite. Allowing New GM to be held liable for the acts of Old GM would squarely defeat the purpose of section 363(f). Although neither party has provided briefing on the issue, the plain language of section 363(f) makes clear that the purpose of the section is to cleanse the assets of liabilities to maximize the value of the assets. See In re WBQ P'ship, 189 B.R. 97, 108 (Bankr. E.D. Va. 1995). There is no doubt that a buyer would discount its purchase price if the buyer would be liable for all acts of seller in perpetuity, creating a chilling effect on the marketing process. Id.; see In re All Am. of Ashburn, Inc., 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986); Forde v. Kee–Lox Mfg. Co., 437 F. Supp. 631, 633–34 (W.D.N.Y. 1977), aff'd on other grounds, 584 F.2d 4 (2d Cir.1978).

Outside of the bankruptcy context, Texas is free to pursue policies it believes will deter violations of its consumer protection laws. However, when bankruptcy law applies, Texas must contend with federal law and the interest of creditors who would otherwise be prejudiced by the imposition of penalties. In re WBQ P'ship, 189 B.R. at 108. Accordingly, because the Second Amended Complaint seeks to use the DTPA to impose liability on New GM for the past conduct of Old GM, Texas's asserted statutory methodology for determining civil penalties violates section 363(f) of the Bankruptcy Code because the liability constitutes an "interest" arising from the Purchased Assets.

### 5. Texas Does Not Assert Independent Claims

#### a. Legal Standard

In light of the Sale Order, permissible allegations against New GM must include only "truly independent claims based solely on New GM's wrongful conduct [to] pass through the bankruptcy gate as Independent Claims." Motors, 585 B.R. at 722-23 (internal citation and quotation marks omitted).

*In re Motors Liquidation Company,* --- B.R. ---- (2025)

Deciding a similar question of law, this Court previously stated:

> The Court emphasizes that its analysis here applies only to claims based solely on *New GM's alleged wrongful conduct*. It is not acceptable, as the Pitterman Complaint does in several paragraphs, to base allegations on generalized knowledge of both Old GM and New GM. To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct. The Pitterman Plaintiffs' counsel acknowledged during oral argument that the current complaint crosses the line, basing the purported independent claims on conduct of both Old GM and New GM. Such allegations are not permissible.

**\*20** *In re Motors Liquidation Co.,* 568 B.R. 217, 231 (Bankr. S.D.N.Y. 2017), *aff'd*, 590 B.R. 39 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019), and *aff'd*, 792 F. App'x 28 (2d Cir. 2019), and *aff'd*, 957 F.3d 357 (2d Cir. 2020) (emphasis in original).

**b. Discussion**

The allegations levied by the State of Texas against New GM are not wholly independent because the penalty to be awarded depends, at least in part, on the prior bad conduct of Old GM. Texas seeks to introduce at times graphic stories regarding Old GM's conduct including: settlement of a lawsuit with Ralph Nader in 1971 for invasion of privacy, deaths related to fuel tank fires from GM vehicles including the immolation of Shannon Mosley in 1989, the McGee Family in 1991, and the Anderson Family in 1993, and deaths resulting from the ignition switch scandal. Second Am. Pet. ¶¶ 150-58, 182-264. Texas includes a photo of a burning vehicle with the caption "illustrative of what could happen to consumers trapped in a GM inferno." *Id.* ¶.187. The State of Texas also alleges past violations of environmental standards from the 1990s. This is a transparent attempt to hold New GM liable for the prior bad

acts of Old GM and is barred by the Sale Order. None of these alleged prior acts of Old GM relate to the conduct of New GM alleged to have started in 2011, years after it acquired assets of Old GM.

Additionally, Texas's reliance on this Court's decision in *Motors* is misplaced. Texas correctly notes that this decision pertains to groundwater contamination allegations from road salt that migrated before 363 Sale. *In re Motors Liquidation Co.,* 585 B.R. at 715-16. Texas is further correct that this Court ruled that the Sale Order permits claims that are wholly based on New GM's conduct. *Id.* at 726. However, Texas appears to misinterpret the holding of this case. This Court permitted claims to go forward based on allegations that New GM *continued* to contaminate the groundwater, while claims alleging conduct of Old GM were barred. *Id.* at 725-27. The *Motors* plaintiffs were also required to strip their request for exemplary damages based on the conduct of Old GM, further demonstrating that alleging the past bad acts of Old GM is impermissible. *Id.* at 716.

Accordingly, allegations pertaining to conduct wholly of Old GM must be struck from the Seconded Amended Petition and allegations solely involving conduct of New GM may proceed.

6. Imputation of Old GM's Acts on New GM

Texas seeks to impute knowledge of Old GM's prior unrelated bad acts to New GM because New GM "inherited the debtor's knowledge about Old GM's history of prior violations," or were "aware of Old GM's prior violations ... because they should have disclosed liabilities and debts in the Ch. 11 proceedings," or "because they [were] matters of public record ...." (Response at 33.) This Court has held that imputation must be based on "identified individuals or identified documents." *In re Motors Liquidation Co.,* No. 09-50026(REG), 2015 WL 11070293, at \*2 (Bankr. S.D.N.Y. Dec. 4, 2015), *judgment entered*, 549 B.R. 607 (Bankr. S.D.N.Y. 2016). This Court has also previously held that New GM is "not [ ] liable to the States for any violations of consumer protection statutes that took place before the 363 Sale." *Id.* at \*4. Furthermore, this Court permitted a claim for punitive damages arising from a

**\*21** post-Sale accident involving vehicles manufactured by Old GM

with the Ignition Switch Defect ... ***to the extent—but only to the extent —it relates to an otherwise viable Independent Claim and is based solely on New GM conduct or knowledge***, including (a) knowledge that can be imputed to New GM under the principles set forth in the Decision and this Judgment (and under nonbankruptcy law), and (b) information obtained by New GM after the 363 Sale.

*Id.* at *2 (emphasis added).

Yet, Texas has failed to identify specific documents or individuals from which to impute knowledge to New GM. The claims detailed in section two of the Second Amended Petition do not allege new information obtained by New GM after the 363 Sale and do not attempt to impute knowledge to New GM. Texas has also failed to demonstrate how the conduct of Old GM relates or otherwise constitutes a viable independent claim against New GM, especially considering the claims do not relate to the alleged "mass surveillance" program Texas claims New GM is allegedly responsible for.

Therefore, Texas fails to demonstrate that scienter and knowledge of Old GM's history of prior violations can be imputed on New GM.

### 7. Old GM as a Comparator

The State of Texas attempts to end run the Sale Order by claiming it merely seeks to use Old GM's conduct as a comparator to enable a jury to decide what type of penalty is necessary to deter future bad conduct. (Response at 31-32.) Yet, Texas does not allege similar conduct by other similarly situated corporations, like BMW, Stellantis, or Ford as mentioned in its Response. (*Id.* at 32.) Instead, Texas seeks to use Old GM's bad conduct to paint New GM in a bad light to a jury. Texas seeks to introduce evidence of anti-consumer conduct in the 1940s and 50s, surveilling Raph Nader in the 1960s, product liability issues in the late 20th Century, as well as information about Old GM's bankruptcy filing. (Second Am. Pet. ¶¶ 150-68, 174-221, 259-60.) Allegations like "GM was not born innocent" is indicative of what Texas transparently seeks to do through its allegation of successor

liability. This Court barred the State of Arizona from using identical language in a prior suit against New GM. *See In re Motors Liquidation Co.*, 541 B.R. at 137 n.94 (vacated and remanded in part on other grounds). It seeks to impose a form of successor liability in spite of the Sale Order. New GM is not a successor in interest and this Court has found that New GM, "*was* born innocent, and the focus must be instead on its own knowledge and acts after it was born." *Id.* (emphasis in the original).

Therefore, this Court, utilizing its gatekeeping function, bars Texas from proceeding with such allegations until it modifies the Second Amended Complaint to cure its violations of the Sale Order.

### 8. Justice Does Not Require a Jury to Consider Old GM's History

The State of Texas's last argument is meritless. It does not raise any new allegations, and for the aforementioned reasons, Texas is barred from asserting claims against New GM premised on the prior bad acts of Old GM.

### III. CONCLUSION

For the reasons explained above, this Court finds that it possesses jurisdiction over the Sale Order because the interpretation and enforcement of the Sale Order is within the Court's "core" jurisdiction. The Court further finds that sovereign immunity does not prevent this Court from exercising jurisdiction. Similarly, the Anti-Injunction Act, *Younger*, *Burford*, and both permissive and mandatory bankruptcy abstention do not require or encourage this Court to abstain. Moreover, New GM is not liable for the bad acts of Old GM in the context of civil penalties under the DTPA. The Court finds that the statutory scheme for calculating damages relying on Old GM's prior bad acts constitutes a form of successor liability, which is barred by the Sale Order. Texas has failed to demonstrate its usage of Old GM's acts nonetheless constitute an independent claim, that it uses Old GM as a comparator, has imputed knowledge of Old GM's conduct to New GM, or that justice requires a jury to hear these bad acts.

**\*22** Accordingly, the State of Texas must strike allegations relating to the conduct of Old GM in the Seconded Amended Complaint.

IT IS SO ORDERED.

**All Citations**

--- B.R. ----, 2025 WL 2911767

---

## Footnotes

1    Certain allegations contained in the Second Amended Complaint (defined below) go as far back as the 1940s.

2    *See* ECF No. 3062 (Transcript of Hearing on July 2, 2009, at 116:11-13) ("[The State of Texas] filed a limited standalone objection. We've reached an agreement with the debtors, subject to entry of that agreement on the record, we will be prepared to withdraw.").

3    Referring to the factors enumerated in section 17.47(g) of the DTPA.

4    Defined in the Response.

5    *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013),

6    *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

7    *In re Motors Liquidation Co.*, 943 F.3d 125 (2d Cir. 2019).

8    The Supreme Court has noted that the original version of the Anti-Injunction Act was amended in 1874 to allow federal courts to enjoin state-court proceedings which interfere with the administration of a federal bankruptcy proceeding. *Vendo Co.*, 433 U.S. at 640, 97 S.Ct. 2881 (1977).

9    Additionally, at least one court has held that *Younger* abstention does not "apply to actions that Congress has expressly authorized, or where the injunction is necessary for the federal court to carry out its jurisdiction or enforce its own judgments." *In re Lacher*, 669 B.R. 548, 561 (B.A.P. 9th Cir. 2025).

10   At the hearing, Texas argued that sections 17.47(g)(3) & (6) of the DTPA permitted it to put forth evidence of Old GM's conduct in the Texas Lawsuit.

11   *In re Texaco, Inc.*, 668 B.R. 1, 26 (Bankr. S.D.N.Y. 2025).

12   Although Texas claims that the Court's rationale regarding punitive damages is not applicable to civil penalties, Texas later relies on this Court's prior rulings on punitive damage issues to argue that knowledge may be imputed to new GM.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.