## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

IN RE: TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:
ECONOMIC LOSS TRACK CASES AGAINST
VOLKSWAGEN DEFENDANT

Case No. 1:15-md-02599-FAM

FILED BY _____ D.C.

JUN 0 1 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## REPORT BY THE SETTLEMENT SPECIAL ADMINISTRATOR ON THE IMPLEMENTATION OF THE OUTREACH PROGRAMS PURSUANT TO THE VOLKSWAGEN SETTLEMENT AGREEMENT

## STATUS REPORT NO. 33 FILED MAY 29, 2026

The Settlement Special Administrator of the Volkswagen Settlement Agreement (the "Settlement Agreement") submits this Report to the Court to provide updates and insights into the ongoing efforts of the Outreach Program under the Settlement Agreement[1].

As explained in further detail below, the Outreach Program has been designed through discussion with the Parties, the National Highway Traffic Safety Administration, and the Independent Monitor of the Takata recalls, to utilize techniques and approaches not previously applied in the recall industry. The Program focuses on personalized, targeted direct campaigns across traditional and non-traditional channels, with the goal of maximizing the recall remedy completion rate to the greatest extent practicable given the applicable provisions of the Settlement Agreement. To this end, the Settlement Special Administrator and Outreach Program vendors regularly confer and communicate with the automobile manufacturers to coordinate concerted

---

[1] The data and information contained in this report is generally as of mid-Q2 2026.

efforts to ensure that outreach to affected vehicle owners is conducted as efficiently and effectively as possible and to continually improve the overall process.

## 1. **Direct Outreach**

### a. Current and Future Campaigns in Direct Outreach to Affected Consumers

The Settlement Special Administrator and Outreach Program vendors continue to deploy various direct outreach activities previously discussed in prior Status Reports, including specific thematic materials by mail and email (including "new owner" creative, "missed appointment" creative, and "mobile repair" creative) that have traditionally performed best in terms of response, appointment, and remedy rates, each of which has been described extensively in prior Reports.

Additionally, the Settlement Special Administrator and Outreach Program vendors have also developed an urgency-driven creative mailer targeting vehicle owners with unremedied Takata inflators. The mailer features stark, graphic messaging warning recipients that the longer they delay the Recall Remedy, the greater the likelihood that their defective airbag inflator will explode upon deployment in a crash, shooting sharp metal fragments at the driver and passengers. A particularly striking design element is the physical format of the piece itself, folded to 9"x9" for mailing, it unfolds to a dramatic 17"x17", intentionally simulating the perspective of a deploying airbag from the driver's seat to maximize its visual and psychological impact. The call to action directs owners to schedule their free Recall Remedy, reinforcing that the Remedy is both accessible and urgent.

The Settlement Special Administrator and Outreach Program vendors also plan to send targeted mailers to vehicle owners who have not yet completed the recall remedy. These mailers will employ "mob mentality" messaging by highlighting that the overwhelming majority of affected individuals have already had the repair performed, emphasizing to recipients that their

vehicle remains at risk due to an unremedied inflator. This approach leverages the psychological principle that people are more likely to take action when they feel they are falling behind the crowd and do not want to be left out.

Lastly, the Settlement Special Administrator and Outreach Program vendors have also developed a perforated letter delivered via FedEx envelope. Recognizing that traditional mailers can easily be overlooked or discarded, the decision to use FedEx packaging is a deliberate strategy to cut through mailbox clutter, as recipients are far more likely to open a FedEx envelope, associating it with important and time-sensitive correspondence. The letter itself is formatted as an Urgent Recall Notice, co-branded with NHTSA and the U.S. Department of Transportation to convey authority and credibility, and clearly communicates the serious risks of death or injury posed by an unrepaired airbag inflator. A practical feature is the perforated appointment reminder at the bottom of the letter, which recipients can tear off and keep to record their scheduled dealership appointment, reducing the likelihood that they will delay or forget to follow through. The call to action directs owners to schedule their Recall Remedy appointment via both a URL and a QR code.

### b. Continued Efforts with State Departments and Other Entities

As reported, the Settlement Special Administrator and the automobile manufacturers have engaged various state departments to endorse the deployment of letters on behalf of their respective states to inform affected citizens of the Takata inflator recall and its severity, as well as to provide information on how to have the Recall Remedy completed.[2] These efforts have resulted in some of the highest response rates and remedy rates of any communications in the Outreach Program.

---

[2] Louisiana, Michigan, New York, Mississippi, Alabama, Kentucky, Wisconsin, Minnesota, North Carolina, Virginia, Arkansas, Florida, Georgia, Pennsylvania, South Carolina, Ohio, Nebraska, Tennessee, Texas, Idaho, California, Puerto Rico, Colorado, New Mexico, Massachusetts, Nevada, Arizona.

That several states have now participated in as many as six rounds of this outreach is encouraging, reflecting the significant success of these letters in generating repairs. The Settlement Special Administrator and the automobile manufacturers continue to contact state departments to seek their cooperation in this valuable and effective effort.

c. Overall Deployment and Response

A total of 28,185,445 outbound deployments across all available channels have been made by the Settlement Special Administrator and Outreach Program vendors to affected consumers. These deployments are broken out by primary channels below:

| Channel | Volume | Total Appointments |
|---|---|---|
| Direct Mail Pieces | 8,215,610 | 39,959 |
| Emails | 4,189,040 | 1,545 |
| Outbound Calls | 3,812,503 | 47,529 |
| Digital/Facebook Impressions | 11,958,240 | 25[3] |
| Tagging[4] | 10,052 | 410 |

d. Overall Results

The Settlement Special Administrator and Outreach Program vendors have performed outreach resulting in a total of 90,763[5] appointments and "warm transfers" to facilitate consumers to schedule appointments directly with dealers, and 90,089 Recall Remedies have been completed

---

[3] Social media deployment on Facebook and other platforms is an extremely low-cost channel used primarily to keep consumer awareness and a social presence to support other outreach activities which more regularly result in appointments and repairs, such as direct mail and outbound phone calls.

[4] "Tagging" refers to the process referenced in this and prior reports, whereby the Settlement Special Administrator's Outreach Program vendors actively search for affected vehicles on the road and, when found, place recall notifications on those vehicles. As of January 1, 2025, these efforts were ceased as the specific sub-vendor used to implement tagging dropped this service. However, the Settlement Special Administrator and Outreach Program vendors continue to seek out other sub-vendors that may be able to provide the same or similar services in the future.

[5] This figure slightly exceeds the aggregate sum of the Total Appointments by Channel in the chart above because some appointments are set through other means that are more difficult to directly quantify, such as the Outreach Program Landing Page.

since the transition of outreach to the Settlement Special Administrator and Outreach Program vendors.[6]

### 2. Additional Activities and Efforts

At the end of 2021, the Settlement Special Administrator discontinued the use of earned media efforts as part of its Takata Outreach Program. Given the significant media coverage over the last several years, these earned media strategies aided in raising affected vehicle owners' awareness and understanding of the legitimacy and gravity of the Takata recalls. In ongoing consultation with the Parties and the National Highway Traffic Safety Administration, the Settlement Special Administrator and Outreach Program vendors continue to evaluate other activities to be performed in addition to and in conjunction with direct outreach to consumers.

### 3. Conclusion

The Settlement Special Administrator offers this Report to ensure that the Court is informed of the status of the Outreach Program to date. If the Court finds more information helpful, the Settlement Special Administrator stands ready to provide it at the Court's convenience.

_____/s/ Patrick J. Hron_____
PATRICK J. HRON
Settlement Special Administrator

---

[6] Considering the significant efforts put forth towards indirect outreach methods such as mass media and public relations-type activities, Status Reports provide the total number of Recall Remedies performed, irrespective of whether direct outreach had been performed on a vehicle. As previously mentioned, consumers often schedule repair appointments directly with the automobile manufacturer or their local dealership rather than by calling the Outreach Program's call center to do so. As such, the total Recall Remedy completion count presented here cannot be attributed solely to those direct activities conducted by the Settlement Special Administrator and Outreach Program vendors and exceeds the number of appointments and "warm transfers" set by Outreach Program vendors. This is also consistent with the fact that each automobile manufacturer continues significant and extensive outreach efforts beyond those activities performed by the Settlement Special Administrator in the Outreach Program under the Settlement Agreement.



ORIGIN ID:LFTA
PATRICK HRON
(337) 269-0052

104 AMARYLLIS DRIVE

LAFAYETTE, LA 70503
UNITED STATES US

TO ANGIE E. NOBLE, CLERK OF COURT
WILKIE FERGUSON, JR. US COURTHOUSE
400 NORTH MIAMI AVENUE

MIAMI FL 33128
(305) 523-5100

SHIP DATE: 28MAY26
ACTWGT: 0.50 LB
CAD: 26343400/INET4535

BILL SENDER

INV:
PO:                    REF:
                       DEPT:

58KJ3/A906/484B

FedEx Express

E

J261026012001uv

TRK#
0201   8723 5044 0991                    33128

S6 MPBA                                FL-US  MIA

MON - 01 JUN 10:30A
MORNING 2DAY

**REC'D BY_____D.**

JUN - 1 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

---

After printing this label:

**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**

1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.