**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| **IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION** | MDL No. 2599 |
| | Master File No. 15-MD-02599-MORENO |
| This Document Relates to <u>FCA US LLC</u> | |

**<u>PLAINTIFFS' MEMORANDUM ON CLASS CERTIFICATION</u>**

Plaintiffs submit this memorandum pursuant to the Court's Order (ECF No. 4909) directing the parties to address whether the Court's recent decision granting Mercedes-Benz USA, LLC's motion for reconsideration—in which the Court concluded that North Carolina does not permit a class-wide presumption or inference of reliance and that reliance is therefore an individualized issue under North Carolina law, which precludes certification of a class of North Carolina purchasers (ECF No. 4897)—affects the classes certified against FCA US, LLC.

The Court's recent decision does not require the Court to decertify the entire multistate class against FCA, which includes purchasers in North Carolina, Colorado, Utah, West Virginia, and Wisconsin. Rather, application of the ruling to FCA only requires the Court to remove the unnamed North Carolina purchasers from the certified multistate fraud class. The other four states, as this Court has already held, permit a class-wide inference of reliance. (ECF No. 4688 at 7 & n.2.) For purchasers in those four states, reliance remains a common question answerable with class-wide proof, satisfying predominance. And the named plaintiff, Laquintha O'Neal, may continue to represent those purchasers even though her own fraud claim arises under North Carolina law, because her success on that claim will dictate success under the laws of the remaining states. The Court should therefore narrow the certified fraud class to exclude all other North Carolina purchasers, but otherwise maintain it as certified.

In the alternative, if the Court concludes that its recent decision on reconsideration does not permit the narrowed class to proceed, the Court should, in accordance with binding precedent, provide the narrowed class with sixty days for a class member to become a named Plaintiff through intervention or amendment of the Complaint.

## BACKGROUND

This action concerns FCA vehicles with defective, dangerous airbags. Because of a uniform design flaw—the use of a propellant made of ammonium nitrate in the airbag's inflator—these defective airbags, far from enhancing safety, can deploy aggressively or rupture like a grenade, spraying metal shrapnel toward vehicle occupants. FCA knew about this jarring defect before its vehicles were sold. But switching to a safer, defect-free airbag, especially mid-production cycle, would have been costly and delayed the production and sale of its vehicles. So, FCA stuck with its defective airbags. But it never disclosed the defect to purchasers during the class period. Rather, it uniformly marketed its vehicles as safe, even promoting the defective airbags as safety features. FCA only changed course when the National Highway Traffic Safety

Administration ("NHTSA") forced it to recall over seven million vehicles. The consequences of FCA's conduct have been catastrophic, resulting in reports of more than *50* ruptures and tragic injuries to occupants, including deaths, brain damage, and blindness.

Plaintiff Laquintha O'Neal purchased an FCA vehicle—a 2012 Dodge Charger—with these defective airbags and alleges that FCA's deceptive and fraudulent conduct caused her to overpay for her vehicle.  (ECF No. 4024 ¶¶ 81.) Ms. O'Neal seeks to recover economic losses in this action, on behalf of herself and others similarly situated. (*Id.* ¶ 85.)

In the Second Amended Consolidated Class Action Complaint, Ms. O'Neal asserts claims for fraud under North Carolina law and violation of the North Carolina Unfair and Deceptive Trade Practices Act.  (*Id.* ¶¶ 174–89, 545–67.)  Numerous other Plaintiffs brought claims against FCA under the laws of Arizona, California, Florida, Illinois, Maryland, Massachusetts, Michigan, New Jersey, New York, Ohio, Pennsylvania, South Carolina, and Texas, but the Court granted FCA summary judgment on those claims, concluding that that applicable state law did not permit the recovery of damages.  (ECF No. 4471.)

After this Court permitted Plaintiffs to assert claims on behalf of class members under the law of different states, based on the Eleventh Circuit's intervening decision in *In re Zantac (Ranitidine) Products Liab. Litig.*, No. 21-10335, 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022) (ECF No. 4504), Plaintiffs filed a Supplement to the Second Amended Consolidated Class Action Complaint, in which Ms. O'Neal sought to represent class members who purchased FCA Class Vehicles[1] in Georgia, North Carolina, Colorado, Utah, West Virginia, and Wisconsin and reside in the same respective state (ECF No. 4521).

Plaintiffs then moved for certification of two classes—a fraud class including purchasers from the six states, and a statutory class including purchasers from North Carolina.  (ECF No. 4608 at 1.)  At class certification, the evidence that Plaintiffs presented included the following:

- All Class Vehicles came equipped with defective airbag inflators manufactured by Takata Corporation or its related entities.  (*Id.* at 4-6, 13-19.)
- Takata's defective airbags have been responsible for more than 400 injuries and 27 deaths worldwide.  (*Id.* at 13.)

---

[1] "Class Vehicles" are vehicles manufactured and sold by either FCA or its bankrupt predecessor, Chrysler, that came equipped with defective Takata airbag inflators, and are identified in an exhibit to Plaintiffs' motion for class certification.  (ECF No. 4608-1.)

- The uniform defect in Takata's airbags is the use of a propellant made of ammonium nitrate, an inherently unstable compound notoriously responsible for deadly industrial explosions and terrorist attacks.  (*Id.* at 4-6, 13-19.)

- Ammonium nitrate degrades over time, with exposure to heat and humidity.  (*Id.*)

- Takata airbags with ammonium nitrate will continue to be unsafe until the ammonium nitrate is removed from them.  (*Id.*)

- FCA uniformly and consistently marketed its vehicles as safe through dealerships, Monroney labels, and numerous media forms and channels, informed by its extensive consumer research confirming the importance of safety to purchasers.  (*Id.* at 6-12.)

- But FCA's engineers were aware that the Takata airbags in FCA's vehicles were defective.  FCA acknowledged the unique hazards of ammonium nitrate in vehicle standards that it issued in 2004.  (*Id.* at 19-27.)

- As early as 2003, FCA's engineers were informed that Takata's airbags could not meet ballistic specifications and expressed concerns internally about the integrity of Takata's inflators.  (*Id*. at 20-23.)

- In 2009, FCA began working with Takata on inflators that contained a drying agent or desiccant, acknowledging that inflators with non-desiccated ammonium nitrate were unsafe. (*Id.* at 25-26.)

- In 2010, FCA's engineers learned of an inflator rupture that occurred during testing at Takata.  (*Id.* at 25.)

- From 2008 through 2014, FCA's engineers monitored recalls at Honda, which used the same Takata inflators, and engaged in correspondence with other automakers in which the core design flaw was acknowledged.  (*Id.* at 26-27.)

- Plaintiffs presented expert testimony on damages from a leading authority on conjoint analysis, Professor Jean-Pierre Dubé of the University of Chicago.  (ECF No. 4344-23.)  This Court denied FCA's motion to exclude Dr. Dubé's opinions.  (ECF No. 4364.)

After substantial briefing, on June 20, 2023, the Court granted Plaintiffs' motion for class certification in a detailed 27-page order.  (ECF No. 4659.)  The Court certified a multistate fraud class, designating Michelle Gibson and Debra Johnson (Georgia) and Laquintha O'Neal (North

Carolina) as class representatives for purchasers in Georgia, North Carolina, Alabama, Colorado, Delaware, the District of Columbia, Rhode Island, Tennessee, Utah, West Virginia, and Wisconsin. (ECF No. 4659.) The Court also certified a single-state class under the North Carolina Unfair and Deceptive Trade Practices Act, with Ms. O'Neal as the representative. (ECF No. 4659 at 26.)

Several weeks later, however, the Eleventh Circuit issued *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299 (11th Cir. 2023), and upon Plaintiffs' motion (ECF No. 4663), the Court narrowed the class to remove purchasers from Alabama, Delaware, the District of Columbia, Rhode Island, and Tennessee (ECF No. 4666).  The Court also called for additional briefing on class certification and scheduled a hearing for August 8, 2023.  (ECF No. 4665.)

On August 23, 2023, the Court excluded Georgia purchasers, holding that Georgia permits a class-wide presumption of reliance only where a defendant makes uniform written misrepresentations in standardized documents received by all class members—circumstances that the Court found absent here. (ECF No. 4688 at 4–5.) At the same time, the Court reaffirmed certification of the North Carolina classes, relying on *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 518 (6th Cir. 2015), and *Pitts v. American Security Insurance Co.*, 550 S.E.2d 179, 189 (N.C. Ct. App. 2001), to conclude that class-wide proof of a material misrepresentation made in a generally uniform manner suffices to establish reliance under North Carolina law without individual issues predominating. (ECF No. 4688 at 6–7 & n.2.) These revisions left a certified fraud class of purchasers in North Carolina, Colorado, Utah, West Virginia, and Wisconsin, together with the single-state North Carolina statutory class.

FCA twice petitioned the Eleventh Circuit to review this Court's class-certification decisions, but the Eleventh Circuit denied both petitions. *See FCA US LLC v. Boyd*, No. 23-90027 (11th Cir. Nov. 1, 2023); *FCA US LLC v. Boyd*, No. 23-90017 (11th Cir. Oct. 5, 2023). So, for almost three years, a class of purchasers of FCA Class Vehicles in North Carolina, Colorado, Utah, West Virginia, and Wisconsin has been certified.

In the parallel economic-loss case against MBUSA in this MDL, the Court, adhering to its prior decisions with respect to FCA, certified a multistate fraud class and a single-state North Carolina statutory class on February 26, 2025. (ECF No. 4856.) MBUSA moved for reconsideration, and on May 19, 2026, the Court granted MBUSA's motion, holding that reliance

is an individualized issue under North Carolina law and that a North Carolina class therefore could not satisfy the predominance requirement of Rule 23(b)(3). (ECF No. 4897.)

## ARGUMENT

### I.        The Court Should Allow Ms. O'Neal To Represent The Narrowed Class.

It is well established that a "class representative must also be part of the class." *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (quotation marks omitted). As the Supreme Court has made clear, this requirement means that a class representative and class members must share the same injury and interest: "[t]o have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, ***that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents***." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) (emphasis added).

Ms. O'Neal satisfies this standard. Like every member of the certified class, she purchased an FCA Class Vehicle with the same Inflator Defect; FCA concealed that defect from her, just as FCA concealed it from every other purchaser; and she overpaid for her vehicle as a result. Her injury is identical to the injuries of every other class member, and her interest in proving that FCA knew of and failed to disclose the Inflator Defect is the same as that of every class member.

Having satisfied the injury-and-interest requirement, it is not necessary for Ms. O'Neal's claim to arise under the same body of state law as the claims of the absent members she represents. The Eleventh Circuit made that point clear in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 21-10335, 2022 WL 16729170 (11th Cir. Nov. 7, 2022). There, the court explained that "[t]he fact that the unnamed class members' injuries may have occurred in other states does not change things so long as the alleged injuries and interests are substantially the same." *Id.* at *6. A representative may stand in for unnamed members whose claims arise under a different state's law whenever "success on the claim under one state's law will more or less dictate success under another state's law." *Id.* (quoting *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018)).

Ms. O'Neal, whose fraud claim arises under North Carolina law, can represent unnamed plaintiffs whose fraud claims arise under the laws of Colorado, Utah, West Virginia, and Wisconsin, because Ms. O'Neal's success under her North Carolina claim "will more or less dictate success" under the other states' laws. *Id.* The Court necessarily reached this conclusion in certifying the original class, and nothing in the MBUSA reconsideration Order disturbed that ruling. (ECF No. 4659 at 14–21 (analyzing the law of the various states)).

Although the Court, in the MBUSA reconsideration Order, held that North Carolina does not permit the application of a class-wide inference of reliance, the other states do, as this Court also has concluded (ECF No. 4688 at 7). And even if North Carolina does not permit application of a *class-wide* inference of reliance, it does provide that "proof of circumstances from which the jury may reasonably infer the fact is sufficient in proving the element of reliance." *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648, 661 (N.C. 1992) (quotation marks omitted).

North Carolina common law, as explained below, allows the reliance element of fraud to be established by inference when a person acts in a manner consistent with having relied upon a misleading statement, omission, or some combination, regardless of *how* the message is transmitted. Thus, when Ms. O'Neal submits proof at trial of the circumstances from which the jury may reasonably infer her own reliance, that evidence—which will not differ for the entire class—will be sufficient for the jury to draw the same inference for the unnamed class members from Colorado, Utah, West Virginia, and Wisconsin.

In *Constr. Managers, Inc. of Goldsboro v. Amory*, for example, reliance was inferred because the duped person, the plaintiffs' corporate officer, "in fact" acted in a manner consistent with having relied upon the misrepresentation—he refunded monies to a company associated with the fraudster after being misinformed that the monies were an "overpayment." No. 18 CVS 1359, 2019 WL 2167311, at *14 (N.C. Super. May 17, 2019). In *Hunter v. Guardian Life Ins. Co. of Am.*, defendants sold plaintiffs a policy "using financial illustrations based on dividend payment projections that could fluctuate," but knowing, at the time of sale, that the projections would not be met. 593 S.E.2d 595, 599 (N.C. Ct. App. 2004). The court concluded that, because the plaintiffs in fact purchased the policy, it could be inferred that they were "deceived by the failure of defendants to disclose this information," satisfying the reliance element for fraud. *Id.*

Likewise, in *Rowan County*, 418 S.E.2d at 650, a school board sued a manufacturer to recover costs associated with removal of asbestos-containing ceiling plasters, and the defendant argued that "because [the school board] failed to identify a specific representation upon which it relied in selecting [the defective product] to be installed . . . , [the board] failed to prove" reliance. *Id.* at 659. The North Carolina Supreme Court's recitation of the facts resembles FCA's misrepresentations and omissions of the Inflator Defect to class members. The plaintiff presented evidence of specific representations made by the defendant about its adhesive product. *Id.* These representations were varied, speaking to different alleged qualities of the product, and appearing

6

in varied "trade literature" and "sales brochures." *Id.* at 658–60. Yet, at the same time as it was promoting the adhesive's bonding abilities, the defendant's internal documents revealed that it was aware that the product experienced sifting or dusting issues from slight "abrasion or vibration." *Id.* at 659. Internal documents further revealed that the asbestos-containing version of the adhesive likewise had blistering problems. *Id.* "Despite the existence of such internal documents, [the defendant's] sales brochures continued to promote [the product's] bonding abilities and did not mention the dusting problems. Neither did the brochures discuss potential health hazards of asbestos, of which [the defendant] was aware." *Id.*

To establish reliance, the school board proffered the testimony of its architect, who selected the adhesive products used at the school. *Id.* at 659. The architect testified on direct examination that, in his practice, he relied on a catalog called "Sweet's," as well as product literature from manufacturers, for information. *Id.* at 659–60. On cross-examination, however, the architect further admitted that he also relied on his own experience to select products. *Id.* at 660–61. Ultimately, as the court explained, the architect *never* identified "any specific representation, advertisement, or brochure that he had read . . . upon which he then relied." *Id.* at 661. Nonetheless, the court ruled that, in the circumstances of that case, reliance could be proved by inference. Specifically, those circumstances were that defendant's "promotional literature," directly and through the Sweet's catalog, targeted architects; that the Sweet's catalog was a source of information for architects; that the defendant had acknowledged that its brochures were placed in Sweet's during the relevant years; and that, although he could not identify a specific brochure, specific misrepresentation, or even specific Sweet's catalog upon which he relied, the architect had testified that he relied upon Sweet's generally in selecting the product. *Id.*

As *Amory* and *Hunter* demonstrate, North Carolina common law permits an inference of reliance based on the circumstances of a case, including a plaintiff acting in a manner consistent with the intended goal of the misrepresentation or omission. And, as *Rowan County* shows, a plaintiff's inability to recall a specific misrepresentation upon which she relied does not preclude an inference of reliance. That is true even where, as in *Rowan County*, the plaintiff admits that her decision to purchase the defective product was motivated by more than one reason.

Significantly, Ms. O'Neal will not present evidence of individualized, face-to-face interactions to prove reliance. In fact, she testified that the salesperson at the dealership did not mention airbags when she visited the dealership. (O'Neal Dep. (Ex. A) at 106:7–13). Rather, she

will present the same type of evidence that the courts in *Amory*, *Hunter,* and *Rowan County* held sufficient to establish an inference of reliance. Ms. O'Neal became interested in the vehicle and discovered that it came equipped with frontal airbags from FCA's widely disseminated, standardized messaging about the Dodge Charger. (*Id.* at 75:12–77:10; 121:6–21; 124:8–16.) Plaintiffs established at class certification that FCA's standardized messaging touted the safety and dependability of Class Vehicles without ever disclosing the existence of the Inflator Defect. (ECF No. 4608 at 6–12.) And even though Ms. O'Neal purchased the vehicle used from CarMax, the vehicle had a window sticker, just like a Monroney sticker, advertising the vehicle's safety features without disclosing the Inflator Defect. (Ex. A at 130:14–131:14; Ex. B (sticker)).

From this common evidence, along with the commonsense proposition that no consumer would knowingly purchase or pay full price for a vehicle with such a defect,[2] the "jury may reasonably infer" Ms. O'Neal's reliance under North Carolina law, *Rowan Cnty.*, 418 S.E.2d at 661, as well as draw a class-wide inference of reliance under the law of Colorado, Utah, West Virginia, and Wisconsin, as the Court already ruled (ECF No. 4688 at 7 n.7),[3] in a decision that the Eleventh Circuit twice refused to disturb. Ms. O'Neal's success on her North Carolina claim thus "will more or less dictate success" under the laws of the remaining States—all that *Zantac* and *Asacol* require. *Zantac*, 2022 WL 16729170, at *6.

---

[2] *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 987 (11th Cir. 2016) (holding that "[c]ommon sense indicates" that "a car with defective seatbelt buckles worth less than a car with operational seatbelt buckles") (internal quotation marks omitted); Eleventh Circuit Pattern Jury Instructions, Civil Cases 3.3 (2025) ("In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions.").

[3] *See also BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 110–11 (Colo. 2011) (holding that "the ignorance and reliance elements of a fraudulent concealment claim may be inferred from circumstantial evidence common to a class" and approving out-of-state decisions that had "recognized that a jury may presume reliance on a class-wide basis where there is sufficient, common evidence that the defendant concealed a material fact from class members"); *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 543 (Utah 1983). (holding that where "material misrepresentations were made to class members, at least an inference of reliance would arise as to the entire class"); *Hopper v. Jay-Bee Oil & Gas, Inc.*, No. 5:20-CV-101, 2023 WL 3696785, *3 (N.D.W. Va. Apr. 11, 2023) (holding that fraud "may be proven by circumstantial evidence" or "presumptive evidence," without "explicit evidence" or "direct and positive evidence"); *Schlosser v. Allis-Chalmers Corp.*, 271 N.W.2d 879, 884–85 (Wis. 1978) (holding that class-wide adjudication was appropriate because reliance or "intent to accept may be inferred from the . . . performance of the act," even if the representation was not the plaintiff's "sole, or even a significant, motivation in accepting").

Because the MBUSA reconsideration Order is confined to North Carolina purchasers, so too should be its impact on the FCA Class. Although Plaintiffs maintain that the Court reached the correct conclusion the first time, if the Court applies the MBUSA reconsideration Order to the FCA Class, only the unnamed North Carolina purchasers should be excluded from the multistate fraud class and only the single-state North Carolina statutory class should be decertified. That is precisely the path the Court took when the Eleventh Circuit issued *Tershakovec* and the Court concluded that Georgia purchasers must be excluded from this same class. The Court did not decertify; it narrowed the class to exclude the purchasers as to whom reliance could not be established class-wide, while leaving certification of the fraud class for the states that permit a class-wide inference. (ECF No. 4688 at 6–7.) The same surgical approach should be applied here.

## II. In The Alternative, The Court Should Provide The Class Sixty Days For A Replacement Class Representative.

If the Court nonetheless concludes that the narrowed class cannot proceed with Ms. O'Neal as its representative, the proper course, under binding precedent, is not to decertify the class outright, but to allow a brief, specified period in which a class member may step forward as a named plaintiff. As the former Fifth Circuit held: "When faced with a situation when no named plaintiff can represent a subclass, a trial court should consider whether it is in the interests of justice and judicial economy to postpone dismissal as to the subclass for a specified period in which members of the subclass could become plaintiffs by amendment of the Complaint or by intervention and thereby save the subclass action." *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 533 n.13 (5th Cir. 1978). Applying that principle, the former Fifth Circuit later held that a "district court erred in dismissing the case without giving members of the original class with live claims an opportunity to 'become plaintiffs by amendment of the complaint or by intervention and thereby save the subclass action[.]" *Lynch v. Baxley*, 651 F.2d 387, 388 (5th Cir. 1981) (quoting *Johnson*, 581 F.2d at 533 n.13). And in a detailed opinion examining these authorities, the Eleventh Circuit likewise vacated a district court's order decertifying a class "to allow a reasonable period of time for a member of the class to intervene or to be substituted as the class representative." *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1343 (11th Cir. 2003).

These binding authorities squarely apply here, if the Court concludes that no named plaintiff can represent the four-state class. In that event, the Court should not decertify the class, but instead allow sufficient time for a class member from one of the four remaining states to intervene or be substituted as the class representative. As the Eleventh Circuit recognized, this

9

principle follows from the Supreme Court's recognition that, "once certified, a class acquires a legal status separate from that of the named plaintiffs." *Birmingham Steel Corp.*, 353 F.3d at 1336 (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)).

Providing sufficient time to allow a class member to intervene serves the interests of justice. The claims of the Colorado, Utah, West Virginia, and Wisconsin purchasers are unaffected by the MBUSA reconsideration ruling: in each of those States reliance may be inferred class-wide (ECF No. 4688 at 7 n.2), and the Court has already found every Rule 23 requirement satisfied as to them. The only question the ruling raises is one of representation, and it arises through no fault of the absent class members. For almost three years, the class has been certified, consistent with the Court's prior rulings on North Carolina law. To suddenly decertify and dismiss those purchasers' claims now, rather than permit a member to cure a procedural defect, would visit a severe and disproportionate consequence on absent parties who reasonably understood their interests to be under active prosecution. That consequence would be especially harsh because, as Plaintiffs have shown, the individual claims are too small to pursue on their own; for nearly all class members, the courthouse doors will be closed absent a class. A short window to substitute a named plaintiff avoids that inequitable result while working no prejudice to FCA, which has understood the contours of these claims throughout the litigation. At most, a single additional deposition of the new class representative would be needed.

Permitting substitution likewise serves judicial economy. This class is the product of years of fact and expert discovery, multiple rounds of class-certification briefing, and the Court's own extensive familiarity with the record. A purchaser from one of the four remaining states who is added by intervention or amendment would inherit that fully developed record and the Court's existing findings. This procedural posture is indistinguishable from *Birmingham Steel Corp.*, 353 F.3d at 1339 ("[T]he parties had completed discovery, had litigated numerous pretrial motions, and were on the eve of trial when the named plaintiff, Birmingham Steel, became an inadequate representative.").

Sixty days is a modest, defined period, comfortably within the timeframe *Johnson*, *Lynch*, and *Birmingham Steel* contemplate, and should be sufficient to identify and add a qualified representative from among the tens of thousands of class members in the four states. Accordingly, if the Court determines that the narrowed class requires a representative who purchased a Class Vehicle in one of the four remaining states, Plaintiffs respectfully request that the Court afford the

10

class sixty days in which a class member may become a named plaintiff through intervention or amendment of the complaint.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that, if the Court applies the ruling on North Carolina law from the MBUSA reconsideration Order to the FCA Class, the Court narrow the certified multistate fraud class against FCA to exclude all North Carolina purchasers other than the named class representative, Laquintha O'Neal, and otherwise maintain the class as certified. In the alternative, the Court should provide the narrowed class with sixty days for a class member to become a named Plaintiff through intervention or amendment of the complaint.

Dated: June 19, 2026

Respectfully submitted,

**PODHURST ORSECK, P.A.**

/s/ Matthew P. Weinshall
Peter Prieto (FBN 501492)
Matthew P. Weinshall (FBN 84783)
2525 Ponce de Leon
Suite 700
Coral Gables, FL  33134
Phone: (305) 358-2800
Fax: (305) 358-2382
Email: pprieto@podhurst.com
        mweinshall@podhurst.com

*Chair Lead Counsel for Plaintiffs*

11

| | |
|---|---|
| **COLSON HICKS EIDSON**<br>Lewis S. "Mike" Eidson<br>mike@colson.com<br>Curtis Bradley Miner<br>curt@colson.com<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134<br>T: 305-476-7400<br><br>     *Plaintiffs' Personal Injury Track Lead Counsel* | **SMITH LACIEN LLP**<br>Todd A. Smith<br>tsmith@smithlacien.com<br>70 W Madison St Suite 5770,<br>Chicago, IL 60602<br>(312) 509-8900<br><br><br>     *Plaintiffs' Economic Damages Track Co-Lead Counsel* |
| **BOIES, SCHILLER & FLEXNER LLP**<br>David Boies, Esq.<br>Motty Shulman (Fla Bar. No. 175056)<br>333 Main Street<br>Armonk, NY 10504<br>Tel:  (914) 749-8200<br>Fax: (914) 749-8300<br>Email: dboies@bsfllp.com<br>     mshulman@bsfllp.com<br><br>Stephen N. Zack (Fla. Bar No. 145215)<br>100 Southeast 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel:  (305) 539-8400<br>Fax: (305) 539-1307<br>Email: szack@bsfllp.com<br>     mheise@bsfllp.com<br><br>     *Plaintiffs' Economic Damages Track Co-Lead Counsel* | **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**<br>Elizabeth Cabraser<br>ecabraser@lchb.com<br>275 Battery St., Suite 3000<br>San Francisco, CA 94111-3339<br>T:    415-956-1000<br><br>David Stellings<br>250 Hudson Street, 8th Floor<br>New York, NY 10012<br>212-355-9500<br>dstellings@lchb.com<br><br>*Plaintiffs' Steering Committee* |

12

| **CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC** | **BARON & BUDD, PC** |
|---|---|
| James E. Cecchi<br>jcecchi@carellabyrne.com<br>5 Becker Farm Road<br>Roseland, NJ 07068-1739<br>T: 973 994-1700<br>f: 973 994-1744<br><br><br>*Plaintiffs' Steering Committee* | Roland Tellis<br>rtellis@baronbudd.com<br>David Fernandes<br>dfernandes@bardonbudd.com<br>Mark Pifko<br>mpifko@baronbudd.com<br>15910 Ventura Blvd.,<br>Suite 1600<br>Encino, CA 91436<br>T: 818-839-2333<br><br>J. Burton LeBlanc<br>9015 Bluebonnet Blvd.<br>Baton Rouge, LA 70810<br>T: 225-761-6463<br><br><br>*Plaintiffs' Steering Committee* |

13