**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE: TAKATA AIRBAG PRODUCT
LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:
ECONOMIC LOSS TRACK CASES
AGAINST FCA US LLC

| | |
|---|---|
| BRIDGET BOYD, *et al*., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>FCA US LLC,<br><br>        Defendant. | MDL No. 02599<br><br>Master File No.: 1:15-cv-02599-FAM<br><br>S.D. Fla. Case No. 1:14-cv-24009-FAM |

**FCA US LLC'S RESPONSE TO PLAINTIFFS' MEMORANDUM**
**ON CLASS CERTIFICATION IN ACCORDANCE WITH THE**
**<u>COURT'S ORDER (D.E. 4909)</u>**

Dated June 26, 2026

<table>
<tr><td>

Scott M. Sarason
Florida Bar No. 0394718
ssarason@rumberger.com
RUMBERGER KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130
Tel: (305) 995-5422
Fax: (786) 536-3446

</td><td>

Daniel T. Graham (*pro hac vice*)
dgraham@clarkhill.com
Paul C. Do (*pro hac vice*)
pdo@clarkhill.com
Jeffrey M. Sniadanko (*pro hac vice*)
jsniadanko@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
Tel: (312) 985-5945
Fax: (312) 985-5954

</td></tr>
</table>

*Attorneys for FCA US LLC*

FCA US LLC ("FCA") submits its response to *Plaintiffs' Memorandum on Class Certification* ("Plaintiffs' Memorandum") (**D.E. 4915**) pursuant to the Court's June 3, 2026 *sua sponte* Order Requiring Parties to Brief the Court on North Carolina Purchasers in FCA Case (**D.E. 4909**). In sharp contrast with the clearly articulated issue raised by the Court for the parties to address, Plaintiffs' Memorandum veers in alternating directions but never answers the Court's question: does "the Court's recent ruling regarding North Carolina purchasers affect[] any of the certified classes in the FCA case"? *Id.* For its part, FCA answered the Court's question in the affirmative, and FCA's *Motion to Alter or Amend Order on Plaintiffs' Motion for Class Certification* ("Motion to Alter or Amend") formally presented the Court with an appropriate vehicle for its implementation of a consistent result as to FCA that is based on "the Court's recent ruling [May 19, 2026 Order] regarding North Carolina purchasers." *See* **D.E. 4914.**

FCA's Motion to Alter or Amend addresses the erroneous certification pursuant to Fed. R. Civ. P. 23(b)(3) of classes represented by the North Carolina named Plaintiff Laquintha O'Neal against FCA; comprising a multi-state fraud class of purchasers in North Carolina and in the four (4) headless states of Colorado, Utah, West Virginia, and Wisconsin (the "Tagalong States"), and a single-state class of purchasers in North Carolina under the state's consumer fraud statute. As this Court explained in its recent ruling, because North Carolina law does not support a presumption of reliance for fraud-based claims stemming from alleged misrepresentations or omissions, ***reconsideration and denial of certification*** of the multi-state fraud class of MBUSA purchasers in all of the same states was required.[1] *Cf.* **D.E. 4659** with **D.E. 4897**; *accord* **D.E. 4909**.

### INTRODUCTION

Ignoring the Court's assignment, Plaintiffs urge several alternatives to outright reversal, all of which are inappropriate, contrary to applicable law and facts, and misapprehend the possibility of any classes of FCA purchasers could ever be certified with its three remaining named Plaintiffs hailing from states (Georgia and North Carolina) where no class-wide inference of reliance can be

---

[1]   The Court's Order Granting Defendant's Motion for Reconsideration as to MBUSA denied certification of a class of Virginia purchasers within the multi-state fraud class against MBUSA represented by North Carolina named Plaintiff Daphne Bridges, which state's purchasers are irrelevant to the classes erroneously certified against FCA. **D.E. 4688** at 2 of 7, fn.1. The FCA Plaintiffs' Motion for Class Certification failed to include a class of Virginia purchasers in their class definition, so that state's purchasers were excluded from the Court's class certification orders against FCA. *See id.* (quoting **D.E. 4608** at 1 and 52).

presumed under the facts and circumstances applicable to the misrepresentation and/or omission fraud claims against FCA. Further, under FCA's Motion to Alter or Amend, the Court's recognition of its erroneous rulings as to MBUSA apply equally, if not more forcefully, to FCA's class determination rulings. Therefore, to maintain consistency with this Court's rulings in this MDL, the reconsideration and denial of certification of the remaining classes of purchasers of new or used FCA vehicles is necessary. *See* **D.E. 4897**.

Accordingly, the Court's issuance of its June 3, 2026 Order requiring briefing from the parties telegraphed the Court's willingness to hear from the parties before taking action to revisit its prior rulings. **D.E. 4909**. However, Plaintiffs' Memorandum ignores the premise of the Court's June 3, 2026 Order and seeks a second do-over and asks this Court to craft a result that avoids "the affect" upon "the certified classes in the FCA case" that must result to maintain consistency between its denial of the multi-state fraud and single state consumer fraud classes headed by the MBUSA North Carolina named Plaintiff and those classes certified against FCA. *See* **D.E. 4909**; *accord* **D.E. 4914**. Plaintiffs' request should be denied.

*First*, Plaintiffs urge that FCA North Carolina named Plaintiff Laquintha O'Neal can stand in as class representative for the four (4) headless Tagalong States: Colorado, Utah, West Virginia, or Wisconsin after the Court reconsidered the prior ruling that prohibited Plaintiffs from representing consumers who purchased vehicles in different states other than the states of the named Plaintiffs, relying upon *In re Zantac (Ranitidine)*. Such a result would exceed Plaintiff O'Neal's representative standing under Rule 23.

*Second*, Plaintiffs assert the Court should find that even though no class-wide inference of reliance is allowed under North Carolina law, Plaintiffs can use alleged class-wide inferences allowed under the laws of the unmoored Tagalong States which can be met through an individual inference of reliance applicable to Plaintiff O'Neal. Plaintiffs cite no evidence of O'Neal's individual reliance on any FCA statements and no authority for such proposition.

*Third*, Plaintiffs argue that if Plaintiff O'Neal is not allowed to stand in for certification, Eleventh Circuit precedent provides a brief opportunity for a new class representative to intervene or substitute as a named Plaintiff in any of the Tagalong States prior to "decertification" of the multi-state fraud class against FCA. Based on the Court's grant of reconsideration (**D.E. 4897**), its ruling as to FCA and consistent with its May 19, 2026 order would be the *denial* of certification, as though the class of FCA vehicle purchasers in North Carolina, Colorado, Utah, West Virginia,

or Wisconsin, predicated on the North Carolina named Plaintiff as class representative, never occurred. Plaintiffs' desperate attempt to retain any class of purchasers by urging the Court allow them to unmoor the erroneously certified classes of FCA vehicle purchasers in North Carolina and the Tagalong States from the law of North Carolina, where the *sole* remaining named Plaintiff "hail[s and]…where reliance is an individual issue", must be rejected. **D.E. 4897** at 8. Alternatively, again ignoring that decertification is not the appropriate relief when a class is erroneously certified in the first place, Plaintiffs ask for 60 days to find a new named plaintiff to stand in for O'Neal.

In short, Plaintiffs seek *reconsideration* of the Court's May 19, 2026 Order on Reconsideration of North Carolina law. The Court should reject the invitation. In fact, the grounds for not certifying any class in North Carolina apply even more forcefully under the facts applicable to O'Neal. Since there is no purchaser under the laws of North Carolina, Colorado, Utah, West Virginia, or Wisconsin that has any redressable injury or legally recoverable damages (see FCA's Motion for Summary Judgment (**D.E. 4797**)), after FCA's free recall repair of FCA vehicles' non-desiccated airbags, ignoring the futility of such a result and allowing any new plaintiff(s) to be named at this late stage would be error compounded and prejudicial to FCA. Instead, FCA's Motion to Alter or Amend should be granted.

## ARGUMENT

I.     **Plaintiffs' Memorandum Does Not Answer the Court's Question, Instead They Argue Various Ways the Court Should Reconsider its Reconsideration.**

Rather than confirm the Court's correction of its error through denial of certification of classes against FCA, represented by the remaining North Carolina named Plaintiff, consistent with the Court's May 19, 2026 Order as to MBUSA, Plaintiffs suggest this Court leave its previous certification of FCA North Carolina classes intact, which would create clear inconsistency. **D.E. 4897.** Plaintiffs' arguments that North Carolina law would allow O'Neal to remain a class representative for North Carolina or any Tagalong States fail.

A.     **Without a North Carolina class representative, Plaintiffs cannot certify any class of purchasers in the Tagalong States.**

Plaintiffs argue counter to the Court's previous rulings that denied certification of headless states represented by named plaintiffs that "hail" from a state that does not allow a presumption of reliance. *See* **D.E. 4688** at 6-7; **D.E. 4897** at 8. Instead, to avoid denial of certification of classes

in the Tagalong States, Plaintiffs urge the Court to instead look to the "same injury and interest" of North Carolina named Plaintiff O'Neal with the erroneously certified classes of headless states. **D.E. 4915** at 6 of 14. Plaintiffs' argument fails by its own logic.

In granting partial reconsideration of the Court's ruling on summary judgment, the Court's December 21, 2022 Order revisited its March 11, 2016 Order (**D.E. 243**) "[c]onsistent with *In re Zantac (Ranitidine) Prod Liab. Litig.*" and allowed the named Plaintiffs to represent consumers who purchased vehicles in different states than the states of the named Plaintiffs." **D.E. 4504** (citing *In re Zantac*, Case No. 21-10335, 2022 WL 16729170 (11th Cir. Nov. 7, 2022).) What was allowed by this Court based on *In re Zantac*, was that upon the Court's subsequent denial of FCA's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiffs' Supplement to Second Amended Complaint (**D.E. 4643**), any named Plaintiff's assertion of representative standing for classes of purchasers in states that are not the state in which they reside and purchased their FCA class vehicle and that do not have a named Plaintiff to assert representative standing for that state, would become an issue to be decided during class certification under Fed. R. Civ. P. 32. *See* **D.E. 4688** at 6-7; **D.E. 4897** at 8.[2]

In this MDL, the Court has decided the issue of the named FCA Plaintiffs' representative standing on multiple occasions. Each time, the Court has found that when the state law governing a named Plaintiff's claims is no longer substantially similar because it does not support a class-wide inference or presumption of reliance, that state's class claims fall and that state's named Plaintiff no longer has representative standing for headless Tagalong States' unnamed class members. *See* **D.E. 4659** at 14-19 of 27 (as to FCA); **D.E. 4688** at 6-7 of 7 fn.2 (as to FCA); **D.E. 4897** (as to MBUSA reconsideration). Finally, Plaintiffs' bald assertion that "O'Neal, whose fraud claim arises under North Carolina law, can represent unnamed plaintiffs whose fraud claims arise under the laws of Colorado, Utah, West Virginia, and Wisconsin, because Ms. O'Neal's success under her North Carolina claim 'will more or less dictate success' under the other states' laws" is

---

[2]    In *In re Zantac*, the Court stated that "all circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not Article III." 2022 WL 16729170 at \*6. Going further, the Eleventh Circuit Panel noted "[a] leading class action treatise is of the same view" *Id.* (citing William B. Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 2:6 (5th ed. & Dec. 2021 update) which stated "when a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class.").

false. **D.E. 4915** at 6 of 15. Because North Carolina law does *not* permit a class-wide inference or presumption of reliance, O'Neal, as with the Georgia named Plaintiffs Gibson and Johnson before her, lacks not only representative class standing for her home state, but she also cannot represent any class of unnamed purchasers in any remaining Tagalong State. Without representative standing it is irrelevant whether the Tagalong States' laws allow such an inference, (though FCA has argued they do not). *See* **D.E. 4676** at II (FCA's Response to Plaintiffs' Supplemental Brief Regarding Class Certification and Predominance) (discussing and distinguishing Plaintiffs' authorities under Tagalong States' laws). Because under the Court's adoption of *In re Zantac*, headless classes' claims can only be moored to a named Plaintiff from a state whose laws are substantially similar; lacking an inference of reliance renders those states' laws substantially *dissimilar* and bars class representative standing for any Tagalong State. *Id.* Plaintiffs suggest that "[t]he claims of the Colorado, Utah, West Virginia, and Wisconsin purchasers are unaffected by the MBUSA reconsideration ruling." **D.E. 4915** at 6-7 of 14. Upon reconsideration to rectify the Court's previous error of certification under North Carolina law and to maintain *consistency* in this Court's ruling in this MDL, they certainly will be. *See* **D.E. 4897**; *accord* **D.E. 4909**.

**B.      O'Neal Cannot Evidence, Let Alone Infer, Reliance On Any Statement of FCA**

Improperly premised on the Tagalong States' laws allowing for an inference of class-wide reliance, Plaintiffs argue that "proof of circumstances" could allow a jury to infer reliance. **D.E. 4915** at 7-8 of 14 (citing *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.,* 418 S.E.2d 648, 661 (N.C. 1992).

1.      O'Neal's evidence does not support or evidence she relied on any FCA statement.

Plaintiffs propose that through the very generalized marketing of FCA vehicles, touting the safety and dependability of FCA vehicles, O'Neal became aware of her FCA vehicle's frontal airbags, which FCA did not disclose had a defect.[3] *Id.* at 9 of 14. However, even Plaintiffs' citation to FCA's generalized marketing is inconsistent with O'Neal's purchasing experience.

---

[3]      Plaintiffs' Memorandum also discusses that her vehicle had a *CarMax* window sticker, "just like a Monroney sticker, advertising the vehicle's safety features without disclosing" a defect in the vehicle's airbags. **D.E. 4915** at 9 of 14; Ex. B. Notably the window sticker only mentions "Side Airbags" and "Overhead Airbags", neither of which are at issue in this litigation. Ex. B to Plaintiffs' Memorandum.

O'Neal did not purchase a new FCA vehicle directly from FCA or a FCA or Chrysler-affiliated dealership. *See id.* Instead, her 2012 Dodge Charger was purchased on March 8, 2015 from CarMax. **D.E. 4634**, at 47-48 of 76; FCA SOF, Page 5 of 8, ¶ 99; *see also* FCA SOF at ¶ 102 (O'Neal never discussed her vehicle's safety features or airbags with the CarMax sales representative) and ¶ 103 (the CarMax window sticker O'Neal reviewed did not mention FCA or the relevant airbags). O'Neal did not rely on the vehicle's owner's manual before purchasing it. *Id.* Relevant to the generalized marketing Plaintiffs suggest is sufficient to anchor reliance, O'Neal did not recall seeing or hearing *any* specific commercials about her vehicle or the dates or media on which she saw or heard those commercials. *Id.*, FCA SOF at ¶ 101. O'Neal admitted that she did not rely on these commercials when she bought her Dodge. *Id.*; FCA SOF at ¶ 101. O'Neal became interested in purchasing the vehicle because of how it felt and looked rather than any representation by FCA. *Id.* (citing Ex. 22 (09/03/2020 O'Neal Dep. Tr. Excerpt, 78:5-13)).

These facts highlight the disconnect between the generalized marketing of FCA vehicles and O'Neal's failure to distinctly remember, let alone rely upon, FCA's marketing efforts about her vehicle when she decided to purchase a used Dodge Charger from CarMax. The lack of any link between FCA's marketing and O'Neal's vehicle purchase defeats Plaintiffs' argument that O'Neal would have been able to convince a jury to infer she relied upon FCA statements or FCA's failure to disclose the airbag defect to her. As this Court has held, under North Carolina law, reliance is an individualized issue, and any assertions that O'Neal has representative standing for any putative class are improper in the absence of an allowed class-wide inference of reliance. The facts presented highlight O'Neal's lack of direct evidence, let alone circumstantial evidence, that she relied upon *any* representations or omissions of FCA. O'Neal never interacted with a Chrysler or FCA-affiliated dealership and even if she had, this Court properly concluded that even direct purchasers of vehicles must prove individual reliance under North Carolina law. *See* **D.E. 4897**; *Bledsoe v. FCA US LLC*, 663 F. Supp. 3d 753, 803–05 (E.D. Mich. 2023) (applying North Carolina law).

### 2.      Plaintiffs' citations do not provide the inference urged by Plaintiffs.

Plaintiffs' Memorandum rehashes arguments that North Carolina law allows indirect or transferred inferences of reliance based on evidence that a plaintiff acted in a manner consistent with the intended goal of the purported misrepresentations or omissions to influence the plaintiff's

purchasing conduct.[4] This is not allowed under North Carolina law. In affirming the dismissal of common law fraud claims based upon the transferred or indirect exposure to fraudulent statements, upon which inference the North Carolina Court of Appeals recited the holding of the Business Court below: [t]o the extent that Plaintiffs want to incorporate [an inference of] reliance on Defendants, they must be constrained by the general rule of no duty to speak and by the established rule that when "the purchaser has full opportunity to make pertinent inquiries but fails to do so through no artifice or inducement of the seller, an action in fraud will not lie." *NNN Durham Off. Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 261 N.C. App. 185, 197–98 (2018) (quoting *C.F.R. Foods, Inc. v. Randolph Development Co.*, 107 N.C. App. 584, 589 (additional citation omitted). The Court stated its "agree[ment] with the Business Court's review and reasoning, particularly its conclusion that 'Plaintiffs cannot transfer [an inference of reliance upon facts not directly provided to them] to their reliance on [what they were directly exposed to]." *Id.* (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland, Gen. P'ship,* 322 N.C. 200, 205–07 (1988)). None of the authorities cited by Plaintiffs in their Memorandum (**D.E. 4915** at 7-9), which have been distinguished in depth in the parties' briefing class certification as to MBUSA and subsequent MBUSA Motion for Reconsideration, should lead this Court to a different conclusion than was reached upon reconsideration of the MBUSA North Carolina classes. **D.E. 4897**.

## C.   **Plaintiffs Should Not Be Allowed to Change Horses At This Juncture.**

Plaintiffs suggest that they should be allowed to locate and propose a new class member from the Tagalong States to be named as class representative. **D.E. 4915** at 10-12 of 14. At this stage of the proceedings, that suggestion should be rejected.

### 1.   Erroneously certified, purchasers in the Tagalong States never shared a "legal status separate from that of the Named Plaintiff."

Plaintiffs argue they should be allowed to salvage the classes of purchasers of FCA vehicles in the Tagalong States through a new "class member from one of the four remaining states [being allowed] to intervene or be substituted as the class representative" based upon "the Supreme

---

[4]   *See* **D.E. 4915** at 7-9 of 14 (rearguing inferences of reliance are allowed under North Carolina law and citing *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.,* 418 S.E.2d 648, 661 (N.C. 1992); *Constr. Managers, Inc. of Goldsboro v. Amory,* No. 18 CVS 1359, 2019 WL 2167311, at *14 (N.C. Super. May 17, 2019); *Hunter v. Guardian Life Ins. Co. of Am.*, 593 S.E.2d 595, 599 (N.C. Ct. App. 2004).)

Court's recognition that, 'once certified, a class acquires a legal status separate from that of the named plaintiffs.'" **D.E. 4915** at 11-12 of 14 (quoting *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1366 (11th Cir. 2003) (citing *Sosna v. Iowa,* 419 U.S. 393, 399 (1975)). Plaintiffs argue that the Eleventh Circuit precedent in *Birmingham Steel* applies here. *See id*. It does not.

> a. *Upon reconsideration and denial of certification, FCA classes never had any live claims.*

First, Plaintiffs' invocation of *Birmingham Steel* ignores North Carolina law precluding any North Carolina named plaintiff from maintaining or representing any classes of common law fraud or consumer fraud purchasers against FCA, because of the individualized inquiry related to the element of reliance that cannot be presumed on a class-wide basis in order to satisfy predominance under Rule 23(b)(3). *See* **D.E. 4897**; *accord* **D.E. 4909**. Nevertheless, *Birmingham Steel*'s holding stands for the proposition that when a class is *properly* certified under a named plaintiff who can no longer represent the class due to a "procedural defect" – Birmingham Steel's inadequacy arose upon filing bankruptcy expressly which did not fit within the class's definition - **decertification** is improper without first allowing the Plaintiffs an opportunity to replace that named plaintiff. As the Eleventh Circuit explained:

> We conclude that the district court abused its discretion by decertifying the class without permitting class counsel reasonable time to determine whether a new class representative could be substituted. We therefore remand the case to the district court for the purpose of allowing a reasonable period of time for another member of the class to offer itself as the class representative.
> …
> [A]bsent some special circumstance that would take this case out of the reach of the holding in *Lynch*, the latter case would indicate that the district court here erred by not giving counsel an opportunity to seek a new named plaintiff.

*Birmingham Steel Corp.*, 353 F.3d at 1339. Similarly inapplicable, the specific holding in *Lynch* related to a class of involuntarily civilly committed persons certified under an Alabama statute that the district court held violated those involuntarily committed persons' due process rights, but despite that statute's subsequent repeal and replacement by new legislation, emergency detention provisions in the new law kept a subset of the original class's claims "alive." *Lynch v. Baxley*, 651 F.2d 387, 388 (5th Cir. 1981). Taking guidance from the Supreme Court's holding in *Kremens v. Bartley*, 431 U.S. 119 (1977), the former Fifth Circuit held that when the district court dismissed

the entire case based on an assumption that none of the original class's members would have had standing for the a new class under the new law, it erred "without giving members of the original class with live claims an opportunity to 'become plaintiffs by amendment of the complaint or by intervention and thereby save the subclass action.'" *Id.* (quoting *Johnson v. American Credit Co. of Ga.*, 581 F.2d 526, 533 n.13 (5th Cir. 1978) and citing 7A, C. Wright & A. Miller, FED. PRAC. & PROCED., s 1790.) Here, upon reconsideration and denial of class certification, it will be as if no class claim was ever "alive" to salvage.

Here, Plaintiff O'Neal does not suffer from any procedural defect. She hails from a state where no class can be certified because of the individualized inquiry that is required to prove reliance, a requisite element of fraud under North Carolina law. *See* **D.E. 4897**. Denial of certification, not decertification, results. And as has been the holding from this Court in previous Orders denying class certification, when a named Plaintiff hails from a state where no presumption or inference of reliance is allowed, denial of certification of any headless classes in Tagalong States results. *See* **D.E. 4688** at 6-7 (excluding classes of Georgia purchasers and denying Georgia named plaintiffs as class representative for classes in the Tagalong States); **D.E. 4897** at 8 (stating "Plaintiffs' request to certify their Multistate Fraud Class [that included the Tagalong States] pursuant to Federal Rule of Civil Procedure 23(b)(3) is **DENIED** as both class representatives, Plaintiff Paulette Calhoun of Georgia and Plaintiff Daphne Bridges of North Carolina, hail from states where reliance is an individual issue." (emphasis original).) The latter result emphasizes that Plaintiffs have misconstrued *Birmingham Steel*'s applicability here.

> b. *Unlike in <u>Birmingham Steel</u>, FCA classes were not provided class notice.*

In *Birmingham Steel*, a key factor in the Eleventh Circuit's analysis was that the unnamed class members were already on notice of their rights as members of the class to be decertified. *Birmingham Steel Corp.*, 353 F.3d at 1333 (reflecting the notice sent to potential class members explicitly excluded bankrupt class claims from the class if they were in bankruptcy). Here, no notice to Plaintiffs has been implemented in accordance with due process to absent members of the erroneously certified classes in North Carolina and the Tagalong States. On May 28, 2024, FCA provided Plaintiffs with FCA's Confidential – Subject to the Court's Protective Order "preliminary tranche of Class List Data" based on the Court's August 23, 2023 Order Narrowing Plaintiffs' Certified Fraud Class to Exclude Georgia Purchasers. **D.E. 4688**.

The Eleventh Circuit recognized the resultant impact from the lack of notice to absentee class members:

> Absentee class members will generally have had no knowledge of the suit until they receive the initial class notice. This will be their primary, if not exclusive, source of information for deciding how to exercise their rights under [R]ule 23.... Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action.

*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227–28 (11th Cir. 1998) (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1103–05 (5th Cir.1977)).

Accordingly, contrary to the concerns implicated by the holding in *Birmingham Steel*, no absent FCA common law fraud or consumer fraud class members are "aware" of any class claim against FCA, let alone one that should never have been certified in the first place as acknowledged by this Court's inquiry and its reasoning in the May 19, 2026 Order.

> c. *Unlike in Birmingham Steel and Lynch, this Court's reconsideration and denial of class certification and rejection of naming new plaintiffs best serve the "efficient administration of justice."*

Plaintiffs' Memorandum argues that "allow[ing] a class member to intervene serves the interests of justice." **D.E. 4915** at 11 of 14. However, since "[t]he claims of the Colorado, Utah, West Virginia, and Wisconsin purchasers" should never have been certified and no class members were ever provided notice of the erroneous certification, the interests of justice are, in fact, only met so long as the Court's grant of relief with respect to FCA is consistent with its MBUSA reconsideration ruling. **D.E. 4897**; *contra*, **D.E. 4915** at 11 of 14. Further, contrary to Plaintiffs' assertion, upon reconsideration this Court cannot reach whether each of the Tagalong States' laws allow for class-wide inferences or presumptions of reliance since they are unmoored from a named Plaintiff. *Cf.* **D.E. 4688** at 6-7 and **D.E. 4897** at 8 with **D.E. 4688** at 7 n.2.

Thus, the interests of justice are in fact frustrated if this Court were to "reconsider" its reconsideration, allow new parties to intervene or substitute, reopen discovery so the parties can ascertain whether newly introduced plaintiffs can adequately support the claims asserted in the Second Amended Complaint, and reargue and await ruling on class certification, among the myriad complications arising therefrom. *See* **D.E. 4915** at 11 of 14. Moreover, granting Plaintiffs the extraordinary relief they seek in the absence of a ruling on FCA's pending Motion for Summary Judgment, may well bar Plaintiffs' pursuit of their remaining claims under the laws of the states

of the remaining named Plaintiffs and/or the laws of the Tagalong States, through a finding that they lack any injury or cognizable damages after FCA's recall remedy, offering or repairing their FCA vehicles' non-desiccated airbags for free.[5]

## CONCLUSION

For the foregoing reasons and those set forth in the its Motion to Alter or Amend, FCA requests that the Court apply the same rationale in its May 19, 2026 Order reconsidering and reversing the certification of the MBUSA North Carolina classes to the Court's June 20, 2023 and August 23, 2023 Orders certifying North Carolina fraud and consumer fraud classes against FCA (respectively, **D.E. 4897**; **D.E. 4659** and **D.E. 4688**.) As appropriate for the reconsideration and reversal of the erroneous certification of headless classes of purchasers against FCA in states that lacked any named plaintiff or lacked a named plaintiff with class representative standing under the laws of a state whose laws were substantially similar, the Court should also make the requisite findings under Fed. R. Civ. P. 23, and grant FCA such other relief as this Court deems appropriate.

Dated: June 26, 2026

Respectfully submitted,

By: */s/ Scott M. Sarason*

Scott M. Sarason
Florida Bar No. 0394718
ssarason@rumberger.com
RUMBERGER KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130
Tel: (305) 995-5422
Fax: (786) 536-3446

By: */s/ Daniel T. Graham*

Daniel T. Graham (*pro hac vice*)
dgraham@clarkhill.com
Paul C. Do *(pro hac vice)*
pdo@clarkhill.com
Jeffrey M. Sniadanko (*pro hac vice*)

---

[5]     *Cf. Birmingham Steel Corp.*, 353 F.3d at 1342 (decertification occurring after "discovery had been completed, numerous pretrial motions had been resolved, and the case was ready for trial"); and *Lynch*, 651 F.2d at 388 (decertification occurring after "[d]iscovery was carried out ... [and a] stipulation was entered into covering the evidence and the case submitted for decision on the evidence and briefs.)

jsniadanko@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
Tel: (312) 985-5945 (Graham)
Fax: (312) 985-5954 (Graham)

*Attorneys for FCA US LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2026, a true and correct copy of the foregoing was filed via CM/ECF and served on all counsel of record via electronic notices generated by CM/ECF on June 26, 2026.

By: */s/ Scott M. Sarason*

12