**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| **IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION** | MDL No. 2599 |
| | Master File No. 15-MD-02599-MORENO |
| This Document Relates to <u>FCA US LLC</u> | |

**<u>PLAINTIFFS' RESPONSE TO FCA'S MOTION TO MOTION TO ALTER OR AMEND</u>**
**<u>ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

**INTRODUCTION**

FCA's motion asks this Court to do far more than apply its May 19, 2026 Order on MBUSA's motion for reconsideration. (ECF No. 4914.) It asks the Court to dismantle an entire multistate fraud class—purchasers of FCA Class Vehicles in Colorado, Utah, West Virginia, and Wisconsin—that has stood certified for nearly three years and that the MBUSA Order never addressed. The Court should decline FCA's request.

The MBUSA reconsideration Order is confined to North Carolina. It held that reliance is an individualized issue under North Carolina law and that a class of North Carolina purchasers therefore cannot satisfy Rule 23(b)(3)'s predominance requirement. (ECF No. 4897.) It said nothing about the laws of Colorado, Utah, West Virginia, and Wisconsin—each of which, as this Court has already held, permits a class-wide inference of reliance. (ECF No. 4688 at 7 & n.2.) Plaintiffs maintain that the Court's original certification was correct but will not relitigate that question here. Even if the Court applies the MBUSA Order to FCA, the only consequence is the removal of the unnamed North Carolina purchasers from the multistate fraud class and decertification of the single-state North Carolina statutory class. The remaining four-state fraud class should remain intact.

FCA's contrary demand fails for two independent reasons. ***First***, Ms. O'Neal remains an adequate representative of the narrowed four-state class. She and every member of that class share the identical injury and interest, and her success on her own North Carolina fraud claim will dictate success under the laws of the four remaining states. That her claim arises under North Carolina law is no obstacle, under prevailing Eleventh Circuit law. ***Second***, even if the Court were to conclude that Ms. O'Neal could not represent the narrowed class, binding Eleventh Circuit precedent forecloses the immediate decertification that FCA seeks. When a certified, narrowed class is left without a representative, the court must allow a reasonable period for a class member to step forward. Plaintiffs respectfully request sixty days for that purpose.

**ARGUMENT**

I.      **Ms. O'Neal Remains an Adequate Representative of the Narrowed Four-State Class.**

The premise of FCA's motion is that the MBUSA Order's North Carolina holding eliminates the entire multistate class. It does not. This Court's analysis in the MBUSA Order addressed a single question of North Carolina law—whether that state permits a class-wide presumption or inference of reliance—and answered it in the negative. (ECF No. 4897.) The Order

1

did not purport to disturb this Court's separate and independent conclusion that Colorado, Utah, West Virginia, and Wisconsin each permit reliance to be inferred on a class-wide basis. (ECF No. 4688 at 7 & n.2.)[1]

That distinction follows from the Eleventh Circuit's decision in *Tershakovec v. Ford*, 79 F.4th 1299, 1314 (11th Cir. 2023), which establishes that whether a presumption or inference of reliance is available turns on each state's own law. This Court followed that instruction, examining the law of each state and concluding that the four remaining states permit a class-wide inference of reliance. It would conflict with *Tershakovec* for the Court to rely on the MBUSA Order, which evaluated only North Carolina law, to decertify the claims of class members in the four other states. For purchasers in those states, reliance remains a common question answerable with class-wide proof, and predominance is satisfied.

The proper response to the MBUSA Order is therefore the same precise narrowing this Court has already employed once in this litigation. When the Eleventh Circuit decided *Tershakovec* and the Court concluded that Georgia purchasers could not establish reliance on a class-wide basis, the Court did not decertify the multistate class; it excluded the Georgia purchasers and left the class intact as to the states permitting a class-wide inference. (ECF No. 4688 at 6–7.) The same approach should be taken here here: exclude the unnamed North Carolina purchasers, decertify the single-state North Carolina statutory class, and otherwise maintain the class as certified.

FCA's submission also turns on the implicit premise that Ms. O'Neal cannot represent the four-state class because her own claim arises under North Carolina law. But the law imposes no such requirement. In *Zantac*, the Eleventh Circuit held that a plaintiff may represent unnamed class members whose claims arise under a different state's law when "success on the claim under one state's law will more or less dictate success under another state's law." 2022 WL 16729170, at *6

---

[1]Notably, FCA does not seek to relitigate that conclusion either, as it finds abundant support in governing state law. *See BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 110–11 (Colo. 2011) (reliance in a fraudulent-concealment claim "may be inferred from circumstantial evidence common to a class"); *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 543 (Utah 1983) (where "material misrepresentations were made to class members, at least an inference of reliance would arise as to the entire class"); *Hopper v. Jay-Bee Oil & Gas, Inc.*, No. 5:20-CV-101, 2023 WL 3696785, at *3 (N.D. W. Va. Apr. 11, 2023) (fraud may be proven by circumstantial or presumptive evidence); *Schlosser v. Allis-Chalmers Corp.*, 271 N.W.2d 879, 884–85 (Wis. 1978) (reliance "may be inferred from the . . . performance of the act").

(quoting *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018)). As the court explained, "[t]he fact that the unnamed class members' injuries may have occurred in other states does not change things so long as the alleged injuries and interests are substantially the same." *Id.* This Court necessarily reached that conclusion when it certified the original class, analyzing the law of the various states and designating Ms. O'Neal a representative of purchasers in states other than her own. (ECF No. 4659 at 14–21.) The MBUSA Order disturbed none of that analysis.

Ignoring *Zantac*, FCA's argument fixates on a single proposition—that North Carolina requires proof of actual reliance and does not permit a class-wide presumption of reliance—and simply assumes that prevents her from representing the narrowed class. But FCA ignores the body of North Carolina law addressing *how* individual reliance may be established. North Carolina does not require direct evidence of reliance, such as a plaintiff's testimony that she saw and relied on a particular advertisement. To the contrary, reliance may be established circumstantially—through conduct consistent with reliance, coupled with a defendant's systematic and uniform course of conduct, as explained in detail in Plaintiff's initial submission. (ECF No. 4915 at 6–8.) "Proof of circumstances from which the jury may reasonably infer the fact is sufficient in proving the element of reliance." *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648, 661 (N.C. 1992) (quotation marks omitted).

The MBUSA Order did not purport to reject this North Carolina authority, nor could it, since it is from the North Carolina Supreme Court. Rather, this Court held that *Rowan* was insufficient to demonstrate that North Carolina would allow an inference of reliance to be applied *class-wide*. (ECF No. 4897 at 6.) But it does not prevent Ms. O'Neal from establishing her *own* reliance circumstantially, as *Rowan* expressly allows. There, the school board's architect could not identify "any specific representation, advertisement, or brochure that he had read . . . upon which he then relied," and admitted on cross-examination that he relied as well on his own experience. 418 S.E.2d at 660–61. The North Carolina Supreme Court nonetheless held that reliance could be proved by inference from the surrounding circumstances—the defendant's promotional literature targeting architects, the architect's general reliance on an industry catalog in which that literature appeared, and the defendant's concealment of the product's known defects. *Id.* at 661. North Carolina courts have applied the same principle repeatedly, inferring reliance from a plaintiff's conduct consistent with having been deceived. *See Constr. Managers, Inc. of Goldsboro v. Amory*,

3

No. 18 CVS 1359, 2019 WL 2167311, at *14 (N.C. Super. May 17, 2019); *Hunter v. Guardian Life Ins. Co. of Am.*, 593 S.E.2d 595, 599 (N.C. Ct. App. 2004).

And the evidence from which a jury may infer Ms. O'Neal's reliance will not differ for the entire class. That common evidence is precisely what supports a class-wide inference of reliance under the laws of Colorado, Utah, West Virginia, and Wisconsin—which this Court has already recognized. Ms. O'Neal's success on her North Carolina claim thus "will more or less dictate success" under the laws of the four remaining states. *Zantac*, 2022 WL 16729170, at *6.

FCA nonetheless devotes much of its motion to Ms. O'Neal's purchasing experience, contending that she could not have relied on any FCA representation. (ECF No. 4914 at 7–9.) That argument misreads the record and, if anything, confirms why Ms. O'Neal is an appropriate representative of the four-state class. FCA's recitation establishes that Ms. O'Neal had no idiosyncratic exposure to any unique FCA message. She did not receive an early disclosure of the Inflator Defect; she was not subjected to an uncommon deceptive pitch by an aggressive salesperson. She encountered exactly what every class member encountered: FCA's standardized, widely disseminated marketing touting the safety and dependability of its vehicles, concealing the Inflator Defect. Ms. O'Neal testified that she became interested in the Dodge Charger through FCA's standardized messaging (O'Neal Dep. (ECF No. 4915-1) at 75:12–77:10, 121:6–21, 124:8–16); that she reviewed the vehicle's window sticker (*id.* at 130:14–131:14); and that, based on all this, she decided to purchase the car (*id.* at 75:9–12).

FCA also misstates the record. FCA claims that the window sticker Ms. O'Neal reviewed "did not mention . . . the vehicle's airbags." (ECF No. 4914 at 8.) The sticker itself says otherwise: it advertises "Overhead Airbags" and "Side Airbags" among the vehicle's "Features You'll Love," without a word about the Inflator Defect. (ECF No. 4915-2; O'Neal Dep. 130:14–131:14.) That is an example of the standardized safety messaging supporting class certification. Nor is it any answer that FCA's representations did not single out the frontal airbag: FCA's uniform advertising campaign promoted the Class Vehicles' safety features, airbags among them, while concealing the danger those airbags posed. From that common evidence—and from the commonsense proposition that no consumer would knowingly pay full price for a vehicle whose airbag can rupture like a grenade—a jury may infer reliance. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 987 (11th Cir. 2016) ("[c]ommon sense indicates" that a defective vehicle is worth less than a sound one); Eleventh Circuit Pattern Jury Instructions, Civil Cases 3.3 (2025).

FCA's contention that Ms. O'Neal disclaimed reliance is really an argument that she will lose on the merits—the type of argument applicable to summary judgment, not class certification. More fundamentally, FCA does not identify anything about Ms. O'Neal's experience that is individualized or different from the experience of class members in the four remaining states. The evidence of her reliance is the same common evidence that establishes reliance for the class.

**II.      In The Alternative, Binding Precedent Requires a Sixty-Day Period for Substitution or Intervention Rather Than Decertification.**

If the Court nonetheless concludes that Ms. O'Neal cannot represent a class limited to the four remaining states, the result FCA urges—immediate decertification—is foreclosed by binding precedent. Once a class is certified, it "acquires a legal status separate from that of the named plaintiffs." *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1336 (11th Cir. 2003) (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). Because of that independent status, a court confronting the loss of a class representative must allow the class a reasonable opportunity to find a replacement before dismantling it. *Id.* at 1343.

*Birmingham Steel* is controlling authority on this issue. There, after a class was certified, the named plaintiff declared bankruptcy, which removed it from the class—just like applying the MBUSA reconsideration Order here, after the FCA class was certified, may remove Ms. O'Neal from the class—and the district court decertified the class without giving class counsel time to locate a substitute. The Eleventh Circuit vacated, holding that the district court "abused its discretion by decertifying the class without permitting class counsel reasonable time to determine whether a new class representative could be substituted." *Id.* at 1333. Because "discovery had been completed, numerous pretrial motions had been resolved, and the case was ready for trial," *id.* at 1342—identical circumstances to this case—the "efficient administration of justice and the interests of the class" required that an opportunity to substitute be afforded, *id.*

The former Fifth Circuit's decision in *Lynch v. Baxley*, 651 F.2d 387 (5th Cir. July 1981), on which *Birmingham Steel* relied, is squarely on point as well. In *Lynch*, an intervening change in the law narrowed a certified class, and the named plaintiffs were no longer part of the narrowed class. The district court responded by dismissing the action. The Fifth Circuit reversed, holding that "the district court erred in dismissing the case without giving members of the original class with live claims an opportunity to 'become plaintiffs by amendment of the complaint or by intervention and thereby save the subclass action.'" *Id.* at 388 (quoting *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 533 n.13 (5th Cir. 1978)). Efficient judicial administration, the court

5

explained, "weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the interests of the subclass," because dismissal would "render[] useless discovery which ha[d] been carried out during a two year period." *Id.* at 388 n.1.

*Lynch* involves the identical fact pattern this case would present if the Court applies the MBUSA Order to exclude North Carolina purchasers and concludes that Ms. O'Neal may not represent the narrowed class because she is not a purchaser from one of the four remaining states. In *Lynch*, an event subsequent to certification narrowed the class, and as a result of that narrowing the named plaintiffs were no longer part of the class. The *Lynch* district court did exactly what FCA asks this Court to do—it dismissed the class. And the Fifth Circuit held that was error.

*Lynch*, therefore, requires the Court to reject FCA's request to immediately decertify the narrowed class. If the Court excludes North Carolina purchasers in light of the MBUSA Order, the class will be narrowed to purchasers in Colorado, Utah, West Virginia, and Wisconsin—that is, just as in *Lynch*, "the contours of the class [will] have been changed and the class truncated by intervening" events, and the class will be "a narrower group than the original class certified." 651 F.2d at 388. But the claims of the narrowed class "remain 'alive,'" *id.* at 388, because a certified class "has a 'legal status separate from the interest asserted by (the named plaintiffs).'" *Id.* (quoting *Sosna*, 419 U.S. at 399). Indeed, nothing in the Court's MBUSA Order affects the validity of the claims of class members in the four remaining states or their amenability to class treatment. The only conceivable basis for decertification would be the absence of a named plaintiff to represent the narrowed class. And just as in *Lynch*, that absence cannot justify extinguishing a class that has acquired its own legal status. The narrowed class must be given the opportunity for a member to step forward as its representative.

FCA cannot sidestep this binding authority by characterizing its motion as a mere request for reconsideration. Regardless of the label, the effect would be the same: decertification. And the sole ground for such decertification would be the absence of a class representative—the precise circumstance to which *Lynch* and *Birmingham Steel* apply. Reconsideration of the Court's North Carolina holding cannot magically erase the certification that has governed this litigation for nearly three years.

The procedural history of the FCA certification bolsters this point. FCA twice petitioned the Eleventh Circuit for interlocutory review of this Court's certification rulings under Rule 23(f), and the Eleventh Circuit twice declined to disturb them. *See FCA US LLC v. Boyd*, No. 23-90027

6

(11th Cir. Nov. 1, 2023); *FCA US LLC v. Boyd*, No. 23-90017 (11th Cir. Oct. 5, 2023). That is different than the procedural posture of the MBUSA Order, which issued before the Eleventh Circuit had any occasion to consider the certification against MBUSA, because MBUSA sought reconsideration before a Rule 23(f) petition would have been due. The FCA class, in contrast, has been certified for almost three years.

Finally, FCA observes that the Court has not yet directed notice to the class. (ECF No. 4914 at 4.) But FCA cites no authority suggesting that the timing of notice bears on whether a certified class must be afforded an opportunity to substitute a representative. The Supreme Court has made clear that certification alone is what confers on the class its independent legal status. *Sosna*, 419 U.S. at 399. That principle—not the dissemination of notice—is what drove the Eleventh Circuit and the former Fifth Circuit to require an opportunity for substitution.[2]

As *Lynch*, and *Birmingham Steel* require, therefore, if the Court concludes that Ms. O'Neal may not represent the narrowed the class, it should provide the class with sixty days to identify and add a qualified representative from among the tens of thousands of class members in the four remaining states.

## CONCLUSION

For the foregoing reasons, FCA's request to decertify the four-state class should be denied.

---

[2] Indeed, the only relevance of the disseminated notice in *Birmingham Steel* was that it may have defined the class in a way that may have excluded the named plaintiff. 353 F.3d at 1333–35. The Eleventh Circuit did not rely on the notice in reasoning that the class must be given a reasonable chance to find a replacement class representative. *Id.* at 1339–43.

Dated: June 26, 2026

Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Matthew P. Weinshall*
Peter Prieto (FBN 501492)
Matthew P. Weinshall (FBN 84783)
2525 Ponce de Leon
Suite 700
Coral Gables, FL  33134
Phone: (305) 358-2800
Fax: (305) 358-2382
Email:  pprieto@podhurst.com
           mweinshall@podhurst.com

***Chair Lead Counsel for Plaintiffs***

8

| | |
|---|---|
| **COLSON HICKS EIDSON**<br>Lewis S. "Mike" Eidson<br>mike@colson.com<br>Curtis Bradley Miner<br>curt@colson.com<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134<br>T: 305-476-7400<br><br>*Plaintiffs' Personal Injury Track Lead Counsel* | **SMITH LACIEN LLP**<br>Todd A. Smith<br>tsmith@smithlacien.com<br>70 W Madison St Suite 5770,<br>Chicago, IL 60602<br>(312) 509-8900<br><br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* |
| **BOIES, SCHILLER & FLEXNER LLP**<br>David Boies, Esq.<br>Motty Shulman (Fla Bar. No. 175056)<br>333 Main Street<br>Armonk, NY 10504<br>Tel:  (914) 749-8200<br>Fax:  (914) 749-8300<br>Email: dboies@bsfllp.com<br>          mshulman@bsfllp.com<br><br>Stephen N. Zack (Fla. Bar No. 145215)<br>100 Southeast 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel:  (305) 539-8400<br>Fax:  (305) 539-1307<br>Email: szack@bsfllp.com<br>          mheise@bsfllp.com<br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* | **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**<br>Elizabeth Cabraser<br>ecabraser@lchb.com<br>275 Battery St., Suite 3000<br>San Francisco, CA 94111-3339<br>T:    415-956-1000<br><br>David Stellings<br>250 Hudson Street, 8th Floor<br>New York, NY 10012<br>212-355-9500<br>dstellings@lchb.com<br><br>*Plaintiffs' Steering Committee* |

9

| | |
|---|---|
| **CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC**<br>James E. Cecchi<br>jcecchi@carellabyrne.com<br>5 Becker Farm Road<br>Roseland, NJ 07068-1739<br>T: 973 994-1700<br>f: 973 994-1744<br><br><br>*Plaintiffs' Steering Committee* | **BARON & BUDD, PC**<br>Roland Tellis<br>rtellis@baronbudd.com<br>David Fernandes<br>dfernandes@bardonbudd.com<br>Mark Pifko<br>mpifko@baronbudd.com<br>15910 Ventura Blvd.,<br>Suite 1600<br>Encino, CA 91436<br>T: 818-839-2333<br><br>J. Burton LeBlanc<br>9015 Bluebonnet Blvd.<br>Baton Rouge, LA 70810<br>T: 225-761-6463<br><br><br>*Plaintiffs' Steering Committee* |