UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 15-02599-CIV-MORENO**

IN RE: TAKATA AIRBAG PRODUCT
LIABILITY LITIGATION: ECONOMIC
LOSS TRACK CASES,

vs.

MERCEDEZ BENZ USA, LLC,

_____/

**ORDER PERMITTING PLAINTIFFS TO RESPOND TO
DEFENDANT MERCEDEZ-BENZ'S CHARTS PRESENTED AT HEARING**

THIS CAUSE came before the Court during the hearing on **July 15, 2026**, in which counsel

for Defendant Mercedez-Benz presented the Court with two charts in support of its Motion for

Summary Judgment. The Court has attached the charts to this Order. For the reasons stated in open

court, Plaintiffs are permitted to file a response to these charts for the Court's consideration. If

necessary, Defendant Mercedez-Benz may file a response to Plaintiffs' submission.

**ADJUDGED** that Plaintiff may file a response no later than **July 29, 2026**, and Defendant

may file a reply no later than **August 11, 2026**.

DONE AND ORDERED in Open Court at Miami, Florida, this ___15th___ of July 2026.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

**MBUSA REFERENCE CHART – JULY 15, 2026 MSJ HEARING**

| Plaintiff (State) | Claims | Basis for MSJ | MSJ Cite | Key Authority[1] |
|---|---|---|---|---|
| All Plaintiffs | • All Claims | Prudential mootness | 9–10 | *Winzler v. Toyota Motor Sales USA*, 681 F.3d 1208, 120 |
| | | Standing | 10 | *Malgeri v. Vitamins Because LLC*, 2022 WL 16635274 |
| Daphne Bridges (**N.C.**) | • Fraud<br>• NCUDTPA | Knowledge | 6–7 n.7 | *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 |
| | | Damages | 22–23 | *Sprinkle v. N.C. Wildlife Res. Comm'n*, 600 S.E.2d 473 |
| | | Reliance | 23 | *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (frau... *Va.*, 747 S.E.2d 220, 227 (N.C. 2013) (NCUDTPA) |
| | | Duty to disclose | 24–25 | *Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 733 (N.C. A |
| Susan Knapp (**Iowa**) | • Fraud<br>• Iowa CFA | Knowledge | 6–7 n.7 | *B&B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 27... *The Rsrv.*, 947 N.W.2d 225, at *8 (Iowa App. 2020) (I... |
| | | Damages | 32–33 | *Long v. McAllister*, 319 N.W.2d 256, 261 (Iowa 1982) |
| | | Reliance | 33 | *City of McGregor v. Janett*, 546 N.W.2d 616, 619 (Iow... *Corp.*, 820 F.3d 339, 349 (8th Cir. 2016) (Iowa CFA) |
| William Goldberg (**Wash.**) | • Fraud<br>• Wash. CPA | Knowledge | 6–7 n.7 | *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970... *Beaty v. Ford Motor Co.*, 854 F. App'x 845, 848 (9th C |
| | | Damages | 34 | *Thompson v. King Feed & Nutrition Serv.*, 105 P.3d 37 |
| | | Reliance | 34–35 | *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (en ba... *Sales, U.S.A.*, 472 P.3d 990, 996 (Wash. |
| | | Statute of limitations | 34 | Wash. Rev. Code § 4.16.080(4) (fraud); *id.* § 19.86.12... *Farm & Chem.*, 6 P.3d 104, 110 (Wash. App. 2000) |
| Bettie Jean Taylor (**Miss.**) | • Fraud | Knowledge | 6 n.7 | *Martin v. Winfield*, 455 So. 2d 762, 764 (Miss. 1984) |
| | | Damages | 38 | *Bell v. First Columbus Nat'l Bank*, 493 So. 2d 964, 97 |
| | | Reliance | 37 | *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, |
| | | Duty to disclose | 37 | *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1 |
| | | Statute of limitations | 37–38 | Miss. Code. § 15-1-49(1); *Brown v. McKee*, 242 So. 3 |
| | • Implied Warranty | Damages | 38 | *Bell v. First Columbus Nat'l Bank*, 493 So. 2d 964, 97 |
| | | Opportunity to cure | 36 | *Watson Quality Food, Inc. v. Casanova*, 999 So. 2d 83 |
| | | Manifestation/use | 36 & n.20 | *Ford Motor Co. v. Fairley*, 398 So. 2d 216, 219 (Miss. |
| | | Statute of limitations | 36–37 | Miss. Code § 75-2-725(1)-(2); *Forbes v. GM*, 993 So. |
| Paulette Calhoun (**Ga.**) | • Fraud<br>• Ga. FBPA | Knowledge | 6–7 n.7 | *Paulk v. Thomasville Ford Lincoln Mercury*, 732 S.E.2 |
| | | Damages | 39–40 | *John Thurmond & Assocs., Inc. v. Kennedy*, 668 S.E.2 |
| | | Reliance | 38–39 | *Jimenez v. Houseboats on Lanier, Inc.*, 899 S.E.2d 334 |
| | | Duty to disclose | 39 | *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1351 ( |

[1] SEE MSJ AT D.E. 4800 FOR FURTHER AUTHORITY.

## MBUSA'S LACK OF PRE-SALE KNOWLEDGE – JULY 15, 2026 MSJ HEARING

**There is no genuine dispute that MBUSA had no pre-sale knowledge of the alleged defect in Class Vehicles.**

- It remains undisputed that MBUSA was not involved in research, development, analysis, or testing of Takata inflators or propellant. D.E. 4802 ¶ 4; D.E. 4834 ¶ 4.

- It also is still undisputed that MBUSA had no communications with Takata about the inflators' design prior to the recall. D.E. 4802 ¶ 5; D.E. 4834 ¶ 5.

- Plaintiffs' own experts agree that, as a distributor, MBUSA would not know the design of the Takata inflators. D.E. 4801-39 (Baglini Dep.) at 336:14–338:22; D.E. 4801-40 (Renz Dep.) at 420:18–421:2, 426:5–429:25.

- And R. Thomas Brunner, the head of Technical Compliance at MBUSA who has worked for the Company for over 27 years, clearly averred: "MBUSA was not aware that the Class Vehicles came equipped with Takata airbags, and certainly was not aware of the type of propellant used in the inflators" in Class Vehicles. D.E. 4801-10 ¶ 5.

- Thus, in reality, MBUSA's lack of knowledge is undisputed. Plaintiffs' only opposition is a smokescreen. For example, plaintiffs repeatedly assert MBUSA's "awareness" of the alleged defect without citing any evidence. D.E. 4833 at 1.

- When plaintiffs do cite evidence they claim shows knowledge, review of that evidence shows it does not address the relevant issues. D.E. 4834 at 1–2, 11–37. Plaintiffs apparently hope that if they throw enough irrelevant citations against the wall, the Court will throw up its hands and presume there *must* be a genuine dispute. But plaintiffs cannot create a *genuine* dispute of fact by citing a large volume of irrelevant evidence. None of the evidence they cite suggests that MBUSA had pre-sale knowledge. For example:

  o Plaintiffs focus on the QEC receiving Takata inflators—but that happened only *after the recall*, not prior to the sale of plaintiffs' vehicles—so it cannot possibly show any pre-sale knowledge of a defect. D.E. 4811-1 (Brunner Dep.) at 144:13–145:25; *e.g.*, D.E. 4808 at 4 (citing D.E. 4805 ¶¶ 143–56); *see* Chart *infra*.

  o As another example, plaintiffs often discuss Takata facilities and activities by separate entities that are *not* MBUSA. *E.g.*, D.E. 4808 at 5–6 (citing D.E. 4805 ¶¶ 104–22); *see* Chart *infra*. That evidence obviously cannot show that *MBUSA* had pre-sale knowledge.

  o Plaintiffs cite some evidence they claim shows that MBUSA knew that Takata was a supplier *in some capacity. E.g.*, D.E. 4808 at 4 (citing 150–57, 196–98); *see* Chart *infra*. But that is both irrelevant and unremarkable—Takata supplied many different components to automotive companies. It does not suggest MBUSA knew anything about PSAN inflators or their use in any Mercedes-Benz vehicles.

  o In sum, plaintiffs' evidence fails to create a disputed issue of *material* fact because their evidence does not discuss the at-issue PSAN inflators and/or MBUSA's knowledge that Class Vehicles used the at-issue inflators.

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] |
|---|---|---|
| Jacksonville Quality Engineering Center (QEC) assessed and audited Takata inflators, which allegedly "often revealed significant issues." | ¶¶ 143–56 | • Evidence does not relate to, or show any "issues" with, the at-issue inflators. D.E. 4813-45–58 (Exs. 97–110); D.E. 4814-1–20 (Exs. 111–30). |
| The QEC has responsibility over Takata's Monclova, Mexico facility. | ¶¶ 95, 145–46 | • Cited facts (i.e., ¶¶ 95, 145–46) do not support this assertion. <br> • Assertion does not show MBUSA's involvement. <br> • Even if true, such "responsibility" does not show MBUSA knew of a defect in the at-issue inflators. |
| In May 2007, MBUSA and Daimler employees told Takata that evaluation for M-, R-, and GL-Class parts was transferred to the QEC. | ¶ 151 | • Cited fact (¶ 151) does not support this assertion or address the at-issue inflators. <br> • Even if true, such "evaluation" does not show MBUSA knew of a defect in the at-issue inflators. |
| The QEC coordinated communications and meetings among MBUSA, Daimler, and Takata, sharing pre-development component information. | ¶¶ 149–56 | • Evidence does not prove MBUSA's involvement, sharing of information, or use of Takata PSAN inflators. D.E. 4814-9–15 (Exs. 119–25). <br> • General communications do not show MBUSA knew of a defect in the at-issue inflators. |
| Takata participated in 2012 Supplier Day at the QEC, organized by MBUSA, as a "Key Supplier." | ¶¶ 150–57, 196–98 | • Takata supplied many different components—this does not show MBUSA knew of a defect in the at-issue inflators. <br> • Evidence of Takata's "participation" does not prove Takata or MBUSA's involvement. D.E. 4805 ¶¶ 153, 155–56 (citing Exs. 121–22, 125, 130); D.E. 4814-11, -12, -15, -20 (Exs.). |
| The dangers of ammonium nitrate were well-known and publicized via explosions in Texas City, West Texas, and Beirut. | ¶¶ 94–95 | • "[D]angers of ammonium nitrate" do not show MBUSA knew the at-issue inflators were used. <br> • Such explosions do not show knowledge of a defect. Plaintiffs' expert testified that PSAN is distinct from ammonium nitrate. D.E. 4174-1 at 11:11–15. |
| In 2006, Takata's Monclova facility exploded. Daimler engineers audited the plant before and after the explosion. | ¶¶ 95, 105, 117 | • Assertion does not involve MBUSA. <br> • Plant explosion does not show MBUSA knew of a defect in the at-issue inflators. |
| MBUSA and Daimler's predecessors developed the first chemical propellant airbag and filed a patent in 1971. | ¶¶ 97–98 | • Evidence does not prove MBUSA's involvement. D.E. 4812-2–5 (Exs. 17–20). <br> • This does not show MBUSA knew of a defect in the at-issue inflators. |
| MBUSA and Daimler had a joint venture with Takata: Inflation Systems, Inc. | ¶ 99 | • Evidence does not prove MBUSA's involvement. D.E. 4812-6 (Ex. 21). <br> • A "joint venture" does not show MBUSA knew of a defect in the at-issue inflators. |
| MBUSA's predecessor helped create the USCAR inflator technical requirements, reflecting concerns with PSAN inflators due to ammonium nitrate instability. | ¶¶ 101–03 | • Evidence does not prove MBUSA's involvement. D.E. 4337-65; D.E. 4812-9 (Ex. 24). <br> • Evidence refers to ammonium nitrate, not PSAN. D.E. 4337-65 at 24, 58–59. Plaintiffs' expert testified that PSAN is distinct from ammonium nitrate. D.E. 4174-1 at 11:11–15. |
| From 2002 to 2010, Daimler engineers visited Takata facilities, conducted audits, and observed tests revealing PSAN inflator issues. | ¶¶ 104–22 | • Assertion does not involve MBUSA. <br> • Evidence of "issues" does not prove at-issue airbags had PSAN inflators (D.E. 4812-16, -19, -20, -23, -24, -33, -36, -37, D.E. 4813-1; Exs. 31, 34–35, 38–39, 48, 51–53), does not support plaintiffs' assertion (D.E. 4812-30; Ex. 45), and are internal Takata communications not involving MBUSA (D.E. 4812-34, -35, D.E. 4813-2, -3; Exs. 49–50, 54–55). <br> • Visits, audits, and testing do not show MBUSA knew of a defect in the at-issue inflators. |
| In 2006, a Daimler engineer saw an inflator become unusually bright, with metal parts found in the cushion, during deployment testing at Monclova. | ¶ 108 | • Assertion does not involve MBUSA. <br> • Evidence does not show the at-issue airbag had a PSAN inflator. D.E. 4812-19 (Ex. 34). |
| In 2006, Daimler engineers saw a Takata SDI inflator rupture during deployment testing. | ¶¶ 108–12 | • Assertion does not involve MBUSA. <br> • Evidence does not show the inflator used PSAN. D.E. 4812-20 (Ex. 35). |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

## MBUSA'S LACK OF PRE-SALE KNOWLEDGE – JULY 15, 2026 MSJ HEARING

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] |
|---|---|---|
| In 2007, a Renault engineer spoke out against the use of ammonium nitrate, referring to Takata's inability to stabilize the compound. | ¶ 107 | • Assertion does not involve MBUSA.<br>• Renault's view does not show MBUSA knew of a defect in the at-issue inflators. |
| As Daimler's U.S. agent, MBUSA had access to engineering and technical information about Takata airbags. | ¶¶ 124–30 | • Evidence does not support this assertion. D.E. 4811-1 at 159:10–161:14; D.E. 4813-4 at 15:1–5, 15:10–19, 17:7–15, 17:23–18:2, 76:15–20; D.E. 4805 ¶¶ 116–17, 123–24, 126–30, 133–35, 152, 162, 174.<br>• Even if true, access to such information does not show *pre-sale* knowledge of a defect in the at-issue inflators. |
| MBUSA was responsible for monitoring vehicle safety and submitting reports (including reports on Takata inflators) to NHTSA. | ¶¶ 125–30, 161–62, 181–83, 188–89 | • Evidence (with proper context) shows testimony that Daimler, not MBUSA, determines whether there are safety concerns. D.E. 4805 ¶ 126 (citing D.E. 4339-20 at 49); D.E. 4339-20 (Tait Dep.) at 49:19–50:2.<br>• Safety reporting does not show *pre-sale* knowledge of a defect in the at-issue inflators, especially as *Takata* filed the recall-initiating reports here. |
| MBUSA plays a role in recalls and safety campaigns. | ¶¶ 125–26, 133–35, 182–87, 190–95 | • Evidence (with proper context) shows MBUSA was not involved in at-issue matters. D.E. 4805 ¶ 182 (citing D.E. 4339-20 at 162, 164); D.E. 4339-20 (Tait Dep.) at 163:16–19.<br>• *Post*-sale recall implementation does not show *pre-sale* knowledge of a defect in the at-issue inflators. |
| In a 2006 recall affecting airbags in certain C-Class vehicles, Takata PSAN inflators were used as replacements and later subject to recall. | ¶ 133 | • Evidence does not show the replacement airbags had PSAN inflators or *pre-sale* knowledge of a defect. D.E. 4813-24 (Ex. 76). |
| In April 2010, Daimler expressed concerns over "ballistic differences" and heat age testing results for PSDI-5. A high-moisture ballistic "flyer" was found in PV testing of another PSAN inflator. | ¶¶ 118–19 | • Assertion does not involve MBUSA.<br>• Evidence of "concerns" does not show the rupture was related to a PSAN inflator. D.E. 4812-33 (Ex. 48).<br>• Evidence of "flyer" is an internal Takata communication—not involving MBUSA. D.E. 4812-34 (Ex. 49). |
| In September 2010, a PSAN inflator showed a ballistic anomaly during testing. | ¶ 120 | • Assertion does not involve MBUSA.<br>• Evidence is an internal Takata communication—not involving MBUSA. D.E. 4812-35 (Ex. 50). |
| In November 2010, Daimler requested a meeting with Takata to discuss PSAN inflators' failure to meet certain requirements after exposure to environmental conditions. | ¶ 121 | • Assertion does not involve MBUSA.<br>• Evidence refers to "retractor acceleration and tilt-lock" requirements, not PSAN inflators. D.E. 4812-36 (Ex. 51). |
| Daimler granted Takata's requests for deviations from safety specifications, approved use of inflators due to time constraints, and later required a move to desiccated PSAN inflators. | ¶¶ 111–16, 118–23 | • Assertion does not involve MBUSA.<br>• Evidence of "deviations" does not show they involved "safety specifications." D.E. 4812-26, -27 (Exs. 41–42). |
| Since 2008, automakers recalled Takata-equipped vehicles due to the risk of inflator ruptures. MBUSA and Daimler engineers and executives closely monitored and discussed these recalls. | ¶¶ 163–66, 168–69, 172–73 | • Cited facts reflect improper speculation (¶ 172) and do not prove MBUSA's involvement (¶¶ 163, 165–66, 168–69, 173).<br>• Other manufacturers' recalls do not show MBUSA knew of a defect in Mercedes-Benz vehicles.<br>• Evidence (with proper context) shows that MBUSA merely had a general concern about recalls that affect its vehicles and customers—not knowledge that at-issue vehicles had PSAN inflators. D.E. 4805 ¶¶ 164, 172 (citing D.E. 4339-20 at 54–55, 59–60); D.E. 4339-20 (Tait Dep.) at 54:19–55:12. |
| Daimler controlled the process of sourcing Takata inflators for Mercedes vehicles. | ¶¶ 104–23 | • Assertion does not involve MBUSA.<br>• Sourcing inflators does not show MBUSA knew of a defect in the at-issue inflators. |
| In 2007, Daimler met with Takata to discuss additional ammonium nitrate testing, helium leak testing, and humidity effects. | ¶ 111 | • Assertion does not involve MBUSA or reference the at-issue inflators in Class Vehicles. |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF). Page 3 of 3

[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).