# CHART # 2
# (IN RESPONSE TO MBUSA's "LACK OF PRE-SALE KNOWLEDGE" CHART)

**PLAINTIFFS' RESPONSE TO MBUSA'S "LACK OF PRE-SALE KNOWLEDGE" CHART**

**– JULY 15, 2026 MSJ HEARING**

> With respect to each of the issues raised by MBUSA below, Plaintiffs note that a defendant's knowledge or intent is generally considered a factual question best left for the jury. *See, e.g., Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994). Circumstantial evidence of knowledge, of course, is equally valid as direct evidence. *See* Eleventh Circuit Pattern Jury Instructions, Civil Cases 3.3 (2025) ("In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions."). While no single fact, in isolation, may be sufficient to establish MBUSA's knowledge, it is the accumulation of all of the facts set forth in Plaintiffs' Response to MBUSA's Statement of Undisputed Material Facts (D.E. 4805) ("PSOF") that establish knowledge.

| Plaintiffs' Argument | PSOF | Genuine Dispute of Material Fact |
|---|---|---|
| Jacksonville Quality Engineering Center (QEC) assessed and audited Takata inflators, which allegedly "often revealed significant issues." | ¶¶ 143–56 | • QEC's quality engineers conducted a Quality Analysis Audit at Takata in Mexico in October 2011, and subsequently informed Takata that its analysis process failed to meet Daimler requirements. Takata internally lamented: "Issues like this cast a doubt to the entire organization when it gets out. It's not acceptable"; and "When this gets out, its going to be a black eye." D.E. 4813-49–52 (Exs. 101-104). |
| The QEC has responsibility over Takata's Monclova, Mexico facility. | ¶¶ 95, 145–46 | • According to MBUSA's own descriptions of the QEC Jacksonville, it "focuses on NAFTA suppliers and the parts they produce independent for the carline the parts are used for." D.E. 4830-27 (Ex. 125 at p. 5). Takata's manufacturing facilities in Mexico [a NAFTA county] supplied inflators for Mercedes vehicles. *See, e.g.,* D.E. 4812-20.<br><br>• MBUSA's quality engineers worked with Daimler's quality engineers at the QEC. D.E. 4813-45 (Ex. 97) ("With over 70 personnel from various engineering and logistics disciplines, representing a diverse collection of work experience and backgrounds, the Quality Evaluation Center in Jacksonville is one of only two operational units of its kind outside of Germany. The QEC team includes Daimler Quality personnel, which places engineers closer to the market and to the dealers served by MBUSA.") |
| In May 2007, MBUSA and Daimler employees told Takata that evaluation for M-, R-, and GL-Class parts was transferred to the QEC. | ¶ 151 | • An e-mail from MBUSA's QEC to Takata states precisely that. *See* PSOF ¶ 145 (Ex. 100) (e-mail informing Takata that "in May 2007[,] the responsibilities for QEC part evaluation for the M-, R-, and GL-class were transferred to the Mercedes-Benz QEC in Jacksonville[,] Florida."). [Note: Plaintiffs' Response mistakenly cited PSOF ¶ 151.] |
| The QEC coordinated communications and meetings among MBUSA, Daimler, and Takata, sharing pre-development component information. | ¶¶ 149–56 | • The QEC's own presentations to suppliers, such as the "205 Launch Concept & Corrective Action Process," point out the sharing of information, including with MBUSA, by the supplier (*i.e.*, Takata) throughout the pre-launch process. D.E. 4814-10 (Ex. 120) ("Launch focus is on the corrective action process with the supplier and communication of results to all involved departments."). |
| Takata participated in 2012 Supplier Day at the QEC, organized by MBUSA, as a "Key Supplier." | ¶¶ 150–57, 196–98 | • Presentations at the Supplier Day, such as the "205 Launch Concept & Corrective Action Process," point out the sharing of information, including with MBUSA, by the supplier (i.e., Takata) throughout the pre-launch process. D.E. 4814-10 (Ex. 120) ("Launch focus is on the corrective action process with the supplier and communication of results to all involved |

| Plaintiffs' Argument | PSOF | Genuine Dispute of Material Fact |
|---|---|---|
| | | departments."). <br><br> • The point of the evidence is to show MBUSA's involvement in communications with suppliers and knowledge that Takata was a supplier. |
| The dangers of ammonium nitrate were well-known and publicized via explosions in Texas City, West Texas, and Beirut. | ¶¶ 94–95 | • Plaintiff's expert (James Baglini) also explained: "It has also long been established that the effectiveness of phase stabilized ammonium nitrate (PSAN) can vary widely and, particularly in commercial automotive airbag applications, it is not a viable solution as an extended use propellant. <u>That is because the various "phase stabilization" schemes do not change the fundamentally unstable nature of ammonium nitrate in any permanent way.</u>" ECF No. 4173-2 at p. 14. |
| In 2006, Takata's Monclova facility exploded. Daimler engineers audited the plant before and after the explosion. | ¶¶ 95, 105, 117 | • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| MBUSA and Daimler's predecessors developed the first chemical propellant airbag and filed a patent in 1971. | ¶¶ 97–98 | • The point of the evidence is to show Daimler's familiarity with chemical propellant airbag design and development. <br><br> • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| MBUSA and Daimler had a joint venture with Takata: Inflation Systems, Inc. | ¶ 99 | • The point of the evidence is to show Daimler's long and close history with Takata. <br><br> • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| MBUSA's predecessor helped create the USCAR inflator technical requirements, reflecting concerns with PSAN inflators due to ammonium nitrate instability. | ¶¶ 101–03 | • The USCAR inflator technical requirements require "Ammonium Nitrate containing propellants . . . to undergo added stability evaluation, D.E. 4337-65 at 24, and refer to "all propellants containing Ammonium Nitrate", *id.* at 58–59. Phase-Stabilized Ammonium Nitrate (PSAN), by definition, contains Ammonium Nitrate. <br><br> • Plaintiff's expert (James Baglini) also stated: "the various 'phase stabilization' schemes do not change the fundamentally unstable nature of ammonium nitrate in any permanent way." ECF No. 4173-2 at p.14. |
| From 2002 to 2010, Daimler engineers visited Takata facilities, conducted audits, and observed tests revealing PSAN inflator issues. | ¶¶ 104–22 | • The issues identified include a DCX engineer personally witnessing a failure of an SDI inflator in May 2006 during testing where "Metalparts [sic] were found inside the cushion after deployment." D.E. 4812-19. <br><br> • The issues identified also include a DCX engineer personally witnessing a failure of an SDI inflator in August 2006, causing him to inform Takata "that he can not accept an inflator with such an behavior in on[e] of the vehicles he is responsible for." D.E. 4812-20. <br><br> • The SDI inflator is one of the types of PSAN inflators recalled in Mercedes vehicles. D.E. 4174-4 at p.2 n.2 ("the variants of inflators in recalled driver- and passenger-side MercedesBenz Sprinters (MY2010-2017) are designated SDI and SPI, respectively.") |

| Plaintiffs' Argument | PSOF | Genuine Dispute of Material Fact |
|---|---|---|
| | | • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| In 2006, a Daimler engineer saw an inflator become unusually bright, with metal parts found in the cushion, during deployment testing at Monclova. | ¶ 108 | • The incident involved an SDI inflator (D.E. 4812-19 (Ex. 34)), which is one of the types of PSAN inflators recalled in Mercedes vehicles. D.E. 4174-4 at p.2 n.2 ("the variants of inflators in recalled driver- and passenger-side MercedesBenz Sprinters (MY2010-2017) are designated SDI and SPI, respectively.")  <br><br> • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| In 2006, Daimler engineers saw a Takata SDI inflator rupture during deployment testing. | ¶¶ 108–12 | • The SDI inflator is one of the types of PSAN inflators recalled in Mercedes vehicles. D.E. 4174-4 at p.2 n.2 ("the variants of inflators in recalled driver- and passenger-side MercedesBenz Sprinters (MY2010-2017) are designated SDI and SPI, respectively.")  <br><br> • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| In 2007, a Renault engineer spoke out against the use of ammonium nitrate, referring to Takata's inability to stabilize the compound. | ¶ 107 | • Takata e-mail stating that "the leader of Renault (which also owns Nissan) is adamantly against the use of AN in air bag propellants . . . is actively campaigning to remove all Takata propellants containing AN, from all European car companies . . . [a]pparently he is friends with top people at Mercedes, Volkswagen, etc." D.E. 4812-18 (Ex. 33). |
| As Daimler's U.S. agent, MBUSA had access to engineering and technical information about Takata airbags. | ¶¶ 124–30 | • MBUSA's Senior Principal for Technical Compliance, Thomas Brunner, testified that "MBUSA is the designated agent for Daimler to the agency [NHTSA] and communications will flow through MBUSA and then back to Daimler"; that "[w]ith a NHTSA request and with regulatory reporting, those are submitted . . . by MBUSA on behalf od Daimler to NHTSA"; and that he could not think of any instance where MBUSA requested information from Daimler regarding Takata airbags and had not received it. D.E. 4811-1 at 158:20-161:2. |
| MBUSA was responsible for monitoring vehicle safety and submitting reports (including reports on Takata inflators) to NHTSA. | ¶¶ 125–30, 161–62, 181–83, 188–89 | • MBUSA's Senior Principal for Technical Compliance, Thomas Brunner, testified that MBUSA's safety reporting department was responsible for "obligations we have for reporting safety topics and obligations to the government," including TREAD Act reporting. D.E. 4811-1 at 30:20-31:19. [TREAD Act reporting requirements include, among other things reporting of possible defects. 49 USC § 30166 (m)(3)(C).]  <br><br> MBUSA's General Manager of Engineering Services, David Tait, testified "our role is - we administer, you know, safety type of actions and things like that"; and that "we administer the campaign based on the information that we're given by the manufacturer. That's our role." D.E. 4339-20 at 30:17-21 & 102:8-10. |
| MBUSA plays a role in recalls and safety campaigns. | ¶¶ 125–26, 133–35, 182–87, 190–95 | • MBUSA's Senior Principal for Technical Compliance, Thomas Brunner, testified that MBUSA's safety reporting department was responsible for "obligations we have for reporting safety topics and obligations to the government," including TREAD Act reporting. D.E. 4811-1 at 30:20-31:19. [TREAD Act |

| Plaintiffs' Argument | PSOF | Genuine Dispute of Material Fact |
|---|---|---|
| | | reporting requirements include, among other things reporting of possible defects. 49 USC § 30166 (m)(3)(C).]<br><br>• MBUSA's General Manager of Engineering Services, David Tait, testified "our role is - we administer, you know, safety type of actions and things like that"; and that "we administer the campaign based on the information that we're given by the manufacturer. That's our role." D.E. 4339-20 at 30:17-21 & 102:8-10. |
| In a 2006 recall affecting airbags in certain C-Class vehicles, Takata PSAN inflators were used as replacements and later subject to recall. | ¶ 133 | • NHTSA recall information for the 2005 C-Class vehicles indicates that the vehicles were subject to both the 2006 recall, which did not relate to risk of rupture and which resulted in replacement of air bag inflators, and the subsequent recalls due to the use of Takata PSAN inflators. D.E. 4813-24 (Ex. 76).<br><br>• MBUSA owned and operated at least one Mercedes dealership directly, D.E. 4339-3 at 22:7-18, and so would have been directly involved in placing Takata inflators in customer vehicles. |
| In April 2010, Daimler expressed concerns over "ballistic differences" and heat age testing results for PSDI-5. A high-moisture ballistic "flyer" was found in PV testing of another PSAN inflator. | ¶¶ 118–19 | • The incident involved a PSDI-5 inflator, which is one of the Takata PSAN inflators that was subject to recall in Mercedes vehicles.  D.E. 4174-4 at pp. 18-19.<br><br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| In September 2010, a PSAN inflator showed a ballistic anomaly during testing. | ¶ 120 | • MBUSA is correct that the document is an internal Takata document, but it is relevant to show Takata's deficiencies as a supplier of inflators intended for Mercedes vehicles. |
| In November 2010, Daimler requested a meeting with Takata to discuss PSAN inflators' failure to meet certain requirements after exposure to environmental conditions. | ¶ 121 | • MBUSA is correct that e-mail refers to "retractor acceleration and tilt-lock" requirements, not to PSAN inflators, D.E. 4812-36 (Ex. 51), but the evidence is relevant to knowledge of Takata's deficiencies as a supplier more generally.<br><br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| Daimler granted Takata's requests for deviations from safety specifications, approved use of inflators due to time constraints, and later required a move to desiccated PSAN inflators. | ¶¶ 111–16, 118–23 | • The deviation that was requested was not due to a minor or inconsequential issue; it was because "DV [design validation] and PV [production validation] process for this inflator has not been completed yet." D.E. 4812-27 (Ex. 42).<br><br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |

| | | |
|---|---|---|
| Since 2008, automakers recalled Takata-equipped vehicles due to the risk of inflator ruptures. MBUSA and Daimler engineers and executives closely monitored and discussed these recalls. | ¶¶ 163–66, 168–69, 172–73 | • MBUSA's General Manager of Engineering Services, David Tait, testified that "in the very beginning of the Takata recall, I think we're always concerned - we're always asking the question, who else is affected by that?"; and that "specifically to Takata, . . . the first indicators that we had was some incidents that were happening with Honda vehicles. . . . so I vaguely remember seeing a report on that and then asking Tom [Brunner], 'Hey, what does that mean for us?' Because I knew that Takata was one of the manufacturers that we -- that we used in our vehicles" D.E. 4339-20 at 54:19-23 & 59:18-60:2.<br><br>• One of MBUSA's safety engineers, Bibi Analil, testified that she may have been aware of issues with Takata airbags as early as 2012. D.E. 4339-13 at 37:10-21. |
| Daimler controlled the process of sourcing Takata inflators for Mercedes vehicles. | ¶¶ 104–23 | • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |
| In 2007, Daimler met with Takata to discuss additional ammonium nitrate testing, helium leak testing, and humidity effects. | ¶ 111 | • The additional testing involved "ammonium nitrate (AN) propellant in use today in the gas generators SDI, PSDI, SPI, PSPI and SSI" D.E. 4812-24 (Ex. 39), which include types of PSAN inflators recalled in Mercedes vehicles. D.E. 4174-4 at p.2 n.2 ("the variants of inflators in recalled driver- and passenger-side MercedesBenz Sprinters (MY2010-2017) are designated SDI and SPI, respectively.")<br><br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. |