# Exhibit A

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE – JULY 15, 2026 MSJ HEARING**

**There is no genuine dispute that MBUSA had no pre-sale knowledge of the alleged defect in Class Vehicles.**

- It remains undisputed that MBUSA was not involved in research, development, analysis, or testing of Takata inflators or propellant. D.E. 4802 ¶ 4; D.E. 4834 ¶ 4.

  - **No dispute.** Plaintiffs do not respond to this point. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

- It also is still undisputed that MBUSA had no communications with Takata about the inflators' design prior to the recall. D.E. 4802 ¶ 5; D.E. 4834 ¶ 5.

  - **No dispute.** Plaintiffs do not respond to this point. *See Celotex*, 477 U.S. at 325 (1986) (plaintiffs' burden to show dispute).

- Plaintiffs' own experts agree that, as a distributor, MBUSA would not know the design of the Takata inflators. D.E. 4801-39 (Baglini Dep.) at 336:14–338:22; D.E. 4801-40 (Renz Dep.) at 420:18–421:2, 426:5–429:25.

  - **No dispute.** Plaintiffs do not respond to this point. *See Celotex*, 477 U.S. at 325 (1986) (plaintiffs' burden to show dispute**).**

- And R. Thomas Brunner, the head of Technical Compliance at MBUSA who has worked for the Company for over 27 years, clearly averred: "MBUSA was not aware that the Class Vehicles came equipped with Takata airbags, and certainly was not aware of the type of propellant used in the inflators" in Class Vehicles. D.E. 4801-10 ¶ 5.

  - **No dispute.** Plaintiffs do not respond to this point. *See Celotex*, 477 U.S. at 325 (1986) (plaintiffs' burden to show dispute).

- Thus, in reality, MBUSA's lack of knowledge is undisputed. Plaintiffs' only opposition is a smokescreen. For example, plaintiffs repeatedly assert MBUSA's "awareness" of the alleged defect without citing any evidence. D.E. 4833 at 1.

  - **No dispute.** Plaintiffs do not respond to this point. *See Celotex*, 477 U.S. at 325 (1986) (plaintiffs' burden to show dispute).

- When plaintiffs do cite evidence they claim shows knowledge, review of that evidence shows it does not address the relevant issues. D.E. 4834 at 1–2, 11–37. Plaintiffs cannot create a *genuine* dispute of fact by citing a large volume of irrelevant evidence. None of the evidence they cite suggests that MBUSA had pre-sale knowledge. For example:

  - Plaintiffs focus on the QEC receiving Takata inflators—but that happened only *after the recall*, not prior to the sale of plaintiffs' vehicles—so it cannot possibly show any pre-sale knowledge of a defect. D.E. 4811-1 (Brunner Dep.) at 144:13–145:25; *e.g.*, D.E. 4808 at 4 (citing D.E. 4805 ¶¶ 143–56); *see* Chart *infra*.

    - **No dispute.** Plaintiffs do not respond to this point. *See Celotex*, 477 U.S. at 325 (1986) (plaintiffs' burden to show dispute).

  - As another example, plaintiffs often discuss Takata facilities and activities by separate entities that are *not* MBUSA. *E.g.*, D.E. 4808 at 5–6 (citing D.E. 4805 ¶¶ 104–22); *see* Chart *infra*. That evidence obviously cannot show that *MBUSA* had pre-sale knowledge.

    - **No dispute.** Plaintiffs do not respond to this point. *See Celotex*, 477 U.S. at 325 (1986) (plaintiffs' burden to show dispute).

  - Plaintiffs cite some evidence they claim shows that MBUSA knew that Takata was a supplier *in some capacity. E.g.*, D.E. 4808 at 4 (citing 150–57, 196–98); *see* Chart *infra*. But that is both irrelevant and unremarkable—Takata supplied many different components to automotive companies. It does not suggest MBUSA knew anything about PSAN inflators or their use in any Mercedes-Benz vehicles.

    - **No dispute.** Plaintiffs do not respond to this point. *See Celotex*, 477 U.S. at 325 (1986) (plaintiffs' burden to show dispute).

  - In sum, plaintiffs' evidence fails to create a disputed issue of *material* fact because their evidence does not discuss the at-issue PSAN inflators and/or MBUSA's knowledge that Class Vehicles used the at-issue inflators.

    - **No dispute.** Plaintiffs do not respond to this point. *See Celotex*, 477 U.S. at 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| Jacksonville Quality Engineering Center (QEC) assessed and audited Takata inflators, which allegedly "often revealed significant issues." | ¶¶ 143–56 | • Evidence does not relate to, or show any "issues" with, the at-issue inflators. D.E. 4813-45–58 (Exs. 97–110); D.E. 4814-1–20 (Exs. 111–30). | • QEC's quality engineers conducted a Quality Analysis Audit at Takata in Mexico in October 2011, and subsequently informed Takata that its analysis process failed to meet Daimler requirements. Takata internally lamented: "Issues like this cast a doubt to the entire organization when it gets out. It's not acceptable"; and "When this gets out, its going to be a black eye." D.E. 4813-49–52 (Exs. 101-104). | • These documents cannot possibly relate to at-issue inflators, as it is undisputed there were no at-issue part failures in MB vehicles to assess in or prior to 2011. *See, e.g.*, p. 1, *supra*; D.E. 4808 at 1 (only claim of at-issue part failure in the record by plaintiffs occurred on November 7, 2020). The documents refer only to QEC "forwarding warranty parts to" Takata in 2011. D.E. 4813–49-52. If anything, the documents indicate they relate to Takata ("TPAG")-supplied <u>wheels</u>. D.E. 4813-52 at ("review their warranty process for wheels"). <br>• Moreover, the documents relate only to "an assessment of a supplier's analysis procedures." D.E. 4813–49-52; D.E. 4812-50 (making clear that D.E. 4812-51 is merely an enclosure). This does not show the QEC was involved in analyzing Takata parts—much less at-issue airbags. <br>• The undisputed evidence is that MBUSA was only involved in *post*- recall implementation, which does not show *pre-sale* knowledge of a defect in the at-issue inflators. *See* D.E. 4811-1 at 144:13–145:25 (describing collection only of returned inflators). |
| The QEC has responsibility over Takata's Monclova, Mexico facility. | ¶¶ 95, 145–46 | • Cited facts (i.e., ¶¶ 95, 145–46) do not support this assertion. <br>• Assertion does not show MBUSA's involvement. <br>• Even if true, such "responsibility" does not show MBUSA knew of a defect in the at-issue inflators. | • According to MBUSA's own descriptions of the QEC Jacksonville, it "focuses on NAFTA suppliers and the parts they produce independent for the carline the parts are used for." D.E. 4830-27 (Ex. 125 at p. 5). Takata's manufacturing facilities in Mexico [a NAFTA county] supplied inflators for Mercedes vehicles. *See, e.g.,* D.E. 4812-20. <br>• MBUSA's quality engineers worked with Daimler's quality engineers at the QEC. D.E. 4813-45 (Ex. 97) ("With over 70 personnel from various engineering and logistics disciplines, representing a diverse collection of work experience and | • These documents cannot possibly relate to at-issue inflators, as it is undisputed there were no at-issue part failures in MB vehicles in or prior to 2014, the latest date of the cited documents. *See, e.g.*, p. 1, *supra*; D.E. 4808 at 1 (plaintiffs claim at-issue part failure on November 7, 2020). The documents only show that the QEC analyzes certain "field parts returned from the US market," not that the QEC is "responsible" for anything relevant. <br>• "[F]ocus[]" on a supplier does not show responsibility over its facilities—much less the at-issue parts—and "responsibility" does not show MBUSA knew of a defect in the at-issue inflators. <br>• Plaintiffs' exhibit shows Daimler personnel "places engineers closer . . . to the *dealers* served by MBUSA." D.E. 4813-45 (emphasis added). And again, these documents do not show involvement with the at-issue inflators at all. |

---

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| | | | backgrounds, the Quality Evaluation Center in Jacksonville is one of only two operational units of its kind outside of Germany. The QEC team includes Daimler Quality personnel, which places engineers closer to the market and to the dealers served by MBUSA.") | |
| In May 2007, MBUSA and Daimler employees told Takata that evaluation for M-, R-, and GL-Class parts was transferred to the QEC. | ¶ 151 | • Cited fact (¶ 151) does not support this assertion or address the at-issue inflators.<br>• Even if true, such "evaluation" does not show MBUSA knew of a defect in the at-issue inflators. | • An e-mail from MBUSA's QEC to Takata states precisely that. *See* PSOF ¶ 145 (Ex. 100) (e-mail informing Takata that "in May 2007[,] the responsibilities for QEC part evaluation for the M-, R-, and GL-class were transferred to the Mercedes-Benz QEC in Jacksonville[,] Florida."). [Note: Plaintiffs' Response mistakenly cited PSOF ¶ 151.] | • This document cannot possibly relate to at-issue inflators, as it is undisputed there were no at-issue part failures in MB vehicles prior to the recall. *See, e.g.*, p. 1, *supra*; D.E. 4808 at 1 (plaintiffs claim at-issue part failure on November 7, 2020).<br>• In this regard, the e-mail does not refer to airbags <u>at all</u>.<br>• Referring to the QEC as "MBUSA's QEC" does not make it so—and the e-mail does <u>not</u> say MBUSA is analyzing at-issue airbags. Instead, the e-mail discusses "acceptance rates" for other listed parts. This was irrelevant to at-issue airbags because, as discussed above, there were no at-issue part failures prior to this e-mail.<br>• QEC "evaluation" of non-specific parts in 2007 does not show MBUSA knew of a defect in the at-issue inflators. |
| The QEC coordinated communications and meetings among MBUSA, Daimler, and Takata, sharing pre-development component information. | ¶¶ 149–56 | • Evidence does not prove MBUSA's involvement, sharing of information, or use of Takata PSAN inflators. D.E. 4814-9–15 (Exs. 119–25).<br>• General communications do not show MBUSA knew of a defect in the at-issue inflators. | • The QEC's own presentations to suppliers, such as the "205 Launch Concept & Corrective Action Process," point out the sharing of information, including with MBUSA, by the supplier (*i.e.*, Takata) throughout the pre-launch process. D.E. 4814-10 (Ex. 120) ("Launch focus is on the corrective action process with the supplier and communication of results to all involved departments."). | • This cannot possibly relate to at-issue inflators, as it is undisputed there were no at-issue part failures in MB vehicles prior to 2014, the date of the cited document. *See, e.g.*, page 1, *supra*; D.E. 4814-10 at 5 (analysis is of "Field Parts returned," and does not show Takata shared anything with MBUSA "pre-development"); D.E. 4808 at 1 (plaintiffs claim at-issue part failure on November 7, 2020).<br>• Indeed, neither "Takata" nor "airbags" are mentioned at all.<br>• There also is no showing class vehicles were subject to anything referenced in the presentation.<br>• Thus, "sharing of information" does not show MBUSA knew of a defect in the at-issue inflators.<br>• Takata pleaded guilty to felony fraud for deceiving others as to the alleged defect. D.E. 4800 at 6 n.6 (citing D.E. 3406 at 25). |
| Takata participated in | ¶¶ 150– | • Takata supplied many different | • Presentations at the Supplier Day, such as the "205 Launch Concept | • This cannot possibly relate to at-issue inflators, as it is undisputed there were no at-issue part failures in MB vehicles |

---

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| 2012 Supplier Day at the QEC, organized by MBUSA, as a "Key Supplier." | 57, 196–98 | components—this does not show MBUSA knew of a defect in the at-issue inflators.<br>• Evidence of Takata's "participation" does not prove Takata or MBUSA's involvement. D.E. 4805 ¶¶ 153, 155–56 (citing Exs. 121–22, 125, 130); D.E. 4814-11, -12, -15, -20 (Exs.). | & Corrective Action Process," point out the sharing of information, including with MBUSA, by the supplier (i.e., Takata) throughout the pre-launch process. D.E. 4814-10 (Ex. 120) ("Launch focus is on the corrective action process with the supplier and communication of results to all involved departments.").<br>• The point of the evidence is to show MBUSA's involvement in communications with suppliers and knowledge that Takata was a supplier. | in or prior to 2012 or 2014 (the date of Ex. 120). *See, e.g.*, page 1, *supra*; D.E. 4814-10 at 5 (analysis is of "Field Parts returned", and does not show Takata shared anything with MBUSA); D.E. 4808 at 1 (plaintiffs claim at-issue part failure on November 7, 2020).<br>• Indeed, neither "Takata" nor "airbags" are mentioned at all.<br>• There also is no showing class vehicles were subject to anything referenced in the presentation.<br>• Thus, "sharing of information" or "knowledge that Takata was a supplier" does not show MBUSA knew of a defect in at-issue inflators.<br>• Takata pleaded guilty to felony fraud for deceiving others as to the alleged defect. D.E. 4800 at 6 n.6 (citing D.E. 3406 at 25). |
| The dangers of ammonium nitrate were well-known and publicized via explosions in Texas City, West Texas, and Beirut. | ¶¶ 94–95 | • "[D]angers of ammonium nitrate" do not show MBUSA knew the at-issue inflators were used.<br>• Such explosions do not show knowledge of a defect. Plaintiffs' expert testified that PSAN is distinct from ammonium nitrate. D.E. 4174-1 at 11:11–15. | • Plaintiff's expert (James Baglini) also explained: "It has also long been established that the effectiveness of phase stabilized ammonium nitrate (PSAN) can vary widely and, particularly in commercial automotive airbag applications, it is not a viable solution as an extended use propellant. <u>That is because the various "phase stabilization" schemes do not change the fundamentally unstable nature of ammonium nitrate in any permanent way</u>." ECF No. 4173-2 at p. 14. | • Plaintiffs' response does not show MBUSA knew at-issue inflators were used in class vehicles prior to the recall, much less that they had a defect in them prior to the recall.<br>• Their response also does not change Baglini's prior admission that PSAN is "not the same thing[]" as ammonium nitrate; it contains "additional additives or chemicals." D.E. 4174-1 at 11:11–15.<br>• Plaintiff's expert may opine that both aluminum nitrate and PSAN have the potential to be unstable, but this does not make the two distinct chemical formulations equivalent for knowledge purposes, especially when one was represented as "phase stabilized." |
| In 2006, Takata's Monclova facility exploded. Daimler engineers audited the plant before | ¶¶ 95, 105, 117 | • Assertion does not involve MBUSA.<br>• Plant explosion does not show MBUSA knew of a defect in the at-issue inflators. | • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing).<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• There is no evidence of knowledge to impute or a "nexus." *Id.*<br>• Knowledge of one corporation "will [generally] not be |

---

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).

[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| and after the explosion. | | | | imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |
| MBUSA and Daimler's predecessors developed the first chemical propellant airbag and filed a patent in 1971. | ¶¶ 97–98 | • Evidence does not prove MBUSA's involvement. D.E. 4812-2–5 (Exs. 17–20). <br> • This does not show MBUSA knew of a defect in the at-issue inflators. | • The point of the evidence is to show Daimler's familiarity with chemical propellant airbag design and development. <br> • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • Daimler's alleged "familiarity with . . . design and development" does not show knowledge of a defect in the at-issue inflators, much less knowledge by MBUSA. <br> • Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing). <br> • MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2. <br> • There is no evidence of knowledge to impute or a "nexus." *Id.* <br> • Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |
| MBUSA and Daimler had a joint venture with Takata: Inflation Systems, Inc. | ¶ 99 | • Evidence does not prove MBUSA's involvement. D.E. 4812-6 (Ex. 21). <br> • A "joint venture" does not show MBUSA knew of a defect in the at-issue inflators. | • The point of the evidence is to show Daimler's long and close history with Takata. <br> • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • Daimler's alleged "history with Takata" does not show knowledge of a defect in at-issue inflators, much less knowledge by MBUSA. <br> • Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing). <br> • MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2. <br> • There is no evidence of knowledge to impute or a "nexus." *Id.* <br> • Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |
| MBUSA's predecessor helped create the USCAR inflator technical requirements, reflecting concerns with PSAN inflators due to ammonium nitrate instability. | ¶¶ 101–03 | • Evidence does not prove MBUSA's involvement. D.E. 4337-65; D.E. 4812-9 (Ex. 24). <br> • Evidence refers to ammonium nitrate, not PSAN. D.E. 4337-65 at 24, 58–59. Plaintiffs' expert testified that PSAN is distinct from ammonium nitrate. D.E. 4174-1 at 11:11–15. | • The USCAR inflator technical requirements require "Ammonium Nitrate containing propellants . . . to undergo added stability evaluation, D.E. 4337-65 at 24, and refer to "all propellants containing Ammonium Nitrate", *id*. at 58–59. Phase-Stabilized Ammonium Nitrate (PSAN), by definition, contains Ammonium Nitrate. <br> • Plaintiff's expert (James Baglini) also stated: "the various 'phase stabilization' schemes do not | • Plaintiffs' response does not show MBUSA knew at-issue inflators were used in class vehicles prior to the recall, much less that they had a defect in them prior to the recall. <br> • Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing). <br> • Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." D.E. 4833 at 2. (quoting plaintiffs' treatise). <br> • "[A]dded stability evaluation" does not show MBUSA knew of a defect in at-issue inflators. <br> • USCAR technical requirements do not specifically reference PSAN. <br> • Plaintiffs' response does not change Baglini's prior admission that PSAN is "not the same thing[]" as ammonium nitrate; it |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| | | | change the fundamentally unstable nature of ammonium nitrate in any permanent way." ECF No. 4173-2 at p.14. | contains "additional additives or chemicals." D.E. 4174-1 at 11:11–15.<br>• Plaintiff's expert may opine that both aluminum nitrate and PSAN have the potential to be unstable, but this does not make the two distinct chemical formulations equivalent for knowledge purposes, especially when one was represented as "stabilized." |
| From 2002 to 2010, Daimler engineers visited Takata facilities, conducted audits, and observed tests revealing PSAN inflator issues. | ¶¶ 104–22 | • Assertion does not involve MBUSA.<br>• Evidence of "issues" does not prove at-issue airbags had PSAN inflators (D.E. 4812-16, -19, -20, -23, -24, -33, -36, -37, D.E. 4813-1; Exs. 31, 34–35, 38–39, 48, 51–53), does not support plaintiffs' assertion (D.E. 4812-30; Ex. 45), and are internal Takata communications not involving MBUSA (D.E. 4812-34, -35, D.E. 4813-2, -3; Exs. 49–50, 54–55).<br>• Visits, audits, and testing do not show MBUSA knew of a defect in the at-issue inflators. | • The issues identified include a DCX engineer personally witnessing a failure of an SDI inflator in May 2006 during testing where "Metalparts [sic] were found inside the cushion after deployment." D.E. 4812-19.<br>• The issues identified also include a DCX engineer personally witnessing a failure of an SDI inflator in August 2006, causing him to inform Takata "that he can not accept an inflator with such an behavior in on[e] of the vehicles he is responsible for." D.E. 4812-20.<br>• The SDI inflator is one of the types of PSAN inflators recalled in Mercedes vehicles. D.E. 4174-4 at p.2 n.2 ("the variants of inflators in recalled driver- and passenger-side MercedesBenz Sprinters (MY2010-2017) are designated SDI and SPI, respectively.").<br>• MBUSA is legally responsible for | • Cited evidence does not support the proposition at all. DCX is not "Daimler," the manufacturer of Mercedes-Benz vehicles. It made Chrysler vehicles.<br>• DCX is not MBUSA. MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• Footnote 2 only has the SDI as a recalled inflator *variant designation* in MY 2010–2017 Sprinters; it does not establish that a pre-production SDI inflator tested in 2006 is the same design as ultimately installed in those vehicles. D.E. 4174-4 at 2 n.2. Indeed, plaintiffs' own evidence shows that the tested inflator "can not [be] accept[ed]" for the DCX vehicle at issue.<br>• Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing).<br>• There is no evidence of knowledge to impute or a "nexus." *Id.*<br>• Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| | | | the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | |
| In 2006, a Daimler engineer saw an inflator become unusually bright, with metal parts found in the cushion, during deployment testing at Monclova. | ¶ 108 | • Assertion does not involve MBUSA.<br>• Evidence does not show the at-issue airbag had a PSAN inflator. D.E. 4812-19 (Ex. 34). | • The incident involved an SDI inflator (D.E. 4812-19 (Ex. 34)), which is one of the types of PSAN inflators recalled in Mercedes vehicles. D.E. 4174-4 at p.2 n.2 ("the variants of inflators in recalled driver- and passenger-side MercedesBenz Sprinters (MY2010-2017) are designated SDI and SPI, respectively.")<br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • As discussed above, DCX is not "Daimler," the manufacturer of Mercedes-Benz vehicles. It made Chrysler vehicles.<br>• DCX is not MBUSA. MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• Footnote 2 only has the SDI as a recalled inflator *variant designation* in MY 2010–2017 Sprinters; it does not establish that a pre-production SDI inflator tested in 2006 is the same design as ultimately installed in those vehicles. D.E. 4174-4 at 2 n.2. Indeed, plaintiffs' own evidence shows that the tested inflator "can not [be] accept[ed]" for the DCX vehicle at issue. D.E. 4812-20.<br>• Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing).<br>• There is no evidence of knowledge to impute or a "nexus." *Id.*<br>• Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |
| In 2006, Daimler engineers saw a Takata SDI inflator rupture during deployment testing. | ¶¶ 108–12 | • Assertion does not involve MBUSA.<br>• Evidence does not show the inflator used PSAN. D.E. 4812-20 (Ex. 35). | • The SDI inflator is one of the types of PSAN inflators recalled in Mercedes vehicles. D.E. 4174-4 at p.2 n.2 ("the variants of inflators in recalled driver- and passenger-side MercedesBenz Sprinters (MY2010-2017) are designated SDI and SPI, respectively.")<br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • As discussed above, DCX is not "Daimler," the manufacturer of Mercedes-Benz vehicles. It made Chrysler vehicles.<br>• DCX is not MBUSA. MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• Footnote 2 only has the SDI as a recalled inflator *variant designation* in MY 2010–2017 Sprinters; it does not establish that a pre-production SDI inflator tested in 2006 is the same design as ultimately installed in those vehicles. D.E. 4174-4 at 2 n.2. Indeed, plaintiffs' own evidence shows that the tested inflator "can not [be] accept[ed]" for the DCX vehicle at issue. D.E. 4812-20.<br>• Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing).<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• There is no evidence of knowledge to impute or a "nexus." *Id.*<br>• Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| In 2007, a Renault engineer spoke out against the use of ammonium nitrate, referring to Takata's inability to stabilize the compound. | ¶ 107 | • Assertion does not involve MBUSA.<br>• Renault's view does not show MBUSA knew of a defect in the at-issue inflators. | • Takata e-mail stating that "the leader of Renault (which also owns Nissan) is adamantly against the use of AN in air bag propellants . . . is actively campaigning to remove all Takata propellants containing AN, from all European car companies . . . [a]pparently he is friends with top people at Mercedes, Volkswagen, etc." D.E. 4812-18 (Ex. 33). | • Speculation that unnamed "leader" "apparently" is friends with "people at Mercedes" does not show MBUSA knowledge of a defect in at-issue airbags; MBUSA is not a "European" company.<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• This e-mail is irrelevant, given plaintiffs' expert's prior admission that PSAN is "not the same thing[]" as ammonium nitrate; it contains "additional additives or chemicals." D.E. 4174-1 at 11:11–15. |
| As Daimler's U.S. agent, MBUSA had access to engineering and technical information about Takata airbags. | ¶¶ 124–30 | • Evidence does not support this assertion. D.E. 4811-1 at 159:10–161:14; D.E. 4813-4 at 15:1–5, 15:10–19, 17:7–15, 17:23–18:2, 76:15–20; D.E. 4805 ¶¶ 116–17, 123–24, 126–30, 133–35, 152, 162, 174.<br>• Even if true, access to such information does not show *pre-sale* knowledge of a defect in the at-issue inflators. | • MBUSA's Senior Principal for Technical Compliance, Thomas Brunner, testified that "MBUSA is the designated agent for Daimler to the agency [NHTSA] and communications will flow through MBUSA and then back to Daimler"; that "[w]ith a NHTSA request and with regulatory reporting, those are submitted . . . by MBUSA on behalf of Daimler to NHTSA"; and that he could not think of any instance where MBUSA requested information from Daimler regarding Takata airbags and had not received it. D.E. 4811-1 at 158:20-161:2. | • The cited evidence still does not establish that MBUSA had knowledge of a defect in the at-issue airbags prior to the recall.<br>• Mr. Brunner testified that he did not know whether MBUSA "ha[d] gotten to the point where it[] asked for something that ha[d]n't come from a request from NHTSA." D.E. 160:18–161:2.<br>• Mr. Brunner was asked about "information . . . related to Takata airbags," not "engineering and technical information." *Id.* at 4811-1 at 158:20–161:2. |
| MBUSA was responsible for monitoring vehicle safety and submitting reports (including reports on Takata inflators) to NHTSA. | ¶¶ 125–30, 161–62, 181–83, 188–89 | • Evidence (with proper context) shows testimony that Daimler, not MBUSA, determines whether there are safety concerns. D.E. 4805 ¶ 126 (citing D.E. 4339-20 at 49); D.E. 4339-20 (Tait | • MBUSA's Senior Principal for Technical Compliance, Thomas Brunner, testified that MBUSA's safety reporting department was responsible for "obligations we have for reporting safety topics and obligations to the government," including TREAD Act reporting. D.E. 4811-1 at 30:20-31:19. [TREAD Act | • The cited evidence still does not establish that MBUSA had pre-sale knowledge of a defect in at-issue airbags—as it is undisputed that, prior to the recall, there was no field incident in MB vehicles that anyone would be obligated to report. *See* p. 1, *supra*; D.E. 4808 at 1 (plaintiffs claim at-issue part failure on November 7, 2020).<br>• As plaintiffs admit, Mr. Tait testified that MBUSA only "administer[s] the campaign based on the information" given by others. That shows involvement only in post-recall administration; it does not establish pre-sale knowledge of a |

---

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).

[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| | | Dep.) at 49:19–50:2.<br>• Safety reporting does not show *pre-sale* knowledge of a defect in the at-issue inflators, especially as *Takata* filed the recall-initiating reports here. | reporting requirements include, among other things reporting of possible defects. 49 USC § 30166 (m)(3)(C).]<br>• MBUSA's General Manager of Engineering Services, David Tait, testified "our role is - we administer, you know, safety type of actions and things like that"; and that "we administer the campaign based on the information that we're given by the manufacturer. That's our role." D.E. 4339-20 at 30:17-21 & 102:8-10. | defect.<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• There is no evidence of knowledge to impute or a "nexus." *Id.* |
| MBUSA plays a role in recalls and safety campaigns. | ¶¶ 125–26, 133–35, 182–87, 190–95 | • Evidence (with proper context) shows MBUSA was not involved in at-issue matters. D.E. 4805 ¶ 182 (citing D.E. 4339-20 at 162, 164); D.E. 4339-20 (Tait Dep.) at 163:16–19.<br>• *Post*-sale recall implementation does not show *pre-sale* knowledge of a defect in the at-issue inflators. | • MBUSA's Senior Principal for Technical Compliance, Thomas Brunner, testified that MBUSA's safety reporting department was responsible for "obligations we have for reporting safety topics and obligations to the government," including TREAD Act reporting. D.E. 4811-1 at 30:20-31:19. [TREAD Act reporting requirements include, among other things reporting of possible defects. 49 USC § 30166 (m)(3)(C).]<br>• MBUSA's General Manager of Engineering Services, David Tait, testified "our role is - we administer, you know, safety type of actions and things like that"; and that "we administer the campaign based on the information that we're given by the manufacturer. That's our role." | • The cited evidence still does not establish that MBUSA had pre-sale knowledge of a defect in at-issue airbags prior to the recall—as it is undisputed that, prior to the recall, there was no field incident in MB vehicles that anyone would be obligated to report. *See* page 1, *supra*; D.E. 4808 at 1 (plaintiffs claim at-issue part failure on November 7, 2020).<br>• As plaintiffs admit, Mr. Tait testified that MBUSA only "administer[s] the campaign based on the information" given by others. That shows involvement only in <u>post-recall</u> administration; it does not establish pre-sale knowledge of a defect.<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• There is no evidence of knowledge to impute or a "nexus." *Id.* |

---

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| | | | D.E. 4339-20 at 30:17-21 & 102:8-10. | |
| In a 2006 recall affecting airbags in certain C-Class vehicles, Takata PSAN inflators were used as replacements and later subject to recall. | ¶ 133 | • Evidence does not show the replacement airbags had PSAN inflators or *pre-sale* knowledge of a defect. D.E. 4813-24 (Ex. 76). | • NHTSA recall information for the 2005 C-Class vehicles indicates that the vehicles were subject to both the 2006 recall, which did not relate to risk of rupture and which resulted in replacement of air bag inflators, and the subsequent recalls due to the use of Takata PSAN inflators. D.E. 4813-24 (Ex. 76).<br>• MBUSA owned and operated at least one Mercedes dealership directly, D.E. 4339-3 at 22:7-18, and so would have been directly involved in placing Takata inflators in customer vehicles. | • The cited evidence still does not establish that MBUSA had knowledge of a defect in at-issue airbags prior to the recall.<br>• The referenced C-Class recall is unrelated to the later Takata PSAN recall and does not show pre-sale knowledge because it involved a different topic. Specifically, the prior recall related to risks to "an out-of-position unbelted 5th percentile female crash test dummy[,]" not Takata air bag complaints. *See* D.E. 4813-24 (Ex. 76).<br>• Exhibit 76 does not indicate the manufacturer, supplier, or propellant type for replacement parts. *See* D.E. 4813-24 (Ex. 76).<br>• The referenced dealer is owned by a distinct legal entity. D.E. 4339-3 at 22:11–13. There is no basis to impute knowledge of the dealer—and no evidence showing the dealer knew Takata PSAN inflators were used as replacements in the referenced recall. Indeed, a dealership logically would believe that a replacement part is different than the recalled part. |
| In April 2010, Daimler expressed concerns over "ballistic differences" and heat age testing results for PSDI-5. A high-moisture ballistic "flyer" was found in PV testing of another PSAN inflator. | ¶¶ 118–19 | • Assertion does not involve MBUSA.<br>• Evidence of "concerns" does not show the rupture was related to a PSAN inflator. D.E. 4812-33 (Ex. 48).<br>• Evidence of "flyer" is an internal Takata communication—not involving MBUSA. D.E. 4812-34 (Ex. 49). | • The incident involved a PSDI-5 inflator, which is one of the Takata PSAN inflators that was subject to recall in Mercedes vehicles. D.E. 4174-4 at pp. 18-19.<br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • What is cited in plaintiffs' response does not support plaintiffs' assertion at all. D.E. 4174-4 at 18–19 are pages of the CV for MBUSA's expert, Mark Warner.<br>• Nothing establishes that MBUSA had knowledge of a defect in the at-issue airbags prior to the recall.<br>• If this is intended to reference D.E. 4812-33, there is no indication that there was a concern of a rupture or a PSAN defect. The discussion is about "cold cover testing" and "cold deployments" at -30C, which might cause "cover cracking"—not inflator rupture.<br>• Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing).<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• There is no evidence of knowledge to impute or a "nexus." *Id.*<br>• Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| | | | | treatise). |
| In September 2010, a PSAN inflator showed a ballistic anomaly during testing. | ¶ 120 | • Assertion does not involve MBUSA.<br>• Evidence is an internal Takata communication—not involving MBUSA. D.E. 4812-35 (Ex. 50). | • MBUSA is correct that the document is an internal Takata document, but it is relevant to show Takata's deficiencies as a supplier of inflators intended for Mercedes vehicles. | • Internal Takata documents do not show MBUSA <u>knew</u> of a defect in the at-issue inflators. |
| In November 2010, Daimler requested a meeting with Takata to discuss PSAN inflators' failure to meet certain requirements after exposure to environmental conditions. | ¶ 121 | • Assertion does not involve MBUSA.<br>• Evidence refers to "retractor acceleration and tilt-lock" requirements, not PSAN inflators. D.E. 4812-36 (Ex. 51). | • MBUSA is correct that e-mail refers to "retractor acceleration and tilt-lock" requirements, not to PSAN inflators, D.E. 4812-36 (Ex. 51), but the evidence is relevant to knowledge of Takata's deficiencies as a supplier more generally.<br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • "[D]eficiencies as a supplier [] generally" does not show MBUSA knew of a defect in at-issue inflators.<br>• Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing).<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• There is no evidence of knowledge to impute or a "nexus." *Id.*<br>• Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |
| Daimler granted Takata's requests for deviations from safety specifications, approved use of inflators due to time constraints, and later required a move to desiccated PSAN inflators. | ¶¶ 111–16, 118–23 | • Assertion does not involve MBUSA.<br>• Evidence of "deviations" does not show they involved "safety specifications." D.E. 4812-26, -27 (Exs. 41–42). | • The deviation that was requested was not due to a minor or inconsequential issue; it was because "DV [design validation] and PV [production validation] process for this inflator has not been completed yet." D.E. 4812-27 (Ex. 42).<br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • The cited evidence still does not establish that MBUSA had knowledge of a defect in at-issue airbags prior to the recall.<br>• The issue, even assuming it was "not . . . minor or inconsequential," was <u>not</u> the alleged defect. It was that design validation and production validation testing had not yet been completed for a <u>pre-production</u> inflator being shipped as engineering purpose **samples**, which relates to the standard developmental sequencing of a new product, not to the identification of any safety defect, propellant instability, or rupture risk in the inflator's design or materials. *See* D.E. 4812-27 (Ex. 42).<br>• Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing).<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• There is no evidence of knowledge to impute or a "nexus." *Id.*<br>• Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| | | | | treatise). |
| Since 2008, automakers recalled Takata-equipped vehicles due to the risk of inflator ruptures. MBUSA and Daimler engineers and executives closely monitored and discussed these recalls. | ¶¶ 163–66, 168–69, 172–73 | • Cited facts reflect improper speculation (¶ 172) and do not prove MBUSA's involvement (¶¶ 163, 165–66, 168–69, 173).<br>• Other manufacturers' recalls do not show MBUSA knew of a defect in Mercedes-Benz vehicles.<br>• Evidence (with proper context) shows that MBUSA merely had a general concern about recalls that affect its vehicles and customers—not knowledge that at-issue vehicles had PSAN inflators. D.E. 4805 ¶¶ 164, 172 (citing D.E. 4339-20 at 54–55, 59–60); D.E. 4339-20 (Tait Dep.) at 54:19–55:12. | • MBUSA's General Manager of Engineering Services, David Tait, testified that "in the very beginning of the Takata recall, I think we're always concerned – we're always asking the question, who else is affected by that?"; and that "specifically to Takata, . . . the first indicators that we had was some incidents that were happening with Honda vehicles. . . . so I vaguely remember seeing a report on that and then asking Tom [Brunner], 'Hey, what does that mean for us?' Because I knew that Takata was one of the manufacturers that we – that we used in our vehicles" D.E. 4339-20 at 54:19-23 & 59:18-60:2.<br>• One of MBUSA's safety engineers, Bibi Analil, testified that she may have been aware of issues with Takata airbags as early as 2012. D.E. 4339-13 at 37:10-21. | • The cited evidence does not establish that MBUSA had knowledge of a defect in at-issue airbags prior to the recall.<br>• Mr. Tait's testimony continues: "So we're focusing on our product and our customer. And what happens to BMW or another manufacturer may be interesting or may be a good read in the press, or it may be an indicator of, you know, something that may—you know, if it affects our vehicles too, we may ask the question of Daimler to say, you know, 'Is that something?'" D.E. 4339-20 at 54:19–55:12.<br>• And: "So my recollection is that we weren't affected by the initial wave." *Id.* at 61:21–22.<br>• Ms. Analil's testimony does <u>not</u> indicate she had knowledge then. She specifically answered "Ya possibly. I really don't remember" when led by plaintiff's counsel. D.E. 4339-13 at 37:10–13. She confirmed the unreliability of this 2012 date by testifying later, "I don't think it was in 2012" and indicating it was "sometime in the middle of 2016." *Id.* at 94:14–23. |
| Daimler controlled the process of sourcing Takata inflators for Mercedes vehicles. | ¶¶ 104–23 | • Assertion does not involve MBUSA.<br>• Sourcing inflators does not show MBUSA knew of a defect in the at-issue inflators. | • MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | • The cited evidence does not establish that MBUSA had knowledge of a defect in at-issue airbags prior to the recall.<br>• Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing).<br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2.<br>• There is no evidence of knowledge to impute or a "nexus." *Id.*<br>• Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |
| In 2007, Daimler | ¶ 111 | • Assertion does not | • The additional testing involved | • The cited evidence still does not establish that MBUSA had |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).

**MBUSA'S LACK OF PRE-SALE KNOWLEDGE REPLY – JULY 15, 2026 MSJ HEARING**

| Plaintiffs' Argument | SOF[1] | No Genuine Dispute of Material Fact[2] | Plaintiffs' Response | MBUSA's Reply |
|---|---|---|---|---|
| met with Takata to discuss additional ammonium nitrate testing, helium leak testing, and humidity effects. | | involve MBUSA or reference the at-issue inflators in Class Vehicles. | "ammonium nitrate (AN) propellant in use today in the gas generators SDI, PSDI, SPI, PSPI and SSI" D.E. 4812-24 (Ex. 39), which include types of PSAN inflators recalled in Mercedes vehicles. D.E. 4174-4 at p.2 n.2 ("the variants of inflators in recalled driver- and passenger-side MercedesBenz Sprinters (MY2010-2017) are designated SDI and SPI, respectively."). <br>• MBUSA is legally responsible for the knowledge of Daimler (and of Takata). *See* D.E. 4808 at pp. 7-9. | knowledge of a defect in at-issue airbags prior to the recall. <br>• Footnote 2 identifies the SDI as a recalled inflator *variant designation* in MY2010–2017 Sprinters; it does not establish that a pre-production SDI inflator tested in 2007 is the same as ultimately installed in those vehicles. D.E. 4174-4 at p.2 n.2 <br>• Additional testing references categories of propellant technology; it is irrelevant to pre-sale knowledge of a defect in at-issue inflators installed in class vehicles. <br>• Plaintiffs' claims require actual knowledge. D.E. 4800 at 5–6 & n.7; MBUSA Reference Chart (MSJ Hearing). <br>• MBUSA is not liable for other entities' knowledge. D.E. 4833 at 2. <br>• There is no evidence of knowledge to impute or a "nexus." *Id.* <br>• Knowledge of one corporation "will [generally] not be imputed to [a related] corporation." *Id.* (quoting plaintiffs' treatise). |

[1] *Compare* D.E. 4805 (plaintiffs' response SOF), *with* D.E. 4834 (MBUSA's reply SOF).
[2] *See* D.E. 4800 at 5–7 (MBUSA's argument); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (plaintiffs' burden to show dispute).